## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 11-cv-00520-PAB-BNB

HEALTH GRADES, INC.,

      Plaintiff,

vs.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

### HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO "MDX MEDICAL, INC.'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 16(B)(4) TO MODIFY SCHEDULING ORDER AND RULE 15(A)(2) FOR LEAVE TO AMEND ANSWER"

---

Plaintiff Health Grades, Inc. ("Health Grades"), by its undersigned counsel, submits its Response In Opposition To MDx Medical, Inc.'s ("MDx") Motion Pursuant To Federal Rule Of Civil Procedure 16(B)(4) To Modify Scheduling Order And Rule 15(A)(2) For Leave To Amend Answer (the "Motion").  The Motion should be denied for the following reasons:

### I.      INTRODUCTION

The Federal Circuit has observed that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Therasense, Inc. v. Becton Dickinson & Co.,* 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc).  "[C]harging inequitable conduct has become a common litigation tactic … has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system." *Id*. (citations omitted).  "Left unfettered, the inequitable conduct doctrine has plagued not only the courts but also the entire patent system." *Id.*  The court in *Therasense* wisely noted the serious adverse consequences that result

from the plague and the strategic incentives that alleged infringers have for asserting inequitable

conduct:

> A charge of inequitable conduct conveniently expands discovery into corporate practices before patent filing and disqualifies the prosecuting attorney from the patentee's litigation team. (internal citations omitted.) Moreover, inequitable conduct charges cast a dark cloud over the patent's validity and paint the patentee as a bad actor. Because the doctrine focuses on the moral turpitude of the patentee with ruinous consequences for the reputation of his patent attorney, it discourages settlement and deflects attention from the merits of validity and infringement issues. (internal citations omitted.) Inequitable conduct disputes also "increas[e] the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost. (internal citations  omitted.)

*Id*. at 1288.

As a result of this scourge, the court in *Therasense* took decisive and appropriate action:

"This court now tightens the standards for finding both intent and materiality in order to redirect

a doctrine that has been overused to the detriment of the public."  *Id*. at 1290.

With its Motion MDX joins the pandemic of litigants that resort to charging inequitable

conduct merely as a litigation tactic, regardless of the truth.  Indeed, as shown below, there is

simply no evidence whatsoever that the inventors misrepresented or omitted any material factual

information – much less with the specific intent to deceive the Patent Office.

MDx's proposed amendment would be futile – the allegations underlying MDX's

inequitable conduct defense fail to state a claim upon which relief can be granted, particularly in

light of the Federal Circuit's recent decision in *Therasense* that, as discussed above, significantly

heightened the standards necessary to prove inequitable conduct on the merits.  "Failure to plead

a claim of inequitable conduct with the specificity required by <u>Rule 9(b)</u> will result in the

amendment's denial as futile." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 2011 WL 3563112, *15 (E.D.Va.) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).[1]

In its Motion MDx accuses the three inventors of U.S. Patent No. 7,752,060 ("the '060 Patent") of perpetrating a fraud on the Patent Office. In support of its unconscionable claims attacking the integrity of these three inventors, MDx submits an Amended Answer, Affirmative Defenses, Counterclaim and Demand for Jury Trial (the "Answer") that alleges the inventors intentionally failed to disclose to the Patent Office three types of material physician reports from Health Grades' website with the specific intent to deceive the Patent Office. The Answer, however, contains only conclusory, "on information and belief" allegations that the Health Grade References were "but-for" material to the patentability of the '060 Patent (*i.e.,* but-for the omission of the references, the Patent Office allegedly would not have granted the '060 Patent) and that the inventors withheld them "with the specific intent to deceive the PTO." *See* Answer at ¶¶ 25, 33, 44, 47, 48, 50, 51 and 53. This is grossly insufficient. As discussed below, conclusory, "on information and belief" allegations fail to satisfy the particularity requirements of Rule 9(b) that apply to the materiality element – indeed, the particularity requirement *is not satisfied* by "[a] mere recitation that 'X' individual, at 'X' time, failed to turn over 'X' information to the PTO that would have been material to the prosecution, with specific intent to deceive the PTO." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 2011 WL 3563112, *16 (E.D.Va.) (citing *Therasense*.)

