**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

  Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

  Defendant.

---

**MDX MEDICAL, INC.'S MOTION TO COMPEL DISCOVERY AND
FOR AN AWARD OF FEES AND COSTS PURSUANT TO RULES
37(A)(3)(B) AND 37(A)(5) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

---

Pursuant to Rules 37(a)(3)(B) and 37(a)(5) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx") respectfully moves for an order compelling Plaintiff Health Grades, Inc. ("Health Grades") to answer interrogatories and produce documents, and for an award of reasonable expenses incurred by MDx in making this Motion.[1]  Pursuant to D.C.COLO.LCivR 7.1A, the undersigned conferred on at least October 21, 2011, October 24, 2011, October 25, 2011 and November 11, 2011, with

---

[1] Counsel for MDx was very reluctant to file this Motion the day before a major holiday.  The Motion was ready to be filed last week.  As counsel for Health Grades was advised, however, despite our sincere desire to avoid filing so close to the holiday, filing on this day was considered necessary.  First, the delay in filing now as opposed to last week was to accommodate Health Grades' assurance that they would have electronic search results before Wednesday of this week, so that this issue might be removed from this Motion.  And the Motion was not delayed further until next week because MDx hopes that filing this week will allow the Court to schedule the hearing on December 2 when both parties will be before the Court on two other motions.

counsel for Health Grades.   On October 25th and November 11th, counsel for Health Grades indicated that Health Grades opposes this motion.[2]

On June 8, 2011, Defendant MDx Medical, Inc. ("MDx") served its first sets of interrogatories and document requests.   Health Grades has failed to provide substantial information and documents called for in those requests.   After weeks of negotiations and promises by counsel for Health Grades, and now five and a half months after the requests were served, Health Grades has still utterly failed to comply with its obligations in response to these discovery requests.   Even the promises of discovery by counsel for Health Grades, made and confirmed in writing months ago, remain unfulfilled.

Health Grades has also refused to cooperate with regard to MDx's second round of discovery requests.   On September 7, 2011, MDx served its first requests for admission, and its second sets of interrogatories and document requests.   After obtaining a considerable extension, Health Grades initially refused to provide substantive answers to requests for admission and interrogatories, and failed to produce critical responsive documents.   Although Health Grades subsequently provided some supplemental responses and document production, vast areas of discovery remain unfulfilled.

Health Grades has also refused to reasonably cooperate with regard to electronic discovery.   Per agreement of the parties, and as provided by Section 6(g) of the Scheduling Order (Dkt. # 34), on September 8, 2011 and October 27, 2011, counsel for MDx provided counsel for Health Grades with a list of custodians and search terms for production of Health Grades

---

[2]  Counsel for Health Grades has indicated that they do not believe a full conferral has been completed.  MDx disagrees because the parties' counsel have conferred numerous times over the last several months, as described below herein.  MDx sees this argument by Health Grades as yet another attempt to further delay their discovery obligations in this case.

electronic discovery.  According to the parties' agreement and the Scheduling Order, Health Grades was to perform the search and either produce the results, or explain to opposing counsel why it believes the search it conducted resulted in too much data to produce.  After repeated inquiries, and now ***nearly eleven weeks after the initial search terms were provided***, not a single electronic record has been produced.[3]

Health Grades and its counsel have engaged in a consistent pattern of delay and obfuscation.  Health Grades' discovery produced to date is ridiculously small and missing entire, vast areas of relevant information.  MDx was recently forced to postpone inventor depositions scheduled for next week, because Health Grades simply would not produce the necessary documents.  With less than two months left in fact discovery, MDx is left with no choice but to request an order compelling Health Grades to cooperate and quickly produce the relevant documents and information, and awarding MDx its fees and costs associated with this Motion.

## I.   MDx's FIRST SET OF INTERROGATORIES[4]

MDx's first set of interrogatories (nos. 1-6) is attached as Exhibit A, and Health Grades' responses and objections are attached as Exhibit B.  Interrogatories 1 through 4 addressed in this section are relevant at least to MDx's defense and counterclaim of invalidity (Dkt. # 7, MDx's Answer, Affirmative Defenses, Counterclaim, and Demand for Jury Trial, pp.4-5), including,

---

[3]  As explained below in Section IV, on the eve of this motion to compel and knowing it was about to be filed, Health Grades finally provided MDx with a list of the number of document "hits" for certain search terms, but no date when Health Grades would produce the documents. Given the significant, unjustified delay in providing even the search result list, and Health Grades' failure to indicate when the responsive documents will be produced, we are forced to raise the issue here.

