# EXHIBIT L

# David C. Lee

**From:** Scott D. Stimpson
**Sent:** Thursday, September 08, 2011 6:32 AM
**To:** Jesus M. Vazquez Esq. (jvazquez@rothgerber.com)
**Cc:** Kostolansky, Kris J.; David C. Lee
**Subject:** Discovery issues

Jesus:

This is with regard to various discovery issues in our case. It identifies issues we see with the HG Infringement Contentions, document production, and interrogatories, proposes a limited term search for the HG electronic documents, and addresses a few other discovery-related issues.

<u>INFRINGEMENT CONTENTIONS</u>

We have the following questions with regard to the infringement contentions, and would appreciate supplementation or explanation as soon as possible:

(1) Inducement and contributory infringement are both alleged for claims 1-14, but those are method claims so we are confused about how these allegations are being made. Are you alleging that the users somehow directly infringe these method claims? We need clarification please if HG will continue to make these assertions.

(2) We do not understand what basis there could be for contributory infringement allegations on any of these claims, and there is no showing of this in the Contentions. Is it really the HG position that every substantial use of the MDx website infringes the claims (no substantial non-infringing uses)?

(3) As we have mentioned already, the HG position that MDx has conceded literal infringement of every element except the comparison ratings is baseless. We offered you the opportunity to do these equivalents analyses properly, but so far you have declined that invitation. Can you please let us know if you will be supplementing on this issue or not, and if so when? We want to be cooperative, but it has been weeks since this analysis was due and we will need the supplementation relatively soon, please, or we will take the position that all other equivalents positions have been waived.

(4) As I have also mentioned to you before, we will not allow HG to supplement to add new bases of alleged infringement that should have been in these Contentions. You have included several "catch-all" phrases purporting to provide only some examples of how claim elements are met. So there is no misunderstanding later, we again remind you that we will vigorously object to any attempt to identify other parts of our website that are not specifically identified in these Contentions.

<u>HG DOCUMENT PRODUCTION</u>

Thank you for sending the documents we have received to date, but there seem to be some

11/17/2011

gaps and we have a variety of questions and concerns.

We have been advised that HG is not holding back any responsive documents other than on grounds of privilege and work product, and we understand that a reasonable search has been conducted and we thus have in our possession now all non-privileged documents located in that search. If that is not the case, please let us know immediately.

We also have the following specific questions:

a. Request 1: Please produce file histories of the '060 Patent's remaining continuing applications, all non-patent literature submitted with information disclosure statements, and any foreign counterparts.
b. Request 2: Please produce documents showing how the Health Grades website makes the membership determination required by claim 9.
c. Request 7: Health Grades' SEC 10-K filings (e.g., 2003, 2004) that pre-date the '060 Patent refer to early Health Grades products as well as several competitor products.  Please produce any documents showing these prior art Health Grades and competitor products.  Also, HG1079 refers to physician research comparison reports launched 3/28/03 -- please product any such prior art reports.
d. Request 9: Why is this entire production redacted?
e. Your response to interrogatory 4 says that the "commercial embodiment" of the current website was launched in the "summer of 2005." We need the earliest documents showing disclosures of the concept, please. These were called for in our Requests 7, 9.
f. In July, we agreed that we would be provided documents sufficient to show the HG website before and after the launch of the new website in 2005. It is now September. Where are they? Requests 2, 3, 7. See also interrogatory 2.
g. In July, HG agreed to produce information relating to its damages claims that are in its possession or control, but we have nothing. Where are they? We need everything relating to your claim for lost profits, including documents in the past and up to now showing the HG profit margin,  revenue, all expenses and how they are allocated,  user traffic, physician membership trends, etc. If you are going to pursue damages, and particularly lost profits, there is a great deal of documents that must be produced promptly. Requests 8, 12, 15.
h. You identify a number of articles in response to our interrogatory 4. Have they all been produced? If not, where are they? Requests 11, 17, 18.
i. Does HG not have any documents or evidence showing when  marking  supposedly began? Request 10.

PRIVILEGE LOGS

Shall we agree to exchange them on September 23?

HG INTERROGATORY RESPONSES

By your email of August 3, about a month ago, we were promised additional information in response to our interrogatories, including:

- Interrogatory 1: Identities of those involved in the reduction to practice. We still have not received

11/17/2011

this information.

- <u>Interrogatory 4</u>: Information on nexus and copying allegations. While you said you would supplement to identify this information after receiving our documents, you have received them now, and in any event we do not understand why the evidence of any nexus to the "national authorities" and "testimonials" cannot be identified immediately. How does <u>EACH</u> of these press articles and testimonials connect to the patent claims? If you are going to attempt to use any of this, you have to show a nexus, and absent a proper response to this interrogatory we will object to any such attempts later.

- <u>Interrogatory 6</u>: We agreed in July that facts in HG's possession or knowledge relating to the damages claim will be provided. It is September, and we have nothing. Where is this information?

<u>REQUESTED SEARCH TERMS</u>

Our proposed searches for HG electronic data are below. You will see we kept them reasonable, and we do not expect overwhelming gigabytes of responsive data. We expect that your proposed searches will be of similar scope – this is a case that does not require many gigabytes of electronic production.

In the proposed search terms below, an exclamation point indicates that any ending (or no further ending) should be captured. In all search terms, letters before the beginning of the term should be picked up. So, for example, "vitals!" should pick up "vitals," "vitals.com" and "<u>www.vitals.com</u>".

(1) Please search the files of all three named inventors for the following terms:

- "compare!"

- "prior art"

- "vitals!"

- "060"

-  "patent application"

(2) Please search the files of Allen Dodge, John Neal, and the HG general servers for the following terms:

- "Profits"

- "MDx"

- "vitals!"

- "competitor!"

- "royalty!"

11/17/2011

Please let us know in the next week or so the amount of documents uncovered from these searches, and then we can have them produced.

If HG proposes extensive searching, we reserve the right to object to that searching, or in the alternative to expand our search requests. We also reserve the right to request further searching after some discovery has been taken and other issues emerge, and of course we will not object to similar requests from HG should the circumstances justify it.

HG DOCUMENT REQUESTS

As clarification, we did not agree that the HG document requests, with all their many varying subparts, were only 13 requests. We did agree, however, that we would object and/or respond to them all, and that we would not refuse to respond to any of this first set of requests on the grounds that they exceeded the allowed number of requests.

We look forward to hearing from you soon.

Regards.

Scott



11/17/2011