## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 11-cv-00520-PAB-BNB

HEALTH GRADES, INC.,

     Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

     Defendant.

---

## PLAINTIFF HEALTH GRADES, INC.'S SUPPLEMENTAL RESPONSES TO DEFENDANT MDX MEDICAL, INC.'S INTERROGATORY NOS. 8 AND 9

---

Plaintiff Health Grades, Inc. ("Health Grades") hereby submits its supplemental responses, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, to Defendant MDx Medical, Inc.'s ("MDx") Interrogatory Nos. 8 and 9 (originally contained within MDx's "Second Set of Interrogatories (NOS. 7-9)")("Defendant's Interrogatories") as follows:

<u>GENERAL OBJECTIONS</u>

1.     Health Grades objects to the definitions and instructions set forth in Defendant's Second Set of Interrogatories (NOS. 7-9) to the extent they are inconsistent with, seek to impose obligations not required by, or seek to expand the scope of permissible discovery under the Federal Rules of Civil Procedure, including but not limited to Rule 26(a)'s expert disclosure requirements, the Local Rules of this Court, and any pretrial scheduling order of the Court.

2.     Health Grades objects to Defendant's Interrogatories to the extent they seek information that is subject to the attorney-client privilege, that evidences or constitutes attorney work product, that is the subject of confidentiality agreements with third parties, that is the subject of a protective order in any separate proceeding, or that otherwise is not discoverable or is the subject of any other privilege, whether based upon statute or recognized at common law.

C:\Documents and Settings\jvazquez\Desktop\HealthGrades\HG Supp Resp to ROGs 8 and 9.DOC


EXHIBIT
B

3.      Health Grades objects to Defendant's Interrogatories to the extent that they are overly broad, unduly burdensome, seek irrelevant information, or are not reasonably calculated to lead to the discovery of admissible evidence.

4.      Health Grades makes the specific objection with respect to certain interrogatories that they are vague and ambiguous insofar as they do not describe with reasonable particularity the information being sought.  Since the scope of such interrogatories is in question, Health Grades reserves the right to object to such interrogatories as overly broad and unduly burdensome, as not reasonably calculated to lead to the discovery of admissible evidence, or as seeking irrelevant information once the scope of such interrogatories is clarified.

5.      Health Grades objects to Defendant's definition of "document" to the extent it includes any items beyond the scope of the Federal Rules of Civil Procedure.

6.      Health Grades objects to Defendant's Interrogatories to the extent they seek information already in Defendant's possession or equally accessible to Defendant, or information which is a matter of public record.

7.      Health Grades' responses set forth below and/or production of documents in connection therewith in no way limit the generality of the foregoing General Objections, and are not to be construed as a waiver of the foregoing objections, any specific objections stated in the following responses, or Health Grades' right to object to any additional, supplemental, or further discovery request of Defendants.

8.      Health Grades has answered Defendant's Interrogatories based upon its understanding of the interrogatories, and to the best of its knowledge and recollection as of the date the answers are served.  Health Grades expressly reserves the right to provide supplemental answers should that become appropriate.  All answers provided by Health Grades in response to Defendant's

Interrogatories are produced without waiver of Health Grades' right to supplement its answers as responsive information becomes available.

9.      Any statement by Health Grades in any of the following responses to Defendant's Interrogatories that it will produce responsive documents is only a statement that any such documents that can be located after a reasonable search will be produced, made available for inspection, or, if privilege is asserted, listed on a privilege log.  Such a statement is not a representation that any such responsive documents exist.

10.      All documents produced by Health Grades in connection with Health Grades' responses to Defendant's Interrogatories are produced without waiver of, or prejudice to, any challenge by Health Grades to the relevancy or admissibility of such documents in this case.

11.      The General Objections set forth above are made as to matters that are clearly objectionable from the face of the interrogatories.  These objections are made without prejudice to and without waiver of Health Grades' right to object on all appropriate grounds to the specific information sought by each Interrogatory.

12.      Health Grades generally objects to Defendant's Interrogatories as premature to the extent they seek information that is more properly provided through expert reports or expert depositions.  Health Grades will provide expert disclosures in accordance with the disclosure requirements of the applicable rules and Court Order.

13.      Health Grades generally objects to Defendant's Interrogatories as improper to the extent they require or seek a legal conclusion.

14.      Health Grades objects to of Defendant's Interrogatories to the extent it seeks confidential or trade secret business information.  Health Grades will provide such requested information pursuant to the terms of a Protective Order entered by the Court.

