# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

      Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

## MDX MEDICAL, INC.'S CLAIM CONSTRUCTION RESPONSE AND EVIDENCE

---

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................. 3

II.     APPLICABLE CLAIM CONSTRUCTION PRINCIPLES .................................. 3

III.    HEALTHCARE PROVIDER REPORT ON THE FIRST HEALTHCARE PROVIDER
        THAT INCLUDES COMPARISON RATINGS OF HEALTHCARE PROVIDERS....... 3

        A.      "First Healthcare Provider"...................................................................... 5

        B.      "Healthcare Provider Report On The First Healthcare Provider" .......................... 8

        C.      "Report On The First Healthcare Provider Includes Comparison Ratings of
                Healthcare Providers" ............................................................................ 11

IV.     HEALTHCARE PROVIDER INFORMATION............................................................. 13

        A.      "Healthcare Provider-Verified Information" ...................................................... 14

        B.      "Received From The First Healthcare Provider"................................................. 16

V.      VERIFIED BY AN INDEPENDENT THIRD-PARTY SOURCE.................................. 17

VI.     COMPILE/COMPILING INFORMATION AND USING "THE" INFORMATION .... 18

        A.      "compiling" / "compile" ......................................................................... 19

        B.      "using the healthcare provider-verified information, the patient-provided
                information, and the information verified by the independent third-party source"
                .............................................................................................................. 21

VII.    HYPERLINK TO AN AFFILIATED HOSPITAL, MEDICAL CENTER, OR OTHER
        TYPE OF  TREATMENT CENTER.............................................................................. 22

VIII.   RESULTS LIST FURTHER INCLUDES AN ADVERTISEMENT .............................. 23

IX.     MEMBER OF THE COMPANY MANAGING THE WEBSITE / MEMBER
        HEALTHCARE PROVIDER........................................................................................ 24

X.      CONCLUSION............................................................................................................... 25

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by its undersigned counsel, files this Claim Construction Response and Evidence.  This filing responds to Plaintiff and Counterclaim Defendant Health Grades, Inc.'s Claim Construction Brief and Evidence (Dkt. # 79, "Opening Brief").

## I.     INTRODUCTION

Health Grades, Inc.'s ("Health Grades") Opening Brief is an all-out effort to improperly alter the claim meaning that Health Grades and its prosecution counsel so carefully and narrowly defined in order to gain allowance of U.S. Patent No. 7,752,060 (the "'060 Patent").  The language of the claims is the single most important consideration in claim construction.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005).  Despite Health Grades' current efforts to show otherwise, the claims say what they say, and Health Grades should be stuck with them as they were written.

## II.    APPLICABLE CLAIM CONSTRUCTION PRINCIPLES

MDx generally agrees with the applicable claim construction principles recited by Health Grades in Section II of its Opening Brief.  Additional cases and legal principles are recited below in connection with specific claim elements.

## III.   HEALTHCARE PROVIDER REPORT ON THE FIRST HEALTHCARE PROVIDER THAT INCLUDES COMPARISON RATINGS OF HEALTHCARE PROVIDERS

This section collectively addresses the terms covered in the Health Grades Opening Brief at pages 6 ("first healthcare provider"), 10 ("healthcare provider report on the first healthcare

provider"), and 13 ("report on the first healthcare provider includes comparison ratings of healthcare providers").

Although Health Grades addresses these elements in over eleven pages in its Opening Brief, they are all intimately connected.  The claims all require:

(1) "a request for information regarding a ***first healthcare provider***" ('060 Patent, 20:25-26; 22:17-18);[1]

(2)  creating "a ***healthcare provider report on the first healthcare provider***" ('060 Patent, 20:58-59; 22:48-49); and

(3) "wherein the healthcare provider ***report on the first healthcare provider includes comparison ratings of healthcare providers***" ('060 Patent, 20:62-64; 22:53-55).

The connection is plain from the claim language: (1) a request is made for a specific healthcare provider (identified as the "first" healthcare provider); (2) a report is created ***on that healthcare provider***; and (3) ***that report*** "on the first healthcare provider" must contain ***"comparison ratings of healthcare providers"*** (plural) for comparison.

With great effort over a span of eleven pages (*see* Opening Brief, pages 6-16), Health Grades attempts to construe these claim elements out of context with the aim of improperly altering their meaning.  MDx has objected to construing terms out of context in the past (*see* Dkt. # 56-1, Exhibit A to Joint Claim Construction and Prehearing Statement ("JCCS Chart"), at p.7, ), and maintains these objections herein, as discussed below.

