1                 IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF COLORADO

3     Case No. 11-CV-00520-PAB-BNB

4     _____

5     HEALTH GRADES, INC.,

6         Plaintiff,

7     vs.

8     MDX MEDICAL, INC.,
      *doing business as* Vitals.com,

9

10        Defendant.

11    _____

12         Proceedings before BOYD N. BOLAND, United States
      Magistrate Judge, United States District Court for the
13    District of Colorado, commencing at 10:05 a.m.,
      December 2, 2011, in the United States Courthouse,
14    Denver, Colorado.

15    _____

           WHEREUPON, THE ELECTRONICALLY RECORDED
16    PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

17    _____

                              APPEARANCES
18
      MR. JESUS M. VAZQUEZ, JR., ESQ., MR. GREGORY KANAN, ESQ.
19             Appearing on behalf of the Plaintiff.

20     MR. SCOTT D. STIMPSON, ESQ., MS. RAMONA LAMPLEY, ESQ.
               Appearing on behalf of the Defendant.
21    _____

22
                       MOTION HEARING - PARTIAL
23

24

25

```
 1                P R O C E E D I N G S
 2              (Whereupon, within the requested portion of
 3      the electronically recorded proceedings are herein
 4      transcribed, pursuant to order of counsel.)
 5              THE COURT:  That brings us to the motion to
 6      strike.  Mr. Stimpson.
 7              MR. STIMPSON:  Thank you, Your Honor.  As
 8      you're aware, Your Honor, in this court's scheduling
 9      order, plaintiff Health Grades was ordered to provide
10      their infringement contentions by July 1.  They did
11      that, they provided their infringement contentions, then
12      chose to assert only one claim element under the
13      Doctrine of Equivalents.  Now, they're asking this court
14      several months later to allow them to supplement, to add
15      information that they had back at the time of the
16      original contentions.
17              The ability to amend under these Northern
18      District of California rules under which we're operating
19      is very limited.  There has to be a timely showing of
20      good cause.  So, since timeliness and diligence are the
21      central issues here I'll start with just a brief
22      recitation of the chronology, because I think it's
23      critically important.
24              It starts in April, Your Honor, when we filed
25      our motion for summary judgment.  We filed that on just
```

1   one claim element.  The comparison ratings element.  But

2   in there we made it very clear that there were other

3   noninfringement defenses.  We said the same thing in

4   June 9 when we filed our statement of claims and

5   defenses, and we had several other noninfringement

6   defenses.

7          Then on June 14, in response to your order,

8   Your Honor, that we discussed -- specifically discussed

9   claims and defenses, my associate Mr. Lee and I had a

10  conference with counsel for Health Grades where we laid

11  out specific other noninfringement defenses.  This was

12  more than two weeks before their infringement

13  contentions.  That's -- none of that is contested.

14         The next important date is July 1 when we got

15  their infringement contentions.  As I say, they had only

16  one equivalents argument there, and the reason they gave

17  for not giving any other equivalents was because MDX had

18  supposedly conceded literal infringement on every other

19  claim element.  That was just absurd, Your Honor, and I

20  just can't see how that was done in good faith.

21         The next important date is August 2.  It's

22  Exhibit E to my -- to our memorandum, Your Honor.  We'd

23  actually started talking with them saying, look, you

24  know, that's not a good reason.  You have to give these

25  infringement -- these equivalents positions if you're

1    going to make them.

2         My August 2 e-mail told them absent a prompt

3    supplement that we were going to take the position that

4    Health Grades had waived all their other equivalents

5    arguments.  So as of August 2 we were first being

6    cooperative, because I want to try to be cooperative.

7    You know, we'll let you do it.  I don't like what you

8    did in response to the court order, but we're going to

9    let you supplement.  We're not going to object.

10   August 2.  But we told them they had to do it promptly,

11   and we made it very, very clear that we were going to be

12   here arguing this today if they didn't -- if they didn't

13   promptly supplement.

14        There are two other e-mails that I'd like to

15   submit to the court in response to their opposition

16   memorandum.  If I -- if I may, there's -- there's a

17   September 8 and a September 22 e-mail.  May I approach?

18        THE COURT:  You may.  Thank you.

19        MR. STIMPSON:  The September 8 one was a long

20   e-mail, and I just gave you the -- I have a complete

21   copy if you want it, I'll give it to (inaudible).  So

22   the next important date, Your Honor, is September 8.

23   And we see there in that paragraph 3 I raise this issue

24   again.  Now, this is more than a month after I told them

25   that we were going to find their -- we were going to

1    consider their equivalents arguments waived.  And I

2    raised this, and then in the last sentence I say, We

3    want to be cooperative, but it's been weeks since this

4    analysis was due, and we will need the supplementation

5    relatively soon, please, or we will take the position

6    that all other equivalents positions have been waived.

7              So, again, now September 8, this is -- this is

8    now more than two months after the infringement

9    contentions were due, and I'm still offering to let them

10   do this.  The September 22 e-mail, that's the next

11   important date, Your Honor.  The second page there's a

12   heading supplementing infringement contentions, and this

13   is where I drew the line.  In the first two sentences,

14   Your Honor, you can see I told them, look, the time has

15   passed.  You haven't taken us up on our offer to

16   supplement and we're not going to allow -- we're not

17   going to agree that you can do it anymore.

18             I should explain that last sentence there,

19   which says that we may, underline "may," still be

20   willing to reach agreement.

