IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 11-cv-00520-PAB-BNB

HEALTH GRADES, INC.,

      Plaintiff,

vs.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S RECOMMENDATION**

---

Plaintiff Health Grades, Inc. ("Health Grades"), by its undersigned counsel, pursuant to Fed. R. Civ. P. 72(b)(3), respectfully submits its Objections to the Magistrate Judge's Recommendation, dated December 12, 2011 ("Recommendation") [Dkt. 87]:

I.      **INTRODUCTION**

The Recommendation concerns Health Grades' October 20, 2011, supplement to its original infringement contentions. The supplement is important because it responds to claim constructions, non-infringement contentions and non-public documents produced by MDx after Health Grades made its original infringement contentions. The supplement included new evidentiary support for the original contentions and also included doctrine of equivalents arguments for all claim elements that MDx contends are literally missing from its accused website. Doctrine of equivalents arguments are a standard approach for establishing infringement of such allegedly missing claim elements.

MDx knew from the very beginning of this case that Health Grades intended to assert doctrine of equivalents arguments in response to any contentions by MDx that claim elements

were missing from its accused website.  Health Grades supplemented its infringement contentions on October 20, 2011.  There is no unfair surprise to MDx, and there is no undue prejudice whatsoever -- the contentions were made when there were three months left before the close of fact discovery -- and four months before the current discovery cut-off, which MDx agreed to just two days after the Magistrate Judge struck the supplemental contentions.  There is good cause for the supplement, which responds to documents, contentions and claim constructions by MDx that were not made until *after* Health Grades served its original contentions.  Under these circumstances, fundamental fairness dictates that the supplement be allowed.

## II.   FACTUAL BACKGROUND

The '060 patent generally relates to an Internet-based information system that connects patients with potential healthcare providers.  ('060 patent, Abstract, attached hereto as **Exhibit A**.)  The company providing the information service creates and maintains a database of detailed information relating to healthcare providers.  (*Id.*)  Potential patients search for information about healthcare providers and, in response, information is provided in the form of a healthcare provider report that is created using:

> 1)   healthcare provider-verified information: "about the first healthcare provider . . . [that] is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;"

> 2)   patient-provided information: "compris[ing] patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;"

- 2 -

3)     <u>third party verified information</u>:  "information regarding the first healthcare provider verified by an independent third-party source . . . [that] comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information . . . ."

('060 patent, claims 1 and 15, cols. 20-24, **Exhibit A**.)  Further, the healthcare provider report includes "comparison ratings of health care providers."  ('060 patent, claims 1 and 15, **Exhibit A**.)

Health Grades served its original Infringement Contentions on July 1, 2011.  It asserted both literal infringement and infringement under the doctrine of equivalents:

At the time of this filing, Health Grades contends that MDx infringes claims 1, 4-11, and 14-16 of the '060 patent **both literally and under the doctrine of equivalents**.  Details regarding these contentions are provided in the claim charts attached as Exhibits A and B.

(Infringement Contentions at pg. 3 (emphasis added) [Dkt. 62-3, pg. 5 of 123].)  Exhibit A to the original Infringement Contentions was a 59-page claim chart that identified how MDx's current website literally meets each and every element of the asserted claims and identified how MDx's current website meets the comparison ratings claim element under the doctrine of equivalents. Exhibit B to the original Infringement Contentions was a 56-page claim chart that identified how MDx's prior website literally met each and every element of the asserted claims.  At the time Health Grades served its original Infringement Contentions, it did not have access to:

1)     MDx's non-infringement contentions, specifically what claim elements MDx asserted were missing from the accused products, *other than* MDx's contention that its current website did not have "comparison ratings of healthcare providers," which was the subject of MDx's partial motion for summary judgment of non-infringement;

2)     Technical documents produced by MDx relating to the accused websites; and

- 3 -

3)      MDx's positions on claim construction.[1]

In its original Infringement Contentions, Health Grades advised MDx that it would

"supplement and/or amend" its contentions to include doctrine of equivalents arguments in

response to any arguments MDx intended to make asserting that other claim elements were

missing from the accused systems and services:

> In its motion for partial summary judgment, MDx argued that only one portion of one claim element was missing from the Current Version of its on-line information system, namely a healthcare provider report that includes comparison ratings. . . .  **If MDx is permitted to change its position and to assert that other claim elements are missing from the accused systems and services, Health Grades will supplement and/or amend these disclosures accordingly to include doctrine of equivalents contentions for such elements.**

(Infringement Contentions at pg. 3 (emphasis added) [Dkt. 62-3 at pg. 5 of 123].)

