IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 11-cv-00520-PAB-BNB

HEALTH GRADES, INC.,

    Plaintiff,

vs.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

**HEALTH GRADES, INC.'S CLAIM CONSTRUCTION REPLY AND EVIDENCE**

{2003498880 / 1}

# TABLE OF CONTENTS

I.   REPLY TO MDx'S CLAIM CONSTRUCTION ARGUMENTS ............................................1

   A.   "First Health Provider"; "Healthcare Provider Report on the First Healthcare Provider"; and "Healthcare Provider Report on the First Healthcare Provider Includes Comparison Ratings of Healthcare Providers" ........................................................................................................1

      1.   Point of Disagreement No. 1: Are the claims limited to one *and only one* healthcare provider? ..................................................2

      2.   Point of Disagreement No. 2: How should the phrase "Comparison Ratings of Healthcare Providers" be construed? ........................4

   B.   The Remaining Terms Are Perfectly Clear and Do Not Need to Be Construed ........................................................................................................7

      1.   "Verified by First Healthcare Provider" and "Verified by an Independent Third-Party Source" ..................................................8

      2.   "using the healthcare provider-verified information, the patient-provided information, and the information verified by an independent third-party source" ..................................................9

      3.   "member of the company managing the Web site" ........................................10

II.  CONCLUSION ............................................................................................................10

Plaintiff Health Grades, Inc. ("Health Grades"), by its undersigned counsel, files this Claim Construction Reply and Evidence ("Reply"). This Reply replies to Defendant MDx's Claim Construction Response and Evidence [Dkt. 93].

## I. REPLY TO MDx'S CLAIM CONSTRUCTION ARGUMENTS

MDx's Markman Brief improperly focuses on non-infringement arguments. The issues before this Court are those of claim construction, *not* infringement, and this Court should recognize the distinction between the two. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996) (recognizing the fine line between claim construction and infringement but noting it has been "drawn repeatedly" to recognize the separate roles of judges and juries in patent cases). Similarly, it is improper to give an overly precise or specific interpretation of claim language, especially language with a plain meaning, because doing so will invade the province of the trier of fact, such as a jury, to apply a claim to an accused product or process and thereby determine whether there is infringement. *See, e.g., PPG Industries v. Guardian Industries Corp.*, 156 F.3d 1351, 1354-55 (Fed. Cir. 1998) (holding a court may *not*, under the rubric of claim construction, give a claim whatever additional precision or specificity is necessary to facilitate a comparison between the claim and the accused product).

### A. "First Health Provider"; "Healthcare Provider Report on the First Healthcare Provider"; and "Healthcare Provider Report on the First Healthcare Provider Includes Comparison Ratings of Healthcare Providers"

Health Grades agrees with several arguments in MDx's brief and MDx failed to respond to several arguments from Health Grades' brief, presumably because they are not in dispute. The issues on which the parties agree appear to be:

1. The "first healthcare provider" is a healthcare provider that matches a user's request (i.e., search) for information (HG Brief at 10; MDx Brief at 8);

{2003498880 / 1}

2. The scope of the '060 Patent claims is open-ended because the preamble of the claims use the word "comprising" (HG Brief at 9; MDx Brief at 8);

3. The healthcare provider report is on the "first healthcare provider" (one who matches the request for information) as opposed to *any* healthcare provider (HG Brief at 10; MDx Brief at 8);

4. The "healthcare provider report" includes "comparison ratings of healthcare providers" (HG Brief at 13; MDx Brief at 11);

5. The term "healthcare provider" is limited to "physicians or other healthcare professionals" (HG Brief at 6-8; MDx did not dispute this); and

6. The term report means "a formatted and organized presentation of information" (HG Brief at 10-11; MDx did not dispute this).

Regarding the three terms that relate to the "first healthcare provider," there are two main points of disagreement, each of which is addressed below.

### 1. Point of Disagreement No. 1: Are the claims limited to one *and only one* healthcare provider?

While Health Grades does not dispute that the claimed "first healthcare provider" matches a patient's request for information and that the "healthcare provider report" must be related to the "first healthcare provider," it disputes that: 1) the claims are limited to requesting information on *one and only one specific* healthcare provider; and 2) the claimed report is limited to *one and only one* healthcare provider. Similarly, while Health Grades agrees that the term "first healthcare provider" is the same healthcare provider (or providers) used throughout the claims, it asserts there may be one *or more* particular healthcare providers covered by the claims.

