# EXHIBIT 1

### David C. Lee

**From:** Scott D. Stimpson
**Sent:** Tuesday, October 04, 2011 9:50 AM
**To:** 'Vazquez, Jesus'
**Cc:** David C. Lee
**Subject:** RE: Discovery issues

Jesus, the email is copied below, with my comments in red.  Thanks.

Scott

Jesus:

This is with regard to various discovery issues in our case. It identifies issues we see with the HG Infringement Contentions, document production, and interrogatories, proposes a limited term search for the HG electronic documents, and addresses a few other discovery-related issues.

INFRINGEMENT CONTENTIONS

We have the following questions with regard to the infringement contentions, and would appreciate supplementation or explanation as soon as possible:

(1) Inducement and contributory infringement are both alleged for claims 1-14, but those are method claims so we are confused about how these allegations are being made. Are you alleging that the users somehow directly infringe these method claims? We need clarification please if HG will continue to make these assertions.

Yes. We assert that MDx directly infringes these claims. We also assert that third parties directly infringe and that MDx induces and contributes to the third parties' direct infringement. Not sure if this clarifies or answers your question - if we get a better understanding of your question we would consider supplementing.

This does not make any sense to us, and your contentions are not sufficient to support it. For example, what third party receives a request for information regarding a first healthcare provider?  Your contentions lack any support for these allegations.

(2) We do not understand what basis there could be for contributory infringement allegations on any of these claims, and there is no showing of this in the Contentions. Is it really the HG position that every substantial use of the MDx website infringes the claims (no substantial non-infringing uses)?

Yes, that is our position.

The contentions do not support this allegation, either.  There are many uses of the Vitals website, and your contentions only address a minor portion of them.  If you intend to claim that all substantial uses infringe, then these contentions need to be supplemented to show all those alleged infringements.  We will object to this allegation later, and to any damages analysis

1/6/2012

that does not account for the fact that the majority of the Vitals website has not been subject to infringement allegations in the Contentions. If your technical or damages experts intended to rely on this allegation that all substantial uses infringe, those allegations had to be in the Infringement Contentions.

(3) As we have mentioned already, the HG position that MDx has conceded literal infringement of every element except the comparison ratings is baseless. We offered you the opportunity to do these equivalents analyses properly, but so far you have declined that invitation. Can you please let us know if you will be supplementing on this issue or not, and if so when? We want to be cooperative, but it has been weeks since this analysis was due and we will need the supplementation relatively soon, please, or we will take the position that all other equivalents positions have been waived.

We will rely on the doctrine of equivalents for any elements MDx contends are not literally present. What elements does MDx contend are not literally present? Once you provide us with this information, we will supplement.

You have now, and have had, our non-infringement positions. Equivalents positions have to be in the Contentions.

(4) As I have also mentioned to you before, we will not allow HG to supplement to add new bases of alleged infringement that should have been in these Contentions. You have included several "catch-all" phrases purporting to provide only some examples of how claim elements are met. So there is no misunderstanding later, we again remind you that we will vigorously object to any attempt to identify other parts of our website that are not specifically identified in these Contentions.

We understand your position but do not agree, particularly given that we received your documents a short time ago. We reserve the right to supplement, as MDx has, as discovery progresses.

We agree to disagree here.

HG DOCUMENT PRODUCTION

Thank you for sending the documents we have received to date, but there seem to be some gaps and we have a variety of questions and concerns.

We have been advised that HG is not holding back any responsive documents other than on grounds of privilege and work product, and we understand that a reasonable search has been conducted and we thus have in our possession now all non-privileged documents located in that search. If that is not the case, please let us know immediately.

This is correct, although as you know we are still searching for documents.

All the comments below simply say you are checking for documents. That should have been completed long ago, frankly. We are noticing the inventor depositions -- if relevant documents are produced late, after the depositions, we will seek to have the depositions a second time, and we reserve all other rights. In any event, we understand all documents will be produced by the 7th, except those responsive only to our second set of requests.

