EXHIBIT A
to
Dkt. # 112

1  UNITED STATES DISTRICT COURT
   DISTRICT OF COLORADO
2
   Civil Action No. 11-CV-00520-PAB-BNB
3  _____

4  DEPOSITION OF DAVID HICKS          January 11, 2012
   _____
5
   HEALTHGRADES, INC.,
6
       Plaintiff,
7
   vs.
8
   MDX MEDICAL, INC. d/b/a VITALS.COM,
9
       Defendant.
10 _____

11 APPEARANCES

12     ROTHGERBER JOHNSON & LYONS, LLC
          By Jesús M. Vázquez, Jr., Esq.
13          Kris J. Kostolansky, Esq.
            1200 17th Street, Suite 3000
14          Denver, Colorado  80202
            (303) 623-9000
15
       MERCHANT & GOULD
16        By Kirstin L. Stoll-DeBell, Esq.
            1050 Seventeenth Street, Suite 1950
17          Denver, Colorado  80265-0100
            (303) 357-1670
18
                    Appearing on behalf of Plaintiff
19
       SILLS CUMMIS & GROSS, PC

20    By Scott David Stimpson, Esq.
         David C. Lee, Esq.
21      30 Rockefeller Plaza, 25th Floor
         New York, New York  10112
22      (212) 643-1546
            Appearing on behalf of Defendant
23

24

25   Job No. NJ371356

1      Pursuant to Subpoena and the Federal Rules of

2  Civil Procedure, the deposition of DAVID HICKS, called

3  by Defendant, was taken on Wednesday, January 11, 2012,

4  commencing at 8:02 a.m., at 1200 17th Street, Suite

5  3000, Denver, Colorado, before Andrea Ballantyne,

6  Certified Shorthand Reporter and Notary Public within

7  and for the State of Colorado.

8

9          I N D E X

10

11  DEPOSITION OF DAVID HICKS

12  EXAMINATION BY:            PAGE

13    Mr. Stimpson          4

14    Mr. Vázquez          --

15

16

17  EXHIBITS          INITIAL REFERENCE

18  Exhibit 1    Subpoena to Testify at a     5
                 Deposition in a Civil Action
19
    Exhibit 2    Amended Subpoena to Testify    5

20          At a Deposition in a
              Civil Action

21

  Exhibit 3     United States Patent, Patent    21

22           Number 7,752,060 B2


23 Exhibit 4     Patent Prosecution History    29


24 Exhibit 5     Request for Provisional    60
              Application

25

3

1 EXHIBITS (Continued)

2

Exhibit 6      United States Patent, Patent      61
               Number US 2003/0195838 A1

3

Exhibit 7      E-mail Chain between Steve      78
               Wood, Dave Hicks, Kevin Kelly
               With Attachment

5

Exhibit 8      E-mail Chain between Jim      90
               Kloberdanz and Jennifer
               Slawson with Attachment

7

Exhibit 9      Patent Experience Survey      129
               Numbers

9  Exhibit 10      HealthGrades Enhances Physician  131
               Quality Reports for Consumers

10

Exhibit 11      Plaintiff's Initial Disclosures  106
               Pursuant to
               Fed R. Civ. P. 26(a)(1)(A)

12

Exhibit 12      Merchant & Gould Privilege Log   135

13

Exhibit 13      HealthGrades Profile of David      144
               A. Drucker, MD

4
5
6
7
8
10
11
12
13
14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2               DAVID HICKS,

3  being first duly sworn in the above cause, was examined

4  and testified as follows:

5               EXAMINATION

6  BY MR. STIMPSON:

7     Q.  Good morning, Mr. Hicks.

8     A.  Good morning.

9     Q.  My name is Scott Stimpson.  I'm going to be

10  asking you questions today.  Have you ever had your

11  deposition taken before?

