# EXHIBIT B
to
Dkt. # 112

1      IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF COLORADO
2

3   HEALTH GRADES, INC.,

4        Plaintiff,

5      vs.            Civil Action No.
                  11-CV-00520-PAB-BNB
6   MDX MEDICAL, INC., d/b/a
    VITALS.COM,
7
         Defendant.
8
                    /
9

10       Deposition of SCOTT MONTROY, taken on behalf of

11   the Defendant, pursuant to ^  in the above-entitled

12   action, on Monday, January 16, 2012, at 7:03 a.m., at

13   Crowne Plaza Jacksonville Riverfront, 1201 Riverplace

14   Boulevard, Jacksonville, Florida, before Teresa S.

15   DeCiancio, RDR, CRR, CCP, CBC, FPR, and Notary Public in

16   and for the State of Florida at Large.

17

18

19

20

21

22

23

24

25

1  APPEARANCES:

2  FOR THE PLAINTIFF:

3    JESÚS M. VÁZQUEZ, Esquire
       Rothgerber Johnson & Lyons LLP
4    One Tabor Center
       1200 17th Street, Suite 3000
5    Denver, Colorado  80202-5855

6

7  FOR THE DEFENDANT:

8    SCOTT D. STIMPSON, Esquire
       Sills Cummis & Gross, P.C.
9    30 Rockefeller Plaza
       New York, New York  10112
10

11

12  ALSO PRESENT:

13    KIRSTIN L. STOLL-DEBELL, Esquire
        Merchant & Gould
14    1050 Seventeenth Street, Suite 1950
        Denver, Colorado 80265-0100
15

16
        ASHLEY HOLT, Videographer
17

18
                - - -
19

20

21

22

23

24

25

1                I N D E X

2

3             E X A M I N A T I O N S

4  WITNESS                              Page

5  SCOTT MONTROY

6     DIRECT EXAMINATION BY MR. STIMPSON          5

7

8               E X H I B I T S

9  FOR IDENTIFICATION                    Page

10     Exhibit Numbers 14, 15 and 16           7

11     Exhibit Number 17               64

12     Exhibit Number 18               79

13

14

15

16     P R E V I O U S L Y   M A R K E D   E X H I B I T S

17     Exhibit Number 3               28

18

19

20

21

22

23

24

25

1           S T I P U L A T I O N

2      It was stipulated and agreed by and between counsel

3   for the respective parties, and the witness, that the

4   reading and signing of the deposition by the witness was

5   not waived.

6                    - - -

7           THE VIDEOGRAPHER:  My name is Ashley Holt of

8    Veritext National Deposition & Litigation Services.

9    The date today is Monday, January 16, 2012, and the

10    time is approximately 7:03 a.m.

11        This deposition is being held at the Crowne

12    Plaza Jacksonville Riverfront, located at

13    1201 Riverplace Boulevard, Jacksonville, Florida,

14    32207.

15        The caption of the case is Health Grades,

16    Incorporated, versus MDX Medical, Incorporated, in

17    the United States District Court for the Middle

18    District of Florida [sic].  The name of the witness

19    is Scott Montroy.

20     At this time the attorneys will identify

21   themselves and the parties they represent, after

22   which our court reporter, Teresa DeCiancio of

23   Veritext National Deposition & Litigation Services,

24   will swear in the witness and we can proceed.

25     MR. STIMPSON:  This is Scott Stimpson with

1    Sills Cummis & Gross, representing the defendant,

2    MDX.

3        MR. VÁZQUEZ:  Jesús Vázquez, Rothgerber

4    Johnson & Lyons, representing the plaintiff, Health

5    Grades.

6                    - - -

7            SCOTT MONTROY

8            DIRECT EXAMINATION

9  BY MR. STIMPSON:

10    Q    Good morning, Mr. Montroy.

11    A    Good morning.

12    Q    My name is Scott Stimpson.  I'm going to be

13  asking you questions today.

14        Have you ever had your deposition taken before?

15    A    Yes, I have.

16    Q    Okay.  How many times?

17    A    Once.

18    Q    Okay.  When was that?

19    A    '96, I think.

20    Q    Okay.  What was that in connection with?

21    A    That was in connection with Primestar and

22  EchoStar, Echosphere Communications.

23    Q    Okay.  That was before your time with Health

24  Grades, right?

25    A    Correct.

1    Q   Okay.  And do you understand the concept that

2   claims define the invention of a patent?

3    A   I -- as a concept, sure.

4    Q   Let's just go through -- there's some parts I

5   want to ask you about, okay?

6       It says, "A computer-implemented method of

7   providing healthcare provider information to potential

8   patients."  Do you see that?

9    A   Huh-uh.  Where is it?  I'm sorry.

10   Q   It's the first line.

11   A   Okay.

12   Q   So let's start again.  It says, "A

13   computer-implemented method of providing healthcare

14   provider information to potential patients."  Do you see

15   that?

16   A   Uh-huh.

17   Q   What are healthcare providers?

18   A   I would interpret that to mean, in like what we

19   were -- in our business, the hospitals, physicians and

20  nursing homes.

