1                    IN THE UNITED STATES DISTRICT COURT

2                       FOR THE DISTRICT OF COLORADO

3     Case No. 11-CV-00520-PAB-BNB

4     _____

5     HEALTH GRADES, INC.,

6         Plaintiff,

7     vs.

8     MDX MEDICAL, INC.,
      *doing business as* Vitals.com,

9

10        Defendant.

11    _____

12         Proceedings before BOYD N. BOLAND, United States
      Magistrate Judge, United States District Court for the
13    District of Colorado, commencing at 10:37 a.m.,
      December 21, 2011, in the United States Courthouse,
14    Denver, Colorado.

15    _____

16         WHEREUPON, THE ELECTRONICALLY RECORDED
      PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...
17    _____

18                            APPEARANCES

19              MR. JESUS M. VAZQUEZ, JR., ESQ.,
                  MR. KRIS KOSTOLANSKY, ESQ.
20           Appearing on behalf of the Plaintiff.

21       MR. SCOTT D. STIMPSON, ESQ., MR. DAVID LEE, ESQ.
              Appearing on behalf of the Defendant.
22    _____

23
                          MOTION HEARING
24

25

```
 1                    P R O C E E D I N G S
 2              (Whereupon, within the electronically recorded
 3    proceedings are herein transcribed, pursuant to order of
 4    counsel.)
 5              THE COURTROOM DEPUTY:  All rise.  Court is in
 6    session.
 7              THE COURT:  Thank you.  Please be seated.
 8    We're here this morning in case 11-CV-520, Health Grades
 9    against MDX Medical on the defendant's motion to compel.
10    May I have appearances, please.
11              MR. STIMPSON:  For MDX, Your Honor, Scott
12    Stimpson of Sills, Cummis & Gross.  With me, who will be
13    doing the argument, David Lee, also from Sills, Cummis &
14    Gross.
15              THE COURT:  Thank you.
16              MR. VAZQUEZ:  For Rothgerber -- for Health
17    Grades, from Rothgerber, Your Honor, Jesus Vazquez and
18    my partner Kris Kostolansky.
19              THE COURT:  Thank you.  I've read the motion
20    and response, reviewed the attached materials.  I'll
21    hear anything more you have to say in support of your
22    motion.
23              So, as you do this, Mr. Lee, I think it would
24    be most helpful if you go through either discovery
25    request by discovery request, or if they can be easily
```

1    grouped by category, and the admission request can

2    probably all be taken up at once if they're still in

3    dispute.  And then I'll ask Mr. Vazquez to respond to

4    those -- that one or that connected group, and then I'll

5    rule, and then we'll move on to the next group.

6              MR. LEE:  Yes.  Yes, Your Honor.

7              THE COURT:  Okay.

8              MR. LEE:  May it please the court, Your Honor,

9    my name is David Lee.  Mr. Stimpson and I are with

10   Stills, Cummis & Gross, which represents defendant MDX

11   Medical, Inc. in this case.  At the outset the parties

12   would like to note that as of this morning we have

13   reached an agreement that resolves many of the issues in

14   this case.  We have an e-mail memorializing this

15   agreement, and with your permission, Your Honor, we'd

16   like to make it of record in this case.

17             THE COURT:  All right.

18             MR. LEE:  May I approach?

19             THE COURT:  You may.  Thank you.

20             MR. LEE:  Your Honor, I've been closely --

21   been closely involved with discovery in this case and

22   with this motion.  MDX filed this motion after four and

23   a half months of trying to work out discovery delays

24   with Health Grades, but ultimately saw no option but to

25   file this motion.

1          The motion organizes the issues into six

2    sections, and unless Your Honor prefers otherwise I can

3    go through the issues in the order they appear in the

4    motion.

5          THE COURT:  That would be fine.

6          MR. LEE:  Your Honor, turning to the first

7    section, this relates to MDX's first set of

8    interrogatories and specifically addresses Interrogatory

9    Nos. 1 through 4.  The agreement, Your Honor, resolves

10   Nos. 1 and 3 leaving 2 and 4 for today.

11         Interrogatory No. 2 asks Health Grades to

12   identify all prior art to its patent.  Your Honor, MDX's

13   own products from 2003 and 2004 are prior art, and must

14   be included in this response.  Health Grades has refused

15   to do so for the reason that they think it's not prior

16   art.  Well, Your Honor, that's simply incorrect.

17   Therefore, MDX requests that Health Grades' own products

18   from 2003 and 2004 be included in this response.

19         THE COURT:  Well, why is it prior art?  I

20   mean, it's possible I suppose that you would say that

21   the -- it's possible that they will say it's a different

22   device.  So, aren't they -- they've said it's not prior

23   art.  They're stuck with that answer.  You may not like

24   it and you may attempt to disprove it, but you're stuck

25   with that answer.  And so I'm not sure I understand why

1    they have to say that it is prior art.

2              MR. LEE:  Well, Your Honor, it's -- from our

3    position it's because it's based on an incorrect

4    determination of what prior art includes, including --

5    there are two aspects.  One is the date of the prior art

6    and the second is what it contains.  And based on our

7    review of the documents provided by Health Grades

8    regarding what their prior products contain, we believe

9    that it meets both of those requirements.

10             Therefore, to the extent there are any

11   misunderstandings about the law and what constitutes

12   prior art, we believe that a proper correction should be

13   made, Your Honor.

14             THE COURT:  So, why does it matter?  Can

15   you -- do you need this -- you know -- I guess you know

16   what their prior products were or you could take

17   discovery about those.  Why are we here fighting about

18   whether it is or isn't prior art?  Why didn't you just

19   send another interrogatory saying describe for me this

20   information about your prior products?

21             MR. LEE:  Your Honor, the reason that we're

22   requesting supplementation to include some of this

23   information for this interrogatory as well as others is

24   to provide a full and accurate record of the discovery

25   in this case, so that later on for depositions or other

1   motions, for example, if we need to refer to the

2   discovery record it will be complete and accurate.

3          I suppose, Your Honor, we could have filed

4   another -- served another interrogatory asking for that

5   information, but to some extent I believe we have

6   already done so through other discovery in this case.

7   Not necessarily through interrogatories.

8          For example -- the invalidity contentions, for

9   example, require Health Grades to provide any documents

10  that they contend show that -- how their current website

11  operates.  And to the extent that, you know, there's any

12  relationship between that in prior documents we believe

13  that should have captured it.  So, we believe this

14  specific interrogatory is directed to prior art and not

15  simply just a description of how the website -- Health

16  Grades website or prior versions of it operate.

17          THE COURT:  Okay.  Mr. Vazquez.

18          MR. VAZQUEZ:  Good morning, Your Honor.  May

19  it please the court.  I think the -- you hit the issue

20  -- you hit the nail on the head, Your Honor with your

21  questions.  We do not believe it is prior art.  We think

22  that this dispute is about a disagreement or -- or they

23  just don't like what we have said in response to this

24  Interrogatory No. 2.  So, we think it should not be in

25  the motion.

1         We do not have to say it's prior art.  We

2    disagree that it is.  We have provided documents -- in

3    fact, they based their motion to add the defense of

4    inequitable conduct on documents that we provided that

5    they then say is prior art.  We disagree.

6         Also, Your Honor, we have not taken a single

7    deposition in the case other than the one we took of

8    Jeff La Pointe.  They have not.  The inventor

9    depositions are coming up in January in which they can

10   pursue the timeframes where they think this will become

11   prior art and ask questions about that.

12        Additionally, Your Honor, as you may see from

13   the e-mail that Mr. Lee provided, we have resolved the

14   ESI discovery issues.  And MDX's requests that we search

15   for certain terms were specifically targeted to these

16   prior art issues.  We have -- those searches were in the

17   works way before they filed this motion.  On

18   November 17th we advised MDX that our client had advised

19   us that they had obtained search results to these

20   requests.  On November 22nd, again, before we filed the

21   motion, we advised them that we had the search results

22   and were willing to discuss it with them.

23        So they now have those search results.  They

24   were voluminous.  We believe that to the extent any of

25   this alleged prior art exists it is contained within the

1    134,000 pages of results from the search results -- or

2    the search term requests that they made.

3         THE COURT:  I take it that it's your position

4    that defining what is and is not prior art is an art in

5    and of itself, and that's why sometimes you get into

6    squabbles over whether there was inequitable conduct as

7    a result of whether certain art -- prior art was or

8    wasn't disclosed; is that right?

9         MR. VAZQUEZ:  Yes.  That is correct, Your

10   Honor.

11        THE COURT:  And -- but -- but does your

12   current -- does the patented device, patented -- would

13   you call this a device?  What would you call this?

14        MR. VAZQUEZ:  It's actually a method and a

15   system.

16        THE COURT:  All right.  Does the patented

17   method and system build on -- did it build on the --

18   your own prior products?

