# **EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND DEMAND FOR JURY TRIAL**

---

Defendant MDx Medical, Inc. ("MDx") hereby responds to the Complaint of Health Grades, Inc. ("Health Grades").

## ANSWER

1. MDx is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint, and on that basis denies the allegations of paragraph 1.

2. The allegations in paragraph 2 of the Complaint are admitted.

3. MDx admits that citizens and physicians of the State of Colorado have visited MDx's website, Vitals.com. Except as specifically admitted herein, MDx denies all allegations of paragraph 3.

4. MDx admits that this is an action for patent infringement pursuant to the laws as set forth in 35 U.S.C. § § 101 *et seq.*, and this Court has jurisdiction over MDx and the subject

matter of this action pursuant to the provisions of 28 U.S.C. § § 1331 and 1338.  MDx denies the allegations of paragraph 4 with regard to alleged infringement and injury to Health Grades. Except as specifically admitted herein, MDx denies all allegations of paragraph 4.

5. MDx neither admits nor denies that venue is proper in this Court or that MDx is deemed to reside in Colorado because these allegations are conclusions of law that do not require a response.  MDx denies all other allegations of paragraph 5.

6. MDx is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint, and on that basis denies the allegations of paragraph 6.

7. MDx admits that the number, title, and issue date on the face of U.S. Patent No. 7,752,060 ("the '060 Patent") are as recited in paragraph 7, and that a copy of the '060 Patent is attached as Exhibit A to the Complaint.  MDx is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning assignment and ownership of the '060 Patent, and on that basis denies the allegations of paragraph 7 with regard to assignment and ownership of the '060 Patent.  Except as specifically admitted herein, MDx denies all allegations of paragraph 7, including that the '060 Patent was duly and legally issued.

8. MDx admits that the face of the '060 Patent identifies a provisional application date of February 8, 2006.  Allegations regarding entitlement to priority are conclusions of law that do not require a response.  Except as specifically admitted herein, MDx denies all allegations of paragraph 8.

9. The allegations in paragraph 9 of the Complaint are admitted.

10. The allegations in paragraph 10 of the Complaint are admitted.

2

11. MDx admits that it maintains an internet website, HYPERLINK "http://www.Vitals.com" www.Vitals.com, and the website is accessible by residents in Colorado as every other state. Except as specifically admitted herein, MDx denies all allegations of paragraph 11.

12. MDx admits that Health Grades sent MDx a letter dated December 15, 2009, and pursuant to 35 U.S.C. § 154(d), alleging that MDx was practicing the claims of U.S. Patent Application Publ. No. 2007/0185732 (which were subsequently and dramatically amended). Except as specifically admitted herein, MDx denies all allegations of paragraph 12.

## IV.  FIRST CLAIM FOR RELIEF

13. The responses to paragraphs 1-12 are incorporated by reference as if fully set forth herein.

14. The allegations in paragraph 14 of the Complaint are denied.

15. The allegations in paragraph 15 of the Complaint are denied.

16. The allegations in paragraph 16 of the Complaint are denied.

17. The allegations in paragraph 17 of the Complaint are denied.

18. The allegations in paragraph 18 of the Complaint are denied.

19. The allegations in paragraph 19 of the Complaint are denied.

20. The allegations in paragraph 20 of the Complaint are denied.

21. MDx denies all allegations set forth in the Complaint except to the extent such allegations are specifically admitted herein.

## ANSWER TO PRAYER FOR RELIEF

WHEREFORE, MDx Medical, Inc. denies that Health Grades is entitled to any of the

relief demanded in paragraphs (A) through (F) of the Complaint and requests that this Court enter judgment in MDx's favor.

## AFFIRMATIVE DEFENSES

By calling the following defenses "affirmative defenses," MDx does not undertake any additional burdens of proof otherwise properly placed on Health Grades.

### FIRST AFFIRMATIVE DEFENSE

22. MDx has not infringed and is not infringing any valid claim of the '060 Patent, either directly or by contributory infringement or by inducement of infringement.

### SECOND AFFIRMATIVE DEFENSE

23. The claims of the '060 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code.

### THIRD AFFIRMATIVE DEFENSE

24. Health Grades is barred under 35 U.S.C. § 288 from recovering costs in connection with this action.

### FOURTH AFFIRMATIVE DEFENSE

25. The claims of the '060 Patent are unenforceable due to inequitable conduct, because the inventors of the '060 Patent, and Health Grades employee Brian Blackman, withheld material information from the United States Patent and Trademark Office ("PTO") with specific intent to deceive the PTO. But-for the withholding of that information, the PTO would never have allowed the claims of the '060 Patent to issue.

