**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO MDx's MOTION FOR
RECONSIDERATION OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO
INFRINGEMENT**

---

Health Grades, Inc. ("Health Grades"), by its undersigned counsel, respectfully submits

its Response in Opposition to MDx's Motion for Reconsideration of Motion for Partial Summary

Judgment of No Infringement [Dkt. 139].

## TABLE OF CONTENTS

LIST OF EXHIBITS ................................................................................................................... iii

I.      SUMMARY OF THE RESPONSE ..................................................................................... 1

II.     RESPONSE TO STATEMENT OF UNDISPTUED FACTS...................................................... 3

III.    STATEMENT OF ADDITIONAL DISPUTED FACTS............................................................ 4

IV.     ARGUMENT ................................................................................................................ 7

        A.      The Law of Infringement................................................................................ 7

                1.      Literal Infringement ............................................................. 7

                2.      Infringement under the Doctrine of Equivalents.................................... 7

                3.      Prosecution History Estoppel............................................................. 8

        B.      MDx's Current Website Literally Infringes ...................................................... 11

                1.      MDx's Website Creates a Report on a Particular Doctor that
                        Includes Comparison Ratings of that Particular Doctor and Other
                        Doctors.......................................................................................... 11

                2.      MDx's Non-Infringement Arguments Lack Merit and Do Not
                        Justify Summary Judgment of Non-Infringement................................. 16

        C.      MDx's Current Website Infringes Under the Doctrine of Equivalents............................. 18

                1.      MDx's Display of Multiple Healthcare Provider Reports on the
                        Same Page Infringes the Comparison Ratings of Healthcare
                        Providers Limitation Under the Doctrine of Equivalents..................... 19

                2.      MDx's Multi-Provider Report Infringes the Healthcare Provider
                        Report on the First Healthcare Provider Claim Limitation Under
                        the Doctrine of Equivalents ............................................................. 24

                3.      MDx's Multi-Page Report Infringes the Healthcare Provider
                        Report Claim Element Under the Doctrine of Equivalents .................. 27

V.      CONCLUSION ............................................................................................................. 29

**LIST OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Declaration of Kirstin Stoll-DeBell with screenshots captured from www.vitals.com |
| 1A | Larger copies of the screenshots with the color annotations (i.e., colored circles and squares) used herein |
| 2 | Prosecution History for U.S. Patent No. 7,752,060 (There is no Exhibit 2, selected portions of the prosecution history are included below in subparts 2A through 2L). |
| 2A | 6-16-2010:  Issue Notification |
| 2B | 5-20-2010:  Applicants' Comments on Reasons for Allowance |
| 2C | 5-14-2010:  Notice of Allowance |
| 2D | Index of Issued Claims |
| 2E | 4-26-2010:  Supplemental Response and Amendment |
| 2F | 4-12-2010:  Applicant's Summary of Examiner Interview |
| 2G | 3-12-2010:  Examiner Interview Summary |
| 2H | 2-16-2010:  Amendment and Response |
| 2I | 11-13-2009:  First Office Action |
| 2J | 9-30-2009:  Response to Restriction Requirement |
| 2K | 8-31-2009:  Restriction Requirement |
| 2L | 8-29-2006:  Original Application |
| 3 | MDx Medical, Inc.'s Objections and Responses to Plaintiff's First Set of Requests for Admission and Second Set of Interrogatories |
| 4 | MDx documents that show MDx copied Health Grades:  MDX0011841-MDX0011860; MDX0016749-51; MDX0016838-39 [FILED AS RESTRICTED ACCESS] |

## I.   <u>SUMMARY OF THE RESPONSE</u>

MDx Medical, Inc. moves for partial summary judgment of non-infringement arguing that its current website (www.vitals.com) does not include "comparison ratings of healthcare providers" as recently construed by this Court.  Health Grades, Inc. ("Health Grades") disputes this contention.  MDx blatantly copied features of the Health Grades website, as shown in Exhibit 4, and its motion should be denied for as discussed herein.



As shown in the screenshot to the left,[1] MDx's website is capable[2] of creating a healthcare provider report on a particular doctor (red square) that includes comparison ratings for that doctor (orange[3] circle) and ratings for other doctors (blue circle).  MDx's physician reports can also include, on the same page or on subsequent pages, physician-verified information (e.g., specialty information, gender, languages,

---

[1]       Larger versions of the screenshots shown herein are included in the Declaration of Kirstin Stoll-DeBell ("Stoll-DeBell Decl."), which is attached as Exhibit 1 to the response. Additionally, larger version of the screenshots with the color annotations (i.e., colored circles and squares) are attached as Attachment A to the Stoll-DeBell Declaration.

[2]       A product or process accused of infringing a patent infringes if it is reasonably capable of satisfying the claim elements, even though it may also be capable of operating in a way that does not infringe.  *See, e.g., Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197 (Fed. Cir. 2010); *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118-19 (Fed. Cir. 2002); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001).

[3]       Due to variations with the software used to annotate the screenshots, the "orange" circles on the screenshots sometimes appear more yellow and sometimes appear more red.

awards, appointments, publications, etc.), patient-provided information (e.g., patient ratings), and third-party verified information (e.g., board certifications, medical school, residency, etc.) on the doctor who is the subject of the report.

MDx argues that this page is not part of the claimed "healthcare provider report on the first healthcare provider."  Rather, MDx argues that this page is the claimed "results list."  To the contrary, there is a variety of information on this page, some of which satisfies the "results list" limitation (e.g., each name listed matches the search query) and some of which meets the "report" limitation (e.g., specialty information, location, awards, ratings, etc.).  Whether the information on this page satisfies these claim limitations is a disputed issue of fact that should be decided by a jury.

