**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S RESPONSE**
**TO MDX MEDICAL, INC.'S MOTION TO STRIKE HEALTH GRADES' DEPOSITION**
**NOTICE WITHOUT LEAVE TO AMEND, OR IN THE ALTERNATIVE, FOR A**
**PROTECTIVE ORDER, AND FOR FEES AND COSTS**

---

I.    **INTRODUCTION**

MDx is playing games. It has refused to fully answer Health Grades' interrogatories seeking its detailed non-infringement contentions and an explanation about how its accused system operates, and has refused to provide a demonstration system so that Health Grades can see the full functionality of the accused website. Health Grades moved to compel MDx to respond to this interrogatory and to produce information about how its website operates. (Dkt. 126 (motion pending).) In response, MDx argued that Health Grades can get this information from a Rule 30(b)(6) deposition of MDx:

> At page 7 of its Motion, Health Grades requests that MDx identify various things. The first two bullets of what Health Grades wants, however, are not requested in this interrogatory, nor could MDx possibly be expected to identify for every piece of data (there are millions) where it comes from and how it was obtained. The data in the MDx system comes from many, many, different sources.

1

The third bullet on page 7 of the Health Grades Motion is also not requested in the interrogatory. Nothing in the interrogatory requests MDx to "explain why" the MDx website operates the way it does.

**Health Grades has noticed a 30(b)(6) deposition of MDx on the operation of the MDx website. That is the proper approach – not this attempt to elicit responses to questions that were never asked.**

(MDx's Response to Health Grades' Motion to Compel at pp. 5-6 (emphasis added) (Dkt. 135).)

Yet, MDx has also refused to produce any Rule 30(b)(6) witnesses and has the audacity to argue that Health Grades should be *forever precluded* from taking any Rule 30(b)(6) depositions because (it contends) Health Grades' topics are too numerous and too broad. MDx provides no authority to support such a drastic remedy. In any event as described below, Health Grades topics are narrowly tailored to: a) specific features that relate directly to the asserted claim elements; b) Health Grades or its '060 patent; and c) revenues for the accused products and services that relate thereto.

MDx's motion should be denied and it should be ordered to pay Health Grades' costs and fees incurred in responding to this baseless motion.

## II.    FACTUAL BACKGROUND

Health Grades owns U.S. Patent No. 7,752,060 ("the '060 patent"), which claims systems and methods for providing on-line reports about particular healthcare providers, such as physicians, that contain four kinds of information:  1) healthcare provider-verified information; 2) patient-provided ratings of the particular healthcare provider; 3) information about the particular healthcare provider that is verified by a third party; and 4) comparison ratings of the particular healthcare provider and other healthcare providers that permit comparisons of the

2003593278_1

particular healthcare provider with other healthcare providers.  (Markman Order at 2-3, 24 (Dkt. 138).)

Health Grades has accused MDx's website (www.vitals.com) of infringing several claims of the '060 patent.  Like the patent claims, MDx's accused website creates physician reports, which it calls "physician profiles," that contain information from various sources including doctors, patients, and third parties:

**What is Vitals.com?**
Vitals is committed to providing the most thorough information available on doctors. It is our mission to arm consumers with the information they need to make the best healthcare choice possible. We seek to provide you with as much objective data as is available on a doctor. Have an opinion about a health care provider? Vitals offers you a place to both share your thoughts and make informed decisions. Our goal is to give you, the user, the information you need to make the best decision on selecting a doctor.

**Who is Vitals?**
Vitals is comprised of a team of dedicated experts in the fields of healthcare, marketing, and database management. Vitals is owned by MDx Medical, Inc with headquarters in Lyndhurst, NJ. Our mailing address is Vitals, 210 Clay Ave, Suite 140, Lyndhurst, NJ 07071. Our phone number is 201-842-0760.

**From where does Vitals get their information and data?**
Vitals obtains information and data from a wide variety of sources both public and private. These include: medical boards from all 50 states, federal websites, hospitals, doctors, surveys, business alliances and third party affiliates.

(http://www.vitals.com/faq, last accessed on March 12, 2012 (**Ex. 1**).)  MDx's accused website also has various kinds of physician ratings, including star ratings.  During discovery, MDx has produced many documents admitting that it has copied Health Grades.  (*See, e.g.,* MDX0011841-MDX0011860 ("Copy HG Concept for 1st Page") (highlighting added); MDX0016749-51 (providing links to Health Grades website for MDX to copy) (highlighting added); MDX0016838-39 (copying Health Grades' marketing materials) (highlighting added) (all attached as **Ex. 2**).)

