# EXHIBIT 6

**Vazquez, Jesus**

| | |
|---|---|
| **From:** | Vazquez, Jesus |
| **Sent:** | Thursday, January 12, 2012 6:41 PM |
| **To:** | 'Scott D. Stimpson'; Scott Murray; David C. Lee |
| **Subject:** | MDx Rule 30(b)(6) Deposition Topics |
| **Attachments:** | MDx Rule 30(b)(6) Deposition Topics.pdf |

Counsel:

Attached are our Rule 30(b)(6) deposition topics. We would like to take the Rule 30(b)(6)
deposition of MDx the week of January 30 or the week of February 6. Please provide us with
alternative dates within those two weeks for the deposition, and also identify the individuals who
MDx designates to testify and on which specific topics each individual will testify.

Regards, Jesus

**Jesús M. Vázquez, Attorney-at-Law**
Rothgerber Johnson & Lyons LLP | One Tabor Center, Suite 3000 |
1200 Seventeenth Street | Denver, CO  80202 |
Direct 303.628.9517 | Main 303.623.9000 | Fax 303.623.9222
E-mail: jvazquez@rothgerber.com | Website: www.rothgerber.com

## Exhibit A

## MDx Rule 30(b)(6) Deposition Topics

1.  The history and corporate structures of MDX Medical, Inc. d/b/a/ Vitals.com, including all parents, divisions, subsidiaries, partners, and affiliated companies.

2.  The pre-filing investigation(s) of, preparation of, and basis for the allegations in Defendant's counterclaims, responses and affirmative defenses to Plaintiff's Complaint, including the events that led to such pre-filing investigation(s) and the person(s) involved in the decision(s) to make such allegations.

3.  The conception, design, design history, development, structure, function, operation, and testing of the vitals.com website and of each and every product and service offered within the website.

4.  The features, including the properties of such features, available in each product and service offered in the vitals.com website and any other product or service incorporating the same.

5.  Defendant's reasons for selecting the features used in each of its products and services.

6.  The assembly, compilation, and/or presentation of the features in each product and service offered in the vitals.com website.

7.  Defendant's reasons, including but not limited to business reasons, for developing each of its products and services.

8.  Marketing and advertising of each of Defendant's products and services.

9.  The sales of each of Defendant's products and services.

10. The revenues, costs, and profits attributable to or associated with each of Defendant's products and services.

11. Business plans, market plans, sales or marketing forecasts, budgets, or projections for each Accused Product and any Product incorporating the same.

12. Marketing reports, marketing analyses, consumer tests, studies and/or surveys concerning each of Defendant's products and services.

13. The market for web sites offering physician or health care provider information, including the competition between Plaintiff, Defendant and/or other companies, and any market studies, forecasts, or projections conducted by or on the behalf of Defendant.

14. Defendant's patents or patent applications related to any of its products and services.

15.   Contracts, agreements, and/or licenses related to any of Defendant's products and services.

16.   Defendant's knowledge of the Patent-in-Suit.

17.   Defendant's licensing policies and practices.

18.   Any infringement, validity and/or enforceability studies or analyses concerning the Patent-in-Suit, including but not limited to all reports, opinions, communications, commentaries, inquiries, searches and investigations.

19.   Defendant's allegation that the Patent-in-Suit is invalid, including the complete factual bases for such allegation.

20.   Defendant's allegation that they have not infringed and are not infringing, either directly or indirectly, the claims of the Patent-in-Suit, including the complete factual bases for such allegation on a claim-by-claim basis.

21.   The differences between Defendant's products and services and the claims of the Patent-in-Suit.

22.   Any consideration, plan, or attempt by Defendant to design or alter its website and any of its products and services, and any method of use its website, products and services, to avoid infringement or potential infringement of the Patent-in-Suit, including but not limited to the specific change(s) made by Defendant in either December 2010 or January 2012 to avoid infringing the '060 patent.

23.   Defendant's formal and informal document retention policies, including policies on the filing, storage, retrieval, retention, location, and destruction of documents, including email and voicemail.

24.   Defendant's search for, collection, and production of documents requested by Plaintiff in this litigation.

25.   Written and oral communications with anyone, including both internal communications and third-party communications, relating to Plaintiff, this lawsuit, or the '060 patent.

26.   With respect to the products and services offered by Defendant:

      a.   the dates when Defendant began to develop, use, offer, market and sell such products and services.

      b.   how such products and services were developed and tested.

      c.   how such products and services are offered, structured and operated.

      d.   how such products and services are sold and made accessible to the public.

- 2 -

    e.     how all data used by Defendant for such products and services is accessed and compiled.

    f.     the names of all individuals involved in the development, testing, use, sales and operation of the products and/or services.

27.    The market demand for Defendant's products and services and competition in the market for Defendant's products and services, including but not limited to documents relating to market and competitive analyses produced by Defendant in this case.

28.    Plans by Defendant to grow or increase its business, including the nature, timing and implementation of such plans, and the individuals involved in developing and implementing the plans.

29.    Defendant's growth channels, including but not limited to:

    a.     Expansion of its provider network.

    b.     On-line appointments.

    c.     Building its provider sales force.

    d.     Audience expansion – physician portal and user contact database(s).

    e.     timing and implementation of the foregoing and all individuals involved.

30.    The history, development, testing, implementation and all changes made to the Vitals.com website, including but not limited to:

    a.     The nature, structure and operation of the website from its inception until December 31, 2010.

    b.     The individuals involved with assembling, coding, and developing the website and all of its individual features, from its inception through December 31, 2010.

    c.     The nature, structure and operation of the website from January 1, 2011, to the present time.

    d.     The individuals involved with assembling, coding, and developing the website and all of its individual features, from January 1, 2011.

31.    All revenues realized by Defendant since it launched its website, on a monthly basis, including but not limited to:

    a.     sources of revenue (i.e., from advertising, hospitals, physicians, referrals, etc.).

    b.     key drivers for revenue growth.

c.      advertising sales and components of advertising sales.

d.      all documents produced by Defendant in this litigation relating to financial information, revenues, costs and expenses, and the reasons any such documents have been altered or redacted prior to production.

32.     The nature, type and amounts of all costs and expenses incurred by Defendant on a monthly basis since it launched its website.

33.     Defendant's policies regarding the intellectual property rights of others.

34.     The nature and type of any intellectual property licenses that Defendant has, or is considering obtaining;