# EXHIBIT 7

**Vazquez, Jesus**

| | |
|---|---|
| **From:** | Vazquez, Jesus |
| **Sent:** | Thursday, February 09, 2012 5:32 PM |
| **To:** | 'Scott D. Stimpson' |
| **Cc:** | Scott Murray; David C. Lee |
| **Subject:** | Amended Rule 30(b)(6) Deposition Topics; Dates for depositions of J. Neal, A. Dodge and B. Blackman |
| **Attachments:** | Amended MDx Rule 30(b)(6) Deposition Topics.PDF |

Scott,

Attached please find our amended Rule 30(b)(6) deposition topics. As you know you have objected that some of the topics in our original topic list were broad, burdensome and irrelevant. While we disagree with you, we have undertaken to amend and focus some of the topics to the specific features of the vitals.com website we are most interested in. These "features" are listed in amended topic no. 3 and referenced in amended topic nos. 4, 5, 6, 7, 8, 12, 26, and 30. We have also removed topic nos. 4 and 7 from the original topic list. Additionally:

Topic no. 9 (topic no. 11 in the original topic list) was already focused on the Accused Products (as defined in our discovery requests). We think it is focused enough. This topic/category seems perfectly clear to us – what do you not understand?

Topic No. 13 (topic no. 14 in the original topic list) is limited and focused on MDx's patent applications, of which we think there are only a few. Therefore, this is not overly broad. Moreover, we believe you have produced information regarding these patent applications. We believe this is relevant information to damages, among other issues. We thus decline to withdraw or amend this topic.

Topic No. 14 (topic nos. 15 and 34 in the original topic list) – we amended this to focus on agreements that are relevant to the Georgia-Pacific factors for damages.

Topic No. 23 (topic no. 25 in the original topic list) is narrow, focused and clearly relevant to this lawsuit – it asks for communications relating to Health Grades, the patents-in-suit, and this lawsuit. We decline to withdraw or amend this topic.

Topic Nos. 24-25 (topic nos. 28 and 29 in the original topic list) are focused and relevant to this lawsuit, including to issues of infringement, intent, and damages. We decline to withdraw or amend these topics.

Topic Nos. 27 and 28 (topic nos. 31 and 32 in the original topic list) are relevant to damages and secondary considerations of non-obviousness – we need to understand how and why MDx makes its money and profits from the vitals.com website – we are entitled to explore this through a deposition.

We added topic no. 30 to make sure we have discovered all potential accused products, but have limited this topic to general information about the products or services.

You have additionally objected that the topics listed below call for expert testimony or privileged information:

Topic No. 2: The pre-filing investigation(s) of, preparation of, and basis for the allegations in Defendant's counterclaims, responses and affirmative defenses to Plaintiff's Complaint,

including the events that led to such pre-filing investigation(s) and the person(s) involved in the decision(s) to make such allegations.

Topic No. 16 (topic no. 18 in the original topic list): Any infringement, validity and/or enforceability studies or analyses concerning the Patent-in-Suit, including but not limited to all reports, opinions, communications, commentaries, inquiries, searches and investigations.

Topic No. 17 (topic no. 19 in the original topic list): Defendant's allegation that the Patent-in-Suit is invalid, including the complete factual bases for such allegation.

Topic No. 18 (topic no. 20 in the original topic list): Defendant's allegation that they have not infringed and are not infringing, either directly or indirectly, the claims of the Patent-in-Suit, including the complete factual bases for such allegation on a claim-by-claim basis.

Topic No. 19 (topic no. 21 in the original topic list):  The differences between Defendant's products and services and the claims of the Patent-in- Suit.

We are not seeking privileged or work-product information.  To the extent necessary, you have the ability to instruct the designee not to answer based on privilege or work product.  This is not a basis to object to the topic.  We are entitled to explore whether there is any non-privileged information regarding these relevant categories of information.

Regarding your objection based on expert testimony -- do you intend to put any lay witnesses on the stand who have factual knowledge or lay opinions about these topics?  If so, you need to designate those witnesses now.  We note the irony in this objection - when we have objected that some of the damages issues call for expert testimony you have responded that the objection lacks merit.

On a related note, did MDx obtain any opinions of counsel regarding the '060 patent?  Does MDx intend to rely on an opinion of counsel at trial?  If the answers are yes, you need to designate the person at the company who relied on this opinion of counsel.  You also need to produce those opinions and all communications and related documentation relating to those opinions ASAP.

