**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION
FOR RECONSIDERATION OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF
NON-INFRINGEMENT**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx") submits its Reply to Plaintiff's Response in Opposition to MDx Medical, Inc.'s Motion for Reconsideration of its Motion for Partial Summary Judgment of Non-Infringement (dkt. # 156) (the "Opposition").[1]

---

[1] MDx does not believe that this motion required briefing by the parties. The motion before this Court is one for ***reconsideration*** – the underlying motion for summary judgment is fully briefed and the Court previously determined that it was premature prior to claim construction. Now that the Court's claim construction has been issued, MDx respectfully submits that there is no reason justifying additional argument on that underlying motion, particularly given that the Court's constructions on the claim terms at issue were substantively the same as those used by MDx in its original motion. Yet Health Grades bombards this Court with ***a second opposition*** to the motion for summary judgment (this one, 30 pages) – raising new arguments that it never raised in its first opposition, and many arguments that it failed to timely raise in its infringement contentions. This is not a proper response to a motion for reconsideration. *Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 2004 U.S. Dist. LEXIS 17093, *4 (S.D.N.Y. August 27, 2004) (reconsideration motion does not give the parties a "do over" on the underlying motion); *Forsyth v. Fed'n Empl. & Guidance Serv.* No. 97 Civ. 3399, 2003 U.S. Dist. LEXIS 3314, at *1-2 (S.D.N.Y. Mar. 6, 2003) ("The purpose of a motion to reconsider is [not] to start a new round of arguments. . ."). MDx replies herein, in an abundance of caution, to preserve its rights, but submits that the Court need not consider either Health Grades' response or this reply, and should consider the summary judgment motion on its underlying papers.

Health Grades creates new and varying arguments about how MDx might meet the claim language requiring comparison ratings to be included in the report on the first healthcare provider. But all the Health Grades arguments suffer from the same fatal flaw: *Health Grades is forced to go outside the report on the first healthcare provider to find anything that could possibly be comparison ratings of healthcare providers.*

Because all the claims unequivocally require that the requested report on the first healthcare provider "*include*" the comparison ratings, the Health Grades arguments must fail. The doctrine of equivalents provides no comfort to Health Grades, for at least these reasons:

(1) Such an equivalents analysis would vitiate the claim language in its entirety (comparison ratings required to be "*included*" in the report cannot encompass its antithesis – comparison ratings *excluded* from the report);

(2) Health Grades added these limitations during prosecution in order to obtain allowance of the claims, and is precluded by prosecution history estoppel from arguing such an equivalents position; and

(3) Health Grades has failed to make the showing of equivalents that is required in opposition to a summary judgment motion.

I.  **REPLY CONCERNING UNDISPUTED FACTS**

At pages 3-4 of its Opposition, Health Grades addresses the same undisputed facts addressed in the underlying motion for summary judgment. These were addressed in the MDx Reply Memorandum (Dkt. # 30).

2

**II.     REPLY CONCERNING NEW "DISPUTED" FACTS**

At pages 4-7 of its Opposition, Health Grades improperly tries to interject newly alleged disputed facts. Health Grades should be precluded from here raising additional alleged disputed facts. Health Grades has fully responded to this motion once already, and had every opportunity to raise these alleged facts there. It should not be allowed to do so in response to a motion for reconsideration. *See* note 1, *supra*. Moreover, most of the new alleged factual disputes are not *factual* disputes at all – they are all questions of law, and most have all already been decided by the Court's claim construction. To the extent responses are required, MDx responds as follows to the new facts on pages 4-7 of the Health Grades opposition:

(1) MDx does not dispute that its website creates the screenshots shown (albeit without the parts added by counsel for Health Grades, see footnote 4, *infra*), but the alleged comparison ratings of healthcare providers is not in a report on the first healthcare provider, as the Court's claim construction requires.

(2) See response to alleged undisputed fact (1).

(3) This alleged disputed fact is unintelligible. To the extent this can be understood, please see response to alleged disputed fact (1).

(4) There can be no *material* dispute on the equivalents issue, because none of the function of having these comparison ratings in the first healthcare provider report (allowing ease of comparisons to the other providers within the same report), the way (including all this information in the one report) or result (a single report with all this information) are in any way similar to the MDx website, and Health Grades has made no showing to the contrary. This alleged disputed fact is also not material because Health Grades is *legally precluded* from

3

asserting equivalents by prosecution history estoppel, and the all elements rule (cannot vitiate a claim term).

(5) See response to alleged disputed fact (4).

