Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

---

DEPOSITION OF DAVID HICKS          January 11, 2012

---

HEALTHGRADES, INC.,

    Plaintiff,

vs.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

*Condensed Copy*

---

APPEARANCES
    ROTHGERBER JOHNSON & LYONS, LLC
        By Jesús M. Vázquez, Jr., Esq.
           Kris J. Kostolansky, Esq.
           1200 17th Street, Suite 3000
           Denver, Colorado   80202
           (303) 623-9000

    MERCHANT & GOULD
        By Kirstin L. Stoll-DeBell, Esq.
           1050 Seventeenth Street, Suite 1950
           Denver, Colorado   80265-0100
           (303) 357-1670

              Appearing on behalf of Plaintiff

    SILLS CUMMIS & GROSS, PC
        By Scott David Stimpson, Esq.
           David C. Lee, Esq.
           30 Rockefeller Plaza, 25th Floor
           New York, New York   10112
           (212) 643-1546
              Appearing on behalf of Defendant

Job No. NJ371356

EXHIBIT 11

Veritext/NJ Reporting Company

800-227-8440                                     973-410-4040

**Page 58**

1  A. That was the determination of what other data
2  sources are available, either public or private, that we
3  could obtain key pieces of information that we felt like
4  the patient would like to see.
5  Q. And how did you distinguish between what would
6  be verified by a third party and what would be verified
7  by the healthcare provider?
8  A. We believe the third-party-provided information
9  provided us with much more data on -- it was kind of a
10 speed to market; so how fast can we obtain a broader,
11 more expanded universe of data.
12 Q. Anything else?
13 A. I think that -- yeah. There may be other
14 components of that, but I don't -- that was the basis of
15 it.
16 Q. Was there also sort of a common sense approach
17 that some types of data you don't want to rely on the
18 healthcare provider itself, like, for example,
19 disciplinary action?
20 A. We looked at each one of those data elements,
21 and we were making those determinations too.
22 Q. Were you involved in the decision to bring this
23 litigation?
24 A. I really don't remember.
25 Q. You don't remember whether you were involved at

**Page 59**

1  all in the decision to sue Vitals on your patent?
2  MR. VÁZQUEZ: Form.
3  A. I really wasn't. I mean --
4  Q. (By Mr. Stimpson) You weren't --
5  A. -- I really don't remember.
6  Q. Do you know if anybody from HealthGrades looked
7  at the Vitals Web site in, say, two months prior to
8  bringing litigation?
9  A. I don't know.
10 Q. But to your knowledge you don't know of anybody
11 who actually looked at the Vitals Web site within a
12 couple months of bringing litigation, right?
13 A. Yeah. I'm not sure.
14 Q. Okay. Let's put the patent aside for just a
15 second, okay? I'm going to put back in front of you
16 Defendant's Deposition Exhibit 4, the prosecution
17 history.
18      Did you get copies of the correspondence back
19 and forth with the patent and trademark office when this
20 application was pending?
21 A. I don't remember.
22 Q. Were you involved in the prosecution at all;
23 that is, determining how the claim should be changed or
24 how to argue over prior art?
25 MR. VÁZQUEZ: Form.

**Page 60**

1  A. I really don't remember.
2  Q. (By Mr. Stimpson) Do you know of anybody who
3  was involved with the patent prosecution?
4  A. Not really. I don't know who would have been
5  doing that.
6  Q. Do you remember any meetings, with regard to
7  the pending application, what was happening during the
8  patent prosecution?
9  A. No, I don't recall.
10     (Exhibit 5 was marked.)
11 Q. (By Mr. Stimpson) Let me show you what's been
12 marked as Defendant's Deposition Exhibit 5, Mr. Hicks.
13 Take a minute to flip through that, and I'll ask you a
14 couple of questions about it.
15     If it helps, Mr. Hicks, too, it might help your
16 review, I'll represent to you that that is the
17 provisional application, which is the first application
18 that was filed on the '060 patent. It's referenced
19 right there. That's so just so you have some context.
20 But take a look.
21 A. (Deponent complied.)
22 MR. VÁZQUEZ: Do you want him to read it,
23 Counselor, or just sort of flip --
24 MR. STIMPSON: No, no, just flip through it. I
25 mean --

