**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO MDX**
**MEDICAL, INC.'S MOTION TO QUASH HEALTH GRADES' SUBPOENAS**
**TO NON-PARTY iTRIAGE, LLC AND iTRIAGE'S CEO PETER HUDSON**

---

Plaintiff Health Grades, Inc. ("Health Grades"), by its undersigned counsel, submits its

Response in Opposition to MDx' Medical, Inc.'s ("MDx") Motion to Quash Health Grades'

Subpoenas to Non-Party iTriage, LLC and iTriage's CEO Peter Hudson ("Motion") [Dkt. 179],

and states in support:

**I.     INTRODUCTION**

Health Grades accuses MDx of willfully infringing its U.S. Patent No. 7,752,060 (the

"'060 Patent").  Via both interrogatories and requests for production served on MDx in this case,

Health Grades has tried to obtain discovery from MDx regarding its licensing revenues, the

sources of its licensing revenues, its licensing agreements, and licenses of MDx's accused on-

line information system.  MDx has refused to provide this information.  Notwithstanding, Health

Grades just recently became aware that iTriage, LLC ("iTriage") has licensed MDx's physician

database - which is a core part of MDx's accused products.  Health Grades has served subpoenas

and notices of deposition on iTriage and its co-founder and CEO, Mr. Peter Hudson, in an effort to obtain information relating to iTriage's license to use MDx's physician database and iTriage's use of that information.  MDx seeks to quash Health Grades' subpoenas.

MDx's Motion should be denied because MDx does not have standing to quash a subpoena issued to a third party except for the purpose of protecting a privilege.  MDx's Motion does not assert that there is any privilege that needs to be protected.  Rather it argues the subpoenas are overly broad and unduly burdensome.  MDx's arguments lack merit, and, further, MDx does not have standing to even make these arguments.  As such, MDx's Motion should be denied.

II.   **ARGUMENT**

A.   **MDx Does Not Have Standing to Quash a Third Party Subpoena**

"Motions to quash a subpoena issued pursuant to Rule 45 of the Federal Rules of Civil Procedure may be asserted **only by the person subject to the subpoena**, unless a privilege in the matters to be disclosed is asserted by a third party."  *Cornered, Inc. v. Doe*, No. 10-1476 (JEB/JMF), 2012 U.S. Dist. LEXIS 9525 (D.D.C. Jan. 19, 2012) (emphasis added) (citing *Novak v. Capital Mgmt. & Development Corp.*, 241 F.R.D 389, 394 (D.D.C. 2007)); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003) ("Generally, only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena."); *Vera v. O'Keefe*, No. 10cv1422-L (MDD), 2012 U.S. Dist. LEXIS 35974, 2-4 (S.D. Cal. Mar. 16, 2012) ("Courts have consistently provided that, as a general rule, 'a party has no standing to quash a subpoena served upon a third party, except as to privilege.'"); *Lee v. Credit Mgmt., LP*, No. G-10-538, 2012 U.S. Dist. LEXIS 14850, 1-2 (S.D. Tex. Feb. 7, 2012) ("Absent

2

a claim of privilege relating to the information being sought through a subpoena, a party has no standing to move to quash a subpoena served upon a third party.").

MDx did not assert that its motion to quash was necessary to protect a privilege or personal right of MDx.  Instead, it argues the motion to quash should be granted to protect iTriage from undue burden and harassment.  It also argues that the subpoenas are an improper attempt to extend fact discovery and that they seek irrelevant information.  All of these arguments are without merit and none of them is sufficient to confer standing on MDx.  For this reason alone, this Court should deny MDx's motion.

**B.**     **MDx's Other Objections to the Subpoenas Lack Merit**

Even if MDx did have standing to quash the iTriage subpoenas, its motion to quash should be denied for the reasons explained below.

                1.     Factual Background Relating to iTriage

The '060 patent generally relates to an Internet-based information system that connects patients with potential healthcare providers.  (Order Regarding Claim Construction ("Markman Order") at 1 [Dkt. 183].)   "More particularly, the present invention relates to providing on-line ratings and reports comprised of detailed healthcare provider information with verified information sections, including physician verified and/or independent third-party verified portions, and patient-provided information sections, to assist patients in differentiating among healthcare providers."  (*See id.* at 1-2.)  The company providing the information service creates and maintains a database of detailed information relating to healthcare providers.  (*See id.* at 18.)  A patient may search for physicians using various search criteria, including for example, geographic area, physician specialty, and gender.  (*See id.* at 11.)

MDx owns and operates an on-line information system that connects patients with

doctors.  Patients may access and search MDx's database of physician information using MDx's

www.vitals.com website.  The physician database is crucial part of the accused www.vitals.com

website:

Plaintiff Health Grades' Rule 3.1(c) Disclosure – Exhibit A – '060 Patent v. MDx's Current Website

**EXHIBIT A - Claim Chart**
**U.S. Patent No. 7,752,060 To MDx's Current Website**

| U.S. Patent No. 7,752,060 | MDx's Current On-line Information System |
|---|---|
| 1.  A computer-implemented method of providing healthcare provider information to potential patients, said method comprising: | MDx Medical, Inc. ("MDx") directly infringes this claim by practicing a computer-implemented method of providing healthcare provider information to potential patients via its on-line information system, which includes its website (www.vitals.com), its healthcare provider database, and the software and hardware, that are associated therewith.  MDx provides potential patients with access to MDx's database of information relating to healthcare providers, such as doctors, through its www.vitals.com website. |

(Ex. A to Original Infringement Contentions, dated 7/1/2011, at p. 1 (highlighting added) (Ex. 1

hereto).)

