**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S SECOND MOTION PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 56 FOR
PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx") hereby requests entry of partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This is the second motion MDx has filed for partial summary judgment of no infringement. The Court denied the first motion without prejudice to MDx filing the motion after the Court construed the patent claims [Dkt. 83]. After the claim construction ruling, MDx requested reconsideration [Dkt. 139], and the Court denied that motion stating that "the Court and the parties will benefit from briefing that takes into account the Court's actual claim construction" [Dkt. 194]. Accordingly, this second motion for partial summary judgment is filed in response to this latest Court Order.

In this action, Plaintiff Health Grades, Inc. has accused Defendant MDx of infringing United States Patent No. 7,752,060 (the "'060 Patent"; Exh. 1, Attach. A). The '060 Patent relates generally to an Internet-based system involving the collection of information on healthcare providers and the generation of related reports.

Health Grades asserts in its Complaint that the MDx www.vitals.com website (the "MDx Website") infringes the '060 Patent. The current version of the MDx Website was launched in January 2011, nearly two months prior to the commencement of this action. Although the pre-January 2011 version of the MDx Website did not infringe the '060 Patent, this motion is directed only to the current version of the website.[1]

Every claim of the '060 Patent requires the generation of a report on a first healthcare provider, and that this report include **"_comparison ratings of healthcare providers_."** Exh. 1, Attach. A, col. 20, lines 63-65; col. 22, lines 52-54. The current MDx Website provides no such comparison ratings or anything close to them. Indeed, the website was specifically changed to remove comparison ratings. Accordingly, summary judgment is appropriate.

## I. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. The '060 Patent describes an Internet system for connecting healthcare providers and patients by providing users with information and ratings of healthcare providers. Exh. 1, Attach. A, *e.g.,* Abstract and Title.

---

[1] Even if the pre-January 2011 version of the MDx Website did infringe (it did not), the damages relating to that infringement would be trivial as the '060 Patent did not issue until July 6, 2010, and Health Grades did not mark its product with the patent number under 35 U.S.C. § 287 until November of 2010, leaving at most only **two months** of potential damages. Thus, a finding of no infringement regarding the current MDx Website will effectively end this case – such trivial potential damages will not justify further litigation for either party.

2

2. Every claim of the '060 Patent requires the receipt of "a request for information regarding a first healthcare provider" and the creation of a report on that healthcare provider that "includes comparison ratings of healthcare providers". Exh. 1, Attach. A, col. 20, lines 23-27, 63-65; col. 22, lines 17-18, 52-54.

3. The claims of the '060 Patent also separately recite a "results list," which is generated in response to a user request. *Id.* at col. 21, lines 40-44 (claim 7).

4. Examples of the '060 Patent claims as applied to specific types of healthcare providers, *e.g.,* physicians, are provided by the patent disclosure and drawings (Exh. 1, Attach. A, Fig. 6, item 618; col. 4, lines 7-10; col. 10, line 55; Fig. 11, item 1118; col. 4, lines 29-33; col. 13, lines 37-43); and the website of Plaintiff Health Grades' www.healthgrades.com incorporates such a comparison (*e.g.*, Exh. 1, Attach. C).

5. During patent prosecution, the application for the '060 Patent was rejected by the Patent Office, and in order to obtain the '060 Patent, Health Grades added the specific requirement that the generated reports must include "comparison ratings of healthcare providers." Exh. 1, Attach. B, Amendment & Response, Bates No. HG000025, HG000029, HG000057, and HG000060.[2]

6. Since January 2008, MDx has owned and operated the MDx Website, which enables users to search for and obtain various information on healthcare providers, and to post comments and rankings regarding their experiences with the doctors. Exh. 2, ¶¶3-5.

---

[2] Only relevant portions of the prosecution history are attached.

7. The current MDx Website entirely lacks any ability to create a report on a healthcare provider that would include comparison ratings of healthcare providers.  Exh. 2, ¶¶5-6; Exh. 1, Attach. D.

