# ATTACHMENT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-00520-PAB-BNB

HEALTH GRADES, INC.,

     Plaintiff,

v.

MDX MEDICAL, INC.,
doing business as Vitals.com,

     Defendant.

---

### ORDER REGARDING CLAIM CONSTRUCTION

---

     This matter is before the Court for the construction of U.S. Patent No. 7,752,060 (the "'060 Patent") [Docket No. 3] (the "patent"), assigned to plaintiff Health Grades, Inc. ("Health Grades"). The Court is called upon to construe various terms and phrases found in the patent.

## I. BACKGROUND

     The patent "generally relates to an Internet-based system and method that connects patients with potential healthcare providers, e.g., physicians and hospitals." '060 Patent col. 1 ll. 12-14. "More particularly, the present invention relates to providing on-line ratings and reports comprised of detailed healthcare provider information with verified information sections, including physician verified and/or independent third-party-verified portions, and patient-provided information sections, to assist patients in differentiating among healthcare providers." '060 Patent col. 1 ll. 14-20. Health Grades contends that defendant MDX Medical, Inc. ("MDX") infringes claims 1, 4 through 9, 11,

and 14 through 16 of the '060 Patent.

Claims 1 and 4 through 9 of the '060 Patent provide as follows:

**1.** A computer-implemented method of providing healthcare provider information to potential patients, said method comprising:

receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider, wherein the Web server computer comprises at least one computer processor and memory;

accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;

compiling, by the at least one computer processor, patient-provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;

compiling information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;

creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and

providing access to the healthcare provider report on the first healthcare provider over a computer network.

* * *

**4.**  The method as defined in claim 1, wherein the healthcare provider report includes a hyperlink to an affiliated hospital, medical center, or other type of treatment center.

**5.** The method as defined in claim 1, wherein the access to the healthcare provider report is obtained through a predetermined Web page that provides search capabilities for a database comprised of healthcare provider information.

**6.** The method as defined in claim 5, wherein the search capabilities permit a search based on one or more from the group consisting of: name, medical specialty, gender, state, city, procedure, diagnosis, procedure, and location criteria.

**7.** The method as defined in claim 6, wherein the search of the database produces a results list of one or more healthcare providers satisfying the search criteria, wherein the results list includes the first healthcare provider.

**8.** The method as defined in claim 7, wherein the results list further includes an advertisement for the first healthcare provider with a hyperlink to information on the first healthcare provider.

**9.** The method as defined in claim 7, further comprising: determining from the results list whether a particular healthcare provider is a member of the company managing the Web site; and if the particular healthcare provider is a member of the company managing the Web site, providing enhanced services for the member healthcare provider on the Web site.

'060 Patent col. 20 l. 20 - col. 21 l. 56.

From this claim language, plaintiff contends that only the following three phrases require construction by the Court: "first healthcare provider"; "healthcare provider report on the first healthcare provider"; and "comparison ratings of healthcare providers."

In addition to those three phrases, defendant seeks to have the Court construe the following claim language: "healthcare provider-verified information"; "received from the first healthcare provider"; "verified by an independent third-party source"; "compiling"/"compile"; "using the healthcare provider-verified information, the patient-provider information, and the information verified by the independent third-party

source"; "hyperlink to an affiliated hospital, medical center, or other type of treatment center"; "the results list further includes an advertisement"; and "member of the company managing the website"/"member healthcare provider."

## II.  LEGAL STANDARDS FOR PATENT CLAIM CONSTRUCTION

Claim construction is a question of law for the court.  *See, e.g.*, *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).  In construing patent claims, courts are guided by the precedent of the Federal Circuit.  *See SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1333 (Fed. Cir. 1999).  As that court has explained, "there is no magic formula or catechism for conducting claim construction."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005) (en banc).  Even so, the *Phillips* decision outlined several key sources and doctrines that should be consulted and applied, all the while making clear that "[t]he sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law."  *Id.*

Courts begin with the "bedrock principle" that "'the claims of the patent define the invention to which the patentee is entitled the right to exclude.'"  *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  The words of the claims "'are generally given their ordinary and customary meaning,'" *id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)), which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention," *id.* at 1313; *see CCS*

*Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("Generally speaking, [courts] indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning."). Sometimes, when the claim language "involves little more than the application of the widely accepted meaning of commonly understood words," construction is relatively straightforward and "the ordinary meaning . . . may be readily apparent even to lay judges." *Phillips*, 415 F.3d at 1314. However, when the claim terms have a particular meaning in the field, courts "look[ ] to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.* (quoting *Innova*, 381 F.3d at 1116). These sources include "'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.*

Importantly, claim terms are not read in a vacuum. *Id.* at 1313. The context in which a term is used, both in the asserted claim as well as in other claims of the patent, can be valuable and instructive. *Id.* at 1314. In addition, the patent specification – the text and figures of the patent that precede the claims – "'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). However, "the claim requirement presupposes that a patent applicant defines his invention in the claims, not in the specification." *Johnson & Johnston Associates Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002); *see PSC Computer Products, Inc. v. Foxconn Intern., Inc.*, 355 F.3d 1353, 1359 (Fed. Cir. 2004) ("'[T]he

claims of a patent limit the invention, and specifications cannot be utilized to expand the patent monopoly[.]'") (quoting *United States v. Adams*, 383 U.S. 39, 48-49 (1966)).

Courts also consider the patent's prosecution history – the official record of the patent application and subsequent process before the U.S. Patent and Trademark Office. *Id.* at 1317. That history "provides evidence of how the PTO and the inventor understood the patent." *Id.* However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, . . . it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

Courts may consult extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises." *Id.* However, this evidence is "'less significant than the intrinsic record,'" i.e., the specification and prosecution history, *id.* (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)), and courts must be wary not to use extrinsic evidence to override the meaning of the claim terms demonstrated by the intrinsic evidence. *Id.* at 1318-19. That is, "extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

In sum, a court's basic role is to construe the claim terms as they would be viewed by "the ordinary artisan after reading the entire patent." *Id.* at 1321. This is crucial in order to respect the public notice function of patents:

> The patent system is based on the proposition that claims cover only the invented subject matter. As the Supreme Court has stated, "[i]t seems to us that nothing can be more just and fair, both to the patentee and the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent."

*Id.* at 1321 (quoting *Merrill v. Yeomans*, 94 U.S. 568, 573-74 (1876)).  With these principles in mind, I turn to the claim construction issues presented in this case.

## III. ANALYSIS

### A. First Healthcare Provider

Plaintiff proposes the following construction for "first healthcare provider": "a physician or other healthcare professional."  Docket No. 79 at 8.[1]  The term "first healthcare provider" is used in Claim 1, Claim 7, Claim 8, and Claim 15.  *See* '060 Patent col. 20 ll. 26, 31-33, 40-41, 43, 45-46, 50-51, 59, 63-64, 67; *id.* col. 21 ll. 43, 46-47; and *id.* col. 22 ll. 17-18, 20, 23, 29-30, 32-33, 36, 41, 48-49, 53, 56.  Defendant does not dispute that "first healthcare provider" refers to a person, rather than an entity,[2] but suggests that it refers to "a specific healthcare provider, and the same provider referenced throughout the claims on which the request is received, healthcare-verified information accessed, patient-provided information is compiled, information verified by a third-party is compiled, and a report is created."  Docket No. 93 at 8 (internal citations omitted).  The focal point of the parties' dispute is whether "first healthcare provider" is a particular provider or may be one or more providers.

In support of its contention that "first healthcare provider" may be one or more providers, plaintiff presents two arguments: (1) that the indefinite article "a" is construed

_____

[1]All page numbers following references to docket numbers refer to the page indicated at the top of the docket entry and not necessarily any page numbers supplied by the filer at the bottom of any respective page.

[2]*See* '060 Patent col. 20 ll. 33-38 (information regarding the "first healthcare provider" includes "specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies").

to refer to "one or more," and (2) that the claims and specification make clear that the invention includes the ability to conduct searches resulting in the receipt of information on multiple healthcare providers.

