**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S RESPONSE TO MDx's SECOND MOTION**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR PARTIAL**
**SUMMARY JUDGMENT OF NON-INFRINGEMENT**

---

Plaintiff Health Grades, Inc. ("Health Grades"), by its undersigned counsel, respectfully

submits its Response to MDx's Second Motion Pursuant to Federal Rule of Civil Procedure 56

for Partial Summary Judgment of Non-Infringement [Dkt. 195]:

## TABLE OF CONTENTS

LIST OF EXHIBITS ................................................................................................................... iv

TABLE OF AUTHORITIES ....................................................................................................... v

I.      SUMMARY OF THE RESPONSE ................................................................................... 1

II.     RESPONSE TO STATEMENT OF UNDISPTUED FACTS ....................................... 4

III.    STATEMENT OF ADDITIONAL DISPUTED FACTS ............................................... 4

IV.     ARGUMENT ...................................................................................................................... 5

        A.      The Law of Infringement ...................................................................................... 5

                1.      Literal Infringement ................................................................................. 5

                2.      Infringement under the Doctrine of Equivalents .................................... 6

                3.      The All Elements Rule Should *Not* Be So Broadly Applied that it
                        Swallows the Doctrine of Equivalents Entirely .................................... 7

                4.      Prosecution History Estoppel Does *Not* Preclude a Finding of
                        Infringement By an Equivalent that is Merely Tangential to the
                        Reason for a Narrowing Claim Amendment ...................................... 10

        B.      MDx's Current Website Literally Infringes .................................................. 12

                1.      MDx's Website Creates a Report on a Particular Doctor that
                        Includes Comparison Ratings of that Particular Doctor and Other
                        Doctors ..................................................................................................... 12

                2.      MDx's Non-Infringement Arguments Lack Merit and Do Not
                        Justify Summary Judgment of Non-Infringement .............................. 17

        C.      MDx's Current Website Infringes Under the Doctrine of Equivalents ........... 20

                1.      MDx's Display of Multiple Healthcare Provider Reports on the
                        Same Page Infringes Under the Doctrine of Equivalents .................. 20

                        a.      MDx's Display of Multiple Reports on the Same Page,
                                Each with Comparison Ratings of Its Particular
                                Provider, Is Equivalent to the Claimed Comparison
                                Ratings ......................................................................................... 20

                        b.      The Doctrine of Equivalents Argument Relating to
                                MDx's Display of Multiple Reports on the Same Page

Does Not Vitiate the Comparison Ratings Claim
Element .................................................................................................22

c.     The Doctrine of Equivalents Argument Relating to
MDx's Display of Multiple Healthcare Provider
Reports on the Same Page is Not Barred by Prosecution
History Estoppel.....................................................................................24

2.     MDx's Multi-Provider Report Infringes Under the Doctrine of
Equivalents ...........................................................................................................28

a.     MDx's Multi-Provider Report is Equivalent to a
Particular Healthcare Provider Report ..................................................28

b.     The Doctrine of Equivalents Argument Relating to the
Multi-Provider Report is Not Barred by Prosecution
History Estoppel Because it is Tangential to the Reason
for the Claim Amendment.....................................................................29

3.     MDx's Multi-Page Report Infringes Under the Doctrine of
Equivalents ...........................................................................................................31

a.     MDx's Multi-Page is Equivalent to a Single Page
Report.....................................................................................................31

b.     The Doctrine of Equivalents Argument Relating to the
Multi-Page Report is Not Barred by Prosecution
History Estoppel Because It Was Not Added by
Amendment............................................................................................32

V.     **CONCLUSION** ................................................................................................ 33

## LIST OF EXHIBITS

| Ex. No. | Description |
|---|---|
| 1 | Declaration of Kirstin Stoll-DeBell with screenshots captured from www.vitals.com |
| 2 | Prosecution History for U.S. Patent No. 7,752,060 (selected portions) |
| 2A | 6-16-2010:  Issue Notification |
| 2B | 5-20-2010:  Applicants' Comments on Reasons for Allowance |
| 2C | 5-14-2010:  Notice of Allowance |
| 2D | Index of Issued Claims |
| 2E | 4-26-2010:  Supplemental Response and Amendment |
| 2F | 4-12-2010:  Applicant's Summary of Examiner Interview |
| 2G | 3-12-2010:  Examiner Interview Summary |
| 2H | 2-16-2010:  Amendment and Response |
| 2I | 11-13-2009:  First Office Action |
| 2J | 9-30-2009:  Response to Restriction Requirement |
| 2K | 8-31-2009:  Restriction Requirement |
| 2L | 8-29-2006:  Original Application |
| 3 | MDx Medical, Inc.'s Objections and Responses to Plaintiff's First Set of Requests for Admission and Second Set of Interrogatories |
| 4 | MDx documents that show MDx copied Health Grades:  MDX0011841-60; MDX0016749-51; MDX0016838-39 |
| 5 | MDx PowerPoint Presentation: MDX0025310-33 |
| 6 | MDx Email regarding Health Grades '060 patent: MDX0019254-55 |
| 7 | Manual of Patent Examining Procedure ("MPEP") at § 2111.03 Transitional Phrases [R-3] - 2100 Patentability |
| 8 | Plaintiff Health Grades' February 2012 Supplement to its Rule 3.1(c) Disclosure |

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Dey, L.P.*, 287 F.3d 1097 (Fed. Cir. 2002), *cert. denied*, 537 U.S. 1039 (2002) ........................................................................9

*Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196 (Fed. Cir. 2007) ...........................................7

*Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188 (Fed. Cir. 2005) ................................................7

*Boston Scientific Corp. v. Schneider (Europe) AG*, 983 F. Supp. 245 (D. Mass. 1997) ....................................................................................8, 18

*Centennial Molding, LLC v. Carlson*, 401 F. Supp.2d 985 (D. Neb. 2005) .................................12

*Conroy v. Reebok Int'l*, 14 F.3d 1570 (Fed. Cir. 1994) ...................................................................7

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005 (Fed. Cir. 2006) .......................................................................................7

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309 (Fed. Cir. 1998) ....................................................................................8, 18

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) ......................................................................................10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) ...........................10

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) .....................................6

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605 (1950) .........................6, 22, 32

*Honeywell International Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (en banc), *cert. denied*, 545 U.S. 1127 (2005) ...........................................10, 12

*Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 385 F.3d 1360 (Fed. Cir. 2004) ....................................................................................11

*Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, 2011 U.S. Dist. LEXIS 136621 (N.D. Cal. Nov. 29, 2011) ...............................................................6

*LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364 (Fed. Cir. 2006) ........................9

*Lucent Technologies, Inc. v. Gateway, Inc.*, 543 F.3d 710 (Fed. Cir. 2008) .................................6

*Microstrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp.2d 432 (E.D. Va. 2004), *aff'd*, 429 F.3d 1344 (Fed. Cir. 2005) ....................................................................12

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335 (Fed. Cir. 2005) .............................................................................................................................6

*Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261 (Fed. Cir. 1999) ...........................................................................................................................9, 23

*Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514 (Fed. Cir. 1993) ...............................................7

*Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841 (Fed. Cir. 2006) ........................8

*RealSource, Inc. v. Best Buy Co.*, 514 F. Supp. 2d 951 (W.D. Tex. 2007) ......................7

*Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420 (Fed. Cir. 1997) ......................23

