IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

### MDX MEDICAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS SECOND MOTION FOR SUMMARY JUDGMENT

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx") hereby submits its Reply to Plaintiff's Response to MDx's Second Motion Pursuant to Federal Rule of Civil Procedure 56 for Partial Summary Judgment of Non-Infringement (dkt. # 201) (the "Opposition").

> "Allowing [the Health Grades] argument will not vitiate *the entire* claim limitation, but **_only a portion of it_**."[1]

---

[1] Health Grades' Opposition, page 23 (second emphasis added). This and similar Health Grades statements are addressed at pages 6-9, *infra*.

## I.  RESPONSE TO ALLEGED ADDITIONAL DISPUTED FACTS

The following responds to the "Statement of Additional Disputed Facts" found at page 4-5 of the Health Grades Opposition.

1. This is not a genuine issue of material fact. The parties do not dispute what the MDx website shows – it is all available on the MDx website, and MDx does not dispute that the screenshots referenced by Health Grades come from the MDx website.

2. This is a question of law, already decided by the Court in the claim construction. The report on the first healthcare provider must be specifically directed to a first healthcare provider, and there is no dispute that the MDx results list identifies numerous providers, without highlighting or distinguishing any one of them.

3. If Health Grades is questioning whether a results list somehow can be created within or beside a healthcare provider report, Health Grades could have simply checked this on the MDx website. It does not, and Health Grades has no evidence to the contrary.

4. This is not a genuine issue of material fact, because equivalents are legally precluded for the various reasons presented in the MDx Principal Brief.

5. This is not a genuine issue of material fact, because Health Grades has not shown any healthcare provider report including other providers (there is none), and because equivalents are legally precluded for the various reasons presented in the MDx Principal Brief.

6. This is not a genuine issue of material fact, because it does not address the issue of whether a healthcare provider report includes comparison ratings of other healthcare providers.

## II.     A RESULTS LIST IS NOT A REPORT ON A FIRST HEALTHCARE PROVIDER

At page 2 of its Opposition, Health Grades states that the "primary issue" of this motion is whether a certain screenshot (shown below *without* the misleading Health Grades editing) is a "report on a first healthcare provider."  MDx agrees.



3

Health Grades copies this same screenshot *six times* in its Opposition. Health Grades places a red box around the first provider, as if this screen somehow focused on that provider. But the MDx website has no such box, or any other indication or highlighting – the first listed provider is entirely indistinguishable from the rest. While Health Grades disingenuously refers to this results list as a "report on Dr. Chandrasekhar" (e.g., Opp. at page 16, 17), there is no basis for this allegation. Indeed, why isn't Health Grades referring to it as a report on Dr. Ashinoff (the second name on the list), or a report on Dr. Lim (the third name), or a report on Dr. Steckowych (the fourth name)? How is Health Grades drawing this distinction, and what justifies Health Grades claiming this is a report on Dr. Chandrasekhar, rather than any of the others who are equally represented on the list?

Health Grades hand-waving aside, this screenshot is a results list. Indeed, at the top of the list, it is clearly shown to be a search screen -- identified as "home > search".

The Court defined "first healthcare provider" as a "particular healthcare provider about whom information is requested and a report is produced." Exhibit 1, Attach. E, page 12. The Court also agreed with MDx that the "report on the first healthcare provider" is a "report directed specifically to the first healthcare provider." *Id.* at 12-13. Under no conceivable twisting of this Court's claim construction opinion could the MDx results list (which identifies numerous healthcare providers and does not distinguish or highlight any of them) be considered a report directed specifically to a first healthcare provider.

Health Grades next argues that the results list is both the report on a first healthcare provider, and the results list of claim 7. Opp. at page 18. This argument is nonsense, and totally ignores the Court's claim construction. The results list is not also a report on the first healthcare

4

provider because it simply does not meet the claim construction of that term – it is not a report directed specifically to a particular healthcare provider.

