**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 11-cv-00520-PAB-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**HEALTH GRADES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
DISCOVERY AND FOR AN AWARD OF FEES AND COSTS PURSUANT TO RULES
36(a)(6), 37(a)(3)(B) AND 37(a)(5) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

---

Plaintiff Health Grades, Inc. ("Health Grades") respectfully submits this reply in support of its motion for an order compelling Defendant MDx Medical, Inc. ("MDx") to answer and supplement its Objections and Responses to Plaintiff's First Set of Requests for Admission, and for an award of expenses incurred by Health Grades in making this Motion to Compel pursuant to Rules 36(a)(6), 37(a)(3)(B) and 37(a)(5) of the Federal Rules of Civil Procedure [Dkt. # 189].

MDx has repeatedly refused to provide Health Grades with discovery and has forced Health Grades to file numerous motions to compel and to defend against numerous motions to strike and quash. (*See, e.g.* Dkt. Nos. 126, 158, 185). As an example, MDx refused to supplement its interrogatory response detailing its non-infringement defenses because, it argued, Health Grades could obtain this information though a Rule 30(b)(6) deposition.[1] Then MDx

---

[1] MDx Opposition to Health Grades' Motion to Compel Discovery at p. 6 (Dkt. 135) ("Nothing in the interrogatory requests MDx to "explain why" the MDx website operates the way it does. Health Grades has noticed a 30(b)(6) deposition of MDx on the operation of the MDx website. That is the proper approach – not this attempt to elicit responses to questions that were never asked.").

2003703651_1

moved to preclude Health Grades from taking any Rule 30(b)(6) depositions.[2] As another example, MDx refused to produce information relating to its license of the accused database to third party iTriage. When Health Grades subpoenaed this information from iTriage, MDx moved (without standing) to quash the subpoena.[3] Then MDx waited until the evening before the MDx deposition to actually produce the iTriage license agreement and only did so after Health Grades threatened to file a motion to enforce this Court's order compelling production of the iTriage license.[4] Now, MDx refuses to admit facts that are patently obvious to anyone. Enough is enough. Requests for admission are designed to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute. The facts covered in Health Grades' requests are not controversial and are not in substantial dispute. MDx should not be able to avoid responding to Health Grades' requests by making frivolous relevance objections. This Court should grant Health Grades' instant motion to compel.

## **REPLY**

Specifically, Health Grades seeks an order compelling MDx to respond to Requests for Admission numbers 3-11, 14-19 and 21-23. MDx made a number of frivolous objections to these requests (each addressed in Health Grades' opening motion), but did not defend most of these objections. Rather MDx unpersuasively defends only two objections in its response brief, namely its objection to the term "capable" as used in Request numbers 4-11, 19, and 21-23; and

---

[2] MDx Motion To Strike Health Grades' Deposition Notice Without Leave to Amend (Dkt. 142) ("MDx requests that the Court grant its motion to strike Health Grades' Rule 30(b)(6) deposition notice, without leave to amend . . . .").

[3] Health Grades' Response in Opposition To MDx Medical, Inc.'s Motion to Quash Health Grades' Subpoenas To Non-Party Itriage (Dkt. 185).

[4] June 6, 2012 email from Jesus Vazquez to Scott Stimpson re "License Agreement and Document Production" (Ex. 9 hereto).

2

its relevance objection for Request numbers 14-18.  Health Grades addresses each objection below.

