## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 11-cv-00520-PAB-

   BNB HEALTH GRADES, INC.,

   Plaintiff,

v.

MDX MEDICAL, INC. d/b/a

   VITALS.COM, Defendant.

_____

### PLAINTIFF HEALTH GRADES, INC.'S SECOND SUPPLEMENTAL RESPONSE TO DEFENDANT MDX MEDICAL, INC.'S INTERROGATORY NO. 8
_____

Plaintiff Health Grades, Inc. ("Health Grades") hereby submits its second supplemental response, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, to Defendant MDx Medical, Inc.'s ("MDx") Interrogatory No. 8 (originally contained within MDx's "Second Set of Interrogatories (NOS. 7-9)")("Defendant's Interrogatories") as follows:

GENERAL OBJECTIONS

1.      Health Grades objects to the definitions and instructions set forth in Defendant's Second Set of Interrogatories (NOS. 7-9) to the extent they are inconsistent with, seek to impose obligations not required by, or seek to expand the scope of permissible discovery under the Federal Rules of Civil Procedure, including but not limited to Rule 26(a)'s expert disclosure requirements, the Local Rules of this Court, and any pretrial scheduling order of the Court.

**EXHIBIT 12**

2.      Health Grades objects to Defendant's Interrogatories to the extent they seek information that is subject to the attorney-client privilege, that evidences or constitutes attorney work product, that is the subject of confidentiality agreements with third parties, that is the subject of a protective order in any separate proceeding, or that otherwise is not discoverable or is the subject of any other privilege, whether based upon statute or recognized at common law.

3.      Health Grades objects to Defendant's Interrogatories to the extent that they are overly broad, unduly burdensome, seek irrelevant information, or are not reasonably calculated to lead to the discovery of admissible evidence.

4.      Health Grades makes the specific objection with respect to certain interrogatories that they are vague and ambiguous insofar as they do not describe with reasonable particularity the information being sought. Since the scope of such interrogatories is in question, Health Grades reserves the right to object to such interrogatories as overly broad and unduly burdensome, as not reasonably calculated to lead to the discovery of admissible evidence, or as seeking irrelevant information once the scope of such interrogatories is clarified.

5.      Health Grades objects to Defendant's definition of "document" to the extent it includes
any items beyond the scope of the Federal Rules of Civil Procedure.

6.      Health Grades objects to Defendant's Interrogatories to the extent they seek information already in Defendant's possession or equally accessible to Defendant, or information which is a matter of public record.

**EXHIBIT 12**

7.      Health Grades' responses set forth below and/or production of documents in connection therewith in no way limit the generality of the foregoing General Objections, and are not to be construed as a waiver of the foregoing objections, any specific objections stated in the following responses, or Health Grades' right to object to any additional, supplemental, or further discovery request of Defendants.

8.      Health Grades has answered Defendant's Interrogatories based upon its understanding of the interrogatories, and to the best of its knowledge and recollection as of the date the answers are served. Health Grades expressly reserves the right to provide supplemental answers should that become appropriate. All answers provided by Health Grades in response to Defendant's Interrogatories are produced without waiver of Health Grades' right to supplement its answers as responsive information becomes available.

9.      Any statement by Health Grades in any of the following responses to Defendant's Interrogatories that it will produce responsive documents is only a statement that any such documents that can be located after a reasonable search will be produced, made available for inspection, or, if privilege is asserted, listed on a privilege log. Such a statement is not a representation that any such responsive documents exist.

10.     All documents produced by Health Grades in connection with Health Grades' responses to Defendant's Interrogatories are produced without waiver of, or prejudice to, any challenge by Health Grades to the relevancy or admissibility of such documents in this case.

11.     The General Objections set forth above are made as to matters that are clearly objectionable from the face of the interrogatories. These objections are made without prejudice to and

3

EXHIBIT 12

without waiver of Health Grades' right to object on all appropriate grounds to the specific information sought by each Interrogatory.

12.     Health Grades generally objects to Defendant's Interrogatories as premature to the extent they seek information that is more properly provided through expert reports or expert depositions. Health Grades will provide expert disclosures in accordance with the disclosure requirements of the applicable rules and Court Order.

13.     Health Grades generally objects to Defendant's Interrogatories as improper to the extent they require or seek a legal conclusion.

14.     Health Grades objects to of Defendant's Interrogatories to the extent it seeks confidential or trade secret business information. Health Grades will provide such requested information pursuant to the terms of a Protective Order entered by the Court.

Subject to the General Objections outlined above and the more specific objections set forth below, Health Grades responds as follows:

## SECOND SUPPLEMENTAL RESPONSES TO INTERROGATORIES

**Interrogatory No. 8:**

If Health Grades disagrees with any one or more of the bases for patent invalidity set forth in MDx's Invalidity Contentions, Supplemental Invalidity Contentions, and accompanying documents (served on August 19, 2011, and August 26, 2011 and as may be later supplemented, "Invalidity Disclosures"), for each such disagreement set forth in full and complete detail all reasons why MDx's contentions are allegedly incorrect, including but not limited to (1) a full and complete explanation of all points of disagreement with the assertions in MDx's Invalidity Disclosures; (2) a full and complete explanation of why each and every asserted reference (or combination of references) does not invalidate the Patent-in-Suit pursuant to 35 U.S.C. § 102 and/or § 103; and (3) a full and complete explanation of why the Patent-in-Suit is not valid pursuant to 35 U.S.C. §112.

EXHIBIT 12

**Second Supplemental Response to Interrogatory No. 8:**

Health Grades incorporates herein its General Objections. Health Grades objects to this request as overly broad, unduly burdensome and premature. MDx's Invalidity Disclosures are incomplete and require supplementation as requested by Health Grades in its letter to counsel for MDx dated September 2, 2011. Health Grades additionally objects to this request to the extent it calls for legal conclusions. Health Grades further objects to this request because it calls for information that will be the subject of expert reports, and is therefore premature.

Subject to and without waiving the General or Specific Objections, Health Grades responds as follows:

> **1)**     **MDX Has Not Provided Sufficient Proof that the Non-Patent References Qualify as Prior Art:**

MDX bears the burden to prove that each of its prior references qualify as prior art under 35 U.S.C. §102. MDX will not be able to meet its burden. To the extent that MDX intends to rely on oral testimony to prove that something qualifies as prior art, each element of this testimony must be corroborated. If it is not corroborated, it is irrelevant and inadmissible.

The following response is based on MDX's invalidity contentions to date and on the documents produced by MDX in connection with its invalidity contentions and disclosures.

