# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S MOTION FOR LEAVE TO AMEND
ITS COMPLAINT TO ASSERT CAUSES OF ACTION
FOR JOINT INFRINGEMENT AND INDIRECT INFRINGEMENT**

---

Plaintiff Health Grades, Inc. ("Health Grades") respectfully submits its Motion to Amend its Complaint to Assert Causes of Action for Joint Infringement and Indirect Infringement Against Defendant MDx Medical, Inc. ("MDx") pursuant to Fed. R. Civ. P. 15(d).

**I.     INTRODUCTION**

Health Grades ("Health Grades") seeks leave to file a First Amended Complaint, which is attached to this motion as Exhibit 1. Health Grades filed this lawsuit in March 2011. In September 2011, MDx licensed its accused database to Aetna for use in Aetna's iTriage mobile application ("iTriage App."), among other things. Although Health Grades served discovery seeking information and documents relating to MDx's database licenses, MDx actively resisted all of Health Grades' attempts to get this information. Thus, Health Grades did not learn of the iTriage license until Aetna publicly announced it in March 2012. Further, MDx did not produce a copy of the Aetna Agreement until June 6, 2012, almost a month *after* it was ordered to do so

by Magistrate Judge Boland. The First Amended Complaint adds two causes of action against MDx, one for joint infringement and one for indirect infringement, both of which relate to MDx's license of physician data to Aetna for use in its iTriage App.

Federal Rules of Civil Procedure 15(a)(2) and 15(d) require that courts freely grant motions for leave to file amended and supplemental pleadings when justice so requires. Allowing Health Grades to add these supplemental causes of action will not cause delay because Health Grades (finally) has the discovery it needs to prove joint and indirect infringement, namely screenshots from the iTriage App., which was publicly launched with MDx's data in March 2012, and the Aetna Agreement, which MDx produced on June 6, 2012. To the extent that this supplement causes any prejudice to MDx, the harm is self-inflicted. MDx should have produced the Aetna Agreement many months ago, which would have given Health Grades ample time to supplement its complaint before discovery closed. In any event, MDx has control over all of the relevant information and thus allowing this supplementation will not require any extensions to the case schedule.

Further, the supplemental causes of action are not futile. The iTriage App directly infringes the asserted claims as shown in the claim chart attached as Exhibit 2 hereto. MDx is jointly liable for this infringement and has induced and contributed to this direct infringement as described in this claim chart.

Thus, for the reasons set forth herein, Health Grades respectfully requests the Court grant leave to file the First Amended Complaint.

## II. FACTUAL BACKGROUND

### A. Direct Infringement Against MDx

Health Grades filed the Complaint initiating this lawsuit against MDx on March 2, 2011 asserting direct patent infringement of Health Grades U.S. Patent No. 7,752,060 ("the '060 patent"). (Dkt. 1.) The '060 patent generally relates to an Internet-based information system that connects patients with potential healthcare providers. (Order Regarding Claim Construction ("Markman Order") at 1 (Dkt. 183).) "More particularly, the present invention relates to providing on-line ratings and reports comprised of detailed healthcare provider information with verified information sections, including physician verified and/or independent third-party verified portions, and patient-provided information sections, to assist patients in differentiating among healthcare providers." (*See id.* at 1-2.) The company providing the information service creates and maintains a database of detailed information relating to healthcare providers. (*See id.* at 18.) A patient may search for physicians using various search criteria, including for example, geographic area, physician specialty, and gender. (*See id.* at 11.)

MDx owns and operates an on-line information system that connects patients with doctors. Patients may access and search MDx's database of physician information using MDx's www.vitals.com website. The physician database is a crucial part of the accused www.vitals.com website:

3

Plaintiff Health Grades' Rule 3.1(c) Disclosure – Exhibit A – '060 Patent v. MDx's Current Website

**EXHIBIT A - Claim Chart**
**U.S. Patent No. 7,752,060 To MDx's Current Website**

| U.S. Patent No. 7,752,060 | MDx's Current On-line Information System |
|---|---|
| 1. A computer-implemented method of providing healthcare provider information to potential patients, said method comprising: | MDx Medical, Inc. ("MDx") directly infringes this claim by practicing a computer-implemented method of providing healthcare provider information to potential patients via its on-line information system, which includes its website (www.vitals.com), its healthcare provider database, and the software and hardware, that are associated therewith.<br><br>MDx provides potential patients with access to MDx's database of information relating to healthcare providers, such as doctors, through its www.vitals.com website. |

(Ex. A to Original Infringement Contentions, dated 7/1/2011 ("MDx Infringement Claim Chart"), at p. 1 (highlighting added) (Ex. 3 hereto).)

