# EXHIBIT A

```
                                                            1

    1              ROUGH - UNPROOFREAD - WEST

    2         CONFIDENTIAL -ATTORNEYS' EYES ONLY

    3    REALTIME AND INTERACTIVE REALTIME TRANSCRIPT
                    ROUGH DRAFT DISCLAIMER
    4                  IMPORTANT NOTICE:

    5                 AGREEMENT OF PARTIES

    6         We, the party working with realtime and
         rough draft transcripts, understand that if we choose
    7    to use the realtime rough draft screen or the
         printout, that we are doing so with the understanding
    8    that the rough draft is a noncertified copy.
                 We further agree not to share, give, copy,
    9    scan or fax or in any way distribute this realtime
         rough draft in any form (written or computerized) to
   10    any party.  However, our own experts, co-counsel and
         staff may have limited internal use of same with the
   11    understanding that we agree to destroy our realtime
         rough draft and/or any computerized form, if any, and
   12    replace it with the final transcript upon its
         completion.
   13    Case:
         Date:
   14    REPORTER'S NOTE:
                 Since this proceeding has been realtimed
   15    and is in rough draft form, please be aware that there
         may be a discrepancy regarding page and line number
   16    when comparing the realtime screen, the rough draft,
         rough draft disk, and the final transcript.
   17             Also please be aware that the realtime
         screen and the noncertified rough draft transcript may
   18    contain untranslated steno, reporter's notes,
         misspelled proper names, incorrect or missing Q/A
   19    symbols or punctuation and/or nonsensical English word
         combinations.  All such entries will be correct on the
   20    final certified transcript.

   21    REPORTER:  Georgette K. Betts

   22    AGENCY: MERRILL LEGAL SOLUTIONS

   23

   24

   25
```

EXHIBIT 236-1

2

```
 1          ROUGH - UNPROOFREAD - WEST
 2              THE VIDEO OPERATOR:  This is
 3       the video operator speaking, David
 4       Sanders, of Merrill Legal Solutions,
 5       225 Varick Street, New York New York
 6       10014.  Today is June 26th, 2012 and
 7       the time is 8:19 a.m.
 8              We are at the offices of Sills
 9       Cummis & Gross, One Riverfront
10       Plaza, Newark, New Jersey to take
11       the videotape deposition of Larry
12       West in the matter of HealthGrades
13       Incorporated versus MDX Medical
14       Incorporated doing business as
15       Vitals.com, in the United States
16       District Court Northern District of
17       Colorado.  Number
18       11-CV-00520-PAB-BNB.
19              Will counsel please introduce
20       themselves for the record.
21              MR. KANAN:  Greg Kanan for the
22       plaintiff HealthGrades.
23              MR. STIMPSON:  Scott Stimpson,
24       Sills Cummis & Gross for the witness
25       and defendant MDX.
```

EXHIBIT 236-1

147

```
 1                ROUGH - UNPROOFREAD - WEST
 2   and not top doctor for another that's a way for
 3   a potential patient to compare them?
 4              MR. STIMPSON:   Same objection.
 5         A.    If they feel that's enough
 6   information, yes.
 7         Q.    Would it be fair to say in your
 8   mind that if I was a user looking at your
 9   website and I had a results list that had two
10   doctors on it and for one doctor it said board
11   certified, top medical school, top hospital,
12   America's top doctor and for the other doctor it
13   said nothing that that would be a Fay for me to
14   compare those two doctors as to their quality?
15              MR. STIMPSON:   Same objection
16         calls for expert testimony.
17         A.    I don't think that's sufficient
18   enough information I'd want to see the full
19   profile.
20         Q.    Well there might be more
21   information right available?
22         A.    Uh-huh.
23         Q.    One could make a determination of
24   quality on the basis of those criteria that I
25   just identified, couldn't they?
```

EXHIBIT 236-1

148

1        ROUGH - UNPROOFREAD - WEST
2            MR. STIMPSON:  Same objection.
3       A.   Theoretically, yes.
4       Q.   And don't you think users do that?
5            MR. STIMPSON:  Same objection.
6       It calls for speculation.
7       Q.   You may answer.
8       A.   Okay.  The way the search results
9  are by proximity so you might have a doctor in
10 number one with more information but on page 10
11 you might have another doctor with different
12 information so in the essence of a comparison I
13 would want to select which doctors to look at
14 and compare them side by side in a full profile
15 to me that's comparison.  The fact that a search
16 results might have a couple of highlights for
17 this one or not that one to me just more of
18 indication that I should look at a full profile
19 for that doctor.
20      Q.   Well you don't have a way for the
21 user today to hit a button that session compare
22 and would compare those two doctors that I just
23 described for you do you?
24      A.   No longer.
25      Q.   You used to have that, right?

