1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF COLORADO

3     Case No. 11-cv-00520-PAB-BNB

4     _____

5     HEALTH GRADES, INC.,

6           Plaintiff,

7     vs.

8     MDX MEDICAL, INC.,

9           Defendant.

10    _____

11              Proceedings before BOYD N. BOLAND, United States

12    Magistrate Judge, United States District Court for the

13    District of Colorado, commencing at 8:30 a.m., September 11,

14    2012, in the United States Courthouse, Denver, Colorado.

15    _____

16              WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18    _____
                                  APPEARANCES

19              JESUS VAZQUEZ, JR. and KRIS KOSTOLANSKY, Attorneys

20    at Law, appearing for the Plaintiff.

21              SCOTT STIMPSON, Attorney at Law, appearing for the

22    Defendant.

23    _____

24                           STATUS CONFERENCE

25

1                    P R O C E E D I N G S

2      (Whereupon, the within electronically recorded proceedings

3      are herein partially transcribed, pursuant to order of

4      counsel.)

5               THE CLERK:  All rise.  Court is in session.

6               THE COURT:  Thanks, and please be seated.  We're

7      here this morning in case 11cv520, Health Grades against MDX

8      Medical, on a status conference at my request.

9               May I have appearances, please.

10              MR. VAZQUEZ:  Good morning, Your Honor.  Jesus

11     Vazquez and Chris Kostolansky from Rothgerber, Johnson &

12     Lyons on behalf of plaintiff Health Grades.

13              THE COURT:  I'm sorry, I couldn't see you over the

14     pile of paper.  Thank you.

15              MR. STIMPSON:  Good morning, Your Honor.  Scott

16     Stimpson, Sills, Cummis & Gross, on behalf of MDx.

17              THE COURT:  Thank you.

18              On August 10th I issued an order requiring the

19     parties to confer and see if they could resolve some of the

20     pending disputes without my ruling and then asking that they

21     file a status report addressing how I might best gain control

22     over this case again.  That order can best be characterized

23     as a plea for help.  The parties rose to the request, and I

24     am informed that some of the matters have been resolved, and

25     I appreciate that.  There are some other matters which the

1    parties say cannot be resolved by the agreement -- by their

2    agreement and need to be ruled on.  And then there are a pile

3    of papers on which the parties say we don't have any dispute,

4    the unopposed motions to restrict access, and as to those I

5    guess it is my concern, not the parties', which gives rise to

6    the need for -- the need to address them.  But, anyway, I

7    appreciate your efforts in resolving some of the disputes.

8              It is my understanding that two of the big

9    motions -- no, three motions, two of the big ones, have been

10   resolved.  The first is the Health Grades motion for leave to

11   serve a request for an inspection.

12             Mr. Vazquez, was that resolved by allowing the

13   inspection or withdrawing the request, or how was that

14   resolved?

15             MR. VAZQUEZ:  Your Honor, MDx has agreed to supply

16   us with screen shots which show the private physician portal,

17   which would have been what we would have been requesting to

18   inspect.

19             THE COURT:  Thank you.

20             So I will deny that motion as resolved and

21   withdrawn.

22             There's also a resolution, as I understand it, to

23   Health Grades unopposed motion to supplement its reply in

24   support of its motion for leave to serve one request for

25   inspection.  The request for inspection having been resolved,

1    I guess you don't need to supplement your reply.  So that is

2    also denied as withdrawn.

3         And then there is the MDx unopposed motion for

4    leave to file sur-reply to the motion for leave to serve one

5    request for inspection.  Again unnecessary in view of the

6    resolution of the inspection issue, so that is denied as

7    withdrawn.

8         Regrettably -- maybe regrettably, maybe not -- the

9    biggest stack is a group of motions where the parties say

10   we're trying to resolve them.  That is Health Grades' motion

11   to strike new invalidity argument and Health Grades' motion

12   to preclude advice of counsel defense.

13        Where do you stand on resolving those,

14   Mr. Vazquez?

15        MR. VAZQUEZ:  Your Honor, we have not resolved

16   them.

17        THE COURT:  Okay.  Are you continuing to try or

18   are they irresolvable.

19        MR. VAZQUEZ:  I think we've tried as much as we

20   can, and they appear to be insolvable.

21        THE COURT:  Mr. Stimpson?

22        MR. STIMPSON:  We did come close, Your Honor, on

23   at least the motion (inaudible).  We've agreed on almost

24   everything, but we can't get one last piece, which is whether

25   or not documents relating to patent application would be

1     (inaudible) as (inaudible) subject matter.  I would -- I

2     don't mind giving those over except if I'm waiving privilege,

3     I may be waiving privilege on a different subject matter, so

4     I'm very hesitant to agree to that.  I'm not worried about

5     the production except for I can't really waive privilege.

6     But for that we would have been able to resolve that motion

7     too.

