**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

      Health Grades,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

**MDX MEDICAL, INC.'S OPPOSITION TO HEALTH GRADES, INC.'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT TO ASSERT CAUSES OF ACTION FOR JOINT INFRINGEMENT AND INDIRECT INFRINGEMENT**

---

Defendant and Counterclaim plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, hereby opposes the motion of Health Grades, Inc. ("Health Grades") for leave to amend its complaint and assert causes of action for joint infringement and indirect infringement (Dkt. #252).

The Health Grades proposed amendment is frivolous. MDx hopes and expects that the Health Grades motion will be denied, thus avoiding the possible need for service and filing of a motion for Rule 11 sanctions.[1]

---

[1] The allegations are not only objectively frivolous, but appear to be made in bad faith for the sole purpose of pressuring MDx and its business partners. Indeed, even though these claims are not in this case, and even though fact discovery is closed, and even though Health Grades assured this Court in its motion that no discovery was needed on these claims (dkt. #252, *e.g.,* pages, 2, 10), Health Grades' counsel is now harassing iTriage for fact discovery. Exhibit A.

## I. FUTILITY: THE PROPOSED AMENDMENT IS FRIVOLOUS

### A. Patient-Ratings Are Not Obtained From The iTriage Website

Every claim of the '060 patent has the following, clear claim language: "the patient ratings are received *from an on-line patient experience survey completed on a company Web site* by the one or more past or current patients of the first healthcare provider, *and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients*." Exhibit B, col. 20, lines 40-45, col. 22, lines 30-39; *see also* col. 20, lines 23-25 (request for information on first healthcare provider is received on the same website).

This language means what it says. The patient-ratings have to be obtained from the website of the company providing the service; here, the iTriage website. The language expressly and unequivocally excludes from its scope the use of patient ratings from surveys gathered on *other* websites.

Undeterred, Health Grades effectively ignores this requirement, showing the MDx www.vitals.com website as the source of the patient ratings. Health Grades Exhibit 2, page 23 ("The patient ratings are compiled from a www.vitals.com on-line patient-experience survey"); pages 23-24 ("Aetna compiles this information thought [sic] its contract with MDX and literally by gathering it through an XML feed from MDx"). Health Grades even acknowledges that the iTriage website tells users to go to www.vitals.com to rate providers. Exhibit 2, page 26 ("to rate a provider, visit vitals.com"). Thus, Health Grades concedes that the patient ratings at issue *did not come from the iTriage website and that the rating must be done on the MDx website*. This infringement argument, therefore, is baseless, and

2

reads the patient data source requirement entirely out of the claims.

Health Grades makes a conclusory doctrine of equivalents analysis at page 26 of its Exhibit 2, but that argument is also entirely baseless. Clear limitations of a patent claim cannot be ignored under the guise of the doctrine of equivalents, and there are many cases solidly establishing this law, from both the Federal Circuit Court of Appeals and the United States Supreme Court. As the Supreme Court has held, for example, "if a theory of equivalence would ***entirely vitiate a particular claim element***, partial or complete summary judgment should be rendered by the court, as there would be no further material issue for the jury to resolve." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997) (emphasis added). Prosecution history estoppel also precludes this argument, since this language was added to the claims by amendment in response to a prior art rejection. Exhibit C (MDX 0013553 and MDX 0013558, responding to prior art rejections by adding this language to both independent claims). As the limitation was added for reasons related to patentability, there is a presumption of estoppel. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 737-38 (2002).

**B.     *There Is No Evidence Of The Required Items Received From the Provider***

Every claim also requires that at least three of several enumerated data elements be ***received from the first healthcare provider***. Exhibit B, col. 20, lines 30-38; col. 22, lines 19-28.

The Court is encouraged to check the alleged "evidence" submitted by Health Grades in its Exhibit 2. All it says is that the providers ***could*** have provided this information. Health Grades Exhibit 2, page 18 ("To the extent that any of these 22 quality

3

metrics are physician provided and verified, those metrics also satisfy this claim element"). What Health Grades neglects to tell the Court is that this information is received by MDx from third parties, not providers, and the ability for providers to edit this information is only there for those very rare situations where something is found to be inaccurate. And importantly, the MDx discovery to date has shown that only trivial percentages of providers have ever edited *even one* of these data points, let alone three.

