IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S MOTION FOR A DETERMINATION THAT NINE MDX LICENSING AGREEMENTS ARE SUBJECT TO THE TERMS OF THE PROTECTIVE ORDER IN THIS CASE AS PROPERLY DESIGNATED AS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

---

Pursuant to paragraph 10 of the Court's Protective Order [Doc. # 227], Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, respectfully submits this motion for a determination that nine highly confidential MDx licensing agreements produced during discovery to Health Grades have been properly designated as "Highly Confidential – Attorneys' Eyes Only" material and are subject to the terms of the Protective Order.

Pursuant to D.C.COLO.L.Civ.R 7.1 and paragraph 10 of the Protective Order, counsel for MDx conferred with Health Grades' counsel, both prior to and following Health Grades' September 15, 2012 challenge of the designations, regarding the issue of the highly confidential nature of these documents and attempted to resolve this dispute on an informal basis. The parties were unable to resolve the dispute, and thus the need for this motion.

1

The nine MDx licensing agreements at issue are: (1) Software & Data Utilization Agreement with Health Advice Networks, LLC, MDX0104300-MDX0104309; (2) Data Licensing & Utilization Agreement with Castlight Health, Inc., MDX0104159-MDX0104178; (3) Data Pages & Data Utilization Agreement with Emblem Health Services Co., MDX0104195-MDX0104205; (4) Data Utilization Agreement with Expert Consensus, LLC., MDX0104206-MDX0104212; (5) License Agreement with Health Care Service Corporation, MDX0104236-MDX0104271; (6) Data Utilization Agreement with Private Health Management, Inc., MDX0104366-MDX0104372; (7) Statement of Work with Health Care Service Corporation, MDX0104213-MDX0104225; (8) IPF Product Development Statement of Work with Health Care Service Corporation, MDX0104226-MDX0104235; and (9) Master Services Agreement for Professional Services with Health Care Service Corporation, MDX0104272-MDX0104299.[1]

**The Proprietary, Competitively Sensitive Terms of MDx's Existing and Continuing Business Relationships with Non-Parties Represent Highly Confidential Trade Secrets**

    A.    **Health Grades Did Not Contest The Designations Until After the Court's September 11, 2012 Order Denying MDx's Motions to Restrict, Which Order Has Since Been Vacated.**

When Health Grades first raised the issue of these nine licensing agreements, it was not to challenge MDx's designation of the documents as highly confidential, but instead to request

---

[1] MDx has *not* attached copies of these agreements to this motion because it believes that the supporting Declaration of Erika Boyer, as well as the Court's September 20, 2012 ruling regarding the confidential nature of MDx's agreement with Aetna [Doc. # 303], are sufficient for the Court to make its determination. The Boyer declaration confirms that all these documents are highly confidential for the same reasons as the MDx/Aetna Agreement. However, if the Court needs to review the agreements in order to make its determination, then MDx requests that the Court permit MDx to submit the documents to the Court by hand delivery for an *in camera* review, rather than by e-filing the documents as exhibits with restricted access because, based on the court's ruling of September 11, 2012, maintaining confidentiality may be more difficult and cumbersome once they are submitted as exhibits.

that MDx permit disclosure of the agreements to certain Health Grades' executives, allegedly to assist the parties' settlement negotiations. *See* Exhibit A attached hereto, (July 16, 2012, 6:25pm Kris Kostolansky e-mail to Jeffrey Wasserman stating, in part, "I ask that MDx permit a discrete group of designated HG executives to view the MDx license agreements to help facilitate settlement analysis on our side, and not for any competitive purpose."). Thus, when it first made its request that MDx permit a disclosure of these documents to its executives, Health Grades did not dispute MDx's designation of the documents as highly confidential, and conceded that it needed MDx's consent to disclose the documents to individuals who were not entitled to such access under the Protective Order.

But Health Grades and its counsel obviously believed that the Court's ruling on September 11, 2012 changed things regarding these documents. On that date, this Court denied several motions to restrict access to documents that were filed in connection with various motions, including several motions that were unopposed. In connection with that ruling, the Court identified strict guidelines on what could be kept confidential in connection with motion practice. [Doc. # 290].

Apparently, seeing an opportunity to use the Court's rules as a weapon, Health Grades' counsel almost immediately sent correspondence formally challenging the designation of these licensing agreements. *See* Exhibit B attached hereto, (September 15, 2012, 12:12am Jesus Vazquez e-mail to Scott Stimpson). Health Grades reasoned, no doubt, that MDx would submit these various documents to the Court as part of this required motion to determine the appropriateness of the designations and thus, despite the shield provided by the Protective Order, the filing of the documents in connection with this motion would force MDx to also move for

3

restricted access (a potentially higher standard) and thus Health Grades might gain access to these extremely sensitive documents in either manner.[2]

The Court has since vacated its September 11, 2012 ruling regarding MDx's motions to restrict, and confirmed the trade secret nature of MDx's agreement with Aetna. Undeterred, Health Grades has indicated that it will not withdraw this challenge to these very similar agreements, and thus Health Grades forces yet another pointless motion on this Court.

### B.     Like the MDx/Aetna Agreement, These Agreements Are Highly Confidential

Just as with the MDx/Aetna agreement, and the specific terms of it, the nine licensing agreements at issue here represent, in their entirety, information concerning MDx's current and ongoing relationships with their business partners, who are not parties to this action, that is highly confidential (to both MDx and the non-parties).

As the Court stated regarding the MDx/Aetna agreement, "MDx Medical seeks to restrict access to only four documents--Doc. ## 252, 253, 253-4, and 253-5—arguing that they disclose specific terms of an existing and confidential contract between MDx and Aetna. I accept MDx's representation, supported by an affidavit, that 'disclosure of the specific terms of MDx's relationship with Aetna would severely negatively impact Mx's [*sic*] future negotiating position with other potential business partners and against its competitors.'" [Doc. # 303, p. 2, citing Renewed Motion [Doc. # 302] at p. 5].

