# EXHIBIT A

(Redacted Version of Doc. # 292)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS TO INCORPORATE DR. PHILIP GREENSPUN'S EXPERT REPORT**

---

Health Grades, Inc. ("Health Grades"), by its undersigned counsel, respectfully moves pursuant to Local Patent Rule 3-6 for leave to amend its infringement contentions to incorporate the infringement opinions of its technical expert, Dr. Philip Greenspun, as set forth in the Greenspun Report dated July 13, 2012.

**TABLE OF CONTENTS**

I. INTRODUCTION ....1

II. FACTUAL BACKGROUND ....1

A. General Background on Discovery in this Case ....1

B. Health Grades Discovered New Evidence After it Served its February 2012 Infringement Contentions ....3

*1. Licenses of the Accused Physician Database to Aetna and Others* ....4

*2. Information Relating to Physician Edits of MDx's Physician Database* ....5

*3. Source of Residency, Internship, and Fellowship Information in the Accused Physician Reports* ....6

C. The Basis of MDx's Opposition ....6

III. GOOD CAUSE EXISTS FOR ALLOWING HEALTH GRADES TO AMEND ITS INFRINGEMENT CONTENTIONS TO INCORPORATE THE GREENSPUN REPORT ....8

A. Health Grades Has Good Cause to Amend its Contentions to Assert Theories Based on Newly Discovered Information ....9

*1. "Inducement and Contributory Infringement"* ....9

*2. "Providers verify and confirm their information just because they registered."* ....10

*3. "The argument that MDx could have determined whether any provider has edited 3 or more."* ....11

*4. "If vitals displays fellowship or other data that is supposed to be from a 3d party, but it came from a doctor, MDx is still using the same information it collected from the third party to resolve conflicts."* ....12

*5. "MDx mobile application."* ....13

B. The Remaining Categories to Which MDx Objects Were Adequately Disclosed in the February 2012 Infringement Contentions ....13

1. *"Capability"* ....13

2. *"Various alleged comparison ratings not found in the HG infringement contentions."* ....15

3. *"MDx uses licensure information in creating the report because only licensed doctors are on the website."* ....16

4. *"The argument that information from third parties only needs to be compiled, not displayed in the report."* ....16

5. *"The results list is really part of the report on a provider, or both a results list and a report."* ....18

6. *"Having an advertisement means a provider is a member, and claiming that they are 'members' because our web says 'members log in'."* ....19

7. *Global equivalents arguments.* ....20

IV. CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1A ....20

V. CONCLUSION....20

# I. INTRODUCTION

Health Grades seeks leave to amend its infringement contentions to incorporate the infringement opinions of its technical expert, Dr. Philip Greenspun, as set forth in Dr. Greenspun' s expert report dated July 13, 2012. (Greenspun Report (Ex. A hereto).)

MDx opposes this motion arguing that the Greenspun Report includes twelve new theories that were not previously disclosed in Health Grades infringement contentions. While five of these theories are new, there is good cause to amend the infringement contentions to include these theories because they are based on non-public information that Health Grades discovered from MDx *after* Health Grades served its February 2012 infringement contentions. The remaining theories to which MDx objects are not new and were adequately disclosed in the February 2012 infringement contentions as described in detail below.

# II. FACTUAL BACKGROUND

## A. General Background on Discovery in this Case

Plaintiff Health Grades has accused Defendant MDx of infringing United States Patent No. 7,752,060 (the "'060 patent"). The '060 patent generally relates to an Internet-based information system that connects patients with potential healthcare providers. The parties agreed to abide by the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California. (Scheduling Order at 6 (Dkt. 34).) The scheduling order in this case originally provided:

| Patent Disclosure | Due Date |
|---|---|
| 3-1. Disclosure of Asserted Claims and Infringement Contentions.<br>3-2. Document Production Accompanying Disclosure. | July 1, 2011 |
| 3-3. Invalidity Contentions.<br>3-4. Document Production Accompanying Invalidity Contentions. | August 19, 2011 |
| 4-1. Exchange of Proposed Terms of Construction. | September 2, 2011 |
| 4-2. Exchange of Preliminary Claim Construction and Extrinsic Evidence. | September 23, 2011 |
| 4-3. Joint Claim Construction and Prehearing Statement. | October 19, 2011 |
| 4-4. Completion of Claim Construction Discovery. | November 18, 2011 |
| 4-5(a). Plaintiff's Claim Construction Brief and Evidence. | December 5, 2011 |
| 4-5(b). Defendant's Claim Construction Response and Evidence. | December 19, 2011 |
| 4-5(c). Plaintiff's Claim Construction Reply and Evidence. | December 28, 2011 |

Since the scheduling order was first entered, the fact discovery and expert discovery deadlines have been modified several times. Fact discovery closed on June 15, 2012 (Dkt. 162) except that the parties were allowed to take the depositions of Messrs. Larry West and Allen Dodge on June 26 and 28, 2012, respectively. (Dkt. 222). Opening expert reports were due on July 13, 2012 and rebuttal expert reports are due on September 17, 2012. The expert discovery cut-off is currently set for October 8, 2012. (Dkt. 271.)

