# EXHIBIT D

## (Redacted Version of Doc. # 292-10)

Case No. 1:11-cv-00520-RM-NYW Document 392-5 filed 10/10/12 USDC Colorado pg 2 of 24

# EXHIBIT G

Case 1:11-cv-00520-PAB-BNB Document 291-32 Filed 09/17/12 USDC Colorado Page 3 of 24

# In The Matter Of:

*Health Grades, Inc.*
*vs.*
*MDX Medical, Inc.*

_____

*Erika Boyer*

*June 5, 2012*

_____

# *HIGHLY CONFIDENTIAL*
## *Attorneys' Eyes Only*

**MERRILL CORPORATION**

**LegaLink, Inc.**

311 South Wacker Drive
Suite 300
Chicago, IL 60606
Phone: 312.386.2000
Fax: 312.386.2275

Page 1

H I G H L Y   C O N F I D E N T I A L

ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
-------------------------------------------x
HEALTH GRADES, INC.,

              Plaintiff,

v.               Civil Action No. 11-CV 00520

MDX MEDICAL, INC., d/b/a VITALS.COM,

              Defendant.
-------------------------------------------x


     Videotaped DEPOSITION of ERIKA BOYER,

held at the offices of Sills Cummis & Gross,

P.C., 30 Rockefeller Plaza, New York, New York

10112, on the 5th day of June 2012, commencing

at 8:44 a.m., before Colette Cantoni, a

Registered Professional Reporter and Notary

Public of the State of New York, pursuant to

Notice.

```
 1 A P P E A R A N C E S:

 2

         ROTHGERBER JOHNSON & LYONS LLP
 3               Attorneys for Plaintiff
                 One Tabor Center, Suite 3000
 4               1200 Seventeenth Street
                 Denver, Colorado 80202-5855
 5
         BY:     JESUS M. VAZQUEZ, JR., ESQ.
 6               (jvazquez@rothgerber.com)

 7                  -and-

 8       MERCHANT & GOULD
                 1050 Seventeenth Street, Suite 1950
 9               Denver, Colorado 80265-0100

10       BY:     KIRSTIN L. STOLL-DeBELL, ESQ.
                 (kstolldebell@merchantgould.com)

11

12       SILLS, CILLIS & GROSS P.C.
                 Attorneys for Defendant
13               and the Witness
                 30 Rockefeller Plaza
14               New York, New York 10112

15       BY:     SCOTT D. STIMPSON, ESQ.
                 (sstimpson@sillscummis.com)
16               -and-
                 LAUREN SIBER, ESQ. (P.M. Session)
17

18 ALSO PRESENT:

19       MICHAEL WAGNER, Summer Associate,
         Merchant & Gould
20
         PHILIP GLAUBERSON, Videographer
21

22

23

24

25
```

Page 3

1                    INDEX

2 WITNESS                    EXAMINED BY          PAGE
  Erika Boyer                Mr. Vazquez          6, 202
3                            Mr. Stimpson         193

4 BOYER

5 FOR IDENTIFICATION

6 Exhibit 1     Model of online physician
                directory                        58
7
  Exhibit 2     Series of e-mail communications,
8               Bates MDX 0016995-0017132    58

9 Exhibit 3     Vitals site functionality and data
                set overview, Bates MDX
10              0071952-001989                   58

11 Exhibit 4    1/5/2011 e-mail to Erika Boyer and
                Larry West from Mitch Rothschild,
12              Bates MDX 0034444-4446      116

13 Exhibit 5    Series of e-mails, Bates
                MDX 0014337-143426          137
14
   Exhibit 6    10/5/2010 e-mail communication from
15              Larry West to Mitch@vitals.com and
                Erika Boyer, MDX 0019254-255 137
16
   Exhibit 7    February 18, 2011 e-mail from
17              Irving Weiss to Micah Miller,
                MDX 0029181-183             137
18
   Exhibit 8    July 13, 2009 e-mail from
19              saponara@gmail.com on behalf of
                adam@vitals.com to Frank and cc'd
20              to others, MDX 0042705-707  137

21 Exhibit 9    Group Practice Pages SEO Review
                4/4/2011, MDX 0039618-39624 137
22
   Exhibit 10   Series of e-mails, Bates MDX
23              001923-19240                137

