**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S MOTION TO PARTIALLY EXCLUDE EXPERT
TESTIMONY OF DR. RICHARD G. COOPER
PURSUANT TO FED. R. EVID. 403 AND 702, AND
*DAUBERT V. MERRIL DOW PHARMS., INC.*, 509 U.S. 579 (1993)**

Plaintiff Health Grades, Inc. ("Health Grades") respectfully submits its Motion to Partially Exclude Expert Testimony of Dr. Richard G. Cooper pursuant to Federal Rules of Evidence 403 and 702, and the Supreme Court's holding in *Daubert v. Merril Dow Pharms., Inc.*, 509 U.S. 579 (1993).

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 3

II. BACKGROUND FACTS .................................................................................................... 3

III. ARGUMENT ........................................................................................................................ 4

    A. **Dr. Cooper's Invalidity Opinions Do Not Meet the Federal Circuit's Threshold Requirements for Reliability** ................................................. 5

        **1.** Dr. Cooper Did Not Use the Court's Claim Constructions and Did Not Otherwise State How He Interpreted Each Claim Element for his Invalidity Opinions ..................................................... 5

        2. Dr. Cooper's Anticipation Opinion Does Not Analyze Each Prior Art Reference Separately, But Rather Offers Conclusory Testimony Regarding a Group of References .......................... 8

        3. Dr. Cooper's Obviousness Opinion is Conclusory and Insufficient as a Matter of Law ..................................................................... 11

        4. Dr. Cooper's Inequitable Conduct Opinion Should Be Excluded for the Same Reasons ................................................................ 13

    B. **Some of Dr. Cooper's Infringement Opinions are Irrelevant, Confusing, and Prejudicial Because He Used Claim Constructions that Were Rejected by this Court** ................................................. 13

    C. **Dr. Cooper's "Acceptable Substitutes" Opinion is Irrelevant** .......................... 17

IV. CONCLUSION .................................................................................................................. 17

I.  **INTRODUCTION**

Health Grades seeks to exclude MDx Medical, Inc.'s ("MDx") technical expert, Dr. Richard G. Cooper, from providing several opinions because they are irrelevant, confusing, and prejudicial, and because they do not meet the threshold requirements for reliability established in *Daubert v. Merril Dow Pharms., Inc.*, 509 U.S. 579 (1993). Health Grades seeks to exclude:

- Invalidity opinions because Dr. Cooper did *not* use this Court's claim constructions and did *not* otherwise explain how he interpreted the claim elements for his invalidity analysis.

- Dr. Cooper's anticipation opinions because he did not identify a single prior art reference that discloses each and every claim element as is required by 35 U.S.C. §102.

- Dr. Cooper's obviousness opinions because they are conclusory and fail to consider several of the legal requirements of 35 U.S.C. §103.

- The non-infringement opinions that are based on claim interpretations that were rejected by this Court in the Markman Order.

- Dr. Cooper's opinion regarding "acceptable substitutes" because it is not based on any cognizable legal theory.

Health Grades does not contend that Dr. Cooper is not qualified to give expert opinions on infringement and invalidity in this case, but rather that his expert reports do not provide even the minimum amount of information that the Federal Circuit has held is necessary for such opinions. The fact that Dr. Cooper is qualified only increases the risk of prejudice to Health Grades – the jury is likely to assume that he performed the necessary analysis based on correct principles of law. As such, Health Grades respectfully requests that this Court prevent Dr. Cooper from presenting these misleading and prejudicial opinions to the jury.

II.  **BACKGROUND FACTS**

Health Grades asserts that MDx is infringing certain claims of Health Grades' U.S. Patent No. 7,752,060. MDx has served Health Grades with two Rule 26(a)(2) reports from its technical

3

expert which collectively disclosed 13 opinions relating to invalidity, non-infringement, and damages.  (Declaration of Richard G. Cooper D.Sc. dated July 13, 2012 ("Cooper Report") (Ex. A hereto); Rebuttal Expert Report dated September 17, 2012 ("Cooper Rebuttal Report") (Ex. B hereto).)  Health Grades seeks to exclude the following six of Dr. Cooper's opinions:

1. <u>Invalidity</u>:  "I have determined that all the asserted claims of the '060 patent are anticipated, or at the very least would have been obvious to a Posita, and therefore all these claims should be held invalid."  (Cooper Report at ¶84 (Ex. A).)

