cooper rough transcript.txt


D I S C L A I M E R

THIS TRANSCRIPT IS A ROUGH DRAFT TRANSCRIPT.  IT IS
SUBJECT TO THE PROVISIONS OF CCP SECTION 2025
(R)(2)  IT HAS BEEN TRANSLATED FROM STENO INTO
ENGLISH BY COMPUTER.  THIS TRANSCRIPT HAS NEITHER
BEEN EDITED NOR PROOFREAD BY THE Court REPORTER.

THIS UNEDITED DRAFT MAY CONTAIN UNTRANSLATED
STENOGRAPHIC SYMBOLS, AN OCCASIONAL REPORTER'S
NOTE, A MISSPELLED PROPER NAME, OR OTHER
NONSENSICAL WORD COMBINATIONS.


        THE VIDEOGRAPHER:  Here begins volume
number I Videotape No. 1 of the deposition of
Richard Cooper in the matter of Health Grades
versus MDX Medical in the U.S. District Court
district of Colorado case number is
11-cv-00520-PAB-BNB.  Today's date is October 9th,
2012, the time on the video monitor is 10:00 am.
Video operator's name is Kenneth McNeal, contracted
by Merrill Legal Solutions at 20705 Ventura
Boulevard, Suite 205, in Woodland Hills,
California.  This deposition is taking place at the


Hampton Inn at 3700 West Florida Avenue in Hemet,
California.  And was noticed by Jesus VAZQUEZ of

cooper rough transcript.txt

Rothgerber Johnson.  Counsel, please identify
yourselves and state whom you represent.

MR. VAZQUEZ:  Jesus VAZQUEZ, from
Rothgerber Johnson & Lyons, representing the
plaintiff Health Grades.

To my left is Kirsten Stoll-DeBell with the
firm Merchant & Gould, also representing the
Plaintiff Health Grades.

MR. STIMPSON:  Scott Stimson, Sills Cummis
& Gross representing the witness and MDX.

THE WITNESS:  Richard Cooper.  I am the
witness.

MR. STIMPSON:  We got that.

THE VIDEOGRAPHER:  The court reporter is
today is Karen Pearson-Bell of Merrill.

Would the court reporter please swear in
the witness.

EXAMINATION

BY MR. VAZQUEZ:

Q.   Good morning, Dr. Cooper.  As you know, my
name is Jesus VAZQUEZ.  And I am taking your
deposition today.

♀

I would like to mark the first exhibit,
please, Cooper 1.

(Deposition Exhibit 1 was marked for
identification by the Reporter and is annexed
hereto.)

(Discussion off the record.)

BY MR. VAZQUEZ:

Page 2

cooper rough transcript.txt

Q.   Well, it would have to come from the doctor, though, wouldn't it?

A.   No.  I think there is cases that it came from the physician assistant or the he one of the doctor's staff, or it might have come from the hospital itself.  Who knows.  It's not -- it's not been determined.

Q.   Well, you mean the hospital where the physician works?

A.   Possibly that.  Possibly the physician's wife did it at home overnight.  I mean there is no -- there is no clarification as too who is restricted to access and who is not.  Could have been from anywhere.

Q.   So the possibilities that you just reference were -- could be from the doctor, could be from the doctor's assistant or the doctor's wife or a hospital where the doctor works or -- did I miss any --

A.   It's unknown -- no, I think that covers pretty much the gamut of what I said.

Q.   Okay.  Dr. Cooper, does the MDX server

sends the physician's computer a web form that displays what information MDX has collected regarding that physician?

A.   Again I haven't seen the source code so I wouldn't know whether it's a form or some other implementation, Java.  It's entirely up to the implement terse and that hasn't been established in the case.

Page 20

cooper rough transcript.txt

Q.    Well, in an effort to try to simplify the
questions, Dr. Cooper, do you agree that
information is passed from a doctor or his or her
agent to the MDX server in order to edit the
information on the fields with we with discussing?

