**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S MOTION TO PRECLUDE ANY TESTIMONY FROM
HEALTH GRADES, INC.'S EXPERT DR. GREENSPUN**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, respectfully submits this Motion To Preclude Any Testimony From Health Grades, Inc.'s ("Heath Grades") Expert Dr. Greenspun ("Motion").

Pursuant to D.C.COLO.LCivR 7.1, counsel for MDx conferred with Health Grades' counsel, who indicated that Health Grades opposes this Motion on the merits and as being untimely.[1]

## I. INTRODUCTION

MDx respectfully requests that Health Grades' proposed expert, Dr. Greenspun, be precluded from providing any testimony in this case. His expert reports are directed to issues

---

[1] The parties dispute the deadline to file the present Motion. However, while the Court's resolution of MDx Medical Inc.'s Motion to Amend Scheduling Order to Specify Due Date for Motions to Exclude Expert Testimony, or in the Alternative, for an Extension of Time to File Motions to Exclude Expert Testimony [Doc. # 344] is pending, MDx believes this motion is timely.

relating to United States Patent No. 7,752,060 (the "'060 patent"; attached hereto as Exhibit A), and they relate primarily to infringement and validity of the '060 patent. Because Dr. Greenspun is not an expert in the relevant art, or a person of even ordinary skill in the art, his testimony should be precluded entirely, including, without limitation, testimony from his initial expert report, rebuttal expert report, deposition, and otherwise.[2]

## II.  THE PERTINENT LAW

Federal Rule of Evidence ("Fed. R. Evid.") 702 permits expert testimony if such testimony will be helpful to the trier of fact. An expert may be qualified by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court indicated that a trial court must act as a gatekeeper by making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. For an expert's testimony to be admissible, the expert must be qualified, the expertise asserted must be relevant to the facts of the case (helpful to the trier of fact), and the expert's testimony must be reliable (based on valid methodology). *Id.* at 588-93; Fed. R. Evid. 702.

Infringement of a patent is analyzed from the perspective of one or ordinary skill in the art. *See Centricut, LLC v. Esab Group, Inc.,* 390 F.3d 1361, 1369-1370 (Fed. Cir. 2004); and *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1361 (Fed. Cir. 2008). The validity of a patent is also determined through the lens of a person having ordinary skill in the art.

---

[2] It is not disputed that Dr. Greenspun intends to testify to the alleged infringement and validity of the '060 patent.

*Sundance, Inc,* 550 F.3d at 1361 ("These issues [infringement and validity] are analyzed in great part from the perspective of a person of ordinary skill in the art, … .").

To qualify as an expert in a patent case, the proffered expert must have at least the knowledge of a person of ordinary skill in the relevant art. *See Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360-61 (Fed. Cir. 2006). An alleged expert that does not have at least the ordinary skill in the art can provide no relevant testimony directed to either infringement or validity and should therefore be excluded from providing such testimony. *Sundance*, 550 F.3d at 1361 (*citing* Fed. R. Evid. 702). The Federal Circuit has made it clear that "it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." *Id.* at 1363.

### III. THE PATENT-IN-SUIT IS DIRECTED HEAVILY TO HEALTHCARE ISSUES

The '060 patent is directed to computer systems that receive requests for information regarding healthcare providers, and then access and compile specific data elements from specific sources in order to generate a report on the healthcare provider. Specifically, all claims of the '060 patent have express and unequivocal elements directed to (a) what specific data elements on healthcare providers should be collected; (b) where each of those elements should be obtained; (c) whether and how to verify the accuracy of these data elements; and (d) what to include in reports on the healthcare provider at issue. The patent was allowed because these limitations were used to distinguish the prior art.

First, several limitations of independent claims 1 and 15 of the '060 patent recite specific data elements related to healthcare (the "Healthcare Data Elements"). These Healthcare Data Elements include, for example, "medical philosophy," "years in profession," "years in practice,"

- 3 -

"professional appointments," etc. (Exhibit A; claim 1, col. 20, ll. 30-38; claim 15, col. 22, ll. 19-27); "patient ratings" (Exhibit A; claim 1, col. 20, ll. 39-49; claim 15, col. 22, ll. 28-39); and "board certification," "licensure," "medical school," "medical residency," etc. (Exhibit A; claim 1, col. 20, ll. 50-57; claim 15, col. 22, ll. 40-47).

Second, all of the claims of the '060 patent are specific about where each Healthcare Data Element must be obtained. Some specific Healthcare Data Elements must be obtained only from the healthcare provider (Exhibit A; claim 1, col. 20, ll. 30-38; claim15, col. 22, ll. 19-27); other specific Healthcare Data Elements must be obtained only from third parties (Exhibit A; claim 1, col. 20, ll. 50-57; claim 15, col. 22, ll. 40-47); and other specific Healthcare Data Elements (patient ratings) must be obtained from the website of the company running the service (Exhibit A; claim 1, col. 20, ll. 39-49; claim 15, col. 22, ll. 28-39).

Third, all the claims of the '060 patent expressly require that some (but not all) of the Healthcare Data Elements be "verified" by either the third parties or the healthcare provider. (Exhibit A; claim 1, col. 20, ll. 50-57 and ll. 30-38; claim 15, col. 22, ll. 40-47 and 19-27).

Fourth, all the claims of the '060 patent require the generation of a report on a first healthcare provider, whereby the report must specifically include the data elements obtained and verified from the various sources, and also include "comparison ratings" of other healthcare providers. (Exhibit A; claim 1, col. 20, ll. 58-65; claim 15, col. 22, ll. 48-55).

Thus, the claims of the '060 patent are all almost exclusively directed to healthcare issues--data elements on healthcare providers, where those data elements must be obtained and verified, and subsequently provided as content of reports on healthcare providers.

