# EXHIBIT C

(Redacted Version of Doc. # 329-3 for Public Access)

## Expert Report of Philip Greenspun

## Regarding infringement of U.S. Patent No. 7,752,060 by MDX Medical

This report is submitted pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.

## I.    Introduction

1.      My name is Philip Greenspun. I received a PhD in Electrical Engineering and Computer Science from the Massachusetts Institute of Technology in 1999 and have been teaching software engineering for Internet applications and database programming there periodically since receiving my degree.  My business address is 5 Irving Terrace, #3, Cambridge, Massachusetts 02138.  I have been involved in the computer science field for since 1978.  I am over eighteen years of age and I would otherwise be competent to testify as to the matters set forth herein if I am called upon to do so at trial.

2.      I have been retained by counsel for Health Grades, Inc. ("Health Grades") as a technical expert witness with respect to the proceedings currently before the Court in the above-captioned matter.  I receive compensation in the amount of $425 per hour.  Health Grades has also reimbursed me for travel and other expenses that I have incurred that are related to providing this technical analysis.  My compensation does not depend on the outcome of this case.

3.      For purposes of this Expert Report, I have been asked by Health Grades to provide an expert technical analysis of whether the asserted claims of U.S. Patent No. 7,752,060 (the "'060 Patent") that Health Grades contends are infringed by Defendant MDx Medical, Inc. ("MDx") as properly interpreted, are infringed by MDx's systems and methods, either literally, or under the doctrine of equivalents.  Additionally, I have been asked by Health Grades to provide an expert technical analysis concerning whether MDx indirectly infringes these patent claims by inducing or contributing to the direct infringement of the patent claims by selling its customers certain products and services and enabling its customers to implement systems and methods which infringe the patent claims either literally or under the doctrine of equivalents.

4.      I understand that Health Grades contends that MDx directly or indirectly infringes claims 1, 4-9, 11, and 14-16 of the '060 Patent ("the asserted claims").  I further understand that Health Grades contends that MDx directly infringes all of the asserted claims with the exception of claim 11. I further understand Health Grades further contends that MDx indirectly infringes (either through inducement or contributory infringement) all of these claims.

5.      As set forth herein, it is my opinion that MDx's systems and methods directly infringe claims 1, 4- 9, and 14-16 of the '060 Patent literally or, alternatively, under the doctrine of equivalents.

EXHIBIT 14

224. Due to the fact that obtaining reports via the use of third-party search engines is an optional rather than required part of this claim element, however, it is not necessary to consider their use in order to find that this claim element is infringed.

> the search capabilities of the predetermined Web page permit searching based on one or more from the group consisting of: name, medical specialty, gender, state, city, procedure, diagnosis, and location criteria.

225. Vitals.com meets this element.

226. My analysis of this element of claim 16 is identical to my analysis of claim 6 and, in the interest of concision, is not repeated here.

## G. The iTriage App

227. The iTriage App uses data licensed from MDx's physician database, which is the same database used by the accused vitals.com website. As such the opinions expressed above with regard to MDx's database apply equally to the iTriage App.

228. The home page of the iTriage App includes a link for "Doctors" - the link takes a user to a list of "Most Common Specialties" – and selecting a specialty yields a page that includes a list of "providers" (doctors) that practice the selected specialty. This page also includes additional information for each doctor listed, including for example, specialty information, star ratings (if available), a photograph (if available), and an address. There are multiple doctors listed on this page, each with a star rating, which can be used to compare one doctor with others on the same page.

229. There is a "Sort" button that allows a user to sort the list of physicians by various criteria, including "Rating" (with a gold star above the word "Rating"). Sorting the list by "Rating" yields a list of doctors, now showing star ratings for each doctor listed. The doctors and ratings are listed on top of each other - four per screen - and a user can scroll down to see more doctors in the list. With respect to the "star ratings" the App has the following language:

> Star ratings are consumer ratings provided by Vitals, which is a service of MDX Medical, Inc. Vitals allows patients to review and rate their doctors online. Patient ratings are averaged for each doctor and are the sole source of the Star Ratings. Star ratings are provided for your information only and do not represent a recommendation or endorsement by iTriage or Vitals. For more information on Star Ratings, or to rate a provider, visit Vitals.com.

