**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS (Dkt. 292)**

Health Grades, Inc. ("Health Grades") respectfully replies to MDx Medical, Inc.'s ("MDx") Opposition (Dkt. 325) to Health Grades' Motion for Leave to Amend its Infringement Contentions to incorporate Dr. Philip Greenspun's Expert Report. ("MDx Opp.").

**I.    INTRODUCTION**

MDx argues that Health Grades should have made the new non-infringement arguments earlier. But MDx actively opposed every attempt Health Grades has made to obtain discovery to support its infringement case. MDx refused to produce non-public information about the functionality of its website and refused to produce information regarding its relationship with Aetna. MDx further refused to explain its non-infringement defenses arguing that Health Grades did not "ask" for this information. Nonsense. Health Grades had to file a motion to compel to get this information and even then MDx did not timely provide most of the information:

- In May 2012, MDx finally explained its non-infringement arguments in a supplemental response to an interrogatory Health Grades served in July 2011.

1

- In June 2012, one month after it was ordered to produce it, MDx produced its license agreement with Aetna, and technical documents relating to physician edits to the MDx database.

- In June 2012, Health Grades deposed MDx employees and finally obtained information regarding the functionality of the vitals.com physician portal.

Less than a month later, Health Grades served MDx with Dr. Greenspun's expert report on infringement. MDx's expert responded to all the contested infringement arguments in his rebuttal report on non-infringement. Less than two months (effectively)[1] after the MDx depositions, Health Grades filed this motion to incorporate Dr. Greenspun's arguments into its infringement contentions. Health Grades has been diligent seeking to amend its contentions.

Further, MDx does not contend that it has not had adequate notice or that it is surprised by any of the arguments made in Dr. Greenspun's report. Instead, MDx argues that the several opinions are "new" essentially because Dr. Greenspun used different words in his report than Health Grades did in its infringement contentions. The Local Patent Rules are not so rigid that they require an expert to parrot the infringement (or invalidity) contentions. Indeed, interpreting these rules in such a way would eliminate the need for expert reports all together. Contrary to what MDx argues, the rules requiring early patent disclosures are **"not a straitjacket into which litigants are locked from the moment their contentions are served . . . ."** *TFH Publs., Inc. v. Doskocil Mfg. Co.*, 705 F. Supp. 2d 361, 365-366 (D.N.J. 2010) (emphasis added). Rather, the rules "'exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases.'" *Id.* MDx has had more than adequate notice of the contested infringement theories.

---

[1] Both parties agreed that they would not assert the 45 day period beginning on July 27, 2012 counts against either party's diligence. (Dkt. 275 at 2.)

Finally, MDx argues that Health Grades does not need to amend its infringement contentions to include those opinions from Dr. Greenspun that Health Grades argues were already adequately supported in the infringement contentions (arguments addressed in the Motion at pp. 13-20 (Dkt. 292)).  This might be true if this were a run-of-the-mill case involving a reasonable adversary.  It is not.  In the next sentence, MDx indicates that it will object at trial that this information was not adequately disclosed.  Such is an inefficient way to resolve issues that are obviously in dispute right now.

II. **GOOD CAUSE EXISTS FOR HEALTH GRADES TO AMEND ITS CONTENTIONS TO INCORPORATE THE GREENSPUN REPORT**

A. **The Request to Add Indirect Infringement Contentions Should Be Resolved in Connection with Health Grades' Motion to Amend the Complaint**

Health Grades seeks to amend its infringement contentions to assert that MDx is inducing and contributing to Aetna's direct infringement based on an agreement between MDx and Aetna that MDx did not produce until June 2012.  Health Grades has filed a motion to amend its complaint to assert causes of action for inducing and contributory infringement (Dkt. 252), which is currently pending before this Court.  MDx argues that if this motion to amend the complaint is denied, these amended infringement contentions should not be allowed.  (MDx Opp. at 3.)  Health Grades agrees.  Likewise, if the motion to amend the complaint is granted, these amended contentions should be allowed.  As such, Health Grades requests that resolution of this issue be based on this Court's resolution of its motion to amend its complaint.

B. **Providers verify their information just because they registered.**

Health Grades has always asserted the vitals.com website allows physicians to edit their personal information and this functionality infringes Health Grades' '060 patent.  The Greenspun

3

Report argues that physicians who have registered with vitals.com and log in and then sign out (without changing any information) have "verified" this information and that MDx has received this information from these physicians. (Greenspun Report at pp. 33 & 47 (Dkt. 292-1).) MDx opposes this amendment.

MDx first argues that Health Grades was not diligent in seeking to make this amendment because: "In December of 2011, Health Grades knew that the accused website allowed physicians to edit some fields" but "did nothing to amend then." (MDx Opp. at 4.) Health Grades did know physicians could make edits and relied on this capability in its original contentions. If editing information is the same thing as registering and confirming (without changing), then Dr. Greenspun's argument is not new and MDx's argument fails.

