## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

     Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

     Defendant.

---

**MDX MEDICAL, INC.'S OPPOSITION TO HEALTH GRADES, INC.'S
MOTION TO PARTIALLY EXCLUDE EXPERT TESTIMONY OF
DR. RICHARD G. COOPER PURSUANT TO FED. R. EVID. 403 AND 702,
AND *DAUBERT V. MERRELL DOW PHARMS.*, INC., 509 U.S. 579 (1993)**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, respectfully submits this Opposition to Health Grades, Inc.'s ("Health Grades") Motion To Partially Exclude Expert Testimony of Dr. Richard G. Cooper Pursuant to Fed. R. Evid. 403 and 702, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ("Opposition").

MDx regrets the extensive nature of this Opposition, and the bulk of the attached exhibits. But Health Grades' motion questions the sufficiency of the evidence supporting Dr. Cooper's analyses, and in doing so ignores vast amounts of evidence supporting his analyses. The only way to show the fallacies of Health Grades' motion is to submit to the Court the supporting evidence cited by Dr. Cooper.

## I.    THE APPLICABLE LAW

In order to successfully oppose this motion, MDx must only prove that Dr. Cooper, "has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied."  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008).   Health Grades does not question the qualifications or expertise of Dr. Cooper, but instead raises various issues about his methodology.

With expertise not in dispute, the question is whether the proffered opinion is the product of "reliable principles and methods" and "based on sufficient facts or data."  Fed. R. Evid. 702. "Absolute certainty is not required," *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003); nor is "asymptotic perfection" required.  *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1121 (10th Cir. 2004).

## II.    DR. COOPER'S INVALIDITY OPINIONS ARE RELIABLE

Health Grades throws out a plethora of alleged deficiencies in Dr. Cooper's invalidity expert report, primarily couched in generalities.  None have merit, and Health Grades has overlooked (or worse, deliberately attempted to conceal) much of the evidence supporting Dr. Cooper's invalidity report.

### A.    Dr. Cooper Applied the Court's Claim Constructions

Health Grades first complains that Dr. Cooper did not consider the Court's claim constructions.  According to Health Grades, Dr. Cooper did "not mention . . . this Court's claim constructions."  Health Grades' Motion, at 5.  But Dr. Cooper made very clear, including at the very beginning of his report, that he was using the claim constructions provided by the Court.

*See, e.g.,* Dr. Cooper's invalidity expert report, Exhibit A, at ¶¶ 14, 18, 20 (confirming that he reviewed the Court's claim construction Order, and that his opinions are "based on" these materials); *see also* Cooper transcript, Exhibit B, *e.g.,* at 125:10-14, 127:17-19, 147:22-24, 233:1-11 (consistently confirming consideration and reliance on the Court's claim construction Order).  And despite the complaints of Health Grades, Dr. Cooper's analyses are perfectly consistent with the Court's claim constructions.  If Health Grades truly believes otherwise, of course it is free to cross-examine him on that issue at trial.

Health Grades claims that Dr. Cooper was required to "analyze" the meaning of every claim term not construed by the Court.  But the case law requires no such thing, as Health Grades itself insisted in connection with the Court's claim construction proceedings.  Dkt. 79, at 2 and 16-18 (citing multiple Federal Circuit cases: "no construction is necessary for terms that have a commonly understood meaning").  In fact, if any other claim terms need interpretation, it is the function of the ***Court*** to make that interpretation and explain the meaning to the jury – it is not a job for experts.  *Markman v. Westview Instruments*, 517 U.S. 370, 372 (U.S. 1996) ("We hold that the construction of a patent, including terms of art within its claim, is exclusively within the province of the court."); *see also Cordis Corp. v. Boston Sci. Corp.,* 561 F.3d 1319, 1337 (Fed. Cir. 2009)("it is improper to argue claim construction to the jury"); *Sundance, Inc. v. Demonte Fabricating Ltd*., 550 F.3d 1356, 1364 (Fed. Cir. 2008) ("allowing a witness to testify before the jury on claim construction would be improper").

The terms that were not construed by the Court have "plain and ordinary" meanings and do not need interpretation, and Health Grades' new argument (entirely inconsistent with its previous position) that every term needs an interpretation analysis in an expert report is not even

3

remotely supported in the case law.  Would Health Grades, for example, require Dr. Cooper to

analyze the meaning of the claim term "gender" to explain the differences between male and

female, and perhaps describe the differences in anatomy?  Or would Health Grades have Dr.

