# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.  11-CV-00520-PAB-BNB

HEALTH GRADES, INC.

       Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM

       Defendant.

---

## Declaration of Richard G. Cooper, D.Sc.

---

Attorneys for MDx Medical, Inc. ("MDx", or "Defendant") have asked me to submit the following disclosure of expert testimony for Richard G. Cooper, D.Sc.  I am engaged in ongoing development and refinement of my opinions and expected testimony and reserve the right to submit supplements to the information contained in this disclosure pursuant to the Federal Rules of Civil Procedure.

## Introduction

I have over 30 years experience in computer architecture, mathematics, software, internet, electronics and programming.  I am submitting an expert report on behalf of MDX in the referenced case, relating to the alleged intellectual property which Health Grades claims to have invented.  I have advised attorneys regarding technology issues, and I have studied the relevant materials in order to provide this report.  All opinions and facts stated herein are true and correct to the best of my knowledge.  I reserve the right to modify or supplement this report if more information is made available to me.  I have been asked to state the basis for my opinion.

## BACKGROUND

1.      For more than thirty years, I have developed computers, databases, and software.  I have extensive experience in business applications software development, and software to record, process and report on business processes.  I have developed database schemas, software to match lockbox receipts to outstanding invoices, financial applications, sales order processing, factory work flow analysis applications, database clients and servers, web HTTP servers with databases, HTML web sites and web applications, and I have written many, many software programs.  I

11.     Previously, I had developed a web site to sell a work flow measurement and analysis software product called EfficacyFX.  This web site used frames, graphics, HTML and the commercial quality of presentation that is required for commercial web sites.  I had previously developed the work flow software under contract with a manufacturer, who agreed to let me retain the intellectual property rights to the work flow software in return for discounted development costs.

12.     Presently, I am continuing the development of the EnglishLogicKernel.com website mentioned in paragraph 9 above.  This site provides a substantial number of pages which offer assistance to IP attorneys, experts, and inventors who wish to prosecute or litigate patent cases, or to check for possible infringement of patents.

13.     Presently, I am an independent consultant offering products and services to various industries, focusing on the intellectual property legal services community.  As part of my consulting practice, I also serve as an expert witness for providing independent opinions to attorneys in cases where my expertise is appropriate.  I have acted as an expert witness in some four dozen or more cases, mostly relating to patents covering database, software, internet or electronics technologies.  Previously, I was employed at Heller Ehrman, LLP in San Diego for supporting prosecution and litigation of patent related intellectual properties.  Prior to that, I was a contractor at Paul, Hastings, Janofsky and Walker, LLP in San Diego filling the same need for experts in computer science and electrical engineering technologies.

14.     This report is based on my education, professional career and relevant experiences, as well as the materials reviewed.  My education, experience and qualifications are set forth on my curriculum vitae attached hereto as Exhibit A which also contains a list of all publications I authored within the last 10 years.

15.     I have provided a number of expert opinions for legal matters.  *See* Exhibit A.  For Imagery Group, I was deposed by Epicore's attorney during the case *Epicore Software v. Imagery Group* in February 2007.  In the case *GTX v Kofax, Nuance, Cannon et al,* I was deposed over a twelve hour period on technologies related to optical character recognition and image processing.  In the case *Kohler v Wyeth*, I was deposed twice regarding the quality, integrity and security of a database developed and used in the 1990's.  I testified in Los Angeles Superior Court, describing the database technology issues in that case.  I was deposed in the case *Winer v Family Honda*.  I also testified in Federal Court in the *LogicLink v KeyLink* case, and was deposed twice in that matter.  I have testified in Colorado state court for State Farm as intervenor in another case.

16.     I am being compensated on an hourly basis at $300 per hour for work done in my office, and for $350 per hour for time plus cost reimbursement for travel and materials required to complete my work during the case.

17.     In preparing my opinion in this case, I have been supplied with certain materials, as described below.  However, to reach any conclusions relating to the computer technologies which were applied in this case, and to advise the attorneys regarding the technology issues I will

review applicable documents, the deposition testimony of fact witnesses, relevant interrogatory and other discovery responses.

18      In preparation of my report, I have reviewed the materials referred to in this report, and the materials described below, including the following:
       - U.S. Patent No. 7,752,060 (the "'060 patent")
       - Prosecution history of the '060 patent, and prior art cited therein
       - U.S. Provisional Application No. 60/771,757
       - Deposition transcripts of all witnesses, including Defendant's deposition exhibits (specific pages are cited below as exemplary, but I reserve the right to rely on any parts of these deposition transcripts)
       - Claim Construction Order
       - MDx Second Amended Answer with Inequitable Conduct Defense
       - Third Supplemental Invalidity Contentions under Rule 3-3 - Appendix chart
       - Third Supplemental Invalidity Contentions under Rule 3-3
       - Protective Order
       - Health Grades' responses to Interrogatories
       - Market Share Trend Data (Traffic Comparisons) spreadsheet
       - Telephone conversation with Chief Technology Officer Larry West of MDx
       -Telephone conversation with Vice President & General Manager of Vitals, Jeff Cutler of MDx
and    - Telephone and in-person discussions with attorneys representing MDx.

19.     I may give a general tutorial of the technology involved in this case, including the technologies which apply in this case.  I may create graphic depictions and/or tables and charts for exhibits to aid the Court in its understanding of the technology involved.  However, at this time I have not specifically created any exhibits for this litigation.


# Methodology

20.     In this report, and in any supplemental reports to be filed, I have based my opinion in part on data provided by the evidence cited in paragraph 18 above.  I based my opinions in part on my own experience as a software engineer, including my work as a research and development engineer.  I also based my opinions in part on my education through doctoral studies in computer science, and on my experience in sizing and architecting computer networks numerous times over the last thirty years of practice.  I have applied the principles of computer architecture as commonly understood, forming my method of analysis for this case.   This case also draws on my background and knowledge of health care practices, medical issues, technologies, and standard practices as detailed in the sections above.

21.     I call on my patent prosecution and litigation experience including training I received from two law firms on the United States Patent and Trademark Office processes related to patents.  I use this training to support my technical experience, and to guide me in documenting the legal issues related to this case.  I understand what inequitable conduct means in legal terms,

## Invalidity of All Asserted Claims

22.     I will describe the technological issues regarding the '060 patent, and how each of the component technologies are constructed and used.  That material will be background for explaining my opinions and conclusions.

23     Plaintiff Health Grades, Inc. ("Health Grades") asserts infringement of the '060 patent, specifically claims 1, 4-9, 11, and 14-16. I have reviewed the '060 patent specification and file history.  The '060 patent relates to the area of computer implemented methods of providing healthcare-related information to potential patients.

