# EXHIBIT C

**Expert Report of Philip Greenspun**

**Regarding infringement of U.S. Patent No. 7,752,060 by MDX Medical**

This report is submitted pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.

## I.   Introduction

1. My name is Philip Greenspun. I received a PhD in Electrical Engineering and Computer Science from the Massachusetts Institute of Technology in 1999 and have been teaching software engineering for Internet applications and database programming there periodically since receiving my degree. My business address is 5 Irving Terrace, #3, Cambridge, Massachusetts 02138. I have been involved in the computer science field for since 1978. I am over eighteen years of age and I would otherwise be competent to testify as to the matters set forth herein if I am called upon to do so at trial.

2. I have been retained by counsel for Health Grades, Inc. ("Health Grades") as a technical expert witness with respect to the proceedings currently before the Court in the above-captioned matter. I receive compensation in the amount of $425 per hour. Health Grades has also reimbursed me for travel and other expenses that I have incurred that are related to providing this technical analysis. My compensation does not depend on the outcome of this case.

3. For purposes of this Expert Report, I have been asked by Health Grades to provide an expert technical analysis of whether the asserted claims of U.S. Patent No. 7,752,060 (the "'060 Patent") that Health Grades contends are infringed by Defendant MDx Medical, Inc. ("MDx") as properly interpreted, are infringed by MDx's systems and methods, either literally, or under the doctrine of equivalents. Additionally, I have been asked by Health Grades to provide an expert technical analysis concerning whether MDx indirectly infringes these patent claims by inducing or contributing to the direct infringement of the patent claims by selling its customers certain products and services and enabling its customers to implement systems and methods which infringe the patent claims either literally or under the doctrine of equivalents.

4. I understand that Health Grades contends that MDx directly or indirectly infringes claims 1, 4-9, 11, and 14-16 of the '060 Patent ("the asserted claims"). I further understand that Health Grades contends that MDx directly infringes all of the asserted claims with the exception of claim 11. I further understand Health Grades further contends that MDx indirectly infringes (either through inducement or contributory infringement) all of these claims.

5. As set forth herein, it is my opinion that MDx's systems and methods directly infringe claims 1, 4- 9, and 14-16 of the '060 Patent literally or, alternatively, under the doctrine of equivalents.

1

received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by a company providing a service for connecting healthcare providers with the potential patients;

compile healthcare provider information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;

create a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and

provide access to the healthcare provider report on the first healthcare provider over a computer network.

Claim 16

The on-line information system defined in claim 15, wherein:

the healthcare provider report is obtained through one or more from the group consisting of: a predetermined Web page that provides search capabilities on its database and a third-party search engine; and

the search capabilities of the predetermined Web page permit searching based on one or more from the group consisting of: name, medical specialty, gender, state, city, procedure, diagnosis, and location criteria.

### C. Claim Construction

67. The Court issued a claim construction order on February 13, 2012.

68. The term "first healthcare provider" shall mean: "a particular healthcare provider about whom information is requested and a report is produced."

69. The term "comparison ratings of healthcare providers" shall mean: "ratings on multiple healthcare providers, including the 'first healthcare provider', in the report on that 'first healthcare provider,' thus permitting comparison of the 'first healthcare provider' with other potential healthcare providers."

23

70. The term "received from the first healthcare provider" shall mean: "receipt of information from the first healthcare provider or one of his or her agents, such as an employee, as distinguished from information received from patients or public sources."

71. The terms "compiling" / "compile" shall mean: "gathering and/or putting together."

72. The Court found that the term "verified" should be given its plain and ordinary meaning, of which there are several. One meaning of verified is "to prove." Another is "to confirm" or "to substantiate." The Court stated: "the specification makes clear that the act of 'verifying' requires only that the website receive confirmation of the information from some other source, in this instance the healthcare provider. Indeed, the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider." (Markman Order at p. 15 n.8.)

### D. Understanding of the Law to be Applied to Determine Infringement

73. In formulating my opinions and conclusions in this case, I have been provided with an understanding of the prevailing principles that govern the issue of patent infringement.

74. As a result, I understand that it is a basic principle of patent law that the determination of whether a patent claim is infringed requires a two-step analysis. In the first step, the claim language must be properly construed to determine its scope and meaning.

75. Second, the claim, as properly construed, must be compared to the accused device(s), system(s) or process(es), which in this case are MDx's and MDx's customers' computer systems, software Applications and methodologies, to determine whether the claim is infringed

76. I am informed and understand that I am to apply the constructions for the claims set forth in the Court's Markman Order.

