Civil Action No. 11-CV-00520-PAB-BNB

**HEALTH GRADES, INC.'S OPPOSITION TO MDX MEDICAL'S MOTION TO PRECLUDE ANY TESTIMONY FROM HEALTH GRADES, INC.'S EXPERT DR. GREENSPUN**

---

## Exhibit 1

### 7/13/2012 Expert Report of Richard G. Cooper
*(selected portions; highlighting added)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  11-CV-00520-PAB-BNB

HEALTH GRADES, INC.

        Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM

        Defendant.

---

### Declaration of Richard G. Cooper, D.Sc.

---

Attorneys for MDx Medical, Inc. ("MDx", or "Defendant") have asked me to submit the following disclosure of expert testimony for Richard G. Cooper, D.Sc.  I am engaged in ongoing development and refinement of my opinions and expected testimony and reserve the right to submit supplements to the information contained in this disclosure pursuant to the Federal Rules of Civil Procedure.

## Introduction

I have over 30 years experience in computer architecture, mathematics, software, internet, electronics and programming.  I am submitting an expert report on behalf of MDX in the referenced case, relating to the alleged intellectual property which Health Grades claims to have invented.  I have advised attorneys regarding technology issues, and I have studied the relevant materials in order to provide this report.  All opinions and facts stated herein are true and correct to the best of my knowledge.  I reserve the right to modify or supplement this report if more information is made available to me.  I have been asked to state the basis for my opinion.

### BACKGROUND

1.      For more than thirty years, I have developed computers, databases, and software.  I have extensive experience in business applications software development, and software to record, process and report on business processes.  I have developed database schemas, software to match lockbox receipts to outstanding invoices, financial applications, sales order processing, factory work flow analysis applications, database clients and servers, web HTTP servers with databases, HTML web sites and web applications, and I have written many, many software programs.  I

worked in the computer industry after receiving the Doctor of Science degree in computer science and electrical engineering from George Washington University.

2.      In my doctoral studies, I minored in Medical Engineering.  This involved the study of physiology for two years, medical instrumentation design and the unique environment of medical electronics in hospitals, the study of treatment plans as monitored by computer, and related issues in medicine and in engineering.  Based on presentations by medical personnel in my course work, and on readings and understandings of the health care industry, I have substantial knowledge of the practices of health care, and had that knowledge during the time frame at issue in this report.

3.      While Chief Scientist at ValuTech, I was part of a team that developed the eValuCheck web service, which provides secure and validated financial services for web merchants using HTTP, HTTPS, and JavaScript functions to cash checks.  I also designed and developed bank lock box processing software for Fortune 500 company receivables management to reduce days sales outstanding (DSO).  I have architected and developed manufacturing systems software, shop floor data collection and analysis software, and military command, control and communications systems.

4.      I have had substantial experience in the health care industry and related software, spanning decades.  For example, I prosecuted a patent application related to electroencephalogram (EEG) monitoring of epileptics in hospitals to diagnose the location, frequency and severity of seizures.  That application described how an EEG, augmented with specialized software, could fill the requirements for diagnosis of epileptic patients.  I also developed software products for health care applications.  The Staff Developer's Assistant was one example of a program to assist the Director of Staff Development in hospitals in her task to manage the continuing education of nurses in hospital environments.  This required knowledge of courses concerned with medical practices appropriate to patients in the hospital, knowledge of elective and basic physiology courses, and understanding of hospital practices.  Another example program, called Staff Scheduler, organized nursing staffs so that each nurse had a weekend, the hospital was fully staffed 24 hours per day and seven days per week.  These two programs were developed by studying the hospital tasks under the direction of my wife, a nurse and medical auditor, while she was employed and assigned to the hospital.  I also developed a patent (US patent 7,209,923) on program methods to be applied by hospital staff to determine whether all medical treatments provided to patients had been properly recorded in the medical records database.  I continued development long enough to invent new ways to examine and organize healthcare-related data, helped train a Director of Staff Development to find errors in the healthcare related data concerning patients.

5.      I worked for two law firms for a total of two years as a patent scientist, or patent specialist.  First I worked for Paul, Hastings LLP in San Diego where I was trained on the legal processes of patent prosecution and litigation.  I wrote numerous patent applications, replies to office actions, and relevant litigation support materials for attorneys under the guidance of practicing patent attorneys.  Later I worked at Heller, Ehrman LLP in San Diego where I continued my practice of patent prosecution and litigation in areas of electrical engineering and computer science, including work on medical devices such as electroencephalograms.

