# EXHIBIT A

(Redacted Version of Doc. # 368)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

**MDX MEDICAL, INC.'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by its undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Court's order extending the deadline for dispositive motions to November 2, 2012 [Doc. # 360], respectfully requests entry of summary judgment of non-infringement.

**MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Health Grades, Inc. ("Health Grades") has accused MDx of infringing United States Patent No. 7,752,060 ("the '060 patent"; Exhibit A[1]). The accused product is the MDx website www.vitals.com ("the Vitals website"). The '060 patent generally relates to websites that allow users to request information on a healthcare provider, in response to which specific data which was obtained from specific sources is accessed, and a report on the healthcare provider is created.

---

[1] Exhibits A through F are attachments to Exhibit 1.

1

Every claim of the '060 patent requires (1) specific data received from the first healthcare provider; and (2) the same data verified by the healthcare provider. Fact discovery is over, and Health Grades has no proof on either of these claim elements. Accordingly, pursuant to Federal Circuit law, summary judgment of no infringement should be granted. *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442. F.3d 1301, 1309 (Fed. Cir. 2006) (affirming summary judgment of no infringement: "nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations").[2]

## I. STATEMENT OF UNDISPUTED MATERIAL FACTS

### Data Received From the Healthcare Provider

1. Every claim of the '060 patent requires the receipt of at least three of certain data elements from the healthcare provider. Exhibit A, claim 1, col. 20, lines 29-38; claim 15, col. 22, lines 19-27.

2. Health Grades has no evidence that any healthcare provider has ever provided even two of the required data elements, let alone three. *See* Exhibit B, Portions of Expert Report of Philip Greenspun Regarding Infringement of U.S. Patent No. 7,752,060 by MDx Medical, ¶¶ 112-28; Exhibit D, Portions of MDx Medical, Inc.'s Second Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories, § B, p.4.

### Verification by the Healthcare Provider

3. Every claim of the '060 patent requires that the healthcare provider also "verify" the data provided. Exhibit A, claim 1, col. 20, lines 29-38; claim 15, col. 22, lines 19-27.

---

[2] MDx already has one motion for partial summary judgment of no infringement pending. [Doc. # 195].

    4.    Health Grades has no evidence that any healthcare provider has ever verified any of this data. *See* Exhibit B, ¶¶ 112-28; Exhibit D, § A, p.3.

## II. THE PERTINENT LAW

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment where there is "no genuine issue as to any material fact" and when the "moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Shamrock Techs., Inc. v. Medical Sterlization, Inc.,* 903 F.2d 789, 791 (Fed. Cir. 1990). These standards are fully applicable to patent cases. *Nike Inc. v. Wolverine World Wide*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."). Indeed, the Federal Circuit has emphasized that "[s]ummary judgment is as appropriate in a patent case as it is in any other case," *Desper Prods., Inc. v. QSound Labs., Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) (citations and quotation marks omitted), and has encouraged use of Rule 56 where appropriate, stating that, "[w]here no issue of material fact is present . . . courts should not hesitate to avoid an unnecessary trial by proceeding under Fed. R. Civ. P. 56 without regard to the particular type of suit involved." *Chore-Time Equip., Inc. v. Cumberland Corp.,* 713 F.2d 774, 778-79 (Fed. Cir. 1983); s*ee also Nike Inc.*, 43 F.3d 644 at 646 (holding that the district court properly granted summary judgment on non-infringement); *Fenner Inv., Ltd. v. Microsoft Corp*., 632 F. Supp. 2d 627, 641-42 (E.D. Tex. 2009) (granting defendants' motion for summary judgment of non-infringement).

3

B.  **Infringement**

One way in which a patent may be infringed is by "literal" infringement. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997). Literal infringement requires that each and every element in the asserted claim of the patent be literally present in the accused device. *Id.* Put another way, there can be no literal infringement if the accused device lacks any one element of the asserted claim. *Id.*

A lack of literal infringement does not end the infringement inquiry, as infringement may exist under the "doctrine of equivalents." The doctrine of equivalents allows, in some circumstances, a claim element to be met by its substantial equivalent. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 732-33 (2002) (*citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950)). One way of judging equivalents is to determine if the element in the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result, as the claimed element. *Graver Tank & Mfg. Co.*, 339 U.S. at 608.

