# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 11-cv-00520-PAB-BNB

HEALTH GRADES, INC.,

      Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

**PLAINTIFF HEALTH GRADES, INC.'S RESPONSES TO DEFENDANT MDX
MEDICAL, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-6)**

---

Plaintiff Health Grades, Inc. ("Health Grades") hereby responds, pursuant to Rules 26

and 33 of the Federal Rules of Civil Procedure, to Defendant MDx Medical, Inc.'s ("MDx") First

Set of Interrogatories (Nos. 1-6) as follows:

<u>GENERAL OBJECTIONS</u>

1.      Health Grades objects to the definitions and instructions set forth in Defendant's

Interrogatories to the extent they are inconsistent with, seek to impose obligations not required by, or

seek to expand the scope of permissible discovery under the Federal Rules of Civil Procedure,

including but not limited to Rule 26(a)'s expert disclosure requirements, the Local Rules of this Court,

and any pretrial scheduling order of the Court.

2.      Health Grades objects to Defendant's Interrogatories to the extent they seek

information that is subject to the attorney-client privilege, that evidences or constitutes attorney work

product, that is the subject of confidentiality agreements with third parties, that is the subject of a

protective order in any separate proceeding, or that otherwise is not discoverable or is the subject of any

other privilege, whether based upon statute or recognized at common law.

3.      Health Grades objects to Defendant's Interrogatories to the extent that they are overly

broad, unduly burdensome, seek irrelevant information, or are not reasonably calculated to lead to the discovery of admissible evidence.

4.      Health Grades makes the specific objection with respect to certain interrogatories that they are vague and ambiguous insofar as they do not describe with reasonable particularity the information being sought.  Since the scope of such interrogatories is in question, Health Grades reserves the right to object to such interrogatories as overly broad and unduly burdensome, as not reasonably calculated to lead to the discovery of admissible evidence, or as seeking irrelevant information once the scope of such interrogatories is clarified.

5.      Health Grades objects to Defendant's definition of "document" to the extent it includes any items beyond the scope of the Federal Rules of Civil Procedure.

6.      Health Grades objects to these Interrogatories to the extent they seek information already in Defendant's possession or equally accessible to Defendant, or information which is a matter of public record.

7.      Health Grades' responses set forth below and/or production of documents in connection therewith in no way limit the generality of the foregoing General Objections, and are not to be construed as a waiver of the foregoing objections, any specific objections stated in the following responses, or Health Grades' right to object to any additional, supplemental, or further discovery request of Defendants.

8.      Health Grades has answered Defendant's Interrogatories based upon its understanding of the interrogatories, and to the best of its knowledge and recollection as of the date the answers are served.  Health Grades expressly reserves the right to provide supplemental answers should that become appropriate.  All answers provided by Health Grades in response to Defendant's Interrogatories are produced without waiver of Health Grades' right to supplement its answers as

responsive information becomes available.

9.      Any statement by Health Grades in any of the following responses to Defendant's Interrogatories that it will produce responsive documents is only a statement that any such documents that can be located after a reasonable search will be produced, made available for inspection, or, if privilege is asserted, listed on a privilege log.  Such a statement is not a representation that any such responsive documents exist.

10.      All documents produced by Health Grades in connection with Health Grades' responses to Defendant's Interrogatories are produced without waiver of, or prejudice to, any challenge by Health Grades to the relevancy or admissibility of such documents in this case.

11.      The General Objections set forth above are made as to matters that are clearly objectionable from the face of the interrogatories.  These objections are made without prejudice to and without waiver of Health Grades' right to object on all appropriate grounds to the specific information sought by each Interrogatory.

12.      Health Grades generally objects to these requests as premature to the extent they seek information that is more properly provided through expert reports or expert depositions.  Health Grades will provide expert disclosures in accordance with the disclosure requirements of the applicable rules and Court Order.

13.      Health Grades generally objects to these requests as improper to the extent they require or seek a legal conclusion.

14.      Health Grades objects to each request to the extent it seeks confidential or trade secret business information.  Health Grades will only provide such requested information pursuant to the terms of a Protective Order entered by the Court.

Subject to the General Objections outlined above and the more specific objections set forth

below, Health Grades responds as follows:

RESPONSES TO INTERROGATORIES

**Interrogatory No. 1:**

Separately for each claim of the Patent-in-Suit, describe in full and complete detail the facts concerning the conception and reduction to practice of the alleged invention.  To be complete, your response should state the specific dates of such alleged conception and reduction to practice, identify each person involved in such conception and reduction to practice and their respective contributions, describe the location and circumstances of the conception and reduction to practice, and identify all documents and things tending to establish, refute or identify the dates, locations, individuals or circumstances sought in this interrogatory.

