THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO MDx's MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR PARTIAL SUMMARY JUDGMENT (1) THAT HEALTH GRADES IS NOT ENTITLED TO LOST PROFITS; AND (2) ROYALTY RATES MAY NOT BE APPLIED TO REVENUE OF THE ENTIRE ACCUSED WEBSITE**

Plaintiff Health Grades, Inc. ("Health Grades"), by its undersigned counsel, respectfully submits its Response in Opposition to MDx's Motion Pursuant To Federal Rule Of Civil Procedure 56 For Partial Summary Judgment (1) That Health Grades Is Not Entitled To Lost Profits; And (2) Royalty Rates May Not Be Applied To Revenue Of The Entire Accused Website (the "Motion") [Dkt. 372]:

## I. SUMMARY OF THE RESPONSE

MDx's Motion rests entirely on its contention that "Health Grades has no evidence of *demand for the patented invention*." Motion at p. 2. If this is true – and it is not – MDx argues that Health Grades "should be precluded" from seeking "lost profits" and "a reasonable royalty applied to the entire Vitals website." *Id.* Health Grades, however, has satisfied the *Panduit* test for demand, and is thus entitled to lost profits damages, and MDx's Motion should be denied as

to the lost profits. At a minimum there is a disputed issue of material fact whether the *Panduit* test for demand is met that should preclude summary judgment.

As to the application of the reasonable royalty, MDx frames the issue clearly and narrowly – it requests summary judgment that the reasonable royalty rate "may not be applied to revenue of the entire accused website." *Id*. at p. 1. Thus, MDx does not challenge the royalty rate itself – it only challenges the base to which it made be applied, which it describes alternatively as "revenue of the entire accused website" and "the entire Vitals website." *Id.* at p. 1 and 2.

Health Grades, however, applies the reasonable royalty rate to Vitals' *advertising* revenue – not the "revenue of the entire website," and not "the entire website." MDx's Motion as to the reasonable royalty application should be denied for this reason alone, given that its predicate is incorrect. As shown below, applying the royalty rate to Vitals' *advertising* revenue is proper and consistent with applicable law, precluding summary judgment.

## II.     RESPONSE TO STATEMENT OF UNDISPTUED FACTS

1.     Denied. Health Grades is seeking lost profits damages and a reasonable royalty to be applied to the advertising revenue generated by the Vitals.com website. There are other revenue sources that may also be generated by the Vitals.com website. *See* Attachment 2a to the Hall Initial Report, attached hereto as Exhibit A, which lists other revenues such as Licensing Fee, List Rental Income, Physician Revenue, Site Revenue, and Sponsored Links. It is unclear whether these other revenues are generated wholly or in part from Vitals' website.

2.     Denied. The testimony cited in support of this alleged undisputed fact does not support it. Mr. Hall did not agree with MDx's counsel's question "[a]nd did you also

2

understand, Mr. Hall, that there are many uses for the Vitals website that are not covered by the patent?"  Counsel for Health Grades also interposed an objection to the term "covered" because it calls for a legal conclusion as to whether "uses for the Vitals website" are, or are not, "covered by the patent."  *See* Exhibit A to MDx's Motion, pages 58-66.

3. Denied.  The testimony cited in support of this alleged undisputed fact does not support it.  Hall did not agree with this premise at page 58 of his deposition.  Pages 62 through 63 pertain to questions related to *Health Grades' website* and not Vitals' website.  On page 66 counsel for MDx attempts to relate to Vitals in a single question all of the questions that were posed on pages 60 through 65 regarding Health Grades.  Hall did not answer in the affirmative.  Further, Hall's expert report is replete with analysis related to assessing demand for the patented product.  *See* Exhibit A; see also Hall Affidavit ¶¶ 4 – 18, attached hereto as Exhibit B.

4. Denied.  While Hall agreed with counsel for MDx's "characterization" of what "motivates people" to visit the websites, people are motivated to visit the Vitals' website to "compare and find doctors" and to "compare and rate physicians."  *See* Health Grades' Response to MDx's Second Motion for Partial Summary Judgment  [Dkt. 201, p. 7 of 41, showing title of Vital's website "Compare & Find Doctors."]; *see also* Health Grades' Supplemental Response to MDx's Second Motion for Partial Summary Judgment  [Dkt. 236, p. 7 of 9, showing MDx's Audited Financial Statements for Years Ended December 31, 2011 and 2010, which state that Vitals allows users to "compare and rate physicians."]  The question posed by counsel for MDx did not include the "compare" element.

