THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO PARTIALLY EXCLUDE EXPERT TESTIMONY OF DR. RICHARD G. COOPER PURSUANT TO FED. R. EVID. 403 AND 702, AND *DAUBERT V. MERRIL DOW PHARMS., INC.*, 509 U.S. 579 (1993)**

---

Plaintiff Health Grades, Inc. ("Health Grades") respectfully submits its Reply in support of its Motion to Partially Exclude Expert Testimony of Dr. Richard G. Cooper pursuant to Federal Rules of Evidence 403 and 702, and the Supreme Court's holding in *Daubert v. Merril Dow Pharms., Inc.*, 509 U.S. 579 (1993) [Dkt. 334 and 338, both the same] (hereinafter the "Motion").

I.   **SUMMARY OF THE REPLY**

Health Grades moves to preclude Dr. Cooper from testifying about invalidity because his Expert Report on Invalidity (Dkt. 386-1) did *not*: (1) use the Court's construction of "comparison ratings of healthcare providers;" (2) identify any prior art that includes comparison ratings of human healthcare providers; and (3) explain why it would be obvious to substitute comparison ratings of physicians for comparison ratings of hospitals. In response, MDx relies almost exclusively on one piece of prior art: the Drucker Report.

MDx concedes that the Drucker Report does *not* have ratings of multiple doctors. Yet the Court's claim construction requires ratings of multiple doctors, i.e., human healthcare providers, and Dr. Cooper's Invalidity Report does not cite any other prior art reference that includes this requirement. Thus, Dr. Cooper's anticipation opinions should be excluded for failure to follow the legal requirements for anticipation. Similarly, Dr. Cooper does not explain why it would be obvious to substitute comparison ratings of physicians for comparison ratings of hospitals, which is required to support his obviousness defense. As such, his invalidity opinions are irrelevant, unreliable, and prejudicial.

Additionally, Dr. Cooper's opinions (both invalidity and non-infringement) regarding the "verified" information claim elements are irrelevant, unreliable, and prejudicial. MDx's opposition argues both that (1) Dr. Cooper was free to use any meaning of this term he wanted to, and (2) he did not need to explain what meaning he used because this Court found that it did not need to construe this term. Nonsense. In the Markman Order, this Court unequivocally rejected MDx's attempts to limit the claims to a narrow definition of the term "verified," namely that verification requires proof of accuracy. Dr. Cooper should not be permitted to argue that MDx does not infringe these claim elements because the information is not proven to be accurate. Further, the Federal Rules of Civil Procedure require Dr. Cooper to state the basis and support for his opinion, which includes stating which meaning of "verified" he used for his invalidity opinion.

## II. REPLY

### A. Dr. Cooper's *Invalidity* Analysis of the "Comparison Ratings" Claim Limitation is Unreliable and Irrelevant for Three Reasons

#### 1. First: Dr. Cooper Did Not Use the Court's Claim Constructions for the term "Comparison Ratings of Healthcare Providers"

Dr. Cooper did not use the Court's claim construction of the "comparison ratings" limitation <u>for his invalidity opinions</u>, and Dr. Cooper's discussion (in his deposition) about using the Court's claim constructions <u>for his infringement opinions</u> are irrelevant.  (Opp. at p. 4 (citing to Cooper Dep. (Ex. B) at pp. 125:10-14, 127:17-19; 147:22-24; and 233:1-11 to show use of the Markman Order); *see* Cooper Dep. at pp. 125:10-14 (discussing his infringement opinion: "Q. So the Vitals website compiles information about medical residency from third parties; correct? A. According to the Court's construction of "compile," yes."); 127:17-19 (discussing Dr. Cooper's Rebuttal Report on infringement (see pp. 126:4-127:5); 147:22-24 (discussing Dr. Cooper's Rebuttal Report on infringement (see pp. 144:8-147:24)); 233:1-11 (discussing why a doctor report from the accused vitals.com website does not infringe (see pp. 229:4-233:11)) (all attached hereto as Ex. L).)

