**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

     Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

     Defendant.

---

**MDX MEDICAL, INC.'S MOTION FOR SANCTIONS UNDER FEDERAL RULE OF
CIVIL PROCEDURE 37 FOR HEALTH GRADES' REPEATED EFFORTS TO
CONCEAL ITS PRIOR ART**

---

     Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its

undersigned counsel, respectfully submits this Motion For Sanctions Under Federal Rule of Civil

Procedure 37 For Health Grades' Repeated Efforts To Conceal Its Prior Art (the "Motion").

     Pursuant to D.C.COLO.LCivR 7.1(A), counsel for MDx conferred with Health Grades,

Inc.'s ("Health Grades") counsel, who indicated that Health Grades opposes this Motion.

**I.**     **HEALTH GRADES EFFORTS TO HIDE ITS PRIOR ART**

     **A.**     **The Health Grades Patent**

     The patent-in-suit is United States Patent No. 7,752,060 ("the '060 patent"; attached

hereto as Exhibit A). Generally, the '060 patent relates to internet websites that provide

healthcare-related information to its users. Exhibit A, at Abstract. The claims of the '060 patent

are directed to an internet website that provides healthcare related information, whereby users of

the website request information on healthcare providers; and, in response, information that has been collected from the healthcare providers, patients, and third parties, is compiled and organized into a report; which is then provided to the users.  Exhibit A, at claims 1, 15.

### B.      The Health Grades Early Reports

From 2003-2006 Health Grades was making many healthcare provider reports available on its website (hereinafter the "Early Reports").  See, e.g., Health Grades' Physician Quality Comparison Report, dated Dec. 28, 2004, attached hereto as Exhibit B; and Health Grades' "Drucker Report," dated June 4, 2005, attached hereto as Exhibit C.  These reports were made available before the alleged invention date (February 8, 2006) of the '060 patent, and more than a year before the August 29, 2006 application filing date of the '060 patent.  Health Grades' Response to MDx's First Set of Interrogatories, attached hereto as Exhibit D, at Health Grade's Response to MDx's Interrogatory No. 1, page 7 (highlighting added).   As such, these reports were clearly prior art to the '060 patent, and far closer to the claims of the '060 patent than the prior art Health Grades submitted to the Patent Office during the prosecution of the '060 patent. MDx firmly believes these Early Reports anticipate every claim of the '060 patent.

Health Grades contends that these Early Reports lacked the information from the healthcare provider, the patient-provided ratings, and the comparison ratings, as required by both independent claims of the '060 patent.  Health Grades' Second Supplemental Response to MDx's Interrogatory No. 8 with attached signed verification (last page), attached hereto as Exhibit E, at pages 5-6, and 13-15 (highlighting added).

**C.**     **Health Grades' Relentless Efforts to Conceal the Facts**

Health Grades not only failed to produce critical information about its own prior art in its initial document production, it signed a sworn interrogatory response stating that no such art existed.  Exhibit D, at Health Grades' Response to MDx's Interrogatory No. 2, pages 8, 19 (*verified* response stating:  "Health Grades directs Defendant to the publically available prosecution histories of the Patent-in-Suit and Related Patents . . . . Outside of the above-identified references, some of which may not qualify as prior art, ***Health Grades is currently not aware of any prior art, including any prior public use or sale***"; emphasis added).  MDx would only later learn, by conducting its own investigation, that this interrogatory response was utterly false.  Fortunately, despite Health Grades' concealment and false declaration, MDx was able to locate the Health Grades prior art through discovery from third parties.

Because Health Grades still would not come clean about its own prior art, however, MDx subpoenaed the lawyers who prosecuted the application leading to the '060 patent – Merchant & Gould.  Those lawyers, knowing their obligations to the Court, produced critical documents that Health Grades apparently had provided to them but withheld from MDx throughout this litigation.   The critical "Drucker Report" was produced by Merchant & Gould; not by Health Grades.  Exhibit C (note the Bates labeling from Merchant & Gould, not from Health Grades).

