Civil Action No. 11-CV-00520-PAB-BNB

**HEALTH GRADES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO PARTIALLY EXCLUDE EXPERT TESTIMONY OF DR. RICHARD G. COOPER PURSUANT TO FED. R. EVID. 403 AND 702, AND DAUBERT V. MERRIL DOW PHARMS., INC., 509 U.S. 579 (1993)**

---

**Exhibit L**

**October 9, 2012 Deposition of Richard Cooper**
*(selected portions)*

Page 1

IN THE UNITED STATES DISTRICT Court

FOR THE DISTRICT OF COLORADO

HEALTH GRADES, INC.,            )
                                )
           Plaintiff,   ) Civil Action
                                ) No. 11-cv-00520-PAB-BNB
    vs.                         )
                                )
MDx MEDICAL, INC. d/b/a,        )
VITALS.COM,                     )
                                )
           Defendant.   )
                                )

THIS DEPOSITION IS HIGHLY CONFIDENTIAL

ATTORNEYS' EYES ONLY

DEPOSITION OF:

            RICHARD G. COOPER, D.Sc.

            TUESDAY, OCTOBER 9, 2012

            10:00 A.M.

REPORTED BY:

            KAREN I. PEARSON-BELL

            CSR NO. 3557, RPR

Page 2

1   Videotaped deposition of RICHARD G. COOPER,
2   D.Sc., taken on behalf of the Plaintiff, at the
3   Hampton Inn in Hemet, 3700 West Florida Avenue,
4   Ramona Meeting Room, Hemet, California, commencing
5   at 10:00 a.m., on Tuesday, October 9, 2012, before
6   Karen I. Pearson-Bell, RPR, CSR No. 3557.
7
8   APPEARANCES OF COUNSEL:
9
10  FOR THE PLAINTIFF:
11
12          ROTHGERBER, JOHNSON & LYONS, LLC
13          BY:  JESÚS M. VÁZQUEZ, ESQ.
14          One Tabor Center, Suite 3000
15          1200 Seventeenth Street
16          Denver, Colorado 80202
17          (303) 623-9000   Fax: (303)623-9222
18          E-mail: jvazquez@rothgerber.com
19             -and-
20          MERCHANT & GOULD
21          BY:  KIRSTIN L. STOLL-DeBELL, ESQ.
22          1050 Seventeenth Street, Suite 1950
23          Denver, Colorado 80265-0100
24          (303) 357-1670   Fax: (303) 357-1671
25          E-mail: kstolldebell@merchantgould.com

Page 3

1   APPEARANCES OF COUNSEL (continued)
2
3   FOR THE DEFENDANT and THE WITNESS:
4
5          SILLS CUMMIS & GROSS P.C. – NEW YORK
6          BY:  SCOTT DAVID STIMPSON
7          30 Rockefeller Plaza
8          New York, New York 10112
9          (212) 643-7000   Fax: (212) 643-6500
10         E-mail:  sstimpson@sillscummis.com
11
12
13
14  ALSO PRESENT:
15
16          KENNETH McNEAL – VIDEOGRAPHER
17
18
19
20
21
22
23
24
25

Page 4

1              I N D E X
2   EXAMINATION                         PAGE
3   By Mr. Vazquez                         9
4      (P.M. Session)                     97
5   By Mr. Stimpson                      337
6   By Mr. Vazquez                       341
7
8              E X H I B I T S
9   DEPOSITION  DESCRIPTION              PAGE
10  Exhibit 1   Rebuttal Report of Richard G.    9
11         Cooper, D.Sc. (7 pages)
12  Exhibit 2   United States Patent, Patent    12
13         No. US 7,752,060 B2 (18 pages)
14  Exhibit 3   Order Regarding Claim Construction  14
15         (12 pages)
16  Exhibit 4   Defendant MDx Medical's Second    19
17         Supplemental Objections and
18         Responses to Plaintiff's First Set
19         of Interrogatories (6 pages)
20  Exhibit 5   Declaration of Richard G. Cooper,   24
21         D.Sc. (29 pages)
22  Exhibit 6   Deposition of Lawrence West taken  137
23         June 26, 2012 (37 pages)
24  Exhibit 7   Deposition of Erika Boyer taken   177
25         June 5, 2012 (28 pages)

Page 5

1              E X H I B I T S
2   DEPOSITION  DESCRIPTION              PAGE
3   Exhibit 8   Three different copies of screen   183
4         shots from the Vitals website
5         (14 pages)
6   Exhibit 9   Document headed "Appendix C"    192
7         (101 pages)
8   Exhibit 10  Document headed "Exhibit B -    212
9         Claim Chart" (32 pages)
10  Exhibit 11  Declaration of Ms. Stoll-DeBell   230
11         in Support of Health Grades'
12         Response to MDx's Second Motion
13         for Partial Summary Judgment of
14         Noninfringement (17 pages)
15  Exhibit 12  Deposition of John Neal taken   239
16         June 13, 2012 (64 pages)
17  Exhibit 13  U.S. Patent document headed   255
18         "Issue Notification" (117 pages)
19  Exhibit 14  Expert Report of Philip Greenspun  259
20         (27 pages)
21  Exhibit 15  United States Patent Publication,  260
22         October 16, 2003 (21 pages)
23  ///
24  ///
25  ///

