- Hall Report Attachment 7a (See Vitals' projected advertising revue which comes from its website which Hall rightly assumes is infringing the '060 patent);
- Hall Report Attachment 9 (See *Georgia Pacific* factors #8 and #11)
- Hall Report Attachment 11 (graph of Vitals' advertising revenue over time showing increased demand for its website which is assumed to be infringing '060 patent)
- Hall Report Attachment 12 (graph of HG's advertising revenue over time showing increased demand for its website which uses '060 patent.)
- Ex. H, Attachment 16 (graph of market share for the two companies that use, or for Hall's purpose are assumed to use, the '060 patent) (Hall Depo. Exhibit 79)
- See also Hall's deposition where he responds to questions regarding demand:  56:2-57:21; 58:16-59:4; 79:8-19; 102:3-103:24; 104:6-105:21; 109:8-25; 110:8-111:25; 122:5-123:10; 131:13-133:19. (Exhibit D)

MDx also contends incorrectly that "Hall's basis for concluding there was demand starts with the revenues of both MDx and Health Grades."  Motion at p. 5.  This is not true and mischaracterizes Hall's analysis.  *See* Hall Affidavit, attached hereto as Exhibit C, ¶¶ 4-18.  Use of an Affidavit by an expert witness subject to a *Daubert* motion is proper.  *See* Order, Case 1:10-cv-01899-RBJ-KLM, Doc. 162, August 15, 2012.

MDx also complains that the revenue data Hall used is "exaggerated, unconnected to the patented invention, and speculative."  Motion at p. 5.  However the advertising revenue that Hall analyzed for demand is directly connected to the patented features in that both Vitals and Health Grades use the patented features on their websites to attract visitors, and then earn advertising revenue based on those visitors.  Hall Affidavit, attached hereto as Exhibit C, ¶¶ 4-18.

MDx complains further that "Hall made no effort to capture revenue derived from the practice of the patent claims."  Motion at p. 5.  ***The Panduit demand test, however,***

12

Hall did not ignore John Neal's testimony on the competition. He did note, however, that Mr. Neal stated that he would answer MDx's counsel's questions from a layman's perspective and that he was not a patent attorney and it would be a judgment for counsel to make. He also noted that Mr. Neal appeared to be answering questions about *infringing* competitors (or competitors "that embody or employ a claim in the patent-in-suit"—see deposition excerpt below). Therefore, Hall took reasonable additional steps and used additional sources of information to identify acceptable non-infringing substitutes.

> Q.  So what we're going to talk about now is products and services of other companies that compete with the Health Grades products and services that embody or employ a claim in the patent-in-suit, okay?
>
> A.  Okay. Got it.
>
> Q.  So, let's identify them. Vitals.com?
>
> A.  Okay.
>
> Q.  Ucompare.com. Correct?
>
> A.  **I have to tell you from a layman's standpoint, I would say absolutely I am not a patent attorney. So that's a judgment that counsel would have to make.**
>
> Q  But let's just do the best we can here because you're identified for these topics.
>
> A  Right.
>
> (John Neal depo, 84:15 – 85:5, Ex. F)(emphasis added).

Hall stated his criteria both in his report and at his deposition how he executed his *Mor-Flo* analysis to determine market share. *See* Hall Report ¶¶34-38, Ex. A and Hall Depo. 185:6-188:22, Ex. D. Further, Hall also ran his *Mor-Flo* analysis based on Vitals' expert's (Napper) market share conclusion, in addition to his original analysis, that yielded no substantive change to the resulting damages and is prepared to present both to the court. *See* Ex. A, Attachments 3, 3a; Ex. D, Hall Depo. 8:11-10:14 and 303:7-17; Ex. I, Attachment "3a -- Napper Market Share Data" (Hall Depo. Exhibit 76); s*ee also* Hall Affidavit, Ex. C, ¶¶ 24-27. Hall's analysis of the

16