**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

      Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

**MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION TO PRECLUDE ANY
TESTIMONY FROM HEALTH GRADES, INC.'S EXPERT DR. GREENSPUN**

---

      Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its

undersigned counsel, respectfully submits this Reply In Support Of Its Motion [Doc. # 349, the

"Motion"] To Preclude Any Testimony From Health Grades, Inc.'s Expert Dr. Greenspun (the

"Reply").

**I.     HEALTHCARE EXPERIENCE IS NECESSARY**

      "The relevant art [of a patent] 'is defined by the nature of the problem confronting the

would-be inventor.'" *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991) (citing

*Orthopedic Equip. Co. v. U.S.*, 702 F.2d 1005, 1008 (Fed. Cir. 1983)). Courts look in part to the

specification of the patent at issue to make this determination. *Arachnid, Inc. v. Merit Indus.*,

201 F. Supp. 2d 883, 889 (N.D. Ill. 2002); *Verve, L.L.C. v. Crane Cams, Inc.*, 395 F. Supp. 2d

558, 570-71 (E.D. Mich. 2005). Here, the nature of the problem faced by the inventors of the

'060 patent, was a need to provide "on-line ratings and reports comprised of detailed healthcare

provider information with verified information sections, including physician-verified and/or independent third-party-verified potions, and patient-provided information sections, to assist patients in differentiating among healthcare providers." Exhibit A to Motion, at col. 1, ll. 15-20. No matter how the art area is phrased, there is a very substantial healthcare component. As abundantly clear from the prosecution history (Exhibit B to Motion, at MDX 0013547 - 48), the allegedly inventive utility is the specific healthcare-related data elements, where each should be obtained, which should be verified, and what must be included in reports.

Health Grades accurately sets forth some of the factors that may be considered by a Court in determining the level of ordinary skill in the art in its Opposition [Doc. # 392, the "Opposition"] by citing to *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696-97 (Fed. Cir. 1983), but misunderstands the factors and their application to this case. Opposition, at p. 4.

### **Problems Encountered in the Prior Art**

When viewed in light of the specification and prosecution history (Exhibit B to Motion, at MDX 0013547 - 48), the prior art problems addressed were the alleged failures of prior art products to collect the right healthcare data elements from the right sources, the failures to verify certain of the healthcare data elements, and the failure to recognize which data elements should be presented in a report.

Health Grades' analysis of the prior art is wrong. It argues that the prior art is not "limited" to healthcare issues, but Henley and other prior art references expressly disclose healthcare applications. *See, e.g.*, Exhibit 2 to Opposition, Henley prior art, at ¶ 64-68, 79-105.

**Experience Levels of the Inventors and Others**

Health Grades misunderstands this issue too, when it argues that the named inventors did not have healthcare experience "***prior to working for Health Grades***" (Opposition, at pp. 8-9; emphasis added), and when it argues that the MDx personnel did not have healthcare experience "***prior to working for MDx (or UCompareHealthcare)***" (*id.,* at pp. 9-10).  The question is what healthcare experience these people have, not what healthcare experience they have before some arbitrary time when they started to work for their current employers.

The inventors all had healthcare experience ***before the alleged invention*** – when they came up with this idea, they all had healthcare experience.  *See, e.g.*, Opposition, at p.8.  And the MDx personnel working in this area all have substantial healthcare experience, too.

**The Sophistication of the Issues**

Health Grades contends that the technology behind the invention of the '060 patent is only "a conventional application of relational database management systems and Web servers." Opposition, at pp. 4-5.  But the specification, claims and prosecution history of the '060 patent belie this position – they do not address mere relational database management (that would never have resulted in a patent).   Instead, the claims are focused on the compilation of specific healthcare data elements, verification of certain of those elements, and creation of a report with specific features; and it was these healthcare-related features on which Health Grades obtained allowance of these claims.  Exhibit A to Motion, at col. 20, ll. 20-67; col. 22, ll. 9-56.  Indeed, this new Health Grades position is in surprising contrast to the one Health Grades presented to the Patent Office, where it argued that no prior art taught this allegedly unique combination of claim elements.  Exhibit B to Motion, at MDX 0013547 - 48.

Health Grades contends, in its Opposition, that the healthcare aspects of the claims of the '060 patent are "easily understood" by a lay person and so there is no need for healthcare experience to explain this information.  Opposition, at p.10.  Health Grades here demonstrates a fundamental misunderstanding of the issues, and the reasons why experts are employed in patent cases.  The issue is not whether a lay person can read the '060 patent or the claims of the '060 patent and understand them.  Many patents can be understood by a lay person.  Instead, the questions here are all about *what a person of ordinary skill in the art would understand at the time of the invention*.  Both the invalidity and infringement issues are viewed through the eyes of a person having ordinary skill in the art.  *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1361 (Fed. Cir. 2008); *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369-1370 (Fed. Cir. 2004).  So, even though a layperson may read these claims and understand what they say, without expert guidance a lay jury will never understand, for example, the level or knowledge and skill of a person of ordinary skill in this art area at the time of the invention (alleged to be February 8, 2006); what that person would understand from the teachings of the prior art; and whether that person would find these specific claims anticipated and/or obvious. And Dr. Greenspun cannot possibly help the jury to understand these issues because he has never been a person of ordinary skill in the art – he cannot possibly know, for example, what would have been obvious to people who actually have experience in this art.  *Sundance,* 550 F.3d at 1363 ("Indeed, where an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to allow a witness to testify on the issue who is not qualified as a technical expert in that art."); *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360-61 (Fed. Cir. 2006) (upholding a district court's decision to exclude expert

testimony because the alleged expert "was not one of ordinary skill in the art at the time of the invention"); *see also, Wright Asphalt Prods. Co., LLC v. Pelican Ref. Co., LLC*, 2012 U.S. Dist. LEXIS 73901, at *9-16 (S.D. Tex. May 29, 2012) (excluding an alleged expert from testifying for failing to qualify as a person possessing ordinary skill in the relevant art).