---

[1] MDx states it diligently sought discovery on inequitable conduct "as early as the rules allowed." This is not true. MDx was allowed to seek discovery as early as June 8, 2011, when the parties conferred pursuant to Rule 26(f). MDx could have – and should have – taken depositions to seek discovery regarding inequitable conduct as early as June 8, 2011, but it chose not to do so. There were no discussions among counsel regarding depositions on this issue, and MDx's Motion is silent as to the same.

MDx "must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to with-hold it." *Therasense*, supra, at 1290.  Mindful of its role in containing the plague, the court in *Pfizer* addressed the necessity that a party demonstrate the elements it must prove on the merits even at the pleading stage, "albeit at a lower standard of plausibility:"

> The court is mindful that at the pleading stage a party is not required to meet the clear and convincing evidence standard that applies on the merits. However, as made clear in *Therasense*, courts must take an active role in examining the propriety of inequitable conduct claims, *Therasense*, 2011 WL 2028255, at *9, and without incorporating allegations of the specific elements to be proven on the merits at the pleading stage, albeit at a lower standard of plausibility at this initial juncture, courts cannot perform this function.

*Pfizer, supra*, at *16.

In this case, MDX's allegations are simply not plausible.  First, MDX asserts the Health Grades References are "but for" material *despite the fact that none of the reports contain patient ratings of physicians, which is required by all of the asserted claims.*  Second, as discussed in more detail below, Health Grades disclosed prior art that was very similar to the Health Grades References, and MDX's only basis for its misguided contention that the inventors specifically intended to deceive the Patent Office is that the inventors disclosed other prior art to the Patent Office and made arguments to distinguish their claims from the disclosed prior art.  This is grossly insufficient – these are actions, of course, that nearly every applicant for a patent takes in nearly every patent application and which certainly do not give rise to any inference that the inventors intended to deceive the Patent Office.  The '060 Patent was prosecuted by highy competent patent counsel, Merchant & Gould.  Finally, to meet the clear and convincing

standard, MDx must show that the specific intent to deceive is "the single most reasonable inference able to be drawn from the evidence … when there are multiple reasonable inferences to be drawn, intent to deceive cannot be found." *Therasense, supra*, at 1290-1291.(internal citations omitted.)  Here the most reasonable inference that can be drawn to explain why the references were not cited is that the inventors simply did not know the references were material – and they were not, as discussed below.  Again, MDx's allegations are grossly insufficient.

In short, the Federal Circuit's characterization of inequitable conduct as a "plague" on both the courts and the patent system, which has been overused and abused by alleged infringers, is an apt description for MDx's allegations of inequitable conduct in this case.

## II.   STATEMENT OF FACTS

The '060 Patent issued on July 6, 2010 to inventors David Hicks, Scott Montroy, and John Neal.  U.S. Patent No. 7,752,060 at 1 (filed Aug. 29, 2006) (Ex. A).  The '060 Patent claims priority to a provisional patent application that was filed on February 8, 2006. *Id.* The critical date for determining prior art under 35 U.S.C. §102(b) is February 8, 2005. *See* 35 C.F.R. § 1.53(c).

The '060 Patent generally relates to an Internet-based system that connects patients with potential healthcare providers, such as physicians. '060 Patent at 1.  More particularly, it describes providing reports comprised of detailed healthcare provider information with verified information sections, including physician-verified and independent third-party-verified sections, and a patient-provided information section that includes patient ratings to assist patients in differentiating among healthcare providers.  '060 Patent col.1 l.11-20 (Ex. A).

<u>All of the claims</u>[2] of the '060 patent require creating a healthcare provider report by using the following three kinds of information:

1)     Healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider;

2)     Patient-provided information comprising patient ratings of the first healthcare provider; and

3)     Information regarding the first healthcare provider verified by an independent third-party source.