[4] Sections I, II, and III of this Motion address individual sets of discovery requests, while Sections IV and V address particular issues that span different sets of discovery requests.

*e.g.*, invention date, prior art, and invalidity under 35 U.S.C. §§ 102(a), (e), and (g), and 35 U.S.C. § 103(a).

Interrogatory 1

Health Grades failed to identify each person involved in the conception and reduction to practice of the alleged invention on a claim-by-claim basis.  As early as August 3, counsel for Health Grades agreed to supplement its interrogatory response to provide this information (Exhibit C).  On October 3, Health Grades was still "investigating" the reduction to practice (Exhibit D, page 4); and after receiving an extension to October 20, Health Grades provided no supplemental interrogatory response at all.

Interrogatory 2

This interrogatory asks for identification (and through a corresponding document request, production) of all prior art.  Health Grades' response claimed it knew of no prior art other than the art before the Patent Office (Exhibit B, page 8).

Health Grades' sworn response to this interrogatory, however, was false.  MDx has since learned (by independently obtaining Health Grades' SEC filings) that Health Grades itself had prior art products and services – ones that appear to have had many of the claim elements. Health Grades has not only been trying to hide this prior art from discovery in this case, it also withheld it from the Patent Office when it fraudulently obtained this patent.

As early as August 3, Health Grades agreed to provide documents sufficient to show its earlier prior art website (Exhibit C, "Rog 4" discussion), but now several months later it has still failed to do so, nor has it supplemented its response to this interrogatory.

<u>Interrogatory 3</u>

Interrogatory 3 seeks information on the art area pertaining to the '060 Patent and the level of ordinary skill in the art, including factual support.  This is important discovery for a number of issues.  *See Storage Tech. Corp. v. Quantum Corp.*, 370 F. Supp. 2d 1116, 1123 (D. Colo. 2005) ("the level of ordinary skill in the pertinent art" is a factual consideration when determining obviousness); *In re Tzipori*, 316 Fed. Appx. 975, 978 (Fed. Cir. 2008) (same); *Cook Biotech, Inc. v. Acell, Inc.*, 460 F.3d 1365, 1372-1373 (Fed. Cir. 2006) (determining "how a person of ordinary skill in the art would have understood [the] claim terms at the time of the invention" is necessary for claim construction.)

Health Grades refused to provide the requested information.  (Exhibit B, pp.9-10; Exhibit C, "Rog 3" discussion).  While MDx is willing to wait for expert reports on the proposed level of ordinary skill, Health Grades should be required to identify the facts relevant to this issue (*e.g.*, alleged inventor education and experience levels, the same for others working on the same or related technologies, etc.).

<u>Interrogatory 4</u>

Interrogatory 4 requests evidence of alleged secondary considerations relating to obviousness, including all evidence of the required nexus.  *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011) ("For objective evidence of secondary considerations to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention.") (*quoting Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010)); *Western Union Co. v. MoneyGram Payment Sys.*, 626 F.3d 1361, 1372 (Fed. Cir. 2010) ("Our case law clearly requires that the patentee must establish a nexus between the evidence of

commercial success and the patented invention.").  In response, Health Grades alleged copying by MDx (Exhibit B, page 11), without identifying any evidence supporting this contention; and Health Grades recited various publications (Exhibit B, pages 11-14) without providing any information on the required nexus.  On August 3, Health Grades agreed to provide the missing information (Exhibit C).  Despite this and further promises by Health Grades, including an express promise to produce the information on October 7 and (after another extension) on October 20 (Exhibit D, page 4), Health Grades failed to respond.

## II.    MDx's SECOND SET OF INTERROGATORIES

MDx's second set of interrogatories (nos. 7-9) is attached as Exhibit E, and Health Grades' responses and objections are attached as Exhibit F.  Interrogatory 8 addressed in this section is relevant at least to MDx's defense and counterclaim of invalidity (Dkt. # 7, pp.4-5).