Subject to the General Objections outlined above and the more specific objections set forth below, Health Grades responds as follows:

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

### Interrogatory No. 8:

If Health Grades disagrees with any one or more of the bases for patent invalidity set forth in MDx's Invalidity Contentions, Supplemental Invalidity Contentions, and accompanying documents (served on August 19, 2011, and August 26, 2011 and as may be later supplemented, "Invalidity Disclosures"), for each such disagreement set forth in full and complete detail all reasons why MDx's contentions are allegedly incorrect, including but not limited to (1) a full and complete explanation of all points of disagreement with the assertions in MDx's Invalidity Disclosures; (2) a full and complete explanation of why each and every asserted reference (or combination of references) does not invalidate the Patent-in-Suit pursuant to 35 U.S.C. § 102 and/or § 103; and (3) a full and complete explanation of why the Patent-in-Suit is not valid pursuant to 35 U.S.C. §112.

### Supplemental Response to Interrogatory No. 8:

Health Grades incorporates herein its General Objections. Health Grades objects to this request as overly broad, unduly burdensome and premature. MDx's Invalidity Disclosures are incomplete and require supplementation as requested by Health Grades in its letter to counsel for MDx dated September 2, 2011. Health Grades objects to this request to the extent it calls for information protected by the attorney-client privilege or the attorney work-product doctrine. Health Grades objects to this request to the extent it requests information already within in the possession of Defendant. Health Grades objects to this request to the extent it calls for confidential, proprietary or trade secret information before the entry of a suitable Protective Order. Health Grades additionally objects to this request to the extent it calls for legal conclusions. Health Grades further objects to this request because it calls for information that will be the subject of expert reports, and is therefore premature.

Subject to and without waiving the General or Specific Objections, Health Grades responds as follows:

C:\Documents and Settings\jvazquez\Desktop\HealthGrades\HG Supp Resp to ROGs 8 and 9.DOC

1)   **MDX Has Not Provided Sufficient Proof that the Non-Patent References Qualify as Prior Art:**

MDX bears the burden to prove that each of its prior references qualify as prior art under 35 U.S.C. §102.  MDX will not be able to meet its burden.  To the extent that MDX intends to rely on oral testimony to prove that something qualifies as prior art, each element of this testimony must be corroborated.  If it is not corroborated, it is irrelevant and inadmissible. Health Grades has not yet had an opportunity to depose the sole witness that MDX has identified will support its invalidity defense – that deposition is set to occur on December 15, 2011.  Health Grades reserves the right to supplement this response after reviewing the transcript of the deposition. Thus, the following response is based on MDX's invalidity contentions to date and on the documents produced by MDX in connection with its invalidity contentions and disclosures.

MDX alleges that the materials set forth below qualify as prior art under §102(b); Health Grades disagrees.  MDX has not provided sufficient proof that any of the non-patent prior art references qualify as prior art under 35 U.S.C. §102.  Specifically:

i)   **Public Use of** www.Healthgrades.com (the HG Report): MDX alleges that this qualifies as prior art under §102(b); Health Grades disagrees.  First, there are actually three different Health Grades references (see below). Second, MDX has not provided sufficient proof that any of them were on sale, in public use, published or patented more than one year before the filing date of the '060 patent as is required by §102(b).  Similarly, MDX has not provided sufficient evidence that this qualifies as prior art under §102(a).

ii)   **Public Use of www.ingenix.com** (the GeoAccess reference):  MDX alleges that this qualifies as prior art under §102(b); Health Grades disagrees.  MDX has not provided sufficient proof that this was on sale, in public use, published or patented more than one year before the filing date of the '060 patent as is required by §102(b).  Similarly, MDX has not provided sufficient evidence that this qualifies as prior art under §102(a).

iii)   **Public Use of www.subimo.com** (the Subimo reference): MDX alleges that this qualifies as prior art under §102(b); Health Grades disagrees. MDX has not provided sufficient proof that this was on sale, in public use,

published or patented more than one year before the filing date of the '060 patent as is required by §102(b).  Similarly, MDX has not provided sufficient evidence that this qualifies as prior art under §102(a).

iv)   **Public Use of** www.healthscope.org (the Healthscope reference):  MDX alleges that this qualifies as prior art under §102(b); Health Grades disagrees.  MDX has not provided sufficient proof that this was on sale, in public use, published or patented more than one year before the filing date of the '060 patent as is required by §102(b).  Similarly, MDX has not provided sufficient evidence that this qualifies as prior art under §102(a).

v)   **Public Use of** www.ratemds.com (the Ratemds reference):  MDX alleges that this qualifies as prior art under §102(b); Health Grades disagrees.  MDX has not provided sufficient proof that this was on sale, in public use, published or patented more than one year before the filing date of the '060 patent as is required by §102(b).  Similarly, MDX has not provided sufficient evidence that this qualifies as prior art under §102(a).