The current MDx www.vitals.com website (the "current MDx Website") allows a user to request information on a specific healthcare provider, and generates a report on that provider, but

---

[1] References to the patent are in the format col:lines.  So, for example, 20:25-26 refers to column 20, lines 25-26.

that report on the specific healthcare provider lacks any comparison ratings of other healthcare providers.  Health Grades stretches mightily to make its claims cover the current MDx Website, ignoring the requirement of the claims that the report on the first healthcare provider "includes comparison ratings of healthcare providers," and requesting a claim construction so sweepingly broad that it would include any "rating system that facilitates comparison(s) amongst physicians."  Opening Brief at 13.  Not only is this interpretation ridiculously overbroad, it is also not supported by the '060 Patent, and completely inconsistent with the prosecution history.

During prosecution, Health Grades had an original claim that did not require comparison ratings in the report on the first healthcare provider.  That claim was similar to what Health Grades is pining for now, lacking the language at issue requiring comparison ratings in the specific report on the first healthcare provider, and instead generally addressing an ability to make comparisons from using the *entire* computing system: "a computing system with access to healthcare provider information stored in a database, wherein patients may search the database and review healthcare provider reports to differentiate among healthcare providers."  But during prosecution, in the face of rejections by the Patent Office, Health Grades *removed this language and replaced it with the express requirement of comparison rating in the first healthcare provider report.*  (Dkt. # 79-4, Exhibit D to Opening Brief, at Amendment & Response to Non-Final Office Action Mailed November 13, 2009, pages 2 and 5.)

Each of the terms at issue is addressed below.

A.    **"First Healthcare Provider"**

Health Grades takes great pains to construe *only* the words "healthcare provider" (without "first") (Opening Brief, pp.6-8).  But neither party proposed that the term "healthcare

5

provider" alone be construed, and thus Health Grades' entire argument is off the mark. (JCCS

Chart, p.13).

The entire phrase to be construed is "first healthcare provider".  Each of independent

claims 1 and 15 refers to this phrase ten times in different parts of the claims, with all of those

references pointing to the same "first healthcare provider" (Dkt. # 79-1, Exhibit A to Opening

Brief, pp.34-35):

> 1. A computer-implemented method of providing healthcare provider information to potential patients, said method comprising:
>
> receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a *first healthcare provider*, wherein the Web server computer comprises at least one computer processor and memory;
>
> accessing healthcare provider-verified information about the *first healthcare provider*, wherein the healthcare provider-verified information is received from the *first healthcare provider* and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;
>
> compiling, by the at least one computer processor, patient-provided information regarding the *first healthcare provider*, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the *first healthcare provider*, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the *first healthcare provider*, and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;
>
> compiling information regarding the *first healthcare provider* verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;
>
> creating, by the at least one computer processor, a healthcare provider report on the *first healthcare provider* using the healthcare provider-verified information, the patient-provided information, and the information verified by the

independent third-party source, wherein the healthcare provider report on the ***first healthcare provider*** includes comparison ratings of healthcare providers; and

providing access to the healthcare provider report on the ***first healthcare provider*** over a computer network.

Claim 15 includes similar language. MDx's proposed construction simply defines this phrase using its extensive context in the claims. Health Grades argues that MDx's proposed construction is redundant, but the MDx proposed construction is indeed appropriate. *See, e.g., Minebea Co., Ltd. v. Think Outside, Inc.*, 159 Fed. Appx. 197, 202 (Fed. Cir. 2006) ("construing claim limitations in a vacuum [] is plainly inconsistent with *Phillips*, which compels us to construe claim limitations in the context of the claim in which they appear.") (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005)).

Health Grades is correct that MDx's proposed definition defines "first" with the word "specific", but Health Grades is wrong that there is no support in the '060 Patent for this construction (Opening Brief, p.8). Claim 1 of the '060 Patent itself distinguishes the phrase "***first*** healthcare provider" (singular) from "healthcare ***providers***" (plural) ('060 Patent, 20:23-67, emphasis added). This contrast in claim 1 itself shows that "first" refers to a ***specific instance*** of a healthcare provider. "[T]he use of the terms 'first' and 'second' is a common patent-law convention to ***distinguish*** between repeated ***instances*** of an element or limitation." *Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, 1348 (Fed. Cir. 2005) (*quoting 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003)) (emphasis added).

To the extent Health Grades argues that "first healthcare provider" should be construed to mean ***one or more*** professionals (Opening Brief, p.9), its argument is unsupported and is wrong. Such construction is illogical as "one or more" simply defies the meaning of the word "first".