21             The day before I'd had a conversation with

22   counsel for Health Grades and we actually talked about

23   both the motions that are before the court today and one

24   of the things that was being batted about was a

25   possible -- you know, for want of a better a word, a

1   possible horse trade.  If they didn't object to us

2   adding inequitable conduct, you know, we might be

3   willing to still give them more time to -- to provide

4   the supplement.  I told them it was on a rubber band.  I

5   hadn't talked to my client about it.  I wasn't even sure

6   that I would agree to it, but as it turned out we didn't

7   need to talk to my client because Health Grades rejected

8   it.

9           So, September 22, that's when we told them

10   that's all.  We're not going to -- we're not going to

11   agree that you can do this anymore, it's been too long.

12           The next important date is October 20.  That's

13   when we got the supplemental infringement contentions.

14   And the final important date, Your Honor, is

15   November 29, which is Tuesday of this week.  And that

16   date is important because these requirements for

17   supplementing require a timely showing of good cause,

18   and that was the first time Health Grades had ever made

19   a showing of good cause or any argument for good cause

20   to this court.  So, this is the issue before the court.

21           The rules plainly state that you can

22   supplement infringement contentions only by order of the

23   court upon a timely showing of good cause.  So, there

24   are two elements here.  Health Grades has to show that

25   there is good cause why they didn't put this in their

1    original infringement contentions, or that they were

2    diligent in supplementing.  And the second important

3    requirement is they had to have shown that -- made a

4    showing of that good cause to the court in a timely

5    manner.  So I'm going to address those separately.

6            As far as the good cause, Your Honor,

7    honestly, if Health Grades had filed a paper on July 2

8    asking to supplement their infringement contentions I

9    would have said no way.  You know, I'd offered them

10   before, but the court would be perfectly within the

11   scope of the rule by saying no, because there just isn't

12   good cause.  They knew as far back as April that we had

13   these other noninfringement defenses, and they knew

14   specific noninfringement positions in June before their

15   first infringement contentions and yet they took the

16   position that, you know, we had conceded all literal --

17   other literal infringement elements and, therefore, they

18   weren't going to do that in there infringement

19   contentions.  I mean, that's just not good cause.

20           So, I'd like the court to -- to emphasize the

21   *02Micro* case which is a federal circuit opinion that

22   we've cited.  There, the court is talking about this

23   Northern District of California rules, and they

24   emphasize that you have to -- if you're going to try to

25   supplement you have to act with diligence and promptly

1    moving to amend.  And at page 1366 of that federal

2    circuit case they tell you why this is the case.

3    Because if -- if you're not required to do this promptly

4    these contentions requirements would be meaningless.

5            So Health Grades' opposition brief has really

6    two arguments.  The first one surprised me.  They say at

7    pages 2 and 4 that we had an agreement that if I would

8    let them -- if they would let me supplement my

9    invalidity contentions that they could supplemental

10   their infringement contentions.  Well, if you look at

11   the brief, Your Honor, there's no citation for that.

12   There's no declaration.  There's no confirming letter.

13   That -- that just didn't happen.

14           I think what they might be referring to, and

15   this is actually referenced in Exhibit E.  The only time

16   invalidity contentions came up here was -- I told him,

17   look, we'll let you supplement if you do it promptly.

18   But if you do that, you know, since you're changing the

19   playing field here, we may have to supplement our

20   invalidity contentions, and if that's the case obviously

21   you can't object to that.  That's the only time

22   invalidity contentions came up.

23           THE COURT:  Will you now have to supplement

24   your invalidity contentions in view of the allowed

25   amendment?

1          MR. STIMPSON:  I think -- I think we probably

2    will, Your Honor, yes.  I mean, what we're going to have

3    to do -- you know, what happens for invalidity

4    contentions, we get their infringement contentions and

5    you order -- you know, you do this prior art search and

6    you get a stack of prior art.  Then you go through every

7    prior art and you compare it element by element, element

8    by element.

9          And a critical, critical piece of information

10    when you're doing that is the infringement contentions.

11    Because if there's an element that you look at and say,

12    you know, it doesn't really meet that claim element.

13    This isn't going to fly.  We're going to put it in the

14    do-not-use pile.  Well, if the plaintiff has taken a

15    position that something in our product or something

16    similar to that element that's in the prior art meets

17    the claim element, then that's -- turns into a great

18    piece of prior art.

19          So what we'd have to do, we would have to go

20    back and review.  And I -- I strongly suspect we would

21    have to amend.  I strongly suspect we would.  And

22    there's only six weeks left in fact discovery.  Our

23    expert reports I think are due in six weeks.  So that

24    would be a real prejudice to us, Your Honor.

25          Health Grades also argues --

1          THE COURT:  I'm not sure I made my -- my

2     question clear.

3          MR. STIMPSON:  Oh, I'm sorry.

4          THE COURT:  I've now allowed you to amend to

5     assert inequitable conduct.

6          MR. STIMPSON:  Yes.

7          THE COURT:  In view of that, regardless of --

8     of these proffered, what you consider to be, late

9     contentions, do you have to now amend your invalidity

10    disclosures?

11         MR. STIMPSON:  To address the prior art that

12    is in the inequitable conduct?