On July 25, 2011, Health Grades served its first set of interrogatories on MDx and

requested MDx's non-infringement contentions, which included:

**Interrogatory No. 2**

> With respect to any of version of MDx's Accused Products, using a claim chart, state in detail MDx's bases for any assertions of non-infringement of the patent in suit on a claim-by-claim, element-by element basis. **Your answer should include a statement of MDx's interpretation of each claim element**, a statement whether MDx's Accused Products provide(s) such an element or an equivalent and, if not, **an explanation how MDx's Accused Products operate or function differently than the claim element** and a particularized statement why a component, feature or function of Accused Products is not a substantial equivalent of the pertinent claim element.

------------------------------------------

[1] Pursuant to the Scheduling Order, the parties Preliminary Claim Constructions and Extrinsic Evidence were due by September 23, 2011.  Pursuant to the parties' Joint Motion to Extend Deadlines to Exchange Proposed Terms for Construction and to Exchange Their Preliminary Claim Constructions and Extrinsic Evidence [Dkt. #52], the Court extended the deadline for the parties to exchange their proposed terms for construction to September 13, 2011, and the deadline for the parties to exchange their preliminary claim constructions and extrinsic evidence to September 30, 2011.

(Health Grades' First Set of Interrogatories at pg. 9 (emphasis added), attached hereto as **Exhibit B**.)

On August 2, 2011, MDx requested that Health Grades supplement its infringement contentions to provide additional details regarding its doctrine of equivalents contentions. (Email dated August 2, 2011, from S. Stimpson to J. Vazquez (Dtk. 62-6).)  Health Grades responded that it needed to understand MDx's non-infringement positions before it would be able to articulate all of its doctrine of equivalents arguments, and over the next two months the parties engaged in continuing back-and-forth discussions regarding supplements to their respective patent contentions (infringement contentions for Health Grades and invalidity contentions for MDx).  (*See* Email dated August 16, 2011, from S. Stimpson to J. Vazquez ("We are happy to discuss supplementing infringement contentions tomorrow"); Letter dated September 2, 2011, from J. Vazquez to S. Stimpson ("Please promptly supplement your [invalidity] contentions accordingly by specifically identifying which claims MDx contends are anticipated by which references specifically and fully describe which specific combinations of alleged prior art MDx relies on to support its obviousness arguments."); Email dated September 22, 2012, from S. Stimpson to J. Vazquez ("As I mentioned to you yesterday, we <u>may</u> still be willing to reach agreement on this issue [the supplementation], but we need to know that we are receiving similar cooperation and compromise in return."); and Email dated October 3, 2011, from J. Vazquez to S. Stimpson ("We will rely on the doctrine of equivalents for any elements MDx contends are not literally present.  What elements does MDx contend are not literally present?  Once you provide us with this information, we will supplement.").  (*See*

**Exhibit C**, containing Email dated August 16, 2012; Letter dated September 2, 2012; Email dated September 22, 2012; Email dated October 3, 2012.)

On August 29, 2011, MDX responded to Interrogatory No. 2 and asserted that the accused website was missing 11 claim elements:

1. Healthcare provider-verified information;
2. Received from the first healthcare provider;
3. Compiling in response to receiving a request;
4. Patient ratings from on-line patient experience survey;
5. Report using the information verified by the independent third-party source;
6. Creating a report using "the" information;
7. Comparison ratings of healthcare providers;
8. Report includes comparison ratings of healthcare providers;
9. the required hyperlink from claim 4;
10. the advertisement of claim 8; and
11. Determining whether a healthcare provider is a member of the company managing the website as required by claim 9.