MDx primarily relies on the term "*first*" to support its argument; however, its reliance is misplaced. The ordinary meaning of "first" is *not* one and only one, but rather "first" is a term used to introduce a thing that is part of a list of similar things. Claim 7, which ultimately

2

{2003498880 / 1}

depends from claim 1, supports the concept that the first healthcare provider is one of many that satisfy the search criteria:

> 7. The method as defined in claim 6, wherein the search of the database produces a results list of one or more healthcare providers satisfying the search criteria, wherein the results list includes the first healthcare provider.

The '060 patent specification is consistent with this plain meaning – it contemplates that there may be multiple doctors that match a request for information. For example, it describes requesting information about doctors having the name "Matthews" and shows that there are at least four specific doctors that match this request. ('060 patent, Fig. 2A and col. 6:29-32). MDx tries to distinguish claim 7 and Figs. 2A and 2B arguing that they are irrelevant because they relate to a "results list," which is a distinct claim element. It cites cases holding that different terms usually should be given different meanings. (MDx Brief at pg. 10). These cases are inapposite. Health Grades is not trying to give the same definition to these terms. To the contrary, Health Grades proposed definition of report is different from how the claim defines a results list:

| **"Healthcare Provider Report"** | **Results List as claimed:** |
|---|---|
| "a formatted and organized presentation of information that relates to one or more healthcare providers identified in response to a query for information regarding healthcare provider(s)." | "results list of one or more healthcare providers satisfying the search criteria." |

However, the fact that the results list may include more than one healthcare provider supports the argument that the request for information may seek, and the report may include, information relating to multiple healthcare providers that meet the search criteria.

Moreover, while MDx acknowledges that the Federal Circuit usually interprets the term "a" in a claim to mean "one or more," it attempts to distinguish the cited case by arguing that the

3

claims that case construed did not include the term "first." This is a distinction without a difference. The Federal Circuit has similarly ruled that the term "a first" should mean "one or more" unless otherwise limited by the specification or prosecution history. *See, e.g., Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l*, 246 F.3d 1336, 1350-1351 (Fed. Cir. 2001). In *Crystal*, the Federal Circuit stated:

> As the district court correctly noted, "a first clock signal" does not require a single clock signal to control sampling. As previously discussed, the word "comprising" in the transitional phrase of a patent claim creates a presumption that the body of the claim is open. **Because claim 4 uses "comprising," it encompasses more than one clock unless the written description or the prosecution history clearly limits claim 4 to its recited elements. Similarly, the article "a" in "a first clock signal" generally suggests one or more clocks.** The written description and figures of the '899 patent actually disclose two analog clocks, ACLK1 and ACLK2, in the preferred embodiment.
>
> Although ACLK1 provides the first clock signal for controlling the sampling of an analog input voltage, neither the written description nor the prosecution history precludes more than one clock or clock signal. In sum, the '899 patent does not limit "a first clock signal" to only one clock. . . .

*Id.* (emphasis added).

As such, this Court should *not* limit the '060 claims to *one and only one* healthcare provider (whether used as the subject of the request for information, the healthcare provider report, or otherwise).

### 2. Point of Disagreement No. 2: How should the phrase "Comparison Ratings of Healthcare Providers" be construed?

The parties disagree as to whether the claims *require* the report to include comparison ratings of healthcare providers *other than* the first healthcare provider. MDx does not attack any portion of Health Grades' proposed construction except to the extent that it would potentially

4

{2003498880 / 1}

cover a rating of a single first healthcare provider that is given in accordance with a ratings system used for all healthcare providers that match a search query. MDx's argument primarily relies on the fact that the term "providers" is plural and so argues that there must be comparison ratings for multiple providers. While the claims are certainly broad enough to cover multiple ratings of multiple providers in a report relating to one particular provider, they are also broad enough to cover a rating system for comparing a particular healthcare provider to other healthcare providers within the information system. Health Grades' proposed definition covers both scenarios and is consistent with the claim language itself and the specification.

Regarding the claim language, the term "healthcare providers" is first introduced in the first element of claim 1, which states: "receiving, by a Web server computer of a company providing a service for **connecting healthcare providers with the potential patients** . . . ." (Claim 1 (emphasis added).) Claim 15 states: "An on-line information system for connecting **healthcare providers** with potential patients . . . ." (emphasis added). Thus, the "healthcare provider**s**" are those physicians (or other professionals) who are part of the information-service.

The specification states: "the . . . ratings provided by the Web site enable patients to differentiate among healthcare providers and thereby select the provider that best meets their individual needs." ('060 patent, Abstract.) Further, it states that: "From this list [of providers within the information service that match search criteria], a patient may access a detailed 'report' or, in one embodiment, **comparison ratings on that particular provider**." ('060 patent, col. 1:67-2:5 (emphasis added).) MDx attempts to discount this language because it is not identical to the claim language. While not identical, it does use the same term "comparison ratings" with regard to a physician report for a physician that matches a request for information. It is by far

5

the most relevant discussion in the specification with regard to the claimed "comparison ratings." As such, it should be considered and used to shed light on the ordinary meaning of the phrase "comparison ratings of healthcare providers" in a report on the first healthcare provider.