1/6/2012

We also have the following specific questions:

a. Request 1: Please produce file histories of the '060 Patent's remaining continuing applications, all non-patent literature submitted with information disclosure statements, and any foreign counterparts.  I thought we provided this - if not we will do so.
b. Request 2: Please produce documents showing how the Health Grades website makes the membership determination required by claim 9.  We are looking for responsive documents and will provide responsive, non-privileged documents if they exist.
c. Request 7: Health Grades' SEC 10-K filings (e.g., 2003, 2004) that pre-date the '060 Patent refer to early Health Grades products as well as several competitor products.  Please produce any documents showing these prior art Health Grades and competitor products.  Also, HG1079 refers to physician research comparison reports launched 3/28/03 -- please product any such prior art reports. We are looking for responsive documents and will provide responsive, non-privileged documents if they exist.
d. Request 9: Why is this entire production redacted?  Redactions were for privilege - we will double check and get back to you.
e. Your response to interrogatory 4 says that the "commercial embodiment" of the current website was launched in the "summer of 2005." We need the earliest documents showing disclosures of the concept, please. These were called for in our Requests 7, 9. We are looking for responsive documents and will provide responsive, non-privileged documents if they exist.
f. In July, we agreed that we would be provided documents sufficient to show the HG website before and after the launch of the new website in 2005. It is now September. Where are they? Requests 2, 3, 7. See also interrogatory 2.  Again, we are looking for responsive documents and will provide responsive, non-privileged documents if they exist.
g. In July, HG agreed to produce information relating to its damages claims that are in its possession or control, but we have nothing. Where are they? We need everything relating to your claim for lost profits, including documents in the past and up to now showing the HG profit margin,  revenue, all expenses and how they are allocated,  user traffic, physician membership trends, etc. If you are going to pursue damages, and particularly lost profits, there is a great deal of documents that must be produced promptly. Requests 8, 12, 15.   Responsive, non-privileged documents will be provided with our discovery responses, currently due October 10.
h. You identify a number of articles in response to our interrogatory 4. Have they all been produced? If not, where are they? Requests 11, 17, 18.  If they were not produced, we will produce them.
i. Does HG not have any documents or evidence showing when  marking  supposedly began? Request 10. We are looking for responsive documents and will provide responsive, non-privileged documents if they exist , with our discovery responses currently due on October 10.

PRIVILEGE LOGS

Shall we agree to exchange them on September 23?

Lets discuss a mutually convenient time.

We need to get logs of any withheld privileged material soon please. How about October 14?

HG INTERROGATORY RESPONSES

1/6/2012

By your email of August 3, about a month ago, we were promised additional information in response to our interrogatories, including:

- <u>Interrogatory 1</u>: Identities of those involved in the reduction to practice. We still have not received this information.   We are investigating and will supplement if appropriate.

- <u>Interrogatory 4</u>: Information on nexus and copying allegations. While you said you would supplement to identify this information after receiving our documents, you have received them now, and in any event we do not understand why the evidence of any nexus to the "national authorities" and "testimonials" cannot be identified immediately. How does <u>EACH</u> of these press articles and testimonials connect to the patent claims? If you are going to attempt to use any of this, you have to show a nexus, and absent a proper response to this interrogatory we will object to any such attempts later.   We are gathering this information and plan to supplement accordingly.

- <u>Interrogatory 6</u>: We agreed in July that facts in HG's possession or knowledge relating to the damages claim will be provided. It is September, and we have nothing. Where is this information?  Information will be produced with our discovery responses currently due October 10.

We appreciate you getting this information, but it has been two months since this information was promised.  We look forward to getting it by the 7th.

<u>REQUESTED SEARCH TERMS</u>

Our proposed searches for HG electronic data are below. You will see we kept them reasonable, and we do not expect overwhelming gigabytes of responsive data. We expect that your proposed searches will be of similar scope – this is a case that does not require many gigabytes of electronic production.