12     A.  Yes.

13     Q.  How many times?

14     A.  Twice.

15     Q.  Can you tell me what connections those were?

16     A.  One was with litigation with HealthGrades

17  versus Hewitt Associates, and another one -- I don't

18  remember the context of it, but it was with my -- some

19  case against my brother.

20    Q.  Okay.  When were those depositions, just

21  roughly?

22    A.  The Hewitt one was 2004, maybe 2005.  I think

23  something in that range.  The other one was -- boy.

24  2008 maybe.

25    Q.  Your brother, is he employed by HealthGrades?

1    Q.  If you look at the page with Bates No. 13419,

2  this is a declaration and power of attorney that you

3  signed, sir?

4    A.  Yes.

5    Q.  You would have read this before you signed it,

6  right?

7    A.  Typically that's -- yes.

8    Q.  If you could look back to the first page now of

9  that declaration, there's -- about a third of the way

10  down, there's a sentence that starts, "I hereby."  Do

11  you see that?

12    A.  Yes.

13    Q.  And follow with me, please:  "I hereby state

14  that I have reviewed and understand the contents of the

15  above-identified specification, including the claims, as

16  amended by any amendment referred to above."

17      Did I read that correctly?

18    A.  Yes.

19    Q.  So as of the time you signed this declaration,

20  sir, you were declaring that you had, in fact, read the

21  specification and claims, right?

22      A.  Yes.

23      Q.  We can put that back.  Let's go back to the

24  patent, please, okay?

25      A.  (Deponent complied.)

1    Q.  It's going to take some doing to keep that

2  together.

3       MR. STIMPSON:  Is that the elastic for that?

4  Oh, it's right there.

5       MR. VÁZQUEZ:  Elastic?

6       MR. STIMPSON:  Sorry.  What's it called?

7       MR. VÁZQUEZ:  Rubber band.

8       MR. STIMPSON:  That's elastic.

9    Q.  (By Mr. Stimpson)  So you have read the claims

10  of this patent, right, Mr. Hicks?

11    A.  Yes.

12    Q.  If you could turn back now to Claim 1 on

13  Column 20, I'm just going to read Claim 1 and stop at

14  some spots and maybe skip around a bit.  I just want to

15  ask you some things about the claims.

16       Claim 1 starts:  A computer-implemented method

17  of providing healthcare provider information to

18  potential patients, said method comprising:  receiving

19  by a Web server computer of a company providing a

20  service for connecting healthcare providers with

21  potential patients.

22        Let's stop there for just a second.  What do

23  you understand "healthcare providers" to mean?

24        MR. VÁZQUEZ:  Just form.

25        A.  Physicians, hospitals and other.

1    Q. (By Mr. Stimpson) Okay. And then it

2  continues: a request for information regarding a first

3  healthcare provider.

4        That refers to a specific provider, correct?

5    A. I'm sorry. What?

6      MR. VÁZQUEZ: Form.

7    A. I lost you. I'm sorry.

8    Q. (By Mr. Stimpson) We're just picking up

9  where --

10    A. Okay.

11    Q. -- we ended. "Potential patients," do you see

12  that?

13    A. Yes.

14    Q. Okay. "A request for information regarding a

15  first healthcare provider," and "first healthcare

16  provider" there refers to a specific provider, right?

17      MR. VÁZQUEZ: I'm just going to make a

18  continuing objection so I don't have to jump in. To the

19  extent counsel is going to be asking the witness about

20 meanings and terms, I'm just going to make the

21 continuing objection so I don't have to restate it, that

22 it calls for legal conclusion.  Form.

23      MR. STIMPSON:  You can have a continuing

24 objection.

25      MR. VÁZQUEZ:  Thank you.

1    Q.  (By Mr. Stimpson)  So a request for information

2  regarding a first healthcare provider, first healthcare

3  provider refers to a specific provider, correct?

4    A.  I believe so.

5    Q.  "Wherein the Web server computer comprises at

6  least one computer processor and memory."

7        Then continuing:  "accessing healthcare

8  provider-verified information about the first healthcare

9  provider," and that refers back to the first healthcare

10  provider in the first paragraph we just read, right?