21     Q   Okay.  "Said method comprising:  receiving, by

22  a web server computer of a company providing a service

23  for connecting healthcare providers with the potential

24  patients, a request for information regarding a first

25  healthcare provider" -- are you with me?  Do you see

1  that?

2     A    Uh-huh.

3     Q    And "a first healthcare provider" is just

4  referring to a specific healthcare provider, right?

5        MR. VÁZQUEZ:  Object to form.

6     A    Are we --

7        MR. VÁZQUEZ:  Calls for legal conclusion.

8     Q    You can answer.

9     A    I'm sorry.  What's your question?

10    Q    The "first healthcare provider" in the claim

11  there is referring to a specific provider, right?

12       MR. VÁZQUEZ:  Form.  Calls for a legal

13    conclusion.

14    A    Not sure I'm following you.

15    Q    What do you understand "a first healthcare

16  provider" to mean there?

17       MR. VÁZQUEZ:  Form.

18    A    Maybe I'm just not following you here.  I --

19    Q    Well, let me -- let me --

20    A    What --

21    Q    Let me rephrase, then.

22    A    Hang on.  Let me catch up to you, though.  Let

23  me just make sure where I'm at.

24    Q    Okay.

25    A    "A request for information regarding a first

1 healthcare provider."

2   Q  So --

3   A  "First healthcare provider."

4   Q  So "a first healthcare provider" there means

5 the specific provider that the request is made about,

6 correct?

7     MR. VÁZQUEZ:  Form.  Calls for a conclusion.

8   He's not a patent expert.

9   A  I'm sorry.  What's your question?  I'm not sure

10 I'm following you.

11     MR. STIMPSON:  Could you please read it back?

12     (The following question was read by the court

13 reporter:  "What do you understand 'a first healthcare

14 provider' to mean there?")

15     MR. STIMPSON:  No, that's not the question.

16     (The following question was read by the court

17 reporter:  "The 'first healthcare provider' there in the

18 claim is referring to a specific provider, right?")

19     MR. VÁZQUEZ:  Same objection.

20  BY MR. STIMPSON:

21      Q    Okay.  So the question -- let me read it to

22  you.  "So 'a first healthcare provider' there means the

23  specific provider that the request is made about,

24  correct?

25          MR. VÁZQUEZ:  Object to form.  Calls for a

1    legal conclusion.  He's not a patent expert.

2    A    Request for information regarding the first --

3  first healthcare provider?

4    Q    Uh-huh.

5    A    Are you asking me what does that mean?

6    Q    No.  I'm asking you -- see it says "a request

7  for information regarding a first healthcare provider"?

8  Do you see that language?

9    A    Okay.

10    Q    The "first healthcare provider" there is the

11  specific provider that the request is made about, right?

12    A    Right.

13        MR. VÁZQUEZ:  Object to form.

14        THE WITNESS:  What?

15        MR. VÁZQUEZ:  Go ahead.  Just give me a chance

16    to make my objections.  Thank you.

17        THE WITNESS:  Okay.

18  BY MR. STIMPSON:

19    Q    So if you go to the next paragraph, then.

20    "Accessing healthcare-provider-verified information."

21  Do you see that?

22      A    Yeah.

23      Q    What does the word "verified" mean to you?

24          MR. VÁZQUEZ:  Object to form.  Calls for a

25      legal conclusion.  He's not a patent expert.

1       MR. STIMPSON:  I can give you a running

2   objection, if you'd like.

3       MR. VÁZQUEZ:  Well, I'll just make my

4   objections depending on your questions.

5   A   Healthcare-provider-verified information?

6   Q   Right.

7   A   What does that mean to me?

8   Q   Yeah.  Well, as the inventor of this patient,

9  what does the word "verified" mean there?

10       MR. VÁZQUEZ:  Object to form.

11    A   Well, I can tell you what it -- what it means

12  to me, how I would interpret that.

13    Q   Sure.

14    A   Our verified information meant that Health

15  Grades would verify the information that we had on that

16  provider.

17    Q   It says, "healthcare-provider-verified

18  information about the first healthcare provider."  So

19  it's really talking about the healthcare provider

20  verifying the information, right?

21      MR. VÁZQUEZ:  Object to form.  Calls for legal

22  conclusion.  He's not a patent expert.

23      A   Healthcare-provider-verified information.

24  "Accessing healthcare-provider-verified information" --

25  well, I guess that could also mean, yeah, the

1 information provided by the provider.  Whether that was

2 verified or not, though, is -- I mean -- I mean, it's

3 just the provider providing the information, so...

4    Q    And what does the word "verified" mean to you?

5       MR. VÁZQUEZ:  Object to the form.  Calls for a

6    legal conclusion.  He's not a patent expert.

7    A    To me it means it's been checked.

8    Q    Checked for accuracy?

9       MR. VÁZQUEZ:  Same objection.

10    A    Yeah, checked for accuracy.

11    Q    So if you'd go to the next paragraph, please --

12 actually, a little later in --

13    A    And it's true.

14    Q    Okay.  Thank you.

15       A little later in that same paragraph it refers

16 to certain -- a group of information there, healthcare

17 provider information, starting, "specialty information,

18 medical philosophy."  Do you see that?