19        MR. VAZQUEZ:  Well, it was -- there were a

20   series of products that Health Grades developed and

21   we've told them when that happened and when they were --

22   the products were developed in response to their

23   discovery requests.  But we very, very firmly contend,

24   Your Honor, that the combination of all these things did

25   not occur until well -- until past the statutory bar

1   dates that would -- you know, that would support their
2   argument that this is prior art.
3           THE COURT:  So you've, know doubt, seen
4   teacups with two handles on opposing sides of the cup.
5   I don't know why they do that.
6           MR. VAZQUEZ:  Or a sugar cup like that, sure.
7           THE COURT:  All right.  I thought they were
8   teacups.  I actually think I've seen people drinking out
9   of them.  But let's just suppose that.  Now, suppose
10  your prior product was a teacup with one handle and now
11  you've simply added the second handle.  It would seem to
12  me that the one-handled teacup would necessarily be
13  prior art because there's an addition, but -- but it's
14  building upon that -- that prior cup.  Is your patented
15  method analogous to my two-handled teacup?
16          MR. VAZQUEZ:  Not exactly, Your Honor, because
17  what's missing in that analogy is the timeframe when the
18  first handle was put on versus when the second one was
19  put on.  It's also missing whether putting a second
20  handle on would be obvious or anticipated by the fact
21  that there's one handle on the cup to begin with.  I
22  mean, I would say that it would not be.
23          THE COURT:  So to be prior art it -- well,
24  define for me prior art --
25          MR. VAZQUEZ:  Well, prior art --

1          THE COURT:  -- that must be disclosed.

2          MR. VAZQUEZ:  Well, prior art, to the extent

3    it exists, it would include materials that were out in

4    the public more than one year from the time the patent

5    application was filed.  Now, in all patent cases there

6    are squabbles as to what is -- you know, something is

7    found which is outside that one-year timeframe, that

8    doesn't, you know, just complete the analysis.  You

9    know, and then you have to look at what is it that was

10   out there.  Does it in and of itself meet all the

11   elements of the claims, or did it have to be combined

12   with other issues or other material that also fell

13   outside of that one-year period.

14          Now, I assume we're going to get to it a

15   little later, but it relates to this question, Your

16   Honor.  We have filed a supplemented response to their

17   Interrogatory No. 8, which asked us to set forth why we

18   disagree with all of their invalidity contentions.  And

19   one of the issues we had with not making that response

20   back on July 20, when we made our response at their

21   first set of interrogatories, is that they had not

22   specified the combinations that their invalidity

23   contentions list invalidate the patent based on prior

24   art.

25          And as the court will see -- actually, we

1      attached it to our response, that supplemental response,

2      there are 75 possible combinations, none of which have

3      been specified or, you know, identified or articulated

4      as to how this one works and what prior art it is linked

5      to.  So, you know, and that remains an issue here.

6      Eventually, in an effort to resolve, you know, the

7      issues that we'd be here talking about today, we made

8      that supplementation but, you know, we still had to do

9      it as best we could based on the insufficient

10     information that is contained in their invalidity

11     contentions.

12             THE COURT:  Why -- I think I may have asked

13     this already, but if I did I didn't grasp your answer.

14     Why aren't your prior products prior art?

15             MR. VAZQUEZ:  Well, they may be, Your Honor.

16     And we're -- we haven't said that they are not right off

17     the -- you know, just off the bat.  We had a production

18     of documents in which our client went through their

19     files and hand select the documents which we produced.

20     Within that production are some references to products,

21     one of them is the physician report that they contend

22     that -- you know, that's referenced in the press release

23     in their motion to add an inequitable conduct defense.

24             Now, that in and of itself does not meet all

25     of the elements of the claims in the patent.  It needs

1    to be combined with other things.  And the reasons why

2    we -- you know, the reasons why that does not meet all

3    the elements and needs to be combined are set forth in

4    the response to that motion that we filed some time ago

5    with the court.

6            So, that's why that product cannot just say is

7    prior art.  We need to -- just because it was issued,

8    you know, at a certain time doesn't close the question.

9    And if I'm -- I may be incorrect but I believe that that

10   press release is dated December 22nd, 2005.  Well, we

11   filed a provisional application on February 8th, 2006,

12   so the prior art for our date would be February 8, 2005,

13   and then the subsequent full application was filed

14   August 29th, 2006, and so at a one-year bar period would

15   be August 29, 2005.

16           So under either of those that particular

17   reference is in December of 2005, so that falls within

18   the one-year period that flows from the full application

19   as well as from the provisional application.

20           THE COURT:  So, you're saying it's not

21   prior -- are you saying that the -- your prior products

22   are not prior art based exclusively on the time issue,

23   or something other than that?

24           MR. VAZQUEZ:  I'm saying that they may not be

25   prior art.  And one of the reasons that we would argue

1    about this issue of law and, you know, argue to the jury

2    would be the timing issue.

3           Now, we don't have -- you know, we just

4    received just recently the results of all these

5    products.  We've undertaken in good faith, you know, the

6    documents that would relate to the products they contend

7    are prior art.  We did a good faith effort to find what

8    we could, hand selected from our clients, we provided

9    that.  But we anticipate that any and all products are

10   going to be contained within these productions that were

11   based on their requests.

12          Similarly, we have asked for documents from

13   them in which the search requests that we submitted are

14   narrowly targeted to find issues related to their

15   contentions as to what's prior art or what infringes and

16   so forth.  So, you know, this goes book to your

17   question, why are we here fighting; why not take further

18   discovery; why not take some depositions.  As you know

19   we've now agreed to extend fact discovery to

20   February 16th.

21          In their motion to compel at footnote 10, MDX

22   very strenuously said -- you know, put forth a statement

23   that they very strenuously or vigorously would oppose

24   any fact discovery extensions.  Well, a few weeks later

25   we, in fact, agreed to a month.  Part of the reason was

14

1    to allow for this discovery.

2                THE COURT:  Okay.  Thank you.

3                MR. VAZQUEZ:  You're welcome.

4                THE COURT:  Mr. Lee, anything more on No. 2?

5                MR. LEE:  Yes, Your Honor.  I'd just like to

6    briefly respond.  The prior art does have a date aspect,

7    and those date aspects are described in Section 102 of

8    the patent laws.  And they relate -- they're

9    essentially, in this case, based on the filing date of

10   the earliest patent application, in this case, which I

11   believe is February 2006.

12               Now, there are different versions -- there are

13   different ways something can be prior art.  One is if

14   it's before the date of invention, essentially in this

15   case before February 2006, then it can be prior art.

16   Another aspect is if the prior art was dated more than

17   one year before February 2006 then that can also be

18   prior art.

19               To the extent Health Grades argues that there

20   are certain date issues, there are certain date ranges

21   that are just not in dispute at all here.  Any Health

22   Grades prior product from 2004 certainly meets the date

23   requirements of prior art, and discovery has shown that

24   there are Health Grades products from that date range,

25   Your Honor.

1          Secondly, Mr. Vazquez referred to the

2     possibility of prior art showing either all of the

3     elements in a claim, meaning by itself anticipates a

4     claim, or needing to be combined with other references,

5     in which case the prior art shows less than all of the

6     elements in a claim.

7          As long as the date requirement is met, and in

8     this case there are certainly 2004 products that meet

9     the date requirement, and as long as the products show

10    certain parts of the patented claim, then it can be used

11    in combination with others to invalidate the claim and,

12    therefore, would qualify as prior art in that respect,

13    Your Honor.

14         THE COURT:  Well, I should have been a better

15    patent lawyer, I guess, because I'm just not sure I'm

16    exactly following the argument.  But, in my view, use of

17    the term "prior art" in Interrogatory 2 leaves it open

18    to the possibility that parties will disagree about

19    whether something is or isn't prior art.  And that's

20    what's happened here.  I'm going to deny the motion to

21    compel with respect to Interrogatory 2 because the

22    interrogatory is answered.  The defendant may disagree

23    with that answer, and does disagree with the answer, but

24    there is an answer here.  The parties are stuck with it

25    for now.  It may be right, it may be wrong, it can be

1   subject to proof one way or the other, but I find that

2   the interrogatory has been sufficiently answered.  The

3   dispute over whether something is or isn't prior art is

4   a matter of interpretation or opinion, and the plaintiff

5   is entitled to assert it view in that regard.  No. 4.

6           MR. LEE:  Your Honor, Interrogatory No. 4 asks

7   Health Grades to set forth all facts showing that its

8   patent is not obvious.  There are two issues that MDX

9   would like to raise for this interrogatory.

10          First, Health Grades alleges in its response

11  that MDX copied the patented claims and shows that as

12  evidence of nonobviousness.  However, this statement is

13  conclusory, Your Honor, and fails to provide any facts

14  as to the copying or provide any showing of the required

15  nexus between the alleged copying and the patented

16  claims.

17          The second issue, Your Honor, is that Health

18  Grades points to facts regarding commercial success as

19  evidence of nonobviousness as well, but there, also,

20  Health Grades failed to show the required nexus between

21  the commercial success and the patent claims as well.

22          Your Honor, indeed, Health Grades indicated

23  that it would supplement these two points in two

24  e-mails; one dated August 3rd, which is Exhibit D, and

25  another dated October 3rd, which is Exhibit E.  And,

1    therefore, MDX simply asks that Health Grades do what it

2    promised to do.

3         THE COURT:  Thank you.  Mr. Vazquez.

4         MR. VAZQUEZ:  Your Honor, this issue is the

5    same exact issue that the court faces with the previous

6    Interrogatory No. 2.  Nexus is open to interpretation.

7    The parties will argue to the jury whether there is a

8    nexus or there isn't a nexus.

9         Now, as the court is aware, like Interrogatory

10   No. 2, we provided a response here, and it was lengthy.

11   All of our secondary considerations listed in our

12   interrogatory response relate to either Health Grades'

13   website or MDX's website.  Additionally, we've provided

14   claim charts showing how each of these websites are

15   covered by the claims.

16        For Health Grades we provided a claim chart

17   with our first supplemental contentions, these are the

18   ones that are still in, and related to a recent court

19   order.  It's 37 pages long, Your Honor, and it maps

20   Health Grades' website element by element to the

21   asserted claims.