**The Named Inventors and Mr. Blackman**

26. David Hicks, Scott Montroy, and John Neal, are all named as joint inventors of the '060 Patent. They have also served Health Grades in various capacities.

4

27. David Hicks was an Executive Vice President at Health Grades from November 1999 to October 21, 2011. Mr. Hicks oversaw all information technology activities at Health Grades.

28. Scott Montroy was employed by Health Grades from May 24, 1999 through July 12, 2007, and held the following positions during that span: Project Lead, Technical Manager, Director of Application Development, Vice-President Development & Technology, and Vice-President Development & Business Intelligence.

29. John Neal worked as a consultant to Health Grades from 2003 to 2007, and was responsible for developing and overseeing consumer facing website initiatives. Since November of 2008, Mr. Neal has held the positions of Senior Vice-President of Business Development and Executive Vice-President of Corporate Strategy and Development at Health Grades.

30. Brian Blackman is not named as an inventor on the '060 Patent, but is and was an employee of Health Grades and was responsible in part for patent prosecution at the operative times.

**The Withheld Prior Art and Knowledge of the Named Inventors and Mr. Blackman**

31. At least as early as March 2003, Health Grades made known to the public and sold in the United States a Physician Research Comparison Report ("PRCR") product through the Health Grades web site. The Health Grades PRCR product was requested by visitors to the Health Grades website, and was available upon request. On information and belief, it contained information regarding physicians, including board certification information.

5

32. At least as early as 2004, Health Grades made known to the public and sold in the United States a Physician Quality Guide ("PQG") product through the Health Grades web site. The Health Grades PQG product was requested by visitors to the Health Grades website, and contained information regarding a physician, including specialty information, gender, years in profession, years in practice, professional appointments, professional memberships, languages, board certification, disciplinary action information, medical school, medical residency, and medical fellowship information.

33. As early as 2004, Health Grades made known to the public and sold in the United States a Physician Quality Report ("PQR") product through the Health Grades web site.  The Health Grades PQR product was requested by visitors to the Health Grades website, and contained information regarding a physician, including specialty information, gender, years in profession, years in practice, languages, board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information.

34. The PRCR, PQG, and PQR were exemplary of numerous reports and services available over the Health Grades website, and which were disclosed to third parties (e.g., AARP, partners of Health Grades, providers, and end users) without confidentiality restrictions and were known, used by others, on public use, on sale, and in printed publications, as prior art to the '060 Patent.  On information and belief, numerous claims of the '060 Patent were anticipated by this withheld art, and all claims were obvious from the withheld art.

35. On information and belief, the material prior art and information not disclosed to the Patent Office included the following Health Grades materials:  PRCR, PQG, PQR, nursing

6

home reports; hospital report cards; Physician Online Services (POS), which at least as early as May of 2004 allowed providers to enter their own data in various categories into reports (including language, hospitals, gender, age, etc.); Physician New Media Marketing ("PNMM") which encouraged physicians to update their information; Hospital Online Marketing ("HOM") which was the same idea as PNMM but for hospitals; and the idea of use of patient surveys in reports (not only prior art from being in prior art publications, but also publicly known at least from the fact that the patients were being asked, at least as early at 2003-2004, to complete evaluations, and Health Grades users were, on information and belief, told in October of 2004 that the survey results were available on the Health Grades website). Third parties such as Discovery Health, Rocky Mountain News, Hewitt, and Patient's Choice, would use some or all of these materials and services, powered by Health Grades and, on information and belief, this public use also anticipated several of the claims of the '060 Patent, and rendered all claims obvious. All of the withheld materials and information are collectively referred to herein as "the Withheld Prior Art".

36.     Given their positions and extensive work with Health Grades, and the fact that all the Withheld Prior Art were products of Health Grades, on information and belief all of Hicks, Neal, Montroy, and Blackman were aware of the existence of the Withheld Prior Art, and all knew the critical relevance of these references to the pending application for the '060 Patent. The inventors were, on information and belief, advised by Mr. Blackman that they should provide anything related to the physician report system, but either the Withheld Prior Art was not provided, or it was provided and not disclosed by Mr. Blackman.

7

37. The Withheld Prior Art, alone and/or in combination, had all of the elements of the claims of the '060 Patent. Despite proper discovery requests, Health Grades has failed to timely produce documents or information in discovery in this litigation that would demonstrate all these elements.