MDx argues that star ratings are patient ratings and thus cannot satisfy the claimed comparison ratings. Not true.  The patient-provided information element has different requirements than the comparison ratings element.  Whether the star ratings meet these claim elements is a disputed issue of fact that should be decided by a jury.

MDx argues its website cannot create a healthcare provider report that is limited to a single, particular healthcare provider and include comparison ratings for other healthcare providers as defined in the claims of the '060 patent.  If the claims are so limited, MDx infringes under the doctrine of equivalents for two alternative reasons.

First, the www.vitals.com website is capable of creating a report on multiple, particular doctors that includes comparison ratings for each doctor, which is equivalent to a report on a single particular doctor that includes comparison ratings of that doctor and other doctors.

Second, the www.vitals.com website is capable of displaying multiple reports on the

2003589683_1

same page, where each report is on a single particular doctor and each report contains comparison ratings of that doctor, which is equivalent to a report on a single particular doctor that includes comparison ratings of that doctor and other doctors.

Although the "comparison ratings" element and the requirement that the report be "on the first healthcare provider" were added during prosecution, the reasons for adding these limitations did not relate to accused equivalents (i.e., multiple-doctor reports or displaying multiple, single doctor reports on the same page). Thus, the reasons for amendments were tangential to the equivalents in question and prosecution history should not bar the doctrine of equivalents.

Finally, the claims do not literally require that the entire healthcare provider report be displayed on a single page. But even if they did, creating a multiple page report, wherein the additional pages are accessed via link buttons, is equivalent to creating a single page healthcare provider report, wherein additional information is accessed via a scroll bar. Because Health Grades' original claims contained the "healthcare provider report" element, prosecution history estoppel does not apply to this doctrine of equivalents argument.

MDx cites an article from Judge Rader stating summary judgment is the "key to efficient resolution" in patent cases. Of course, this does not mean that summary judgment should always be granted or that summary judgment should be granted here, nor does it change the mandate that summary judgment motions be denied if there are disputed issues of fact. In this case, there are many disputed material facts and MDx's motion for summary judgment should be denied.

## II.     RESPONSE TO STATEMENT OF UNDISPTUED FACTS

1-3.    Admitted.

4.      Denied. While the claim language "comparison ratings of health care providers"

was added for reasons related to patentability, it did not cause Health Grades to "obtain the '060

Patent."  (File History, 2/16/2010 Amendment & Response at pp. 9-14 (Ex. 2H hereto).)

Moreover, the examiner did not reference the claim language as a reason for allowing the patent

in his "Reasons for Allowance."  (File History, 5/20/10 Reasons for Allowance (Ex. 2C hereto).)

     5.     Denied.  The MDx website provides for "ratings."  (*See, e.g.,* Stoll-DeBell Decl.

at p. 2 ("rated 4 stars by patients"), p. 4 ("overall patient rating" and "patient ratings and

comments"), p. 9 (showing star ratings) (Ex. 1 hereto).)

     6.     Denied.  The current MDx website is capable of creating a report on a particular

healthcare provider that includes comparison ratings of that healthcare provider and other

healthcare providers.  (Stoll-DeBell Decl. at ¶¶ 4-8.)

## III.    STATEMENT OF ADDITIONAL DISPUTED FACTS

     1.     Whether MDx's current website is capable of creating a report on a first

healthcare provider (e.g., red square) that includes ratings for that particular provider (e.g.,

orange circle) and ratings of other healthcare providers (e.g., blue circle)?

 

(Stoll-DeBell Decl. at pp. 2-3 (Screenshot 1), 8-10 (Screenshot 9) (Ex. 1); Ex. 1A at pp. 2-3.)

2003589683_1

2.      Whether the screenshots shown above (and those like them) are part of a report on a particular healthcare provider?

3.      Whether the following screenshots (and those like them) from MDx's website also include a results list of healthcare providers (black boxes) satisfying the search criteria?




(Stoll-DeBell Decl. at pp. 2-3 (Screenshot 1), 8-10 (Screenshot 9) (Ex. 1); Ex. 1A at pp. 4-5.)

4.      Whether the multiple healthcare providers reports (red boxes) displayed on the same page (shown below), where each is limited to a single provider and each contains comparison ratings of that particular provider (orange boxes), performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed "comparison ratings of healthcare providers"?

2003589683_1

 

(Stoll-DeBell Decl. at pp. 2-3 (Screenshot 1), 8-10 (Screenshot 9) (Ex. 1); Ex. 1A at pp. 6-7.)

5.      Whether the healthcare provider report (red box), such as that shown in the screenshots below, which includes multiple healthcare providers, performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed "healthcare provider report on the first healthcare provider" as construed by the Court?

 

(Stoll-DeBell Decl. at pp. 2-3 (Screenshot 1), 8-10 (Screenshot 9) (Ex. 1); Ex. 1A at pp. 8-9.)

6.      Whether a multiple page report of a particular healthcare provider (such as the example shown in the screenshots below), which can be navigated through using hyperlinks,

performs substantially the same function, in substantially the same way, to achieve substantially the same result as a single page report on a particular healthcare provider?  (Stoll-DeBell Decl. at pp. 8-15 (Screenshots 9, 12-16) (Ex. 1).)