While several pertinent features of the accused website are publicly available at www.vitals.com, there are portions of the website that are password protected and several categories of information that are available *only* from MDx.  These relate to MDx's physician

database, the internal algorithms for processing data from the database and creating physician

reports, the specific identity of the sources of MDx's data, the algorithms for compiling

information on physicians, rating physicians, and ranking search results, to name a few.  Health

Grades has used all available tactics to obtain this information, including serving MDx with

interrogatories, document requests, requests for admission, and deposition notices under Rule

30(b)(6).  MDx has refused to provide this information.

For example, Health Grades served MDx with Interrogatory No. 2, which requested:

**Interrogatory No. 2.**

With respect to any of version of MDX's Accused Products, using a claim chart, state in detail MDX's bases for any assertions of non-infringement of the patent in suit on a claim-by-claim, element-by element basis. MDx's answer should include a statement of MDX's interpretation of each claim element, **a statement whether MDX's Accused Products provide(s) such an element or an equivalent and, if not, an explanation how MDX's Accused Products operate or function differently than the claim element** and a particularized statement why a component, feature or function of Accused Products is not a substantial equivalent of the pertinent claim element.

(Health Grades First Set of Interrogatories at 9 (emphasis added) (**Ex. 3**).)  In response, MDx

provided only conclusory statements.  (MDx's Response to Interrogatory No. 2 at 6-9 (**Ex. 4**).)

For example:

1. <u>Healthcare Provider-Verified Information</u>:  Regarding the claimed

"healthcare provider-verified information," MDx's interrogatory response stated:

"No Literal Infringement: For **most** of the MDx data, the information required by this portion of the claims is not verified by the healthcare provider."

*Id.* (emphasis added).  MDx refuses to state what data is verified by the healthcare provider and

what data is not.  MDx refuses to explain who verifies it or how it is verified for each piece of

4

claimed information.  MDx refuses to explain how the information is obtained that is different from being verified by the healthcare provider.

      2.    <u>Received from the First Healthcare Provider</u>:  the claims require that the healthcare provider-verified information be "received from the first healthcare provider." Regarding this requirement, MDx's interrogatory response states:

> "No Literal Infringement: For **most** of the data, this information required by this portion of the claims is not received from the provider **itself**."

> "There can be no equivalents where this data is not obtained from the provider, as the MDx approach of obtaining this data **elsewhere** is entirely different from the claimed approach . . . ."

*Id*. (emphasis added).  MDx refuses to state what specific information is received from the healthcare provider itself and what is not.  MDx refuses to say where is it obtained, if not from the healthcare provider.  MDx refuses to explain what "elsewhere" means.

      3.    <u>Compiling in response to Receiving a Request</u>:  MDx's interrogatory response states:

> "No Literal Infringement: MDx compiles data on providers as scheduled -- it does not compile data in response to receiving a request for information regarding a healthcare provider."

*Id*. MDx refuses to state how the compiling operation is scheduled and when it is scheduled, etc.

      4.    <u>Patient Ratings from On-Line Patient Experience Survey</u>:  MDx's interrogatory response states:

> "No Literal Infringement: **Not all** the patient ratings come from the MDx on-line survey, as required by this claim element."

> "No Equivalents: The claimed requirement that all patient ratings come from the online survey is not met literally or equivalently – obtaining some of the ratings **from another source** is an entirely different approach."

*Id*. (emphasis added).  MDx refuses to state what patients ratings come from the MDx on-line survey and what ratings do not.  It refuses to identify the other sources of ratings.

        5.    <u>Report using the information verified by the independent third-party source:</u>  MDx's interrogatory response states:

> "No direct infringement: The reports on the MDx Website do not include three or more of the information verified by the independent third party source."

*Id.* MDx refuses to explain what specific information is verified by an independent third party source and what information is not.  MDx refuses to explain for specific types of information not included, how MDx's website works differently than the claimed invention.

        6.    <u>Creating a report using "the" information:</u>  MDx's interrogatory response states:

> "No Literal Infringement: The MDx reports do not use **all of the** compiled information."