We hope you will agree to designate witnesses to testify regarding the attached amended topics and to schedule the depositions.  Please let us know and also let us know the dates you propose, and which topics each designee will testify about.  If you still refuse and intend to file a motion for protective order, please let us know so that we can start preparing to litigate the issue.  Of course, we reserve the right to seek additional time for these depositions beyond the current March 16 cut-off if they are delayed while the issue is litigated.

With respect to dates for the depositions of Allen Dodge, John Neal and Brian Blackman which you have requested, they are available as follows:

Allen Dodge - 2/29
John Neal - 3/1
Brian Blackman - 3/2

Alternatively,

Allen Dodge - 3/6
John Neal - 3/7
Brian Blackman - 3/9

For the topics listed within the MDx Exhibit A Deposition Topics Nos. 1 - 12, Allen Dodge will testify re topic nos. 1, 4 - 12, and John Neal will testify re topic nos. 2 and 3.

For the topics listed within the MDx Exhibit A Deposition Topics Nos. 1 - 3, John Neal will testify re topic numbers 2

3/13/2012

and 3, and also re the products listed in the parenthetical in topic no. 1. Allen Dodge will testify re all other products in topic no. 1.

We'll look forward to hearing from you.

Thanks, Jesus

**Jesús M. Vázquez, Attorney-at-Law**
Rothgerber Johnson & Lyons LLP | One Tabor Center, Suite 3000 |
1200 Seventeenth Street | Denver, CO  80202 |
Direct 303.628.9517 | Main 303.623.9000 | Fax 303.623.9222
E-mail: jvazquez@rothgerber.com | Website: www.rothgerber.com

3/13/2012

## Exhibit A

## Amended MDx Rule 30(b)(6) Deposition Topics

1. The history and corporate structures of MDX Medical, Inc. d/b/a/ Vitals.com, including all parents, divisions, subsidiaries, partners, and affiliated companies.

2. The pre-filing investigation(s) of, preparation of, and basis for the allegations in Defendant's counterclaims, responses and affirmative defenses to Plaintiff's Complaint, including the events that led to such pre-filing investigation(s) and the person(s) involved in the decision(s) to make such allegations.

3. The conception, design, design history, development, structure, properties, function, operation, and testing of the vitals.com website including specifically, but without limitation, the following features (hereinafter referred to as "Features"):

    - physician profiles provided by the vitals.com website, including information used to drive physician profiles, identity of all sources of each piece of information included in profiles, how MDx obtains information from each of these sources, how MDx makes determinations of what information to display or not display in profiles, processes for creating profiles, all empirical algorithms used to process information from these sources, processes for determining/calculating patient ratings that are displayed in profiles, processes for determining which physicians receive the patient choice award, processes for determining "match score", the processes for determining relevance of physicians that match search queries, and hyperlinks to hospitals;

    - the database(s) of physicians accessed by the vitals.com website including the identify of all possible fields in the databases, the identity of all sources of each piece of information (e.g. fields) included in databases, all empirical algorithms used to process information in databases, creation and maintenance of the databases, procedures for collecting, gathering, compiling, and putting together information in the databases, procedures for verifying information in the database, and sources for the following types of information: medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, hobbies, board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, medical fellowship information, and ratings;

    - search functions associated with the vitals.com website (e.g. type of searching available, sorting or ranking of search results by relevance, match score, or any other criteria, and results lists of searches for physicians);

    - ratings of physicians within the vitals.com website, including sources of rating information, processes for compiling ratings from sources, process for calculating or determining ratings, patient's choice award and how it works, overall patient rating, match score;

2003548233_1

- "360° Vitals View";
- advertisements on vitals.com website; and
- services and/or features that MDx offers to physicians in connection with the vitals.com website (including how physicians are allowed to manage and edit their profiles, log-in credentials for physicians, "click-throughs" to physician websites, appointment requests, prominent displays on list of matches, and optimization of search results).
- the dates when Defendant began to develop, use, offer, market and sell such Features (listed above).
- the names of all individuals involved in the development, testing, use, sales and operation of the Features (listed above).

4. Defendant's reasons for selecting and developing the Features (listed above).

5. The assembly, compilation, and/or presentation of the Features (listed above) in a product and/or service offered in the vitals.com website.