(6) See response to alleged disputed fact (4).

### III.   HEALTH GRADES' RESULTS LIST ARGUMENTS[2]

Every argument made by Health Grades has the same basic flaw: it finds alleged "comparison ratings" outside the report on the first healthcare provider, in the results lists. But the results lists are not part of the report on the first healthcare provider, and thus the requirement that the report on the first healthcare provider include comparison ratings of healthcare providers, is entirely lacking.[3]

#### A.   THE RESULTS LIST IS NOT THE CLAIMED REPORT

Health Grades points to a screenshot of a *results list* as allegedly being the "report on the first healthcare provider." Opp. at 1, 12-13. This is the bedrock of the Health Grades allegation – without it, Health Grades cannot even allege that the report on the first healthcare provider contains the comparison ratings.

Health Grades simply ignores this Court's claim interpretation Order, and pretends that this issue has not already been addressed. To the contrary, during the claim construction

---

[2] Many of these Health Grades arguments are not in the Health Grades infringement contentions. While MDx addresses them here, it does not waive objection to Health Grades belatedly including them in its infringement contentions.

[3] Health Grades also argues that the claimed reports can be more than one page, and thus the results lists are just the front page of the report on the "first healthcare provider." This is just a different gloss on the same argument, and fails for all the same reasons. That is, the results lists are not part of the report on the first healthcare provided, as this Court already properly construed that claim term.

4

proceedings, Health Grades desperately tried for a construction that would support this misguided theory, and it lost. Undeterred, Health Grades here presents an argument that is entirely inconsistent with the Court's claim construction. But the Court's views on this topic were very clear:

> **Plaintiff argues** that the "healthcare provider report on the first healthcare provider" refers to "a formatted and organized presentation of information that **relates to one or more healthcare providers** identified in response to a query for information regarding healthcare provider(s)." Docket No. 79 at 12. The phrase "healthcare provider report on the first healthcare provider" is used in Claim 1, Claim 12, and Claim 15. **Defendant** does not take issue with the description of the report's structure but **contends that the report relates only to the particular "first healthcare provider" discussed above**. *See* Docket No. 93 at 11 (**proposing "a report directed specifically to the 'first healthcare provider'"**). For the reasons discussed earlier when construing "first healthcare provider," **the Court agrees with the defendant.** (emphasis added).

The results lists cited by Health Grades in no way "relate only" to the first healthcare provider, nor could they possibly be considered "directed specifically" to that provider. Indeed, the results lists cited by Health Grades give the same information for every provider identified – there is no way to distinguish one provider from any other in that list. The Health Grades infringement allegations turn the Court's claim construction order entirely on its head.

The results list cited by Health Grades is exactly that – a results list. This is claimed separately in claim 7. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different meanings. . . ."); *CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

### B.   THE REAL REPORT LACKS COMPARISON RATINGS

The only real "report on the first healthcare provider" that could satisfy this claim language under the Court's construction, is the report directed specifically to the first healthcare provider. Thus, contrary to the requirements of every claim of the patent, and consistent with this Court's claim interpretation Order, in the MDx website the "report on the first healthcare provider" ***does not include*** "comparison ratings of healthcare providers" -- there are no ratings of any other providers in any such report. Claim Construction, at 13 ("it appears clear that the report on the first healthcare provider ***includes*** ratings of that provider ***as well as others to permit comparison***…"; emphasis added).

Because the MDx website entirely lacks a report on the first healthcare provider that contains comparison ratings of healthcare providers, as those terms have been construed, there can be no literal infringement. *General Mills, Inc. v. Hunt Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997).[4]

---

[4] Health Grades "annotates" the screen printouts from the MDx website in numerous places, and Health Grades is not always clear with the Court about what is found in the MDx website, and what its counsel created on the printouts. At page 15 of its opposition, for example, Health Grades presents a misleading infringement argument. At the bottom part of that page, Health Grades pastes what it represents as a "screenshot" of a "healthcare provider report on Dr. Sujana Chandrasekhar." While the box around this doctor's name might make it inaccurately appear that this screenshot is focused on this doctor, that box was added by counsel for Health Grades, and the actual screenshot just has this doctor as one undifferentiated doctor in a long list of doctors satisfying the search criteria. *See* Stoll-DeBell Decl. ¶¶ 7-8. Health Grades fails to mention this in its Opposition. This results list was not a search for a "first healthcare provider" because it is not a search for a "particular provider," nor is the actual screenshot anything other than an ordinary results list.