**Page 61**

1  MR. VÁZQUEZ: If you're asking him a specific
2  question, just give him a chance to read it.
3  MR. STIMPSON: Yeah.
4  Q. (By Mr. Stimpson) My first question is, do you
5  recognize this as your provisional application that was
6  filed in February of '06?
7  A. I'm sorry. I don't remember.
8  Q. This was a -- there was a second application
9  that was filed, a thicker application, which is in the
10 prosecution history here in Exhibit 4. That was filed
11 in August of 2006. Do you have any recollection as to
12 the -- what was added from the provisional application
13 to the regular application of August of 2006?
14 MR. VÁZQUEZ: Form.
15 A. I don't have any recollection. Yeah.
16 Q. (By Mr. Stimpson) I'm sorry. You can put that
17 away then. That's all.
18     (Exhibit 6 was marked.)
19 Q. (By Mr. Stimpson) Let me show you what's been
20 marked as Defendant's Deposition Exhibit 6. And I'll
21 represent to you, sir, this is a copy out of a prior art
22 reference that was cited during the prosecution of your
23 patent application. Have you ever seen this before?
24 A. I really don't remember.
25 Q. As you're a named inventor on the patent, I'm

**Page 70**

1  the declaration, you understood, sir, that you had a
2  duty of candor and good faith in dealing with the patent
3  office, including a duty to disclose to the patent
4  office all information known to you to be material to
5  patentability, correct?
6      MR. VÁZQUEZ: Form.
7  A. I believe so.
8  Q. (By Mr. Stimpson) And that duty to disclose
9  information exists with respect to each pending claim.
10 You understood that at the time, right?
11 A. I believe so.
12 Q. If you could look down to Section (b) where it
13 starts, "Under this section." Do you see that?
14 A. Yes.
15 Q. You understood, sir, in October of 2006 that
16 information is material to patentability when it's not
17 cumulative to information already of record or being
18 made of record in the application, and -- skipping down
19 to part two -- it refutes, or is inconsistent with, a
20 position the applicant takes during the prosecution,
21 right?
22     MR. VÁZQUEZ: Form.
23 A. I'm sorry. What was the question?
24     (Requested portion was read.)
25     MR. VÁZQUEZ: Same objection.

**Page 71**

1  A. So was the question did I understand that?
2  Q. (By Mr. Stimpson) At the time in October
3  of 2006.
4  A. At the time? I believe so.
5  Q. And you also understood, sir, that information
6  is material to patentability when it's not cumulative to
7  information already of record or being made of record in
8  the application, and -- in part one there -- it
9  establishes by itself or in combination with other
10 information a prima facie case of unpatentability of a
11 claim, correct?
12     MR. VÁZQUEZ: Form.
13 A. Yeah. I don't understand a lot of the legal
14 parts of that, but yes.
15 Q. (By Mr. Stimpson) You read it at the time?
16 A. I believe so.
17 Q. And you had the opportunity to speak with your
18 counsel if you had any questions about it, right?
19 A. I don't remember, but I believe so.
20 Q. Can you identify -- we'll put that away, okay?
21     Can you identify for me, please, competitors to
22 HealthGrades.com?
23 A. Yes. Yes.
24 Q. Could you please name them?
25 A. At what period of time?

**Page 72**

1  Q. Well, let's start with the issuance of this
2  patent, around July of 2010.
3  A. I believe one of them would be, I think, US
4  News & World Report.
5  Q. Any others?
6  A. I'm not -- I'm not sure what all the other
7  competitors would be.
8  Q. Can you name the ones that you remember,
9  please?
10 A. I know the US News & World Report was, but I'm
11 sure there's others.
12 Q. You can't name others as we sit here?
13 A. In 2006, I'm not sure.
14 Q. Not 2006.
15 A. Oh, I'm sorry.
16 Q. The issue date of July 6, 2010; so the
17 summer starting --
18 A. I'm sorry.
19 Q. The summer of 2010. So, first of all, would US
20 News & World Report be a competitor in 2010?
21 A. I don't know.
22 Q. Okay.
23 A. I'm not sure.
24 Q. Who would be a competitor in summer of 2010?
25 A. Vitals, WebMD, and I'm sure there's some other

**Page 73**

1  ones out there.
2  Q. Do you remember any others?
3  A. I'm sure there's other ones, but I don't know
4  what they are.
5  Q. Have you ever -- has HealthGrades to your
6  knowledge ever approached WebMD with respect to this
7  patent?
8  A. I'm not aware.
9  Q. Have you ever considered the fact -- let me
10 rephrase that.
11     Have you ever considered whether WebMD might be
12 infringing the patent?
13     MR. VÁZQUEZ: Form.
14 A. I don't know.
15 Q. (By Mr. Stimpson) To your knowledge has
16 HealthGrades ever approached any other company besides
17 Vitals with respect to this patent?
18 A. I don't know.
19 Q. Why did HealthGrades sue Vitals?
20 A. I'm not -- I'm not sure.
21 Q. Are you familiar with UCompareHealthCare?
22 A. Yes.
23 Q. Is that a competitor?
24 A. I'm not sure.
25 Q. How about Wellness.com?

19 (Pages 70 - 73)