> Screenshot No. 2 shows an example of where a potential patient may initiate a search for a healthcare provider on MDx's website, i.e., request information about one or more healthcare providers.  When the user clicks "find a doctor now," this prompts the patient's web browser to send a request for information about a doctor to the MDx's web server, which receives the request for information and then accesses MDx's database to find data that responds to the user's search query.

(*Id.* at 3 (highlighting added).)

| creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare | After a patient/user enters search criteria for a doctor, MDx creates one or more healthcare provider reports using information from the MDx database, including using healthcare provider-verified information, patient-provided information, and information verified by the independent third-party source.  Screenshot Nos. 14 & 16-18 show portions of a healthcare provider report for Dr. Mark Brunvand.  This report uses at least the following information: (1) healthcare provider-verified information, circled in |

(*Id.* at 15 (highlighting added).)

Health Grades served MDx with discovery requests seeking information relating to any

licenses it has given others for technology related to the accused products and any contracts,

4

2003639274_1

agreements, and revenue relating to the accused products.  (Health Grades' First Request for the

Production of Documents, Electronically Stored Information, and Tangible Things ("Health

Grades Document Requests") at pp. 10-14 (Request Nos. 2(k), 2(l), 4(c) (emphasis added) (Ex.

2).)  MDx refused to produce this information.  (Health Grades' Motion to Compel at 10-11

[Dkt. 126].)  Health Grades filed a motion to compel this information, which is currently

pending.  (*See id.*)

Last year, Aetna acquired iTriage, which makes and sells a smartphone application that

provides on-line information about doctors ("iTriage App.").  In early March 2012, Aetna

announced at a trade show in New York that it had entered into a partnership with MDx (aka

Vitals) to license MDx's database of physician information for its iTriage App.:



(Mobile Health News (http://mobihealthnews.com/16608/aetnas-itriage-app-adds-appointment-booking-reminders/ ) (Ex. 3 hereto).)  The iTriage App. has many of the same features as the accused www.vitals.com website, including the ability to search for doctors and to create physician reports that include physician verified and third party verified information. Importantly, the iTriage App. now has star ratings from MDx's database.  Health Grades believes that the Vitals physician database that Aetna licenses from MDx is the same database that is used by the accused www.vitals.com website.

On March 16, 2012, less than 10 days after the Aetna/MDx partnership was publicly announced, Health Grades conferred with MDx's counsel regarding this matter.  At that time, MDx's counsel said he was not aware of MDx's license to iTriage.  On March 30, 2012, Health Grades served subpoenas on iTriage seeking information about its partnership with MDx and the iTriage App., which uses MDx's accused physician database.

2.   Health Grades Requested License Information from MDx – MDx Refused to Provide It

Health Grades' iTriage subpoenas seek information about the iTriage license agreement and information about the iTriage App.'s use of MDx's accused physician database.  In an effort to quash these subpoenas, MDx argues that all of the iTriage information Health Grades seeks "should be with MDx" and that Health Grades should get it from MDx.  (Motion at page 4.) However, Health Grades requested this information from MDx, and MDx has refused to produce it.

For example, in its first set of document requests, served in July 2011, Health Grades issued several document requests seeking information relating to any licenses MDx has granted for any technology relating to the Accused Products:

2003639274_1

**REQUEST NO. 2**

All documents and electronically stored information relating to the structure, function, operation, development and implementation of the Accused Products . . . , including without limitation:

k.      Documents relating to any request by any person **for a license** or indemnity from the Defendant **for any of the Accused Products**, including without limitation information referring to, relating to, or comprising any decision by the Defendant **to issue a license to any person for rights to any of the Accused Products**;

l.      Documents that relate to any entities authorized **or licensed** to make, **use,** import into the United States, distribute, and/or sell **the Accused Products**, including without limitation, all sales and distribution agreements, purchase orders, and invoices;

(Health Grades Document Requests at pp. 10-12 (emphasis added) (Ex. 2).)