## II. ARGUMENT

### A. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment where there is "no genuine issue as to any material fact" and when the "moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Shamrock Techs., Inc. v. Medical Sterlization, Inc.,* 903 F.2d 789, 791 (Fed. Cir. 1990).  These standards are fully applicable to patent cases.  *See Nike Inc. v. Wolverine World Wide*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").  Indeed, the Federal Circuit has emphasized that "[s]ummary judgment is as appropriate in a patent case as in any other," *Desper Prods. v. QSound Lab.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) (citations and quotation marks omitted), and has encouraged use of Rule 56 where appropriate, stating that, "[w]here no issue of material fact is present . . . court[s] should not hesitate to avoid an unnecessary trial by proceeding under Fed. R. Civ. P. 56." *Chore-Time Equip., Inc. v. Cumberland Corp.,* 713 F.2d 774, 778-79 (Fed. Cir. 1983).[3]

---

[3] *See also Nike Inc.*, 43 F.3d at 646 (holding district court properly granted summary judgment on non-infringement); *Fenner Inv., Ltd. v. Microsoft Corp.*, 632 F. Supp. 2d 627, 641-42 (E.D. Tex. 2009) (granting defendants' motion for summary judgment of non-infringement).

4

### B.   Literal Infringement

One way in which a patent may be infringed is by "literal" infringement.  Literal infringement requires that each and every element in the asserted claim of the patent be literally present in the accused device.  *General Mills, Inc. v. Hunt Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997).  Put another way, there can be no literal infringement if the accused device lacks any one element of the asserted claim.  *Id*.

### C.   Doctrine of Equivalents

A lack of literal infringement does not end the infringement inquiry, as infringement may exist under the "doctrine of equivalents."  The doctrine of equivalents allows, in some circumstances, a claim element to be met by its substantial equivalent.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 732-33 (2002) (*citing Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605 (1950)).  One way of judging equivalents is to determine if the element in the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result, as the claimed element.  *Graver Tank*, 339 U.S. at 608 (1950).

There are strict limitations to the application of the doctrine of equivalents.  First, the doctrine is limited by the "all elements rule," which "requires a determination that every claim limitation or its equivalent be found in the accused device."  *Ericsson, Inc. v. Harris Corp.,* 352 F.3d 1369, 1373 (Fed. Cir. 2003) (emphasis added).  Application of the "all elements rule" is amenable to summary judgment.  *See, e.g., Lockheed Martin Corp. v. Space Systems/Loral, Inc.,* 324 F.3d 1308, 1318 (Fed. Cir. 2003).  As the Supreme Court has held, "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are

5

obliged to grant partial or complete summary judgment. . . . [I]f a theory of equivalence would ***entirely vitiate a particular claim element***, partial or complete summary judgment should be rendered by the court, as there would be no further material issue for the jury to resolve." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997) (emphasis added).

The application of the doctrine of equivalents is also limited by "prosecution history estoppel." Under this doctrine, if a claim element was added during prosecution of the patent for reasons related to patentability, the patent owner is presumed to be barred from employing the doctrine of equivalents to cover territory between the original and amended claim. *Festo*, 535 U.S. at 737-38**.**

### III.     THE COURT'S CLAIM CONSTRUCTION

The '060 Patent describes an Internet system for connecting healthcare providers and patients by providing users with information and ratings of healthcare providers. Each and every claim of the '060 Patent requires: (1) receiving a request for information regarding a "first healthcare provider"; (2) the creation of a report on the first healthcare provider; and (3) that report "***includes comparison ratings of healthcare providers***". Exh. 1, Attach. A, col. 20, lines 23-27, 58-65; col. 22, lines 17-18, 48-54 (emphasis added).

First Healthcare Provider:   The Court construed "first healthcare provider" to mean "a particular healthcare provider about whom information is requested and a report is produced." Exhibit 1, Attach. E, page 12.

Report on the First Healthcare Provider:   Although the Court declined to specifically construe "report on the first healthcare provider" due to its construction of "first healthcare

6

provider," the Court did agree with the defendant MDx that the report must be directed specifically to the first healthcare provider.