Plaintiff is correct that the "words 'a' or 'an' in a patent claim carry the meaning of 'one or more.'" *TiVo, Inc. v. EchoStar Communications Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008). "That is particularly true when" – like here – "those words are used in combination with the open-ended antecedent 'comprising.'" *Id.*; *see Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) (stating that the Federal Circuit "has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'") (citation omitted). The "question whether 'a' or 'an' is treated as singular or plural depends heavily on the context of its use," *TiVo, Inc.*, 516 F.3d at 1303 ("The general rule does not apply when the context clearly evidences that the usage is limited to the singular."), but "[t]hat 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention," exceptions to which are found in only "extremely limited" circumstances. *Baldwin Graphic*, 512 F.3d at 1342.[3]

Here, however, the term "healthcare provider" is not immediately preceded by "a" or "an" but rather the modifier "first." The issue, therefore, is not whether "a" healthcare provider means "one or more" healthcare providers, but whether "a first" healthcare

---

[3]Later in the claim, "first healthcare provider" is preceded by "the." However, the "subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning." *Baldwin Graphic Sys.*, 512 F.3d at 1342.

provider is potentially plural or, as defendant contends, refers to a "specific" healthcare provider. While the "use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances of an element or limitation," *3M Innovative Properties Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003), the '060 Patent never introduces a "second" healthcare provider. It is, therefore, not clear simply from the use of "first" that the healthcare provider is a specific provider distinguished from subsequently introduced providers. With that said, qualifying "healthcare provider" with "first" does indicate the intent to distinguish that provider from other providers in some fashion.[4]

To rebut the implication that "a first healthcare provider" is limited to one person, plaintiff contends that the patent's "claims encompass systems for providing healthcare provider information relating to multiple healthcare providers." Docket No. 79 at 11. There is no dispute that such is the case. For example, the patent's Summary describes an embodiment "involving search criteria limited to city/state information" where a "patient will be presented with a list of physician names with hyperlinks to those

---

[4]One possible interpretation of "first healthcare provider" that would be consistent with plaintiff's proposal is to conclude that the phrase refers to one or more healthcare providers resulting from a first search. *See* '060 Patent col. 6 ll. 63-65 (describing an embodiment "including a first list 208 of physicians that closely match the specific name criteria entered by the user, the physician name results Web page"); *see also* '060 Patent col. 7 ll. 5-14 (describing a search resulting in a list of multiple physicians meeting a search criteria, such list containing "comparisons amongst the physicians . . . in which such comparisons highlight which physicians best fit the patient's specified criteria"). This interpretation, however, strains the meaning of "first" when placed directly before "healthcare provider." Furthermore, it fails to account for claim 7's introduction of a "results list" with "one or more" healthcare providers resulting from a search. Finally, the patent elsewhere refers to "healthcare providers" without use of "first," *see* '060 Patent col. 20 ll. 59-60, further supporting the interpretation that "first" identifies a single healthcare provider.

physicians' individual reports." '060 Patent col. 3 ll. 8-11. The specification further describes an embodiment of the invention where a patient can "find a physician by selecting the specialty desired from a list 142 of such specialties or to select the physician's name or hospital name from an alphabetical index of such names for physicians (140) and for hospital (144)." '060 Patent col. 5 l. 66 - col. 6 l. 3. Moreover, the patent embodies searches by last name or by city/state with multiple resulting healthcare providers. *See* '060 Patent col. 6 ll. 18-28 (citing Figs. 2A and 2B). These references to embodiments, however, do not resolve the issue of whether the "first healthcare provider" is a particular provider.

If plaintiff's construction is accepted, Claim 1 would describe "one or more first healthcare providers," without a clear explanation of how "first" modifies the term "healthcare provider" or how "first" is distinguished from the word "a" which precedes it. The use of "first" appears directed at identifying a particular healthcare provider in Claim 1 for purposes of describing the manner in which information may be acquired and presented in a healthcare provider report upon the "request for information regarding a first healthcare provider."[5] '060 Patent col. 20 ll. 25-26; *cf.* '060 Patent col. 2 ll. 21-28 ("In an exemplary embodiment, in response to a search query for a particular physician name conducted using a search engine external to the company Web site, the patient receives a Web-based 'profile' of a selected physician matching, or closely matching,

_____

[5]The Court notes that Claim 9 references a "particular healthcare provider" in the context of determining whether a particular provider is a "member of the company managing the Web site." '060 Patent col. 21 ll. 49-52. This "particular" healthcare provider, it seems, can be either the "first healthcare provider" or any other specific provider.