*Searfoss v. Pioneer Consolidated Corp.*, 374 F.3d 1142, 71 USPQ2d 1517 (Fed. Cir. 2004) ...........................................................................................................................8

*Soverain Software LLC v. Newegg Inc.*, 2010 U.S. Dist. LEXIS 89268 (E.D. Tex. Aug. 11, 2010) ...........................................................................................................6

*Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978 (Fed. Cir. 1989), *modified*, 872 F.2d 978 (Fed. Cir. 1989) ..........................................................8, 18

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558 (Fed. Cir. 1996) .............................................................................................................................6

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) ........................7

## **Regulations**

MPEP §2111.03 ...........................................................................................................28

## I.    <u>SUMMARY OF THE RESPONSE</u>

This is MDx Medical, Inc.'s ("MDx") third attempt for summary judgment of non-infringement based on the same argument:  MDx contends its current website (www.vitals.com) does not include the claimed "comparison ratings of healthcare providers" ***within*** the report on the "first healthcare provider."  MDx continues to seek summary judgment despite the following:

- MDx asserts that it "specifically changed" its website "to remove comparison ratings" and "anything close to them."  (MDx Motion at 2 (Dkt. 195).)  Yet, the title of its current website (shown on the right) confirms otherwise:[1]



- Health Grades asserts infringement against multiple variations of the accused website (*e.g.,* searching by doctor name or specialty) – yet MDx's Motion does not address all of the accused variations of its own website.[2]

- Health Grades asserts three different doctrine of equivalents arguments, any one of which would be sufficient for a reasonable jury to find infringement.  Although MDx asserts legal defenses based on the "all elements rule" and prosecution history estoppel, these arguments apply to *only* one of Health Grades' arguments.

- MDx documents admit that it copied Health Grades, Inc. ("Health Grades") on-line information system, which is the subject of Health Grades' patent-in-suit.[3]

---

[1]    Declaration of Kirstin Stoll-DeBell ("Stoll-DeBell Decl.") at ¶ 27 (Ex. 1 hereto).

[2]    For example, MDx does not address the following formats shown at pp. 8-11 and 41-45 of Health Grades' February 2012 Supplement to its Infringement Contentions (Ex. 8 hereto).

[3]    *See,* e.g., MDx Powerpoint Presentation (MDX0025310-333) at 315 (shown to the right) & MDX0025316, 326, 327, 333 (highlighting added) (Ex. 5 hereto); MDX0011841-MDX0011860 ("Copy HG Concept for 1st Page") (highlighting added); MDX0016749-51 (highlighting added); MDX0016838-39 (copying Health Grades' marketing materials) (highlighting added) (all attached as Exhibit 4 hereto).



- MDx's Motion requires that this Court resolve numerous disputed issues of material fact, any one of which would be sufficient to preclude Summary Judgment.

The primary issue raised by MDx's Motion is whether the adjacent screenshot[4] satisfies, either literally or equivalently, the claimed requirement of a "report on a first healthcare provider" (e.g. Dr. Sujana S. Chandrasekhar (highlighted yellow)) that includes comparison ratings of the first healthcare provider (e.g. 

orange[5] square) and other providers (e.g., blue squares) "thus permitting comparison of the "first healthcare provider" with other potential healthcare providers." (Markman Order at p. 23 (Dkt. 138).) This is a disputed issue of fact that should be decided by a jury.

MDx argues that this page cannot part of the claimed "healthcare provider report" because it is the claimed "results list." It is the job of a jury to compare the claim elements to the accused product to determine infringement. There is a variety of information on this page and a reasonable jury could conclude that some of it satisfies the "results list" limitation (e.g., each name listed matches the search query) and some of it meets the "report" limitation (e.g., specialty

---

[4]     Stoll-DeBell Decl. at ¶22. Other claim elements are also present on this page (e.g. physician-verified information (red box) and third-party verified information (purple box) and on additional pages linked to Dr. Chandrasekhar's name. *See id.* at ¶¶ 23-24.
[5]     Due to variations with the software used to annotate the screenshots, the "orange" circles on the screenshots sometimes appear more yellow and sometimes appear more red.

information, awards, ratings).  These are disputed issues of fact that should be decided by a jury.

MDx argues that this page cannot satisfy the "report on the first healthcare provider" limitation because it is not limited to a single, particular healthcare provider.  Even if true, MDx infringes under the doctrine of equivalents for two alternative reasons.

First, a report on multiple, particular doctors that includes comparison ratings for each doctor, is equivalent to a report on a single, particular doctor that includes comparison ratings of that doctor and other doctors.  This is a disputed issue of fact that should be decided by a jury.

Second, displaying multiple reports on the same page, where each report is on a single, particular doctor and each report contains comparison ratings of that doctor, is equivalent to a report on a single, particular doctor that includes comparison ratings of that doctor and other doctors.  This is a disputed issue of fact that should be decided by a jury.

MDx argues that this screenshot cannot part of the "healthcare provider report" because the claimed report begins on the page that is linked to the healthcare provider's name *and not before*.  In contrast, Health Grades argues that the screenshot above contains the first page of the healthcare report and the pages linked to the doctor name are additional pages of the same report. Indeed, the screenshot above contains detailed information about Dr. Chandrasekhar including her specialty (plastic surgery), her star rating, a rating of her affiliated hospital, her faculty appointment, her gender, and her languages (Spanish).  In any event, this is a disputed issue of fact that should be decided by a jury.

The claims do not literally require that the entire healthcare provider report be displayed on a single page.  But even if they did, creating a multiple page report with hyperlinks to additional pages, is equivalent to creating a single page healthcare provider report, wherein

additional information is accessed via a scroll bar.  This too is a disputed issue of fact.

II.      **RESPONSE TO STATEMENT OF UNDISPTUED FACTS**

1-2.     Admitted.

3.       Denied.  Claim 7, which depends from claims 1, 5, and 6 provides for accessing the healthcare provider report through a predetermined webpage that provides search capabilities for a database comprised of healthcare provider information, wherein the search of the database produces a results list of one or more healthcare providers satisfying the search criteria.

4.       Admitted.

5.       Denied.  While the claim language "comparison ratings of health care providers" was added for reasons related to patentability, it did not cause Health Grades to "obtain the '060 Patent."  (File History, 2/16/2010 Amendment and Response at pp. 9-14 (Ex. 2H hereto); File History, 4/26/2010 Supplemental Response and Amendment at pp. 9-12 (Ex. 2E hereto).) Moreover, the Examiner did not reference the claim language as a reason for allowing the patent in his "Reasons for Allowance."  (File History, 5/20/10 Reasons for Allowance (Ex. 2C hereto).)

6.       Denied.  The MDx website provides for "ratings."  (*See, e.g.*, Stoll-DeBell Decl. at ¶¶ 4-8 & 18 ("rated 4 stars by patients"), ¶¶ 9-10 ("overall patient rating").

7.       Denied.  The current MDx website is capable of creating a report on a particular healthcare provider that includes comparison ratings of that healthcare provider and other healthcare providers.  (Stoll-DeBell Decl. at ¶¶ 4-5, 15-16 & 18 (Ex. 1).)

III.     **STATEMENT OF ADDITIONAL DISPUTED FACTS**

1.       Whether MDx's current website can create a report on a first healthcare provider that includes ratings for that particular provider and ratings of other healthcare providers.

2003586317_1

(*See e.g.,* Stoll-DeBell Decl. at ¶¶ 4-5, 15-16 & 18 (Screenshots 1, 1A, 9, & 9A (Ex. 1).)