Health Grades elsewhere admits that the results list is not a report directed specifically to a first healthcare provider. Health Grades alleges in these portions of its brief that the results list is a collection of ***numerous reports***. Opp. at page 3 ("multiple reports on the same page"); page 5 ("Whether the multiple healthcare provider reports displayed on the same page" satisfy the claim); page 14 ("the healthcare provider ***reports [plural]*** on MDx's current website include ratings for multiple doctors"); and page 20 ("MDx's current website displays multiple healthcare provider reports (red boxes), each limited to a single healthcare provider"); page 21 ("the way MDx achieves this function is by displaying multiple reports"). Even if Health Grades was right that these are numerous, different reports (they are not, it is just a results list), that would be no help to Health Grades. That is, the list still could never meet the claim language which requires ratings of multiple providers be included in the ***one report*** on the first healthcare provider. Moreover, the separate parts of this results list addressing individual providers (the only parts that even Health Grades could argue to be parts of separate reports on particular healthcare providers) do not include ratings of other providers – only *other* parts of the list (according to Health Grades, reports on *other providers*) have other ratings. Health Grades admits as much. Opp. at page 21 ("none of these reports include ratings of other healthcare providers").

The results list is exactly that – a results list. It is not directed specifically to any particular provider, but instead gives a listing of all providers matching the search criteria without distinguishing any one provider over any other. Accordingly, it cannot possibly be

considered a report on a first healthcare provider according to the patent teaching or according to this Court's claim construction ruling.

## III.     THERE CAN BE NO EQUIVALENTS

### A.     The Health Grades Arguments

Health Grades spins two equivalents arguments. The first is that comparison ratings *__outside__* the healthcare provider report is equivalent to the requirement that those comparison ratings be *__inside__* the report; and the second is that the MDx results list is really numerous reports, and these multiple reports on various different providers are equivalent to a single report on a particular provider. Opp. at page 20.

The second argument is nothing more than a different way to argue the first; it is the same alleged equivalent. Indeed, Health Grades does not point to anything different as being the alleged equivalent -- only a results list. All the reasons why there can be no equivalents, addressed below, apply equally to both (*i.e.*, it would vitiate the requirement that comparison ratings be included in a report directed to a particular provider, prosecution history estoppel, and no substantial similarity). While Health Grades' reasons for approaching the same alleged equivalent from a different angle are far less than clear, we suspect it is an attempt to focus on another limitation (the first healthcare provider report), and divert the Court's attention from the vitiated requirement of that specific report including the comparison ratings.

### B.     Vitiating A Claim Term

Health Grades expends great effort trying to convince this Court that it is acceptable to vitiate a claim requirement, as long as only part of a larger limitation is vitiated. Opp. at 7 (quoting *Asyst*: all elements rule precludes infringement if it would "vitiate *an entire* claim

6

element"; emphasis by Health Grades); Opp. at 8, n.6 (quoting *Primos*: "the patent owner's theory of equivalence . . . does not 'effectively eliminate [the limitation] ***in its entirety***. . ."; emphasis by Health Grades); page 23 ("MDx essentially argues that a single word ('includes') will be vitiated"). Health Grades asserts that there is no vitiation because the word "includes" is not itself a limitation, and that the real limitation includes much more language, some of which MDx meets.  *Id. (*quoting other claim language: "Health Grades does not vitiate *the entire limitation*").

Health Grades thus pleads with the Court to allow it to vitiate the "includes" language with its equivalents argument:  "Allowing [the Health Grades] argument will not vitiate *the entire* claim limitation, ***but only a portion of it***." Opp. at page 23 (second emphasis added). And in another confusing Health Grades argument, it seems to argue that completely writing out a limitation is acceptable, as long as there is only one claim requirement being ignored:  "Health Grades' doctrine of equivalents argument that "adjacent to" is equivalent to "includes" does not require writing out ***another*** claim limitation." Opp. at page 24 (emphasis added).