> 1. **<u>The Capabilities of MDx's Online Information System are Highly Relevant to the Issue of Patent Infringement</u>**

Request Nos. 4-11, 19, and 21-23 ask MDx to admit that its website is capable of functionality recited in several elements of the asserted claims.  MDx objects to these requests arguing: "there is absolutely no probative value to these requests, and they do nothing to resolve any issue in this case."  (MDx Response at 2 (Dkt. 199).)  This is ridiculous.  Essentially, MDx argues that software functionality and thus the capability of MDx's website to perform certain functionality is not relevant to the software system and method claims in a patent.  To the contrary, numerous courts, including the Federal Circuit, have held that software capabilities are relevant to software system claims:

- *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (discussed in detail in Health Grades opening motion pp. 9-11 (Dkt. 189);

- *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) (holding an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation.);

- *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991) (same) ("Because the language of claim 1 refers to 'programmable selection means' and states 'whereby when said alternate addressing mode is selected' (emphases added), the accused device, to be infringing, need only be capable of operating in the page mode. Contrary to GI/M's argument, actual page mode operation in the accused device is not required.");

- *Soverain Software LLC v. Newegg Inc.*, 2010 U.S. Dist. LEXIS 89268, 17-18 (E.D. Tex. Aug. 11, 2010) ("Although capable of non-infringing modes of operation, Newegg's order history system is reasonably capable of infringing the hypertext statement system claims.");

3

- *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 378 (E.D. Tex. 2009) ("[T]o infringe an apparatus claim, it is not necessary for an accused device actually to be performing the functions specified by the claim. All that is required is that the device have the claimed structure, and that this structure in the device have the capability of functioning as described by the claim.").

Additionally, numerous courts including the Federal Circuit have also found that software capabilities are relevant to infringement of method claims because the fact that a system is capable of performing method steps may be circumstantial evidence that someone used the software to perform the claimed method steps:

- *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009) (relying system capability as circumstantial evidence of direct infringement);

- *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) (holding direct infringement may be established by circumstantial evidence of extensive sales by defendant of a product capable of use to practice the patented method and distribution by defendant of an instruction manual teaching the patented method);

- *Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, 2011 U.S. Dist. LEXIS 136621, 12-13 (N.D. Cal. Nov. 29, 2011) ("KSEA does not need direct evidence that a surgeon has in fact used the accused products while the panel was in the surgeon's operating station, at least to prove liability. Circumstantial evidence is sufficient if reasonable inferences can be drawn by the fact-finder. Nor does KSEA have to prove that the accused products were always used in the surgeon's operating station. To prove infringement, KSEA needs to prove that the accused products were reasonably capable of being used in the surgeon's operating station.");

- *Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 2003 U.S. Dist. LEXIS 23553, 135-136 (C.D. Cal. Dec. 2, 2003) ("the capability of Verizon's systems to suppress-previously provided cues (as shown in the flow charts and other evidence) is circumstantial evidence that the claimed method was actually used . . . .");

- *Huck Mfg. Co. v. Textron, Inc.*, 1975 U.S. Dist. LEXIS 12539 (E.D. Mich. 1975) ("The fact that a device may be used in a manner so as not to infringe the patent is not a defense to a claim of infringement against a manufacturer of the device if it is also reasonably capable of a use that infringes the patent.").

MDx does not cite any case law to support its contrary position.  Further, MDx actually admits the capability of its accused system is relevant to claim elements, if the claim elements recite a capability.  (MDx Response at 2-4.)  MDx further admitted in its response brief that the "when executed" language (quoted below) from claim 15 recites a capability.[5]  (MDx Response at 2-4.)  However, MDx argues that the other claim elements from claim 15 that are quoted in Request Nos. 5-11, 19, and 21 do not recite a capability.  This is incorrect.  The "when executed" language is part of the introductory preamble of claim 15 and accordingly applies to every limitation of every element of claim 15 as shown below:

> 15.   An on-line information system for connecting healthcare providers with potential patients, the system comprising:
>
> at least one computer processor; and
>
> memory coupled with and readable by the at least one computer processor and comprising a series of instructions that, *when executed by the at least one computer processor, cause the at least one computer processor to*:
>
> receive a request for information regarding a first healthcare provider;
>
> access healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;
>
> compile patient-provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by a

---

[5]   MDx withdrew its objection to the "capable" language in Request Nos. 4 and 22-23, essentially admitting that these claim elements recited a capability.  MDx Response at 3 n.2.