MDX alleges that the materials set forth below qualify as prior art under §102(b); Health Grades disagrees. MDX has not provided sufficient proof that any of the non-patent prior art references qualify as prior art under 35 U.S.C. §102. Specifically:

> a)     **Public Use of** www.Healthgrades.com (the HG report): MDX alleges that this qualifies as prior art under §102(b); Health Grades disagrees.  First, there are actually three different Health Grades references (see below), each of which must separately meet the

5

**EXHIBIT 12**

requirements of the statute.  Second, MDX has not provided sufficient proof that any of them were on sale, in public use, published or patented more than one year before the filing date of the '060 patent as is required by §102(b).  Similarly, MDX has not provided sufficient evidence that this qualifies as prior art under §102(a), particularly because Health Grades does not qualify as "another" pursuant to the requirements of this statute.

b) **Public Use of www.ingenix.com** (the GeoAccess reference): MDX alleges that this qualifies as prior art under §102(b); Health Grades disagrees.  MDX has not provided sufficient proof that this was on sale, in public use, published or patented more than one year before the filing date of the '060 patent as is required by §102(b).  Similarly, MDX has not provided sufficient evidence that this qualifies as prior art under §102(a).

c) **Public Use of www.subimo.com** (the Subimo reference): MDX alleges that this qualifies as prior art under §102(b); Health Grades disagrees.  MDX has not provided sufficient proof that this was on sale, in public use, published or patented more than one year before the filing date of the '060 patent as is required by §102(b).  Similarly, MDX has not provided sufficient evidence that this qualifies as prior art under §102(a).

d) **Public Use of** www.healthscope.org (the Healthscope reference): MDX alleges that this qualifies as prior art under §102(b); Health Grades disagrees.  MDX has not provided sufficient proof that this was on sale, in public use, published or patented more than one year before the filing date of the '060 patent as is required by §102(b).  Similarly, MDX has not provided sufficient evidence that this qualifies as prior art under §102(a).

e) **Public Use of** www.ratemds.com (the Ratemds reference): MDX alleges that this qualifies as prior art under §102(b); Health Grades disagrees.  MDX has not provided

EXHIBIT 12

sufficient proof that this was on sale, in public use, published or patented more than one year before the filing date of the '060 patent as is required by §102(b).  Similarly, MDX has not provided sufficient evidence that this qualifies as prior art under §102(a).  MDx has not produced any documents that demonstrate that this website was publicly available, on sale, or known or used before 2011.

    **2)**        <u>**Invalidity Under 35 U.S.C. §102**</u>:

MDX bears the burden to prove anticipation by clear and convincing evidence.  MDX will not be able to meet its burden.  Anticipation requires that a single piece of prior art disclose all of the elements of a claim.  MDX has not identified a single reference that it contends anticipates any of the asserted claims, let alone specify how a single reference teaches all of the elements of any of the asserted claims.

Rather, MDX has made only conclusory statements about anticipation to the effect that the asserted claims of "the '060 Patent [are] anticipated and/or rendered obvious by each of the [1] '369 prior art, [2] the HG Report prior art, [3] the GeoAccess prior art, [4] the Subimo prior art, and [5] the HealthScope prior art, individually in combination with [6] the '233 prior art." MDX says each of these five references anticipate the claims "individual [sic] in combination with the '233 prior art." This does not make sense -- if MDX has to combine any of these references with U.S. Patent Publication 2002/0038233 ("the '233 publication"), then they do not anticipate the claim as a matter of law.

Moreover, MDX has not identified where in each item of prior art each limitation of each asserted claim is found, as it was required to do by N.D. Cal. LR 3-3(c). (The many

**EXHIBIT 12**

insufficiencies of MDX's invalidity contentions were addressed in a letter to counsel for MDX dated September 2, 2011.)   Health Grades disagrees that any of these references teach all of the elements of any of the asserted claims.  In fact, U.S. Patent Publication 2006/0015369 ("the '369 publication") actually teaches away from combining patient-provided information with other kinds of information (e.g., healthcare provider-verified etc.). *See* ¶¶ 22, 38-39.

Additionally, many of the references cited by MDX were considered by the United States Patent Office in its analysis of patentability of the claims at issue and it concluded that they were patentable.

Finally, to the extent that MDX offers oral testimony to support any of its invalidity arguments, MDX must have corroboration to support every element of this testimony.  If there is no corroboration, the testimony is irrelevant and inadmissible.  The following response is based on MDX's invalidity contentions to date, and on documents produced by MDX in connection with its invalidity contentions and related disclosures.[1]

### a)      U.S. Patent Publication 2006/0015369 ("Bachus"):

The Bachus publication describes an online database of patient-to-patient healthcare provider recommendations.  (Abstract.)  Patients who have had a positive experience with a physician can register this physician online, and subsequent patients can search for a physician by a variety of categories, such as, e.g., location, specialty, or physician name. *Only those healthcare providers who have received a recommendation from a patient will be displayed in response to a search query.*  (Fig. 1.)  The recommendations of Bachus are

---

[1]      MDX's supplemental invalidity contentions do not use bates numbers to identify the prior art, which makes it impossible to tell for certain exactly what references MDX is relying on. Health Grades is using its best guess and responding based on its best guess.

**EXHIBIT 12**

limited to narratives (Fig. 3.)  Bachus does not disclose, describe, or even suggest any kind of ratings, based on patient feedback or otherwise.  Bachus does not disclose, describe, or even suggest obtaining information from physicians.

The language quoted, or the pages cited, by MDx in the supplemental claim chart do not disclose the following claim elements:

1.   <u>Claims 1 and 15:</u>

- "healthcare provider-verified information": "about the first healthcare provider... [that] is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;" (referred to hereinafter, for the purposes of this document, simply as "Healthcare Provider-Verified Information").

- "patient-provided information": "compris[ing] patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;" (referred to hereinafter, for the purposes of this document, simply as "Patient-Provided Information").

- "Third Party Verified Information": "information regarding the first healthcare provider verified by an independent third-party source... [that] comprises three or more from the group consisting of: board certification, disciplinary action information, medical school, medical internship, medical residency, and medical

9

**EXHIBIT 12**

fellowship information. . . ." (referred to hereinafter, for the purposes of this document, simply as "Third Party Verified Information").

- "report": "creating. . . a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the Patient-Provided Information, and the information verified by the independent third-party source," (referred to hereinafter, for the purposes of this document, simply as "Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information").

- "comparison ratings": "wherein the healthcare provider report on the first healthcare provider includes comparison ratings of health care providers. . . ." (referred to hereinafter, for the purposes of this document, simply as "Comparison Ratings").

2.   Claim 4:  "a hyperlink to an affiliated hospital, medical center, or other type of treatment center."  (referred to hereinafter, for the purposes of this document, simply as "Hospital Hyperlink").

3.   Claim 8:  "wherein the results list further includes an advertisement for the first healthcare provider with a hyperlink to information on the first healthcare provider."  (referred to hereinafter, for the purposes of this document, simply as "Advertisement").

4.   Claim 9:  "determining from the results list whether a particular healthcare provider is a member of the company managing the Web site; and if the particular healthcare provider is a member of the company managing the Web site, providing enhanced services for the member healthcare provider on the Web site."  (referred to hereinafter, for the purposes of this document, simply as "Member of Company Managing Website").

5.   Claim 11:  "wherein the enhanced services comprise favorable positioning in the results list."  (referred to hereinafter, for the purposes of this document, simply as "Enhanced Services").

**EXHIBIT 12**

Indeed, it is unclear whether MDX actually contends that this reference even contains all of the elements of the asserted claims because it repeatedly states: "The '369 prior art **in combination with other prior art** meets this claim language.. . ." (*See, e.g.* MDX Supplemental Invalidity Chart at 4, 7, 11, and 14.)