> Screenshot No. 2 shows an example of where a potential patient may initiate a search for a healthcare provider on MDx's website, i.e., request information about one or more healthcare providers. When the user clicks "find a doctor now," this prompts the patient's web browser to send a request for information about a doctor to the MDx's web server, which receives the request for information and then accesses MDx's database to find data that responds to the user's search query.

(*Id.* at 3 (highlighting added).)

| creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare | After a patient/user enters search criteria for a doctor, MDx creates one or more healthcare provider reports using information from the MDx database, including using healthcare provider-verified information, patient-provided information, and information verified by the independent third-party source.<br>Screenshot Nos. 14 & 16-18 show portions of a healthcare provider report for Dr. Mark Brunvand. This report uses at least the following information: (1) healthcare provider-verified information, circled in |

(*Id.* at 15 (highlighting added).)

B. **Health Grades Requested Database License Information from MDx – MDx Refused to Provide It**

Health Grades served MDx with discovery requests seeking information relating to any licenses it has given others for technology related to the accused products and any contracts, agreements, and revenue relating to the accused products. (Health Grades' First Request for the Production of Documents, Electronically Stored Information, and Tangible Things ("Health Grades Document Requests") at pp. 10-14 (Request Nos. 2(k), 2(l), 4(c) (Ex. 4); Plaintiff Health

4

Grades, Inc.'s First Set of Interrogatories to Defendant MDX Medical, Inc. at 11-12 (Ex. 5 hereto).) These requests defined "Accused Product" broadly enough to cover the MDx physician database, which is component of the accused www.vitals.com website. (*Id.* at p. 6 (¶¶ 9-11).) Indeed as shown above, Health Grades' infringement contentions relied heavily on MDx's physician database for its infringement theories. (*See, e.g.,* Ex. A to Original Infringement Contentions at p. 1, 3, 15 (Ex. 3 hereto).)

Health Grades filed a motion to compel MDx to produce this information. This Court granted Health Grades' motion on April 26, 2012 and ordered MDx to produce *by May 10, 2012* complete financial information in response to Health Grades' Document Request No. 4, including all license agreements for MDx products including MDx's database. (Dkt. 192.)

Health Grades also served MDx with a deposition notice under Rule 30(b)(6) seeking, among other things, testimony from MDx relating to:

> 7. The sales of each of the Features (listed above) in Defendant's products and services.
>
> 8. The revenues, costs, and profits attributable to or associated with each of the Features (listed above) in Defendant's products and services.

(Health Grades Rule 30(b)(6) Deposition Notice dated Feb. 14, 2012 (Dkt. 142-1 at p. 6).) One of the "Features" was MDx's physician database. (Id. at Dkt. 142-1, p. 5.) MDx moved to strike this entire notice arguing that Health Grades should not be permitted to take any Rule 30(b)(6) depositions. (MDx Medical, Inc.'s Motion to Strike Health Grades' Deposition Notice Without Leave To Amend (Dkt. 142).) This Court denied MDx's motion to strike. (Dkt. 195). Health Grades took a Rule 30(b)(6) deposition of MDx on June 6, 2012.

5

C.  **MDx Licenses its Accused Physician Database to Aetna and Aetna Uses the Data in the Infringing iTriage App.**

Last year, Aetna acquired a company named iTriage which makes and sells a smartphone application that provides on-line information about doctors ("the iTriage App"). In early March 2012, Aetna publicly announced at a trade show in New York that it had entered into a partnership with MDx (d/b/a Vitals) to license MDx's database of physician information for its iTriage App:



(Mobile Health News (http://mobihealthnews.com/16608/aetnas-itriage-app-adds-appointment-booking-reminders/ ) (Ex. 6 hereto).) The iTriage App has many of the same features as the accused www.vitals.com website, including the ability to search for doctors and to create physician reports that include physician verified and third party verified information. Attached

6

hereto as Exhibit 2 is a claim chart mapping the features of the iTriage App to the asserted claims in this case. Importantly, the iTriage App has star ratings from MDx's database. (iTriage Infringement Chart at p. 25 (Ex. 2 hereto).) REDACTED