EXHIBIT 236-1

149

```
 1              ROUGH - UNPROOFREAD - WEST
 2         A.    We used to.
 3         Q.    You changed it?
 4         A.    Right.
 5         Q.    Now did the results list page for
 6   doctors before the change have exactly the same
 7   information that it has today?
 8         A.    Yes.
 9         Q.    Okay.  So today one looks at the
10   results list there's no button to hit compare
11   but, correct?
12         A.    Yes.
13         Q.    But looking at that results list I
14   could see one doctor where it says as the
15   example I gave you, board certified, top medical
16   school, top hospital, America's top doctor and
17   another doctor with none of those things and I
18   could make a comparison of those two doctors
19   from 24 information couldn't I?
20               MR. STIMPSON:  Same objection.
21         A.    Um yes.
22         Q.    I could also get more information
23   to make a comparison but I could make a
24   comparison from that couldn't I?
25               MR. STIMPSON:  Same objection.
```

EXHIBIT 236-1

```
                                                              193
 1                   ROUGH - UNPROOFREAD - WEST
 2   associations any data that would have more than
 3   data that could just be displayed on the
 4   profile.
```
REDACTED

EXHIBIT 236-1

```
 1                ROUGH - UNPROOFREAD - WEST
 2    rephrase that I'm not sure if it is a subsidiary
 3    of MDX medical but it's an affiliate of MDX
 4    medical I don't know what the business
 5    arrangement is for that.
 6         Q.   So it's related in some way you
 7    don't know the details?
 8         A.   That is correct.
 9         Q.   And what is the patient's choice
10    is it an award or?
11         A.   Yes.
12         Q.   Or just a specification as to
13    certain doctors?
14         A.   It's an award.
```

REDACTED

EXHIBIT 236-1

          1           ROUGH - UNPROOFREAD - WEST
REDACTED

          12          Q.    And this particular example of the
          13    MDX vitals website shows one of the doctors
          14    identified as patient's choice none of the
          15    others do you know why that is?
          16          A.    I would infer that that doctor won
          17    it and the other ones did not.
          18          Q.    Is this particular doctor Allison
          19    Smith won a patients choice award or
          20    denomination because of the quality and volume
          21    of patient results surveys and the others did
          22    not?
          23          A.    Yes.
          24          Q.    So in that sense this is a
          25    comparison of this particular doctor who had the

EXHIBIT 236-1

208

```
 1              ROUGH - UNPROOFREAD - WEST
 2   patients choice award with the others who did
 3   not, correct?
 4              MR. STIMPSON:   Objection to
 5        form.
 6        A.    Yes.
 7        Q.    Now the patient choice highlight
 8   here for this particular doctor means
 9   necessarily information provided by your patient
10   survey data, correct?
11        A.    Yes.
12        Q.    And obviously the other
13   information shown here some of the other
14   information shown here comes from the sources
15   you described earlier not the physician about
16   address, where they do business or other data
17   about the doctor, medical schools and hospital
18   affiliation for that matter, right?
19        A.    Can you repeat that question.
```
REDACTED

**EXHIBIT 236-1**

Case No. 1:11-cv-00520-RM-NYW Document 284-1 filed 08/28/12 USDC Colorado pg 11 of 13

212

```
 1              ROUGH - UNPROOFREAD - WEST
 2                 MR. STIMPSON:  Objection to
 3         form.  This is all speculation.
 4         Q.    It wouldn't be hard to find it
 5  would it?
 6         A.    I don't know.
 7         Q.    And isn't it possible that the
 8  user could look at this list and from this list
 9  pick the doctor they in fact think is the best
10  one for them based on this comparison and then
11  go to the report for the contact information?
12                 MR. STIMPSON:  Objection to
13         form.  Speculation and expert
14         testimony.
15         A.    Yeah, I don't know the consumer's
16  mind whether or not they can do that.
17         Q.    Isn't that something that's
18  possible?
19                 MR. STIMPSON:  Same
20         objections.
21         A.    Yeah I guess anything's possible.
22         Q.    Well why do you show this
23  highlights column here on this page if you think
24  that the consumers' just going to look at the
25  list of doctors and then go to the profile
```

EXHIBIT 236-1

213

```
 1              ROUGH - UNPROOFREAD - WEST
 2   report.
 3          A.   We feel that the highlights
 4   provide kind of a context of information but not
 5   much information.  If you want the details on
 6   why they got though highlights you would go to
 7   the profile page.
 8          Q.   So there you are able to say what
 9   you think the consumer wants looking at this
10   results list page?
11          A.   No, what I would say is as I said
12   that's what we would think the consumer would
13   want why we designed it this way.
14          Q.   Right?
15          A.   Is that we would think that a
16   consumer would see Alice wetter and want to
17   learn more information on her by going to the
18   profile page.
19          Q.   Right?
20          A.   We would not want to the consumer
21   at that point to leave our site and go
22   elsewhere.
23          Q.   They might look at this results
24   list for Allison wetter Smith and say the only
25   one with the patient's choice award the only one
```

EXHIBIT 236-1

214

```
 1              ROUGH - UNPROOFREAD - WEST
 2    with four stars rated by patients and board
 3    certified that's the doctor for me and go to the
 4    report on that doctor, right?
 5           A.    You could certainly do that yes.
 6           Q.    Yeah that's why you provide this
 7    highlight information so they can make a choice,
 8    right?
 9           A.    Yes.
```
REDACTED

**EXHIBIT 236-1**