8              THE COURT:  Well, can you resolve it in part and

9     just -- and just raise this new issue?

10             MR. STIMPSON:  That's what I'd like to do, Your

11    Honor.

12             MR. VAZQUEZ:  Your Honor, it's true that events

13    have evolved since we filed the original motion.  They've

14    withdrawn the second opinion it had produced 59 days after

15    the deadline, and have produced some additional documents

16    that we requested in the motion.  But, you know, the issue of

17    their failure, you know, to comply with the rule to give all

18    the documents related to the same subject matter as the

19    opinion, which rule says if you don't do that you shall be

20    precluded from advice of counsel, remains.  In attempting to

21    resolve it, per your order, we did consider withdrawing the

22    motion if they would give us the documents that we've been

23    asking for from the beginning, and so as of this morning the

24    answer I keep hearing about that is no.

25             THE COURT:  Well, what I'm worried about,

```
 1      Mr. Vazquez, is not allowing you to preserve whatever issue
 2      remains between the two of you.  I'm perfectly willing to let
 3      you reserve that issue.  What I'm worried about is that I
 4      will be reading a motion and response which has been
 5      overtaken by subsequent events and ruling on things that
 6      you've already reached agreement about unnecessarily, which I
 7      don't want to do that.  If in fact Mr. Stimpson is willing to
 8      give you 50 percent of what you've asked for and the issue
 9      now is resolved to the remaining 50 percent, perhaps you
10      should take that 50 percent and then file a new motion as to
11      the remaining 50 percent.  I don't know.  I'm just inquiring.
12           MR. VAZQUEZ:  Well, right now there's really the
13      basic thrust of the motion, which is asking the Court to
14      preclude reliance on the defense, remains unresolved --
15           THE COURT:  Oh, I see.
16           MR. VAZQUEZ:  -- so that's -- that's one.
17           THE COURT:  I see.
18           MR. VAZQUEZ:  And then the only other thing
19      remaining, as you know our motion is styled in an
20      alternative.  The alternative was force them to produce
21      Mr. Braginsky for his deposition and the documents that are
22      waived.  They've since agreed to produce Mr. Braginsky,
23      although it was hard to get to that point.  We still don't
24      have the documents though.  And so we're prepared to, at
25      least I am, to make the argument why those documents should
```

1    be produced if the Court does not preclude them from relying

2    on the defense.

3            THE COURT:  Well, in prudent optimism I guess I

4    didn't prepare as to these two motions thinking that maybe I

5    wouldn't have to get to them, but I understand that I do have

6    to.  And so I'm not prepared to rule today on those.  I'll

7    take those matters under advisement and issue an order of

8    recommendation as soon as I'm reasonably able.

9            There's another very large motion, Health Grades'

10   motion to amend its Complaint, awaiting full briefing.

11   That's still the case I take it.  I haven't seen a reply.

12           MR. VAZQUEZ:  Yes, Your Honor, the response is due

13   on the 17th.

14           THE COURT:  Okay.  So I'll reserve that until I

15   have the benefit of full briefing.

16           There are two motions where the parties inform me

17   that a resolution is not possible.  The first is the motion

18   to compel, Health Grades' motion to compel, relating to

19   requests for admission.  And the second is MDx's motion to

20   restrict access to documents 201 -- 201-15, 16 and 17.

21           I have reviewed the motion to compel, and it is

22   granted as follows.  With respect to admission request number

23   3, the plaintiff seeks to have the defense admit that the

24   website is an online information system for connecting

25   doctors with potential patients.  There's an objection raised

1 that there's more than one website at issue and the answer is

2 limited to the existing website.  But I'm informed that there

3 are only two websites, the earlier one and the current one.

4 And I will grant -- I will overrule the objection and require

5 the defense to respond with respect to admission request

6 number 3 to require an answer to the former and the current

7 system.

8    The admission request, however, is denied with

9 respect to the existing website, and as to the existing

10 website I find that the admission request is fully responded

11 to and so no further response is necessary.

12    So I am requiring a response to number 3 with

13 respect to the former system.

14    There are objections raised to a number of the

15 admission requests based upon the capable of objection.

16 Those are admission requests 4 through 11, 19 and 21 through

17 23.  I overrule the capable of objection.  I won't attempt to

18 try the case at the discovery phase.  The *Finjan* case says

19 that infringement may occur where a program is capable of

20 certain procedures even if other non-infringing operations

21 also are capable.  Whether the capability establishes

22 infringement here is something that will have to be decided

23 at trial, whether it's even admissible is something that the

24 trial judge will decide, but it is an issue relevant for

25 purposes of discovery.