The bottom line on this element is this: after many months of discovery, Health Grades has absolutely no evidence that any provider has ever edited even two of these data elements, let alone three. Fact discovery is now closed, and Health Grades has absolutely nothing to support this allegation. *See, e.g., Exigent Tech. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308-1309 (Fed. Cir. 2006) (affirming summary judgment where plaintiff presented no evidence that claim element was actually used).

### C. There Is No Evidence Of Verification By A Third Party Source

Every claim also requires compiling information regarding the first healthcare provider *verified by an independent third-party source*. Exhibit B, col. 20, lines 50-58; col. 22, lines 40-48. Health Grades has no evidence of the required verification. See Health Grades Exhibit 2, pages 26-32 (only identifying evidence that third parties provide the information and absolutely nothing indicating any "verification" by any of those sources).

As Health Grades knows, third party sources of MDx *disclaim* the accuracy of the data – the *antithesis* of this claim requirement. For example, the American Board of Medical Specialties (ABMS), where much of this information is obtained, expressly says that "the accuracy and completeness of records *cannot be guaranteed*" and warns about

4

decisions to rely on the data. Exhibit D (emphasis added). State sources similarly insist that the data is not being guaranteed or verified. *See, e.g,* Exhibit E (Pennsylvania Department of State: "The Department of State makes no representations or warranties, either express or implied, as to the accuracy of any posted information and assumes no responsibility for any errors or omissions contained therein.").

How can any "objectively reasonable" litigant (Rule 11) argue that these express and unequivocal disclaimers of data accuracy meet claim language expressly requiring that they ***verify*** the data? This Health Grades allegation, too, has absolutely no basis in fact, and Health Grades cites to none.

### D. There Is No Evidence Of Comparison Ratings In The Report

All the claims also require that the report on the first healthcare provider include comparison ratings of other healthcare providers. Exhibit B, col. 20, lines 58-65; col. 22, lines 48-55. Judge Brimmer's claim constructions sided entirely with MDx on these issues. The court construed "first health care provider" to mean "a particular health care provider about whom information is requested and a report is produced" and that the report must be directed specifically to the first health care provider. Dkt. 138, pages 12-13. Judge Brimmer also found that "comparison ratings" must be ratings of multiple healthcare providers. *Id*. at page 14. Thus, Judge Brimmer unequivocally ruled that ratings of other healthcare providers must be included within a report that is directed specifically to a particular healthcare provider. The claims Health Grades now seeks to add are an affront to Judge Brimmer's rulings.

First, Health Grades refers to a results list as supposedly containing these comparison

5

ratings, but these are simply the results of searches and not directed to any one provider. Health Grades Exhibit 2, page 35. A results list is not a report on a specific healthcare provider, and so this allegation is wildly inconsistent with Judge Brimmer's claim constructions. Results lists are separately claimed in claim 7.

By ignoring Judge Brimmer's construction of the first healthcare provider report, Health Grades argues that the alleged comparison ratings are within such a report. But in reality, Health Grades is contending that alleged comparison ratings *outside* the report on the first healthcare provider is the same or equivalent to the unequivocal requirement that those ratings be *inside* that report – the exact opposite of the claim requirement.[2]

Second, Health Grades is alleging that the information in the results list that indicates *how well a doctor matches up to the search request* is a comparison rating. *Id.* at pages 34-35 ("In the above screenshot, the percentage matched to the search criteria are comparison ratings as defined by the Court. These ratings provide the patient with information regarding how well physicians listed in the results list satisfy the patient's specified criteria, such as specialty, location, gender, language, patient rating, or having an extended profile."). This argument is completely frivolous. How can this possibly be "comparison ratings" of other providers?