Nothing is different here regarding the nine licensing and service agreements at issue. The Protective Order states that "[a]ny Document or testimony of a Producing Party which

---

[2] It will be interesting to see if Health Grades submits these documents to the Court in its opposition, or discloses their contents in its briefing, without waiting for the Court's guidance on whether they are needed at all, and if needed, if they can be reviewed *in camera.*

4

contains particularly sensitive competitive Confidential Information may be designated as HIGHLY CONFIDENTIAL." [Doc. # 227, § 4.2, p. 5]. MDx has properly designated the nine agreements as "Highly Confidential" because each agreement represents "particularly sensitive competitive Confidential Information."

The nine agreements relate to continuing and ongoing relationships between MDx and its business partners. S*ee* Declaration of Erika Boyer, dated September 28, 2012 ("*Boyer Decl.*"), ¶ 4. Each of the agreements is dated from mid-2008 or more recently, such as 2009, 2010, 2011 and 2012, and each of the agreements, except one, is either still in its initial term, has been renewed such that it is still in force, or relates to an ongoing relationship. The one that has ended, did so only last year and was for data licensing that is the same subject as the other agreements. *Id.* The terms of MDx's ongoing business relationships with these non-parties meets these definitions of confidential, trade secret information that is entitled to restricted access. The Boyer declaration confirms the highly confidential nature of these agreements, and that they are so confidential for the same reasons as the MDx/Aetna agreement. *Id.*

MDx does not disclose the specific terms of its agreements with these non-parties to persons or entities outside of MDx (*see Boyer Decl.*, ¶ 5);

- Only those individuals with the need to know the specific terms of any of the agreements – primarily MDx's senior executives – know the specific terms of the agreement(s) or are given access to the actual contract document(s) (*Boyer Decl.,* ¶ 6);

- As a small, privately held company, MDx's normal procedures are to limit the disclosure of such specific contract terms within the company (*Boyer Decl.,* ¶ 7);

- There are several competitors, including Health Grades, that compete with MDx for the licensing and sale of data and other information, as well as development services, to entities such as the non-parties in the agreements, and the companies compete vigorously for such business, such that disclosure of the specific terms of MDx's relationship with

these non-parties would severely negatively impact MDx's future negotiating position with other potential business partners and against its competitors (*Boyer Decl.,* ¶ 8);

- Each such bidding process and contract negotiation requires extensive time and effort by MDx's management and sales and marketing teams to secure such business at a significant cost of time and financial resources for a small, privately held company such as MDx, especially in comparison to its larger, better-funded competitors such as Health Grades (*Boyer Decl.,* ¶ 9); and

- Allowing MDx's competitors to know the specific terms of its agreements with any of its business partners, such as the price and end date of such agreements, would unfairly provide such competitors with a significant advantage against MDx in competing for such future business (*Boyer Decl.,* ¶ 10).

In addition, each of the terms and conditions found in MDx's agreement documents, including those in the nine agreements at issue here, which related to ongoing relationships, are material and confidential. *Boyer Decl.,* ¶ 11.

For these reasons, MDx respectfully submits that its agreements with these non-parties, as well as the specific, individual terms of such agreements, meet the standard for being trade secrets and are therefore properly designated as "Highly Confidential-Attorneys' Eyes Only" pursuant to the Protective Order. *See* Doc. # 303; *see also Mars, Inc. v. JCM American Corp.,* 2007 U.S. Dist. LEXIS 9819, *4-*9 (D.NJ Feb. 13, 2007) (finding a legitimate privacy interest in maintaining the confidentiality of terms of a business agreement that are not available to the public because otherwise the parties to the agreement could lose their future competitive negotiating positions and strategies, causing them to suffer serious injury); *Vista India, Inc. v. RAAGA LLC,* 2008 U.S. Dist. LEXIS 24454, *6-*12 (D. NJ March 27, 2008) (finding a legitimate privacy interest in settlement agreements between third parties that, if made public, would reflect negotiation strategies and pricing terms and would impair future negotiations and give competitors an advantage). If protection is not granted to MDx's ongoing agreements with

6

its business partners, MDx will have its private, competitively-sensitive information disclosed to its main competitor, Health Grades, despite the provisions of the Protective Order.  Such a result would eradicate the very meaning of the Protective Order, causing irreparable and severe damage to MDx, while at the same time unfairly benefiting Health Grades.

For the foregoing reasons, MDx requests that the Court determine that MDx's designation of the nine agreements as Highly Confidential is appropriate, and that Health Grades be required to ensure its continued compliance with the terms of the Protective Order regarding such agreements.

Dated:  September 28, 2012

Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail:sstimpson@sillscummis.com
E-mail:smurray@sillscummis.com
E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2012, I electronically filed the foregoing MDX MEDICAL, INC.'S MOTION FOR A DETERMINATION THAT NINE MDX LICENSING AGREEMENTS ARE SUBJECT TO THE TERMS OF THE PROTECTIVE ORDER IN THIS CASE AS PROPERLY DESIGNATED AS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Jesus Manuel Vazquez , Jr.
  jvazquez@rothgerber.com, phenke@rothgerber.com

- Gregory B. Kanan
  gkanan@rothgerber.com, dgrooms@rothgerber.com

- Kris John Kostolansky
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- Scott David Stimpson
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- Scott B. Murray
  smurray@sillscummis.com

- David Chunyi Lee
  dlee@sillscummis.com

- Terence M. Ridley
  ridley@wtotrial.com, norris@wtotrial.com

Bonnie Schwab