Health Grades served its original infringement contentions on July 1, 2011, which are attached hereto as Exhibit B. In these contentions, Health Grades asserted literal infringement and infringement under the doctrine of equivalents for claims 1, 4-11, and 14-16 against an older version of the accused website and the current version of the accused website. (7/1/11 Contentions at 3 (Ex. B).)

The Court held a Markman hearing on January 19, 2012 and issued its Markman Order on February 13, 2012. Following this Markman Order, Health Grades moved for leave to amend its infringement contentions to address several new claim interpretations set forth in the order. (Health Grades, Inc.'s Motion for Leave to Amend its Infringement Contentions to Address New Claim Constructions from the February 13, 2012 Markman Order (Dkt. 148).) This Court

granted Health Grades' motion (Dkt. 191). A copy of the February 2012 Infringement Contentions claim chart is attached hereto as Exhibit D.

On July 13, 2012, Health Grades served MDx with its expert report on infringement from Dr. Philip Greenspun. (Greenspun Report (Ex. A).) On the same day, MDx served Health Grades with its expert report on invalidity from Dr. Richard G. Cooper.

On July 27, 2012, the parties agreed to take a 45 day leave from active discovery so that they could attempt to settle this lawsuit. (Dkt. 267; Dkt. 271; Dkt. 275; Dkt. 277.) At the time of the agreement to stay, both parties recognized that they may need to move to amend their various contentions based on their expert reports if the case did not settle. Both parties agreed that they would not assert that this 45 day delay counted against either party's diligence in moving to amend the various contentions. (Dkt. 275 at 2; Dkt. 277 (granting joint motion).) The parties participated in an all-day mediation on August 30, 2012 with a third-party mediator, but were unable to reach an agreement to settle this case.

### B. Health Grades Discovered New Evidence After it Served its February 2012 Infringement Contentions

In response to an order compelling MDx to do so, MDx supplemented its interrogatory response relating to its non-infringement defenses and provided a significant amount of new information to Health Grades on May 10, 2012. (Defendant MDx Medical, Inc.'s Second Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories dated May 10, 2012 ("Second Supplemental Interrogatory Response") (Ex. E hereto).) In June 2012, MDx produced many new, non-public documents to Health Grades relating to the functionality of MDx's accused systems and license agreements with third parties relating to the accused products. (*See, e.g.*, various e-mails from David Lee dated May 30, 2012, June 1, 2012, and June

6, 2012 regarding MDx document production (Ex. F hereto).) Additionally, in June 2012 Health Grades took the following depositions of MDx:

- Erika Boyer – June 5, 2012 (excerpts attached as Ex. G hereto);
- Jeff Cutler – June 6, 2012;
- Mitch Rothschild (Rule 30(b)(6)) – June 7, 2012 (excerpts attached as Ex. H hereto); and
- Larry West – June 26, 2012 (excerpts attached as Ex. I hereto).

Specifically, Health Grades received new information relating to the following:

***1. Licenses of the Accused Physician Database to Aetna and Others***

From the outset of this lawsuit, Health Grades has been trying to get MDx to provide it with information about MDx's licenses of the accused physician database to third parties. MDx fought Health Grades every step of the way. On April 26, 2012, this Court granted Health Grades motion to compel and ordered MDx to produce the license agreements by May 10, 2012. (Dkt. 192.) Despite this Order, MDx still did not provide all the required agreements, including the Aetna and iTriage agreements, until June 6, 2012. (June 6, 2012 E-mail from Jesus Vazquez to Scott Stimpson re: "License Agreement and Document Production" (Ex. J).)

These agreements demonstrate that MDx is inducing third parties, such as Aetna, to directly infringe Health Grades' '060 patent and gave Health Grades the factual support it needed to assert a theory of indirect infringement against MDx. On July 13, 2012, Health Grades filed a motion to amend its complaint to assert theories of indirect infringement against MDx based on these license agreements. (Health Grades, Inc.'s Motion for Leave to Amend its Complaint To Assert Causes of Action for Joint Infringement and Indirect Infringement (Dkt. 252).) MDx's opposition to this motion is due on September 17, 2012.