24

25

Case 1:11-cv-00520-RM-NYW Document 32 Filed 07/04/12 USDC Colorado pg 7 of 24

```
 1  EXHIBITS (Continued):
                                        PAGE
 2  BOYER

 3  FOR IDENTIFICATION

 4  Exhibit 11   May 27, 2009 e-mail from Irving
                 Weiss to Mitchell Rothschild,
 5               Bates MDX 0027632-633        137

 6  Exhibit 12   Vitals User Database as of 6/30/11,
                 Bates MDX 0034441            137
 7
    Exhibit 13   October 28, 2010 e-mail from Mike
 8               Rutz to Jeff@Vitals.com, Bates MDX
                 0015260-64                   137
 9
    Exhibit 14   February 19, 2009 e-mail from
10               Irving Weiss to Larry West and Jeff
                 at Vitals.com, MDX 0049605-607 137
11
    Exhibit 15   7/14/2010 e-mail to Sara McMahon,
12               Ralph Viola, Michael Ramos
                 from Erika Boyer, Bates MDX
13               0103880                      189

14  Exhibit 16   8/15/2011 e-mail from Larry West
                 to Erika Boyer                193
15
    Exhibit 17   U.S. patent 7,752,060        198
16
                     ***
17  (Boyer Exhibit Numbers 1 through 17 were
    retained by Attorneys Vazquez and Stimpson)
18                   ***

19          DIRECTION NOT TO ANSWER

20          PAGE      LINE

21           44        16

22

23

24

25
```

10:56:19  1        A    We don't have any of this

10:56:21  2  information in our database.

10:56:22  3        Q    Okay.  What about clinical

10:56:25  4  interests, is a physician the source of that?

10:56:35  5        A    The primary source for that again is

10:56:38  6  State Medical Board -- actually not State

10:56:39  7  Medical Board -- it's going to be the

10:56:41  8  hospitals and the medical group practices.

10:56:43  9        Q    And can the physician update or

10:56:45  10  change that information?

10:56:46  11       A    I believe so.

10:56:48  12       Q    Okay.  And what about clinical

10:56:51  13  recognition, Ms. Boyer, is the source of that

10:56:55  14  the physician?

10:57:00  15       A    No.  As I'm reading it here, and the

10:57:05  16  only reference because I'm not familiar with

10:57:07  17  this is NCQA, which is an example of clinical

10:57:12  18  recognitions which we do license from a third

10:57:14  19  party.

10:57:21  20       Q    What about mortality rates?

10:57:23  21       A    We don't have that.

10:57:28  22       Q    And what about patient survey data,

10:57:33  23  what is the source of that information?

10:57:36  24       A    For physicians?

10:57:38  25       Q    Um-hum.

Page 97

10:57:40  1      A    We don't have that.  The patient

10:57:44  2 survey, as defined here, which is the KAP

10:57:47  3 Survey, we don't have it on the physician.

10:57:49  4      Q    Do you have any patient-provided

10:57:52  5 information on the Vitals' database?

10:57:54  6      A    Yes.

10:57:54  7      Q    Can you describe it?

10:57:57  8      A    We have our own online survey, the

10:58:02  9 patient does --

10:58:03 10      Q    What does the survey ask?

10:58:07 11      A    What does it ask?

10:58:08 12      Q    Yes.

10:58:08 13      A    It asks overall rating of the

10:58:10 14 doctor.  What was your wait time?  How was the

10:58:16 15 office?  Was the office clean?  How was the

10:58:22 16 office staff?

10:58:36 17           What does it ask?  It asks Do you

10:58:38 18 feel you had an accurate diagnosis?

10:58:40 19           Again, these are not word for word,

10:58:42 20 but basically what they're asking.

10:58:44 21      Q    Okay.

10:58:45 22      A    And maybe one or two others that are

10:58:47 23 just, I don't have at the top of my head right

10:58:49 24 now.

10:58:49 25      Q    Okay.  So, Ms. Boyer, is there a

10:59:03  1  document or a source that would list what

10:59:08  2  fields a doctor can edit and what fields they

10:59:11  3  cannot edit, and what edits would take place

10:59:16  4  right away versus which ones need to be

10:59:18  5  verified?