2. <u>Inequitable Conduct</u>:  "[I]t is my opinion that but for the inventors' failure to disclose the Early HG Reports and Services, the Patent Office would not have allowed any of these claims to issue."  (*Id.* at ¶85.)

3. <u>Acceptable Substitutes</u>:  "After reviewing the various web sites, I found numerous web sites that are acceptable substitutes for the alleged invention."  (*Id.* at ¶86.)

4. <u>Non-Infringement</u>:  "The Vitals web site does not have, either literally, or equivalently, three or more of the items required to be verified by the health care provider."  (Cooper Rebuttal Report at ¶69 (Ex. B).)

5. <u>Non-Infringement</u>:  "The Vitals web site does not have, either literally, or equivalently, three or more of the required items that must be verified by a third party."  (*Id.* at ¶71.)

6. <u>Non-Infringement</u>:  "The Vitals web site does not have, either literally or equivalently, a hyperlink to an affiliated hospital, medical center, or other type of treatment center."   (*Id.* at ¶74.)

### III.   ARGUMENT

This Court must act as a gatekeeper to prevent misleading or confusing expert testimony from being presented to the jury and to verify that the underlying reasoning or methodology of an expert witness's opinion is valid and can be properly applied to the facts of the case. *Daubert*, 509 U.S. at 592-93.  As the "gatekeeper," this Court should "carefully and meticulously make an early pretrial evaluation of issues of admissibility" with regard to Dr. Cooper's opinions. *Robinson v. Missouri Pacific R.R. Co.*, 16 F.3d 1083, 1089 (10th Cir.1994).

4

MDx bears the burden by a preponderance of the evidence to persuade this Court to allow Dr. Cooper to testify. *Apple, Inc. v. Motorola, Inc.*, No. 1:11-CV-08540, 2012 U.S. Dist. LEXIS 105387, *15 (N.D. Ill. May 22, 2012).

### A.     Dr. Cooper's Invalidity Opinions Do Not Meet the Federal Circuit's Threshold Requirements for Reliability

#### 1.     Dr. Cooper Did Not Use the Court's Claim Constructions and Did Not Otherwise State How He Interpreted Each Claim Element for his Invalidity Opinions

The Cooper Report gives two kinds of invalidity opinions: anticipation and obviousness. Both types of invalidity require Dr. Cooper to consider the claim constructions issued by this Court *and* to analyze the meaning of the claim terms that were not construed by this Court. *See, e.g., Koito Mfg. Co., Ltd. v. N. Am. Lighting,* 381 F.3d 1142, 1152 (Fed. Cir. 2004); *Rothschild v. Cree, Inc.*, 711 F. Supp. 2d 173, 194 (D. Mass. 2010) (excluding expert testimony because the witness failed to "identify each claim element and state his interpretation of the element."); *Markman v. Westview Instruments,* 517 U.S. 370, 384-85 (1996) (determining invalidity is a two-step process: first the claims are construed and then the construed claims are compared to the prior art.). Dr. Cooper failed to meet these requirements.

The Cooper Report does not mention and does not apply this Court's claim constructions. This is a fatal flaw. *See, e.g., Degelman Indus. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 U.S. Dist. LEXIS 150190, *15-*16 (W.D.N.Y. May 27, 2011) (recommending exclusion of an expert because: "It is inexplicable for him to opine on patent validity without at least considering the Court's claim construction."). Although Dr. Cooper mentions he reviewed the Markman Order among a listing of multiple documents, his report never again mentions the Markman Order or any of the Court's claim constructions. (Cooper Report at p. 5 ¶18 (Ex. A).) Further, Dr. Cooper does not appear to have *applied* any of this

Court's claim constructions. For example, this Court construed the term "first healthcare provider" to mean:

> a particular healthcare provider about whom information is requested and a report is produced.