MR. STIMPSON:  Objection to the form of the
question.

THE WITNESS:  By "agent" do you include the
doctor's wife or husband and the hospital and --
BY MR. VAZQUEZ:

Q.    Yes.

A.    -- a third party and -- That's a
reasonable supposition but I don't think that's
been demonstrated.

Q.    Okay.  I think I asked?  But I am going to
ask it in a ditch norm.  Do you know Dr. Cooper
whether the MDX server use as computer web form?

That contains information the physician --

A.    No, I don't.

Q.    You don't know?

A.    No.

Q.    Okay.  Dr. Cooper, assume that a physician
decides to change her gender from male to female?

A.    That is assumption you are making?

Q.    Yes, sir that's what I said.  Can you
assume that for me?

A.    If I want me to, sure.

Q.    Okay.  All right.  What would be the
message that is would be sent back to the server

cooper rough transcript.txt

for the gender field?

     A.   That could be any of the things that I

have mentioned in previous responses.  It could be

a form, it could be Java Script, it could be

TCP/IP, there is no -- there is no knowledge at

this point.  There has been no demonstration of

precisely how those things are done or --

     Q.   I am asking you to assume that a physician

simply wants to change their gender?

     A.   Yes.

     Q.   She Wants to change her gender from female

to male.

     A.   Okay.

     Q.   So take would be the information that the

physician would exchange with the MDX server?

     A.   I don't know.

     Q.   How would the server know to change only

the gender and no other field?

     A.   I don't know.

     Q.   Okay.  Do you agree that in this case, the

physician has verified her gender?

     A.   In --

          MR. STIMPSON:  Objection to the form of the

question.

BY MR. VAZQUEZ:

     Q.   In the assumption physician wants to

change her gender from female to male.

     A.   Sorry saying it's the physician who makes

the change somehow that change gets made, and the

gender is changed.  And I think your question had

Page 22

cooper rough transcript.txt

to do with whether that was verified.

Q.   Yes, sir.

A.   It would only be verified by the physician
not by a third party.  In the supposition that you
are making.  But whether that's in actual fact or
not is completely unknown to me and hasn't been
demonstrated.

Q.   Okay so my question is I think just to be

sure we are on the same page I think you answered
it but please indulge me?

A.   Yes.

Q.   In this case the physician has verified
her gender.

MR. STIMPSON:  Objection.  I got to have
that question back.

MR. VAZQUEZ:  Can you please.

THE WITNESS:

MR. STIMPSON:  I'm not sure what the
hypothetical is.

THE WITNESS:  I am lack of foundation
always also.

BY MR. VAZQUEZ:

Q.   Will you?  Let's start from the beginning
we have a female physician, she wants to change her
gender to male.  Are you guys with me?

MR. STIMPSON:  A female wants to change --
say she is a man and not a woman?

BY MR. VAZQUEZ:

Q.   Right she is going to change her gender.

Page 23

```
                    cooper rough transcript.txt
                MR. STIMPSON:  Okay.

                THE WITNESS:  But it hasn't been verified?
    BY MR. VAZQUEZ:
        Q.   You said were you a little lost.  I am


    trying to just set it up.
                MR. STIMPSON:  Why would a female want
    to --
                MR. VAZQUEZ:  That doesn't matter,
    Mr. Stimpson.
                MR. STIMPSON:  I'm just asking.
                MR. VAZQUEZ:  Let me just try and simplify
    it.
    BY MR. VAZQUEZ:
        Q.   Wave female.  She is a female.  She is --
    she notes that her gender as ask shown as a male?
        A.   Okay.
        Q.   She wants to change it to female?
        A.   Okay.
        Q.   She wants to correct the gender to
    appropriately show it, as she is a female and not a
    male?
        A.   Okay.
        Q.   That's the assumption.
        A.   Okay.
        Q.   She communicates the information in this
    case, in that case I just referenced.  And has a
    physician verified her gender?
        A.   This is a supposition we are making not --
    okay.

                         Page 24
```

cooper rough transcript.txt

Q.   Yeah?

A.   I wouldn't use the word "verified" on that no.

Q.   Okay.  I am not asking --

MR. STIMPSON:  Let him answer, please, Mr. Vazquez.  He's not done.