But it was not only the claims that focused so heavily on the healthcare issues. During prosecution, these claim elements were relied upon extensively to avoid the prior art and gain allowance by the United States Patent and Trademark Office. Many examples of the inventors hanging on these healthcare issues to pursue the patent to allowance can be found in the prosecution file history, and relevant portions of the prosecution file history are attached hereto as Exhibit B. See, for example, Exhibit B at bates ranges: MDX0013504-06, MDX0013508-10, MDX0013513, MDX0013516, and MDX0013547-51, (the inventors distinguished the claimed invention from the prior art by amending claims 1 and 19 (issued claim 15) and arguing that the prior art fails to teach using the healthcare provider-verified information, the past-patient provided information, and the information verified by independent third-party sources to create a healthcare provider report); MDX0013506-07, MDX0013510, MDX0013513, MDX0013516, MDX0013547-51 (the inventors distinguished the claimed invention from the prior art by amending claims 1 and 19 and arguing that the prior art fails to teach that the healthcare provider report included comparison ratings of healthcare providers); MDX0013547-49, MDX0013553, and MDX0013557 (the inventors distinguished the claimed invention from the prior art by amending claims 1 and 19 and arguing that the prior art fails to teach healthcare provider-verified information that comprises specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies); MDX0013548-49, MDX0013553, and MDX0013557-58 (the inventors distinguished the claimed invention from the prior art by amending claims 1 and 19 and arguing that the prior art fails to teach patient-provided information that comprises patient ratings from past or current patients of the healthcare

provider); and MDX0013548-50, MDX0013553-54, and MDX0013558 (the inventors distinguished the claimed invention from the prior art by amending claims 1 and 19 and arguing that the prior art fails to teach information that is verified by an independent third-party source and that includes board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information). The Patent Office Examiner, in his reasons for allowance, also clearly indicated the importance of the healthcare elements of these claims, in that the reason the claims were allowed was because the prior art failed to teach several of the Healthcare Data Elements. (Exhibit B at MDX0013570-72). In particular, the Examiner emphasized that the prior art failed to teach (1) healthcare provider-verified information that is received from the healthcare provider and comprises specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies; and (2) information regarding the healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information. (Exhibit B at MDX0013570-72).

**IV.     DR. GREENSPUN HAS NO EXPERTISE OR EXPERIENCE IN HEALTHCARE**

Dr. Greenspun has absolutely no real expertise or experience in healthcare. For the Court's convenience, Dr. Greenspun's resume is attached as Exhibit C. In reviewing Dr. Greenspun's resume, it is clear that he is a computer scientist, and has no healthcare experience.

Notably, Dr. Greenspun's resume makes no mention of him having any healthcare experience whatsoever.

At his deposition, Dr. Greenspun: (1) admitted that the healthcare claim elements were important to the claims, and were used to gain allowance over the cited prior art; and (2) confirmed that he has no real healthcare experience, and does not hold himself out to have any such expertise. Attached as Exhibit D are relevant excerpts from Dr. Greenspun's deposition transcript.[3] *See*, e.g., Exhibit D at pages 14-16 (admitted that Health Grades added these elements to gain allowance of the patent and those elements have nothing to do with Dr. Greenspun's expertise of computer science); and pages 16-34 (Dr. Greenspun has no real experience in the healthcare area relevant to the '060 patent).

Dr. Greenspun is not a person having ordinary skill in the relevant art of the '060 patent and therefore his entire opinion testimony should be precluded at trial, including, without limitation, testimony from his initial expert report, rebuttal expert report, deposition, and otherwise. *Sundance, Inc.*, 550 F.3d 1356 at 1361. Because Dr. Greenspun has no healthcare experience, he cannot possibly opine on whether the prior art would teach a person of ordinary skill in that art the elements of this healthcare invention, or whether the claim elements are met, literally or equivalently. He has no qualifications to opine on anything relating to this patent, and therefore his testimony should be entirely excluded. *Id.* at 1363 ("We hold that it is an abuse of

---

[3] Pursuant to the terms of the Protective Order entered in this case, deposition transcripts are to be treated by the parties as "HIGHLY CONFIDENTIAL" in their entirety until the expiration of fourteen (14) business days after counsel's receipt of the transcript. (*See* Doc. # 227, "Protective Order", at Section 6.1.8). Because undersigned counsel received Dr. Greenspun's deposition transcript on October 8, 2012, his entire deposition transcript is to remain HIGHLY CONFIDENTIAL through October 26, 2012. Accordingly, Exhibit D is being filed separately as a restricted document in accordance with the terms of the Protective Order.

discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art.").

## V.    CONCLUSION

For all the forgoing reasons, we respectfully request that Dr. Greenspun be precluded from providing any testimony.

Dated:  October 26, 2012                                             Respectfully submitted,


*s:/Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail:sstimpson@sillscummis.com
E-mail:smurray@sillscummis.com
E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on <u>October 26, 2012</u>, I electronically filed the foregoing MDX MEDICAL, INC.'S MOTION TO PRECLUDE ANY TESTIMONY FROM HEALTH GRADES, INC.'S EXPERT DR. GREENSPUN with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Jesus Manuel Vazquez , Jr.
  jvazquez@rothgerber.com, phenke@rothgerber.com

- Gregory B. Kanan
  gkanan@rothgerber.com, dgrooms@rothgerber.com

- Kris John Kostolansky
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- Scott David Stimpson
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- Scott B. Murray
  smurray@sillscummis.com

- David Chunyi Lee
  dlee@sillscummis.com

- Terence M. Ridley
  ridley@wtotrial.com, norris@wtotrial.com

          *s:/ David C. Lee*