(See Appendix E.)

230.     The "Sort" button also allows a user to set and sort the results list by "Advanced Preferences" - there are six different preferences you can select, and put in order of importance.  The six preferences are:

- "Consumer Rating"

- "Extended Profile"

- "Years of Experience"

- "Gender"

- "Distance"

- "Languages Spoken."

231.     If a user sorts the results list by your preferences, the App yields a list of doctors, each in a box on top of each other, and each showing his or her respective star rating.  If a user touches a doctor's box, it takes him or her to a full profile for that doctor, showing the star rating and all the preference data as well as the information listed in the second paragraph above.  The profile includes address and phone number, and also "Clinical Interests," "Research Interests," "Education," "Training," "Residency," "Fellowships," "Membership," "Awards" and "Board Certifications."  Some doctors have a subset of these, some have all of them.

232.     Attached as Appendix E is a claim chart detailing my infringement opinions regarding the iTriage App.  The analysis below is intended to be read in conjunction with the claim chart.

1.     **Claim 1 and iTriage**

   a.     <u>preamble:</u> *A computer-implemented method of providing healthcare provider information to potential patients, said method comprising:*

233.     The iTriage App meets this element.

234.     For example, http://about.itriagehealth.com/what-is-itriage/ states that the iTriage will assist a potential patient ("consumer") with answering the question "where do I need to go for treatment?" and with locating "the closest Appropriate healthcare providers to your current location".

235.     Mobile phones such as iPhones and Androids on which the iTriage App runs are computers and therefore this is a "computer-implemented method".

236.    Based on the screen shots reviewed and the live App used, iTriage is a computer-implemented method of providing healthcare provider information to potential patients.

> b.    *Step 1: receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider,*

237.    The iTriage App meets this element.

238.    The iTriage App does not function when a phone is in "Airplane mode" and thus is unable to connect to a network.  Thus the iTriage App must be connecting to a Web server with a request for information, e.g., on Cardiologists near Denver.

239.    Attempts to determine the exact nature of the request were made by capturing network traffic during a use of the iTriage App to find cardiologists in Denver, Colorado. Tests were conducted using an iPhone 4S running iOS 5.1.1 connected via Wi-Fi to a Lenovo Thinkpad Edge 0196-24U laptop computer running the Windows 7 Professional operating system. The network adapter installed within the computer is Realtek RTL8111DL based. The laptop computer was running Fiddler v2.4.0.0 configured as an HTTP proxy for packet capture and analysis.

240.    The capture indicated that the phone made a Transport Layer Security (TLS) 1.2 connection to the server itriage.healthagen.com on port 443. Traffic was observed between the phone and the server in response to both selecting a specialty and selecting a specific doctor. Due to the encryption of the TLS 1.2 protocol, it was impossible to determine the format of the request or the response received.

241.    Requesting a non-secure Web page from the server itriage.healthagen.com results in a direction to the about.itriagehealth.com server, indicating an affiliation between iTriage and the healthagen.com domain. It is reasonable therefore to infer that this is a "server computer of a company providing a service for connecting healthcare providers with the potential patients".

> c.    *Step 1 continued: wherein the Web server computer comprises at least one computer processor and memory;*

242.    The iTriage App meets this element.

243.    As noted in the above analysis of the '060 Patent claims and the vitals.com Web site, all conventional Web servers contain at least one processor and memory. Thus the Web server computers operated by iTriage must comprise at least one computer processor and memory.

    d.    <u>*Step 2:*</u> *accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;*

244.    The iTriage App meets this element.

245.    REDACTED

246.    The Court found that the term "verified" should be given its plain and ordinary meaning, of which there are several. One meaning of verified is "to prove." Another is "to confirm" or "to substantiate." The Court stated: "the specification makes clear that the act of 'verifying' requires only that the website receive confirmation of the information from some other source, in this instance the healthcare provider. Indeed, the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider." (Markman Order at p. 15 n.8.)