If editing information *is different* from registering and confirming (without changing), then Health Grades did not have what it needed to make this argument until it deposed MDx in June 2012. The vitals.com physician portal is not public. Health Grades tried to get information about the physician portal from MDx numerous times and in numerous ways to no avail.[2] MDx's May interrogatory response provided a new non-infringement argument based on statistics about how many fields have been actually been edited by physicians – but it did not explain how the physician portal works. Health Grades needed to depose MDx to get the facts it needed to counter the new non-infringement argument in MDx's interrogatory response. Until

---

[2]   Health Grades served discovery requests seeking a demonstration of physician portal. (Dkt. 126-6 at pp. 9-12.) MDx refused to provide this information. On January 24, 2012 Health Grades filed a motion to compel MDx to produce either physician log-in credentials or demonstration code (i.e. executable code). (Dkt. 126 at pp. 7-9; Dkt. 140 at pp. at 7-8.) When this Court denied the motion to compel based on a misunderstanding about the differences between source code and executable code, Health Grades filed a motion for reconsideration. (Dkt. 196.) MDx opposed this motion. (Dkt. 203). Health Grades withdrew this motion after it finally obtained information about the physician portal during the June 2012 depositions.

4

the depositions, Health Grades did not know, for example, that physicians could log-in, view their profiles, but not change any information. Health Grades did not understand the mechanics about how messages were sent back and forth between the physician and MDx's physician portal. Health Grades did not know that even when the physician does not change any fields a message is sent back to vitals.com confirming the information. As such, to the extent that this functionality differs from the ability to edit, it is new information that Health Grades did not obtain until June 2012. Good cause exists for this amendment.

MDx next argues that Health Grades was not diligent because Dr. Greenspun cited only the May interrogatory response. Just because Dr. Greenspun did not cite the deposition transcripts specifically does not mean he did not need the deposition testimony to make the argument. Indeed, the May interrogatory response provided a new non-infringement argument – the June depositions provided facts to counter this argument. Dr. Greenspun's citation referred to the non-infringement argument he was responding to and his report states the facts that he learned during these depositions. In any event, the difference between two months and three months is a distinction without a difference. No trial date has been set. MDx's non-infringement expert had ample opportunity to respond and did in fact respond to this argument.

C. **"If vitals displays fellowship or other data that is supposed to be from a 3rd party, but it came from a doctor, MDx is still using the same information it collected from the third party to resolve conflicts."**

The Greenspun Report states:

> 166. Also, if vitals.com displays fellowship information that has been self-reported by a doctor, it is my opinion that it is still "using" the fellowship information MDx collected from a third party. It is after all stored in the database. In order to avoid displaying incorrect information, Vitals must resolve conflicts between doctor-reported information and third-party verified information. This is a "use" of both kinds of information.

5

(Greenspun Report at p. 39.)  MDx argues that Health Grades was not diligent in making this amendment because Dr. Greenspun cites an e-mail MDx produced in November 2011. However, this MDx e-mail stated only that MDx's "display of 3rd party verified information does not include IRF."  (Dkt. 325-4.)  It did not explain what "IRF" is and did not explain the facts underlying this argument.  In its May interrogatory response, MDx disclosed *for the first time* its convoluted argument about how, even though it collects fellowship information from third parties, it *only* displays fellowship information that it obtains from physicians (not the third parties).  Dr. Greenspun's report quoted this new argument from the Interrogatory Response, but mistakenly cited to the MDx e-mail instead.  *Compare* ¶164 of the Greenspun Report:

> 164.  I understand that MDx argues that it does not infringe this element because it employs the following rule:
>
> > If displaying third-party verified information for a physician would include three or more of third-party information, then the same information obtained from a physician (e.g., medical school, residency, fellowship, internship) would be used instead (when available) to reduce the number of displayed third-party data to less than three. If the same information for a data field has not been obtained from a physician, then the data field is not displayed at all, so that no more than two third-party data fields are ever displayed for a physician.

*with* p. 6 of the May 10 Interrogatory Response (Dkt. 292-8) (highlighting added)):

> The following information have also been obtained in some cases from physicians: medical school, medical internship, medical residency, and medical fellowship information. ==If displaying third-party verified information for a physician would include three or more of third-party information, then the same information obtained from a physician would be used instead (when available) to reduce the number of displayed third-party data to less than three. If the same information for a data field has not been obtained from a physician, then the data field is not displayed at all, so that no more than two third-party data fields are ever displayed for a physician.==

The MDx depositions provided additional and information regarding this policy.  For example, Ms. Boyer testified:

> Q  If a doctor self-reports fellowship or residency information that's different

6

> from that which Vitals has from a third party source, will you display incorrect information?
> A Will I display what?
> Q Incorrect information.
> A No.
> Q How do you verify what's correct and what's incorrect?
> A We don't do verification the way you asked. When you say verify, what do you mean?
> Q To determine whether any of the information is correct or incorrect.
> A We aggregate data, so it's the aggregation of the data that helps us determine what we feel is the right information.
> Q So by aggregating the data is how you confirm whether it's correct or incorrect?
> A Um-hum.