Cooper detail in his report how the claim term "age" means the number of years counted from a

person's birth?

As Health Grades emphasized in its claim construction briefing, terms that are readily

understood and have common and ordinary meanings **do not need construction**.  *See, e.g.,*

*Phillips v. AWH Corp.*,415 F.3d 1303, 1312, 1314 (Fed. Cir. 2005) (words of the claim "are

generally given their ordinary and customary meaning."; "In some cases, the ordinary meaning

of claim language . . . may be readily apparent even to lay judges, and claim construction in such

cases involves little more than the application of the widely accepted meaning of commonly

understood words."); *Ccs Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)

("Generally speaking, [courts] indulge a 'heavy presumption' that a claim term carries its

ordinary and customary meaning."); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795,

803 (Fed. Cir. 1999) ("only those terms need be construed that are in controversy, and only to the

extent necessary to resolve the controversy."); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech.*

*Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008); *Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 2011

U.S. Dist. LEXIS 91124, *15-*16 (E.D. Tex. Aug. 16, 2011) (terms having ordinary meaning

need no interpretation); *EPOS Techs. v. Pegasus Techs.*, 802 F. Supp. 2d 39, 47 (D.D.C. 2011)

(declining to construe the term "drawing implement," because the plain meaning of the term as it

appears in the patent is unambiguous); *Resonance Tech., Inc. v. Schiller AG*, 2010 U.S. Dist.

LEXIS 141722 (C.D. Cal. Nov. 22, 2010) ("The Court agrees that the ordinary meaning of the

terms is clear and declines to construe 'shielded cable' and 'supplied.'"); *Univ. of Va. Patent Found. v. GE*, 755 F. Supp. 2d 709, 731-732 (W.D. Va. 2010) (declining to construe commonly understood terms because they had no specialized meaning).

This Court, consistently with all the above case law, also found that only certain terms needed construction, and the others did not need construction. Dkt. 138, at 14-15, 17, and 20-23. So, for any given term, either the Court construed the term (and Dr. Cooper relied on the Court's construction, Exhibit A, at ¶¶ 14, 18, 20; Exhibit B, at 125:10-14, 127:17-19, 147:22-24, 233:1-11); or the Court found that no interpretation was necessary because the terms had plain and ordinary meanings, as Health Grades had so adamantly argued.

Health Grades' argument is not only legally baseless; it is entirely inconsistent with Health Grades' actions throughout this case:

*First*, Health Grades insisted that none of these terms had specialized meanings and thus *no interpretation was necessary* for the terms because they were so easily and readily understood. Dkt. 79, at 1 (the claims "use common and well-understood terms" and so "*there are only three phrases that need to be interpreted*"; emphasis added); at 2 ("no construction is necessary for terms that have a commonly understood meaning"; "the actual terms at issue . . . are well-understood and do not need interpretation"; and insisting that the jury should be instructed only to use the "plain and ordinary meaning" for all but three terms); page 16-18 (citing numerous Federal Circuit and district court cases to emphasize that not all claim terms need formal interpretation). On the terms it did not construe, *the Court agreed with Health Grades*. Dkt. 138, *see, e.g.,* at 14-15 (citing *Philips*: "The Court agrees with plaintiff that there is no need to construe the word verified and, to the extent it were to be construed, the plain and

ordinary meaning would apply."); page 22 ("The Court will not construe this phrase because its meaning is evident."); page 23 ("In the absence of any persuasive explanation for why these phrases require construction, the Court declines to do so."); page 23 ("For the foregoing reasons, the Court concludes that the following terms and phrases *require no construction*: 'healthcare provider report on the first healthcare provider'; 'healthcare provider-verified information'; 'verified by an independent  third-party source'; 'using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source'; 'hyperlink to an affiliated hospital, medical center, or other type of treatment center'; 'the results list further includes an advertisement'; and 'member of the company managing the website'/'member healthcare provider.'") (emphasis added).

*Second*, Health Grades' own infringement contentions do not state interpretations of the terms not addressed by the Court, and so if Dr. Cooper's analysis was deficient (it was not) so were Health Grades' infringement contentions.  Dkt. 148-4.