24.     I believe that my experience, as detailed above, qualifies me as an expert in the field of the technology of the '060 patent, and that my methodology is consistent with my experience.

25.  In my opinion, the '060 discloses a database, coupled to a web server and web pages, which embodies a style of web site development which is very well known to a person of ordinary skill in the art, to implement the claims.

26.  I understand that MDx has the burden of proof on invalidity by providing clear and convincing evidence.

27.  Based on my review of the '060 patent and file history, and from my knowledge and experience with the technology at issue, a person of ordinary skill in the art at the time of the alleged invention (Posita) would be at least a bachelor's degree in computer science from an accredited college, with at least several years experience in developing web sites and database applications linked together in a web site, and also having significant experience in the health care area.  I base this opinion on the levels of education and experience of those creating the web sites at issue in this litigation and the deposition testimony of the inventors and generally from my own overall experience in this area.  The person of ordinary skill in the art at the time of the alleged invention, in my opinion, would have found these claims to be anticipated or obvious, and not novel inventions.

28     The utility application leading to the '060 patent was filed August 29, 2006.  It claims priority to a provisional application filed February 6, 2006.  I understand that it is Health Grades' burden to show that the claims of this patent are entitled to the priority date claimed, but nevertheless I provide my opinion here that the '060 patent is not entitled to the earlier priority date of the provisional application.  Reviewing the provisional specification, I found that it is only 20 pages long, and presents only four figures for the consideration of the Posita.  The utility specification by contrast is twice as large and contains over twenty figures, greatly expanding the material that was presented in the provisional.  Furthermore, the provisional application does not disclose or teach "*comparison ratings of health care providers*", "*results list further includes an advertisement for the first healthcare provider*", and "*favorable positioning in the results list*" for a member, as required by the patented claims.

29.  Counsel for MDx has explained to me the legal standard under 35 U.S.C. 119(e) for a claim of priority to a provisional application.   I understand that the provisional application must satisfy the written description, enablement, and best mode requirements with respect to the claims of the '060 patent.  I further understand that the written description requirement requires the provisional application disclosure to describe the claimed invention in a way to indicate to a Posita that the inventors had possession of the claimed invention at the time the application was filed.  I further understand that the enablement requirement requires the provisional application to set forth a disclosure that enables a Posita to make or use the patented claims.

30.  In my opinion, the provisional application disclosure fails at least the written description and enablement requirements.  My opinion is based on my review of the provisional application disclosure, and the '060 patent and its file history.

31.  Specifically, the provisional application does not disclose or teach "*comparison ratings of health care providers*", "*results list further includes an advertisement for the first healthcare provider*", and "*favorable positioning in the results list*" for a member.  In my opinion, these missing disclosures would make a Posita uncertain about how to implement the claimed invention without undue trial and error experimentation.  Therefore the provisional application is, in my opinion, unsuited to fully disclose the claimed invention.

32.  Based on the foregoing, the effective filing date of the '060 patent is August 29, 2006.  The prior art relied upon however, is prior art regardless of whether Health Grades is entitled to the priority date or not.

33.     To demonstrate the invalidity of the asserted claims of the '060 patent, I will refer to prior art that I will call "Early HG Reports and Services", which includes the Health Grades web site prior to August 29, 2006, and encompasses prior art products and services of Health Grades.  Examples of the Early HG Reports and Services are the Health Grades Premium Reports, the Drucker reports, the Physician Quality Guides, the Physician Quality Reports, the Physician Research Comparison Reports, the Comparative Physician Report, the Physician Quality Comparison Reports, the Nursing Home Comparison Reports, the Physician Online Services, Connecting Point, and the Physician New Marketing Media.  See for example Defendant's deposition exhibits 8, 13, 21 and 51.

34.  I understand that the Early HG Reports and Services qualify as prior art if they satisfy at least one section of 35 U.S.C. 102.  Section 102(a) requires that "*the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent*".  Section 102(b) requires "*the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States*".

35.  The Early HG Reports and Services qualify as prior art under 102(b).  From document and deposition discovery, the Early HG Reports and Services were on sale, in public use, and disclosed in printed publications, long before the August 2006 filing date..  These all occurred at

least one year before the filing of the utility application.  Therefore, the Early HG Reports and Services are prior art under section 102(b).

36.  But even if the February 6, 2006 filing date of the provisional application is used for prior art determinations, the Early HG Reports and Services still qualify as prior art under 102(b) because they were on sale and described in printed publications and in public use more than one year prior to that date.  Dates of use, sale, and publications are addressed below.

37.  The Early HG Reports and Services are also prior art under 102(a) because they were known and used by others in this country, and described in printed publications in this country, before Health Grades' alleged invention date on February 6, 2006.  As these publications, this public knowledge, and public use, occurred before February 6, 2006, the Early HG Reports and Services also qualify as prior art under section 102(a).  Actually, there is no proof I have seen that the invention date is February 6, 2006 – the only evidence of invention date by these inventors is the August 29, 2006 application.

38.     The '060 patent, claim 1, states its meets and bounds as:

**1.** A computer-implemented method of providing healthcare provider information to potential patients, said method comprising:

1.1.  receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider,
     wherein the Web server computer comprises at least one computer processor and memory;

1.2. accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of:
     specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;

1.3. compiling, by the at least one computer processor, patient-provided information regarding the first healthcare provider,
     wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider,
     and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider,
     and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;

1.4. compiling information regarding the first healthcare provider verified by an independent third-party source,
    wherein the information verified by the independent third-party source comprises three or more from the group consisting of:
        board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;

1.5. creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source,
        wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers;

and

1.6. providing access to the healthcare provider report on the first healthcare provider over a computer network.

39. Each of the six sections of claim 1 above will be treated in a paragraph or more below.

40. Claim '060.1's preamble specifies:

A computer-implemented method of providing healthcare provider information to potential patients, said method comprising:

All the Early HG Reports and Services met this claim language in 2004 as shown by the Montroy deposition (page 308 to 309). In response to Interrogatory number 8, Health Grades does not appear to contest this fact. Since the web site was publicly hosting this information, it is my opinion that the Early HG Reports and Services meet this claim language.

41. Claim element '060.1.1 specifies:

1.1. receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider,
        wherein the Web server computer comprises at least one computer processor and memory;

This element describes use of a standard HTTP protocol web server engaged in what a Posita would immediately recognize as the well known technology of web page transport between a server and a client computer. There is no new material disclosed in this element that has not been known to Positas for decades.

Therefore this claim element, while not novel in itself, provides simple structuring to the claim language but adds no new material. HTTP protocol, and its various embodiments, have been well known more than a year prior to the filing of the provisional application and more than two years prior to utility filing of the enabling specification. Therefore, this element has been met by prior art not created by the inventor.