77. I am informed and understand that once the claims have been interpreted, the second step in the infringement analysis involves determining whether the accused system(s) or method(s) meet(s) each and every element of the claim literally or equivalently under the doctrine of equivalents.

78. It is my understanding that an accused infringer cannot avoid infringement by adding components, features or steps to an accused system or method if each element recited in the patent claims is found in the accused system or method.

24

42, with those doctors who are not board-certified having been removed. This feature allows a user to specify narrower search criteria for the particular doctor he or she seeks.

93.	The summary page (e.g., first page) of a doctor's report includes an overall star rating (1-4 stars), whether or not the doctor has received the distinction of being one of "America's Top Doctors", and whether or not the doctor has received the vitals.com "Patients' Choice Award" (http://www.patientschoice.org/whatispca).  Clicking on the doctor's name brings up the remainder of the report, which includes more detail from patient surveys as well as information regarding the doctor's training, affiliations, awards, languages spoken, etc. From the report, the Web site visitor has the opportunity, following treatment, to rate the doctor.  (*See* Appendix C.)

94.	As this dispute involves the operation of a Web application, which may be reprogrammed to some extent between the date of this report and the date of the trial, I am attaching to this report a set of video recordings that show a Web user interacting with the vitals.com Web site (Current Version) in June 2012. I reserve the right to use these as demonstratives at trial.

**1.	Claim 1 and both versions of the vitals.com Web site**

*a.	Preamble: A computer-implemented method of providing healthcare provider information to potential patients, said method comprising:*

95.	Vitals.com meets this element.

96.	Both the Current Version and the Prior Version, like any Web site on the Internet, must respond to requests via the TCP/IP and HTTP protocols and therefore must be implemented with computers.

97.	The Current Version menu bar offers choices including "check up on your doctor" and "find a doctor".  A doctor is a "healthcare provider" and a person looking for a doctor is a "potential patient".  The Prior Version had similar language.

98.	The Current Version, states that vitals.com was "Your source for comprehensive medical information on 830,000 doctors nationwide." As a doctor is a healthcare provider, the site explicitly promises "information."  (*See* Appendix C.)

99.	Based on the screen shots reviewed and the live site accessed, both versions of the vitals.com Web site are computer-implemented methods of providing healthcare provider information to potential patients.

>    b.   *Step 1*: *receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider,*

100.   Vitals.com meets this element.

101.   This claim element depends in part on whether or not there is a company that has a Web server computer. A WHOIS lookup on the register.com Web site on June 26, 2012 resulted in the following record for vitals.com:

    Registrant:
    mdX Medical
    ATTN VITALS.COM
    care of Network Solutions
    PO Box 459
    Drums, PA. US 18222

102.   From this I conclude that the vitals.com Web site is owned and operated by MDx Medical and that Network Solutions is the domain registrar.

103.   Both the Current Version and the Prior Version offer a variety of options for connecting healthcare providers with potential patients and a user can request information in a variety of ways, e.g., by searching for a doctor by specialty, by condition, or by name. As of December 9, 2011, the first page of the site promised to "match you with the right doctor", i.e., connect a healthcare provider with a patient.

104.   The Court has construed "first healthcare provider" as "a particular healthcare provider about whom information is requested and a report is produced".

105.   A "particular healthcare provider" can mean one particular doctor, for example. Both the Current Version and Prior Version are able to display information on one doctor at a time as well as being able to display information in such a way that one doctor is highlighted, e.g., by appearing at the top of a list. Both versions are able to produce reports as discussed in detail in below portions of report dealing with other claim elements.

106.   One mechanism via which the Current Version receives a request for information regarding a first healthcare provider is when a user types a doctor's name into the search box on the vitals.com home page. When the user clicks the "search" button, his or her web browser submits a GET request via HTTP to the URL: http://www.vitals.com/doctor/checkup with arguments of "name" and "location." (*See* Appendix C.)

107.   Another mechanism is when a user searches for a doctor by specialty or by medical condition, in which case the browser will request the URL

29

http://www.vitals.com/doctor/find with arguments such as "specialist_id" or "expertise".  (*See* Appendix C.)

108.   Based on the Internet domain registration for vitals.com, the HTML source code of the Current Version's home page and the fact that response pages are generated after I clicked the "search" button, I conclude that MDx Medical operates a system that is capable of receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider.