6.      For my doctoral thesis in 1975, I invented a method of sequencing the execution of remote procedure calls so that a large, complicated calculation function could be performed by a large number of computers in a specific kind of network, which I called the "distributed pipeline".  This dissertation is designated in my CV in Appendix A, along with an article that was published in the IEEE Transactions on Computers in September, 1977.

7..      I taught computer science at Washington University in Saint Louis for a two year period, and I taught a course on pattern recognition and artificial intelligence at Cal State Fullerton.  I have worked in software development and computer hardware technologies in various capacities during my thirty year career.  I have owned private businesses, developed and sold software and hardware products and offered consulting services.

8.      Over the course of my career in government, academia, business and industry, I have gained extensive experience in and understanding of the technologies related to the subject matter of client server systems, databases, computers, networking hardware and software, and internet protocols.  I have also worked in various related fields with a large number of engineers and scientists.  I have managed numerous research and development engineers and evaluated their work.  I have mentored software developers, and developed a wide variety of software programs.

9.      For example, as part of my expert witness practice, I developed a thick client web site with client and server programs for analyzing patent claims, generating fully filled out claim charts, and providing semantic search capabilities to identify candidate prior art.  I have made this program freely available through my web site at www.EnglishLogicKernel.com.  This program provides an enhanced search capability to identify patents through key word analysis, including synonyms, and to download the patent texts from the USPTO web site.  The program automatically analyzes the patent claim text, decomposing it into individual claim elements.  The program then identifies sentences in the specification that support each claim element, and displays the matching sentences in claim chart format.  When an alleged prior art patent is available, the program also provides a list of the sentences relevant to the claim element based on the challenging patent's specification.

10.     For a three year period from January 2000, I was Chief Scientist at ValuTech Corporation.  While there, I developed a web service for automating the cashing of checks based on validating the account information.  This web server was offered to commercial web sites that required the ability to take payment by check.  This software was based on Microsoft SQL Server as the database engine for an indeterminate number of simultaneously active client web browsers.  Later, while still at ValuTech, I developed a lock box processing application that matched bank lock box payment inputs with an accounts receivable database to help reconcile payments against outstanding invoices for very large companies.  In that application I addressed the issue of database throughput rate versus the number of client application computers.  To perform this analysis, I programmed instrumentation to measure the amount of time required to process each type of transaction.  I then used that timing information to control the performance of Microsoft SQL server for that application.

11.     Previously, I had developed a web site to sell a work flow measurement and analysis software product called EfficacyFX.  This web site used frames, graphics, HTML and the commercial quality of presentation that is required for commercial web sites.  I had previously developed the work flow software under contract with a manufacturer, who agreed to let me retain the intellectual property rights to the work flow software in return for discounted development costs.

12.     Presently, I am continuing the development of the EnglishLogicKernel.com website mentioned in paragraph 9 above.  This site provides a substantial number of pages which offer assistance to IP attorneys, experts, and inventors who wish to prosecute or litigate patent cases, or to check for possible infringement of patents.

13.     Presently, I am an independent consultant offering products and services to various industries, focusing on the intellectual property legal services community.  As part of my consulting practice, I also serve as an expert witness for providing independent opinions to attorneys in cases where my expertise is appropriate.  I have acted as an expert witness in some four dozen or more cases, mostly relating to patents covering database, software, internet or electronics technologies.  Previously, I was employed at Heller Ehrman, LLP in San Diego for supporting prosecution and litigation of patent related intellectual properties.  Prior to that, I was a contractor at Paul, Hastings, Janofsky and Walker, LLP in San Diego filling the same need for experts in computer science and electrical engineering technologies.

14.     This report is based on my education, professional career and relevant experiences, as well as the materials reviewed.  My education, experience and qualifications are set forth on my curriculum vitae attached hereto as Exhibit A which also contains a list of all publications I authored within the last 10 years.

15.     I have provided a number of expert opinions for legal matters.  *See* Exhibit A.  For Imagery Group, I was deposed by Epicore's attorney during the case *Epicore Software v. Imagery Group* in February 2007.  In the case *GTX v Kofax, Nuance, Cannon et al,* I was deposed over a twelve hour period on technologies related to optical character recognition and image processing.  In the case *Kohler v Wyeth,* I was deposed twice regarding the quality, integrity and security of a database developed and used in the 1990's.  I testified in Los Angeles Superior Court, describing the database technology issues in that case.  I was deposed in the case *Winer v Family Honda.*  I also testified in Federal Court in the *LogicLink v KeyLink* case, and was deposed twice in that matter.  I have testified in Colorado state court for State Farm as intervenor in another case.