There are strict limitations to the application of the doctrine of equivalents. *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). First, the doctrine is limited by the "all elements rule." *Id.* Pursuant to the "all elements rule," "there can be no infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is not present in the accused device. *Id*, at 321. Application of the "all elements rule" is amenable to summary judgment. *See, e.g., id.* at 1318. As the Supreme Court has held, "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment. . . . [I]f a

4

theory of equivalence would *entirely vitiate a particular claim element*, partial or complete judgment should be rendered by the court, as there would be no further *material* issue for the jury to resolve." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997) (emphasis added).

The determination of patent infringement under the doctrine of equivalents is also limited by the doctrine of "prosecution history estoppel." *Lockheed Martin Corp.*, 324 F.3d 1308 at 1318. Under this doctrine, if a claim element was added during prosecution of the patent for reasons related to patentability, the patent owner is presumed to be barred from employing the doctrine of equivalents to cover territory between the original and amended claim. *Festo*, 535 U.S. at 737-38.

### C. Failures of Proof

The bases for summary judgment addressed herein are based on the lack of any evidence to support the claim. In these situations, all that is required of MDx is to file a motion pointing out the missing elements and stating that there is a lack of evidence to find infringement. *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442. F.3d 1301, 1308-09 (Fed. Cir. 2006); *cf. Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1362 (Fed. Cir. 2012) (JMOL for non-infringement appropriate and $200 million jury verdict vacated, where patentee failed to present required evidence to show infringement).

### III. THE CLAIM REQUIREMENTS AT ISSUE

The '060 patent relates to computer implemented methods of providing information on healthcare providers via online websites. A user goes to these websites, types in a request for information on a healthcare provider, and a report is generated. The patent claims all recite

5

various requirements of the specific information accessed for creating the report, where that information must be obtained, and what should be in the resulting report. *See, e.g.,* Exhibit A, claim 1, col. 20.

Every claim of the '060 patent has the following requirements:

(1) The healthcare provider must provide "at least three" of a set of data elements (Exhibit A, claim 1, col. 20, lines 29-38; claim 15, col. 22, lines 19-27); and

(2) The healthcare provider must "verify" the elements he provides (*Id.*).

Health Grades has no proof that either of these elements are met and accordingly summary judgment should be granted.

### IV. DATA RECEIVED FROM THE HEALTHCARE PROVIDER

The claim element at issue recites:

accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is ***received from the first healthcare provider*** and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies; Exhibit A, claim 1, col. 20, ll. 29-38 (emphasis added); *see also* claim 15.

This requirement of the claims was not subject to the Court's Order on Claim Construction [Doc. # 138, "Claim Construction Order"], as the language is clear and not in dispute. After sixteen months of fact discovery, Health Grades has no proof that any healthcare provider has given even two of these elements, let alone three. *See* Exhibit B, Portions of Greenspun report, ¶¶ 112-28.

Vitals collects all the data elements recited in this claim term from third parties. *See* Exhibit 2, Declaration of Erika Boyer, dated November 2, 2012, ¶ 5. The Vitals website includes,

6

however, a portal for physicians, and in that portal the physicians may, if necessary, edit some of this information. *Id*.

The only evidence collected by Health Grades relating to whether and to what extent physicians use the portal to modify this data is summarized in MDx's response to interrogatory 2. Relevant portions of that interrogatory response are attached as Exhibit D, and supporting documentation was produced to Health Grades. The pertinent part of the interrogatory response is repeated below:

> The following information has been entered and/or modified by one or more physicians: specialty information, gender, awards/honors, professional appointments, professional membership, and languages.
>
> REDACTED
>
> Additionally, the MDx data does not include the following data fields: medical philosophy and hobbies.
>
> REDACTED

This evidence shows that only trivial percentages of physicians have ever edited *one* of these data elements. It says nothing about whether any provider has ever edited even two of the

7

data elements, let alone three. Any argument by Health Grades to the contrary would be pure speculation.[3]

Proof that only one of the data elements was received from a healthcare provider cannot possibly meet this limitation equivalently, as that would vitiate the claim term entirely. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997). Moreover, this limitation was added to the claims to overcome prior art rejections. *See* Exhibit E, Portions of Prosecution History, at bate-stamped pages MDX0013547-49, MDX0013553, and MDX0013557; *see also* MDX0013570-71 (Reasons for Allowance). Accordingly, under the doctrine of prosecution history estoppel Health Grades is estopped from arguing equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki* Co., 535 U.S. 722, 736-737 (2002).