**Response to Interrogatory No. 1:**

Health Grades incorporates herein its General Objections.  Health Grades objects to this request as overly broad and unduly burdensome in that it requests, without limitation, the identification of "all documents and things tending to establish, refute or identify the dates, locations, individuals or circumstances sought in this interrogatory."  Health Grades objects to this request to the extent it calls for information protected by the attorney-client privilege or the attorney work-product doctrine.  Health Grades objects to this request to the extent it requests information already within in the possession of Defendant.  Health Grades objects to this request to the extent it calls for confidential, proprietary or trade secret information before the entry of a suitable Protective Order.

Health Grades further objects that the request for identity of persons who contributed to the reduction to practice of the patented invention is irrelevant.  See, e.g., M.P.E.P. 2137.01 Inventorship (*citing In re DeBaun*, 687 F.2d 459, 463, 214 USPQ 933, 936 (CCPA 1982) ("there is no requirement that the inventor be the one to reduce the invention to practice so long as the reduction to practice was done on his behalf")).

Health Grades additionally objects that the request for the identity of inventors on a claim-by-claim basis is irrelevant because in the case of joint inventorship, a coinventor need not

make a contribution to every claim of a patent. Rather a contribution to one claim is enough. See, e.g., M.P.E.P. 2137.01 Inventorship.

Subject to and without waiving the General or Specific Objections, Health Grades responds as follows:

The patent-in-suit was filed in connection with Health Grades' development of products called Physician New Media Marketing ("PNMM"), Hospital On-Line Marketing ("HOM"), and Physician On-Line Marketing ("POM").  Although conception of various aspects of these products (and the invention described in the patent-in-suit) happened earlier, work began on the development of the PNMM, HOM, and POM products in late 2004 continuing through early 2005.  Health Grades began launching the first version of these products in the Spring/Summer of 2005.

David Hicks, Scott Montroy, and John Neal are joint inventors of the patent-in-suit.  Each of the three inventors contributed to the conception of at least one of the claims in the patents-in-suit.

David Hicks is currently Executive Vice-President, CIO, of Health Grades.  He was hired on March 15, 1996, as Vice-President Information Technology.  Mr. Hicks oversees all Information Technology activities in the company.  Mr. Hick's primary focus as an inventor was on the database and searching elements of the claimed invention, the patient experience surveys, and the third party verified information.

Scott Montroy was employed by Health Grades from May 24, 1999 through July 12, 2007.  Mr. Montroy held the following positions at Health Grades: Project Lead, Technical Manager, Director of Application Development, Vice-President Development & Technology,

and Vice-President Development & Business Intelligence. Mr. Montroy's job responsibilities were as follows:

As Project Lead, Mr. Montroy was responsible for technical planning, architecture, and coding for the initial launch of www.healthgrades.com. Duties included coordinating the technical team and analyzing technical requirements. Defined and implemented development processes/rules and created tiered development/testing environments establishing quality controls. Assisted in hiring project team and provided technical consultation for pilot project www.providerweb.net.

As Technical Manager, Mr. Montroy was responsible for managing the development staff in the maintenance and technical operations across various web sites.  He also defined, developed, and maintained dynamic technical products.  Responsibilities included working with business development on new product development, technical directions, planning, content implementation, private label sites, and distribution partnerships. Other duties included technology research, analysis, and prototyping new technologies for potential market opportunities.

As Director of Application Development, Mr. Montroy was responsible for managing enterprise applications and daily e-commerce website operations. He also lead product development and enhancements for e-commerce report products, and coordinated technical integration projects with strategic partners. He headed up the development process improvements program, influenced strategic direction and planning with executives, and participated in software designs and specifications reviews.

As Vice-President Development & Business Intelligence, Mr. Montroy was responsible for developing IT strategic planning for senior management. He initiated and prioritized strategic

{00948650 / 1}

IT projects to strengthen technical operations, infrastructure, online products, and solve key business challenges.  He engineered a company wide business intelligence platform for an executive reporting system used by senior management and business units, which included the creation of KPI's for establishing integrated internal information scorecard system.

Mr. Montroy was in charge of the people who wrote the code for the PNMM, HOM, and POM products and also focused on the report formats, the healthcare-provider verified information, and the invention as employed at a predetermined webpage, among other things.