5. Denied.  The deposition testimony does not support this alleged undisputed fact.  Lines 13 – 24 of page 78 of Exhibit A to MDx's Motion supports this denial.  The cited

deposition references pertain to Attachment 1 to Hall's Initial Report, Exhibit A hereto, which was used to demonstrate demand (but based only on advertising revenue) for the patented product pursuant to one of the factors of the *Panduit* test. The calculation of lost profits damages is not based on Attachment 1, but on Attachments 4, 5 and 5a to Hall's Initial Report, based on a determination of Health Grades' incremental profit and not on revenue. Vitals' advertising revenue was the base upon which those incremental lost profit percentages were applied. *See* Health Grades' Opposition to MDx's Motion to Exclude Expert Testimony of Mr. David Hall [Dkt. 411], incorporated herein by reference, pp. 10-17.

### III. STATEMENT OF ADDITIONAL DISPUTED FACTS

1. Whether MDx keeps accurate records of the revenues it makes from the patented and non-patented features of its Vitals.com website. (*See* Health Grades' Motion to Compel Discovery [Dkt. 126], pp. 10-11)

2. Whether the fact that Health Grades and Vitals are shown as the top two market leaders in MDx's own documents is because they both use the patented features in their websites. (MDX 0012725, attached hereto as Exhibit C)

3. Whether the fact that MDx has opted to risk infringement versus making any of the easy design-around changes that it asserts would cost less than $1000 to make shows that the patented features are of value to MDx because they drive demand and therefore generate advertising revenue. (Napper Expert Report, p. 24, attached hereto as Exhibit D); *The Gyromat Corporation v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984).

4. Whether the advertising revenue realized from use of the alleged non-patented features can be apportioned or separated from the advertising revenue realized from use of the

4

patented features without speculating.  *See* Health Grades' Opposition to MDx's Motion to Exclude Expert Testimony of Mr. David Hall [Dkt. 411], incorporated herein by reference, pp. 19-20.

## IV.   ARGUMENT

### A.   The *Panduit* Test for Demand is Satisfied

The *Panduit* demand test requires a showing of demand for the patented product.  The patented product is the Health Grades' website, and the accused product in this case is the Vitals' website.  Both websites incorporate and use the patented features, and for damages calculation purposes it is assumed that the accused product, i.e., Vitals' website, infringes the patent.  Mr. Hall's Initial Report analyses the *Panduit* demand test and reasonably concludes that advertising revenue and website visits demonstrate demand for the patented product.  *See* Exhibit A, Hall Initial Report, ¶¶ 26-32.

Similarly, as discussed in Health Grades' Opposition to MDx's Motion to Exclude Expert Testimony of Mr. David Hall [Dkt. 411], incorporated herein by reference, pp. 10-14, Mr. Hall's conclusion that the *Panduit* demand test is satisfied is consistent with *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573 (Fed. Cir. 1989) and *The Gyromat Corporation v. Champion Spark Plug Co.*, 735 F.2d 549 (Fed. Cir. 1984).  MDx's decision to risk infringement versus making design-arounds to its website that it contends would cost less than $1000 to make shows demand for the patented product.  "If there was no demand for the patented system, Champion would not have run the risk of infringement." *Gyromat, supra*, at 552.  Thus at a minimum there is a disputed issue of material fact whether there is demand that precludes summary judgment.

5

B.      **The Royalty Rate Application Is Proper**

The predicate of MDX's Motion is that Health Grades is applying the royalty rate to *all of the revenue* from the entire Vitals' website. Motion at p.1. This is not true – Health Grades is applying the rate only to Vital's *advertising* revenue. See Exhibit A, ¶¶ 90-91; *see also* response to undisputed fact number 1, above. Because MDx has not sought summary judgment that Health Grades cannot apply the royalty rate to Vitals' *advertising* revenue, Health Grades' application of the royalty rate to *advertising* revenue should not be disturbed and MDx's Motion should be denied.