To show that Dr. Cooper used the claim construction order for his invalidity analysis (Ex. A to the Response), MDx is able to cite to only three general paragraphs from the introduction of his Invalidity Report.  (Opp. at p. 3 (citing to ¶¶14, 18, and 20 of the Cooper Invalidity Report (Ex. A (Dkt. 386-1)).)  These paragraphs state that Dr. Cooper based his opinions, in part, on the "materials reviewed" (¶¶14, 20) and that one of the materials reviewed is the "claim construction order" (¶18).  (Cooper Invalidity Report (Dkt. 386-1).)  However, the law requires technical experts, like Dr. Cooper, to: (1) actually use the Court's constructions to support his invalidity

- 3 -

2003958629_1.doc

analysis; and (2) explain *how* those constructions are applied to the prior art.  ***These things Dr. Cooper did not do.***

Dr. Cooper did *not* quote or recite the Court's claim constructions in his invalidity report.  This is not in dispute.  (Opp. at p. 2.)  Nevertheless, MDx argues that Dr. Cooper somehow applied the Court's constructions (without ever mentioning them) to his invalidity analysis.

For example, MDx argues that Dr. Cooper used the Court's claim construction for "comparison ratings of healthcare providers" in his invalidity analysis.  This Court interpreted this phrase to include three requirements:  "[1] ratings on multiple healthcare providers, [2] including the 'first healthcare provider' [who is a person], [and 3] in the report on that 'first healthcare provider,' thus permitting comparison of the 'first healthcare provider' with other potential healthcare providers."  (Markman Order at pp. 7 & 24 (colored emphasis added.)  Dr. Cooper should have discussed all three requirements and explained where each one is shown in each prior art reference.  ***This Dr. Cooper did not do.***

To support its argument that Dr. Cooper applied the Court's claim construction for comparison ratings, MDx first cites to a section of Dr. Cooper's report that *relates to a different claim element.*  (Opp. at §II(B)(2), ¶1 at pp. 9-10.)  Specifically, MDx cites to ¶43 of Dr. Cooper's Invalidity Report, which discusses claim element 1.3 (relating to patient ratings).  (Cooper Invalidity Report at ¶43, pp. 14-16 (Dkt. 386-1).)  In contrast, the comparison ratings limitation is part of claim element 1.5, which is discussed in a separate section of Dr. Cooper's Invalidity Report.  (*Id.* at ¶45, pp. 17-19.)  Thus, references to ¶43 of Dr. Cooper's Invalidity Report do not support MDx's argument that Dr. Cooper applied the Court's definition of comparison ratings to his invalidity analysis.

- 4 -

MDx next relies on page citations that *were <u>not</u> included in Dr. Cooper's Invalidity Report* in an attempt to show that Dr. Cooper applied the Court's claim construction:

> But the very same reports cited by Dr. Cooper show ratings of other healthcare providers in the same report as the ratings of, for example, Dr. Drucker.  Exhibit A, at ¶ 45 (citing Exhibits H at MGHG000019, and I at HG 179541, as appended hereto: "The Early HG Reports and Services *also show* ratings of healthcare provider hospitals that were intended to and do allow comparison of healthcare providers."). Comparison ratings were also shown in various other reports. *See* Exhibit O (deposition Exhibit 8 cited by Dr. Cooper, showing many comparisons of healthcare providers, including hospital and nursing home ratings comparisons and various comparisons on physicians) at, *e.g.,* HG32038-40, and 32062-79. Dr. Cooper cites extensive testimony on the subject, too.