New, important documents – the Product Development Plans (herein "PDPs"), not previously produced by Health Grades -- were also identified at the deposition of inventor Scott Montroy.  But even after the inventor himself identified them as the critical documents showing which features were launched by Health Grades and when, Health Grades refused to produce them.  First, counsel for Health Grades questioned whether MDx had asked for them in

discovery (a frivolous argument, later dropped after counsel for MDx identified many requests that called for them). Still, even after admitting that the documents were relevant and should have been produced, Health Grades dragged its feet – delaying many weeks and finally forcing MDx to file a motion to compel. Dkt. 174. The Court ordered the production (Dkt. 192, part (5)), and Health Grades produced, on the very eve of discovery, approximately ***five hundred thousand relevant documents***. Letter from J. Vazquez to S. Stimpson, et al., dated May 9, 2012, regarding Health Grades' document production in response to the Court's Order [Dkt. 192], attached hereto as Exhibit F.

## II.    THE 30(b)(6) NOTICE AND THE FAILURE TO COMPLY

### A.    The Relevant Law

"Rule 30(b)(6) places the burden upon the deponent to make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought … and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed … as to the relevant subject matters. The duty of preparation goes beyond matters personally known to the designee or to matters in which the designee was personally involved, and if necessary the deponent must use documents, past employees or other resources to obtain responsive information." *Bradley v. Denver Health & Hosp. Auth.*, 2010 U.S. Dist. LEXIS 85870, 18-19 (D. Colo. Mar. 22, 2010)(internal citations omitted); *see also Biax Corp. v. NVIDIA Corp.*, 2010 U.S. Dist. LEXIS 112706 (D. Colo. Oct. 14, 2010)("The law is well-settled that corporations have an affirmative duty to make available as many persons as necessary to give complete, knowledgeable, and binding answers on the corporation's behalf. If the persons designated by the corporation do not possess personal knowledge of the matters set out in the

deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation.")(internal citations and quotation marks omitted).

"Rule 37(d) allows the Court to impose sanctions where a party or person designated under Rule 30(b)(6) fails 'to appear before the officer who is to take the deposition, after being served with proper notice.' … Producing an unprepared witness is tantamount to a failure to appear." *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C. 1996) (*citing Resolution Trust Corp. v. Southern Union*, 985 F.2d 196, 197 (5th Cir. 1993)); *see also Black Horse Lane Assoc.'s, L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 302 (3d Cir. 2000) ("[W]hen a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)."). Moreover, "inadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings." *Taylor*, 166 F.R.D, at 363. The Rule provides the Court with the broad discretion to impose a range of sanctions from the imposition of costs to the entry of a default judgment. Fed. R. Civ. P. 37(d)(3) (indicating that "sanctions may include any of the orders listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi)"); *see also Rudnick v. Bank of Am.*, 2011 U.S. Dist. LEXIS 55954 (D. Colo. May 16, 2011) (That pursuant to Fed. R. Civ. P. 37(d)(3), this court may impose whatever sanctions are just, including those listed in Fed. R. Civ. P. 37(b)(2)(A)(i-vi)).

The Court also has the inherent power to enter sanctions. "The inherent powers of this Court are those 'which are necessary to the exercise of all others.'" *Kamatani v. BenQ Corp.*, Civil Action No. 2:03-cv-437, 2005 U.S. Dist. LEXIS 42762, *42 (E.D. Tex. Oct. 6, 2005)

(quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).  This inherent power is not limited to sanction mechanisms created by statute or rule.  *See Chambers v. NASCO, Inc.* 501 U.S. 32, 42-43 (1991).  Accordingly, the court may rely on its inherent power if, in its informed discretion, neither the statutes nor the rules are up to the task. *Id.* at 50.