Page 122

13:35:15  1    Q.  Well, sir, you just read this language into
13:35:18  2  the record.  It doesn't say it's from physicians.
13:35:21  3  Maybe I will read it into the record.  Quote:
13:35:23  4        "The following information is
13:35:24  5        obtained from one or more
13:35:26  6        third-party sources" --
13:35:27  7    A.  Where are you reading?
13:35:29  8    Q.  Page 6.  Third paragraph after Heading E.
13:35:30  9  Quote:
13:35:33 10        "The following information is
13:35:36 11        obtained from one or more
13:35:39 12        third-party sources: board
13:35:41 13        certification, licensure,
13:35:42 14        disciplinary action information,
13:35:45 15        medical school, medical internship,
13:35:48 16        medical residency and medical
13:35:50 17        fellowship information," close
13:35:52 18        quote.
13:35:52 19    A.  Yes.  That's --
13:35:58 20    Q.  I read that accurately; right?
13:36:05 21    A.  Yes, you did.  And that is correct.
13:36:05 22    Q.  Okay.
13:36:07 23    A.  As stated here in the interrogatories.
13:36:09 24    Q.  All right.  So the Vitals website compiles
13:36:07 25  information about licensure from third parties;

Page 123

13:36:09  1  correct?
13:36:09  2    A.  What do you mean by "compile"?
13:36:20  3    Q.  Well, you are the computer expert, sir.
13:36:20  4  What is the common meaning of the word "compile"?
13:36:23  5    A.  To compile a source code, not data.
13:36:29  6  Compiling is something that's done to a program to
13:36:30  7  make it run on a machine.  It's not --
13:36:32  8    Q.  Right.
13:36:35  9    A.  -- a term that's used in databases.
13:36:35 10    Q.  And so we started this question or this
13:36:38 11  line of questions by looking at the patent --
13:36:40 12    A.  Yes.
13:36:40 13    Q.  -- and Claim 1, Column 20, beginning at
13:36:44 14  Line 50.
13:36:44 15    A.  Uh-huh.
13:36:50 16    Q.  Do you see where it says, "Compiling
13:36:53 17  information"?
13:36:57 18    A.  I do.  That's the claim.
13:36:00 19    Q.  Okay.  And are you -- Does that not help
13:36:05 20  you understand what "compiling" means in that claim
13:36:09 21  language?
13:36:10 22    A.  No, it doesn't.  I think that's
13:36:50 23  indeterminate, because the word "compiling" --
13:36:53 24  Hasn't that been construed in the Court's --
13:36:55 25    Q.  Sure was.  You read my mind.  How about

Page 124

 1  turning to Exhibit 3?
 2    A.  3.  All right.
 3    Q.  And at the very last term on Page 24, the
 4  back page -- Just flip that over, sir.  You'll be
 5  right at it.
 6    A.  Oh, okay.
 7    Q.  And do you see there where Judge Brimmer
 8  construed "compiling" or "compiled" to mean, quote,
 9  "gathering and/or putting together," close quote?
10    A.  I do.
11    Q.  Okay.  So now can we return to my question,
12  which is:  The Vitals website compiles information
13  about licensure from third parties; correct?
14    A.  I will agree that that's what the Court
15  construal states, compiling information from third
16  parties, that's correct.
17    Q.  And the Vitals website compiles information
18  about medical school from third parties; right?
19    A.  I believe that's true, yes.
20    Q.  And the Vitals website compiles information
21  about residency from third parties; correct?
22    A.  I would like to see that in my report.
23    Q.  Or you can turn to the response to
24  interrogatories, sir.
25    A.  Okay.