## II.    DR. GREENSPUN'S ALLEGED HEALTHCARE EXPERIENCE

At page 11 of its Opposition, Health Grades provides four bullet points of Dr. Greenspun's alleged healthcare experience. These include building databases, and his personal experience shopping for doctors. *See also*, Exhibit D to Motion, Greenspun deposition transcript, at pp.14-34. Dr. Greenspun's database experience is only that – building a database and helping with pulling information from databases. It has nothing to do with selection of healthcare data elements, where to get that data, which data to verify, or how to create healthcare provider reports.

Health Grades next argues that Dr. Greenspun's lack of expertise should only go to the weight of his testimony. Health Grades goes to great lengths to impress this upon the Court (Opposition, at pp. 12 -15), but fails to identify or analyze the threshold issue. That is, it is not a question of how qualified Dr. Greenspun is; it is a question of whether he is qualified at all to meet the standard under Fed. R. Evid. 702—he is not.

The first case that Health Grades cites, *Microfinancial Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72 (1st Cir. 2004), is not even a patent infringement case. This case deals with a dispute between a lender and a borrower based on allegations of fraud. It is so far afield from patent law that the analysis provided by the *Microfinancial* court with respect to admitting expert testimony cannot realistically be applied to this case, involving the relevant art of a patent. For

example, Health Grades identifies the *Microfinancial* case as standing for the proposition that an expert need not have had first-hand dealings with the precise type of event that is at issue.  While that may be true in a fraud suit between a lender and borrower, it is completely irrelevant in a patent case, where the standard is:  the alleged expert must be a person of ordinary skill in the art at the time of the invention.  *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360-61 (Fed. Cir. 2006).

Next, Health Grades relies on *Tesco* to argue that "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility. Opposition, at pp. 12-13 (citing *Tesco Corp. v. Weatherford Int'l, Inc.*, 750 F. Supp. 2d 780, 793 (S.D. Tex. 2010).  Health Grades' argument completely misses the mark.  In *Tesco*, it was undisputed that the expert in question had technical experience in the field at issue, oil drilling. Here, the field at issue is healthcare, and Dr. Greenspun, admittedly, has **no** experience in healthcare.  Health Grades' reliance on *Insight Tech., Inc. v. SureFire, LLC* is also misplaced. Again, the relevant art of the patent-in-suit related to "relatively basic mechanical engineering problems" and the expert in question had a Ph. D in mechanical engineering.  As such, the facts of *Insight Tech* too are inapposite to the instant case, because the relevant art is in healthcare and Dr. Greenspun has **no** experience in that art.  All of this leads to the conclusion that it is not a question of weight, as Health Grades would like to believe, but, indeed, a question of admissibility.  *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008) (rejecting the argument that the expert's experience goes to weight, not admissibility, where the expert in question was not qualified in the pertinent art); *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1268 (Fed. Cir. 2008) (upholding the district court's decision to limit the

testimony of the expert in question to areas in which he qualified as a person of ordinary skill in the art); *see also, Wright Asphalt Prods. Co., LLC*, 2012 U.S. Dist. LEXIS 73901, at *15-16 ("Although a factfinder could conclude that less than a decade's worth of experience is sufficient to be skilled in the art,  no reasonable jury could conclude that someone with Dr. Karvelis's experience and expertise—highly trained in fluid dynamics and fluid mechanics generally, but only slight, tangential experience with asphalt formulation—is sufficiently skilled in the relevant art.")  Because the relevant art of the '060 patent relates to healthcare and Dr. Greenspun has **no** experience in healthcare, he should be precluded from testifying entirely with respect to his opinions on infringement and validity of the '060 patent.

## III.    <u>CONCLUSION</u>

For all the foregoing reasons and the reasons set forth in MDx's Motion to Preclude Any Testimony From Health Grades, Inc.'s Expert Dr. Greenspun, we respectfully request that Dr. Greenspun be precluded from providing any testimony.


Dated:  December 6, 2012                          Respectfully submitted,


                                                 <u>*s:/Scott D. Stimpson*</u>
                                                 Scott D. Stimpson
                                                 Scott B. Murray
                                                 David C. Lee
                                                 Sills Cummis & Gross P.C.
                                                 30 Rockefeller Plaza
                                                 New York, New York 10112
                                                 Tel: (212) 643-7000
                                                 Fax: (212) 643-6500
                                                 E-mail:sstimpson@sillscummis.com
                                                 E-mail:smurray@sillscummis.com
                                                 E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on <u>December 6, 2012</u>, I electronically filed the foregoing MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION TO PRECLUDE ANY TESTIMONY FROM HEALTH GRADES, INC.'S EXPERT DR. GREENSPUN with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Jesus Manuel Vazquez , Jr.
> jvazquez@rothgerber.com, phenke@rothgerber.com

Gregory B. Kanan
> gkanan@rothgerber.com, dgrooms@rothgerber.com

Kris John Kostolansky
> kkosto@rothgerber.com, dgrooms@rothgerber.com

Scott David Stimpson
> sstimpson@sillscummis.com, gcaceres@sillscummis.com

Scott B. Murray
> smurray@sillscummis.com

David Chunyi Lee
> dlee@sillscummis.com

Terence M. Ridley
> ridley@wtotrial.com, norris@wtotrial.com

*s:/ David C. Lee*