'060 patent cols. 20-24.  Further, <u>all of the claims</u> require that the healthcare provider report include "comparison ratings of health care providers."  '060 Patent col.20 ll.62-65; '060 Patent col.22 ll.51-54; '060 Patent col21-22; '060 Patent col.22-24.

MDx's proposed amended Answer alleges only one basis for inequitable conduct, namely that the inventors failed to disclose the following three Health Grades' reports from its prior website:  Physician Research Comparison Report ("PRCR"), Physician Quality Guide ("PQG"), and Physician Quality Report ("PQR") (collectively, the "Health Grades References").  Motion at ¶¶30-34 [Dkt. 57-1].  According to MDx's proposed amended Answer, the Health Grades References contained information regarding:

•     PRCR:  "physicians, including board certification information."

•     PQG:  "a physician, including specialty information, gender, years in profession, years in practice, professional appointments, professional memberships, languages, board certification, disciplinary action information, medical school, medical residency, and medical fellowship information."

[2]  These elements are found in both independent claims 1 and 15.  '060 Patent col.20 ll.29-65; '060 Patent  col.22 ll.9-56. Dependent claims 2-14, and 16-17 necessarily include all of the limitations of the independent claims from which they depend.  '060 Patent col.21-22; '060 Patent col.22-24.

- PQR:   "a physician, including specialty information, gender, years in profession, years in practice, languages, board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information."

Motion at ¶¶31-33.  However, *none* of the Health Grades References contain any information provided by a patient, let alone the very specific kind of patient-ratings that are required by all of the '060 patent claims, namely:

> [p]atient-provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients .

'060 Patent col.20 ll.39-49; '060 Patent col.22 ll.29-39 (Ex. A).  MDx's proposed amended Answer does not allege otherwise.  And although MDx cites to a Health Grades press release announcing that it is enhancing its physician reports with patient ratings (Ex. F to MDX's Motion [Dkt. 57-6]), this press release is dated August 2, 2005, which is less than a year before the priority filing date of the '060 patent.  Thus, the enhanced physician reports (with patient ratings) do not qualify as prior art.  Health Grades' enhanced physician reports do not qualify as prior art under 35 U.S.C. §102(a) because this subsection applies *only* to prior art from third parties. Furthermore, Health Grades' enhanced reports do not qualify as prior art under §102(b) because they were not publicly used more than one year before the priority filing date of February 6, 2006.  '060 Patent at 1 (Ex. A).

Moreover, none of the Health Grades References contain comparison *ratings* for healthcare providers, which are also required by all of the '060 claims.  MDx alleges that the

PCPR report contained "comparisons of healthcare providers."  Motion at ¶44.  However, the '060 patent claims require more than just a comparison – they require "comparison *ratings* of healthcare providers. '060 Patent col.20 ll.64-65 (Ex. A).  MDx does not allege that any of the Health Grade References contained such comparison ratings.

On the all-important issue of intent, MDx alleges the inventors "refused to comply with their admitted and agreed duties of disclosure" and continued to withhold all of the "critical Health Grades prior art."  Motion at ¶¶40-41.  The inventors did not "refuse" to comply with their duty of disclosure – to the contrary, they disclosed many prior art references, which are listed on the first two pages of the '060 patent:




'060 patent at 1-2 (highlighting added); Information Disclosure Statement dated Feb. 15, 2010

(Ex. B).[3]

MDx's proposed amended Answer further alleges that the inventors intended to deceive

the Patent Office because they disclosed "other substantially less significant prior art instead,

deliberately hiding from the PTO what the inventors knew to be Health Grades' own, highly

relevant prior art."  Motion at ¶42.  This assertion is unsupported and completely ludicrous.  The

three references on which MDx seeks to rely are only marginally pertinent and substantially

cumulative of references that Health Grades did disclose.  In particular, MDx's own invalidity

contentions allege that two other prior art references, namely U.S. Patent Publication No.