Interrogatory 8

Interrogatory 8 asks for reasons why Health Grades disagrees with the MDx invalidity contentions.  Those detailed contentions are attached as Exhibit G.  Health Grades refuses to provide any of its reasoning, claiming that the invalidity contentions are overly broad, unduly vague, and insufficient.  But the MDx invalidity contentions, which employ only eleven prior art references, are more than sufficient.  *Compare, e.g.*, *MedImmune, LLC v. PDL BioPharma, Inc.*, No. C 08-5590 JF (HRL), 2011 U.S. Dist. LEXIS 1721, at *21 (N.D. Cal. Jan. 7, 2011) (finding no issue with invalidity contentions which grouped more than a hundred references into prior art that "anticipated and/or made obvious", noting that invalidity contention "Rule 3-3(b) can be satisfied even where anticipation and obviousness are described using an 'and/or' clause"); *Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.,* No. C04-05385 JW (HRL),

2007 US Dist. LEXIS 97464, at *10-11 (N.D. Cal. Mar. 28, 2007) (finding compliance with Rule 3-3(b) even when invalidity contention "groups together references in an approach that results in literally billions of different possible combinations."). Therefore, Health Grades should be ordered to respond, as this interrogatory goes to the heart of the validity issue.

## III.   MDx's FIRST SET OF DOCUMENT REQUESTS

MDx's first set of requests for production (nos. 1-18) is attached as Exhibit H, and Health Grades' responses and objections are attached as Exhibit I.

On August 3, counsel for Health Grades represented that it had provided *all responsive documents other than privileged and work product documents* (Exhibit C). By that date, however, MDx had received only a trivial production in response to these document requests,[5] and as late as October 3 (about four months after service of these requests) counsel for Health Grades was claiming that Health Grades was "still searching" for responsive documents (Exhibit D). On October 26 and November 9, Health Grades made supplemental productions (Exhibit K), but the production is still missing critical documents.

Therefore, many months after these requests were served, Health Grades has *agreed to produce* (Exhibit D, page 3) but has *failed to produce*, at least the following:

- Prosecution histories of all related Health Grades patent applications (Request 1).
- Non-patent literature submitted to the Patent Office with Health Grades' Information Disclosure Statements (Request 1).
- Foreign counterpart patent prosecution materials, if any (Request 1).
- Documents showing how the Health Grades current website operates (Requests 2, 3).

---

[5] Health Grades had produced only 1383 pages in response to MDx's eighteen requests for production. (Exhibit J).

- All documents showing competitor information and products referenced in Health Grades' SEC filings (Request 7).[6]
- All documents showing the prior art Health Grades website (Requests 7, 9).
- Prior art physician research comparison reports referenced in Health Grades' document production (Request 7).
- Articles relating to secondary considerations (Requests 11, 17, 18).
- All damages documents (addressed in Section V, *infra*).

Health Grades has been promising to produce, but failing to produce, all these documents since July.  (Exhibits C, D).  MDx requests an order for prompt and complete production by Health Grades.

**IV.   <u>MDx's ELECTRONIC DISCOVERY REQUESTS</u>**

At the beginning of this case, the parties agreed, and the Court expressly included in the Scheduling Order, that the parties would exchange lists of proposed custodians and search terms, and the receiving party would perform an initial search and either produce the responsive documents or advise opposing counsel if the resulting amount of data was too large (Dkt. # 34, Scheduling Order, Section 6(g)).

On September 8, counsel for MDx provided a list of custodians and search terms (Exhibit L, pages 3-4).  For many weeks, counsel for Health Grades stated that the search would be too broad and refused to perform the search (Exhibit D, p.5).  On October 27, counsel for MDx provided further search terms (Exhibit O).  Only recently, and only on threat of this motion,

---

[6]  The documents responsive to this request would also be covered by MDx's specific interrogatories and document requests relating to Health Grades' claimed damages, as explained below in Section V.

Health Grades performed a partial search, with no explanation why some of the search requests were ignored or changed. [7]

Health Grades' refusal to provide MDx with even a shred of information regarding the results of the search until the very eve of this motion (knowing the motion was soon to be filed), was inexcusable, and is now compounded by the continuing and total lack of any actual production, Health Grades' continuing failure to even test the entirety of the searches requested, and Health Grades' refusal to commit to produce any electronic discovery by a date certain.