2)   **Invalidity Under 35 U.S.C. §102**:

MDX bears the burden to prove anticipation by clear and convincing evidence.  MDX will not be able to meet its burden.  Anticipation requires that a single piece of prior art disclose all of the elements of a claim.  MDX has not identified a single reference that it contends anticipates any of the asserted claims, let alone specify how a single reference teaches all of the elements of any of the asserted claims.

Rather MDX has made only conclusory statements about anticipation to the effect that the asserted claims of "the '060 Patent [are] anticipated and/or rendered obvious by each of the [1] '369 prior art, [2] the HG Report prior art, [3] the GeoAccess prior art, [4] the Subimo prior art, and [5] the HealthScope prior art, individually in combination with [6] the '233 prior art." MDX says each of these five references anticipate the claims "individual [sic] in combination with the '233 prior art."  This does not make sense -- if MDX has to combine any of these references with U.S. Patent Publication 2002/0038233 ("the '233 publication"), then they do not anticipate the claim as a matter of law.

C:\Documents and Settings\jvazquez\Desktop\HealthGrades\HG Supp Resp to ROGs 8 and 9.DOC

Moreover, MDX has not identified where in each item of prior art each limitation of each asserted claim is found, as it was required to do by N.D. Cal. LR 3-3(c). (The many insufficiencies of MDX's invalidity contentions were addressed in a letter to counsel for MDX dated September 2, 2011.) Health Grades disagrees that any of these references teach all of the elements of any of the asserted claims. In fact, U.S. Patent Publication 2006/0015369 ("the '369 publication") actually teaches away from combining patient-provided information with other kinds of information (e.g., healthcare provider-verified etc.). *See* ¶¶ 22, 38-39.

Additionally, many of the references cited by MDX were considered by the United States Patent Office in its analysis of patentability of the claims at issue and concluded that they were patentable.

Finally, to the extent that MDX offers oral testimony to support any of its invalidity arguments, MDX must have corroboration to support every element of this testimony. If there is no corroboration, the testimony is irrelevant and inadmissible. The following response is based on the MDX's invalidity contentions to date, and on documents produced by MDX in connection with its invalidity contentions and related disclosures. As discussed above, Health Grades is set to depose the sole witness that MDX has identified in support of its invalidity defense on December 15, 2011, and reserves the right to supplement this response after reviewing the transcript of the deposition.

> **a) U.S. Patent Publication 2006/0015369 ("the '369 publication"):** MDX cannot prove that this reference has all of the elements of the asserted claims, including without limitation, the following missing elements:

> - "healthcare provider-verified information": "about the first healthcare provider . . . [that] is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors,

professional appointments, professional memberships, publications, languages, and hobbies;" (referred to hereinafter, for the purposes of this document, simply as "healthcare provider-verified information").

- "patient-provided information": "compris[ing] patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;" (referred to hereinafter, for the purposes of this document, simply as "patient-provided information").

- "third party verified information": "information regarding the first healthcare provider verified by an independent third-party source . . . [that] comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information . . . ." (referred to hereinafter, for the purposes of this document, simply as "third party verified information").

- "report": "creating . . . a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source," (referred to hereinafter, for the purposes of this document, simply as "report").

- "comparison ratings": "wherein the healthcare provider report on the first healthcare provider includes comparison ratings of health care providers . . . ." (referred to hereinafter, for the purposes of this document, simply as "comparison ratings").

- All of the elements from the asserted dependent claims.

Indeed, it is unclear whether MDX actually contends that this reference even contains all of the elements of the asserted claims because it repeatedly states: "The '369 prior art **in combination with other prior art** meets this claim language . . . ." (*See, e.g.* MDX Supplemental Invalidity Chart at 4, 7, 11, and 14.)

b)    **U.S. Patent Publication 2002/0038233 ("the '233 publication"):**  MDX cannot prove that this reference has all of the elements of the asserted claims, including without limitation, the following missing elements:

- healthcare provider-verified information
- patient-provided information
- third party verified information
- report
- comparison ratings
- All of the elements from the asserted dependent claims

Indeed, MDX does not even allege that this reference, which relates to attorneys, meets all of the limitations of the asserted claims.

c)    **The HG Report:**  There are actually three separate references that MDX appears to rely on - each is addressed separately below[1]:

i)    *Physician Quality Report* [UCHC 00000095-110]:  MDX will not be able to prove that this reference has all of the elements of the asserted claims, including without limitation, the following missing elements:

- healthcare provider-verified information
- patient-provided information
- comparison ratings
- report
- All of the elements from the asserted dependent claims

ii)    *Hospital Quality Report* [UCHC 00000081-90]:  MDX cannot prove that this reference has all of the elements of the asserted claims, including without limitation, the following missing elements:

---

[1]    MDX's supplemental invalidity contentions do not use bates numbers to identify the prior art, which makes it impossible to tell for certain exactly what references MDX is relying on.  Health Grades is using its best guess and responding based on its best guess.