Health Grades cites the case of *Baldwin Graphic Sys., Inc. v. Siebert, Inc.* to support its position, but that case is inapposite because the patent claims in *Baldwin* did not include the term "first". Additionally, Health Grades' concern that MDx's proposed construction would limit the scope of the claims is incorrect and ultimately irrelevant. The scope of the '060 Patent claims is open-ended by use of the word "comprising" in the preamble of independent claims 1 and 15, but ultimately this is irrelevant to construing the phrase "first healthcare provider" at issue here.

*__The proper interpretation of "first healthcare provider" is: a specific healthcare provider, and the same provider referenced throughout the claims on which the request is received (20:25-26), healthcare-verified information accessed (20:30-31), patient-provided information is compiled (20:39-41), information verified by a third-party is compiled (20:50-51), and a report is created (58-59).__*

**B.  __"Healthcare Provider Report On The First Healthcare Provider"__**

Health Grades asks this Court to interpret "creating . . . a healthcare provider report ***on the first healthcare provider***" as creating a report on ***any*** provider – according to Health Grades, it should be interpreted as a report that "relates to one or more healthcare providers" – not the healthcare provider identified in Section A above. Health Grades' position is dead wrong, as it violates principles of claim interpretation and is unsupported by the '060 Patent.

The claim language says that the report must be "***on the first healthcare provider***," and that "first healthcare provider" was defined in the claim to be the specific provider on which the request was made by the user. It cannot be a report on ***any*** provider, because the claim language requires it to be on the previously-defined "first healthcare provider." *Yamaha Corp. v. ESS Tech*, 1996 U.S. App. LEXIS 7631 (Fed. Cir. Mar. 29, 1996) (strong presumption that definite

article "the" refers back to element previously defined in the claim); *see also Phase Four Indus. v. Marathon Coach, Inc.,* 2006 U.S. Dist. LEXIS 100300 (N.D. Cal. Dec. 19, 2006) ("When a dependent claim states as an invention elements using the word 'the' or 'said,' it should be construed to refer back to elements already disclosed in the independent claim.").[2]   Health Grades attempts to distract the Court by positing that "MDX's proposed construction is intended to limit the content of the report to information related *only* to a single physician."   (Opening Brief, p.12.)  But nowhere does MDx make this argument.

Health Grades' proposed construction is unsupported by the '060 Patent.  Indeed, Health Grades' Opening Brief (p.10-13) cites no disclosure in the '060 Patent of a healthcare provider report that relates to multiple healthcare providers.  Figures 3A and 3B of the '060 Patent, and their accompanying text, relate to a particular physician's report.  '060 Patent, col.7:52-54 ("A patient who selects to view a particular member physician's free report next receives a Web page view 302 of this member-enhanced report 304, as depicted in FIG. 3A."); col.8:56-58 ("In contrast to the member enhanced report shown in FIG. 3A, a non-member report 354 within Web page 353 of FIG. 3B does not include an appointment module").  Health Grades recognizes as much and attempts to rely on boilerplate language in the '060 Patent to support its construction, pointing to language such as "other embodiments of the invention may include other types of information and/or data", and "exemplary embodiments depicted and discussed herein are not intended to limit the scope of the invention".  Opening Brief, p.11.  But boilerplate language of

---

[2] In other parts of its brief, Health Grades concedes this issue.  *See, e.g.,* page 14 ("the '060 patent . . . states that comparison ratings relate to a ***particular provider (e.g. the first healthcare provider) that is featured in a healthcare provider report***"); and quoting the patent at page 14 ("a patient may access a detailed "report" or, in one embodiment, comparison ratings ***on that particular provider***").

the type relied upon by Health Grades cannot be used to support undisclosed embodiments or subject matter.  *See, e.g., IP Innovation, L.L.C. v. eCollege.com*, 156 Fed. Appx. 317, 321-22 (Fed. Cir. 2005) (declining to construe claim based on "common boilerplate language that does not specifically address the inventive features in any detail").   Additionally, Health Grades references col. 2:21-26 and col. 3:50-54 of the '060 Patent (Opening Brief, p.13), but neither reference supports Health Grades' construction of a report relating to multiple healthcare providers.  Col. 2:21-26 refers to "a search query for a *particular physician* name", which provides a "profile [that] lists detailed information potentially available about *that physician*" (emphasis added); col. 3:50-54 simply refers to Figure 3A discussed above.  To the extent Health Grades attempts to rely on the search results list in Figures 2A and 2B, and their accompanying text, to support its construction of "healthcare provider report", that reliance is inappropriate. Figure 2A and 2B relate to the claim element of "a results list of one or more healthcare providers satisfying the search criteria", which is a completely distinct claim element (in claim 7) from the "healthcare provider report"; they are not one and the same.  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different meanings. . . ."); *CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").  Accordingly, there is no support in the '060 Patent for Health Grades' proposed construction.[3]