13         THE COURT:  Yes.

14         MR. STIMPSON:  Well, we already have it in

15    there, Your Honor, to a great degree.  And, actually,

16    it's a very good question because I'm struggling with

17    that myself a little bit.  Because, as I say, we're

18    getting in this new prior art in drips and drabs and

19    every new piece of information, you know, technically,

20    okay, now we know it has this element, or now we know it

21    has that element.  And so, do we have to amend our

22    invalidity contentions every time we get another piece

23    of prior art?

24         As I say, there's a thousand electronic hits

25    mentioned in this prior art.  When I get that data, it's

1  been three months, there's going to be more in there.

2  So, I -- I think the answer is that we may have to amend

3  based on the new information we're going to get from

4  them.  And if so, if we feel like we need to do that

5  then we'll make a motion, but we already have that prior

6  art in our invalidity contentions right now.

7          I hope that answered your question.

8          THE COURT:  I think so.

9          MR. STIMPSON:  Um, the next argument Health

10  Grades make is that -- makes is that our document

11  production prompted this supplement.  Well, Your Honor,

12  the best answer I can give for that is to -- if you look

13  at Exhibit D to our memorandum, it's a redline showing

14  what they added.  And if you just go through, they do

15  have citations to our documents.  But you'll go through

16  and you'll see there's nothing in those documents that

17  could possibly change any theory of infringement.  There

18  really isn't.  And, in any event, those documents were

19  produced about two months before they supplemented.

20          THE COURT:  And maybe I'm missing something.

21  Do I have the documents?

22          MR. STIMPSON:  You have -- no, I don't think

23  you have the underlying documents.  What you have is

24  their proposed supplemental infringement contentions.

25  And in that chart they cite certain documents.

1          THE COURT:  Right.

2          MR. STIMPSON:  And they give you a

3    parenthetical saying this is what it says.

4          THE COURT:  Right.

5          MR. STIMPSON:  So you can tell what they're

6    relying on the document for.  So -- so, if you look at

7    that, Your Honor, you'll see there's nothing there that

8    could have possibly changed any infringement theory.

9    And I think the new equivalents arguments are

10   particularly important for me to note here, because I

11   went through and I counted that they added 13 new

12   paragraphs alleging equivalents.  Thirteen new

13   paragraphs.  Eleven of those don't cite any MDX

14   documents at all.  Okay?  So we know they aren't relying

15   on the MDX documents for those.  And the two they do

16   rely on are just -- just silly little things like a MDX

17   document showing that we want our website to be accurate

18   or something like that.

19          So, it's just -- it's just not an answer, Your

20   Honor.  The documents were produced months ago, and you

21   can tell from their contentions they aren't, in fact,

22   relying on those documents especially for equivalents.

23          THE COURT:  And you say that the documents

24   referenced in the supplemental disclosures were -- were

25   produced when?

1          MR. STIMPSON:  They were produced like two

2     months ago.  I think --

3          MR. VAZQUEZ:  August 29.

4          MR. STIMPSON:  Yeah, it was about -- about two

5     months ago, Your Honor.

6          THE COURT:  Thank you.

7          MR. STIMPSON:  And I think, you know, the best

8     place to look at that are Exhibit D, because that's the

9     redline, otherwise you won't know what's new and what's

10    not.

11         Um, so, I mean, I can't emphasize enough the

12    equivalents part of that too, Your Honor.  Because 11 of

13    the 13 new paragraphs that they had added don't even

14    reference our documents.  So, we think the whole thing

15    should be stricken, but at the very least the

16    equivalents arguments.

17         Plaintiff cited two case in support of their

18    opposition.  One is the *ZiLOG* case, and according to

19    plaintiff that supports their proposition that there's

20    diligence if you wait three months to move to

21    supplement.  That case does not say that, Your Honor.

22    And if you're interested there's another case, *Berger*

23    *versus Rossignol*, where the plaintiff tried to make the

24    same argument using *ZiLOG* and the California court

25    rejected it.  It's 2006, Lexus 23085.

1          So, what actually happened in *ZiLOG* is they

2     gave their infringement contentions and then eight days

3     later the court stayed the case for a re-exam.  And then

4     when the plaintiff -- after the re-exam the plaintiff

5     moved to lift the stay and at the same time said, oh, by

6     the way everybody, you know, we're going to have to

7     amend our infringement contentions because things had

8     happened at the patent office.  So everybody knew it.

9     And actually did it some weeks later, but there was no

10     surprise there and everybody knew it.  So that most

11     certainly does not stand for the proposition that you

12     can wait three months.

13          And another point, for both their cases they

14     cite *Biogenics* and *ZiLOG*.  Those were under an old rule,

15     Your Honor, in the Northern District of California.  And

16     there's only -- in 2008 they were changed.  And there's

17     only one difference, but it's an important difference.

18     They added the timeliness requirement.  So both of those

19     cases were under a rule that did not require a timely

20     showing of good cause.

21          So, the good cause -- there's just no good

22     cause here, Your Honor.  They knew of our specific

23     noninfringement defenses in June.  They just did not do

24     it and gave an answer that -- a reason why they weren't

25     giving equivalents arguments, in those -- and the court

1    ordered infringement contentions that just -- I just

2    can't say it was done in good faith when they say that

3    we had conceded all our other infringement.  They knew

4    better than that.

5           So the only other issue here, Your Honor, is

6    timeliness.  The rule requires that they timely move for

7    good cause.  We -- we cited a *Tokai* case in our brief,

8    and it's instructive on that, Your Honor.  Just reading

9    from what the California court said there:  As to

10   timeliness, defendants never moved the court for leave

11   to file supplemental contentions, they only opposed

12   plaintiff's motion.