(MDx' Interrogatory Responses at pgs. 6-9, attached hereto as **Exhibit D**.)  MDx's interrogatory responses were conclusory and did *not* contain a claim chart, did *not* contain MDx's proposed constructions for these 11 terms, and did *not* include a sufficient explanation for how the accused product functions differently than the claimed element.  On August 29, 2011, MDx produced documents relating to the accused products. (Email dated August 29, 2011, from D. Lee to J. Vazquez, attaching MDx's interrogatory responses and the first of seven batches of MDx documents, attached hereto as **Exhibit E**.)

On September 13, 2011, MDx identified 11 claim terms to be construed that related to each of the above 11 claim elements it contends are missing from its website.  (MDx's Disclosure of Proposed Terms for Construction, attached hereto as **Exhibit F**.)  On September 30, 2011, it served Health Grades with its proposed constructions for these terms. (MDx's Patent Rule 4-2 Disclosures, attached hereto as **Exhibit G**.)  As it did in its original

- 6 -

Infringement Contentions filed July 1, 2011, on October 3, 2011, Health Grades *again* informed MDx that: "We will rely on the doctrine of equivalents for any elements MDx contends are not literally present." (Email dated October 3, 2011, from J. Vazquez to S. Stimpson, at pg. 2, attached hereto as **Exhibit H**.)

On October 20, 2011, after receiving and analyzing MDx's non-public documents and proposed constructions, Health Grades served MDx with a supplemented 74-page infringement claim chart that included: 1) evidentiary support for the original infringement contentions; and 2) additional doctrine of equivalents contentions for each of the 11 claim elements that MDx asserted was missing from the accused products. (Supplemented Infringement Contentions [Dkt. 62-2].) A redline comparison that compares the original 59-page infringement claim chart with the supplemented 74-page infringement claim chart is attached hereto as **Exhibit I**.[2]

Fact discovery was originally scheduled to close on January 16, 2012. The parties had been discussing an extension of this deadline since December 5, 2011. Just two days after Magistrate Judge Boland issued his Minute Entry on December 7, 2011, striking Health Grades' supplemental contentions [Dkt. 82], MDx agreed to extend fact discovery to February 16, 2012. [Dkt. 86.] MDx delayed addressing the obviously necessary enlargement from December 6 until December 9. (*See* Emails dated December 6, and December 7, 2011, attached hereto as **Exhibit**

---

[2] Highlighting is added to the new language in this claim chart to designate the reason for why it was added:

Green: addresses MDX's non-infringement arguments from its interrogatory responses, received August 29, 2011.

Orange: adds citations to documents produced by MDX, received August 29, 2011.

Yellow: addresses MDX's proposed claim constructions, received September 30, 2011.

**J**.)  Magistrate Judge Boland granted the parties' request for extension on December 12, 2011.

[Dkt. 90.]

　　　To date, MDx has not taken any fact depositions.  Health Grades took its first fact

deposition relating to invalidity on December 16, 2011.  The Markman hearing is set for

January 19, 2012.  No expert reports have been exchanged or prepared.  Initial expert reports are

due by February 16, 2012, and rebuttal expert reports are due March 16, 2012.  Expert discovery

ends April 30, 2012.  A Final Pre-Trial Conference is scheduled for June 14, 2012.  Trial has not

been scheduled.

**III.**    **THE DECEMBER 12, 2011, RECOMMENDATIONS**

　　　On December 12, 2011, the Magistrate Judge issued his "Recommendation of United

States Magistrate Judge" ("Recommendations").[3]  [Dkt. 87.]  The Magistrate Judge

recommended that MDx's motion to strike Health Grades' supplemental infringement

contentions be granted because he found Health Grades did not follow Local Rule 3-6 for the

Northern District of California because it did not file a motion to amend its contentions and

violated the local rules of practice by including its motion to amend its contentions in its

response in opposition to MDx's motion.  (*Id*. at 3.)

　　　He further found that even if Health Grades had properly made a motion to amend, it

lacked merit and should be denied for four reasons.  First, he found that the supplemental

contentions were "substantial."  (*Id*. at 4-5.)  Second, he stated that while an agreement between

parties to allow amendment to contentions may constitute good cause, there was no agreement in

this case.  (*Id*. at 6.)  Third, he found that the two-month delay between the time MDx produced

_____

[3] The transcript of the hearing held in this matter on December 2, 2011, is attached hereto as
**Exhibit K** [Dkt. 100].