MDx argues that Health Grades' star rating example is wrong because a star rating for a first physician cannot provide for comparisons to anything "because it simply says how good that physician is."[1] Not true. The 5-star rating example in Health Grades opening brief illustrates how a rating system used for all doctors within a website could be used to compare doctors even if there was only one rating for one doctor within one report. For example, a patient will know that a 5-star rated doctor has the best score possible and is better than a 2-star doctor she reviewed earlier. Another example is the rating system used by ski resorts to facilitate comparisons between the difficulty of various runs, where ● means *easiest*, ■ means *intermediate*, ◆ means *advanced*, and ♦♦ means *expert only* terrain. This rating system allows skiers to compare a run they are skiing with other runs on the mountain without actually seeing any of the ratings of the other runs. For example, when a skier comes to the top of a "blue run," he will know that it is more difficult than the "green run" he skied earlier that day even though all he can see is the rating for the run he is on at that time. In the same way, a rating on a single provider can be used to compare that provider with other providers who are also rated according to the rating system.

---

[1] MDx makes two other arguments. First it argues that the star rating example is wrong because "comparisons to national averages" are different from "comparison ratings." While not relevant to claim construction, Health Grades agrees the claimed "comparison ratings" do not include comparisons to national averages. Second, it argues that "star ratings on the first healthcare provider are the 'patient ratings' that are claimed separately." (MDx Brief at 13.) This appears to be a non-infringement argument, which is inappropriate at this time. Nevertheless, neither party seeks to limit the claims to comparison ratings based on criteria *other than* patient input.

6

Health Grades did not limit the meaning of "comparison ratings" during prosecution of the '060 patent. (MDx Brief at 5). MDx refers to an amendment regarding claim 19 that does not define or limit what comparison ratings means. ('060 File History, Amendment and Response dated 2/16/2010, at pg. 5 (Ex. *).)  MDx argues that the applicant replaced the last element with the comparison ratings phrase, but this is pure conjecture.  Almost all of the elements of claim 19 were amended and two new elements were added (in addition to the comparison ratings phrase) – the amendment does not say why the last element was removed and there is no basis to assume that it related to the addition of the comparison ratings clause.  In any event, this amendment did *not* relate to independent claim 1, which also includes "comparison ratings of healthcare providers."  Moreover, Health Grades does not seek to interpret this phrase to have the same scope with the deleted language.  Thus, this amendment is irrelevant to claim construction.

In sum, this Court should reject MDx's proposed construction because it is unduly narrow and adopt Health Grades' proposed construction because it is based on language that is taken directly from the specification, namely "a rating system that facilitates *comparison(s) amongst physicians* to *highlight which physician(s)* identified in response to a query for information *best fit* one or more *criteria*." ('060 patent, Col. 6:63-7:15.)

### B. The Remaining Terms Are Perfectly Clear and Do Not Need to Be Construed

For the remaining terms[2], MDx seeks to add language to the claims that is not supported by the specification in an attempt to create non-infringement arguments.  In many cases, it admits the claim language is perfectly "clear," yet it still seeks to substitute its more narrow

---

[2] Due to page limitations, Health Grades does not address every single term in this reply brief. However, it continues to rely on its opening brief for all terms that may be in dispute.

7

{2003498880 / 1}

language for the terms chosen by the patentee. (MDx Brief at 14 ("healthcare provider-verified" is "clear"); at 16 ("received from the first healthcare provider" "could not be clearer"); at 22 ("hyperlink" claim language is "clear"). This Court should reject MDx's attempts to rewrite the claims.

### 1. "Verified by First Healthcare Provider" and "Verified by an Independent Third-Party Source"

MDx seeks to substitute the term "verified" for "proven to be true directly and personally" for healthcare provider-verified information and "Proved to be true by an independent third-party source" for third party-verified information. It offers no explanation for why "verified" gets two different definitions, other than the fact that such benefits its non-infringement arguments. In any event, MDx relies on a dictionary that includes multiple definitions of "verify", the broadest of which states: "to determine or test the truth or accuracy of, as by comparison or investigation." While this is one ordinary meaning of verify, there are others, such as "provided" or "confirmed." [3]

For example, the '060 patent specification uses the terms "physician-verified" and "physician-provided" interchangeably stating a report may include: (1) **a physician-verified, or physician-provided, section** including information the physician feels will help a patient choose him or her as a physician . . . ." ('060 patent, col. 2:53-67 (emphasis); *see also* col. 7:52-66 ("In essence, the member physician has the ability to craft some of the information provided to the patient. . . . [I]t is expected that the physician, at least, verifies this information."). Certainly, a physician who provides a list of his hobbies and medical philosophies has verified these things

---

[3] Dictionaries are often of little assistance because they give multiple and alternative definitions of words. *Phillips*, 415 F.3d 1303, 1321-22.