In the proposed search terms below, an exclamation point indicates that any ending (or no further ending) should be captured. In all search terms, letters before the beginning of the term should be picked up. So, for example, "vitals!" should pick up "vitals," "vitals.com" and "<u>www.vitals.com</u>".

(1) Please search the files of all three named inventors for the following terms:

- "compare!"

- "prior art"

- "vitals!"

- "060"

- "patent application"

(2) Please search the files of Allen Dodge, John Neal, and the HG general servers for the following terms:

- "Profits"

1/6/2012

- "MDx"

- "vitals!"

- "competitor!"

- "royalty!"

Please let us know in the next week or so the amount of documents uncovered from these searches, and then we can have them produced.

If HG proposes extensive searching, we reserve the right to object to that searching, or in the alternative to expand our search requests. We also reserve the right to request further searching after some discovery has been taken and other issues emerge, and of course we will not object to similar requests from HG should the circumstances justify it.

We need to discuss these search terms - as MDx has done, we reserve the right to object and we think these proposals are too broad.

Have you done a search to see how much data this picks up? If not, please do one and then we can address it if it is too broad. We need these documents, and as is the case with the documents above, if they are produced after depositions we will seek to have the depositions a second time, and reserve all other rights.

HG DOCUMENT REQUESTS

As clarification, we did not agree that the HG document requests, with all their many varying subparts, were only 13 requests. We did agree, however, that we would object and/or respond to them all, and that we would not refuse to respond to any of this first set of requests on the grounds that they exceeded the allowed number of requests.

This is not as we understood it, but hopefully we can work through it.

We look forward to hearing from you soon.

Regards.

Scott

1/6/2012

| Sills Cummis & Gross P.C. | website | bio | v-Card | email |

**Scott D. Stimpson**
Member of the Firm

New York |Map    d (212) 500-1550    f (212) 643-6500    30 Rockefeller Plaza    New York, NY 10112

---

**From:** Vazquez, Jesus [mailto:jvazquez@rothgerber.com]
**Sent:** Monday, October 03, 2011 1:49 PM
**To:** Scott D. Stimpson
**Subject:** RE: Discovery issues

Scott:

I'm writing to follow-up our discussion on September 19, during which we discussed the issues raised in your email below. I have inserted our comments after the various issues below, and will look forward to discussing them with you in more detail.

**Jesús M. Vázquez, Attorney-at-Law**
Rothgerber Johnson & Lyons LLP | One Tabor Center, Suite 3000 |
1200 Seventeenth Street | Denver, CO  80202 |
Direct 303.628.9517 | Main 303.623.9000 | Fax 303.623.9222
E-mail: jvazquez@rothgerber.com | Website: www.rothgerber.com

---

**From:** Scott D. Stimpson [mailto:sstimpson@sillscummis.com]
**Sent:** Thursday, September 08, 2011 4:32 AM
**To:** Vazquez, Jesus
**Cc:** Kostolansky, Kris J.; David C. Lee
**Subject:** Discovery issues

Jesus:

This is with regard to various discovery issues in our case. It identifies issues we see with the HG Infringement Contentions, document production, and interrogatories, proposes a limited term search for the HG electronic documents, and addresses a few other discovery-related issues.

INFRINGEMENT CONTENTIONS

We have the following questions with regard to the infringement contentions, and would appreciate supplementation or explanation as soon as possible:

(1) Inducement and contributory infringement are both alleged for claims 1-14, but those are method claims so we are confused about how these allegations are being made. Are you alleging that the users

1/6/2012

somehow directly infringe these method claims? We need clarification please if HG will continue to make these assertions.

Yes. We assert that MDx directly infringes these claims. We also assert that third parties directly infringe and that MDx induces and contributes to the third parties' direct infringement. Not sure if this clarifies or answers your question - if we get a better understanding of your question we would consider supplementing.

(2) We do not understand what basis there could be for contributory infringement allegations on any of these claims, and there is no showing of this in the Contentions. Is it really the HG position that every substantial use of the MDx website infringes the claims (no substantial non-infringing uses)?