11    A.  I think so.

12    Q.  "Wherein the healthcare provider-verified

13  information is received from the first healthcare

14  provider."  What does "received from the first

15  healthcare provider" mean?

16        MR. VÁZQUEZ:  Same objections.

17        MR. STIMPSON:  You have a continuing objection.

18    A.  I'm sorry.  This is -- this is kind of

19  confusing.

20    Q.  (By Mr. Stimpson)  Take your time.

21    A.  So bear with me.  What was your question?

22    Q.  The question was, where it says "received from

23  the first healthcare provider," that means it has to

24  come from the health -- excuse me -- I'm getting tongue

25  tied myself.

1       Where it says "received from the first

2  healthcare provider," that means it has to come from the

3  first healthcare provider itself, correct?

4      A.  I believe so.

5      Q.  "And comprises three or more from the group

6  consisting of," and then do you see there's a list there

7  of categories of information starting with "specialty

8  information"?

9      A.  Yes.

10      Q.  So you see that right here in this claim,

11  already we know that this claim has a focus on

12  healthcare provider information, right?

13      A.  Healthcare provider information.

14      Q.  Right.

15      A.  Yes.

16      Q.  And then the next paragraph says:  "compiling,

17  by the at least one computer processor."

18       One question for you there.  That says

19  "compiling," sir.  The prior paragraph says "accessing."

20  One starts with compiling; one starts with accessing.

21  Do you know what the difference is?

22      A.  I really don't.

23      Q.  Okay.

24      A.  Sorry.

25      Q.  So -- thank you.  I will continue.

1    "Patient-provided information -- compiling --

2 start again.

3    "compiling, by the at least one computer

4 processor, patient-provided information regarding the

5 first healthcare provider, wherein the patient-provided

6 information comprises patient ratings."  "Patient

7 ratings" there means things like star ratings?  Is that

8 right?

9    A.  That could be one, yeah.

10    Q.  What other types of things can be patient

11 ratings?

12    A.  It could be a numerical score, it could be a

13 symbol, could be a whole host of different things.

14    Q.  It could be a ranking?

15    A.  Possibly.

16    Q.  It continues:  "from one or more past or

17 current patients of the first healthcare provider."

18    Then, just to save us time, I'm going to step

19 you down to the next paragraph.  I don't have any more

20  questions about that paragraph.

21      Do you see the next paragraph starts

22  "Compiling" again?

23      A.  Yes.

24      Q.  If you could, please, follow along:  "compiling

25  information regarding the first healthcare provider

1  patient used.

2     Q.  Right.  So the patient would enter that search

3  criteria where?

4     A.  I think at this time it was on the HealthGrades

5  Web site.

6     Q.  And if you look down, it says -- there's a

7  paragraph that starts, "To assist you."  Do you see

8  that?

9     A.  Yes.

10    Q.  It says, "To assist you in making the best

11  choice possible, HealthGrades has complied information

12  from state inspections and complaint investigations."

13  Do you see that?

14    A.  Yes.

15    Q.  So HealthGrades is at this time compiling

16  information from third-party sources?

17    A.  Yes.

18    Q.  And those would be verified by third-party

19  sources?

20    MR. VÁZQUEZ:  Form.

21    A.  I don't know if they're verified or not, but

22  we're acquiring it from third-party sources.

23    Q.  (By Mr. Stimpson)  Then we have to talk about

24  that a bit, because remember when we were talking about

25  the claim, you told me that verified meant acquiring it

1 from the third-party source?

2    A.  Yes.

3    Q.  So the fact that these were acquired from

4 third-party sources, at least in your view, that's

5 verified by a third-party source, right?

6       MR. VÁZQUEZ:  Form.

7    A.  All I'm going to say is they acquired it.  We

8 acquired it from a third-party source.

9    Q.  (By Mr. Stimpson)  Okay.  So you -- what's the

10 different between acquiring it and verifying it?