19    A    Yeah.

20      Oh, wait.  No.

21   Q   It's right in the same paragraph.

22   A   Okay.  Yeah.

23   Q   Okay.  And that's all healthcare provider --

24   A   Yeah.

25   Q   -- healthcare-related information, right?

1   A   Right.

2   Q   So we know that this claim has a focus not just

3  on any data, but it's talking about data relating to

4  healthcare providers, right?

5       MR. VÁZQUEZ:  Form.

6   A   Appears to...

7   Q   I'm sorry?  I just can't hear.

8   A   Go ahead.  Yeah, I didn't understand your

9  question.

10   Q   Okay.  That's okay.

11       And then the next paragraph talks about

12  compiling.  And if you could just follow along with me a

13  bit, it says, "compiling, by at least one computer

14  processor, patient-provided information regarding the

15  first healthcare provider, wherein the patient-provided

16  information comprises patient ratings" -- let's stop

17  there for a second.

18       What are patient ratings?

19       MR. VÁZQUEZ:  Object to form.  Calls for a

20     legal conclusion.  He's not a patent expert.

21     A    I interpret patient ratings to be the

22  information that we gathered from the consumer surveys

23  that we got out regarding patient experience.  We had

24  patient experience surveys.

25     Q    Okay.  Anything else?

1      MR. VÁZQUEZ:  Same objections.

2    A   I don't know.

3    Q   Would that be like, for example, the star

4  ratings that were in some reports?  Those would be

5  patient ratings?

6      MR. VÁZQUEZ:  Object to form.

7    A   We had a lot of patients to rate physicians.  I

8  can't remember, actually.

9    Q   Do you remember --

10    A   There were stars.  It would be converted to

11  stars.

12    Q   Star ratings would be patient ratings, though,

13  right?

14      MR. VÁZQUEZ:  Object to form.  Calls for a

15    legal conclusion.

16    A   Star ratings would be patient ratings?

17      Star ratings could be patient ratings?

18      I think so.  I mean, I don't know.  I'm not

19  sure.

20    Q    Do you remember any of the reports you talked

21  about having star ratings?

22    A    Yes.

23    Q    Okay.  And were those patient ratings?

24        MR. VÁZQUEZ:  Object to form.

25    A    Were they patient ratings?  Yeah.  I just can't

1 remember if we -- it's been a while, but I think -- I'm

2 pretty sure -- I'm not sure, though, that we allowed the

3 patients to pick the rating or we converted it to a

4 rating.  I think we allowed them to pick a rating, but

5 it's been a while.  I can't remember exactly.

6    Q   Either way, though, it's still the patients

7 doing the rating, right?

8       MR. VÁZQUEZ:  Object to form.

9    A   The patients providing the information.

10   Q   Right.

11      And so whether you converted the patients'

12 comments to stars or whether the patients actually told

13 you how many stars --

14   A   Right.

15   Q   -- it's still patient ratings, right?

16      MR. VÁZQUEZ:  Object to form.

17   A   It would still be input from the patient.

18   Q   So it would be patient ratings, right?

19      MR. VÁZQUEZ:  Object to form.  Asked and

20    answered.

21    Q    You can answer.

22    A    It would still be -- it would be the patient's

23  opinion of the physician --

24    Q    Okay.

25    A    -- or the provider.

1    Q   As an inventor on this patent --

2    A   Yeah.

3    Q   -- that's what you meant by "patient ratings,"

4 right?

5       MR. VÁZQUEZ:  Object to form.  Misstates the

6    patent language.  Asked and answered.

7    A   That the -- that the patient would provide the

8 feedback and, yeah, I mean, rate the provider.

9    Q   Okay.  If you would look at the -- let's go to

10 the last paragraph.  Well, not the last one, but it

11 says, "creating, by at least one computer processor."

12 Are you with me?

13    A   Yeah.  "Compiling by" --

14    Q   No.  No, it actually says "creating, by at

15 least one."  It's the paragraph about Line 58.

16    A   Okay.

17    Q   So if you'd just follow along with me, please.

18       It says, "creating, by at least one computer

19 processor, a healthcare provider report on the first

20  healthcare provider."

21      First of all, that's referring to the first

22  healthcare provider that's up there on Line 27, right?

23      MR. VÁZQUEZ:  Object to form.

24  A   I --

25      MR. VÁZQUEZ:  Asked -- object to form.

1    Scott, just give me a chance to make my

2    objections.

3    THE WITNESS:  Okay.

4    MR. VÁZQUEZ:  Please let him finish his answer

5    before you start asking the next question, Counsel.

6    Okay.  So that last question, as I understood

7    it, object to form.  Calls for a legal conclusion.

8    He's not a patent expert.

9 BY MR. STIMPSON:

10    Q    So back on Lines 58 and 59.  We all got talking

11  over each other, including myself and Mr. Vázquez, so

12  let's start that again.

13    It says, "creating, by at least one computer

14  processor, a healthcare provider report on the first

15  healthcare provider."  Do you see that?

16    A    Yeah.

17    Q    Okay.  And that "first healthcare provider" is

18  the same "first healthcare provider" that's referenced

19  for the first time up there around Line 27, right?