22        For MDX we gave them claim charts showing why

23   we think their website meets the required elements --

24   the patent claim elements.

25        Now, they seem to be saying no jury would

1    believe that there was a nexus based on that or those

2    productions.  We simply disagree.  We think -- they have

3    all the documents now.  Again, their requests were

4    broad.  We have provided them.  They're open to

5    characterize them however they like.  And I'm sure they

6    will make arguments as to nexus, as we will.  But just

7    like Interrogatory No. 2, this is really about they

8    don't like what we've said.  It's not that we didn't

9    provide it.

10         Now, with respect to this copying issue, Your

11   Honor, it's true that in our initial response we

12   asserted it.  We are, after all, in a patent

13   infringement case where we're alleging that their

14   website copies ours.  That's another way of saying

15   infringement in layman's terms.

16         Since then we received documents from MDX.

17   These are the ones that were served with no notice on

18   the eve of the depositions in New York.  6,000 pages of

19   documents.  Within those documents we have found

20   documents that specifically say, copy Health Grades.

21   And in our response at page 4 I identified the bates

22   numbers of those documents.  So, as to that issue I

23   think that that is well supported.  And I would submit

24   that the fact that the defendant literally set out to

25   copy what Health Grades is doing is a nexus in and of

1    itself.

2            In our response to Interrogatory No. 4 we also

3    identified and discuss 14 separate articles that are

4    responsive to the request.  We directed a client to --

5    or MDX to client testimonials, and all of these things

6    are responsive to this interrogatory, they just don't

7    like it.  They just wish that we had said more or just

8    simply disagree.

9            In good faith I've agreed to pull those 14

10   articles, all of which are publicly available, and we

11   made that objection in our response.  To the extent

12   they're asking for publicly available documents, we

13   object.  Nonetheless, we're going to pull them and

14   supply them.  So, I think the court should deny the

15   motion as to Interrogatory No. 4.

16           THE COURT:  Thank you.

17           MR. VAZQUEZ:  You're welcome.

18           THE COURT:  Mr. Lee, anything more?

19           MR. LEE:  Yes, Your Honor.  Your Honor,

20   Mr. Vazquez refers to Health Grades' showing of how its

21   website relates to the claims, but what's at issue here

22   is really Health Grades' response to Interrogatory

23   No. 4, which is provided as Exhibit B.  There, Health

24   Grades refers to many national authorities and quotes

25   portions from those national authorities giving a list

1    in Section 2.  And the question is whether any of those

2    authorities there, and any of those portions relate at

3    all to the claims.

4            As shown in MDX's brief, nexus is a

5    requirement to show that whatever evidence there is of

6    nonobviousness it has to be related to the claims itself

7    not just some general overview of some general

8    commercial success.  And that nexus showing is missing

9    from their Interrogatory No. 4 response with respect to

10   these national authorities listed in the current

11   interrogatory response now.

12           Similarly, with respect to evidence of

13   copying, Mr. Vazquez mentioned that there was a document

14   mentioning copy Health Grades.  There, the same question

15   is whether any copying related to any of the patented

16   claims or any of the patented features.  For example, if

17   the copying related to simply a color, or something like

18   that, that's nothing related to the claims at all and

19   not meet the nexus requirement shown by the cases in

20   MDX's brief, Your Honor.

21           THE COURT:  So, it seems to me, Mr. Lee, that

22   your complaint here is that the evidence of

23   nonobviousness, this isn't good enough.

24           MR. LEE:  That's partly it, Your Honor.  But

25   to the extent we might not have understood the nexus or

1    the connection put forth by these, then having that

2    interrogatory response will help us understand.

3              THE COURT:  What would you -- how would -- if

4    you were in Mr. Vazquez' chair and you wanted to say

5    that the CNN Health article was responsive and there was

6    a nexus, how would -- how would one demonstrate that?

7              MR. LEE:  Your Honor, I'm not sure that this

8    specific portion would be enough to show nexus.  But,

9    for example, if there were some other portion of this

10   reference that relates to some specific claim element,

11   for example, as in any of the claim elements

12   specifically written in the claim itself, and the

13   article touches upon something describing that element,

14   then that would be, I think, Your Honor --

15             THE COURT:  The link to the doctors,

16   especially great.  Is that --

17             MR. LEE:  Something like that, Your Honor,

18   yes.

19             THE COURT:  Because that's one of the parts of

20   the claim, right, is that there's a link -- an ability

21   to link to a doctor?

22             MR. LEE:  Right.  And there are other many

23   portions of the claim, there are patient reviews, there

24   are information about doctors such as medical score

25   information.  There's information about specialities and

 1   honors and awards.  You know, if the article mentions

 2   those types of things, some part of the claim, and that

 3   would be a tie, for example, to the claim language.

 4   But if there's something like that currently within

 5   these excerpts we just ask that Health Grades bring that

 6   out.  But if none of these excerpts here -- some of

 7   these excerpts here do not include that nexus, then

 8   possibly Health Grades may choose to not include some of

 9   these references.

10        THE COURT:  I'm going to deny the motion to

11   compel with respect to Interrogatory 4 for the same

12   reason I did Interrogatory 2.  There is an answer here.

13   Maybe it's adequate.  Maybe it's not.  It's clear that

14   the defendant doesn't like it.  But that doesn't mean

15   it's not an answer that all parties are stuck with.  And

16   so I think the interrogatory has been answered, for

17   better or for worse, and there's nothing for me to

18   compel.

19        Next group, Mr. Lee.

20        MR. LEE:  Okay.  Your Honor, in Section 2 of

21   MDX's brief this relates to MDX's second set of

22   interrogatories and specifically addresses Interrogatory

23   No. 8.

24        This interrogatory asks Health Grades to

25   explain any agreement with MDX's invalidity contentions

23

1  which appear in Exhibit G to the motion, including any

2  full and complete details of why MDX's contention --

3  invalidity contentions are incorrect.  Your Honor, MDX's

4  invalidity contentions contain 38 pages of charts which

5  quote portions of the prior art and explain how those

6  portions relate to each of the claim elements.

7       Health Grades' response, which is provided in

8  Exhibit B to the Health Grades' opposition, simply

9  concludes as certain elements are missing from the prior

10  art without addressing any of the reasoning leading to

11  the conclusions.

12       Your Honor, without this reasoning, Health --

13  Health Grades is asking MDX to guess at the reasoning

14  leading to the conclusions, and there are certain

15  conclusions that just don't seem sensical.  For example,

16  Your Honor, on page 6 -- I'm sorry, Your Honor, on

17  page 9 of the interrogatory response Health Grades

18  refers to a prior art labeled as physician quality

19  report.  In fact, this is Health Grades own prior

20  product.  And Health Grades contends that the physician

21  quality report lacks the report claim element.

22       Your Honor, this seems nonsensical.  How could

23  a report prior art lack a report element?  Similarly,

24  for other claim elements the conclusions that certain

25  elements aren't shown by the bar, simply don't refer to

1     any of the quoted portions that MDX provided in its

2     claim construction chart.  MDX simply needs to know the

3     reasons why Health Grades arrived at these conclusions,

4     and presumably that would include their having evaluated

5     the quoted portions of the prior art, Your Honor.

6             Therefore, MDX requests that this

7     interrogatory be supplemented to provide more details

8     about the quoted portions and how Health Grades arrived

9     at its conclusions.

10             THE COURT:  I think that there's a disconnect

11    on my part here.  You indicated -- the response to

12    Interrogatory 8 that I have reviewed is -- is purely

13    composed of objections.  Was there some further

14    supplement --

15             MR. LEE:  Yes, Your Honor, there was --

16             THE COURT:  -- that I should be looking at?

17             MR. LEE:  -- a supplement after the date of

18    this motion.  It's Exhibit B to Health Grades'

19    opposition.

20             THE COURT:  Oh, to Health Grades.  All right.

21    Thank you.

22             MR. LEE:  Thank you.

23             THE COURT:  Mr. Vazquez.

24             MR. VAZQUEZ:  Your Honor, our response and the

25    dispute about our response to this interrogatory begins

1    with the insufficient invalidity contentions which were

2    submitted by MDX.  Exhibit A to our response to the

3    motion to compel that we're discussing here today, Your

4    Honor, is a copy of a letter that we sent to MDX on

5    September 2nd specifically listing the deficiencies

6    particularly relevant to -- to your resolving this

7    portion of their motion to compel here today.

8          At the bottom of our letter of Exhibit A,

9    September 2nd, 2011, Exhibit A to our response to the

10   motion to compel, we note that the MDX invalidity

11   disclosures do not meet Rule 3-3(c).  What Rule 3-3(c)

12   is -- and I'm sure you'll recall, the parties have

13   agreed to incorporate the Northern District of

14   California rules, and this is Docket No. 34 is the

15   scheduling order, Your Honor.  And attached to the back

16   of that at a page that says PAT-7 you'll see

17   Rule 3-3(c).  So, the fact of the matter is that MDX has

18   failed to comply with the court's order with respect to

19   these disclosures.

20         On September 2nd, way before this motion was

21   filed, we pointed that out.  That is why our initial

22   response to this interrogatory consisted of objections.

23   Valid objections.  Substantially justified objections

24   based on these disclosures.  Eventually, MDX took the

25   position that they would not supplement their invalidity

1    contentions to address this issue or any others.  Based

2    on that and, again, in an effort to resolve this motion

3    at Exhibit B (unintelligible) in the motion -- Exhibit B

4    to our response, Your Honor will see that we have

5    undertook to respond as best we could despite these

6    deficiencies.  And there is a 25-page detailed response,

7    supplemental response to this interrogatory.