**The Application for the '060 Patent and the Intentional Failure to Disclose**

38. The patent application that led to the '060 Patent (the "Application") was filed on August 6, 2006, and claims priority to a United States provisional application filed on February 8, 2006.

39. The Withheld Prior Art references and information are all prior art to the '060 Patent at least under 35 U.S.C. § 102(a), (b).

40. David Hicks, Scott Montroy, and John Neal signed a Combined Declaration and Power of Attorney on October 17, 2006, October 18, 2006, and October 12, 2006, respectively. By signing the Combined Declaration and Power of Attorney, David Hicks, Scott Montroy, and John Neal stated that they reviewed and understood the claims of the Application, and acknowledged the duty to disclose information that is material to the patentability of the Application. Brian Blackman, on information and belief, orchestrated the signatures on these documents and assisted with the prosecution, and was also aware of this duty.

41. All of David Hicks, Scott Montroy, John Neal, and on information and belief Brian Blackman, understood their duty to disclose information material to the application for the '060 Patent.

42. Although David Hicks, Scott Montroy, John Neal, and on information and belief Brian Blackman, understood the claims of the Application, knew of the Withheld Prior Art, and acknowledged the duty to disclose information that is material to the patentability of the Application, none of the Withheld Prior Art references and information was ever disclosed to the PTO as being prior art to the '060 Patent.

**Disclosure of Less-Relevant Prior Art**

43. Health Grades disclosed prior art to the PTO on December 13, 2007 and March 25, 2008, but these disclosures did not include the Withheld Prior Art. On or about November 13, 2009, the PTO considered the disclosed prior art, but could not consider the Withheld Prior Art because, even at that time, the named inventors and Mr. Blackman had still refused to comply with their duties of disclosure and continued to withhold all of the critical Withheld Prior Art.

44. Health Grades disclosed additional prior art to the PTO on February 15, 2010 and March 2, 2010, and the PTO considered these prior art on May 14, 2010. These disclosures included copies of web sites of other companies (thus confirming the understanding that material information relating to websites was important for this prosecution). The disclosures included information from GeoAccess.com, RevolutionHealth.com, UCompareHealthCare.com, Vitals.com, and WebMD.com. Despite these disclosures, the inventors continued to conceal the more relevant Withheld Prior Art.

45. Rather than disclosing the Withheld Prior Art, Health Grades disclosed other substantially less significant prior art instead, deliberately hiding from the PTO what the inventors and Mr. Blackman knew to be Health Grades' own, highly relevant prior art.

46. On information and belief, the Withheld Prior Art was never disclosed to the PTO because all of David Hicks, Scott Montroy, John Neal, and Brian Blackman specifically intended to deceive the PTO.

**The Inventors and Mr. Blackman Distinguished the Cited Art with New Claim Elements And Arguments That Would Never Have Distinguished the Withheld Prior Art**

47. On November 13, 2009, the PTO rejected the patent application of the '060 Patent (the "Application"). In its efforts to overcome the rejection and gain allowance, on February 16, 2010, Health Grades added "comparison ratings of healthcare providers" as a requirement of all claims and used this new element to distinguish the prior art and urge the PTO to allow the claims. On information and belief, Health Grades' Physician Research Comparison Report ("PRCR") product from 2003 was prior art and contained comparisons of healthcare providers, as did others of the Withheld Prior Art references, any of which would have been obvious to combine into a healthcare provider report, but none was disclosed to the PTO.

48. On April 26, 2010, Health Grades added further to its claims in order to convince the PTO to grant the '060 Patent.

49. Health Grades added, as a requirement of all claims, the element of: "healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional

10

memberships, publications, languages, and hobbies", and used this element to contend that the application should be allowed.

50. On information and belief, Health Grades argued for allowance based on this element despite knowing that its own Physician Quality Guide ("PQG") product from 2004 was prior art and already contained three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies. Specifically, on information and belief, the Health Grades PQG product from 2004 contained physician specialty information, gender, years in profession, years in practice, professional appointments, professional memberships, and languages.

51. Furthermore, on information and belief, Health Grades argued for allowance based on this element despite also knowing that its Physician Quality Report ("PQR") product from 2004 was prior art that already contained three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies. Specifically, the Health Grades PQR product from 2004 contained physician specialty information, gender, years in profession, years in practice, and languages. Other Withheld Prior Art references also disclosed these features (see MDx Invalidity Contentions, docket # 135-1, incorporated herein by reference).