## IV.    ARGUMENT

### A.    The Law of Infringement

#### 1.    Literal Infringement

Whether a product or process infringes a claim requires a two-step analysis.  First, the claims must be interpreted.  On February 13, 2012, his Court issued a Markman Order interpreting certain disputed claim terms.  (Markman Order (Dkt. 138).)  The remaining terms should be given their ordinary and customary meaning.  Second, the properly-interpreted claims must be compared to the accused product or process.  To literally infringe a claim, the accused product or process must practice every limitation in the claim.  *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1563 (Fed. Cir. 1996).

Although claim construction is a question of law to be decided by the Court, patent infringement is a question of fact to be decided by a jury.  *See, e.g., N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1344 (Fed. Cir. 2005) (citations omitted).

#### 2.    Infringement under the Doctrine of Equivalents

Patent claims protect the patentee not only from those who produce devices falling within the literal patent claims *but also* from "unscrupulous copyists" who "make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law."  *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 607 (1950).  Thus, even if a product

does not literally infringe a patent claim because it is missing one or more elements, the accused product may still infringe under the doctrine of equivalents if it contains an equivalent element that is insubstantially different from the missing element. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29-30 (1997). Such element-by-element equivalency may be established by proof that an accused element performs substantially the same function, in substantially the same way, to produce substantially the same result as the claimed element of the patented invention. *Hilton Davis*, 520 U.S. at 37-39; *see also Graver Tank*, 339 U.S. at 608.

Infringement under the doctrine of equivalents is a question of fact to be decided by a jury. *Conroy v. Reebok Int'l*, 14 F.3d 1570, 1577 (Fed. Cir. 1994) (reversing a grant of summary judgment of non-infringement under the doctrine of equivalents, stating: "By making such a factual finding, the district court improperly resolved a genuine issue of material fact."); *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514, 519 (Fed. Cir. 1993) ("At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *RealSource, Inc. v. Best Buy Co.*, 514 F. Supp. 2d 951, 960 (W.D. Tex. 2007) (holding although literal infringement was precluded by the claim interpretation order, summary judgment of non-infringement under the doctrine of equivalents was improper because "it is a question of fact as to whether Defendants used 'substantially the same function in substantially the same way to obtain the same result.'")

3.     Prosecution History Estoppel

Prosecution history estoppel may limit infringement under the doctrine of equivalents by preventing a patentee from obtaining a range of equivalents that would, in effect, resurrect subject matter that was surrendered during the prosecution of the patent application. *Festo Corp.*

*v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003) (citing *Festo Corp. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002)).

Typically, prosecution history estoppel is invoked when a "narrowing" amendment is made to a claim during prosecution for reasons of patentability. *Honeywell International Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1144 (Fed. Cir. 2004) (en banc), *cert. denied*, 545 U.S. 1127 (2005). When prosecution history applies, *a presumption* arises that the claim limitation is not entitled to any range of equivalents. The patentee, however, has the opportunity to rebut this presumption. *See Festo*, 344 F.3d at 1367. One way of rebutting the presumption is by showing that the amendment was "tangential" – that is, the "reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent." *Pioneer Magnetics,* 330 F.3d at 1357. The inquiry into whether a patentee can rebut the *Festo* presumption under the "tangential" criterion focuses on the patentee's objectively apparent reason for the narrowing amendment that is discernible from the prosecution history record. *Festo,* 344 F.3d at 1356.

In *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, the Federal Circuit affirmed a finding that prosecution history estoppel did not limit infringement under the doctrine of equivalents because the narrowing amendment made during prosecution did not relate to the equivalent that was being accused of infringement. 385 F.3d 1360 (Fed. Cir. 2004). The patent claimed a process for installing a pipe liner by applying a vacuum to a liner tube at the same time a resin is squeezed from a near end of the tube toward a far end of the tube. *See id.* at 1362. The patent disclosed placing a hole and a cup near the first end to apply the vacuum and then moving the hole and the cup successively down the tube toward the far (second) end. The

original application's broadest claim contained no limitation as to the number or location of cups. *See id.* at 1368.  During prosecution, the Patent Office rejected the claim over prior art that showed a similar process, but which used a single vacuum source at the far (second) end of the tube liner.  The patent owner responded by amending the claim to limit it to use of "a cup," which was an improvement over the prior art because the prior art required a large compressor to draw a vacuum through the entire length of the pipe.  The patent then issued.

The patent owner asserted the amended claim against a process, which did not literally infringe because it used multiple cups along the length of the pipe liner.  The Federal Circuit held that prosecution history estoppel did *not* preclude infringement under the doctrine of equivalents because the reason for the amendment was "tangential" to the accused equivalent:

> [T]he narrowing amendment in this case was for the purpose of distinguishing the invention over [the prior art]. [The patentee] made it clear that the difference between its process and [the prior art] was that its process did not have the disadvantage of the [the prior art] process of a large compressor at the end of the liner. There is no indication in the prosecution history of any relationship between the narrowing amendment and a multiple cup process, which is the alleged equivalent in this case. Thus, we hold that plaintiffs have successfully rebutted the *Festo* presumption by establishing that the amendment narrowing the claimed invention from multiple cups to a single cup was tangential to accused [process], which used multiple cups attached at different points along the liner tube.

*Id.* at 1370.

In *Primos, Inc. v. Hunter's Specialties, Inc.*, the patent related to a device hunters use to simulate animal sounds.  451 F.3d 841, 849 (Fed. Cir. 2006).  The claim required "*a plate having a length*, the plate extending generally upward from the frame and over a portion of the membrane, the *plate being differentially spaced* above the portion of the membrane at various locations along the length of the plate."  During prosecution, the patent owner amended the term "plate" to add the "differentially spaced above . . . the membrane" limitation to distinguish the

claims from a device that had no space between the membrane.  The Federal Circuit held that the purpose of this amendment (patent's spacing versus prior art's no spacing) was tangential to the accused equivalent, which had a dome (instead of a plate) with spacing rather than the claimed plate with spacing. Thus, infringement under the doctrine of equivalents was affirmed.