> "No Equivalents: There can be no equivalents because the two different approaches operate in very different ways and have very different results – **the MDx system results in a report with less information,** for example, than if all the compiled information was used as required by the claim."

*Id.* (emphasis added).  MDx refuses to explain what information the reports use and what they do not use.  MDx refuses to explain how its website determines what information to use and what not to use.

        Health Grades filed a motion to compel MDx to respond to this interrogatory and explain how its accused website operates differently from the claims.  In response, MDx argued: 1) Health Grades did not ask MDx to explain how its website worked; and 2) Health Grades can get this information from the Rule 30(b)(6) deposition of MDx.  (MDx's Response to Health Grades Motion to Compel at pp. 5-6 (Dkt 135).)

Health Grades also served an interrogatory asking that MDx provide documents that would be sufficient to show the functions and operations of the accused website, including a demonstration version of the accused software.  (Health Grades First Set of Document Requests at 9-12 (Ex. 5).)  MDx refuses to provide log-in credentials to its demonstration system, arguing that Health Grades did not ask for it and Health Grades ask for production of documents, not a request to inspect.  (MDx's Response to Health Grades Motion to Compel at pp. 6-7 (Dkt 135).)

Health Grades requested that MDx produce financial documents relating to the accused website.  (Health Grades First Set of Document Requests at 12-14 (Ex. 5).)  MDx refuses to provide anything other than its advertising revenue arguing that this is the only relevant information.  (MDx's Response to Health Grades Motion to Compel at pp. 7-8 (Dkt 135).)

Now MDx seeks to prevent Health Grades from taking any Rule 30(b)(6) depositions to uncover this information.

## III.     HEALTH GRADES RULE 30(b)(6) TOPICS ARE NOT OVERLY BROAD

### A.     Many Topics (3-8, 12, and 26) Are Focused Specifically on the Accused "Features"

MDx argues that Health Grades' topics require them to explain everything about every feature on MDx's website.  Not true.  Health Grades identified seven features from MDx's accused website – the technical topics (3-8, 12, and 26) are focused on these "Features."  These Features relate directly to elements of Health Grades' asserted claims as shown in the table below.  Further, in response to MDx's objections to its first set of topics, Health Grades revised the topics and took great pains to identify with specificity exactly what questions it intends to ask about each of the "Features":

| "FEATURES" for 30(b)(6) Topics | RELATED CLAIM ELEMENT |
|---|---|
| 1. Physician profiles provided by the vitals.com website, including information used to drive physician profiles, identity of all sources of each piece of information included in profiles, how MDx obtains information from each of these sources, how MDx makes determinations of what information to display and not display in profiles, processes for creating profiles, all empirical algorithms used to process information from these sources, processes for determining/calculating patient ratings that are displayed in profiles, processes for determining which physicians receive the patient choice award, processes for determining "match score", the processes for determining relevance of physicians that match search queries, and hyperlinks to hospitals; | Claim 1, element (e): <br><br> [e] "creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; . . . ."; *see also* claim 15, element (f). (Markman Order at 2-3 (Dkt. 138).) |
| 2. The database(s) of physicians accessed by the vitals.com website including the identify of all possible fields in the databases, the identity of all sources of each piece of information (e.g. fields) included in databases, all empirical algorithms used to process information in databases, creation and maintenance of the databases, procedures for collecting, gathering, compiling, and putting together information in the databases, procedures for verifying information in the database, and sources for the following types of information: medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, hobbies, board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, medical | Claim 1, element (b), (c), and (d): <br><br> [b] "accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies; <br><br> [c] "compiling, by the at least one computer processor, patient-provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a |

| "FEATURES" for 30(b)(6) Topics | RELATED CLAIM ELEMENT |
|---|---|
| fellowship information, and ratings; | company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;"<br><br>[d] "compiling information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;"<br><br>Claim 5:<br><br>5. The method as defined in claim 1, wherein the access to the healthcare provider report is obtained through a predetermined Web page that provides search capabilities for a database comprised of health care provider information.<br><br>*See also* claim 15, elements (c), (d), (e). (Markman Order at 2-3 (Dkt. 138).) |
| 3. Search functions associated with the vitals.com website (e.g. type of searching available, sorting, ranking of search results by relevance, match score, or any other criteria, and results lists of searches for physicians); | Claim 1, element (a):<br><br>"receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider, wherein the Web server computer comprises at least one computer processor and memory;"<br><br>Claims 5 and 6, 7, 9, and 11:<br><br>5. The method as defined in claim 1, wherein the access to the healthcare provider report is obtained through a predetermined Web page that provides search capabilities for a database |