6. Marketing and advertising of each of Features (listed above) of Defendant's products and services.

7. The sales of each of the Features (listed above) in Defendant's products and services.

8. The revenues, costs, and profits attributable to or associated with each of the Features (listed above) in Defendant's products and services.

9. Business plans, market plans, sales or marketing forecasts, budgets, or projections for each Accused Product and any Product incorporating the same. ("Accused Products" for purposes of these discovery requests shall mean all versions of the www.vitals.com website, including any software, hardware and/or network architecture related to any version of www.vitals.com. The term "Accused Products" shall include all services provided in relation to the Accused Products and all products and services that incorporate the Accused Products.)

10. Marketing reports, marketing analyses, consumer tests, studies and/or surveys concerning the vitals.com website.

11. The market for web sites offering physician or health care provider information, including the competition between Plaintiff, Defendant and/or other companies, and any market studies, forecasts, or projections conducted by or on the behalf of Defendant.

12. The market demand for the Features (listed above) and competition in the market for these Features, including but not limited to documents relating to market and competitive analyses produced by Defendant in this case.

13. Defendant's patents or patent applications related to any of its products and services.

14. Defendant's licensing policies and practices, licenses and/or assignments related to any of Defendant's products and services, and the nature and type of any intellectual property licenses that Defendant has, or is considering obtaining.

15. Defendant's knowledge of the Patent-in-Suit.

16. Any infringement, validity and/or enforceability studies or analyses concerning the Patent-in-Suit, including but not limited to all reports, opinions, communications, commentaries, inquiries, searches and investigations.

17. Defendant's allegation that the Patent-in-Suit is invalid, including the complete factual bases for such allegation.

18. Defendant's allegation that they have not infringed and are not infringing, either directly or indirectly, the claims of the Patent-in-Suit, including the complete factual bases for such allegation on a claim-by-claim basis.

19. The differences between Defendant's products and services and the claims of the Patent-in-Suit.

20. Any consideration, plan, or attempt by Defendant to design or alter its website and any of its products and services, and any method of use its website, products and services, to avoid infringement or potential infringement of the Patent-in-Suit, including but not limited to the specific change(s) made by Defendant in either December 2010 or January 2011 to avoid infringing the '060 patent.

21. Defendant's formal and informal document retention policies, including policies on the filing, storage, retrieval, retention, location, and destruction of documents, including email and voicemail.

22. Defendant's search for, collection, and production of documents requested by Plaintiff in this litigation.

23. Written and oral communications with anyone, including both internal communications and third-party communications, relating to Plaintiff, this lawsuit, or the '060 patent.

24. Plans by Defendant to grow or increase its business, including the nature, timing and implementation of such plans, and the individuals involved in developing and implementing the plans.

25. Defendant's growth channels, including but not limited to:

    a. Expansion of its provider network.

    b. On-line appointments.

    c.    Building its provider sales force.

    d.    Audience expansion – physician portal and user contact database(s).

    e.    timing and implementation of the foregoing and identification of all individuals involved.

26.    The history, development, testing, implementation and all changes made to the Vitals.com website, including but not limited to:

    a.    The nature, structure and operation of the Features (listed above) of the website from its inception until December 31, 2010.

    b.    The individuals involved with assembling, coding, and developing the website and all Features (listed above), from its inception through December 31, 2010.

    c.    The nature, structure and operation of the Features (listed above) of the website from January 1, 2011, to the present time.

    d.    The individuals involved with assembling, coding, and developing the website and the Features (listed above), from January 1, 2011.

    e.    A general description of any other changes made to the vitals.com website since its inception.

27.    A general description of the sources of Defendant's revenues including all the ways it makes money from the vitals.com website, and all revenues realized by Defendant since it launched its website, on a monthly basis, including but not limited to:

    a.    sources of revenue (i.e., from advertising, licensing, hospitals, physicians, referrals, etc.).

    b.    key drivers for revenue growth.

    c.    advertising sales and components of advertising sales.

    d.    all documents produced by Defendant in this litigation relating to financial information, revenues, costs and expenses, and the reasons any such documents have been altered or redacted prior to production.

28.    The nature, type and amounts of all costs and expenses incurred by Defendant on a monthly basis since it launched its website.

29.    Defendant's policies regarding the intellectual property rights of others.

30.    To the extent not covered by the Features (listed above), a general description of each and every product or service for connecting potential patients to doctors that is provided by MDx.