6

### D.  NO EQUIVALENTS

Health Grades posits two (allegedly different) theories of infringement by equivalents:

(1) That the results list on multiple doctors (showing the patient ratings of each) is equivalent to a report on a specific doctor that contains comparison ratings.

(2) That the MDx website is capable of showing on a single page reports on more than one doctor, each with its own patient ratings, and this is allegedly equivalent to a report on just one of the doctors which includes ratings of the others.  But upon close inspection, this is no different from its first equivalents argument because what Health Grades refers to is actually a results list (pages 19, 24).

With both of these arguments, no matter how Health Grades tries to phrase them, Health Grades is claiming that parts of the MDx website ***other than the report on the first healthcare provider*** contain the comparison ratings.  That argument cannot succeed for numerous reasons.  At bottom, comparison ratings ***outside*** the report on the first healthcare provider cannot be equivalent to claims requiring those ratings ***inside*** that report.[5]

### 1.  VITIATING CLAIM TERMS

"[I]f a theory of equivalence would ***entirely vitiate a particular claim element***, partial or complete summary judgment should be rendered by the court, as there would be no further material issue for the jury to resolve."  *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997) (emphasis added).

---

[5] Another claim element missing under these particular Health Grades theories is the requirement that the report be generated from a request for information on the "first healthcare provider."  As the Court held, this is a particular provider but the requests that generate the results lists are general searches.

Every claim of this patent requires that the report on the first healthcare provider "***includes*** comparison ratings of healthcare providers."  Health Grades' infringement analysis ignores this requirement entirely, and argues that the comparison ratings ***excluded*** from (outside) the report meets this language equivalently.  This is a textbook example of what the Supreme Court meant when it said that claim terms cannot be vitiated under the doctrine of equivalents.  Equivalents cannot encompass the ***antithesis*** of the claim term.

Here, the element at issue is a location, and the claims identify a precise location where the comparison ratings must be found.  That is, the claims all unequivocally require that the comparison ratings be ***included within*** the report on the first healthcare provider.   The Federal Circuit has refused to allow application of the doctrine of equivalents in circumstances such as these, including where claimed locations are at issue.  *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1425-426 (Fed. Cir. 1997)(claim required slot location ***on top of*** container, and so slot location ***within*** container could not be equivalent – patent claimed a "precise arrangement of structural elements" and so even a "similar result" would not infringe if done with a different arrangement; "[t]he doctrine of equivalents does not grant Sage license to remove entirely the [claim limitation]"); *Asyst Techs. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005)(***unmounted*** cannot be equivalent to "***mounted***" claim requirement).  There are many Federal Circuit cases applying this concept, not only in the context of claimed locations.  *See Moore U.S.A. v. Std. Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) ("majority" cannot include 47.8% -- "it would defy logic" to hold that 47.8% could be equivalent); *see also Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 400 (1994)("In short, the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims"); *PSN*

8

*Illinois LLC v. Ivoclar Vivadent, Inc. et. al.,* 525 F.3d 1159, 1167-68 (Fed. Cir. 2008) (affirming summary judgment of no infringement where equivalents would vitiate claim term).

### 2. PROSECUTION HISTORY ESTOPPEL

Health Grades admits that "the 'comparison ratings' element and the requirement that the report be 'on the first healthcare provider' were added during prosecution. . . ." Opp. at 3. Thus, Health Grades admits that there is a presumption of prosecution history estoppel. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 739-741 (2002). Health Grades is absolutely right on this point: it did add these elements during prosecution, including the requirement that the comparison ratings be "included" in the first healthcare provider report. To overcome the *Festo* presumption, however, Health Grades argues that the amendment was only "tangential" to its present equivalents position. This argument fails for two reasons.

First, Health Grades waived this argument by failing to include it in its first opposition to the summary judgment motion. That is, MDx expressly raised this estoppel argument in its original filing. MDx Motion, Dkt. #9, pp.6, 10. But Health Grades never opposed that argument by raising the rare *Festo* exceptions. Instead, it argued there only that it was not "necessary" for it to have made the arguments and amendments it did during prosecution (Dkt. #23 Response to Undisputed Fact 4). That argument was entirely irrelevant, because Health Grades did in fact make those arguments and amendments. *Festo,* 535 U.S. at 727 ("When the patentee responds to the rejection by narrowing his claims, this prosecution history estops him from later arguing that the subject matter covered by the original, broader claim was nothing more than an equivalent."); *Sage*, 126 F.3d at 1425 (summary judgment affirmed: no equivalents "even though the patentee might have been able to claim more broadly"). In any event, because Health Grades never raised

this argument about relevance of the amendment to the accused equivalents, it cannot do so now, in response to a motion for reconsideration. *Metro Opera Ass'n*, 2004 U.S. Dist. LEXIS 17093, *4 (2004) (reconsideration motion does not give the parties a "do over" on the underlying motion); *Forsyth*, 2003 U.S. Dist. LEXIS 3314, at *1-2 ("The purpose of a motion to reconsider is [not] to start a new round of arguments. . . .").