**REQUEST NO. 4**

All documents and things that relate to the nature and extent of any damages suffered by Health Grades as a result of MDX's direct and indirect infringement of the patent in suit, including, without limitation:

a.      Documents that relate to any offers for sale of the Accused Products, any sales of the Accused Products, and/or **any revenue associated with the Accused Products**, including, but not limited to, documents sufficient to show Defendant's actual and expected gross revenues, net profits, sales, sales prices, membership fees, and advertising revenues;
. . . .

c.      Documents that relate to any **agreements, contracts, licenses,** permissions, arrangements, memoranda of understanding, term sheets and letters of intent between and among MDX and any other entity **pertaining to the acquisition of the right to use any technology relating to the Accused Products**, applications, services, processes, including, without limitation, documents related to evaluating the value of such technology;
. . . .

i.      Documents that relate to or constitute **license agreements** to which MDX is a party and which refer or relate to **MDX's systems, products,** applications, services, processes **or their components or to Accused Products or their components**;

7

(*Id.* at pp. 12-14 (emphasis added).)  These requests defined "Accused Product" broadly enough to cover the MDx physician database, which is component of the accused www.vitals.com website.  (Health Grades Document Requests at p. 6 (¶¶ 9-11), Ex. 2.)  Indeed, as shown above Health Grades' infringement contentions relied heavily on MDx's physician database for its infringement theories.  (*See, e.g.,* Ex. A to Original Infringement Contentions at p. 1, 3, 15 (Ex. 1 hereto).)

Additionally, in July 2011, Health Grades served MDx with its first set of interrogatories, which requested:

> **Interrogatory No. 10.**
> Identify any and all revenues, **the sources thereof and the number of transactions derived by MDX in connection with its Accused Products (including without limitation revenues derived from licensing**, maintaining, or servicing **such system(s))**, for each month from its inception of operations to the present, **including, without limitation, the names of any clients** or advertisers, the total gross and net revenue derived from each and the rates charged, the numbers of transactions, **and the amounts derived from any licensing fees**, and transaction-based fees collected in connection with its Accused Products.

(Plaintiff Health Grades, Inc.'s First Set of Interrogatories to Defendant MDX Medical, Inc. at 11-12 (emphasis added) (Ex. 4 hereto).)

Despite these requests, MDx did not produce documents relating to the iTriage App. or the iTriage license agreement, or of any other license agreements.  Further, MDx has refused to produce any documents relating to its licensing revenue.  Even after Health Grades indicated its intent to obtain this information from iTriage, MDx still refused to produce its licensing information to Health Grades.  As such, the iTriage information could not be more easily obtained from MDx.  This Court should deny MDx's Motion.

3.      Health Grades' Subpoenas are Timely

MDx argues that the iTriage subpoenas are an improper attempt to extend fact discovery. (Motion at page 2.)   Not true.  Fact discovery does not close until June 15, 2012.  [Dkt. 162] Although the parties generally agreed that the purpose of the extension to June 15 was to finish the discovery that had already been served, Health Grades specifically indicated that it had just learned about the iTriage license and that it intended seek discovery from iTriage during the discovery extension.  [Dkt. 160, pp. 4-5.]

In any event, Health Grades could not have served the subpoenas any earlier because it did not find out about the iTriage license until March 6, 2012.  Indeed, as of March 16, 2012, MDx's counsel stated that he did not even know about this license agreement.  Within ten days of learning this information, Health Grades indicated its intent to serve these subpoenas on iTriage.

4.      The iTriage App. and License Agreement are Relevant

The iTriage Subpoenas generally seek information about the partnership between Aetna and iTriage and MDx, MDx's license of the physician database to iTriage/Aetna, and the iTriage App.'s use of MDx's accused database.  This information is very relevant to Health Grades' claims in this case for at least the following reasons:

- The iTriage license is a sale of the accused product that is subject to damages in this case.

- Even if MDx's physician database is not covered by the '060 patent (a position with which Health Grades disagrees), the iTriage license is still relevant to determining a reasonable royalty *Georgia Pacific* Factor No. 6 (i.e., the effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales).  *See*

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

- The iTriage App. may infringe the '060 patent, and if this is true, MDx may be liable for indirect infringement for inducing iTriage to infringe and/or contributing to iTriage's infringement.[1]

As such, this Court should reject MDx's relevancy objections.

**III.    CONCLUSION**

MDx's motion to quash should be denied because MDx lacks standing to quash the subpoena to a third party.  Further, MDx's motion to quash should be denied because its objections are baseless.

Respectfully submitted this 20th day of April, 2012.

ROTHGERBER JOHNSON & LYONS LLP

*s/ Jesús M. Vázquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Gregory B. Kanan, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: kkosto@rothgerber.com
          jvazquez@rothgerber.com
          jphipps@rothgerber.com
          gkanan@rothgerber.com
*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

---

[1]       Health Grades does not intend to assert a cause of action for infringement against Aetna or iTriage in connection with this action.  But, to prove MDx is liable for indirect infringement, Health Grades would need to prove that the iTriage App. directly infringes.  *See, e.g., Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) (holding indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement.)

10

2003639274_1

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of April, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO MDX MEDICAL, INC.'S MOTION TO QUASH HEALTH GRADES' SUBPOENAS TO NON-PARTY iTRIAGE, LLC AND iTRIAGE'S CEO PETER HUDSON** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Mark Jon Rosenberg
David Chunyi Lee
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
Email: sstimpson@sillscummis.com
Email: mrosenberg@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: ridley@wtotrial.com

Ramona L. Lampley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: lampley@wtotrial.com

*s/ Jesús M. Vazquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Gregory B. Kanan, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: kkosto@rothgerber.com
        jvazquez@rothgerber.com
        jphipps@rothgerber.com
        gkanan@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

11

2003639274_1