> Defendant . . . contends that the report relates only to the particular "first healthcare provider" discussed above. See Docket No. 93 at 11 (proposing "a report directed specifically to the first healthcare provider"). For the reasons discussed earlier when construing "first healthcare provider," the Court agrees with the defendant. *Id*. at 12-13.

<u>Comparison Ratings of HealthCare Providers</u>: The Court construed this phrase "as including rating on multiple healthcare providers, including the 'first healthcare provider,' in the report on that 'first healthcare provider,' thus permitting comparison of the 'first healthcare provider' with other potential healthcare providers." *Id*. at 14.

Thus, the Court construed the claims to require that there be a report directed to the specific first healthcare provider on which the request is made, and that this report include ratings of multiple other healthcare providers for comparison.

## IV.   THE MDX CURRENT WEBSITE

The current version of the MDx Website was launched in January, 2011. Exh. 2, at ¶5. That new website was specifically designed to remove any comparison ratings from reports on specific healthcare providers. *Id.*, at ¶6.

Shown below, is a screenshot from the current MDx Website:



7

The full web page display for the above screenshot is provided as Exh. 1, Attachment D. There are no ratings of any other provider in this report. Thus, the MDx Website does not provide comparison ratings in the report for this, or any other healthcare provider. See Declaration of Mitchell Rothschild, Exh. 2, ¶ 6.

## V. THE HEALTH GRADES' ARGUMENTS

Health Grades' various papers on this issue, including its infringement contentions and briefing to this Court, point to different parts of the MDx website, ***other than*** the report on the first healthcare provider, to try to show "comparison ratings" – usually Health Grades points to the "results list" of the MDx website. *See, e.g.,* Health Grades latest brief on this issue. Dkt. 156 page 4 of 34.

The MDx results list is exactly that – a results list. It is not a report on a first healthcare provider because it is not specifically directed to a "first healthcare provider." Moreover, the "results list" is a list that is claimed as a separate and different element, and it is clearly differentiated in the patent and the claims from the "report on the first healthcare provider" (see, e.g., claim 7).

Health Grades thus has been, and will continue to be, entirely unable to point to any report specifically directed to a particular healthcare provider that includes comparison ratings.

## VI. SUMMARY JUDGMENT IS APPROPRIATE

### A. NO LITERAL INFRINGEMENT

Because there can be no genuine issue of material fact that the "comparison ratings of healthcare providers" claim element is missing from the current MDx Website, there can be no

8

literal infringement. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997).

### B.       NO INFRINGEMENT BY EQUIVALENTS

There are three independent reasons why, as a matter of law, Health Grades cannot capture the MDx website under the doctrine of equivalents: (1) to do so would entirely vitiate these claim terms; (2) prosecution history estoppel; and (3) there is no substantial similarity as a matter of law.

#### 1.       VITIATING THE CLAIM TERM

"[I]f a theory of equivalence would entirely vitiate a particular claim element, partial or complete summary judgment should be rendered by the court, as there would be no further material issue for the jury to resolve." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997) (emphasis added). Here, every claim of this patent requires that the report on the first healthcare provider "***includes*** comparison ratings of healthcare providers." Health Grades' infringement analysis ignores this requirement entirely, and argues that the comparison ratings outside the report meet this claim language. But this is a textbook example of what the Supreme Court meant when it said that claim terms cannot be vitiated under the doctrine of equivalents. Equivalents cannot encompass the ***antithesis*** of the claim term (comparison ratings ***outside*** the report on the first healthcare provider cannot be equivalent to a claim limitation requiring those comparison ratings to be ***inside*** that report).