the entered search terms.  A profile lists detailed information potentially available about that physician which may be obtained in the form of a report."); '060 Patent col. 10 ll. 33-67.  Subsequent claims introduce the concept of searching for multiple providers fitting certain criteria.  For example, in Claim 6, the patent refers to a "search based on one or more from the group consisting of: name, medical specialty, gender, state, city, procedure, diagnosis, . . ., and location criteria."  '060 Patent col. 21 ll. 37-39.  In Claim 7, such a search "produces a results list of one or more healthcare providers satisfying the search criteria, wherein the results list includes the first healthcare provider."  '060 Patent col. 21 ll. 40-43.  In other words, Claim 7 incorporates Claim 1's description of information available regarding a "first healthcare provider," as well as the limitations introduced in Claims 2 through 6, and then adds the limitation that such information shall be found within a specific context, i.e., a list on which can be found the "first healthcare provider" introduced in Claim 1.  Plaintiff fails to account for these dependent claims and how they are consistent with "a first healthcare provider" meaning "one or more first healthcare providers."  *See* 35 U.S.C. § 112, ¶ 4 ("[A] claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed.  A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."); *Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) (explaining that the doctrine of claim differentiation "creates a presumption that each claim in a patent has a different scope"); *see also Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1342 (Fed. Cir. 2010) ("Under [the doctrine of claim differentiation], 'the presence of a dependent claim that adds a particular limitation gives rise to a

presumption that the limitation in question is not present in the independent claim.'")
(quoting *Phillips*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc)).[6]

The Court concludes that "first healthcare provider" refers to a particular healthcare provider about whom information is requested and a report is produced. That "first healthcare provider" may also appear in lists of "one or more healthcare providers." '060 Patent col. 21 l. 41-42.

## B.  Healthcare Provider Report on the First Healthcare Provider

Plaintiff argues that the "healthcare provider report on the first healthcare provider" refers to "a formatted and organized presentation of information that relates to one or more healthcare providers identified in response to a query for information regarding healthcare provider(s)." Docket No. 79 at 12. The phrase "healthcare provider report on the first healthcare provider" is used in Claim 1, Claim 12, and Claim 15. *See* '060 Patent col. 20 ll. 58-60, 63-67; *id.* col. 21 ll. 65-66; *id.* col. 22 ll. 48-49, 55-56. Defendant does not take issue with the description of the report's structure but contends that the report relates only to the particular "first healthcare provider" discussed above. *See* Docket No. 93 at 11 (proposing "a report directed specifically to the 'first healthcare provider'"). For the reasons discussed earlier when construing "first healthcare provider," the Court agrees with the defendant. The Court identifies no persuasive basis to construe "first healthcare provider" any differently in this context. With that said, the Court does not adopt defendant's proposed claim construction

---

[6]*Cf. TM Patents, L.P. v. International Business Machines Corp.*, 121 F. Supp. 2d 349, 380 (S.D.N.Y. 2000) ("A dependent claim may well be 'narrower' (i.e., more restrictive) than its associated independent claim while nonetheless expanding on the type of situation in which the patent would be infringed.") .

Case No. 1:11-cv-00520-RM-NYW   Document 195-6   filed 05/08/12   USDC Colorado   pg 14
of 25
Case 1:11-cv-00520-PAB-BNB   Document 138   Filed 02/13/12   USDC Colorado   Page 13 of 24

language.  Having already construed "first healthcare provider" and there being no
dispute regarding "report," the Court finds that "healthcare provider report on the first
healthcare provider" requires no further construction.

### C. Comparison Ratings of Healthcare Providers

Defendant argues that the "comparison ratings of healthcare providers" must
relate to "multiple providers other than the first healthcare provider."  Docket No. 93 at
13.  The phrase "comparison ratings of healthcare providers" is used in Claim 1 and
Claim 15.  *See* '060 Patent col. 20 ll. 64-65; *id.* col. 22 ll. 53-54.  Plaintiff points out that
the comparison ratings are included in the report on the first healthcare provider and,
therefore, it would make little sense for the ratings not to also include the first
healthcare provider.  *See* Docket No. 79 at 16; *id.* at 15 (proposing "a rating system that
facilitates comparison(s) amongst physicians to highlight which physician(s) identified in
response to a query for information best fit one or more criteria").  The Court agrees
with plaintiff that there is no indication that the comparison ratings found in the report on
the first healthcare provider would not include ratings for that provider.  *See* '060 Patent
col. 2 ll. 3-5 ("From [a results] list, a patient may access a detailed 'report' or, in one
embodiment, comparison ratings on that particular provider.").