2.      Whether the screenshots cited in paragraph 1 above (and those like them) are part of a report on a particular healthcare provider.

3.      Whether the MDx's website can create a results list satisfying the search criteria on the same page as a healthcare provider report. (Stoll-DeBell Decl. at ¶¶ 4-6, 16, & 18-19.)

4.      Whether the multiple healthcare providers reports displayed on the same page, where each is limited to a single provider and each contains comparison ratings of that particular provider, performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed "comparison ratings of healthcare providers".  (Stoll-DeBell Decl. at ¶¶ 4, 7, 16 & 20 (Screenshots 1, 1C, 9, & 9C) (Ex. 1).)

5.      Whether the healthcare provider report that includes multiple healthcare providers, performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed "healthcare provider report on the first healthcare provider" as construed by the Court.  (Stoll-DeBell Decl. at ¶¶ 4, 8, 16 & 21.)

6.      Whether a multiple page report of a particular healthcare provider performs substantially the same function, in substantially the same way, to achieve substantially the same result as a single page report on a particular healthcare provider.

## IV.    ARGUMENT

### A.    The Law of Infringement

#### 1.    Literal Infringement

Whether a product or process infringes a claim requires a two-step analysis.  First, the claims must be interpreted.  Second, the properly-interpreted claims must be compared to the

accused product or process.  Applying the claims as construed by the Court to the accused

product is a question of fact to be decided by a jury.  *See, e.g., N. Am. Container, Inc. v.*

*Plastipak Packaging, Inc.*, 415 F.3d 1335, 1344 (Fed. Cir. 2005).

To literally infringe a claim, the accused product or process must practice every

limitation in the claim.  *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558,

1563 (Fed. Cir. 1996).  However, a patentee may rely on either direct or circumstantial evidence

to prove infringement.  *Lucent Technologies, Inc. v. Gateway, Inc.*, 543 F.3d 710, 723 (Fed. Cir.

2008).  Further, it is not a defense to assert that an accused device is capable of operating in a

non-infringing way, so long as it is also capable of satisfying the claim limitations.  *Finjan, Inc.*

*v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (quotation marks and citations

omitted); *Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, 2011 U.S. Dist. LEXIS 136621,

12-13 (N.D. Cal. Nov. 29, 2011); *Soverain Software LLC v. Newegg Inc.*, 2010 U.S. Dist. LEXIS

89268, 17-18 (E.D. Tex. Aug. 11, 2010).

2.      <u>Infringement under the Doctrine of Equivalents</u>

Patent claims protect the patentee not only from those who produce devices falling within

the literal patent claims, *but also* from "unscrupulous copyists" who "make unimportant and

insubstantial changes and substitutions in the patent which, though adding nothing, would be

enough to take the copied matter outside the claim, and hence outside the reach of law."  *Graver*

*Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 607 (1950).  Thus, even if a product

does not literally infringe a patent claim because it is missing one or more elements, the accused

product may still infringe under the doctrine of equivalents if it contains an equivalent element

that is insubstantially different from the missing element.  *Warner-Jenkinson Co. v. Hilton Davis*

6

*Chem. Co.*, 520 U.S. 17, 29-30 (1997).  Such element-by-element equivalency may be established by proof that an accused element performs substantially the same function, in substantially the same way, to produce substantially the same result as the claimed element of the patented invention.  *Hilton Davis*, 520 U.S. at 37-39; *see also Graver Tank*, 339 U.S. at 608.

Infringement under the doctrine of equivalents is a question of fact to be decided by a jury.  *Conroy v. Reebok Int'l*, 14 F.3d 1570, 1577 (Fed. Cir. 1994) (reversing a grant of summary judgment of non-infringement under the doctrine of equivalents); *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514, 519 (Fed. Cir. 1993) ("At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *RealSource, Inc. v. Best Buy Co.*, 514 F. Supp. 2d 951, 960 (W.D. Tex. 2007) (holding summary judgment of non-infringement under the doctrine of equivalents was improper because "it is a question of fact as to whether Defendants used 'substantially the same function in substantially the same way to obtain the same result.'")

    3.    <u>The All Elements Rule Should *Not* Be So Broadly Applied that it Swallows the Doctrine of Equivalents Entirely</u>

The all elements rule precludes infringement under the doctrine of equivalents if it would "vitiate *an entire* claim limitation."  *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (emphasis added).  But "a claim is not vitiated *merely* because it does not literally exist in the accused product -- such an interpretation of the 'all elements' rule would swallow the doctrine of equivalents entirely."  *Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1212 (Fed. Cir. 2007); *see also Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1018-1019 (Fed. Cir. 2006) (citing *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1317 (Fed. Cir. 1998) ("[A]ny analysis of infringement under the doctrine of equivalents

*necessarily* deals with subject matter that is 'beyond,' 'ignored' by, and not included in the literal scope of a claim." (emphasis added).)  The "all elements rule" should not be so broadly applied that it would reduce the doctrine of equivalents to "nothing more than a repeated analysis of literal infringement."  *See, e.g., Ethicon*, 149 F.3d at 1317; *Depuy Spine*, 469 F.3d at 1019.

Moreover, although the all elements rule does not allow a limitation to be eliminated, it does **not** *require* equivalent components of the accused product be found in a one-to-one correspondence with each limitation.  *Ethicon*, 149 F.3d at 1318-1320 (noting that elements may be combined without loss of equivalency).  For example, a single limitation may be distributed into multiple components of an accused product or two limitations may be functionally combined into one accused component.  *See, e.g., Searfoss v. Pioneer Consolidated Corp.*, 374 F.3d 1142, 1151, 71 USPQ2d 1517 (Fed. Cir. 2004); *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 989 (Fed. Cir. 1989), *modified*, 872 F.2d 978 (Fed. Cir. 1989); *Boston Scientific Corp. v. Schneider (Europe) AG,* 983 F. Supp. 245, 261 (D. Mass. 1997).

Application of the all elements rule is an extremely fact specific endeavor.  While MDx cited several decisions applying this rule to preclude infringement under the doctrine of equivalents, many other decisions found that this rule does not apply.[6]

---

[6]    *See, e.g., Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 850 (Fed. Cir. 2006): The patent related to a device used by hunters to simulate animal sounds.  The claim limitation required "*a plate having a length*, the plate extending generally upward from the frame and over a portion of the membrane, the *plate being differentially spaced* above the portion of the membrane at various locations along the length of the plate."  (emphasis added).  The accused device had a rounded dome instead of a plate.  The Federal Circuit affirmed the district court's denial of JMOL stating:  "because [the patent owner's] theory of equivalence (*i.e.*, that a dome is equivalent to the claimed 'plate') does not 'effectively eliminate ... [the "plate" limitation] **in its entirety**,' it does not violate the all limitations rule."  (emphasis added).
    *LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364, 1380-81 (Fed. Cir. 2006):  The claim limitation required:  "first executing in sequence all buffered read requests;

and then executing in sequence *all* buffered write requests . . . ." (emphasis added).  Most of the time, the accused device performed all write requests before read requests as literally required by the claim, but sometimes it executed all write requests before the matching read request, therefore precluding a finding of literal infringement.