Health Grades demonstrates a basic misunderstanding of the law and the cases it cites. The *Asyst* case cited by Health Grades for this proposition about vitiating a claim term "in its entirety," expressly cites the Supreme Court's *Warner-Jenkinson* decision. *Asyst Techs. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005). The Primos case also relies on *Warner-Jenkinson*. *Primos, Inc. v. Hunter's Specialties, Inc.,* 451 F.3d 841, 850 (Fed. Cir. 2006). The Supreme Court *Warner-Jenkinson* case, on which all these cases rely, states: "if a theory of equivalence would ***entirely vitiate*** a particular claim element, partial or complete summary judgment should be rendered . . . ." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*,

7

520 U.S. 17, 39, n.8 (1997) (emphasis added).  This is a reference to the complete elimination of a requirement of the claim.  It is not a statement allowing vitiation of part of what the plaintiff claims to be a larger claim element.  *Pause Tech. LLC v. TiVo Inc*., 419 F.3d 1326, 1334 (Fed. Cir. 2005) ("In construing claims, [] we must give each claim term the respect that it is due.").[2]

Here, the claims as properly construed by this Court unequivocally require comparison ratings of other healthcare providers to be ***included*** in a report that is directed specifically to a first healthcare provider.  But the only comparison ratings Health Grades identifies are ***excluded*** from that report, and found in a separate results list.  The doctrine of equivalents cannot capture the antithesis of the claimed requirement.  *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1425-426 (Fed. Cir. 1997); *Asyst Techs. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005); *Moore U.S.A. v. Std. Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000); *see also Dolly, Inc. v. Spalding & Evenflo Cos*., 16 F.3d 394, 400 (1994)("In short, the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims"); *PSN Illinois LLC v. Ivoclar Vivadent, Inc. et. al.,*525 F.3d 1159, 1167-68 (Fed. Cir. 2008) (affirming summary judgment of no infringement where equivalents would vitiate claim term).

A close corollary to the rule that claim terms cannot be vitiated is the "specific exclusion" principle.  That is, when a claim term specifically excludes certain structure, that structure cannot be encompassed by the doctrine of equivalents.  *Asyst Tech., Inc. v. Emtrak, Inc. et. al.,* 402 F.3d 1188, 1195 (Fed. Cir. 2005).  Here, the claim term expressly requiring the comparison ratings

---

[2] Health Grades' states in multiple places (pages 24, 28) that the word "includes" is open-ended.  So what?  MDx is not arguing that the report cannot include other things, only that it must include the comparison ratings.

***included*** in the report on the first healthcare provider specifically excludes having those ratings ***excluded*** from that report.

The cases cited by Health Grades are all easily distinguishable – none involved claims that specifically excluded the alleged equivalent. Indeed, the Health Grades cases support MDx. In *Primos*, for example, the Court stated that the pertinent inquiry is whether the alleged equivalent would render the limitation meaningless. *Primos, Inc. v. Hunter's Specialties, Inc.,* 451 F.3d 841, 850 (Fed. Cir. 2006). And the *LG* case similarly states that there can be equivalents so long as the alleged equivalent "would not be inconsistent with the language of the claim." *LG Electronics, Inc. v. Bizcom Electronics, Inc.,* 453 F.3d 1364, 1381 (Fed. Cir. 2006); *see also Abbott Labs. V. Dey, L.P.* 287 F.3d 1097, 1107 (equivalents cannot eliminate a term altogether); *Overhead Door Corp. v. Chamerlain Group, Inc.*, 194 F.3d 1261, 1271 (Fed. Cir. 1999) (equivalents cannot "leave some aspect of the claim missing from the accused device"). Yet Health Grades does not explain why its alleged equivalent (comparison ratings excluded form the report) does not render the claim requirement of having those ratings ***included*** in the report meaningless, or how this alleged equivalent could possibly be considered consistent with the claim language. Quite to the contrary, Health Grades concedes that its equivalents position vitiates this language. Opp. at page 23 ("Allowing [the Health Grades] argument will not vitiate *the entire* claim limitation, ***but only a portion of it***"; emphasis added); page ("Health Grades' doctrine of equivalents argument that "adjacent to" is equivalent to "includes" does not require writing out ***another*** claim limitation"; emphasis added).