>   company providing a service for connecting healthcare providers with the potential patients;
>
>   compile healthcare provider information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;
>
>   create a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and
>
>   provide access to the healthcare provider report on the first healthcare provider over a computer network.

('060 Patent, claim 15 (emphasis added).)   Even if the objected to language did not recite a system capability, the capabilities of MDx's website would still be circumstantial evidence that the system operates as claimed.

Moreover, the system capabilities of each element of the method claims is circumstantial evidence that the method steps are performed regardless of whether the claim elements are directed to past or future conduct and regardless of whether they are directed to capabilities.

MDx also argues that Health Grades could have drafted the requests without using the term "capable."  This is a red herring.[6]  As set forth in the case law cited above, Health Grades

---

[6]   Had Health Grades used more direct language MDx likely would have refused to respond and argued that the system does not always perform as claimed.  *See, e.g.,* MDx Responses to First Set of Interrogatories at pp. 6-9 (Ex. 7 hereto).  For example, MDx has already argued that not all of the information in its database is received from physicians:

6

need only prove system capability for direct infringement of the system claims.  Also, as set forth above, system capability is circumstantial evidence of direct infringement of the asserted method claims.  Therefore the requests are relevant and proper.

Finally, in an attempt to portray Health Grades' requests as unreasonably broad, MDx argues that this Court's computer system is also "capable" of receiving a request for information about a physician.  This too is a red herring.  Whether any random website may be altered from its normal operating conditions to meet one limitation of one element of one of Health Grades' patent claims is not at issue.  MDx's website is at issue.  Health Grades' infringement theories rely on the normal operating conditions of MDx's website and do not require any alteration of MDx's system whatsoever.  Further, Health Grades has provided MDx with a claim chart indicating that the accused website is capable of, and does, practice each and every limitation of every element of the asserted claims.  (*See* Ex. A to Supplemental Infringement Contentions dated February 2012 (claim chart for current version of www.vitals.com) (Ex. 8 hereto).)  Health Grades requests for admission are designed to save time and costs by asking MDx to admit that which is clearly obvious to everyone else.  This Court should compel MDx to respond to these requests.

---

> **B.** *Received from the first healthcare provider*.
>
> - No Literal Infringement:  For most of the data, this information required by this portion of the claims is not received from the provider itself.

(*Id.* at 7.)

### 2. Requests Nos. 14-18 Related to Limitations of the Asserted Claims

MDx argues that Requests Nos. 14-18 are not relevant because they do not track claim language. Not true. Each is tied directly to the claims as shown below.

| Request No. | Claim 15: |
|---|---|
| | "15. An on-line information system for connecting healthcare providers with potential patients, the system comprising: . . . . |
| Request for Admission No. 14.<br><br>Admit that MDx receives information about the board certifications of physicians from a third party other than the physician. | "compile healthcare provider information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises . . . board certification . . . ." |
| Request for Admission No. 15.<br><br>Admit that MDx receives information about the licensures of physicians from a third party other than the physician. | "compile healthcare provider information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises . . . licensure . . . ." |
| Request for Admission No. 16.<br><br>Admit that MDx receives information about the medical schools attended by physicians from a third party other than the physician. | "compile healthcare provider information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises . . . medical school . . . ." |
| Request for Admission No. 17.<br><br>Admit that MDx receives information about the medical residencies completed by physicians from a third party other than the physician. | "compile healthcare provider information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises . . . medical residency . . . ." |
| Request for Admission No. 18.<br><br>Admit that MDx receives information about the medical fellowships completed by physicians from a third party other than the physician. | "compile healthcare provider information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises . . . medical fellowship information . . . ." |

MDx objects that the requests use the term "received from" rather than the term "verified by." In the Markman Order, Judge Brimmer rejected MDx's attempts to limit the meaning of the term "verified" to require that the information be "proven to be true." Judge Brimmer ruled that this term would be given its ordinary meaning, which includes receiving confirmation of information from a third party. Judge Brimmer stated:

> Defendant seeks the following construction for this phrase: "proved to be true by an independent third-party source." . . . . Plaintiff does not believe the phrase requires a construction, relying on its plain and ordinary meaning. **For the reasons discussed above**, the Court finds no basis to limit the meaning of "verified" in that manner. The patent does not require that the third-party information be "proven" but rather only describes an attempt to substantiate that will provide a patient with "some assurance that the qualifications of the doctor have been checked by someone."