> **b)**     **U.S. Patent Publication 2002/0038233 ("Shubov"):**

Shubov discloses an on-line bidding and auction system for matching consumers with lawyers.  It does not mention healthcare professionals or doctors.  A consumer is asked a series of preselected questions about his or her service needs.  The matching system cross references the consumer answers with a database of service providers.  The system also posts a description of the case which is available to all service providers and forwards a description of the case to service providers that are qualified to perform the desired services.  The service providers can then submit bids to do the work that are returned to the consumer.  This enables the consumer to view and compare all bids and obtain additional information about each service provider through the consumer homepage before selecting a service provider for the work. After the services are complete, the consumer can rate the service provider and the rating will be available to other consumers.  The ratings allow the attorney develop "a history or professional reputation within the matching system."  (¶0154.)  Shubov does not disclose any comparison ratings for lawyers or anyone else.

The language quoted, or the pages cited, by MDx in the claim chart does not disclose the following claim elements:

> 1.  Claims 1 and 15:
>
>   - Healthcare Provider-Verified Information

EXHIBIT 12

- Patient-Provided Information

- Third Party Verified Information

- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

- Comparison Ratings

2. Claim 4:  Hospital Hyperlink

3. Claim 5:  "wherein the access to the healthcare provider report is obtained through a predetermined Webpage that provides search capabilities for a database comprised of healthcare provider information."  (referred to hereinafter, for the purposes of this document, simply as "Predetermined Webpage with Search Capabilities").

4. Claims 6 and 16:  "wherein the search capabilities permit a search based on one or more from the group consisting of: name, medical specialty, gender, state, city, procedure, diagnosis, procedure, and location criteria."  (referred to hereinafter, for the purposes of this document, simply as "Search Capabilities").

5. Claim 7:  "wherein the search of the database produces a results list of one or more healthcare providers satisfying the search criteria, wherein the results list includes the first healthcare provider."  (referred to hereinafter, for the purposes of this document, simply as "results list").

6. Claim 8:  advertisement

7. Claim 9:  Member of Company Managing Website

8. Claim 11:  Enhanced Services.

9. Claim 14:  the healthcare provider is a physician.

Indeed, MDX does not even allege that this reference, which relates to attorneys, meets all of the limitations of the asserted claims.

12

EXHIBIT 12

        **c)**     **The HG Report:** There are actually three separate references that MDX appears to rely on - each is addressed separately below[1]:

        i)     *Physician Quality Report* [UCHC 00000095-110]:

This report contained information that was obtained from third parties, other than the physician. It did not contain information from physicians. It did not contain patient ratings or comparison ratings. The language quoted, or the pages cited, by MDx in the claim chart does not disclose the following claim elements:

        a)     Claims 1 and 15:

- Healthcare Provider-Verified Information
- Patient-Provided Information
- Comparison Ratings
- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

        a)  Claim 4: Hospital Hyperlink

        b)  Claim 5: Predetermined Webpage with Search Capabilities

        c)  Claims 6 and 16: Search Capabilities

        d)  Claim 7: Results List

        e)  Claim 8: Advertisement

        f)  Claim 9: Member of Company Managing Website

        g)  Claim 11: Enhanced Services.

        ii)     *Hospital Quality Report* [UCHC 00000081-90]:

**EXHIBIT 12**

This report contained information about entities, not people who provide healthcare services.  It did not contain patient ratings or comparison ratings or the kind of doctor-verified or third-party verified information required by the claims.  The language quoted, or the pages cited, by MDx in the claim chart does not disclose the following claim elements:

a)  Claims 1 and 15:

- Healthcare Provider-Verified Information

- Patient-Provided Information

- Third Party Verified Information

- Comparison Ratings

- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

b)  Claim 4:  Hospital Hyperlink

c)  Claim 5:  Predetermined Webpage with Search Capabilities

d)  Claims 6 and 16:  Search Capabilities

e)  Claim 7:  Results List

f)  Claim 8:  Advertisement

g)  Claim 9:  Member of Company Managing Website

h)  Claim 11:  Enhanced Services.

Moreover, Health Grades asserts that the asserted claims do not cover entities that provide healthcare services, but rather are limited to physicians and other healthcare professionals, as more specifically set forth in its Claim Construction Brief and Evidence filed on December 5, 2011 [Doc. #79].

14

**EXHIBIT 12**

      iii)      *Comparison Report* [UCHC 00000080]:

This report contained information that was obtained from third parties, other than the physician.  It did not contain information from physicians.  It did not contain patient ratings or comparison ratings.  The language quoted, or the pages cited, by MDx in the claim chart does not disclose the following claim elements:

      a)  Claims 1 and 15:

- Healthcare Provider-Verified Information

- Patient-Provided Information

- Comparison Ratings

- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

      b)  Claim 4:  Hospital Hyperlink

      c)  Claim 5:  Predetermined Webpage with Search Capabilities

      d)  Claims 6 and 16:  Search Capabilities

      e)  Claim 7:  Results List

      f)  Claim 8:  Advertisement

      g)  Claim 9:  Member of Company Managing Website

      h)  Claim 11:  Enhanced Services.

      **d)**    **The GeoAccess reference:**

This website appeared to give basic information about physicians, but did not include information provided by physicians, patient ratings, or comparison ratings among other things. The quoted portions of this reference, which actually seems to comprise several separate

EXHIBIT 12

references (1: UCHC 0000276-288 & 000301-309; 2: UCHC 0000289; 3: UCHC 0000290-300; 4: UCHC 0000310-321), do not disclose the following elements:

a)  Claims 1 and 15:

- Healthcare Provider-Verified Information

- Patient-Provided Information

- Third Party Verified Information

- Comparison Ratings

- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

b)  Claim 4:  Hospital Hyperlink

c)  Claim 5:  Predetermined Webpage with Search Capabilities

d)  Claims 6 and 16:  Search Capabilities

e)  Claim 7:  Results List

f)  Claim 8:  Advertisement

g)  Claim 9:  Member of Company Managing Website

h)  Claim 11:  Enhanced Services.

**e)    The Subimo reference:**

To the extent that the documentation relating to this website is legible, it did not include patient ratings or physician-verified information.  It also does not contain comparison ratings.  The language quoted, or the pages cited, by MDx in the claim chart does not disclose the following claim elements from this reference, which actually comprises several references (1: UCHC 0000131-142; 2: UCHC 0000143-147):

16

EXHIBIT 12

a) Claims 1 and 15:

- Healthcare Provider-Verified Information

- Patient-Provided Information

- Third Party Verified Information

- Comparison Ratings

- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

b) Claim 4:  Hospital Hyperlink

c) Claim 5:  Predetermined Webpage with Search Capabilities

d) Claims 6 and 16:  Search Capabilities

e) Claim 7:  Results List

f) Claim 8:  Advertisement

g) Claim 9:  Member of Company Managing Website

h) Claim 11:  Enhanced Services.

**f)**     **The Healthscope reference** [UCHC 0000202-206]:

To the extent that this website has information relating to physicians, it did not include information verified by physicians, patient ratings, or comparison ratings among other things. The language quoted, or the pages cited, by MDx in the claim chart does not disclose the following claim elements:

**a)** Claims 1 and 15:

- Healthcare Provider-Verified Information

- Patient-Provided Information

17

**EXHIBIT 12**

- Third Party Verified Information

- Comparison Ratings

- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

b) Claim 4:  Hospital Hyperlink

c) Claim 5:  Predetermined Webpage with Search Capabilities

d) Claims 6 and 16:  Search Capabilities

e) Claim 7:  Results List

f) Claim 8:  Advertisement

g) Claim 9:  Member of Company Managing Website

h) Claim 11:  Enhanced Services.