As soon as Health Grades learned of this license in mid-March, Health Grades served iTriage with a subpoena to obtain the license documents for the license MDx granted to iTriage and/or its parent Aetna. MDx moved to quash the subpoena. (Dkt. 179.) Health Grades opposed the motion to quash arguing that it needed to get this information from a third party because it had asked for MDx's data licenses and MDx had refused to provide this information:

> Health Grades served MDx with discovery requests seeking information relating to any licenses it has given others for technology related to the accused products and any contracts, agreements, and revenue relating to the accused products. (Health Grades' First Request for the Production of Documents, Electronically Stored Information, and Tangible Things ("Health Grades Document Requests") at pp. 10-14 (Request Nos. 2(k), 2(l), 4(c) (emphasis added) (Ex. 2).) MDx refused to produce this information. (Health Grades' Motion to Compel at 10-11 (Dkt. 126).) Health Grades filed a motion to compel this information, which is currently pending. (*See id.*)

(Health Grades, Inc.'s Opposition to MDx Medical, Inc.'s Motion to Quash Health Grades' Subpoenas to Non-Party iTriage, LLC and iTriage's CEO Peter Hudson at pp. 4-5 (Dkt. 185).) Magistrate Judge Boland granted MDx's motion because he had compelled MDx to produce license information.

> (6) MDx's Motion to Quash [Doc. # 179] is GRANTED. The issue of the propriety of third party discovery concerning damages, including licensing revenues, may be raised again if discovery from MDx is inadequate.

(April 26 2012 Order (Dkt. 195).)

7

D. **MDx Violated Magistrate Judge Boland's April 26, 2012 Order By Not Producing the Aetna Agreement Until June 6, 2012**

Despite Magistrate Judge Boland's April 26, 2012 order, MDx did not produce all of its database license agreements to Health Grades on May 10, 2012. On June 6, 2012, Health Grades sent MDx counsel an e-mail demanding that it produce all license agreements including the Aetna Agreement. (E-mail from Jesús M. Vázquez to Scott Stimpson dated June 6, 2012 (Ex. 8 hereto).) In response, on June 6, 2012 (and on the eve of its Rule 30(b)(6) deposition) MDx finally produced a copy of the "Master Business Agreement ("MBA") between Aetna Life Insurance Company ("Aetna") and MDx Medical, Inc. ("SUPPLIER")" (hereinafter the "Aetna Agreement") (Ex. 9 hereto) and Schedule No. 001 thereto (Ex. 10 hereto) (collectively the "Aetna Agreement") and approximately 21 other database license agreements. The Aetna Agreement refers to several other agreements:

- Hosting Services Attachment, dated September 8, 2011
- Software License Attachment, dated September 8, 2011
- Schedule No. 002 to the MBA

MDx still has *not* produced these agreements.

### III. ARGUMENT

Health Grades seeks an order granting leave to file its First Amended Complaint under Rule 15(d) to add causes of action for joint patent infringement and indirect patent infringement against MDx relating to MDx's license of the accused database to Aetna and Aetna's subsequent use of this data in an infringing mobile device application.

8

2003743625_1

Fed. R. Civ. P. 15(d) provides that a court may permit a party to serve a supplemental pleading setting forth transactions, occurrences, or events that have happened since the date of the pleading sought to be supplemented. Motions to supplement are addressed to the sound discretion of the trial court. *See Reid v. International Union, UAW, Dist. Lodge 1093*, 479 F.2d 517, 520 (10th Cir. 1973), *cert. denied*, 414 U.S. 1076 (1973). Leave to supplement a complaint should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants. *Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989). "Although Rule 15(d) does not include the same express mandate as Rule 15(a), courts construe it to require a similarly liberal approach." *See, e.g, Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 360 (D. N.J. 2000); *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996) ("Although these are cases under Fed. R. Civ. P. 15(a), not Rule 15(d), which governs supplementation of a pleading as a result of events subsequent to the filing of the original pleading and is therefore the rule applicable to Glatt's motion, the standard is the same").