1           I have read the cases cited by the defense, and in

2     particular -- in particular, reliance is put on the *Mikkelsen*

3     case.  *Mikkelsen*, however, dealt with the issue of liability

4     on a motion to reconsider summary judgment determinations,

5     and that's exactly my point, I am not at the point of

6     determining liability as *Mikkelsen* and *Finjan* were.  I am

7     here at the discovery phase where what is discoverable is

8     different than what is admissible and what may establish

9     liability.  So the capable of objection is overruled and

10    responses are required without that objection being

11    interposed.

12          There is also an objection based upon

13    verification.  That's violation number 3.  And it concerns

14    request for admissions 6 through 10 and 14 through 18.  I

15    overrule that objection, finding that it is not appropriate,

16    and I'll require that responses to the admission requests be

17    made without raising the verified objection.

18          There are objections to admission requests 3 and

19    14 through 16.  By way of example, admission request 14 asks:

20    Admit that MDx receives information about the board

21    certifications of physicians from a third party other than

22    the physician.  The response is to deny the request and then

23    go on to explain not all of the physicians are board

24    certified, for physicians who are not board certified MDx

25    does not receive information about the board certifications

          1    of such physicians from a third party other than the

          2    physician.

          3              The qualification changes the question, and so

          4    it -- I find that it is evasive and not fully responsive.

          5    The question is does MDx receive information about board

          6    certified physicians from a third party other than the

          7    physician.  That's the question you have to answer.  I think

          8    the answer is going to be to admit that they do.  You may go

          9    on to explain that there are circumstances where you don't,

         10    but I think you've attempted -- the defense has attempted to

         11    change the question and that's not proper.  So as to 3 and 14

         12    through 16, I'll require further responses consistent with my

         13    order.

         14              Then there are admission requests 4 through 11, 17

         15    through 19, and 22 through 23, where objections are

         16    interposed and there is no admission or denial whatsoever.

         17    As to those I overrule the objection, finding it is not --

         18    they are not well taken, and I will require that admissions

         19    be -- admissions or denials be provided.

         20              Finally, there's a request for attorneys fees

         21    under Rule 37(a)(5).  I deny that request, finding that the

         22    positions taken by the defense, although eventually not

         23    sustained, were substantially justified.

         24              I will require that supplemental discovery

         25    responses be provided -- this is the 11th of September -- by

1    the 21st of September.

2              Are you capable of that, Mr. Stimpson?

3              MR. STIMPSON:  Yes, no problem, Your Honor.  Thank

4    you.

5              THE COURT:  All right.

6              Now we step into the realm of restricted access.

7    The first motion concerning restricted access is a disputed

8    motion that concerns continuing the restrictions on a brief,

9    which is document 201, and three exhibits to that brief,

10   201-16, 17 -- 15, 16 and 17.

11             The Local Rules of Practice of our Court reflect a

12   bias in favor of public disclosure.  That's contained at

13   Local Rule 7.2(a), which says that the public shall have

14   access to documents filed with the Court, and then later in

15   the rule some limitations on that presumption appear.  In

16   order to qualify for one of the exceptions to the presumption

17   of public disclosure, a motion to restrict access must

18   address the interest to be protected, identify the clearly

19   defined and serious injury that would result, and explain why

20   an alternative to restricted access isn't applicable.

21             In *Huddleson v. The City of Pueblo*, 270 F.R.D.

22   635, a decision of mine in October of 2010, I addressed the

23   policies and application of Local Rule 7.2 and I said as

24   follows:  The presumption of public access recognized and

25   promoted by the local rule finds its root in the common law

1   rights of access to judicial proceedings and to inspect

2   judicial records, rights which are beyond dispute.  The

3   reason for the presumption of open access to Court

4   proceedings is easily understood.  People in an open society

5   do not demand infallibility from their institutions, but it

6   is difficult for them to accept what they are prohibited from

7   observing.  The public has a fundamental interest in

8   understanding the disputes presented to and decided by the

9   Courts so as to assure that they are run fairly and that

10  judges act honestly.  The right to inspect and copy judicial

11  records is not absolute, however -- citing some Supreme Court

12  cases.  All Courts have supervisory powers over their own

13  records and files.  Thus a Court in its discretion may seal,

14  now restrict access, to documents if the public's right of

15  access is outweighed by competing interests.  And especially

16  applicable here is the *Richmond Papers v. Virginia* decision,

17  448 U.S. at page 600, note 5, where the Supreme Court

18  recognized that the preservation of trade secrets may justify

19  closure of proceedings.

20          So let's look at the kind of trade secrets that --

21  or confidential information that are at issue here.  Well,

22  first there's document 201, which is a 35-page legal brief.

23  Now, it does contain some screen shots.  I think those screen

24  shots are publicly available if you go on to the website,

25  it's not entirely clear to me, but the great bulk of document

1    201 is a legal brief discussing facts which are not

2    confidential and citing law and applying the facts to that

3    law.

4           Exhibit 201-15 includes mostly a description of

5    sort of obvious stuff.  For example, page 7 says the

6    following cities are serviced by New York City Dermatologic

7    Associates, New York City-Newark, SEO Group Practice, MS Word

8    document Gina.  I don't see much of a trade secret there.