Health Grades also argues that users can compare star ratings of the providers. *Id.* at 36. In making this argument, Health Grades again entirely ignores the requirement of the

---

[2] The Health Grades claim that a "results list" can be the report showing comparison ratings is not only entirely contrary to the claims and Federal Circuit law, it is not even factually accurate. That is, when searching for a provider by name (*i.e.*, for a "first healthcare provider" -- defined by Judge Brimmer as a "particular healthcare provider"), the iTriage website does not even provide a results list.

claim that the comparison ratings must be included in the report on the first healthcare provider – it cites only a results list.

The claims against the iTriage website relating to this issue are also entirely baseless.

### E.  The Contributory Infringement Allegation Is Futile

#### 1.  The Allegation is Baseless

Health Grades has alleged that the data MDx sells to iTriage makes MDx liable for contributory infringement.  Even if the Court ignores the numerous claim elements missing that are addressed above and the total lack of the required direct infringement, this allegation is itself entirely fanciful.

A party is liable for contributory infringement only if the party sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  35 U.S.C. § 271(c).

This lengthy provision has been parsed into four distinct elements:  (1) that defendants sold a material to be used in a patented process; (2) that said material constituted a material part of the patented process; (3) that defendants knew the material to be especially adapted for use in the infringement of such patent; and (4) that the material did not constitute a staple article suitable for substantial non-infringing use.

Not even one of these elements is satisfied by the MDx data.  For (1), (2), and (3), the data leased by MDx is obviously not used in a patented process, nor does it constitute a

7

material part of a patented process.  The very fact that the patient ratings were obtained from the MDx website (and not from the iTriage website) prevents any possibility that the data is being used in violation of the '060 patent.  See part A, *supra*.  Moreover, there are several other reasons why the data is not being used in the patented process.  See parts B-D, *supra*.[3]

Even if all these problems are ignored, then for required element (4), where is the evidence that this data is not substantially useful for anything other than in an infringement?  Even under Health Grades' infringement theories, the majority of uses of those ratings are not infringing – the data is simply provided in the reports of healthcare providers, without comparison ratings of any other providers.[4]

The data provided by MDx is only that – *data*.  It is simply information about healthcare providers.  How can any reasonable litigant assert that the *only* substantial use of this information is by infringing the Health Grades patent?  The data has many other non-infringing uses – it could be used in many, many ways without using every element of these claims as would be required for infringement.  Indeed, for all the reasons shown above in

---

[3] There are many factual assumptions in Health Grades' brief regarding the data that is being used by iTriage.  Counsel for Health Grades saw the documents whereby MDx agreed with Aetna (not iTriage) to provide various data elements, and leaps to the assumption that all this data was used in the iTriage application.  But the agreement itself shows that Aetna is not necessarily using this information, and instead is only using a "custom data extract" including data from third parties.  Health Grades Exhibit 10, at MDX 0104395.

[4] For example, if we do a Google search for a specific Doctor (e.g., Dr. Deffenbacher, used in the Health Grades chart), clicking on the resulting MDx link (found at www.vitals.com) will lead to Dr. Deffenbacher's report, where there are no comparison ratings anywhere to be found as required by the claims.  Also, Health Grades Exhibit 2 does not assert that searches made through, for example, Google, would meet the "request" requirement of every claim.  *See, e.g.,* col. 20, lines23-28.  As most hits to the websites come through Google searches (or other search engines), this non-infringing use is not only a substantial non-infringing use; it is the dominant use.

8

parts A-D, they are not being used in an infringing way now. They could also be used in almost limitless non-infringing ways by employing any of many easy design-around options for this patent evident by any quick review of the claims of the '060 patent.[5]

Thus, the Health Grades allegation that the MDx data has no substantial non-infringing use is also baseless.

### 2. The Allegation Would Not Survive A Motion To Dismiss

As Health Grades concedes, a claim is considered futile if it could not survive a motion to dismiss. Health Grades Mem. At 11; *citing Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). Even if these claims had some remote factual and legal basis (they do not), the proposed claims could never survive a motion to dismiss because they are not properly pled.