***2. Information Relating to Physician Edits of MDx's Physician Database***

MDx's Second Supplemental Interrogatory Response included new, non-public details about how many physicians have actually edited various fields within the MDx database:

REDACTED

(Second Supplemental Interrogatory Response at 3 (Ex. E).) On May 31, 2012, MDx produced documents that supported this new information, including SQL search reports from MDx's database. (6/1/2012 E-mail from David Lee to Jesus Vazquez (Ex. F); MDX0104073-110 (Ex. K).) MDx's Chief Technology Officer, Larry West, provided additional testimony regarding these edits in his deposition on June 26, 2012. (*See, e.g.*, West Deposition, 267:21-271:19 (Ex. I).)

MDx witnesses also testified about the specific functionality of the accused system that allows physicians to edit their information within MDx's accused physician database:

- Physicians are able to log-in with credentials assigned by MDx, but do not have to edit their data. (West Deposition, 35:19-39:05; 250:6-250:10 (Ex. I).)

- MDx can monitor and track the data relating to how many physicians log-in to view their information, but do not change this data. (West Deposition, 35:19-39:05; 250:6-250:10 (Ex. I).)

- MDx's Chief Executive Officer, Mitchel Rothschild, also stated that a physician can confirm or accept the information in his or her profile by reviewing and not editing that information. (Rothschild Deposition, 88:23-89:12 ("If [physicians] open a tab on that particular piece of information, and it is written in there, and they choose not to change it and click accept, then they are accepting that information.") (Ex. H).)

Health Grades tried to obtain this information from MDx earlier in the litigation through document requests, interrogatories, and requests for admission, but was unable to do so.[1]

### *3. Source of Residency, Internship, and Fellowship Information in the Accused Physician Reports*

In the June 2012 depositions, MDx disclosed new information about the source of certain of its data and about how it aggregates data from different sources and resolves data conflicts during the depositions Health Grades took. For example:

- Mr. West and Ms. Boyer informed Health Grades that MDx has certain "business rules" that determine what is displayed on Vitals.com. (West Deposition, 70:3-72:08, 137:09-139:02 (Ex. I); Boyer Deposition, 99:15-100:12, 124:17-124:24 (Ex. G).)

- In describing these "business rules," the deposition testimony revealed that MDx actually "aggregates data" to determine what is correct before displaying that data and displays medical residency and fellowship information when it is "confirmed" by the physician. (Boyer Deposition, 99:15-100:12, 124:23-124:24 (Ex. G).)

## C. <u>The Basis of MDx's Opposition</u>

MDx objects to Health Grades motion arguing that twelve categories of information in the Greenspun Report were not previously disclosed in Health Grades' February 2102 Infringement Contentions:

1. "inducement and contributory infringement, by selling to customers including iTriage and Aetna."
2. "Providers verify and confirm their information just because they registered."

---

[1] *See, e.g.,* Health Grades' Motion to Compel Discovery at pp. 7-9 (Dkt. 126); Health Grades' Motion for Leave to Serve One Request for Inspection Under Fed. R. Civ. P. 34(A)(2), or in the Alternative, Health Grades' Motion For Reconsideration of the Order Denying its Motion to Compel Production of a Demonstration System (Dkt. 196).

3. "The argument that MDx could have determined whether any provider has edited 3 or more."

4. "If vitals displays fellowship or other data that is supposed to be from a 3d party, but it came from a doctor, MDx is still using the same information it collected from the third party to resolve conflicts."

5. "MDx mobile application."

6. "Capability"

7. "Various alleged comparison ratings not found in the HG infringement contentions."

8. "MDx uses licensure information in creating the report because only licensed doctors are on the website."

9. "The argument that information from third parties only needs to be compiled, not displayed in the report."

10. "The results list is really part of the report on a provider, or both a results list and a report."

11. "Having an advertisement means a provider is a member, and claiming that they are "members" because our web says "members log in"."

12. "Global equivalents arguments."