10:59:19  6         MR. STIMPSON:  Objection, compound.

10:59:23  7     A   Not that I'm aware of.

10:59:24  8     Q   Do you know that information?

10:59:26  9     A   No.

10:59:27  10        MR. STIMPSON:  Objection, compound.

10:59:29  11    A   Do I -- off the top of my head?  No,

10:59:32  12 not off the top of my head.

10:59:33  13    Q   Given your counsel's objection, can

10:59:36  14 you tell me what fields a doctor can edit?

10:59:47  15    A   I -- other than the fields that I

10:59:49  16 mentioned previously when you asked the

10:59:51  17 question, I don't, I don't think I have

10:59:54  18 anything more to add to that, that I can

10:59:57  19 recall off the top of my head.

10:59:58  20    Q   Could you indulge me in just telling

11:00:02  21 me what those fields were, to the extent you

11:00:05  22 recall?

11:00:05  23    A   Location information, areas of

11:00:09  24 expertise, specialty, hospital affiliation,

11:00:23  25 education, office hours.  That's what I have

```
11:00:48  1 off the top of my head.

11:00:49  2      Q    Okay.

11:00:57  3           MR. VAZQUEZ:  Okay.  We are going to

11:00:58  4 take a quick pleas, please.

11:01:00  5           THE WITNESS:  Okay.

11:01:01  6           MR. VAZQUEZ:  Five minutes.

11:01:02  7           THE VIDEOGRAPHER:  Going off the

11:01:03  8 record, the time is 11:03 a.m.

11:01:05  9           (A recess was taken.)

11:24:30 10           THE VIDEOGRAPHER:  We're back on the

11:24:31 11 record, the time is 11:26 a.m.

11:24:34 12 BY MR. VAZQUEZ:
```

REDACTED

REDACTED

11:26:11  1      A   Yes.

11:26:13  2      Q   Okay.  How many physician profiles

11:26:17  3 do you have?

11:26:20  4      A   We have profiles on all active

11:26:31  5 licensed doctors in the United States, which

11:26:35  6 that number fluctuates.

11:26:38  7      Q   That's a big number?

11:26:40  8      A   Um-hum.

11:26:41  9      Q   Can you estimate about what it is?

11:26:43 10      A   About 800,000.

11:26:45 11      Q   Okay.  Do physicians that are

11:26:52 12 registered, do they have any benefits --

11:26:54 13      A   No.

11:26:54 14      Q   -- do they get any benefits for

11:26:57 15 that?

11:26:58 16      A   No.

11:27:15 17      Q   Let me give you what's been marked

11:27:16 18 as Exhibit Number 2, Ms. Boyer, which is a big

11:27:20 19 stack of paper, but I really just want to ask

11:27:23 20 you questions about three pages in, the one

11:27:27 21 that's Bates numbered MDX 0016998.  And that

11:27:42 22 is a two-page document, it goes on MDX

11:27:50 23 0016999.

11:27:51 24      A   Um-hum.

11:27:51 25      Q   Is this a document that you're

11:50:33  1          Can you describe what these, what

11:50:34  2 "policies" means in this e-mail?

11:50:52  3     A   Policies just to ensure that, you

11:50:54  4 know, we're doing business in a proper manner,

11:50:58  5 is the best ex- -- yeah.

11:51:00  6     Q   The best you can... okay.

11:51:04  7         MR. VAZQUEZ:   Well, the videographer

11:51:06  8 just told me we're getting ready to run out of

11:51:08  9 tape, so let's go off the record here.

11:51:11 10         MR. STIMPSON:   Okay.

11:51:12 11         THE VIDEOGRAPHER:   This marks the

11:51:13 12 end of tape number 2 in the deposition of

11:51:14 13 Erika Boyer.   Going off the record, the time

11:51:16 14 is 11:53 a.m.

11:51:18 15         (Off the record.)

11:56:42 16         THE VIDEOGRAPHER:   Back on the

11:56:43 17 record.   Here marks the beginning of tape

11:56:45 18 number 3 in the deposition of Erika Boyer.

11:56:49 19 The time is 11:59 a.m.