(Markman Order at p. 23 (Dkt. 138).) The parties further stipulated that a "first healthcare provider" is a person (e.g. a doctor), and not an entity (e.g. a hospital). (*Id.* at 7.) The Cooper Report does not identify who the first healthcare provider is in any of the prior art references, let alone explain how such a provider meets the terms as construed by this Court. As another example, this Court construed the term "comparison ratings of healthcare providers" to mean:

> ratings on multiple healthcare providers, including the "first healthcare provider," in the report on that "first healthcare provider," thus permitting comparison of the "first healthcare provider" with other potential healthcare providers.

(Markman Order at p. 24 (Dkt. 138).) Dr. Cooper does not identify where the prior art shows ratings of a first healthcare provider (as construed by the Court) or explain how such ratings are included in the same report as ratings of other healthcare providers as required by the Court. (Cooper Report at pp. 17-19 (Ex. A).)

Second, the Cooper Report does not "state the interpretation of [each] claim element" that Dr. Cooper used for his invalidity analysis. *Koito,* 381 F.3d at 1152. For example, the meaning of the term "verified" has been a hotly contested issue in this litigation. MDx argued that "verified" must mean: "proven to be true." (Markman Order at pp. 15 & 17 (Dkt. 138).) This Court declined to so limit the claims, stating:

> Although defendant is correct that "verify" can mean "to prove," "verify" may also mean, depending on its context, "confirm" or "substantiate.'

(*Id.* at 15 n.8, 17.) Dr. Cooper does not specify which meaning of "verified" he used to support his invalidity opinions. Rather, his report says merely that Health Grades' prior art has third-

6

party verified information because the information was provided by third parties (such as

ABMS):



(Cooper Report at pp. 16-17 (highlighting added) (Ex. A).)

Dr. Cooper's silence about the claim constructions he applied for invalidity is particularly

troubling when compared against statements he made about the claim constructions he applied

for infringement. Dr. Cooper's Rebuttal Report states that he used the narrow interpretation of

"verified" to support his opinion that the Vitals website does *not* include third-party verified

information:

7

(Cooper Rebuttal Report at ¶¶24-25 (highlighting added) (Ex. B).)  The law requires Dr. Cooper to use the same claim constructions for infringement and invalidity[1], but Dr. Cooper cannot have done so because he states that information provided by ABMS to Health Grades meets the claim limitation for invalidity but the same information provided by ABMS to MDx does not meet the same claim limitation for infringement.  Without any explanation as to what claim constructions Dr. Cooper used for invalidity, it is impossible to determine whether Dr. Cooper applied the correct claim interpretations for invalidity, whether he applied the correct legal standards for invalidity, and it is impossible to resolve the conflicts in his opinions.

As such, Dr. Cooper's invalidity opinions do not meet the minimum threshold of reliability set forth in *Daubert* and is likely to confuse the jury.  Thus, Health Grades requests that this Court preclude Dr. Cooper from testifying about patent invalidity.

        2.     Dr. Cooper's Anticipation Opinion Does Not Analyze Each Prior Art Reference Separately, But Rather Offers Conclusory Testimony Regarding a Group of References

"A claim is anticipated only if each and every element appears, either expressly or inherently, in a ***single*** prior art reference."  *Verdegaal Bros. v. Union Oil Co. of Cal.,* 814 F.2d 628, 631 (Fed. Cir. 1987) (emphasis added).   In addition, an anticipatory prior art reference must "enable one of skill in the art to make and use the claimed invention."  *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001).  To support an opinion of invalidity based on anticipation, a technical expert must:

> identify each claim element, ***state the witnesses' interpretation of the claim element***, and explain in detail how each claim element is

---

[1]     *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses.").

8

> disclosed *in the prior art reference*. The testimony is insufficient if it is merely conclusory.

*Koito*, 381 F.3d at 1152 (emphasis added).  Failure to do so will result in exclusion of the expert's testimony.