MR. VAZQUEZ:  Well, don't coach him, Mr. Stimpson.

MR. STIMPSON:  I'm not coaching him.  I'm just saying don't cut him off just because you hear something you don't like.

MR. VAZQUEZ:  Go ahead.

MR. STIMPSON:  So let's hear hear the answer back.  I want to know where he was.

THE WITNESS:  Well, I don't think --

MR. STIMPSON:  Hold on a second.

THE WITNESS:  Oh.

MR. STIMPSON:  I want to know where you stopped.

(The preceding answer was read.)

MR. STIMPSON:  Are you finished your answer?

THE WITNESS:  I think that's pretty close. I wouldn't use the word "verified," correct.

MR. STIMPSON:  Okay.

BY MR. VAZQUEZ:

Q.   Why not?

A.   Because verified implies finding the

Page 25

cooper rough transcript.txt

ground truth of the statement and that could have

been put in by anybody.  Now if you are really

assuming it is a -- the May -- is it a male

changing to female?  Because we have changed the

story a couple times I am not really sure -- could

you start with a new question please?

Q.   Let's start again?

A.   Okay.

Q.   This is the same question.  I don't think

it's really that comply indicated?

A.   Okay.

Q.   We have a female?

A.   Yes.

Q.   She wants to change the gender field on

the Vitals database?

A.   Yes.

Q.   To note that it is -- a she is a female

because it says male?

A.   Okay.

Q.   She communicates that change to that

field.

A.   Yes.

Q.   In this -- in that case, has she verified

her gender?

MR. STIMPSON:  Objection this question hats

been asked and answered now.

THE WITNESS:  I wouldn't use the word

verified.  I don't think that's a proper use of the

term.  She had edited.  But "verified" implies that

there is an observer not participating in the

cooper rough transcript.txt

process who gives true or false to a particular answer.  So I don't think the person providing the information can also be called the person who verified the information.  That's a matter of the English word verified and what it means.  She edited it I will agree.  But she didn't verify in the sense I would use that word.

BY MR. VAZQUEZ:

Q.    What else would she need to do to verify the information then?

A.    She wouldn't be able to verify it.  It would take a third party another let's say a record from a medical school, something other than the physician to do -- to use the word "verify."  She did, according to your supposition, edit but she did not, according to my understanding of the word verify, verify.

Q.    So your testimony, then, Dr. Cooper, is that a male physician cannot verify his own gender? Is that correct?

A.    I would say it's broader than that.  A physician cannot verify his own information.

Q.    I am talking about gender.

A.    Whether it's gender or licensure or any of those things.  He can edit them yes but he didn't verify them.  By nature of the word verify.

Q.    So it is your testimony that a male physician cannot verify his own gender?

A.    Correct.

cooper rough transcript.txt

Q.   Okay.  Do you agree that in this case, the physician has at least confirmed the accuracy of her gender?

MR. STIMPSON:  Objection to the form.

THE WITNESS:  I think it's the same question in a sense.  The physician can change anything that's -- that's -- the site allows the physician to change.  But that does not imply verification.

BY MR. VAZQUEZ:

Q.   Okay.  Could you take a look at Exhibit 3 which is the Markman order?

A.   Exhibit 3.  Okay.

Q.   And Page 15 of the Markman order please.

A.   Okay.

Q.   Do you see -- well if you turn -- did I say Page 14, sir?

A.   You said 15.  I'm sorry.

Q.   I'm sorry.  Good if you could go to Page 14, it's right at the bottom of 14, the sentence that begins sentence:  "The Court agrees"?