247.    http://www.vitals.com/v/index.php?v=user/show_register offers physicians the ability to "Edit and add information that patients and others see." (*See* Appendix C.)

248.    MDx admits that its system is capable of allowing physicians to edit the following fields in MDx's physician database, REDACTED : specialty information, gender, awards/honors, professional appointments, professional memberships, and languages. (*See* Supplemental Response to Interrogatory No. 2.)

249.    MDx further admits that physicians have actually edited each of these fields. (*See* Supplemental Response to Interrogatory No. 2.)

250.    In any event, I understand that Health Grades need only prove that the system is reasonably capable of receiving this information from physicians, which I conclude it is. This capability is available to any licensed physician and no changes or alternations need be made to enable this feature.

251.    Additionally, I understand that many more physicians have registered with vitals.com and viewed their profiles without changing any information. It is my opinion that in

doing so these physicians have confirmed (e.g., verified) their information for MDx and therefore provided it to MDx.

    e.    *Step 3:* compiling, by the at least one computer processor, patient-provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider,

252.    The iTriage App meets this element.

253.    The agreements between iTriage and Aetna show that Aetna has licensed patient ratings from MDx and retrieves these via an XML data feed.  (MDx Queries (MDX0104073) Conventional industry practice would be to store ("compile") these data in a database on a server in preparation for answering requests from clients such as the iTriage App. Evidence that this information exists in the iTriage database is provided by the fact that the ratings are included in pages within the iTriage App.  Vitals.com obtains its patient ratings from an on-line patient experience survey on vitals.com as described in detail above with regard to the vitals.com website, which discussion is incorporated by reference herein.

    f.    *Step 3 continued:* and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;

254.    The iTriage App meets this element under the doctrine of equivalents.

255.    To the extent that the iTriage App does not literally infringe this element because the online survey is hosted by vitals.com (e.g., MDx), it infringes under the doctrine of equivalents because it performs substantially the same function in substantially the same way to obtain the same result.   The function of the claim is to obtain the patient ratings.  The way the patient ratings are obtained is through an on-line survey.  The result is that Aetna has patient ratings obtained from an on-line survey.  Indeed, the iTriage App directs patients to go to vitals.com to rate the physician they are looking at.  This is insubstantially different from including the survey in the iTriage App.

256.    REDACTED

  g.  *Step 4: compiling information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;*

257. The iTriage App meets this element.

258. REDACTED

259. As discussed above, MDx gathers this information from third parties, who by virtue of providing it to MDx, are verifying it.

  h.  *Step 5: creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers;*

260. The iTriage App meets this element.

261. The Court's Markman Order defines "First Healthcare Provider" as "a particular healthcare provider about whom information is requested and a report is produced."  (Markman Order at p. 23.)

262. The Court's Markman Order defines "Comparison Ratings of Healthcare Providers" as "ratings on multiple healthcare providers, including the 'first healthcare provider,' in the report on that 'first healthcare provider,' thus permitting comparison of the 'first healthcare provider' with other potential healthcare providers."  (Markman Order at p. 24.)

263. The iTriage App's web server receives a request for information about a particular healthcare provider when a potential patient clicks the "doctor" icon shown below:



264. One way of searching for a doctor is by specialty. When a user selects the "Doctors" icon, a list of specialties by which a patient can search is displayed, as shown below:



265. At this screen, a user can select the location for where the user would like to search. In the example shown above, the user has selected the user's current location, which is determined by the Global Positioning System (GPS) feature of the iPhone.