(Boyer Dep. at 99-100 (Dkt. 292-10).) Dr. Greenspun relied on this conflict resolution policy:

> 166. Also, if vitals.com displays fellowship information that has been self-reported by a doctor, it is my opinion that it is still "using" the fellowship information MDx collected from a third party. It is after all stored in the database. In order to avoid displaying incorrect information, ==Vitals must resolve conflicts between doctor-reported information and third-party verified information. This is a "use" of both kinds of information.==

(Greenspun Report at ¶166 (highlighting added).  As such, Dr. Greenspun's argument is based on newly discovered information and good cause exists for amendment.

### D.      "MDx mobile application"

MDx did not launch its mobile application until after Health Grades served its expert report.  Therefore, Health Grades withdraws its request to add this application to the contentions, but reserves the right to address it in a separate proceeding.

### E.      System's Capability to Allow Physicians to Edit Their Information

MDx opposes this argument only with respect to the "healthcare provider-verified information" element.  Although MDx admits that Health Grades' original contentions "referenced the ability of the accused website" to receive edits from physicians, MDx argues that Health Grades "never alleged that this capability *alone* was enough for infringement."  (MDx

7

Opp. at 6.)  This argument is incorrect.

Health Grades' contentions argued MDx infringes because "MDx's website provides many opportunities for doctors to edit their own profiles."  (Dkt. 292-4 at p. 19.)  The fact that Health Grades gave additional reasons for infringement does not make this argument any less viable.

Further, MDx seeks to the set the standard for these disclosures so high that anytime Health Grades changes the way it phrases an argument in any way, MDx will be able to argue that it is new and should be precluded.  The disclosure rules are not so rigorous that they require an expert to use the exact same words, in the exact same way as litigation counsel.

## F. "MDx uses licensure information in creating the report because only licensed doctors are on the website."

The claims require the step of creating a report using third party verified information, such as licensure status.  In support of this element, the Greenspun Report states:

> MDx displays reports only for physicians who are actively licensed.  Thus, it is my understanding that Vitals.com uses licensure information to create a report even if they do not always explicitly display that information in the report.

(Greenspun Report at p. 39.)  Health Grades' contentions stated:  "MDx also uses compiled licensure information to ensure that only licensed physicians, including Brunvand, are displayed in the search results."  (Dkt 292-5 at p. 10.)  MDx admits that this argument is not new, but takes issues with Health Grades' use of the term "search results."  (MDx Opp. at 7.)  Health Grades asserts that MDx's search results are a "report."  MDx disagrees. This is an argument about the merits of the case, not about the adequacy of Health Grades' disclosure.  MDx's argument fails because Health Grades adequately disclosed its intent to rely on the fact that MDx's system

8

(whatever you may call it) is limited to licensed physicians.

### G. "The argument that information from third parties only needs to be compiled, not displayed in the report."

The issue here is whether the claims require *display* of three more or more of the third-party verified information (e.g. specialty information, medical school, board certification, licensure, disciplinary actions, internship, residency and fellowship information). MDx argues display is required – Health Grades disagrees. MDx does not dispute that this argument has been one of the central issues in dispute throughout this lawsuit. MDx does not dispute that it lost this argument at the Markman hearing. Rather, it argues that Health Grades did not make this argument *in its infringement contentions*, so it should not be allowed to pursue it.

MDx is wrong on both counts. Although Health Grades did not use the same exact words as Dr. Greenspun, it did argue that MDx infringed this claim element even when it does not display *all* of this information. For example, Health Grades' infringement contentions stated the following screenshot No. 22 (which displays only one kind of third-party verified information, not three) met this claim element. (Dkt. 292-5 at pp. 11-13 of 32 (Cont. at pp. 40-41.))

Moreover, MDx's hyper-technical interpretation the Local Patent Rules runs contrary to the public policy. The infringement disclosures are designed to prevent a patentee from changing its infringement theories late in the case and to avoid unfair surprise at trial -- Health Grades is not changing its infringement theories at the last minute – it is simply seeking to make the same arguments that it has made throughout this case.

MDx argues that "had this been an issue, it would have been a prime issue for inventor depositions." (MDx Opp. at 9.) This has been an issue and was decided in the Markman Order!

9

Regardless, MDx's prejudice argument fails because inventor testimony is irrelevant to claim construction.  *See, e.g., Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008) ("[I]nventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction."); *see also Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1580 (Fed. Cir. 1996) ("*Markman* requires us to give no deference to the testimony of the inventor about the meaning of the claims.").

## III.     CONCLUSION

Because Health Grades has good cause to incorporate Dr. Greenspun' s expert report into its infringement contentions, and MDx will suffer no undue prejudice by the incorporation, Health Grades respectfully requests that the Court grant this motion for leave to amend.

Dated: October 29, 2012                    ROTHGERBER JOHNSON & LYONS LLP

*s/ Jesús M. Vazquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@rothgerber.com
           kkosto@rothgerber.com
           jvazquez@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*

10

# CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Scott Murray
David Chunyi Lee
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
Email:  sstimpson@sillscummis.com
Email:  smurray@sillscummis.com
Email:  dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email:  ridley@wtotrial.com

*s/ Jesús M. Vazquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@rothgerber.com
           kkostolansky@rothgerber.com
           jvazquez@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*

11

2003910853_1