*Third*, Health Grades' own expert Dr. Greenspun did the same thing as Dr. Cooper – the only interpretations he mentions are those construed by the Court.  *See, e.g.,* Dr. Greenspun's expert report on infringement, Exhibit C, at ¶¶ 67-72.  He does not attempt to "interpret" the elements that the Court did not interpret.  Instead, he proceeds directly from reciting the claim element to describing the Vitals website and his opinion that the claim term is met.  *See, e.g.,* Exhibit C, at ¶¶ 95-99, 100-108, and 109-11, etc.[1]

---

[1] Actually, Dr. Cooper did more on interpretation than did Health Grades' expert, Dr. Greenspun. Dr. Cooper provided helpful information for various terms.  *See, e.g.,* Exhibit A, at ¶41 ("This element describes use of a standard HTTP protocol web server ... ."); ¶42 ("This claim element describes ... ."); etc.

While Health Grades frames its arguments as if addressing every claim element, the only term it mentions specifically is the "verified" term, insisting that Dr. Cooper could not possibly find that term in the prior art without a detailed analysis of what the term means.  Health Grades' Motion. at 6-8.  Health Grades, however, argued to this Court that the term was so clear it needed no construction.  Dkt. 79, at 18-20 (identifying the "verified" term as the first under the heading "**Claim Terms That Do Not Need To Be Construed**").  Now, in an about-face, Health Grades seeks to preclude  Dr. Cooper's expert opinion because he did not "analyze" what Health Grades previously insisted was a "common and well-understood" term that needed nothing more than the Court's reference to its "plain and ordinary meaning."  The Court agreed with Health Grades, and did not construe the term.  Dkt. 138, at 14-15 ("The Court agrees with plaintiff that there is no need to construe the word verified and, to the extent it were to be construed, the plain and ordinary meaning would apply.").   As Health Grades raises no other specific claim construction questions, it should be precluded from doing so in its reply.

> **B.**     **Dr. Cooper's Invalidity Analysis Is Overwhelmingly Supported**

Health Grades next raises several issues, in an attempt to convince the Court that Dr. Cooper's invalidity analysis is not sufficiently detailed.  But Health Grades selectively crops from Dr. Cooper's invalidity expert report to suit its purposes, and overlooks the extensive evidence cited by Dr. Cooper.

> **1.**     **First Healthcare Provider**

Health Grades first complains that Dr. Cooper allegedly does not identify the "first healthcare provider" or explain how that provider meets the Court's claim construction.  Health

Grades' Motion, at 6 ("The Cooper Report does not identify who the first healthcare provider is in any of the prior art references ... .").

First, Dr. Cooper makes clear that the Health Grades website allowed requests for specific physicians – any would qualify as the "first healthcare provider" because they are physicians on which information is requested. *See, e.g.,* Exhibit A, at ¶ 41 ("all the Early HG Reports and Services" met the request on a first healthcare provider); ¶42 ("healthcare providers (e.g., physicians) . . ."). Dr. Cooper also cited ample deposition testimony to support his position. *See, e.g.,* Hicks transcript, Exhibit D, at 149:6-14 (inventor Hicks confirming that the Health Grades website allowed users to put in a specific doctor name into the Health Grades website to request information on specific doctors); Neal transcript, Exhibit E, at 214:17-215:2 (inventor Neal confirming that consumers would find reports on specific providers on the prior art Health Grades website by typing in the doctor's name); Montroy transcript, Exhibit F, at 309:8-310:6 (inventor Montroy, referencing the claim language, confirming that since at least 2004 Health Grades was receiving requests for specific providers over the website and providing reports). Further evidence relied upon by Dr. Cooper, and ignored in the Health Grades brief, is Health Grades' own sworn interrogatory response -- Health Grades has never contested the fact that users of the prior art Health Grades website requested information on specific providers and were given reports on the specific providers. Health Grades' Response to MDx's Interrogatory Number 8, Exhibit G. All this matches up precisely to the Court's claim constructions, on which Dr. Cooper based his opinions. Exhibit A, at ¶¶ 14, 18, 20.

Of course Dr. Cooper does not need to identify by name *every* physician on the prior art Health Grades website that was a "first healthcare provider" given the overwhelming evidence

that they all were (and that Health Grades is not contesting it).  Indeed, Health Grades'

infringement contentions, while providing some examples as Dr. Cooper does, have no focus on

any specific provider, either.  *See e.g.*, Dkt. 148-4, at 3-17.  The same is true for the analysis of

Health Grades' technical expert.  *See e.g.*, Exhibit C, at ¶¶ 100-108 and 212-213.