From page 149 of the Hicks deposition:

```
6 Q. (By Mr. Stimpson) Okay. And the user would
7 obtain access to this report through this, HealthGrades'
8 Web page, right?
9 A. I believe so.
```

Mr. Hicks clearly admits that the document was publicly available through the web server in June, 2005 and therefore constitutes prior art.

Montroy's deposition confirms that all the Early HG Reports and Services met this claim language element. Montroy deposition (p 309-310). See also the Neal deposition transcript page 214-15 regarding the Drucker report. Health Grades has not contested this in response to interrogatory number 8.

42. Claim element '060.1.2 discloses:

> 1.2. accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of:
>> specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;

Providers must describe their skill set in terms that the patient can recognize and evaluate. This claim element describes three or more properties of the provider which are drawn from the list above. None of these properties are novel; in fact they are commonly used by prospective patients to help select a provider which meets the patient's requirements.

From Defendant's deposition Exhibit 10:

> HealthGrades recently began adding two new sets of data to its Physician Quality Reports': physician-satisfaction surveys from the consumers that visit its Web site monthly, and *detailed physician and practice information from physicians themselves*, which includes practice *philosophy*, *subspecialty information*, teaching positions, *published peer-reviewed articles*, number of procedures performed, among other items. …

> -Italics added for emphasis

This document clearly states that health care providers (e.g., physicians) provided healthcare information.  Specifically, provider-verified information about the first healthcare provider was reported, as the claim language states.  The italicized portions of the above statement show that at least three items from the listed claim element items.

Therefore claim element '060.1.2 was disclosed by Defendant's deposition Exhibit 10. Therefore the element has been anticipated.

From John Neal's deposition on pages 210 and 211:

```
20 Q Okay. And when did Dr. Drucker's profile
21 first go on the website?
22 A Well, his original profile would have gone
23 on the website when we launched physician reports as
24 just part of all the physician profiles that we
25 provided, so when we launched the site, which would
Page 211
2 have been 2003.
```

Mr. Neal's testimony indicates that the Drucker report would have been on the web site as early as 2003.  On further investigation, we find that the Drucker report was posted on the web site at least as early as 2005, as shown on a date marking affixed to the Drucker report showing June 4, 2005 as the date of last editing (Defendant's deposition Exhibit 13).  Even this date constitutes more than one year prior to the filing of the utility patent, and therefore the patent is invalid due to anticipation.

Also from the Neal deposition at page 225:

```
13 Q Can you make the same deduction here that
14 some of this probably came from Dr. Drucker?
15 A That philosophy was one of a kind. That
16 was hard-coded in the website. It most likely came
17 from Dr. Drucker, or one of his close associates, or
18 perhaps his office assistant.
```

The *medical philosophy* information was provided by Dr. Drucker either directly or indirectly, as stated by Mr. Neal.  Therefore the *medical philosophy* requirement of claim '060.1.2 was practiced more than a year prior to the filing of the utility patent application and therefore constitutes prior art in anticipation of the invention.

Neal deposition page 226 indicates that *publications* information was also provided by Dr. Drucker:

```
14 Q Okay. How about publications? Would that
15 have come from Dr. Drucker or his assistant?
16 A I think -- my guess is that it probably
17 did.
```

Neal deposition page 225 further indicates that Dr. Drucker provided information about *awards and honors*:

```
24 Q How about awards and honors?
25 A No, there are sources for some of that
Page 225
2 information, but it's possible that Dr. Drucker's
3 office administrator could have provided that for
4 this prototype.
```

Dr. Drucker may have also provided information about *awards and honors*, as specified in the claim element.

Neal deposition page 230-231 also indicated that languages could have come from Drucker. This is further confirmed by Defendant's deposition Exhibit 50 in which Scott Montroy reports the status of the web site as having additional content provided by Drucker.  This status report is dated 2/16/2005.

Therefore, considering the above information, and the information to appear below, it seems clear that Dr. Drucker did indeed provide at least "*three or more from the group consisting of: specialty information, **medical philosophy**, gender, age, years in profession, years in practice, **awards**, **honors**, professional appointments, professional memberships, **publications**, **languages**, and hobbies;*".  This claim element was therefore met by the prior art from 2005, more than a year prior to the utility filing date.

Health Grades began their Physician Online Services in May, 2004.  Defendant's deposition Exhibits 27 and 28, and Montroy deposition at page 245-251 provide more information in support of this conclusion that the alleged invention was publicly available as early as May, 2004.  The intent of the Physician Online Services was to give physicians the ability to review and edit their data.  Dodge deposition page 80 confirms that this capability was intended for physician use at that early date.  These changes were implemented in the Health Grades reports easily early enough to constitute prior art.  See Defendant's deposition Exhibit 28, Montroy deposition page 202, 250-251 and Neal deposition page 206-209.  See Defendant's deposition Exhibit 26.

Therefore, all aspects of this claim element '060.1.2 were in use and available to the public knowledge at least as early as May, 2004, and the information was in the Health Grades Reports soon thereafter.

43.  Claim element '060.1.3 states:

> 1.3. compiling, by the at least one computer processor, patient-provided information regarding the first healthcare provider,
>     wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider,
>     and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider,
>     and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;

Prior art has disclosed the use of patient surveys to solicit information from patients describing their experience with the provider.  Therefore this element also discloses no novelty not already known to a Posita.

Defendant's deposition Exhibit 10 as recited above, discloses using surveys of patient experience to rank providers:

> HealthGrades recently began adding two new sets of data to its Physician Quality Reports': physician-satisfaction surveys from the consumers that visit its Web site monthly, …

Therefore the use of surveys, as specified in the claim element:

> patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider

has already been anticipated prior to the utility filing date.  As a result, this claim element has also been anticipated by prior art.

On page 2 of Defendant's deposition Exhibit 10, it is clear that consumer ratings were provided in anticipation of the invention:

> "HealthGrades' Web site is the leading destination for healthcare ratings for consumers,".

In Defendant's deposition Exhibit 13, there is a graphic from the report which Health Grades provided, and which shows that patient ratings were used:



des.com/consumer/index.cfm?fuseaction=modnw&modtype...   06/04/2005

A Posita would know that the ratings came from patients before being constructed into a graphic suitable for reporting like the one above. The legend states that the data was extracted from six patient surveys. Footnote 2 states that the data is patient data. See also Defendant's deposition Exhibits 50 and 51, Neal deposition 214, 228-29.

Therefore, the claim element:

> wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider

clearly has been met by the prior art.