> c.   *Step 1 continued*: *wherein the Web server computer comprises at least one computer processor and memory;*

109.   Vitals.com meets this element.

110.   All conventional Web servers contain at least one processor, such as an Intel Pentium. Conventional processors read their program instructions from a memory and therefore a memory is required for the processor to function, a design called a "stored program computer" that goes back at least as far as the 1949 EDSAC. There has been no evidence in this case that MDx Medical has developed or is employing computers that are unconventional.

111.   Further, based at least on the deposition testimony of Larry West, I conclude that the Current Version of vitals.com is delivered from Web server computers with at least one computer processor and memory. (Deposition of Larry West (Rough Draft) at 77:11-77:16; 80:21-81:04)

> d.   *Step 2: accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;*

112.   Vitals.com meets this element.

113.   The vitals.com database includes specialty information, which it displays on vitals.com for every physician in the database. (*See* MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogs. at p. 3; Deposition of Larry West (Rough Draft) at 26:15-26:19; Appendix C; Vitals.com PowerPoint, "Site Functionality & Data Set Overview" at MDX0071958; MDx E-mail dated 06/11/2010 at MDX0019305.)

114.   The vitals.com database includes medical philosophy information in at least one place, which is the location storing whatever physicians type as a "personal statement".  (*See* Appendix C; MDx E-mail dated 06/11/2010 at MDX0019305.)

30

140. Larry West, at his June 26, 2012 deposition, testified that he supervises a group of MDx Medical employees who manage the technical aspects of the vitals.com Web site. (*See* Deposition of Larry West (Rough Draft) at 95:15-95:19.)

141. Based on the vitals.com "about" page and Larry West's description of who manages the vitals.com Web site, I conclude that the vitals.com Web site is "managed by a company providing a service for connecting healthcare providers with potential patients".

142. I understand that MDx is arguing that vitals.com does not infringe because not all patient ratings come from vitals' online experience survey. I disagree. The claim does not require that all ratings come from the on-line experience survey.

> g.  *Step 4: compiling information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;*

143. Vitals.com meets this element.

144. The Court construed the terms "compiling" / "compile" to mean: "gathering and/or putting together."

145. The Court found that the term "verified" should be given its plain and ordinary meaning, of which there are several. One meaning of verified is "to prove." Another is "to confirm" or "to substantiate." The Court stated: "the specification makes clear that the act of 'verifying' requires only that the website receive confirmation of the information from some other source, in this instance the healthcare provider. Indeed, the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider." (Markman Order at p. 15 n.8.)

146. The vitals.com database includes board certification information that MDx gathers from third parties (e.g., from sources other than physicians), such as ABMS (as stated on a typical doctor report: "Vitals receives quarterly updates on board certification from ABMS.") (*See* Appendix C; MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogs. at p. 6; MDx E-mail dated 06/11/2010 at MDX0019305; Deposition of Erika Boyer at 55:16-55:17.) Therefore, this information is verified by these third parties.

147. The vitals.com database includes medical licensure information that MDx gathers from third parties (e.g., from sources other than physicians). (*See* MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogs. at p. 6; Deposition of Erika Boyer at 81:10-81:16; 85:8-85:12; MDx E-mail dated 06/11/2010 at MDX0019305; Appendix C.) Moreover,

35

Vitals.com states that the doctor is "confirmed" (e.g., verified) to have certain state licenses. (*See,* e.g., Appendix C.) Therefore, this information is verified by these third parties.

148. The vitals.com database includes medical school information that MDx gathers from third parties (e.g., from sources other than physicians) because it is able to display a medical school for every doctor on the site that I looked at. (*See* MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogs. at p. 6; MDx E-mail dated 06/11/2010 at MDX0019305; Appendix C; Deposition of Erika Boyer at 87:12-87:15.) Therefore, this information is verified by these third parties. The vitals.com database includes internship information that MDx gathers from third parties (e.g., from sources other than physicians). (*See* Deposition of Erika Boyer at 87:1-87:7; MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogs. at p. 6; MDx E-mail dated 06/11/2010 at MDX0019305.) Therefore, this information is verified by these third parties.

149. The vitals.com database includes residency information that MDx gathers from third parties (e.g., from sources other than physicians). (*See* Deposition of Erika Boyer at 87:1-87:7;MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogs. at p. 6; MDx E-mail dated 06/11/2010 at MDX0019305.) Therefore, this information is verified by these third parties.

150. The vitals.com database includes fellowship information that MDx gathers from third parties (e.g., from sources other than physicians). (*See* Deposition of Erika Boyer at 87:1-87:7;MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogs. at p. 6; MDx E-mail dated 06/11/2010 at MDX0019305.) Therefore, this information is verified by these third parties.