16.     I am being compensated on an hourly basis at $300 per hour for work done in my office, and for $350 per hour for time plus cost reimbursement for travel and materials required to complete my work during the case.

17.     In preparing my opinion in this case, I have been supplied with certain materials, as described below.  However, to reach any conclusions relating to the computer technologies which were applied in this case, and to advise the attorneys regarding the technology issues I will

review applicable documents, the deposition testimony of fact witnesses, relevant interrogatory and other discovery responses.

18      In preparation of my report, I have reviewed the materials referred to in this report, and the materials described below, including the following:
    - U.S. Patent No. 7,752,060 (the "'060 patent")
    - Prosecution history of the '060 patent, and prior art cited therein
    - U.S. Provisional Application No. 60/771,757
    - Deposition transcripts of all witnesses, including Defendant's deposition exhibits (specific pages are cited below as exemplary, but I reserve the right to rely on any parts of these deposition transcripts)
    - Claim Construction Order
    - MDx Second Amended Answer with Inequitable Conduct Defense
    - Third Supplemental Invalidity Contentions under Rule 3-3 - Appendix chart
    - Third Supplemental Invalidity Contentions under Rule 3-3
    - Protective Order
    - Health Grades' responses to Interrogatories
    - Market Share Trend Data (Traffic Comparisons) spreadsheet
    - Telephone conversation with Chief Technology Officer Larry West of MDx
    -Telephone conversation with Vice President & General Manager of Vitals, Jeff Cutler of MDx
and    - Telephone and in-person discussions with attorneys representing MDx.

19.      I may give a general tutorial of the technology involved in this case, including the technologies which apply in this case.  I may create graphic depictions and/or tables and charts for exhibits to aid the Court in its understanding of the technology involved.  However, at this time I have not specifically created any exhibits for this litigation.

## Methodology

20.      In this report, and in any supplemental reports to be filed, I have based my opinion in part on data provided by the evidence cited in paragraph 18 above.  I based my opinions in part on my own experience as a software engineer, including my work as a research and development engineer.  I also based my opinions in part on my education through doctoral studies in computer science, and on my experience in sizing and architecting computer networks numerous times over the last thirty years of practice.  I have applied the principles of computer architecture as commonly understood, forming my method of analysis for this case.   This case also draws on my background and knowledge of health care practices, medical issues, technologies, and standard practices as detailed in the sections above.

21.      I call on my patent prosecution and litigation experience including training I received from two law firms on the United States Patent and Trademark Office processes related to patents.  I use this training to support my technical experience, and to guide me in documenting the legal issues related to this case.  I understand what inequitable conduct means in legal terms,

## FINDINGS

From all the above analysis, my findings and conclusions include the following:

84      After conducting the methodology described in this report, and analyzing the claim elements, I have determined that all the asserted claims of the '060 patent are anticipated, or at the very least would have been obvious to a Posita, and therefore all these claims should be held invalid.

85.      After reviewing the file history and the discovery evidence, it is my opinion that but for the inventors' failure to disclose the Early HG Reports and Services, the Patent Office would not have allowed any of these claims to issue.

86.      After reviewing the various web sites, I found numerous web sites that are acceptable substitutes for the alleged invention

87      It is my opinion that Search Engine Optimization (SEO) is unrelated to these patent claims, and thus is a major driver for website traffic unrelated to the '060 patent.

88.      I have reviewed the evidence and concluded that, to the extent that Health Grades is right and the Vitals website infringes (something I very much disagree with), the amount of use of the patented invention is trivial.

89.      I find that if Health Grades was right that there is infringement now (I very much disagree), there are numerous ways in which the '060 patent would not be practiced because the full complement of claim elements of the asserted claims 1 and 15 would not be practiced, and thus there are various easy design-arounds to these claims.

DATED this 13th day of July, 2012

BY:  *Richard G. Cooper*

Dr. Richard G. Cooper

# EXHIBIT A

**Curriculum Vitae of Dr. Richard G. Cooper**



# Richard G. Cooper, D.Sc.

725 Center Street, Costa Mesa, CA  92627;
(949)525 5712;
<u>Rich@EnglishLogicKernel.com</u>

## Expertise

- Databases
- Source Code Comparison
- Abstraction, Filtration, Comparison
- Communications
- Internet/Web/e-Commerce
- Client/Server, N-Tier Technology
- Graphics/GUIs
- Sensor Processing
- EEG Analysis
- GPS tracking
- Pattern Recognition
- Computer Linguistics
- Content analysis
- Patent Analysis and Licensing
- Algorithm Development
- <mark>Medical records database analysis</mark>
- Software Architecture
- Simulation
- Reliability Engineering
- Probabilistic and Statistical Analysis
- Bayesian and Markov Analysis
- Monte Carlo Simulation
- Hidden Markov Models
- Embedded systems
- Point of Sale Systems
- Geographic Information Systems
- Distributed Computing
- Systems Development
- Industry Practices
- Networking Protocols
- <mark>Medical Devices</mark>
- Patent Prosecution
- Patent Litigation
- Business Methods