Still further, Health Grades' expert did not provide any equivalents analysis on this element (Exhibit B, ¶¶ 112-28), and thus there is no evidence on which a jury could find the claimed and alleged equivalent features to be substantially the same in the eyes of a person of ordinary skill in the art. *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) (affirming grant of summary judgment of no infringement: "[W]hen the patent holder relies on the doctrine of equivalents, as opposed to literal infringement, the difficulties and complexities of the doctrine *require* that evidence be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes

---

[3] Health Grades has also argued that the mere "capability" of physicians to edit these data fields is enough to satisfy these claims. While that argument might make sense in some situations where the patent claims permit it (for example, if the claims here read "a computer system *allowing* the healthcare provider to provide three or more" of the data elements), the argument is inapplicable to these claims (the claims read "*received from*" the healthcare provider – past tense).

8

that those skilled in the art would recognize the equivalents." (emphasis added)). Because Health Grades provided no "particularized testimony" on this issue, this is yet another reason why there can be no finding of infringement by MDx under the doctrine of equivalents. *Id.*

Because Health Grades has no evidence showing that three or more of the required data elements were received from the provider, summary judgment should be granted. *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442. F.3d 1301, 1309 (Fed. Cir. 2006).

## V. <u>VERIFICATION REQUIRED BY THE HEALTHCARE PROVIDER</u>

### A. <u>The Requirement Of The Claim And This Court's Prior *Dicta*</u>

Every claim of the '060 patent also requires the information from the healthcare provider be ***verified*** by the healthcare provider. Thus, the claims have ***two*** requirements for the healthcare provider data: (1) the information must be ***received*** from the provider (addressed in Section IV, *supra*); ***and*** (2) the information must be ***verified*** by the provider (addressed in this Section).

The Court addressed this verification requirement in footnote 8 of the Court's Claim Construction Order [Doc. # 138]. There, the Court stated that "the specification makes clear that the act of 'verifying' requires only ***that the website receive confirmation of the information*** from some other source, in this instance the healthcare provider." Claim Construction Order, page 15, n.8. In *dicta*, the Court added that "the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider." *Id*. The technical experts of both parties agree that some sort of confirmation of the provided information is required, and that the normal meaning of verification means obtaining proof. *See* Exhibit B, Greenspun report, ¶ 122; Exhibit F, Portions of MDx Rebuttal Report of Richard G. Cooper, ¶ 13. This is

9

consistent with what Health Grades itself practiced. Exhibit C, Portions of Transcript of Montroy Deposition, page 145 (documentation or other verification required by Health Grades for verification from healthcare providers).

The purpose of requiring this separate verification is evident from the data elements themselves. That is, the doctors have obvious incentive to "puff" on all these specific elements – the more years in practice they have, the more languages they speak, the more awards and honors they have, etc., all make them look better, which brings in more business, which makes them more money. While most doctors would be honest and trustworthy, not all will be. This is why the claim insists on "verification" too – simply having a doctor *say* he obtained a glamorous award or honor, for example, is not enough; ***and the claims all expressly say so***. An analysis of this element that requires no more than receipt from the healthcare provider eradicates the verification requirement entirely in contravention of Supreme Court precedent. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997).

### B. Health Grades Has No Proof Of Verification

Health Grades has no proof that any healthcare provider has "verified" anything. Accordingly, summary judgment should be granted. *Exigent Technology, Inc.*, 442. F.3d at 1309.[4]

---

[4] Even if the Court finds that the provider giving that information is a form of verification, Health Grades still has no proof of this element because it requires verification of three or more of the elements and, as shown in Section IV, *supra*, Health Grades has no proof that any healthcare provider has ever given more than one of these data elements.

## VI. CONCLUSION

For all (or any) of the above reasons, MDx respectfully requests entry of summary judgment of no infringement.

Dated: November 2, 2012

Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail:sstimpson@sillscummis.com
E-mail:smurray@sillscummis.com
E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: (303) 244-1800
Fax: (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

# CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2012, I electronically filed the foregoing MDX MEDICAL, INC.'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Jesus Manuel Vazquez, Jr.
  jvazquez@rothgerber.com, phenke@rothgerber.com

- Gregory B. Kanan
  gkanan@rothgerber.com, dgrooms@rothgerber.com

- Kris John Kostolansky
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- Scott David Stimpson
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- Scott B. Murray
  smurray@sillscummis.com

- David Chunyi Lee
  dlee@sillscummis.com

- Terence M. Ridley
  ridley@wtotrial.com, norris@wtotrial.com

                                                               *s:/David C. Lee*