John Neal worked as a consultant to the company from 2003 to 2007, and was responsible for developing and overseeing consumer facing website initiatives.  From February, 2008, to November, 2008, Mr. Neal worked as a consultant responsible for M&A.  From November, 2008, to the present time, Mr. Neal has held the position of Senior Vice-President of Business Development and was named Executive Vice-President of Corporate Strategy and Development in February, 2011, responsible for product and corporate development.

Mr. Neal's primary focus as an inventor was on the concepts of giving patients the information they wanted while at the same time increasing efficiency and profitability of physician members through marketing and patient education, including, for example, the concepts of providing enhanced services to members and including physician advertisements.

Health Grades submits all claims (1-17) of United States Patent No. 7,752,060 were conceived and reduced to practice at least as early as February 8, 2006, the date United States Provisional Application No. 60/771,757 was filed.  Investigation and discovery is ongoing and Health Grades reserves the right to update this Response as further information becomes available.

**Interrogatory No. 2:**

For the Patent-in-Suit, identify all prior art, including each patent, publication, patent application, instances of prior public use or sale and all other prior art references of any sort, specifically identifying the prior art references that have been asserted by others against the Patent-in-Suit and/or the Application Publication and the allegations they made, and identify all documents and things relating to the foregoing.

**Response to Interrogatory No. 2:**

Health Grades incorporates herein its General Objections.  Health Grades objects to this request as overly broad and unduly burdensome in that it requests, without limitation, the identification of "all documents and things" relating to "prior art."  Health Grades objects to this request to the extent it calls for information protected by the attorney-client privilege or the attorney work-product doctrine.  Health Grades objects to this request to the extent it requests information already within in the possession of Defendant or publically available. Health Grades objects to this request to the extent it calls for confidential, proprietary or trade secret information before the entry of a suitable Protective Order.  Subject to and without waiving the General or Specific Objections, Health Grades responds as follows:

Health Grades directs Defendant to the publically available prosecution histories of the Patent-in-Suit and Related Patents, these include United States Patent No. 7,752,060; United States Application Serial No. 12/830,255; United States Application Serial No. 12/897,599; and United States Application Serial No. 12/790,444.  Outside of the above-identified references, some of which may not qualify as prior art, Health Grades is currently not aware of any prior art, including any prior public use or sale.  Investigation and discovery is ongoing and Health Grades reserves the right to update this Response as further information becomes available.

**Interrogatory No. 3:**

With regard to the level of ordinary skill in the art pertaining to the Patent-in-Suit:  State Health Grade's contention of the art area to which the subject matter of the Patent-in-Suit pertains and identify all evidence which allegedly supports this contention; and State Health Grade's contention of the level of ordinary skill in the art and identify all evidence which allegedly supports this contention.

**Response to Interrogatory No. 3:**

Health Grades incorporates herein its General Objections.  Health Grades will interpret

Interrogatory No. 3 as constituting two interrogatories: (1) "State Health Grade's contention of

the art area to which the subject matter of the Patent-in-Suit pertains and identify all evidence

which allegedly supports this contention"; and (2) "State Health Grade's contention of the level

of ordinary skill in the art and identify all evidence which allegedly supports this contention."

Health Grades objects to this request as overly broad and unduly burdensome in that it requests,

without limitation, the identification of "all evidence" relating to both interrogatories in this

request.  Health Grades objects to this request to the extent it calls for information protected by

the attorney-client privilege or the attorney work-product doctrine.  Health Grades objects to this

request to the extent it requests information already within in the possession of Defendant.

Health Grades objects to this request to the extent it calls for confidential, proprietary or trade

secret information before the entry of a suitable Protective Order.  Health Grades further objects

to this request as premature in view of the deadline for expert disclosures and reports under the

Scheduling Order.  Subject to and without waiving the General or Specific Objections, Health

Grades responds as follows:

Health Grades submits that United States Patent No. 7,752,060 and the claims therein

speak for themselves.  United States Patent No. 7,752,060 generally pertains to a computer-

implemented method of providing healthcare provider information to potential patients (*see, e.g.,* claim 1 of United States Patent No. 7,752,060); and an on-line information system for connecting healthcare providers with potential patients (*see, e.g.,* claim 15 of United States Patent No. 7,752,060).  Investigation and discovery is ongoing and Health Grades reserves the right to update this Response as further information becomes available.