Further, Health Grades' application of the royalty rate to Vitals' advertising revenue is proper. MDx makes much of the alleged "unpatented features" that it argues generated revenue that should not be included in Health Grades' damages. However, MDx has not identified or presented any evidence of the value of the so-called unpatented features. In *Mor-Flo*, the infringer, like MDx here, argued that the patented feature (foam insulation) was not the basis for consumer demand and that "several unidentified non-patented components" were the basis for demand. *Mor-Flo, supra*, at 1580. The court rejected the infringer's argument, noting first that the infringer, like MDx here, "did not identify or present evidence of the value of these nonpatented components." *Id*. The court then observed that "no components can be used separately, except as spare and repair parts for which State does not claim damages." *Id.* (*citing Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 656 (Fed. Cir. 1995) (the entire market value rule is properly applied when the non-patented devices cannot be sold without the

6

patented feature). Thus the court affirmed the district court's adoption of the entire market value rule. *Mor-Flo, supra*, at 1580.

Mr. Hall's 12% royalty rate does in fact account for non-patented features (Exhibit A, ¶¶ 78-91, and Attachment 9; Exhibit B, Hall Affidavit, ¶¶ 19-23), despite the fact that MDx has not identified what non-patented features it claims drives demand, nor has it presented any evidence of the value of the un-identified, non-patented features. The so-called non-patented features, however, are incorporated into the Vitals' website the same as the patented features are, and thus cannot be "used separately" or "sold without the patented feature" for revenue recognition purposes. A visitor to the accused website that is looking to *find and compare doctors* will generate advertising revenue for Vitals, regardless of the presence or incorporation in the website of any so-called non-patented features.

The *Mondis Technology* case supports Hall's use of the advertising revenue. In *Mondis* the plaintiff's damages expert used the entire market value rule to calculate the reasonable royalty, and the defendants filed *Daubert* motions to exclude the expert's testimony because the patented feature had not been shown to provide the basis for demand. *Mondis Technology, Ltd., v. LG Electronics, Inc,* 2011 WL 2417367 at *1,*2 (E.D.Tex.) The court noted that it was "largely undisputed" that the patented feature did not provide the basis for customer demand. *Id.* at *2. Nonetheless, the court held that "under the facts of this case, Dr. Magee may use the entire market value of the accused products in calculating the reasonable royalty because it is economically justified." *Id*. The *Mondis* court noted that while the Federal Circuit in *Lucent* had stated that ""[i]n one

7

sense," the law is clear that "[f]or the entire market value rule to apply, the patentee must prove that the patented-related feature is the basis for the customer demand." *Id.* However, the *Mondis* court correctly observed that "[o]n the other hand, the Federal Circuit in *Lucent* later stated:

> Although our law states certain mandatory conditions for applying the entire market value rule, courts must nevertheless be cognizant of a fundamental relationship between the entire market value rule and the calculation of a running royalty award. Simply put, the base used in a running royalty calculation can always be the value of the entire commercial embodiment, as long as the magnitude of the rate is within an acceptable range (as determined by the evidence).

*Mondis* at *2, citing *Lucent* at 1338-39.

The *Mondis* court also observed "[f]urther, the Federal circuit stated "even when the patented invention is a small component of a much larger commercial product, awarding a reasonable royalty based on either sale price or number of units sold can be ***economically justified***."" *Id.* (citing *Lucent* at 1339)(emphasis added). Similar to Hall's analysis, in *Mondis* the expert's opinion considered several license agreements. *Mondis* at *2. Similar to Hall's testimony, in which he made clear that he did not attempt to "speculate" by apportioning what advertising revenues were realized from the so-called non-patented features, in *Mondis* the court noted that if the rule that the entire market value could be used "*only* where the patented feature creates the basis for the customer demand" was absolute, it would put the patentee "in a tough position" because it would have to "**speculate**" as to how the parties to the licenses in evidence in the case would have apportioned the patented features. *Id.* at *3. This is the situation here:

8

> Q. So did you do anything, any kind of allocation to try to figure out what part of this revenue would have been attributable to use of the '060 features, as opposed to all the unpatented features on the website?
> A. I did not make that assessment or *speculate* as to that.
> Q. Right. *That would be speculation, wouldn't it*?
> A. I would want to see the basis for anybody doing that and certainly would have looked with interest if Mr. Napper had done that. But I did not see a basis or way to do it that, in my mind, would be reasonable. So I wasn't asked, nor did I undertake that analysis.