(Opp. at §II(B)(2), ¶2 at pp. 10-11 (italicized emphasis in original) (red-colored emphasis added).)  As shown below, Dr. Cooper's Invalidity Report does not cite to the pages shown in red font above.  Rather, he cited only generally to Exhibits H and I (e.g., Deposition Exhibits 13 and 51, respectively), and did not even discuss these exhibits in reference to the comparison ratings limitation of element 1.5:

> Furthermore, the Early HG Reports and Services specifically comprise reports which were prior art to the claim, and which meet in every detail the claim elements limitations.  See for example the information in Defendant's deposition Exhibits 13 and 51, including "…healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source" as specified in the claim element.

(Cooper Invalidity Report at ¶45, p. 18 (highlighting added) (Dkt. 386-1).)[1] Exhibit O (Deposition Exhibit 8) is also mentioned only once in ¶45 of Dr. Cooper's Invalidity Report:

> See also Neal deposition pages 153-154. Dodge deposition pages 200-201 also supports concluding that this claim element was known. Dodge deposition pages 225-226 again confirms the claim element was known prior to the filing date. Defendant's deposition Exhibit 8 is also relevant. These items of evidence clearly demonstrate that the concept of having provider information and ratings available to prospective patients had been practiced in a way that the ratings could be compared. Even if hospital ratings do not meet the claim language literally, there are plain and clear teachings that any Posita would understand that ratings of health care providers could be shown side by side for comparison purposes, and these documents provide the motivation to do so.

(Cooper Invalidity Report at ¶45, p. 18 (highlighting added).) Dr. Cooper does not cite specific pages of Exhibit 8 (which is 74 pages long and contains 5 sample reports) and he does not state why Exhibit 8 is relevant. Relying on citations that are not part of Dr. Cooper's expert report do not (and cannot) support MDx's argument that Dr. Cooper applied the Court's definition of comparison ratings to his invalidity analysis. Indeed, the fact that MDx felt the need to rely on pages not cited by Dr. Cooper highlights the insufficiency of Dr. Cooper's Invalidity Report.

Moreover, most of the evidence Dr. Cooper relies on to show the invalidity of claim element 1.5 relates to ratings of hospitals, not physicians.[2] Yet, Dr. Cooper does not explain how

---

[1] The fifth element of claim 1 (which Dr. Cooper refers to as element 1.5) has two parts – the quoted paragraph relates to the first part, which is highlighted below:

> 1.5. creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source,
>     wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers;

(Cooper Invalidity Report at ¶45, p. 17 (highlighting added).)

[2] The only evidence that Dr. Cooper cites that relates to comparison ratings of human healthcare providers is the testimony of Mr. Dodge, who was testifying about Health Grades'

- 6 -

ratings of hospitals meet the Court's definition of "comparison ratings of healthcare providers." Ratings of hospitals cannot permit comparison of a first healthcare provider (who is a person) with other potential healthcare providers. To suggest otherwise makes no sense – it would compare apples and oranges. Yet, neither MDx nor Dr. Cooper provides any clarifying explanation.

In sum, Dr. Cooper's Invalidity Report does not indicate that he used the Court's definition of "comparison ratings of healthcare providers" for his invalidity analysis, which he was required to do to support both his anticipation and obviousness opinions.[3] The comparison ratings element applies to all of the asserted claims in this case. As such, *all* of Dr. Cooper's invalidity opinions for *all* of the asserted claims are fatally flawed and unreliable as a matter of law. This Court should preclude Dr. Cooper from testifying about invalidity.

### 2. Second, Dr. Cooper Does Not Identify A Single Prior Art Reference That Included Comparison Ratings of Human Healthcare Providers

Additionally, Dr. Cooper's invalidity analysis based on anticipation is unreliable because he did not identify any prior art reference that included all of the claimed limitations. This is a separate and independently sufficient reason for excluding Dr. Cooper's anticipation opinion.

---

reports that do *not* qualify as "prior art" as discussed in the next section of this brief. (Opp. at pp. 11, 17 (citing Dodge Deposition (Ex. K to the Opp.) at pp. 72-73.)