**B.**     **The Deposition Notice**

On June 11, 2012, MDx served a 30(b)(6) notice of deposition regarding the Health Grades prior art, attached hereto as Exhibit G.  The notice identified the following topics, which received no objection from counsel for Health Grades:

> 1. All facts surrounding each and every Health Grades product or service for providing information on healthcare providers prior to August 29, 2006, including but not limited to facts concerning dates of use, structure, operation, development, testing, sales, public access, and the accessing and compiling of all data used in each such product and/or service (such products and/or services include, but are not limited to, Health Grades' Physician Research Comparison Report, Physician Quality Report, and Physician Quality Guide).
>
> 2. Identification of each person who developed and/or tested one or more of the products and/or services addressed in topic 1.
>
> 3. Identification of all other prior art known to Health Grades, including but not limited to Health Grades' products and services sold and/or known to the public before August 29, 2006, and not disclosed to the Patent & Trademark Office in connection with the application that led to the '060 patent.

Health Grades identified Allen Dodge to testify about topic 1, except for the parenthetical; and identified John Neal to testify for the remaining topics.  E-mail from J. Vazquez to S. Stimpson, dated Feb. 9, 2012, attached hereto as Exhibit H at page 3 (highlighting added).

### C.      The First Deponent – Allen Dodge

The 30(b)(6) testimony of Mr. Dodge was largely useless, and his lack of preparation was staggering.  When viewed against the backdrop of a false interrogatory response claiming that the Early Reports prior art did not exist, the repeated failures of Health Grades to produce the critical documentation until MDx independently learned of this prior art and was forced to obtain a Court Order [Dkt. 192], and the similarly problematic deposition of John Neal (discussed below), these circumstances smack of a calculated and deliberate attempt by Health Grades to be uninformed for these 30(b)(6) depositions, clearly breaching its discovery obligations.  The Dodge transcript is attached hereto as Exhibit I.

### 1.      Lack of Preparation

Mr. Dodge did not speak with anyone other than counsel to prepare for the deposition. Exhibit I, 18:3-19:8.  Mr. Dodge also did not review a single Health Grades Product Development Plan.  *Id*., at 177:8-10.   These were the very documents identified by inventor Scott Montroy as being the critical documentation to demonstrate dates when features were launched, and which Health Grades had recently produced in response to an MDx motion to compel (Dkt. 174).  Montroy transcript, attached hereto as Exhibit J, at 169-70.  We also know that Mr. Dodge did not bother to look at the MDx Invalidity Contentions (which identified the Health Grades prior art on which MDx was relying).  Exhibit I, at 94:16-18.

### 2.      Perfect Timing – No Knowledge Of Anything Before 2006

The application filing date for the '060 patent is August 29, 2006.  Thus, the critical date for prior art under 35 U.S.C. §102(b) is August 29, 2005 (one year before the application filing date).  Given the application filing date, Mr. Dodge was a very interesting choice by Health

Grades for the 30(b)(6) topic on prior art.  That is, before 2006, Mr. Dodge was ***Chief Financial***

***Officer*** of Health Grades – he worked with the company numbers.  *Id.*, at 13:11-14.  His position

changed in 2006 to become Vice-President, and it was only at that time that his responsibilities

changed to have more involvement with company operations, as opposed to the focus on

financials.  *Id.*, at 13:11-14:17.  Mr. Dodge, the CFO prior to 2006, obviously could not be

expected to know anything about the details, features, and dates of the Health Grades Early

Reports, when his responsibilities at the critical times were financial.  Not surprisingly, he knew

virtually nothing.