Page 125

 1    Q.  You just read that.
 2    A.  What page would that be?
 3    Q.  Page 6.
 4    A.  Okay.  The party?
 5    Q.  Yes.  The third paragraph.
 6    A.  And the thing was residency?
 7    Q.  Yes, sir.
 8    A.  Medical residency, yes, that is mentioned
 9  in there.
10    Q.  So the Vitals website compiles information
11  about medical residency from third parties;
12  correct?
13    A.  According to the Court's construction of
14  "compile," yes.
15    Q.  Yes.  And the Vitals website compiles
16  internship information from third parties; correct?
17    A.  Medical internship is also listed, yes.
18    Q.  And the Vitals website compiles information
19  about fellowship from third parties; right?
20    A.  Medical fellowship, yes, that's correct.
21    Q.  And the Vitals website compiles information
22  about Board certification from third parties;
23  right?
24    A.  That's correct.
25    Q.  And the Vitals website compiles information

32 (Pages 122 to 125)

```
                                                    Page 126                                                    Page 128
13:39:20   1   about disciplinary action from third parties;           1      THE WITNESS:  Oh, all right.  Thanks.
13:39:23   2   correct?                                                 2      MR. VAZQUEZ:  You can bring that pitcher
13:39:29   3      A.  That's correct.                                   3   over here.
13:39:24   4      Q.  Now, in your -- I believe it's your               4      THE WITNESS:  That's a good idea.
13:39:39   5   rebuttal report, at Paragraph 24.                        5      THE VIDEOGRAPHER:  We are still on?
13:39:50   6      A.  My rebuttal report?                               6      MR. VAZQUEZ:  Yes, still on.
13:39:52   7      Q.  Yes, sir.  Which is Deposition Exhibit 1.         7      MR. STIMPSON:  There you go.
13:40:50   8      A.  Okay.  Where in that report?                      8      THE WITNESS:  Thank you.
13:40:00   9      Q.  Paragraph 24.                                     9      MR. VAZQUEZ:  So could you please read that
13:40:02  10      A.  24.  Okay.  I'm there.                           10   last answer back about -- just what his response
13:40:09  11      Q.  And if you would please read that paragraph      11   was.
13:40:20  12   to yourself, and then I will ask you questions.         12      (The answer was read as follows:
13:40:24  13      A.  Okay.                                            13       "A.  And I think the Court
13:40:40  14          Okay.                                            14       construction is in line with the
13:40:43  15      Q.  In that paragraph, the reason why you            15       way I think it should be.
13:40:47  16   believe that Vitals website does not literally          16       Verifying is stated as checking the
13:40:50  17   infringe this third-party verified information          17       accuracy of the claim.")
13:40:53  18   limitation is what, sir?                                18   BY MR. VAZQUEZ:
13:40:58  19      A.  Reading Paragraph 24:                            19      Q.  Dr. Cooper, do you agree that the term
13:41:04  20          "Dr. Greenspun's analysis relies                 20   "verified" should be given the same meaning when
13:41:07  21          on the fact that MDx obtains                     21   used in the phrase "healthcare provider verified"
13:41:09  22          various items from third                         22   as when used in the term "third-party verified
13:41:19  23          parties....Verification of the                   23   information"?
13:41:50  24          data, however, is not the same as                24      A.  You are quoting out of context.  But the
13:41:55  25          receiving the data."                             25   healthcare provider-verified information is not

                                                    Page 127                                                    Page 129
13:43:59   1          And finally, on 26, there is a disclaimer        1   verified in line with the construal by the Court if
13:44:03   2   by the providers that they do not guarantee or          2   the healthcare provider was also the originator.
13:44:07   3   stand by the data and that it may be completely         3   The originator of the information can't verify his
13:44:30   4   inaccurate.                                             4   own information.  That's a basic tenet.
13:44:36   5          So I would not consider that verified.           5      Q.  So that is your expert testimony, that the
13:44:39   6      Q.  Okay.  So this gets back to the                  6   originator of the information cannot verify --
13:44:32   7   construction of what "verified" means; correct?         7      A.  That's correct.
13:44:33   8      A.  Correct.  Are we on the construction             8      Q.  -- their own information that they have
13:44:34   9   document again?                                         9   provided?
13:44:37  10      Q.  No.  I'm just asking you that question.         10      A.  That's correct.
13:44:39  11      A.  Correct.                                        11      Q.  So, for example, a physician verifying that
13:42:09  12      Q.  And so it's an issue of claim                   12   he is a male, under your -- your opinion is that
13:42:08  13   interpretation; correct?                               13   that person cannot verify that?
13:42:09  14      A.  I suppose you could say that.  I think          14      A.  Well, you're welcome to verify it, but he
13:42:02  15   it's quite clear what "verified" means.                15   can't if he originated it.
13:42:04  16      Q.  Okay.                                           16          Now, if the information came from
13:42:09  17      A.  And I think the Court construction is in        17   elsewhere, then possibly he could.
13:42:43  18   line with the way I think it should be.  Verifying    18      Q.  Okay.  Do you agree that the term
13:42:53  19   is stated as checking the accuracy of the claim.      19   "verified," in the phrase "third-party verified,"
13:42:59  20          May I take a moment and get a --               20   required only that MDx receive confirmation from a
13:43:03  21      Q.  Sure.  Let's go off the record.                21   third party?
13:43:05  22      A.  -- some water?  If you want to.  But I can     22      A.  I'm sorry.  Can you go through that again?
13:43:08  23   go ahead and answer the questions while I'm getting  23   I didn't -- Where your information is coming from,
13:43:31  24   a refill.                                              24   where is that question --
13:43:32  25          MR. STIMPSON:  Here, I'll get it for you.      25      Q.  Sometimes I'm just asking a question.
```