2006/0015369 ("the '369 prior art") and U.S. Patent Publication No. 2002/0038233 ("the '233

prior art"), include the same kind of physician information as the Health Grades References:

| Claim | Prior Art References that Render Asserted Claims of the '060 Patent Invalid[2] |
| --- | --- |
|  | For purposes of this illustration we have chosen to search by ZIP code to find a physician |

***

---

[3]  Ex. B is from the prosecution history of the '060 patent.  Although the file history was not attached as an exhibit to MDx's Motion, the Court may consider matters of public record, such as this publicly available document, when reviewing a motion to amend based on futility under Rule 12(b)(6). *Louisiana ex rel. Guste v. United States, 656 F. Supp. 1310*, 1314 n.6 (W.D. La. 1986) (citing 5 Wright & Miller, Federal Practice and Procedure, §§ 1357 n.41 and 1364, n.24-43).

| | |
|---|---|
| accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies; | there is inherent, implicit, and/or intrinsic disclosure of a computer processor and memory.

As addressed below, one or more prior art references disclose accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider[3] and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies.

'369 prior art: The '369 prior art in combination with other prior art meets this claim language. See, e.g., FIG. 2, 7, and accompanying text. "FIG. 2 is a flowchart illustrating a method for providing information regarding healthcare providers, in accordance with embodiments of the present invention. In step 201, a healthcare provider recommendation is received. In step 202, a healthcare provider entry is stored in the healthcare provider recommendation database 152. This healthcare provider entry is associated with at least one healthcare provider recommendation." (page 2, ¶ [0019]). "In accordance with some embodiments, information regarding the recommended healthcare providers may be reviewed and confirmed to ensure the accuracy of the information. This review may occur prior to making those recommendations available for searching by other users and/or on a periodic basis. The review may cover one or more types of information, such as, e.g., the |
| | status of a recommended physician's medical license, the spelling of the healthcare provider's name, the contact information, specialty, type of treatment (adult, pediatric, or both), and hospital affiliation." (pages 2-3, ¶ [0032]). "Over 20 years of experience providing outstanding and compassionate Family Practice care to individuals and families from underserved populations and multiple cultural groups." (FIG. 7). Motivation to combine and/or modify the prior art is recognized in at least one or more of the '369 prior |

\*\*\*

| | |
|---|---|
| | '233 prior art: The '233 prior art in combination with other prior art meets this claim language. See, e.g., "The attorney profile includes: name, address, phone numbers, fax number, states of practice, certifications, publications, honors and awards, memberships, additional language skills, prior legal employment, representative consumers, specific experience, law school information, undergraduate information, other education, areas of practice and any additional information that the attorney wishes to provide. In order to avoid misrepresentation, the attorney's profile information may be verified for accuracy before it is made available to other matching system users. In particular the areas of practice and the location information are used by the matching system to cross reference consumer cases." (page 4, ¶ [0041]). |

(*See* Appendix to Defendant MDx's Local Patent Rule 3-3 and 3-4 Disclosures Supplemental

Invalidity Contention Charts at 4, 5, and 7 (Ex. C).)  Health Grades disclosed *both* the '369 prior

art and the '233 prior art to the Patent Office:

US 7,752,060 B2

Page 2

**U.S. PATENT DOCUMENTS**

| | | |
|---|---|---|
| 6,697,783 B1 | 2/2004 | Brinkman et al. |
| 6,738,754 B1 | 5/2004 | Norman, Jr. |
| 7,065,528 B2 | 6/2006 | Herz et al. |
| 7,383,197 B1 | 6/2008 | Neuman .......................... 705/2 |
| 2001/0039547 A1 | 11/2001 | Black et al. |
| 2002/0038233 A1 | 3/2002 | Shubov et al. .................. 705/1 |
| 2002/0046041 A1 | 4/2002 | Lang |
| 2002/0059201 A1 | 5/2002 | Work |
| 2003/0028406 A1 | 2/2003 | Herz et al. |
| 2003/0093294 A1* | 5/2003 | Passantino ...................... 705/2 |
| 2003/0195838 A1* | 10/2003 | Henley ........................... 705/37 |
| 2004/0010423 A1* | 1/2004 | Sameh ............................ 705/2 |
| 2004/0019579 A1 | 1/2004 | Herz et al. ................... 707/104.1 |
| 2004/0064440 A1 | 4/2004 | Norman, Jr |
| 2004/0172282 A1 | 9/2004 | Benja-Athon .................... 705/2 |
| 2004/0193447 A1 | 9/2004 | Joseph |
| 2004/0260666 A1 | 12/2004 | Pestotnik et al. |
| 2005/0071189 A1 | 3/2005 | Blake et al. |
| 2005/0149507 A1 | 7/2005 | Nye |
| 2006/0015369 A1 | 1/2006 | Bachus et al. .................. 705/2 |
| 2006/0080146 A1* | 4/2006 | Cook et al. .................... 705/2 |
| 2006/0161456 A1* | 7/2006 | Baker et al. ................... 705/2 |
| 2006/0294138 A1 | 12/2006 | Stolba ........................... 707/10 |
| 2007/0094044 A1 | 4/2007 | Stone et al. .................... 705/2 |

**OTHER PUBLICATIONS**

UCompareHealthCare.com [online], [retrieved on Feb. 15, 2010]. Retrieved from the internet: <URL: www.UCompareHealthCare.com> (2010) 1 page.

RevolutionHealth.com [online], [retrieved on Feb. 15, 2010]. Retrieved from the internet: <URL: www.RevolutionHealth.com> (No Date) 1 page.

WebMD.com [online], [retrieved on Feb. 15, 2010]. Retrieved from the internet: <URL: www.WebMD.com> (2005-2010) 2 pages.

GeoAccess.com (Ingenix.com) [online], [retrieved on Feb. 15, 2010]. Retrieved from the internet: <URL: http://www.ingenix.com> (Copyright © 2010) 1 page.

RevolutionHealth.com [online], [retrieved on Mar. 2, 2010]. Retrieved from the internet: <URL: www.RevolutionHealth.com> (Copyright © 2010) 3 pages.

UCompareHealthCare.com [online], [retrieved on Feb. 15, 2010]. Retrieved from the internet: <URL: www.UCompareHealthCare.com> (Copyright © 2010) 1 page.

Vitals.com [online], [retrieved on Mar. 2, 2010]. Retrieved from the internet: <URL: http://www.vitals.com> (Copyright © 2006-2010) 1 page.

WebMD.com [online], [retrieved on Feb. 15, 2010]. Retrieved from the internet: <URL: www.WebMD.com> (Copyright © 2005-2010) 2 pages.

* cited by examiner

'060 Patent at 2 (Ex. A) (highlighting added); *see also* Information Disclosure Statement dated Feb. 15, 2010 (Ex. B).  The Examiner considered each of these references, as demonstrated by her initials beside each of them on the Information Disclosure Statements, and allowed the '060 Patent to issue over each of these references.  Information Disclosure Statement dated Feb. 15, 2010 (Ex. B).

## III.   LEGAL STANDARDS

District courts should *not* grant leave to amend an answer if amendment would be futile. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).  A proposed amendment is futile if the defense, as amended, would be subject to dismissal.  *Id.* (citations and internal quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A

complaint that merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

When considering a motion to dismiss, a court should "begin by taking note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1946 (2009). MDx's answer includes an affirmative defense of inequitable conduct.  Before *Therasense*, a party alleging inequitable conduct had to prove by clear and convincing evidence that (1) material information was not disclosed to the Patent Office; and (2) the non-disclosure was done with the intent to deceive the Patent Office. *See, e.g., Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). Those two elements were then put on a sliding scale where a strong showing of one element, either materiality or intent, could override a weaker showing of the other. *Id.*  In *Therasense*, the Federal Circuit changed this test by heightening the standards for both the materiality element and the intent element and eliminating the sliding scale approach of balancing the two elements.