Health Grades should be ordered to produce all the responsive documents within ten days based on a search for all the terms requested by MDx.[8]

---

[7] On November 17, 2011, Health Grades counsel asserted that his client would have the search results by early the following week (Exhibit M).  At 6:10pm ET on the 22nd, Health Grades finally provided MDx with a one-page document showing the number of document "hits" for some of the search requests (Exhibit N).  But Health Grades did not perform some of the requested searches.  For example, consistent with its ongoing refusals to provide adequate damages discovery, Health Grades did not search for the term "profits" (***despite its request in this case for lost profits***); nor was any search done on the old computer of one of the inventors (Exhibits L, N).  Health Grades also changed a critical term related to its own prior art – "physician research comparison report" – and searched "physician comparison report" instead (Exhibits N, O). No explanations for these critical failures were offered by counsel for Health Grades.  Moreover, despite a specific request for a date when production would be made, Health Grades refused to commit to production by any given date.

[8] On November 9, 2011, Health Grades provided its request for electronic searching.  MDx is promptly complying with these search requests.  MDx has also requested that Health Grades run the same searches on its electronic files, but so far Health Grades is refusing to commit to this search, either.  While sufficient conferral has not occurred to make this request part of this motion to compel, we expect Health Grades to take the same "do nothing" approach to these requests as it has with other electronic discovery requests, and accordingly we expect a second motion to compel may be necessary.

**V.**   **MDx's DAMAGES DISCOVERY REQUESTS**

Interrogatories

On June 8, Health Grades was requested to describe in detail its damages claim (Exhibit A, interrogatory 6). Health Grades' response provided only objections, and stated in conclusory fashion only that "Health Grades is entitled to no less than a reasonable royalty and/or lost profits for MDx's use of the infringing website" – not a single fact was provided supporting any Health Grades damages claims, nor would Health Grades even commit to a theory of damages (Exhibit B). The parties later agreed that, although some of this information was in the possession of MDx and had not yet been produced (it has since been produced), Health Grades would respond based on the information that it had in its possession (Exhibit C). The supplement was promised on August 3 (Exhibit C), and again on October 3 (Exhibit D), but no supplementation has ever been provided. For MDx to defend against any Health Grades damages claim, Health Grades must respond to this interrogatory and explain its lost profits theory, including market shares, competition, non-infringing substitutes, among other things, *see Panduit Corp., v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (1978), and explain its reasonable royalty theory, including royalty base and customary royalty rates, among other things. *Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970).

MDx's second set of interrogatories further inquired as to damages issues (Exhibit E, interrogatories 7 and 9). But again, Health Grades has failed to provide any supplemental interrogatory responses (Exhibit F).

<u>Document Requests</u>

Since early June, MDx has been trying to get Health Grades to produce damages documentary discovery.  But Health Grades' production to date has been grossly insufficient.

Document Request 15 sought documents and things evidencing all Health Grades' alleged damages, whether reasonable royalty or lost profits (Exhibit H).  On August 3, counsel for Health Grades agreed to produce all responsive documents other than those withheld on grounds of privilege or work product (Exhibit C).  On October 3, after repeated inquiries, Health Grades agreed again to produce these documents (Exhibit D).  But now, five and a half months after the request and less than two months before the close of fact discovery, damages production has been meager and it is clear that all of Health Grades' responsive documents have not been produced.

Similarly, MDx's second set of requests for production (nos. 19-25) were also addressed to damages (Exhibit P, all requests except 23).  Not all of these documents were produced, either. (Exhibit Q, Declaration of D. Lee).  For example, the following documents have not been received:

- documents showing detailed accounting of Health Grades revenues derived from advertisers on the www.healthgrades.com website, and of any other revenues that Health Grades may use to support its damages claim (Requests 15, 19),

- documents showing detailed accounting of Health Grades expenses and other costs associated with providing advertisements on the www.healthgrades.com website, and of any other costs and expenses Health Grades may use to support its damages claim (Requests 15, 20),

- documents showing Health Grades' marketing efforts to reach potential advertisers who may wish to place advertisements on the www.healthgrades.com website, and of any other marketing efforts Health Grades may use to support its damages claim (Requests 15, 21), and

- documents showing analysis of total market for placing advertisements on healthcare websites, and any other market share and competition analysis Health Grades may use to support its damages claim (Requests 15, 22).