C:\Documents and Settings\jvazquez\Desktop\HealthGrades\HG Supp Resp to ROGs 8 and 9.DOC

- healthcare provider-verified information
- patient-provided information
- third party verified information
- report
- comparison ratings of healthcare providers
- All of the elements from the asserted dependent claims

Moreover, Health Grades asserts that the asserted claims do not cover entities that provide healthcare services, but rather are limited to physicians and other healthcare professionals, as more specifically set forth in its Claim Construction Brief and Evidence filed on December 5, 2011 [Doc. #79].

   iii)  *Comparison Report* [UCHC 00000080]:  MDX cannot prove that this reference has all of the elements of the asserted claims, including without limitation, the following missing elements:

- healthcare provider-verified information
- patient-provided information
- third party verified information
- report
- comparison ratings
- All of the elements from the asserted dependent claims

   **d)**  **The GeoAccess reference:**  MDX cannot prove that this reference, which actually seems to comprise several separate references (1: UCHC 0000276-288 & 000301-309; 2: UCHC 0000289; 3: UCHC 0000290-300; 4: UCHC 0000310-321), has all of the elements of the asserted claims, including without limitation, the following missing elements:

- healthcare provider-verified information
- patient-provided information
- third party verified information
- report
- comparison ratings
- All of the elements from the asserted dependent claims

e) **The Subimo reference:** MDX cannot prove that this reference, which actually seems to comprise several separate references (1: UCHC 0000131-142; 2: UCHC 0000143-147), has all of the elements of the asserted claims, including without limitation, the following missing elements:

- healthcare provider-verified information
- patient-provided information
- report
- comparison ratings
- All of the elements from the asserted dependent claims

f) **The Healthscope reference** [UCHC 0000202-206]: MDX cannot prove that this reference has all of the elements of the asserted claims, including without limitation, the following missing elements:

- healthcare provider-verified information
- patient-provided information
- report
- comparison ratings
- All of the elements from the asserted dependent claims

3) <u>**The Remaining References Do Not Teach All of the Elements of the Asserted Claims**</u>

a) **The Ratemds reference** [MDX0000119-123]: MDX cannot prove that this reference has all of the elements of the asserted claims, including without limitation, the following missing elements:

- healthcare provider-verified information
- patient-provided information
- report
- comparison ratings
- All of the elements from the asserted dependent claims

      **b)**     **U.S. Patent Publication 2006/0294138:** MDX cannot prove that this reference has all of the elements of the asserted claims, including without limitation, the following missing elements:

- healthcare provider-verified information
- patient-provided information
- third party verified information
- report
- comparison ratings
- All of the elements from the asserted dependent claims

      **c)**     **U.S. Patent No. 7,167,855:** MDX cannot prove that this reference has all of the elements of the asserted claims, including without limitation, the following missing elements:

- patient-provided information
- third party verified information
- report
- comparison ratings
- All of the elements from the asserted dependent claims

      **d)**     **U.S. Patent Publication 2003/0167187:** MDX cannot prove that this reference has all of the elements of the asserted claims, including without limitation, the following missing elements:

- healthcare provider-verified information
- patient-provided information
- third party verified information
- report
- All of the elements from the asserted dependent claims

      **e)**     **U.S. Patent No. 7,065,528:** MDX cannot prove that this reference has all of the elements of the asserted claims, including without limitation, the following missing elements:

- healthcare provider-verified information
- patient-provided information
- third party verified information
- report
- comparison ratings
- All of the elements from the asserted dependent claims

4)    **Invalidity Under 35 U.S.C. §103:** MDX bears the burden to prove invalidity due to obviousness by clear and convincing evidence.  The underlying factual inquiries are (1) the level of ordinary skill in the pertinent art, (2) the scope and content of the prior art, (3) the differences between the prior art and the claims at issue, and (4) secondary considerations of non-obviousness.  Further, MDX must prove by clear and convincing evidence that (1) one or more specific combinations of references teach *all* of the elements of each asserted claim; *and* (2) that there was a reason to make each specific combination.  MDX has failed to identify any specific combinations of references, let alone shown that it is capable of meeting its burden on all of these issues.