---

[3] For all claim elements, MDx objects to Health Grades' extrinsic evidence to the extent it does not reflect the meaning of claim terms prior to the time of filing of the application leading to the '060 Patent.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) ("A court

***The proper interpretation of "healthcare provider report on the first healthcare provider" is: a report directed specifically to the "first healthcare provider".***

### C.    "Report On The First Healthcare Provider Includes Comparison Ratings of Healthcare Providers"

There are two issues with regard to this phrase.

**(1) Are the comparison ratings included in the report on the first provider?**

Health Grades wants to argue that parts of the MDx website ***other than the report on the first healthcare provider*** provide ratings of other providers and so can satisfy this claim limitation.  (We know this from Health Grades' Infringement Contentions, where it points to other parts of the MDx website; and from Health Grades' opposition to the pending summary judgment motion.)  To this mischievous end, Health Grades unabashedly crops the claim language at issue to "comparison ratings of healthcare providers" -- completely omitting the language requiring these ratings to be included in the report on the first healthcare provider.  Health Grades even crops the MDx proposed construction.  The MDx proposed construction is actually this:  "Report directed specifically to the first healthcare provider that includes ratings of multiple providers other than the first healthcare provider."  (JCCS Chart, p.7.)

The claim language is perfectly clear – the report on the first healthcare provider "includes" these comparison ratings of healthcare providers.  This is plain English.

Health Grades refers to the '060 Patent disclosure of a "results list" in an attempt to show comparison ratings of multiple physicians.  *See* Opening Brief, pp. 14, 16 (referencing col.6:63-

---

construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention, i.e., as of the effective filing date of the patent application.") (*citing Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)) (emphasis added).

7:15).  As discussed above in Section B, however, "results list" is a completely distinct claim element (in claim 7) from the "healthcare provider report" and cannot be one and the same as the "healthcare provider report" claim element.  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006); *CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).  Indeed, the fact that Health Grades' proposed claim construction for this element is taken almost entirely from the disclosure of results lists in Figures 2A and 2B and accompanying text, highlights just how far afield Health Grades is with its proposed claim construction.

### (2) Are the "comparison ratings of healthcare providers" ratings of multiple providers other than the first healthcare provider?

The claims require including in the report on the first healthcare provider (for comparison) "*ratings of healthcare providers*."  The language means what it says – there must be "ratings of healthcare providers" in the report.  "Providers" is plural, so there must be more than one in the report.  The Health Grades position completely reads this language out of the claims.

In an effort to salvage its infringement case, at the top of page 14 of its brief, Health Grades quotes specification language referencing "comparison ratings on that particular provider."  But this part of the specification simply does not address the claim language at issue. The claim language at issue does not require "ratings on the first healthcare provider"; it requires for comparison "ratings of healthcare providers" (plural).  MDx does not take issue with the fact that ratings of the first healthcare provider will be in the report too, but that is required *by other claim language*, e.g., 20:41-42 (compiling patient-provided ratings) and 60-61 (the report uses information compiled from the patients).

Spanning pages 14-15 of its brief, Health Grades next argues that "star ratings" on the first healthcare provider satisfy this language.  That position is also wrong, for many reasons.  First, the patent specification expressly distinguishes comparisons to "national and specialty averages" (8:62-67) from comparisons to "ratings of healthcare providers" (claim 1).  Second, star ratings on the first healthcare provider are the "patient ratings" that are claimed separately (e.g., 20:40-42). Third, the claim language at issue requires "ratings of healthcare providers" (plural) – this language cannot possibly be satisfied by ratings for this single "first" healthcare provider.  And fourth, a star rating on the first healthcare provider does not provide for "comparison" to anything or anyone because it simply states how good the first provider is – without knowing star ratings of other providers there is nothing to which the first provider ratings can be compared. *See also* Exhibit D to Opening Brief (Dkt. # 79-4), at Amendment & Response to Non-Final Office Action Mailed November 13, 2009, page 12 ("making general qualifications 'available' to a consumer does not teach or suggest 'comparison ratings'").

*The proper interpretation of "report on the first healthcare provider includes comparison ratings of healthcare providers" is: report directed specifically to the first healthcare provider that includes ratings of multiple providers other than the first healthcare provider.*

## IV.    HEALTHCARE PROVIDER INFORMATION

This section addresses the element "healthcare provider-verified information" at pages 18-20 of the Health Grades Opening Brief, and the element "received from the first healthcare provider" at pages 20-21 of the Health Grades Opening Brief.