13          That's exactly what we have here, Your Honor.

14   They served -- you know, months after their original

15   contentions they served them on us and didn't make --

16   didn't even bother to try to ask this court for a leave.

17          The California court says:  The 2008 Patent

18   Local Rules also require good cause and play special

19   emphasis on timeliness by explicitly mentioning it.

20   Accordingly, defendant's delay in communicating with the

21   court, weighs strongly against a finding in their favor.

22          That's the *Tokai* case.  That's what we have

23   here, Your Honor.  They did not even try to say anything

24   about good cause until November 29, until this week.

25   That's seven months after they knew we had multiple

1    noninfringement defenses.  It's five months after we

2    told them our specific noninfringement defenses.  It's

3    four months after my August 2 e-mail telling them that

4    they had to move promptly or we're going to say that

5    they were waived.  It's two months after my September 22

6    e-mail saying we're no longer going to agree that you

7    can supplement, and it's 40 days after they sent us

8    their proposed supplemental contentions.

9            Under no stretch, Your Honor, could that be a

10   timely showing of good cause to this court, and the

11   California courts are routinely in support of that.

12           If you have any questions, any further

13   questions, Your Honor, I'm happy to answer them.

14           On -- on the prejudice front -- I'm sorry.  I

15   should just make one more mention of prejudice because

16   they raise -- they say there's no prejudice to us in

17   their opposition brief, and we've talked about the

18   invalidity contentions a little bit, but if they don't

19   show diligence prejudice is not relevant.  There has

20   been prejudice.  I mean, it changes the entire playing

21   field and we're six weeks from the close of fact

22   discovery here.  And we've talked about the invalidity

23   contentions and what I'm going to have to do, but we

24   really don't even have to show prejudice because they

25   can't show diligence.

1          THE COURT:  The infringement contentions --

2          MR. STIMPSON:  Yes.

3          THE COURT:  -- which is what we're talking

4     about.

5          MR. STIMPSON:  Yes.

6          THE COURT:  Do they play any part in the

7     Markman construction?

8          MR. STIMPSON:  Oh, yes, Your Honor.  That's

9     another way we're prejudiced.  I mean, when we do our

10    claim constructions, and we've all submitted our -- I

11    think we've submitted our proposed claim terms to the

12    court now.  At least we've exchanged them and the

13    support.  You know, that and the validity contentions

14    are A and B.  I mean, that's what everything is based

15    around.  So, now we're starting down this road.  We've

16    got a Markman hearing in January.  We've got briefing

17    coming up.  I think, in fact, Monday they have their

18    brief due on -- on claim construction.

19          So, when they change their -- you know, they

20    try to change everything at this late stage it changes

21    -- it changes everything.  I mean, you just -- you're

22    working from an entirely different set of allegations,

23    new allegations.  So, yes, it does change it.  That

24    validity contentions and, you know, generally all our

25    defenses -- you know, maybe that's too strong, but our

1    defenses revolve around what their allegations are.  So

2    there's a substantial prejudice here.

3            THE COURT:  Thank you.

4            MR. STIMPSON:  Thank you.

5            THE COURT:  Mr. Vazquez.

6            MR. VAZQUEZ:  Your Honor, I'm just going to

7    start moving backwards from what we heard here from

8    counsel from MDX.  Um, there simply is no prejudice

9    here.  Um, there is still six weeks left in fact

10   discovery, and no prejudice was alleged.  I understand

11   the technical distinction counsel is making where if

12   there's no diligence you don't have to prove prejudice,

13   but one would think that if there was any true prejudice

14   a paragraph or two would have been included in their

15   motion and -- an none was.  Here, not a single

16   deposition has been taken.  There's still ample time to

17   explore these contentions.

18           Furthermore, Your Honor, counsel has been on

19   notice of these infringement contentions and that we

20   were making these equivalents arguments since July 1st,

21   included that in our initial contentions.  Um, now --

22           THE COURT:  Well, I thought I looked at those,

23   and I saw a footnote, I think, that says, um, or a

24   statement just as counsel indicated that everything's

25   conceded except one point, which is raised in the motion

1    for partial summary judgment and so, therefore, you're

2    not going to present that information.

3            MR. VAZQUEZ:  Well, no.  In Section E of the

4    initial contentions states that here's what we're

5    presenting, and to the extent MDX was going to allege

6    that there were other claim elements that are not

7    infringed, then we would supplement.  It's important,

8    Your Honor, to -- to look back at how the context in

9    which these dates under the patent rules affect these

10   disclosures.

11           Discovery in this case could not even be begun

12   until June 8th, and our deadline for providing these

13   initial contentions was July 1st.  So even if we had on

14   June 8th asked them to give us all the -- you know,

15   their arguments of what claims are not infringed and

16   why, we would have not have had that information by the

17   time our initial infringement contentions were due.

18           THE COURT:  Well, maybe, but I adopted your

19   proposed schedule.

20           MR. VAZQUEZ:  Yes.  Yes, Your Honor.  And as

21   you're aware after that both parties did amendment to

22   their contentions just by agreement, and we moved the

23   court for permission to do so.  So, the point I'm trying

24   to make, Your Honor, is that it was very well known --

25   and while counsel selects certain e-mails between us,

1    what he's not brought up to the court are numerous phone

2    conversations that we have had since the beginning of

3    the case.  And so it was an understanding that I thought

4    we had, both sides would require supplementing --

5    supplementing these -- their respective contentions; our

6    infringement contentions; their invalidity contentions.