- 8 -

its infringement documents and the time Health Grades supplemented its contentions was not timely.  (*Id.* at 9-10.)  Finally, he held that regardless of whether Health Grades' contentions were an amendment or a supplementation, it had a duty to first move for permission to serve these contentions.  (*Id.* at 10.)

Health Grades acknowledges that it should have filed a formal motion to supplement its original infringement contentions in the first instance, under both Local Rule 3-6 for the Northern District of California and the rules of this Court.  However, the substance of the supplementation was brought home to MDx in Health Grades' supplemented filings and the need for such a filing had long been discussed between counsel.  As the following discussion will establish, the supplementation affects the substantive claims of Health Grades in a circumstance where the Magistrate Judge cites no prejudice to the other side.  In fact, there has been no prejudice to MDx.  Given the additional discovery extension and the other factors referenced herein, Health Grades asks that the Recommendation be set aside so that the claims can be decided on their merits.

## IV.    OBJECTIONS TO THE RECOMMENDATIONS

### A.    Standard of Review

District Courts should use a *de novo* standard of review when reviewing a Magistrate Judge's ruling that is dispositive of a claim or defense.  Fed. R. Civ. P. 72(b)(3).  Although MDx's motion to strike was not designated on its face as a dispositive motion, it should be treated as such because it has an identical effect.  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988).  Specifically, the Recommendation disposed of Health Grades' claim for infringement under the doctrine of equivalents for several claim elements.  The Recommendation acknowledges this:  "Although [this] determination . . . does not directly

- 9 -

dispose of any claim on the merits, a ruling may have the effect of being dispositive.

Consequently, I must proceed by recommendation rather than by an order."  Recommendation at

1, n.1 [Dkt. 87].  Fed. R. Civ. P. 72(b)(3) provides in relevant part:

> The district judge **must determine de novo any part of the magistrate judge's disposition that has been properly objected to**.  The district judge may accept, reject or modify the recommended disposition; **receive further evidence**; or return the matter to the magistrate judge with instructions.

(Emphasis added.)

As such, this Court should apply a de novo standard of review.

**B.    The Law of Patent Infringement**

Whether a product or process infringes a claim requires a two-step analysis.  First, the

Court must construe the disputed claim terms.  *Markman v. Westview Instruments, Inc.*, 52 F.3d

967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 116 S. Ct. 1384 (1996).  Second, the fact-finder must

compare the properly-construed claims to the accused product or process.  Literal infringement

requires that the accused product or process practice every limitation in the claim.  *Texas

Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1563 (Fed. Cir. 1996).  *If* a

particular claim element is *not* found in the accused product, the product may still infringe under

the doctrine of equivalents if the accused product includes an equivalent element that performs

substantially the same function, in substantially the same way, to produce substantially the same

result as the claimed element of the patented invention.  *Warner-Jenkinson Co. v. Hilton Davis

Chem. Co.*, 520 U.S. 17, 37-39 (1997).

**C.**     **The Magistrate Judge Erred by Recommending That Health Grades'**
**Supplemental Infringement Contentions Be Stricken**

    **1.**     MDx's New Non-Infringement Arguments and Claim Construction
Contentions Gave Health Grades Good Cause to Supplement Its
Infringement Contentions

The Magistrate found that Health Grades did not have good cause to supplement its

infringement contentions because the changes were "substantial."  To support this, he found that

the contentions "grew from three pages to 74 pages."  [Dkt. 87 at pg. 4 of 11.]  This finding,

however, is factually inaccurate.  Health Grades' original infringement claim chart is 59 pages

long -- not three as found in error by the Magistrate Judge.  Thus the contentions only "grew"

*from 59 pages to 74 pages*, meaning that the supplemented infringement claim chart is just 15

pages longer than the original, not 71 pages longer as the Magistrate Judge mistakenly found.

(Compare original infringement claim chart, Exhibit A to original Infringement Contentions

[Dkt. 62-3], to the supplemented infringement claim chart [Dkt. 62-2].)