8

{2003498880 / 1}

by virtue of providing them. How else might the physician "verify" this information? Would he need to sign an affidavit swearing that golf is one of his hobbies? To use another example, if the state of Colorado provides information that a certain doctor has an active license to practice in Colorado, hasn't the state verified licensure information by virtue of providing it and/or confirming it? What more is required? MDx's proposed construction of "verified" is nonsensical and introduces unnecessary ambiguity into clear claim language.

Another ordinary meaning of "verified" used by the specification is "confirmed." The specification contemplates that physician information may be obtained elsewhere and then confirmed by a physician. ('060 patent, col. 17:17-18). Again, the physician need do nothing more to "verify" the information other than to confirm/state that it is accurate.

In sum, the claim term "verified" is clear and does not need to be construed by this Court.

> 2. **"using the healthcare provider-verified information, the patient-provided information, and the information verified by an independent third-party source"**

MDx essentially argues that it does not infringe this claim element because it does not display in its report all of the information it compiles about a physician. (MDx Brief at 19). However, using information to create a report and displaying information in a report are not the same things. The undersigned "used" LEXIS to create this brief without displaying all of the information he accessed from LEXIS herein. The '060 claims do not require that "all of" the compiled information be used to create the report, let alone require that "all of" the information be "displayed" in the report. MDx's proposed construction improperly reads limitations into the claims. The terms "creating" and "using" are plain English and no construction is necessary.

9

### 3. "member of the company managing the Web site"

MDx's last argument is not one of claim construction – it offers no construction other than the claim language itself – but rather seems to be some kind of invalidity argument that the phrase "member of the company managing the Web site" is not supported by the specification. It seems to argue that there is no support because the specification does not use this identical language, but rather discuses physicians being members "of a service" of a company managing the information website.  However, the patent laws do not require that patent specifications use identical language to the claims.  Regardless, this is not a claim construction argument and should not be considered during Markman.  Further, the claim language is clear enough and does not need to be construed.  It will be up to the fact-finder to decide whether MDx's website meets this claim limitation.

## II. CONCLUSION

For the reasons set forth above, the Court should adopt Health Grades' proposed constructions of the claim terms in dispute and reject all of MDX's attempts to narrow the scope of the claims at issue in this case.

10

{2003498880 / 1}

Respectfully submitted this 28th day of December, 2011.

                            ROTHGERBER JOHNSON & LYONS LLP

                            *s/ Jesús M. Vazquez*
                            Kris J. Kostolansky, Esq.
                            Jesús M. Vázquez, Jr., Esq.
                            Jeffrey D. Phipps, Esq.
                            1200 17th Street, Suite 3000
                            Denver, Colorado  80202
                            Tel:  (303) 623-9000
                            Fax:  (303) 623-9222
                            Email:  kkosto@rothgerber.com
                                          jvazquez@rothgerber.com
                                          jphipps@rothgerber.com

                            *Attorneys for Plaintiff Health Grades, Inc.*

11

{2003498880 / 1}

CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2011, I electronically filed the foregoing HEALTH GRADES, INC.'S CLAIM CONSTRUCTION REPLY AND EVIDENCE with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Scott David Stimpson<br>Mark Jon Rosenberg<br>David Chunyi Lee<br>Sills Cummis & Gross P.C. – New York<br>30 Rockefeller Plaza<br>New York, NY  10112<br>Email: sstimpson@sillscummis.com<br>Email: mrosenberg@sillscummis.com<br>Email: dlee@sillscummis.com<br><br>Terence M. Ridley<br>Wheeler Trigg O'Donnell, LLP<br>1801 California Street, #3600<br>Denver, CO  80202-2617<br>Email: ridley@wtotrial.com | Ramona L. Lampley<br>Wheeler Trigg O'Donnell, LLP<br>1801 California Street, #3600<br>Denver, CO  80202-2617<br>Email: lampley@wtotrial.com |

*s/ Jesús M. Vazquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email:  kkostolansky@rothgerber.com
           jvazquez@rothgerber.com
           jphipps@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*

12