Yes, that is our position.

(3) As we have mentioned already, the HG position that MDx has conceded literal infringement of every element except the comparison ratings is baseless. We offered you the opportunity to do these equivalents analyses properly, but so far you have declined that invitation. Can you please let us know if you will be supplementing on this issue or not, and if so when? We want to be cooperative, but it has been weeks since this analysis was due and we will need the supplementation relatively soon, please, or we will take the position that all other equivalents positions have been waived.

We will rely on the doctrine of equivalents for any elements MDx contends are not literally present. What elements does MDx contend are not literally present? Once you provide us with this information, we will supplement.

(4) As I have also mentioned to you before, we will not allow HG to supplement to add new bases of alleged infringement that should have been in these Contentions. You have included several "catch-all" phrases purporting to provide only some examples of how claim elements are met. So there is no misunderstanding later, we again remind you that we will vigorously object to any attempt to identify other parts of our website that are not specifically identified in these Contentions.

We understand your position but do not agree, particularly given that we received your documents a short time ago. We reserve the right to supplement, as MDx has, as discovery progresses.

HG DOCUMENT PRODUCTION

Thank you for sending the documents we have received to date, but there seem to be some gaps and we have a variety of questions and concerns.

We have been advised that HG is not holding back any responsive documents other than on grounds of privilege and work product, and we understand that a reasonable search has been conducted and we thus have in our possession now all non-privileged documents located in that search. If that is not the case, please let us know immediately.

This is correct, although as you know we are still searching for documents.

We also have the following specific questions:

1/6/2012

a. Request 1: Please produce file histories of the '060 Patent's remaining continuing applications, all non-patent literature submitted with information disclosure statements, and any foreign counterparts.  I thought we provided this - if not we will do so.
b. Request 2: Please produce documents showing how the Health Grades website makes the membership determination required by claim 9.  We are looking for responsive documents and will provide responsive, non-privileged documents if they exist.
c. Request 7: Health Grades' SEC 10-K filings (e.g., 2003, 2004) that pre-date the '060 Patent refer to early Health Grades products as well as several competitor products.  Please produce any documents showing these prior art Health Grades and competitor products.  Also, HG1079 refers to physician research comparison reports launched 3/28/03 -- please product any such prior art reports. We are looking for responsive documents and will provide responsive, non-privileged documents if they exist.
d. Request 9: Why is this entire production redacted?  Redactions were for privilege - we will double check and get back to you.
e. Your response to interrogatory 4 says that the "commercial embodiment" of the current website was launched in the "summer of 2005." We need the earliest documents showing disclosures of the concept, please. These were called for in our Requests 7, 9. We are looking for responsive documents and will provide responsive, non-privileged documents if they exist.
f. In July, we agreed that we would be provided documents sufficient to show the HG website before and after the launch of the new website in 2005. It is now September. Where are they? Requests 2, 3, 7. See also interrogatory 2.  Again, we are looking for responsive documents and will provide responsive, non-privileged documents if they exist.
g. In July, HG agreed to produce information relating to its damages claims that are in its possession or control, but we have nothing. Where are they? We need everything relating to your claim for lost profits, including documents in the past and up to now showing the HG profit margin, revenue, all expenses and how they are allocated, user traffic, physician membership trends, etc. If you are going to pursue damages, and particularly lost profits, there is a great deal of documents that must be produced promptly. Requests 8, 12, 15.   Responsive, non-privileged documents will be provided with our discovery responses, currently due October 10.
h. You identify a number of articles in response to our interrogatory 4. Have they all been produced? If not, where are they? Requests 11, 17, 18.  If they were not produced, we will produce them.
i. Does HG not have any documents or evidence showing when  marking  supposedly began? Request 10. We are looking for responsive documents and will provide responsive, non-privileged documents if they exist , with our discovery responses currently due on October 10.

## PRIVILEGE LOGS

Shall we agree to exchange them on September 23?

Lets discuss a mutually convenient time.