11    A.  It depends on that information, how it's

12 verified.

13    Q.  But my question is, what's the difference

14 between acquiring the information from a third-party

15 source and having a third-party source verify it?

16    A.  There may be cases where the third-party source

17 does not verify it.

18    Q.  So there's a difference between acquiring it

19 from a third-party source and verifying it from a

20  third-party source, correct?

21     MR. VÁZQUEZ:  Form.

22     A.  There may be.

23     Q.  (By Mr. Stimpson)  Okay.  So there's also

24  information -- turn the page here to the next page,

25  32038.  Do you see that?

1    A.  Yes.

2    Q.  That big box there, is that comparison ratings

3  of healthcare providers, sir?

4        MR. VÁZQUEZ:  Form.

5    A.  A star rating.

6    Q.  (By Mr. Stimpson)  Is it comparison ratings of

7  healthcare providers?

8        MR. VÁZQUEZ:  Form.

9    A.  It's a star rating.

10    Q.  (By Mr. Stimpson)  I understand that.  But

11  there's a -- I've got nothing to hide here.  A term in

12  your patent application, in your patent, refers to

13  comparison ratings of healthcare providers.  And I'm

14  asking you, sir, is this box here, is this comparison

15  ratings of healthcare providers?

16        MR. VÁZQUEZ:  Form.

17    A.  I don't know if it could be comparison ratings.

18  What it says is star ratings.

19    Q.  (By Mr. Stimpson)  I understand that.  There's

20  a rating for each of the several nursing homes there,

21  right?

22      A.  Yes.

23      Q.  And why do you think the ratings are provided

24  for each of the nursing homes there?  It's for

25  comparison, right?

1      MR. VÁZQUEZ:  Form.

2      A.  So you can see the star ratings next to each

3  one.

4      Q.  (By Mr. Stimpson)  Right.  So you can compare

5  them, right?

6      MR. VÁZQUEZ:  Form.

7      A.  Again, it's star ratings.

8      Q.  (By Mr. Stimpson)  I understand that, sir.  My

9  question -- let me just bring out your patent.

10      Okay.  Let's turn back and look at Claim 1 of

11  the '060 patent, Exhibit 3.  In Column 20, sir, down

12  about Line 64, you see it refers to comparison ratings

13  of healthcare providers?

14      A.  I'm sorry.  Where are you?  Excuse me.

15      Q.  It's about Line -- this is all marked up, but

16  it's down here around 64 at the bottom.

17      A.  Down here, okay.

18      Q.  Do you see comparison ratings of healthcare

19  providers?

20     A.  Yes, I see that.

21     Q.  Does this box on Exhibit 8 at Page 32038 meet

22  that claim language?

23        MR. VÁZQUEZ:  Objection, form, to the extent it

24  calls for legal conclusions about the patent.

25     Q.  (By Mr. Stimpson)  You can answer.

1    A.  It offers star ratings.

2    Q.  I understand that.  My question, sir, is

3  whether it meets this claim language of comparison

4  ratings of healthcare providers in your patent?

5    A.  I don't know.

6      MR. VÁZQUEZ:  Same objection.

7    Q.  (By Mr. Stimpson)  You don't know?

8    A.  I don't know.

9    Q.  What -- back to your patent.  What does it

10  mean, comparison ratings of healthcare providers, in

11  Claim 1?

12      MR. VÁZQUEZ:  Same objection.  Calls for legal

13  conclusions.

14    A.  It's ratings of healthcare providers that you

15  can use to look at doctors.

16    Q.  (By Mr. Stimpson)  Or any type of healthcare

17  provider, right?

18    A.  Right.

19    Q.  So are these ratings on Exhibit 8, Page 32038,

20  ratings of healthcare providers that you can use to

21  compare them?

22      MR. VÁZQUEZ:  Objection to form; same

23  objections.

24    A.  They're star ratings where you can look at

25  ratings for different providers.