20      MR. VÁZQUEZ:  Object to form.  Calls for a

21    legal conclusion.  He's not a patent expert.

22      You may answer.

23    A   I -- one might assume that, I assume.  I mean,

24  not a --

25    Q   Okay.  Let's continue, then.

1   A   All right.

2   Q   It says, "using the healthcare-provider-

3  verified information, the patient-provided information

4  and the information verified by the independent

5  third-party source, wherein the healthcare provider

6  report on the first healthcare provider includes

7  comparison ratings of healthcare providers."

8     Do you see that?

9   A   Yeah.

10   Q   What do comparison ratings of healthcare

11  providers mean?

12     MR. VÁZQUEZ:  Object to form.  Calls for a

13   legal conclusion.  Not a patent expert.

14   A   I would interpret that to mean putting ratings

15  side by side.

16   Q   So ratings of multiple providers side by

17  side --

18   A   Yeah.

19   Q   -- so they can be compared?

20      MR. VÁZQUEZ:  Object to form.

21   Q   Turn back to the front page of the patent, if

22  you would, please.

23      You see there where it says -- about the middle

24  of the page it says, "References cited"?

25      Actually, it's right there.

1    A    On this page right here?

2    Q    Yeah.  I'm sorry.  Here, I can help you, point

3 to it.

4        Yeah, it's right there on the front page.  It's

5 right there.  It says, "References cited," down there

6 somewhere.

7    A    Here?

8    Q    Yeah.

9    A    Yeah.  Okay.

10    Q    And I'll just represent to you that's

11 identifying prior art references that were used in the

12 prosecution of the patent, when the examiner -- patent

13 examiner looks at it, okay?

14    A    Okay.

15    Q    Did you have an understanding at the time this

16 application was pending as to what prior art was?

17        MR. VÁZQUEZ:  Object to form.

18    A    No.

19    Q    Did you understand, for example, that something

20  that was published more than a year before you filed

21  your application would be prior art to your patent?

22    A   No.

23    Q   Did you ever talk to any lawyer or anyone

24  in-house at Health Grades about your duty of candor in

25  disclosing prior art to the Patent and Trademark Office?

1    Q   What information did you have?

2    A   My main involvement was, you know, providing

3  the -- any information I had regarding what we built

4  over to Brian Blackman.  And then for the most part I

5  remember the patent coming back to me for review with

6  documents to sign, nondisclosures and all those other

7  types of things.  That was -- that's my recollection.

8        (Exhibit Number 17 was marked for

9  identification.)

10  BY MR. STIMPSON:

11    Q   Let me show you what's been marked as

12  Defendant's Deposition Exhibit 17.  And it's a

13  three-page document.  I'll represent to you it was taken

14  from the Health Grades website.

15        MR. STIMPSON:  Anybody else need a -- Kirstin,

16    do you want a copy?

17        MS. STOLL-DeBELL:  Sure.

18        MR. STIMPSON:  I have an extra copy.  Here's

19    one for you.

20  BY MR. STIMPSON:

21     Q    When was the last time you looked at the Health

22  Grades website?

23     A    The last time I looked at it?

24     Q    Yeah.

25     A    I don't know.  A few weeks ago, maybe.

1    Q    Do you recognize this as a report on Dr. Gupta,

2 G-u-p-t-a, from the Health Grades website?

3    A    Do I recognize this?

4    Q    Uh-huh.

5    A    What do -- I'm not sure of your question.  Back

6 when I -- is this something that I did when I worked

7 there?  Is that what you're saying?  Or -- I don't

8 understand what your question is.

9    Q    No, I'm not asking that at all.  I'm just

10 asking if -- you recognize this as a report obtained

11 from the Health Grades website, right?

12    A    Uh-huh.

13    Q    Pardon me?

14    A    Yes.

15    Q    Okay.  Now, I'm going to turn you back in your

16 patent to the claims, specifically Claim 20.

17        I mean, I'm sorry, not Claim 20, Column 20.

18        And at the bottom, about Line 64, see that

19 language we talked about, comparison ratings of

20  healthcare providers?

21     A   Okay.

22     Q   Do you see that?

23     A   Hang on a second.  Sorry.  I don't have my

24  glasses today.

25         I'm sorry.  Can you repeat that?  Where are you

1  at, again?

2     Q    About Line 64, Column 20.  You'll see the

3  language --

4     A    "Wherein the healthcare provider report"?  Is

5  that where you're at?

6     Q    Yeah.  "Wherein the healthcare provider report

7  on the first healthcare provider includes comparison

8  ratings of healthcare providers."

9     A    Okay.

10    Q    And my question for you, Mr. Montroy, as an

11  inventor on this patent, is, does this report of

12  Exhibit 17 have comparison ratings of healthcare

13  providers?

14        MR. VÁZQUEZ:  Object to form.  Calls for a

15     legal conclusion.

16    A    Yeah.  On the right I would say that's a

17  comparison.

18    Q    So where it says "Compare Dr. Gupta," that box

19  on the right --

20   A   Yeah.

21   Q   -- bottom right of the front page?

22   A   Yeah.

23      MR. VÁZQUEZ:  Form.

24   Q   Please review the entire report, Mr. Montroy.

25   A   Okay.

1    Q    And so this box on the right-hand -- lower

2  right-hand corner on the front page, those are the

3  comparison ratings of healthcare providers?