8            Now, Mr. Lee paraphrased -- what I heard him

9    say is, you know, we just need a little more information

10   how to interpret, you know, what you're saying here and

11   you're not doing it element by element.  Well, we should

12   not be forced or compelled to provide anything further,

13   much less pay fees for this, based on the fact that they

14   have violated a court's order on 3-3 little (c).  That's

15   the best I can tell.

16           THE COURT:  Okay.

17           MR. VAZQUEZ:  Thank you.

18           THE COURT:  Mr. Lee.

19           MR. LEE:  Your Honor, MDX's invalidity

20   contentions are not insufficient and they do not violate

21   the patent rules.  Mr. Vazquez refers to a violation,

22   but does not explain any reason why they violate.  In

23   fact, they don't.  As part of MDX's brief, we address

24   certain issues that Health Grades has brought up in the

25   past.  For example, they addressed a number of possible

1    combinations, but the Northern District of California

2    has said that even combinations numbering the billions

3    could be sufficient to satisfy the patent rules.

4         Health Grades has brought up the issue of

5    using the and/or in MDX's invalidity contentions to show

6    that it's vague, but the Northern District of California

7    has also said that's sufficient to satisfy the rules.

8         In short, Your Honor, MDX believes that the

9    contentions are -- satisfy the rules and do not violate

10   any of the rules.

11        Secondly, Your Honor, unless Mr. Vazquez is

12   saying that the contentions were so vague that they

13   could not review the quoted portions of the prior art

14   listed beside each of the claim elements then they had

15   to have gone through some thought process in reaching

16   their conclusions of why those portions did not meet the

17   claim language.

18        And, Your Honor, as shown by the example of

19   the nonsensical result of how a physician quality report

20   could lack a report, those are the types of explanations

21   the reasoning why the portions of the prior art don't

22   meet the claims.  Those are the explanations that Health

23   Grades eventually would provide to a jury to explain the

24   invalidity -- why invalidity is not the case in this --

25   for their patent.  And we can't wait until that late

1       phase of this case to find out those arguments because

2       by then, if we are really incorrect about some of these

3       prior art, we'd have no opportunity at that point to

4       find other prior art to replace these.

5               Therefore, Your Honor, before fact discovery

6       closes, Health Grades needs to explain these reasonings,

7       so that if, indeed, MDX is correct, it has an

8       opportunity to find more prior art.

9               THE COURT:  Well, so, Mr. Vazquez says there

10      are 20-some pages here.  Tell me again why they aren't

11      adequate.

12              MR. LEE:  I'm sorry, Your Honor?

13              THE COURT:  So, you know, the answer -- the

14      supplemental answer to No. 8 goes on for a number of

15      pages.  Why isn't -- now you may disagree with it, but

16      why isn't it adequate?

17              MR. LEE:  Your Honor, it's inadequate simply

18      for the reason that they are conclusory statements that

19      don't show any of the reasons why the invalidity

20      contentions are wrong.  It simply shows their position

21      of whether certain elements are met or not, and it

22      doesn't reveal any of the thinking behind it.  For MDX

23      to go by that alone, surely MDX would be ambushed by

24      trial by whatever reasoning they're thinking of now that

25      they would provide at trial to explain the invalidity.

 1          THE COURT:  Give me -- show me an example.  I

 2   think you did before.  Give me another -- show me an

 3   example of what you're talking about.

 4          (Whereupon, there was a pause in the

 5   proceedings.)

 6          MR. LEE:  I'm sorry.  I found a document, Your

 7   Honor.  Sorry for the delay.  For example -- Your Honor,

 8   another example is on page 10, for example, of the

 9   supplemental interrogatory response where in Item 3

10   listing a prior art as comparison report Health Grades

11   also says that what's missing from the comparison report

12   prior art is report and also comparison ratings.  These

13   conclusions simply on its face defy just the labeling of

14   the prior art itself and does not even address any of

15   the quoted portions from the prior art about why those

16   portions -- MDX thinks those portions show these

17   elements.

18          Your Honor, those are the clearest examples.

19   Other references refer to patent numbers and patent

20   publication numbers, and on the face of this it's hard

21   to tell what those references included.  We'd have to

22   refer to MDX's invalidity contentions.

23          THE COURT:  Okay.  I'm going to grant the

24   motion to compel with respect to Interrogatory No. 8.  I

25   am persuaded that -- by Mr. Lee, that although a lot of

1    words are provided in the supplemental response, it

2    really doesn't explain -- the supplement really doesn't

3    explain the reasoning which Health Grades has gone

4    through.  It's written in kind of a cryptic way that, at

5    least my attempts to read it, make it very difficult, if

6    impossible -- if not impossible to understand.

7         So maybe the information is all there,

8    Mr. Vazquez.  I don't know.  It doesn't appear to me

9    that it is, but it's not presented in a way that can be

10   reasonably understood or readily understood, so I'm --

11        MR. VAZQUEZ:  Your Honor.

12        THE COURT:  Yes, sir.

13        MR. VAZQUEZ:  I'm sorry to interrupt.  I was

14   hoping to ask you before you ruled if I could briefly

15   respond to some of the points Mr. Lee made.

16        THE COURT:  All right.

17        MR. VAZQUEZ:  May I?

18        THE COURT:  Maybe you'll persuade me.  All

19   right.

20        MR. VAZQUEZ:  All right.  Your Honor, Mr. Lee

21   said that we haven't properly explained to him what is

22   wrong with his invalidity contentions.  And it's very

23   clear from Exhibit A to our response to the motion to

24   compel, Your Honor, where we state, MDX's disclosures

25   regarding motivation and reasons for combining and/or

1   modifying the prior art in its contentions, and in its

2   Rule 3-3(c) chart are incomplete and deficient and must

3   be supplemented, and here's why, Your Honor.

4           MDX (unintelligible) supplement its

5   contentions to describe with specificity what the

6   motivations and reasons for combining are for each

7   specific combination of prior art for each claim.  And

8   it must identify each and every specific combination it

9   contends renders which specific claim of the patent

10  obvious.  Okay.  So that's very specific what is wrong

11  with -- with these charts that the court is looking at.

12          Secondly, Mr. Lee said that there's case law

13  out there that states that the number of combinations is

14  not an issue.  But that's not the issue here.  The issue

15  is that they did not identify a single -- what is the

16  combination.  In our response we undertook to at least

17  set forth the 75 possible ones that we see.  But it's

18  not -- so to say, hey, it's just issue of number of

19  combinations misstates the issue here.  The issue is

20  that although we asked in this letter on September 2nd

21  they refused to identify the combinations.  That very

22  much impacts our ability to respond to Interrogatory

23  No. 8.

24          Interrogatory No. 8 addresses what elements

25  are missing from each of the 12 references; why each

1    does not qualify as prior art; why it is not obvious to

2    combine them.  It may be written cryptically, but that's

3    what patent lawyers do.

4              THE COURT:  Well, and I guess that's -- I did

5    a little bit of patent law.  So, I mean, I'm not

6    entirely a novice.  But maybe I should be.  I probably

7    shouldn't confess to that.

8              MR. VAZQUEZ:  Uh-huh.

9              THE COURT:  But anyway, you're going to have

10    to stand in front of a factfinder who's not a patent

11    lawyer -- maybe it's a judge, maybe it's a jury -- and

12    you're going to have to say, hey, this is not invalid.

13    This comparison report is not invalid, and here's why.

14    And you're going to have to do it in plain English.

15              MR. VAZQUEZ:  Uh-huh.

16              THE COURT:  Now, if you look at page 10,

17    Romanette (iii), you haven't done that.  Isn't that

18    something that can be done?

19              MR. VAZQUEZ:  Your Honor, I guess

20    respectfully, Roman (iii) on page 10 refers to a

21    document they produced, one of their references.  And we

22    say that they cannot prove that that reference has

23    elements of the asserted claims, and then we list the

24    specific elements that are required of healthcare

25    provided verified information, patient provided

1    information, third-party verified information.

2              THE COURT:  But --

3              MR. VAZQUEZ:  The --

4              THE COURT:  So you're saying the comparison

5    report doesn't include a -- what Mr. Lee liked to point

6    to was that he's got a document called the comparison

7    report, and you're saying it doesn't include a report.

8              MR. VAZQUEZ:  Well, I'm not saying -- I can

9    see how at first glance that seems sort of conclusory,

10   but, Your Honor, we've got a claim construction hearing

11   coming up here in January with some of these terms

12   including a healthcare party verified report is at

13   issue.  So this doesn't, you know, talk about, you know,

14   a report in a, you know, layman's language.  This is a

15   term of art in the patent.  Okay?

16             So, you know, another issue, Your Honor, is

17   that there's never been this level of conferral, you

18   know, that -- between us on this level of specificity.

19   Okay.  We asked very clearly in our letter of 9/2nd --

20   of September 2nd, you know, that they supplement their

21   invalidity contentions.  They have refused.  There was

22   not a conferral about, well, okay, now that you've given

23   us this, we need more.

24             Further, Your Honor, I think it's important to

25   the court's decision on this particular issue, it's now

1   my understanding that now they're going to supplement

2   their invalidity contentions.  I'm not sure what that's

3   going to include, but to the extent it's going to

4   finally give us the number of combinations and address

5   the other deficiencies, which we very promptly

6   identified back in September, I think that should be

7   considered.

8          I respectfully say that this motion should be

9   denied as to this particular Interrogatory No. 8 for all

10  of those issues, for all of those foregoing reasons.