52. On April 26, 2010, Health Grades also added another element as a requirement of all claims: "information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information,

11

medical school, medical internship, medical residency, and medical fellowship information", and used that new element to contend that the claims were in condition for allowance.

53. On information and belief, Health Grades argued for allowance based on this element despite knowing that its Physician Quality Guide ("PQG") product from 2004 was prior art that already contained three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information. Specifically, on information and belief, Health Grades knew that its PQG product from 2004 contained board certification, disciplinary action information, medical school, medical residency, and medical fellowship information.

54. Furthermore, on information and belief, Health Grades argued for allowance based on this element despite also knowing that its Physician Quality Report ("PQR") product from 2004 was prior art that already contained three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information. Specifically, on information and belief, Health Grades knew that its PQR product from 2004 contained board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information. Other Withheld Prior Art references also disclosed these features (see MDx Invalidity Contentions, docket # 135-1, incorporated herein by reference).

55. The PTO allowed the '060 Patent in part because of these elements and Health Grades' arguments, and because the PTO Examiner did not know of Health Grades' own prior art products.

56. But-for the fraudulent withholding of the Withheld Prior Art, the PTO would not have allowed the '060 Patent.

## COUNTERCLAIM AND DEMAND FOR JURY TRIAL

### Parties, Jurisdiction, and Venue

1. MDx Medical, Inc. ("MDx") is a Delaware Corporation located at 210 Clay Avenue, Suite 140, Lyndhurst, New Jersey, 07071.

2. On information and belief, Health Grades, Inc. ("Health Grades") is a Delaware corporation with its principal place of business located in Denver, Colorado.

3. Health Grades, Inc. is listed one the face of the '060 Patent as the assignee of the '060 Patent.

4. This Court has personal jurisdiction over Health Grades, and Health Grades has consented thereto.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

### Nature of the Claim

6. This claim is for a declaratory judgment that the '060 Patent is invalid and not infringed, directly or by contributory infringement or by inducement of infringement, by MDx. This claim arises under the patent laws of the United States, Title 35 United States Code, and the Federal Declaratory Judgment Act. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1338(a).

7. There exists an actual and justiciable controversy between MDx and Health Grades with respect to the alleged validity and infringement of the '060 Patent, due to Health Grades' assertion of the '060 Patent against MDx.

8. MDx does not infringe, induce infringement, or contribute to the infringement of any valid claim of the '060 Patent, and has never done so.

9. The '060 Patent is invalid for failure to comply with Title 35 of the United States Code.

10. Health Grades is barred in whole or in part from recovering damages by the doctrine of equitable estoppel, and Health Grades is barred under 35 U.S.C. § 288 from recovering costs in connection with this action.

## PRAYER FOR RELIEF

WHEREFORE, MDx Medical, Inc. denies that Health Grades is entitled to any of the relief demanded in paragraphs (A) through (F) of the Complaint and requests that this Court enter judgment:

(a) Finding, declaring, and adjudging in favor of MDx Medical, Inc. and against Health Grades and dismissing with prejudice all claims of Health Grades;

(b) Finding, declaring, and adjudging that the '060 Patent is invalid, and that MDx Medical, Inc. does not infringe it directly or by contributory infringement or by inducement of infringement;

(c) Finding, declaring, and adjudging this to be an exceptional case under 35 U.S.C. § 285, and awarding to MDx Medical, Inc. its costs (including expert fees), disbursements, and reasonable attorneys' fees incurred in this action; and

(d) Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff MDx hereby demands a trial by jury.

Dated:  February 24, 2012                    Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail:  sstimpson@sillscummis.com
E-mail:  smurray@sillscummis.com
E-mail:  dlee@sillscummis.com

and

Terence M. Ridley, Atty. No. 15212
Ramona L. Lampley, Atty. No. 37288
Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail:  ridley@wtotrial.com
E-mail:  lampley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>February 24, 2012</u>, I electronically filed the foregoing MDX MEDICAL, INC.'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND DEMAND FOR JURY TRIAL with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez , Jr.**
  jvazquez@rothgerber.com, phenke@rothgerber.com

- **Kris John Kostolansky**
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- **Jeffrey David Phipps**
  jphipps@rothgerber.com, kmeans@rothgerber.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Scott B. Murray**
  smurray@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

- **Ramona L. Lampley**
  lampley@wtotrial.com, keitlen@wtotrial.com

                                                <u>s:/ David C. Lee</u>