Several other courts have found that infringement under the doctrine of equivalents was available despite narrowing amendments during prosecution because the reason for the amendment was tangential to the equivalent in question.  *See, e.g., Centennial Molding, LLC v. Carlson*, 401 F. Supp.2d 985, 994 (D. Neb. 2005); *Microstrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp.2d 432, 444 (E.D. Va. 2004), *aff'd*, 429 F.3d 1344 (Fed. Cir. 2005).

Finally, prosecution history estoppel "applies *only* to the amended or newly added limitation; there is no surrender of territory as to unamended limitations that were present in the original claim."  *Honeywell*, 370 F.3d at 1144.

### B.   MDx's Current Website Literally Infringes

#### 1.   MDx's Website Creates a Report on a Particular Doctor that Includes Comparison Ratings of that Particular Doctor and Other Doctors

MDx's summary judgment motion focuses solely on the comparison ratings element from claims 1 and 15, (MDx Motion at 1 (Dkt. 139)) which is shown in bold for claim 1:

> creating . . . a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, **wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers** . . . .

The Markman Order defined two terms within the bolded phrase:

- First Healthcare Provider: a particular healthcare provider about whom information is requested and a report is produced.  (Markman Order at 23.)

11

- Comparison Ratings of Healthcare Providers: ratings on multiple healthcare providers, including the 'first healthcare provider,' in the report on that 'first healthcare provider,' thus permitting comparison of the 'first healthcare provider' with other potential healthcare providers.  (Markman Order at 24.)

MDx's current website is capable of creating a report on a particular healthcare provider about whom information is requested and a report is produced.  After a patient/user enters search criteria for a particular doctor, MDx's website creates a healthcare provider report on the particular physician using information from the MDx database (as shown in the screenshot below), including using healthcare provider-verified information (red square), patient-provided information (green square), and information verified by the independent third-party source (purple square) about the first healthcare provider. [4]  For example, if a patient runs a name search for Dr. James Smith who practices in New York, NY, MDx's current website uses information within MDx's database to produce a report on Dr. James Smith.  A screenshot of the first page of Dr. Smith's report is shown below.  (Stoll-DeBell Decl. at p. 2 (Ex. 1).)

---

[4]    MDx does not assert that these elements are missing for purposes of this motion.  Rather, its summary judgment motion focuses solely on the argument that the comparison ratings element is missing.  In any event, with regard to physician-verified information, MDx encourages physicians to edit their information and MDx's website states that it obtains information from physicians.  (Stoll-DeBell Decl. at p. 4 ("Are you Dr. Smith?  Edit your profile"; p. 17 (stating Vitals gets information from doctors) (Ex. 1).)  Regarding patient-provided information, MDx admits that its current "www.vitals.com website includes an on-line patient experience survey that allows a patient to rate a physician."  Defendant MDx Medical, Inc.'s Objections and Responses to Plaintiff's First Set of Requests for Admission and Second Set of Interrogatories at p. 13 (Ex. 3 hereto).  Regarding third party verified information, MDx's website admits that it gets information from third parties including "medical boards from all 50 states, federal websites, hospitals, doctors, surveys, business alliances, and third party affiliates."  (Stoll-DeBell Decl. at ¶ 6 (p. 7), ¶9 (p. 17).)



Contrary to the arguments made in MDx's motion, the healthcare provider reports on MDx's current website are capable of including ratings for multiple doctors and ratings of the particular doctor who is the subject of the report. These comparison ratings are contained within the "highlights" section of a particular doctor's report, thus permitting comparison of that particular doctor with other potential doctors. In this example, Dr. James Smith's report includes comparison ratings on Dr. Smith (orange circle), namely a four star rating by his patients, and comparison ratings on another healthcare provider (Dr. Anthony Smith) (blue circle), which include a patient's choice award, a top doctor award, and a 4-star rating by his patients. A potential patient may use these ratings to compare Dr. James Smith with Dr. Anthony Smith.

By clicking on Dr. James Smith's name, a patient is able to access additional pages of Dr. Smith's report, screenshots of which are shown below, wherein the healthcare provider verified information is boxed in red, patient-provided information is boxed in green, third-party verified information is boxed in purple, and comparison ratings are boxed in orange[5]:

---

[5]     Stoll-DeBell Decl. at ¶¶ 4-5 (pp. 2-7) (Ex. 1); Ex. 1A at pp. 11-13).



2003589683_1



(Stoll-DeBell Decl. at ¶¶4-5 (pp. 2-6) (Ex. 1); Ex. 1A at pp. 12-13.)

Another example of MDx's literal infringement occurs when a potential patient runs a specialty search.  If a patient searches for a female plastic surgeon, who speaks Spanish, was educated in the U.S., is board certified, and practices in New York, NY, MDx's website creates a healthcare provider report on Dr.



Sujana Chandrasekhar, the first page of which is shown to the right.(Stoll-DeBell Decl. at ¶ 7

(pp. 8-10) (Ex. 1); Ex. 1A at p. 14.)  The report on Dr. Chandrasekhar was created using physician-verified information (red box), patient-provided information (shown in subsequent pages of her report), and information verified by a third party (purple square).  It also contains comparison ratings of Dr. Chandrasekhar (orange square) and other doctors (blue squares).  Thus, the report on Dr. Chandrasekhar literally infringes the "healthcare provider report" element of claims 1 and 15.  At a minimum, there are questions of fact regarding whether the above screenshots (and others) meet the claimed comparison ratings of healthcare providers.  Thus, MDx's motion should be denied.