9

| "FEATURES" for 30(b)(6) Topics | RELATED CLAIM ELEMENT |
|---|---|
| | comprised of health care provider information.<br><br>6. The method as defined in claim 5, wherein the search capabilities permit a search based on one or more from the group consisting of: name, medical specialty, gender, state, city, procedure, diagnosis, procedure, and location criteria.<br><br>7. The method as defined in claim 6, wherein the search of the database produces a results list of one or more healthcare providers satisfying the search criteria, wherein the results list includes the first healthcare provider.<br><br>9. The method as defined in claim 7, further comprising:<br><br>determining from the results list whether a particular  healthcare provider is a member of the company managing the Web site; and<br><br>if the particular healthcare provider is a member of the company managing the Web site, providing enhanced services for the member healthcare provider on the Web site.<br><br>11. The method as defined in claim 9, wherein the enhanced services comprise favorable positioning in the results list.<br><br>*See also* claim 15, element (b).  (Markman Order at 2-3 (Dkt. 138).) |
| 4.   Ratings of physicians within the vitals.com website, including sources of rating information, processes for compiling ratings from sources, process for calculating or determining ratings, patients choice award and how it works, overall patient rating, match score; | Claim 1, element (e):  *see supra.*<br><br>Court's Definition of Comparison Ratings:<br><br>Comparison Ratings of Healthcare Providers: ratings on multiple healthcare providers, including the "first healthcare provider," in the report on that "first healthcare provider," thus permitting comparison of the "first healthcare provider" with other potential healthcare providers. |

2003593278_1

| "FEATURES" for 30(b)(6) Topics | RELATED CLAIM ELEMENT |
|---|---|
| 5. "360° Vitals View"; | <u>Claim 1, element (b), (c), and (d)</u>:  *see supra.* |
| 6. Advertisements on vitals.com website; and | Claim 8:<br><br>8. The method as defined in claim 7, wherein the results list further includes an advertisement for the first healthcare provider with a hyperlink to information on the first healthcare provider.<br><br>(Markman Order at 2-3 (Dkt. 138).) |
| 7. Services and/or features that MDx offers to physicians in connection with the vitals.com website (including how physicians are allowed to manage and edit their profiles, log-in credentials for physicians, "click-throughs" to physician websites, appointment requests, prominent displays on list of matches, and optimization of search results). | <u>Claim 1, element (b)</u>:  *see supra.*<br><br><u>Claims 5, 9, and 11</u>: *see supra.* |

While not explicitly focused on the "Features," Topic 25 is similarly focused on the claim elements.

Despite the fact that these technical topics are focused on the relevant Features, MDx complains that the following are still overly broad:

- The identity of every source for every piece of information in every profile of the Vitals website. *Id.* (first bullet).
- How information is obtained from every source of data for every profile. *Id.*
- Identification of the functioning and operation of every algorithm used to process information from every data source. *Id.*

11

- Identification of the functioning and operation of every algorithm used to process information from every database. *Id.* (second bullet).
- The identity of every source for every piece of information in the entire Vitals database. *Id.*

(Motion to Strike at 6 (Dkt. 142).)  They are not.  The sources of the information in MDx's physician profiles are a central issue in this case because one of the benefits of the '060 patent is creating comprehensive and accurate physician reports that contain information from three sources:  the doctor, the patient, and third parties.  Moreover, the topics are not unduly burdensome.  MDx touts the fact that it obtains information from many sources on its website. (Ex. 1.)  It should not be too difficult for MDx to find someone to identify these sources for Health Grades.

### B.     The Damages Topics Are Relevant and Not Overly Broad

Topics 9-11, 14, and 27-28 relate to damages.  MDx's primary complaint is that these topics cover features other than the accused features, which it contends are not relevant. However, Health Grades is entitled to explore how MDx generates revenue and profits from the accused website.  MDx does not have the right to unilaterally decide what is relevant and refuse to produce anything else.  To the contrary, courts normally allow discovery "to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Here, patent damages are not necessarily limited to revenues for the accused products -- MDx revenue for related products may be relevant under various theories, such as convoyed sales, and/or *Georgia Pacific* Factor No. 6 (i.e., the effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales).