Second, even if the argument was not waived, Health Grades' is way off base on its analysis of this exception to the *Festo* presumption. Under *Festo* and its progeny, if a claim element was added during prosecution of the patent for reasons related to patentability, the patent owner is presumed to be barred from employing the doctrine of equivalents to cover territory between the original and amended claim. *Festo*, 535 U.S. at 737-38. Here, then, Health Grades is presumed to have given up coverage between the original claims (requiring only that the entire system allow the user to compare providers) and the patented claims (requiring that the ratings for comparison be included in the report on the first healthcare provider).

The exception Health Grades tries to apply, where the reason for the amendment is "tangential" to the alleged equivalent, is not even remotely applicable. The Federal Circuit has made very clear that this is a rare and "very narrow" exception to the *Festo* presumption:

> The tangential relation criterion for overcoming the *Festo* presumption is very narrow. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 480 F.3d 1335, 1342 (Fed. Cir. 2007). As this court provided in its Festo IX opinion on remand from the Supreme Court, the tangential relation criterion focuses on the "patentee's objectively apparent reason for the narrowing amendment." 344 F.3d at 1369. To rebut the estoppel presumption with tangentiality, a patentee must "demonstrate that the rationale underlying the amendment bore no more than a tangential relation to the equivalent in question," or, in other words, that "the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent." *Id.* (citation omitted). Additionally, the reason for the narrowing amendment "should be discernible from the prosecution history record . . . ." *Id.* If the prosecution history reveals no reason for the narrowing amendment, the

>presumption is not rebutted. *See id.* at 1371-72 (the patentee did not rebut because the prosecution history revealed no reason for the amendment). Silence does not overcome the presumption.

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1315-1316 (Fed. Cir. 2008).

Here, Health Grades devotes pages of its brief trying to explain the prosecution history, and why the Court should interpret the history in its favor. Opp. at 25-27. But the prosecution history is no help to Health Grades, and in fact it is clear that this "very narrow" exception cannot apply here because the reasons for this amendment related directly to the equivalents issue here. Specifically, the amendments distinguished over prior art that would allow a user to view multiple different locations and thus compare providers. The primary Henley reference, for example, discloses making patient feedback on a specific provider available to those requesting information. Paragraph 16 of Henley, for example, addresses "acquiring and maintaining comments and feedback from . . . patients/clients." Dkt. #30-2, ¶ 16; *see also id.,* ¶¶ 30, 37, 107, 114, 128, 137 (identifying disclosure of feedback on medical providers); FIG. 18 (showing how clients rate providers).[6] Thus, just like the MDx accused system, the user of Henley could navigate around and see different ratings of different providers for comparison purposes.

But Health Grades made very clear during prosecution that this was not enough to satisfy its amended patent claims. It changed the claims, unequivocally requiring that the comparison ratings be ***included*** in the report on a first healthcare provider. Dkt. #9-3 (adding the following: "***the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers***").[7] Health Grades relied on this very feature to distinguish the prior art.

---

[6] A copy is attached hereto, as a courtesy, as Exhibit A.
[7] A copy is attached hereto, as a courtesy, as Exhibit B (Amendment and Response to Non-Final Office Action Mailed November 13, 2009).

11

*Id.* at 11 ("Henley fails to teach or suggest, for example, '. . . wherein **<u>the healthcare provider report includes comparison ratings of healthcare providers</u>** . . . .'"). Health Grades thus emphasized this distinction and argued that such a report with comparison ratings was nowhere shown in Henley.[8]

The critical feature of having the ability to compare in the report itself is further evidenced by some of the claim language that was replaced. Specifically, claim 19 had this language before the amendment:

> a computing system with access to healthcare provider information stored in a database, wherein patients may search the database and review healthcare provider reports to differentiate among healthcare providers. 2/16/10 Amendment, page 5.