Here, the element at issue is a location, and the claims identify a precise location where the comparison ratings must be found. That is, the claims all unequivocally require that the comparison ratings be ***included within*** the report on the first healthcare provider. The Federal Circuit has refused to allow application of the doctrine of equivalents in circumstances such as these, including where claimed locations are at issue. *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1425-426 (Fed. Cir. 1997)(claim required slot location ***on top of*** container, and so slot location ***within*** container could not be equivalent – patent claimed a "precise arrangement of structural elements" and so even a "similar result" would not

9

infringe if done with a different arrangement; "[t]he doctrine of equivalents does not grant Sage license to remove entirely the [claim limitation]"); *Asyst Techs. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005)(***unmounted*** cannot be equivalent to "***mounted***" claim requirement).  There are many Federal Circuit cases applying this concept, not only in the context of claimed locations.  *See Moore U.S.A. v. Std. Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) ("majority" cannot include 47.8% -- "it would defy logic" to hold that 47.8% could be equivalent); *see also Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 400 (1994)("In short, the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims"); *PSN Illinois LLC v. Ivoclar Vivadent, Inc. et. al.,*525 F.3d 1159, 1167-68 (Fed. Cir. 2008) (affirming summary judgment of no infringement where equivalents would vitiate claim term).

## 2. PROSECUTION HISTORY ESTOPPEL

During prosecution, Health Grades added the requirement that the report be "on the first healthcare provider" and that this report "includes" the "comparison ratings of healthcare providers."  Exhibit 1, Attach. B, Bates No. HG000025, HG000029, HG000057, and HG000060.  Thus, there is a presumption of prosecution history estoppel.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 739-741 (2002).

To overcome the *Festo* presumption, however, Health Grades has recently started to argue that the amendment was only "tangential" to its equivalents position.  Dkt. 156, page 6, 12-13 of 34.  This argument was never presented in response to the same estoppel argument in the original summary judgment motion, however, and so should be considered waived.  Dkt. 23 pages 7-8 of 10 (no "tangential" argument in responding to estoppel issue).  But even if the argument was not waived, Health Grades' is way off base on its analysis of this exception to the *Festo* presumption.

Under *Festo* and its progeny, if a claim element was added during prosecution of the patent for reasons related to patentability, the patent owner is presumed to be barred from employing the doctrine of equivalents to cover territory between the original and amended claim. *Festo*, 535 U.S. at 737-38. Here, then, Health Grades is presumed to have given up coverage between the original claims (Exhibit 1, Attach B. Bates No. HG0000204-207, requiring only that the entire system allow the user to compare providers) and the patented claims (requiring that the ratings for comparison be included in the report on the first healthcare provider).

The exception Health Grades tries to apply, where the reason for the amendment is "tangential" to the alleged equivalent, is not even remotely applicable. The Federal Circuit has made very clear that this is a rare and "very narrow" exception to the *Festo* presumption:

> The tangential relation criterion for overcoming the *Festo* presumption is very narrow. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 480 F.3d 1335, 1342 (Fed. Cir. 2007). As this court provided in its Festo IX opinion on remand from the Supreme Court, the tangential relation criterion focuses on the "patentee's objectively apparent reason for the narrowing amendment." 344 F.3d at 1369. To rebut the estoppel presumption with tangentiality, a patentee must "demonstrate that the rationale underlying the amendment bore no more than a tangential relation to the equivalent in question," or, in other words, that "the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent." *Id.* (citation omitted). Additionally, the reason for the narrowing amendment "should be discernible from the prosecution history record . . . ." *Id.* If the prosecution history reveals no reason for the narrowing amendment, the presumption is not rebutted. *See id.* at 1371-72 (the patentee did not rebut because the prosecution history revealed no reason for the amendment). Silence does not overcome the presumption.

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1315-1316 (Fed. Cir. 2008).

Here, the reasons for this amendment related directly to the equivalents issue. Specifically, the amendments distinguished over prior art that would allow a user to view multiple different locations and thus compare providers. The primary Henley reference, for

11

example, discloses making patient feedback on a specific provider available to those requesting information. Paragraph 16 of Henley, for example, addresses "acquiring and maintaining comments and feedback from . . . patients/clients." Exhibit 1, Attach F, ¶ 16; *see also id.,* ¶¶ 30, 37, 107, 114, 128, 137 (identifying disclosure of feedback on medical providers); FIG. 18 (showing how clients rate providers). Thus, just like the MDx accused system, the user of Henley could navigate around and see different ratings of different providers for comparison purposes.