Plaintiff does not believe that the "comparison ratings" found in the report require
inclusion of ratings for other physicians.  In other words, plaintiff argues that
"comparison ratings" would cover any standardized ratings system, i.e., a "'5-star rating'
system for all physicians within a database."  Docket No. 79 at 17.  As noted above,
however, "first healthcare provider" refers to a particular provider.  Upon introducing the

concept of "*comparison* ratings" in Claim 1, the patent no longer uses the term "first healthcare provider" but rather refers to "comparison ratings of healthcare providers." '060 Patent col. 20 ll. 64-65.  It appears clear that the report on the first healthcare provider includes ratings of that provider as well as others to permit comparison, thus organizing the information "in a manner that . . . allow[s] a patient to compare physicians."  '060 Patent col. 1 ll. 44-45; *see* '060 Patent col. 7 ll. 11-14 ("In accordance with an embodiment of the invention, comparisons amongst the physicians may be provided to the patient, in which such comparison highlight which physicians best fit the patient's specified criteria.").

     For the foregoing reasons, the Court construes "comparison ratings of healthcare providers" as including ratings on multiple healthcare providers, including the "first healthcare provider," in the report on that "first healthcare provider," thus permitting comparison of the "first healthcare provider" with other potential healthcare providers.

### D. Healthcare Provider-Verified Information

     The term "healthcare provider-verified information" is used in Claim 1 and Claim 15.  *See* '060 Patent col. 20 ll. 30-32, 60; *id.* col. 22 ll. 19-21, 49-50.  Defendant requests the following construction for this term: "information proved to be true directly and personally by the healthcare provider."  Docket No. 93 at 16.  Plaintiff does not believe the word "verified" requires construction, but proposes the following in the event the Court disagrees: "information verified by a physician or other healthcare professional."  Docket No. 79 at 22.  The Court agrees with plaintiff that there is no

need to construe the word verified[7] and, to the extent it were to be construed, the plain and ordinary meaning would apply.[8]  *Cf. Phillips*, 415 F.3d at 1314 (when the claim language "involves little more than the application of the widely accepted meaning of commonly understood words," construction is relatively straightforward and "the ordinary meaning . . . may be readily apparent even to lay judges").

_____

[7]In regard to defendant's request to have "directly and personally by the healthcare provider" included in the "healthcare provider-verified information" construction, the Court will discuss the manner in which the information is received when discussing the disputed phrase "received from the first healthcare provider" below.

[8]Although defendant is correct that "verify" can mean "to prove," "verify" may also mean, depending on its context, "confirm" or "substantiate."  Collins English Dictionary - Complete & Unabridged 10th Edition. HarperCollins Publishers. 13 Jan. 2012 <Dictionary.com dictionary.reference.com/browse/verify>; *cf. Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 809 n.2 (Fed. Cir. 2007) ("Although in *Phillips* we rejected an approach in which a broad dictionary definition is adopted and then whittled down only if contradicted by the specification, we did not prohibit the use of dictionaries in claim construction, nor did we define at what point in the claim construction analysis they may be consulted." (internal citation omitted)); *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1316 (Fed. Cir. 2006) ("The district court's reference to the dictionary was not an improper attempt to find meaning in the abstract divorced from the context of the intrinsic record but properly was a starting point in its analysis, which was centered around the intrinsic record consistent with Phillips.").  Here, the specification makes clear that the act of "verifying" requires only that the website receive confirmation of the information from some other source, in this instance the healthcare provider.  Indeed, the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider.  *See* '060 Patent col. 2 ll. 55-62 (where the patent's Summary describes "physician-verified, or physician-provided" information as well as "company-verified" information and "patient-provided information"); '060 Patent col. 7 ll. 56-64 ("The first section 306 contains physician-verified information, in which the member physician provides personal information, such as specialty information 316, medical philosophy 318, gender 320, age 322, years in the profession 324, years in the particular practice listed 326, if any, title 328, professional status 330, awards and honors 332, professional appointments 334, professional affiliations/memberships 336, publications338, languages 340, hobbies 342, etc. 344").  And, in fact, the claims state that the "healthcare provider information is received from the first healthcare provider," which is the next phrase about which there is a dispute.