> "[The patent owner] contends that performing some of the write requests is a permissible equivalent to performing all write requests, and that while performing no write requests may vitiate the claim language, performing some does not. As discussed above, there is inevitably a range of equivalents for performing all write requests, even if that range is narrow.  If substantially all or nearly all write requests are performed by the accused devices before each matching read request, *then the doctrine of equivalents would be fully applicable without vitiating the claim language.* Although such scope would be outside of the claim's literal scope, which is true in any doctrine of equivalents analysis, it would not be inconsistent with the language of the claim. Therefore, a genuine issue of material fact exists as to whether the accused device can function within the narrow range of equivalents that we have described above, and we vacate the trial court's grant of summary judgment of noninfringement on this ground."

*Id.* at 1381 (citations omitted) (emphasis added).

*Abbott Laboratories v. Dey, L.P.*, 287 F.3d 1097, 1107-08 (Fed. Cir. 2002), *cert. denied*, 537 U.S. 1039 (2002):  The claim limitation required a maximum of 91.8 percent phospholipid content.  The accused product had 94.5% phospholipid content.  The patent owner's expert testified that 95% lipid content would work the same as 91.8 %.  Nevertheless, the district court granted summary judgment of no infringement based in part on the all elements rule.  The Federal Circuit vacated this order stating:

> "Thus, while an exact number cannot be stated any more precisely than "less than 100%," an upper limit does exist. Abbott's expert also testified that 95% phospholipid, an amount relevant to the Curosurf (R) product accused of infringement, would be exactly the same as the claimed phospholipid. Although this testimony expands the upper limit beyond the range literally recited by the claim, *it does not eliminate the upper limit altogether*. In addition, Abbott only asserts an upper limit of 94.5%. An examination of what happens in the extreme outer ranges of phospholipid content is therefore irrelevant to the scope of equivalents asserted by Abbott."

*Id.* at 1108 (emphasis added).

*Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1271 (Fed. Cir. 1999): The claim limitation required a "memory selection switch", which was interpreted to be a "mechanical switch for selecting memory locations."  The accused product had a software switch instead of a mechanical switch.  The Federal Circuit found that "[a]pplying the doctrine of equivalents to cover Intellicode's software does not vitiate the 'memory selection switch'

9

4.  Prosecution History Estoppel Does *Not* Preclude a Finding of Infringement By an Equivalent that is Merely Tangential to the Reason for a Narrowing Claim Amendment

Prosecution history estoppel may limit infringement under the doctrine of equivalents by preventing a patentee from obtaining a range of equivalents that would, in effect, resurrect subject matter that was surrendered during the prosecution of the patent application.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002)).

Typically, prosecution history estoppel is invoked when a "narrowing" amendment is made to a claim during prosecution for reasons of patentability.  *Honeywell International Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1144 (Fed. Cir. 2004) (en banc), *cert. denied*, 545 U.S. 1127 (2005).  When prosecution history applies, *a presumption* arises that the claim limitation is not entitled to any range of equivalents.  The patentee, however, has the opportunity to rebut this presumption.  *See Festo*, 344 F.3d at 1367.  One way of rebutting the presumption is by showing that the amendment was "tangential" – that is, the "reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent."  *Pioneer Magnetics,* 330 F.3d at 1357.  The inquiry into whether a patentee can rebut the *Festo* presumption under the "tangential" criterion focuses on the patentee's objectively apparent reason for the narrowing amendment that is discernible from the prosecution history record.  *See Festo,* 344 F.3d at 1356.

---

element."  It vacated summary judgment of no infringement under the doctrine of equivalents stating:  "The question remains whether the Intellicode's software-driven memory selection scheme is equivalent to a mechanical switch. This issue remains for the fact-finder to determine at trial in view of the considerable evidence in the record."

10

In *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, the Federal Circuit affirmed a finding that prosecution history estoppel did not limit infringement under the doctrine of equivalents because the narrowing amendment made during prosecution did not relate to the equivalent that was being accused of infringement.  385 F.3d 1360 (Fed. Cir. 2004).  The patent claimed a process for installing a pipe liner by applying a vacuum to a liner tube at the same time a resin is squeezed from a near end of the tube toward a far end of the tube.  *See id.* at 1362. The patent disclosed placing a hole and a cup near the first end to apply the vacuum and then moving the hole and the cup successively down the tube toward the far (second) end.  The original application's broadest claim contained no limitation as to the number or location of cups. *See id.* at 1368.  During prosecution, the Patent Office rejected the claim over prior art that showed a similar process, but which used a single vacuum source at the far (second) end of the tube liner.  The patent owner responded by amending the claim to limit it to use of "a cup," which was an improvement over the prior art because the prior art required a large compressor to draw a vacuum through the entire length of the pipe.  The patent then issued.

The patent owner asserted the amended claim against a process, which did not literally infringe because it used multiple cups along the length of the pipe liner.  The Federal Circuit held that prosecution history estoppel did *not* preclude infringement under the doctrine of equivalents because the reason for the amendment was "tangential" to the accused equivalent:

> "[T]he narrowing amendment in this case was for the purpose of distinguishing the invention over [the prior art]. [The patentee] made it clear that the difference between its process and [the prior art] was that its process did not have the disadvantage of the [prior art] process of a large compressor at the end of the liner. There is no indication in the prosecution history of any relationship between the narrowing amendment and a multiple cup process, which is the alleged equivalent in this case. Thus, we hold that plaintiffs have successfully rebutted the *Festo* presumption by establishing that the amendment narrowing the claimed invention from multiple cups to a single cup was

11

tangential to accused [process], which used multiple cups attached at different points along the liner tube."

*Id.* at 1370.

In *Primos, Inc.*, discussed above, the claim required "*a plate having a length*, . . ., the *plate being differentially spaced* above the portion of the membrane at various locations along the length of the plate." 451 F.3d at 849. During prosecution, the patent owner amended the term "plate" to add the "differentially spaced above . . . the membrane" limitation to distinguish the claims from a device that had no space between the membrane. The Federal Circuit affirmed infringement because the purpose of this amendment (patent's spacing versus prior art's no spacing) was tangential to the accused equivalent, which had a dome instead of a plate.

Several other courts have found that infringement under the doctrine of equivalents was available despite narrowing amendments during prosecution because the reason for the amendment was tangential to the equivalent in question. *See, e.g., Centennial Molding, LLC v. Carlson*, 401 F. Supp.2d 985, 994 (D. Neb. 2005); *Microstrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp.2d 432, 444 (E.D. Va. 2004), *aff'd*, 429 F.3d 1344 (Fed. Cir. 2005).

Finally, prosecution history estoppel "applies *only* to the amended or newly added limitation; there is no surrender of territory as to unamended limitations that were present in the original claim." *Honeywell*, 370 F.3d at 1144.

      B.     **MDx's Current Website Literally Infringes**

          1.     <u>MDx's Website Creates a Report on a Particular Doctor that Includes Comparison Ratings of that Particular Doctor and Other Doctors</u>

MDx's Motion focuses solely on the comparison ratings element from claims 1 and 15, (MDx Motion at p. 2 (Dkt. 195)) which is shown in bold for claim 1:

12

creating . . . a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, **wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers** . . . .

The Markman Order defined two terms within the bolded phrase above:

- <u>First Healthcare Provider</u>: a particular healthcare provider about whom information is requested and a report is produced.  (Markman Order at 23.)

- <u>Comparison Ratings of Healthcare Providers</u>: ratings on multiple healthcare providers, including the "first healthcare provider," in the report on that "first healthcare provider," thus permitting comparison of the "first healthcare provider" with other potential healthcare providers.  (Markman Order at p. 24.)