9

### C. Prosecution History Estoppel

Health Grades agrees, as it must, that there is a presumption of prosecution history estoppel because the claim limitations at issue were made for reasons of patentability. Opp. at page 26, n.9 ("Here, the amendment was made for reasons of patentability (i.e., to distinguish prior art) . . ."); page 30 ("The Supplemental Response and Amendment state that the amendments, including the addition of the first healthcare provider limitation, were made for reasons related to patentability to overcome the rejection based on prior art references Henley and Cook"). Because the amendments were made for reasons of patentability, there is a presumption of estoppel. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 740 (2002) ("the patentee should bear the burden of showing that the amendment does not surrender the particular equivalent in question").

Health Grades attempts to overcome this presumption with the "very narrow" exception of an amendment tangential to the asserted equivalent. *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1315-1316 (Fed. Cir. 2008). Health Grades thus devotes ten pages of its brief trying to convince this Court that the prosecution history shows such a tangential relationship. Opp. at pages 24-33. But the Health Grades mini-treatise on this issue is disjointed, ignores facts, and is flat out wrong. Health Grades does not even remotely overcome the presumption of estoppel with this "very narrow" exception.

At pages 26-27, Health Grades quotes from the prosecution history and selectively bolds two unconnected arguments, as if the argument to the Patent Office was only the argument that general qualifications were not comparison ratings. But despite this Health Grades spin, there is no denying that Health Grades added to the claim this language requiring comparison ratings

10

included in the first healthcare provider report, and then argued that the prior art lacked that very requirement. Dkt. #9-3, page 11 ("Henley thus fails to provide any teaching or suggestion of at least ". . . wherein the healthcare provider report includes comparison ratings of healthcare providers.").

Health Grades current argument that it was only arguing that Henley lacked comparison ratings is wrong for a number of reasons. First, if that was the case, the language added to the claim would only have been "comparison ratings" – there would be no need for the added language expressly requiring those ratings to be in the first healthcare provider report.

Moreover, if Health Grades had only added "comparison ratings" without the requirement that they be included in the healthcare provider report, that would never have been sufficient. Both Health Grades and the Examiner had read Henley, and both knew it disclosed ratings. *See Henley*, Dkt. #30-2, at Paragraph 16 ("acquiring and maintaining comments and feedback from . . . patients/clients"); *see also id.,* ¶¶ 30, 37, 107, 114, 128, 137 (identifying disclosure of feedback on medical providers); FIG. 18 (showing how clients rate providers). The fact that not all of these paragraphs were cited during prosecution is meaningless – both Health Grades and the Examiner read Henley and knew its disclosures. Moreover, the Health Grades "tangential" argument would fail here even if the Henley prior art did not disclose any ratings. That is, Health Grades chose to distinguish this prior art by adding this limitation (as Health Grades admits), and the "tangential" argument will not work even if the prior art lacks the proposed structure. *Chimie v. PPG Indus.,* 402 F.3d 1371, 1383 (Fed. Cir. 2005)("it does not follow . . . that equivalents not within the prior art must be tangential to the amendment").

The prosecution does not show that there was a tangential relationship between the alleged equivalent and the language added by amendment, and so this very narrow exception cannot apply. Health Grades added this very language to distinguish the prior art, and now is estopped from asserting this alleged equivalent. *Honeywell Int'l, Inc.*, 523 F.3d at 1315-1316.[3]

### D. Function/Way/Result

At pages 21-22, and then again at pages 28-29, ***without submitting any evidence***, Health Grades argues that the MDx website is an equivalent to the claimed healthcare provider report including comparison ratings.