(Markman Order at 17 (emphasis added).) Regarding the meaning of the term "verified," which is referenced in the above quote, Judge Brimmer stated:

> Although defendant is correct that "verify" can mean "to prove," "verify" may also mean, depending on its context, "confirm" or "substantiate." . . . Here, the specification makes clear that the act of "verifying" requires only that the website receive confirmation of the information from some other source, in this instance the healthcare provider. Indeed, the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider. . . .")

(Markman Order at 16 n.8.)

As such, Health Grades Request Nos. 14-18 track the claim language, as construed by Judge Brimmer, and are relevant to infringement in this case.

9

## **CONCLUSION**

For the reasons set forth above, Health Grades request that this Court order:

1. Health Grades' Request for Admission numbers 4-11, 17-19 and 22-23 be deemed admitted, or in the alternative, require MDx to answer Health Grades' Requests for Admission numbers 4-11, 17-19 and 22-23 consistent with Fed. R. Civ. P. 36(a)(4) by admitting, denying, or asserting a lack of knowledge or information as a reason for failing to admit or deny only if MDx states that is has made a reasonably inquiry to obtain the requested information;

2. MDx to answer Health Grades' Requests for Admission numbers 3 and 14-16 by supplementing their answers to specify the part(s) admitted consistent with Fed. R. Civ. P. 36(a)(4); and

3. MDx to pay Health Grades its expenses associated with this Motion to Compel.

ROTHGERBER JOHNSON & LYONS LLP

Date:  June 11, 2012

*s/ Jesús M. Vazquez*
Gregory B. Kana, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@rothgerber.com
         kkosto@rothgerber.com
         jvazquez@rothgerber.com
         jphipps@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on June 11, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S MOTION TO COMPEL DISCOVERY AND FOR AN AWARD OF FEES AND COSTS PURSUANT TO RULES 36(a)(6), 37(a)(3)(B) AND 37(a)(5) OF THE FEDERAL RULES OF CIVIL PROCEDURE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Scott David Stimpson | Terence M. Ridley |
| Mark Jon Rosenberg | Wheeler Trigg O'Donnell, LLP |
| David Chunyi Lee | 1801 California Street, #3600 |
| Scott B. Murray | Denver, CO 80202-2617 |
| Sills Cummis & Gross P.C. | Email: ridley@wtotrial.com |
| 30 Rockefeller Plaza | |
| New York, NY 10112 | |
| Email: sstimpson@sillscummis.com | |
| Email: mrosenberg@sillscummis.com | |
| Email: dlee@sillscummis.com | |
| Email: smurray@sillscummis.com | |

                                                                  *s/ Jesús M. Vazquez*
                                                                  Gregory B. Kanan, Esq.
                                                                  Kris J. Kostolansky, Esq.
                                                                  Jesús M. Vázquez, Jr., Esq.
                                                                  Jeffrey D. Phipps, Esq.
                                                                  Rothgerber Johnson & Lyons, LLP
                                                                  1200 17th Street, Suite 3000
                                                                  Denver, Colorado 80202-5855
                                                                  Tel:     (303) 623-9000
                                                                  Facsimile: (303) 623-9222
                                                                  Email: kkostolansky@rothgerber.com
                                                                                     jvazquez@rothgerber.com
                                                                                      jphipps@rothgerber.com

                                                                  *Attorneys for Plaintiff/Counterclaim Defendant*
                                                                  *Health Grades, Inc.*

2003703651_1