3) **The Remaining References Do Not Teach All of the Elements of the Asserted Claims**

a) **The RateMDS reference** [MDX0000119-123]:

This appears to a website that is based exclusively on information from patients and does not have physician-verified or third party verified information.  The language quoted, or the pages cited, by MDx in the claim chart does not disclose the following claim elements:

a) Claims 1 and 15:

- Healthcare Provider-Verified Information

- Comparison Ratings

- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

18

EXHIBIT 12

    b)  Claim 4:  Hospital Hyperlink

    c)  Claim 5:  Predetermined Webpage with Search Capabilities

    d)  Claims 6 and 16:  Search Capabilities

    e)  Claim 7:  Results List

    f)  Claim 8:  Advertisement

    g)  Claim 9:  Member of Company Managing Website

    h)  Claim 11:  Enhanced Services.

**b)**    **U.S. Patent Publication 2006/0294138 ("Stolba"):**

Stolba describes a system for rating professionals that may be based on expertise, cost, or the ethics of the professional, and may include comments about the professional.  Users may search for rated professional by categories and geographic areas.  Stolba describes including *only* basic information within the system, and does *not* describe including information provided by the professional themselves or information verified by third parties.  It also does *not* describe comparison ratings.  The language quoted, or the pages cited, by MDx in the claim chart does not disclose the following claim elements:

    **i)**    Claims 1 and 15:

- Healthcare Provider-Verified Information

- Patient-Provided Information

- Third Party Verified Information

- Comparison Ratings

- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

**EXHIBIT 12**

     a)  Claim 4:  Hospital Hyperlink

     b)  Claim 5:  Predetermined Webpage with Search Capabilities

     c)  Claims 6 and 16:  Search Capabilities

     d)  Claim 7:  Results List

     e)  Claim 8:  Advertisement

     f)  Claim 9:  Member of Company Managing Website

     g)  Claim 11:  Enhanced Services.

     **c)**     **U.S. Patent No. 7,167,855 ("Koenig"):**

Koenig describes a system for matching consumers with experts offering consulting services in the biological sciences or the like.  The server presents each expert with a Web interface through which the expert inputs his or her qualifications and times of availability.  The server also presents each customer with a Web interface through which the customer inputs the qualification and times of availability sought.  The server uses the input data to match experts with customers.  At first, the experts and the customers are anonymous to one another.  Once either an expert or a customer chooses to purchase the record concerning a match, the record with contact information is released, and the expert and the customer can contact each other.  It does not disclose patient ratings or third party verified information.  It does not disclose comparison ratings.

The language quoted, or the pages cited, by MDx in the claim chart does not disclose the following claim elements:

     a)  Claims 1 and 15:

         •     Patient-Provided Information

**EXHIBIT 12**

- Third Party Verified Information

- Comparison Ratings

- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

b) Claim 4:  Hospital Hyperlink

c) Claim 5:  Predetermined Webpage with Search Capabilities

d) Claims 6 and 16:  Search Capabilities

e) Claim 7:  Results List

f) Claim 8:  Advertisement

g) Claim 9:  Member of Company Managing Website

h) Claim 11:  Enhanced Services.

**d)      U.S. Patent Publication 2003/0167187 ("Bua"):**

Bua describes systems and methods of determining a performance rating of a healthcare facility, such as a nursing home or a long term care facility.  It is limited to rating entities, not people.  It does not describe providing any other kind of information, such as physician provided information, patient ratings, or third party verified information.  It does not have comparison ratings of doctors.  The language quoted, or the pages cited, by MDx in the claim chart does not disclose the following claim elements:

a) Claims 1 and 15:

- Healthcare Provider-Verified Information

- Patient-Provided Information

- Third Party Verified Information

21

EXHIBIT 12

- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

b) Claim 4:  Hospital Hyperlink

c) Claim 5:  Predetermined Webpage with Search Capabilities

d) Claims 6 and 16:  Search Capabilities

e) Claim 7:  Results List

f) Claim 8:  Advertisement

g) Claim 9:  Member of Company Managing Website

h) Claim 11:  Enhanced Services.

**e)        U.S. Patent No. 7,065,528 ("Herz"):**

Herz describes framework for a system that will allow a professional to vastly extend the web of his referral network, by using a centralized matching system for matching a patient's medical problem, while protecting the privacy of patient, and allows a broad range of outside specialists the opportunity to present themselves.  In addition to a database that allows the referring professional to gauge the capabilities of the candidates, the system also includes a bidding system such that candidates can offer a small reward (cash or otherwise) in exchange for being given the work.  In essence, Herz is related to matching a patient's disease with optimal medical care.  The language quoted, or the pages cited, by MDx in the claim chart does not disclose the following claim elements:

a) Claims 1 and 15:

- Healthcare Provider-Verified Information

- Patient-Provided Information

22

EXHIBIT 12

- Third Party Verified Information

- Comparison Ratings

- Report Created Using Doctor-Verified, Patient Ratings, and Third Party-Verified Information

b) Claim 4:  Hospital Hyperlink

c) Claim 5:  Predetermined Webpage with Search Capabilities

d) Claims 6 and 16:  Search Capabilities

e) Claim 7:  Results List

f) Claim 8:  Advertisement

g) Claim 9:  Member of Company Managing Website

h) Claim 11:  Enhanced Services.

**4)** __Invalidity Under 35 U.S.C. §103:__  MDX bears the burden to prove invalidity due to obviousness by clear and convincing evidence. The underlying factual inquiries are (1) the level of ordinary skill in the pertinent art, (2) the scope and content of the prior art, (3) the differences between the prior art and the claims at issue, and (4) secondary considerations of non-obviousness. Further, MDX must prove by clear and convincing evidence that (1) one or more specific combinations of references teach *all* of the elements of each asserted claim; *and* (2) that there was a reason to make each specific combination.  MDX has failed to identify any specific combinations of references, let alone shown that it is capable of meeting its burden on all of these issues.  Rather, MDX has made *only* conclusory statements about obviousness to the effect that the asserted claims of "the '060 Patent [are] anticipated and/or rendered obvious by each of the [1] '369 prior art, [2] the HG Report prior art, [3] the

23

EXHIBIT 12

GeoAccess prior art, [4] the Subimo prior art, and [5] the HealthScope prior art, individually

in combination with [6] the '233 prior art." However, taken literally MDX's allegations

comprise approximately 57 combinations, listed below.