Rule 15(a)(2) provides that leave to amend the pleadings shall be freely given. Fed. R. Civ. P. 15(a). Factors used to determine whether a motion for leave to amend should be granted include whether the amendment is sought in bad faith, whether the amendment will cause undue delay, whether the amendment will result in undue prejudice to the opposing party, and whether the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### A. Health Grades' Motion for Leave to Amend its Complaint is Not Made in Bad Faith and Will Not Cause Delay or Undue Prejudice in this Case

Health Grades makes this motion for leave to amend its complaint in good faith. Health Grades did everything within its power to learn about the license agreements MDx has granted others to its accused physician database. Health Grades sought this information in document

9

Case 1:11-cv-00520-PAB-BNB Document 252 Filed 07/13/12 USDC Colorado Page 10 of 18
Case No. 1:11-cv-00520-RM-NYW Document 269-1 filed 07/27/12 USDC Colorado pg 11 of 18
of 19

requests and interrogatories during the beginning of fact discovery in July 2011. (Exs. 4 and 5 hereto.) MDx refused to provide this information. After numerous attempts to resolve this dispute with MDx failed, Health Grades filed a motion to compel. (Order Granting Health Grades' Motion to Compel (Dkt. 195).) Health Grades also tried to obtain this information directly from iTriage via a third party subpoena. MDx moved to quash this subpoena. (MDx's Motion to Quash (Dkt. 179).) Health Grades tried to obtain this information through a Rule 30(b)(6) deposition – MDx moved to strike this notice and preclude this deposition. ( MDx Medical, Inc.'s Motion to Strike Health Grades' Deposition Notice Without Leave To Amend (Dkt. 142).) Even after the Court granted Health Grades' motion to compel, MDx still did not produce the Aetna Agreement. MDx did not produce this agreement until the night before the Rule 30(b)(6) deposition and then only after Health Grades threatened sanctions proceedings against MDx for violating Magistrate Judge Boland's April 26, 2012 order.

Health Grades is filing this motion within a month of receiving this license agreement, which is timely particularly considering the fact that the parties have been in almost non-stop depositions for the past month and Health Grades needed time to complete the detailed infringement analysis set forth in the claim chart attached as Exhibit 2.

There will be no undue delay or prejudice. Health Grades is not seeking an extension to fact or expert discovery. Health Grades has the discovery it needs to prove that MDx is liable for the supplemental causes of action. Indeed, Health Grades' technical expert will be serving his expert report on infringement, which will disclose his opinion that the iTriage App directly infringes the asserted claims and that MDx is liable for joint infringement and indirect infringement resulting from its license of its accused database to Aetna and Aetna's use of this

10

data in the iTriage App. MDx's technical expert will have three weeks to review the infringement expert report and provide its rebuttal report on non-infringement. Further, Health Grades is attaching hereto as Exhibit 2 a detailed claim chart setting forth its indirect infringement contentions relating to the iTriage App. Because MDx controls the discovery relating to iTriage, there is no need to extend any of the discovery deadlines for MDx.

Any prejudice that the amended complaint may cause MDx should be discounted because it was self-inflicted.

### B. Health Grades' Motion for Leave to Amend is Not Futile

A claim is considered futile if it fails to state a valid theory of liability or could not withstand a motion to dismiss. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007); *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992).

#### 1. The Law of Patent Infringement

By way of background, there are three kinds of patent infringement: direct infringement, joint infringement (also called divided infringement), and indirect infringement.

For system claims (like claim 15 of the '060 patent), direct infringement occurs when a single actor makes, uses, sells, offers for sale, or imports into the United States a system that has all of the elements of the claim. *See* 35 U.S.C. §271(a). Direct infringement of a system claim also occurs when a person puts the system as whole into use, even if that person is not in possession of all of the system claim elements (e.g., a customer uses software on-line). *Centillion Data Sys., LLC. v. Quest Commc'ns Int'l, Inc.,* 631 F.3d 1279 (Fed. Cir. 2011). For method claims (like claim 1 of the '060 patent), direct infringement occurs when a single actor practices all of the steps of the patented method. *BMC Resources, Inc. v. Paymentech, L.P.*, 498

11

F.3d 1373 (Fed. Cir. 2007); *Muniauction, Inc. v. Thomson Corp.*, 552 F.3d 1318 (Fed. Cir. 2008).

Joint infringement is designed to prevent a party from avoiding liability by contracting out one or more steps of a patented method to another party. *BMC*, 498 F.3d at 1381. Joint infringement occurs where the infringing acts are committed by multiple actors and requires that one party maintain some control over the other party. Joint infringement of a method claim requires either that (1) there is an agency relationship between the parties who perform the method steps; or (2) one party is contractually obligated to the other to perform the steps. *BMC*, 498 F.3d at 1373; *Muniauction*, 552 F.3d at 1318 (Fed. Cir. 2008). For system claims, either of two parties who separately possess parts of a claimed system will infringe if that party "put[s] the invention into service, i.e., control[s] the system as a whole and obtain[s] benefit from it." *Centillion*, 631 F.3d. at 1287.