9           The next page.  "We would like to copy the Health

10   Grades method of only showing most populated cities on the

11   first pages of each section of the site map."  I don't see a

12   trade secret there.

13          The great bulk again of this exhibit simply does

14   not appear in any reasonable interpretation to include a

15   trade secret.

16          Now, some of the documents are more troublesome.

17   Page 3 is, so far as I can tell, gibberish.  That's a

18   dangerous thing to rule to be not a trade secret since I

19   can't understand it, and usually what I can't understand is

20   really important, but I can't figure out how this is a trade

21   secret.  And, importantly, the briefing, which is from 30,000

22   feet, never gets in and explains in detail why any particular

23   document is a trade secret.

24          Document 201-16 is of a similar nature.

25          And document 201-17 is an e-mail, which obviously

 1     does not contain any trade secrets.  It's simply a

 2     transmittal of the existence of a patent.

 3          Another example contained within the unopposed

 4     motions to restrict access is part of the deposition of I

 5     think it's Mr. West, it might be Dr. West -- Mr. West --

 6     where the question at page 207 is asked:

 7          Okay.  So they have to have a certain qualitative

 8          level of satisfaction as well.

 9          Answer:  It has to be a combination of those.  I

10          do not know the specific algorithm, I just know it

11          generally.

12          What I understand the Court in the.  *Richmond*

13     *Newspapers v. Virginia* case, Supreme Court, to be saying is

14     that, yes, trade secrets, real trade secrets, the disclosure

15     of which would cause serious injury, can be restricted or

16     sealed, and a trade secret falling under the *Richmond*

17     *Newspapers* protections does not have to rise to the level of

18     the disclosure of the Coca-Cola formula, though that

19     certainly would be sufficient, but the existence of an

20     algorithm, without disclosing the algorithm, isn't enough.

21     And similarly all of the things in the motion to restrict

22     access, number 214, don't begin to rise to the level of the

23     Coca Cola formula, and the briefing is insufficient to

24     convince me that there would be serious injury if the

25     information is disclosed.  So the motion to restrict access,

1    number 214, is denied.

2          Applying that same law now to the unopposed

3    motions, each of those motions also is denied.

4          232 is MDx unopposed motion to restrict access to

5    documents 219-4, 5, 6, 11, 12 and 13.

6          219-4 is a legal brief.  So is 219-11.  There is

7    discussion of some factual issues, but I don't -- I was

8    unable to perceive any trade secrets.  Mostly, however, the

9    briefs dealt with the law and application of the law to the

10   facts and didn't deal with trade secrets at all.

11         219-5 is an e-mail containing a question only.

12   There's no trade secret there.  And I -- and so it is not

13   entitled to protection.

14         219-6 contains a discussion of the patent and then

15   how the defendant's device is different, but the discussion

16   would be obvious from an examination of the device, plus all

17   of that is central to the defense offered here, so I find

18   that 219-6 is not entitled to protection.

19         219-12 contains nothing that I was able to see

20   that approaches a trade secret.

21         The motion 232 is sweeping in its terms.  The

22   closest I see to any meaningful discussion is the following:

23   These documents each discuss proprietary and confidential

24   information regarding the structure, design and functions of

25   MDx's website.  But no more detailed description than that is

1    provided.  That is simply inadequate to carry the burden

2    established by Local Rule 7.2.  And so motion 232 is denied

3    and the documents shall not be restricted.

4          Document 259 seeks to restrict access to an entire

5    deposition transcript.  I've reviewed the transcript.  Most

6    of it is clearly not subject to the restriction, the

7    deponent's name for example.  There is no attempt to limit

8    what would be restricted in any way, and again the motion

9    fails to meet the burden established by Rule 7.2 and is

10   denied.

11         Document 269 seeks to seal documents 252 and 53,

12   which are legal briefs, and Exhibits 253-2, 3, 4 and 5.  The

13   legal briefs are discussions of not confidential facts and

14   the application of law to those facts and are not entitled to

15   be sealed.  One of the documents is a 111-page claim chart.

16   There's no attempt to direct me to any particular parts of

17   that claim chart which might really contain confidential

18   information.  And then there are two pages of a deposition

19   which don't appear to include any trade secrets.

20         My overall impression of all of these unopposed

21   motions to restrict access is that the parties want to try

22   this case in a star chamber by agreement and without an

23   explanation for why the information needs to be protected.

24   You don't really want star chambers, and I'm not going to run

25   one here, and so I deny the motion which is document 269.

1          Document 279 seeks to restrict access to document

2    264 and 264-1.  264 and 264-1 all concern opinions of

3    non-infringement.  I've reviewed them thinking that perhaps

4    there were confidential and proprietary information that were

5    shared with lawyers as they prepared non-infringement

6    letters, but once again the motion is sweeping and general in

7    its terms, nothing directs me specifically to the

8    confidential and proprietary information about Vitals.com

9    website, and so I find that 279 fails to meet the burden and

10   is denied.