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) when a plaintiff fails to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2), which requires that every pleading for a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6). Whether a claim is sufficiently pled is analyzed under standards set forth by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). Under the standard set forth in *Twombly* and *Iqbal*, claims for indirect infringement are required to meet a higher pleading threshold because they require additional elements such as the intent to infringe. *See, e..g., Halton Co. v. Strevior, Inc.*, No. C-10-00655-WHA, 2010 WL 2077203, at *3 (N.D. Cal. May 21, 2010); *Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538, 544 (E.D. Tex. 2010);

---

[5] Even a cursory review of the MDx website, for example, shows various ways the data is used that could never be accused of infringement, including, for example, information on health insurance and other related features for the doctors; international doctor directories; doctor directories by state and location; doctors A to Z; doctors by specialty, etc.

9

*Sharafabadi v. Univ. of Idaho*, No. C09-1043-JLR, 2009 WL 4432367, at *5 n.7 (W.D. Was. Nov. 27, 2009); *Elan Microelectronics Corp. v. Apple, Inc.*, 2009 WL 2972374, at *2 (N.D. Cal. Sept. 14, 2009).

Under the *Twombly* and *Iqbal* analysis, there are two steps in determining whether a pleading is sufficient. *See Iqbal*, 129 S. Ct. at 1950. First, a court identifies the allegations that are not entitled to the presumption of truth, which includes any allegations that are "bare assertions," merely "formulaic recitation[s] of elements," or "conclusory." *Id.* at 1950-51. Second, a court examines the remaining "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* To demonstrate plausibility, a plaintiff must go beyond pleading facts that, when assumed to be true, are "merely consistent with a defendant's liability," and must instead plead facts sufficient to permit the "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556) (quotations omitted). Put simply, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555)). Nor will a complaint suffice if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id*. at 1950-51 (quoting *Twombly* at 557). Merely pleading the "bare elements of his cause of action" will result in the claim being dismissed. *Id.* at 1954.

While the standard to state a claim for relief is admittedly low, every element of the claim must still be alleged, and a claim that is missing a key element must be dismissed. *Duval Motor Co. v. Dell Financial, LLC*, No. 8:08-cv-2476-T-30TGW, 2009 WL 1515698, at *2 (M.D. Fla. June 1, 2009).

The contributory infringement allegation in the proposed Amended Complaint (Health

10

Grades Exhibit 1) is nothing more than a recitation of the Statute:

> MDx is liable as a contributory infringer under 35 U.S.C. § 271(c) for selling and offering to sell to Aetna, without the permission, authority or license of Health Grades, in the judicial district of Colorado a component of a patented machine, manufacture, combination, or composition, or material or apparatus for use in practicing the claims of the '060 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '060 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.  Paragraph 27.

Health Grades merely pleads a "formulaic recitation of the elements" in a manner that was expressly rejected by *Iqbal*.  Indeed, the Health Grades allegation does not even attempt to identify what it is that MDx is supposedly selling that creates this alleged liability.  The lack of detail and rote copying of the statute is evident from the complaint language itself.

Considering that the data being leased by MDx (we only know it is data from the Health Grades brief, not from the complaint) is known to have a wide variety of uses most of which would never come close to the patented claims, Health Grades' allegations do not provide notice of the basis of the contributory infringement claim to MDx, and certainly do not plead sufficient facts to state a plausible claim of contributory infringement.  The law is clear that "§ 271(c) requires that Health Grades make a showing that the alleged contributory infringer knew that the combination for which his component is especially designed was both patented and infringing." *Aro Mfg. Co., Inc. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964); *see also Wistron*, 2011 WL 4079231, at \*6 (dismissing a claim for contributory infringement for failure to plead facts that plausibly established a claim of knowledge).

Health Grades further fails to allege facts regarding the "no substantial noninfringing

use" element.  Not only does the proposed amended complaint fail to even identify the product that must have no substantial noninfringing use, Health Grades simply pleads the text of the element, alleging in entirely conclusory fashion that this unidentified, mystery product has no "substantial noninfringing use."  No facts are pled in support of this conclusion -- this is nothing more than the bare recitation of the elements rejected in *Iqbal*.  Moreover, such a conclusion is implausible for all the reasons stated above.[6]  This allegation also could never survive a motion to dismiss.