(July 23, 2012 e-mail from Scott Stimpson to Jesus Vazquez, re: "HG Expert Reports" (Ex. C).) Health Grades responded that while the first five categories were not previously disclosed in its infringement contentions, there was good cause for amending the contentions to include these arguments because they are based on newly discovered evidence. (July 23, 2012 e-mail from Jesus Vazquez to Scott Stimpson, re: "HG Expert Reports" (Ex. C hereto).) Health Grades also responded that the remaining categories were not new and provided citations to the February 2012 Infringement Contentions to show MDx where these arguments were disclosed. (*See id.*) Without responding to the substance of Health Grades' e-mail, MDx indicated that it would oppose Health Grades' motion to supplement its infringement contentions to incorporate the Greenspun Report. (August 2, 2012 e-mail from Scott Stimpson to Jesus Vazquez, re: "HG Expert Reports" (Ex. C hereto).)

## III. GOOD CAUSE EXISTS FOR ALLOWING HEALTH GRADES TO AMEND ITS INFRINGEMENT CONTENTIONS TO INCORPORATE THE GREENSPUN REPORT

Section 3-6 of the Patent Local Rules governs motions to amend infringement contentions. It states:

> **3-6. Amendment to Contentions.**
>
> Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include: (a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions. The duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions.

(Dkt. 34 at 22 (highlighting added).) Recent discovery of nonpublic information supports a finding of good cause. (*Id.*) As will be discussed in further detail below, Health Grades has recently discovered information through document production and depositions that it now seeks to incorporate into its infringement contentions via the Greenspun Report. As such, Health Grades has good cause to amend its infringement contentions under Local Patent Rule 3-6. (*Id.*)

Further, as also required by Local Patent Rule 3-6, MDx will not suffer any "undue prejudice" due to this amendment because most of the information in the Greenspun Report was previously disclosed in the infringement contentions. To the extent that MDx would suffer any prejudice resulting from new arguments Health Grades seeks to add, the prejudice is self-inflicted and could have been prevented if MDx had disclosed this discovery at an earlier date.

2003846306_1

**A. <u>Health Grades Has Good Cause to Amend its Contentions to Assert Theories Based on Newly Discovered Information</u>**

***1. "Inducement and Contributory Infringement"***

The Greenspun Report includes an opinion that MDx is liable for indirect infringement:

> 33. Opinion No. 2: It is my opinion that MDx indirectly infringes all of the asserted claims by inducing or contributing to the direct infringement of these patent claims by its customers (e.g., Aetna) by selling/licensing its physician database and providing services and enabling its customers to implement systems and methods which infringe the patent claims either literally or under the doctrine of equivalents.

(Greenspun Report at p. 5; *see also* pp. 50-70 (Ex. A).) There is good cause to allow Health Grades to amend its infringement contentions to include this indirect infringement theory because it is based on non-public information that Health Grades did not discover until June 2012, when MDx finally produced a copy of its license agreement with Aetna. (6/6/12 Vazquez E-mail (Ex. J).) Health Grades tried to obtain this information earlier through document requests and interrogatories to MDx, as well as through third party subpoenas to Aetna, but MDx fought these efforts at every step of the way.[2] Even though it was ordered to produce information by May 10, 2012, MDx still did not provide all the required agreements, including the Aetna and iTriage agreements, until June 6, 2012. Any prejudice that MDx may suffer from allowing this amendment is self-inflicted.

As such, Health Grades has good cause to amend its infringement contentions to include indirect infringement arguments relating to Aetna and iTriage; however, it may be necessary to

---

[2] *See, e.g.,* Health Grade, Inc.'s Motion to Compel Discovery at pp. 10-11 (Dkt. 126); MDx's Motion to Quash Health Grades' Subpoenas to iTriage (Dkt. 179); Health Grades' Opposition to Motion to Quash iTriage subpoenas (Dkt. 185).

reserve judgment on this particular issue until this Court rules on Health Grades' motion to amend the complaint. (Dkt. 252.)

### 2. *"Providers verify and confirm their information just because they registered."*

The Greenspun Report states:

> 128. Additionally, I understand that many more physicians have registered with vitals.com and viewed their profiles without changing any information. (*See* MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogs. at p. 3.) It is my opinion that in doing so these physicians have confirmed (e.g., verified) their information for MDx and that MDx has thereafter received this information from these physicians.