11:56:51 20 BY MR. VAZQUEZ:

11:56:54 21     Q   Okay, Ms. Boyer, we were -- I was

11:56:56 22 asking you questions about what's been marked

11:56:59 23 as Exhibit Number 4, which is the e-mail from

11:57:03 24 Mitch Rothschild dated January 5, 2011 to you

11:57:07 25 and Mr. West.

11:57:10   1          Do you know why it is this e-mail

11:57:12   2 was only sent to you and Mr. West?

11:57:17   3      A   No.

11:57:20   4      Q   Did -- you were talking about how

11:57:25   5 you did not physically do anything as a result

11:57:30   6 of the e-mail, then you referenced i.e.

11:57:33   7 changes made to the website, right?

11:57:35   8      A   Correct.

11:57:36   9      Q   Did you direct anybody to do

11:57:39 10 anything as a result of this e-mail?

11:57:42 11      A   No.

11:57:43 12      Q   Okay.  The second page of the e-mail

11:58:07 13 at MDX 0034445, about three-quarters of the

11:58:16 14 way down Mr. Rothschild wrote "To ensure that

11:58:18 15 Vitals is not in violation of this patent in

11:58:20 16 any way" --

11:58:21 17      A   Um-hum.

11:58:22 18      Q   -- "certain of our policies, the

11:58:26 19 list of which is noted below, must continue to

11:58:30 20 be strictly enforced."

11:58:32 21          Did I read that accurately?

11:58:34 22      A   Yes, that's what it says.

11:58:36 23      Q   And so my question is, to the extent

11:58:41 24 Mr. Rothschild said "must continue to be

11:58:45 25 strictly enforced," when was, were these

Case 1:11-cv-00520-PAB-BNB Document 292-32 Filed 09/17/12 USDC Colorado Page 16 of 23

Page 123

11:58:53  1  policies first started to be enforced, do you

11:58:57  2  know?

11:58:57  3      A   No, I don't.

11:59:01  4      Q   Before you received this e-mail were

11:59:04  5  you aware of policies that Mr. Rothschild is

11:59:09  6  referencing in this sentence?

11:59:20  7          (Witness reviewing document.)

11:59:26  8      A   I believe so.

11:59:40  9      Q   On the policy listed as number 1

11:59:45 10  after the sentence I was just asking about, it

11:59:49 11  says "Our display of third party verified

11:59:53 12  information does not include IRF."

11:59:57 13          Did I read that accurately?

11:59:59 14          MR. STIMPSON:  Objection to form.

12:00:03 15          (Witness reviewing document.)

12:00:05 16      A   Yes.

12:00:05 17      Q   What does IRF mean, do you know?

12:00:09 18      A   Internship, residency, fellowship.

12:00:17 19      Q   Can we assume that given what's

12:00:20 20  written there that you do display third party

12:00:24 21  verified information?

12:00:26 22          MR. STIMPSON:  Objection to form.

12:00:28 23          (Witness reviewing document.)

12:00:30 24      A   Can you repeat the question, please.

12:00:33 25      Q   Can we assume from what's written

Page 124

12:00:35  1 here that Vitals does display third party

12:00:39  2 verified information?

12:00:40  3        MR. STIMPSON:  Objection to form.

12:00:54  4    A   We do provide -- we do display third

12:00:57  5 party information.  I do not know if it's all

12:00:59  6 verified.

12:00:59  7    Q   Some of it is verified?

12:01:01  8        MR. STIMPSON:  Objection to form.

12:01:03  9    A   I'm not sure.

12:01:04  10   Q   You're not sure if any of it is

12:01:06  11 verified?

12:01:07  12       MR. STIMPSON:  Same objection.

12:01:08  13   A   I don't know.

12:01:11  14   Q   You don't know if any of it is

12:01:12  15 verified, is that --

12:01:14  16       MR. STIMPSON:  Objection.

12:01:15  17   Q   You don't know if any of it is

12:01:17  18 verified, Ms. Boyer?

12:01:18  19       MR. STIMPSON:  Objection.  Same

12:01:19  20 objection, asked and answered.

12:01:35  21   A   We don't include internship at all

12:01:38  22 on the website.