In *Koito*, the Federal Circuit vacated the district court's decision denying plaintiff's motion for a new trial and/or JMOL after the jury returned a verdict finding the patent-in-suit invalid.  *Id.* at 1152.  There, the defendant's expert had lumped together four pieces of prior art and offered conclusory opinions about the collective group of prior art.  Specifically, regarding the group of four references, the expert stated:

> All these prior art patents provide for products and ways of making products with thick and thin sections. The gate locations are shown, and they all have inherently crossing flows in sections of the product, sometimes substantial sections of these products, such that they all would have a cross-laminated section as Turn Key is applying that term to the accused lenses.

*Id.* The Federal Circuit found that this testimony was conclusory and insufficient to prove anticipation as a matter of law.

Likewise in this case, Dr. Cooper lumps together many different things into a group he calls the "Early HG Reports and Services" and then gives conclusory opinions that the claim elements are anticipated by this group.  (Cooper Report at ¶33, p. 8 (Ex. A).)  For some of the claim elements, Dr. Cooper refers *only* to the group without citing any particular references:

- Request for Information Element:  "Montroy's deposition confirms that all the Early HG Reports and Services met this claim language element. Montroy deposition (p 309-310)." (Cooper Report at ¶41, p. 11 (Ex. A).);

- Providing Report over the Internet Element:  "Therefore, this claim element has also been anticipated fully by the prior art of the Early HG Reports and Services. See Montroy deposition page 320."  (Cooper Report at ¶46, p. 19 (Ex. A).)

For other claim elements, Dr. Cooper separately analyzes some, but not all, of the references. For the physician-verified information element, the Cooper Report specifically cites only three

9

references: 1) Physician Quality Reports (Dep. Ex. 10) (Ex. D hereto); the Drucker Reports (Dep. Exs. 13 & 50) (Exs. E & F hereto); and Physician Online Services (Dep. Ex. 26-28) (Exs. G-I hereto). (Cooper Report at pp. 12-13 (Ex. A).) Like the testimony excluded in *Koito*, Dr. Cooper's anticipation opinions are conclusory and do not provide the requisite level of detail as to how *each* alleged piece of prior art meets *each and every* claim element.

Moreover, Dr. Cooper did not cite and cannot cite a single piece of enabling prior art that discloses all the limitations of the asserted claims. Even if all of the various reports and services that Health Grades has offered since 2006 constituted a single piece of prior art,[2] none of them

---

[2] Such an argument is absurd. The single prior art reference to be considered for purposes of anticipation under §102 is a prior "invention" that existed at a particular point in time.

> "Because the hallmark of anticipation is prior invention, the prior art reference--in order to anticipate under 35 U.S.C. § 102--must not only disclose all elements of the claim **within the four corners of the document**, but must also disclose those elements 'arranged as in the claim.'"

*Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008). Dr. Cooper cites more than eleven different reports and services (*e.g.* inventions) that existed at different times as shown in following timeline. (9/17/12 Greenspun Report at ¶¶ 51, 63 (Ex. J hereto). Some of these reports and services were never even offered on Health Grades' website. (*Id.* at pp. 17-20.)



10

included comparison ratings *of physicians* as required by the claims.  The Cooper Report admits as much by relying on comparison ratings of hospitals (instead of people) and obviousness (instead of anticipation) for this claim element:

> ==Even if the element were not anticipated,== the idea of comparison ratings of health care providers was disclosed in these documents, and comparisons of line items in database reports have been used to rank retrieved records for decades, and so this use of comparison ratings for this purpose ==would have been extremely obvious to a Posita.==
>
> \*\*\*
>
> The Early HG Reports and Services also show ratings of health care provider hospitals that were intended to and do allow comparison of health care providers. ==It would be obvious== to a Posita that ratings of other physicians would be a natural addition to the report.
>
> See also Neal deposition pages 153-154.  Dodge deposition pages 200-201 also supports concluding that this claim element was known.  Dodge deposition pages 225-226 again confirms the claim element was known prior to the filing date.  Defendant's deposition Exhibit 8 is also relevant.  These items of evidence clearly demonstrate that the concept of having provider information and ratings available to prospective patients had been practiced in a way that the ratings could be compared.  ==Even if hospital ratings do not meet the claim language literally,== there are plain and clear teachings that any Posita would understand that ratings of health care providers could be shown side by side for comparison purposes, and these documents provide the motivation to do so.