THE WITNESS:  "The Court agrees with plaintiff that there is no need to construe the word verified and to the extent it were to be construed the plane and ordinary meaning could apply.  (When the claim language involves little more than the application of the widely accepted meaning of commonly understood words, construction is relatively straightforward and the ordinary meaning may be readily apparent even to lay judges.
Page 28

cooper rough transcript.txt

BY MR. VAZQUEZ:

   Q.   Okay.  And then there was a footnote
there, Footnote No. 8.

   A.   Yes.

   Q.   And could you -- Do you see the footnote
at the bottom sir?

   A.   I do yes.

   Q.   And do you see about halfway through it

there is a parenthetical that ends with "Phillips."
And then there is a sentence that begins with the
word:  "Here"?

   A.   Yes.

   Q.   Would you please that into the record?

   A.   The sentence starting with "Here"?

   Q.   Yes, sir.

   A.   "Here the specification makes claim clear
that the act of verifying, and that's in quotes,
requires only that the Web site receive
confirmation of the information from some other
source in this instance the healthcare provider.

   Q.   And can you keep going please?

   A.   Continue?  Indeed, the confirmation
described appears to not extend beyond receipt of
such information from the first healthcare
provider.  Shall I continue?

   Q.   No, sir.  So having now seen what the
Markman order states with respect to verifying --

   A.   Yes.

   Q.   -- verified, once the physician sends the

cooper rough transcript.txt
information could not first paging or saying that

she is in fact a female, and would like that

information changed or corrected --

    A.   Yes.

♀


    Q.   -- is that verified?

       MR. STIMPSON:  Objection to the form.

Asked and answered.

       THE WITNESS:  I disagree with the Markman

construction of verified or lack of construction.

Because it has very specific meaning in computer

science.  It's not just to edit, it's to confirm.

To relate to ground truth rather than to

assertions.

BY MR. VAZQUEZ:

    Q.   Okay.  And then do you agree that in this

case, the physician has at least confirmed the

accuracy of her gender?

       MR. STIMPSON:  Objection.  Form --

       THE WITNESS:  No.  I regard that word

similar to "verify."  "Confirm" means to establish

ground truth, not to simply provide information.

BY MR. VAZQUEZ:

    Q.   Do you agree that in this case, the

physician has confirmed the accuracy of the fields

that she did not change?

       MR. STIMPSON:  Objection to form.

       THE WITNESS:  Same responses as previous

time.

♀

cooper rough transcript.txt

BY MR. VAZQUEZ:

    Q.   And so why not?  It is a different
question.

    A.   It's a different question, but you are
still using the word confirm.  And I don't believe
the word confirm is appropriate.  I think for the
same reason that verify is not appropriate.  The
physician can edit the information according to
your supposition, but I don't see that as providing
ground truth.  That would come from as it said
above another party.

    Q.   I'm sorry.  What did you -- what did you
just reference when you said "another party" just
to be clear on the record?  The Markman order?  I
thought I just read disagreed with the Markman
order with is --

    A.   I disagree with the word "verify" as
interpreted without the context of the computer
science use of that term.

    Q.   Okay.

    A.   "Confirm" is equivalent to that.

    Q.   Okay.  Do you agree that in this instance
that we are discussing, the physician wanting to
edit her gender, that the Vitals Web site would
have received gender information from the

physician?

    A.   In the supposition that you are making
that the supposition sends that information?  Then
I would assume in that supposition that the server

Page 31

cooper rough transcript.txt
receives that information in some form.

Q.   What would happen if the physician does
not change anything?  Would the message -- would
any messages being sent back to her?

A.   To her.

MR. STIMPSON:  To her?

BY MR. VAZQUEZ:

Q.   Yes.  Here we are talking about a female
physician who wants to change -- make sure that her
gender is noted as female.

A.   Okay.

Q.   So if the physician does not change
anything, would there be any messages that are sent
back to the server?

A.   Again that's a matter of the
implementation of my -- it's purely a guess I would
guess there is no information sent back to the
server if there is no change.  But, you know, the
question is very, very unformed, I think is the
right description.

Q.   Okay.  Does the system record that the

physician has registered with Vitals the Vitals Web
site?