266. For example, when one selects the family practice link, this prompts the patient's web browser to send a request for information about a doctor to the iTriage App's web server, which receives the request for information and then accesses the Master Database developed by MDx to find data that responds to the user's search query. After a user selects a specialty, such as family practice, the user is given the opportunity to further restrict his or her request for information by selecting a sub-specialty or viewing all doctors near the user's current location with a family practice specialty, as shown below:



267. Where a user selects "All Family Practice," a results list of compressed doctor's profiles for doctors near the user's current location with a specialty of family medicine is displayed, as shown below:



268. A user can further narrow his or her request for information and/or by clicking the "sort" button above, and then the "advanced" icon shown in the screenshot below:



269.    After selecting "Advanced" an advanced preferences menu is presented, as shown below:



270.    From the advanced preferences menu, a potential patient, for example, can request information about a particular, female, family practice specialist, located within 5 miles of his or her current location, who speaks English, has 5-10 years of experience, and was rated 3 stars or higher, as shown below:



271.    After applying these search criteria, a results list with the particular physician best matching the search criteria is presented:



272.    For example, the user could then select the first page of the profile of Brandy Deffenbacher, which would cause the iTriage App to move to the second page of Dr. Deffenbacher's profile, as shown below in the following two screenshots:



273.    Another way a user can request information on a particular healthcare provider is to search for the healthcare provider by name, as shown below:



274.    As can be seen from the above screenshot, a doctor's name can be entered and list of profiles for doctors matching the name will be presented. In the example above, the name Johnson was searched for, and a list of profiles for doctors with the name of Johnson was produced. From the same screen, a user can further limit the search results by distance from a specified location, or by featured doctors, as shown below:



275.    To the extent that the Court's construction of first healthcare provider requires that the request for information be directed to only one particular healthcare provider, a position with which Health Grades disagrees, the iTriage App both literally infringes this element and infringes under the doctrine of equivalents.  The iTriage App literally infringes this element because it is capable of receiving requests for information about only one particular physician. The iTriage App infringes under the doctrine of equivalents because a request for information about multiple particular physicians performs substantially the same function, in substantially the same way, to achieve substantially the same result as a request for one particular physician as shown above.

276.    To the extent that the Court's construction of first healthcare provider requires that the potential patient know the identity of the particular physician for whom he or she is requesting information before they request the information, a position with which Health Grades disagrees, the iTriage App both literally infringes this element and infringes under the doctrine of equivalents. The iTriage App literally infringes this element because it is capable of receiving requests for information about a particular physician whose identity is known to the requestor before the information is requested.  The iTriage App infringes under the doctrine of equivalents because a request for information about a particular physician that has characteristics that meet search criteria (e.g., female, Family Practitioner that Speaks English, within 5 miles of Denver, CO, with 5-10 years of experience) performs substantially the same function, in substantially the same way, to achieve substantially the same result as a request for a particular physician whose identity is known before the search is run.

277.    After a user enters the search criteria for a particular provider, the iTriage App creates one or more healthcare provider reports using information from the Aetna Master Database, which is developed, maintained, and managed by MDx and contains MDx's data. The

iTriage App creates the reports using healthcare provider-verified information, patient-provided information, and information verified by the independent third-party source about the first healthcare provider. Further, the reports contain comparison ratings of the healthcare providers.

278. The following screenshots show portions of a healthcare provider report for Dr. Brandy Deffenbacher, who is an example of a first healthcare provider as defined by the Court in its Markman ruling. This report was created using at least the following information: (1) healthcare provider-verified information, circled or boxed in red; (2) patient-provided information, circled or boxed in green; and (3) information verified by an independent third party circled or boxed in purple. The report also includes comparison ratings, circled or boxed in orange, about Dr. Deffenbacher, and other healthcare providers as required by the Court's Markman Order. As with any computer generated report, it is generated by at least one computer processor.

279. After entering the search criteria for Dr. Deffenbacher, the iTriage App generates a report for Dr. Deffenbacher, the first page of which is shown below:



280. In the above screenshot, the percentage matched to the search criteria are comparison ratings as defined by the Court. These ratings provide the patient with information regarding how well physicians listed in the results list satisfy the patient's specified criteria, e.g., specialty, location, gender, language, patient rating, or having an extended profile. A user can thus use these ratings to compare which doctor best matches the user's preferences. There are percentage matched for the first healthcare provider (i.e., Dr. Deffenbacher) and other healthcare providers (i.e., Dr. Walker and Dr. Wegleitner).