Nevertheless, doing far more than Health Grades did in its infringement contentions, and

far more than Health Grades' expert did in his infringement analysis, Dr. Cooper provides a

specific healthcare provider example:  Dr. Drucker.  This specific doctor is referenced ***dozens of***

***times*** throughout Dr. Cooper's invalidity expert report, the many exhibits cited by Dr. Cooper,

and the deposition testimony of Health Grades' personnel.  *See, e.g.,* Exhibit A, at ¶¶ 33, 41, 42,

44, 47, 54, 57, 58, 60 (repeatedly referencing and relying on the Drucker reports); Exhibit H

(deposition Exhibit 13 cited by Dr. Cooper, Drucker Report dated June 4, 2005), Exhibit I

(deposition Exhibit 51 cited by Dr. Cooper, email correspondence between John Neal and

Lauren DeRitis in March of 2005 and Health Grades Reports, at HG 179532-42); Exhibit D, at

149:6-150:9; Exhibit E, at 211:12-215:2, 221:12-235:16, and 252:4-255:14; Exhibit F, at 289:1-5

and 313:5-6.

### 2.      Ratings and Comparison Ratings of Healthcare Providers

Health Grades next complains that "Dr. Cooper does not identify where the prior art

shows ratings of a first healthcare provider … ."   Health Grades' Motion, at 6.  But Dr. Cooper

provides extensive evidence of this in his invalidity expert report.  He cites to a Health Grades

press release (deposition Exhibit 10 cited by Dr. Cooper; attached hereto as Exhibit J)

confirming that Health Grades had launched physician satisfaction survey results in the prior art.

Exhibit A, at ¶ 43.  He also cites, and copies into his report, specific patient ratings of Dr.

Drucker.  *Id*.  And Dr. Cooper shows patient ratings in multiple Drucker reports (Exhibits H and I, at HG 179538).  Exhibit A, at ¶ 43.  Dr. Cooper also cites deposition testimony (Exhibit E, at 167-79, 214, 228-29 (Health Grades was collecting patient-provided information in 2004, more than a hundred every day); Exhibit F at 47, 229-30, 253, 312-14; and Dodge transcript, Exhibit K, at 167) and various deposition exhibits (Exhibit L (deposition Exhibit 47 cited by Dr. Cooper, email correspondence between Dave Hicks and Shaikat Sen in May of 2004); Exhibit M (deposition Exhibit 48 cited by Dr. Cooper, averaging 117 survey results per day in 2004); Exhibit N (deposition Exhibit 49 cited by Dr. Cooper, survey for Health Grades website from 2004)).  Exhibit A, at ¶ 43.  As such, Dr. Cooper's invalidity expert report sets forth more than sufficient evidence (*e.g.*, deposition testimony and exhibits) to prove that, consistent with the Health Grades press release and actual prior art reports showing patient ratings, the patient ratings were being collected by Health Grades as early as 2004, and were launched on the Health Grades website easily early enough to be prior art.  *Id*.

Health Grades next complains that Dr. Cooper does not "explain how such [comparison] ratings are included in the same report as ratings of other healthcare providers as required by the Court."  Health Grades' Motion, at 6.  But the very same reports cited by Dr. Cooper show ratings of other healthcare providers in the same report as the ratings of, for example, Dr. Drucker.  Exhibit A, at ¶ 45 (citing Exhibits H at MGHG000019, and I at HG 179541, as appended hereto: "The Early HG Reports and Services ***also show*** ratings of healthcare provider hospitals that were intended to and do allow comparison of healthcare providers.").  Comparison ratings were also shown in various other reports.  *See* Exhibit O (deposition Exhibit 8 cited by Dr. Cooper, showing many comparisons of healthcare providers, including hospital and nursing

home ratings comparisons and various comparisons on physicians) at, *e.g.,* HG32038-40, and 32062-79.  Dr. Cooper cites extensive testimony on the subject, too.  Exhibit A, at ¶ 45 (citing Exhibit E at 153-54; Exhibit K at 72-73, 200-01, 225-26).