Health Grades started collecting patient-provided information at least as early as May, 2004. Neal deposition page 167 and Defendant's deposition Exhibit 47 confirm this conclusion. Defendant's deposition Exhibit 47 is an email from Dave Hicks, May 7, 2004 which states that the survey is being launched on the web site. See also Montroy deposition pages 229-230. Defendant's deposition Exhibit 29 and Neal deposition page 169 also support this conclusion. This also shows that the prior report purchasers were sent by email knowledge of these patient surveys. Defendant's deposition Exhibit 48 and Neal deposition page 174-178 show that they were collecting on average over one hundred survey results every day. Reference Defendant's

deposition Exhibit 49 and Neal deposition page 179 and Dodge deposition page 167.  Montroy deposition page 47 further confirms that patient ratings were collected with the surveys. Montroy deposition page 253 confirms the email to past customers and solicited them for input as well.  Montroy deposition page 312-314 states that providers received patient provided information well prior to February, 2006 and that the company web site provided that information.

This testimony and evidence show clearly and convincingly that many of the Early HG Reports and Services included ratings provided by patients over the Health Grades web site well prior to February, 2006.

44.  Claim '060.1.4 discloses:

> 1.4. compiling information regarding the first healthcare provider verified by an independent third-party source,
>    wherein the information verified by the independent third-party source comprises three or more from the group consisting of:
>        board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;

Prior art references are shown below that disclose the same material.  Therefore this element is also not novel per se.

From Defendant's deposition Exhibit 13, this claim element is clearly practiced:

Copyright © 2004 Elsevier Inc. and the American Board of Medical Specialties. All rights reserved.

| Medical School | Intern |
| --- | --- |
| Finch University Health Sciences Chicago School of Medicine North Chicago, IL, 1983 | UMDNJ-NJ MEDICAL SCHOOL NEWARK, NJ, 1984 |

| Residency | Fellowship |
| --- | --- |
| Umdnj University Hospital | INDIANA UNIVERSITY |

As shown in the figure above, *medical school*, *medical internship*, *medical residency*, and *medical fellowship* information are all provided by Elsevier Inc and the American Board of Medical Specialties.  Therefore the claim element '060.1.4 has been met in every detail.  As a result, Defendant's deposition Exhibit 13 comprises prior art which in my opinion renders the claim invalid through anticipation.

From Neal deposition page 227:

```
23 Q (BY MR. STIMPSON) How about the rest of
24 it? Medical school, residency, internship,
25 fellowship, areas of expertise; those all came from
Page 227
2 third parties, too?
3 MR. VAZQUEZ: Form.
4 A Most likely, yes.
5 Q (BY MR. STIMPSON) Would Health Grades
6 have verified that information?
7 MR. VAZQUEZ: Form.
8 A For Dr. Drucker we would have because,
9 again, this is the prototype profile.
```

As admitted by Mr. Neal, medical school, residency, internship, and fellowship information appearing in the Drucker report was provided by third party sources.  Health Grades also verified the information, according to Mr. Neal, as required by the claim element.  Therefore the claim element has been met in every particular by prior art materials more than one year prior to the date of utility application filing.

See also Drucker, Defendant's deposition Exhibit 51 and Neal deposition pages 227-228.  Early HG Reports and Services showed that every one of these items is known to be used and published early enough to constitute prior art (it would seem that the inventors used this prior art in crafting the claims).  See Montroy deposition pages 269-275, Defendant's deposition Exhibit 8.  Also see Neal deposition pages 128-129.  See also Dodge deposition pages 36-37 regarding Physician Quality Reports.  Montroy deposition pages 313-317 also relates to this claim element.  Hicks deposition pages 114-115 also relate to this claim element.

I conclude that the Early HG Reports and Services had all this information, and it was obtained from and verified by third parties, therefore the claim element is met.  Health Grades does not appear to contest that this claim element has been met.  See Health Grades' response to Interrogatory 8.

45.   Claim element 060.1.5 teaches:

1.5. creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source,
      wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers;

The specification describes how databases are to be used in storing, retrieving and reporting on material stored in the database.  This claim element therefore is also not novel per se, and prior

art will be shown to illustrate that lack of novelty.  The use of database reporting methods is very well known in the art, and not specific to this patent specification.

The specific use of comparison ratings has also been found in prior art materials, as described below.  The testimony of Mr. Dodge, when combined with other evidence, also indicates that comparison ratings were in the Early HG Reports and Services early enough to be prior art.  Therefore, this claim element is also anticipated.

Even if the element were not anticipated, the idea of comparison ratings of health care providers was disclosed in these documents, and comparisons of line items in database reports have been used to rank retrieved records for decades, and so this use of comparison ratings for this purpose would have been extremely obvious to a Posita.

Therefore a Posita would have understood the material without first reading the patent specification or the claims.

Furthermore, the Early HG Reports and Services specifically comprise reports which were prior art to the claim, and which meet in every detail the claim elements limitations.  See for example the information in Defendant's deposition Exhibits 13 and 51, including "…healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source" as specified in the claim element.

The Early HG Reports and Services also show ratings of health care provider hospitals that were intended to and do allow comparison of health care providers.  It would be obvious to a Posita that ratings of other physicians would be a natural addition to the report.

See also Neal deposition pages 153-154.  Dodge deposition pages 200-201 also supports concluding that this claim element was known.  Dodge deposition pages 225-226 again confirms the claim element was known prior to the filing date.  Defendant's deposition Exhibit 8 is also relevant.  These items of evidence clearly demonstrate that the concept of having provider information and ratings available to prospective patients had been practiced in a way that the ratings could be compared.  Even if hospital ratings do not meet the claim language literally, there are plain and clear teachings that any Posita would understand that ratings of health care providers could be shown side by side for comparison purposes, and these documents provide the motivation to do so.

Supporting my conclusion that this claim element is anticipated is the deposition testimony of Mr. Dodge.  He testified that comparison ratings of physicians were added to reports at least as early as 2006 (see pages 72-73).  But Mr. Dodge did not state exactly what date in 2006 they were first made available on the web site, and at his deposition he was unsure of when comparison ratings were first used.  But based on Mr. Dodge's testimony on other claim elements, it seems clear that the comparison ratings on physicians were actually released before 2006.  For example, Mr. Dodge testified that patient ratings did not enter the reports until 2006 (the same year he said comparison ratings were first used), yet attorneys for MDx were able to elicit testimony and show evidence that patient ratings were made available as early as 2004.  Since Health Grades' web site had hospital ratings well prior to 2006, and were showing them in

comparison format, it stands to reason that they would have done the same thing with patient ratings.  This is further supported by the fact that Mr. Dodge testified that to his recollection patient ratings and comparison ratings were first used in the same year; he was just wrong about the year when he testified he recalled 2006.