151. The vitals.com database includes disciplinary information that MDx gathers from third parties (e.g., from sources other than physicians). (*See* Deposition of Erika Boyer at 93:5-93:23;MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogs. at p. 6; MDx E-mail dated 06/11/2010 at MDX0019305.) Therefore, this information is verified by these third parties.

152. I understand that MDx argues that it does not infringe because it employs the following rule:

> If displaying third-party verified information for a physician would include three or more of third-party information, then the same information obtained from a physician (e.g., medical school, residency, fellowship, internship) would be used instead (when available) to reduce the number of displayed third-party data to less than three. If the same information for a data field has not been obtained from a physician, then the data field is not displayed at all, so that no more than two third-party data fields are ever displayed for a physician.

36

210. Further, vitals.com defines any physician who registers with its website as a "member." It states: "**Members** log in here. . . ." (*See* Appendix C.) Physician members receive enhanced services including the ability to edit their profiles and manage their reputation by doing things such as suppressing comments.  (*See* Deposition of Larry West (Rough Draft) at 249-251; Appendix C.)

### 8. Claim 14 and both versions of the vitals.com Web site

*The method as defined in claim 1, wherein the first healthcare provider is a physician.*

211. As shown in the attached claim charts, the typical usage of vitals.com is to find healthcare providers who are physicians and therefore the typical report from both the Prior Version and Current Version is regarding one or more physicians. In many cases, all of the healthcare providers mentioned on a page from the vitals.com server are physicians and therefore the "first healthcare provider" is also a physician. (*See,* e.g., Appendix C.)

### 9. Claim 15 and both versions of the vitals.com Web site

*An on-line information system for connecting healthcare providers with potential patients, the system comprising:*

*at least one computer processor; and*

*memory coupled with and readable by the at least one computer processor and comprising a series of instructions that, when executed by the at least one computer processor, cause the at least one computer processor to:*

212. Both the Current Version and Prior Version of the vitals.com Web service are "on-line" in that they are accessible via the Internet. As noted in my analysis of Claim 1, vitals.com offers to connect physicians ("healthcare providers") and patients. Larry West, in his June 26, 2012 deposition, confirmed that MDx Medical uses conventional servers with "at least one computer processor" and "memory".

*receive a request for information regarding a first healthcare provider;*

213. My analysis here is substantially similar to the corresponding element of Claim 1 ("receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider") and, in the interest of concision, is not repeated here.

*access healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in*

47

> *profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;*

214. My analysis here is substantially similar to the corresponding element of Claim 1 ("accessing healthcare provider-verified … hobbies;") and, in the interest of concision, is not repeated here.

> *compile patient-provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and*

215. My analysis here is substantially similar to the corresponding element of Claim 1 ("compiling … patient-provided information …current patients of the first healthcare provider,") and, in the interest of concision, is not repeated here.

> *wherein the company Web site is managed by a company providing a service for connecting healthcare providers with the potential patients;*

216. My analysis here is substantially similar to the corresponding element of Claim 1 (identically worded) and, in the interest of concision, is not repeated here.

> *compile healthcare provider information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;*

217. My analysis here is substantially similar to the corresponding element of Claim 1 ("compiling information regarding the first healthcare provider … and medical fellowship information") and, in the interest of concision, is not repeated here.

> *create a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and*

218. My analysis here is substantially similar to the corresponding element of Claim 1 ("creating … a healthcare provider report … includes comparison ratings of healthcare providers;") and, in the interest of concision, is not repeated here.

48

Assuming that end_date and event_url were always present, one line of the TCL script code would need to be changed:

ns_write "<li><a href=\"/calendar/item?calendar_id=$calendar_id\">$title</a> ($pretty_start_date - $pretty_end_date ; <a href=$event_url>direct_link</a>)\n"

In all, three lines of code would need to be modified.

As noted in the above analysis of Claim 16, the user of a modern personal computer is accustomed to having multiple windows open simultaneously. A patient considering something as important as choosing a physician specialist is not going to be substantially inconvenienced by having to open two browser windows rather than one in order to conduct a comparison more easily.

## VIII. Trial Exhibits

315. I reserve the right to use demonstrative exhibits at trial if necessary to explain my analysis.

## IX. Reservation of Rights

316. My opinions are based on the information that I have considered to date. I reserve the right to supplement or amend my opinion given new discovery, testimony heard at trial, and information from opposing experts. In addition, I may be asked to testify in rebuttal to issues and opinions raised by other experts or fact witnesses.

Signed: *Philip Greenspun*

Philip Greenspun, Ph.D.

Date: July 13, 2012