- Text Processing
- Radar
- Sonar
- Financial Software
- Control Systems
- Ultrawideband
- Fourier Analysis
- Work Flow Tracking and Analysis
- Knowledge Based Systems
- Project Planning
- Technical Marketing Support
- Manufacturing Execution Systems

## Professional Summary

Dr. Cooper has over 30 years of experience in software, systems and electrical engineering.  His expert witness services comprise over thirty cases, eight depositions and federal court testimony.  His litigation background includes patents, trade secrets, trade dress, software contract failure, electronics manufacturing, medical devices, database analysis, web site comparisons, enterprise software, management of patent licensing projects, technical advisor for counsel, internet, web site and systems development, software product development, database management systems, software architecture, research and development, and system specification.

## Employment History

From:   2007     **Self Employed**
To:     Present   **Consultant, Expert Witness**
         Position:

- contract consulting and expert witness services in computer, software, internet, web, electronics, embedded systems, and communications technologies

From:   2006     **Heller Ehrman, LLP**
To:     2007
         Position:   *Patent Specialist*

- Reviewed Bluetooth implementation in view of WRF patent;
- Developed licensing project plan for contingency agreement;
- Reviewed invalidity contentions;
- Expressed expert opinion on quality of opponent's case;
- Developed provisional patent application;
- Reviewed client's production materials for relevance.
- Assessed prospective client's patent portfolio for contingency licensing;
- Worked with shareholders to structure licensing of major patent portfolio
- Developed financial profile based on potential infringers;
- Worked with litigation and marketing to project IP licensing financials.

From:   2005     **MetaSemantics Corporation**
To:     2006
         Position:   *Patent Technical Advisor at Paul, Hastings, Janofsky and Walker, LLP*

- Analysis of technical content in patents and in patent applications;
- support of prosecution of patent applications;
- support for patent infringement litigation and infringement defense law suits;
- provided technical opinions on the strengths and weaknesses of patents relating to software technologies, electronics technologies, business method and medical technologies;
- development of prior art materials relating to patent suits;
- assessment of patent portfolios;
- developing responses to Office Actions from patent examiners;
- analysis of technical documents to support discovery;
- definition of requirements for motion to compel opposing counsel to provide software for discovery;
- development of patent applications for clients;
- construction of claim language based on technical concept papers and other materials provided by inventors;
- development of claim charts to support litigation relating to patent

infringement;

- development of tutorial materials to introduce technical concepts to legal counsel;
- analysis of software source code for detection of patent infringement;
- development of proof of infringement for presentation in court and to attorneys.

*2004-2005:  President & Chief Technology Officer*

- Developed embedded medical records text mining software using WordNet database, class lattices, and semantic relationships;
- developed business plan and technical proposal for text mining technology development project;
- developed question-answering system using unstructured text resources;
- developed content analysis linguistic tool set for product release;
- refined radar processing software for recognition of 3D shapes;
- developed embedded software able to recognize the collar (joint) of underground pipeline infrastructure in a natural gas distribution system;
- software engineering for loan origination system enhancement for an Eastern Software Empower installation;
- N-tier programming support;
- development of an embedded web client application that tests a web server for security and visibility of retrieved documents.

| | | |
|---|---|---|
| From: | 2001 | **ValuTech, Inc.** |
| To: | 2004 | |
| | Position: | *Chief Scientist* |

- Developed new financial software products using logical representations of invoice and lockbox financial objects;
- developed graphic display with zoom and pan;
- development of web services using Client/Server, SQL Server 2000, Windows 2000, and HTTP and TCP components;
- presented demonstrations and project plans to prospects and customers;
- instrumented software to collect functional history and measure performance;
- data mining of SQL Server database for invoices and payments received against unevenly structured receivables documents;
- analyzed object structure within operational data;
- analyzed time series data to predict future financial behavior on the part of customers;
- developed business financial analysis tools for calculating cash float actually observed in payable and receivable operations for

Fortune 500 companies;
- developed analytical techniques and adaptive learning methods to maximize cash float in payables and to minimize cash in receivables for large companies;
- trained programming staff in object-oriented analysis and design;
- development of financial web services;
- mentored staff, and taught them good software design principles and practices.