**Interrogatory No. 4:**

  If Health Grades asserts that the subject matter of any claim of the Patent-in-Suit would not have been obvious to a person of ordinary skill in the art at the time the alleged invention described by such claim was made, set forth in full and complete detail all facts relating to or supporting such assertion, including, but not limited to, facts relating to "objective indicia" or "secondary considerations" that support the alleged validity of such claim, any "nexus" existing between such "objective indicia" or "secondary considerations" and any claim limitation, and identify each person having knowledge of and all documents and things relating to the foregoing.

**Response to Interrogatory No. 4:**

  Health Grades incorporates herein its General Objections.  Health Grades objects to this request as overly broad and unduly burdensome in that it requests, without limitation, "all facts" relating to or supporting Health Grades' assertion that the valid Patent-in-Suit is not obvious to a person of ordinary skill in the art.  Health Grades objects to this request to the extent it calls for information protected by the attorney-client privilege or the attorney work-product doctrine.  Health Grades objects to this request to the extent it requests information already within in the possession of Defendant.  Health Grades objects to this request to the extent it calls for confidential, proprietary or trade secret information before the entry of a suitable Protective Order.  Health Grades objects to this request as vague and ambiguous because the terms "objective indicia" and "secondary considerations" are unclear and not defined.  Subject to and without waiving the General or Specific Objections, Health Grades responds as follows:

In responding to this Interrogatory, Health Grades will interpret "objective indicia" and "secondary considerations" to include evidence of commercial success, copying, long-felt but unsolved need, failure of others, and unexpected results as discussed in *Graham v. John Deere Co.*, 383 U.S. 1 (1966) and subsequent federal court opinions.  The United States Patent and Trademark Office examined U.S. Patent Application Serial No. 11/512,529 on the merits and issued a notice of allowance resulting in U.S. Patent No. 7,752,060.  United States Patent No. 7,752,060 is a valid, enforceable patent entitled to a presumption of validity without any consideration of "objective indicia" and "secondary considerations."

Health Grades identifies the following additional evidence of the novelty and non-obviousness of U.S Patent No. 7,752,060:

(1) The copying of the claimed invention by Defendant, including the website www.vitals.com;

(2) Recognition of Health Grade's success by varying national authorities, including:

a.    CNN Health, January 27, 2011:

Study Names Cities with Top Hospital Care

"The HealthGrades list may surprise some who may have thought Cleveland or Houston or New York might top the list. But to get high marks, a city has to have the most high performing hospitals."


b.    New York Post, January 26, 2011:

NY on Critical List in US Hospital Survey

"New York City's regional network of hospitals ranked a dismal 50th in the country for patient care, a shocking new study released yesterday.
The analysis by the medical watchdog group HealthGrades found that the best care for Medicare patients was found at hospitals in West Palm Beach, Fla., followed by Brownsville, Texas; Dayton, Ohio; Minneapolis-St. Paul; Tucson, Ariz.; and Cincinnati."

c.      CNN, September 28, 2010:

Empowered Patient: How to Choose the Right Hospital

"'A lot of people think hospitals are all the same,' said Dr. Samantha Collier, chief medical officer at HealthGrades, which ranks hospitals. 'They're not.'… HealthGrades and Leapfrog will tell you success rates for various procedures at hospitals near you, and will give safety data for the hospitals as well."

d.      Newsweek, August 12, 2010:

Tackling Four Big Health Phobias

"Do your homework. Hospital Guides: HealthGrades offers a comprehensive search of hospitals by state, city, and category. Guides list specialists, best hospitals, safest hospitals, and much more. In 2010, they created a list of the 50 best hospitals. Patients can search the Web site by location and find award-winning hospitals in their area."

e.      Forbes, July 24, 2010:

The Best Cities For Working Mothers, 2010

"With regard to health care, what's important to moms is access to a local pediatrician who can be trusted. We worked with HealthGrades.com, a leader in health care ratings, to rank each city by practicing pediatricians. The top city for children's physicians? New York, followed by Chicago."

f.      The Los Angeles Times, July 15, 2010:

Hospital Rankings May Not Be Perfect, But They're Better Than 'Pretty'

"HealthGrades is one place to start. And the Agency for Healthcare Research and Quality can walk you through how to choose a hospital…"

g.      CNN International, July 7, 2010:

Are Hospitals Deadlier in July?