Hall Deposition at 255:8-22, Ex. D to Health Grades' Opposition to MDx's Motion to Exclude Expert Testimony of Mr. David Hall [Dkt. 411]. (emphasis added).

Thus the court held that the plaintiff "may base its reasonable royalty analysis on the entire market value of the accused products, despite not showing the accused features provide the basis of customer demand." Mondis at *3. "In this Court's view, Federal Circuit jurisprudence regarding the "entire market value rule" allows for this result, and further, Federal Circuit damages jurisprudence encourages this result by placing a large emphasis on comparable licenses of the patents-in-suit." *Id.*

Similarly, Hall's use of all of the advertising revenue, which MDx contends is equivalent to using the entire market value rule, is economically justified in this case. Hall did not use the entire market value rule, he used all of the advertising revenue, which MDx argues is the same as using the entire market value rule. As shown here, assuming for argument's sake only that MDx is correct, Hall's application of the reasonable royalty rate to the advertising revenue is proper.

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), is distinguishable from this case, because in that case the patented feature was admittedly only a small component of the patented product. In this case, the patented features, which essentially enable users of the accused product, i.e., the MDx website, to find and

9

compare doctors, is what motivates users to use the website.  MDx promotes and advertises the features in the title of the website and in their audited financial statements.  See [Dkt. 201, p. 7 of 41, showing title of Vital's website "Compare & Find Doctors."]; *see also* Health Grades' Supplemental Response to MDx's Second Motion for Partial Summary Judgment  [Dkt. 236, p. 7 of 9, showing MDx's Audited Financial Statements for Years Ended December 31, 2011 and 2010, which state that Vitals allows users to "compare and rate physicians."].  Further, here, as discussed in *Mondis*, it is economically justified to apply the royalty base to all of Vital's advertising revenue, because MDx has not identified what non-patented features it claims drives demand, nor has it presented any evidence of the value of the un-identified, non-patented features.  The so-called non-patented features are incorporated into the Vitals' website the same as the patented features are, and thus cannot be "used separately" or "sold without the patented feature" for purposes of revenue recognition.  *See State Industries, Inc. v. Mor-Flo Industries, Inc. et al.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989).  Although MDx has not challenged it in its Motion, it is proper to apply the royalty rate to Vitals' advertising revenue, and the Motion should be denied.

## V.    CONCLUSION

For all of the foregoing reasons, MDx's Motion should be denied.

Respectfully submitted this 27th day of November, 2012.

          ROTHGERBER JOHNSON & LYONS LLP


          *s/ Jesús M. Vázquez*
          Gregory B. Kanan, Esq.
          Kris J. Kostolansky, Esq.
          Jesús M. Vázquez, Jr., Esq.
          1200 17th Street, Suite 3000
          Denver, Colorado  80202
          Tel:  (303) 623-9000
          Fax:  (303) 623-9222
          Email: gkanan@rothgerber.com
                 kkosto@rothgerber.com
                 jvazquez@rothgerber.com

          *Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO MDx's MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR PARTIAL SUMMARY JUDGMENT (1) THAT HEALTH GRADES IS NOT ENTITLED TO LOST PROFITS; AND (2) ROYALTY RATES MAY NOT BE APPLIED TO REVENUE OF THE ENTIRE ACCUSED WEBSITE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Scott David Stimpson | Email: dlee@sillscummis.com |
| Scott Murray | |
| David Chunyi Lee | Terence M. Ridley |
| Sills Cummis & Gross P.C. – New York | Wheeler Trigg O'Donnell, LLP |
| 30 Rockefeller Plaza | 1801 California Street, #3600 |
| New York, NY  10112 | Denver, CO  80202-2617 |
| Email: sstimpson@sillscummis.com | Email: ridley@wtotrial.com |
| Email: smurray@sillscummis.com | |

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@rothgerber.com
             kkostolansky@rothgerber.com
             jvazquez@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

12