[3] Motion at p. 3 (citing *Koito Mfg. Co., Ltd. v. N. Am. Lighting,* 381 F.3d 1142, 1152 (Fed. Cir. 2004); *Rothschild v. Cree, Inc.*, 711 F. Supp. 2d 173, 194 (D. Mass. 2010) (excluding expert testimony because the witness failed to "identify each claim element and state his interpretation of the element."); *Markman v. Westview Instruments,* 517 U.S. 370, 384-85 (1996) (determining invalidity is a two-step process: first the claims are construed and then the construed claims are compared to the prior art.)*; Degelman Indus. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 U.S. Dist. LEXIS 150190, *15-*16 (W.D.N.Y. May 27, 2011) (recommending exclusion of an expert because: "It is inexplicable for him to opine on patent validity without at least considering the Court's claim construction.").

- 7 -

As discussed above, this Court construed comparison ratings to require: (1) ratings on the first healthcare provider, who is a person and (2) ratings on other healthcare providers; which together (3) permit comparison of the "first healthcare provider" with other potential healthcare providers. The "other healthcare providers" must also be people; otherwise there could be no comparison of the other providers with the first provider. MDx does not seriously dispute this. (Opp. at p. 11 ("further opining that patient ratings on physicians would be obvious from the hospital comparison ratings . . . .").) Neither does Dr. Cooper. (Cooper Invalidity Report at p. 18 ("Even if hospital ratings do not meet the claim language literally . . . .").)

However, Dr. Cooper did not identify any prior art from Health Grades that included comparison ratings of human healthcare providers prior to August 29, 2005.[4] Instead, Dr. Cooper relies on testimony from Mr. Dodge, who said that quality ratings of physicians were added to Health Grades' reports in 2006. Recognizing that 2006 is too new to be prior art, Dr. Cooper concludes Mr. Dodge "was just wrong about year when he recalled 2006." (Invalidity Report at p. 18.) To support his conclusion that Mr. Dodge got the date wrong, Dr. Cooper cites the following evidence: Exhibit E, at 153-54 (Dkt. 386-5); Exhibit K, at 72-73, 200-01, 225-26 (Dkt. 386-8); Exhibit G (Dkt. 385-2); Exhibit H (Dkt. 385-3); Exhibit I (Dkt. 386-7). (Opp. at p. 11.) However, none of this shows comparison ratings of human healthcare providers. Rather, it demonstrates, at most, that:

---

[4] MDx disputes that the asserted claims of the '060 patent are entitled to priority back to the February 8, 2006 filing date of its provisional application. But even if MDx is correct, the '060 patent was filed on August 29, 2006. Therefore any reference dated after August 29, 2005 (i.e., the "critical date") is not prior art under §102(b).

- 8 -

2003958629_1.doc

- Health Grades' prior art physician reports (circa 2004) included comparison ratings for the hospitals;[5] and

- Health Grades began adding patient ratings to its physician quality reports in 2006.[6]

The closest thing Dr. Cooper has to an anticipatory reference is the Drucker Report, which included results of a patient experience survey about Dr. Drucker and hospital ratings for Dr. Drucker's affiliated hospitals as shown in the screenshots below:

**Patient Experience²**

Average response from 6 surveys for Dr. Drucker.    National Average (All Doctors)

Do you trust your physician to make decisions/recommendations that are in your best interests?



Would you recommend your physician to family/friends?



---

[5] Exhibit E, at 153-54; Exhibit K at 200-01; Exhibit K at 225-26 (discussing that Dep. Ex. 51 (p. 179541) shows star ratings for hospitals).
[6] Exhibit K at 72-73.

- 9 -

(Dep. Ex. 13 at MGHG000017-18 (Ex. H to the Opp.) (Dkt. 385-3); *see also* Dep. Ex. 51 at HG0179538 (Ex. I to the Opp.) (Dkt. 386-7).)