When asked about the various types of reports, or when the critical features were

available on the Health Grades Early Reports, Mr. Dodge almost invariably gave one of two

standard, cookie-cutter responses: (a) he does not know at all; or (b) he knows they were

available sometime in 2006, but could not say if they were available earlier (*i.e.,* he could not say

if they were early enough to be prior art). Some examples are provided below (relevant claims

are also referenced):

- **Patient ratings (every claim):**  Mr. Dodge took the party line on patient ratings, refusing
  to acknowledge that they were in the prior art.  Exhibit I, at 88:4-14, 104:5-22.  Even
  when confronted with documents showing early patient ratings, Mr. Dodge refused to
  admit to or was unprepared to discuss anything prior to 2006.  *Id.*, at 184:17-187:13
  ("I've already testified that I believe [patient ratings] were available in 2006, but that's
  the best of my recollection.  I can't remember anything other than that."); *see also* Health
  Grades' Patient Experience Timeline, dated Aug. 16, 2004, attached hereto as Exhibit K;
  E-mail from D. Hicks to A. Dodge, et al., dated Feb. 4, 2004, attached hereto as Exhibit L

(referencing 50,000 patient questions and answers since 1999); Exhibit I, at 171:14-174:17 (unprepared to discuss anything about early use of patient ratings); *see also id.*, at 207:15-209:18 (refusing to even acknowledge Health Grades' documents showing 2005 use of patient ratings:  "I don't have any way to agree or disagree with it.  I can just read it.").  Mr. Dodge also could not say when they disclosed this idea to anyone in the public. *Id.*, at 104:18-22.

- **Comparison ratings (every claim):**  Mr. Dodge did not know when comparison ratings were first launched, and so gave his standard answer of sometime in 2006.  *Id.*, at 72:22-73:8; 230:5-11 ("I recall they were in place in 2006.  I just can't tell you from my information if they were in place prior to that time.").  He also could not say if Health Grades search results with patient ratings (what Health Grades claims to be the comparison ratings in the accused website) were used at Health Grades, or when.  *Id.*, at 211:3-213:4.  He also could not testify as to when Health Grades disclosed the concept of comparison ratings outside of Health Grades.  *Id.*, at 117:14-118:22.  Mr. Dodge acknowledged that either Mr. Montroy, or Mr. Hicks, would be the people who might know when these comparison ratings were available (*id.*, at 43:4-13), but he did not contact either of them (*id.*, at 19:6-8).

- **Information received from healthcare providers (every claim):**  Mr. Dodge first testified that, despite being designated as a 30(b)(6) deponent, he did not know even a year when the service allowing physicians to input information was first available.  *Id.*, at 32:5-36:10.  He then claimed that it was 2006, although it "could have been prior" but he did not recall.  *Id.*, at 80:13-86:18.  And even when he was confronted with documents

showing the early launch of this service he would not commit to a year when physician-provided information was available in the Early Reports. *Id.*, at 167:3-169:5; 181:9-184:16.

- **<u>Hyperlinks (claim 4):</u>**  Mr. Dodge could provide no helpful information on when Health Grades began using this element. *Id.*, at 121:25-123:9.

- **<u>The ability to search by name (claim 6):</u>**  Mr. Dodge did not know when Health Grades began implementing this feature. *Id.*, at 127:2-13.

- **<u>The ability to search by specialty (claim 6):</u>**  Mr. Dodge did not know when Health Grades began implementing this feature. *Id.*, at 127:14-21.

- **<u>The ability to search by gender (claim 6):</u>**  Mr. Dodge did not know when Health Grades began implementing this feature. *Id.*, at 127:22-128:4.

- **<u>The ability to search by city or state (claim 6):</u>**  Mr. Dodge did not know when Health Grades began implementing this feature. *Id.*, at 128:5-7.

- **<u>The availability of advertisements (claim 7):</u>**  Mr. Dodge did not know when Health Grades began adding advertisements to results lists, and like other elements would commit to nothing earlier than 2006. *Id.*, at 129:24-130:9.

- **<u>Providing Members Enhanced Services (claim 9)</u>**:  Mr. Dodge would commit to nothing earlier than 2006. *Id.*, at 131:8-132:18.