Page 142

```
14:15:35  1  BY MR. VAZQUEZ:
14:15:35  2    Q.  All right.  And you used the word
14:15:37  3  "toss-up."  It's a little more defined than that,
14:15:39  4  isn't it?  Didn't Mr. West testify that it would be
14:16:04  5  the one they received from the most sources?
14:16:07  6    A.  Yes.  But in the example that you gave
14:16:30  7  him, the hypothetical, you only give two source.
14:16:50  8  So in that case, it would be a toss-up.  It would
14:16:53  9  be a probability, like a coin toss, as to which
14:16:58 10  would not would be displayed.
14:16:26 11    Q.  Okay.  Let's keep our patent, "060 patent,
14:16:28 12  in front of you, please.
14:16:29 13    A.  Okay.
14:16:30 14    Q.  And that's, again, Exhibit 2.  And let's go
14:16:34 15  back to Column 20.
14:16:38 16    A.  Column 20.  Okay.  I'm there.
14:16:42 17    Q.  Okay.  And so I would like to focus on a
14:16:50 18  line -- the element of Claim 1, which begins,
14:20:04 19  "Creating," which is at Line --
14:20:09 20    A.  58?
14:20:59 21    Q.  -- 58.
14:20:59 22    A.  Would you like me to read the element?
14:20:07 23    Q.  Yes, please.  Just up to "providers."
14:20:18 24    A.   "...creating, by the at least
14:20:22 25         one computer processor, a
```

Page 143

```
14:20:24  1       healthcare provider report on the
14:20:24  2       first healthcare provider using the
14:20:37  3       healthcare-provider-verified
14:20:43  4       information, the patient-provided
14:20:43  5       information, and the information
14:20:49  6       verified by the independent
14:20:51  7       third-party source, wherein the
14:20:53  8       healthcare provider report on the
14:20:56  9       first healthcare provider includes
14:20:58 10       comparison ratings of healthcare
14:20:54 11       providers...."
14:20:59 12       Is that --
14:27:02 13    Q.  Yes.
14:27:03 14    A.  Did you want me to continue?
14:27:06 15    Q.  Yes -- No, no.  That's fine right there.
14:27:05 16    A.  Okay.
14:27:07 17    Q.  Do you agree, then, that this claim
14:27:50 18  element, Dr. Cooper, does not require the display
14:27:52 19  of healthcare provider-verified information?
14:27:54 20    A.  It says a healthcare provider report.  So
14:28:05 21  that would either be displayed, printed, or
14:28:08 22  e-mailed.  But in one way or another, it would be
14:28:20 23  readable.  So, ultimately, it would have to be
14:28:23 24  displayed in some form.
14:28:26 25    Q.  And where does the claim say "display"?
```

Page 144

```
 1    A.  It doesn't use that word.
 2    Q.  Okay.
 3    A.  That's my interpretation of what a report
 4  is.
 5    Q.  Could you turn to Paragraph 37 of your
 6  rebuttal report, please.
 7    A.  That was 37?
 8    Q.  Yes.  Paragraph 37 of your rebuttal report.
 9    A.  I'm there.
10    Q.  Okay.
11    A.  Okay.
12    Q.  Just one second.
13    A.  Okay.
14    Q.  Turning to the patent, the language from
15  the patent that you just read in, beginning,
16  "Creating."
17    A.  Okay.
18    Q.  You agree that the Court held that this
19  element does not require that all the
20  physician-verified information be used to create
21  the report; right?
22    A.  No.  Could you show me where that's in the
23  Court's order?
24    Q.  Okay.  Sure.  Let's look at Page 20.
25    A.  That's Exhibit 3?
```

Page 145

```
 1    Q.  Yeah.
 2    A.  Okay.
 3    Q.  And if you see little bit past the halfway
 4  point, there is a -- the Court said, quote:
 5         "Furthermore, the categories of
 6       information are being 'used' to
 7       'create' a report" --
 8    A.  I'm -- I'm missing where that is on this
 9  here.
10    Q.  Page 20.
11    A.  Yeah, I'm on 20.
12    Q.  Yeah.  About halfway down.  The sentence
13  that begins, "Furthermore."
14    A.  "Furthermore."  Oh, I --  No.
15  "Furthermore, the categories," but you are --
16    Q.  Right.  So --
17    A.  Repeat the question, please.
18    Q.  Okay.  It says:
19         "Furthermore, the categories of
20       information are being 'used' to
21       'create' a report.  There is
22       nothing in the patent that
23       requires, when receiving,
24       acquiring, or compiling
25       information, a predetermination of
```