After *Therasense*, "the materiality required to establish inequitable conduct is but-for materiality," meaning that "the PTO would not have allowed a claim had it been aware of the undisclosed prior art."  *Therasense,* 649 F.3d at 1291.  With respect to the intent element, the requisite intent is a specific intent to deceive the PTO, which requires that "the applicant *made a deliberate decision* to withhold a *known* material reference." *Id.* at 1290 (internal quotation marks omitted) (emphasis in original).  "[G]ross negligence" is not enough, *Id.*, nor is it enough that "the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO." *Id.*  The intent to deceive must be "the single most reasonable inference

able to be drawn." *Id.* (internal quotation marks omitted).  Here, MDx's allegations, even if

accepted as true – and they are not – fail to meet these rigorous materiality and intent standards.

The next step in deciding a motion to dismiss is to assess the sufficiency of the

allegations actually pled. *Iqbal*, 129 S.Ct. at 1949-50.  In assessing whether a claim of

inequitable conduct has been sufficiently pled, the general pleading requirements of Rule 8(a)

apply to the intent element, and the particularity requirements of Rule 9(b) apply to the

materiality element. *See Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 2011 U.S. Dist. LEXIS 90021,

at *53-*57 (E.D. Va. Aug. 12, 2011) (explaining that "[i]n pleading the intent prong, the court

evaluates whether a sufficient showing has been made under the standards of Federal Rule of

Civil Procedure 8(a)" but that "a party must still identify the specific who, what, when, where,

and how of the material misrepresentation or omission committed" (quoting *Exergen Corp. v.

Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009)).

To satisfy the particularity requirements of Rule 9(b), the factual allegations supporting

an inequitable conduct allegation must "identify the specific who, what, when, where, and how

of the material misrepresentation or omission." *Pfizer, supra,* at *53-54 (quoting *Exergen*, 575

F.3d at 1328). The particularity requirement *is not satisfied* by "[a] mere recitation that 'X'

individual, at 'X' time, failed to turn over 'X' information to the PTO that would have been

material to the prosecution, with specific intent to deceive the PTO." *Pfizer, supra,* at *59.

To identify whether inequitable conduct allegations are sufficient, the court first identifies

"the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct.

at 1951.  When there are exhibits and matters of public record that are properly considered, the

court need not "accept as true allegations [from the complaint] that contradict matters properly

subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted).  Likewise, the court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the court need not accept "legal conclusion couched as factual allegation." *Iqbal*, 129 S.Ct. at 1949-50.

The court then determines whether, after identifying those allegations that are not entitled to the assumption of truth, there are any "well-pleaded factual allegations." *Iqbal*, 129 S. Ct. at 1950.  If there are, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950-51. A complaint plausibly gives rise to an entitlement to relief only if "the factual content of the complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

IV.  **DISCUSSION**

To satisfy the pleading requirements for inequitable conduct, MDx's allegations concerning the Health Grades References must allow the Court to draw the reasonable inference that these references were "but-for" material to the patentability of the '060 Patent and that the inventors withheld them with the specific intent to deceive the Patent Office.  MDx's allegations do not satisfy either inquiry, and should therefore be dismissed.

A.     **The Health Grades References Are Not "But-For" Material to Patentability, but Rather Are Merely Cumulative of Prior Art That Was Disclosed by Health Grades**

With respect to materiality, MDx has not specified in its proposed amended Answer "why" or "how" the Health Grades References are "but-for" material to patentability of any of the claims of the '060 Patent.  Rather, the Proposed Amended Answer contains only threadbare, conclusory allegations that the Patent Office would not have allowed the '060 Patent to issue if the examiner had been aware of the Health Grades References, which are not sufficient to satisfy the requirements for pleading inequitable conduct.  *See Iqbal*, 129 S. Ct. at 1949-50; *Pfizer*, 2011 U.S. Dist. LEXIS 90021, at *53-54; *Veney*, 293 F.3d at 730.

Further, this Court need not accept these allegations as true because they are contradicted by the proposed amended Answer, the exhibits attached thereto, the '060 Patent file history and MDx's invalidity contentions that were previously served in this case.