These documents are clearly covered by MDx's damages discovery requests.

<u>Patent Marking and Notice Discovery Requests</u>

Absent proof that Health Grades marked its product with the patent number, or gave notice of the alleged infringement, Health Grades may not obtain damages prior to the filing of the complaint.  35 U.S.C. § 287.

On June 8, MDx served document request 10, calling for Health Grades' proof of marking or notice (Exhibit H).  Although Health Grades has provided some evidence of marking, it has not provided any evidence of notifying MDx about the issued patent.

MDx also served requests for admission (nos. 1-3) on this topic (Exhibit R).  Health Grades at first simply refused to respond to Request 1, gave a frivolous non-response to Request 2,[9] and denied Request 3 without support (Exhibit S).  Although Health Grades supplemented to provide a response to Request 1, its new response to Request 2 still did not answer the request, and Health Grades still denied Request 3.  (Exhibit T).  MDx's interrogatory 9 asked Health

---

[9] Notice of a patent **application** is not legally sufficient under Section 287.  *Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 186-187 (Fed. Cir. 1994) ("The Supreme Court in Dunlap v. Schofield, 152 U.S. 244, 38 L. Ed. 426, 14 S. Ct. 576 (1894), held that the 'clear meaning' of this section is that a patentee cannot recover damages absent marking or notice to the 'particular defendants by informing them of his patent and of their infringement of it.'").

Grades to explain any denial provided in response to the requests for admission on the marking issue (Exhibit E).   Although Health Grades denied Request 3, it gave no explanation for the denial (Exhibit F).

## VI.   **FEES AND COSTS**

Health Grades has been extremely uncooperative and dilatory in performing its discovery obligations.   Not only has it interposed meritless objections to virtually all the MDx discovery requests, it has refused to produce information and documents even after agreeing to do so – resulting in months of needless delay.   In addition, Health Grades has refused to comply with the Court's Scheduling Order regarding production of electronic discovery.[10]

Federal Rule of Civil Procedure 37(a)(5) provides that, if a motion to compel is granted or discovery is produced after the motion was filed, absent good faith effort at resolution or substantial justification, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."   Health Grades' refusals to comply with discovery are unjustified, and accordingly MDx respectfully requests an award of all its fees and costs associated with this motion.

---

[10] MDx vigorously objects to any extension of the fact discovery deadline.   The very pendency of this litigation alone is beneficial to Health Grades and harmful to MDx, as MDx's potential investors and business partners may naturally be concerned with the pendency of a patent litigation.   Timely adjudication of this case, on the merits, is imperative for MDx.

**VII.    <u>CONCLUSION</u>**

For all the foregoing reasons, we respectfully request an order (a) compelling proper and complete responses to the MDx interrogatories within ten days; (b) compelling production of all documents responsive to the MDx documents requests within ten days; (c) compelling Health Grades to complete the search requested in Exhibits L and O, and produce all responsive documents within ten days; and (d) awarding MDx all fees and costs associated with this Motion.

Dated:  November 23, 2011                    Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
Mark J. Rosenberg
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail: sstimpson@sillscummis.com
E-mail: mrosenberg@sillscummis.com
E-mail: dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Ramona Lampley, Atty. No. 37288
Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com
E-mail: lampley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on <u>November 23, 2011</u>, I electronically filed the foregoing MDX MEDICAL, INC.'S MOTION TO COMPEL DISCOVERY AND FOR AN AWARD OF FEES AND COSTS PURSUANT TO RULES 37(A)(3)(B) AND 37(A)(5) OF THE FEDERAL RULES OF CIVIL PROCEDURE with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez , Jr.**
  jvazquez@rothgerber.com, phenke@rothgerber.com

- **Kris John Kostolansky**
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- **Jeffrey David Phipps**
  jphipps@rothgerber.com, kmeans@rothgerber.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Mark Jon Rosenberg**
  Mrosenberg@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

- **Ramona L. Lampley**
  lampley@wtotrial.com, keitlen@wtotrial.com

_s:/_   David C. Lee_____