Rather, MDX has made *only* conclusory statements about obviousness to the effect that the asserted claims of "the '060 Patent [are] anticipated and/or rendered obvious by each of the [1] '369 prior art, [2] the HG Report prior art, [3] the GeoAccess prior art, [4] the Subimo prior art, and [5] the HealthScope prior art, individually in combination with [6] the '233 prior art." However, taken literally MDX's allegations comprise approximately 57 combinations (listed below):

1.    [1] '369 publication, [2] HG Report
2.    [1] '369 publication, [3] GeoAccess reference
3.    [1] '369 publication, [4] Subimo reference
4.    [1] '369 publication, [5] Healthscope reference
5.    [1] '369 publication, [6] '233 publication
6.    [2] HG Report, [3] GeoAccess reference
7.    [2] HG Report, [4] Subimo reference

8.    [2] HG Report, [5] Healthscope reference
9.    [2] HG Report, [6] '233 publication
10.    [3] GeoAccess reference, [4] Subimo reference
11.    [3] GeoAccess reference, [5] Healthscope reference
12.    [3] GeoAccess reference, [6] '233 publication
13.    [4] Subimo reference, [5] Healthscope reference
14.    [4] Subimo reference, [6] '233 publication
15.    [5] Healthscope reference, [6] '233 publication
16.    [1] '369 publication, [2] HG Report, [3] GeoAccess reference
17.    [1] '369 publication, [2] HG Report, [4] Subimo reference
18.    [1] '369 publication, [2] HG Report, [5] Healthscope reference
19.    [1] '369 publication, [2] HG Report, [6] '233 publication
20.    [1] '369 publication, [3] GeoAccess reference, [4] Subimo reference
21.    [1] '369 publication, [3] GeoAccess reference, [5] Healthscope reference
22.    [1] '369 publication, [3] GeoAccess reference, [6] '233 publication
23.    [1] '369 publication, [4] Subimo reference, [5] Healthscope reference
24.    [1] '369 publication, [4] Subimo reference, [6] '233 publication
25.    [1] '369 publication, [5] Healthscope reference, [6] '233 publication
26.    [2] HG Report, [3] GeoAccess reference, [4] Subimo reference
27.    [2] HG Report, [3] GeoAccess reference, [5] Healthscope reference
28.    [2] HG Report, [3] GeoAccess reference, [6] '233 publication
29.    [2] HG Report, [4] Subimo reference, [5] Healthscope reference
30.    [2] HG Report, [4] Subimo reference, [6] '233 publication
31.    [2] HG Report, [5] Healthscope reference, [6] '233 publication
32.    [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference
33.    [3] GeoAccess reference, [4] Subimo reference, [6] '233 publication
34.    [3] GeoAccess reference, [5] Healthscope reference, [6] '233 publication
35.    [4] Subimo reference, [5] Healthscope reference, [6] '233 publication
36.    [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [4] Subimo reference
37.    [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [5] Healthscope reference
38.    [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [6] '233 publication
39.    [1] '369 publication, [2] HG Report, [4] Subimo reference, [5] Healthscope reference
40.    [1] '369 publication, [2] HG Report, [4] Subimo reference, [6] '233 publication
41.    [1] '369 publication, [2] HG Report, [5] Healthscope reference, [6] '233 publication

42.   [1] '369 publication, [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference

43.   [1] '369 publication, [3] GeoAccess reference, [4] Subimo reference, [6] '233 publication

44.   [1] '369 publication, [3] GeoAccess reference, [5] Healthscope reference, [6] '233 publication

45.   [1] '369 publication, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

46.   [2] HG Report, [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference

47.   [2] HG Report, [3] GeoAccess reference, [4] Subimo reference, [6] '233 publication

48.   [2] HG Report, [3] GeoAccess reference, [5] Healthscope reference, [6] '233 publication

49.   [2] HG Report, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

50.   [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

51.   [1] '369 publication , [2] HG Report, [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference

52.   [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [4] Subimo reference, [6] '233 publication

53.   [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [5] Healthscope reference, [6] '233 publication

54.   [1] '369 publication, [2] HG Report, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

55.   [1] '369 publication, [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

56.   [2] HG Report, [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

57.   [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

MDX has not made specific allegations regarding all of these combinations and, even if it had, this number is completely unreasonable.  Based on the information MDX has provided, Health Grades disagrees that there was reason to make any of these combinations.  Health Grades further asserts that many of these references actually teach away from combining them with the other references.  MDX alleges that many of these references predate Health Grades

patents by many years – this argument begs the obvious question: if it was so obvious to combine these references, why didn't someone actually do so before Health Grades?  The answer is clear – it was not obvious.