**The Phrases Requires Construction**

The claims require that certain information be: (1) "received from the first healthcare provider" ('060 Patent, 20:31-32; 22:21-22); and (2) "verified" by the healthcare provider (20:29-30; 22:19-20).

MDx receives some of this information in ways other than directly from the provider, and very rarely (if ever) is this information verified by the provider himself. So, Health Grades is trying to broaden this clear claim language so that the information does not need to be received from the provider, and to eliminate entirely the "verification" requirement.[4]

**Analysis**

    A.    **"Healthcare Provider-Verified Information"**

Health Grades' proposed definition (page 20) is entirely circular regarding the term "verified" (using the term "verified" itself to define "verified"), and it completely ignores the requirement that this verification be from the healthcare provider (asserting it may be from another "healthcare professional" – whatever that means).

Health Grades and its prosecution counsel chose these specific words for its claims, requiring that the **_provider_** verify this information. That is what the claims say, and Health Grades cannot now broaden the claims so that they literally encompass verification from staff of the provider. Indeed, the '060 Patent specification expressly and unequivocally distinguishes a provider from that provider's "office and staff," but "office and staff" **_were not included in the_**

---

[4] Health Grades desperately wants the Court to skip over all of the terms addressed at its Opening Brief starting on page 16. As the Health Grades brief correctly states at page 16, however, "[w]hen the parties raise an actual dispute regarding the proper scope of these claims, the court . . . must resolve that dispute." Not surprisingly, Health Grades' brief does not identify the serious underlying disputes on any of these elements.

*claims*.  ('060 Patent, 9:6-25).  The Health Grades argument about verification by office and staff is really an argument about the doctrine of equivalents – is verification from the staff of the provider substantially the same as verification from the provider himself?  *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) (equivalence can be determined if the accused product "performs substantially the same function in substantially the same way to obtain the same result").  Interpreting the claims to ***literally cover*** verification from a provider's office and staff when the claim says no such thing, however, is simply wrong.  The claim language requires that the verification be provided personally by the provider – not his "office or staff" as those were clearly distinguished in the specification.

As for the meaning of "verified," Health Grades glibly asserts at page 19 of its Opening Brief that the '060 Patent does not require any kind of verification "other than the act of the physician providing the information."  This argument is pure silliness – it reads the verification requirement entirely out of the claims.  And the specification clearly states that the provider giving the information is very different from the provider verifying the information. 1:39-43 (information only supplied by the physician may be incomplete or inaccurate); 2:55 (distinguishing, in the disjunctive, "physician-verified" and "physician-provided"); 10:60-61 (same); 17:17-18 (accessing information from physician not yet verified); *see also* 1:28 (emphasizing the need to be able to ensure the veracity of the information); 1:47 ("verify a physician's or hospital's certifications or licensures"); 7:56-8:2 ("the physician, at least, verifies this information").

The ordinary meaning of "verify" is to "substantiate" or prove the truth of the claim.  *See* Dkt. # 56-2, Exhibit B to Joint Claim Construction and Prehearing Statement, Definition of

"verify" at p.1449.  While Health Grades may now wish that it did not add this language to the claims, it is a clear requirement that must be satisfied.  Health Grades is attempting to vitiate this claim element to improperly broaden its claims.  *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562 (Fed. Cir. 1997) ("It is elementary patent law that all [claim] limitations are material."); *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165 (Fed. Cir. 1993) (declining patentee's claim construction that "would read an express limitation out of the claims.  This, we will not do because '[c]ourts can neither broaden nor narrow the claims to give the patentee something different than what he has set forth.'")

> ***The proper interpretation of "healthcare provider-verified information" is: information proved to be true directly and personally by the healthcare provider.***

### B. "Received From The First Healthcare Provider"

The claim language could not be clearer – the healthcare provider-verified information must be "received from the first healthcare provider."  As shown in Section A, the specification distinguishes the provider from the provider's "office and staff".

Health Grades complains about the impact of this requirement.  But the process of claim construction does not investigate whether or not it was wise to include the limitations at issue in obtaining the patent, but rather the task is to simply construe the claims as written.

At pages 20-21, Health Grades cites the specification showing that there are many ways for this information to be obtained ("the information may be obtained through other means" than from the physician).  The problem for Health Grades, however, is that ***the claims*** require that the information be obtained from the provider.  The fact that the specification recites other ways to get the information only confirms that these claims do not cover any of those other ways.