7    And that we told them from the get-go, we are going to

8    have to supplement these.  You know, we'd like to do it

9    after we get your documents, after we take some

10   discovery.  We think that's logical.

11            One month after we -- we produced the

12   infringement contentions, counsel -- he says we didn't

13   cite, you know, the agreement.  Well, we did in our

14   motion, Your Honor, and it's -- excuse me.  It's the

15   very e-mail that counsel brought -- cited in their

16   motion, the September 2nd e-mail in which they say, you

17   know, absent a prompt supplement we're going to --

18   we're -- you know, and your agreement to allow us to

19   supplement, we're going to argue that you waived.

20            THE COURT:  Right.  That's the August 2

21   e-mail.

22            MR. VAZQUEZ:  Correct.

23            THE COURT:  Yeah.  It's a long time from

24   August 2 to October 20th.

25            MR. VAZQUEZ:  Right.  But what -- what is not

1    in any e-mails, because it was simply discussed among

2    counsel, is that we said fine.  We'll -- we'll agree to

3    let you supplement your invalidity contentions and we

4    will supplement.  So the whole concession thing is

5    really a red herring here, Your Honor.  We went, okay,

6    you're not conceding this, fine.  We will supplement.

7    But what makes the most sense here is that we wait until

8    we get discovery and we, you know, just try to avoid

9    having, you know, piecemeal supplements and have a

10   supplement when, you know, we feel we have all the

11   information.

12          THE COURT:  Well, now Judge Wapner -- my

13   favorite judge, just like the second rule of thermal

14   dynamics is my favorite law -- always said get it in

15   writing.

16          MR. VAZQUEZ:  Yeah.  Well --

17          THE COURT:  But you don't seem to have this in

18   writing.

19          MR. VAZQUEZ:  No.  What I have in writing is

20   our letter just one month later saying here is what we

21   want you to supplement with your invalidity -- as far as

22   your invalidity contentions.  I mean, they say we'll let

23   you supplement if you'll let us supplement.  One month

24   later I send a letter saying here's what we think you're

25   supplement should have.  Here's what we think your

1    invalidity contentions are deficient.  To me, you know,

2    with those two pieces of paper and the conversations of

3    counsel, there is no doubt that we thought we had an

4    agreement that we could do this.

5         And even their e-mail that he brought to the

6    court today says we may allow you to supplement.  To me

7    that was a surprise.  We had already talked about this.

8    It seemed like he was just on the fence.  And the

9    *02Micro* case talks about that type of exact circumstance

10   where counsel, you know, believed to have an agreement

11   or are misled into thinking there may be an agreement.

12   Well, you know, that's something that needs to be

13   considered in favor of allowing the amendment.

14        Now, counsel I believe said here today that we

15   never said anything about good cause until just

16   November 29th.  That's simply not the case.  We've been

17   saying in communications since we filed our initial

18   contentions, hey, we have good cause to -- you know, we

19   need answers.  We asked -- you know, there's e-mails

20   that are not before the court and we said, well, okay.

21   In anticipation of supplementing these equivalents

22   arguments can you tell us this, can you tell us that.

23        And, you know, just as counsel says it's been

24   painful on their end, it's been painful on our end.

25   They haven't exactly been forthwith in saying, well,

1   sure, here's our position on that, now will you

2   supplement.  (Unintelligible) well, we don't feel we

3   need to tell you more of anything.

4        So, you know, I think that's just something

5   that's pretty important here that there's been a course

6   of conduct that's been described in our response, Your

7   Honor, on the very get-go where they knew that we would

8   supplement, we responded -- they asked for the

9   supplement, they agreed to allow to supplement.  The

10  fact that towards the end they started reconsidering

11  whether they would allow that or not, well, come on.

12       Now, the cases, Your Honor, I think that the

13  fact that we received a very significant amount of

14  materials from them, many of which had all kinds of

15  technical problems, were illegible, it took a while to

16  review that stuff and to put together our supplemental

17  contentions.  It still took less than two months from

18  the time we received those documents.

19       And you can see from the redline, Your Honor,

20  that counsel attached to their motion, you know,

21  that that was -- the supplement was very, very heavily

22  based on that new production from them.  Similar to

23  their motion for inequitable conduct in which they cite

24  a press release, says, oh, we finally got this from

25  counsel all this time later and, therefore, we should be

24

1    allowed to make this amendment.  Well, here we, you

2    know, received these documents in which, you know, very

3    much support the supplement that we filed.

4            And not only that, Your Honor.  You know,

5    after we sent them the supplement, they didn't say, hey,

6    what the heck is this, um, you know, we don't accept

7    this.  We said, okay, well, can you tell us what's

8    different.  And I said, well, I sent you a detailed

9    cover communication stating what's different.  He said

10   that's not enough.  How about a redline.  And we went

11   and produced the redline.  So, here's the differences

12   between the first one and the second one.  To me that

13   all seemed in accord with the agreement that we thought

14   we had, which is we can supplement.

15           So, the case is, as we cite in our response,

16   Your Honor, (unintelligible) when you have an agreement

17   or you think you had one, well, you know, that -- that

18   should be enough to show good cause and diligence.