The Magistrate also found the changes were substantial because Health Grades added

doctrine of equivalents arguments for several additional claim elements.  While this is accurate,

each and every additional doctrine of equivalents argument responded directly to non-

infringement arguments and claim construction positions MDx made several months *after* Health

Grades served its original contentions as described in detail below.[4]  The Magistrate Judge's

finding that the supplementation is "substantial" confirms that a supplementation to aid in the

---

[4] Health Grades original infringement contentions were made July 1, 2011.  MDx served its
interrogatory responses with its non-infringement contentions, and its non-public documents, on
August 29, 2011.  MDx served its claim constructions and extrinsic evidence on September 30,
2011.  Health Grades served its supplemented infringement contentions on October 20, 2011.

truth seeking function, without prejudice to any party, is appropriate at this early stage of discovery.

Health Grades' original contentions used Health Grades' proposed claim constructions and asserted that MDx's accused products literally contained every element of the asserted claims.[5]  However, as explained in Section IV(B) above, infringement under the doctrine of equivalents necessarily assumes that a claim element is missing and considers whether there is an equivalent for the missing element.  As such, Health Grades could not assert its doctrine of equivalents contentions until it understood what claim elements MDx asserted were missing and why it contended they were missing, which necessarily included understanding how MDx was interpreting the missing elements.  *See, e.g., Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1318 (Fed. Cir. 2011) (holding the first step of determining infringement (or non-infringement) is claim construction).

For example, all of the asserted claims require that the healthcare provider report be created using "healthcare provider-verified information . . . [that] is received from the healthcare provider."  In its original contentions, Health Grades asserted this element was literally infringed by MDx's accused website:

---

[5] The original contentions included a doctrine of equivalents argument responding to the only non-infringement argument MDx had made as of the time the contentions were made, which related to the claimed comparison ratings.  (Infringement Contentions at pg. 3 [Dkt. 62-3 at pg. 5 of 123].)

- 12 -

MDx receives the healthcare provider-verified information from healthcare providers. MDx's website provides doctors with the ability to send information to MDx. For example, MDx's website provides many opportunities for doctors to edit their own profiles. *See, e.g.*, Screenshot No. 5.

Screenshot No. 5

MDx states on its website that it receives, compiles, and posts doctor-supplied information. *See* Screenshot No. 6.

(Infringement Contentions [Dkt. 62-3, at pgs. 12-14 of 123].)

On August 29, 2011 -- two months after Health Grades' served its original Infringement Contentions -- MDx asserted for the first time that the accused products did not have "healthcare provider-verified information that is received from the healthcare provider" because:

- No Literal Infringement: For most of the MDx data, the information required by this portion of the claims is not verified by the healthcare provider.

- Equivalents: There can be no infringement of this element by equivalents, for numerous reasons. For example, verification from the provider is an entirely different approach than either obtaining no verification or verification from other sources and thus the function/way/result test would not be met; attempting to read this limitation on the MDx Website would vitiate this claim term entirely; and the concept of verifying information from other sources was disclosed but not claimed and thus precludes application of the doctrine of equivalents.

- 13 -

****

   - <u>No Literal Infringement</u>:  For <mark>most</mark> of the data, this information required by this portion of the claims is not received from the provider itself.

   - <u>No Equivalents</u>:  There can be no equivalents where this data is not obtained from the provider, as the MDx approach of obtaining this data elsewhere is entirely different from the claimed approach; attempting to capture this data under the doctrine of equivalents would entirely vitiate this claim language; and there is also prosecution history estoppel precluding equivalents on this element (*e.g.,* amendment on 4/26/10).

(MDx's Response to Interrogatory No. 2, **Exhibit D**, at pg. 7.)  This response essentially admitted that *some* of the information is verified and *some* is received from the healthcare provider.  However, MDx did not say what specific information is received from or verified by the healthcare provider and what information is not.  MDx did not state who the information is received from, and who it is verified by, if not the healthcare provider.  Also, MDx did not state what claim constructions it was using to support this non-infringement defense.