## HG INTERROGATORY RESPONSES

By your email of August 3, about a month ago, we were promised additional information in response to our interrogatories, including:

1/6/2012

- <u>Interrogatory 1</u>: Identities of those involved in the reduction to practice. We still have not received this information.   We are investigating and will supplement if appropriate.

- <u>Interrogatory 4</u>: Information on nexus and copying allegations. While you said you would supplement to identify this information after receiving our documents, you have received them now, and in any event we do not understand why the evidence of any nexus to the "national authorities" and "testimonials" cannot be identified immediately. How does <u>EACH</u> of these press articles and testimonials connect to the patent claims? If you are going to attempt to use any of this, you have to show a nexus, and absent a proper response to this interrogatory we will object to any such attempts later.   We are gathering this information and plan to supplement accordingly.

- <u>Interrogatory 6</u>: We agreed in July that facts in HG's possession or knowledge relating to the damages claim will be provided. It is September, and we have nothing. Where is this information?  Information will be produced with our discovery responses currently due October 10.

<u>REQUESTED SEARCH TERMS</u>

Our proposed searches for HG electronic data are below. You will see we kept them reasonable, and we do not expect overwhelming gigabytes of responsive data. We expect that your proposed searches will be of similar scope – this is a case that does not require many gigabytes of electronic production.

In the proposed search terms below, an exclamation point indicates that any ending (or no further ending) should be captured. In all search terms, letters before the beginning of the term should be picked up. So, for example, "vitals!" should pick up "vitals," "vitals.com" and "<u>www.vitals.com</u>".

(1) Please search the files of all three named inventors for the following terms:

- "compare!"

- "prior art"

- "vitals!"

- "060"

- "patent application"

(2) Please search the files of Allen Dodge, John Neal, and the HG general servers for the following terms:

- "Profits"

- "MDx"

- "vitals!"

- "competitor!"

1/6/2012

- "royalty!"

Please let us know in the next week or so the amount of documents uncovered from these searches, and then we can have them produced.

If HG proposes extensive searching, we reserve the right to object to that searching, or in the alternative to expand our search requests. We also reserve the right to request further searching after some discovery has been taken and other issues emerge, and of course we will not object to similar requests from HG should the circumstances justify it.

We need to discuss these search terms - as MDx has done, we reserve the right to object and we think these proposals are too broad.

HG DOCUMENT REQUESTS

As clarification, we did not agree that the HG document requests, with all their many varying subparts, were only 13 requests. We did agree, however, that we would object and/or respond to them all, and that we would not refuse to respond to any of this first set of requests on the grounds that they exceeded the allowed number of requests.

This is not as we understood it, but hopefully we can work through it.

We look forward to hearing from you soon.

Regards.

Scott



Sills Cummis & Gross P.C.

website | bio | v-Card | email

**Scott D. Stimpson**
Member of the Firm

**New York** | Map   d (212) 500-1550   f (212) 643-6500   30 Rockefeller Plaza   New York, NY 10112

NOTICE: The contents of this email and any attachments to it contain confidential and/or legally privileged information from the law firm of Sills Cummis & Gross P.C. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of the contained information is strictly prohibited and that the documents should be returned to this firm immediately. In this regard, if you have received this email in error, please notify us by email immediately.

**Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Sills Cummis & Gross P.C. for any loss or damage arising in any way from its use.

This email message has been scanned for viruses by Mimecast.

1/6/2012

---

PLEASE TAKE NOTICE, the information contained in this electronic communication and any document attached hereto or transmitted herewith, including metadata, is attorney-client privileged, work product, private or otherwise confidential, and is intended for the exclusive use of the individual or entity named above. The information transmitted in this e-mail and any attachment is intended only for the personal and confidential use of the intended recipients and is covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any examination, use, dissemination, distribution, or copying of this communication or any part thereof is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or reply e-mail and delete this communication. You are further notified that all personal messages express views solely of the sender which are not to be attributed to Rothgerber Johnson & Lyons LLP and may not be copied or distributed without this disclaimer.

1/6/2012