1    MR. STIMPSON:  Could you read my question back,

2  please?

3    (Question on Page 103, Lines 19-21, was read.)

4    MR. VÁZQUEZ:  Same objection.

5    A.  Yeah, I guess you could use them.

6    Q.  (By Mr. Stimpson)  HealthGrades was at this

7  time, sir, in 2004, also using patient ratings, right?

8    MR. VÁZQUEZ:  Same objection.

9    A.  I'm sorry.  What?

10    Q.  (By Mr. Stimpson)  HealthGrades at this time in

11  late 2004 was also collecting and using patient ratings?

12    MR. VÁZQUEZ:  Same objection.

13    Q.  (By Mr. Stimpson)  Patient-provided ratings?

14    MR. VÁZQUEZ:  Form.

15    A.  I believe we started that in 2004.

16    Q.  (By Mr. Stimpson)  And do you remember what

17  time in 2004 you started that?

18    A.  It was the tail end of 2004, but I don't know

19  specifically what the dates were.

20    Q. And when did you start using the results of the

21  patient-provided ratings in public reports?

22    A. I don't remember.

23    Q. Was it in 2004?

24    A. I don't remember.

25    Q. How would we find that out?

1          MR. VÁZQUEZ:  No.  None.  Thank you.

2           (The deposition concluded at

3           1:28 p.m., January 11, 2012.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  STATE OF COLORADO )

2            ) ss.    REPORTER'S CERTIFICATE

3  COUNTY OF LARIMER )

4      I, Andrea Ballantyne, do hereby certify that I am a

5  Certified Shorthand Reporter and Notary Public within

6  the State of Colorado; that previous to the commencement

7  of the examination, the deponent was duly sworn to

8  testify to the truth.

9      I further certify that this deposition was taken in

10  shorthand by me at the time and place herein set forth,

11  that it was reduced to typewritten form, and that the

12  foregoing constitutes a true and correct transcript.

13      I further certify that I am not related to,

14  employed by, nor counsel for any of the parties or

15  attorney herein, nor otherwise interested in the result

16  of the within action.

17      In witness whereof, I have affixed my signature and

18  seal this 16th day of January, 2012.

19      My commission expires May 20, 2013.

20

        _____

21     ANDREA BALLANTYNE

     216 16th Street, Suite 650

22     Denver, Colorado  80202

23

24

25

1        ERRATA SHEET
      VERITEXT/NEW JERSEY REPORTING COMPANY
2            800-227-8440
    ASSIGNMENT NO. NJ371356
3  CASE NAME: Health Grades Inc v. MDX Medical Inc dba Vitals.com
    DATE OF DEPOSITION: January 11, 2012
4  WITNESS' NAME: David Hicks

5
    PAGE/LINE(S)/   CHANGE        REASON
6  _____/_____/_____/_____
    _____/_____/_____/_____
7  _____/_____/_____/_____
    _____/_____/_____/_____
8  _____/_____/_____/_____
    _____/_____/_____/_____
9  _____/_____/_____/_____
    _____/_____/_____/_____
10 _____/_____/_____/_____
    _____/_____/_____/_____
11 _____/_____/_____/_____
    _____/_____/_____/_____
12 _____/_____/_____/_____
    _____/_____/_____/_____
13 _____/_____/_____/_____
    _____/_____/_____/_____
14 _____/_____/_____/_____
    _____/_____/_____/_____
15 _____/_____/_____/_____
    _____/_____/_____/_____
16 _____/_____/_____/_____
    _____/_____/_____/_____
17 _____/_____/_____/_____
    _____/_____/_____/_____
18 _____/_____/_____/_____
    _____/_____/_____/_____
19 _____/_____/_____/_____

20    _____
      David Hicks
21
    SUBSCRIBED AND SWORN TO

22   BEFORE ME THIS_____DAY
     OF_____, 2012.

23

_____
24      NOTARY PUBLIC

25   MY COMMISSION EXPIRES_____