4    A    Yeah, but this is --

5        MR. VÁZQUEZ:  Object to form.  Calls for a

6    legal conclusion.

7        THE COURT REPORTER:  Wait a second.

8        THE WITNESS:  These are --

9        THE COURT REPORTER:  Hold on.

10        THE WITNESS:  Sorry.

11        MR. VÁZQUEZ:  Object to form.  Calls for a

12    legal conclusion.

13    A    I'm sorry.  What was your question?

14    Q    The box on the bottom right of the front page,

15  that's the comparison ratings of healthcare providers?

16        MR. VÁZQUEZ:  Object to form.  Calls for a

17    legal conclusion.

18    A    It's a comparison, yeah.

19    Q    It's comparison ratings of health- --

20    A    This isn't -- I mean, this is -- you're

21  referencing work -- this was, like, after me, though.

22    Q    That's okay.

23    A    These views and everything, this is -- I mean,

24  I didn't -- this isn't what I worked on --

25    Q    I understand.

1    A    -- in terms of this layout.  This was done

2 after I worked there.

3    Q    Right.  But I'm just asking you, as an inventor

4 of the patent, to look at this report and tell me where

5 the comparison -- where, if anywhere, comparison ratings

6 of healthcare providers are there.

7        MR. VÁZQUEZ:  Object to form.

8    A    Well, it says, "Compare."  It's right there.

9    Q    Okay.  So if you could -- could you circle that

10 for me, please?

11        You can write on it.  It's okay.  Just circle

12 that -- before you start writing, just circle what you

13 see in this report as the comparison ratings of

14 healthcare providers.

15        MR. VÁZQUEZ:  Well, object to form.  Calls for

16    a legal conclusion.

17    Q    You can go ahead.

18        MR. VÁZQUEZ:  Object to form.  Calls for a

19    legal conclusion.

20   A   Okay.  So I'm not sure -- you're asking me to

21  circle.  I just want to make sure I'm --

22   Q   Well, this box --

23   A   Because you're being so technical and things --

24   Q   That's okay.

25   A   -- I just want to make sure --

1    Q    That's all right.  Let's make sure we

2  understand it.

3        This box that you're referring to in the bottom

4  right-hand corner, right, those are --

5    A    That's what you're referring to, right.

6    Q    Right.  Well, that's what you pointed out as

7  the comparison ratings of healthcare providers.

8        MR. VÁZQUEZ:  Object to form.

9    A    It says, "Compare."  But what I worked on as a

10  comparison report was a separate -- it wasn't -- it

11  wasn't in this format.  It was a separate report that we

12  created.

13    Q    That's okay.  Yeah, I understand it might be a

14  different format.  But what I'm asking you to do is

15  circle in that report where you see, according to your

16  patent, comparison ratings of healthcare providers.

17        MR. VÁZQUEZ:  Object to form.  Misstates the

18      testimony, calls for a legal conclusion.

19    A    Well, if I -- to be accurate, though, I

20  didn't -- this isn't -- this isn't the comparison

21  report -- this isn't the comparison report.  This is

22  some other perspective of that report.  So, you know,

23  you're asking me to circle -- this isn't work that I

24  did.

25      Q   I understand that.  That's okay.  What I'm

1 asking you to circle is what you see as the comparison

2 ratings of healthcare providers in that report.

3        MR. VÁZQUEZ:  Object to form.  Misstates the

4    testimony, calls for a legal conclusion.

5        You keep saying "comparison ratings."  He has

6    not said that yet.

7        MR. STIMPSON:  You have stated the objection.

8    That's --

9        MR. VÁZQUEZ:  No.  You know what you're doing.

10 BY MR. STIMPSON:

11    Q    You can go ahead.

12    A    I guess I'm confused now.  I don't --

13        MR. VÁZQUEZ:  Okay.  I'm going to instruct the

14    witness just not to circle anything.  Counsel's

15    trying to force him --

16        MR. STIMPSON:  Are you kidding me?

17        MR. VÁZQUEZ:  No, I'm not.

18        MR. STIMPSON:  On what basis, what possible

19    basis --

20        MR. VÁZQUEZ:  You are putting words in his

21     mouth.  He has not --

22        MR. STIMPSON:  You can go to the judge later.

23     You're not the judge, Jesús.  You don't instruct the

24     witness not to answer because you don't want him to

25     answer.

1     MR. VÁZQUEZ:  Do not -- do not put words into

2  his mouth.

3     MR. STIMPSON:  Jesús, are you instructing him

4  not to answer?  Because we're going to see if the

5  Court's there now if you're instructing him not to

6  answer.

7     MR. VÁZQUEZ:  Go ahead and make your question.

8  You know what you've said at least five times.

9     MR. STIMPSON:  Are you telling him not to

10   answer or not?

11     MR. VÁZQUEZ:  Depends on what you're asking him

12   to do.  He has not said that there's a comparison

13   rating on that report.