11         THE COURT:  Okay.  It's your motion, Mr. Lee.

12  You get the last word.

13         MR. LEE:  Your Honor, I'd just like to address

14  two points.  The first is Mr. Vazquez brings up the

15  claim construction about some of these terms that's

16  upcoming, but these terms, Your Honor, have support in

17  evidence.  And part of the evidence that's provided by

18  MDX is -- relates to where some of these things are

19  found in the prior art.

20         It's not to say that MDX relied on that as

21  part of the claim construction evidence, but it's not

22  entirely an issue of law.  There are factual issues as

23  well.  And this, Your Honor, simply asks for an

24  explanation of why the factual issues identified by MDX

25  in their validity contentions don't match up with some

1    of the claim elements.  That can be explained, Your

2    Honor, outside of claim construction and before claim

3    construction.

4            Secondly, Your Honor, Mr. Vazquez brings up

5    the issue, again, with the number of combinations how

6    the -- starting out with his argument saying that it's

7    not an issue.  Your Honor, if you look at the

8    organization of the supplemental interrogatory response,

9    it's organized reference by reference.  Regardless of

10   how many combinations there are, each reference stands

11   on its own with respect to what it shows and how that

12   matches up with the claim elements.  Therefore, each one

13   can be addressed individually as has been done currently

14   in interrogatory response.  All we're looking for is, in

15   the same format how did Health Grades reach its

16   conclusions.

17           THE COURT:  I'm still with you, Mr. Lee.  I am

18   going to grant the motion with respect to Interrogatory

19   No. 8, require that there be a supplemental answer which

20   explains in a more comprehensible way the position of

21   Health Grades and why it disagrees with the invalidity

22   contentions.  Next.

23           MR. VAZQUEZ:  Your Honor, would you like to

24   address the fees issue on this particular --

25           THE COURT:  I'm going to deny a request for

```
1    fees.  I've granted in part and denied in part, and I
2    think that it would be -- given the nature of my ruling
3    and that in some areas I think the responses were
4    adequate and in other areas I'm compelling, it would be
5    improper for me to award fees.
6              MR. VAZQUEZ:  Thank you.
7              THE COURT:  Mr. Lee.
8              MR. LEE:  Your Honor, the next section is
9    Section 3 of the motion which relates to MDX's first set
10   of document requests.  In pages 7 to 8 of the motion
11   there's a list of issues, and, Your Honor, the agreement
12   that we have provided to you at the beginning of this
13   hearing resolves most of them.  There are just two
14   issues that I would like to address from that list.
15   Actually, one issue from that list and a second general
16   issue relating to document requests.
17             The one issue from that list is the request
18   regarding documents showing prior art Health Grades
19   websites.  And this may relate to Interrogatory No. 2,
20   Your Honor.  But, frankly, it is unclear to us whether
21   Health Grades has provided those documents given its
22   position in Interrogatory No. 2.
23             And secondly, in page 6 of Health Grades's
24   opposition they state that Health Grades will produce --
25   to the extent they exist, Health Grades will produce any
```

1    non-privileged documents.

2            Your Honor, it is currently five and a half

3    months into discovery and Health Grades is still saying

4    to the extent any documents exist they're still looking

5    for them.  MDX just needs some confirmation that they

6    have already looked for and produced those documents or

7    be ordered to do so.

8            THE COURT:  Now, going back to your first

9    point.  It was that you don't think you've gotten the

10   prosecution histories for Health Grades patent

11   applications?  Is that the one that you're --

12           MR. LEE:  No, Your Honor, that one's been

13   resolved.

14           THE COURT:  Okay.  Which is the one that --

15           MR. LEE:  It's the one that says -- that

16   requests all documents showing prior art Health Grades

17   websites.

18           THE COURT:  I've got you.  Okay.

19           MR. LEE:  Your Honor, with respect to that

20   one, regardless of whether Health Grades agrees or

21   disagrees that those prior art -- prior websites are

22   prior art or not, there's a genuine issue there, and

23   they need to provide them if they know of them.  And we

24   just don't have any certainty at this point whether they

25   have done so or not.

1            Health Grades produced about 130,000 pages in

2    the last two weeks after the filing of this motion,

3    where in contrast before they only produced 2700 pages.

4    We haven't had an opportunity to review the more than

5    130,000 pages in the last two weeks, we just need some

6    confirmation or an order saying -- asking Health Grades

7    to produce them.

8            There's a second point, Your Honor, which just

9    generally addresses document production.  It relates to

10   Health Grades' statement in page 6 that to the extent

11   documents exist --

12           THE COURT:  Yeah, I've got that one.

13           MR. LEE:  Okay.  Health Grades has been making

14   that statement over and over.  Not just for this issue,

15   but for almost all issues brought up regarding document

16   production.  At this point also, we just need some

17   confirmation that documents have been searched and

18   produced, or an order requiring them to do so.

19           THE COURT:  And you're not guilty of that same

20   sin?

21           MR. LEE:  Your Honor, four of the documents

22   that MDX found after a reasonable search, they have been

23   produced.  The other documents relating to search terms,

24   Health Grades provided those search terms on October 9th

25   -- I'm sorry November 9th, and within four weeks on

1    December 7th, MDX provided search term hits for some of

2    those, and then in just the last week provided more

3    search term hits.  For all of those results MDX is

4    currently reviewing them for production.  And so after

5    this, Your Honor, we can say that after a reasonable

6    search all have been produced.

7              THE COURT:  Okay.  So in your -- you practice

8    mostly in a different jurisdiction.  Lawyers here like

9    to throw in that, sort of, we'll continue to look and if

10   we find anything more we'll produce it when we find it.

11   I agree with you that the Rules of Civil Procedure

12   require that the documents be produced.  In my view,

13   they require that the documents be produced on the 33rd

14   day or a motion for continuance be -- or for extension

15   be filed and granted.  That almost never comes to me.

16   Nobody ever produces on the 33rd day.  I disapprove, but

17   nobody seems to care.

18              But because of the requirement to supplement

19   lawyers throw this in, we'll continue to look and if we

20   find anything we'll turn that over.  But you want a

21   definitive -- what I understand you to say is you want a

22   definitive statement that we have conducted our good

23   faith inquiry as required under the Federal Rules of

24   Civil Procedure and all known documents as a result of

25   that inquiry have been produced.

1        MR. LEE:  Yes, Your Honor.  And, Your Honor,

2    if that's the case then we can withdraw this issue.

3    It's just -- we just need some type of confirmation that

4    that has been done rather than continuing a search

5    taking more than five months to discovery.

6        THE COURT:  Okay.  Thank you.  Mr. Vazquez.

7        MR. VAZQUEZ:  Your Honor, whether MDX is

8    guilty of that same sin, in fact, they are.  There

9    hasn't been a single, whether it be their invalidity

10   contentions or supplemental invalidity contentions or

11   any response to any discovery request at every juncture

12   of that nature.  They reserve the right to supplement,

13   to change their position and so forth.  So, I -- I chafe

14   a little bit at that last argument.

15       Now, on the substantive issue that you're

16   looking at here to resolve this portion of the motion,

17   Your Honor, goes back to the use of prior art term in

18   the request.  They want the prior art website.  Portions

19   of what they argue is prior art was hand selected and

20   produced.

21       Now, Mr. Lee, I'm sure it was unintentional,

22   but misstated a number of documents that have been

23   produced before these last production of 130,000 pages.

24   In fact, Health Grades had produced a little over 3,000

25   or on the order of 3,000 pages of documents, not 700 as

1    I think he said.

2              I think that this issue, Your Honor, should be

3    denied for the same reasons that it was denied with

4    respect to Interrogatory No. 2.   Furthermore --

5              THE COURT:  Well, you produced a huge number

6    of documents, and I think you said when we were talking

7    with respect to Interrogatory No. 2 that you thought you

8    had produced --

9              MR. VAZQUEZ:  Yes.

10             THE COURT:  -- the specifications or whatever

11   the right word is for your prior method.

12             MR. VAZQUEZ:  Yes.

13             THE COURT:  Have you or haven't you?

14             MR. VAZQUEZ:  Yes.  Yes.

15             THE COURT:  So even if I were to grant this,

16   and say I view your prior products as prior art and you

17   have to produce the documents responsive to this, you

18   would say I've done it.  Am I right?

19             MR. VAZQUEZ:  Yes, sir.  Yes, sir.  And I

20   would note that I think the court said when you were

21   discussing your view on producing by the 33rd day, and

22   that lawyers around here like to put in these kind of

23   statements, there are still always the possibility, you

24   know, even when -- what you said would be an appropriate

25   response by counsel to say we've produced everything

1    that we know about it.  Well, that inherently includes

2    the possibility that something else exists out there,

3    that we don't know about currently.  You know, these

4    documents go back to 2004.

5          THE COURT:  I don't disagree with what you've

6    said, Mr. Vazquez.  But what startles me and what led to

7    my little rant is that frequently the initial response

8    is a few hundred documents, and then there's a

9    supplement pretty close to the close of discovery of a

10   few thousand documents.  And it always makes me wonder

11   whether there really was that good faith search that was

12   required --

13         MR. VAZQUEZ:  Uh-huh.

14         THE COURT:  -- at or about the 33rd day.  So

15   that's why I ranted about that.  And I -- I'll just say

16   that I don't disagree that you have a -- an obligation

17   to -- to supplement in the event something more turns

18   up, but when that supplementation is voluminous, it

19   makes me wonder if the first production was made in good

20   faith.