2.      <u>MDx's Non-Infringement Arguments Lack Merit and Do Not Justify Summary Judgment of Non-Infringement</u>

MDx insists that the claimed healthcare provider report on the first healthcare provider is limited to the "doctor profile page" on its website.  Health Grades disagrees.  Throughout this litigation, MDx has made several arguments about why the webpages shown below (collectively the "Disputed Webpages") do not constitute part of a healthcare provider report on the first healthcare provider that includes comparison ratings of healthcare providers.




16

(Stoll-DeBell Decl. at pp. 2-3, 8-10.)

First, MDx has argued that the Disputed Webpages are not the first page of a "healthcare provider report," but rather are the results list required by claim 7.  Claim 7 states:

> 7.    The method as defined in claim 6, wherein the search of the database produces a results list of one or more healthcare providers satisfying the search criteria, wherein the results list includes the first healthcare provider.

 MDx has not cited, and Health Grades is unaware of, any authority that precludes a patentee from relying on the same computer screen display of an Internet website to meet multiple elements of a claim.  Here, the screenshot (shown to the left) includes a results list (names within the black boxes) of physicians who meet the search criteria, but it also contains additional information that is not required by the results list element (e.g., specialty information, address, ratings, awards, hospital affiliations, board certifications), which additional information meets the claim limitation of a report on a particular healthcare provider as discussed above. (Stoll-DeBell Decl. at pp.8-10; Ex. 1A at p. 5)  Thus, this page meets both the healthcare provider report element *and* the results list claim element, each of which require different things.

As for MDx's argument that the Disputed Webpages are not part of the claimed "report," Health Grades disagrees.  Paper reports often contain many pages and the same is true for reports in electronic form.  A reasonable jury could easily conclude that that the foregoing screen shots are the first page of a multi-page report and that additional pages of the report may be accessed by clicking a hyperlink on the first page.  Further, the claim does not literally require that the

report be limited to one-page and MDx did not ask the Court to so limit the claimed report during the Markman proceedings.  Thus, whether the foregoing page is part of the healthcare provider report is a disputed question of material fact that should be decided by the jury.

Moreover, even if this page is not literally part of the healthcare provider report, it is an equivalent to the healthcare provider report that infringes under the doctrine of equivalents.  This argument is addressed in a separate section below.

Second, MDx makes a similar argument that the overall patient rating is the claimed patient-provided information and thus cannot also be comparison ratings.  This argument fails for the same reason as the one above.  The jury should determine whether MDx's website contains the claimed patient-provided information, whether the star ratings (or other ratings) meet this claimed patient-provided information, and whether the ratings meet the Court's definition of comparison ratings.  These are all disputed issues of fact that preclude summary judgment.

Third, while the Court's construction of "report on the first healthcare provider" requires that the report be on a *particular* healthcare provider, it does not preclude the report from additionally containing information relating to other healthcare providers.  Indeed, such would be contrary to the Court's definition of "comparison ratings" which *requires* the healthcare provider report include ratings of other healthcare providers.  (Markman Order at 24.)   But even if the healthcare provider report must be limited to the first healthcare provider and only the first healthcare provider, MDx still infringes this claim element under the doctrine of equivalents as described in a separate section below.

### C.   <u>MDx's Current Website Infringes Under the Doctrine of Equivalents</u>

If the claims literally require that the healthcare provider report be limited to a single

healthcare provider, then MDx infringes under the doctrine of equivalents under two alternate

theories:  1) its side-by-side display of multiple reports, each on a single provider and each

including comparison ratings for that provider, is equivalent to the claimed report on the first

healthcare provider including comparison ratings of healthcare providers; and 2) its report that

includes multiple, particular healthcare providers is equivalent to a report that includes only the

first healthcare provider.  If the claims literally require that the healthcare provider report be

limited to one page (a position with which Health Grades disagrees), MDx also infringes because

its multi-page reports are equivalent to a single page report.  Each argument is addressed below.

    1.  <u>MDx's Display of Multiple Healthcare Provider Reports on the Same Page</u>
       <u>Infringes the Comparison Ratings of Healthcare Providers Limitation</u>
       <u>Under the Doctrine of Equivalents</u>

      a.  <u>MDx's Display of Multiple Healthcare Provider Reports on the</u>
         <u>Same Page, Each Report with Comparison Ratings of Its Particular</u>
         <u>Provider, Is Equivalent to the Claimed Comparison Ratings</u>

   MDx's current website displays multiple healthcare provider reports (red boxes), each

limited to a single healthcare provider and each containing comparison ratings of that particular

healthcare provider (orange boxes), on the same webpage, side-by-side, as shown below:




(Stoll-DeBell Decl. at pp. 2-3, 8-10; Ex. 1A at pp. 6-7.)  While none of these reports include ratings of other healthcare providers, MDx's website performs substantially the same function, in substantially the same way, to produce substantially the same result as the claimed comparison ratings element.  The "function" of the comparison ratings claim element is to allow patients to compare the first healthcare provider, e.g., Dr. James Smith or Dr. Sujana Chandrasekhar, with other doctors, e.g., Dr. Anthony Smith or Dr. Robin Shinoff.  (Markman Order at 24.)  MDx's website has substantially the same function.  The "way" this function is achieved in the claim (as construed by the Court) is to include comparison ratings of other healthcare providers in the same report with ratings of the first healthcare provider.  The way MDx achieves this function is by displaying multiple reports, each with comparison ratings of the first healthcare provider, on the same display, so that a patient can compare the first healthcare provider with other healthcare providers.  This is substantially the same as the claim.  The "result" of the claim is a report that allows for comparison of the first healthcare provider with others.  The result of MDx's website is substantially the same, i.e., multiple reports that allow for comparison of the first healthcare provider with other healthcare providers.  At a minimum, whether MDx's Disputed Pages perform substantially the same function, in substantially the same way, to achieve substantially the same result are disputed issues of fact that should be decided by a jury.