*See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).  Health Grades should be allowed to discover this information.

Moreover, the parties are operating under an agreement to protect the confidentiality of MDx's financial information.  Thus, there is no need for a protective order.  As such, MDx's motion as it pertains to the damages topics should be denied.

C.       **Remaining Topics are Relevant and Not Overly Broad**

Topic 13 relates to MDx's patents and pending patent applications.  These are relevant to the *Georgia-Pacific* reasonable royalty factors.  *Georgia-Pacific*, 318 F. Supp. 1116 (Factor 2: "The rates paid by the licensee for the use of other patents comparable to the patent in suit." Factor 13: "The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.").  MDx objects that this request is overly broad.  It is not.  MDx does not own very many patent applications and has already produced documents related to them.  There is no reason why MDx cannot identify a person with knowledge to testify about these applications.

Topics 15-20 and 23 relate specifically to the patent in suit and/or Health Grades.  This is highly relevant to many issues in this lawsuit.  Indeed, it is difficult to imagine how this information would not be relevant.  To the extent that the information relates to Health Grades' website, it is relevant to the issue of whether MDx copied Health Grades patented website.  To the extent that it relates to competition between MDx and Health Grades, it is relevant to damages.  For example, competition may demonstrate that lost profits are appropriate or that a higher royalty rate is warranted.  *See, e.g., Georgia-Pacific*, 318 F. Supp. 1116 (Factor 5: "The

13

commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter."). Moreover, competition between the parties is a key factor is determining whether to issue an injunction. *See e.g., Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) ("The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent.")

Topic 29 relates to MDx's policies regarding the intellectual property rights of others, which is clearly relevant to the issue of willfulness.

**D.    MDx Refused to Schedule the Depositions Even After Health Grades Revised the Topics**

In its motion MDx conveniently fails to mention that Health Grades first served its Rule 30(b)(6) topics on January 12, 2012.  (**Ex. 6**).  Then, in response to MDx's objections, Health Grades undertook a detailed, good faith effort to address the objections, and then served the *amended* topics on February 9, 2009.  (**Ex. 7**, email from J. Vazquez to S. Stimpson addressing the objections and revising certain topics.)   Despite this, counsel for MDx still refused to schedule the 30(b)(6) depositions. Given the discovery cut-off of March 16, 2012, Health Grades was forced to set the depositions via the notices it served on February 14, 2012 (Exhibit A to MDx's motion.  It is clear that MDx wants to avoid giving any meaningful discovery to Health Grades.

**IV.    CONCLUSION**

Health Grades is a pioneer in the field of healthcare provider information services on the Internet.  MDx copied Health Grades patented website and continues to willfully infringe Health Grades' patent claims.  Rather than focusing on the merits of this case, MDx is engaged in

14

procedural gamesmanship.  Enough is enough.  This Court should deny MDx's motion to strike and order MDx to produce Rule 30(b)(6) deponents forthwith.  Fed. R. Civ. P. 26(c)(2) ("Ordering Discovery. If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.")  This Court should also order MDx to pay Health Grades' fees incurred in responding to this motion.  Fed. R. Civ. P. 26(c)(3); 37(a)(5).

Respectfully submitted this 13th day of March, 2012.

ROTHGERBER JOHNSON & LYONS LLP

*s/ Jesús M. Vázquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email:  kkosto@rothgerber.com
         jvazquez@rothgerber.com
         jphipps@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant*
*Health Grades, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S RESPONSE TO MDX MEDICAL, INC.'S MOTION TO STRIKE HEALTH GRADES' DEPOSITION NOTICE WITHOUT LEAVE TO AMEND, OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER, AND FOR FEES AND COSTS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Mark Jon Rosenberg
David Chunyi Lee
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
Email: sstimpson@sillscummis.com
Email: mrosenberg@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: ridley@wtotrial.com

Ramona L. Lampley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: lampley@wtotrial.com

s/ Jesús M. Vazquez
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email:  kkostolansky@rothgerber.com
            jvazquez@rothgerber.com
            jphipps@rothgerber.com
Attorneys for Plaintiff Health Grades, Inc.

2003593278_1