This language, which was removed and replaced with the requirement that comparison ratings be included within the first healthcare provider report, is what Health Grades is trying to cover now – an overall computer system where the user searches the database generally and compares what is found to help differentiate providers. The accused system does allow a general search, and that search might include various providers, but unlike the claim language that was added by Health Grades to avoid the prior art, the user of the MDx system (like the user in the prior art Henley reference) is unable to view comparison ratings in a report on a specific provider.

---

[8] Even if the equivalent at issue here was not in the Henley prior art, that would still not result in application of the "tangential" exception. *Chimie v. PPG Indus.*, 402 F.3d 1371, 1383 (Fed. Cir. 2005)("it does not follow . . . that equivalents not within the prior art must be tangential to the amendment"); *see also Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 480 F.3d 1335, 1342 (Fed. Cir. 2007) (summary judgment of no infringement, affirming the "tangential relation" criteria is "very narrow").

12

### 3. **NO SUBSTANTIAL SIMILARITY**

Even absent these other reasons why, legally, there can be no equivalents, Health Grades has failed to establish equivalents.

In response to MDx's motion, it was the burden of Health Grades to come forward with ***evidence*** to support its position of any alleged equivalence, but it provided absolutely no evidence – only attorney argument. *Applied Materials v. Advanced Semiconductor Materials Am.*, 1994 U.S. Dist. LEXIS 7810, *67 (N.D. Cal. Apr. 26, 1994)("[Patentee] has the burden of proof by a preponderance of the evidence of the issue of infringement under the doctrine of equivalents.")(*citing Under Sea Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551 (Fed. Cir. 1987)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred").

Requiring the user jump from place to place to view the claimed provider information and compare ratings of various providers is not even remotely similar to having all the other claimed information and comparison ratings in the one report on the first healthcare provider. None of the function of having these comparison ratings in the first healthcare provider report (allowing ease of comparisons to the other providers within the same report), the way (including all this information in the one report) or result (a single report with all this information) is in any way similar to the MDx website. Indeed, when in the real report on a particular provider, the user would either need to remember all the ratings of all other providers that met the search criteria, or would need to leave the report to try to find that information again. Creating a report

13

with all this information (including comparison ratings) in one place makes the system more efficient.  This advantage was even relied upon by the examiner during prosecution.  *See* Exhibit B attached hereto (Dkt #9-3, November 13, 2009 Office Action, page 6) (combining into a report "improve[s] the efficiency of the system").  *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) (equivalence can be determined if the accused product "performs substantially the same function in substantially the same way to obtain the same result").

Health Grades' function/way/result analyses, found at pages 20-21 and 25, are entirely conclusory, stating only the alleged function, then way, then result, and then identifying what is alleged to be equivalent, and then stating something to the effect that "this is substantially the same."  These are simply allegations – not a shred of evidence or even arguments about ***why*** they are allegedly "substantially the same' is provided, and therefore Health Grades has failed to meet its burden on this issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-252 (1986) (allegations are not specific facts required by Fed. R. Civ. P. 56(e) and will not defeat properly made summary judgment motion).

## IV.    CONCLUSION

For all the foregoing reasons, MDx respectfully requests entry of partial summary judgment of non-infringement, for a declaration that the current MDx Website does not infringe the '060 Patent.

Dated:  March 26, 2012                                      Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee

14

>Sills Cummis & Gross P.C.
>Thirty Rockefeller Plaza
>New York, New York 10112
>Tel: (212) 643-7000
>Fax: (212) 643-6500
>E-mail: sstimpson@sillscummis.com
>E-mail: smurray@sillscummis.com
>E-mail: dlee@sillscummis.com
>
>and
>
>Terence Ridley, Atty. No. 15212
>Ramona Lampley, Atty. No. 37288
>Wheeler Trigg O'Donnell LLP
>1801 California Street, Suite 3600
>Denver, Colorado 80202
>Tel:  (303) 244-1800
>Fax:   (303) 244-1879
>E-mail: ridley@wtotrial.com
>E-mail: lampley@wtotrial.com
>
>*Attorneys for Defendant*
>MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C. 1746 that on <u>March 26, 2012</u>, I electronically filed the foregoing MDX MEDICAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez , Jr.**
  jvazquez@rothgerber.com, phenke@rothgerber.com

- **Kris John Kostolansky**
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- **Jeffrey David Phipps**
  jphipps@rothgerber.com, kmeans@rothgerber.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Scott B. Murray**
  smurray@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

- **Ramona L. Lampley**
  lampley@wtotrial.com, keitlen@wtotrial.com

Bonnie S. Schwab