But Health Grades made very clear during prosecution that this was not enough to satisfy its amended patent claims. It changed the claims, unequivocally requiring that the comparison ratings be ***included*** in the report on a first healthcare provider. Exh. 1, Attach. B, Bates No. HG000025, HG000029, HG000057, and HG000060 (adding the following: "***the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers***"). Health Grades relied on this very feature to distinguish the prior art. *Id.* at HG000066 ("Henley fails to teach or suggest, for example, '. . . wherein ***the healthcare provider report includes comparison ratings of healthcare providers*** . . . .'"). Health Grades thus emphasized this distinction and argued that such a report with comparison ratings was nowhere shown in Henley.[4]

---

[4] Even if the equivalent at issue here was not in the Henley prior art, that would still not result in application of the "tangential" exception. *Chimie v. PPG Indus.,* 402 F.3d 1371, 1383 (Fed. Cir. 2005)("it does not follow . . . that equivalents not within the prior art must be tangential to the amendment"); *see also Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 480 F.3d 1335, 1342 (Fed. Cir. 2007) (summary judgment of no infringement, affirming the "tangential relation" criteria are "very narrow").

The critical feature of having the ability to compare in the report itself is further evidenced by some of the claim language that was replaced. Specifically, claim 19 had this language before the amendment:

> a computing system with access to healthcare provider information stored in a database, wherein patients may search the database and review healthcare provider reports to differentiate among healthcare providers.

Exhibit 1, Attach. B, Bates No. HG000060.

This language, which was removed and replaced with the requirement that comparison ratings be included within the first healthcare provider report, is what Health Grades is trying to cover now – an overall computer system where the user searches the database generally and compares what is found to help differentiate providers. The accused system does allow a general search, and that search might include various providers, but unlike the claim language that was added by Health Grades to avoid the prior art, the user of the MDx system (like the user in the prior art Henley reference) is unable to view comparison ratings in a report on a specific provider.

### 3. **NO SUBSTANTIAL SIMILARITY**

Even absent these other reasons why, legally, there can be no equivalents, there can be no equivalents because the claimed and accused products are entirely different.

Requiring the user to jump from place to place to view the claimed provider information and compare ratings of various providers is not even remotely similar to having all the other claimed information and comparison ratings in the one report on the first healthcare provider. None of the function of having these comparison ratings in the first healthcare provider report (allowing ease of comparisons to the other providers within the same report), the way (including

all this information in the one report) or result (a single report with all this information) is in any way similar to the MDx website.  Indeed, when in the real report on a particular provider, the user would either need to remember all the ratings of all other providers that met the search criteria, or would need to leave the report to try to find that information again.  Creating a report with all this information (including comparison ratings) in one place makes the system more efficient.  This advantage was even relied upon by the examiner during prosecution.  *See* Exhibit 1, Attach. B, Bates No. HG000088 (combining into a report "improve[s] the efficiency of the system").  *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) (equivalence can be determined if the accused product "performs substantially the same function in substantially the same way to obtain the same result").

## VII.   CONCLUSION

For all the foregoing reasons, MDx respectfully requests entry of partial summary judgment of non-infringement, for a declaration that the current MDx Website does not infringe the '060 Patent.

Dated:  May 8, 2012                                     Respectfully submitted,


*s:/Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail: sstimpson@sillscummis.com
E-mail: smurray@sillscummis.com
E-mail: dlee@sillscummis.com

14

and

Terence Ridley, Atty. No. 15212
Ramona Lampley, Atty. No. 37288
Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com
E-mail: lampley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on <u>May 8, 2012</u>, I electronically filed the foregoing MDx Medical, Inc.'s Second Motion Pursuant To Federal Rule Of Civil Procedure 56 for Partial Summary Judgment of Non-Infringement with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez , Jr.**
  jvazquez@rothgerber.com, phenke@rothgerber.com

- **Kris John Kostolansky**
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- **Jeffrey David Phipps**
  jphipps@rothgerber.com, kmeans@rothgerber.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Scott B. Murray**
  smurray@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

- **Ramona L. Lampley**
  lampley@wtotrial.com, keitlen@wtotrial.com


　　　　　　　　　　　　　　　　　　　　 _s:/David C. Lee_____