### E.  Received from the First Healthcare Provider

The phrase "received from the first healthcare provider" is found in Claim 1 and

Claim 15.  *See* '060 Patent col. 20 ll. 31-32; *id.* col. 22 ll. 21-22.  Plaintiff contends that,

despite the plain meaning of this phrase, the information may be received from a

source other than the "first healthcare provider."  Docket No. 79 at 22-23.  In support of

that contention, it cites the following from the patent's specification:

> Start operation 1602 is initiated in response to accessing or obtaining
> specific physician information. In an embodiment, such information is
> obtained from the physician himself or herself through a client computer, a
> network, and a server system such as that depicted in FIG. 1. However, in
> other embodiments, the information may be obtained through other means.
> For example, in one embodiment, the information is obtained through an
> independent third party, such as the company Web service provider, that
> researches and gathers public information regarding a physician, such as
> medical license records, board certifications, federal or state disciplinary
> actions, and other sources of public information, such as advertising by
> physicians indicating office locations and practice types, insurance company
> physician listings, etc.

'060 Patent col. 17 ll. 1-22.  The Court finds that this passage merely emphasizes what

is clear from a plain reading of the claims.  Information may be verified by receipt of the

information from the first healthcare provider or in some *other* manner, such as "an

independent third-party source" or the patient, which are separately described in the

patent.  '060 Patent col. 20 ll. 29-57.  When the patent refers to information received

from the first healthcare provider, however, there can be no inference that it refers to

information received by some entity or individual that is not associated with that

particular healthcare provider.

The Court finds defendant's limitation that the information be received

"personally" from the first healthcare provider to be unduly limited.  The phrase and the

surrounding context contemplate receipt of information from the first healthcare provider or one of his or her agents, such as an employee, as distinguished from information received from patients or public sources.

### F. Verified by an Independent Third-Party Source

The phrase "verified by an independent third-party source" is found in Claim 1 and Claim 15.  *See* '060 Patent col. 20 l. 51; *id.* col. 22 ll. 41-42.  Defendant seeks the following construction for this phrase: "proved to be true by an independent third-party source."  Docket No. 93 at 18.  Plaintiff does not believe the phrase requires a construction, relying on its plain and ordinary meaning.  As an initial matter, although "by an independent third party" is included in the phrase, neither party has sought to construe that aspect of the phrase.  Rather, the dispute turns on whether the verification must equate to proof.  For the reasons discussed above, the Court finds no basis to limit the meaning of "verified" in that manner.  The patent does not require that the third-party information be "proven" but rather only describes an attempt to substantiate that will provide a patient with "some assurance that the qualifications of the doctor have been checked by someone."  '060 Patent col. 8 ll.12-13.[9]  The claims in no way foreclose an embodiment where such "proof," however defined, would be required.  In short, the plain and ordinary meaning of "verified," which can encapsulate a range of conduct aimed at confirmation of information, shall apply.  No further construction is necessary.

---

[9]When describing the "verification" of patient-provided information, the patent merely requires a confirmation that the individual who is providing the information was a patient of the healthcare provider.  *See* '060 Patent col. 9 l. 35 - col. 10 l. 2.

### G. Compiling / Compile

The term "compiling" is found in Claim 1 and Claim 3, *see* '060 Patent col. 20 ll. 39, 50; *id.* col. 21 ll. 15, 26, and the term "compile" is found in Claim 15.  *See id.* col. 22 ll. 29, 40.  Defendant argues that "compiling" should be construed to mean "gathering and putting together."  Docket No. 93 at 20.  Plaintiff does not believe that the words "compiling" and "compile" require construction, contending they should receive their plain and ordinary meaning.  If the terms are to be construed, plaintiff suggests that "compiling" means "putting together various pieces of information from different sources, such as ratings from different patients."  Docket No. 79 at 24.  Plaintiff does not believe the "gathering" is captured by the term.  The parties have not clearly articulated the difference, as they see it, between the acts of "putting together" information and "gathering" it.