After a patient/user enters search criteria for a particular doctor, MDx's website creates a healthcare provider report on the particular physician using information from the MDx database (shown to the right), including using healthcare provider-verified information (red square), patient-provided information (green square), and information verified by the independent third-party source (purple square) about the first healthcare provider.[7]  For example, if a patient runs a name search for Dr. James Smith who



---

[7]     MDx does not assert that these elements are missing for purposes of this motion.  In any event, with regard to physician-verified information, MDx encourages physicians to edit their information and MDx's website states that it obtains information from physicians.  (Stoll-DeBell Decl. at ¶¶ 12 ("Are you Dr. Smith?  <u>Edit your profile</u>") & 26 (stating Vitals gets information from doctors) (Ex. 1).)

practices in New York, NY, MDx's current website uses information within MDx's database to produce a report on Dr. James Smith.  A screenshot of the first page of Dr. Smith's report is shown below.  (Stoll-DeBell Decl. at ¶¶ 10 & 12.)

Contrary to the arguments made in MDx's Motion, the healthcare provider reports on MDx's current website include ratings for multiple doctors and ratings of the particular doctor who is the subject of the report.  These comparison ratings are contained within the "highlights" section of a particular doctor's report, thus permitting comparison of that particular doctor with other potential doctors.  In this example, Dr. James Smith's report includes comparison ratings on Dr. Smith (orange circle), namely a four star rating by his patients, and comparison ratings on another healthcare provider (Dr. Anthony Smith) (blue circle), which include a patient's choice award, a top doctor award, and a 4-star rating by his patients.  A potential patient may use these ratings to compare Dr. James Smith with Dr. Anthony Smith.

By clicking on Dr. James Smith's name, a patient is able to access additional pages of Dr. Smith's report, screenshots of which are shown below, wherein the healthcare provider verified information is boxed in red, patient-provided information is boxed in green, third-party verified information is boxed in purple, and comparison ratings are boxed in orange:

---

Regarding patient-provided information, MDx admits that its current "www.vitals.com website includes an on-line patient experience survey that allows a patient to rate a physician." Defendant MDx Medical, Inc.'s Objections and Responses to Plaintiff's First Set of Requests for Admission and Second Set of Interrogatories at p. 13 (Ex. 3 hereto).
Regarding third party verified information, MDx's website admits that it gets information from third parties including "medical boards from all 50 states, federal websites, hospitals, doctors, surveys, business alliances, and third party affiliates."  (Stoll-DeBell Decl. at ¶ 26.)





(Stoll-DeBell Decl. at ¶¶ 10-14 (Ex. 1).)

Another example of MDx's literal infringement occurs when a potential patient runs a specialty search. If a patient searches for a female plastic surgeon, who speaks Spanish, was educated in the U.S., is board certified, and practices in New York, NY, MDx's website creates a healthcare provider report on Dr. Sujana Chandrasekhar, the first page of which is shown to the right.



(Stoll-DeBell Decl. at ¶¶ 16-17 &22 (Ex. 1).)  The

16

report on Dr. Chandrasekhar was created using physician-verified information (red box), patient-provided information (shown in subsequent pages of her report), and information verified by a third party (purple square).  It also contains comparison ratings of Dr. Chandrasekhar (orange square) and others (blue squares).  Therefore, the report on Dr. Chandrasekhar literally infringes the "healthcare provider report" element of claims 1 and 15.  At a minimum, there are questions of fact regarding whether the above screenshots (and others) meet the claimed comparison ratings of healthcare providers.  Thus, MDx's Motion should be denied.

       2.    <u>MDx's Non-Infringement Arguments Lack Merit and Do Not Justify Summary Judgment of Non-Infringement</u>

MDx insists that the claimed healthcare provider report on the first healthcare provider is limited to the "doctor profile page" on its website.  Health Grades disagrees.  MDx makes several arguments about why the webpages shown below (collectively the "Disputed Webpages") do not constitute part of a healthcare provider report on the first healthcare provider that includes comparison ratings of healthcare providers.  Health Grades disagrees.

 

(Stoll-DeBell Decl. at ¶¶ 4 & 16 (Ex. 1).)

17

First, MDx makes the conclusory argument that the Disputed Webpages cannot be the first page of a "healthcare provider report" because, it asserts, they are the "results list" required by claim 7.  Claim 7 states:

> 7.      The method as defined in claim 6, wherein the search of the database produces a results list of one or more healthcare providers satisfying the search criteria, wherein the results list includes the first healthcare provider.



MDx has not cited, and Health Grades is unaware of, any authority that precludes a patentee from relying on the same computer screen display of an Internet website to meet multiple elements of a claim.[8]  Here, the screenshot (shown to the left) includes a results list (names within the black boxes) of physicians who meet the search criteria, but it also contains additional information that is not required by the results list element (e.g., specialty information, address, ratings, awards, hospital affiliations, board certifications), which additional information meets the claim limitation of a report on a particular healthcare provider as discussed above.  (Stoll-DeBell Decl. at ¶¶ 16 & 19 (Ex.1).)  Thus, this page literally meets both the healthcare provider report element *and* the results list claim element, each of which require different things.

---

[8]      To the contrary, the same structure in an accused product may satisfy two separate claim limitations.  *See, e.g., Ethicon*, 149 F.3d at 1318-1320 (noting that a one-to-one correspondence of components is not required, and elements may be combined without loss of equivalency); *Sun Studs*, 872 F.2d at 989 ("An apparatus claim describing a combination of components does not require that the function of each be performed by a separate structure in the apparatus. The claimed and accused devices must be viewed and evaluated as a whole."); *Boston Scientific,* 983 F. Supp. at 261 ("multiple elements of the patented device may each have an equivalent in the same element of the accused device").

As for MDx's argument that the Disputed Webpages are not part of the claimed "report," Health Grades disagrees.  Paper reports often contain many pages and the same is true for reports in electronic form.  A reasonable jury could easily conclude that that the foregoing screenshots are the first page of a multi-page report and that additional pages of the report may be accessed by clicking a hyperlink on the first page.  Further, the claim does not literally require that the report be limited to one-page and MDx did not ask the Court to so limit the claimed report during the Markman proceedings.  Thus, whether the foregoing page is part of the healthcare provider report is a disputed question of material fact that should be decided by the jury.

Second, MDx makes a similar argument that the overall patient rating is the claimed patient-provided information and thus cannot also be comparison ratings.  This argument fails for the same reason as the one above.  The jury should determine whether MDx's website contains the claimed patient-provided information, whether the star ratings (or other ratings) meet this claimed patient-provided information, and whether the ratings meet the Court's definition of comparison ratings.  These are all disputed issues of fact that preclude summary judgment.

Third, while the Court's construction of "report on the first healthcare provider" requires that the report be on a *particular* provider, it does not preclude the report from additionally containing information relating to other providers.  Indeed, such would be contrary to the Court's definition of "comparison ratings" which *requires* the report include ratings of other healthcare providers.  (Markman Order at p. 24.)   But even if the healthcare provider report must be limited to the first healthcare provider and only the first healthcare provider, MDx still infringes this claim element under the doctrine of equivalents as described in a separate section below.