In response to MDx's motion, it was the burden of Health Grades to come forward with ***evidence*** to support its position of any alleged equivalence, but it provided absolutely no evidence – only attorney argument. Opp. at pages 21, 30. *Applied Materials v. Advanced Semiconductor Materials Am.*, 1994 U.S. Dist. LEXIS 7810, *67 (N.D. Cal. Apr. 26, 1994)("[Patentee] has the burden of proof by a preponderance of the evidence of the issue of infringement under the doctrine of equivalents.")(*citing Under Sea Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551 (Fed. Cir. 1987)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred").

---

[3] MDx is not alone in its struggles to comprehend this "tangential" argument – Health Grades itself has only recently come up with it. *Compare* Health Grades Opposition to the first MDx motion for summary judgment. Dkt. #23, pages 7-8 (no "tangential" argument in response to prosecution history estoppel). In its Opposition, Health Grades failed to respond to the MDx argument that Health Grades' failure to raise this argument was a waiver.

Health Grades, however, submits nothing other than attorney argument. Health Grades simply recites what it believes to be the function, way, and result, and then gives an entirely conclusory statement about alleged equivalents. For example, Health Grades' ***entire argument*** on the "way" prong is to admit that the claim requires comparison ratings in the report on the first healthcare provider, to reference the MDx results list, and then to state this: "This is substantially the same as the claim." Opp. at pages 21-22. The Health Grades' "function" and "result" analyses are equally perfunctory. *Id.* Accordingly, summary judgment is appropriate for this reason alone.[4]

The MDx website was redesigned in view of this patent, to preclude the user from viewing comparison ratings while in the first healthcare provider report. This is diametrically opposed to the claimed requirement. The claim function (allowing review of comparison ratings within a provider's report), way (including all this information in the one report) and result (a single report with all this information) are entirely missing from the alleged equivalent, and they are in no way similar to the MDx website. Indeed, when in the real report on a particular provider in the MDx website, the user would either need to remember all the ratings of all other providers that met the search criteria, or would need to leave the report to try to find that information again. Creating a report with all this information (including comparison ratings) in one place makes the system more efficient. This advantage was even relied upon by the examiner during prosecution. *See* Exhibit 1, Attachment B (Bates number HG0000088; November 13, 2009 Office Action, page 6) (combining into a report "improve[s]

---

[4] Health Grades' allegations of copying are blather. They are factually wrong, and even Health Grades cannot muster an argument connecting them to any of the claim limitations, let alone the one at issue here.

13

the efficiency of the system"). *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) (equivalence can be determined if the accused product "performs substantially the same function in substantially the same way to obtain the same result").

## IV. CONCLUSION

For all the foregoing reasons, MDx respectfully requests entry of partial summary judgment of non-infringement, for a declaration that the current MDx Website does not infringe the '060 Patent.

Dated:  June 8, 2012                                     Respectfully submitted,

*s/ Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee
Sills Cummis & Gross P.C.
Thirty Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail: sstimpson@sillscummis.com
E-mail: smurray@sillscummis.com
E-mail: dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Ramona Lampley, Atty. No. 37288
Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com
E-mail: lampley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

**CERTIFICATE OF SERVICE**

   I hereby certify that on <u>June 8 2012</u>, I electronically filed the foregoing MDX MEDICAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS SECOND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez , Jr.**
  jvazquez@rothgerber.com, phenke@rothgerber.com

- **Kris John Kostolansky**
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- **Jeffrey David Phipps**
  jphipps@rothgerber.com, kmeans@rothgerber.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Scott B. Murray**
  smurray@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

- **Ramona L. Lampley**
  lampley@wtotrial.com, keitlen@wtotrial.com


                  *s/ Christine Keitlen*
                  Christine Keitlen