1.  [1] '369 publication, [2] HG Report
2.  [1] '369 publication, [3] GeoAccess reference
3.  [1] '369 publication, [4] Subimo reference
4.  [1] '369 publication, [5] Healthscope reference
5.  [1] '369 publication, [6] '233 publication
6.  [2] HG Report, [3] GeoAccess reference
7.  [2] HG Report, [4] Subimo reference
8.  [2] HG Report, [5] Healthscope reference
9.  [2] HG Report, [6] '233 publication
10. [3] GeoAccess reference, [4] Subimo reference
11. [3] GeoAccess reference, [5] Healthscope reference
12. [3] GeoAccess reference, [6] '233 publication
13. [4] Subimo reference, [5] Healthscope reference
14. [4] Subimo reference, [6] '233 publication
15. [5] Healthscope reference, [6] '233 publication
16. [1] '369 publication, [2] HG Report, [3] GeoAccess reference
17. [1] '369 publication, [2] HG Report, [4] Subimo reference
18. [1] '369 publication, [2] HG Report, [5] Healthscope reference
19. [1] '369 publication, [2] HG Report, [6] '233 publication
20. [1] '369 publication, [3] GeoAccess reference, [4] Subimo reference
21. [1] '369 publication, [3] GeoAccess reference, [5] Healthscope reference
22. [1] '369 publication, [3] GeoAccess reference, [6] '233 publication
23. [1] '369 publication, [4] Subimo reference, [5] Healthscope reference
24. [1] '369 publication, [4] Subimo reference, [6] '233 publication
25. [1] '369 publication, [5] Healthscope reference, [6] '233 publication
26. [2] HG Report, [3] GeoAccess reference, [4] Subimo reference
27. [2] HG Report, [3] GeoAccess reference, [5] Healthscope reference
28. [2] HG Report, [3] GeoAccess reference, [6] '233 publication
29. [2] HG Report, [4] Subimo reference, [5] Healthscope reference
30. [2] HG Report, [4] Subimo reference, [6] '233 publication
31. [2] HG Report, [5] Healthscope reference, [6] '233 publication
32. [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference
33. [3] GeoAccess reference, [4] Subimo reference, [6] '233 publication
34. [3] GeoAccess reference, [5] Healthscope reference, [6] '233 publication
35. [4] Subimo reference, [5] Healthscope reference, [6] '233 publication
36. [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [4] Subimo reference

EXHIBIT 12

37.   [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [5] Healthscope reference

38.   [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [6] '233 publication

39.   [1] '369 publication, [2] HG Report, [4] Subimo reference, [5] Healthscope reference

40.   [1] '369 publication, [2] HG Report, [4] Subimo reference, [6] '233 publication

41.   [1] '369 publication, [2] HG Report, [5] Healthscope reference, [6] '233 publication

42.   [1] '369 publication, [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference

43.   [1] '369 publication, [3] GeoAccess reference, [4] Subimo reference, [6] '233 publication

44.   [1] '369 publication, [3] GeoAccess reference, [5] Healthscope reference, [6] '233 publication

45.   [1] '369 publication, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

46.   [2] HG Report, [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference

47.   [2] HG Report, [3] GeoAccess reference, [4] Subimo reference, [6] '233 publication

48.   [2] HG Report, [3] GeoAccess reference, [5] Healthscope reference, [6] '233 publication

49.   [2] HG Report, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

50.   [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

51.   [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference

52.   [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [4] Subimo reference, [6] '233 publication

53.   [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [5] Healthscope reference, [6] '233 publication

54.   [1] '369 publication, [2] HG Report, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

55.   [1] '369 publication, [3] GeoAccess reference, [4] Subimo reference, [5] Healthscope reference, [6] '233 publication

EXHIBIT 12

56.     [2] HG Report, [3] GeoAccess reference, [4] Subimo reference, [5]
        Healthscope reference, [6] '233 publication
57.     [1] '369 publication, [2] HG Report, [3] GeoAccess reference, [4]
        Subimo reference, [5] Healthscope reference, [6] '233 publication

MDx has also asserted that various, but unspecified combinations of all eleven references

render the claims obvious.  Taken literally, these eleven references can be combined in more

than 2000 different ways.

MDX has not made specific allegations regarding all of these combinations and, even if it

had, this number is completely unreasonable.  Based on the information MDX has provided,

Health Grades disagrees that there was reason to make any of these combinations.  Health

Grades further asserts that many of these references actually teach away from combining them

with the other references.  MDX alleges that many of these references predate Health Grades

patents by many years – this argument begs the obvious question: if it was so obvious to

combine these references, why didn't someone actually do so before Health Grades? The answer

is clear – it was not obvious.

Additionally, MDX cannot prove that any of these combinations teach all of the elements

of the asserted claims as described above with respect to anticipation.

Finally, there are many secondary considerations that show non-obviousness as

detailed in Health Grades' response to Interrogatory No. 4 as summarized below.

Subject to the foregoing, as set forth above in the section relating to anticipation, MDx

has not proven that any combination of references teaches ALL of the elements of any of the

EXHIBIT 12

claims.  Moreover, MDx will not be able to prove that there was a reason to combine any of the alleged references for the reasons described below:

### A)      The Participants Only Systems

Many of the eleven references relied by MDx are different from the '060 claimed invention because they describe information systems that begin with a limited universe of subjects (e.g. physicians, lawyers, or professionals).  The professionals included in the database are self-selected and necessarily not comprehensive.  These limited systems can further be broken down into the following subgroups:

### (i)      Auction/Bidding Systems

### (1)      U.S. Patent Publication 2002/0038233 ("Shubov"):

Shubov discloses an on-line bidding and auction system for matching consumers with lawyers and other service providers.  Its universe is limited to lawyers and consumers who wish to participate in the system.  A consumer is asked a series of preselected questions about his or her service needs.  The matching system cross references the consumer answers with a database of service providers.  The system also posts a description of the case which is available to all service providers and forwards a description of the case to service providers that are qualified to perform the desired services.  The service providers can then submit bids to do the work that are returned to the consumer.  This enables the consumer to view and compare all bids and obtain additional information about each service provider through the consumer homepage before selecting a service provider for the work. After the services are complete, the consumer can rate the service provider and the rating will be available to other consumers.  The ratings allow the attorney develop "a history or professional reputation within

27

EXHIBIT 12

the matching system." (¶0154.)  Shubov does not disclose any comparison ratings for lawyers or anyone else.

MDx does not give any specific reasons to combine Shubov ('233) with any of the other references other than to say there was a motivation to combine it with Bachus.  For example, MDx states:

> from underserved populations and multiple cultural groups." (FIG. 7).  Motivation to combine and/or modify the prior art is recognized in at least one or more of the '369 prior art, the HG Report prior art, the GeoAccess prior art, the Subimo prior art, the HealthScope prior art, the '855 prior art, and the '233 prior art as shown with respect to this claim language and in other portions of such prior art references.  A combination and/or modification of the '369 prior art with regard to confirming information regarding a health care provider entry, with one or more of the '855 prior art and the '233 prior art with regard to accepting provider-provided information and verifying accuracy thereof, as a whole, would have been obvious to one of ordinary skill in the art based at least on these motivations.

(*see, e.g.* Supp. Claim chart at 5.)  Health Grades disagrees.  For one thing, Shubov relates to attorneys, not physicians.  For another, it is directed to a different problem, namely an online bidding system for legal services and to automatically forwarding consumer cases to lawyers who can do the work.  (¶0005.)

### (2)     U.S. Patent No. 7,167,855 ("Koenig"):

Koenig describes a system for matching consumers with experts offering consulting services in the biological sciences or the like.  Its universe is limited to professionals who wish to participate in the system.  The server presents each expert with a Web interface through which the expert inputs his or her qualifications and times of availability.  The server also presents each customer with a Web interface through which the customer inputs the qualification and times of

**EXHIBIT 12**

availability sought.  The server uses the input data to match experts with customers.  At first, the experts and the customers are anonymous to one another.  Once either an expert or a customer chooses to purchase the record concerning a match, the record with contact information is released, and the expert and the customer can contact each other.  It does not disclose patient ratings or third party verified information.  It does not disclose comparison ratings.