There are two kinds of indirect infringement: (i) active inducement; and (ii) contributory infringement. *See* 35 U.S.C. §§271(b)-(c). Both types require that someone (other than the indirect infringer) directly infringe the claim. Both types also require the indirect infringer have at least some knowledge and intent regarding the patent and the infringement. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009). Active inducement occurs when one encourages, aides, or otherwise causes another person or entity to directly infringe a patent. *Id.* at 1322. A potential inducer must actually be aware of the patent and intend for their actions to result in a third party infringing that patent. *Id.* Contributory infringement occurs when a seller provides a part or component that, while not itself infringing of any patent, has a particular use as part of some other machine or composition that is covered by a patent. *Id.* at 1320. If there are

12

other valid uses for the product, however, or it is "a staple article or commodity of commerce suitable for substantial non-infringing use," the seller has likely not contributed to a third party's infringement. *See id.*; 35 U.S.C. §271(c).

2. <u>MDx is Liable for Indirect Infringement</u>

As shown in the claim chart attached as Exhibit 2, the iTriage App directly infringes the asserted claims either literally or under the doctrine of equivalents. Further, the facts uncovered during discovery demonstrate that MDx is contributing to and inducing Aetna's direct infringement.

First, as mentioned above, indirect infringement requires proof of intent to cause another to directly infringe. MDx had actual notice of the '060 patent at least as early as October 2010. (E-mail from Larry West to Mitch Rothschild , 10/05/2012 (Ex. 11 hereto)). MDx also knows that Health Grades asserts that the MDx database and overall star ratings infringe the '060 patent. (MDx Infringement Claim Chart at pp. 17-18 (Ex. 3 hereto).) REDACTED

REDACTED

REDACTED

14

REDACTED

(*See* Exhibit A to Schedule No. 001 to the MBA (Ex. 10 hereto); iTriage Infringement Claim Chart (Ex. 2 hereto); MDx Infringement claim chart (Ex. 3 hereto))

REDACTED

15

2003743625_1

REDACTED

      i. <u>MDx is Liable for Joint Infringement</u>

REDACTED

*BMC*, 498 F.3d at 1381 ("A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity.").

MDx was aware that Health Grades accused it of infringing the '060 patent at least as early March 2011 when Health Grades filed this lawsuit. MDx was aware that Health Grades accused its physician database of infringement at least as early as July 31, 2011, when Health Grades served its detailed infringement contentions. (MDx Infringement Claim Chart (Ex. 3 hereto)) REDACTED

16

Thus, Health Grades' supplemental cause of action for joint infringement against MDx for contracting certain claim elements out to Aetna is not futile.

## IV. CONCLUSION

For the reasons articulated above, Health Grades respectfully requests that the Court grant its Motion for Leave to Amend its Complaint and order that Health Grades' proposed First Amended Complaint as found at Exhibit 1 be accepted.

## CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1A

Counsel for Health Grades conferred with counsel for MDx regarding this motion. MDx opposes this motion.

Respectfully submitted this 13th day of July, 2012.

ROTHGERBER JOHNSON & LYONS LLP

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 623-9000
Fax: (303) 623-9222
Email: gkanan@rothgerber.com
  kkosto@rothgerber.com
  jvazquez@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

17

# CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT TO ASSERT CAUSES OF ACTION FOR JOINT INFRINGEMENT AND INDIRECT INFRINGEMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Mark Jon Rosenberg
David Chunyi Lee
Scott B. Murray
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY 10112
Email: sstimpson@sillscummis.com
Email: mrosenberg@sillscummis.com
Email: dlee@sillscummis.com
Email: smurray@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO 80202-5647
Email: ridley@wtotrial.com

                         *s/ Jesús M. Vazquez*
                         Gregory B. Kanan, Esq.
                         Kris J. Kostolansky, Esq.
                         Jesús M. Vázquez, Jr., Esq.
                         Rothgerber Johnson & Lyons, LLP
                         1200 17th Street, Suite 3000
                         Denver, Colorado 80202-5855
                         Tel: (303) 623-9000
                         Facsimile: (303) 623-9222
                         Email: gkanan@rothgerber.com
                                    kkostolansky@rothgerber.com
                                    jvazquez@rothgerber.com

                         *Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*