11          And, finally, document 284 seeks to restrict

12   access to two deposition -- portions of two deposition

13   transcripts.  Finally there is some specific direction as to

14   what the parties think is confidential.  On page 2 I'm

15   directed to pages and lines of the transcripts.  So I read

16   those.  And after doing that, it's crystal clear to me that

17   nothing, or virtually nothing, is even remotely a trade

18   secret the disclosure of which would cause any competitive

19   disadvantage, much less a serious one.  I've already gone

20   over the algorithm testimony.

21          There were -- there was one thing at page 193 of

22   the West deposition that concerned me a little bit, where

23   Mr. West says you cannot compare doctors based on a doctor

24   profile, you can only compare doctors based upon a search

25   result test set.  Well, I wondered could that possibly be a

1    trade secret somehow in this business, but then I compare it

2    in my mind to what I think the Supreme Court was talking

3    about in the *Richmond Newspapers* case, the Coca Cola formula

4    or something approaching it, and this doesn't begin to

5    approach that.  So the unopposed motion to restrict access,

6    document 284, is denied.

7            I want to talk a little bit about restricting

8    access, because I'm not an unreasonable person and if there

9    really are trade secrets that need to be restricted, and I

10   haven't seen any yet, I think you're entitled to know what

11   I -- how I think those should be handled.  But the concern

12   here is that most of the papers that are filed in our Court

13   should be publicly available.  There may be sentences, there

14   may be screen shots, there may be very limited things that

15   aren't (sic) entitled to that kind of protection, and I'm

16   sensitive to that, but that's what you need to do, is

17   identify those very specific things.  Then you file in public

18   the vast majority of what it is blocking out that part to

19   which restriction is sought and you file only those pages

20   that have some blackout as a restriction -- as restricted

21   documents so that the Court can look at them.

22           One of the things that I see happening, I'm not

23   sure it's happened in this case, I don't think it has, but

24   one thing I see happening frequently is the parties include,

25   out of a sense of the need to be complete, everything, even

```
 1    though you don't want the Court to look at it.  So, for
 2    example, in a different case submitted under seal was
 3    somebody's resume.  I'm not sure what the resume had to do
 4    about anything, I don't know why it was submitted -- well, I
 5    do know why it was submitted.  It was submitted because it's
 6    easy to submit.  In the olden days at least you had to Xerox
 7    something and send it on a courier on his bicycle, and if it
 8    was too big the courier wouldn't take it because it would tip
 9    him over.  Now you simply push a button and file everything
10    electronically.  So it's too easy to file stuff.  So this
11    resume which was irrelevant, didn't need to be included, was
12    for no good reason except that it was easy to do it.  But if
13    for some reason that resume was essential but you didn't want
14    to disclose the telephone number of the person whose resume
15    it was or their home address, fine, that wasn't important to
16    the argument, so black that out and submit that restricted,
17    totally restricted.  Judge Brimmer doesn't need to look at it
18    because it wasn't important to the argument, I don't need to
19    look at it because it's not important to the argument, you
20    don't need to disclose it publicly because you're not relying
21    on it in connection with your argument.  In that way I think
22    some of these things don't have to be filed restricted, you
23    simply block out that which is not relevant and which you are
24    not asking the Court to consider.  So, anyway, I hope that
25    that provides some help.
```

1           Getting back to this easy to file business, you

2      folks are some of the worst offenders.  When I took this job

3      in 2000 and you had to file paper and have a courier bring it

4      here, or maybe you carried it here yourself, I received a

5      yard of mail a day.  Now it's all electronic, but if I were

6      to print it off, it would be nearly four yards a day.  I

7      don't really think the cases are that much more complicated,

8      I really do think it's just a matter of it's easy to file and

9      so lawyers aren't disciplined in what they do submit, and I

10     encourage you to be more disciplined in what you do submit.

11          I think that resolves everything which I can

12     resolve here today.  There are the three motions which

13     remain, and one of which needs still to be fully briefed.

14     Even though I may have sounded gruff this morning, I do

15     appreciate your efforts.  I think you did a good job in your

16     status report of helping me, first of all, getting rid of

17     some issues that you didn't need me to decide and, second,

18     ordering those issues that I did need to decide, and I

19     appreciate that.

20          Mr. Vazquez, anything else we should talk about

21     this morning?

22          MR. VAZQUEZ:  I don't think so, Your Honor.  I

23     just want to make sure, I don't -- I don't believe I heard

24     you address our motion to strike the new invalidity argument,

25     but I believe that's one of the motions you just said that

1    you're --

2            THE COURT:  Right, that's one of those that I was

3    hopeful you would resolve and you weren't able to, so that

4    will -- I'll get to that as soon as I can.