### F. The Inducement Allegation Is Frivolous

#### 1. The Allegation is Baseless

An accused infringer is liable for induced infringement only if the accused infringer "actively induces infringement of a patent."  35 U.S.C. § 271(b).  Thus, liability is contingent upon an intent element, which requires that an alleged infringer know of the patent(s) and know that the acts which are induced by the action of the alleged infringer will result in a direct infringement of the patent(s).  Thus, the courts have identified the following elements of a claim for inducement of infringement: "(1) [t]here was direct infringement by the induced party; (2) the inducer had knowledge of the asserted patents; (3) the inducer 'possessed specific intent [and] not merely . . . knowledge of the acts alleged' to induce; (4) there was active inducement of the direct infringer." *Medtronic Vascular, Inc. v. Boston Scientific Corp.*, 348 F. Supp. 2d 316, 323 (D. Del. 2004) (citing *Ferguson*

---

[6] Paragraph 14 of the proposed Amended Complaint identifies the Aetna agreement, referencing "MDx's accused data" – a phrase defined nowhere in the complaint.  Moreover, nowhere in the complaint does Health Grades accuse "data" of infringing, and if they did this would be yet another Rule11 violation.  This "MDx's accused data" phrase is also found nowhere in the assertions of inducement, contributory, or joint infringement.

12

*Beauregard/Logic Controls v. Mega Sys.*, 350 F.3d 1327, 1342 (Fed. Cir. 2003)).

Elements (1), (3), and (4) are not even remotely close to being met. For element (1), there is no direct infringement for all the reasons stated in parts A-D, *supra*. For element (3), how can Health Grades possibly assert that MDx *intended* to induce this infringement, when there are so many strong reasons that there is no infringement? And what evidence does Health Grades have showing that MDx intended to have iTriage do anything with this data? And why would MDx care what iTriage does with the data, as long as payment is being received?

For element (4), there is simply nothing – not even the slightest shred of evidence that MDx did anything to induce iTriage to do anything other than pay for the data (and the agreement MDx entered was not even with iTriage, it was with Aetna). How can Health Grades possibly argue that MDx encouraged iTriage to get the patient ratings from its own website, when MDx is providing that data from its website? What evidence is there that MDx encouraged iTriage to include the three data elements to be received from the first healthcare provider, when there is no evidence that MDx itself has even done that? What evidence is there that MDx encouraged iTriage to use information verified by third parties, when MDx knows that the third party sources for its data expressly disclaim the data accuracy? What evidence is there that MDx encouraged iTriage to use three of the third party data elements in creating healthcare provider reports, when even MDx does not do so? What evidence is there that MDx encouraged iTriage to include comparison ratings of other healthcare providers in its reports? This inducement allegation has no basis in fact or law.

### 2. The Allegation Would Not Survive A Motion To Dismiss

The inducement allegation in the proposed Amended Complaint is also clearly deficient. The allegation is contained in a single paragraph, and simply states:

> MDx is liable under 35 U.S.C. § 271(b) for actively inducing Aetna, without the permission, authority or license of Health Grades, in the judicial district of Colorado to infringe the claims of the '060 Patent.  Paragraph 26.

Health Grades failed to plead any of the four elements of inducement, let alone plead facts sufficient to support those allegations.  *See, e.g., Air Vent, Inc. v. Owens Corning Corp.*, No. 02:10-cv-01699, 2011 WL 2601043, at *4 (W.D.Pa. Jun. 30, 2011) ("[plaintiff] must allege not only that [defendant] knowingly induced infringement, but that [defendant] had a specific intent to encourage that infringement."); *Best Medical Int'l, Inc. v. Accuray, Inc.*, No. 2:10-cv-1043, 2011 WL 860423, at *8 (W.D.Pa. Mar. 9, 2011) (dismissing a claim of induced infringement for failure to allege specific intent); *Koninklijke Philips Elecs. N.V. v. The Ads Group*, 694 F. Supp. 2d 246, 253 (S.D.N.Y 2010) ("the Amended Complaints do not allege facts permitting the conclusion that the MTD defendants acted culpably, with the specific intent of inducing infringement, a necessary element of an inducement claim").