(Greenspun Report at pp. 33 & 47 (Ex. A).) To the extent that this argument has not been included in the infringement contentions, Health Grades has good cause to add it because it is based on newly discovered information, including specifically the above-cited Second Supplemental Interrogatory Response. Also, MDx's Chief Technology Officer, Larry West, testified in June 2012 that physicians are able to log-in with credentials assigned by MDx, but do not have to edit their data. (West Deposition, 35:19-39:05; 250:6-250:10 (Ex. I).) Further, Mr. West testified that MDx can monitor and track the data relating to how many physicians log-in to view their information, but do not change this data. (*Id.*) MDx's Chief Executive Officer, Mitchel Rothschild, also stated that a physician can confirm or accept the information in his or her profile by reviewing and not editing that information. (Rothschild Deposition, 88:23-89:12 ("If [physicians] open a tab on that particular piece of information, and it is written in there, and they choose not to change it and click accept, then they are accepting that information.") (Ex. H).) Because this information is newly discovered and is nonpublic, Health Grades has good cause to amend its infringement contentions.

Moreover, any prejudice it suffers from allowing this amendment is self-inflicted. MDx could have provided Health Grades with this nonpublic information at an earlier date by allowing Health Grades to access the Vitals.com "Physician's Portal." MDx refused to do so.[3]

### *3. "The argument that MDx could have determined whether any provider has edited 3 or more."*

The Greenspun Report states:

> 126. While MDx says it does not know of any physician who edited three or more of these fields, this could be determined by the same conventional SQL queries that MDx used to count the numbers of physicians who had made edits to a single field. Larry West testified that all edits made by physicians can be determined. (*See* Deposition of Larry West (Rough Draft) at 269:14-270:16) I believe that information regarding edits made by physicians via Web forms are stored in a table named "mdx_import.impt_provider_webedit". (*See* MDx Queries at MDX0104073.) Without access to the complete SQL data model for the Vitals system it is not possible for me to provide an example SQL query, but a query such as:

```
SELECT pro_master_id, count(*)
FROM mdx_import.impt_provider_webedit
GROUP BY pro_master_id
HAVING count(*) >= 3
ORDER BY count(*) desc
```

> would return a list of providers who had made at least three edits via the Web site and, for each provider, the number of edits that had been made. Adding additional query terms would make it possible to limit the results to those providers who had edited gender, specialty, and language, for example.

```
SELECT pro_master_id, count(*)
FROM mdx_import.impt_provider_webedit
GROUP BY pro_master_id
HAVING count(*) >= 3 and max(pro_gender) != ‘‘
and max(lang_record_status) != ‘‘ and max(spe1_field_specialty_id) is not null
ORDER BY count(*) desc
```

(Greenspun Report at p. 32 (Ex. A).) There is good cause to amend the infringement contentions to include this argument because it is based on newly discovered, non-public information that MDx produced in June 2012, namely the Second Supplemental Interrogatory Response (Ex. E), the SQL report MDx produced on June 1, 2012 (Ex. K), and the testimony of Larry West from

---

3 *See, e.g.*, Health Grade, Inc.'s Motion to Compel Discovery at pp. 10-11 (Dkt. 126); MDx's Motion to Quash Health Grades' Subpoenas to iTriage (Dkt. 179); Health Grades' Opposition to Motion to Quash iTriage subpoenas (Dkt. 185).

Case No. 1:11-cv-00520-RM-NYW Document 322-2 filed 10/10/13 USDC Colorado pg 16 of 26

June 26, 2012 (Ex. I). Mr. West's deposition testimony provided needed insight into the highly-technical nature of document MDX0104073-110. As such, Health Grades has not had an opportunity to address this issue in its infringement contentions until now.

**4. *"If vitals displays fellowship or other data that is supposed to be from a 3d party, but it came from a doctor, MDx is still using the same information it collected from the third party to resolve conflicts."***

The Greenspun Report states:

> 166. Also, if vitals.com displays fellowship information that has been self-reported by a doctor, it is my opinion that it is still "using" the fellowship information MDx collected from a third party. It is after all stored in the database. In order to avoid displaying incorrect information, Vitals must resolve conflicts between doctor-reported information and third-party verified information. This is a "use" of both kinds of information.

(Greenspun Report at p. 39 (Ex. A).) There is good cause to allow this new argument because it is based on newly discovered evidence. Specifically, MDx first raised this non-infringement argument about the source of this information in its Second Supplemental Interrogatory Response:

> The following information have also been obtained in some cases from physicians: medical school, medical internship, medical residency, and medical fellowship information. If displaying third-party verified information for a physician would include three or more of third-party information, then the same information obtained from a physician would be used instead (when available) to reduce the number of displayed third-party data to less than three. If the same information for a data field has not been obtained from a physician, then the data field is not displayed at all, so that no more than two third-party data fields are ever displayed for a physician.