12:01:42  23       Residency and fellowship, only when

12:01:47  24 it's confirmed by the provider.

12:01:52  25   Q   Okay.  I appreciate that.  But my

12:01:56 1 question is really simple and succinctly,

12:02:01 2 given that Mr. Rothschild writes in January of

12:02:04 3 2011 --

12:02:05 4        A    Um-hum.

12:02:06 5        Q    -- "Our display of third party

12:02:09 6 verified information does not include IRF" --

12:02:14 7        A    Correct.

12:02:15 8        Q    -- closed quote --

12:02:16 9        A    Correct.

12:02:17 10        Q    -- can we assume that you displayed

12:02:23 11 third party verified information, as

12:02:24 12 Mr. Rothschild wrote?

12:02:26 13            MR. STIMPSON:  Objection, same

12:02:27 14 objection, this has been asked and answered

12:02:30 15 now a few times.

12:02:31 16            MR. VAZQUEZ:  It's not been

12:02:32 17 answered.

12:02:32 18            MR. STIMPSON:  Yes, it has.

12:02:37 19            (Witness reviewing document.)

12:02:39 20        A    The question is asking about

12:02:42 21 third -- about IRF only, correct?

12:02:46 22        Q    No.  Actually, that's exactly the

12:02:49 23 point of my question.  My point -- the point

12:02:51 24 of my question, Ms. Boyer, is that this

12:02:55 25 appears to state, Mr. Rothschild is saying,

Case 1:11-cv-00520-PAB-BNB Document 291-32 Filed 09/17/12 USDC Colorado Page 19 of 23

Page 209

04:10:21  1        MR. STIMPSON:  Then you're done?

04:10:22  2        MR. VAZQUEZ:  -- then we had a whole

04:10:22  3 rant and ramble.

04:10:23  4        MR. STIMPSON:  Are we done?

04:10:24  5        MR. VAZQUEZ:  No, I'm not done.

04:10:26  6 We're going to get to the bottom of this, I

04:10:29  7 don't care if we're here until 8 o'clock.

04:10:31  8 BY MR. VAZQUEZ:

04:10:31  9     Q  Can you vouch for the accuracy of

04:10:33 10 the data on Vitals' website?

04:10:37 11        MR. STIMPSON:  Objection to form.

04:10:38 12 What data?

04:10:40 13        MR. VAZQUEZ:  That's it.  You don't

04:10:41 14 get to ask the question, Mr. Stimpson.

04:10:42 15        MR. STIMPSON:  No, I'm asking you

04:10:43 16 what data.

04:10:44 17        MR. VAZQUEZ:  No, you don't get to

04:10:45 18 ask me questions either.

04:10:47 19        MR. STIMPSON:  There's a question

04:10:48 20 here.

04:10:48 21        MR. VAZQUEZ:  I asked a question,

04:10:51 22 you made an objection to form, and that's when

04:10:52 23 you zip it and you let the witness talk.

04:10:54 24        MR. STIMPSON:  No, don't tell me to

04:10:55 25 zip it again, Jesus.  That's really rude.

Page 210

04:10:57  1          MR. VAZQUEZ:  Yeah, right.  And you,

04:10:58  2  you're not rude?

04:10:59  3          MR. STIMPSON:  Objection to form.

04:10:59  4  I'm not being rude, Jesus.

04:11:00  5          MR. VAZQUEZ:  Yeah, you are.  You

04:11:00  6  know what you're doing.  You're like a fox in

04:11:01  7  a henhouse.

04:11:02  8      Q   Just -- do you understand my

04:11:04  9  question?

04:11:04 10      A   No, I do not.

04:11:05 11      Q   Okay.  Can you vouch for the

04:11:06 12  accuracy of the data on Vitals' website?

04:11:09 13          MR. STIMPSON:  Objection to form.

04:11:10 14  You just asked the same thing, she said she

04:11:13 15  didn't understand.

04:11:14 16      A   What data?

04:11:15 17      Q   The data Mr. Stimpson asked you

04:11:17 18  about in his questions.

04:11:18 19          MR. STIMPSON:  Objection to form.

04:11:19 20      A   Which ones specifically?

04:11:20 21      Q   Do you not remember his questions?