(Cooper Report at p. 18 (highlighting added) (Ex. A).)

In sum, Dr. Cooper's opinions should be excluded because he presents no legally sufficient theory of anticipation under 35 U.S.C. §102.

        3.    <u>Dr. Cooper's Obviousness Opinion is Conclusory and Insufficient as a Matter of Law</u>

Invalidity under 35 U.S.C. §103, also called "obviousness," occurs "if the differences between the subject matter sought to be patented and the prior art are such that the subject as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. §103(a).  Unlike anticipation, multiple references may be combined to prove invalidity under §103.  However, each reference must qualify as "prior art" under §102, and the references together must still teach *each and every* limitation of the disputed claim.

11

Further, the prior art references must all be from an analogous art. *In re Clay*, 966 F.2d 656, 659 (Fed. Cir. 1992).  Even if each reference qualifies as prior art and is analogous, there must be some reason to combine the references. *KSR Intl. Co. v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007).  Notably, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *Id.* at 418.

The Cooper Report is devoid of any analysis of the above mentioned requirements for obviousness.  Indeed, Dr. Cooper does *not* even mention the statute governing obviousness, 35 U.S.C. §103.  The entire Cooper Report has only a few substantive paragraphs relating to obviousness and these paragraphs are woefully inadequate.  (Cooper Report at p. 18 (Ex. A).) For example, they do *not* identify which of the "Early HG Reports" Dr. Cooper would combine and do *not* give any reason for combining references.  Dr. Cooper asks the reader to take his word for it that it would be obvious to substitute physician comparison ratings (which are not disclosed in any of the references) for hospital ratings.

As such, Dr. Cooper's obviousness testimony is conclusory and insufficient as a matter of law.  *See, e.g., Whitserve, LLC v. Computer Packages, Inc.*, No. 2011-1206, 2011-1261, 2012 U.S. App. LEXIS 17510, *28-*29 (Fed. Cir. Aug. 7, 2012) (finding substantial evidence did not support jury verdict on obviousness because defendant's expert did not analyze necessary obviousness factors and presented only a "cursory statement that data conversion and encryption were "well known" at the time of patenting . . . ."); *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 813 (E.D. Va. 2011) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Ipse dixit* is defined  to mean: "he himself said it" or "she herself said it" or "something asserted but not proved" . . . .); *Degelman*, 2011 U.S. Dist. LEXIS 150190, at

12

\*15-\*16 (recommending exclusion of expert testimony regarding obviousness because: "Godici opines that these claims are invalid based on obviousness in a single paragraph, but does not analyze the scope and content of the prior art, the level of skill in the art, or the secondary considerations of non-obviousness."). As such, Health Grades respectfully requests that this Court preclude Dr. Cooper from testifying about obviousness.

    4.    <u>Dr. Cooper's Inequitable Conduct Opinion Should Be Excluded for the Same Reasons</u>

The Cooper Report includes an opinion on inequitable conduct that is based entirely on his opinions that the HG Early Report and Services anticipated and/or rendered obvious the asserted claims as described above. (Cooper Report at p. 36 (Ex. A).) This Court should preclude this opinion for the same reasons.

**B.**     <u>**Some of Dr. Cooper's Infringement Opinions are Irrelevant, Confusing, and Prejudicial Because He Used Claim Constructions that Were Rejected by this Court**</u>

Although Dr. Cooper's Rebuttal Report sufficiently discloses the claim interpretations he used to form his non-infringement opinions, some of the interpretations he used were rejected by this Court in the Markman Order. Specifically, Dr. Cooper's Rebuttal Report states that "verification" requires something more than providing information (from the physician or third party) to the online service. (Cooper Rebuttal Report at ¶¶13-14, 24 (Ex. B).) In his deposition, Dr. Cooper explained:

> Q. Okay. And then do you agree that in this case, the physician has at least confirmed the accuracy of her gender?
> . . . .
> THE WITNESS: No. I regard that word similar to "verify." "Confirm" means to establish ground truth, not to simply provide information.