A.   I don't know.  I haven't looked at the
source code of the Vitals Web site.

Q.   Do you know if the Vitals Web site system
records whether the physician has changed or not
changed certain fields?

A.   I don't know.  I haven't looked at the
software or the database or even the HTML

Page 32

cooper rough transcript.txt

presentation.

Q.   I am going to list some fields, Dr. Cooper, and I would you it tell me whether the Vitals Web site has actually ever received an edit or edits to that field of the MDX physician database.

A.   Okay.

Q.   Specialty information?

A.   I don't know.

Q.   Gender?

A.   I don't know.

Q.   Awards and honors?

A.   I don't know.

Q.   Professional appointments?

A.   Again I don't know.

Q.   Professional membership?

A.   I don't know.

Q.   And languages?

A.   I don't have personal knowledge of that either.

Q.   So when you say I don't know, that means maybe the Web site has received it, maybe it hasn't you don't know?

A.   I simply don't know.

Q.   Okay?

A.   That's all the answer that I can realistically provide.

Q.   Given your disagreement with the Court, Markman order with respect to verified, you did not

cooper rough transcript.txt
use the Court's interpretation of verified in your
opinion is that correct?

A.   I think the Court's interpretation of that
particular -- or lack of interpretation of that
word actually it wasn't construed in the Markman
order as I recall, the lay term lay meaning of the
term instead was substituted.  And I am saying that
within the field of computer science where the
accuracy and truth of the data has a special
meaning, that the word verify or its equivalent
synonym such as "confirm" mean that there is some
other party besides the provider of the information

♀

that verifies that.

Q.   So did you use the Court's interpretation
of verified in your opinion or opinions?

MR. STIMPSON:  Objection that's been asked
and answered just now.

THE WITNESS:  I would say I have already
answered that.

BY MR. VAZQUEZ:

Q.   I'm sorry sir you can you just answer it
again?  I don't believe that you did -- I -- my
question is:  We have already established that you
disagree with the Court's interpretation with
respect to verify; correct?

MR. STIMPSON:  Objection that misstates his
testimony.

THE WITNESS:  Yeah.  I -- I don't think I
said it that way.  II said the Court chose not to
could not straw in the Markman order the word
Page 34

cooper rough transcript.txt

verify and I believe that the Court should have

construed that.  I think within the meaning of the

context of that patent which is -- deals with

computer science, the word verify has a more formal

meaning that relates to establishing the ground

truth of a fact or a piece of data or a statement.


BY MR. VAZQUEZ:

    Q.    But Dr. Cooper, the Court said that the

doctor providing information is good enough, did it

not?

            MR. STIMPSON:  Objection.  Form.

            THE WITNESS:  In your scenario, the doctor

provided information.

BY MR. VAZQUEZ:

    Q.    And the court said that was good enough

did it not?

            MR. STIMPSON:  Objection to the form.

            THE WITNESS:  I believe that the Court said

that.  But I wouldn't agree with that, no.

BY MR. VAZQUEZ:

    Q.    So you disagree with te the Court in that

instance?

    A.    I disagree with that particular lack of

construal of that word.

    Q.    So, Dr. Cooper, do you intend to give

testimony that conflicts with the Court's Markman

order?

            MR. STIMPSON:  What?  Excuse me can I have

that back?

Page 35

cooper rough transcript.txt
(The pending question was read.)

THE WITNESS:  In the case of the word

verify, I intend to explain to the Court that the
word has a deeper meaning in computer science than
it does inially terms in the vernacular.

BY MR. VAZQUEZ:

    Q.  So you do intend to give testimony that
conflicts with the Court's Markman order correct?

    A.  The same response.

        MR. STIMPSON:  Objection to form.

BY MR. VAZQUEZ:

    Q.  Dr. Cooper who knows a person's gender
other than the person himself or herself?

    A.  I couldn't imagine anyone who would know
it better than the person themselves, yes.

    Q.  Thanks.  Dr. Cooper, I believe that in
your report, you give two reasons why you believe
that Vitals does not literally infringe the
healthcare provider verified information
limitation.  Correct?