281.    Another comparison rating that exists in the above screenshot is the star ratings for Dr. Deffenbacher and the other doctors.  By viewing these star ratings, a user can understand that by having 4 stars, Dr. Deffenbacher is rated higher than a doctor with a 3-star rating.

282.    The above report also includes percentage match ratings and star ratings for other providers as required by the Markman Order.

283.    To the extent that MDx asserts that any of these three ratings do not literally satisfy the limitation of a healthcare provider report that includes comparison ratings, these ratings meet the claim limitation under the doctrine of equivalents because they have substantially the same function and operate in substantially the same way to achieve substantially the same result as comparison ratings in a healthcare provider report.

284.    The above screenshot of the report on Dr. Deffenbacher also shows physician provided information of specialty (boxed in red). It also shows third party verified information, boxed in purple: Dr.'s Licensed Name and Medical School.  Also shown is patient provided information, which is circled in green.

285.    When a user chooses to view more information on Dr. Deffenbacher, he or she can see additional pages of the report as shown below:





286.    As can be seen from the above screenshots, this report includes provider-verified information, including: clinical interests, hobbies, and specialty information (boxed in red).  Also in the report is third-party verified information (boxed in purple) including: Medical School, Medical Residency, Medical School, and the doctor's licensed name.

287.    Additional pages for another healthcare provider report for a Dr. Allen, is shown below:





288.    As can be seen from Dr. Allen's profile, there is provider-verified information including Dr. Allen's research, his memberships and awards, his clinical interests, and his specialty. Also, there is third-party verified information including his Board Certifications, his Medical Internship, Medical Residency, Medical Fellowship, and Medical School.

289.    A user can enter search criteria and preferences into the iTriage application for a particular healthcare provider. For example, a user could search for a female family practitioner within 5 miles of his or her current location, who speaks English, has 5-10 years of experience, and was rated 3 stars or higher. When a user defines these preferences and searches for the particular provider the iTriage App creates one or more healthcare provider reports using

Case 1:11-cv-00520-PAB-BNB Document 322-13 Filed 10/12/12 USDC Colorado Page 18 of 22

information from the Aetna Master Database, REDACTED

290.    The iTriage App creates the reports using healthcare provider-verified information, patient-provided information, and information verified by the independent third-party source about the first healthcare provider.

291.    Further, the reports contain comparison ratings of the healthcare providers.

292.    A variety of items in the iTriage App qualify as comparison ratings. Each of these "ratings" applies to individual physicians, therefore to the first healthcare provider and other healthcare providers.

293.    First, there is a "star rating" (1-4 stars) for most physicians. By displaying the scale along with every rating, the iTriage App ensures that potential patients can see how a doctor compares to an ideal doctor.

294.    The percentage matched to the search criteria are also comparison ratings as defined by the Court. These ratings provide the patient with information regarding how well physicians listed in the results list satisfy the patient's specified criteria, e.g., specialty, location, gender, language, patient rating, or having an extended profile. A user can thus use these ratings to compare which doctor best matches the user's preferences. There are percentage matched for the first healthcare provider and other healthcare providers. This feature is very similar to vitals.com's match score rating.

295.    The healthcare provider reports created by the iTriage App literally include each of the foregoing "comparison ratings" of both the first healthcare provider and other healthcare providers, either on the same screen in response to a search query or on separate screens, depending on the detail level of the reports sought by patients.

296.    For example, if a patient runs a search for a particular doctor, the iTriage App uses information within MDx's database to produce a report on that doctor that can include comparison ratings of that doctor and other doctors on the first page of the report, thus permitting comparison of that particular doctor with other potential doctors. These ratings can include any of those listed above. By clicking on the particular doctor's name, a patient is able to access additional pages of the healthcare provider report.