Health Grades states that the "comparison ratings" of healthcare providers should be of people, not hospitals.  Health Grades' Motion, at 6.  But Dr. Cooper expressly addresses that issue, too.  Exhibit A, at ¶ 45 (Dodge "testified that comparison ratings of physicians were added to reports at least as early as 2006" and concluding from this and other evidence that comparison ratings were in these reports in the prior art; and further opining that patient ratings on physicians would be obvious from the hospital comparison ratings).  The evidence cited by Dr. Cooper supporting his conclusions is extensive.  *See, e.g.,* Exhibit E, at 153-54; Exhibit K, at 72-73 (comparison ratings "by 2006"), 200-01, 225-26; Exhibit G; Exhibit H; Exhibit I.

Health Grades will also soon be facing a motion for sanctions regarding this particular "comparison ratings" element and its identity in the prior art.  Health Grades put up deliberately unprepared witnesses on the issue of when comparison ratings were first in the Health Grades reports, and accordingly MDx will be seeking sanctions.  The sanctions motion will seek, among other things, a determination that comparison ratings were in the prior art, or at the least an instruction that the jury should draw an adverse inference that comparison ratings were in the Health Grades prior art.

### 3.     Verified

Health Grades has had a change of heart on this issue.  During claim construction, Health Grades insisted that the term "verify" was so clear it needed no construction (Dkt. 78, at 18-20), and Health Grades successfully convinced the Court that no construction was needed for this

very reason (Dkt. 138, at 14-15).  During the Cooper deposition, counsel for Health Grades continued, having Dr. Cooper read into the record the Court's entire language confirming that there was "no need to construe" the term verified.  Exhibit B, at 41:5-22.  But Health Grades now does a complete flip-flop, alleging confusion about the meaning of the term and insisting a construction is necessary despite its earlier arguments, and this Court's ruling, directly to the contrary.  Health Grades' Motion, at 6-8.

While the Court did not interpret this element because it was clear and thus needed no interpretation, Health Grades now questions whether Dr. Cooper might have been using one interpretation for invalidity, and a different interpretation for infringement.  Health Grades' Motion at 6-8.  If counsel for Health Grades truly feels that way, then they will surely prepare their cross examination accordingly.  The reality, however, is that Dr. Cooper applied the same ordinary meaning to the term in both his invalidity and infringement analyses – the analyses simply come out differently for invalidity and infringement (the MDx website does not meet the term, and the prior art does).

Health Grades complains because, according to them, Dr. Cooper's report "says merely that Health Grades' prior art has third-party verified information because the information was provided by third parties. . . ."  Health Grades' Motion, at 6-7.  This argument is disingenuous.  First, it is simply untrue.  Health Grades purposefully crops out the very part of the Cooper invalidity expert report that makes clear that he did not "merely" show that the information was provided by third parties in the Health Grades prior art.  Health Grades' Motion, at 7 (see the "***" in the Health Grades quote; and compare in Exhibit A (at ¶ 44)  the substantial evidence and admissions of actual verification by the Health Grades witnesses that Health Grades

removed with that deceptive notation).  In truth, Dr. Cooper cited extensive testimony from the Health Grades witnesses showing that Health Grades did verify the information in addition to receiving the information from the third parties.  Exhibit A, at ¶ 44, citing *e.g.,* Exhibit E, at 227-28 (inventor Neal: confirming that the Health Grades prior art included verification from third party Health Grades); Exhibit K, at 36-37 (30(b)(6) prior art deponent Dodge: stating that in 2003 "there was third-party verified information in there"); *see also* Exhibit F, at 269-75 (inventor Montroy: stating "we were verifying on behalf of the consumer"); and at 313-17 (further confirming third party verification in the prior art); Exhibit D, at 114-15 (inventor Hicks: confirming the third party data in the claim "exactly matches" what is found in the Health Grades prior art).  On the infringement issue, in stark contrast, the MDx third party sources **disclaim** data accuracy.  *See, e.g.,* Exhibit P (the American Board of Medical Specialties: "accuracy and completeness of records cannot be guaranteed."); Exhibit Q (Pennsylvania Department of State: "The Department of State makes no representations or warranties, either express or implied, as to the accuracy of any posted information … .").  Health Grades has not produced any such disclaimers that were applicable to the prior art back in 2003-06.

Moreover, Health Grades would hardly be in a position to complain even if Dr. Cooper had "merely" required that the third parties provide the information, as that is the same way (and the only way) that Health Grades is claiming infringement.  Exhibit C, at ¶¶ 143-51 (for every data element, stating only that they are received from third parties in order to conclude that they are third party verified).  Dr. Cooper applied this element the way he understood it, and required **more** for the prior art to meet the element than did the Health Grades expert in his infringement

analysis.  *See* Exhibit B, at 127:17-19 ("And I think the Court construction [of verify] is in line with the way I think it should be."); Exhibit A, at ¶ 44.