The web site was available over the internet and the reports were made available over the internet.  See for example Montroy deposition page 320.  See also Neal deposition pages 129 and 214.  See also Defendant's deposition exhibit 23 and Montroy deposition pages 224-225 for the physician quality guide.  See Montroy deposition pages 318-320.  See also Defendant's deposition Exhibit 8 and Montroy deposition pages 259-264.

In conclusion, this claim limitation seems to have been clearly anticipated by Health Grades' own Early Reports and Services.  At the very least, comparison ratings of health care provider hospitals were shown in the Early HG Reports and Services, thus making it extremely obvious to a Posita that the same could be done with patient ratings of physicians.

46.   Claim element 060.1.7. states:

and

1.6. providing access to the healthcare provider report on the first healthcare provider over a computer network.

It is well known in the art that the HTTP web protocol, coupled with a database at the server, can transmit reports over the computer network from the HTTP server to the HTTP client.  Therefore this claim element is also well known to a Posita and adds no new novelty to the claim.

Furthermore, the URL of each page of the reports is printed at the bottom of each page.  In my opinion, this demonstrates that the pages were served by an HTTP web server and printed from an HTTP web client.

Therefore, this claim element has also been anticipated fully by the prior art of the Early HG Reports and Services.  See Montroy deposition page 320.

47.   Dependent claims 4 through 9, 11 and 14 are also anticipated by the Early HG Reports and Services.

18.4.1.   Claim '060.4 states:

4. The method as defined in claim 1, wherein the healthcare provider report includes a hyperlink to an affiliated hospital, medical center, or other type of treatment center.

The Early HG Reports and Services practiced the limitation that "the healthcare provider report includes a hyperlink to an affiliated hospital, medical center, or other type of treatment center". See Montroy deposition pages 98 and 204, and see, for example, the Drucker physician quality report.

Therefore, claim '060.4 is invalid due to prior art which anticipates the claim in its entirety.

48.  Claim '060.5 states:

   **5.** The method as defined in claim 1, wherein the access to the healthcare provider report is obtained through a predetermined Web page that provides search capabilities for a database comprised of healthcare provider information.



As shown by the example in the figure on page 17 of the document, Bates number HG0179534, a search engine is provided under the Health Grades web domain name.  See also Dodge deposition pages 123-126.

Therefore, claim '060.5 is met by the Early HG Reports and Services.  As a result, claim '060.5 is invalid due to anticipation by HG0179534.

49.   Claim '060.6 states:

> **6.** The method as defined in claim 5, wherein the search capabilities permit a search based on one or more from the group consisting of: name, medical specialty, gender, state, city, procedure, diagnosis, procedure, and location criteria.



As shown in the figure above from HG0179550, physician name, city and state are among the search criteria provided by the Early HG Reports and Services.  See also Dodge deposition page 127-128.  See Montroy deposition page 162 and Defendant's deposition exhibit 19 and Montroy deposition pages 180-182.

Therefore, claim '060.6 is invalid due to anticipation by HG0179550.

50.   Claim '060.7 states:

> **7.** The method as defined in claim 6, wherein the search of the database produces a results list of one or more healthcare providers satisfying the search criteria, wherein the results list includes the first healthcare provider.

In the section above on claim '060.6, claim '060.7 is invalid due to claim '060.6 being invalid due to anticipation by the Early HG Reports and Services, for example, HG0179550.  See also Dodge deposition page 129.

51.   Claim '060.8 states:

> **8.** The method as defined in claim 7, wherein the results list further includes an advertisement for the first healthcare provider with a hyperlink to information on the first healthcare provider.

The Health Grades early Connecting Point launched in 2005 had physicians showing up in advertisements in search results including hyperlinks to the health care provider information.  See Dodge deposition pages 56, 130-134.  See also the web advertisement at HG0179534.

Defendant's deposition Exhibit 50 also indicates that ads for a healthcare provider (GCOA) were in production at that time.  See Dodge deposition pages 209-10.

Therefore, the '060.8 claim is invalid due to both anticipation and obviousness, in my opinion.

At the least, the '060.8 claim would have been obvious to a Posita because advertisements like this and their benefits were also well known in other art.  See Invalidity Contentions, including U.S. Patent Application Publication No. US 2006/0294138 A1, page 5 and Figure 7, for example.

52.   Claim '060.9 states:

> **9.** The method as defined in claim 7, further comprising: determining from the results list whether a particular healthcare provider is a member of the company managing the Web site; and if the particular healthcare provider is a member of the company managing the Web site, providing enhanced services for the member healthcare provider on the Web site.

Defendant's deposition Exhibit 51 describes a letter by John Neal in which Mr. Neal offers enhanced services for providers to prospective customer Lauren Deritis for membership in the Health Grades web site at a fee.  See also Defendant's deposition Exhibit 50.

See also Dodge deposition page 133 and Montroy deposition pages 112-114 and pages 139-140. Hicks deposition pages 49-52 is also relevant.  Therefore this marketing media was available in 2004-2005 and allowed physicians to have enhanced features and services by paying a fee.

This element is therefore also anticipated.

53.   Claim '060.11 states:

> 11.   The method as defined in claim 9, wherein the enhanced services comprise favorable positioning in the results list.

The following figure from John Neal's letter (Defendant's deposition Exhibit 51) illustrates premium placement of a search result at the top of the search page:



This document was dated February, 2005 and therefore asserted claim 11 is invalid due to anticipation.  See also Dodge deposition page 133.

54.   Claim '060.14 states:

>   14.   The method as defined in claim 1, wherein the first healthcare provider is a physician.

Dr. Drucker is a physician, as he was characterized in all of the discovery materials.  Therefore the asserted claim 14 is invalid due to anticipation as shown in earlier paragraphs relevant to Dr. Drucker's example material.  Many of the Early HG Reports and Services showed physicians.  See for example Defendant's deposition exhibits 8, 13, 21 and 51.

55.   Independent claim '060.15

Claim 15 specifies:

>   15. An on-line information system for connecting health10 care providers with potential patients, the system comprising:

>   15.1. at least one computer processor; and

>   memory coupled with and readable by the at least one computer processor and comprising a series of instructions that, when executed by the at least one computer processor, cause the at least one computer processor to:

>   receive a request for information regarding a first healthcare provider;

15.2. access healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;

15.3. compile patient-provided information regarding the first healthcare provider,

> wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and

> wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and

> wherein the company Web site is managed by a company providing a service for connecting healthcare providers with the potential patients;

15.4. compile healthcare provider information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;

15.5. create a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and

15.6. provide access to the healthcare provider report on the first healthcare provider over a computer network.

Each of the six sections of claim 15 above will be treated in a paragraph or more below

56.   Claim '060.15's preamble specifies:

15. An on-line information system for connecting health care providers with potential patients, the system comprising:

The preamble identifies a system claim in contradistinction to the preamble of claim 1.