From:     1992     **EfficacyFX.com**
To:       2000
          Position:   *President & Chief Technology Officer*
- Developed sensor processing software to support commercial low-cost utility radars;
- applied pattern recognition techniques to detect specific target shapes;
- implemented and tested a prototype ultrawideband radar sensor as a candidate for deployment;
- constructed imagery software to build a 3D image from sensor inputs while scanning the ground over natural gas pipeline infrastructure;
- developed anechoic radar range for ultrawideband (UWB) radar sensor and populated it with natural gas pipe and collar materials;
- identified signal patterns that could discriminate between normal pipe and the collars at joints between pipes;
- built a database of time series signals and Fourier spectra for test cases;
- demonstrated feasibility of identifying the collars on pipeline infrastructure.

- Defined and developed turnkey software products for hospital scheduling, staff development, medical records and vertical manufacturing industries;
- Interviewed customer staff to define systems;
- developed the software to meet customer expectations.

- Developed a work flow measurement system for small and medium sized manufacturers;
- collected work flow information by time stamping bar-coded work orders, activity labels and employee badges so that full performance information could be collected;
- developed reports for calculating the value of customers, the efficiency of employees, and the performance profile of activities.

From:     1991     **Casa Del Sol**
To:       1994
          Position:    *Owner*
- Developed point of sale software for use in retail environment;
- analyzed customer purchasing of activities and products;
- implemented credit checking software;
- developed accounting modules for use in tracking retail accounts;
- developed reports for calculating the value of customers, the efficiency of employees, and the performance profile of activities.


From:     1980     **Hughes Aircraft Company**
To:       1992
          Position:    *Senior Systems Engineer for Software R&D*
- Managed a team of six software engineers developing software technologies for Hughes' products;
- developed reusable radar sensor processing and display application;
- applied knowledge based and rule based technologies, including measurement and diagnosis of systems and networks;
- used Bayesian and Markov models to predict static and dynamic performance loads and to identify potential systems problems.

- Developed models and simulation software;
- planned and defined distributed database information systems;
- developed resource management, graphic information display, radar systems, command and control information systems.

- Development of technology projects for feasibility demonstrations;
- conduct of R&D projects as principal investigator;
- managed software R&D staff;
- formulated project plans for determining feasibility of risky portions of large projects.

- Planned software development tasks for large and small projects;
- developed new business proposals and technical approach;
- organized technical task plans for proposals and R&D projects;
- managed implementation of projects.


From:     1976     **Washington University**
To:       1980     Saint Louis, MO
          Position:    *Assistant Professor, Computer Science*
          Taught undergraduate and graduate computer science classes, monitored thesis and dissertations for graduate students, and directed the Computer Engineering Laboratory for graduate and funded research projects.  In the summers, operated Cooper Computing Company, a consulting company

with close ties to the local IBM General Systems Division to provide software engineering services to manufacturers in the Saint Louis area.

From: 1968     **National Security Agency**
To: 1976     Fort Meade, MD
Position:     *Senior Electrical Engineer*
At Fort Meade, was assigned to computer systems development projects for two years, and then was promoted to the computer science research department after writing a scientific paper that was deemed important to the agency.

Assigned to solve numerous problems related to high performance computing and cryptology for the remaining six years at NSA. During the eight year period, was awarded a full time tuition paid scholarship from NSA to complete a Master's degree. Then continued education on evenings and weekends to complete requirements for the PhD in 1976. An article based on the dissertation was published in the IEEE Transactions on Computers in September, 1977.

## Consulting History

From: 2007     **Acacia Technologies Group**
To: 2007     Newport Beach, California
Duties:     Analysis and opinions of database compaction patent for investment, licensing, and possible detection of infringement.

From: 2006     **Acacia Technologies Group**
To: 2006     Newport Beach, California
Duties:     Analysis and opinions of patents for investment, licensing, detection of infringement, and analysis of several potential infringing companies.

From: 2005     **Paul, Hastings, Janofsky & Walker, LLP**
To: 2006     San Diego, California
Duties:     Provided a wide array of technical analysis and opinions on intellectual property issues related to prosecution and litigation of patents, defense for infringement suits, analysis of patentability, analysis of software source code for infringement, document discovery, development of patent applications, replies of office actions, and many other tasks.