"Chose your hospital wisely. Experts say you should research your local hospital… Both the Leapfrog Group and HealthGrades allow you to compare hospitals based on patient safety ratings, and see which procedures are ranked the safest at a given institution."

h.      USA Today, July 6, 2010:

Domestic Medical Travel is Taking Off For Surgery Deals

"Retired surgeon David Crowder was hired to research options outside its local area for some types of care. Using data from HealthGrades, a publicly traded hospital-ratings firm, and other sources, Crowder looked into the quality of care at facilities around the country."

i.      The Advisory Board Company, July 6, 2010:

HealthGrades Names 'Top' Maternity Care Hospitals, Cites Fewer Complications

"The 'best' U.S. hospitals for maternity care as ranked by HealthGrades have 51% fewer vaginal-delivery complications and 74% fewer caesarean section complications than poorer-performing facilities."

j.      Medical News Today, June 30, 2010:

Birth Complication Rates Vary Widely By Hospital

"'The HealthGrades study shows that hospitals can differ dramatically in terms of maternity outcomes, even as complication rates overall continue to decline over time,' said Rick May, MD, a vice president with HealthGrades and co-author of the study. 'The good news for women and their families is that objective data exists to help them understand this variation and find the best hospital in which to deliver their baby.'"

k.      Reuters, June 9, 2010:

Top Hospitals in Patient Experience Announced by HealthGrades

"Hospitals providing the best patient experience in the nation, according to surveys of their patients overseen by the Centers for Medicare and Medicaid Services, were identified today by HealthGrades, the leading independent healthcare ratings organization."

l.      Modern Healthcare, June 23, 2010:

HealthGrades Notes Variation in Emergency Care

"The study recognized 255 hospitals that performed in the top 5% for emergency medicine. Those hospitals had a 39% lower risk-adjusted mortality rate when compared with others, and the top-ranking hospitals also saw greater improvement in their mortality over the three-year time span than did other facilities."

m.     Good Day Atlanta, Fox 5, September 16, 2010:

Housecall: Rating Doctors Online

"Interviewer: 'Are you looking for a good doctor? With just a few clicks of your mouse, you might be one step closer to finding one. Online rating sites allow you to read what others think of your potential physicians... Here to discuss this hot topic is Dr. Kimberly Manning of Emory University and Grady Health Care. So all it takes is a quick online search and you get these ratings sites. Who's putting these together?'
Dr. Kimberly Manning of Emory University and Grady Health Care: 'There are lots of different companies. There are a few leading ones that have become very popular. One in particular is called HealthGrades.com.'"

n.     The Boston Globe, May 21, 2010:

Rating the Doctor-Rating Sites

"'These sites are here to stay," Lagu said about yelp.com, HealthGrades.com, and the like. 'I think we have the opportunity then to help shape the genre. ... We can help direct the improvement of the sites either by referring patients to them or just directly working with the sites themselves.'"

(3) Client testimonials by a variety of Health Grade clients available at

http://www.healthgrades.com/business/library/client-testimonials.aspx; and

(4) Commercial Success and Unexpected Results:

Health Grades has seen significant commercial success and unexpected results since it began to launch the commercial embodiment of the patents-in-suit in summer 2005. For example, the total number of users, total number of visits, and total page views of its on-line information system increased at least 130% from 2005-2007 as shown in the following charts:







{00948650 / 1}

Investigation and discovery is ongoing and Health Grades reserves the right to update this Response as further information becomes available.

**Interrogatory No. 5:**

Apart from the instant litigation, identify all entities against which Health Grades has ever asserted or intimated, by suggesting or offering a license, or in any other way (hereafter, "assertion"), that any person has infringed or would infringe any claim of the Application Publication, the Patent-in-Suit, any Related Patents, and/or any foreign equivalents thereof and for each assertion, state in detail the circumstances surrounding each such assertion, including Health Grades' bases for the allegation, and identify all related documents and persons having knowledge of the assertion.

**Response to Interrogatory No. 5:**

Health Grades incorporates herein its General Objections.  Health Grades objects to this request to the extent it calls for information protected by the attorney-client privilege or the attorney work-product doctrine.  Health Grades objects to this request to the extent it requests information already within in the possession of Defendant.  Health Grades objects to this request to the extent it calls for confidential, proprietary or trade secret information before the entry of a suitable Protective Order.  Health Grades objects to this request as vague and ambiguous because the term "intimated" is unclear and not defined.  Subject to and without waiving the General or Specific Objections, Health Grades responds as follows:

In responding to this Interrogatory, Health Grades will interpret "intimated" to mean a contacting a party in an attempt to acquire a license.  Outside of the instant litigation, Health Grades has not asserted or intimated, by suggesting or offering a license, or in any other way asserted that any person has infringed or would infringe any claim of the Application Publication, the Patent-in-Suit, any Related Patents, and/or any foreign equivalents thereof. Investigation and discovery is ongoing and Health Grades reserves the right to update this Response as further information becomes available.