**Affiliated Hospitals**

★★★★★ Best ★★★ As Expected ★ Poor

Primary Hospitals
(where physician performs the majority of his work)

Outcome Rating[1]

Staten Island University Hospital*
Total Hip Replacement ★★★
Total Knee Replacement ★★★

Overlook Hospital*
Total Hip Replacement ★
Total Knee Replacement ★

*Doctor has full admitting privileges at these hospitals.
View Ratings Methodologies

(Dep. Ex. 13 at MGHG000019; *see also* Dep. Ex. 51 at HG0179541.) But the Drucker Report did not include ratings for multiple physicians. This is not in dispute, and as such, Dr. Cooper has no basis to support his anticipation opinions.

Recognizing that none of the evidence supports its argument that Health Grades had comparison ratings of human healthcare providers before August 29, 2005, MDx argues that "Health Grades put up deliberately unprepared witnesses on the issue of when comparison ratings were first in the Health Grades reports, and accordingly MDx will be seeking sanctions." (Opp. at p. 11.) MDx has been threatening this motion for sanctions since it took the Health Grades depositions on June 13 and June 28, 2012. If MDx really believed there was any basis to file such a motion, it should have done so long ago. The fact of the matter is that Health Grades did extensive searches of its files that predated 2006 (including its network servers and e-mail servers), using keywords *chosen by MDx* to find invalidating Health Grades' prior art. On May 9, 2012, Health Grades produced *524,870 pages* of documents that were responsive to the MDx

- 10 -

2003958629_1.doc

keywords, well in advance of the Rule 30(b)(6) depositions on June 13 and 28, 2012.  Yet, not a single document shows that Health Grades had comparison ratings of human healthcare providers before 2006.

Moreover, the two Rule 30(b)(6) witnesses for Health Grades (John Neal and Allen Dodge) both testified that Health Grades did *not* include comparison ratings of healthcare providers until 2006 or later because they were worried that their customers (e.g., hospitals and physicians) would not like to see physician ratings on Health Grades' website.  (*See* Neal Dep. at 61:17-62:20 (stating Health Grades did not start offering a product that included a form of comparison rating until the 2006, 2007 timeframe because "there was the concern, the very real concern, that anything we might do to shed light on physicians or rate physicians, provide comparisons of physicians based on quality, would put our revenue at risk with our hospital clients."); *see also* (Neal Dep. at 97:14-98:4 (same); 96:13-18 (the physician research comparison report did not contain comparison ratings); 141:17-13 (the physician quality comparison report in 2004 did not include comparison ratings of physicians); 250:6-251:25 (As of 8/2/2005, Health Grades had added patient survey results to its physician reports, but had not yet added comparison ratings of physicians to its reports) (Ex. K hereto).)  Mr. Dodge also testified that Health Grades did not add comparison ratings of physicians to its physician reports until 2006.  (Dodge Dep. at 72-73 (Ex. K to Opp.) (Dkt. 386-8).)

In sum, this Court must not allow Dr. Cooper to get on the stand (with his doctorate degree and extensive experience testifying as an expert witness) and tell the jury that Allen Dodge, a fact witness, got the 2006 date wrong, when Dr. Cooper has no evidentiary support to back up this opinion.  Further, this Court should preclude Dr. Cooper from testifying about

- 11 -

2003958629_1.doc

anticipation because he did not cite any evidence to show that any prior art reference included "comparison ratings of healthcare providers" as defined by this Court. (Motion at pp. 8-9.)

### 3. Third: Dr. Cooper Does Not Disclose Sufficient Details to Support His Obviousness Opinion

Although he is reluctant to admit it, the real crux of Dr. Cooper's Invalidity Report is obviousness based on the Drucker Report (Dep. Ex. 13 (Ex. H to the Opp.) (Dkt. 385-3).)