- **<u>Nursing Home Quality Comparison Reports</u>**.  Although these reports were used in the MDx invalidity contentions, and Mr. Dodge was designated as the 30(b)(6) deponent regarding Health Grades' products or services prior to August 29, 2006, he was entirely

unable to even say when these comparison reports on healthcare providers were available.  *Id.*, at 73:9-74:1.

- **Physician Research Quality Reports.**  Mr. Dodge knew nothing about this report, and could provide no testimony on when it was used, or what elements it had.  *Id.*, at 90:19-92:22.

- **Comparative Physician Reports.**  These reports had been used with prior witnesses, and were shown in prior Health Grades exhibits. Portion of Deposition Exhibit 21, Comparative Physician Report, dated April 3, 2003, attached hereto as Exhibit M.  But Mr. Dodge had never even heard of them, and knew nothing on this topic.  Exhibit I, at 93:6-96:5; 164:8-166:25.

- **The Premium Reports.**  Health Grades also had premium reports with additional information, but Mr. Dodge was entirely unaware of their additional content.  *Id.*, at 102:11-23.  One such premium report had been a central exhibit in other depositions, and plainly showed a premium report of Dr. Drucker having patient ratings, information received from the healthcare provider, information verified by third parties, and comparison ratings of healthcare provider hospitals.  Portion of Deposition Exhibit 51, Health Grades' Marketing PowerPoint Presentation, dated 2005, Exhibit N, at pages HG 179535-42.  But Mr. Dodge knew nothing.  Exhibit I, at 213:15-219:20.

For all of the important features, Mr. Dodge was not giving the earliest date these feature were available – he was giving the earliest time he *remembered* seeing these features (obviously, 2006, when his responsibilities expanded from financial).

All of this testimony was also inconsistent with another sworn statement by Mr. Dodge, made *before* Health Grades realized the seriousness of its prior art and inequitable conduct problems.  That is, in July of 2011, Mr. Dodge signed a sworn statement that Health Grades was selling products that embodied these claims *in the summer of 2005*.  Exhibit D, Health Grades' Response to MDx's Interrogatory No. 1, at page5, and Health Grades' Response to MDx's Interrogatory No. 4, at page 14, and the sworn statement of Mr. Dodge, page 19 (highlighting added).  This sworn statement of Mr. Dodge entirely contradicts both his testimony, and the testimony of Mr. Neal, and shows that all of the claim elements were in use and on sale in the prior art.

Both the selection of Mr. Dodge (a financial officer at all critical times) and his failure of preparation, smack of a deliberate and intentional effort to keep Mr. Dodge (and thus MDx) in total darkness about the Early Reports.  Health Grades violated its discovery obligations to MDx and sanctions against Health Grades are appropriate.  *Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 152-153 (S.D.N.Y. 2007) (finding sanctions appropriate when a party produced an unprepared witness); *see also Spicer v. Universal Forest Prods.*, 2008 U.S. Dist. LEXIS 77232 (W.D. Va. Oct. 1, 2008) (finding sanctions necessary to deter a corporate party from "hiding the ball.").

## D.     The Second Deponent – John Neal

### 1.     Lack of Preparation

As was the case with Mr. Dodge, Mr. Neal basically did nothing to prepare for his deposition, other than meeting with counsel.  Neal transcript, attached hereto as Exhibit O, at 33:10-34:25.

### 2.   No Knowledge Of His Topics

Mr. Neal was specifically designated to testify about (a) Health Grades' Physician Research Comparison Reports, (b) Physician Quality Reports, and (c) Physician Quality Guides. Exhibits G and H.

**Physician Research Comparison Reports (PRCR)**

Although Mr. Neal was designated to specifically testify about the prior art Physician Research Comparison Reports ("PRCR"), he could not state when those documents were available.   Exhibit O, at 47:19-48:20 (unable to identify a date: "I'm just working from memory.").