37 (Pages 142 to 145)

Page 146

```
14:21:29   1       what will ultimately be put into a
14:21:32   2       report."
14:21:33   3    A. I see that.
14:21:33   4    Q. And then, after citing, in a parenthetical
14:21:30   5  that states:
14:21:32   6       "('The particular embodiments
14:21:33   7       described herein are not intended
14:21:37   8       to limit the types of information
14:21:36   9       which may be provided and/or
14:22:00  10       verified.')."
14:22:02  11       The quote went on and states:
14:22:03  12       "For instance, a patient or
14:22:06  13       healthcare provider might provide
14:22:08  14       information to the website that is
14:22:37  15       not deemed relevant or important
14:22:38  16       upon reaching the step of creating
14:22:47  17       a report."
14:22:48  18    A. I see that.
14:22:48  19    Q. Okay. So having now looked at the Court's
14:22:23  20  order, I'll go back to the question, which was:
14:22:29  21  Didn't the Court hold that this element, the
14:22:39  22  creating-by element that we were looking at --
14:22:38  23    A. Okay.
14:22:38  24    Q. -- does not require that all of the
14:22:42  25  physician-verified information be used to create
```

Page 147

```
14:22:45   1  the report?
14:22:45   2    A. That's correct. It does not require that
14:22:55   3  all the information be -- It doesn't specifically
14:23:02   4  call that out.
14:23:02   5    Q. Okay. Now, did you state just a bit ago,
14:23:14   6  in response to one of my questions, that the report
14:23:17   7  must be displayed?
14:23:21   8    A. Can you read back my response on that,
14:23:23   9  please.
14:23:25  10    Q. Well, let me just ask you new.
14:23:27  11    A. Okay.
14:23:28  12    Q. Are you stating that the report must be
14:23:30  13  displayed?
14:23:32  14    A. I am saying, one way or another, the
14:23:33  15  report has to be presented. And whether it's
14:23:35  16  displayed, printed, e-mailed, whatever, is -- is a
14:23:44  17  matter of presentation style.
14:23:44  18    Q. Okay. But that does not necessarily mean
14:23:47  19  that the things used to create the report need to
14:23:51  20  be displayed, does it?
14:23:58  21       MR. STIMPSON: Objection to the form.
14:23:59  22       THE WITNESS: I believe the Court's
14:25:06  23  construction says that not all of it need be
14:25:09  24  displayed, yes.
14:26:03  25
```

Page 148

```
 1  BY MR. VAZQUEZ:
 2    Q. Exactly. So you agree, then, Dr. Cooper,
 3  that this claim element does not require the
 4  display of patient-provided information?
 5       MR. STIMPSON: Objection to form. Asked
 6  and answered.
 7       THE WITNESS: Yeah, same answer.
 8  BY MR. VAZQUEZ:
 9    Q. Which is it does not?
10       MR. STIMPSON: Objection to the form. It's
11  asked and answered.
12       THE WITNESS: (No response.)
13  BY MR. VAZQUEZ:
14    Q. Even though your counsel objects, you still
15  have to answer the question.
16    A. Well, I agree with Counsel. It was asked
17  and answered. And if you would read back the
18  answer, please, then --
19       MR. VAZQUEZ: Go ahead.
20       THE REPORTER: What am I reading?
21       MR. STIMPSON: I think it's around where he
22  was referring to -- where you referred to --
23       MR. VAZQUEZ: We just --
24       MR. STIMPSON: Paragraph 37, I think, of
25  his report is where he was referring to.
```

Page 149

```
 1       THE REPORTER: So you want me to search for
 2  Paragraph 37?
 3       MR. STIMPSON: I think that's where he said
 4  it, yeah.
 5       (The answer was read as follows:
 6       "Q. You agree that the Court
 7       held that this element does not
 8       require that all the
 9       physician-verified information be
10       used to create the report; right?"
11       "A. No. Could you show me
12       where that's in the Court's
13       order?")
14       MR. STIMPSON: I'm sorry. It must have
15  been before that. I think it was before that then.
16       THE REPORTER: I don't know what I am
17  looking for.
18       MR. STIMPSON: Okay. Sorry.
19       MR. VAZQUEZ: Can we agree that I can ask
20  the question and you will answer it?
21       MR. STIMPSON: A second time, you mean?
22       MR. VAZQUEZ: Yeah. Because you could
23  easily find it.
24       MR. STIMPSON: Okay. Well -- Oh, I can.
25  Hold on. We will find it.
```