First, for prior art to be "but-for" material (i.e. be sufficient to have prevented the examiner from allowing the claim to issue) it needs to either anticipate the patent claim under 35 U.S.C. §102 or render the claim obvious under 35 U.S.C. §103.  To anticipate a claim, a single piece of prior art needs to teach each and every element of the patent claim.  *Lindemann Mashinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1458 (Fed. Cir. 1984).  As previously discussed, *all* of the '060 claims require patient-provided ratings that are compiled from patients who complete an on-line patient experience survey about the healthcare provider. *See* '060 Patent col.20 ll.33-38; '060 Patent col.22 ll.29-39.  *None* of the three Health Grades References include patient ratings of the doctors referenced in the reports and MDx does not contend otherwise.  Similarly, none of the Health Grade References include comparison ratings

of healthcare providers.  Thus, none of the Health Grades References anticipate any of the '060 patent claims under §102.

To render a claim obvious, a combination of multiple prior art references must collectively teach each and every element of a claim and it must have been obvious to one of ordinary skill in the art to combine the references.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007).  As explained above, however, even a combination of the Health Grades References did not include the claimed patient ratings or comparison ratings and MDx's proposed amended Answer does not identify any other prior art that provided these missing elements.  Thus, even a combination of the three Health Grades References would not render obvious *any* of the '060 Patent claims under §103.  As such, even if the examiner had been aware of the Health Grades References, this knowledge would not have prevented him from allowing the '060 Patent claims to issue.  Thus, MDx's answer fails to state a claim that the Health Grades References were "but-for" material to patentability, which is a necessary element of inequitable conduct, and the proposed addition of the defense is futile.

Second, to the extent that providing information about a physician in a report was material to the '060 patent, such information was disclosed by other prior art references that ***were already disclosed*** to the Patent Office during prosecution of the '060 Patent.  Information Disclosure Statement dated Feb. 15, 2010 (Ex. B).  Thus, the Health Grades References, even if considered material, are at best cumulative of references disclosed to the Patent Office, and thus cannot be "but-for" material.  *Larson Mfg. Co. of South Dakota, Inc. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1327 (Fed. Cir. 2009) ("[A] withheld otherwise material reference is not material if it is merely cumulative to, or less relevant than, information already considered by the

examiner.").  MDx's proposed amended Answer asserts that the Health Grade References teach

the following two claim elements:

- Provider-Verified Information: "accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and **comprises three or more from the group consisting of**: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies . . . ."  (Answer at ¶46 (emphasis added).)

- Third-Party Verified Information:  "information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source **comprises three or more from the group consisting of**: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information . . . ." (Answer at ¶49 (emphasis added).)

Motion at ¶¶ 44-53.  Yet, MDX admits that other prior art considered by the Patent Office also

included these elements.  According to the allegations MDx made in its invalidity contentions in

the case, the '369 prior art disclosed a physician report that included a "physician's medical

license, the spelling of the healthcare provider's name, the contact information, specialty, type of

treatment (adult, pediatric, or both), and hospital affiliation."  MDx Rule 3-3(c) Invalidity Claim

Chart at 3 (Ex. C).  MDX also asserts that the '233 prior art teaches these elements because it

included a report about a lawyer that included:  "name, address, phone numbers, fax number,

states of practice, certifications, publications, honors and awards, memberships, additional

language skills, prior legal employment, representative consumers, specific experience, law

school information, undergraduate information, other education, areas of practice and any

additional information that the attorney wishes to provide. In order to avoid misrepresentation,

the attorney's profile information may be verified for accuracy before it is made available to other matching system users. In particular the areas of practice and the location information are used by the matching system to cross reference consumer cases." *Id.* Thus, MDx's invalidity contentions essentially admit that the Health Grades References are cumulative of prior art that was considered by the Patent Office, which makes this undisclosed prior art *per se* not material.