Additionally, MDX cannot prove that any of these combinations teach all of the elements of the asserted claims as described above with respect to anticipation.

Finally, there are many secondary considerations that show non-obviousness as detailed in Health Grades' response to Interrogatory No. 4.

5)   **Invalidity Under 35 U.S.C. §112:**  The only other basis for invalidity asserted by MDX is based on §112, namely lack of enablement, failure to meet the written description requirement, and indefiniteness.  MDX's contentions on this matter consist of a single paragraph doing nothing more than saying in conclusory fashion that the claims are invalid for these reasons.  MDX does not even identify which claims it asserts are invalid under which §112 theory, let alone give any detail as to what language in the claims is not enabled, which language violates the written description requirement, and which language is indefinite.  Thus, it is impossible for Health Grades to respond to these conclusory and unsupported allegations with any detail other than to say that it disagrees with MDX's conclusory arguments.  The claims are enabled, they do not violate the written description requirement, and they are not indefinite.  The patent is entitled to a presumption of validity – the Patent Office examined Health Grades asserted claims to make sure that they complied with §112, and allowed them to issue.

MDX incorrectly asserts that Health Grades' infringement contentions and proposed claim constructions are inconsistent with and unsupported by the specification with respect to the "comparison ratings" and "information on first healthcare provider" limitations.  This is not so much an invalidity defense by MDX as it is a disagreement with Health Grades' infringement

contentions.  Nonetheless, as explained below, Health Grades disagrees and asserts that both these phrases are sufficiently supported by the specification:

      **a.**    **First Healthcare Provider:**  Claim 1 provides:

      1.    A computer-implemented method of providing healthcare provider information to potential patients, said method comprising:
receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding **a first healthcare provider** . . . .

(emphasis added.)  Claim 15 uses similar language.

While the term "healthcare provider" is used broadly in the '060 specification to include both people (e.g., physicians) and entities (e.g., hospitals) that provide healthcare services (col. 1:11-14), it also makes clear that "[s]ome embodiments relate to searches for physicians, while others relate to searches for hospitals, nursing homes, or other types of health care providers or treatment facilities."  The '060 claims are directed to searches for physicians (and other people) as opposed to searches for hospitals (and other entities).  For example, claim 14 depends from claim 1 and says that the healthcare provider is a physician.  Claim 7 ultimately depends from claim 1 and further requires search capabilities that allow a patient to search for providers by gender, among other criteria.  Obviously, entities, such as hospitals, do not have a gender.

Other elements of claims 1 and 15 indicate that for these claims, the healthcare provider is a person, not an entity.  For example, the claimed healthcare provider-verified information comprises things that relate to people, not entities, such as:  "gender, age, years in profession, years in practice, . . . professional appointments, professional memberships, . . . languages, and hobbies . . . ."  ('060 patent, claim 1 (2nd ¶) and claim 15 (3rd ¶).)  Similarly, the claimed third party verified information includes things that do *not* apply to entities, such as:  board certification,  . . . medical school, medical internship, medical residency, and medical fellowship

information . . . ." ('060 patent, claim 1 (4th ¶) and claim 15 (5th ¶).)  Thus, one of ordinary skill in the art would understand that the term "healthcare provider" as used in the '060 claims does *not* encompass requests for information relating to hospitals or other healthcare entities.

Moreover, the types of information that are included in the claimed healthcare provider report are described as being part of a physician report, but are *not* part of the hospital reports:

**Example Physician Report**



Fig. 3A

('060 patent, col. 7:51-8:2, Fig. 3A.)

**Example Hospital Report**



Fig. 7B

('060 patent, col. 11:34-51, Fig. 7B.)

Although the claims should not be limited to the specific examples described in the specification, these examples support the fact that the '060 patent claims are directed toward requesting information about people, not entities.

Finally, while the definition of healthcare provider should not include entities, it should be broad enough to cover other kinds of *people who provide healthcare services*.  ('060 patent, col. 19:60-65 ("For example, the present invention may not be limited specifically to healthcare provider information but, instead, may be applicable to any kind of professionals, such as . . . veterinarians, dentists, etc.").)  As such, Health Grades proposed construction of "first healthcare provider" is consistent with the ordinary meaning of this phrase in light of the specification.