*Johnson & Johnston Assoc. Inc. V. R.E. Service Co., Inc.*, 285 F.3d 1046, 1051 (Fed. Cir. 2002) (noting "the well-established rule that subject matter disclosed but not claimed in a patent application is dedicated to the public") (internal quotations and citations omitted). Thus, these claims cannot, as a matter of law, cover other ways of obtaining the information.

*<u>The proper interpretation of "received from the first healthcare provider" is: information provided personally from the first healthcare provider.</u>*

## V.   <u>VERIFIED BY AN INDEPENDENT THIRD-PARTY SOURCE</u>

**<u>The Phrase Requires Construction</u>**

The claims all require certain information to be "verified by an independent third-party source" (20:51; 22:41-42). Not all of the information used by MDx is "verified" by a third-party source, so Health Grades (again) tries to read the verification requirement out of the claims. Accordingly, this phrase needs to be construed.

**<u>Analysis</u>**

Health Grades wants this court to send everything to the jury, and see what they do with the "verification" requirement. But we already know (see Section IV, *supra*) that Health Grades will take a wildly broad view of this term and argue that any information simply provided by a third party is also "verified" by that third party. Such a position would be contrary to the plain language of the claims, and the specification. *See, e.g.,* 1:24-34 ("vital" to get information verified and thus know the accuracy).

For the same reasons addressed in Section IV(B), "verification" should be defined to require more than simply providing information. Otherwise, the term would be effectively read out of the claims.

***The phrase "verified by an independent third-party source" should be interpreted to mean: proved to be true by an independent third-party source.***

## VI.     COMPILE/COMPILING INFORMATION AND USING "THE" INFORMATION

This section addresses the terms covered in the Health Grades Opening Brief at pages 22 ("compiling"/"compile") and 23 ("using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source").

**The Phrases Require Construction**

All of the claims require accessing or compiling information and then creating a report using the accessed or compiled information:

(1) accessing "***healthcare provider-verified information*** about the first healthcare provider, wherein ***the healthcare provider-verified information*** . . . comprises three or more from the group consisting of . . ." ('060 Patent, 20:29-37; 22:19-28);

(2) compiling "***patient-provided information*** regarding the first healthcare provider, wherein ***the patient-provided information*** comprises patient ratings from one or more . . ." ('060 Patent, 20:38-49; 22:29-39);

(3) compiling "information regarding the first healthcare provider verified by an independent third-party source, wherein ***the information verified by the independent third-party source*** comprises three or more from the group consisting of: . . ." ('060 Patent, 20:50-57; 22:40-47); and

(4) creating "a healthcare provider report on the first healthcare provider ***using the healthcare provider-verified information***, ***the patient-provided information***, and ***the***

*information verified by the independent third-party source* . . ."('060 Patent, 20:58-65; 22:48-54).

The claims all require that the healthcare provider report be created "using **the** healthcare provider-verified information, **the** patient-provided information, and **the** information verified by an independent third-party source" (20:60-62; 22:49-52).  Those three sets of information are all defined earlier in the claim.

In most cases, MDx compiles much information and uses only a portion of the compiled information in its healthcare provider reports, but does not use all of the compiled information in the reports.  Health Grades thus wants the Court to interpret these limitations so that they do not require use of the full scope of the compiled information, but only some smaller portion of it. For this reason, this term requires construction.

**Analysis**

A.     **"compiling" / "compile"**

The '060 Patent uses the word "compile" in two different ways.  One use refers to compiling the healthcare provider report, *e.g.*, "compiling, or creation, of healthcare provider profiles and/or reports" ('060 Patent, 18:24-27), and the second refers to compiling information and data that is to be used in the healthcare provider reports, *e.g.*, "compile data operation 548, in which the information and data provided by the patient survey is compiled with other data provided by other past or current patients and maintained within the company database" ('060 Patent, 10:29-32).   The "compile" or "compiling" used in the claims refers to compiling information and data that is to be used in the healthcare provider reports.

Health Grades' Opening Brief, at page 22, insists in conclusory fashion that the term "compile" must mean "putting together various pieces of information from different sources", rather than MDx's proposed construction of "gathering and putting together."  MDx agrees that the term "compile" includes an aspect of "putting together various pieces of information from different sources".  But nowhere does Health Grades explain why the term cannot include a "gathering" aspect, even though "gathering" is an aspect of the term's common meaning.  *See* Dkt. # 56-2, Exhibit B to Joint Claim Construction and Prehearing Statement, Definition of "compile" at p.284.  Indeed, the specification of the '060 Patent cited by Health Grades supports MDx's contention that compiling data to be used in a report includes a "gathering" aspect: "an aspect of a particular embodiment relates to a database of physician-related information, wherefrom data is ***gathered*** and compiled into the form of a 'report'" ('060 Patent, 2:16-19, emphasis added).  That is, the '060 Patent specification admits that before data is compiled into the form of a report, the data to be used in the report must first be gathered.