19           THE COURT:  I'm having a little trouble with

20   this agreement business.  In your view, when did you

21   have to -- when did the agreement say -- by what time

22   did the agreement say you had to supplement?  You point

23   to an August letter and say here's the agreement, but

24   then it's more than 60 days after that, and only after

25   you get a letter -- an e-mail saying now it's too late,

1    then finally you supplement.  What was the agreement?

2    Indefinitely you can supplement?

3         MR. VAZQUEZ:  Well, no.  Clearly not, Your

4    Honor.  And it wasn't made indefinitely, it was made

5    less than two months after receiving their information.

6    Now, I understand your question.  Their -- their, you

7    know, offer to us was you make a prompt settlement -- or

8    supplement and don't -- don't oppose us supplementing,

9    this is fine.

10        Now, I guess we can quibble what is prompt or

11   not, but we -- after that, Your Honor, there was

12   significant communications about, well, listen, we --

13   here's our questions to you about the -- you know,

14   information that we need about to make our equivalent

15   supplement.  And further, we need documents that --

16   that, you know, we think bear on our anticipated

17   supplement.

18        So, the fact that -- that this occurred, okay,

19   and then a little later we get an e-mail that says,

20   well, we may allow you to supplement, you know, that's

21   not, no, the time has passed.  It's, we may allow you to

22   do so.  Well, you know, what I felt like saying is, you

23   know, you're -- you're not the judge in the case here.

24   We've agreed to supplement and we've agreed to not

25   oppose your supplement.  We recognize you like things to

1    be happening faster, but we're moving as quickly as is

2    adequately available, you know, or prudent for us.  I

3    mean, it just takes a long time to evaluate these

4    materials and put this together.  If you look at the

5    supplement it's not a simple little, you know, exercise.

6          So, you know, to me what's, you know, here

7    before the court is whether there is good cause.  And

8    there is.

9          And as I noted in our response, Your Honor, we

10   just got 6,000 pages of an additional production.  Now,

11   what if that discovery, once we get done reviewing it,

12   calls for an additional supplement?  Are we going to say

13   it's too late?  I mean, counsel's position on that

14   production is that they had these documents, but because

15   they had objected to our requests for them they were

16   holding them.  Yet suddenly they're produced six days

17   before we're supposed to take depositions in New York.

18         Now, it's our practice, we will object to --

19   you know, as -- as permitted under the rules, but

20   nonetheless, we will produce the responsive documents

21   without waiving our objections.  So, what -- what will

22   happen, you know, once we get done reviewing these 6,000

23   pages and likely have to take a production -- or

24   supplementation based on that production?  Are we going

25   to say, oh, it's too late?

1          So, you know, I guess we'll take that -- you

2     know, we'll cross that bridge when we get to it.  But

3     here, Health Grades is entitled to a full adjudication

4     on the merits, and we should have all the information

5     before the court.

6          THE COURT:  Well, I saw that argument in your

7     papers.  And perhaps my greatest concern here is that in

8     my view rules are power, and it looks to me like you're

9     not following the rules.  There is this Northern

10    District of California rule that says you have to move

11    and you didn't.  And then there's the Colorado local

12    rule that says you can't move in a response, but you

13    did.  Um, and so --

14         MR. VAZQUEZ:  Uh-huh.

15         THE COURT:  -- what am I to make of a lawyer

16    or a party, whichever it is, who just doesn't seem to

17    play by the rules, and you get an adjudication on the

18    merits if you comply with the rules.

19         MR. VAZQUEZ:  Well, Your Honor, let me address

20    the issue on the local rules requiring a motion -- or

21    not -- you know, the patent rules requiring a motion.

22    As Your Honor knows we filed two motions, each one is

23    unopposed, to allow each other to amend our respective

24    contentions.  When it came time to make the supplement I

25    looked at the schedule that's in the scheduling order on

1    page 7 -- 6 and 7, and there's not a deadline for

2    supplementing.  Rule 3.6 clearly states you've got to

3    move to amend.

4            Now, I may have been wrong, but this is not a

5    surprise to the opposing side because I made this --

6    this position known to them.  I said, look, we're going

7    to supplement our infringement contentions as we've been

8    telling you.  And, um, we're looking at the schedule and

9    there's not a deadline to supplement, which to me is

10   we're just following up on -- on previously supplied

11   information.  There's nothing new here.  There's not a

12   new change of arguments or change of position.  There's

13   nothing new.  You've known this has been coming, so --

14           THE COURT:  How -- how is it they knew?  I

15   mean, I've looked at the redline and there's a lot of --

16   there's a lot of underlined, which is addition.

17           MR. VAZQUEZ:  Yes.

18           THE COURT:  So what should I compare that to

19   to see if it's an amendment or a supplement?  Is that --

20           MR. VAZQUEZ:  Well --

21           THE COURT:  -- one of these exhibits that --

22   what came immediately before Exhibit D?