  On September 30, 2011 -- three months after Health Grades served its original Infringement Contentions -- MDx served its Proposed Claim Constructions. (**Exhibit G**.)  MDx proposed that "verified" be construed as "proved to be true directly and personally" by the healthcare provider and that "received from the first healthcare provider" be construed as "provided personally from the first healthcare provider."  (Exhibit A to MDx's Preliminary Claim Constructions and Extrinsic Evidence at pg. 3, served September 30, 2011, attached hereto as **Exhibit G**).

  Less than a month after receiving these proposed claim constructions, Health Grades supplemented its infringement contentions to *respond directly* to MDx's non-infringement arguments and to make infringement arguments *using* MDx's proposed claim constructions:

Should the Court adopt an alternative construction of the term "healthcare provider-verified," such as defendant's proposed construction of "information proved to be true directly and personally by the healthcare provider," MDx infringes literally and under the doctrine of equivalents.

For example, MDx literally infringes because MDx admits that it accesses information that is provided to MDx by the healthcare provider, and therefore is verified by the healthcare provider. *See, e.g.,* MDX 0000333 (noting that thousands of data sources include self-reports by physicians). And MDx assumes the information to be proved as true because it was provided directly by the healthcare provider, to the extent that its internal data filter does not perform a data integrity check. MDX 0000359 (noting that doctor edits, "once they go through a filter, are immediately posted to website").

Moreover, even if every doctor does not provide every piece of his or her own personal information, and to the extent that any physician information originates with a third party, MDx still literally

infringes because its system provides the capability for healthcare providers to verify and edit their own information as detailed above. As such, this editing relies on the fact that the physician is "proving to be true" information it edits.

To the extent that MDx does not literally infringe this element, it infringes under the doctrine of equivalents at least because it accesses information that a physician has provided. To the extent that providing information is not literally the same as personally and directly proving it to be true (a position with which Health Grades disagrees), it performs substantially the same function in substantially the same way to obtain the same result.  The function of having a doctor provide the information enables MDx to prove true the information the doctor provides. The way is the above mentioned computer method. The result is a data set that has been proved true because the doctor provided the information.

To the extent that MDx does not literally infringe this element because the physician information is verified by a third party, it infringes under the doctrine of equivalents because it performs substantially the same function in substantially the same way to obtain the same result.  The function of the claim is to make the information service more trustworthy.  The way it makes it more trustworthy is to get information from a third party, the doctor.  The result is that it is more trustworthy.  *See, e.g.,* MDX 0000303 (noting MDx database data integrity strategy is to "[u]tilize wisdom of crowds and allow for data improvement [by] . . . doctors").

(**Exhibit I**, pgs. 51-52 of redline compare, highlighting new language on pgs. 50-51 of Health Grades' Supplemental Infringement Contentions [Dkt. 62-2 at pgs. 53-54 of 123].)

All of the other supplemental contentions respond directly to MDx's non-infringement arguments *and* proposed claim constructions as shown by the yellow and green highlighted additions in **Exhibit I**.

Health Grades could not have made these contentions in July because it did not have MDx's non-infringement contentions and did not have its related claim construction positions at that time.  Health Grades could not have obtained this information earlier because the Scheduling Order did not require MDx to provide it sooner.

New information that was not available at the time of original contentions constitutes good cause for supplementing infringement contentions.  *See, e.g., General Atomics v. Axis-Shield ASA*, No. C 05-04074 SI, 2006 U.S. Dist. LEXIS 58939, 4-5 (N.D. Cal. Aug. 7, 2006) (allowing a patentee to amend its infringement contentions to add a new theory of infringement based on the defendant's proposed claim constructions, which were served after the infringement contentions).  This is particularly true for new claim constructions that are different than those proposed by the party making the contentions.  Indeed, Local Rule 3-6 specifically recognizes good cause to amend may exist when the Court issues a "claim construction . . . different from that proposed by the party seeking amendment . . . ."  [Dkt. 34 at pg. 22.]  The effect is the same when a defendant discloses its claim constructions -- the plaintiff should be permitted to respond by supplementing its infringement contentions.[6]

As such, the Magistrate Judge erred by finding that Health Grades did not have good cause to supplement its contentions when the supplement responded directly to MDx's non-infringement contentions, non-public documents and proposed claim constructions.