14  BY MR. STIMPSON:

15   Q   Excuse me, Mr. Montroy.  In case that wasn't as

16  perfectly clear to you as it was to everybody else in

17  the room, Mr. Vázquez would now like you to say that

18  there's no comparison ratings for healthcare providers

19  on that report, okay?  What I'm asking for is your

20 testimony, okay?  You're the one who's under oath here.

21    A   I think what's confusing me is that you're --

22 this isn't like -- this isn't what I -- this isn't what

23 I worked -- this view and everything isn't what I worked

24 on.

25    Q   I understand.

1    A    This is somebody else's -- this is somebody

2  else's work after me.  So --

3    Q    That's okay.  But --

4    A    So how can I -- you want me to speak to that?

5  I mean --

6    Q    No.  What I'm asking you to speak to is the

7  language in your patent claim, "comparison ratings of

8  healthcare providers."  Like, for example, you

9  realize -- well, let me scratch that.

10        I'm asking you about -- start the question

11  again.  I'm asking you about comparison ratings of

12  healthcare providers in your patent claim, okay?  And

13  I'm asking you to look at this Exhibit 17 and tell me if

14  you see comparison ratings of healthcare providers

15  according to the claim -- the language in your claim.

16        MR. VÁZQUEZ:  And I'm objecting to form.

17    A    Can you retrieve the report that I worked on

18  when I was there?  Right?  Because --

19    Q    Maybe.

20    A    -- that's the work that, I mean --

21    Q    I understand.

22    A    -- that I worked on.  So, I mean, you're asking

23    me to reference something that's in the future, so --

24    and you're -- I guess I'm just getting confused now

25    by --

1    Q    Okay.

2    A    -- what you're saying.

3    Q    All right.  What I'm doing is I'm asking you if

4 this report, Exhibit 17, has comparison ratings of

5 healthcare providers as recited in your Claim 1.

6        MR. VÁZQUEZ:  Object to form.  Calls for a

7    legal conclusion.

8    A    If I'm reading this, it says, "Compare rated

9 physicians" -- "top-rated neurosurgeons," right?

10    Q    Right.  So that's the comparison ratings of

11 healthcare providers, correct?

12        MR. VÁZQUEZ:  Object to form.  Misstates the

13    testimony.

14    A    I mean, I suppose one could conclude that, but,

15 again, that's not -- that's not my work.  That's not...

16    Q    So as an inventor, a named inventor on the 060

17 patent, you can't tell me whether or not that's

18 comparison ratings of healthcare providers?

19    A    That's not what I -- that's not what I created.

20  I mean, I didn't create this view, so --

21      Q   I understand.  But regardless of whether it's

22  the exact format that you created or not, my question to

23  you, as a named inventor on this patent, is, that box in

24  the bottom right-hand corner there, is that comparison

25  ratings of healthcare providers?

1     MR. VÁZQUEZ:  Okay.  Object to form.  Calls for

2  a legal conclusion.  You've asked the question ten

3  times.  It's asked and answered.

4     So now you're -- you know, I will suspend the

5  deposition because you're berating the witness and

6  you're just being argumentative and you're harassing

7  the witness.

8     MR. STIMPSON:  You can answer.

9     MR. VÁZQUEZ:  That's it.  You get one more

10   time, Scott.

11    A   Can you -- can you -- can you -- this -- can

12  you -- can you -- this isn't work that I produced when I

13  was there.  I was --

14    Q   Right.

15    A   I was in charge of publishing a lot of the data

16  from the databases.  So this isn't -- this isn't

17  anything that I worked on in terms of how that was to be

18  published.  So referencing the report that we had in

19  place there, I mean, I can speak to that.  You're asking

20  me to speak to something that -- I wasn't there.  This

21  isn't anything that I worked on.

22      Q    Actually I'm not, though, Mr. Montroy.  I'm not

23  really asking you to speak about something that you

24  didn't work on when you were there.  My question is

25  directed to your patent, okay, and the meaning of

1  "comparison ratings of healthcare providers" in your

2  patent claim, okay?

3     A   Okay.

4     Q   And my question to you, sir, is, as a named

5  inventor on the 060 patent, can you tell me whether this

6  box in the bottom right-hand corner of Exhibit 17 is

7  comparison ratings of healthcare providers according to

8  your Claim 1?

9        MR. VÁZQUEZ:  Okay.  That's it.

10    A   I would --

11       MR. VÁZQUEZ:  No.  Hold on.

12       I object.  That's the 11th time you've asked

13    this question, on or about, and you are harassing

14    the witness, being argumentative.

15       I'm instructing you not to answer.  Do not

16    answer the question anymore.

17       MR. STIMPSON:  Jesús --

18       MR. VÁZQUEZ:  We'll suspend the deposition --

19    we'll just suspend the deposition right now, Scott.

20    You don't want to get --

21        MR. STIMPSON:  You're not suspending the

22    deposition.

23        MR. VÁZQUEZ:  You're not getting what you want.

24        THE WITNESS:  Can I just reference the work

25    that I did when I was there?

1      MR. STIMPSON:  That's okay.

2      THE WITNESS:  I don't understand.

3      MR. STIMPSON:  That's okay.  It's not your

4  fault.