21         MR. VAZQUEZ:  Well, Your Honor, may I respond?

22   It was most definitely made in good faith.  It was made

23   -- we had meetings with the client, and efforts to just

24   go through files by hand and locate documents that were

25   responsive.  And while MDX continues to make these

1    references, well, but it was just 3,000 pages.  Well,

2    you know, it is about quality, not quantity.  Those

3    first 3,000 pages were really the most relevant ones we

4    can find.

5            Secondly, Your Honor, to the extent the volume

6    of these recent productions makes the court question the

7    good faith efforts, the volume of those productions are

8    directly as a consequence of the broad searches they

9    requested, which they acknowledge in their motion, we

10   objected to.  Eventually, I mean, they had us search the

11   servers of Health Grades, a major company, for the term

12   "profits" and insisted on that.

13           So the court should not interpret the volume

14   of -- under these circumstances, the volume of that

15   production to mean that the initial production was not

16   made in good faith.  Thank you.

17           THE COURT:  Mr. Lee.

18           MR. LEE:  Your Honor, I would just like to

19   address the context of how these 130,000 documents came

20   about within the last two weeks.  Section 6(g) of the

21   scheduling order contemplates -- in fact, the parties

22   stated in there that they predict that this case would

23   involve significant amounts of electronically stored

24   information.  And, therefore, to help the parties find

25   relevant information among those documents, that they

1   would exchange search terms.  And then to the extent any

2   party thinks the result from the search terms would be

3   too voluminous, to then confer in good faith to narrow

4   them.

5          The reason that the 130,000 pages were

6   produced just in the last two weeks rather than possibly

7   a fewer number is Health Grades initially refused to

8   even run the search terms.  And after agreeing to run

9   them took months -- took actually just over a month to

10  actually even give us the results of those search terms.

11  They gave them on a day before MDX filed this motion.

12  Then, subsequently, without addressing whether the

13  results of the search terms were, in fact, too

14  voluminous, Health Grades voluntarily produced all of

15  those documents that resulted from their search.

16          Your Honor, I can say that if Health Grades

17  actually conferred about the number of hits, those

18  documents -- the number of pages would have been less.

19  So, it's a result of Health Grades own time pressures

20  resulting from producing those after this motion was

21  filed rather than any -- rather than any ill-intent or

22  anything like that attributed to the initial terms that

23  Health -- that MDX proposed.

24          MR. VAZQUEZ:  Your Honor, if I can just

25  quickly add a comment to some of these.

 1            THE COURT:  Well, it won't effect my ruling,

 2    so I'd stay where I am if I were you.

 3            I'm going to deny the motion to compel with

 4    respect to production of all documents showing the prior

 5    art Health Grades website as moot because I have it on

 6    Mr. Vazquez' representation that those documents have

 7    been produced.  I would have denied it on the merits

 8    even in the absence of Mr. Vazquez' representation

 9    because I do think that the -- the production request,

10    it does request prior art.  I've already ruled that that

11    is a term which can -- about which parties can disagree.

12    Health Grades has staked out its position about what is

13    and isn't prior art, and it will live with that

14    position.

15            I'm going to grant the motion to compel to

16    require -- and both sides should do this.  I know the

17    issue isn't before me for MDX, but both sides should do

18    this -- to require the statement that after a good faith

19    search as required by the Federal Rules of Civil

20    Procedure all responsive documents, except those that

21    are privileged or otherwise identified as not being

22    produced on some claim of privilege or immunity, have

23    been produced, so that each side knows that the other

24    has conducted -- has conducted and completed the

25    required search and that all responsive documents,

1    except those which don't have to be produced because of

2    a privilege or the like, have been produced.

3              MR. VAZQUEZ:  Your Honor, a quick question on

4    that --

5              THE COURT:  Yes.

6              MR. VAZQUEZ:  -- last part of your ruling.

7              THE COURT:  Yes.

8              MR. VAZQUEZ:  You require that statement from

9    both parties made when?  Or with our next production?

10   I'm unclear.

11             THE COURT:  Well, I am going to require that

12   you make a supplemental response, obviously because I've

13   compelled discovery in some ways, and you should make it

14   with your supplemental response.  And I'll talk to

15   Mr. Lee about it, but I have in mind that they'll make

16   it at about the same time as the supplemental response.

17             MR. VAZQUEZ:  In our supplemental response on

18   the portion that you granted earlier?

19             THE COURT:  Right.

20             MR. VAZQUEZ:  Okay.  Thank you.

21             THE COURT:  Mr. Lee.

22             MR. LEE:  Your Honor, the next section,

23   Section 4, relates to electronically stored information.

24   And this has been resolved by production made after the

25   filing of this motion and as well as the agreement that

1    we provided to Your Honor at the beginning of this

2    hearing and, therefore, Section 4 can be removed from

3    this motion.

4              THE COURT:  All right.  So I didn't mark it,

5    has Interrogatory 6 concerning damages, has that all

6    been resolved?

7              MR. LEE:  Your Honor, it's in the next

8    section.

9              THE COURT:  Okay.

10             MR. LEE:  It has not been resolved yet.

11             THE COURT:  All right.

12             MR. LEE:  Your Honor, the next section,

13    Section 5, relates to MDX's claim -- MDX's damages

14    discovery requests, and these encompass a number of

15    different requests.  Interrogatory 6, 7, and 9, as well

16    as Document Requests 15 and 19 to 23 -- I'm sorry, 19 to

17    25, and indirectly by way of the interrogatories,

18    Request for Admission Nos. 1 through 3.  These also have

19    -- a large portion of these have also been resolved

20    through the production after filing this motion as well

21    as the agreement this morning.

22             The only remaining issue is Interrogatory

23    No. 6, Your Honor.  This interrogatory asks Health

24    Grades to describe all damages that it believes it's

25    entitled to, including explanation of the factual and

1    legal basis -- bases for lost profits as well as

2    reasonable royalties.

3         Health Grades' discovery response simply

4    stated that it is entitled to lost profits and

5    reasonable royalties but provided no explanation of

6    legal and factual bases behind that conclusion.

7         THE COURT:  So you would want to see, we think

8    we're entitled to a 3 percent royalty based upon

9    something.  Is that the sort of information you're

10   looking for?

11        MR. LEE:  That's the type of information, Your

12   Honor.  Specifically, we're looking for the factual

13   bases behind their contention that they're entitled to

14   lost profits and reasonable royalties.  There are

15   leading cases in the field that explain some of the

16   factual bases that go into proving those types of

17   damages.

18        For example, with respect to lost profits, the

19   case of *Panduit versus Stahlin Brothers*, which we have

20   cited in our brief, states that in order to show lost

21   profits the patent owner must show, demand for the

22   patented product, absence of non-infringing products,

23   manufacturing and marketing capability to meet the

24   demand, as well as profits that it would have been made.

25        Now, each of these involves factual issues.

49

1    For example, with regard to demand for the patented

2    product, Health Grades says that they have produced

3    documents related to competitors and to market share.

4    Well, in showing demand for the patented product they

5    need to refer to the market shares as facts supporting

6    that element of lost profits.

7          The second element, absence of acceptable

8    non-infringing substitutes, Health Grades says they had

9    produced documents showing competitors.  For this

10   element they will need to show why those competitors'

11   products are actually acceptable -- are not acceptable

12   non-infringing substitutes.

13         Similar for the other two elements, Health

14   Grades needs to point to its capacity, its personnel,

15   its discruciant mechanism for meeting the demand, as

16   well as which of its profits are actually -- they

17   contend they would have lost.

18         So, it is the factual bases brought up in

19   these -- in this *Panduit* case, Your Honor, that we seek

20   with this interrogatory.

21         Now, with respect to lost reasonable

22   royalties, Your Honor, the leading case there is *Georgia*

23   *Pacific*.  And in that case, which we have also cited in

24   our brief, lists 15 relevant facts that go to -- that go

25   to proving reasonable royalties.  And I'll just name a

1    few, Your Honor, that I think are the most relevant

2    factual factors -- aspects of these 15 factors.

3            Patentees established policy and marketing

4    program to maintain its patent monopoly; the effect of

5    selling the patent to specialty and promoting sales of

6    other products; the established profitability of the

7    product made under the patent; portion of the profit or

8    of the selling price that may be customary; and the

9    portion of the realizable profit that should be credited

10   to the invention.

11           Your Honor, these are factual bases that

12   eventually Health Grades would need to show from its

13   document production.  And at this point, nine and a half

14   months after the filing of this case, MDX is no closer

15   to understanding its bases for this lost profit and

16   reasonable royalty claim than it was back then.

17           Your Honor, nine and a half months into the

18   case, now it's about time that MDX is provided this

19   information.

20           THE COURT:  Mr. Vazquez.

21           MR. VAZQUEZ:  Your Honor, the first point I

22   feel compelled to make is that I'm a little surprised

23   because the document we tendered to you this morning

24   with respect to our agreement has a heading at the

25   bottom that says MDX's Damages Discovery Requests.  It

1    says we agreed to remove this issue.

2          Notwithstanding, I will just point out to the

3    court what I'm sure you are already aware of, and that

4    is that expert reports -- this is going to be a subject

5    of expert testimony.  It is complex.  Expert reports are

6    due on February 16th now.  Um, Your Honor --

7          THE COURT:  And when is the expert cutoff?

8    Expert discovery cutoff?  It's after that?

9          MR. VAZQUEZ:  April 30th, I believe.  And

10   there's -- you know, that's -- so the nine and a half

11   months that have elapsed is not really the accurate time

12   frame to be focusing on.