MDx asserts that "*any* application of the doctrine of equivalents to capture the current MDx Website would entirely vitiate the "comparison ratings of healthcare providers" claim element . . . ."  (Dkt. 9 at 10 (emphasis added).)  This is simply not true.  The information enclosed in the orange boxes above literally satisfies the Court's interpretation of comparison ratings except that the ratings of other doctors are not included *in* the report on the first

healthcare provider, but rather *adjacent* to it.

MDx blatantly copied Health Grades.  (*See, e.g.,* MDX0011841-MDX0011860 ("Copy HG Concept for 1st Page") (highlighting added); MDX0016749-51 (providing links to Health Grades website for MDX to copy) (highlighting added); MDX0016838-39 (copying Health Grades' marketing materials) (highlighting added) (all attached as Ex. 4).)  Now MDx is attempting to avoid infringement by making insignificant changes.  This is exactly the type of behavior that the doctrine of equivalents was designed to prevent.  *Graver Tank*, 339 U.S. at 607.

> b.  The Doctrine of Equivalents Argument Relating to MDx's Display of Multiple Healthcare Provider Reports on the Same Page is Not Barred by Prosecution History Estoppel

During prosecution, the Patent Office rejected claims 1-6, 8, 9, 13-15 and 19[6] under 35 U.S.C. §103 as being unpatentable over Henley (U.S. Patent Pub. No. 2003/0195838) in view of Cook et al. (U.S. Patent Pub. No. 2006/0080146).  In response, the Applicants amended the report element of claims 1 and 19 to add the comparison ratings limitation as shown below:

> 1.  (Currently Amended) A method of providing healthcare provider information to potential patients, said method comprising:
>
>> compiling healthcare provider-verified information;
>>
>> compiling past-patient provided information;
>>
>> compiling information verified by independent third-party sources;
>>
>> creating, by a processor, a healthcare provider report using the ~~physician-verified~~ healthcare provider-verified information, the past-patient provided information, and the ~~verified~~ information verified by independent third-party sources, wherein the healthcare provider report includes comparison ratings of healthcare providers; and
>>
>> providing access to the healthcare provider report over a computer network.

(File History, 2/16/10 Amendment at 2 (Ex. 2H).)

---

[6]   Claim 15 of the issued '060 patent was numbered claim 19 during prosecution.

19.    (Currently Amended) An on-line information system for providing verified information
regarding healthcare providers, the system comprising:

at least one processor; and

memory coupled with and readable by the at least one processor and comprising a series
of instructions that, when executed by the at least one processor, cause the at least one processor
to:

~~a compilation module for compiling~~ compile healthcare provider-verified information;

~~a compilation module for compiling~~ compile patient-provided information;

~~a compilation module for compiling~~ compile healthcare provider information verified by
an independent third party; and

~~a creation module for creating~~ create a healthcare provider report using the ~~provider-verified~~ healthcare provider-verified information, the patient-provided information, and the
independently verified information, wherein the healthcare provider report includes comparison
ratings of healthcare providers; ~~and~~

~~a computing system with access to healthcare provider information stored in a database,~~
~~wherein patients may search the database and review healthcare provider reports to differentiate~~
~~among healthcare providers.~~

(*Id.* at 5 (Ex. 2H).)  The prosecution history makes clear that the comparison ratings limitation

was added to overcome the Patent Office's rejection based on the Henley and Cook prior art[7]:

Claims 1-6, 8, 9, 13-15, and 19 were rejected under 35 U.S.C. §103(a) as
allegedly being unpatentable over Henley in view of Cook. . . . Specifically, the
references fail to teach or suggest all of the claim elements.

For example, Henley in view of Cook fail to teach or suggest at least the
following with respect to claim 1:

creating, by a processor, a healthcare provider report *using the healthcare
provider-verified information, the past-patient provided information, and the
information verified by independent third-party sources, wherein the healthcare
provider report includes comparison ratings of healthcare providers;* and

---

[7]    The reason for amending a claim is a different issue from whether the amendment was
successful in obtaining allowance of the claim.  Here, the amendment was made for reasons of
patentability (i.e., to distinguish prior art) but did not result in the claims being allowed.  Instead,
the Patent Office required additional amendments before it allowed the claims.

> providing access to the healthcare provider report over a computer network.

> *Claim 1, supra (as amended) (emphasis added).*

(*Id.* at 9-12 (italicized emphasis in original) (Ex. 2H).)  The Amendment and Response further explains why neither Henley nor Cook teach a healthcare provider report that contains physician-verified information, patient-provided information, or third-party verified information:

> Specifically, Henley provides for on-line negotiating of fees for medical services and provides a "method and apparatus that will enable prospective patients to easily identify and access an otherwise underutilized medical facility to negotiate a favorable fee for services subject to scheduling restrictions and other 'specifications' set by the medical service provider."  *Henley, at [0024].*  Henley is thus related to on-line auctioning for medical services and products and fails to disclose or suggest, at a minimum, "creating . . .  a healthcare provider report using the healthcare provider-verified information, the past-patient provided information, and the information verified by independent third-party sources . . . ."  . . . .