In support of its definition, plaintiff emphasizes that the "specification does not use the term 'compiling' to mean 'gathering.'" Docket No. 79 at 24.  Plaintiff cites the following passage in support of its position that "compiling" means "putting together." *See* '060 Patent col. 10 ll. 29-32 ("[T]he information and data provided by the patient survey is compiled with other data provided by other past or current patients and maintained within the company database.").  As defendant points out, while the specification does use "compiling" to mean "putting together," such as when it refers to the "compiling, or creation, of healthcare provider profiles and/or reports," '060 Patent col. 18 ll. 24-27,[10] the claim language does not appear to exclusively use compiling in

_____

[10]*See* '060 Patent col. 18 ll. 32-35 ("In an embodiment, the physician-provided information 1604, patient-provided information 1606, and independent third party

that manner.[11]   Rather, in Claim 1, patient-provided information is compiled, but only after it is first "received."   *See* '060 Patent col. 20 ll. 38-49.   Therefore, to the extent the parties are using "gathering" as the act of acquiring the information, "compiling" does not appear to be used in that manner when describing "patient-provided information." However, when Claim 1 describes "compiling information . . . verified by an independent third-party source," the sources of such information are listed, but the manner in which the information is acquired is not described by any other word but "compiling."   *See* '060 Patent col. 20 ll. 50-57.   In this instance, "compiling" does appear to refer to both "gathering" the information and then putting it together with other information verified by third-party sources.   In short, to the extent the term requires construction, the Court concludes that, depending on the context in which it is used, "compiling" can mean

_____

verification information 1608 is compiled into a report and/or profile 112 (FIG. 1) and stored in database 108.").

    [11]Furthermore, it is far from clear that the specification uses "compiling" only to mean putting together.  For instance, the specification describes embodiments where information is obtained through an independent third party, such as the company Web service provider, that researches and gathers public information regarding a physician, such as medical license records, board certifications, federal or state disciplinary actions, and other sources of public information, such as advertising by physicians indicating office locations and practice types, insurance company physician listings, etc. Once initiated, the operation flow of the compiling process 1600 passes from Start operation 1602 to access operation 1604, in which information regarding a physician is accessed . . . .  From access physician information operation 1604, process 1600 proceeds to receive patient information operation 1606.   In an embodiment, receive operation 1606 receives patient-provided information from the patient experience survey . . . .  While both the access physician information operation 1604 and the receive patient information operation 1606 allow for the potential verification of received and gathered information, such verification is not required at these steps in accordance with embodiments of the present invention.
'060 Patent col. 17 ll. 7-17, 23-27 and '060 Patent col 17 ll. 63 - col. 18 l. 1.

"gathering" and/or "putting together."

**H.** **Using the Healthcare Provider-Verified Information, the Patient-Provider Information, and the Information Verified by the Independent Third-Party Source**

Claim 1 and Claim 15 describe the creation of the healthcare provider report by "using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source." '060 Patent col. 20 ll. 58-62; *id*. col. 22 ll. 49-52. The parties disagree about whether, as defendant contends, the "use" must be of "all" the designated information. Defendant fails to persuasively explain why the Court should read such a limitation into claim language. Defendant argues that "the" information refers back to the previous references to the categories of information described earlier in Claim 1. That appears not to be in dispute, but also does not resolve whether "all" such information must be used when creating a report on a particular healthcare provider. Defendant does not explain why the use of a subset of "information" somehow renders that information no longer within the categories previously identified in Claim 1. Furthermore, the categories of information are being "used" to "create" a report. There is nothing in the patent that requires, when receiving, acquiring, or compiling information, a predetermination of what will ultimately be put into a report. *Cf*. '060 Patent col. 18 ll. 37-39 ("The particular embodiments described herein are not intended to limit the types of information which may be provided and/or verified."). For instance, a patient or healthcare provider might provide information to the website that is not deemed relevant or important upon reaching the step of creating a report. Because the Court rejects the insertion of "all" in

20

the claim language, the phrase requires no construction.

### I. Hyperlink to an Affiliated Hospital, Medical Center, or Other Type of Treatment Center

Claim 4 describes a "hyperlink to an affiliated hospital, medical center, or other type of treatment center." '060 Patent col. 21 ll. 31-32. Plaintiff contends that this phrase needs no construction. Defendant disagrees, requesting the Court construe the phrase as follows: "Hyperlink to a website of the affiliated hospital, medical center, or other type of treatment center." Docket No. 93 at 23. Defendant includes "to a website" in order to clarify that the hyperlink cannot take somebody to another part of plaintiff's website. The Court disagrees that a hyperlink "to" an affiliated hospital necessarily must lead to a website external to plaintiff's website. In fact, from a review of the patent, it appears that "hyperlink" is used in the specification to refer to links to locations on plaintiff's website and not generally to external websites.[12] *See* '060 Patent col. 2 ll. 63-67 ("As noted above, another embodiment, and aspects related thereto, involves profiles and reports containing similar content, formatting, hyperlinks, etc. for searches regarding hospitals, medical practices, nursing homes, and/or other treatment facilities."); col. 7 ll. 15-22 ("In an embodiment where the results are too numerous to list on one Web page, a hyperlink 216 to additional physicians satisfying the search results, or to additional 'member physicians' closely matching the criteria (218), is