C.        **MDx's Current Website Infringes Under the Doctrine of Equivalents**

If the claims literally require that the healthcare provider report be limited to a single doctor, then MDx infringes under the doctrine of equivalents under two alternate theories:  1) its side-by-side display of multiple reports, each on a single provider and each including comparison ratings for that provider, is equivalent to the claimed report on the first healthcare provider, including comparison ratings of providers; and 2) its report that includes multiple, particular healthcare providers is equivalent to a report that includes only the first healthcare provider.

If the claims literally require that the healthcare provider report be limited to one page (a position with which Health Grades disagrees because the claims are silent (as is the specification) as to the number of pages in a report), MDx also infringes because its multi-page reports are equivalent to a single page report.  Each argument is addressed below.

1.        MDx's Display of Multiple Healthcare Provider Reports on the Same Page Infringes Under the Doctrine of Equivalents

a.        MDx's Display of Multiple Reports on the Same Page, Each with Comparison Ratings of Its Particular Provider, Is Equivalent to the Claimed Comparison Ratings

MDx's current website displays multiple healthcare provider reports (red boxes), each limited to a single healthcare provider and each containing comparison ratings of that particular healthcare provider (orange boxes), on the same webpage, side-by-side, as shown below:

 

(Stoll-DeBell Decl. at ¶¶ 4, 7, 16 & 20 (Ex. 1).)  While none of these reports include ratings of

other healthcare providers, MDx's website

performs substantially the same function, in

substantially the same way, to produce

substantially the same result as the claimed

comparison ratings element.  The "function" of

the comparison ratings claim element is to allow

patients to compare the first healthcare provider,

e.g., Dr. James Smith or Dr. Sujana Chandrasekhar, with other healthcare providers, e.g., Dr.

Anthony Smith or Dr. Robin Shinoff.  (Markman Order at p. 24.)  MDx's website performs the

same function.  The "way" this function is achieved in the claim (as construed by the Court) is to

include comparison ratings of other healthcare providers in the same report with ratings of the

first healthcare provider.  The way MDx achieves this function is by displaying multiple reports,

each with comparison ratings of the first healthcare provider, on the same page, so that a patient

can compare the first healthcare provider with other healthcare providers.  This is substantially

the same as the claim.  The "result" of the claim is a report that allows for comparison of the first healthcare provider with others.  The result of MDx's website is substantially the same, i.e., multiple reports that allow for comparison of the first healthcare provider with other providers.

MDx blatantly copied Health Grades.  *See, e.g.*, MDx PowerPoint Presentation (MDX0025310-33) at MDX0025315 (shown to the right); MDX0011841-MDX0011860 ("Copy HG Concept for 1ˢᵗ Page") (highlighting added); MDX0016749-51 (providing links to Health Grades website for MDX to copy) (highlighting added); MDX0016838-39 (copying Health Grades' marketing materials) (highlighting added) (all attached as Ex. 4).)  Now MDx is attempting to avoid infringement by making insignificant changes.  This is exactly the type of behavior that the doctrine of equivalents was designed to prevent.  *Graver Tank*, 339 U.S. at 607.

At a minimum, whether MDx's Disputed Webpages perform substantially the same function, in substantially the same way, to achieve substantially the same result are disputed issues of fact that should be decided by a jury.

> b.  The Doctrine of Equivalents Argument Relating to MDx's Display of Multiple Reports on the Same Page Does Not Vitiate the Comparison Ratings Claim Element

MDx asserts that Health Grades' multiple reports on the same page argument would vitiate the comparison ratings element.  It says: "the element at issue is location, and the claims identify a precise location where the comparison ratings must be found.  That is, . . . ***included within*** the report on the first healthcare provider."  (MDx Motion at p. 9 (emphasis in original) (Dkt. 195).)  The claim *element* in question is set forth below:

> creating . . . a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider ***includes*** comparison

22

ratings of health care providers;

(emphasis added).  MDx essentially argues a single word ("includes") will be vitiated.  This argument is wrong for several reasons.

First, if every word in a claim is defined as a "limitation," then the "all elements rule" would require the accused device to meet every single word in a claim, thereby repeating the literal infringement analysis and swallowing the doctrine of equivalents.  As discussed above, the Federal Circuit has cautioned against such a broad interpretation of the all elements rule.

Second, Health Grades' argument does not vitiate *the entire limitation* (as properly defined), which is what is required by the "all elements rule."  At its narrowest, the "limitation" at issue is:

> wherein the healthcare provider report on the first healthcare provider includes comparison ratings of health care providers . . . .

Health Grades' "multiple reports on a single page" argument assumes that only one part of the entire limitation is literally missing – that is, the ratings of other doctors are not "included" in the report on the first healthcare provider, but rather are *adjacent* to it.  Allowing this argument will not vitiate *the entire* claim limitation, but only a portion of it.

Third, there is no bright line rule applying the "all elements rule" when claimed locations are at issue and the *Sage Prods.* case cited by MDx is easily distinguishable on the facts.  126 F.3d 1420 (Fed. Cir. 1997).  In *Sage Prods.*, the claimed limitation included clear and narrow structural limitations and application of the doctrine of equivalents would have utterly written out of the claim not one, but at least two express limitations.  The claim related to a container for disposing of sharp medical instruments with an elongated slot "at the top" of the container and a barrier means adjacent to the slot with a constriction that was positioned "over" of the slot.  *See*

23

*id.* at 1422.  The other party placed the elongated slot within the container, rather than at the top. Under the patent owner's equivalents theory, a finding of equivalents for one limitation ("at the top") would necessarily require writing out of the claim another limitation ("over said slot").  *See Overhead Door*, 194 F.3d at 1271 (discussing Sage Prods.).  No matter how the patent owner applied the claim to the accused device under the doctrine of equivalents, the device was always missing at least one limitation.  *See id.*  Thus, the claim language specifically negated the patentee's equivalence theory.  In contrast in this case, the claim limitation does not include clear and narrow language about the location of the comparison ratings – it merely says the report "includes" the ratings.  The term "includes" is a standard, generic transitional phrase that is used by patent lawyers to create an open-ended claim that does not exclude additional, unrecited elements or method steps.  (Manual of Patent Examining Procedure ("MPEP") at § 2111.03 Transitional Phrases [R-3] - 2100 Patentability (Ex. 7 hereto).)  Similarly, Health Grades' doctrine of equivalents argument that "adjacent to" is equivalent to "includes" does not require writing out another claim limitation.

As such, the "all elements rule" should not preclude Health Grades' argument that displaying multiple reports side-by-side on the same page, each with comparison ratings of a particular physician, is equivalent to displaying one report on a particular physician with comparison ratings of that physician and other physicians.

          c.      <u>The Doctrine of Equivalents Argument Relating to MDx's Display of Multiple Healthcare Provider Reports on the Same Page is Not Barred by Prosecution History Estoppel</u>

During prosecution, the Patent Office rejected claims 1-6, 8, 9, 13-15 and 19 (issued as claim 15) under 35 U.S.C. §103 as being unpatentable over Henley (U.S. Patent Pub. No.

2003/0195838) in view of Cook et al. (U.S. Patent Pub. No. 2006/0080146).  In response, the

Applicants amended the report element of claims 1 and 19 to add the comparison ratings

limitation as shown below:

> 1.   (Currently Amended) A method of providing healthcare provider information to potential
> patients, said method comprising:
>
> > compiling healthcare provider-verified information;
> >
> > compiling past-patient provided information;
> >
> > compiling information verified by independent third-party sources;
> >
> > creating, by a processor, a healthcare provider report using the ~~physician-verified~~
> > healthcare provider-verified information, the past-patient provided information, and the ~~verified~~
> > information verified by independent third-party sources, wherein the healthcare provider report
> > includes comparison ratings of healthcare providers; and
> >
> > providing access to the healthcare provider report over a computer network.