MDx does not give any specific reasons to combine Koenig with any of the other references other than to say there was a motivation to combine.  Health Grades disagrees. Koenig is directed to a matching experts and consumers based on availability times and qualifications.  The identities of the experts and consumers are anonymous until either one chooses to purchase the record of the other.  This is different from the other cited references and the '060 patent.

### (3)        U.S. Patent No. 7,065,528 ("Herz"):

A framework for a system that will allow a professional to vastly extend the web of his referral network, by using a centralized matching system for matching a patient's medical problem, while protecting the privacy of patient, and allows a broad range of outside specialists the opportunity to present themselves.  In addition to a database that allows the referring professional to gauge the capabilities of the candidates, the system also includes a bidding system such that candidates can offer a small reward (cash or otherwise) in exchange for being given the work.  In essence, Herz is related to matching a patient's disease with optimal medical care.  Its universe is limited to professionals who wish to participate in the system.

EXHIBIT 12

MDx does not give any specific reasons to combine Herz with any of the other references other than to say there was a motivation to combine.  Health Grades disagrees.  There is no reason to combine Herz with any of the other references.

        (ii)      <u>Customer Ratings Systems</u>

        **(1)      U.S. Patent Publication 2006/0015369 ("Bachus"):**

The Bachus publication describes an online database of patient-to-patient healthcare provider recommendations.  (Abstract.)  Patients who have had a positive experience with a physician can register this physician online, and subsequent patients can search for a physician by a variety of categories, such as, e.g., location, specialty, or physician name.  *Only those healthcare providers who have received a recommendation from a patient will be displayed in response to a search query.*  (Fig. 1.)  The recommendations of Bachus are limited to narratives (Fig. 3.)  Bachus does not disclose, describe, or even suggest any kind of ratings, based on patient feedback or otherwise.

MDx does not give any specific reasons to combine Bachus ('369) with any of the other references other than to say there was a motivation to combine.  Health Grades disagrees.  For example, Bachus emphasizes the importance of patient recommendations, as compared to other kinds of information, to those searching for a physician.  Bachus does not disclose allowing doctors to provide information about themselves – it teaches away from inclusion of this type of information, focusing exclusively on patient recommendations.  In fact, Bachus' systems focus solely on patient recommendations and teach away from combining this information with other kinds of information included in the '060 patent claims:

**EXHIBIT 12**

[0038]  In accordance with embodiments of the present invention, systems are provided for searching from a data-base populated solely with patient-recommended healthcare providers. This is in contrast with existing online systems, which enable patients to post feedback on specific physi-cians, but also provide physician listings for physicians who

have not received any patient recommendations. There are several different sources of health care information avail-able, including various programs providing free or fee-based information through the Internet. In addition, some insur-ance companies provide searchable databases to enable subscribers to search for physicians within those companies' coverage networks based on a variety of criteria, such as location or specialty. Furthermore, some of these online systems may list physicians based on their subscription to fee-based patient-referral services, or based on ratings by other healthcare providers.

[0039]  By limiting the scope of the database to only those healthcare providers who have been recommended by patients, the ease of searching can be considerably improved by narrowing the scope of the search. In addition, the level of confidence and trust by healthcare consumers may be increased with the knowledge that all of the referrals are from other consumers, who may be in similar positions and have similar needs. Research supports the fact that consum-ers choose physicians based on other patients' recommen-dations.

As such, there is no reason to combine, and several reasons *not* to combine, Bachus with any of the other references identified by MDx.

(2)     **U.S. Patent Publication 2006/0294138 ("Stolba"):**

Stolba describes a system for rating professionals that may be based on expertise, cost, or the ethics of the professional, and may include comments about the professional.  Users may search for rated professional by categories and geographic areas.  Stolba describes including *only* basic information within the system, and does *not* describe including information provided by the professional themselves or information verified by third parties. It also does *not* describe comparison ratings.

31

EXHIBIT 12

MDx does not give any specific reasons to combine Stolba ('138) with any of the other references other than to say there was a motivation to combine.  Health Grades disagrees.  For one thing, Stolba is directed to a different problem from the other identified prior art and a different problem from the '060 patent.  It is focused on providing ratings, as opposed to providing the most complete and accurate information available regarding physicians, like the '060 patent, or providing only those physicians who have received a recommendation, like Shubov.

<div align="center">(3)    <b>RateMDS (MDX 000120-123):</b></div>

This site appears to be based exclusively on patient ratings.  There is no evidence that it was a comprehensive database of doctors combined with user-solicited info. There is no evidence that doctors can provide information or that any of the information is verified by anyone.  There is no evidence as to whether this site was available and what features it had before 2011.

MDx does not give any specific reasons to combine RateMDS with anything else other than to say there was a motivation to combine.  Health Grades disagrees for the same reasons set forth herein with respect to the other references.

<div align="center"><b>B)    <u>The Comprehensive Systems:</u></b></div>

The remaining references are different from the first group in that they begin with a comprehensive universe of individuals or entities and are not focused exclusively on those who intend to participate in the system.  These comprehensive systems are based on third party data, such as state licensing boards or governmental data.  These references can further be broken down into the following subgroups:

<div align="center">32</div>

<div align="right"><b>EXHIBIT 12</b></div>

(i)      Information Systems about Entities:

**(1)      U.S. Patent Publication 2003/0167187 ("Bua"):**

Bua describes systems and methods of determining a performance rating of a healthcare facility, such as a nursing home or a long term care facility.  It is limited to rating entities, not people.  It does not describe providing any other kind of information, such as physician provided information, patient ratings, or third party verified information.

MDx does not give any specific reasons to combine Bua with any of the other references other than to say there was a motivation to combine.  Health Grades disagrees.  Specifically, MDx states:

> Motivation to combine and/or modify the prior art is recognized in one or more of the '369 prior art and the '187 prior art as shown with respect to this claim language. A combination and/or modification of the '369 prior art report to include the '187 prior art ratings of multiple providers, as a whole, would have been obvious to one of ordinary skill in the art based on these motivations. See also combinations and/or modifications of the '369 prior art with on one or more of the '233 prior art, the '855 prior art, the '137 prior art, and the '528 prior art, discussed above.

Health Grades disagrees.  Bua does not even relating to rating professionals, but instead is limited to entities.  It describes systems and methods for taking government data regarding nursing homes and making it less confusing for ordinary consumers.  (¶0007.)  This is different from both the '060 patent claims and the other cited references.

**(2)      Health Grades' Hospital Quality Report:**

MDx does not give any specific reasons to combine this Health Grade hospital report with any of the other references other than to say there was a motivation to combine.  Health

33

**EXHIBIT 12**

Grades disagrees.  It was not obvious to combine a hospital report with a physician report because the types of information contained therein are different.  Indeed, Health Grades had these kinds of reports on its website and did not combine them.  Moreover, the hospital report does not contain physician verified information, patient ratings (as claimed), or comparison ratings for physicians.  This report is limited to entities, which is different from both the '060 patent claims and the other cited references.

     (ii)  <u>Information Systems Designed For Professionals That Do NOT Include Consumer Ratings:</u>

  These systems are designed for or by the professionals listed in the service.  For example:

<p align="center"><b>(1)  Health Grades' Physician Quality Report</b><i>:</i></p>

  The report contained information that was obtained from third parties, other than the physician.  It did not contain information from physicians.  It did not contain patient ratings or comparison ratings.