5            MR. VAZQUEZ:  (Inaudible) thank you.

6            THE COURT:  Mr. Stimpson?

7            MR. STIMPSON:  Yes, please, Your Honor.  Two

8    things, please.

9            First, on the restriction to access, I hear what

10   you say and I understand fully, but there are two things.

11   One is since the majority of these motions were unopposed,

12   and I know that that doesn't matter, there's three parties

13   here, and one of them the Court and you're the judge, but

14   since they were unopposed, at least on those unopposed

15   motions may we please have the opportunity to do what you

16   suggested, which is, one, submit only the portions that are

17   needed, refile the document?  Particularly I'm thinking about

18   deposition transcripts.  Some of these were deposition

19   transcripts that were filed by my opponent.  So we can get

20   the stuff out of there that doesn't need to be in there.

21   And, two, have a chance to do what you suggest, which is --

22   and I hear you -- and it may be that there's nothing that we

23   can say is a real trade secret; I think there will be.  For

24   example, that page 3 you referred to on 201-15 which looks

25   like gibberish, that's code, and so it's important, and I

1     think that's -- I'm no computer scientist but that's what my

2     associate tells me and he is.

3            So, respectfully, Your Honor, we'd like an

4     opportunity to reduce the exhibits, especially things like

5     deposition transcripts so we don't have the entire deposition

6     transcript there, they shouldn't be there anyway, and

7     secondly have an opportunity to do what you suggest we do,

8     and I think we can do that in accordance with the

9     instructions.

10           I understand the Supreme Court's statement.  I

11    understand what it means.  But still this is important

12    because we have two competitors here, and other competitors

13    are probably watching.  So if we could please get that

14    opportunity, I would appreciate it.

15           THE COURT:  Well, this is what happens when you're

16    not an unreasonable guy, is that a request like this for a

17    redo tugs at your heart strings but, you know, I spent hours

18    and hours and hours and hours reviewing hundreds and hundreds

19    and hundreds of pages thinking maybe there's a trade secret

20    here so I better look, and honest to goodness, the best

21    example I could find was this code page, and I suspected it

22    was computer code, and I worried about that.

23           But why do you get a redo?  Why do you get to put

24    me through hours and hours of work like that only now to come

25    back and say, well, let us try again and be reasonable this

 1    time?  And part of -- part of what I did with this order of

 2    mine, this plea for help, maybe it wasn't direct enough, was

 3    to ask you to do that.

 4              MR. STIMPSON:  I understand, Your Honor.  I really

 5    understand.

 6              First of all, not all the papers that we're asking

 7    to be restricted were things that we filed, our opponent

 8    filed them, so --

 9              THE COURT:  Oh, I know, but the Local Rule says if

10    you want it restricted you file a brief.

11              MR. STIMPSON:  Yes, that's true, but as far as

12    like submitting only the pages that are necessary, we had no

13    control over that, and so if they submitted an entire

14    deposition transcript, we're stuck with it.

15              I fully understand what you say, Your Honor.  It

16    makes -- it makes -- it makes sense, and it may be that for

17    some of these we just say, you know what, we can't meet the

18    standard that you recited today and there's nothing that

19    we're moving to restrict.  But this is a particularly

20    sensitive area for clients.  I mean, I'm going to -- the

21    question that's going to come is, look, we had this

22    protective order, we can mark them so the other side can't

23    see it, but then all the other side has to do is just file it

24    with the Court and then everybody can see it.  And, you know,

25    they -- it's a very difficult thing for me to explain to a

1    client.  And it's a very tough situation for us to be in.

2    But I fully understand what you're saying today, but we would

3    sincerely appreciate the opportunity to do this briefly and

4    in accordance with your instructions.

5         THE COURT:  So you're from far away and my guess

6    is you practice in very many Courts.  Do you run into this

7    problem other places?

8         MR. STIMPSON:  No, Your Honor, because I think

9    this is the first rule I've run into where every 14 days

10   we're supposed to file a motion.  Honestly, no, this is the

11   first time.  I practice -- I have cases pending in Texas, in

12   California, Delaware, Florida.  This is the only one --

13        THE COURT:  And do you get to file everything

14   under seal in those Courts?

15        MR. STIMPSON:  You know, honestly, most of the

16   time, especially when it's unopposed, it's not a question.

17   Maybe it should be.  Maybe it should be.  But usually there's

18   not a problem.

19        THE COURT:  See, one of the reasons I ask the

20   question is there's very little less intellectually

21   challenging than trying to find a trade secret in 1,000 pages

22   of documents, and yet that seems to be what my life is, and

23   I'm not enjoying it one bit.  So I'm trying to figure out how

24   we could change our Local Rule or something so that I don't

25   have to spend my life searching for trade secrets in a

1     haystack.