This entirely conclusory allegation, too, would never survive a motion to dismiss.

### G. The Joint Infringement Allegation Is Also Baseless

#### 1. The Allegation Lacks Any Factual Basis

"Direct infringement requires a party to perform or use each and every step or element of a claimed method or product."  *Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*, 520 U.S. 17 (1997); *Canton Bio Medical, Inc. v. Integrated Liner Technologies, Inc.*, 216 F.3d 1367, 1369-70 (Fed. Cir. 2000).  "To infringe an apparatus claim, the device must meet all of the structural

14

limitations." *Id*. at 1311-12, *citing Hewlett-Packard Co. v. Bausch & Lomb, Inc*., 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("[A]pparatus claims cover what a device is, not what a device does."). A party who does not perform all claim elements may nonetheless be held to directly infringe ***if the party controlled the conduct of another acting party*** and they together performed each of the elements. *BMC Resources, Inc. v. Paymentech, L.P*., 498 F.3d 1373, 1379 (Fed. Cir. 2007)("A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity.  In those cases, the party in control would be liable for direct infringement. It would be unfair indeed for the *mastermind* in such situations to escape liability.")(emphasis added).  The level of direction or control is "not mere guidance or instruction in how to conduct some of the steps of the method patent."  *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F.Supp. 2d, 1331, 1335 (S.D. Fla. 2008).  Rather, "the third party must perform the steps of the patented process by virtue of a contractual obligation or other relationship that gives rise to vicarious liability in order for a court to find 'direction or control.'" *Id*.  The "direction and control" requirement for joint infringement liability applies equally to apparatus patents as to method patents.  *See BMC Resources*, 498 F.3d at 1380 (comparing cases); *see further Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc*., 424 F.3d 1293, 1311 (Fed. Cir. 2005) (rejecting patentees' efforts to combine the acts of surgeons with those of a medical device manufacturer to find direct infringement of an apparatus claim); *MuniAuction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) ("mere 'arms-length cooperation' will not give rise to direct infringement by any party." (quoting *BMC Resources, Inc. v. Paymentech, L.P*., 498 F.3d 1373, 1381 (Fed. Cir. 2007)).

       Health Grades does not allege, nor could it possibly allege, that MDx is controlling the

actions of Aetna and iTriage. There is not the slightest shred of evidence supporting such an allegation, and indeed MDx does not even have a contract with iTriage. There is no control allegation in the proposed Amended Complaint (see part b, *infra*), and even in the Health Grades brief Heath Grades cannot bring itself to actually say the words that MDx "controls" Aetna and iTriage. The most it is willing to say is that MDx "may" be liable for joint infringement due to its contact with Aetna. Health Grades Mem. At 16. Health Grades is perhaps so reluctant to make this statement because simply stating it demonstrates the silliness of it – little MDx is "***controlling***" Aetna?

While Health Grades generally refers to the agreement between MDx and Aetna that agreement does not even remotely support the necessary allegations of control. Indeed, the agreement spells out the "obligations" of Aetna, and those obligations say absolutely nothing about how Aetna will use the data, or anything that could link the iTriage application to even one of the patent claim elements, let alone all of them. Health Grades Exhibit 10, at MDX 0104396 (Section 1.2), and 0104397-98 (Section 2.4). In fact, the agreement belies this Health Grades claim, in giving Aetna control over display and other related functions. *Id.* at MDX 0104398.