(Second Supplemental Interrogatory Response at p. 6 (Ex. E) (highlighting added).) MDx employees provided additional information regarding this argument in their depositions in June. (West Deposition, 70:3-72:08, 137:09-139:02 (Ex. I); Boyer Deposition, 99:15-100:12, 124:17-

124:24 (Ex. G).) As such, this argument is based on newly discovered information and good cause exists to allow Health Grades to include it within its infringement contentions.

***5. "MDx mobile application."***

The Greenspun Report provides:

> c. In addition, I understand that an MDx iPhone Application ("App") as described in a March 30, 2012 design document (MDX 0104422-39), may be added to the above list of accused products. If so, I will be supplementing my report with a full analysis of this App. Based on an initial reading of MDX 0104422-39, I believe that it is likely that this App infringes at least one claim of the '060 Patent, e.g., pages MDX 0104424 and MDX 0104433 appear to show search results pages similar to what the Current Version displays, with lists of physicians and star ratings next to each physician.

(Greenspun Report at p. 26 (Ex. A).) Notably, at the time of the Greenspun Report was due; MDx had not launched its mobile application. Nevertheless, it appears that this product functions in the same way as MDx's accused products at issue in this case. Therefore, MDx will not be prejudiced by the addition of this accused product into this case. To the extent that Health Grades is not permitted to add this product to this lawsuit, it reserves the right to address this mobile application and its possible infringement of the '060 patent in a separate proceeding.

**B. <u>The Remaining Categories to Which MDx Objects Were Adequately Disclosed in the February 2012 Infringement Contentions</u>**

***1. "Capability"***

MDx argues the "reasonable capability" infringement analysis included in the Greenspun Report was not previously disclosed in Health Grades' infringement contentions. Not true. Health Grades has presented these arguments repeatedly in this lawsuit, including in its

Infringement Contentions from February 2012. For example, those Infringement Contentions

stated, *inter alia*:

- "MDx literally infringes this element because the www.vitals.com website is capable of receiving requests for information about only one particular physician." *Id.* at 16.

- "MDx literally infringes this element because the www.vitals.com website is capable of creating a healthcare provider report about only one particular physician." *Id.* at 47.

- "Additionally, it facilitates comparisons among the matching healthcare providers. MDx's website is capable of doing this. In fact, it is capable of providing the claimed information about multiple healthcare providers and has multiple ratings systems that facilitate comparisons among the healthcare providers that match the search query as described above." *Id.* at 53-54.

(Feb. 2012 Infringement Contentions (Ex. D).) The capability issue was also raised in Health

Grades summary judgment response brief. (Health Grades' Summary Judgment Response at p. 1

n.2 (Dkt. 156) ("A product or process accused of infringing a patent infringes if it is reasonably

capable of satisfying the claim elements, even though it may also be capable of operating in a

way that does not infringe. *See, e.g., Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197

(Fed. Cir. 2010); *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.,* 287 F.3d 1108, 1118-19

(Fed. Cir. 2002); *Hilgraeve Corp. v. Symantec Corp.,* 265 F.3d 1336, 1343 (Fed. Cir. 2001).")

Further, the issue was raised in one of Health Grades' motions to compel MDx to respond to

requests for admission. (Health Grades' Motion to Compel at pp. 6-12 (Dkt. 189).) The above

examples are just a few of the many instances where Health Grades has previously raised the

"capability" argument.

As such, MDx will suffer no prejudice if Health Grades is allowed to incorporate the

capability arguments from the Greenspun Report into its Infringement Contentions.

***2. "Various alleged comparison ratings not found in the HG infringement contentions."***

MDx argues that certain comparison ratings raised in the Greenspun Report have not been previously addressed in Health Grades' infringement contentions. Not true. All of the types of comparison ratings addressed in the Greenspun Report were previously disclosed in Health Grades' infringement contentions.

Dr. Greenspun states that the "Overall Patient Rating" and the "Match Score" are comparison ratings. (Greenspun Report at pp. 40-41 (Ex. A).) Health Grades previously presented this argument in its contentions. (Feb. 2012 Infringement Contentions at 32, 96 (Ex. D).) Dr. Greenspun also states that awards, such as the Patient's Choice award, are comparison ratings. (Greenspun Report at pp. 40-41 (Ex. A).) Health Grades addressed the Patient's Choice award being a comparison rating in the February 2012 Infringement Contentions. (Feb. 2012 Infringement Contentions at 33-34 (Ex. D).) To the extent that specific awards mentioned in the Greenspun Report were not specifically addressed by name in the infringement contentions, it is because the functionality of these awards was not discovered until depositions in June 2012. (*See, e.g.*, West Deposition at 145-149 (admitting that the "Top Doctor" award can be used to compare doctors) (Ex. I).)