04:11:22 22      A   I do, but I would -- but he asked a

04:11:24 23  lot of questions.  And my question is which

04:11:25 24  one are you referring to?

04:11:26 25      Q   Are there any -- is there any piece

Page 211

04:11:27 1 of data that he asked you about that you can

04:11:29 2 vouch for the accuracy of?

04:11:30 3          MR. STIMPSON:  Objection to form,

04:11:31 4 it's compound.

04:11:35 5      A    No.  Because we get it from third

04:11:38 6 parties --

04:11:38 7      Q    Okay.

04:11:38 8      A    -- and...

04:11:40 9      Q    Okay.  Have you read the Markman

04:11:44 10 Order in this case?

04:11:44 11      A    No.

04:11:46 12      Q    Okay.  Do you intend to give a lay

04:11:48 13 opinion regarding the meaning of the terms in

04:11:51 14 this patent?

04:11:52 15          MR. STIMPSON:  Objection to form.

04:11:53 16      A    Excuse me?

04:11:54 17      Q    Do you intend to give any opinion as

04:11:57 18 testimony about the meaning of the terms in

04:11:59 19 this patent?

04:11:59 20          MR. STIMPSON:  Objection to form.

04:12:02 21      Q    Huh?

04:12:03 22      A    I don't know.

04:12:04 23      Q    You don't know if you intend to or

04:12:06 24 not?

04:12:06 25          MR. STIMPSON:  Objection to form.

Page 212

04:12:09 1      A   No, I don't.

04:12:09 2      Q   Are you an expert in patent

04:12:12 3 construction?

04:12:14 4      A   No.

04:12:17 5      Q   Do you recall earlier when I asked

04:12:18 6 you questions about the patent, every single

04:12:20 7 time Mr. Stimpson objected that it calls for

04:12:23 8 expert testimony, do you recall that?

04:12:24 9          MR. STIMPSON:  Objection.  Objection

04:12:25 10 to form.

04:12:26 11     A   Yes.

04:12:26 12     Q   Okay.

04:12:34 13         MR. VAZQUEZ:  All right.  Thanks

04:12:34 14 very much.  That was fun.

04:12:35 15         MR. STIMPSON:  Thank you.  That was.

04:12:37 16         THE WITNESS:  Thank you.

04:12:37 17         MR. STIMPSON:  Same room tomorrow,

04:12:39 18 8 o'clock.

04:12:39 19         THE VIDEOGRAPHER:  Here marks the

04:12:40 20 end of videotape number 4 in the deposition of

04:12:43 21 Erika Boyer.  Going off the record, the time

04:12:46 22 is 4:15 p.m., June 5, 2012.

04:12:50 23         (Time noted:  4:15 p.m.)

24

25

1     A C K N O W L E D G M E N T

2

3

4 STATE OF NEW YORK:

5 COUNTY OF NEW YORK:

6

7     I, ERIKA BOYER, hereby certify that I

8 have read the transcript of my testimony taken

9 under oath on the 5th day of June 2012, that

10 the transcript is a true, complete and correct

11 record of what was asked, answered, and said

12 during the deposition, and that the answers on

13 the record as given by me are true and

14 correct.

15

16

17

18                         _____
                            ERIKA BOYER

19

20 Signed and subscribed to before me

21 this    day of

22

23

24 Notary Public

25

Page 214

1        C E R T I F I C A T E

2
  STATE OF NEW YORK  )
3             : ss.:
  COUNTY OF NEW YORK  )
4        I, COLETTE CANTONI, a Registered

5 Professional Reporter and a Notary Public

6 within and for the State of New York, do

7 hereby certify that the foregoing deposition

8 of ERIKA BOYER was taken before me on the 5th

9 day of June 2012.

10       That the said witness was duly

11 sworn before the commencement of his

12 testimony; that the said testimony was taken

13 stenographically by me and then transcribed.

14       I am not related by blood or

15 marriage to any of the said parties nor

16 interested directly or indirectly in the

17 matter in controversy; nor am I in the employ

18 of any of the counsel.

19       IN WITNESS WHEREOF, I have hereunto

20 set my hand this 15th day of June 2012.

21

22

23      _____

24       COLETTE CANTONI

25