(Cooper Dep. Rough Draft at p. 30 (Ex. C hereto).)

> THE WITNESS: I think within the meaning of the context of that patent which is -- deals with computer science, the word verify has a more formal meaning that relates to establishing the ground truth of a fact or a piece of data or a statement.

(*Id.* at p. 35.)

While this Court declined to interpret the term "verified," it rejected the narrow interpretation proposed by MDx and used by Dr. Cooper:

> The Court agrees with plaintiff that there is no need to construe the word verified and, to the extent it were to be construed, the plain and ordinary meaning would apply.[8]
>
>> [8]Although defendant is correct that "verify" can mean "to prove," "verify" may also mean, depending on its context, "confirm" or "substantiate." . . . . Here, the specification makes clear that the act of "verifying" requires only that the website receive confirmation of the information from some other source, in this instance the healthcare provider. **Indeed, the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider.**

(Markman Order at p. 15, 15 n.8  (Dkt. 138) (emphasis added) (citations omitted).)

> Defendant seeks the following construction for this phrase: "**proved to be true** by an independent third-party source." . . . .  [T]he dispute turns on whether the verification must equate to proof. For the reasons discussed above, t**he Court finds no basis to limit the meaning of "verified" in that manner. The patent does not require that the third-party information be "proven"** but rather only describes an attempt to substantiate that will provide a patient with "some assurance that the qualifications of the doctor have been checked by someone." The claims in no way foreclose an embodiment where such "proof," however defined, would be required.

(*Id.* at p. 17 (emphasis added) (citations omitted).)

In his deposition, Dr. Cooper admitted that he used an interpretation that has been rejected by this Court:

> THE WITNESS: I disagree with the Markman construction of verified or lack of construction.

(Cooper Dep. Rough Draft at p. 30 (Ex. C).)

14

> Q. I'm sorry. What did you -- what did you just reference when you said "another party" just to be clear on the record? The Markman order? I thought I just read disagreed with the Markman order with is –
>
> A. I disagree with the word "verify" as interpreted without the context of the computer science use of that term.

(*Id.* at p. 30.)

> Q. Given your disagreement with the Court, Markman order with respect to verified, you did not use the Court's interpretation of verified in your opinion is that correct?
>
> A. I think the Court's interpretation of that particular -- or lack of interpretation of that word actually it wasn't construed in the Markman order as I recall, the lay term lay meaning of the term instead was substituted. And I am saying that within the field of computer science where the accuracy and truth of the data has a special meaning, that the word verify or its equivalent synonym such as "confirm" mean that there is some other party besides the provider of the information that verifies that.
>
> Q. So did you use the Court's interpretation of verified in your opinion or opinions?
>
> THE WITNESS: I would say I have already answered that.
>
> BY MR. VAZQUEZ: Q. I'm sorry sir you can you just answer it again? I don't believe that you did -- I – my question is: We have already established that you disagree with the Court's interpretation with respect to verify; correct?
>
> THE WITNESS: Yeah. I -- I don't think I said it that way. II said the Court chose not to could not straw [sic] in the Markman order the word verify and I believe that the Court should have construed that. I think within the meaning of the context of that patent which is -- deals with computer science, the word verify has a more formal meaning that relates to establishing the ground truth of a fact or a piece of data or a statement.
>
> BY MR. VAZQUEZ: Q. But Dr. Cooper, the Court said that the doctor providing information is good enough, did it not?
>
> THE WITNESS: In your scenario, the doctor provided information.
>
> BY MR. VAZQUEZ: Q. And the court said that was good enough did it not?
>
> THE WITNESS: I believe that the Court said that. But I wouldn't agree with that, no.

15

> BY MR. VAZQUEZ: Q. So you disagree with the Court in that instance?
>
> A. I disagree with that particular lack of construal of that word.
>
> Q. So, Dr. Cooper, do you intend to give testimony that conflicts with the Court's Markman order?
> . . . .
>
> THE WITNESS: In the case of the word verify, I intend to explain to the Court that the word has a deeper meaning in computer science than it does inially terms in the vernacular.
>
> BY MR. VAZQUEZ: Q. So you do intend to give testimony that conflicts with the Court's Markman order correct?
>
> A. The same response.