    A.  Where in my report do I say that?

    Q.  I believe Paragraph 13 and Paragraph 15.

    A.  Paragraph 13 deals with my background.

    Q.  Are you looking at your rebuttal report?

    A.  I am looking at the original report.

    Q.  I'm sorry.  I should have been clear.

    A.  You are thinking of the rebuttal report?


    Q.  Yes, sir.

Page 36

cooper rough transcript.txt

A.   And which?

Q.   Paragraph 13 and 15?

A.   Which exhibit that was?  That was No. 1, I think?

Q.   Number 1, I believe.

A.   Okay.  Could you ask the question again, please?

Q.   In your report, you give two reasons why you believe that Vitals does not literally infringe the healthcare provider verified information limitation.  Correct?

A.   Well, I said there is no evidence that Vitals.com healthcare providers verify in any of the above three sentences the database entries describing the first healthcare provider.

Q.   Well, my question is whether -- you give two reasons, and then we will discuss the reasons. Are there two reasons you give why you believe that Vitals does not literally infringe the healthcare provider verified information limitation?

A.   That depends.  I'm not sure how you are counting two.  In Paragraph 13 I agreed with what I wrote then.  I haven't changed my opinion.  Since then.  Which is that I agree that Dr. Greenspun.

In fact who said that the meaning of verify it is to prove, confirm, or substantiate an assertion, there is evidence that Vitals.com healthcare providers verify in any of those sense the database entries described in the healthcare provider.

Page 37

cooper rough transcript.txt

Q.   Okay.  That was a long answer.  Did you mention somewhere in there that you have changed your opinions?

A.   No, I mentioned that I have not.

Q.   You have not.  Okay?

A.   Have not changed my opinions.

Q.   Thank you.  Paragraph 13 you first argue that the information provided by the physicians to Vitals or to Vitals Web site does not meet the definition of the term verified.  Right?

A.   That's correct.

Q.   And then in Paragraph 15 your second argument is that whether Vitals is capable of receiving verified information from a physician is not relevant to infringement.  Is that right?

A.   Paragraph 15 just a moment.  Okay I'm sorry would you repeat the question?

Q.   Sure.  Your second argument is that whether the Vitals Web site is capable of receiving verified information from a physician is not

relevant to infringement.  Is that right?

A.   That's correct.  Capability is not actuality.

Q.   Okay.  And with respect to the first argument at Paragraph 13, if the Court stands by its interpretation of "verified" referenced in footnote 8 of the Markman order that argument would go away correct?

MR. STIMPSON:  Objection to the form of the question it misstates the Court's order.

Page 38

cooper rough transcript.txt

BY MR. VAZQUEZ:

    Q.  You may answer.

    A.  Could you say again please?

    Q.  Yes.  If the Court -- with respect to your argument in Paragraph 13 --

    A.  Okay.

    Q.  -- that the information -- that the information provided by the physicians to the Vitals Web site does not meet the definition of the term verified -- we discussed that remember?

    A.  That's correct.

    Q.  -- with respect to that, if the Court stands by its interpretation of the word verified as discussed in footnote 8 of the Markman order, wouldn't that argument go away?

    MR. STIMPSON:  Objection.  It misstates the Court's order.

    MR. VAZQUEZ:  No, it doesn't but you may answer.

    MR. STIMPSON:  Yes, it does. "Interpretation."

    THE WITNESS:  Yeah, I guess I don't understand the question.  If the Court stands by, I think the purpose of the hearing is to help the Court decide based on the actual practice in the field.  And the Court necessarily needs to get that kind of feedback.

BY MR. VAZQUEZ:

    Q.  What hearing are you just referring to in

Page 39

cooper rough transcript.txt

your answer?