297.    I understand that MDx argues that the healthcare provider report must be limited to the first healthcare provider and *only* the first healthcare provider. I disagree. However, if the claimed report must be limited to only one physician, then the iTriage App infringes under the doctrine of equivalents. As shown in the screenshots in Appendix E, the iTriage App displays multiple healthcare provider reports, each limited to a single healthcare provider and each

containing comparison ratings of that particular healthcare provider, on the same webpage, side-by-side, with other healthcare provider reports of other physicians. Each of those other reports contain comparison ratings of their particular doctor.

298. While none of these reports include ratings of other healthcare providers, they perform substantially the same function, in substantially the same way, to produce substantially the same result as the claimed comparison ratings element. The "function" of the comparison ratings claim element is to allow patients to compare the first healthcare provider with other healthcare providers. Vitals.com performs the same function. The "way" this function is achieved in the claim is to include comparison ratings of other healthcare providers in the same report with ratings of the first healthcare provider. The way MDx achieves this function is by displaying multiple reports, each with comparison ratings of the first healthcare provider, on the same page, so that a patient can compare the first healthcare provider with other healthcare providers. This is substantially the same as the claim. The "result" of the claim is a report that allows for comparison of the first healthcare provider with others. The result of vitals.com is substantially the same, i.e., multiple reports that allow for comparison of the first healthcare provider with other healthcare providers.

299. Viewed another way, a healthcare provider report that includes multiple providers (as shown the display of search results) performs substantially the same function, in substantially the same way, to produce substantially the same result as the claimed report on the first healthcare provider. The functional difference of reporting on one particular doctor versus multiple particular doctors is insubstantial. A single provider report is substantially the same as a multiple provider report – both have information on the single particular provider.

300. To the extent that MDx asserts that any of these three ratings do not literally satisfy the limitation of a healthcare provider report that includes comparison ratings, these ratings meet the claim limitation under the doctrine of equivalents because they have substantially the same function and operate in substantially the same way to achieve substantially the same result as comparison ratings in a healthcare provider report.

        i.     <u>*Step 6:*</u> *and providing access to the healthcare provider report on the first healthcare provider over a computer network.*

301. The iTriage App meets this element.

302. Both the Current Version and the Prior Version would have no business purpose if they did not provide their reports over the Internet so that potential patients could see them. Sitting at my home computer, for example, I was able to access reports on all of the doctors for whom I searched.

### 2.    Claim 4 and iTriage

*The method as defined in claim 1, wherein the healthcare provider report includes a hyperlink to an affiliated hospital, medical center, or other type of treatment center.*

303.    As shown in the attached claim chart, Appendix E, the iTriage App displays a hyperlink to at least "an affiliated medical center", e.g., "CUdoctors.com", from at least one doctor report. Therefore, the iTriage App infringes this claim.

### 3.    Claim 5 and iTriage

*The method as defined in claim 1, wherein the access to the healthcare provider report is obtained through a predetermined Web page that provides search capabilities for a database comprised of healthcare provider information.*

As shown in the claim chart attached as Appendix E, the iTriage App provides search capabilities from a home page within the iTriage App. Due to the fact that this provides a very similar user experience to a Web browser accessing a Web page, the iTriage App infringes this claim under the doctrine of equivalents.

### 4.    Claim 6 and iTriage

*The method as defined in claim 5, wherein the search capabilities permit a search based on one or more from the group consisting of: name, medical specialty, gender, state, city, procedure, diagnosis, procedure, and location criteria.*

304.    As shown in the claim chart attached as Appendix E, the iTriage App provides very straightforward searching by medical specialty, state, and city. Via the "Advanced Preferences" feature, the iTriage App provides searching by gender and location criteria ("distance", offering such choices as "Less than 15 miles"). Therefore the iTriage App infringes this claim.