### C.   Dr. Cooper's Invalidity Expert Report Is Specific

At pages 8-11 of Health Grades' Motion, Health Grades next complains that Dr. Cooper's thirty pages of single-spaced invalidity analyses, including the mountains of exhibits and specific deposition testimony he cites, is a "conclusory" opinion and, thus, should be excluded.  In support of this argument, Health Grades cites a Federal Circuit case, *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1151-1152 (Fed. Cir. 2004), that does not address expert reports at all.  In that case, the prior art reference was entered into evidence, but the defendant "***failed to provide any testimony or other evidence*** that would demonstrate to the jury how that reference met the limitations of the claims in the '268 patent or how the reference enabled one of ordinary skill in the art to practice the claimed invention."  *Koito Mfg. Co.*, 381 F.3d 1142, at 1151 (emphasis added).  Dr. Cooper's invalidity expert report is extensively detailed and cites many references and substantial deposition testimony supporting the existence of every claim element in the Health Grades prior art.

Health Grades' complaint that Dr. Cooper merely "lumps together" the prior art references ignores the extensive detail throughout the Cooper invalidity expert report on every specific element of the claims.  There is nothing wrong with Dr. Cooper citing to all the Health Grades products and services together, especially where they all have the same element, or for example, where an element is only about the use being over a website, which applies to everything.  After all, every item of prior art relied on by Dr. Cooper was in the ***same location*** –

the prior art Health Grades website.  A user could get on the single location of the Health Grades website, and practice the claim using any and all of these services and products.[2]

Dr. Cooper's report is extremely detailed, and he shows exactly how the prior art Health Grades website was using every element in the prior art.  The Drucker reports, for example, are analyzed separately and cited extensively throughout the Cooper invalidity expert report, and those reports each clearly had every element of every claim as detailed in Dr. Cooper's report. *See, e.g.,* Exhibit A, at ¶ 33, citing Exhibit H; Exhibit I, at HG 179532-42; *see also, e.g.,* Exhibit A, at ¶¶ 33, 41, 42, 44, 47, 54, 57, 58, 60 (repeatedly referencing the Drucker reports); Exhibit D, at 149-50; Exhibit E at 210-15, 221-35.

This Health Grades omnibus complaint is very difficult to address in an opposition brief, because there are too many claim elements and too much evidence to address in a single brief. The only element Health Grades specifically takes issue with in this section of its brief, however, is the question of whether the prior art had comparison ratings of healthcare providers.  Health Grades' Motion, at 10-11.  The prior art did have comparison ratings of healthcare providers, as addressed in Section II(B)(2), *supra*.

### D.     Dr. Cooper's Obviousness Analysis Is Specific

Dr. Cooper laid out in detail how every claim element is met by the prior art – he analyzed and discussed the scope and content of the prior art throughout his invalidity expert report (Exhibit A, at ¶¶ 39-63); he analyzed and discussed the level of skill in the art in his report

---

[2] Health Grades is confused about the law stating that every element must be found in the four corners of a document to be anticipatory.  Health Grades' Motion, at 10, n.2.  That analysis applies to printed publications, such as a prior art patent.  But, where the patent claims are systems and methods, there is anticipation where the invention was ***known*** or ***used*** (35 U.S.C. §102(a)) or ***on sale*** or in ***public use*** (35 U.S.C. §102(b)), such as occurred here on the Health Grades website in 2003-06.

(*id*., at ¶ 27); he analyzed and compared the claimed invention and the prior art throughout his report (*id*., at ¶¶ 39-63); and he analyzed and discussed secondary considerations in his report (*id*., at ¶ 64). As the primary example, to the extent that the jury would find (contrary to the evidence) that the Drucker report is not anticipatory, then it only lacks "comparison ratings of healthcare providers" because it shows comparison ratings of hospitals, not physicians. Dr. Cooper explains in detail how any person of ordinary skill in the art would find comparison ratings of physicians obvious from a reference that teaches comparing ratings of other healthcare providers, such as hospitals. *See, e.g.,* Exhibit A, at ¶ 45:

> Even if the element were not anticipated, the idea of comparison ratings of health care providers was disclosed in these documents, and comparisons of line items in database reports have been used to rank retrieved records for decades, this use of comparison ratings for this purpose would have been extremely obvious to a Posita [person of ordinary skill in the art].