Page 24

All the Early HG Reports and Services met this claim language in 2004 as shown by the Montroy deposition (page 308 to 309).  In response to Interrogatory number 8, Health Grades does not appear to contest this fact.  Since the web site was publicly hosting this information, it is my opinion that the Early HG Reports and Services meet this claim language.

57.   Claim element '060.15.1 specifies:

15.1. at least one computer processor; and

memory coupled with and readable by the at least one computer processor and comprising a series of instructions that, when executed by the at least one computer processor, cause the at least one computer processor to:

receive a request for information regarding a first healthcare provider;

This element describes use of a standard HTTP protocol web server engaged in what a Posita would immediately recognize as the well known technology of web page transport between a server and a client computer.  There is no new material disclosed in this element that has not been known to Positas for decades.

Therefore this claim element, while not novel in itself, provides simple structuring to the claim language but adds no new material.  HTTP protocol, and its various embodiments, have been well known more than a year prior to the filing of the provisional application and more than two years prior to utility filing of the enabling specification.  Therefore, this element has been met by prior art not created by the inventor.

From page 149 of the Hicks deposition:

```
6 Q. (By Mr. Stimpson) Okay. And the user would
7 obtain access to this report through this, HealthGrades'
8 Web page, right?
9 A. I believe so.
```

Mr. Hicks clearly admits that the document was available through the web server in June, 2005 and therefore constitutes prior art.

Montroy's deposition confirms that all the Early HG Reports and Services met this claim language element.  Montroy deposition (p 309-310).  See also the Neal deposition transcript page 214 regarding the Drucker report.  Health Grades has not contested this in response to interrogatory number 8.

58.   Claim element '060.15.2 discloses:

> 15.2. access healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;

Providers must describe their skill set in terms that the patient can recognize and evaluate.  This claim element describes three or more properties of the provider which are drawn from the list above.  None of these properties are novel; in fact they are commonly used by prospective patients to help select a provider which meets the patient's requirements.

From Defendant's deposition Exhibit 10:

> HealthGrades recently began adding two new sets of data to its Physician Quality Reports': physician-satisfaction surveys from the consumers that visit its Web site monthly, and *detailed physician and practice information from physicians themselves*, which includes practice *philosophy*, *subspecialty information*, teaching positions, *published peer-reviewed articles*, number of procedures performed, among other items. …

> -Italics added for emphasis

This document clearly states that health care providers (e.g., physicians) provided healthcare information.  Specifically, provider-verified information about the first healthcare provider was reported, as the claim language states.  The italicized portions of the above statement show that at least three items from the listed claim element items.

Therefore claim element '060.15.2 was disclosed by Defendant's deposition Exhibit 10.  Therefore the element has been anticipated.

From John Neal's deposition on pages 210 and 211:

```
20 Q Okay. And when did Dr. Drucker's profile
21 first go on the website?
22 A Well, his original profile would have gone
23 on the website when we launched physician reports as
24 just part of all the physician profiles that we
25 provided, so when we launched the site, which would
Page 211
2 have been 2003.
```

Mr. Neal's testimony indicates that the Drucker report would have been on the web site as early as 2003.  On further investigation, we find that the Drucker report was posted on the web site at least as early as 2005, as shown on a date marking affixed to the Drucker report showing June 4, 2005 as the date of last editing (Defendant's deposition Exhibit 13).  Even this date constitutes

more than one year prior to the filing of the utility patent, and therefore the patent is invalid due to anticipation.

Also from the Neal deposition at page 225:

```
13 Q Can you make the same deduction here that
14 some of this probably came from Dr. Drucker?
15 A That philosophy was one of a kind. That
16 was hard-coded in the website. It most likely came
17 from Dr. Drucker, or one of his close associates, or
18 perhaps his office assistant.
```

The *medical philosophy* information was provided by Dr. Drucker either directly or indirectly, as stated by Mr. Neal.  Therefore the *medical philosophy* requirement of claim '060.15.2 was practiced more than a year prior to the filing of the utility patent application and therefore constitutes prior art in anticipation of the invention.

Neal deposition page 226 indicates that *publications* information was also provided by Dr. Drucker:

```
14 Q Okay. How about publications? Would that
15 have come from Dr. Drucker or his assistant?
16 A I think -- my guess is that it probably
17 did.
```

Neal deposition page 225 further indicates that Dr. Drucker provided information about *awards and honors*:

```
24 Q How about awards and honors?
25 A No, there are sources for some of that
Page 225
2 information, but it's possible that Dr. Drucker's
3 office administrator could have provided that for
4 this prototype.
```

Dr. Drucker may have also provided information about *awards and honors*, as specified in the claim element.

Neal deposition page 230-231 also indicated that languages could have come from Drucker. This is further confirmed by Defendant's deposition Exhibit 50 in which Scott Montroy reports the status of the web site as having additional content provided by Drucker.  This status report is dated 2/16/2005.

Therefore, considering the above information, and the information to appear below, it seems clear that Dr. Drucker did indeed provide at least "*three or more from the group consisting of: specialty information, **medical philosophy**, gender, age, years in profession, years in practice, **awards**, **honors**, professional appointments, professional memberships, **publications**, **languages**,*

*and hobbies;*".  This claim element was therefore met by the prior art from 2005, more than a year prior to the utility filing date.

Health Grades began their Physician Online Services in May, 2004.  Defendant's deposition Exhibits 27 and 28, and Montroy deposition at page 245-251 provide more information in support of this conclusion that the alleged invention was publicly available as early as May, 2004.  The intent of the Physician Online Services was to give physicians the ability to review and edit their data.  Dodge deposition page 80 confirms that this capability was intended for physician use at that early date.  These changes were implemented in the Health Grades reports easily early enough to constitute prior art.  See Defendant's deposition Exhibit 28, Montroy deposition page 202, 250-251 and Neal deposition page 206-209.  See Defendant's deposition Exhibit 26.

Therefore, all aspects of this claim element '060.15.2 were in use and available to the public knowledge at least as early as May, 2004, and the information was in the Health Grades Reports soon thereafter.


59.  Claim element '060.15.3 discloses:

> 15.3. compile patient-provided information regarding the first healthcare provider,
>> wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and
>>
>> wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and
>>
>> wherein the company Web site is managed by a company providing a service for connecting healthcare providers with the potential patients;

Prior art has disclosed the use of patient surveys to solicit information from patients describing their experience with the provider.  Therefore this element also discloses no novelty not already known to a Posita.