From: 1998     **Consumer's Gas**
To: 2000     Toronto, Canada
Duties:     Development of ultrawideband (UWB) technology for identifying the collar joint of underground gas delivery infrastructure;
Developed anechoic UWB radar range to support data collection of positive and negative reflections;
Developed pattern recognition software for detection of collar joints;

Demonstrated efficacy of collar joint detection.

From: 1997     **Contract Resources**
To:   2001     Cerritos, California
      Duties:  Define requirements for manufacturing execution system;
               Develop methods for instrumenting work and material flow;
               Select equipment to implement capture of work flow and material flow;
               Develop distributed client/server implementation system;
               Develop analysis programs for calculating value of customers,
               profitability of products, and efficiency of employee labor.

## Prosecution, Patentability, Licensing and Litigation Support Experience

Date: 2011     **Parallel Networks**
      Case:    Parallel Networks v many defendants;  I am developing claim
      Project: construction opinions, demonstrations of infringement
      Status:  In process

Date: 2011     **State Farm Insurance**
      Case:    State Farm filed as Intervenor in a Colorado insurance case.  The plaintiff
      Project: had moved to require State Farm to delete information from their many
               databases after the case had been completed.  I demonstrated to the judge
               that this put an undue burden on State Farm, limited their capability to
               make continuing payments, and interfered with actuarial data modeling.
      Status:  In process

Date: 2011     **INova**
      Case:    INova v many defendants.  Patent infringement case; my task is to
      Project: demonstrate infringement through discovery.
      Status:  In process

Date: 2011     **Sleepy's**
      Case:    Escalate v Sleepy's.  Infringement of patent alleged; I am demonstrating
      Project: noninfringment and invalidity issues for this case.
      Status:  Completed

Date: 2011     **Motorola, Motorola Mobility**
      Case:    Apple, Next v Motorola, Motorola Mobility.  Three patents related to
      Project: touch screen and Android portable smart phones, tablets.
      Status:  Completed

Date: 2010     **Augme**
      Case:    Augme v TBD.  Preparation of claim charts for various infringement
      Project: analyses for web sites allegedly infringing Augme patent.
      Status:  Completed

| | | |
|---|---|---|
| Date: | 2010 | **Genutec** |
| | Case: | Genutec v Taus.  Evaluation of how portable software was at time of |
| | Project: | acquisition. |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2010 | **Hunter** |
| | Case: | Hunter v Home Depot; Hunter v Lamps Plus; Hunter v Ikea.  Developed |
| | Project: | claim charts, expert reports for three independent cases related to LED light strip technology. |
| | Status: | Completed. |

| | | |
|---|---|---|
| Date: | 2010 | **City National Bank (CNB), Imperial** |
| | Case: | CNB, Imperial v Sussex, First American Title.  I demonstrated from |
| | Project: | deposition and web site evidence regarding problems with the computing methods used to process "flip" transaction for real estate. |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2009 | **John Lawless** |
| | Case: | Microsoft v Lawless.  Case that settled within hours; I only read the |
| | Project: | complaint, did nothing else on the case. |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2009 | **Medcorp, Inc** |
| | Case: | Medcorp v Pinpoint, Zoll.  Wrote report, and was deposed, on how an |
| | Project: | SQL Server database application could be restructured to improve performance and responsivness in a 911 response database system. |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2009 | **Inalfa Roof Systems** |
| | Case: | Inalfa v Nidec.  Analyzed software source transformations in refactored |
| | Project: | library of software functions re possible introduction of software errors. |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2009 | **Motivation Innovations** |
| | Case: | Motivation v Hallmark.  Analyzed candidate prior art in view of validity |
| | Project: | examination for patents. |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2008 | **Health Hero** |
| | Case: | Health Hero v Alere.  Demonstrated infringement of patent claims; |
| | Project: | developed detailed claim charts from discovery materials. |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2008 | **Family Honda** |
| | Case: | Winer v Family Honda.  Assessed GPS functionality for position location, |

Project:    travel planning, and console management of electronics peripherals; testified in deposition.

Status:    Completed

Date:    2008    **Bradshaw, International**

Case:    Fitzpatrick v Bradshaw.  Assessed complaint, motions and depositions.

Project:    The case was settled quickly.

Status:    Completed

Date:    2008    **KeyLink, Incorporated**

Case:    Patent litigation LogicLink v KeyLink.  Assessed computer rental

Project:    processes using internet, MS Office, etc in hotels re asserted patent. Wrote rebuttal expert report; was deposed; testified at trial.

Status:    Completed

Date:    2008    **WindOptions Corporation**

Case:    WindOptions v RAM, Tier.  Inspected factory production of electronics

Project:    inverters for wind turbine power generation and interface to power grid.