{00948650 / 1}

**Interrogatory No. 6:**

Describe, in detail, all damages that Health Grades contends it may be entitled to receive as a result of any alleged infringement by MDx of the Patent-in-suit, including, but not limited to, an explanation of the factual and legal bases for any (i) reasonable royalty that Health Grades seeks in view of the factors set forth in *Georgia-Pacific Corp.* v. *United States Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970) and its progeny, and (ii) lost profits that Health Grades seeks, and identify all documents and things relating to the foregoing.

**Response to Interrogatory No. 6:**

Health Grades incorporates herein its General Objections.  Health Grades objects to this request as overly broad and unduly burdensome in that it requests, without limitation, the identification of "all documents and things" relating to Health Grades' damages contentions. Health Grades objects to this request to the extent it calls for information protected by the attorney-client privilege or the attorney work-product doctrine.  Health Grades objects to this request to the extent it requests information already within in the possession of Defendant. Health Grades objects to this request to the extent it calls for confidential, proprietary or trade secret information before the entry of a suitable Protective Order.  Health Grades objects to this request as vague and ambiguous because the term "progeny" is unclear and not defined.  Health Grades objects to this request as premature in view of the deadline for expert disclosures and reports under the Scheduling Order.  Subject to and without waiving the General or Specific Objections, Health Grades responds as follows:

In responding to this Interrogatory, Health Grades will interpret "*Georgia-Pacific Corp.* v. *United States Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970) and its progeny" to mean the factors set forth in *Georgia-Pacific Corp.* v. *United States Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970) and commonly considered by federal courts when evaluating a reasonable

royalty.  As a consequence of Defendant's infringement, Health Grades is entitled to no less than a reasonable royalty and/or lost profits for MDx's use of the infringing website.  Investigation and discovery is ongoing and Health Grades reserves the right to update this Response as further information becomes available.


HEALTH GRADES, INC.

By its Attorneys,


Date: July 20, 2011                    *Jesús M. Vázquez, Jr., Esq.*
                                        Kris J. Kostolansky, Esq
                                        Jesús M. Vázquez, Jr., Esq.
                                        Jeffrey D. Phipps, Esq.
                                        Rothgerber Johnson & Lyons, LLP
                                        1200 17th Street, Suite 3000
                                        Denver, Colorado 80202-5855
                                        Tel:     (303) 623-9000
                                        Facsimile: (303) 623-9222
                                        Email: kkostolansky@rothgerber.com
                                                jvazquez@rothgerber.com
                                                jphipps@rothgerber.com

                                        *Attorneys for Plaintiff/Counterclaim Defendant
                                        Health Grades, Inc.*

{00948650 / 1}

## **VERIFICATION**

On behalf of Health Grades, Inc. and in my capacity as Executive Vice-President, CFO at Health Grades, Inc., I have read the foregoing answers to Defendant's First Set of Interrogatories (Nos. 1-6). I do not necessarily have direct personal knowledge of every fact contained herein. The responses were prepared with the assistance of the authors of the documents referenced, and with the assistance and advice of counsel. The answers are based on the records and information currently available. I reserve the right to make changes in or additions to any of these answers if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available. To the extent I do not have personal knowledge; I have relied on others to gather the responsive information. I declare under penalty of perjury that the foregoing is true and correct.

Signed this 20th day of July 2011.

_____

Allen Dodge, Executive Vice President, CFO

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2011, I electronically served the foregoing **PLAINTIFF HEALTH GRADES, INC.'S RESPONSES TO DEFENDANT MDX MEDICAL, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-6)** on the following:

David Chunyi Lee
Sills Cummis & Gross P.C. – New York
One Rockefeller Plaza, 25th Floor
New York, NY  10020
Email: dlee@sillscummis.com

Mark Jon Rosenberg
Sills Cummis & Gross P.C.-New York
One Rockefeller Plaza, 25th Floor
New York, NY  10020
Email: mrosenberg@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: ridley@wtotrial.com

Ramona L. Lampley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: lampley@wtotrial.com

Scott David Stimpson
Sills Cummis & Gross P.C.-New York
One Rockefeller Plaza, 25th Floor
New York, NY  10020
Email: sstimpson@sillscummis.com

*s/ Jesús M. Vazquez*
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Jeffrey D. Phipps, Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email:  kkostolansky@rothgerber.com
            jvazquez@rothgerber.com
            jphipps@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

{00948650 / 1}