> As the primary example, to the extent that the jury would find (contrary to the evidence) that the Drucker report is not anticipatory, **then it only lacks "comparison ratings of healthcare providers" because it shows comparison ratings of hospitals, not physicians.** Dr. Cooper explains in detail how any person of ordinary skill in the art would find comparison ratings of physicians obvious from a reference that teaches comparing ratings of other healthcare providers, such as hospitals.

(Opp. at p. 16 (emphasis added).) However, Dr. Cooper's Invalidity Report contains no analysis to explain the basis of his obviousness opinions.

MDx argues that Dr. Cooper was not required to specify a combination of references because his obviousness opinion is based on only one document: the Drucker Report. (Opp. at p. 17 ("the very disclosures of that make this element so obvious . . . are in *the very same document that contains every other element. See, e.g.* Exhibits H and I . . . ." (emphasis in original).) However, the Drucker Report does not contain ratings for multiple human healthcare providers. Therefore, Dr. Cooper was required to explain *why* it would be obvious to substitute physician ratings for hospital ratings. ***This he does not do.*** Instead, he says only: "It would be

- 12 -

2003958629_1.doc

obvious to a Posita that ratings of other physicians would be a natural addition to the report." (Invalidity Report at p. 18 (Dkt. 386-1).) Such a conclusory statement is not sufficient.[7]

MDx also argues that Dr. Cooper cited testimony supporting his obviousness analysis. (Opp. at p. 17.). However, the Health Grades' testimony cited by Dr. Cooper does not shed any light on why he believes it would obvious to substitute physician ratings for hospital ratings. Rather this testimony states only that the early HG reports had hospital ratings. MDx highlights Exhibit O as having "comparisons of physicians," but these were not comparison *ratings of physicians* – they were comparison facts, such as listing where each physician went to medical school or where each did his or her residency, as shown in the excerpt from Ex. O below:

What residency programs did these physicians participate in?

| Physician Name | Residency | City/State |
|---|---|---|
| Javali Aroon, MD | FAIRFIELD HILLS HOSPITAL**<br>CONN VALLEY HOSPITAL**<br>ALL INDIA INSTITUTE MENTAL HEALTH** | Newtown, CT<br>Middletown, CT<br>N/A |
| John Ashford Jr, MD | UCLA NEUROPSYCH INSTITUTE** | Los Angeles, CA |
| Mary Cowles, MD | KY** | N/A |
| James Fetter III, MD | UNIVERSITY LOUISVILLE AFFIL HOSPS** | Louisville, KY |

(Dep. Ex. 8 at HG032065 (Ex. O to the Opp.) (Dkt. 386-12).) This is not a rating and not the type of information that Health Grades was worried would upset its hospital clients.

MDx had every incentive and opportunity to show where in Dr. Cooper's report he provides any analysis to support his conclusion that it would be obvious to substitute physician

---

[7]   *See, e.g., Whitserve, LLC v. Computer Packages, Inc.*, No. 2011-1206, 2011-1261, 2012 U.S. App. LEXIS 17510, *28-*29 (Fed. Cir. Aug. 7, 2012); *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 813 (E.D. Va. 2011); *Degelman Indus. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 U.S. Dist. LEXIS 150190, at *15-16 (W.D.N.Y. May 27, 2011).

- 13 -

comparison ratings for hospital comparison ratings.  MDx did not (and cannot) do so.  Thus, this Court should preclude Dr. Cooper from testifying about obviousness. This is a separate and independently sufficient reason for excluding Dr. Cooper's obviousness opinion.