Although testing was a specific topic on which Mr. Neal was designated, and although beta testing had been an area of other discovery, Mr. Neal was entirely unable to give any testimony on the beta testing for these reports.  *Id.*, at 49:10-23 ("I don't even know if beta tests were done for a fact … .").  He was shown a document on the beta testing (Deposition Exhibit 20, E-mail from S. Montroy to "Consumer Reports," dated Mar. 28, 2003, attached hereto as Exhibit P), but was still unable to give any testimony about it.  *Id.*, at 103:19-107:3 ("I cannot speak.  I just cannot recall the specifics.  I can't even recall for certain what the circumstances were associated with the beta.").  He was entirely unable to state whether or when these reports were disclosed outside of Health Grades.  *Id.*, at 49:24-56:12.  Mr. Neal was extremely uncooperative and evasive, and did nothing to prepare himself – he apparently only said what his attorneys told him to say.  *Id.*, at 54.

Given his total lack of preparation and knowledge, it is not surprising that he was unable to give helpful testimony on his subjects. *Compare, e.g.,* Exhibit O, 117:2-119:11 (Mr. Neal knows nothing about whether and when Health Grades began receiving information from healthcare providers) *with* Exhibit G (Mr. Neal's topic included "accessing and compiling of data" for these reports); *and see, e.g.,* Exhibit O, at 251 (no information on when comparison ratings were added to the reports).

**Physician Quality Guide (PQG)**

Although he was specifically identified to address the Health Grades Physician Quality Guide prior art, and MDx had used specific documents on the Physician Quality Guides in its invalidity contentions, Mr. Neal did not even know what a physician quality guide was. *Id.*, at 36:24-37:5 ("I'm unaware of a physician quality guide."). He did absolutely nothing to prepare to address this report. *Id.*, at 39:10-40:24 ("I don't know what a physician quality guide is. The name does not ring a bell.").

**Physician Quality Reports (PQR)**

Mr. Neal was also the designated Health Grades deponent on Physician Quality Reports (PQR). Mr. Neal was entirely unable to say when comparison ratings (an element of every claim) were first added to these reports. *Id.*, at 251. And despite the fact that the deposition notice specifically identified the data as a topic, Mr. Neal also did not know when information received from healthcare providers (also a requirement of every claim) was integrated into these reports. *Id.*, at 125:4-17.

**Other Problems**

Mr. Neal was also unable to identify when the first product embodied by the claims was launched, and consistent with the party line, would only say that it was being used in 2006-07. *Id.*, at 61:10-62:3.

The utter failure of Mr. Neal to prepare for this deposition was also evident by some of the other responses he gave. For example, Mr. Neal testified that patient ratings were not introduced until 2006 (*id.*, at 97-98), even though Health Grades' use of patient ratings in 2005 is shown in the written record (Exhibit C, at pages MGHG000017-18), and Health Grades has admitted as much (Exhibit D, at pages 5, 14). Like Mr. Dodge, Mr. Neal stuck to the 2006-07 dates which (if true) would not be early enough to be prior art.

Even though data compilation was an express topic for his deposition, Mr. Neal knew essentially nothing. He towed the party line here too, claiming that patient provided information was not collected until 2006 or 2007. Exhibit O, 127:17-23, 157:5-11. This testimony – placing even the collection of patient information late enough so that it could not be prior art -- was wildly inconsistent with the facts, and with documents Mr. Neal had seen before. *See, e.g.,* Exhibit K (deposition exhibit 29), which was an email directed to Mr. Neal, showing emails to the public in *October 2004* (years earlier than Mr. Neal testified), and showing that the results database was built in September 2004 – not 2006 or 2007 as Mr. Neal testified. Exhibit O, at 169:9-24. Mr. Neal also tried to claim that no emails ever went to the public about the survey in 2004 (*id.*, at 171:24-72:10), but was obviously wrong on that issue, too (*id.*, at 174:24-75:4). Had Mr. Neal done any real preparation for this deposition, he would know the answers to these

questions as they were in exhibits used with prior deponents and several were used in the MDx Invalidity Contentions.