Page 226

```
16:22:38   1    Q.  And so this person needs to figure out
16:22:50   2  which doctor should I pursue looking for more
16:22:54   3  information on.  Do you agree with that?
16:22:55   4    A.  I agree that you are alleging that, yes.
16:22:57   5    Q.  Yes.  Well, not alleging it.  I'm just
16:23:01   6  saying it, Dr. Cooper.
16:23:02   7    A.  Okay.
16:23:02   8    Q.  The person is looking for information on
16:23:04   9  doctors, and he received this information back --
16:23:08  10    A.  Yes.
16:23:08  11    Q.  -- which is about three doctors?
16:26:09  12    A.  Yes.
16:26:10  13    Q.  And then the person asks himself, well,
16:26:18  14  which of these three doctors should I look for more
16:26:18  15  information on.  Okay?
16:26:19  16    A.  Uh-huh.
16:26:20  17    Q.  Does this information facilitate that
16:26:25  18  person accomplishing that goal?
16:26:28  19    A.  Within the meaning of the claims, no.
16:26:31  20    Q.  Okay.  And, sir, why within the meaning of
16:23:02  21  the claims is your answer no?
16:23:02  22    A.  Because it doesn't meet the limitations of
16:23:09  23  comparing and using that information as specified
16:23:08  24  in Claims 1 or 15, which are the independent
16:23:08  25  claims.
```

Page 227

```
16:23:59   1    Q.  Okay.  Do you believe that the answer to
16:24:44   2  this question is irrelevant, Dr. Cooper?
16:24:47   3        MR. STIMPSON:  Objection to form.  What
16:24:49   4  question?
16:24:49   5        MR. VAZQUEZ:  The one I just asked.
16:24:52   6        THE WITNESS:  Would you read the question
16:24:52   7  back, please?
16:24:53   8        (The question was read as follows:
16:24:59   9         "Q.  And, sir, why within the
16:24:53  10         meaning of the claims is your
16:25:02  11         answer no?")
16:29:04  12        THE WITNESS:  No, that was -- Oh, okay.
16:29:07  13  Because it doesn't satisfy the limitations of the
16:29:09  14  claim.
16:29:49  15  BY MR. VAZQUEZ:
16:29:55  16    Q.  I thought, Dr. Cooper, that earlier you
16:29:52  17  said that it was not relevant.
16:29:24  18    A.  I don't think it was that question that
16:29:28  19  was irrelevant.  I think that question just doesn't
16:29:55  20  satisfy the meaning of the claims.
16:40:07  21        Can you read the question and the answer
16:40:28  22  where I gave the word "irrelevant," please.
16:40:34  23        MR. VAZQUEZ:  Or "not relevant."  Just do a
16:40:33  24  search for "relevant" or "irrelevant" in his
16:40:36  25  responses.
```

Page 228

```
 1        (The record was read as follows:
 2         "Q.  ...on Page 23 of 64,
 3         Exhibit 10, would not allow a
 4         potential patient to choose which
 5         profile they want to look at?
 6          "A.  I suppose a patient could
 7         choose that without practicing the
 8         claims.  So if you are saying
 9         within the meaning of the claims,
10         choosing is not mentioned in the
11         claims.  Therefore, it's -- the
12         question is irrelevant.")
13        THE WITNESS:  That's --
14  BY MR. VAZQUEZ:
15    Q.  That's your response?
16    A.  Yeah.  I stand with that response.
17    Q.  Okay.  So why is it that you believe that
18  question is irrelevant?
19    A.  Because it doesn't read on the claims.
20    Q.  And so, Dr. Cooper, will you just refuse to
21  answer questions that you think are irrelevant?
22    A.  No.
23    Q.  Just that one?
24    A.  I'm sorry?
25    Q.  Just that one?
```

Page 229

```
 1    A.  That one is irrelevant.  Therefore, I
 2  answered that it was irrelevant.
 3    Q.  That's good, Dr. Cooper.  That's good.
 4        I need to run to the bathroom.
 5    A.  Me too.
 6    Q.  Let's take a break.  Are we agreed?
 7        MR. STIMPSON:  Yes.  How long have we been
 8  going?
 9        THE VIDEOGRAPHER:  The time now is 4:27.
10  We are off the record.
11        (Recess taken.)
12        THE VIDEOGRAPHER:  The time now is 4:39.
13  We are back on the record.
14  BY MR. VAZQUEZ:
15    Q.  Dr. Cooper, referencing Page 23 of 64 of
16  Exhibit 10 again.
17    A.  Yes.
18    Q.  Okay.  Do you agree that clicking a
19  physician's name as listed on this results page, to
20  use your words, allows a potential patient to
21  access a report on a first healthcare provider?
22    A.  I don't have reason to either agree or
23  deny on that, but I will take your word for it if
24  you want to say that it does.
25        In other words, all I have is the paper,
```