In sum, MDX's allegations concerning the materiality of the Health Grades References are merely conclusory and are contradicted by MDx's proposed amended Answer, the '060 Patent and its file history, and MDx's own invalidity contentions in this case. They should not be accepted as true by the Court. *Veney*, 293 F.3d at 730. Thus, MDX's proposed amended Answer fails to state a claim upon which relief can be granted and its motion to amend should be denied.

**B.      Intent to Deceive Is Not the Single Most Reasonable Inference to Be Drawn from the Non-Disclosure of the Health Grades References**

Although intent may be averred generally, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949-50, 1954. MDx's allegations concerning the inventors' purported intent are conclusory, unsupported recitations of the intent prong of the inequitable conduct standard (Answer at ¶¶25, 43), and are insufficient under *Iqbal*. *Id*. at 1954.

Moreover, under *Therasense* the intent to deceive must be "the single most reasonable inference able to be drawn." 649 F.3d 1290. Here, MDs asks that an inference of intent to deceive be drawn simply from the allegations that the inventors knew about the Health Grades References and decided not to submit them to the Patent Office. Even assuming for arguments sake that this were true – and it is not – it is not sufficient to infer intent to deceive the Patent Office. *See Id.* (noting "[p]roving that the applicant knew of a reference, should have known of

its materiality, and decided not to submit it to the PTO ***does not prove specific intent to deceive***.") (emphasis added).

MDx's Proposed Amended Answer also asks that intent to deceive be inferred from the fact that Health Grades disclosed other prior art to the Patent Office and made arguments to the examiner to distinguish its claims from the cited prior art.  If these facts were enough to infer intent to deceive, then the plague the Federal Circuit seeks to constrain would continue unabated because intent to deceive the Patent Office would be inferred in every patent infringement case, given that practically every patent applicant discloses prior art to the Patent Office and necessarily argues to distinguish the prior art from its pending claims.  To allow such an inference would go directly against the Federal Circuit's holding in *Therasense* and pave the way for an inequitable conduct defense creeping into every patent case.

In sum, MDx's Proposed Amended Answer does not contain any allegations that would allow this Court to draw any inference of intent to deceive, let alone draw an inference that is the single most reasonable inference to be drawn.  MDx's inequitable conduct claim is insufficient to survive a motion to dismiss.  As such, MDx's motion to amend should be denied as futile.

## V.    CONCLUSION

MDx's allegations concerning the Health Grades references do not allow "the Court to draw the reasonable inference" that these references are "but-for" material – indeed, MDx's allegations concerning the purported materiality of these references are contradicted by the '060 Patent, its file history, and MDx's own invalidity contentions.  *See Pfizer*, 2011 U.S. Dist. LEXIS 90021, at *53-54.  Further, MDx's allegations do not allow the Court to infer that the inventors withheld the references with the specific intent to deceive the Patent Office, as required by Rules

8(a) and 9(b).  *Nemet*, 591 F.3d at 255.  In short, the MDx allegations are simply insufficient, and this Court should not permit MDx to drag the inventors' integrity through the mud on such threadbare allegations.

Thus, for the reasons stated above, Health Grades respectfully requests that the Court deny MDX's motion to amend its answer to assert a defense of inequitable conduct.

Respectfully submitted this 14th day of November, 2011.

ROTHGERBER JOHNSON & LYONS LLP


*s/ Jesús M. Vazquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email:  kkosto@rothgerber.com
            jvazquez@rothgerber.com
            jphipps@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 14, 2011, I electronically filed the foregoing **HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO "MDX MEDICAL, INC.'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 16(B)(4) TO MODIFY SCHEDULING ORDER AND RULE 15(A)(2) FOR LEAVE TO AMEND ANSWER"** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Mark Jon Rosenberg
David Chunyi Lee
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
Email: sstimpson@sillscummis.com
Email: mrosenberg@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: ridley@wtotrial.com

Ramona L. Lampley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: lampley@wtotrial.com

*s/ Jesús M. Vazquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email:  kkostolansky@rothgerber.com
            jvazquez@rothgerber.com
            jphipps@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*