    **b.**    **Comparison Ratings:**  Claims 1 and 15 provide:

Creating . . . a healthcare provider report on the first healthcare provider . . . , wherein the

healthcare provider report on the first healthcare provider includes **comparison ratings of health care providers** . . . .

(emphasis added.) The '060 patent states that comparison ratings relate to a particular provider (e.g. the first healthcare provider) that is featured in a healthcare provider report. For example, the '060 patent states:

> Aspects of particular embodiments relate to performing searches for healthcare providers based on geographic area, specialty, and/or other criteria, in which the company maintaining and/or managing the Web site . . . compiles and produces a results list of providers meeting such criteria. . . . From this list, a patient may access a detailed "report" or, in one embodiment, **comparison ratings on that particular provider**."

('060 patent, col. 1:67-2:5 (emphasis added).) The ratings described in the '060 patent relate to a specific provider and enable a patient to compare that particular healthcare provider with other healthcare providers to determine which healthcare provider best meets a patient's needs:

- One of the problems with prior on-line healthcare information websites is that the information, even if it exists, "is usually not organized in a manner that would allow a patient to compare physicians or hospitals . . . ." ('060 patent, col. 1:29-47.)

- The claimed invention solves this problem by providing information and ratings in a format that enables "patients to differentiate among healthcare providers and thereby select the provider that best meets their individual needs." ('060 patent, Abstract.)

- "In accordance with an embodiment of the invention, comparisons amongst the physicians may be provided to the patient, in which such comparisons highlight which physicians best fit the patient's specified criteria." ('060 patent, Col. 6:63-7:15 (emphasis added).)

- "If query 1116 determines that the patient would like to receive the type of information shown in the sample report, flow branches YES to receive operation 1118 where physician comparison results are provided. In particular, operation 1118 provides the patient with information regarding how well physicians listed satisfy the specified criteria 1106, 1108, and 1110." ('060 patent, col. 13:36-43.)

As such, the claimed comparison ratings relate to a healthcare provider that is the subject of the report and enable patients to differentiate that particular healthcare provider from other healthcare providers.

The '060 patent is entitled to a presumption of validity. Many of the references on which MDX relies were considered by the Patent Office and it decided to allow the claims to issue despite these references. Moreover, many do not qualify as prior art. MDX will not be able to meet the very high standard of the clear and convincing evidence burden to prove invalidity. Further, MDX may not be able to corroborate much of its invalidity evidence – Health Grades will in a better position to object on this basis after it has deposed MDX's invalidity witness on December 15, 2011. To the extent MDX identifies other witnesses in support of its invalidity defense, Health Grades reserves the right to depose any such witnesses and to further supplement this response.

Health Grades will rely on testimony of its technical expert, Dr. Phil Greenspun, as well as the inventors, and any MDX witnesses on this issue to support its arguments against MDX's invalidity defense.

**Interrogatory No. 9:**

If your response to any of MDx's Requests for Admission, served herewith and hereinafter, is anything other than an unqualified admission, state all reasons and facts upon which Health Grades bases its response.

**Supplemental Response to Interrogatory No. 9:**

Health Grades incorporates herein its General Objections. Health Grades objects to this request to the extent it calls for information protected by the attorney-client privilege or the attorney work-product doctrine. Health Grades objects to this request to the extent it requests information already within in the possession of Defendant or publically available. Health Grades objects to this request to the extent it calls for confidential, proprietary or trade secret information before the entry of a suitable Protective Order.

Subject to and without waiving the General or Specific Objections, Health Grades responds as follows:

MDx's Request for Admission No. 1 requests that Health Grades admit that it did not "mark its products" with the '060 patent number "pursuant to 35 U.S.C. § 287" until after November 8, 2010. In its first response to this request, made October 20, 2011, Health Grades did not admit the request in an unqualified fashion because the request does not specify what "products" it refers to, and because the request requires a legal conclusion given that it requests admission of acts by Health Grades "pursuant to 35 U.S.C. § 287." Further, at the time Health Grades made its first response, Health Grades was still investigating when it took action to mark its products, and thus could not provide that information.

In its supplemental response to this request, made November 9, 2011, Health Grades again did not admit the request in an unqualified fashion because the request does not specify what "products" it refers to, and because the request requires a legal conclusion given that it requests admission of acts by Health Grades "pursuant to 35 U.S.C. § 287." By the time Health Grades made its supplemental response, Health Grades had determined that it began marking its website with the '060 patent number on or about November 16, 2010, and included this information in good faith in its supplemental response.