Health Grades cites 10:27-32 of the '060 Patent specification in support of its construction, but this reference does not help Health Grades.  Using MDx's proposed construction in place of the word "compiled" in this excerpt makes complete sense: "If the confirmation e-mail is successfully transmitted, flow branches YES to compile data operation 548, in which the information and data provided by the patient survey is [gathered and put together] with other data provided by other past or current patients and maintained within the company database." ('060 Patent, 10:27-32, with MDx proposed construction inserted).

***The language "compile" or "compiling" means: "gathering and putting together".***

**B.**   **"using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source"**

In claiming what needed to be used in creating the report, Health Grades chose to use the word "the" to refer back to information earlier-defined in the claims.  Health Grades chose not to require that "some" or "parts" of the earlier-defined information be used – it decided to use the definite article "the" alone.  As discussed above in Section III(B), use of the word "the" creates a strong presumption that it refers back to the precise element earlier defined in the claim.  *Yamaha Corp. v. ESS Tech*, 1996 U.S. App. LEXIS 7631 (Fed. Cir. Mar. 29, 1996) (strong presumption that definite article "the" refers back to element previously defined in the claim); *see also Phase Four Indus. v. Marathon Coach, Inc.,* 2006 U.S. Dist. LEXIS 100300 (N.D. Cal. Dec. 19, 2006) ("When a dependent claim states as an invention elements using the word 'the' or 'said,' it should be construed to refer back to elements already disclosed in the independent claim.").

Health Grades' argument that MDx is reading in the word "all" into the claims is wrong – that requirement is already there by inclusion of the word "the" in this phrase.  Indeed, Health Grades knew how to require less than all of certain things in the claims, because when it wanted to do that it expressly included the necessary limitations.  *See, e.g.,* 20:27 ("at least one"); 20:32, 53 ("three or more"); 20:42 ("one or more").  Health Grades' prosecution counsel (Merchant & Gould) are qualified and experienced prosecution lawyers – they knew very well that use of the article "the" referenced back to the previously-defined element under well-established Federal Circuit law.  Had Health Grades or its prosecution counsel intended to limit the information used in the report to less than all of the accessed and compiled information, it would have done

exactly the same thing it did elsewhere in the claims and inserted the limiting language (*e.g.*, using *"one or more of"* or *"some of"* the healthcare provider-verified information, etc.).

The portions of the specification cited by Health Grades are also no help to Health Grades, because they only address certain embodiments.  The claim language controls.

*__The language "using the healthcare provider-verified information, the patient-provided information, and the information verified by an independent third-party source" means using all of the accessed healthcare provider-verified information, all of the compiled patient-provided information, and all of the compiled information verified by an independent third-party source.__*

## VII.    HYPERLINK TO AN AFFILIATED HOSPITAL, MEDICAL CENTER, OR OTHER TYPE OF  TREATMENT CENTER

### The Phrase Requires Construction

Dependent claim 4 requires that the report include a "hyperlink to an affiliated hospital, medical center, or other type of treatment center" (21:29-31).  Many reports in the MDx system do not have a link to any treatment center, but some have links to other parts of the MDx website such as reports on such a treatment center.  Health Grades is attempting to broaden this claim language to encompass links to other parts of the MDx website.  For this reason, this phrase requires construction.

### Analysis

The claim language clearly says that the hyperlink has to be "to" an affiliated hospital, medical center, or other type of treatment center.  A link to another part of the MDx website is a link to the MDx company website, not to the treatment center itself.  The '060 Patent specification clearly distinguishes between a hyperlink to an affiliated hospital from a hyperlink

to the website of the company providing the claimed invention: compare "a hyperlink 214 to the hospital affiliated" (7:18-23) with "the company Web page hyperlink" by which "the company computer system . . . receives the patient's request for information on a particular healthcare provider." (15:3-25).  The former hyperlink refers to a link to a website of an affiliated hospital, whereas the latter hyperlink refers to a link to a webpage of the company providing the claimed website.  Because the '060 Patent discloses but does not claim the hyperlink to the company website, a link to an affiliated hospital cannot mean a hyperlink to the company website. *Johnson & Johnston Assoc. Inc. V. R.E. Service Co., Inc.*, 285 F.3d 1046, 1051 (Fed. Cir. 2002) (noting "the well-established rule that subject matter disclosed but not claimed in a patent application is dedicated to the public") (internal quotations and citations omitted).