23           MR. VAZQUEZ:  Well, what you can look at

24   first, Your Honor, is our initial contentions filed on

25   July 1st where we said we will make these additional

```
 1   equivalent arguments, you know, once we know that you're

 2   not conceding them.  If you're not conceding them, we'll

 3   make them.  So, to me, they've known since then that we

 4   are making equivalent -- we were going to make

 5   equivalents arguments on all other elements other than

 6   the comparison ratings elements.  So the supplement

 7   is -- is that.  We're just supplementing that argument

 8   with the support for the argument.  We saw it different

 9   as an amendment which, you know, we believe was just

10   brand new.  New things.

11            THE COURT:  All right.  So you've amended

12   once?

13            MR. VAZQUEZ:  Each party has.

14            THE COURT:  You've amended once?

15            MR. VAZQUEZ:  Yes.

16            THE COURT:  Is your amended disclosure among

17   the documents before me?

18            MR. VAZQUEZ:  Um, it wasn't in the briefing,

19   but it -- you have it before you in -- in their brief,

20   yes.  Yes.

21            THE COURT:  Okay.  Okay.  Which exhibit?  Yes,

22   I have their brief in front of me.  That's where

23   Exhibit D is.  What --

24            MR. VAZQUEZ:  Yes.

25            THE COURT:  -- exhibit is your --
```

1          MR. VAZQUEZ:  Let me grab it, Your Honor.

2          THE COURT:  -- amended disclosure?

3          MR. VAZQUEZ:  It would be at Exhibit C, Your

4    Honor, of their motion.

5          THE COURT:  Okay.

6          MR. VAZQUEZ:  62, dash, 4.

7          THE COURT:  Well, you call that a supplement.

8          MR. VAZQUEZ:  Yes.  But, you know --

9          THE COURT:  There's not much -- there's not

10   nearly as much new here as there is in Exhibit D because

11   it's pretty brief.

12         MR. VAZQUEZ:  Well, what led to this filing,

13   Your Honor, of Exhibit C was that at the time we made

14   the initial contentions we wanted additional time to

15   make sure there was not anything else which would have

16   been new.  But since we agreed to file this, you know,

17   by this time, and we made a determination that, okay,

18   well, this is all we have as of now and here it is.  You

19   know, the point I'm trying to make --

20         THE COURT:  No.  No.  No.  No.  This

21   amendment --

22         MR. VAZQUEZ:  Yes.

23         THE COURT:  -- which you say requires court

24   approval because it's a bigger deal because you're

25   changing things, you didn't change anything.  You say

1    this information was provided July 1; this information

2    was provided July 1; this information was provided

3    July 1; this information was provided July 1.  Where you

4    change something --

5                 MR. VAZQUEZ:  Uh-huh.

6                 THE COURT:  -- and you say it's not very

7    important because it's just a supplement, but it's a

8    whole lot, is D.  I don't -- I don't follow that one

9    whit.

10                MR. VAZQUEZ:  Well, Your Honor, let me explain

11   here.

12                THE COURT:  Okay.

13                MR. VAZQUEZ:  Because the motion to the court

14   that preceded this amendment as Exhibit C was made, you

15   know, prior to filing by agreement between counsel.

16                THE COURT:  Prior to filing C.

17                MR. VAZQUEZ:  Yes, sir.

18                THE COURT:  But C is --

19                MR. VAZQUEZ:  Right.  But at the time the

20   motion --

21                THE COURT:  Let me ask you this.  What's the

22   difference between -- you've made a huge distinction

23   here between an amendment and a supplement.  Sounds like

24   logistics to me, but you've made a big distinction.  So,

25   you say an amendment is important and needs court

1    approval because it changes things, but a supplement

2    just adds to it a little bit.  That seems to me belied

3    by Exhibits C and D.

4             MR. VAZQUEZ:  Exhibits C and D --

5             THE COURT:  Which you've just directed me to

6    of the defendant's motion to strike.

7             MR. VAZQUEZ:  Well, here is the -- the

8    distinction, and here is really the point I'm trying to

9    make.  I'm sorry if I'm not being clear --

10            THE COURT:  Okay.

11            MR. VAZQUEZ:  -- Your Honor.  Rule 3.6 does

12   just say, to amend you must move for the -- move the

13   court for permission.  And am obviously conscious of

14   that because we moved to amend twice.  I understand

15   it -- it says supplement but what we thought we were

16   doing was amending, because when we moved for that we

17   thought there may be new material not previously

18   discussed.  As it turned out, by the time we made the

19   filing that you see in Exhibit C there wasn't anything

20   new.  But we still had to comply with our promise to

21   file this document under the patent rules.

22            When it came time for the supplement this, you

23   know, as you can see, followed a -- a lengthy time of

24   going back and forth with counsel, and it -- you know,

25   it's important, Your Honor, to know that when we

1    decided, okay, we're making the supplement.  We're going

2    to make it by this date.  That's the time we think we'll

3    be done with it.  And I said to him, you know, I don't

4    think we need to file a motion because this is a

5    supplement and we see this as our duty to supplement

6    what we already said we were going to do.  Well, they

7    didn't come back and say, you know, jeez, no, you've got

8    to file a motion and we want it to be opposed.  You

9    know, so this was all -- to me, seemed in accordance

10   with an agreement.  And so -- and, again, when we filed

11   it it wasn't like, hey, you've got to file a motion and

12   we want it to be opposed.  It was, oh, can we have a

13   redline.

14         And then the distinction between new and not

15   new is simply that Exhibit C could have well contained

16   brand new material.  By the time it was time to file it,

17   there was no new material, hence, the references to our

18   prior filing on July 1st.

19         Now the supplement, it just contains

20   supplemental arguments on matters that have already been

21   teed up.  That's what I'm trying to say.  Certainly, no

22   disrespect was meant to the court by not moving.  And,

23   you know, I have to follow that up by just saying there

24   is -- they have had the supplement now for -- since

25   October 20th.  So, you know, to me that -- that just

1    follows along with your arguments that -- you know, when

2    you take that altogether, Your Honor, that we're talking

3    about something that they requested, that we agreed to

4    provide, that we didn't oppose ever that they could

5    supplement their invalidity contentions, and we still

6    don't oppose that.