---

[6] Thus, if this Court adopts any of the claim constructions proposed by MDx in its upcoming Markman Order, Health Grades will have good cause to amend its contentions to add its doctrine of equivalents arguments even at that time.

    2.    <u>Health Grades' Supplemental Doctrine of Equivalents Contentions Were Made with Diligence and Did Not Prejudice MDx</u>

Health Grades added its supplemental contentions:

- Less than one month after MDx served its claim construction positions and two months after MDx served its non-infringement contentions;

- Three months before the discovery cut-off deadline in place when the supplement was made, and four months before the new discovery cut-off deadline of February 16, 2012; and

- Before any fact depositions had taken place.

Such shows diligence. *See General Atomics*, 2006 U.S. Dist. LEXIS 58939, 4-5 (finding diligence and good cause because the patentee moved to amend its contentions before a claim construction ruling and three months after it served its original contentions). Patent cases are complex by their very nature. As more information is disclosed -- in this case in accord with the Scheduling Order -- parties should be permitted to respond to new technically-based information. That is what Health Grades did.

Furthermore, MDx *knew from the start* that Health Grades would rely on the doctrine of equivalents and that it intended to supplement its contentions with doctrine of equivalents arguments -- it knew as of July 1, 2011, that Health Grades would rely on the doctrine of equivalents for any claim element that MDx alleged was missing from the accused products. (Infringement Contentions at pg. 3 [Dkt. 62-3 at pg. 5 of 123].) Health Grades reiterated this position to MDx on October 3, 2011. (**Exhibit H**.)

While the Magistrate Judge found that it was "disingenuous" for Health Grades to assert that MDx had limited itself to a single non-infringement position by filing its summary judgment motion, that is not the point. The undisputed fact is that *at the time* of the original contentions,

MDx had made *only one* non-infringement argument.  Health Grades asserted the doctrine of equivalents in response to that argument.  It also put MDx on notice it would assert the doctrine of equivalents for all other allegedly missing elements when MDx disclosed what those missing elements were.  It would have been speculative for Health Grades to have acted in advance of MDx's disclosure of those allegedly missing elements.

Furthermore, the Magistrate Judge cited no prejudice to MDx by the supplementation.  As of the filing of these objections, MDx still has not taken any depositions.  Fact discovery was scheduled to close on January 16, 2012, when the supplement was made, and MDx agreed to extend fact discovery by another month to February 16, 2012.  Expert reports have not been served.  MDx has not even disclosed the identity of a merits-based expert.  Without question, he or she has ample time to prepare an expert report addressing the supplemental infringement contentions and the discovery around these contentions.  A trial date has not been set.  Absent a showing of prejudice, the failure to file a motion when the substance of the supplementation was disclosed should not foreclose claims on the merits.

**D.  The Magistrate Judge Erred by Striking Health Grades Citations to Additional Evidence in Support of the Original Contentions**

The supplemental claim chart contains additional evidence in support of Health Grades' original Infringement Contentions.  (**Exhibit I**, language highlighted in orange.)  This language does not include new contentions -- rather, it cites to new, additional evidence that supports the original contentions.  For example, regarding the healthcare provider-verified information element, Health Grades added:

> Health Grades proposed that the term "healthcare provider-verified information" be construed as "information verified by a physician or other healthcare professional."  MDx accesses information

verified by a physician or other healthcare professional. *See, e.g.,* MDX 0000333 (noting thousands of data sources include self-reports by physicians); MDX 0000359 (noting that doctor edits, "once they go through a filter, are immediately posted to website"); MDX 0000346 (noting that "[o]nce data is loaded, doctors can Edit most profile elements"); MDX 0000347 (noting that "doctors are alerted when changes are made to their profile" to encourage doctors to add data or amend profiles); MDX 0000351 (noting that "physicians have the opportunity to update & add information, as long as it is in compliance with official sources"); MDX 0000348 (noting that MDx's front line staff assist each doctor with "tweaking" the doctor's profile); MDX 0000307 (noting that MDx gathers information from primary source with respect to procedure volume, publications, and special expertise to provide a "360° view of doctor quality".); MDX 0000303 (noting that MDx database data integrity strategy is to "[u]tilize wisdom of crowds and allow for data improvement from . . . doctors").