5      Jesús, just to make sure it's very clear on the

6  record, if I come back here, what I'm asking the

7  Court to do is to have you pay all my expenses,

8  because you know the Court is not open today and

9  you -- so you're instructing --

10      MR. VÁZQUEZ:  No, I don't.  I don't.  You have

11   asked the question 15 times, Scott.

12      MR. STIMPSON:  Well, tell me what his answer

13   is.  Tell me what his answer is.

14      MR. VÁZQUEZ:  He has said he doesn't know.  He

15   has said he doesn't know.  He has said he doesn't --

16   you don't have any foundation.  He keeps telling

17   you -- you're just trying to get him to circle

18   something you can trot in front of this Court to use

19   for your own unique purposes.  You know what you're

20    doing, Mr. Stimpson.

21         MR. STIMPSON:  I know what I'm doing.  Yes, I

22    do.

23         MR. VÁZQUEZ:  Yeah.  Well, you're harassing the

24    witness.  And I have a right --

25  BY MR. STIMPSON:

1    Q   Mr. Montroy --

2        MR. VÁZQUEZ:  -- to suspend this deposition

3    right now if you continue.  If you ask the question

4    one more time, I'll stop it.

5  BY MR. STIMPSON:

6    Q   Mr. Montroy, please look at Exhibit 17, okay,

7  and tell me, apart from this box in the bottom

8  right-hand corner, do you see anything else in that

9  report that could be comparison ratings of healthcare

10  providers?

11        MR. VÁZQUEZ:  Object to form.  He never said

12      that that's a comparison rating.

13    A   When you say that could be comparison ratings,

14  what are you --

15    Q   Yeah.  Well, as a named inventor on this 060

16  patent, apart from that box in the bottom right-hand

17  corner which your lawyer won't let you answer, do you

18  see anything else in Exhibit 17 which could be

19  comparison ratings of healthcare providers according to

20  your Claim 1?

21      MR. VÁZQUEZ:  Object to the form of the

22  question.

23    A    Are you saying that you could compare people

24  on?

25    Q    No.  I'm asking you, other than that box in the

1 bottom right-hand corner of Page 1, do you see anything

2 else in that report, Exhibit 17, that could be

3 comparison ratings of healthcare providers?

4     A    Well, this is all specifically on a physician,

5 right?  So these are all details on a singular

6 physician.

7     Q    Right.  And the only thing that talks about

8 ratings of other providers is the box in the bottom

9 right-hand corner on the front page, right?

10     A    Right.

11         MR. VÁZQUEZ:  Object to form.

12     Q    All right.  So the answer to my question, then,

13 sir, is other than that box in the bottom right-hand

14 corner of Page 1, you don't see anything else in that

15 report that could be comparison ratings of healthcare

16 providers?

17         MR. VÁZQUEZ:  Object to form.  Misstates the

18     testimony.

19     A    I don't, no.

20    Q    Okay.  Mr. Montroy, let me show you what's been

21  marked --

22        MR. STIMPSON:  Well, actually I'm going to mark

23    it as Exhibit 18.

24        (Exhibit Number 18 was marked for

25  identification.)

20    2:55.

21        (Break taken.)

22        THE VIDEOGRAPHER:  Back on record at 3:20 this

23    is beginning of videotape number 8.

24            CROSS-EXAMINATION

25  BY MR. VÁZQUEZ:

1    Q    Mr. Montroy, month Troy, excuse me.  I have a

2  few follow-up questions as you know we've been here most

3  of the day, and counsel for MDX has asked you questions

4  and so I just need to follow up on some of the testimony

5  that was already given and some of the questions that

6  were asked earlier today, okay?

7    A    Okay.

8    Q    Okay.  You recall that there were some

9  questions at the beginning of your deposition regarding

10  a litigation filed relating to trade secrets?

11    A    Uh-huh.  Yes.

12    Q    And did you inappropriately or did you give any

13  trade secrets at all to echo star?

14    A    No, I did not.

15    Q    And did you do anything wrong with respect to

16  trade secrets in that case?

17    A    No.

18      MR. STIMPSON:  Objection.  Calls for -- well,

19    just objection for form.

20          MR. VÁZQUEZ:  I'm sorry?

21          MR. STIMPSON:  I just have an objection to form

22     of that question.  That's okay.

23          MR. VÁZQUEZ:  Okay.

24   BY MR. VÁZQUEZ:

25     Q     And that case was settled, right?

1   A   Right.

2   Q   And there was no finding of wrongdoing by any

3 court?

4   A   I don't.

5      MR. STIMPSON:  Objection.  Leading.

6   Q   Okay.  And was there a finding of wrongdoing in

7 that case?

8   A   No.

9      MR. STIMPSON:  Same objection.

10   Q   And with respect to towards the end of your

11 deposition counsel asked some questions about the duty

12 of candor to the patent offers.  Do you recall those

13 questions?

14   A   Vaguely, yeah.

15   Q   Okay.  Did you intend to deceive the patent

16 office?

17   A   No, I did not.

18   Q   Do you have any incentive at all to deceive the

19 patent office?

20    A    I have none.

21    Q    Did you receive any compensation for being a

22  named inventor on the 060 patent?