13         But, Your Honor, as detailed in Exhibit E to

14   our response to their motion to compel, back in October,

15   way before this motion was filed, we provided documents

16   related to revenues, to pricing, to advertising, to

17   marketing, to distribution, to market demand, future

18   sales, costs, profits, expenses.  I think that is why

19   this last paragraph of the agreement that we tendered to

20   the court this morning says what it says.

21         So, more documents, I'm sure, that show -- I

22   mean, this is sophisticated patent counsel we have here.

23   They know how to look at 10-Ks in an accounting document

24   and to see what profits we have made, and put those into

25   context as respect to damages and expenses and so forth.

1    And we each are going to have damages experts to address

2    that.

3              So, for those reasons I just think that the

4    court should deny this particular aspect of the motion

5    to compel.

6              THE COURT:  Well, one of the things that

7    Mr. Lee said, and I don't think you've addressed yet, is

8    that, for example, in order to get lost profits you have

9    to show certain factors including, for example, the

10   absence of non-infringing substitute products.

11             MR. VAZQUEZ:  Uh-huh.

12             THE COURT:  I think I heard him say that.  I

13   think I said it right.

14             MR. VAZQUEZ:  Yes, you have.

15             THE COURT:  So are you going to -- is that

16   something you're going to use an expert for or isn't

17   that something that your clients will know about -- your

18   client will know about?

19             MR. VAZQUEZ:  No.  No, that is something that

20   we are going to rely on our experts' evaluation of the

21   same documents we've produced to them, and in

22   consultation with us and in meetings with the client.

23   We're just not there yet.

24             THE COURT:  Well, okay.  You get to try your

25   case, but I'll bet you you are going to put on either

1   the inventors or corporate executives or somebody who

2   say because of my experience in this market I know

3   what's out there and there's nothing that competes with

4   us that doesn't infringe our patent.  And you're not

5   going to rely on an expert for that because the expert

6   is probably going to be an economist kind of person and

7   not somebody in the art at issue here.

8           MR. VAZQUEZ:  Your Honor, I guess that's

9   possible, but as we stand here today I'm not sure that

10  we will do that.

11          (Whereupon, there was a pause in the

12  proceedings.)

13          MR. VAZQUEZ:  Your Honor, as my partner points

14  out, they didn't ask for that level of detail.  We may

15  get to that as we proceed.  There's still time to make

16  additional requests, but that level of detail was not

17  requested and it surely wasn't conferred about.  So -- I

18  mean, in light of this -- I don't know how much clearer

19  it could be, to have met and conferred and then submit

20  to the court, as they did this morning, something that

21  says MDX's Damages Discovery Requests, we agree to

22  remove this issue from the motion.

23          THE COURT:  Okay.  Thank you.  Mr. Lee.

24          MR. LEE:  Your Honor, the parties actually

25  have conferred about Interrogatory No. 6, and there is

1    plaintiff correspondence showing that.  Furthermore, the

2    agreement provided this morning, Your Honor, relates to

3    documents noting that based on Mr. Vazquez'

4    representation as 6,000 -- 6,000-plus, it's actually

5    pages, of financial documents have been provided, the

6    documents issues are removed from this motion but not

7    the interrogatory, Your Honor.

8            Your Honor, if you like I can take a moment to

9    try to search for correspondence in showing the

10   conferrals about this interrogatory.

11           THE COURT:  So you have -- you have -- when I

12   read your Interrogatory 6, probably because I'm not a

13   very good lawyer, it didn't jump out at me that you were

14   looking for evidence like absence of a non-infringing

15   substitute.  What I thought you were looking for was

16   more along the lines of we think we're entitled to

17   6 percent royalty because our survey of the market shows

18   that that's the kind of royalty that's awarded in this

19   kind of case.  So you're saying to me that in your

20   7.1(a) conferences you've said, we're looking for an

21   element-by-element analysis like you set out a minute

22   ago.

23           MR. LEE:  Well, Your Honor, Interrogatory 6

24   actually asks for an explanation, the factual and legal

25   bases.

1           THE COURT:  Right.  I see that.

2           MR. LEE:  Something like, you know, the

3    plaintiff -- patentee here is entitled to a 3 percent.

4    That may very well be a conclusion for an expert, but

5    they're also factual bases that lead to that legal --

6    that lead to that expert conclusion.  Some of those

7    factors are listed in the *Georgia Pacific* case

8    including, for example, what types of royalty amounts a

9    patentee has given to other competitors.

10          There simply must be facts that establish an

11   expert's conclusion about these factors establishing

12   lost profits, reasonable royalties, and by the words

13   factual and legal bases.  And, specifically, the word

14   "factual."  Those are the type of things that we're

15   looking for, Your Honor.  Just the facts that would be

16   provided for an expert to consider whether these

17   elements establishing these damages claims are met.

18          THE COURT:  Um, so Mr. Vazquez says this is

19   all going to be left to experts.  Um, shouldn't you wait

20   for the report -- and, therefore, you should wait for

21   the reports.

22          MR. LEE:  Your Honor, by that point, by the

23   time expert reports come out fact discovery would have

24   ended.  These are the factors that play into MDX's

25   defense that the plaintiff here is not entitled to these

56

```
1    damages.  Some of these -- much of these -- many of
2    these explanations and documents are going to be in
3    Health Grades' possession.  And Health Grades mentioned
4    they provided documents, but they haven't provided the
5    explanation about the fact -- the factual factors tying
6    all of them together.  If somehow, without understanding
7    these factual underpinnings, MDX did not get the
8    documents it needed and fact discovery had ended they
9    would have no opportunity to get them at that point.
10   And it -- and that's exactly why, you know, these --
11   Your Honor, these determinations have both factual and
12   expert aspects to them.
13             THE COURT:  Thank you.
14             MR. VAZQUEZ:  Your Honor.
15             THE COURT:  Yes.
16             MR. VAZQUEZ:  If I may just respond from my --
17             THE COURT:  Yes.
18             MR. VAZQUEZ:  -- from the table here.  If they
19   just propound an additional interrogatory asking for the
20   specific detail, we will respond.  Thank you.
21             THE COURT:  Do they have interrogatories left?
22   Do you have interrogatories left or is this -- or is it
23   a --
24             MR. VAZQUEZ:  I think they do, and we would
25   agree to allow them an extra one.
```

1          THE COURT:  All right.  Well, I'm going to

2    grant the motion to compel with respect to Interrogatory

3    No. 6.  Perhaps the disagreement could have been

4    resolved by further 7.1(a) conference, perhaps not.  I

5    do agree with Mr. Lee that the discussion in the e-mail

6    setting out the parties' resolution deals with documents

7    and not with the interrogatory answer.  So I'm not going

8    to say that the argument was barred by the agreement

9    which was handed to me earlier today.  And the words

10   about seeking a factual and legal bases for the types of

11   damages sought are in the interrogatory.  It didn't leap

12   out at me, but I think the interrogatory fairly asks for

13   the information which Mr. Lee has specified.

14          The plaintiff has said that it's willing to

15   provide that information, even have an additional

16   interrogatory if it's required, so -- I won't require

17   that, I'll simply require that you answer the

18   interrogatory as it's been described here today.

19   Mr. Lee.

20          MR. LEE:  Thank you, Your Honor.  If we may

21   just have one more minute of your time.  We understand

22   that you have ruled on the fees aspect, but the

23   interrogatories that we addressed today were just a

24   small portion of discovery delays that occurred, and we

25   have documents actually showing the extent of all the

1    delays that have occurred before the filing of this

2    motion, as well as all the supplementations that

3    occurred after.  If I may have just a minute, Your

4    Honor.

5              THE COURT:  You may.

6              MR. LEE:  Thank you.  Your Honor,

7    Rule 37(a)(5) says that if a motion to compel prompts --

8    is granted or prompts discovery that occurs afterwards

9    then the court must grant reasonable fees including

10   reasonable expenses and attorney fees.

11             Now, Your Honor, before MDX filed this motion

12   they had received only 2700 pages of document

13   production, and many of the document -- interrogatory

14   responses had the deficiencies noted today, as well as

15   those to be cured by the agreement from this morning.

16             For example, Health Grades in their

17   correspondences promised supplements to interrogatory

18   responses several times; first, by October 7th, and then

19   by October 10th, and then October 20th.  Well,

20   ultimately, none of those came.

21             In fact, today, because of that agreement a

22   lot of those are to be supplemented, they haven't been

23   done so yet, or document production -- as we had

24   mentioned only 2700 pages were provided before the

25   filing of this motion, but after the filing of this

59

1   motion more than 130,000 pages were filed -- were

2   produced.

3          And, similarly, with respect to the electronic

4   -- electronically stored information, Your Honor, Health

5   Grades at first refused to even search them for a month

6   and a half after MDX sent the requests.  And then after

7   it agreed, it predicted results by October 20th, and

8   then October 28th, but those dates passed without

9   anything coming.  And, finally, on November 22nd, almost

10  a month after that and one day before this motion, those

11  were provided.  Just the search hits, Your Honor, not

12  the -- not any actual documents.