> Cook's reports are thus related to EMR systems: "It is also specifically meant to include all implementations in which reports to patients include graduated assessments of EMR systems." *Cook, at [0375] (emphasis added).* While Cook refers to the "ability to report to patients objective measures of the quality and cost effectiveness of care provided by each individual healthcare provider," *Cook, at [0358],* this reference to the "quality" and "cost effectiveness" appears to refer again to "reviewing electronic patient medical records" and to "outcomes data from health insurance companies." *See Cook, at [0358].*  Cook thus fails to provide any teaching or suggestion, at a minimum, of ". . . creating . . . a healthcare provider report *using the healthcare provider-verified information, the past-patient provided information, and the information verified by independent third-party sources . . . ."*  . . . Cook thus fails to cure the deficiencies of Henley.

(*Id.* at 10-11 (italicized emphasis in original) (Ex. 2H).)  The Amendment and Response further argued that while Henley teaches making facts available for comparison, this is not the same thing as **comparison ratings**:

> Further, Henley fails to teach or suggest, for example, ". . . wherein the healthcare provider report includes comparison ratings of health care providers . . ."  The Office Action relies on Henley at "paragraphs 0015-0016, 0037, 0081, 0090 and 0107" for providing such a teaching.  However, the Applicants respectfully disagree. The cited

portions of Henley provide no teaching or suggestion of "comparison ratings." . . . . For example, paragraph [0107] provides that "[t]he qualifier engine and associated databases allow the qualifications of both the physician providing the service and the qualifications of the hospital/treatment facilities [to be] available to the consumer/patient." *Henley, at [0107]*. **However, making general qualifications "available" to a consumer does not teach or suggest "comparison ratings."** Additionally, while paragraph [0090] provides for "hyperlinks to databases storing the identification of medical service providers having satisfied a particular qualifying requirement," *Henley, at [0090],* access to databases storing the "identification" of medical service providers satisfying a particular requirement provides no teaching or suggestion of, for example, "comparison ratings" of health care providers. **Henley thus fails to provide any teaching or suggestion of at least ". . . wherein the healthcare provider report includes comparison ratings of health care providers** . . ."

(*Id.* at 9-12 (italicized emphasis in original, bolded emphasis added) (Ex. 2H).)

Thus, the reason for adding the comparison ratings limitation did not relate in any way to the location where the comparison ratings are displayed (i.e., within a single report versus on separate reports displayed side-by-side on the same page). As such, the reason for this narrowing amendment is tangential to the MDx equivalent that is accused in this case.

Thus, Health Grades should not be precluded from arguing that MDx infringes the asserted claims because it displays multiple healthcare provider reports on the same page, each report with comparison ratings of its particular provider, which is equivalent to a report on a first healthcare provider that contains comparison ratings of other healthcare providers.

      2.    <u>MDx's Multi-Provider Report Infringes the Healthcare Provider Report on the First Healthcare Provider Claim Limitation Under the Doctrine of Equivalents</u>

      a.    <u>MDx's Multi-Provider Report is Equivalent to a Particular Healthcare Provider Report</u>

MDx's current website is capable of creating a



2003589683_1

report (red box) that includes the claimed information about multiple, particular healthcare providers and that includes comparison ratings of each particular healthcare provider (orange boxes) as shown below to the right.  (Stoll-DeBell Decl. at pp. 8-10; Ex. 1A at p. 9.)

While this report is not limited to a single, particular healthcare provider, it performs substantially the same function, in substantially the same way, to produce substantially the same result as the claimed report on the first healthcare provider.  The "function" of the "report on the first healthcare provider" claim element is to allow patients to obtain detailed information about a particular doctor.  MDx's website has substantially the same function.  The functional difference of reporting on one particular doctor versus multiple particular doctors is insubstantial.  The "way" this function is achieved in the claim (as construed by the Court) is to create a report with the three types of information (i.e., doctor-verified, patient-provided, and third-party verified).  The way MDx achieves this function substantially the same. The "result" of the claim is a report that includes the claimed information about the particular provider.  The result of MDx's website is substantially the same – a single provider report is substantially the same as a multiple provider report – both have information on the single particular provider.  At a minimum, whether MDx's multiple provider report performs substantially the same function, in the same way, to achieve the same result are disputed issues of fact that should be decided by a jury.

       b.      <u>The Doctrine of Equivalents Argument Relating to the Multi-Provider Report is Not Barred by Prosecution History Estoppel Because it is Tangential to the Reason for the Claim Amendment</u>

After the Applicants submitted the amendment described earlier, they conducted an interview with the Patent Office examiner and then submitted a supplemental amendment that

added limitations to the healthcare provider report element of claim 1:

> creating, by [[a]] the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the past patient patient-provided information, and the information verified by the independent third-party source sources, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and

(File History, 4/26/10 Amendment at 3 (highlighting added) (Ex. 2E hereto).) The same limitation was added to claim 19:

> create a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source independently verified information, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and

(*Id.* at 7 (highlighting added) (Ex. 2).)

The Amendment and Response states that the amendments, including the addition of the first healthcare provider limitation, were made for reasons related to patentability to overcome the rejection based on prior art references Henley and Cook:

> Claims 1-6, 8, 9, 13-15, and 19 were rejected under 35 U.S.C. §103 (a) as allegedly being unpatentable over Henley in view of Cook. Applicants respectfully disagree with and traverse these rejections. . . . Specifically, the references fail to teach or suggest all of the claim elements.