---

[12]Although there is language in the specification that could be interpreted to refer to hyperlinks to external websites, *see* '060 Patent col. 7 ll. 18-22 ("In another embodiment, where a hospital pays a fee to the company, a hyperlink 214 to the hospital affiliated with a particular physician listed will also be provided next to that physician's name."), the patent language as a whole does not naturally imply that a hyperlink must direct users to information external to the website.

included.  In another embodiment, where a hospital pays a fee to the company, a hyperlink 214 to the hospital affiliated with a particular physician listed will also be provided next to that physician's name."); col. 7 ll. 38-42 ("In accordance with an embodiment where a hospital or medical practice is a member entity, a hospital hyperlink 234 for accessing a report or ratings on that hospital or medical practice is shown next to those physicians affiliated with the hospital."); col. 11 ll. 34-37 ("In accordance with an embodiment of the invention, a patient may access the detailed information report 718 in FIG. 7B for a hospital by selecting the quality report hyperlink on the hospital ratings Web page 702 (FIG. 7A).").  Because the Court finds no support for reading "to a website of" into the claim language, the phrase does not need to be construed.

### J.   The Results List Further Includes an Advertisement

In Claim 8, the patent includes the phrase "the results list further includes an advertisement."  '060 Patent col. 21 ll. 44-45.  Defendant believes this phrase requires construction, but has not presented a definition that is anything other than a reconfiguration of the phrase, proposing the following definition: "The results list contains an advertisement as a part of the results list."  Docket No. 93 at 24.  The Court fails to see how this defines or otherwise clarifies the meaning of the phrase.  In fact, defendant does not contend that it does.  Rather, it simply points out what the clear language says and then proceeds to make what appears to be an invalidity argument. *See* Docket No. 93 at 23-24.  The Court will not construe this phrase because its meaning is evident.

**K.  Member of the Company Managing the Website / Member Healthcare Provider**

The phrases "member of the company managing the website" and "member healthcare provider" are found in Claim 9 and Claim 17, *see* '060 Patent col. 21 ll. 51-54; *id.* col. 23 ll. 7-8; *id.* col. 24 l. 1-3, 5, while "member healthcare provider" is also found in Claim 10.  *See id.* col. 21 l. 59.  Defendant contends that the "phrases 'member of the company managing the website' and 'member healthcare provider' mean member of the company entity that is managing the Web site."  Docket No. 93 at 25.  Again, defendant proposes a construction for these phrases that appears to do little other than reword them to no end.  In the absence of any persuasive explanation for why these phrases require construction, the Court declines to do so.

**IV.  CONCLUSION**

For the foregoing reasons, the Court concludes that the following terms and phrases require no construction: "healthcare provider report on the first healthcare provider"; "healthcare provider-verified information"; "verified by an independent third-party source"; "using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source"; "hyperlink to an affiliated hospital, medical center, or other type of treatment center"; "the results list further includes an advertisement"; and "member of the company managing the website"/"member healthcare provider."   The Court construes the remaining patent claim language at issue as follows:

• First Healthcare Provider:   a particular healthcare provider about whom information is requested and a report is produced.

- <u>Comparison Ratings of Healthcare Providers</u>:   ratings on multiple healthcare providers, including the "first healthcare provider," in the report on that "first healthcare provider," thus permitting comparison of the "first healthcare provider" with other potential healthcare providers.

- <u>Received from the First Healthcare Provider</u>:   receipt of information from the first healthcare provider or one of his or her agents, such as an employee, as distinguished from information received from patients or public sources.

- <u>Compiling/Compile</u>:   gathering and/or putting together.

It is so **ORDERED**.


DATED February 13, 2012.

BY THE COURT:


 s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge

24