(File History, 2/16/10 Amendment and Response at p. 2 (Ex. 2H).)

> 19.   (Currently Amended) An on-line information system for providing verified information
> regarding healthcare providers, the system comprising:
>
> > at least one processor; and
> >
> > memory coupled with and readable by the at least one processor and comprising a series
> > of instructions that, when executed by the at least one processor, cause the at least one processor
> > to:
> >
> > > ~~a compilation module for compiling~~ compile healthcare provider-verified information;
> > >
> > > ~~a compilation module for compiling~~ compile patient-provided information;
> > >
> > > ~~a compilation module for compiling~~ compile healthcare provider information verified by
> > > an independent third party; and
> > >
> > > ~~a creation module for creating~~ create a healthcare provider report using the ~~provider-~~
> > > ~~verified~~ healthcare provider-verified information, the patient-provided information, and the
> > > independently verified information, wherein the healthcare provider report includes comparison
> > > ratings of healthcare providers; ~~and~~
> > >
> > > ~~a computing system with access to healthcare provider information stored in a database,~~
> > > ~~wherein patients may search the database and review healthcare provider reports to differentiate~~
> > > ~~among healthcare providers.~~

(*Id.* at p. 5 (Ex. 2H).)  The prosecution history makes clear that the comparison ratings limitation

was added to overcome the Patent Office's rejection based on the Henley and Cook prior art[9]:

> Claims 1-6, 8, 9, 13-15, and 19 were rejected under 35 U.S.C. §103(a) as allegedly being unpatentable over Henley in view of Cook. . . . Specifically, the references fail to teach or suggest all of the claim elements.
>
> For example, Henley in view of Cook fail to teach or suggest at least the following with respect to claim 1:
>
>> creating, by a processor, a healthcare provider report *using the healthcare provider-verified information, the past-patient provided information, and the information verified by independent third-party sources, wherein the healthcare provider report includes comparison ratings of healthcare providers;* and
>>> providing access to the healthcare provider report over a computer network.
>
> *Claim 1, supra (as amended) (emphasis added).*

(*Id.* at pp. 9-12 (italicized emphasis in original) (Ex. 2H).)  The Amendment and Response

further argued that while Henley teaches making **facts** available for comparison, this is not the

same thing as comparison **ratings**:

> Further, Henley fails to teach or suggest, for example, ". . . wherein the healthcare provider report includes comparison ratings of health care providers . . ."  The Office Action on Henley at "paragraphs 0015-0016, 0037, 0081, 0090 and 0107" for providing such a teaching.  However, the Applicants respectfully disagree. The cited portions of Henley provide no teaching or suggestion of "comparison ratings." . . . . For example, paragraph [0107] provides that "[t]he qualifier engine and associated databases allow the qualifications of both the physician providing the service and the qualifications of the hospital/treatment facilities [to be] available to the consumer/patient." *Henley, at [0107].* **However, making general qualifications "available" to a consumer does not teach or suggest "comparison ratings."** Additionally, while paragraph [0090] provides for "hyperlinks to databases storing the identification of medical service providers having satisfied a particular qualifying requirement," *Henley, at [0090],* access to databases storing the "identification" of medical service providers satisfying a particular requirement provides no teaching or suggestion of, for example, "comparison ratings" of health care providers. **Henley thus fails to provide any teaching or suggestion of at**

---

[9]     The reason for amending a claim is a different issue from whether the amendment was successful in obtaining allowance of the claim.  Here, the amendment was made for reasons of patentability (i.e., to distinguish prior art) but did not result in the claims being allowed.  Instead, the Patent Office required additional amendments before it allowed the claims.

> least ". . . **wherein the healthcare provider report includes comparison ratings of health care providers** . . ."

(*Id.* at pp. 9-12 (italicized emphasis in original, bolded emphasis added) (Ex. 2H).)

Recognizing that the reason for the amendment must relate to the accused equivalent, which in this case is ratings being displayed adjacent to, rather than within, the physician report, MDx argues that the comparison rating amendment distinguished over Henley, which "would allow a user to view multiple different locations and thus compare providers." (MDx Motion at p. 11 (Dkt. 195).) Not true. Most of the paragraphs in Henley that MDx cites for this argument were *not* mentioned at all during prosecution by Health Grades. (*Id.* at 12 (citing Henley at ¶¶ 30, 114, 127, 137 and Fig. 18); *compare with* File History, 2/16/10 Amendment and Response at pp. 9-12 (citing only ¶¶ 15-16, 37, 81, 90 and 107 and no figures) (Ex. 2H).)

Rather, as shown in the above quote from Health Grades' Amendment and Response, Health Grades amended the claim to add the requirement for comparison ratings, which it argued were entirely missing from Henley. Health Grades admitted that Henley disclosed providing *facts* for comparison (i.e., general qualifications of physicians), but argued that this not the same thing as providing *ratings* for comparison. Health Grades did not make any arguments related to the location within the system of the ratings or anything else.

This Court <u>must</u> focus on the express language in the prosecution history to determine the reason for the amendment. *See Festo,* 344 F.3d at 1356. Here, the express language indicates the reason related to the difference between ratings and facts, which is unrelated to the accused equivalent (which includes ratings located in adjacent reports). As such, the reason for this narrowing amendment is tangential to the MDx equivalent that is accused in this case.

MDx argues that the focus of the amendment was on the word "includes," which it

repeatedly emphasizes in bold, italicized, and underlined text.  (MDx Motion at p. 12 (Dkt. 195).)  Nonsense.  The term "includes" is a standard transitional phrase routinely used in patent claims.[10]  The focus of the amendment was the addition of comparison ratings altogether (not where they were located), which was a feature not taught by Henley.

Further, contrary to MDx's argument, Health Grades is not trying to "cover . . . an overall computer system where the user searches the database generally and compares what is found to help differentiate providers."  (MDx Motion at p. 13.)  Instead, Health Grades is trying to cover the accused system, which literally includes every claim limitation with the possible exception of ratings of other doctors *within* the first healthcare provider report, but it places these ratings *adjacent to* and *on the same page as* the first healthcare provider report.  This accused equivalent is far different from Henley and from the reason for amending the claims.

Thus, Health Grades should not be precluded from arguing that MDx infringes the asserted claims because it displays multiple healthcare provider reports on the same page, each report with comparison ratings of its particular provider, which is equivalent to a report on a first healthcare provider that contains comparison ratings of other healthcare providers.

        2.       MDx's Multi-Provider Report Infringes Under the Doctrine of Equivalents

            a.      MDx's Multi-Provider Report is Equivalent to a Particular Healthcare Provider Report

MDx's current website can create a report (red box) that includes the claimed information about multiple, particular healthcare providers and that includes comparison ratings of each particular healthcare provider (orange boxes) (below).  (Stoll-DeBell Decl. at ¶¶ 16 & 21.)

---

[10]      MPEP §2111.03 ("The transitional term "comprising", which is synonymous with "including," . . . is inclusive or open-ended and does not exclude additional, unrecited elements or method steps.") (Ex. 7).