  MDx does not give any specific reasons to combine this Health Grade report with any of the other references other than to say there was a motivation to combine.  For example, MDx states:

> A combination and/or modification of the HG Report prior art with regard to physician quality report information, with one or more of the '855 prior art and the '233 prior art with regard to accepting provider-provided information and verifying accuracy thereof, as a whole, would have been obvious to one of ordinary skill in the art based at least on these motivations.

(Supp. Claim Chart at 5).  Health Grades disagrees.  It was not obvious to combine these different kinds of information as evidenced by, among other things, the fact that Health Grades

<p align="center">34</p>

<p align="right"><b>EXHIBIT 12</b></p>

did not combine these kinds of information.  Further, there were disincentives to add patient ratings to physician reports, including because some physicians do not like patient ratings.

<div align="center">(2)      <b>Health Grades' Physician Comparison Report</b>:</div>

MDx does not give any specific reasons to combine this Health Grade comparison report with any of the other references other than to say there was a motivation to combine.  Health Grades disagrees.  It was not obvious to combine this report with the other Health Grades reports because the types of information contained therein are different.  Indeed, Health Grades had these kinds of reports on its website and did not combine them.

Even if you did combine all of the Health Grades reports, the combination still would not teach most of the claim elements including physician-verified information, patient ratings, and comparison ratings to name a few.

<div align="center">(3)      <b>Public Use of <a>www.subimo.com</a></b>:</div>

To the extent that the documentation relating to this website is legible, it did not include patient ratings or information from the physician.  It also does not contain comparison ratings.  It appears to be similar to the Health Grades comparison report listed above.  Further, it appears that this site was created by providers and is run for their benefit, rather than a neutral clearing house of information like the '060 patent.

MDx does not give any specific reasons to combine this Subimo report with any of the other references other than to say there was a motivation to combine.  Health Grades disagrees for the same reasons set forth herein with respect to the other references.

<div align="right"><b>EXHIBIT 12</b></div>

**(4)**  **Public Use of www.ingenix.com** (GeoAccess):

This website appeared to give basic information about physicians, but did not include information provided by physicians, patient ratings, or comparison ratings among other things. MDx does not give any specific reasons to combine this GeoAccess report with any of the other references other than to say there was a motivation to combine.  Health Grades disagrees for the same reasons set forth herein with respect to the other references.

**(5)**  **Public Use of** www.healthscope.org:

To the extent that this website has information relating to physicians, it did not include information provided by physicians, patient ratings, or comparison ratings among other things. MDx does not give any specific reasons to combine this reference with any of the other references other than to say there was a motivation to combine.  Health Grades disagrees for the same reasons set forth herein with respect to the other references.

**C)**  **There is No Reason to Combine Any of These References**

There is no reason to combine the references between any of the four subgroups because they are all based on different technology, different philosophies, different motivations, and as a result are fundamentally different systems.  For example, the participant only auction systems are not focused on providing comprehensive, accurate, and complete information – they are focused on getting more business for the professionals who participate and getting the best price for the consumers who participate.  The goal is to have a limited universe of doctors, for example, to minimize the competition for bids and increase the likelihood that the doctors will win bids for more work.  They necessarily do not want to be

**EXHIBIT 12**

comprehensive, and thus, there is no motivation to combine these references with comprehensive systems, like HealthScope, Subimo, GeoAccess, and Health Grades.

Similarly, self-selected systems based on patient ratings, like Bachus, Stolba, and RateMDS, are focused totally and exclusively on patient ratings. Bachus teaches away from adding any other kind of information to its system. It would not be obvious to combine these systems with those created by and/or run for the benefits of doctors (i.e., HealthScope, Subimo, GeoAccess, and Health Grades). Indeed, as Mr. LaPointe recognized in his deposition, most doctors do not like the concept of patient ratings of doctors published on the internet. Not only is not a reason to combine these two kinds of systems, there were reasons not to combine them.

The hospital only systems (Bua and Health Grades' HQR) are very different from any of the others. The kinds of information that relate to hospitals do not apply to people and vice-versa. There is no motivation to combine these systems with any of the others.

**D)**     **Secondary Considerations of NonObviousness:**

Secondary considerations show that it was not obvious to combine any of the foregoing references, including: (1) the commercial success of Health Grades' website physician reports that are covered by the patent claims (see Exhibit E claim chart served on MDx as part of supplemental infringement contentions); (2) the commercial success of MDx's website physician reports that are covered by the patent claims (see infringement contentions, Exhibits A-D); (3) evidence of long felt but unresolved needs, including the many websites with information about physicians available on the Internet in the early 2000s, but the failure of any of them to include all of the claimed elements; (4) the failure of others, including the owners of

37

EXHIBIT 12

the above-cited prior art references to create a system that meets the claimed invention; (5) the skepticism of others who were hesitant and/or believed it would be a bad idea to include patient ratings of physicians within an information system (because among other reasons, physicians don't like patient ratings and/or advertisers don't like patient ratings and/or it is difficult to build a patient rating system that is accurate and not slanderous) with other kinds of information relating to physicians; (6) praise by others in the media and the industry; (7) teaching away by others, including that described above; (8) copying of the invention by competitors, including MDx; and (9) testimony of facts witnesses, such as the inventors and Jeff La Pointe, and experts.

     5)    **<u>Invalidity Under 35 U.S.C. §112:</u>** The only other basis for invalidity asserted by MDX is based on §112, namely lack of enablement, failure to meet the written description requirement, and indefiniteness. MDX's contentions on this matter consist of a single paragraph doing nothing more than saying in conclusory fashion that the claims are invalid for these reasons. MDX does not even identify which claims it asserts are invalid under which §112 theory, let alone give any detail as to what language in the claims is not enabled, which language violates the written description requirement, and which language is indefinite. Thus, it is impossible for Health Grades to respond to these conclusory and unsupported allegations with any detail other than to say that it disagrees with MDX's conclusory arguments. The claims are enabled, they do not violate the written description requirement, and they are not indefinite. The patent is entitled to a presumption of validity – the Patent Office examined

EXHIBIT 12

Health Grades asserted claims to make sure that they complied with §112, and allowed them to issue.

MDX incorrectly asserts that Health Grades' infringement contentions and proposed claim constructions are inconsistent with and unsupported by the specification with respect to the "Comparison Ratings" and "information on first healthcare provider" limitations.  This is not so much an invalidity defense by MDX as it is a disagreement with Health Grades' infringement contentions - Health Grades will make its literal and doctrine of equivalents infringement arguments at trial and not here in this supplemental response.  Nonetheless, as explained below, Health Grades disagrees and asserts that both these phrases are sufficiently supported by the specification:

> a)  **First Healthcare Provider:** Claim 1 provides:

> 1.  A computer-implemented method of providing healthcare provider information to potential patients, said method comprising:
> receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding **a first healthcare provider**. . . .

(emphasis added.) Claim 15 uses similar language.