2          MR. STIMPSON:  Well, I have practiced in a lot of

3     Courts.  I haven't quite seen a rule like this yet, at least

4     not one that I remember, and it must be a great burden,

5     although I promise you if we get a chance to redo this it

6     will not be anywhere near the burden, we can just cut down

7     the pages, I can work with my opposing counsel, and we will

8     direct you specifically page and line and small portions.

9     But I've got -- I'm going to have a very upset client if I

10    don't get an opportunity.

11         THE COURT:  Mr. Vazquez.

12         MR. KOSTOLANSKY:  Your Honor, I -- with all due

13    respect, I had a conversation with Mr. Stimpson early in this

14    case when we were talking about the scope of the protective

15    order and filing documentation under seal, and I endeavored

16    to impress upon him that the way this Court focuses on public

17    disclosure may be different from what other Federal Courts do

18    and that the focus here is on more open disclosure unless one

19    can establish a true basis upon which a document should not

20    be disclosed, including a trade secret.  And Mr. Vazquez had

21    discussions with Mr. Stimpson leading up to this motion where

22    we said why don't we -- why don't we figure out where we

23    can -- you know, we can narrow some of these issues down with

24    respect to disclosure in light of the fact this issue is

25    coming up with the Court, and Mr. Stimpson declined to do

1    what he's proposing now to get the Court's authorization to

2    do.

3         So I think -- and the fact that Your Honor has

4    endeavored and put in all this time to address these issues,

5    that is a significant use of judicial resources, and a party

6    that fails to cull things down in advance in order to save

7    the Court time should be stuck with the outcome that arises,

8    and in this situation they had plenty of notice of this

9    potential situation.

10        MR. VAZQUEZ:  Your Honor, if I may add one thing

11   to what Mr. Kostolansky said, in the briefing you'll see that

12   in response to the motion I literally reviewed it,

13   (inaudible) take that long, undertook to review every one of

14   those -- every page of the documents that you went through,

15   201-15 and so forth, and I suggested that why don't we just,

16   you know, these pages be restricted and these not be

17   restricted, and, you know, Mr. Stimpson, in his words he said

18   this is silliness.  So now what was silliness then now he's

19   asking you for a redo.  So --

20        MR. KOSTOLANSKY:  I just don't think we should --

21        THE COURT:  I'm going to stay my orders insofar as

22   the deny restriction of access for seven days and allow you

23   within that time to submit that which you believe really are

24   trade secrets entitled to protection, and I'll consider that,

25   but you know my feelings about what is and what is not

1      subject to protection, and if I'm not convinced, then I'm

2      going to implement my order as entered today.

3              MR. STIMPSON:  I fully understand.  Thank you,

4      Your Honor.

5              I had just one more request, which is a disputed

6      issue.  As you saw in our response to your order, we've had a

7      mediation.  We did make progress.  I don't think it's

8      appropriate for me to get into details, I won't here, but we

9      did hit a roadblock on one issue and we couldn't get past it.

10     I've proposed something that might get us past that issue.

11     We have expert reports, we have expert depositions coming up,

12     we have two motions to amend under the patent rules that we

13     know have to be filed, we have other motions, including the

14     motion to amend, and I've asked opposing counsel, but they

15     won't agree, at least not yet, but I would respectfully

16     submit that it might help us to find a resolution if we can

17     stand down for a month, resume the mediation, where the

18     mediator was very good, and see if we can put this behind us,

19     in which case none of these motions need to be filed that may

20     happen.  I wouldn't say this if I didn't feel there was a

21     real possibility, but I think it can save everybody time and

22     money if we extend for a month.

23             MR. KOSTOLANSKY:  Since the filing of our status

24     report, Your Honor, where we advised the Court that the

25     parties had engaged in mediation and were continuing to talk,

1    we've received additional communications from the other side.

2    I do not see those moving forward productively with respect

3    to settlement.  I've not gotten official response from the

4    client yet because I received these at -- you know, 18 pages

5    at 2 p.m. yesterday afternoon, but I did discuss with

6    Mr. Stimpson this morning regarding whether we should stay

7    discovery.  We see no basis for staying the proceedings based

8    upon where the parties stand today regarding settlement, and

9    we think we should push on as we have been.  We've already

10   had essentially a one month hiatus to try to come to grips

11   with discovery, and it's not simply one roadblock issue.

12   There's one issue that's present now, but based upon what I

13   saw yesterday I see numerous other difficult, contentious,

14   roadblock type issues on the horizon, and while we're willing

15   to continue to try to work through those, we do not think,

16   and until, you know, there's, you know, an impasse, I don't

17   think there's any basis to stay the discovery based upon the

18   likelihood of where things stand based upon what I received

19   yesterday.

20         MR. STIMPSON:  Your Honor, just one more point.

21   Other than this roadblock issue, which I think we've found

22   our way around, the draft settlement agreement we provided to

23   them, they're always back and forth, we always have that.