This joint infringement allegation, therefore, is entirely baseless. It has no factual support whatsoever. *See also Cross Medical*, 424 F.3d at 1311 (finding no infringement of apparatus claim by manufacturer where manufacturer of apparatus met certain claim elements and surgeons using apparatus met other elements, noting that surgeons were not agents of manufacturer); *Gammino v. Cellco Partnership*, 527 F. Supp.2d 395, 398-99 (E.D. Pa. 2007) (granting summary judgment of non-infringement to owner of telephones capable of performing infringing act because Health Grades had no evidence that defendant performed infringing acts or "directs

another entity to do so").

## 2. The Allegation Could Not Survive A Motion To Dismiss

An allegation of joint infringement in a complaint should be dismissed if it fails to either: (1) identify a mastermind; or (2) plead facts sufficient to show how the mastermind exercises control over these allegedly infringing parties. *See, e.g.*, *Desenberg v. Google, Inc.*, No. 09-cv-1021, 2009 WL 2337122 at *8 (S.D.N.Y. Jul. 30, 2009)(granting motion to dismiss because plaintiff failed to allege that defendant acted as a "mastermind" controlling or directing the actions of third party users); *Memory Control Enterprise v. OfficeMax, Inc.*, No. 08-CV-7252 (N.D. Ill. Aug. 11, 2009) (dismissing plaintiff's joint infringement claims for failure to plead facts as to how defendant controls the acts of the other allegedly jointly infringing users). The required level of direction or control is "not mere guidance or instruction," but rather "contractual obligation or other relationship that gives rise to vicarious liability." *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F.Supp. 2d 1331, 1335 (S.D. Fla. 2008); *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005).

The joint infringement allegation in the proposed Amended Complaint does not even remotely satisfy these requirements. The allegation is contained in a single paragraph, and simply states:

> Without the permission, authority or license of Health Grades, MDx and Aetna have jointly used, made, sold or offered for sale in the judicial district of Colorado one or more systems, methods, and/or apparatuses that infringe at least claim Nos. 1 and 15 of the '060 Patent under 35 U.S.C. § 271(a). Paragraph 17.

Health Grades totally fails to plead "direction and control" as required for direct joint infringement. Indeed, Health Grades does not even mention direction and control, nor could it as

the facts do not justify that allegation.  Indeed, there is not even a contract between iTriage and MDx – the MDx contract is with Aetna.  Accordingly, for this claim, Health Grades has not even bothered to recite the elements of the claim, let alone adequately plead them.  *Iqbal,* 129 S.Ct. at 1949;  *Twombly*, 550 U.S. at 555.

Health Grades also does not specify anywhere in the Complaint which elements of any claims are allegedly met by MDx as opposed to iTriage; it does not specify anywhere in the Complaint any means of direction and control by MDx that requires iTriage to meet any such elements; and it does not specify in the Complaint the existence of a contractual or other binding obligation between MDx and iTriage such that iTriage is the agent of MDx. For all these reasons, Health Grades' joint infringement claims also would never survive a motion to dismiss.

## II.     CONCLUSION

For all the foregoing reasons, MDx respectfully requests that the Court deny the Health Grades Motion in its entirety.

Dated:  September 17, 2012                      Respectfully submitted,


                                                *s:/Scott D. Stimpson*
                                                Scott D. Stimpson
                                                Scott B. Murray
                                                David C. Lee
                                                Sills Cummis & Gross P.C.
                                                30 Rockefeller Plaza
                                                New York, New York 10112
                                                Tel: (212) 643-7000
                                                Fax: (212) 643-6500
                                                E-mail: sstimpson@sillscummis.com

E-mail: smurray@sillscummis.com
E-mail: dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-5647
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2012, I electronically filed the foregoing MDX MEDICAL, INC.'S OPPOSITION TO HEALTH GRADES, INC.'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT TO ASSERT CAUSES OF ACTION FOR JOINT INFRINGEMENT AND INDIRECT INFRINGEMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez , Jr.**
  jvazquez@rothgerber.com, phenke@rothgerber.com

- **Gregory B. Kanan**
  gkanan@rothgerber.com, dgrooms@rothgerber.com

- **Kris John Kostolansky**
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Scott B. Murray**
  smurray@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

_s:/David C. Lee_____