Thus, there is good cause to allow amendment of the infringement contentions to include these other examples of awards that function as comparison ratings.

***3. "MDx uses licensure information in creating the report because only licensed doctors are on the website."***

The Greenspun Report states: "MDx displays reports only for physicians who are actively licensed. Thus, it is my understanding that Vitals.com uses licensure information to create a report even if they do not always explicitly display that information in the report. (Greenspun Report at p. 39 (Ex. A).) MDx contends that this argument was not disclosed in Health Grades' infringement contentions. Not true. The February 2012 Infringement Contentions stated:

- "MDx compiles licensure information. Screenshot No. 10 evidences that MDx verifies each physician license with a third party before adding the physician to the results list; to do this, MDx must compile the information in order to compare it to the entry field." (Feb. 2012 Infringement Contentions at 25-26 (Ex. D).)
- "MDx also uses compiled licensure information to ensure that only licensed physicians, including Brunvand, are displayed in the search results." (*Id.* at 38.)

Therefore, MDx will suffer no prejudice by incorporating the portions of the Greenspun Report relating to licensure information into the infringement contentions.

***4. "The argument that information from third parties only needs to be compiled, not displayed in the report."***

The asserted claims in this case all require: "creating . . . a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source . . . ." The Greenspun Report states:

165. Additionally, I disagree that following this rule will avoid infringement of this element because it does not require that the report display *all* compiled information. The Court's Markman Order specifically rejected this construction. (*See* Markman Order at p. 20.) Even without the Court's order, a person of ordinary skill in the art would not expect a report designed for viewing by humans to contain all of the information previously compiled in a database. One of the main purposes of report-generation or page-generation software is to select, distill, and summarize the most relevant information from a database. A typical server hard drive can store 3 trillion characters of information or approximately 600 billion words. The average adult reads no more than 300 words per minute and therefore would require approximately 3800 years (reading 24 hours per day) to read through the contents of a single hard drive, absent report-generation software to assist with the process.

(Greenspun Report at p. 37 (Ex. A).)

This argument is not new. To the contrary, it has been one of the central issues in dispute throughout this lawsuit. For example, in Health Grades' Markman Reply Brief, it stated:

> MDx essentially argues that it does not infringe this claim element **because it does not display in its report all of the information** it compiles about a physician. (MDx Brief at 19). However, using information to create a report and displaying information in a report are not the same things.

(Health Grades' Claim Construction Reply at p. 9 (Dkt. 106) (emphasis added).) Notably, MDx lost this argument:

> The parties disagree about whether, as defendant contends, the "use" must be of "all" the designated information. Defendant fails to persuasively explain why the Court should read such a limitation into claim language. . . . . Defendant does not explain why the use of a subset of "information" somehow renders that information no longer within the categories previously identified in Claim 1. Furthermore, the categories of information are being "used" to "create" a report. **There is nothing in the patent that requires, when receiving, acquiring, or compiling information, a predetermination of what will ultimately be put into a report. For instance, a patient or healthcare provider might provide information to the website that is not deemed relevant or important upon reaching the step of creating a report.** Because the Court rejects the insertion of "all" in the claim language, the phrase requires no construction.

(Markman Order at pp. 20-21 (emphasis added) (citations omitted) (Dkt. 138).) Because this argument has been previously raised, and MDx has already lost, MDx will suffer no prejudice by incorporating the related sections of the Greenspun Report into the infringement contentions.

***5. "The results list is really part of the report on a provider, or both a results list and a report."***

The Greenspun Report states:

> 168. I understand that MDx is arguing that these screenshots (*see,* e.g., Appendix C) cannot be a report because they are a results list. It is my opinion that they are both a results list (see discussion below) and a healthcare provider report. They contain a list of physicians who meet the search criteria, but they also contain additional information (e.g., specialty information, address, ratings, awards, hospital affiliations, board certifications), which is not required by the results list claim element, but which meets the claim limitation of a report on a particular healthcare provider as discussed above.
>
> 169. I understand that MDx is arguing that these screenshots are not part of the "report," but instead believe that the report includes only what vitals.com refers to as the "full profile." I disagree. Both parties agree that an ordinary meaning of the term "report" is a "formatted and organized presentation of information." These screenshots include information about a particular healthcare provider that is formatted and organized. The fact that the information is organized into multiple pages linked together does not mean that these pages are not a report. Paper reports often contain many pages and the same is true for reports in electronic form. I do not see any requirement in the claim that the report be limited to one-page, that all of the information be displayed on the same page, or that an embodiment cannot offer multiple report options.