(*Id.* at pp. 33-36 (objections omitted).)

Similarly, Dr. Cooper used an interpretation of the phrase "hyperlink to an affiliated hospital" (from claim 4) that has been rejected by this Court. Dr. Cooper interpreted this term to require a link to an external hospital website. (Cooper Rebuttal Report at ¶ 59 (Ex. B) ("The requirement that there be a link to the actual hospital web site would be vitiated by this alleged equivalent . . . ."). This Court has rejected this construction. (Markman Order at 21 (Dkt. 138).)

Claim interpretation of a matter of law to be decided by the Court. This Court interpreted the claims and the law requires Dr. Cooper to use these interpretations. *See, e.g., Liquid Dynamics Corp. v. Vaughn Co.*, 449 F.3d 1209, 1224 (Fed. Cir. 2006) (affirming the exclusion of expert testimony as irrelevant, prejudicial, and confusing because it was based on an impermissible claim construction); *NTP, Inc. v. Research In Motion, Ltd.,* No. 3:01CV767, 2003 U.S. Dist. LEXIS 14338, *23 (E.D. Va. 2003) ("Once the claims are construed, it would be folly to allow an expert witness to testify as to opinions at odds with the court's construction."). Dr. Cooper did not do so (at least with respect to his infringement opinions described above).

Therefore, his opinions as to non-infringement of these claim elements are irrelevant at best and prejudicial and confusing at worst and should be excluded from trial.

### C. Dr. Cooper's "Acceptable Substitutes" Opinion is Irrelevant

Health Grades is seeking lost profits damages in this case. The Cooper Report contains a section identifying a number of websites that he says are "acceptable substitutes." Dr. Cooper likely included this opinion section in an attempt to provide information relating one of the factors used to determine whether lost profit damages are appropriate "absence of acceptable ***non-infringing*** substitutes." *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1545 (Fed. Cir. 1995) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works., Inc.*, 575 F.3d 1152, 1156 (6th Cir. 1978)) (emphasis added). However, Dr. Cooper omitted the very analysis that makes this factor relevant: the substitutes must be non-infringing. Instead of identifying non-infringing substitutes, Dr. Cooper has merely provided a list of Health Grades' competitors. (Cooper Report at 37 (Ex. A).) As such, Dr. Cooper's opinions in this section are irrelevant and should be excluded.

## IV. CONCLUSION

For the foregoing reasons, Health Grades respectfully requests that this Court preclude Dr. Cooper from testifying in support of the opinions identified above.

Respectfully submitted this 17th day of October, 2012.

          ROTHGERBER JOHNSON & LYONS LLP

          *s/ Jesús M. Vázquez*
          Kris J. Kostolansky, Esq.
          Greg B. Kanan, Esq.
          Jesús M. Vázquez, Jr., Esq.
          1200 17th Street, Suite 3000
          Denver, Colorado  80202
          Tel:  (303) 623-9000
          Fax:  (303) 623-9222
          Email:  kkosto@rothgerber.com
             jvazquez@rothgerber.com
             gkanan@rothgerber.com

          *Attorneys for Health Grades/Counterclaim*
          *Defendant Health Grades, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S MOTION TO PARTIALLY EXCLUDE EXPERT TESTIMONY OF DR. RICHARD G. COOPER PURSUANT TO FED. R. EVID. 403 AND 702, AND** *DAUBERT V. MERRIL DOW PHARMS., INC.***, 509 U.S. 579 (1993)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
David Chunyi Lee
Scott B. Murray
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
Email:  sstimpson@sillscummis.com
Email:  mrosenberg@sillscummis.com
Email:  dlee@sillscummis.com
Email:  smurray@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO  80202-5647
Email:  ridley@wtotrial.com

*s/ Jesús M. Vazquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email:  gkanan@rothgerber.com
            kkostolansky@rothgerber.com
            jvazquez@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*