A.   The Markman hearing.

Q.   Okay.  The Markman hearing already occurred correct?

A.   Yes.

Q.   And we have a Markman order now right?

A.   Yes.

Q.   And in footnote 8 of the Markman order of Page 15?

A.   Which exhibit?

Q.   3.

A.   3.

Q.   The Page 15 of Exhibit 3 --

A.   Just a moment please.  Okay.  Page --

Q.   15 --

A.   Okay, 15 Exhibit 8 -- or Footnote 8.

Q.   Do you recall you read into the record the sentence beginning with the word "here"?

A.   Yes, I do.

Q.   And do you see the which it says indeed, the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider."  Do you see that?

A.   Yes, I do.

Q.   And I believe you disagree with that.

A.   No, I do believe that the confirmation appears not to extend beyond receipt of information from the first healthcare provider.  I don't consider that verification.

Q.   Okay.  The Court appears to consider that

Page 40

cooper rough transcript.txt

verification.  Do you agree with that?

      MR. STIMPSON:  Objection to the for mitt

stays the Court's order.

      THE WITNESS:  I believe that is documented

in the Markman order I am hoping that the Court

will reconsider.

BY MR. VAZQUEZ:

    Q.    Okay.  Since you are hoping that the Court

will reconsider you don't agree with what the Court

has stated with respect to verifying; right?

    A.    I think that's been established, yes.

    Q.    Okay.  If the Court sticks to its

interpretation of verifying --

    A.    Yes.

    Q.    -- or put another way, declines your

request that it reconsider, wouldn't your argument

that the information provided by the physicians

does not meet the definition of the term verified

then go away?

      MR. STIMPSON:  Objection to form misstates

the Court's order.

      THE WITNESS:  The Court did not construe

the term "verified" but instead left it to be the

lay interpretation.  So in that sense, since the

Court didn't construe it there is, I think, room to

debate whether "verify" or "confirm" has the

meaning that you are associating with it or the

meaning that I am associating with it.

BY MR. VAZQUEZ:

cooper rough transcript.txt

Q.    If you were to state the -- what it is
that would you like to the Court to reconsider, how

would you state that?

A.    That verification within the context of
the computer science field means that verification
confirmation, validation, all have to do with
establishing a fact from -- establish -- asserted
by one party an assertion, by another source.

Q.    And how is that different from what the
Court has stated in its Markman order?

A.    The Court didn't state in its Markman
order a construal of the word verify.

MR. STIMPSON:  When you get to a good place
Jesus you need to take a break.

THE WITNESS:  I could use a break also.

MR. VAZQUEZ:  Well, I -- just let me do one
more question.

MR. STIMPSON:  That's fine.

BY MR. VAZQUEZ:

Q.    So you had would ask the Court to
reconsider as you stated and what you are asking
the Court to reconsider is for it to adopt your
interpretation of verified as you have state in
your response?

A.    Well, the Court did not could not view
verified.

Q.    Yes.

A.    So I don't think the Court has established
Page 42

cooper rough transcript.txt

a specific meaning that's referred to the lay
interpretation.  I believe that the Court should
instead add to the Markman order or at least
interpret in its lay interpretation of verification
within the context of computer science which
involves an independent verification, not a -- not
just the source of date.

    Q.   So in your view Dr. Cooper, if a physician
who is male wants to edit their gender field and
sends that information to the MDX server, that
information is not verified?

    A.   Correct.

    Q.   Okay.

        MR. STIMPSON:  Okay.  Break now?

        MR. VAZQUEZ:  One more one more.

        MR. STIMPSON:  Better be brief.

BY MR. VAZQUEZ:

    Q.   But the Court has rejected your
interpretation; correct?

    A.   I don't believe it -- no I don't believe
that's true.  I believe the Court has not construed
the meaning of verified.

    Q.   All right we will pick it up when you get
back?

♀

        THE VIDEOGRAPHER:  The time now is 11:07 we
are off the record.

        (Recess taken.)

        THE VIDEOGRAPHER:  Right now it's 11:33.
We are back on the record.