### 5.    Claim 7 and iTriage

*The method as defined in claim 6, wherein the search of the database produces a results list of one or more healthcare providers satisfying the search criteria, wherein the results list includes the first healthcare provider.*

305.    As show in the attached claim chart (Appendix E), the iTriage App displays a results list of one or more healthcare providers satisfying the search criteria. A first page of a report on each healthcare provider, including of a "first healthcare provider", is shown.

### 6. Claim 8 and iTriage

*The method as defined in claim 7, wherein the results list further includes an advertisement for the first healthcare provider with a hyperlink to information on the first healthcare provider.*

306. As a variety of the screen captures in the claim chart attached as Appendix E demonstrate, the iTriage App results page shows "featured providers" and "additional providers". The "featured providers" list may be regarding as a list of advertisements for physicians. Each advertisement contains a hyperlink to additional information regarding that physician. Thus the iTriage App infringes this claim.

### 7. Claim 9 and iTriage

*The method as defined in claim 7, further comprising:*

*determining from the results list whether a particular healthcare provider is a member of the company managing the Web site; and*

*if the particular healthcare provider is a member of the company managing the Web site, providing enhanced services for the member healthcare provider on the Web site.*

307. As shown in the attached claim chart (Appendix E), the iTriage App provides a variety of enhanced services to a physician who has elected to purchase a "premier listing" and therefore this corresponds to the "member" distinction of the '060 patent specification. For those physicians, and not non-members, the search results page shows color portraits, a blue background color, and an earlier position in the list.

### 8. Claim 11 and iTriage

*The method as defined in claim 9, wherein the enhanced services comprise favorable positioning in the results list.*

308. As shown in the claim chart attached as Appendix E, the iTriage App displays member physicians' reports in a higher position in the results list than non-member physicians. This is "favorable" because these reports are therefore viewable by the end-user without the need for scrolling.

### 9. Claim 14 and iTriage

*The method as defined in claim 1, wherein the first healthcare provider is a physician.*

309.    As shown in the attached claim chart (Appendix E), the top center icon on the iTriage App's home page is "Doctors" and the typical healthcare provider on whom the iTriage App displays a report is a physician. Thus the iTriage App infringes this claim.

### 10.    Claim 15 and iTriage

310.    My analysis of claim 15 is substantially similar to my analysis of Claim 1 and iTriage. Moreover, the attached claim chart (Appendix E) contains a complete element-by-element analysis of claim 15 and the iTriage App. The iTriage App does not function with a phone in "airplane mode" and therefore it may be said to be an "on-line information system". For that reason and for all of the reasons that the iTriage App literally infringes claim 1, it infringes claim 15.

### 11.    Claim 16 and iTriage

*The on-line information system defined in claim 15, wherein:*

*the healthcare provider report is obtained through one or more from the group consisting of: a predetermined Web page that provides search capabilities on its database and a third-party search engine; and*

311.    As shown in the attached claim chart (Appendix E), the iTriage App infringes this claim by providing search capabilities from a predetermined page. This page is not within a traditional Web browser and therefore this claim is infringed under the doctrine of equivalents.

312.    Due to the fact that only one mechanism from the "group" of the claim is required for this claim to be infringed, there was no need for me to explore whether or not there is any way to obtain iTriage App healthcare provider reports by starting from a third-party search engine, such as Google.

## H.    <u>Doctrine of Equivalents</u>

313.    For each of the claims above, to the extent that an argument can be made that the Current Version or Prior Version of the vitals.com site does not literally infringe, the sites would infringe under the doctrine of equivalents. To the extent that information is contained within the vitals.com relational database management system, varying the manner and layout of presenting that information is a straightforward and simple task for a person of ordinary skill in the art. Larry West testified on June 26, 2012, for example, that he received instructions to change the vitals.com Web Application so that it would be less likely to be considered as infringing the '060 Patent.  (Deposition of Larry West (Rough Draft) at 106.)  He further testified that the changes were made by a programmer and launched to the public within one day. (*Id.* at 106:10-106:22.) That is consistent with my experience supervising student projects at MIT and commercial Web