> Therefore a Posita would have understood the material without first reading the patent specification or the claims.

***

> The Early HG Reports and Services also show ratings of health care provider hospitals that were intended to and do allow comparison of health care providers. It would be obvious to a Posita that ratings of other physicians would be a natural addition to the report.

> See also Neal pages 153-154. Dodge pages 200-201 also supports concluding that this claim element was known. Dodge pages 225-226 again confirms the claim element was known prior to the filing date. Exhibit 8 is also relevant. These items of evidence clearly demonstrate that the concept of having provider information and ratings available to prospective patients had been practiced in a way that the ratings could be compared. Even if hospital ratings do not meet the claim language literally, there are plain and clear teachings that any Posita would understand that ratings of health care providers could be shown side by side for comparison purposes, and these documents provide the motivation to do so.

This is not a situation where an obviousness combination needs two or more references – the very disclosures that make this element so obvious (if not anticipated) is in **the very same document that contains every other element**.  *See, e.g.,* Exhibits H and I (both of which show comparison ratings).  There is no need to "combine" anything to reach the invalidity conclusion.

The Health Grades witnesses provided supporting testimony to Dr. Cooper's obviousness analysis, too.  *See, e.g.,* Exhibit E, at 153-54 (hospital comparisons were clearly provided to allow users to compare health care providers); Exhibit K, at 200-01, 225-26 (same); Exhibit O, at HG32038-40, 32062-79 (showing many comparisons of healthcare providers, including hospital and nursing home ratings comparisons, and **including comparison of physicians**); Exhibit K at 72-73 (Health Grades 30(b)(6) deponent Dodge: unable to deny that physician comparison ratings were launched early enough to be prior art).

### E.   Dr. Cooper's Inequitable Conduct Analysis Is Supported and Specific

Dr. Cooper opines that these claims would not have issued but for the fraud Health Grades committed on the United States Patent and Trademark Office ("Patent Office").  Exhibit A, at ¶¶ 64-66.  He relied on the same analysis of the prior art, although this requires in part a lesser burden of proof (preponderance of the evidence before the Patent Office).  *Id*. at ¶64.  This opinion is sufficient for the same reasons stated above.

### III.   DR. COOPER'S INFRINGEMENT OPINION IS APPROPRIATE

Health Grades complains that Dr. Cooper's infringement analyses should be precluded because, allegedly, they are inconsistent with the Court's claim constructions.  Health Grades' Motion, at 13-17.

Health Grades claims that the Cooper non-infringement analysis is inconsistent with the Court's "interpretation" of the term "verification."  Health Grades' Motion, at 13-16.  This argument is way off base.  ***First***, it is not possible for Dr. Cooper, or anyone else, to use a construction inconsistent with the Court's construction because, at Health Grades' request, the Court declined to construe that term.  Dkt. 138, at 14-15.  ***Second***, the deposition testimony of Dr. Cooper, provided by Health Grades in its Motion at pages 13-16, does not show that he did anything inconsistent with the Court's view.  The testimony cited at pages 13-14 of the Health Grades Motion does not even mention the Court's opinion, but is only Dr. Cooper providing his honest opinion that the term "verified" means establishing the truth.  It does not conflict with anything the Court said.  *Cf.* Dkt. 138 at page 15, n.8 ("Although defendant is correct that 'verify' can mean 'to prove,' 'verify' may also mean, depending on its context, 'confirm' or 'substantiate.'"); *see also* Exhibit B at 127:17-19 ("and I think the Court construction is in line with the way I think it should be.").   As for Dr. Cooper's testimony about disagreement with the Court, even the testimony cited by Health Grades shows that Dr. Cooper only believes that the Court should have construed the term.  Exhibit B, at 43:14-15 ("I disagree with the Markman construction of verified, ***or lack of construction***"; emphasis added); and at pages 48:23-50:5:

> Q:  We have already established that you disagree with the Court's interpretation with respect to "verify."  Correct?

> Mr. Stimpson:  Objection.  That misstates his testimony.

> A:  Yeah.  I – I don't think I said it that way.  I said the Court chose not to construe in the Markman order the word "verify," and I think the Court should have construed that.