Defendant's deposition Exhibit 10 as recited above, discloses using surveys of patient experience to rank providers:

> HealthGrades recently began adding two new sets of data to its Physician Quality Reports': physician-satisfaction surveys from the consumers that visit its Web site monthly, …

Therefore the use of surveys, as specified in the claim element:

> patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider

has already been anticipated prior to the utility filing date.  As a result, this claim element has also been anticipated by prior art.

On page 2 of Defendant's deposition Exhibit 10, it is clear that consumer ratings were provided in anticipation of the invention:

> "HealthGrades' Web site is the leading destination for healthcare ratings for consumers,".

In Defendant's deposition Exhibit 13, there is a graphic from the report which Health Grades provided, and which shows that patient ratings were used:



A Posita would know that the ratings came from patients before being construed into a graphic suitable for reporting like the one above.  The legend states that the data was extracted from six patient surveys.  Footnote 2 states that the data is patient data.  See also Defendant's deposition Exhibits 50 and 51, Neal deposition pages 214, 228-29.

Therefore, the claim element:

wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider

clearly has been met by the prior art.

Health Grades started collecting patient-provided information at least as early as May, 2004. Neal deposition page 167 and Defendant's deposition Exhibit 47 confirm this conclusion. Defendant's deposition Exhibit 47 is an email from Dave Hicks, May 7, 2004 which states that the survey is being launched on the web site. See also Montroy deposition pages 229-230. Defendant's deposition Exhibit 29 and Neal deposition page 169 also support this conclusion. This also shows that the prior report purchasers were sent by email knowledge of these patient surveys. Defendant's deposition Exhibit 48 and Neal deposition page 174-178 show that they were collecting on average over one hundred survey results every day. Reference Defendant's deposition Exhibit 49 and Neal deposition page 179 and Dodge deposition page 167. Montroy deposition page 47 further confirms that patient ratings were collected with the surveys. Montroy deposition page 253 confirms the email to past customers and solicited them for input as well. Montroy deposition page 312-314 states that providers received patient provided information well prior to February, 2006 and that the company web site provided that information.

This testimony and evidence show clearly and convincingly that many of the Early HG Reports and Services included ratings provided by patients over the Health Grades web site well prior to February, 2006.

60.  Claim element '060.15.4 discloses:

15.4. compile healthcare provider information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;

Prior art references are shown below that disclose the same material. Therefore this element is also not novel per se.

From Defendant's deposition Exhibit 13, this claim element is clearly practiced:

Copyright © 2004 Elsevier Inc. and the American Board of Medical Specialties. All rights reserved.

| Medical School | Intern |
|---|---|
| Finch University Health Sciences Chicago School of Medicine<br>North Chicago, IL, 1983 | UMDNJ-NJ MEDICAL SCHOOL<br>NEWARK, NJ, 1984 |

| Residency | Fellowship |
|---|---|
| Umdnj University Hospital | INDIANA UNIVERSITY |



As shown in the figure above, *medical school*, *medical internship*, *medical residency*, and *medical fellowship* information are all provided by Elsevier Inc and the American Board of Medical Specialties.  Therefore the claim element 060.1.4 has been met in every detail.  As a result, Defendant's deposition Exhibit 13 comprises prior art which in my opinion renders the claim invalid through anticipation.

From Neal deposition page 227:

```
23 Q (BY MR. STIMPSON) How about the rest of
24 it? Medical school, residency, internship,
25 fellowship, areas of expertise; those all came from
Page 227
2 third parties, too?
3 MR. VAZQUEZ: Form.
4 A Most likely, yes.
5 Q (BY MR. STIMPSON) Would Health Grades
6 have verified that information?
7 MR. VAZQUEZ: Form.
8 A For Dr. Drucker we would have because,
9 again, this is the prototype profile.
```

As admitted by Mr. Neal, medical school, residency, internship, and fellowship information appearing in the Drucker report was provided by third party sources.  Health Grades also verified the information, according to Mr. Neal, as required by the claim element.  Therefore the claim element has been met in every particular by prior art materials more than one year prior to the date of utility application filing.

See also Drucker, Defendant's deposition Exhibit 51 and Neal deposition pages 227-228.  Early HG Reports and Services showed that every one of these items was known to be used and published early enough to constitute prior art (it would seem that the inventors used this prior art in crafting the claims).  See Montroy deposition pages 269-275, Defendant's deposition Exhibit

8.  Also see Neal deposition pages 128-129.  See also Dodge deposition pages 36-37 regarding Physician Quality Reports.  Montroy deposition pages 313-317 also relates to this claim element. Hicks deposition pages 114-115 also relate to this claim element.

I conclude that the Early Health Grade Reports and Services had all this information, and it was obtained from and verified by third parties, therefore the claim element is met.  Health Grades does not appear to contest that this claim element has been met.  See Health Grades' response to Interrogatory 8.

61.   Claim element '060.15.5 discloses:

> 15.5. create a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and

The specification describes how databases are to be used in storing, retrieving and reporting on material stored in the database.  This claim element therefore is also not novel per se, and prior art will be shown to illustrate that lack of novelty.  The use of database reporting methods is very well known in the art, and not specific to this patent specification.

The specific use of comparison ratings has also been found in prior art materials, as described below.  The testimony of Mr. Dodge, when combined with other evidence, also indicates that comparison ratings were in the Early HG Reports and Services early enough to be prior art. Therefore, this claim element is also anticipated.

Even if the element were not anticipated, the idea of comparison ratings of health care providers was disclosed in these documents, and comparisons of line items in database reports have been used to rank retrieved records for decades, this use of comparison ratings for this purpose would have been extremely obvious to a Posita.

Therefore a Posita would have understood the material without first reading the patent specification or the claims.

Furthermore, the Early HG Reports and Services specifically comprise reports which were prior art to the claim, and which meet in every detail the claim elements limitations.  See for example the information in Defendant's deposition Exhibits 13 and 51, including "…healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source" as specified in the claim element.

The Early HG Reports and Services also show ratings of health care provider hospitals that were intended to and do allow comparison of health care providers.  It would be obvious to a Posita that ratings of other physicians would be a natural addition to the report.

See also Neal deposition pages 153-154.  Dodge deposition pages 200-201 also supports concluding that this claim element was known.  Dodge deposition pages 225-226 again confirms the claim element was known prior to the filing date.  Defendant's deposition Exhibit 8 is also relevant.  These items of evidence clearly demonstrate that the concept of having provider information and ratings available to prospective patients had been practiced in a way that the ratings could be compared.  Even if hospital ratings do not meet the claim language literally, there are plain and clear teachings that any Posita would understand that ratings of health care providers could be shown side by side for comparison purposes, and these documents provide the motivation to do so.