Status:    Completed

Date:    2008    **Jesse Kohler**

Case:    Kohler v Wyeth case required database analysis re stability, reliability and

Project:    control processes on history database.  Gave deposition on database issues; second deposition anticipated.

Status:    Completed

Date:    2008    **Net Currents**

Case:    Net Currents v Dow Jones, Factiva.  Analyzed DJ Factiva functionalities

Project:    with regard to demonstrating patent infringement for reputation management on the internet; I was consulting expert assisting inventor.

Status:    Completed

Date:    2008    **Emptoris Corporation**

Case:    Emptoris v BIQ.   Analyze source code, trade secret documentation,

Project:    copyright of software look and feel; write expert report

Status:    Completed

Date:    2008    **GTX Corporation**

Case:    GTX v Kofax, Nuance, Cannon et al.   Evaluate expert reports on

Project:    document imaging/understanding; write expert report re patent invalidity & alleged prior art; provide two days of deposition; prepare to testify

Status:    Completed

Date:    2007    **Phillip Shi**

Case:    Avaak v Shi.   Software trade secret case requiring response to challenge

Project:    by Avaak re my participation in this case.

|        |      |                                                              |
|--------|------|--------------------------------------------------------------|
| Status: | | Completed |

Date:  2007  **California State Board of Equalization**
Case:  PeoplePC v State Board of Equalization.   Methodically evaluate the
Project:  percentage of compact disk (CD) storage used in mailers for advertising
Status:  Completed

Date:  2007  **Manatt, Phelps & Phillips**
Case:  Aeschbacher v California Pizza Kitchen.
Project:  Identify process of changing point of sale software to meet requirements
Status:  Completed

Date:  2007  **Chatham Law Group**
Case:  NITV, LLC v Computer Voice Stress Testing
Project:  Analyze software evidence re copying of source code for a stress analyzer
Status:  Completed

Date:  2007  **Payne & Fears, LLP**
Case:  American Reprographics v Brazo, Inc.
Project:  Analyze evidence re copying of source code for business IT system
Status:  Completed

Date:  2007  **Beckley, Singleton, CHTD**
Case:  Watson v Eaton Electrical, Inc.
Project:  Provided expert advice re variable frequency drives patent infringement
Status:  Completed

Date:  2007  **Gordon, Rees, LLP**
Case:  SG Services v God's Girls, LLC
Project:  Wrote expert report re findings on trade dress of two web sites
Status:  Completed

Date:  2007  **Heller Ehrman, LLP**
Case:  Asteres
Project:  Developed patent application related to pharmacy vending machine
Status:  Completed

Date:  2007  **Heller Ehrman, LLP**
Case:  WRF v Apple  - represented Apple
Project:  Reviewed contentions alleging Bluetooth technology infringed.
Status:  Completed

Date:  2007  **Neufeld Law Group**
Case:  Epicore Software v Imagery Group  - represented Imagery Group
Project:  Was deposed in suit on use of manufacturing software and damages due
to delayed implementation of software.

|          |           |                                                                                                                                                                                  |
|----------|-----------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|          | Status:   | Completed                                                                                                                                                                         |

Date:      2006-7      **Heller Ehrman, LLP**
           Case:       Wyeth v Impax  - represented Impax
           Project:    Reviewed discovery documents for possible use in suit.
           Status:     Completed

Date:      2006        **Heller Ehrman, LLP**
           Case:       Licensing project  - represented Heller Ehrman, LLP
           Project:    Define strategic licensing approach for patent portfolio; estimate costs and payoffs for contingency agreement; structure attorney representation contract for contingency; present to shareholders for review.
           Status:     Completed

Date:      2006        **Heller Ehrman, LLP**
           Case:       Cellport v @Road  - represented @Road
           Project:    Assist attorney in demonstrating that patent claim does not read on client's wireless vehicle instrumentation system.
           Status:     Completed

Date:      2006        **Heller Ehrman, LLP**
           Case:       Appeligo
           Project:    Developed provisional patent application relating to content analysis of video and audio documents.
           Status:     Completed

Date:      2006        **Heller Ehrman, LLP**
           Case:       Broadcom v. Qualcomm  - represented Qualcomm
           Project:    Analyzed invalidity contentions re wireless networking patent; reviewed client's production of discovery documents for possible technical strengths and weaknesses.
           Status:     Completed

Date:      2006        **Julander, Brown and Bollard**
           Case:       Capton v Comcash  - represented Comcash
           Project:    Wrote report analyzing contract violation allegations re wireless liquor bottle caps point of sale software; prepared to testify in arbitration of suit regarding software design equivalence and charges of reverse engineering.
           Status:     Completed