### B. Dr. Cooper Did Not Explain What Meaning He Used for His Invalidity Opinion Relating to the "Verified Information" Claim Elements and Used an Interpretation Rejected by this Court for His Infringement Opinion Relating to the "Verified Information" Claim Elements

Health Grades' opening brief argued that Dr. Cooper's invalidity opinions should be excluded because he failed to explain what meaning of the term "verified" he used to support his invalidity opinions and that his non-infringement opinions concerning the "verified" information claim elements should be excluded because Dr. Cooper used the wrong interpretation of this term.  (Motion at pp. 6-8 and 13-16).  In response, MDx argues that Dr. Cooper did not have to explain how he interpreted the term "verified" for his invalidity opinion because this Court found that "verified" did not need to be construed.  (Opp. at 11-12.)  MDx simultaneously argues that it is impossible to use a construction of the term "verified" that is inconsistent with the Court's construction because the Court did not construe this term.  (Opp. at pp. 17-19.)  Both of MDx's arguments fail for the reasons described below.

By way of background, this Court considered several possible meanings of the term "verified" ranging in scope from a narrow (e.g., no. 1) to broad (e.g., no. 3) as shown in the Venn Diagrams below.  The green circle in these diagrams depicts the scope of this term as used in the '060 patent claims.  As shown on the left, MDx argued that verified must mean "proven to be true/accurate" and that anything less than that would not satisfy the claimed limitations.

- 14 -

(Markman Order at p. 17.) This Court unequivocally rejected MDx's attempt to limit the meaning of the claims:

> Rather, the dispute turns on whether the verification must equate to proof. . . . [T]he Court finds no basis to limit the meaning of "verified" in that manner. The patent does not require that the third-party information be "proven" but rather only describes an attempt to substantiate that will provide a patient with "some assurance that the qualifications of the doctor have been checked by someone."

(*Id.* at p. 17.) The Court found that the claims were broader (e.g., the green circle is bigger) and covered the plain and ordinary meaning of "verify," including additional definitions of verification as shown in the diagram on the right.

**MDx's Proposed Interpretation:**   **The Markman Order:**

  

Ordinary Meaning of "Verified"   Ordinary Meaning of "Verified"

2003958629_1.doc

The fact that this Court did not specifically construe the term "verified" does not give MDx free reign to continue to assert the unduly narrow interpretation that was rejected by this Court. But this is exactly what Dr. Cooper did in his Infringement Report. As shown in the Venn Diagram to the right, Dr. Cooper argues that the vitals.com website (yellow square) does *not* infringe the third-party verified information element because the third party that provides the information (e.g., ABMS) disclaims its accuracy – in other words, the vitals.com website does not satisfy MDx's narrow interpretation of verified. (Cooper Rebuttal Report at ¶¶24-25.) Further, MDx confuses the concepts of being "required" versus "permissible." Information that is proven



Cooper Rebuttal Report at ¶28

to be true is verified, but verified information does not need to be proven to be true. Allowing Dr. Cooper to argue otherwise will confuse the jury and cause prejudice to Health Grades.[8] This Court should preclude Dr. Cooper from testifying in support of his non-infringement opinions relating to "verified" information claim elements.

---

[8] Motion at pp. 13-16 (citing *See, e.g., Liquid Dynamics Corp. v. Vaughn Co.*, 449 F.3d 1209, 1224 (Fed. Cir. 2006) (affirming the exclusion of expert testimony as irrelevant, prejudicial, and confusing because it was based on an impermissible claim construction); *NTP, Inc. v. Research In Motion, Ltd.,* No. 3:01CV767, 2003 U.S. Dist. LEXIS 14338, *23 (E.D. Va. 2003) ("Once the claims are construed, it would be folly to allow an expert witness to testify as to opinions at odds with the court's construction.").

- 16 -

MDx also argues that Dr. Cooper did not need to explain what meaning of "verified" he used for his invalidity analysis because this Court said the term did not need construction. However, the fact that a term does not need to be construed *does not mean that a technical expert does not need to explain the basis for his opinion that such term exists in the prior art*. This is particularly true for the term "verified" in this case because: 1) the meaning of this term was a hotly contested issue at the Markman hearing; 2) this Court rejected MDx's proposal to limit this term to a narrow definition; and 3) Dr. Cooper used the narrow interpretation to support his non-infringement opinion.