## III.    <u>THE APPROPRIATE SANCTIONS</u>

MDx requests sanctions for Health Grades' continuous and repeated efforts to hide information on the Health Grades Early Report prior art.  These efforts included refusals to produce relevant documents, a false interrogatory response, forcing Court-intervention before producing at the very end of fact discovery hundreds of thousands of responsive documents, and producing 30(b)(6) witnesses who were purposefully kept in total darkness about the central issues of the deposition topics.

As appropriate sanctions, MDx requests the following:

(1) The jury be informed that: (a) Health Grades gave a sworn, false interrogatory response in an effort to conceal its own prior art; (b) Health Grades had an obligation to, but failed to, produce documents showing the details of its prior art; and (c) Health Grades had an obligation to, but failed to, produce any witnesses who would be able to provide critical facts about its prior art;

(2) The jury be informed that, based on Health Grades efforts to conceal its own prior art in discovery, the jury should *infer* that this prior art comprised all the elements of all the claims of the '060 patent that are being asserted against MDx, including that this prior art had "comparison ratings of healthcare providers" (note MDx is not requesting that these facts be established as true, but only that the jury should *infer* that they are true);

(3) Payment of the reasonable expenses, including attorney's fees and travel expenses, associated with the 30(b)(6) depositions of Allen Dodge and John Neal; and

(4) Any such other relief that the Court deems just and appropriate.

The above requested sanctions are entirely supported by Fed. R. Civ. P. 37 and the case law.  Pursuant to Fed. R. Civ. P. 37(d)(3), if a party or a person designated under Rule 30(b)(6) fails to appear to its deposition, the Court may even order sanctions directing that "designated facts be taken as established for purposes of the action, as the prevailing party claims."  Fed. R. Civ. P. 37(b)(2)(A)(i).  Courts have granted such sanctions, where appropriate.  *See Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 152-153 (S.D.N.Y. 2007) (establishing certain facts as true for designating an unprepared Rule 30(b)(6) witness); *see also Spicer v. Universal Forest Prods.*, 2008 U.S. Dist. LEXIS 77232, 23-24 (W.D. Va. Oct. 1, 2008) (given late stage of litigation the Court found it appropriate to strike a party's defense for designating an unprepared Rule 30(b)(6) witness).[1]  Courts have also granted sanctions where the jury was instructed to draw an inference against a party for failing to provide relevant information during discovery.  *United States SEC v. Suman*, 684 F. Supp. 2d 378, 387 (S.D.N.Y. 2010) ("This inference balances the equities after Defendants failed to give the SEC material which they were entitled to as an opposing party."); *see also Tom v. S.B., Inc.*, 280 F.R.D. 603, 620 (D.N.M. 2012) (The Court endorsed a jury instruction allowing the jury to infer that evidence withheld during discovery is adverse to the party that withheld it.).

Moreover, pursuant to Fed. R. Civ. P. 37(c)(1)(B), a Court may inform the jury of a party's discovery failures.  Courts have granted such sanctions, where appropriate.  *See Tom*, 280

---

[1] MDx is not seeking the more serious sanction of taking these facts as true, and instead is only seeking an instruction that the jury should "infer" these facts to be true.  This is a lenient sanction in this case, since Health Grades already admitted that these facts are true and is now trying to backtrack.  That is, Health Grades has admitted, in interrogatory responses, that it launched a commercial embodiment of these patent claims in the summer of 2005, early enough to be prior art.  Exhibit D, Health Grades' Response to Interrogatory No. 4, at page 14 (highlighting added).