Page 230

```
16:40:27   1  not the website in front of me.
16:40:38   2       MR. VAZQUEZ:  Just pulling another exhibit
16:40:39   3  here.
16:40:59   4       Please mark this as our next deposition
16:40:59   5  exhibit, please.  I think it's 11.
16:41:04   6       (Deposition Exhibit 11 was marked for
16:41:05   7   identification by the Reporter and is annexed
16:41:30   8   hereto.)
16:41:33   9       THE WITNESS:  Are we staying on 23?
16:41:39  10  BY MR. VAZQUEZ:
16:41:40  11   Q.  No.  I am going give you a new exhibit.
16:41:43  12   A.  Ah.  Thank you.
16:41:46  13   Q.  This is not the best copy.  I apologize.  I
16:41:49  14  am looking at Page 24 of 32 of what we have just
16:41:59  15  marked as Exhibit 11.
16:45:05  16       MR. STIMPSON:  Can you wait until I get my
16:45:06  17  copy, please?  I want to catch up.
16:45:08  18       MR. VAZQUEZ:  Sure.
16:45:00  19       MR. STIMPSON:  Thank you.  This is 11?
16:45:16  20  Now, which page are you looking at, Jesus?
16:45:20  21       MR. VAZQUEZ:  24 of 32.
16:45:33  22   Q.  And, Dr. Cooper, is this a report on
16:45:38  23  Dr. Sujana S. Chandrasekhar?
16:45:48  24   A.  It appears to be, yes.
16:45:47  25       MR. STIMPSON:  I'm sorry.  I can't seem
```

Page 231

```
16:45:48   1  to --  Oh, I see.  Okay.  I'm with you.  Okay.
16:45:52   2  BY MR. VAZQUEZ:
16:45:59   3   Q.  And do you agree that a potential patient
16:43:00   4  could click here on Dr. Chandrasekhar's name and --
16:43:08   5   A.  Go ahead.
16:43:09   6   Q.  -- and access a full report on the first
16:43:58   7  healthcare provider?
16:43:58   8   A.  All I am looking at is paper.  I'm not
16:43:37   9  sure that he could click on it.  But if that's your
16:43:39  10  assertion, I will go along with it, since I don't
16:46:02  11  have evidence to the contrary.
16:46:06  12   Q.  So assuming this is -- actually, the
16:46:09  13  patient is looking at this on a screen, which is
16:46:36  14  what we are assuming --
16:46:33  15   A.  Okay.
16:46:38  16   Q.  -- your answer is yes?
16:46:39  17   A.  Yes.
16:46:40  18   Q.  Okay.  And is this an example of a
16:46:33  19  healthcare provider report on the first healthcare
16:46:37  20  provider?
16:46:38  21   A.  I don't have evidence one way or the other
16:46:00  22  on that.  If you want to assert that, then I will
16:46:03  23  accept that.
16:46:06  24   Q.  Well, I think you agreed it was a report.
16:46:36  25  Right?
```

Page 232

```
 1   A.  It's an HTML display, which could be
 2  construed as a report under the right
 3  circumstances, but I don't know that it's construed
 4  as a report under Claims 1 or 15.
 5   Q.  Is it a report on this particular doctor,
 6  Dr. Chandrasekhar?
 7   A.  It mentions Dr. Sujana S. Chandrasekhar,
 8  M.D., but you haven't established that it's a
 9  report on the -- within the meaning of the claims.
10  It is an HTML page, it looks like, that's been
11  printed.  It says at the bottom Screenshot 12.
12   Q.  Yup.  And is it a report on a particular
13  doctor about whom information was requested?
14   A.  I have no way of knowing that.  In
15  Paragraph 24:
16       "I" -- whoever "I" is --
17       "captured the entire page in four
18       screenshots shown below:"
19       If that's correct, then the four screen
20  shots would be 12, 13, 14, and 15.
21   Q.  What are you referring to when you say "24
22  I"?
23   A.  In Paragraph 24 --
24   Q.  Oh, the word "I"?
25   A.  "I" is used, yes, whoever "I" is.
```

Page 233

```
 1   Q.  Okay.  What happens, Dr. Cooper, when you
 2  click on a doctor's name in a results list on the
 3  Vitals website?
 4   A.  I don't know.  I haven't clicked on that
 5  name.  I have found that I can't get a report that
 6  meets the construction of the claim.  That's all I
 7  know.
 8   Q.  Did you say you found that you can't,
 9  cannot get a report?
10   A.  I cannot find a report that meets the
11  construction of the claim.
12   Q.  Okay.  So I asked you what happens when you
13  click on a doctor's name on a results list.
14   A.  And I said I don't know, but I will accept
15  your assertion that it brings up a report.
16   Q.  Okay.  But --  So have you done it
17  yourself?
18   A.  I have not looked at it that way, no.  I
19  looked at the report first, the results list
20  second.
21   Q.  Have you, yourself, clicked on a doctor's
22  name in the report on the Vitals website?
23   A.  In a report?
24   Q.  Uh-huh.
25   A.  This is --  I have not clicked on a
```