MDx's Request for Admission No. 2 requests that Health Grades admit it "did not provide notice pursuant to 35 U.S.C. § 287 to MDx regarding the '060 patent until at least March 9, 2011." In its first response to this request, Health Grades did not admit the request in an unqualified fashion because the request requires a legal conclusion given that it requests admission of acts by Health Grades "pursuant to 35 U.S.C. § 287." In its first response, Health

Grades correctly stated that MDx was on notice of the Health Grades' patent application as of December 15, 2009, and was on notice of the '060 patent itself at least as of July 6, 2010.

In its supplemental response to this request, made November 9, 2011, Health Grades did not admit the request in an unqualified fashion because the request requires a legal conclusion given that it requests admission of acts by Health Grades "pursuant to 35 U.S.C. § 287." In its supplemental response, Health Grades again correctly stated that MDx was on notice of the Health Grades' patent application as of December 15, 2009, and stated that MDx was on notice of the '060 patent itself at least as of July 6, 2010, adding that was the date the patent issued. Health Grades further responded that it began marking its website with the '060 patent number on or about November 16, 2010. Furthermore, because it appears from the request that MDx is under the mistaken belief that the lawsuit was filed on March 9, 2011, in its supplemental response Health Grades responded in good faith that the lawsuit for infringement against MDx was filed on March 2, 2011.

MDx's Request for Admission No. 3 requests that Health Grades admit it "would not be entitled to any damages from MDx until at least some time after November 8, 2010." Health Grades denied this request because it requires legal conclusions regarding when damages began to accrue, and whether all or a portion of such damages are recoverable. Whether damages are recoverable in this case as a consequence of MDx having notice of the Health Grades' patent application, or as a consequence of MDx having notice of the issuance of the '060 patent on July 6, 2010, or whether the many instances found in documents provided by MDx in which it is clear MDx set out to "copy" Health Grades, will be the subject of expert reports and testimony. Furthermore, as MDx is aware, as a component of its damages Health Grades seeks a reasonable

royalty rate, and the date that products are marked does not act as a starting point in the determination of what is a reasonable royalty rate.

Health Grades reserves the right to supplement the foregoing supplemental responses as discovery continues.

HEALTH GRADES, INC.

By its Attorneys,

Date: December 10, 2011

*Jesús M. Vázquez, Jr., Esq.*
Kris J. Kostolansky, Esq
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:    (303) 623-9000
Facsimile: (303) 623-9222
Email: kkostolansky@rothgerber.com
            jvazquez@rothgerber.com
            jphipps@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant
Health Grades, Inc.*

## VERIFICATION

On behalf of Health Grades, Inc. and in my capacity as Executive Vice-President, CFO at Health Grades, Inc., I have read the foregoing supplemental answers to Defendant's Interrogatories Nos. 8 and 9. I do not necessarily have direct personal knowledge of every fact contained herein. The responses were prepared with the assistance of the authors of the documents referenced, and with the assistance and advice of counsel. The answers are based on the records and information currently available. I reserve the right to make changes in or additions to any of these answers if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available. To the extent I do not have personal knowledge; I have relied on others to gather the responsive information. I declare under penalty of perjury that the foregoing is true and correct.

Signed this 9th day of December 2011.

_____
Allen Dodge, Executive Vice President, CFO

STATE OF COLORADO          )
                           )   ss.
CITY AND COUNTY OF DENVER  )

Subscribed and sworn to before me by Allen Dodge this 9th day of December, 2011. WITNESS MY HAND AND OFFICIAL SEAL.

My Commission expires: _____.


_____
Notary Public

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2011, I electronically served the foregoing **PLAINTIFF HEALTH GRADES, INC.'S SUPPLEMENTAL RESPONSES TO DEFENDANT MDX MEDICAL, INC.'S INTERROGATORY NOS. 8 AND 9** on the following:

David Chunyi Lee
Sills Cummis & Gross P.C. – New York
One Rockefeller Plaza, 25th Floor
New York, NY 10020
Email: dlee@sillscummis.com

Mark Jon Rosenberg
Sills Cummis & Gross P.C.-New York
One Rockefeller Plaza, 25th Floor
New York, NY 10020
Email: mrosenberg@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO 80202-2617
Email: ridley@wtotrial.com

Ramona L. Lampley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO 80202-2617
Email: lampley@wtotrial.com

Scott David Stimpson
Sills Cummis & Gross P.C.-New York
One Rockefeller Plaza, 25th Floor
New York, NY 10020
Email: sstimpson@sillscummis.com

*s/ Jesús M. Vazquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email:  kkostolansky@rothgerber.com
            jvazquez@rothgerber.com
            jphipps@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*