*__The phrase "hyperlink to an affiliated hospital, medical center, or other type of treatment center" means a hyperlink to a website of the affiliated hospital, medical center, or other type of treatment center.__*

## VIII.   RESULTS LIST FURTHER INCLUDES AN ADVERTISEMENT

Claim 7 requires "a results list of one or more healthcare providers satisfying the search criteria", and Claim 8 further requires that "the results list further includes an advertisement".

The '060 Patent clearly discloses a search results web page that includes a results list, and also includes advertisements *outside* the results list.  Referring to Figure 2A, the specification discloses "a results list 206 containing a section 208 . . . and a separate section 220" (6:24-26), but advertisement 204 is not disclosed as being in the results list 206 or in the results list sections 208 or 220.  Referring to Figure 2B, the specification discloses: "In results page 223, a results list 226 contains section 228 . . . In separate section 238, non-member physicians meeting the search

criteria are listed." (7:33-43).  In Figure 2B, the advertisement 224 is not disclosed as part of the results list 226 or its sections 228 or 238.  Health Grades chose not to claim the embodiments disclosed in Figures 2A and 2B, but rather chose to claim an advertisement **included in** the results list.  Disclosed embodiments that are not claimed are outside the scope of the claims, and Health Grades must be held to its chosen claim language.  *Johnson & Johnston Assoc. Inc. V. R.E. Service Co., Inc.*, 285 F.3d 1046, 1051 (Fed. Cir. 2002).

> ***The phrase "the results list further includes an advertisement" means the results list contains an advertisement as a part of the results list.***

## IX. MEMBER OF THE COMPANY MANAGING THE WEBSITE / MEMBER HEALTHCARE PROVIDER

Claim 9 requires "a member of the company managing the Web site", and claims 9 and 10 refer to the same "member healthcare provider".  Health Grades withdraws the term "member" (which Health Grades proposed) for construction, and MDx agrees that the term "member" alone needs no construction.  MDx, however, does not withdraw the phrases "member of the company managing the website" and "member healthcare provider" (which MDx proposed) for construction.

Throughout the claim construction process, MDx has objected to construing the term "member" alone.  The term "member" by itself simply begs the question: member **of what**? The '060 Patent includes two uses of member: one being "member of the company managing the Web site" (21:49-56), and the other being "member of the company's service" (15:26-27). These two disclosures clearly have different meanings, as a member of a company's service is not automatically a member of the company itself, and vice versa.  Health Grades chose not to claim the disclosed embodiment of a "member of the company's service" (15:26-27), but rather

chose to claim "member of the company managing the Web site".  Disclosed embodiments that are not claimed are outside the scope of the claims.  *Johnson & Johnston Assoc. Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1051 (Fed. Cir. 2002).

**_The phrases "member of the company managing the website" and "member healthcare provider" mean member of the company entity that is managing the Web site._**

## X.    <u>CONCLUSION</u>

For all the foregoing reasons, MDx respectfully requests its recited claim constructions.

Dated:  December 19, 2011                 Respectfully submitted,


                                          *s:/Scott D. Stimpson*
                                          Scott D. Stimpson
                                          Mark J. Rosenberg
                                          David C. Lee
                                          Sills Cummis & Gross P.C.
                                          30 Rockefeller Plaza
                                          New York, New York 10112
                                          Tel: (212) 643-7000
                                          Fax: (212) 643-6500
                                          E-mail: sstimpson@sillscummis.com
                                          E-mail: mrosenberg@sillscummis.com
                                          E-mail: dlee@sillscummis.com

                                          and

Terence Ridley, Atty. No. 15212
Ramona Lampley, Atty. No. 37288
Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com
E-mail: lampley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on <u>December 19, 2011</u>, I electronically filed the foregoing MDX MEDICAL, INC.'S CLAIM CONSTRUCTION RESPONSE AND EVIDENCE with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez , Jr.**
  jvazquez@rothgerber.com, phenke@rothgerber.com

- **Kris John Kostolansky**
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- **Jeffrey David Phipps**
  jphipps@rothgerber.com, kmeans@rothgerber.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Mark Jon Rosenberg**
  Mrosenberg@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

- **Ramona L. Lampley**
  lampley@wtotrial.com, keitlen@wtotrial.com

_s:/_   David C. Lee_____