7            You know, we just feel that the -- that the

8    supplement should be allowed.  It was made just within a

9    few -- you know, within two months of obtaining this

10   information.  And as soon as I saw that counsel was

11   going to take this position of, jeez, now you've got to

12   file a motion, I -- you know, we did so in our response.

13           THE COURT:  Um, I have allowed the amendment

14   to assert inequitable conduct, and that is an argument

15   for invalidity, correct?

16           MR. VAZQUEZ:  Yes.

17           THE COURT:  All right.  And the invalidity

18   contentions were made -- they were at least initially

19   due June 19th.  I don't know if they were made later

20   than that or not.  Is it your -- do invalidity

21   contentions play any part in the Markman process?

22           MR. VAZQUEZ:  I think so, yes.

23           THE COURT:  Okay.  Is it your -- do you

24   believe that the defendant must supplement, amend, or in

25   any way further address its invalidity contentions in

1    view of the allowed amendment?

2              MR. VAZQUEZ:  Yes.  I think it's very likely

3    that they should do that.

4              THE COURT:  If I allow the motion included

5    within a response and accept these supplemented

6    infringement claims, and since I have allowed the

7    amendment to allege inequitable conduct can the Markman

8    hearing proceed -- can you be ready to proceed on the

9    Markman hearing on January 19th?

10             MR. VAZQUEZ:  I believe so.  As I stand here

11   today I think we can.  You know, even when we were

12   talking about making these supplemental contentions, on

13   both sides, we've always stated to each other we're

14   agreeing to do this, but we want to keep our Markman

15   date.  So we've always intended to abide by that.

16             THE COURT:  It startles me that there's been

17   no -- that there have been no depositions.  When will

18   those occur, if at all?

19             MR. VAZQUEZ:  Well, Your Honor, we have -- as

20   I mentioned previously we were set to take the

21   depositions of one -- of their main witness supporting

22   their invalidity allegations, and of the CEO of MDX

23   the week of -- on November 15th and 16th.  But then six

24   days prior to that we got this unanticipated production

25   of 6,000 additional pages.  Because we wanted -- we

1    didn't want to have to fight later about, well, can we

2    redepose them, and what can we get into, we thought the

3    most prudent thing would be to vacate those and

4    reschedule them.

5         They've now been rescheduled for the week of

6    December 12th.  And then I have talked with the

7    inventors and made them available for their depositions

8    the week of January 9th, two of them, and then another

9    one the week of -- who's not an employee of Health

10   Grades anymore, and lives in Florida, he's not available

11   until the week of January 16.

12        So, you know, while -- certainly it's their

13   prerogative.  They could have taken -- chosen to have

14   taken depositions earlier.  But that's the status of the

15   depositions and what's occurred now.  Anything else,

16   Your Honor?

17        THE COURT:  That's all I have.  Thank you.

18   Mr. Stimpson?

19        MR. STIMPSON:  I don't really have anything --

20   I'm sorry, I don't really have anything I need to -- I

21   need to say, Your Honor, but I -- with regard to the

22   oral agreement, I mean, I don't know how much clearer I

23   could have possibly been in my e-mails that we -- this

24   had to be prompt and we were going to take this position

25   if they didn't move.

 1              And on the Markman hearing, Your Honor, asked

 2      about.  If they're allowed to change things now it's

 3      going to change a lot.  And I have to go back and

 4      re-evaluate everything, I mean, including what we've put

 5      in for, as you correctly pointed out, you know, we have

 6      our claim constructions.  Um, we've submitted all our

 7      evidence now, including extrinsic evidence for the claim

 8      terms.  I can't remember exactly how the schedule goes

 9      now, but it's coming up.  And we've got the Markman

10      hearing now next month.  And, you know, there's a lot

11      that has to be done, and if they're -- if they're

12      allowed to change this all this late in the game I've

13      got to go back with invalidity contentions, we've got to

14      re-evaluate everything, and I'm not so sure that it's

15      going to be such a smooth process for Markman.

16              Um, you know, we'll do our best, of course,

17      Your Honor, but, you know, the rules have these

18      requirements for a reason obviously.  You know, like you

19      said, the rules are the rules and they make it very

20      clear.  And we've cited case after case that this is

21      just too late, and they didn't make a timely showing.

22      And so we respectfully request they not be able to

23      change the playing field this late in the game.  Thank

24      you.

25              THE COURT:  I'm going to take the motion to

1    strike contentions under advisement and issue a

2    recommendation or an order as soon as I am reasonably

3    able.

4            Anything else we should talk about this

5    morning, Mr. Vazquez?

6            MR. VAZQUEZ:  No.  Thank you, Your Honor.

7            THE COURT:  Mr. Stimpson?

8            MR. STIMPSON:  No.  Thank you, Your Honor.

9            THE COURT:  Thank you very much.

10           THE COURTROOM DEPUTY:  All rise.  Court is in

11   recess.

12           (Whereupon, the within hearing was then in

13   conclusion at 11:20 on this date.)

14

15           I certify that the foregoing is a correct

16   transcript of the requested portion of the hearing, to

17   the best of my knowledge and belief (pursuant to the

18   quality of the recording) from the record of proceedings

19   in the above-entitled matter.

20

21

22   /s/ Kelly Mair                    December 12, 2011

23   Signature of Transcriber          Date

24

25