This additional evidence says the same thing as the original evidence Health Grades cited, namely that MDx allows doctors to edit their online profiles and MDx receives information from doctors.

Health Grades could not have added these citations earlier because they are based on internal, non-public MDx documents produced two months *after* the original contentions. They are not new contentions, but rather are additional support for the original contentions. Thus, the Magistrate Judge erred by striking them. Again, this case, like all others, should be tried on the merits. Health Grades' supplementation, based in part upon the later disclosure of 1,278 additional pages of documents by MDx was proper and what one would expect to see in a case of this type. Indeed, MDx produced 1,278 pages of documents with its interrogatory responses on August 29, 2011 (and another 6,000 pages on November 11, 2011) and thus further cites to those documents should follow so that all sides have notice of the infringement contentions and have the evidence that will be used to support those contentions.[7]

---

[7] On December 21, 2011, MDx filed a motion for leave to amend its invalidity contentions. [Dkt. 97] Health Grades is evaluating the bases for MDx's request and will respond accordingly, but notes the irony inherent in MDx's request, which seeks to supplement both its invalidity and inequitable conduct defenses based on known, and even unknown, facts it anticipates it will discover in the case.

**E.** **The Magistrate Judge Erred by Striking the Supplemental Contentions Based on Procedural Defects**

As discussed above, there is good cause to allow the supplemental contentions, and it is fundamentally unfair to strike them based on procedural effects.[8]  MDx *knew from the start* that Health Grades would rely on the doctrine of equivalents and that it intended to supplement its contentions with doctrine of equivalents arguments.  Health Grades did not change any of its primary infringement arguments.  Rather, it simply added additional counter-arguments that do nothing more than reply to arguments made by MDx after the fact.  There are simply no "shifting sands" in this case like there were in the *Biogenex* case that the Magistrate Judge relied on.  The Federal Rules of Civil Procedure are designed to allow a plaintiff to reply to a defendant's arguments -- this is all Health Grades did.  This Court and others have recognized the importance of adjudicating cases on the merits and of promoting substance over form.  *See Hampton v. Perez*, *CPO*, WL1659370 (D. Colo. 2009) (noting "this Court's preference to adjudicate cases on the merits rather than timing technicalities"); *see also Avago Technologies General IP PTE LTD v. Elan Microelectronics Corp*, WL1449758, *2 (N.D. California 2007) (noting that "the court wishes to have this invalidity issue decided on its merits, in the interest of promoting substance over form" and that the defendant was "diligent" in notifying the plaintiff of the invalidity theory it sought to add via a supplement.)

---

[8] In its motion to strike, MDx stated: "If in response to this motion to strike, Health Grades cross-moves for leave to amend its Original Contentions, MDx's motion should still be granted, and Health Grades' cross-motion denied …"  [Dkt. 62-3 at pg. 5 of 11.]  The fact that MDx anticipated a motion for leave to amend within the response weighs in favor of discounting this procedural defect in favor of a full adjudication on the merits.

- 20 -

**V.**     **CONCLUSION**

For the foregoing reasons, the Magistrate Judge's Recommendation should be set aside, and the October 20, 2011, supplemented infringement contentions should be allowed.

Respectfully submitted this 27th day of December, 2011.

ROTHGERBER JOHNSON & LYONS LLP

*s/ Jesús M. Vazquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email:  kkosto@rothgerber.com
jvazquez@rothgerber.com
jphipps@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant*
*Health Grades, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2011, I electronically filed the foregoing PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S RECOMMENDATION with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Mark Jon Rosenberg, Esq.
David Chunyi Lee, Esq.
Sills Cummis & Gross P.C. -- New York
30 Rockefeller Plaza
New York, NY  10112
Email:  sstimpson@sillscummis.com
Email:  mrosenberg@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley, Esq.
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email:  ridley@wtotrial.com

Ramona L. Lampley, Esq.
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: lampley@wtotrial.com

*s/ Jesús M. Vazquez*
Jesus M. Vazquez