23    A    I did not.

24    Q    Okay.  Did the stock or stock options that you

25  received from Health Grades you testified about earlier

1  today relate in any way to the fact that you are a named

2  inventor on the 060 patent?

3     A    No, they do not.

4     Q    And then, Mr. Montroy, if we could pull Exhibit

5  8 from the -- from the pile, would you mind assisting

6  me, counsel?

7        MR. STIMPSON:  Sure, no problem.  Let me get

8     mine too, okay?

9        MR. VÁZQUEZ:  Sure.  It's the one with the big

10    clip.

11       MR. STIMPSON:  Is it.

12       MR. VÁZQUEZ:  Uh-huh.

13       MR. STIMPSON:  Please wait for me to get mine.

14       MR. VÁZQUEZ:  Sure.

15       MR. STIMPSON:  Okay.

16  BY MR. VÁZQUEZ:

17    Q    Mr. Montroy, you recall counsel for MDX asking

18  you questions about the reports that are contained

19  within this Exhibit 8 earlier today?

20    A    I do.

21    Q    And if you would just turn to HG 26062.  That's

22  the Bates Number on the bottom right-hand corner.

23    A    Okay.

24    Q    And do you recall counsel for MDX asking you

25  questions about this report earlier today?

1    A   Yes.

2    Q   And do you recall counsel for MDX asking you

3  whether this report was publicly available on December

4  28th, 2004 based on the fact that it shows that date at

5  the top there where it says, "Report created"?

6       MR. STIMPSON:  Objection.

7    A   Yes.

8    Q   Okay.  And also he based those questions on the

9  fact that on the bottom right-hand corner under URL it

10  also says December 28th, 2004.  Do you also recall those

11  questions?

12    A   Yes.

13    Q   And my question, Mr. Montroy, is that on the

14  cover page of this Exhibit 8, the e-mail refers to these

15  being, quote, unquote, sample reports.

16    A   Right.

17    Q   Do you see that?  So based on this saying

18  sample reports, do you know with -- or can you say with

19  100 percent certainty that these reports, particularly

20  the one that I was just referring to at HG 32062, was

21  publicly available on December 28th, 2004?

22      A    I can't say with a hundred percent certainty.

23      Q    Okay.  Then I just have a similar question for

24  an exhibit which we are not sure, counsel, if it was 8

25  or 9?

1       MR. STIMPSON:  I think it was -- I think it's

2    9.  Yeah, this one's 8.  So this one, Drucker's

3    report is 9.

4       MR. VÁZQUEZ:  It's 9 makes sense.  Thank you.

5       MR. STIMPSON:  However, hang on a minimum.  Let

6    me see something.

7       Okay.

8       MR. VÁZQUEZ:  Okay.  Thank you.

9  BY MR. VÁZQUEZ:

10    Q    Mr. Montroy, earlier on in your deposition you

11  were asked some questions about this document it says

12  Drucker at the top which has been marked as Exhibit 9.

13  Do you recall --

14    A    Yes.

15       MR. STIMPSON:  Oh, actually, I have Exhibit 13

16    for that.  I think it's Exhibit 13.  It is Exhibit

17    13 because remember we had and then the marketing

18    report so I think this is 13.

19       MR. VÁZQUEZ:  Sure.

20      MR. STIMPSON:  This is Bates Number --

21      MR. VÁZQUEZ:  Okay.  Well, if there's any

22   doubt, it is document Bates numbered MGHG 000016

23   through 19, the one that days David A. Drucker on

24   the first page.

25      THE WITNESS:  (Nods head.)

1  BY MR. VÁZQUEZ:

2    Q    Okay.  So, Mr. Montroy, do you recall counsel

3  for MDX asking you some quells about this exhibit?

4    A    Yes.

5    Q    And my question is similar to my question

6  earlier about Exhibit 8 and the reports contained within

7  that exhibit.  Can you say with 100 percent certainty

8  whether this this document at MGHG 000016 was publicly

9  available on June 4, 2005?

10    A    I.

11    Q    Simply because on the right -- right on the

12  bottom it says June 4, 2005 at the URL?

13    A    Right.  I can't say for certainty.

14    Q    Well, with 100 percent certainty?

15    A    I can't say with a hundred percent certainty.

16    Q    Okay.  And then, Mr. Montroy, do you recall

17  earlier on certainly times throughout the day being

18  asked questions about the 060 patent?

19    A    Yes.

20    Q    And, Mr. Montroy, did you write any portion of

21    the claims that are contained within the 060 patent?

22    A    No.

23    Q    And, Mr. Montroy, do you understand the rules

24    for determining what patent claims mean?

25    A    No.

1   Q   Are you a patent expert?

2   A   No.

3       MR. VÁZQUEZ:  Thanks.  That's all I have.

4       MR. STIMPSON:  Okay.  I have nothing.

5       MR. VÁZQUEZ:  Okay.  So we're all done.

6       MR. STIMPSON:  Good.  Actually catch your

7   flight.

8       THE VIDEOGRAPHER:  That ends the deposition at

9   3:28.

10      MR. VÁZQUEZ:  He'll read and sign.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25