13         Therefore, what we have, Your Honor, is the

14  majority of supplementation and the majority of document

15  production having occurred after this motion to compel,

16  and the fact that many of these removed issues from the

17  motion to compel, does not remove the fact that they

18  were prompted by, we believe, the motion to compel, Your

19  Honor.

20         And we have over 15 correspondences between

21  the parties between, I believe, August and the filing of

22  this motion, showing that MDX tried to obtain all of

23  this discovery before filing this motion, and the many,

24  many promises that Health Grades had made but -- but

25  broke it.  And, therefore, we believe -- Your Honor,

1    this is a very exemplar case of applying Rule37(a)(5),

2    and we can provide the more than 15 correspondences to

3    Your Honor if you would like.

4              THE COURT:  Mr. Vazquez.

5              MR. VAZQUEZ:  Just one minute, Your Honor.

6    Thank you.

7              Your Honor, as I'm sure the court is aware,

8    Rule 37 goes beyond the provisions that Mr. Lee

9    paraphrased.  Rule 37 states that the court must not

10   order fees if the motion was filed before attempting to

11   good faith to obtain discovery, or if Health Grades'

12   responses, objections and disclosures or non-disclosures

13   were substantially justified, or if other circumstances

14   make fees -- a fees award unjust.  I think given the

15   discussion that's occurred this morning here, the court

16   would be very -- it would be very unjust to have a fees

17   award.

18              To add some context to that, Your Honor, we

19   are -- we are waiting -- it's now been six weeks since

20   we made our request for documents, and they were

21   promised to us by the end of this week.  I'm not sure if

22   they are coming.  You know, this is a two-way street

23   here, Your Honor, and we have been working in good faith

24   with them to provide discovery and to obtain discovery.

25              As they noted in the motion to compel, they

1    noted that I said -- I didn't believe it had been enough

2    conferral.  I have -- they're within the correspondence

3    that they attach, but I've pulled it.  I just need a

4    second to identify it.  At least two instances where

5    before the motion was filed I said I would really

6    appreciate you listing for me specifically what you

7    anticipate asking the court to compel so that we can

8    resolve this.  They didn't choose to do that.  And I got

9    one response that said you are well aware of the issues

10   we're not going to waste our time anymore.

11        So I would ask to the court, to the extent the

12   court is willing to indulge this request, even though I

13   believe you said earlier you were not going to grant

14   fees, that we'd be allowed to just put together those

15   documents, those e-mails, showing that I requested that

16   they at least give me the specific items.

17        There was good reason for that, Your Honor.

18   This is very complex.  There are thousands of documents

19   at issue.  And there's a lot of back and forth as you

20   can tell, tons of e-mail communications.  And so I just

21   wanted to make sure -- make an attempt at, hey, you may

22   not need to go to the court.  And I think that the

23   agreement this morning shows that that's right.  A lot

24   of this could have been resolved.

25        Your Honor, you will see a correspondence

1   there where I would say we'll provide that, but what

2   they omit is if it exists, or if we can.  There's not

3   been any obfuscation.  I have been very -- you know, I

4   feel unfairly personally attacked somewhat in this

5   argument based off of these e-mails.  There's been no --

6   no intentional delay.  To the contrary, I've worked very

7   hard to try and accommodate their requests, all within

8   the rules.

9          You know, the ESI which is a major portion

10   of -- of this dispute about the discovery, which the

11   parties have agreed it's, you know, was withdrawn,

12   there's no doubt that that was all handled before they

13   filed the motion.  On November 17th I told them I've got

14   the results and we'll be willing to discuss them with

15   you.  And on November 22nd I reasserted that.  Despite

16   that, they filed the motion.

17          You may note that it included in their first

18   footnote an explanation about, oh, we're so sorry to

19   file this right before the holiday but we want to try

20   and get -- we're doing so to try and -- so that we might

21   have the hearing on December 2nd, when we had the

22   hearing on the motion to strike.  Well, that's not

23   proper basis to rush a motion to -- you know.  If they

24   had waited, these -- a lot of these issues would not

25   have been in that motion.

1          If they had simply accommodated the reasonable

2     request to send me a copy of the draft of this motion so

3     that we may make one last attempt to get you what you

4     need or explain why I can't give it to you or when we

5     can, we wouldn't be here as long as we've been here

6     today, and that motion would have been maybe a two or

7     three-page motion.

8          In each one of these discovery requests that

9     are at issue here we made proper, substantially

10    justified objections, Your Honor.  There's been no -- no

11    argument to the contrary here today about our

12    objections.  A lot of this stuff, including the 3,000

13    pages of documents related to our expenses, revenues and

14    costs, those were supplied before the motion was filed.

15    Some of the other issues with respect to the documents

16    relating to the response related to prior art have been

17    denied.  So, respectfully, I would ask that the court

18    deny this request for fees.

19         THE COURT:  Thank you.  Mr. Lee.

20         MR. LEE:  Your Honor, I believe many of these

21    issues can actually be clarified by actual summation of

22    the correspondences themselves.

23         Mr. Vazquez points to a few different things

24    to try to justify why documents and responses weren't

25    supplemented or provided until after the motion, but the

1    fact is that there's a long list of 15 correspondences

2    or more where the parties discussed in detail about

3    these types of objections that Mr. Vazquez raised about

4    their objections to our -- our requests.  And, in fact,

5    many of those e-mails show that Mr. Vazquez indicated

6    that they would provide supplementation and additional

7    documents.  It wasn't a case that there was no dispute.

8    There were several disputes.  And it seemed a resolution

9    was that we would just wait, and Health Grades would

10   just provide those based on the correspondences, but

11   that never occurred, Your Honor.

12           It's really the repeated nature of the

13   promises that were made and broken, Your Honor,

14   throughout a period of about four months.  If Health

15   Grades had made a first promise and broke it, and then

16   made a second promise and then provided it we wouldn't

17   be here today.  Because, in fact, the number of promises

18   and broken promises went beyond the first or the second,

19   and in some cases even the third.

20           And, Your Honor, by referencing -- by saying

21   that we had not conferred prior to filing this motion is

22   just completely mismatching with the record, Your Honor.

23   The record shows from all these correspondences that

24   there were, in fact, conferrals on all of these issues.

25   And every one of the issues raised in this motion, Your

1    Honor, will appear in one of the correspondences as

2    having sufficient conferral.

3         Secondly, Mr. Vazquez points to the first

4    3,000 pages -- actually, I believe it was 2700 pages

5    that were produced before the filing of this motion as

6    containing a lot of the information such as revenues,

7    expenses and costs.  Presumably, Mr. Vazquez is

8    referring to lost profits, discovery and things like

9    that.  But those numbers, Your Honor, were from, I

10   believe, 2005 through 2008.  None of those related at

11   all to lost profits as of the date the patent was

12   granted.  None of those would be able to show the lost

13   profits that Health Grades is claiming now as a result

14   of having gotten its patent.

15        So, Your Honor, it simply is the case that

16   there was insufficient production and discovery prior to

17   the filing of the motion, and the several

18   correspondences that we had, more than 15, Your Honor,

19   will show that sufficient conferral.

20        And additionally, Your Honor, the --

21   referencing the agreement today is slightly different

22   than the promises that were made earlier.  Those

23   promises were made, Your Honor, without court -- without

24   approaching Your Honor here in the court.  That is

25   specifically the reason why we asked for this agreement

1    to be entered into the record so that there is something

2    before the court.  Thank you, Your Honor.

3          THE COURT:  Thank you.  I am going to deny the

4    request for sanctions by way of fees.  That part of the

5    motion which I had to rule on involved disputes that

6    were made in good faith and resulted in a mixed ruling.

7    Sometimes I granted the motion to compel, sometimes I

8    denied it.  But, in any event, these were legitimate

9    disputes that from time to time have to be brought to

10   the court.

11          The harder part of the equation is whether to

12   award fees because a substantial amount of the dispute

13   was resolved after the motion was filed.  I'm not

14   persuaded that an award of fees is appropriate here.

15   And to the contrary, I think it would be unjust given

16   the substantially justified positions which I've seen

17   taken with respect to many of the discovery requests.

18          It is possible -- I don't know, I didn't have

19   to rule -- that I would have given less in an order

20   compelling than Health Grades gave by way of compromise,

21   so that I just can't say that an award of fees here is

22   appropriate.  So I'm going to deny it.

23          I have in mind that you'll make a supplemental

24   response consistent with my order today on or before

25   January 23rd.  Is that sufficient time?

1           MR. VAZQUEZ:  Yes, Your Honor.

2           THE COURT:  What do you think about that,

3     Mr. Lee?  Is that okay or is that too long?

4           MR. LEE:  Yes, Your Honor.  That's fine.

5           THE COURT:  All right.  The supplemental

6     response must be in full compliance with the formalities

7     of the Federal Rules of Civil Procedure, and any

8     documents which are to be produced must be produced at

9     that time.

10          In addition, Mr. Lee, I will require that, if

11    you haven't already done so, you make the same sort of

12    representation as I'm requiring from the plaintiff, that

13    after a good faith search all responsive documents have

14    been produced.

15          MR. LEE:  Yes, Your Honor.

16          THE COURT:  Anything more, Mr. Vazquez?

17          MR. VAZQUEZ:  No.  Thank you, Your Honor.

18          THE COURT:  Mr. Lee.

19          MR. LEE:  Thank you, Your Honor.

20          THE COURT:  Thank you very much.

21          THE COURTROOM DEPUTY:  All rise.  Court is in

22    recess.

23          (Whereupon, the within hearing was then in

24    conclusion at 12:21 p.m. on this date.)

25

```
 1          I certify that the foregoing is a correct

 2    transcript, to the best of my knowledge and belief

 3    (pursuant to the quality of the recording) from the

 4    record of proceedings in the above-entitled matter.

 5

 6

 7

 8    /s/ Kelly Mair                January 24, 2012

 9    Signature of Transcriber           Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```