> For example, Henley in view of Cook fail to teach or suggest at least the following with respect to claim 1:

> > *creating,* by the at least one computer processor, *a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source,* wherein the healthcare provider report on the first healthcare provider includes *comparison ratings* of health care

26

> providers;
>
>                  . . . .

*Claim 1, supra (as amended) (emphasis added).*

> [H]enley is thus related to on-line auctioning of medical services and products and fails to disclose or suggest at least: " . . . creating, by the at least one computer processor, *a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source,* wherein the healthcare provider report on the first healthcare provider includes *comparison ratings* of health care providers . . . ."

> Further, Cook fails to cure the deficiencies of Henley. As discussed previously, . . . Cook fails to provide any teaching or suggestion, at a minimum, of " . . . creating, by the at least one computer processor, *a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source,* wherein the healthcare provider report on the first healthcare provider includes *comparison ratings* of health care providers . . . ."

> Accordingly, Henley in view of Cook fail to teach or suggest each and every limitation of claim 1, and allowance of this claim is therefore respectfully requested.

(*Id.* at 9-11 (italicized emphasis in original) (Ex. 2E).)  These amendments and arguments did not

relate in any way to whether the report was on only one provider or many providers.  As such,

the reason for the amendment was tangential to the accused multi-provider report equivalent in

MDx's accused website.

Thus, Health Grades should not be barred from arguing that MDx infringes because it

creates a report on multiple, particular healthcare providers, which is equivalent to a report on a

first healthcare provider that contains comparison ratings of other healthcare providers.

> 3.     <u>MDx's Multi-Page Report Infringes the Healthcare Provider Report Claim Element Under the Doctrine of Equivalents</u>
>
>        a.     <u>MDx's Multi-Page Report Performs Substantially the Same Function, in Substantially the Same Way, to Achieve Substantially the Same Result as a Single Page Report</u>

MDx's current website is capable of creating a multiple-page report on a particular

healthcare provider in response a request for information about that healthcare provider:

| First Page of Dr. Chandrasekhar's Report: | Second Page of Dr. Chandrasekhar's Report: | Third Page of Dr. Chandrasekhar's Report: |

 

  

(Stoll-DeBell Decl. at ¶¶7-8 (pp. 8-16).)  MDx's multi-page report performs substantially the

same function, in substantially the same way, to produce substantially the same result a single

page report.  The "function" of the "report on the first healthcare provider" claim element is to

allow patients to obtain detailed information about a particular doctor.  The "way" this function

is achieved in the claim is to create a report with the three types of information (i.e., doctor-

verified, patient-provided, and third-party verified).  MDx achieves the same function in the

same way. The "result" of the claim is a report that includes the claimed information about the

particular provider.  The result of MDx's website is the same.  At a minimum, whether MDx's

multiple page report performs substantially the same function, in substantially the same way, to

achieve substantially the same result are disputed issues of fact that should be decided by a jury.

As the Supreme Court recognized in *Graver Tank*, MDx should not be able to copy

Health Grades' patented system and then avoid infringement by making insignificant changes,

such as creating a report that spans multiple pages instead of a single page or combining the

results list page with the healthcare provider report.   *Graver Tank*, 339 U.S. at 607.

                               b.          <u>The Doctrine of Equivalents Argument Relating to the<br>Multi-Page Report is Not Barred by Prosecution History<br>Estoppel Because It Was Not Added by Amendment</u>

       The original claims included the step of creating a healthcare provider report:

> 1.    A method of providing healthcare provider information to potential patients, said method comprising:
>
>     compiling healthcare provider-verified information;
>
>     compiling past-patient provided information;
>
>     compiling information verified by independent third-party sources;
>
>     creating a healthcare provider report using the physician-verified information, the past-patient provided information, and the verified information; and
>
>     providing access to the healthcare provider report over a computer network.
>
>                    ****
>
> 19.    An on-line information system for providing verified information regarding healthcare providers, the system comprising:
>
>     a compilation module for compiling healthcare provider-verified information;
>
>     a compilation module for compiling patient-provided information;
>
>     a compilation module for compiling healthcare provider information verified by an independent third party;
>
>     a creation module for creating a healthcare provider report using the provider-verified information, the patient-provided information, and the independently verified information; and
>
>     a computing system with access to healthcare provider information stored in a database, wherein patients may search the database and review healthcare provider reports to differentiate among healthcare providers.

(File History, Original Application at 38, 41 (highlighting added) (Ex. 2L hereto).)  This

limitation was not subject to any amendment, let alone a narrowing amendment.  Thus, it is

entitled to the full range of equivalents.

## V.    <u>CONCLUSION</u>

       For all of the foregoing reasons, there are many disputed issues of material fact that

require that this Court deny MDx's motion for partial summary judgment.

Respectfully submitted this 9th day of March, 2012.

ROTHGERBER JOHNSON & LYONS LLP


*s/ Jesús M. Vázquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email:  kkosto@rothgerber.com
          jvazquez@rothgerber.com
          jphipps@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant*
*Health Grades, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of March, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO MDx's MOTION FOR RECONSIDERATION OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INFRINGEMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Mark Jon Rosenberg
David Chunyi Lee
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
Email: sstimpson@sillscummis.com
Email: mrosenberg@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: ridley@wtotrial.com

Ramona L. Lampley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: lampley@wtotrial.com

*s/ Jesús M. Vazquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email:  kkostolansky@rothgerber.com
             jvazquez@rothgerber.com
             jphipps@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*

31