While this report is not limited to a single, particular healthcare provider, it performs substantially the same function, in substantially the same way, to produce substantially the same result as the claimed report on the first healthcare provider.  The "function" of the "report on the first healthcare provider" claim element is to allow patients to obtain detailed information about a  particular doctor.  MDx's website has substantially the same function.  The functional difference of reporting on one particular doctor versus multiple particular doctors is insubstantial.  The "way" this function is achieved in the claim (as construed by the Court) is to create a report with the three types of information (i.e., doctor-verified, patient-provided, and third-party verified). The way MDx achieves this function is substantially the same. The "result" of the claim is a report that includes the claimed information about the particular provider.  The result of MDx's website is substantially the same – a single provider report is substantially the same as a multiple provider report – both have information on the single particular provider.  At a minimum, whether MDx's multiple provider report performs substantially the same function, in the same way, to achieve the same result are disputed issues of fact that should be decided by a jury.

> b.      The Doctrine of Equivalents Argument Relating to the Multi-
>         Provider Report is Not Barred by Prosecution History Estoppel
>         Because it is Tangential to the Reason for the Claim Amendment

After the Applicants submitted the amendment described earlier, they conducted an

interview with the Patent Office Examiner and then submitted a supplemental amendment that

added limitations to the healthcare provider report element of claim 1:

> creating, by [[a]] the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the past patient patient-provided information, and the information verified by the independent third-party source sources, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and

File History, 4/26/10 Supplemental Response and Amendment at p. 3 (highlighting added) (Ex.

2E).)  The same limitation was added to claim 19:

> create a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source independently verified information, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and

(*Id.* at p. 7 (highlighting added) (Ex. 2E).)

The Supplemental Response and Amendment states that the amendments, including the

addition of the first healthcare provider limitation, were made for reasons related to patentability

to overcome the rejection based on prior art references Henley and Cook:

> Claims 1-6, 8, 9, 13-15, and 19 were rejected under 35 U.S.C. §103 (a) as allegedly being unpatentable over Henley in view of Cook. Applicants respectfully disagree with and traverse these rejections. . . .  Specifically, the references fail to teach or suggest all of the claim elements.
>
> For example, Henley in view of Cook fail to teach or suggest at least the following with respect to claim 1:
> . . . .
>
> > *creating,* by the at least one computer processor, *a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source,* wherein the healthcare provider report on

the first healthcare provider includes *comparison ratings* of health care providers;

    . . . .

*Claim 1, supra (as amended) (emphasis added).*

  [H]enley is thus related to on-line auctioning of medical services and products and fails to disclose or suggest at least: " . . . creating, by the at least one computer processor, *a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source,* wherein the healthcare provider report on the first healthcare provider includes *comparison ratings* of health care providers . . . ."

  Further, Cook fails to cure the deficiencies of Henley. As discussed previously, . . . Cook fails to provide any teaching or suggestion, at a minimum, of " . . . creating, by the at least one computer processor, *a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source,* wherein the healthcare provider report on the first healthcare provider includes *comparison ratings* of health care providers . . . ."

  Accordingly, Henley in view of Cook fail to teach or suggest each and every limitation of claim 1, and allowance of this claim is therefore respectfully requested.

(*Id.* at pp. 9-11 (italicized emphasis in original) (Ex. 2E).)  These amendments and arguments did not relate to whether the report was on only one provider or many providers.  Thus, the reason for the amendment was tangential to the accused equivalent in MDx's accused website.

  Therefore, Health Grades should not be barred from arguing that MDx infringes because it creates a report on multiple, particular healthcare providers, which is equivalent to a report on a first healthcare provider that contains comparison ratings of other healthcare providers.

  3.  <u>MDx's Multi-Page Report Infringes Under the Doctrine of Equivalents</u>

    a.  <u>MDx's Multi-Page is Equivalent to a Single Page Report</u>

  MDx's current website is capable of creating a multiple-page report on a particular healthcare provider in response to a request for information about that healthcare provider.

31

(Stoll-DeBell Decl. at ¶¶ 24-25 (Screenshots 12-16) (Ex. 1).)  Indeed, MDx copied the multiple

page report format from Health Grades:

(MDx PowerPoint Presentation at

MDX00255333 (Ex. 4).)



### New Doctor Page

- It is becoming more advantageous to have additional page(s) per doctor (see HGRD)

MDx's multi-page report performs substantially the same function, in substantially the

same way, to produce substantially the same result a single page report.  The "function" of the

"report on the first healthcare provider" claim element is to allow patients to obtain detailed

information about a particular doctor.  The "way" this function is achieved in the claim is to

create a report with the three types of information (i.e., doctor-verified, patient-provided, and

third-party verified).  MDx achieves the same function in the same way. The "result" of the

claim is a report that includes the claimed information about the particular provider.  The result

of MDx's website is the same.  At a minimum, whether MDx's multiple page report performs

substantially the same function, in substantially the same way, to achieve substantially the same

result are disputed issues of fact that should be decided by a jury.

As the Supreme Court recognized in *Graver Tank*, MDx should not be able to copy

Health Grades' patented system and then avoid infringement by making insignificant changes,

such as creating a report that spans multiple pages instead of a single page or combining the

results list page with the healthcare provider report.  *Graver Tank*, 339 U.S. at 607.

        b.      The Doctrine of Equivalents Argument Relating to the Multi-Page Report is Not Barred by Prosecution History Estoppel Because It Was Not Added by Amendment

The original claims included the step of creating a healthcare provider report:

> 1. A method of providing healthcare provider information to potential patients, said method comprising:
>
> compiling healthcare provider-verified information;
>
> compiling past-patient provided information;
>
> compiling information verified by independent third-party sources;
>
> creating a healthcare provider report using the physician-verified information, the past-patient provided information, and the verified information; and
>
> providing access to the healthcare provider report over a computer network.
>
> ****
>
> 19. An on-line information system for providing verified information regarding healthcare providers, the system comprising:
>
> a compilation module for compiling healthcare provider-verified information;
>
> a compilation module for compiling patient-provided information;
>
> a compilation module for compiling healthcare provider information verified by an independent third party;
>
> a creation module for creating a healthcare provider report using the provider-verified information, the patient-provided information, and the independently verified information; and
>
> a computing system with access to healthcare provider information stored in a database, wherein patients may search the database and review healthcare provider reports to differentiate among healthcare providers.

(File History, Original Application at pp. 38, 41 (highlighting added) (Ex. 2L hereto).)  This limitation was not subject to any amendment, let alone a narrowing amendment.  Thus, it is entitled to the full range of equivalents.

## V.   CONCLUSION

For all of the foregoing reasons, there are many disputed issues of material fact that require that this Court deny MDx's Motion for Partial Summary Judgment.

Respectfully submitted this 1st day of June, 2012.

ROTHGERBER JOHNSON & LYONS LLP

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@rothgerber.com
         kkosto@rothgerber.com
         jvazquez@rothgerber.com
         jphipps@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant
Health Grades, Inc.*

2003586317_1

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S RESPONSE TO MDx's SECOND MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Scott Murray
David Chunyi Lee
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
Email: sstimpson@sillscummis.com
Email: smurray@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: ridley@wtotrial.com

Ramona L. Lampley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: lampley@wtotrial.com

*s/ Jesús M. Vazquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@rothgerber.com
           kkostolansky@rothgerber.com
           jvazquez@rothgerber.com
           jphipps@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

2003586317_1