While the term "healthcare provider" is used broadly in the '060 specification to include both people (e.g., physicians) and entities (e.g., hospitals) that provide healthcare services (col. 1:11-14), it also makes clear that "[s]ome embodiments relate to searches for physicians, while others relate to searches for hospitals, nursing homes, or other types of health care providers or treatment facilities." The '060 claims are directed to searches for physicians (and other people) as opposed to searches for hospitals (and other entities). For example, claim 14 depends from claim 1 and says that the healthcare provider is a physician. Claim 7 ultimately depends from

**EXHIBIT 12**

claim 1 and further requires search capabilities that allow a patient to search for providers by gender, among other criteria. Obviously, entities, such as hospitals, do not have a gender.

Other elements of claims 1 and 15 indicate that for these claims, the healthcare provider is a person, not an entity. For example, the claimed Healthcare Provider-Verified Information comprises things that relate to people, not entities, such as: "gender, age, years in profession, years in practice,. . . professional appointments, professional memberships,. . . languages, and hobbies. . . ." ('060 patent, claim 1 (2nd ¶) and claim 15 (3rd ¶).) Similarly, the claimed Third Party Verified Information includes things that do *not* apply to entities, such as: board certification, . . . medical school, medical internship, medical residency, and medical fellowship

information. . . ." ('060 patent, claim 1 (4th ¶) and claim 15 (5th ¶).) Thus, one of ordinary skill in the art would understand that the term "healthcare provider" as used in the '060 claims does *not* encompass requests for information relating to hospitals or other healthcare entities.

Moreover, the types of information that are included in the claimed healthcare provider report are described as being part of a physician report, but are *not* part of the hospital reports:

**Example Physician Report**          **Example Hospital Report**

 

('060 patent, col. 7:51-8:2, Fig. 3A.)          ('060 patent, col. 11:34-51, Fig. 7B.)

EXHIBIT 12

Although the claims should not be limited to the specific examples described in the specification, these examples support the fact that the '060 patent claims are directed toward requesting information about people, not entities.

Finally, while the definition of healthcare provider should not include entities, it should be broad enough to cover other kinds of *people who provide healthcare services*. ('060 patent, col. 19:60-65 ("For example, the present invention may not be limited specifically to healthcare provider information but, instead, may be applicable to any kind of professionals, such as ... veterinarians, dentists, etc.").)  As such, Health Grades proposed construction of "first healthcare provider" is consistent with the ordinary meaning of this phrase in light of the specification.

      **b).**    **Comparison Ratings:** Claims 1 and 15 provide:

> Creating. . . a healthcare provider report on the first healthcare provider. . . , wherein the healthcare provider report on the first healthcare provider includes **Comparison Ratings of health care providers**. . . .

(emphasis added.) The '060 patent states that Comparison Ratings relate to a particular provider (e.g. the first healthcare provider) that is featured in a healthcare provider report. For example, the '060 patent states:

> Aspects of particular embodiments relate to performing searches for healthcare providers based on geographic area, specialty, and/or other criteria, in which the company maintaining and/or managing the Web site. . . compiles and produces a results list of providers meeting such criteria. . . . From this list, a patient may access a detailed "report" or, in one embodiment, **Comparison Ratings on that particular provider**."

('060 patent, col. 1:67-2:5 (emphasis added).) The ratings described in the '060 patent relate to a specific provider and enable a patient to compare that particular healthcare provider with other healthcare providers to determine which healthcare provider best meets a patient's needs:

**EXHIBIT 12**

- One of the problems with prior on-line healthcare information websites is that the information, even if it exists, "is usually not organized in a manner that would allow a patient to compare physicians or hospitals. . . ." ('060 patent, col. 1:29-47.)

- The claimed invention solves this problem by providing information and ratings in a format that enables "patients to differentiate among healthcare providers and thereby select the provider that best meets their individual needs." ('060 patent, Abstract.)

- "In accordance with an embodiment of the invention, comparisons amongst the physicians may be provided to the patient, in which such comparisons highlight which physicians best fit the patient's specified criteria." ('060 patent, Col. 6:63-7:15 (emphasis added).)

- "If query 1116 determines that the patient would like to receive the type of information shown in the sample report, flow branches YES to receive operation 1118 where physician comparison results are provided. In particular, operation 1118 provides the patient with information regarding how well physicians listed satisfy the specified criteria 1106, 1108, and 1110." ('060 patent, col. 13:36-43.)

As such, the claimed Comparison Ratings relate to a healthcare provider that is the subject of the report and enable patients to differentiate that particular healthcare provider from other healthcare providers.

The '060 patent is entitled to a presumption of validity. Many of the references on which MDX relies were considered by the Patent Office and it decided to allow the claims to issue despite these references. Moreover, many do not qualify as prior art. MDX will not be able to meet the very high standard of the clear and convincing evidence burden to prove invalidity. Further, MDX may not be able to corroborate much of its invalidity evidence – Health Grades will in a better position to object on this basis after it has deposed MDX's invalidity witness on December 15, 2011. To the extent MDX identifies other witnesses in support of its invalidity

**EXHIBIT 12**

defense, Health Grades reserves the right to depose any such witnesses and to further supplement this response.

Health Grades will rely on testimony of its technical expert, Dr. Phil Greenspun, as well as the inventors, and any MDX witnesses on this issue to support its arguments against MDX's invalidity defense.

Health Grades reserves the right to supplement the foregoing supplemental responses as discovery continues.

HEALTH GRADES, INC.
By its Attorneys,

Date: January 26, 2012

*Jesús M. Vázquez, Jr., Esq.*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email: kkostolansky@rothgerber.com
        jvazquez@rothgerber.com
        jphipps@rothgerber.com
*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

EXHIBIT 12

## **VERIFICATION**

On behalf of Health Grades, Inc. and in my capacity as Executive Vice-President, CFO at Health Grades, Inc., I have read the foregoing supplemental answer to Defendant's Interrogatory No. 8. I do not necessarily have direct personal knowledge of every fact contained herein. The responses were prepared with the assistance of the authors of the documents referenced, and with the assistance and advice of counsel. The answers are based on the records and information currently available. I reserve the right to make changes in or additions to any of these answers if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available. To the extent I do not have personal knowledge; I have relied on others to gather the responsive information. I declare under penalty of perjury that the foregoing is true and correct.

_____

Allen Dodge, Executive Vice President, CFO

EXHIBIT 12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2011, I electronically served the foregoing **PLAINTIFF HEALTH GRADES, INC.'S SECOND SUPPLEMENTAL RESPONSE TO DEFENDANT MDX MEDICAL, INC.'S INTERROGATORY NO. 8** on the following:

David Chunyi Lee
Sills Cummis & Gross P.C. – New York
One Rockefeller Plaza, 25th Floor New
York, NY 10020
Email: dlee@sillscummis.com

Ramona L. Lampley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO 80202-2617
Email: lampley@wtotrial.com

Mark Jon Rosenberg
Sills Cummis & Gross P.C.-New York
One Rockefeller Plaza, 25th Floor New
York, NY 10020
Email: mrosenberg@sillscummis.com

Scott David Stimpson
Sills Cummis & Gross P.C.-New York
One Rockefeller Plaza, 25th Floor
New York, NY 10020
Email: sstimpson@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO 80202-2617
Email: ridley@wtotrial.com

*s/ Jesús M. Vazquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:      (303) 623-9000
Facsimile: (303) 623-9222
Email: kkostolansky@rothgerber.com
        jvazquez@rothgerber.com
        jphipps@rothgerber.com
*Attorneys for Plaintiff/Counterclaim
Defendant Health Grades, Inc.*

45

EXHIBIT 12