24   I've settled probably 10 patent cases this year, and we

25   always have these issues.  "Oh, you're trying to get too much

 1     for the life of the license," or "You're trying" -- you know,

 2     we just talk through it, and they aren't insurmountable

 3     problems, especially with a good mediator, and I think we

 4     have an excellent, I really think this could happen.  And all

 5     this next, you know, month is going to do is run up, you

 6     know, six figures and more in expense, and I really think we

 7     can avoid -- and we have to file all these motions because we

 8     have deadlines and, you know, after all we've been through,

 9     another month isn't really that much.  We don't even have to

10     push out the pre-trial much.

11            THE COURT:  Do you have a further mediation

12     scheduled?

13            MR. STIMPSON:  I think -- the mediator said if we

14     can get past this roadblock he's available.  So we'll -- I

15     can call him this afternoon and we can set something up.

16            MR. KOSTOLANSKY:  Your Honor, we are -- let's not

17     make this appear like this roadblock is virtually addressed

18     and resolved.  It's not.  It's something that they could have

19     addressed with us in advance of ever coming to the first

20     mediation.  So this is not something that's new.  So it's

21     not -- it's not been addressed.

22            There are many, many, many collateral issues that

23     are of equal importance to this issue that are unresolved.

24     We tipped our -- we raised these issues with the other side

25     long before the first mediation.  So some of these issues, if

1     they really want to try to resolve this, could have been

2     addressed and resolved in the 8 hours we've spent with the

3     mediator.  I agree he's a quality mediator, Mr. Mains, he's

4     done an excellent job, but we've also spent 8 hours and

5     gotten I would say literally nowhere.  So to spend another 8

6     hours spinning our wheels is something we're willing to do

7     when we're able to come to closure or at least address some

8     of these other issues, but that should not forestall this

9     case moving forward.

10          THE COURT:  Mr. Stimpson, you get the last word.

11          MR. STIMPSON:  Okay.  I'm not sure how -- I'll

12     just ask for your permission, Your Honor -- not to disclose

13     any of the terms or anything of what's being discussed in

14     settlement, but just a general statement that was from the

15     mediator that was told to us as we left.

16          MR. KOSTOLANSKY:  Your Honor, I'm going to

17     object --

18          MR. STIMPSON:  Of course he's going to object.

19          MR. KOSTOLANSKY:  I object to any statements that

20     may come to the terms of our settlement negotiations.

21          MR. STIMPSON:  Well --

22          MR. KOSTOLANSKY:  And the mediator -- and to say

23     something came from the mediator, the mediator himself has

24     told everyone through his services that what he says is not

25     to be used anywhere for any purpose, and I object to try to

1     characterize something that may have been said to them by the

2     mediator in their private sessions with him now in open Court

3     regarding so.  It's entirely improper.

4             MR. STIMPSON:  I won't then.  I won't.  I

5     understand Mr. Kostolansky's position, Your Honor.  I'm just

6     saying that I've done -- all I do is patent litigation, I've

7     settled, I don't know, 100 or more, and this one has

8     possibilities.  I can tell you that.

9             THE COURT:  Thank you.

10            I'm going to deny the oral motion to stay.  It is

11    the practice of this Court to have cases proceed on trial

12    preparation and settlement tracks simultaneously.  But not to

13    say that you can't file a written motion and make a more

14    complete record which if it's referred to me I'll fully

15    consider.  But on the oral motion I'm just not persuaded at

16    this time.

17          But I'll also remind everybody, you know this but

18    I'll remind you, every year, year in and year out, in our

19    Court a little over 3,000 civil actions are filed.  A third

20    of them are prisoner cases.  We'll set that aside.  That

21    means 2,000 civil cases year in and year out.  Right around

22    just under one percent are tried.  Almost every case is

23    settled.  In a dozen years we've had approximately 10 patent

24    trials in this Court.  So almost all patent cases are

25    resolved.  And if you can resolve this case as almost every

1    case can be resolved, I urge you to do it at the least

2    expense to your clients and the least burden to the Court.

3              As I indicated, I will stay the orders to deny

4    restricted access for seven days.  You can make your filing

5    not later than a week from today.

6              Thank you very much.

7              MR. STIMPSON:  Thank you, Your Honor.

8              MR. KOSTOLANSKY:  Thank you, Your Honor.

9              THE CLERK:  All rise.

10

11             (Whereupon, the within hearing was then in

12   conclusion at 9:20 a.m. on this date.)

13

14             I certify that the foregoing is a correct

15   transcript, to the best of my knowledge and belief (pursuant

16   to the quality of the recording) from the record of

17   proceedings in the above-entitled matter.

18

19   /s/ Patty Wrede                    September 12, 2012
     Signature of Transcriber                Date
20

21

22

23

24

25

AVERY WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119          FAX 303-893-8305