(Greenspun Report at pp. 39-40 (Ex. A).)

This issue, too, is not new. In the February 2012 Infringement Contentions, Health Grades asserted that the display of search results meets both the "creating a report" claim element and the "results list" element. (*See, e.g.*, Feb. 2012 Infringement Contentions at 45-47, 60 (Ex. D).) In fact, Health Grades used the same screen shot to satisfy both of these claim element. (*Id.*) Moreover, this argument has been and continues to be a major issue in the

summary judgment briefing.[4] Therefore, MDx will suffer no prejudice by having the Greenspun Report incorporated into the infringement contentions.

***6. "Having an advertisement means a provider is a member, and claiming that they are 'members' because our web says 'members log in'."***

Claim 9 includes the requirement: "if the particular healthcare provider is a member of the company managing the Web site, providing enhanced services for the member healthcare provider on the Web site." Health Grades' Feb. 2012 Infringement Contentions argued that physicians who purchase advertisements (e.g. sponsored links) are members and that these members receive enhanced services. (Feb. 2012 Infringement Contentions at pp. 63-64 (Ex. D).)

At the MDx depositions, Health Grades learned that MDx refers to all physicians who have log-in credentials as "members" and that these physicians also receive enhanced services. (*See, e.g.*, West Deposition, 255:18-256:21 (Ex. I).) To the extent that this specific argument was not explicitly stated in the infringement contentions, Health Grades was not able to fully determine what a "member" was on the Vitals.com website until the deposition of Mr. West because MDx continually refused to allow Health Grades access to the "members" section (e.g.

---

[4] *See, e.g.*, MDx Summary Judgment Brief at p. 8 (Dkt. 195); Health Grades' Summary Judgment Response at p. 3 (Dkt. 201) ("MDx argues that this page cannot part of the claimed "healthcare provider report" because it is the claimed "results list." . . . There is a variety of information on this page and a reasonable jury could conclude that some of it satisfies the "results list" limitation (e.g., each name listed matches the search query) and some of it meets the "report" limitation (e.g., specialty information, awards, ratings).").

Case No. 1:11-cv-00520-RM-NYW Document 322-2 filed 10/10/13 USDC Colorado pg 24 of 26

physician portal) of its website.[5] Based on this information, Health Grades now has good cause to clarify its infringement contentions as they relate to "members" of the Vitals.com website.

### *7. Global equivalents arguments.*

MDx has not stated specifically what it means by "global equivalents arguments." In any event, Health Grades asserted the doctrine of equivalents in its February Infringement Contentions. (*See, e.g.*, Feb. 2012 Infringement Contentions at pp. 16, 34, 47, 49-50, 53-54, 72-73, 81, 93, 99, 113, 115-116, 119-120 (Ex. D).)

## IV. CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1A

Health Grades conferred with MDx regarding this motion. MDx partially opposes this motion. (*See* E-mail from Scott Stimpson to Jesus Vazquez, 7/23/2012 (Ex. C).)

## V. CONCLUSION

Because Health Grades has good cause to incorporate Dr. Greenspun' s expert report into its infringement contentions, and MDx will suffer no undue prejudice by the incorporation, Health Grades respectfully requests that the Court grant this motion for leave to amend.

5 *See, e.g.*, Health Grade, Inc.'s Motion to Compel Discovery at pp. 10-11 (Dkt. 126); MDx's Motion to Quash Health Grades' Subpoenas to iTriage (Dkt. 179); Health Grades' Opposition to Motion to Quash iTriage subpoenas (Dkt. 185).

Respectfully submitted this 17th day of September, 2012.

ROTHGERBER JOHNSON & LYONS LLP


*s/ Jesús M. Vazquez*

Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@rothgerber.com
        kkosto@rothgerber.com
        jvazquez@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*

Case No. 1:11-cv-00520-RM-NYW Document 322-2 filed 10/10/12 USDC Colorado pg 26 of 26

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2012, I electronically filed the foregoing HEALTH GRADES, INC.'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS TO INCORPORATE DR. PHILIP GREENSPUN'S EXPERT REPORT with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Scott Murray
David Chunyi Lee
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY 10112
Email: sstimpson@sillscummis.com
Email: smurray@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO 80202-2617
Email: ridley@wtotrial.com

*s/ Jesús M. Vazquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel: (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@rothgerber.com
kkostolansky@rothgerber.com
jvazquez@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*