***

Q:  So you disagree with the Court in that instance?

A:  I disagree with that particular lack of construal of that word.

**Third**, even if Dr. Cooper was turned around enough from the confusing questioning to say that the Court may have a different view than he does, Dr. Cooper was wrong.  The Court's *dicta*,[3] provided in a footnote, states that verification requires receipt of "confirmation" from "some other source."  Dkt. 138, at page 15, n.8.  Health Grades itself practiced the claims this way, *i.e.,* by requiring proof from another source.  Exhibit F, at 145:3-12 (inventor Montroy: confirming that documentation or other verification was required by Health Grades for verification from healthcare providers). The patent claims require **both** (1) receipt from and (2) verification from, the healthcare provider, and we do not read the Court's opinion as requiring only receipt.[4]

## IV.  <u>ACCEPTABLE SUBSTITUTES</u>

In one paragraph on page 17 of its brief, Health Grades contends that Dr. Cooper should not be allowed to testify on the acceptability of substitutes.   Health Grades is correct that the issue here is the "absence of acceptable non-infringing substitutes."  Health Grades' Motion, at

---

[3] The parties seem to have a difference of opinion on the meaning of this footnote.  The Court's language, however, is clearly *dicta* because it was about proofs needed to ***satisfy*** the "verification" requirement, not about how the term itself should be ***interpreted***.

[4] The purpose of requiring this separate verification is evident from the data elements themselves.  That is, the doctors have obvious incentive to "puff" on all these specific elements – the more years in practice they have, the more languages they speak, the more awards and honors they have, etc., all make them look better, which brings in more business, which makes them more money.  While most doctors would be honest and trustworthy, not all will be.  This is why the claim insists on "verification" too – simply having a doctor ***say*** he obtained a glamorous award or honor, for example, is not enough; ***and the claims all expressly say so***.  The Health Grades analysis of this element that requires no more than receipt from the healthcare provider eradicates the verification requirement entirely in contravention of Supreme Court precedent. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997).

17.  But Health Grades' only complaint is that "Dr. Cooper omitted the very analysis that makes this factor relevant: the substitutes must be non-infringing."  *Id.*, at 17.

Health Grades misunderstands the burdens of proof.  It is ***Health Grades' burden*** to show the absence of acceptable non-infringing substitutes.  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) ("The Panduit test requires that a ***patentee establish***: . . . (2) absence of acceptable non-infringing substitutes. . . .") (emphasis added).  Health Grades has done nothing to show that any of these substitutes are infringing; indeed, Health Grades pursued no discovery from any third parties by which this could be proved.  So, without any proof by Health Grades that any of these are infringing, the only remaining question is acceptability.  Dr. Cooper, as an expert in this field, is the person to provide the opinion on acceptability.

## V.   CONCLUSION

For all the foregoing reasons, we respectfully request that the Health Grades motion be denied in its entirety.

Dated:  November 15, 2012                    Respectfully submitted,


                                             s:/Scott D. Stimpson
                                             Scott D. Stimpson
                                             Scott B. Murray
                                             David C. Lee
                                             Sills Cummis & Gross P.C.
                                             30 Rockefeller Plaza
                                             New York, New York 10112
                                             Tel: (212) 643-7000
                                             Fax: (212) 643-6500
                                             E-mail:sstimpson@sillscummis.com
                                             E-mail:smurray@sillscummis.com
                                             E-mail:dlee@sillscummis.com

                                             and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2012, I electronically filed the foregoing MDX MEDICAL, INC.'S OPPOSITION TO HEALTH GRADES, INC.'S MOTION TO PARTIALLY EXCLUDE EXPERT TESTIMONY OF DR. RICHARD G. COOPER PURSUANT TO FED. R. EVID. 403 AND 702, AND *DAUBERT V. MERRELL DOW PHARMS., INC.*, 509 U.S. 579 (1993) with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Jesus Manuel Vazquez , Jr.
  jvazquez@rothgerber.com, phenke@rothgerber.com

- Gregory B. Kanan
  gkanan@rothgerber.com, dgrooms@rothgerber.com

- Kris John Kostolansky
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- Scott David Stimpson
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- Scott B. Murray
  smurray@sillscummis.com

- David Chunyi Lee
  dlee@sillscummis.com

- Terence M. Ridley
  ridley@wtotrial.com, norris@wtotrial.com

  *s:/ David C. Lee*