Supporting my conclusion that this claim element is anticipated is the deposition testimony of Mr. Dodge.  He testified that comparison ratings of physicians were added to reports at least as early as 2006 (see pages 72-73).  But Mr. Dodge did not state exactly what date in 2006 they were first made available on the web site, and at his deposition he was unsure of when comparison ratings were first used.  But based on Mr. Dodge's testimony on other claim elements, it seems clear that the comparison ratings on physicians were actually released before 2006.  For example, Mr. Dodge testified that patient ratings did not enter the reports until 2006 (the same year he said comparison ratings were first used), yet attorneys for MDx were able to elicit testimony and show evidence that patient ratings were made available as early as 2004.  Since Health Grades' web site had hospital ratings well prior to 2006, and were showing them in comparison format, it stands to reason that they would have done the same thing with patient ratings.  This is further supported by the fact that Mr. Dodge testified that to his recollection patient ratings and comparison ratings were first used in the same year; he was just wrong about the year when he testified he recalled 2006.

The web site was available over the internet and the reports were made available over the internet.  See for example Montroy deposition page 320.  See also Neal deposition pages 129 and 214.  See also Defendant's deposition exhibit 23 and Montroy deposition pages 224-225 for the physician quality guide.  See Montroy deposition pages 318-320.  See also Defendant's deposition Exhibit 8 and Montroy deposition pages 259-264.

In conclusion, this claim limitation seems to have been clearly anticipated by Health Grades' own Early Reports and Services.  At the very least, comparison ratings of health care provider hospitals were shown in the Early HG Reports and Services, thus making it extremely obvious that the same could be done with patient ratings of physicians.

62.  Claim element '060.15.6 discloses:

> 15.6. provide access to the healthcare provider report on the first healthcare provider over a computer network.

It is well known in the art that the HTTP web protocol, coupled with a database at the server, can transmit reports over the computer network from the HTTP server to the HTTP client.  Therefore this claim element is also well known to a Posita and adds no new novelty to the claim.

Furthermore, the URL of each page of the reports is printed at the bottom of each page.  In my opinion, this demonstrates that the pages were served by an HTTP web server and printed from an HTTP web client.

Therefore, this claim element has also been anticipated fully by the prior art of the Early HG Reports and Services.  See Montroy deposition page 320.

63.   Dependent claim '060.16 specifies:

16. The on-line information system defined in claim 15, wherein:

the healthcare provider report is obtained through one or more from the group consisting of:

a predetermined Web page that provides search capabilities on its database and

a third-party search engine; and

the search capabilities of the predetermined Web page permit searching based on one or more from the group consisting of:

name, medical specialty, gender, state, city, procedure, diagnosis, and location criteria.



As shown by the example in the figure on page 17 of the document, Bates number HG0179534, a search engine is provided under the Health Grades web domain name.  See also Dodge deposition pages 123-126.

Therefore, claim '060.16 is met by the Early HG Reports and Services.  As a result, claim '060.16 is invalid due to anticipation by HG0179534.



CONFIDENTIAL - ATTORNEYS EYES ONLY                                              HG0179550

As shown in the figure above from HG0179550, physician name, city and state are among the search criteria provided by the Early HG Reports and Services.  See also Dodge deposition page

127-128.  See Montroy deposition page 162 and Defendant's deposition exhibit 19 and Montroy deposition pages 180-182.

Therefore, claim '060.16 is invalid due to anticipation by HG0179550.

64.  I have considered Health Grades' alleged evidence of secondary considerations, and find nothing that would alter my views above.  First, there appears to be complete anticipation, and secondary considerations cannot alter that fact.  Second, the obviousness case is so strong, that no amount of secondary considerations would overcome it in my view.  Third, there was nothing in the alleged secondary considerations in Health Grades' response to interrogatory 4 that was tied to the patent claims, and Health Grades has provided no evidence of this required nexus.  There is also nothing in these alleged secondary considerations that would not also be true of the prior art.  Even the alleged commercial success uses sales of the prior art, and Health Grades presents no evidence that any increase in sales was a result of the patent claims rather than features found in the prior art or other factors.  If Health Grades is allowed to provide additional evidence, I reserve the right to address that in more detail.

## INEQUITABLE CONDUCT

64.   From the above, it is clear that Health Grades had practiced the claimed invention prior to the filing date.  In my opinion, but for the failure of the inventors to disclose the Early HG Reports and Services to the Patent Office, none of these claims would have been allowed.  This is demonstrated above using the clear and convincing evidence standard.  It would have been even truer under the preponderance of evidence standard of the Patent Office.

65.  This information about the Early HG Reports and Services was not disclosed to the examiner during prosecution of the patent application.  I have searched the file history to determine whether the disclosure of the Early HG Reports and Services was made in the filing, and have found no mention of them in the file history.  I have compared the prior art disclosed by Health Grades in the file history of the '060 patent to the Early HG Reports and Services prior art.  Many of the website documents disclosed by Health Grades are not even prior art, as they are dated 2010, which is many years after the filing of the utility application.  I have also compared the Early HG Reports and Services prior art to the other prior art in the file history of the utility application.  In my opinion, the Early HG Reports and Services prior art were much more relevant to the claims of the '060 patent than any of the prior art in the file history of the utility application.  As a result, the Early HG Reports and Services are not cumulative with the actual prior art in the file history of the utility application.

66.  In my opinion, this disclosure should have been made, and the disclosure would have led the examiner to not issue the claims.  If the disclosure had been made in prosecution, the examiner would have, in my opinion, found it to constitute anticipatory prior art, or at least obviousness, precluding issuance of the patent claims.

## FINDINGS

From all the above analysis, my findings and conclusions include the following:

84      After conducting the methodology described in this report, and analyzing the claim elements, I have determined that all the asserted claims of the '060 patent are anticipated, or at the very least would have been obvious to a Posita, and therefore all these claims should be held invalid.

85.      After reviewing the file history and the discovery evidence, it is my opinion that but for the inventors' failure to disclose the Early HG Reports and Services, the Patent Office would not have allowed any of these claims to issue.

86.      After reviewing the various web sites, I found numerous web sites that are acceptable substitutes for the alleged invention

87      It is my opinion that Search Engine Optimization (SEO) is unrelated to these patent claims, and thus is a major driver for website traffic unrelated to the '060 patent.

88.      I have reviewed the evidence and concluded that, to the extent that Health Grades is right and the Vitals website infringes (something I very much disagree with), the amount of use of the patented invention is trivial.

89.      I find that if Health Grades was right that there is infringement now (I very much disagree), there are numerous ways in which the '060 patent would not be practiced because the full complement of claim elements of the asserted claims 1 and 15 would not be practiced, and thus there are various easy design-arounds to these claims.

DATED this 13th day of July, 2012

BY:   _Richard G. Cooper_ _____
        Dr. Richard G. Cooper