Date:      2006        **Paul, Hastings, Janofsky & Walker, LLP**
           Case:       Matthew Snyder
           Project:    Conducted patentability study of email client concept in light of prior art found during patent search;  identified open conceptual material not previously addressed related to email client functionality, versus conceptual material anticipated by earlier patent applications

Status:     Completed

| | | |
|---|---|---|
| Date: | 2006 | **Paul, Hastings, Janofsky & Walker, LLP** |
| | Case: | MediaTek v. Sanyo  – representing MediaTek |
| | Project: | Developed claim chart on strengths and weaknesses of plaintiff's invalidity contentions related to AC-3 coder/decoder standards as prior art to issued patent |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2006 | **Paul, Hastings, Janofsky & Walker, LLP** |
| | Case: | XSLENT Corporation |
| | Project: | Developed three patent applications, including claim language, specifications and abstracts, for distributed computing infrastructure architecture, computing networks, data modeling methods |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2006 | **Paul, Hastings, Janofsky & Walker, LLP** |
| | Case: | WebEx v. Raindance  – representing Raindance |
| | Project: | Developed invalidity contentions claim chart for suite of nine patents; Demonstrated diligent reduction to practice through software source code history in defense of patent |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2005 | **Paul, Hastings, Janofsky & Walker, LLP** |
| | Case: | Cendant v. Amazon  – representing Cendant |
| | Project: | Patent infringement – electronic commerce;  Searched patent database for prior art to invalidate patent;  Developed three claim charts demonstrating prior art;  Briefed counsel on technical matters to assist in presenting case |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2005-2006 | **Paul, Hastings, Janofsky & Walker, LLP** |
| | Case: | Autobytel v. Dealix  – representing Autobytel |
| | Project: | Patent infringement – electronic commerce;  demonstrated infringement through electronic discovery of source code functionality;  prepared questions for interrogatories to further develop discovery materials; supported motion to compel opposing counsel to prepare adequate software source code environment with observation programs; identified timing issues related to patent claims; performed discovery of timing specifications in database settings; nine months of active involvement in this case covered a wide variety of tasks related to patent litigation technology investigations |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2005 | **Paul, Hastings, Janofsky & Walker, LLP** |
| | Case: | Transitive, Ltd |

| | | |
|---|---|---|
| Project: | Prepared response to office action for two patent prosecutions related to emulation and translation of object code images in multiple host environments |
| Status: | Completed |

| | | |
|---|---|---|
| Date: | 2005 | **Paul, Hastings, Janofsky & Walker, LLP** |
| | Case: | Scott Adams |
| | Project: | Searched patent database for possible prior art on self heating cups; Wrote patent application specification for self heating cup invention |
| | Status: | Completed |

| | | |
|---|---|---|
| Date: | 2005 | **Paul, Hastings, Janofsky & Walker, LLP** |
| | Case: | Persyst, Inc. |
| | Project: | Wrote patent continuation application for EEG analysis invention, including specification, claims, abstract |
| | Status: | Completed |

## Personal Patents filed, prosecuted and issued

| App Number | Date Filed | Title |
|---|---|---|
| 11/337359 | Jan 23, 2006 | "Organizing structured and unstructured database columns using corpus analysis and context modeling to extract knowledge from linguistic phrases in the database" |
| Office Action | June 9, 2006 | Developed reply to office action with amended claims and amended drawings supported by appropriate legal language |
| Office Action | Sept 13, 2006 | Replied to office action with amended claims appropriate legal language to demonstrate that claims are novel – negotiated notice of allowance |
| Patent 7,209,923 | April 24, 2007 | Patent issued by USPTO as 7,209,923 |
| Patent App 20090070317 | September 7, 2007 | Filed US Patent application "Patent Claim and Specification Analysis" published March 12, 2009 |

## Education

| Year | College/University | Degree |
|---|---|---|
| 1976 | George Washington University | DSc, Computer Science and Electrical Engineering |
| 1971 | George Washington University | MS, Computer Science and Electrical Engineering |
| 1968 | Georgia Institute of Technology | BS, Electrical Engineering |

# EXHIBIT B

**Depositions of Dr. Richard G. Cooper
From 2009 through 2012**

State Farm Insurance;  I testified in Colorado State Court, February 2012.

Escalate v. Sleepy's;  I was deposed in San Diego, California, July 2011

Medcorp, Inc. v. Pinpoint;  I was deposed in June, 2011

Apple v. Motorola, I was deposed in June, 2011