MDx argues that Dr. Cooper applied the term "verified" the way he understood it (Opp. at p. 13). The problem is that Dr. Cooper does not explain what way he understood this term *for his invalidity analysis*, so Health Grades is left to guess. Dr. Cooper seems to say that mere receipt of information is enough to make it "verified":

> As shown in the figure above, *medical school*, *medical internship*, *medical residency*, and *medical fellowship* information are all provided by Elsevier Inc and the American Board of Medical Specialties. **Therefore the claim element '060.1.4 has been met <u>in every detail</u>**.

(Cooper Report at p. 16 (emphasis added).)   However, MDx argues that this is not what Dr. Cooper meant and accuses Health Grades of purposefully ignoring the next paragraph from Dr. Cooper's report on this point, which states:

> As admitted by Mr. Neal, medical school, residency, internship, and fellowship information appearing in the Drucker report was provided by third party sources. Health Grades also verified the information, according to Mr. Neal, as required by the claim element. Therefore the claim element has been met in every particular by prior art materials more than one year prior to the date of utility application filing.

- 17 -

(Opp. at p. 12 (citing Cooper Report at p. 17 (highlighting added)).)  This paragraph seems to make an alternative argument – that is, the information is verified because it is provided by third parties *and* it is "*also*" verified by Health Grades.  In any event, this dispute highlights the fundamental problem with Dr. Cooper's Invalidity Report:  He does not explain what definition he used to support his opinion that the prior art meets the verified information elements, which makes it is very difficult for Health Grades to counter his invalidity opinions.  Further, Health Grades cannot effectively cross-examine Dr. Cooper if he refuses to explain the basis for his opinions.

MDx argues: "Health Grades would hardly be in a position to complain even if Dr. Cooper had 'merely' required that the third parties provide the information, as that is the same way (and the only way) that Health Grades is claiming infringement."  (Opp. at p. 13.)  This too misses the point.  Health Grades cannot determine how to respond to Dr. Cooper's testimony if Dr. Cooper does not explain the basis for his opinions.

For this additional reason, this Court should preclude Dr. Cooper from testifying about invalidity.

### III.   CONCLUSION

For the foregoing reasons, Health Grades respectfully requests that this Court preclude Dr. Cooper from testifying in support of the opinions identified above.

Respectfully submitted on December 3, 2012.

    ROTHGERBER JOHNSON & LYONS LLP

    *s/ Jesús M. Vázquez*
    Gregory B. Kanan, Esq.
    Kris J. Kostolansky, Esq.
    Jesús M. Vázquez, Jr., Esq.
    1200 17th Street, Suite 3000
    Denver, Colorado  80202
    Tel:  (303) 623-9000
    Fax:  (303) 623-9222
    Email:  kkosto@rothgerber.com
           jvazquez@rothgerber.com

    *Attorneys for Health Grades/Counterclaim Defendant Health Grades, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO PARTIALLY EXCLUDE EXPERT TESTIMONY OF DR. RICHARD G. COOPER PURSUANT TO FED. R. EVID. 403 AND 702, AND *DAUBERT V. MERRIL DOW PHARMS., INC.*, 509 U.S. 579 (1993)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Scott Murray
David Chunyi Lee
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
Email: sstimpson@sillscummis.com
Email: smurray@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: ridley@wtotrial.com

    *s/ Jesús M. Vazquez*
    Gregory B. Kanan, Esq.
    Kris J. Kostolansky, Esq.
    Jesús M. Vázquez, Jr., Esq.
    Rothgerber Johnson & Lyons, LLP
    1200 17th Street, Suite 3000
    Denver, Colorado 80202-5855
    Tel:    (303) 623-9000
    Facsimile: (303) 623-9222
    Email: gkanan@rothgerber.com
        kkostolansky@rothgerber.com
        jvazquez@rothgerber.com

    *Attorneys for Plaintiff Health Grades, Inc.*