F.R.D., at 619-620 (holding that the moving party may inform the jury, before introduction of withheld evidence, of the sanctioned party's discovery abuses); *Pers. Audio, LLC v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 146756, *14 (E.D. Tex. June 16, 2011) (holding that the moving party may inform the jury before introduction of withheld evidence of the sanctioned party's failure to disclose); and *Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.*, 2008 U.S. Dist. LEXIS 34471, * 21 (N.D. Ill. Apr. 28, 2008) (holding that the jury be informed of the sanctioned party's failure to provide evidence during discovery).

Finally, pursuant to Fed. R. Civ. P. 37(d)(3), a Court "must" sanction a party for failing to provide an adequately prepared Rule 30(b)(6) witness by requiring "the party failing to act, the attorney advising that party, or both to pay reasonable expenses, including attorney's fees, caused by the failure." Courts have granted such sanctions, where appropriate. *Rudnick v. Bank of Am.*, 2011 U.S. Dist. LEXIS 55954, 14-16 (D. Colo. May 16, 2011) (The court imposed fees against a party for failing to adequately prepare its Rule 30(b)(6) witness). Moreover, under Fed. R. Civ. P. 37(c)(1)(A), Courts have the authority to require a party that fails to correct false interrogatory responses or timely supplement document productions to pay reasonable expenses, including attorney's fees, caused by the failure. Courts have granted such sanctions, where appropriate. *See GE Co. v. Wilkins*, 2012 U.S. Dist. LEXIS 87094 (E.D. Cal. June 22, 2012) (the Court awarded GE costs and fees caused by Defendants' discovery "game-playing").

## IV.   **CONCLUSION**

For all the foregoing reasons, we respectfully request the following as appropriate sanctions against Health Grades:

(1) The jury be informed that: (a) Health Grades gave a sworn, false interrogatory response in an effort to conceal its own prior art; (b) Health Grades had an obligation to, but failed to, produce documents showing the details of its prior art; and (c) Health Grades had an obligation to, but failed to, produce any witnesses who would be able to provide critical facts about its prior art;

(2) The jury be informed that, based on Health Grades efforts to conceal its own prior art in discovery, the jury should *infer* that this prior art comprised all the elements of all the claims of the '060 patent that are being asserted against MDx, including that this prior art had "comparison ratings of healthcare providers" (note MDx is not requesting that these facts be established as true, but only that the jury should *infer* that they are true);

(3) Payment of the reasonable expenses, including attorney's fees and travel expenses, associated with the 30(b)(6) depositions of Allen Dodge and John Neal; and

(4) Any such other relief that the Court deems just and appropriate.


Dated:  December 4, 2012                              Respectfully submitted,


                                                     *s:/Scott D. Stimpson*
                                                     Scott D. Stimpson
                                                     Scott B. Murray
                                                     David C. Lee
                                                     Sills Cummis & Gross P.C.
                                                     30 Rockefeller Plaza
                                                     New York, New York 10112
                                                     Tel: (212) 643-7000
                                                     Fax: (212) 643-6500
                                                     E-mail:sstimpson@sillscummis.com
                                                     E-mail:smurray@sillscummis.com
                                                     E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on <u>December 4, 2012</u>, I electronically filed the foregoing MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37 FOR HEALTH GRADES' REPEATED EFFORTS TO CONCEAL ITS PRIOR ART with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

      Jesus Manuel Vazquez , Jr.
          jvazquez@rothgerber.com, phenke@rothgerber.com

      Gregory B. Kanan
          gkanan@rothgerber.com, dgrooms@rothgerber.com

      Kris John Kostolansky
          kkosto@rothgerber.com, dgrooms@rothgerber.com

      Scott David Stimpson
          sstimpson@sillscummis.com, gcaceres@sillscummis.com

      Scott B. Murray
          smurray@sillscummis.com

      David Chunyi Lee
          dlee@sillscummis.com

      Terence M. Ridley
          ridley@wtotrial.com, norris@wtotrial.com

                     *s:/ Vincent M. Ferraro*