Page 234

```
16:48:58   1  doctor's name in a report, no.
16:48:57   2     Q.  Have you -- So as part of just preparing
16:48:59   3  for rendering your opinions or working on the case,
16:48:61   4  Dr. Cooper, have you been on the Vitals website?
16:48:63   5     A.  Yes, I have.
16:48:68   6     Q.  How much time have you spent on the Vitals
16:48:69   7  website?
16:49:00   8     A.  Oh, I have no idea.
16:49:04   9     Q.  Well, more than an hour?
16:49:02  10     A.  Probably more than an hour, probably less
16:49:03  11  than two.
16:49:08  12     Q.  Okay.  Thanks.
16:49:23  13          And so whether it's on a report within the
16:49:26  14  meaning of the claims or a results list, have you
16:49:20  15  had a chance to simply click on a doctor's name
16:49:28  16  when it comes up on the Vitals website?
16:49:29  17     A.  I don't recall clicking on the name
16:49:37  18  itself.  I have clicked on pages.  I don't recall
16:49:32  19  the name being one of those.  Whether the name is a
16:49:34  20  sensitive link or just text isn't clear from this
16:49:39  21  material.
16:49:39  22     Q.  Have you run a sample search query --
16:49:46  23     A.  Yes.
16:49:45  24     Q.  -- in the time you spent on the Vitals
16:49:47  25  website?
```

Page 235

```
16:49:48   1     A.  Yes, I have.
16:49:49   2     Q.  And do you recall what query that was or
16:49:50   3  what queries they were?
16:49:52   4     A.  I ran a number of queries to see what the
16:49:54   5  various attributes of the claim elements were
16:49:58   6  practiced.
16:49:58   7     Q.  So, for example, did you just run a search
16:50:00   8  for a type of doctor?
16:50:02   9     A.  Only a type of doctor?
16:50:03  10     Q.  Yes.
16:50:06  11     A.  I believe I did not.  I searched for a
16:50:08  12  type of doctor within a location of my -- my home
16:50:34  13  within Hemet.
16:50:34  14     Q.  Okay.  Good.  And so you received
16:50:37  15  information in response to the query you submitted;
16:50:40  16  correct?
16:50:41  17     A.  That's correct.
16:50:42  18     Q.  And did the information include doctors'
16:50:43  19  names?
16:50:46  20     A.  Yes, it did.
16:50:46  21     Q.  And so did you click on any of those
16:50:49  22  doctors' names?
16:50:31  23     A.  Same answer as before.  I don't recall
16:50:34  24  clicking on the name, no.
16:50:33  25     Q.  Okay.  So, Dr. Cooper, you don't recall
```

Page 236

```
 1  clicking on a name.  Do you recall getting to a
 2  report on a doctor?
 3     A.  Yes.  I did.
 4     Q.  Okay.  And what was the information that
 5  you recall you accessed when you did that?
 6     A.  I don't recall that.  I was on --
 7  Information that may or may not have been
 8  equivalent to this.
 9     Q.  Well, then, how did you -- Do you recall
10  how you got that report?
11     A.  I recall I searched.  I don't recall the
12  details.  Do you have access to the website now?
13  Maybe we could clarify that.
14     Q.  No.  As you can see, we've got a pretty
15  slow connection here.
16     A.  Yes.
17     Q.  Otherwise I would indulge you in that.
18     A.  Okay.
19     Q.  I'm just trying to see whatever you
20  remember about the search queries you said you ran.
21     A.  Yes.
22     Q.  Obviously, you ran for, as you said, a type
23  of doctor near Hemet?
24     A.  Yes.
25     Q.  You received some information.  You say you
```

Page 237

```
 1  remember getting to a doctor report?
 2     A.  I was getting to a doctor report, but
 3  whether that's within the meaning of the claims, my
 4  contention is no, it's not, because it didn't
 5  practice all the elements.
 6          And that's what I spent my time looking
 7  for, whether the elements were practiced.
 8          MR. VAZQUEZ:  All right.  I'll just move to
 9  strike that response.  It's nonresponsive.
10     Q.  Let's just move on, Dr. Cooper.  Okay,
11  Dr. Cooper, let's -- How was it that you
12  pronounced the doctor's last name on Page 24 of 32
13  of Exhibit 11?
14     A.  I pronounced it Sujana.  I'm not sure if
15  that's right.  Chandrasekhar, which I believe is a
16  reasonable approximation.
17     Q.  Okay.
18     A.  Probably not right --
19          MR. STIMPSON:  Couldn't you pick Dr. Smith
20  or something?
21          THE WITNESS:  Smith, Jones.
22          MR. STIMPSON:  Whose idea was this?
23          MS. STOLL-DeBELL:  I have no idea.
24  BY MR. VAZQUEZ:
25     Q.  Well, how about, just for simplicity, I
```