Civil Action No. 11-CV-00520-PAB-BNB

**HEALTH GRADES, INC.'S HEALTH GRADES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

**Exhibit T**

**MANUAL OF PATENT EXAMINING PROCEDURE, §§ 715 AND 2132**
*(highlighting added)*

# Chapter 700   Examination of Applications

| | | | | |
|---|---|---|---|---|
| **701** | **Statutory Authority for Examination** | 711.02 | Failure To Take Required Action During Statutory Period |
| **702** | **Requisites of the Application** | | |
| 702.01 | Obviously Informal Cases | 711.03 | Reconsideration of Holding of Abandonment; Revival |
| **703** | **"General Information Concerning Patents"** | | |
| **704** | **Search and Requirements for Information** | 711.04 | Public Access to Abandoned Applications |
| 704.01 | Search | 711.05 | Letter of Abandonment Received After Application Is Allowed |
| 704.10 | Requirements for Information | | |
| 704.11 | What Information May Be Required | 711.06 | Abstracts, Abbreviatures, and Defensive Publications |
| 704.12 | Replies to a Requirement for Information | | |
| 704.13 | Time Periods for Reply | **713** | **Interviews** |
| 704.14 | Making a Requirement for Information | 713.01 | General Policy, How Conducted |
| **705** | **Patentability Reports** | 713.02 | Interviews Prior to First Official Action |
| 705.01 | Instructions re Patentability Reports | 713.03 | Interview for "Sounding Out" Examiner Not Permitted |
| **706** | **Rejection of Claims** | | |
| 706.01 | Contrasted With Objections | 713.04 | Substance of Interview Must Be Made of Record |
| 706.02 | Rejection on Prior Art | | |
| 706.03 | Rejections Not Based on Prior Art | 713.05 | Interviews Prohibited or Granted, Special Situations |
| 706.04 | Rejection of Previously Allowed Claims | | |
| 706.05 | Rejection After Allowance of Application | 713.06 | No Inter Partes Questions Discussed Ex Parte |
| 706.06 | Rejection of Claims Copied From Patent | | |
| 706.07 | Final Rejection | 713.07 | Exposure of Other Cases |
| **707** | **Examiner's Letter or Action** | 713.08 | Demonstration, Exhibits, Models |
| 707.01 | Primary Examiner Indicates Action for New Assistant | 713.09 | Finally Rejected Application |
| | | 713.10 | Interview Preceding Filing Amendment Under 37 CFR 1.312 |
| 707.05 | Citation of References | | |
| 707.06 | Citation of Decisions, Orders Memorandums, and Notices | **714** | **Amendments, Applicant's Action** |
| | | 714.01 | Signatures to Amendments |
| 707.07 | Completeness and Clarity of Examiner's Action | 714.02 | Must Be Fully Responsive |
| | | 714.03 | Amendments Not Fully Responsive, Action To Be Taken |
| 707.08 | Reviewing and Initialing by Assistant Examiner | | |
| | | 714.04 | Claims Presented in Amendment With No Attempt To Point Out Patentable Novelty |
| 707.09 | Signing by Primary or Other Authorized Examiner | | |
| 707.10 | Entry | 714.05 | Examiner Should Immediately Inspect |
| 707.11 | Date | 714.07 | Amendments Not in Permanent Ink |
| 707.12 | Mailing | 714.10 | Claims Added in Excess of Claims Previously Paid For |
| 707.13 | Returned Office Action | | |
| **708** | **Order of Examination** | 714.11 | Amendment Filed During Interference Proceedings |
| 708.01 | List of Special Cases | | |
| 708.02 | Petition To Make Special | 714.12 | Amendments and Other Replies After Final Rejection or Action |
| 708.03 | Examiner Tenders Resignation | | |
| **709** | **Suspension of Action** | 714.13 | Amendments and Other Replies After Final Rejection or Action, Procedure Followed |
| 709.01 | Overlapping Applications by Same Applicant or Owned by Same Assignee | | |
| | | 714.14 | Amendments After Allowance of All Claims |
| **710** | **Period for Reply** | | |
| 710.01 | Statutory Period | 714.15 | Amendment Received in Technology Center After Mailing of Notice of Allowance |
| 710.02 | Shortened Statutory Period and Time Limit Actions Computed | | |
| 710.04 | Two Periods Running | 714.16 | Amendment After Notice of Allowance, 37 CFR 1.312 |
| 710.05 | Period Ending on Saturday, Sunday, or a Federal Holiday | | |
| | | 714.17 | Amendment Filed After the Period for Reply Has Expired |
| 710.06 | Situations When Reply Period Is Reset or Restarted | | |
| | | 714.18 | Entry of Amendments |
| **711** | **Abandonment of Patent Application** | 714.19 | List of Amendments, Entry Denied |
| 711.01 | Express or Formal Abandonment | 714.20 | List of Amendments Entered in Part |

714.21 Amendments Inadvertently Entered, No Legal Effect
714.25 Discourtesy of Applicant or Attorney
**715 Swearing Back of Reference — Affidavit or Declaration Under 37 CFR 1.131**
715.01 37 CFR 1.131 Affidavits Versus 37 CFR 1.132 Affidavits
715.02 How Much of the Claimed Invention Must Be Shown, Including the General Rule as to Generic Claims
715.03 Genus-Species, Practice Relative to Cases Where Predictability Is in Question
715.04 Who May Make Affidavit or Declaration; Formal Requirements of Affidavits and Declarations
715.05 U.S. Patent or Application Publication Claiming Same Invention
715.07 Facts and Documentary Evidence
715.08 Passed Upon by Primary Examiner
715.09 Seasonable Presentation
715.10 Review of Affidavit or Declaration for Evidence of Prior Public Use or Sale or Failure to Disclose Best Mode
**716 Affidavits or Declarations Traversing Rejections, 37 CFR 1.132**
716.01 Generally Applicable Criteria
716.02 Allegations of Unexpected Results
716.03 Commercial Success
716.04 Long-Felt Need and Failure of Others
716.05 Skepticism of Experts
716.06 Copying
716.07 Inoperability of References
716.08 Utility and Operability of Applicant's Disclosure
716.09 Sufficiency of Disclosure
716.10 Attribution
**718 Affidavit or Declaration to Disqualify Commonly Owned Patent as Prior Art, 37 CFR 1.130**
**719 File Wrapper**
719.01 Papers in File Wrapper
719.02 Data Entered on File Wrapper
719.03 Classification During Examination
719.04 Index of Claims
719.05 Field of Search
719.06 Foreign Filing Dates
719.07 Related Applications
**720 Public Use Proceedings**
720.01 Preliminary Handling
720.02 Examiner Determination of Prima Facie Showing
720.03 Preliminary Hearing
720.04 Public Use Proceeding Testimony
720.05 Final Decision
**724 Trade Secret, Proprietary, and Protective Order Materials**
724.01 Completeness of the Patent File Wrapper
724.02 Method of Submitting Trade Secret, Proprietary, and/or Protective Order Materials
724.03 Types of Trade Secret, Proprietary, and/or Protective Order Materials Submitted Under MPEP § 724.02
724.04 Office Treatment and Handling of Materials Submitted Under MPEP § 724.02
724.05 Petition To Expunge Information or Copy of Papers in Application File
724.06 Handling of Petitions To Expunge Information or Copy of Papers in Application File

**701  Statutory Authority for Examination**

*35 U.S.C. 131  Examination of application.*

The Director shall cause an examination to be made of the application and the alleged new invention; and if on such examination it appears that the applicant is entitled to a patent under the law, the Director shall issue a patent therefor.

The main conditions precedent to the grant of a patent to an applicant are set forth in **35 U.S.C. 101**, 102 and 103.

*35 U.S.C. 101  Inventions patentable.*

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Form paragraph 7.04 copies 35 U.S.C. **101**. See MPEP § **706.03**(a).

*35 U.S.C. 100  Definitions.*

When used in this title unless the context otherwise indicates -

(a)    The term "invention" means invention or discovery.

(b)    The term "process" means process, art, or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material.

(c)    The terms "United States" and "this country" mean the United States of America, its territories and possessions.

(d)    The word "patentee" includes not only the patentee to whom the patent was issued but also the successors in title to the patentee.

Case No. 1:11-cv-00520-RM-NYW   Document 442-1   filed 12/13/12   USDC Colorado   pg 3 of 50

>

*37 CFR 1.3  Business to be conducted with decorum and courtesy.*

Applicants and their attorneys or agents are required to conduct their business with the United States Patent and Trademark Office with decorum and courtesy. Papers presented in violation of this requirement will be submitted to the Director and will not be entered. A notice of the non-entry of the paper will be provided. Complaints against examiners and other employees must be made in correspondence separate from other papers.<

All papers received in the U.S. Patent and Trademark Office should be briefly reviewed by the technical support staff, before entry, sufficiently to determine whether any discourteous remarks appear therein.

If the attorney or agent is discourteous in the remarks or arguments in his or her amendment, either the discourtesy should be entirely ignored or the paper submitted to the Technology Center (TC) Director **>for review<. See **MPEP § 1003**. If the TC Director determines that the remarks are in violation of **37 CFR 1.3**, the TC Director will **>send a notice of non-entry of the paper to the applicant<.

## <mark>715  Swearing Back of Reference — Affidavit or Declaration Under 37 CFR 1.131 [R-3]</mark>

*37 CFR 1.131  Affidavit or declaration of prior invention.*

(a)  When any claim of an application or a patent under reexamination is rejected, the inventor of the subject matter of the rejected claim, the owner of the patent under reexamination, or the party qualified under §§ **1.42**, **1.43**, or **1.47**, may submit an appropriate oath or declaration to establish invention of the subject matter of the rejected claim prior to the effective date of the reference or activity on which the rejection is based. The effective date of a U.S. patent, U.S. patent application publication, or international application publication under PCT Article **21(2)** is the earlier of its publication date or date that it is effective as a reference under 35 U.S.C. **102(e)**. Prior invention may not be established under this section in any country other than the United States, a NAFTA country, or a WTO member country. Prior invention may not be established under this section before December 8, 1993, in a NAFTA country other than the United States, or before January 1, 1996, in a WTO member country other than a NAFTA country. Prior invention may not be established under this section if either:

**

>

(1)  The rejection is based upon a U.S. patent or U.S. patent application publication of a pending or patented application to another or others which claims the same

patentable invention as defined in § **41.203**(a) of this title, in which case an applicant may suggest an interference pursuant to § **41.202**(a) of this title; or<

(2)  The rejection is based upon a statutory bar.

**

>

(b)  The showing of facts shall be such, in character and weight, as to establish reduction to practice prior to the effective date of the reference, or conception of the invention prior to the effective date of the reference coupled with due diligence from prior to said date to a subsequent reduction to practice or to the filing of the application. Original exhibits of drawings or records, or photocopies thereof, must accompany and form part of the affidavit or declaration or their absence must be satisfactorily explained.<

**37 CFR 1.131(a)** has been amended to implement the relevant provisions of Public Law 103-182, 107 Stat. 2057 (1993) (North American Free Trade Agreement Act), Public Law 103-465, 108 Stat. 4809 (1994) (Uruguay Round Agreements Act), and Public Law 106-113, 113 Stat. 1501 (1999) (American Inventors Protection Act), respectively. Under **37 CFR 1.131(a)** as amended, which provides for the establishment of a date of completion of the invention in a NAFTA or WTO member country, as well as in the United States, an applicant can establish a date of completion in a NAFTA member country on or after December 8, 1993, the effective date of section 331 of Public Law 103-182, the North American Free Trade Agreement Act, and can establish a date of completion in a WTO member country other than a NAFTA member country on or after January 1, 1996, the effective date of section 531 of Public Law 103-465, the Uruguay Round Agreements Act (URAA). Acts occurring prior to the effective dates of NAFTA or URAA may be relied upon to show completion of the invention; however, a date of completion of the invention may not be established under **37 CFR 1.131** before December 8, 1993 in a NAFTA country or before January 1, 1996 in a WTO country other than a NAFTA country.

If a country joined the WTO after January 1, 1996, the effective date for proving inventive activity in that country for the purpose of 35 U.S.C. **104** and 37 CFR **1.131** is the date the country becomes a member of the WTO. See MPEP § **201.13** for a list that includes WTO member countries (the notation "W$^O$" indicates the country became a WTO member after January 1, 1996).

Any printed publication or activity dated prior to an applicant's or patent owner's effective filing date, or any domestic patent of prior filing date, which is in its disclosure pertinent to the claimed invention, is available for use by the examiner as a reference, either basic or auxiliary, in the rejection of the claims of the application

MANUAL OF PATENT EXAMINING PROCEDURE

or patent under reexamination. In addition, patent application publications and certain international application publications having an effective prior art date prior to the application being examined may be used in a rejection of the claims. See **MPEP § 706.02(a)** and **§ 2136** - **§ 2136.03**.

Such a rejection may be overcome, in certain instances noted below, by filing of an affidavit or declaration under **37 CFR 1.131**, known as "swearing back" of the reference.

It should be kept in mind that it is the rejection that is withdrawn and not the reference.

## I. SITUATIONS WHERE 37 CFR 1.131 AFFIDAVITS OR DECLARATIONS CAN BE USED

Affidavits or declarations under **37 CFR 1.131** may be used, for example:

(A) To antedate a reference or activity that qualifies as prior art under 35 U.S.C. **102(a)** and not under 35 U.S.C. **102(b)**, e.g., where the prior art date under 35 U.S.C. **102**(a) of the patent, the publication or activity used to reject the claim(s) is less than 1 year prior to applicant's or patent owner's effective filing date. >If the prior art reference under 35 U.S.C. **102**(a) is a U.S. patent or U.S. patent application publication, the reference may not be antedated if it claims the same patentable invention. See MPEP § **715.05** for a discussion of "same patentable invention."<

(B) To antedate a reference that qualifies as prior art under 35 U.S.C. **102(e)**, where the reference has a prior art date under 35 U.S.C. **102(e)** prior to applicant's effective filing date, and shows but does not claim the same patentable invention. See **MPEP § 715.05** for a discussion of "same patentable invention." See **MPEP § 706.02(a)** and **§ 2136** through § **2136.03** for an explanation of what references qualify as prior art under **35 U.S.C. 102(e)**.

## II. SITUATIONS WHERE 37 CFR 1.131 AFFIDAVITS OR DECLARATIONS ARE INAPPROPRIATE

An affidavit or declaration under **37 CFR 1.131** is not appropriate in the following situations:

(A) Where the reference publication date is more than 1 year prior to applicant's or patent owner's effective filing date. Such a reference is a "statutory bar" under **35 U.S.C. 102(b) as referenced in 37 CFR 1.131(a)(2). A reference that only qualifies as prior art under 35 U.S.C. 102(a) or (e) is not a "statutory bar."**

(B) Where the reference U.S. patent or U.S. patent application publication claims the same patentable invention. See **MPEP § 715.05** for a discussion of "same patentable invention" and MPEP *>**Chapter 2300**<. Where the reference patent and the application or patent under reexamination are commonly owned, and the inventions defined by the claims in the application or patent under reexamination and by the claims in the patent are not identical but are not patentably distinct, a terminal disclaimer and an affidavit or declaration under **37 CFR 1.130** may be used to overcome a rejection under **35 U.S.C. 103**. See **MPEP § 718**.

(C) Where the reference is a foreign patent for the same invention to applicant or patent owner or his or her legal representatives or assigns issued prior to the filing date of the domestic application or patent on an application filed more than 12 months prior to the filing date of the domestic application. See **35 U.S.C. 102(d)**.

(D) Where the effective filing date of applicant's or patent owner's parent application or an International Convention proved filing date is prior to the effective date of the reference, an affidavit or declaration under **37 CFR 1.131** is unnecessary because the reference should not have been used. See **MPEP § 201.11** to **§ 201.15**.

(E) Where the reference is a prior U.S. patent to the same entity, claiming the same invention. The question involved is one of "double patenting."

(F) Where the reference is the disclosure of a prior U.S. patent to the same party, not copending. The question is one of dedication to the public. Note however, *In re Gibbs*, 437 F.2d 486, 168 USPQ 578 (CCPA 1971) which substantially did away with the doctrine of dedication.

(G) Where applicant has clearly admitted on the record that subject matter relied on in the reference is prior art. In this case, that subject matter may be used as a basis for rejecting his or her claims and may not be overcome by an affidavit or declaration under **37 CFR 1.131**. *In re Hellsund*, 474 F.2d 1307, 177 USPQ 170 (CCPA 1973); *In re Garfinkel*, 437 F.2d 1000, 168 USPQ 659 (CCPA 1971); *In re Blout*, 333 F.2d 928, 142 USPQ 173 (CCPA 1964); *In re Lopresti*, 333 F.2d 932, 142 USPQ 177 (CCPA 1964).

(H) Where the subject matter relied upon is prior art under **35 U.S.C. 102(f)**.

(I) Where the subject matter relied on in the reference is prior art under **35 U.S.C. 102(g)**. **37 CFR 1.131** is designed to permit an applicant to overcome rejections based on references or activities which are not statutory bars, but which have dates prior to the effective filing date of the application but subsequent to the applicant's actual date of invention. However, when the subject matter relied on is also available under **35 U.S.C. 102(g)**, a **37 CFR 1.131** affidavit or declaration cannot be used to overcome it. *In re Bass* , 474 F.2d 1276, 177 USPQ 178 (CCPA 1973). This is because subject matter which is available under **35 U.S.C. 102(g)** by definition must have been made before the applicant made his or

MANUAL OF PATENT EXAMINING PROCEDURE

her invention. By contrast, references under **35 U.S.C. 102(a)** and (e), for example, merely establish a presumption that their subject matter was made before applicant's invention date. It is this presumption which may be rebutted by evidence submitted under **37 CFR 1.131**.

(J) Where the subject matter corresponding to a lost count in an interference is either prior art under **35 U.S.C. 102(g)** or barred to applicant by the doctrine of interference estoppel. *In re Bandel* , 348 F.2d 563, 146 USPQ 389 (CCPA 1965); *In re Kroekel* , 803 F.2d 705, 231 USPQ 640 (Fed. Cir. 1986). See also *In re Deckler* , 977 F.2d 1449, 24 USPQ2d 1448 (Fed. Cir. 1992) (Under the principles of *res judicata* and *collateral estoppel* , applicant was not entitled to claims that were patentably indistinguishable from the claim lost in interference even though the subject matter of the lost count was not available for use in an obviousness rejection under **35 U.S.C. 103**). But see *In re Zletz* , 893 F.2d 319, 13 USPQ2d 1320 (Fed. Cir. 1989) (A losing party to an interference, on showing that the invention now claimed is not "substantially the same" as that of the lost count, may employ the procedures of **37 CFR 1.131** to antedate the filing date of an interfering application). On the matter of when a "lost count" in an interference constitutes prior art under **35 U.S.C. 102(g)**, see *In re McKellin*, 529 F.2d 1342, 188 USPQ 428 (CCPA 1976) (A count is not prior art under **35 U.S.C. 102(g)** as to the loser of an interference where the count was lost based on the winner's foreign priority date). Similarly, where one party in an interference wins a count by establishing a date of invention in a NAFTA or WTO member country (see **35 U.S.C. 104**), the subject matter of that count is unpatentable to the other party by the doctrine of interference estoppel, even though it is not available as statutory prior art under **35 U.S.C. 102(g)**. See **MPEP § 2138.01** and **§ 2138.02**.

### III.   REFERENCE DATE TO BE OVERCOME

The date to be overcome under **37 CFR 1.131** is the effective date of the reference (i.e., the date on which the reference is available as prior art).

#### A.   U.S. Patents, U.S. Patent Application Publications, and International Application Publications

See **MPEP § 706.02(a)**, § **706.02(f)(1)**, and **§ 2136** through **§ 2136.03** for a detailed discussion of the effective date of a U.S. patent, U.S. patent application publication, or WIPO publication of an international application as a reference.

U.S. patents, U.S. patent application publications, and WIPO publications of international applications are available as prior art under **35 U.S.C. 102(e)** against all patent applications and patents under reexamination.

**The effective date of a domestic patent when used as a reference is not the foreign filing date to which the application for patent may have been entitled under **35 U.S.C. 119(a)** during examination. *In re Hilmer* , 359 F.2d 859, 149 USPQ 480 (CCPA 1966). Therefore, the date to be overcome under **37 CFR 1.131** is the effective U.S. filing date, not the foreign priority date. When a U.S. patent or U.S. patent application publication reference is entitled to claim the benefit of an earlier filed application, its effective filing date is determined under 35 U.S.C. **102**(e). See **MPEP § 706.02(a)**, § **706.02(f)(1)**, and **§ 2136** through **§ 2136.03**.

#### B.   Foreign Patents

See **MPEP § 2126** through **§ 2127** regarding date of availability of foreign patents as prior art.

#### C.   Printed Publications

A printed publication, including a published foreign patent application, is effective as of its publication date, not its date of receipt by the publisher. For additional information regarding effective dates of printed publications, see **MPEP § 2128** through **§ 2128.02**.

#### D.   Activities

An applicant may make an admission, or submit evidence of use of the invention or knowledge of the invention by others, or the examiner may have personal knowledge that the invention was used or known by others in this country. See **MPEP § 706.02(c)** and **§ 2133.03**. The effective date of the activity used to reject the claim(s) is the date the activity was first known to have occurred.

#### FORM PARAGRAPHS

Form paragraphs 7.57-7.64 may be used to respond to **37 CFR 1.131** affidavits.

¶ *7.57 Affidavit or Declaration Under 37 CFR 1.131: Ineffective- Heading*

The **[1]** filed on **[2]** under **37 CFR 1.131** has been considered but is ineffective to overcome the **[3]** reference.

**Examiner Note:**

1.   In bracket 1, insert either --affidavit-- or --declaration--.

2.   This form paragraph must be followed by one or more of form paragraphs 7.58 to 7.63 or a paragraph setting forth proper basis for the insufficiency, such as failure to establish acts performed in this country, or that the scope of the declaration or affidavit is not commensurate with the scope of the claim(s).

**

>

¶ *7.58  Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Claiming Same Invention*

The **[1]** reference is a U.S. patent or U.S. patent application publication of a pending or patented application that claims the rejected invention. An affidavit or declaration is inappropriate under 37 CFR **1.131**(a) when the reference is claiming the same patentable invention, see MPEP Chapter **2300**. If the reference and this application are not commonly owned, the reference can only be overcome by establishing priority of invention through interference proceedings. See MPEP Chapter **2300** for information on initiating interference proceedings. If the reference and this application are commonly owned, the reference may be disqualified as prior art by an affidavit or declaration under **37 CFR 1.130**. See **MPEP § 718**.

**Examiner Note:**

1.   If used to respond to the submission of an affidavit under **37 CFR 1.131**, this paragraph must be preceded by paragraph 7.57.

2.   This form paragraph may be used without form paragraph 7.57 when an affidavit has not yet been filed, and the examiner desires to notify applicant that the submission of an affidavit under **37 CFR 1.131** would be inappropriate.

<

¶ *7.59  Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Insufficient Evidence of Reduction to Practice Before Reference Date*

The evidence submitted is insufficient to establish a reduction to practice of the invention in this country or a NAFTA or WTO member country prior to the effective date of the **[1]** reference. **[2]**

**Examiner Note:**

1.   This form paragraph must be preceded by form paragraph 7.57.

2.   An explanation of the lack of showing of the alleged reduction to practice must be provided in bracket 2.

¶ *7.60  Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Reference Is a Statutory Bar*

The **[1]** reference is a statutory bar under **35 U.S.C. 102(b)** and thus cannot be overcome by an affidavit or declaration under **37 CFR 1.131**.

**Examiner Note:**

This form paragraph must be preceded by form paragraph 7.57.

¶ *7.61  Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Insufficient Evidence of Conception*

The evidence submitted is insufficient to establish a conception of the invention prior to the effective date of the **[1]** reference. While conception is the mental part of the inventive act, it must be capable of proof, such as by demonstrative evidence or by a complete disclosure to another. Conception is more than a vague idea of how to solve a problem. The requisite means themselves and their interaction must also be comprehended. See *Mergenthaler* v. *Scudder*, 1897 C.D. 724, 81 O.G. 1417 (D.C. Cir. 1897). **[2]**

**Examiner Note:**

1.   This form paragraph must be preceded by form paragraph 7.57.

2.   An explanation of the deficiency in the showing of conception must be presented in bracket 2.

3.   If the affidavit additionally fails to establish either diligence or a subsequent reduction to practice, this form paragraph should be followed by form paragraph 7.62 and/or 7.63. If either diligence or a reduction to practice is established, a statement to that effect should follow this paragraph.

¶ *7.62  Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Diligence Lacking*

The evidence submitted is insufficient to establish diligence from a date prior to the date of reduction to practice of the **[1]** reference to either a constructive reduction to practice or an actual reduction to practice. **[2]**

**Examiner Note:**

1.   This form paragraph must be preceded by form paragraph 7.57.

2.   If the affidavit additionally fails to establish conception, this paragraph must also be preceded by form paragraph 7.61. If the affidavit establishes conception, a statement to that effect should be added to this paragraph.

3.   If the affidavit additionally fails to establish an alleged reduction to practice prior to the application filing date, this paragraph must be followed by form paragraph 7.63. If such an alleged reduction to practice is

established, a statement to that effect should be added to this paragraph.

4. An explanation of the reasons for a holding of non-diligence must be provided in bracket 2.

5. See **MPEP § 715.07(a)**, Ex parte Merz, 75 USPQ 296 (Bd. App. 1947), which indicates that diligence is not required after reduction to practice.

¶ *7.63 Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Insufficient Evidence of Actual Reduction to Practice*

The evidence submitted is insufficient to establish applicant's alleged actual reduction to practice of the invention in this country or a NAFTA or WTO member country after the effective date of the **[1]** reference. **[2]**.

**Examiner Note:**

1. This form paragraph must be preceded by form paragraph 7.57.

2. If the alleged reduction to practice is prior to the effective date of the reference, do not use this paragraph. See form paragraph 7.59.

3. If the affidavit additionally fails to establish either conception or diligence, form paragraphs 7.61 and/or 7.62 should precede this paragraph. If either conception or diligence is established, a statement to that effect should be included after this paragraph.

4. An explanation of the lack of showing of the alleged reduction to practice must be given in bracket 2.

¶ *7.64 Affidavit or Declaration Under 37 CFR 1.131: Effective To Overcome Reference*

The **[1]** filed on **[2]** under **37 CFR 1.131** is sufficient to overcome the **[3]** reference.

**Examiner Note:**

1. In bracket 1, insert either --affidavit-- or --declaration--.

2. In bracket 2, insert the filing date of the affidavit or declaration.

3. In bracket 3, insert the name of the reference.

**715.01 37 CFR 1.131 Affidavits Versus 37 CFR 1.132 Affidavits**

The purpose of a **37 CFR 1.131** affidavit or declaration is to overcome a prior art rejection by proving invention of the claimed subject matter by applicant prior to the effective date of the reference or activity relied upon in the rejection.

In some situations, an applicant may, alternatively, be able to overcome prior art rejections relying on references or activities which are available as prior art under **35 U.S.C. 102(a)** or references which are available as prior art under **35 U.S.C. 102(e)** by proving that the subject matter relied upon in the reference or activity was applicant's own invention.

Similarly, where the reference relied upon in a **35 U.S.C. 103** rejection qualifies as prior art only under **35 U.S.C. 102(f)** or (g), or, in an application filed on or after November 29, 1999, under **35 U.S.C. 102(e)**, applicant may be able to overcome this rejection by proving that the subject matter relied upon and the claimed invention were commonly owned or subject to common assignment at the time the later invention was made. See **MPEP § 706.02(l)(1)** through **§ 706.02(l)(3)**.

**715.01(a) Reference Is a Joint Patent or Published Application to Applicant and Another [R-2]**

When subject matter, disclosed but not claimed in a patent or application publication filed jointly by S and another, is claimed in a later application filed by S, the joint patent or application publication is a valid reference >under 35 U.S.C. **102**(a) or (e)< unless overcome by affidavit or declaration under **37 CFR 1.131** or an unequivocal declaration under **37 CFR 1.132** by S that he/she conceived or invented the subject matter disclosed in the patent or application publication and relied on in the rejection. *In re DeBaun*, 687 F.2d 459, 214 USPQ 933 (CCPA 1982). See **MPEP § 716.10** for a discussion of the use of **37 CFR 1.132** affidavits or declarations to overcome rejections by establishing that the subject matter relied on in the patent or application publication was the invention of the applicant. Disclaimer by the other patentee or applicant of the application publication should not be required but, if submitted, may be accepted by the examiner.

Although affidavits or declarations submitted for the purpose of establishing that the reference discloses applicant's invention are properly filed under **37 CFR 1.132**, rather than **37 CFR 1.131**, such affidavits submitted improperly under **37 CFR 1.131** will be considered as though they were filed under **37 CFR 1.132** to traverse a ground of rejection. *In re Facius*, 408 F.2d 1396, 161 USPQ 294 (CCPA 1969).

**715.01(b) Reference and Application Have Common Assignee**

The mere fact that the reference patent or application publication which shows but does not claim certain subject

matter and the application which claims it are owned by the same assignee does not avoid the necessity of filing an affidavit or declaration under **37 CFR 1.131**, in the absence of a showing under **37 CFR 1.132** that the patentee derived the subject matter relied on from the applicant (**MPEP § 716.10**). The common assignee does not obtain any rights in this regard by virtue of common ownership which he or she would not have in the absence of common ownership. *In re Frilette*, 412 F.2d 269, 162 USPQ 163 (CCPA 1969); *Pierce v. Watson*, 275 F.2d 890, 124 USPQ 356 (D.C. Cir. 1960); *In re Beck*, 155 F.2d 398, 69 USPQ 520 (CCPA 1946). Where, however, a rejection is applied under **35 U.S.C. 102(f)**/103 or **35 U.S.C. 102(g)**/**103**, or, in an application filed on or after November 29, 1999, under 35 U.S.C. **102**(e)/**103** using the reference, a showing that the invention was commonly owned, or subject to an obligation of assignment to the same person, at the time the later invention was made would preclude such a rejection or be sufficient to overcome such a rejection. See MPEP § **706.02**(l) and § **706.02**(l)(1).

### 715.01(c) Reference Is Publication of Applicant's Own Invention [R-2]

Unless it is a statutory bar, a rejection based on a publication may be overcome by a showing that it was published either by applicant himself/herself or on his/her behalf. Since such a showing is not made to show a date of invention by applicant prior to the date of the reference under **37 CFR 1.131**, the limitation in **35 U.S.C. 104** and in **37 CFR 1.131(a)**(1) that only acts which occurred in this country or in a NAFTA or WTO member country may be relied on to establish a date of invention is not applicable. *Ex parte Lemieux* , 115 USPQ 148, 1957 C.D. 47, 725 O.G. 4 (Bd. App. 1957); *Ex parte Powell,* 1938 C.D. 15, 489 O.G. 231 (Bd. App. 1938). See **MPEP § 716.10** regarding **37 CFR 1.132** affidavits submitted to show that the reference is a publication of applicant's own invention.

>

### I. < CO-AUTHORSHIP

Where the applicant is one of the co-authors of a publication cited against his or her application, he or she may overcome the rejection by filing an affidavit or declaration under **37 CFR 1.131**. Alternatively, the applicant may overcome the rejection by filing a specific affidavit or declaration under **37 CFR 1.132** establishing that the article is describing applicant's own work. An affidavit or declaration by applicant alone indicating that applicant is the sole inventor and that the others were merely working under his or her direction is sufficient to remove the publication as a reference under **35 U.S.C.**

**102(a)**. *In re Katz*, 687 F.2d 450, 215 USPQ 14 (CCPA 1982).

>

### II. < DERIVATION

When the unclaimed subject matter of a patent, application publication, or other publication is applicant's own invention, a rejection>, which is not a statutory bar,< on that patent or publication may be removed by submission of evidence establishing the fact that the patentee, applicant of the published application, or author derived his or her knowledge of the relevant subject matter from applicant. Moreover applicant must further show that he or she made the invention upon which the relevant disclosure in the patent, application publication, or other publication is based. *In re Mathews*, 408 F.2d 1393, 161 USPQ 276 (CCPA 1969); *In re Facius*, 408 F.2d 1396, 161 USPQ 294 (CCPA 1969).

### 715.01(d) Activities Applied Against the Claims

Unless it is a statutory bar, a rejection based on an activity showing that the claimed invention was used or known prior to the filing date of the application may be overcome by an affidavit or declaration under **37 CFR 1.131** establishing a date of invention prior to the date of the activity. Alternatively, the applicant(s) may overcome the rejection by filing a specific affidavit or declaration under **37 CFR 1.132** showing that the activity was performed by the applicant(s).

### 715.02 How Much of the Claimed Invention Must Be Shown, Including the General Rule as to Generic Claims [R-6]

The **37 CFR 1.131** affidavit or declaration must establish possession of either the whole invention claimed or something falling within the claim (such as a species of a claimed genus), in the sense that the claim as a whole reads on it. *In re Tanczyn* , 347 F.2d 830, 146 USPQ 298 (CCPA 1965) (Where applicant claims an alloy comprising both nitrogen and molybdenum, an affidavit showing applicant made an alloy comprising nitrogen but not molybdenum is not sufficient under **37 CFR 1.131** to overcome a rejection under **35 U.S.C. 103** based on the combined teachings of one reference disclosing an alloy comprising nitrogen but not molybdenum and a second reference disclosing an alloy comprising molybdenum but not nitrogen. Note, however, where the differences between the claimed invention and the disclosure of the reference(s) are so small as to render the claims obvious over the reference(s), an affidavit or declaration under **37 CFR 1.131** is required to show no more than the reference

shows. *In re Stryker*, 435 F.2d 1340, 168 USPQ 372 (CCPA 1971). In other words, where the examiner, in rejecting a claim under **35 U.S.C. 103**, has treated a claim limitation as being an obvious feature or modification of the disclosure of the reference(s) relied upon, without citation of a reference which teaches such feature or modification, a **37 CFR 1.131** affidavit or declaration may be sufficient to overcome the rejection even if it does not show such feature or modification.

Further, a **37 CFR 1.131** affidavit is not insufficient merely because it does not show the identical disclosure of the reference(s) or the identical subject matter involved in the activity relied upon. If the affidavit contains facts showing a completion of the invention commensurate with the extent of the invention as claimed is shown in the reference or activity, the affidavit or declaration is sufficient, whether or not it is a showing of the identical disclosure of the reference or the identical subject matter involved in the activity. See *In re Wakefield*, 422 F.2d 897, 164 USPQ 636 (CCPA 1970).

Even if applicant's **37 CFR 1.131** affidavit is not fully commensurate with the rejected claim, the applicant can still overcome the rejection by showing that the differences between the claimed invention and the showing under **37 CFR 1.131** would have been obvious to one of ordinary skill in the art, in view of applicant's **37 CFR 1.131** evidence, prior to the effective date of the reference(s) or the activity. Such evidence is sufficient because applicant's possession of what is shown carries with it possession of variations and adaptations which would have been obvious, at the same time, to one of ordinary skill in the art. However, the affidavit or declaration showing must still establish possession of the invention (i.e., the basic inventive concept) and not just of what one reference (in a combination of applied references) happens to show, if that reference does not itself teach the basic inventive concept. *In re Spiller*, 500 F.2d 1170, 182 USPQ 614 (CCPA 1974) (Claimed invention was use of electrostatic forces to adhere dry starch particles to a wet paper web on the Fourdrinier wire of a paper-making machine. **37 CFR 1.131** affidavit established use of electrostatic forces to adhere starch particles to wet blotting paper moved over a fluidized bed of starch particles prior to the applied reference date. Affidavit was sufficient in view of prior art reference showing that deposition of dry coatings directly on wet webs on the Fourdrinier wire of a paper-making machine was well known in the art prior to the date of the applied reference. The affidavit established possession of the basic invention, i.e., use of electrostatic forces to adhere starch to wet paper.).

# I.  SWEARING BEHIND ONE OF A PLURALITY OF COMBINED REFERENCES

Applicant may overcome a 35 U.S.C. **103** rejection based on a combination of references by showing completion of the invention by applicant prior to the effective date of any of the references; applicant need not antedate the reference with the earliest filing date. However, as discussed above, applicant's **37 CFR 1.131** affidavit must show possession of either the whole invention as claimed or something falling within the claim(s) prior to the effective date of the reference being antedated; it is not enough merely to show possession of what the reference happens to show if the reference does not teach the basic inventive concept.

Where a claim has been rejected under **35 U.S.C. 103** based on Reference A in view of Reference B, with the effective date of secondary Reference B being earlier than that of Reference A, the applicant can rely on the teachings of Reference B to show that the differences between what is shown in his or her **37 CFR 1.131** affidavit or declaration and the claimed invention would have been obvious to one of ordinary skill in the art prior to the date of Reference A. However, the **37 CFR 1.131** affidavit or declaration must still establish possession of the claimed invention, not just what Reference A shows, if Reference A does not teach the basic inventive concept.

# II.  GENERAL RULE AS TO GENERIC CLAIMS

A reference or activity applied against generic claims may (in most cases) be antedated as to such claims by an affidavit or declaration under **37 CFR 1.131** showing completion of the invention of only a single species, within the genus, prior to the effective date of the reference or activity (assuming, of course, that the reference or activity is not a statutory bar or a patent, or an application publication, claiming the same invention). See *Ex parte Biesecker*, 144 USPQ 129 (Bd. App. 1964). See, also, *In re Fong*, 288 F.2d 932, 129 USPQ 264 (CCPA 1961); *In re *>Dafano<*, 392 F.2d 280, 157 USPQ 192 (CCPA 1968) (distinguishing chemical species of genus compounds from embodiments of a single invention). See, however, **MPEP § 715.03** for practice relative to cases in unpredictable arts.

## 715.03  Genus-Species, Practice Relative to Cases Where Predictability Is in Question [R-2]

Where generic claims have been rejected on a reference or activity which discloses a species not antedated by the affidavit or declaration, the rejection will not ordinarily be withdrawn, subject to the rules set forth below, unless

the applicant is able to establish that he or she was in possession of the generic invention prior to the effective date of the reference or activity. In other words, the affidavit or declaration under **37 CFR 1.131** must show as much as the minimum disclosure required by a patent specification to furnish support for a generic claim.

>

## I. < REFERENCE OR ACTIVITY DISCLOSES SPECIES

### A. Species Claim

Where the claim under rejection recites a species and the reference or activity discloses the claimed species, the rejection can be overcome under **37 CFR 1.131** directly by showing prior completion of the claimed species or indirectly by a showing of prior completion of a different species coupled with a showing that the claimed species would have been an obvious modification of the species completed by applicant. See *In re Spiller*, 500 F.2d 1170, 182 USPQ 614 (CCPA 1974).

### B. Genus Claim

The principle is well established that the disclosure of a species in a cited reference is sufficient to prevent a later applicant from obtaining a "generic claim." *In re Gosteli*, 872 F.2d 1008, 10 USPQ2d 1614 (Fed. Cir. 1989); *In re Slayter*, 276 F.2d 408, 125 USPQ 345 (CCPA 1960).

Where the only pertinent disclosure in the reference or activity is a single species of the claimed genus, the applicant can overcome the rejection directly under **37 CFR 1.131** by showing prior possession of the species disclosed in the reference or activity. On the other hand, a reference or activity which discloses several species of a claimed genus can be overcome directly under **37 CFR 1.131** only by a showing that the applicant completed, prior to the date of the reference or activity, all of the species shown in the reference. *In re Stempel*, 241 F.2d 755, 113 USPQ 77 (CCPA 1957).

Proof of prior completion of a species different from the species of the reference or activity will be sufficient to overcome a reference indirectly under **37 CFR 1.131** if the species shown in the reference or activity would have been obvious in view of the species shown to have been made by the applicant. *In re Clarke*, 356 F.2d 987, 148 USPQ 665 (CCPA 1966); *In re Plumb*, 470 F.2d 1403, 176 USPQ 323 (CCPA 1973); *In re Hostettler*, 356 F.2d 562, 148 USPQ 514 (CCPA 1966). Alternatively, if the applicant cannot show possession of the species of the reference or activity in this manner, the applicant may be

able to antedate the reference or activity indirectly by, for example, showing prior completion of one or more species which put him or her in possession of the claimed genus prior to the reference's or activity's date. The test is whether the species completed by applicant prior to the reference date or the activity's date provided an adequate basis for inferring that the invention has generic applicability. *In re Plumb*, 470 F.2d 1403, 176 USPQ 323 (CCPA 1973); *In re Rainer*, 390 F.2d 771, 156 USPQ 334 (CCPA 1968); *In re Clarke*, 356 F.2d 987, 148 USPQ 665 (CCPA 1966); *In re Shokal*, 242 F.2d 771, 113 USPQ 283 (CCPA 1957).

It is not necessary for the affidavit evidence to show that the applicant viewed his or her invention as encompassing more than the species actually made. The test is whether the facts set out in the affidavit are such as would persuade one skilled in the art that the applicant possessed so much of the invention as is shown in the reference or activity. *In re Schaub*, 537 F.2d 509, 190 USPQ 324 (CCPA 1976).

### C. Species Versus Embodiments

References or activities which disclose one or more embodiments of a single claimed invention, as opposed to species of a claimed genus, can be overcome by filing a **37 CFR 1.131** affidavit showing prior completion of a single embodiment of the invention, whether it is the same or a different embodiment from that disclosed in the reference or activity. See *In re Fong* , 288 F.2d 932, 129 USPQ 264 (CCPA 1961) (Where applicant discloses and claims a washing solution comprising a detergent and polyvinylpyrrolidone (PVP), with no criticality alleged as to the particular detergent used, the PVP being used as a soil-suspending agent to prevent the redeposition of the soil removed, the invention was viewed as the use of PVP as a soil-suspending agent in washing with a detergent. The disclosure in the reference of the use of PVP with two detergents, both of which differed from that shown in applicant's **37 CFR 1.131** affidavit, was considered a disclosure of different embodiments of a single invention, rather than species of a claimed genus); *In re Defano*, 392 F.2d 280, 157 USPQ 192 (CCPA 1968).

>

## II. < REFERENCE OR ACTIVITY DISCLOSES CLAIMED GENUS

In general, where the reference or activity discloses the claimed genus, a showing of completion of a single species within the genus is sufficient to antedate the reference or activity under **37 CFR 1.131**. *Ex parte Biesecker*, 144 USPQ 129 (Bd. App. 1964).

In cases where predictability is in question, on the other hand, a showing of prior completion of one or a few species within the disclosed genus is generally not sufficient to overcome the reference or activity. *In re Shokal*, 242 F.2d 771, 113 USPQ 283 (CCPA 1957). The test is whether the species completed by applicant prior to the reference date or the date of the activity provided an adequate basis for inferring that the invention has generic applicability. *In re Mantell,* 454 F.2d 1398, 172 USPQ 530 (CCPA 1973); *In re Rainer*, 390 F.2d 771, 156 USPQ 334 (CCPA 1968); *In re DeFano*, 392 F.2d 280, 157 USPQ 192 (CCPA 1968); *In re Clarke*, 356 F.2d 987, 148 USPQ 665 (CCPA 1965). In the case of a small genus such as the halogens, which consists of four species, a reduction to practice of three, or perhaps even two, species might show possession of the generic invention, while in the case of a genus comprising hundreds of species, reduction to practice of a considerably larger number of species would be necessary. *In re Shokal, supra.*

It is not necessary for the affidavit evidence to show that the applicant viewed his or her invention as encompassing more than the species he or she actually made. The test is whether the facts set out in the affidavit are such as would persuade one skilled in the art that the applicant possessed so much of the invention as is shown in the reference. *In re Schaub*, 537 F. 509, 190 USPQ 324 (CCPA 1976).

### 715.04 Who May Make Affidavit or Declaration; Formal Requirements of Affidavits and Declarations [R-9]

#### I. WHO MAY MAKE AFFIDAVIT OR DECLARATION

The following parties may make an affidavit or declaration under **37 CFR 1.131**:

(A) All the inventors of the subject matter claimed.

(B) An affidavit or declaration by less than all named inventors of an application is accepted where it is shown that less than all named inventors of an application invented the subject matter of the claim or claims under rejection. For example, one of two joint inventors is accepted where it is shown that one of the joint inventors is the sole inventor of the claim or claims under rejection.

(C) If a petition under 37 CFR **1.47** was granted or the application was accepted under 37 CFR **1.42** or 1.43, the affidavit or declaration may be signed by the 37 CFR **1.47** applicant or the legal representative, where appropriate.

(D) The assignee or other party in interest when it is not possible to produce the affidavit or declaration of the inventor. *Ex parte Foster*, 1903 C.D. 213, 105 O.G. 261 (Comm'r Pat. 1903).

>

(E) The owner of the patent under reexamination.<

Affidavits or declarations to overcome a rejection of a claim or claims must be made by the inventor or inventors of the subject matter of the rejected claim(s), a party qualified under **37 CFR 1.42**, **1.43**, or **1.47**, * the assignee or other party in interest when it is not possible to produce the affidavit or declaration of the inventor(s)>, or the owner of the patent under reexamination<. Thus, where all of the named inventors of a pending application are not inventors of every claim of the application, any affidavit under **37 CFR 1.131** could be signed by only the inventor(s) of the subject matter of the rejected claims.

Where one or more of the named inventors of the subject matter of the rejected claim(s) (who had originally signed the oath or declaration for patent application under 37 CFR **1.63**) is now unavailable to sign an affidavit or declaration under 37 CFR **1.131**, the affidavit or declaration under 37 CFR **1.131** may be signed by the remaining joint inventors provided a petition under 37 CFR **1.183** requesting waiver of the signature of the unavailable inventor be submitted with the affidavit or declaration under 37 CFR **1.131**. Proof that the non-signing inventor is unavailable or cannot be found similar to the proof required for a petition under 37 CFR **1.47** must be submitted with the petition under 37 CFR **1.183** (see MPEP § **409.03(d)**). Petitions under 37 CFR **1.183** are decided by the Office of Petitions (see MPEP § **1002.02(b)**).

#### II. FORMAL REQUIREMENTS OF AFFIDAVITS AND DECLARATIONS

An affidavit is a statement in writing made under oath before a notary public, magistrate, or officer authorized to administer oaths. See **MPEP § 604** through **§ 604.06** for additional information regarding formal requirements of affidavits.

**37 CFR 1.68** permits a declaration to be used instead of an affidavit. The declaration must include an acknowledgment by the declarant that willful false statements and the like are punishable by fine or imprisonment, or both (18 U.S.C. 1001) and may jeopardize the validity of the application or any patent issuing thereon. The declarant must set forth in the body of the declaration that all statements made of the

declarant's own knowledge are true and that all statements made on information and belief are believed to be true.

### 715.05  U.S. Patent or Application Publication Claiming Same Invention [R-5]

When the reference in question is a noncommonly owned U.S. patent or patent application publication claiming the same invention as applicant and its publication date is less than 1 year prior to the presentation of claims to that invention in the application being examined, applicant's remedy, if any, must be by way of **37 CFR 41.202** instead of **37 CFR 1.131**. If the reference is claiming the same invention as the application and its publication date is less than 1 year prior to the presentation of claims to that invention in the application, this fact should be noted in the Office action. The reference can then be overcome only by way of interference. See MPEP **Chapter 2300**. If the reference is a U.S. patent which claims the same invention as the application and its issue date is more than 1 year prior to the presentation of claims to that invention in the application, a rejection of the claims of the application under **35 U.S.C. 135(b)**(1) should be made. See *In re McGrew*, 120 F.3d 1236, 1238, 43 USPQ2d 1632, 1635 (Fed. Cir. 1997) (The court holding that application of **35 U.S.C. 135(b)** is not limited to *inter partes* interference proceedings, but may be used as a basis for *ex parte* rejections.). The expression "prior to one year from the date on which the patent was granted" in 35 U.S.C. **135**(b) includes the one-year anniversary date of the issuance of a patent. See *Switzer v. Sockman*, 333 F.2d 935, 142 USPQ 226 (CCPA 1964).

If the reference is a U.S. application publication under 35 U.S.C. **122**(b), or a WIPO publication on an international application filed on or after November 29, 2000, which claims the same invention as the application being examined and its publication date is more than 1 year prior to the presentation of claims to that invention in the application being examined, a rejection of the claims of the application (being examined) under 35 U.S.C. **135**(b)(2) should be made only if the application being examined was filed after the publication date of the reference.

Form paragraph 23.14 or 23.14.01 may be used when making a rejection under **35 U.S.C. 135(b)**.

**

>

¶ *23.14  Claims Not Copied Within One Year of Patent Issue Date*

Claim **[l]** rejected under **35 U.S.C. 135(b)(1)** as not being made prior to one year from the date on which U.S. Patent

No. **[2]** was granted. See *In re McGrew*, 120 F.3d 1236, 1238, 43 USPQ2d 1632, 1635 (Fed. Cir. 1997) where the Court held that **35 U.S.C. 135(b)** may be used as a basis for *ex parte* rejections.

¶ *23.14.01  Claims Not Copied Within One Year Of Application Publication Date*

Claim **[l]** rejected under **35 U.S.C. 135(b)(2)** as not being made prior to one year from the date on which **[2]** was published under **35 U.S.C. 122(b)**. See *In re McGrew*, 120 F.3d 1236, 1238, 43 USPQ2d 1632, 1635 (Fed. Cir. 1997) where the Court held that **35 U.S.C. 135(b)** may be used as a basis for *ex parte* rejections.

**Examiner Note:**

1.  In bracket 2, insert the publication number of the published application.

2.  This form paragraph should only be used if the application being examined was filed after the publication date of the published application.

<

Where the reference and the application or patent under reexamination are commonly owned, and the inventions defined by the claims in the application or patent under reexamination and by the claims in the reference are not identical but are not patentably distinct, a terminal disclaimer and an affidavit or declaration under **37 CFR 1.130** may be used to overcome a rejection under **35 U.S.C. 103**. See **MPEP § 718**.

A **37 CFR 1.131** affidavit is ineffective to overcome a United States patent or patent application publication, not only where there is a verbatim correspondence between claims of the application and of the patent, but also where there is no patentable distinction between the respective claims. *In re Clark*, 457 F.2d 1004, 173 USPQ 359 (CCPA 1972); *In re Hidy*, 303 F.2d 954, 133 USPQ 650 (CCPA 1962); *In re Teague*, 254 F.2d 145, 117 USPQ 284 (CCPA 1958); *In re Ward*, 236 F.2d 428, 111 USPQ 101 (CCPA 1956); *In re Wagenhorst*, 62 F.2d 831, 16 USPQ 126 (CCPA 1933).

If the application (or patent under reexamination) and the domestic reference contain claims which are identical, or which are not patentably distinct, then the application and patent are claiming the "same patentable invention."

As provided in **37 CFR 41.203(a)**, an interference exists if the subject matter of a claim of one party would, if prior art, have anticipated or rendered obvious the subject matter of a claim of the opposing party and vice versa. An applicant who is claiming an invention which is identical to, or obvious in view of, the invention as

claimed in a domestic patent or patent application publication cannot employ an affidavit under **37 CFR 1.131** as a means for avoiding an interference with the reference. To allow an applicant to do so would result in the issuance of two patents to the same invention.

Since **37 CFR 1.131** defines "same patentable invention" in the same way as the interference rules (**37 CFR 41.203(a)**), the USPTO cannot prevent an applicant from overcoming a reference by a **37 CFR 1.131** affidavit or declaration on the grounds that the reference claims applicant's invention and, at the same time, deny applicant an interference on the grounds that the claims of the application and those of the reference are not for substantially the same invention. See *In re Eickmeyer* , 602 F.2d 974, 202 USPQ 655 (CCPA 1979). Where, in denying an applicant's motion in interference to substitute a broader count, it is held that the limitation to be deleted was material for the opponent patentee, this constitutes a holding that the proposed count is for an invention which is not the "same patentable invention" claimed by the reference. Therefore, the applicant may file an affidavit or declaration under **37 CFR 1.131** to overcome a prior art rejection based on the reference. *Adler v. Kluver*, 159 USPQ 511 (Bd. Pat. Int. 1968).

Form paragraph 7.58 (reproduced in **MPEP § 715**) may be used to note such a situation in the Office action.

### 715.07  Facts and Documentary Evidence [R-3]

#### I.  GENERAL REQUIREMENTS

The essential thing to be shown under **37 CFR 1.131** is priority of invention and this may be done by any satisfactory evidence of the fact. FACTS, not conclusions, must be alleged. Evidence in the form of exhibits may accompany the affidavit or declaration. Each exhibit relied upon should be specifically referred to in the affidavit or declaration, in terms of what it is relied upon to show. For example, the allegations of fact might be supported by submitting as evidence one or more of the following:

(A)  attached sketches;

(B)  attached blueprints;

(C)  attached photographs;

(D)  attached reproductions of notebook entries;

(E)  an accompanying model;

(F)  attached supporting statements by witnesses, where verbal disclosures are the evidence relied upon. *Ex parte Ovshinsky*, 10 USPQ2d 1075 (Bd. Pat. App. & Inter. 1989);

(G)  testimony given in an interference. Where interference testimony is used, the applicant must point out which parts of the testimony are being relied on;

examiners cannot be expected to search the entire interference record for the evidence. *Ex parte Homan*, 1905 C.D. 288 (Comm'r Pat. 1905);

(H)  Disclosure documents (MPEP § 1706) may be used as documentary evidence of conception.

Exhibits and models must comply with the requirements of **37 CFR 1.91** to be entered into an application file. See also **MPEP § 715.07(d)**.

A general allegation that the invention was completed prior to the date of the reference is not sufficient. *Ex parte Saunders* , 1883 C.D. 23, 23 O.G. 1224 (Comm'r Pat. 1883). Similarly, a declaration by the inventor to the effect that his or her invention was conceived or reduced to practice prior to the reference date, without a statement of facts demonstrating the correctness of this conclusion, is insufficient to satisfy **37 CFR 1.131**.

**37 CFR 1.131(b)** requires that original exhibits of drawings or records, or photocopies thereof, accompany and form part of the affidavit or declaration or their absence satisfactorily explained. In  *Ex parte Donovan*, 1890 C.D. 109, 52 O.G. 309 (Comm'r Pat. 1890) the court stated

> If the applicant made sketches he should so state, and produce and describe them; if the sketches were made and lost, and their contents remembered, they should be reproduced and furnished in place of the originals. The same course should be pursued if the disclosure was by means of models. If neither sketches nor models are relied upon, but it is claimed that verbal disclosures, sufficiently clear to indicate definite conception of the invention, were made the witness should state as nearly as possible the language used in imparting knowledge of the invention to others.

However, when reviewing a **37 CFR 1.131** affidavit or declaration, the examiner must consider all of the evidence presented in its entirety, including the affidavits or declarations and all accompanying exhibits, records and "notes." An accompanying exhibit need not support all claimed limitations, provided that any missing limitation is supported by the declaration itself. *Ex parte Ovshinsky*, 10 USPQ2d 1075 (Bd. Pat. App. & Inter. 1989).

The affidavit or declaration and exhibits must clearly explain which facts or data applicant is relying on to show completion of his or her invention prior to the particular date. Vague and general statements in broad terms about what the exhibits describe along with a general assertion that the exhibits describe a reduction to practice "amounts essentially to mere pleading, unsupported by proof or a

showing of facts" and, thus, does not satisfy the requirements of **37 CFR 1.131(b)**. *In re Borkowski*, 505 F.2d 713, 184 USPQ 29 (CCPA 1974). Applicant must give a clear explanation of the exhibits pointing out exactly what facts are established and relied on by applicant. 505 F.2d at 718-19, 184 USPQ at 33. See also *In re Harry*, 333 F.2d 920, 142 USPQ 164 (CCPA 1964) (Affidavit "asserts that facts exist but does not tell what they are or when they occurred.").

## II. ESTABLISHMENT OF DATES

If the dates of the exhibits have been removed or blocked off, the matter of dates can be taken care of in the body of the oath or declaration.

When alleging that conception or a reduction to practice occurred prior to the effective date of the reference, the dates in the oath or declaration may be the actual dates or, if the applicant or patent owner does not desire to disclose his or her actual dates, he or she may merely allege that the acts referred to occurred prior to a specified date. However, the actual dates of acts relied on to establish diligence must be provided. See **MPEP § 715.07(a)** regarding the diligence requirement.

## III. THREE WAYS TO SHOW PRIOR INVENTION

The affidavit or declaration must state FACTS and produce such documentary evidence and exhibits in support thereof as are available to show conception and completion of invention in this country or in a NAFTA or WTO member country (**MPEP § 715.07(c)**), at least the conception being at a date prior to the effective date of the reference. Where there has not been reduction to practice prior to the date of the reference, the applicant or patent owner must also show diligence in the completion of his or her invention from a time just prior to the date of the reference continuously up to the date of an actual reduction to practice or up to the date of filing his or her application (filing constitutes a constructive reduction to practice, **37 CFR 1.131**).

As discussed above, **37 CFR 1.131(b)** provides three ways in which an applicant can establish prior invention of the claimed subject matter. The showing of facts must be sufficient to show:

(A) >(actual)< reduction to practice of the invention prior to the effective date of the reference; or

(B) conception of the invention prior to the effective date of the reference coupled with due diligence from prior to the reference date to a subsequent (actual) reduction to practice; or

(C) conception of the invention prior to the effective date of the reference coupled with due diligence from prior to the reference date to the filing date of the application (constructive reduction to practice).

A conception of an invention, though evidenced by disclosure, drawings, and even a model, is not a complete invention under the patent laws, and confers no rights on an inventor, and has no effect on a subsequently granted patent to another, UNLESS THE INVENTOR FOLLOWS IT WITH REASONABLE DILIGENCE BY SOME OTHER ACT, such as an actual reduction to practice or filing an application for a patent. *Automatic Weighing Mach. Co. v. Pneumatic Scale Corp.,* 166 F.2d 288, 1909 C.D. 498, 139 O.G. 991 (1st Cir. 1909).

Conception is the mental part of the inventive act, but it must be capable of proof, as by drawings, complete disclosure to another person, etc. In *Mergenthaler v. Scudder*, 1897 C.D. 724, 81 O.G. 1417 (D.C. Cir. 1897), it was established that conception is more than a mere vague idea of how to solve a problem; the means themselves and their interaction must be comprehended also.

In general, proof of actual reduction to practice requires a showing that the apparatus actually existed and worked for its intended purpose. However, "there are some devices so simple that a mere construction of them is all that is necessary to constitute reduction to practice." *In re Asahi/America Inc.*, 68 F.3d 442, 37 USPQ2d 1204, 1206 (Fed. Cir. 1995) (Citing *Newkirk v. Lulejian*, 825 F.2d 1581, 3 USPQ2d 1793 (Fed. Cir. 1987) and *Sachs v. Wadsworth*, 48 F.2d 928, 929, 9 USPQ 252, 253 (CCPA 1931). The claimed restraint coupling held to be so simple a device that mere construction of it was sufficient to constitute reduction to practice. Photographs, coupled with articles and a technical report describing the coupling in detail were sufficient to show reduction to practice.).

The facts to be established under **37 CFR 1.131** are similar to those to be proved in interference. The difference lies in the way in which the evidence is presented. If applicant disagrees with a holding that the facts are insufficient to overcome the rejection, his or her remedy is by appeal from the continued rejection.

See **MPEP § 2138.04** through **§ 2138.06** for a detailed discussion of the concepts of conception, reasonable diligence, and reduction to practice.

For the most part, the terms "conception," "reasonable diligence," and "reduction to practice" have the same meanings under **37 CFR 1.131** as they have in interference proceedings. However, in *In re Eickmeyer*,

602 F.2d 974, 202 USPQ 655 (CCPA 1979), the court stated:

> The purpose of filing a [37 CFR 1.]131 affidavit is not to demonstrate prior invention, *per se*, but merely to antedate the effective date of a reference. See *In re Moore*, 58 CCPA 1340, 444 F.2d 572, 170 USPQ 260 (1971). Although the test for sufficiency of an affidavit under Rule 131(b) parallels that for determining priority of invention in an interference under **35 U.S.C. 102(g)**, it does not necessarily follow that Rule 131 practice is controlled by interference law. To the contrary, "[t]he parallel to interference practice found in Rule 131(b) should be recognized as one of convenience rather than necessity." *Id.* at 1353, 444 F.2d at 580, 170 USPQ at 267. Thus, "the 'conception' and 'reduction to practice' which must be established under the rule need not be the same as what is required in the 'interference' sense of those terms." *Id.*; accord, *In re Borkowski*, 505 F.2d 713, 718-19, 184 USPQ 29, 33 (CCPA 1974).

One difference is that in interference practice a reduction to practice requires a proof that a utility was known, whereas under **37 CFR 1.131** practice, proof of a utility must be shown only if the reference discloses a utility. *In re Wilkinson*, 304 F.2d 673, 134 USPQ 171 (CCPA 1962); *In re Moore*, 444 F.2d 572, 170 USPQ 260 (CCPA 1971). Where proof of utility is required, whether or not test results are required to establish the utility of the subject matter in question depends on the facts of each case. The ultimate issue is whether the evidence is such that one of ordinary skill in the art would be satisfied to a reasonable certainty that the subject matter necessary to antedate the reference possessed the alleged utility. *In re Blake*, 358 F.2d 750, 149 USPQ 217 (CCPA 1966). Also, in interference practice, conception, reasonable diligence, and reduction to practice require corroboration, whereas averments made in a **37 CFR 1.131** affidavit or declaration do not require corroboration; an applicant may stand on his or her own affidavit or declaration if he or she so elects. *Ex parte Hook*, 102 USPQ 130 (Bd. App. 1953).

Form paragraph 7.59 or 7.63 (both reproduced in **MPEP § 715**) may be used where insufficient evidence is included in a **37 CFR 1.131** affidavit.

### 715.07(a)  Diligence

Where conception occurs prior to the date of the reference, but reduction to practice is afterward, it is not enough merely to allege that applicant or patent owner had been diligent. *Ex parte Hunter*, 1889 C.D. 218, 49 O.G. 733 (Comm'r Pat. 1889). Rather, applicant must show evidence of facts establishing diligence.

In determining the sufficiency of a **37 CFR 1.131** affidavit or declaration, diligence need not be considered unless conception of the invention prior to the effective date is clearly established, since diligence comes into question only after prior conception is established. *Ex parte Kantor*, 177 USPQ 455 (Bd. App. 1958).

What is meant by diligence is brought out in *Christie v. Seybold*, 1893 C.D. 515, 64 O.G. 1650 (6th Cir. 1893). In patent law, an inventor is either diligent at a given time or he is not diligent; there are no degrees of diligence. An applicant may be diligent within the meaning of the patent law when he or she is doing nothing, if his or her lack of activity is excused. Note, however, that the record must set forth an explanation or excuse for the inactivity; the USPTO or courts will not speculate on possible explanations for delay or inactivity. See *In re Nelson*, 420 F.2d 1079, 164 USPQ 458 (CCPA 1970). Diligence must be judged on the basis of the particular facts in each case. See **MPEP § 2138.06** for a detailed discussion of the diligence requirement for proving prior invention.

Under **37 CFR 1.131**, the critical period in which diligence must be shown begins just prior to the effective date of the reference or activity and ends with the date of a reduction to practice, either actual or constructive (i.e., filing a United States patent application). Note, therefore, that only diligence before reduction to practice is a material consideration. The "lapse of time between the completion or reduction to practice of an invention and the filing of an application thereon" is not relevant to an affidavit or declaration under **37 CFR 1.131**. See *Ex parte Merz*, 75 USPQ 296 (Bd. App. 1947).

Form paragraph 7.62 (reproduced in **MPEP § 715**) may be used to respond to a **37 CFR 1.131** affidavit where diligence is lacking.

### 715.07(b)  Interference Testimony Sometimes Used

In place of an affidavit or declaration the testimony of the applicant in an interference may be sometimes used to antedate a reference in lieu of **37 CFR 1.131** affidavit or declaration.

The part of the testimony to form the basis of priority over the reference should be pointed out. *Ex parte Bowyer*, 1939 C.D. 5, 42 USPQ 526 (Comm'r Pat. 1939).

## 715.07(c)  Acts Relied Upon Must Have Been Carried Out in This Country or a NAFTA or WTO Member Country

*35 U.S.C. 104  Invention Made Abroad.*

(a)  IN GENERAL.—(1)  PROCEEDINGS.—In proceedings in the Patent and Trademark Office, in the courts, and before any other competent authority, an applicant for a patent, or a patentee, may not establish a date of invention by reference to knowledge or use thereof, or other activity with respect thereto, in a foreign country other than a NAFTA country or a WTO member country, except as provided in **sections 119** and **365** of this title.

(2)  RIGHTS.—If an invention was made by a person, civil or military—(A)  while domiciled in the United States, and serving in any other country in connection with operations by or on behalf of the United States,

(B)  while domiciled in a NAFTA country and serving in another country in connection with operations by or on behalf of that NAFTA country, or

(C)  while domiciled in a WTO member country and serving in another country in connection with operations by or on behalf of that WTO member country, that person shall be entitled to the same rights of priority in the United States with respect to such invention as if such invention had been made in the United States, that NAFTA country, or that WTO member country, as the case may be.

(3)  USE OF INFORMATION.—To the extent that any information in a NAFTA country or a WTO member country concerning knowledge, use, or other activity relevant to proving or disproving a date of invention has not been made available for use in a proceeding in the Patent and Trademark Office, a court, or any other competent authority to the same extent as such information could be made available in the United States, the Director, court, or such other authority shall draw appropriate inferences, or take other action permitted by statute, rule, or regulation, in favor of the party that requested the information in the proceeding.

(b)  DEFINITIONS.—As used in this section—(1)  The term "NAFTA country" has the meaning given that term in section 2(4) of the North American Free Trade Agreement Implementation Act; and

(2)  The term "WTO member country" has the meaning given that term in section 2(10) of the Uruguay Round Agreements Act.

The **37 CFR 1.131** affidavit or declaration must contain an allegation that the acts relied upon to establish the date prior to the reference or activity were carried out in this country or in a NAFTA country or WTO member country. See **35 U.S.C. 104**.

Under **37 CFR 1.131(a)**, which provides for the establishment of a date of completion of the invention in a NAFTA or WTO member country, as well as in the United States, an applicant can establish a date of completion in a NAFTA member country on or after December 8, 1993, the effective date of section 331 of Public Law 103-182, the North American Free Trade Agreement Act, and can establish a date of completion in a WTO member country other than a NAFTA member country on or after January 1, 1996, the effective date of section 531 of Public Law 103-465, the Uruguay Round Agreements Act. Acts occurring prior to the effective dates of NAFTA or URAA may be relied upon to show completion of the invention; however, a date of completion of the invention may not be established under **37 CFR 1.131** before December 8, 1993 in a NAFTA country or before January 1, 1996 in a WTO member country other than a NAFTA country.

## 715.07(d)  Disposition of Exhibits

Exhibits, such as those filed as part of an affidavit or declaration under **37 CFR 1.131**, must comply with the requirements of **37 CFR 1.91** to be entered into an application file. Exhibits that do not comply with the requirements of **37 CFR 1.91** will be disposed of or returned to applicant at the discretion of the Office. See also **MPEP § 608.03(a)**.

## 715.08  Passed Upon by Primary Examiner [R-6]

The question of sufficiency of affidavits or declarations under **37 CFR 1.131** should be reviewed and decided by a primary examiner.

Review of questions of formal sufficiency and propriety are by petition >filed under **37 CFR 1.181**<. Such petitions are answered by the Technology Center Directors (**MPEP § 1002.02(c)**).

Review on the merits of a **37 CFR 1.131** affidavit or declaration is by appeal to the Board of Patent Appeals and Interferences.

## 715.09  Seasonable Presentation [R-3]

Affidavits or declarations under **37 CFR 1.131** must be timely presented in order to be admitted. Affidavits and

declarations submitted under **37 CFR 1.131** and other evidence traversing rejections are considered timely if submitted:

(A) prior to a final rejection;

(B) before appeal in an application not having a final rejection; *

(C) after final rejection**>, but before or on the same date of filing an appeal, upon a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented in compliance with 37 CFR **1.116**(e); or

(D) after the prosecution is closed (e.g., after a final rejection, after appeal, or after allowance) if applicant files the affidavit or other evidence with a request for continued examination (RCE) under 37 CFR **1.114** in a utility or plant application filed on or after June 8, 1995; or a continued prosecution application (CPA) under 37 CFR **1.53**(d) in a design application.<

All admitted affidavits and declarations are acknowledged and commented upon by the examiner in his or her next succeeding action.

For affidavits or declarations under **37 CFR 1.131** filed after appeal, see **37 CFR**
**\***
**>**
**41.33(d)**
**<**
and **MPEP §**
**\***
**>**
**1206** and § **1211.03**
**<**
.

Review of an examiner's refusal to enter an affidavit as untimely is by petition and not by appeal to the Board of Patent Appeals and Interferences. *In re Deters* , 515 F.2d 1152, 185 USPQ 644 (CCPA 1975); *Ex parte Hale* , 49 USPQ 209 (Bd. App. 1941). See **MPEP § 715.08** regarding review of questions of propriety of **37 CFR 1.131** affidavits and declarations.

### 715.10  Review of Affidavit or Declaration for Evidence of Prior Public Use or Sale or Failure to Disclose Best Mode

Any affidavits or declarations submitted under **37 CFR 1.131** and the accompanying evidence must be reviewed carefully by the examiner in order to determine whether they show that the claimed invention was "in public use" or "on sale" in this country more than one year prior to the effective filing date of the application, which acts

constitute a statutory bar under **35 U.S.C. 102(b)**. Although the rejection based on the reference(s) or activity sought to be antedated may actually be overcome by such an affidavit or declaration, the effect of the applicant's prior "public use" or "on sale" activities may not be overcome under **37 CFR 1.131**. See **MPEP § 2133.03** regarding rejections based on "public use" and "on sale" statutory bars.

Where the **37 CFR 1.131** evidence relies on an embodiment of the invention not disclosed in the application, the question of whether the application includes the "best mode" must be considered. However, a "best mode" rejection should not be made unless the record, taken as a whole, establishes by a preponderance of the evidence that applicant's specification has not set forth the best mode contemplated by the inventor of carrying out the invention. See **MPEP § 2165** - **§ 2165.04** regarding the best mode requirement of the first paragraph of **35 U.S.C. 112**.

### 716  Affidavits or Declarations Traversing Rejections, 37 CFR 1.132

*37 CFR 1.132  Affidavits or declarations traversing rejections or objections.*

When any claim of an application or a patent under reexamination is rejected or objected to, any evidence submitted to traverse the rejection or objection on a basis not otherwise provided for must be by way of an oath or declaration under this section.

It is the responsibility of the primary examiner to personally review and decide whether affidavits or declarations submitted under **37 CFR 1.132** for the purpose of traversing grounds of rejection are responsive to the rejection and present sufficient facts to overcome the rejection.

This rule sets forth the general policy of the Office consistently followed for a long period of time of receiving affidavit evidence traversing rejections or objections. All affidavits or declarations presented which do not fall within or under other specific rules are to be treated or considered as falling under this rule.

Form paragraph 7.65 or 7.66 and any of form paragraphs 7.66.01 through 7.66.05, as appropriate, should be used to comment on a **37 CFR 1.132** affidavit or declaration.

¶ *7.65 Affidavit or Declaration Under 37 CFR 1.132: Effective To Withdraw Rejection*

The **[1]** under **37 CFR 1.132** filed **[2]** is sufficient to overcome the rejection of claim **[3]** based upon **[4]**.

**Examiner Note:**

1.   In bracket 1, insert either --affidavit-- or --declaration--.

2.   In bracket 2, insert the filing date of the affidavit or declaration.

3.   In bracket 3, insert the affected claim or claims.

4.   In bracket 4, indicate the rejection that has been overcome, including the statutory grounds, e.g.: insufficiency of disclosure under **35 U.S.C. 112**, first paragraph; lack of utility under **35 U.S.C. 101**; inoperativeness under **35 U.S.C. 101**; a specific reference applied under **35 U.S.C. 103**; etc. See **MPEP § 716**.

¶ *7.66 Affidavit or Declaration Under 37 CFR 1.132: Insufficient*

The **[1]** under **37 CFR 1.132** filed **[2]** is insufficient to overcome the rejection of claim **[3]** based upon **[4]** as set forth in the last Office action because:

**Examiner Note:**

1.   In bracket 1, insert either --affidavit-- or --declaration--.

2.   In bracket 2, insert the filing date of the affidavit or declaration.

3.   In bracket 3, insert the claim or claims affected.

4.   In bracket 4, indicate the rejection that has not been overcome, including the statutory grounds, i.e.: insufficiency of disclosure under **35 U.S.C. 112**, first paragraph; lack of utility and/or inoperativeness under **35 U.S.C. 101**; a specific reference applied under **35 U.S.C. 103**; etc. See **MPEP § 716**.

5.   Following this form paragraph, set forth the reasons for the insufficiency; e.g., categories include: --untimely--; --fails to set forth facts--; --facts presented are not germane to the rejection at issue--;--showing is not commensurate in scope with the claims--; etc. See **MPEP § 716**. Also include a detailed explanation of the reasons why the affidavit or declaration is insufficient. Any of form paragraphs 7.66.01 - 7.66.05 may be used, as appropriate.

¶ *7.66.01 Reason Why Affidavit or Declaration Under 37 CFR 1.132 Is Insufficient: Affiant Has Never Seen Invention Before*

It includes statements which amount to an affirmation that the affiant has never seen the claimed subject matter before. This is not relevant to the issue of nonobviousness

of the claimed subject matter and provides no objective evidence thereof. See **MPEP § 716**.

**Examiner Note:**

1.   This form paragraph must be preceded by form paragraph 7.66.

2.   A full explanation must be provided, if appropriate.

¶ *7.66.02 Reason Why Affidavit or Declaration Under 37 CFR 1.132 Is Insufficient: Invention Works as Intended*

It includes statements which amount to an affirmation that the claimed subject matter functions as it was intended to function. This is not relevant to the issue of nonobviousness of the claimed subject matter and provides no objective evidence thereof. See **MPEP § 716**.

**Examiner Note:**

1.   This form paragraph must be preceded by form paragraph 7.66.

2.   A full explanation must be provided, if appropriate.

¶ *7.66.03 Reason Why Affidavit or Declaration Under 37 CFR 1.132 Is Insufficient: Refers Only to Invention, Not to Claims*

It refers only to the system described in the above referenced application and not to the individual claims of the application. As such the declaration does not show that the objective evidence of nonobviousness is commensurate in scope with the claims. See **MPEP § 716**.

**Examiner Note:**

1.   This form paragraph must be preceded by form paragraph 7.66.

2.   A full explanation must be provided, if appropriate.

¶ *7.66.04 Reason Why Affidavit or Declaration Under 37 CFR 1.132 Is Insufficient: No Evidence of Long-Felt Need*

It states that the claimed subject matter solved a problem that was long standing in the art. However, there is no showing that others of ordinary skill in the art were working on the problem and if so, for how long. In addition, there is no evidence that if persons skilled in the art who were presumably working on the problem knew of the teachings of the above cited references, they would still be unable to solve the problem. See MPEP § **716.04**.

**Examiner Note:**

1.   This form paragraph must be preceded by form paragraph 7.66.

2.   A full explanation must be provided, if appropriate.

*¶ 7.66.05 Reason Why Affidavit or Declaration Under 37 CFR 1.132 Is Insufficient: Conclusion*

In view of the foregoing, when all of the evidence is considered, the totality of the rebuttal evidence of nonobviousness fails to outweigh the evidence of obviousness.

**Examiner Note:**

This form paragraph should be presented as a conclusion to your explanation of why the affidavit or declaration under **37 CFR 1.132** is insufficient, and it must be preceded by form paragraph 7.66.

**716.01  Generally Applicable Criteria [R-3]**

The following criteria are applicable to all evidence traversing rejections submitted by applicants, including affidavits or declarations submitted under **37 CFR 1.132**:

(A)  *Timeliness.*Evidence traversing rejections must be timely or seasonably filed to be entered and entitled to consideration. *In re Rothermel,* 276 F.2d 393, 125 USPQ 328 (CCPA 1960). Affidavits and declarations submitted under **37 CFR 1.132** and other evidence traversing rejections are considered timely if submitted:(1) prior to a final rejection,

(2) before appeal in an application not having a final rejection, *

(3) after final rejection **>, but before or on the same date of filing an appeal, upon a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented in compliance with 37 CFR **1.116**(e); or

(4) after the prosecution is closed (e.g., after a final rejection, after appeal, or after allowance) if applicant files the affidavit or other evidence with a request for continued examination (RCE) under 37 CFR **1.114** in a utility or plant application filed on or after June 8, 1995; or a continued prosecution application (CPA) under 37 CFR **1.53**(d) in a design application.
For affidavits or declarations under 37 CFR **1.132** filed after appeal, see 37 CFR **41.33**(d) and MPEP **§ 1206** and **§ 1211.03**.<

(B)  *Consideration of evidence.*Evidence traversing rejections, when timely presented, must be considered by the examiner whenever present. All entered affidavits, declarations, and other evidence traversing rejections are acknowledged and commented upon by the examiner in the next succeeding action. The extent of the commentary depends on the action taken by the examiner. Where an examiner holds that the evidence is sufficient to overcome the *prima facie* case, the comments should be consistent with the guidelines for statements of reasons for allowance. See **MPEP § 1302.14**. Where the evidence is insufficient to overcome the rejection, the examiner must

specifically explain why the evidence is insufficient. General statements such as "the declaration lacks technical validity" or "the evidence is not commensurate with the scope of the claims" without an explanation supporting such findings are insufficient.

**716.01(a)  Objective Evidence of Nonobviousness [R-2]**

**OBJECTIVE EVIDENCE MUST BE CONSIDERED *>WHEN TIMELY< PRESENT**

Affidavits or declarations>, when timely presented,< containing evidence of criticality or unexpected results, commercial success, long-felt but unsolved needs, failure of others, skepticism of experts, etc., must be considered by the examiner in determining the issue of obviousness of claims for patentability under **35 U.S.C. 103**. The Court of Appeals for the Federal Circuit stated in *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed. Cir. 1983) that "evidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness." Such evidence might give light to circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or unobviousness, such evidence may have relevancy. *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966); *In re Palmer*, 451 F.2d 1100, 172 USPQ 126 (CCPA 1971); *In re Fielder*, 471 F.2d 640, 176 USPQ 300 (CCPA 1973). The *Graham v. John Deere* pronouncements on the relevance of commercial success, etc. to a determination of obviousness were not negated in *Sakraida v. Ag Pro*, 425 U.S. 273, 189 USPQ 449 (1979) or *Anderson's-Black Rock Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 163 USPQ 673 (1969), where reliance was placed upon *A&P Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 87 USPQ 303 (1950). See *Dann v. Johnston*, 425 U.S. 219, 226 n.4, 189 USPQ 257, 261 n. 4 (1976).

Examiners must consider comparative data in the specification which is intended to illustrate the claimed invention in reaching a conclusion with regard to the obviousness of the claims. *In re Margolis*, 785 F.2d 1029, 228 USPQ 940 (Fed. Cir. 1986). The lack of objective evidence of nonobviousness does not weigh in favor of obviousness. *Miles Labs. Inc. v. Shandon Inc.*, 997 F.2d 870, 878, 27 USPQ2d 1123, 1129 (Fed. Cir. 1993), *cert. denied*, 127 L. Ed. 232 (1994). However, where a *prima*

*facie* case of obviousness is established, the failure to provide rebuttal evidence is dispositive.

**716.01(b)  Nexus Requirement and Evidence of Nonobviousness**

**TO BE OF PROBATIVE VALUE, ANY SECONDARY EVIDENCE MUST BE RELATED TO THE CLAIMED INVENTION (NEXUS REQUIRED)**

The weight attached to evidence of secondary considerations by the examiner will depend upon its relevance to the issue of obviousness and the amount and nature of the evidence. Note the great reliance apparently placed on this type of evidence by the Supreme Court in upholding the patent in *United States v. Adams*, 383 U.S. 39,148 USPQ 479 (1966).

To be given substantial weight in the determination of obviousness or nonobviousness, evidence of secondary considerations must be relevant to the subject matter as claimed, and therefore the examiner must determine whether there is a nexus between the merits of the claimed invention and the evidence of secondary considerations. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,* 776 F.2d 281, 305 n.42, 227 USPQ 657, 673-674 n. 42 (Fed. Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986). The term "nexus" designates a factually and legally sufficient connection between the objective evidence of nonobviousness and the claimed invention so that the evidence is of probative value in the determination of nonobviousness. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 7 USPQ2d 1222 (Fed. Cir.), *cert. denied*, 488 U.S. 956 (1988).

**716.01(c)  Probative Value of Objective Evidence [R-2]**

>

**I.  < TO BE OF PROBATIVE VALUE, ANY OBJECTIVE EVIDENCE SHOULD BE SUPPORTED BY ACTUAL PROOF**

Objective evidence which must be factually supported by an appropriate affidavit or declaration to be of probative value includes evidence of unexpected results, commercial success, solution of a long-felt need, inoperability of the prior art, invention before the date of the reference, and allegations that the author(s) of the prior art derived the disclosed subject matter from the applicant. See, for example, *In re De Blauwe*, 736 F.2d 699, 705, 222 USPQ 191, 196 (Fed. Cir. 1984) ("It is well settled that unexpected results must be established by factual evidence." "[A]ppellants have not presented any

experimental data showing that prior heat-shrinkable articles split. Due to the absence of tests comparing appellant's heat shrinkable articles with those of the closest prior art, we conclude that appellant's assertions of unexpected results constitute mere argument."). See also *In re Lindner*, 457 F.2d 506, 508, 173 USPQ 356, 358 (CCPA 1972); *Ex parte George*, 21 USPQ2d 1058 (Bd. Pat. App. & Inter. 1991).

>

**II.  < ATTORNEY ARGUMENTS CANNOT TAKE THE PLACE OF EVIDENCE**

The arguments of counsel cannot take the place of evidence in the record. *In re Schulze*, 346 F.2d 600, 602, 145 USPQ 716, 718 (CCPA 1965). Examples of attorney statements which are not evidence and which must be supported by an appropriate affidavit or declaration include statements regarding unexpected results, commercial success, solution of a long-felt need, inoperability of the prior art, invention before the date of the reference, and allegations that the author(s) of the prior art derived the disclosed subject matter from the applicant.

See **MPEP § 2145** generally for case law pertinent to the consideration of applicant's rebuttal arguments.

>

**III.  < OPINION EVIDENCE**

Although factual evidence is preferable to opinion testimony, such testimony is entitled to consideration and some weight so long as the opinion is not on the ultimate legal conclusion at issue. While an opinion as to a legal conclusion is not entitled to any weight, the underlying basis for the opinion may be persuasive. *In re Chilowsky*, 306 F.2d 908, 134 USPQ 515 (CCPA 1962) (expert opinion that an application meets the requirements of **35 U.S.C. 112** is not entitled to any weight; however, facts supporting a basis for deciding that the specification complies with **35 U.S.C. 112** are entitled to some weight); *In re Lindell*, 385 F.2d 453, 155 USPQ 521 (CCPA 1967) (Although an affiant's or declarant's opinion on the ultimate legal issue is not evidence in the case, "some weight ought to be given to a persuasively supported statement of one skilled in the art on what was not obvious to him." 385 F.2d at 456, 155 USPQ at 524 (emphasis in original)).

In assessing the probative value of an expert opinion, the examiner must consider the nature of the matter sought to be established, the strength of any opposing evidence, the interest of the expert in the outcome of the case, and

the presence or absence of factual support for the expert's opinion. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,* 776 F.2d 281, 227 USPQ 657 (Fed. Cir. 1985), *cert. denied,* 475 U.S. 1017 (1986). See also *In re Oelrich,* 579 F.2d 86, 198 USPQ 210 (CCPA 1978) (factually based expert opinions on the level of ordinary skill in the art were sufficient to rebut the *prima facie* case of obviousness); *Ex parte Gray,* 10 USPQ2d 1922 (Bd. Pat. App. & Inter. 1989) (statement in publication dismissing the "preliminary identification of a human b-NGF-like molecule" in the prior art, even if considered to be an expert opinion, was inadequate to overcome the rejection based on that prior art because there was no factual evidence supporting the statement); *In re Carroll,* 601 F.2d 1184, 202 USPQ 571 (CCPA 1979) (expert opinion on what the prior art taught, supported by documentary evidence and formulated prior to the making of the claimed invention, received considerable deference); *In re Beattie,* 974 F.2d 1309, 24 USPQ2d 1040 (Fed. Cir. 1992) (declarations of seven persons skilled in the art offering opinion evidence praising the merits of the claimed invention were found to have little value because of a lack of factual support); *Ex parte George,* 21 USPQ2d 1058 (Bd. Pat. App. & Inter. 1991) (conclusory statements that results were "unexpected," unsupported by objective factual evidence, were considered but were not found to be of substantial evidentiary value).

Although an affidavit or declaration which states only conclusions may have some probative value, such an affidavit or declaration may have little weight when considered in light of all the evidence of record in the application. *In re Brandstadter,* 484 F.2d 1395, 179 USPQ 286 (CCPA 1973).

An affidavit of an applicant as to the advantages of his or her claimed invention, while less persuasive than that of a disinterested person, cannot be disregarded for this reason alone. *Ex parte Keyes,* 214 USPQ 579 (Bd. App. 1982); *In re McKenna,* 203 F.2d 717, 97 USPQ 348 (CCPA 1953).

### 716.01(d)  Weighing Objective Evidence [R-6]

### IN MAKING A FINAL DETERMINATION OF PATENTABILITY, EVIDENCE SUPPORTING PATENTABILITY MUST BE WEIGHED AGAINST EVIDENCE SUPPORTING PRIMA FACIE CASE

When an applicant timely submits evidence traversing a rejection, the examiner must reconsider the patentability of the claimed invention. The ultimate determination of patentability must be based on consideration of the entire record, by a preponderance of evidence, with due

consideration to the persuasiveness of any arguments and any secondary evidence. *In re Oetiker,* 977 F.2d 1443, 24 USPQ2d 1443 (Fed. Cir. 1992). The submission of objective evidence of patentability does not mandate a conclusion of patentability in and of itself. *In re Chupp,* 816 F.2d 643, 2 USPQ2d 1437 (Fed. Cir. 1987). Facts established by rebuttal evidence must be evaluated along with the facts on which the conclusion of a *prima facie* case was reached, not against the conclusion itself. *In re Eli Lilly,* 902 F.2d 943, 14 USPQ2d 1741 (Fed. Cir. 1990). In other words, each piece of rebuttal evidence should not be evaluated for its ability to knockdown the *prima facie* case. All of the competent rebuttal evidence taken as a whole should be weighed against the evidence supporting the *prima facie* case. *In re Piasecki,* 745 F.2d 1468, 1472, 223 USPQ 785, 788 (Fed. Cir. 1984). Although the record may establish evidence of secondary considerations which are indicia of nonobviousness, the record may also establish such a strong case of obviousness that the objective evidence of nonobviousness is not sufficient to outweigh the evidence of obviousness. *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 769, 9 USPQ2d 1417, 1427 (Fed. Cir. 1988), *cert. denied,* 493 U.S. 814 (1989); *Richardson-Vicks, Inc., v. The Upjohn Co.,* 122 F.3d 1476, 1484, 44 USPQ2d 1181, 1187 (Fed. Cir. 1997) (showing of unexpected results and commercial success of claimed ibuprofen and pseudoephedrine combination in single tablet form, while supported by substantial evidence, held not to overcome strong *prima facie* case of obviousness). See *In re Piasecki,* 745 F.2d 1468, 223 USPQ 785 (Fed. Cir. 1984) for a detailed discussion of the proper roles of the examiner's *prima facie* case and applicant's rebuttal evidence in the final determination of obviousness.

If, after evaluating the evidence, the examiner is still not convinced that the claimed invention is patentable, the next Office action should include a statement to that effect and identify the reason(s) (e.g., evidence of commercial success not convincing, the commercial success not related to the technology, etc.). See *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.,* 851 F.2d 1387, 7 USPQ2d 1222 (Fed. Cir.), *cert. denied,* 488 U.S. 956 (1988). See also **MPEP § 716.01.** See **MPEP § \*\* > 2145<** for guidance in determining whether rebuttal evidence is sufficient to overcome a *prima facie* case of obviousness.

### 716.02  Allegations of Unexpected Results

Any differences between the claimed invention and the prior art may be expected to result in some differences in properties. The issue is whether the properties differ to

such an extent that the difference is really unexpected. *In re Merck & Co.,* 800 F.2d 1091, 231 USPQ 375 (Fed. Cir. 1986) (differences in sedative and anticholinergic effects between prior art and claimed antidepressants were not unexpected). In *In re Waymouth,* 499 F.2d 1273, 1276, 182 USPQ 290, 293 (CCPA 1974), the court held that unexpected results for a claimed range as compared with the range disclosed in the prior art had been shown by a demonstration of "a marked improvement, over the results achieved under other ratios, as to be classified as a difference in kind, rather than one of degree." Compare *In re Wagner,* 371 F.2d 877, 884, 152 USPQ 552, 560 (CCPA 1967) (differences in properties cannot be disregarded on the ground they are differences in degree rather than in kind); *Ex parte Gelles,* 22 USPQ2d 1318, 1319 (Bd. Pat. App. & Inter. 1992) ("we generally consider a discussion of results in terms of 'differences in degree' as compared to 'differences in kind' . . . to have very little meaning in a relevant legal sense").

**716.02(a)  Evidence Must Show Unexpected Results [R-2]**

>

**I. < GREATER THAN EXPECTED RESULTS ARE EVIDENCE OF NONOBVIOUSNESS**

"A greater than expected result is an evidentiary factor pertinent to the legal conclusion of obviousness ... of the claims at issue." *In re Corkill,* 711 F.2d 1496, 226 USPQ 1005 (Fed. Cir. 1985). In *Corkill,* the claimed combination showed an additive result when a diminished result would have been expected. This result was persuasive of nonobviousness even though the result was equal to that of one component alone. Evidence of a greater than expected result may also be shown by demonstrating an effect which is greater than the sum of each of the effects taken separately (i.e., demonstrating "synergism"). *Merck & Co. Inc. v. Biocraft Laboratories Inc.,* 874 F.2d 804, 10 USPQ2d 1843 (Fed. Cir.), *cert. denied,* 493 U.S. 975 (1989). However, a greater than additive effect is not necessarily sufficient to overcome a *prima facie* case of obviousness because such an effect can either be expected or unexpected. Applicants must further show that the results were greater than those which would have been expected from the prior art to an unobvious extent, and that the results are of a significant, practical advantage. *Ex parte The NutraSweet Co.,* 19 USPQ2d 1586 (Bd. Pat. App. & Inter. 1991) (Evidence showing greater than additive sweetness resulting from the claimed mixture of saccharin and L-aspartyl-L-phenylalanine was not sufficient to outweigh the evidence of obviousness because the teachings of the prior art lead to a general expectation of greater than

additive sweetening effects when using mixtures of synthetic sweeteners.).

>

**II. < SUPERIORITY OF A PROPERTY SHARED WITH THE PRIOR ART IS EVIDENCE OF NONOBVIOUSNESS**

Evidence of unobvious or unexpected advantageous properties, such as superiority in a property the claimed compound shares with the prior art, can rebut *prima facie* obviousness. "Evidence that a compound is unexpectedly superior in one of a spectrum of common properties . . . can be enough to rebut a *prima facie* case of obviousness." No set number of examples of superiority is required. *In re Chupp,* 816 F.2d 643, 646, 2 USPQ2d 1437, 1439 (Fed. Cir. 1987) (Evidence showing that the claimed herbicidal compound was more effective than the closest prior art compound in controlling quackgrass and yellow nutsedge weeds in corn and soybean crops was sufficient to overcome the rejection under **35 U.S.C. 103**, even though the specification indicated the claimed compound was an average performer on crops other than corn and soybean.). See also *Ex parte A,* 17 USPQ2d 1716 (Bd. Pat. App. & Inter. 1990) (unexpected superior therapeutic activity of claimed compound against anaerobic bacteria was sufficient to rebut *prima facie* obviousness even though there was no evidence that the compound was effective against all bacteria).

>

**III. < PRESENCE OF AN UNEXPECTED PROPERTY IS EVIDENCE OF NONOBVIOUSNESS**

Presence of a property not possessed by the prior art is evidence of nonobviousness. *In re Papesch,* 315 F.2d 381, 137 USPQ 43 (CCPA 1963) (rejection of claims to compound structurally similar to the prior art compound was reversed because claimed compound unexpectedly possessed anti-inflammatory properties not possessed by the prior art compound); *Ex parte Thumm,* 132 USPQ 66 (Bd. App. 1961) (Appellant showed that the claimed range of ethylene diamine was effective for the purpose of producing "'regenerated cellulose consisting substantially entirely of skin'" whereas the prior art warned "this compound has 'practically no effect.' "). The submission of evidence that a new product possesses unexpected properties does not necessarily require a conclusion that the claimed invention is nonobvious. *In re Payne,* 606 F.2d 303, 203 USPQ 245 (CCPA 1979). See the discussion of latent properties and additional advantages in **MPEP § 2145**.

>

## IV. < ABSENCE OF AN EXPECTED PROPERTY IS EVIDENCE OF NONOBVIOUSNESS

Absence of property which a claimed invention would have been expected to possess based on the teachings of the prior art is evidence of unobviousness. *Ex parte Mead Johnson & Co.* 227 USPQ 78 (Bd. Pat. App. & Inter. 1985) (Based on prior art disclosures, claimed compounds would have been expected to possess beta-andrenergic blocking activity; the fact that claimed compounds did not possess such activity was an unexpected result sufficient to establish unobviousness within the meaning of **35 U.S.C. 103**.).

**716.02(b)  Burden on Applicant [R-2]**

>

## I. < BURDEN ON APPLICANT TO ESTABLISH RESULTS ARE UNEXPECTED AND SIGNIFICANT

The evidence relied *>upon< should establish "that the differences in results are in fact unexpected and unobvious and of both statistical and practical significance." *Ex parte Gelles*, 22 USPQ2d 1318, 1319 (Bd. Pat. App. & Inter. 1992) (Mere conclusions in appellants' brief that the claimed polymer had an unexpectedly increased impact strength "are not entitled to the weight of conclusions accompanying the evidence, either in the specification or in a declaration."); *Ex parte C*, 27 USPQ2d 1492 (Bd. Pat. App. & Inter. 1992) (Applicant alleged unexpected results with regard to the claimed soybean plant, however there was no basis for judging the practical significance of data with regard to maturity date, flowering date, flower color, or height of the plant.). See also *In re Nolan*, 553 F.2d 1261, 1267, 193 USPQ 641, 645 (CCPA 1977) and *In re Eli Lilly*, 902 F.2d 943, 14 USPQ2d 1741 (Fed. Cir. 1990) as discussed in **MPEP § 716.02(c)**.

>

## II. < APPLICANTS HAVE BURDEN OF EXPLAINING PROFFERED DATA

"[A]ppellants have the burden of explaining the data in any declaration they proffer as evidence of non-obviousness." *Ex parte Ishizaka*, 24 USPQ2d 1621, 1624 (Bd. Pat. App. & Inter. 1992).

>

## III. < DIRECT AND INDIRECT COMPARATIVE TESTS ARE PROBATIVE OF NONOBVIOUSNESS

Evidence of unexpected properties may be in the form of a direct or indirect comparison of the claimed invention with the closest prior art which is commensurate in scope with the claims. See *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980) and **MPEP § 716.02(d)** - **§ 716.02(e)**. See *In re Blondel*, 499 F.2d 1311, 1317, 182 USPQ 294, 298 (CCPA 1974) and *In re Fouche*, 439 F.2d 1237, 1241-42, 169 USPQ 429, 433 (CCPA 1971) for examples of cases where indirect comparative testing was found sufficient to rebut a *prima facie* case of obviousness.

The patentability of an intermediate may be established by unexpected properties of an end product "when one of ordinary skill in the art would reasonably ascribe to a claimed intermediate the 'contributing cause' for such an unexpectedly superior activity or property." *In re Magerlein*, 602 F.2d 366, 373, 202 USPQ 473, 479 (CCPA 1979). "In order to establish that the claimed intermediate is a 'contributing cause' of the unexpectedly superior activity or property of an end product, an applicant must identify the cause of the unexpectedly superior activity or property (compared to the prior art) in the end product and establish a nexus for that cause between the intermediate and the end product." *Id.* at 479.

**716.02(c)  Weighing Evidence of Expected and Unexpected Results [R-2]**

>

## I. < EVIDENCE OF UNEXPECTED AND EXPECTED PROPERTIES MUST BE WEIGHED

Evidence of unexpected results must be weighed against evidence supporting *prima facie* obviousness in making a final determination of the obviousness of the claimed invention. *In re May*, 574 F.2d 1082, 197 USPQ 601 (CCPA 1978) (Claims directed to a method of effecting analgesia without producing physical dependence by administering the levo isomer of a compound having a certain chemical structure were rejected as obvious over the prior art. Evidence that the compound was unexpectedly nonaddictive was sufficient to overcome the obviousness rejection. Although the compound also had the expected result of potent analgesia, there was evidence of record showing that the goal of research in this area was to produce an analgesic compound which was nonaddictive, enhancing the evidentiary value of the showing of nonaddictiveness as an indicia of nonobviousness.). See **MPEP § 716.01(d)** for guidance on weighing evidence submitted to traverse a rejection.

Where the unexpected properties of a claimed invention are not shown to have a significance equal to or greater than the expected properties, the evidence of unexpected

properties may not be sufficient to rebut the evidence of obviousness. *In re Nolan*, 553 F.2d 1261, 1267, 193 USPQ 641, 645 (CCPA 1977) (Claims were directed to a display/memory device which was *prima facie* obvious over the prior art. The court found that a higher memory margin and lower operating voltage would have been expected properties of the claimed device, and that a higher memory margin appears to be the most significant improvement for a memory device. Although applicant presented evidence of unexpected properties with regard to lower peak discharge current and higher luminous efficiency, these properties were not shown to have a significance equal to or greater than that of the expected higher memory margin and lower operating voltage. The court held the evidence of nonobviousness was not sufficient to rebut the evidence of obviousness.); *In re Eli Lilly*, 902 F.2d 943, 14 USPQ2d 1741 (Fed. Cir. 1990) (Evidence of improved feed efficiency in steers was not sufficient to rebut *prima facie* case of obviousness based on prior art which specifically taught the use of compound X537A to enhance weight gain in animals because the evidence did not show that a significant aspect of the claimed invention would have been unexpected.).

>

## II. < EXPECTED BENEFICIAL RESULTS ARE EVIDENCE OF OBVIOUSNESS

"Expected beneficial results are evidence of obviousness of a claimed invention, just as unexpected results are evidence of unobviousness thereof." *In re Gershon*, 372 F.2d 535, 538, 152 USPQ 602, 604 (CCPA 1967) (resultant decrease of dental enamel solubility accomplished by adding an acidic buffering agent to a fluoride containing dentifrice was expected based on the teaching of the prior art); *Ex parte Blanc*, 13 USPQ2d 1383 (Bd. Pat. App. & Inter. 1989) (Claims at issue were directed to a process of sterilizing a polyolefinic composition which contains an antioxidant with high-energy radiation. Although evidence was presented in appellant's specification showing that particular antioxidants are effective, the Board concluded that these beneficial results would have been expected because one of the references taught a claimed antioxidant is very efficient and provides better results compared with other prior art antioxidants.).

## 716.02(d) Unexpected Results Commensurate in Scope With Claimed Invention [R-2]

Whether the unexpected results are the result of unexpectedly improved results or a property not taught by the prior art, the "objective evidence of nonobviousness must be commensurate in scope with the claims which the evidence is offered to support." In other words, the showing of unexpected results must be reviewed to see if the results occur over the entire claimed range. *In re Clemens*, 622 F.2d 1029, 1036, 206 USPQ 289, 296 (CCPA 1980) (Claims were directed to a process for removing corrosion at "elevated temperatures" using a certain ion exchange resin (with the exception of claim 8 which recited a temperature in excess of 100$^C$). Appellant demonstrated unexpected results via comparative tests with the prior art ion exchange resin at 110C and 130C. The court affirmed the rejection of claims 1-7 and 9-10 because the term "elevated temperatures" encompassed temperatures as low as 60C where the prior art ion exchange resin was known to perform well. The rejection of claim 8, directed to a temperature in excess of 100C, was reversed.). See also *In re Peterson*, 315 F.3d 1325, 1329-31, 65 USPQ2d 1379, 1382-85 (Fed. Cir. 2003) (data showing improved alloy strength with the addition of 2% rhenium did not evidence unexpected results for the entire claimed range of about 1-3% rhenium); *In re Grasselli*, 713 F.2d 731, 741, 218 USPQ 769, 777 (Fed. Cir. 1983) (Claims were directed to certain catalysts containing an alkali metal. Evidence presented to rebut an obviousness rejection compared catalysts containing sodium with the prior art. The court held this evidence insufficient to rebut the *prima facie* case because experiments limited to sodium were not commensurate in scope with the claims.).

>

## I. < NONOBVIOUSNESS OF A GENUS OR CLAIMED RANGE MAY BE SUPPORTED BY DATA SHOWING UNEXPECTED RESULTS OF A SPECIES OR NARROWER RANGE UNDER CERTAIN CIRCUMSTANCES

The nonobviousness of a broader claimed range can be supported by evidence based on unexpected results from testing a narrower range if one of ordinary skill in the art would be able to determine a trend in the exemplified data which would allow the artisan to reasonably extend the probative value thereof. *In re Kollman*, 595 F.2d 48, 201 USPQ 193 (CCPA 1979) (Claims directed to mixtures of an herbicide known as "FENAC" with a diphenyl ether herbicide in certain relative proportions were rejected as *prima facie* obvious. Applicant presented evidence alleging unexpected results testing three species of diphenyl ether herbicides over limited relative proportion ranges. The court held that the limited number of species exemplified did not provide an adequate basis for concluding that similar results would be obtained for the other diphenyl ether herbicides within the scope of the generic claims. Claims 6-8 recited a FENAC:diphenyl ether ratio of 1:1 to 4:1 for the three specific ethers tested. For two of the claimed ethers, unexpected results were demonstrated over a ratio of 16:1 to 2:1, and the

effectiveness increased as the ratio approached the untested region of the claimed range. The court held these tests were commensurate in scope with the claims and supported the nonobviousness thereof. However, for a third other, data was only provided over the range of 1:1 to 2:1 where the effectiveness decreased to the "expected level" as it approached the untested region. This evidence was not sufficient to overcome the obviousness rejection.);

*In re Lindner*, 457 F.2d 506, 509, 173 USPQ 356, 359 (CCPA 1972) (Evidence of nonobviousness consisted of comparing a single composition within the broad scope of the claims with the prior art. The court did not find the evidence sufficient to rebut the *prima facie* case of obviousness because there was "no adequate basis for reasonably concluding that the great number and variety of compositions included in the claims would behave in the same manner as the tested composition.").

## II. < DEMONSTRATING CRITICALITY OF A CLAIMED RANGE

To establish unexpected results over a claimed range, applicants should compare a sufficient number of tests both inside and outside the claimed range to show the criticality of the claimed range. *In re Hill*, 284 F.2d 955, 128 USPQ 197 (CCPA 1960).

### 716.02(e)  Comparison With Closest Prior Art [R-2]

An affidavit or declaration under **37 CFR 1.132** must compare the claimed subject matter with the closest prior art to be effective to rebut a *prima facie* case of obviousness. *In re Burckel*, 592 F.2d 1175, 201 USPQ 67 (CCPA 1979). "A comparison of the *claimed* invention with the disclosure of each cited reference to determine the number of claim limitations in common with each reference, bearing in mind the relative importance of particular limitations, will usually yield the closest single prior art reference." *In re Merchant*, 575 F.2d 865, 868, 197 USPQ 785, 787 (CCPA 1978) (emphasis in original). Where the comparison is not identical with the reference disclosure, deviations therefrom should be explained, *In re Finley*, 174 F.2d 130, 81 USPQ 383 (CCPA 1949), and if not explained should be noted and evaluated, and if significant, explanation should be required. *In re Armstrong*, 280 F.2d 132, 126 USPQ 281 (CCPA 1960) (deviations from example were inconsequential).

>

## I. < THE CLAIMED INVENTION MAY BE COMPARED WITH PRIOR ART THAT IS CLOSER THAN THAT APPLIED BY THE EXAMINER

Applicants may compare the claimed invention with prior art that is more closely related to the invention than the prior art relied upon by the examiner. *In re Holladay*, 584 F.2d 384, 199 USPQ 516 (CCPA 1978); *Ex parte Humber*, 217 USPQ 265 (Bd. App. 1961) (Claims to a 13-chloro substituted compound were rejected as obvious over nonchlorinated analogs of the claimed compound. Evidence showing unexpected results for the claimed compound as compared with the 9-, 12-, and 14- chloro derivatives of the compound rebutted the *prima facie* case of obviousness because the compounds compared against were closer to the claimed invention than the prior art relied upon.).

>

## II. < COMPARISONS WHEN THERE ARE TWO EQUALLY CLOSE PRIOR ART REFERENCES

Showing unexpected results over one of two equally close prior art references will not rebut *prima facie* obviousness unless the teachings of the prior art references are sufficiently similar to each other that the testing of one showing unexpected results would provide the same information as to the other. *In re Johnson*, 747 F.2d 1456, 1461, 223 USPQ 1260, 1264 (Fed. Cir. 1984) (Claimed compounds differed from the prior art either by the presence of a trifluoromethyl group instead of a chloride radical, or by the presence of an unsaturated ester group instead of a saturated ester group. Although applicant compared the claimed invention with the prior art compound containing a chloride radical, the court found this evidence insufficient to rebut the *prima facie* case of obviousness because the evidence did not show relative effectiveness over all compounds of the closest prior art. An applicant does not have to test all the compounds taught by each reference, "[h]owever, where an applicant tests less than all cited compounds, *the test must be sufficient to permit a conclusion respecting the relative effectiveness of applicant's claimed compounds and the compounds of the closest prior art.*" *Id.* (quoting *In re Payne*, 606 F.2d 303, 316, 203 USPQ 245, 256 (CCPA 1979)) (emphasis in original).).

>

## III. < THE CLAIMED INVENTION MAY BE COMPARED WITH THE CLOSEST SUBJECT MATTER THAT EXISTS IN THE PRIOR ART

Although evidence of unexpected results must compare the claimed invention with the closest prior art, applicant

is not required to compare the claimed invention with subject matter that does not exist in the prior art. *In re Geiger*, 815 F.2d 686, 689, 2 USPQ2d 1276, 1279 (Fed. Cir. 1987) (Newman, J., concurring) (Evidence rebutted *prima facie* case by comparing claimed invention with the most relevant prior art. Note that the majority held the Office failed to establish a *prima facie* case of obviousness.); *In re Chapman*, 357 F.2d 418, 148 USPQ 711 (CCPA 1966) (Requiring applicant to compare claimed invention with polymer suggested by the combination of references relied upon in the rejection of the claimed invention under **35 U.S.C. 103** "would be requiring comparison of the results of the invention with the results of the invention." 357 F.2d at 422, 148 USPQ at 714.).

### 716.02(f)  Advantages Disclosed or Inherent

The totality of the record must be considered when determining whether a claimed invention would have been obvious to one of ordinary skill in the art at the time the invention was made. Therefore, evidence and arguments directed to advantages not disclosed in the specification cannot be disregarded. *In re Chu*, 66 F.3d 292, 298-99, 36 USPQ2d 1089, 1094-95 (Fed. Cir. 1995) (Although the purported advantage of placement of a selective catalytic reduction catalyst in the bag retainer of an apparatus for controlling emissions was not disclosed in the specification, evidence and arguments rebutting the conclusion that such placement was a matter of "design choice" should have been considered as part of the totality of the record. "We have found no cases supporting the position that a patent applicant's evidence or arguments traversing a § 103 rejection must be contained within the specification. There is no logical support for such a proposition as well, given that obviousness is determined by the totality of the record including, in some instances most significantly, the evidence and arguments proffered during the give-and-take of *ex parte* patent prosecution." 66 F.3d at 299, 36 USPQ2d at 1095.). See also *In re Zenitz*, 333 F.2d 924, 928, 142 USPQ 158, 161 (CCPA 1964) (evidence that claimed compound minimized side effects of hypotensive activity must be considered because this undisclosed property would inherently flow from disclosed use as tranquilizer); *Ex parte Sasajima*, 212 USPQ 103, 104 - 05 (Bd. App. 1981) (evidence relating to initially undisclosed relative toxicity of claimed pharmaceutical compound must be considered).

The specification need not disclose proportions or values as critical for applicants to present evidence showing the

proportions or values to be critical. *In re Saunders*, 444 F.2d 599, 607, 170 USPQ 213, 220 (CCPA 1971).

### 716.02(g)  Declaration or Affidavit Form

"The reason for requiring evidence in declaration or affidavit form is to obtain the assurances that any statements or representations made are correct, as provided by **35 U.S.C. 25** and 18 U.S.C. 1001." Permitting a publication to substitute for expert testimony would circumvent the guarantees built into the statute. *Ex parte Gray*, 10 USPQ2d 1922, 1928 (Bd. Pat. App. & Inter. 1989). Publications may, however, be evidence of the facts in issue and should be considered to the extent that they are probative.

### 716.03  Commercial Success [R-2]

>

### I. < NEXUS BETWEEN CLAIMED INVENTION AND EVIDENCE OF COMMERCIAL SUCCESS REQUIRED

An applicant who is asserting commercial success to support its contention of nonobviousness bears the burden of proof of establishing a nexus between the claimed invention and evidence of commercial success.

The Federal Circuit has acknowledged that applicant bears the burden of establishing nexus, stating:

> In the *ex parte* process of examining a patent application, however, the PTO lacks the means or resources to gather evidence which supports or refutes the applicant's assertion that the sale constitute commercial success. *C.f. Ex parte Remark*, 15 USPQ2d 1498, 1503 (Bd. Pat. App. & Int. 1990)(evidentiary routine of shifting burdens in civil proceedings inappropriate in *ex parte* prosecution proceedings because examiner has no available means for adducing evidence). Consequently, the PTO must rely upon the applicant to provide hard evidence of commercial success.

*In re Huang*, 100 F.3d 135, 139-40, 40 USPQ2d 1685, 1689 (Fed. Cir. 1996). See also *In re GPAC*, 57 F.3d 1573, 1580, 35 USPQ2d 1116, 1121 (Fed. Cir. 1995); *In re Paulsen*, 30 F.3d 1475, 1482, 31 USPQ2d 1671, 1676 (Fed. Cir. 1994) (Evidence of commercial success of articles not covered by the claims subject to the **35 U.S.C. 103** rejection was not probative of nonobviousness).

The term "nexus" designates a factually and legally sufficient connection between the evidence of commercial success and the claimed invention so that the evidence is of probative value in the determination of nonobviousness. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 7 USPQ2d 1222 (Fed. Cir. 1988).

>

## II. < COMMERCIAL SUCCESS ABROAD IS RELEVANT

Commercial success abroad, as well as in the United States, is relevant in resolving the issue of nonobviousness. *Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 221 USPQ 481 (Fed. Cir. 1984).

## 716.03(a)  Commercial Success Commensurate in Scope With Claimed Invention [R-2]

>

## I. < EVIDENCE OF COMMERCIAL SUCCESS MUST BE COMMENSURATE IN SCOPE WITH THE CLAIMS

Objective evidence of nonobviousness including commercial success must be commensurate in scope with the claims. *In re Tiffin*, 448 F.2d 791, 171 USPQ 294 (CCPA 1971) (evidence showing commercial success of thermoplastic foam "cups" used in vending machines was not commensurate in scope with claims directed to thermoplastic foam "containers" broadly). In order to be commensurate *>in< scope with the claims, the commercial success must be due to claimed features, and not due to unclaimed features. *Joy Technologies Inc. v. Manbeck*, 751 F. Supp. 225, 229, 17 USPQ2d 1257, 1260 (D.D.C. 1990), *aff'd*, 959 F.2d 226, 228, 22 USPQ2d 1153, 1156 (Fed. Cir. 1992) (Features responsible for commercial success were recited only in allowed dependent claims, and therefore the evidence of commercial success was not commensurate in scope with the broad claims at issue.).

An affidavit or declaration attributing commercial success to a product or process "constructed according to the disclosure and claims of [the] patent application" or other equivalent language does not establish a nexus between the claimed invention and the commercial success because there is no evidence that the product or process which has been sold corresponds to the claimed invention, or that whatever commercial success may have occurred is attributable to the product or process defined by the claims. *Ex parte Standish*, 10 USPQ2d 1454, 1458 (Bd. Pat. App. & Inter. 1988).

>

## II. < REQUIREMENTS WHEN CLAIMED INVENTION IS NOT COEXTENSIVE WITH COMMERCIAL PRODUCT OR PROCESS

If a particular range is claimed, applicant does not need to show commercial success at every point in the range. "Where, as here, the claims are directed to a combination of ranges and procedures not shown by the prior art, and where substantial commercial success is achieved at an apparently typical point within those ranges, and the affidavits definitely indicate that operation throughout the claimed ranges approximates that at the particular points involved in the commercial operation, we think the evidence as to commercial success is persuasive." *In re Hollingsworth*, 253 F.2d 238, 240, 117 USPQ 182, 184 (CCPA 1958). See also *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 7 USPQ2d 1222 (Fed. Cir. 1988) (where the commercially successful product or process is not coextensive with the claimed invention, applicant must show a legally sufficient relationship between the claimed feature and the commercial product or process).

## 716.03(b)  Commercial Success Derived From Claimed Invention [R-2]

>

## I. < COMMERCIAL SUCCESS MUST BE DERIVED FROM THE CLAIMED INVENTION

In considering evidence of commercial success, care should be taken to determine that the commercial success alleged is directly derived from the invention claimed, in a marketplace where the consumer is free to choose on the basis of objective principles, and that such success is not the result of heavy promotion or advertising, shift in advertising, consumption by purchasers normally tied to applicant or assignee, or other business events extraneous to the merits of the claimed invention, etc. *In re Mageli*, 470 F.2d 1380, 176 USPQ 305 (CCPA 1973) (conclusory statements or opinions that increased sales were due to the merits of the invention are entitled to little weight); *In re Noznick*, 478 F.2d 1260, 178 USPQ 43 (CCPA 1973).

In *ex parte* proceedings before the Patent and Trademark Office, an applicant must show that the claimed features were responsible for the commercial success of an article if the evidence of nonobviousness is to be accorded substantial weight. See *In re Huang*, 100 F.3d 135, 140, 40 USPQ2d 1685, 1690 (Fed. Cir. 1996) (Inventor's opinion as to the purchaser's reason for buying the product is insufficient to demonstrate a nexus between the sales

and the claimed invention.). Merely showing that there was commercial success of an article which embodied the invention is not sufficient. *Ex parte Remark*, 15 USPQ2d 1498, 1502-02 (Bd. Pat. App. & Inter. 1990). Compare *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.,* 851 F.2d 1387, 7 USPQ2d 1222 (Fed. Cir. 1988) (In civil litigation, a patentee does not have to prove that the commercial success is not due to other factors. "A requirement for proof of the negative of all imaginable contributing factors would be unfairly burdensome, and contrary to the ordinary rules of evidence.").

See also *Pentec, Inc. v. Graphic Controls Corp.,* 776 F.2d 309, 227 USPQ 766 (Fed. Cir. 1985) (commercial success may have been attributable to extensive advertising and position as a market leader before the introduction of the patented product); *In re Fielder*, 471 F.2d 690, 176 USPQ 300 (CCPA 1973) (success of invention could be due to recent changes in related technology or consumer demand; here success of claimed voting ballot could be due to the contemporary drive toward greater use of automated data processing techniques); *EWP Corp. v. Reliance Universal, Inc.,* 755 F.2d 898, 225 USPQ 20 (Fed. Cir. 1985) (evidence of licensing is a secondary consideration which must be carefully appraised as to its evidentiary value because licensing programs may succeed for reasons unrelated to the unobviousness of the product or process, e.g., license is mutually beneficial or less expensive than defending infringement suits); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 231 USPQ 81 (Fed. Cir. 1986) (Evidence of commercial success supported a conclusion of nonobviousness of claims to an immunometric "sandwich" assay with monoclonal antibodies. Patentee's assays became a market leader with 25% of the market within a few years. Evidence of advertising did not show absence of a nexus between commercial success and the merits of the claimed invention because spending 25-35% of sales on marketing was not inordinate (mature companies spent 17-32% of sales in this market), and advertising served primarily to make industry aware of the product because this is not kind of merchandise that can be sold by advertising hyperbole.).

>

## II. < COMMERCIAL SUCCESS MUST FLOW FROM THE FUNCTIONS AND ADVANTAGES DISCLOSED OR INHERENT IN THE SPECIFICATION DESCRIPTION

To be pertinent to the issue of nonobviousness, the commercial success of devices falling within the claims of the patent must flow from the functions and advantages disclosed or inherent in the description in the

specification. Furthermore, the success of an embodiment within the claims may not be attributable to improvements or modifications made by others. *In re Vamco Machine & Tool, Inc.,* 752 F.2d 1564, 224 USPQ 617 (Fed. Cir. 1985).

>

## III. < IN DESIGN CASES, ESTABLISHMENT OF NEXUS IS ESPECIALLY DIFFICULT

Establishing a nexus between commercial success and the claimed invention is especially difficult in design cases. Evidence of commercial success must be clearly attributable to the design to be of probative value, and not to brand name recognition, improved performance, or some other factor. *Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 221 USPQ 97 (Fed. Cir. 1984) (showing of commercial success was not accompanied by evidence attributing commercial success of Litton microwave oven to the design thereof).

>

## IV. < SALES FIGURES MUST BE ADEQUATELY DEFINED

Gross sales figures do not show commercial success absent evidence as to market share, *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 226 USPQ 881 (Fed. Cir. 1985), or as to the time period during which the product was sold, or as to what sales would normally be expected in the market, *Ex parte Standish*, 10 USPQ2d 1454 (Bd. Pat. App. & Inter. 1988).

### 716.04  Long-Felt Need and Failure of Others [R-2]

>

## I. < THE CLAIMED INVENTION MUST SATISFY A LONG-FELT NEED WHICH WAS RECOGNIZED, PERSISTENT, AND NOT SOLVED BY OTHERS

Establishing long-felt need requires objective evidence that an art recognized problem existed in the art for a long period of time without solution. The relevance of long-felt need and the failure of others to the issue of obviousness depends on several factors. First, the need must have been a persistent one that was recognized by those of ordinary skill in the art. *In re Gershon*, 372 F.2d 535, 539, 152 USPQ 602, 605 (CCPA 1967) ("Since the alleged problem in this case was first recognized by appellants, and others apparently have not yet become aware of its existence, it goes without saying that there could not possibly be any evidence of either a long felt need in the . . . art for a solution to a problem of dubious existence or failure of

others skilled in the art who unsuccessfully attempted to solve a problem of which they were not aware."); *Orthopedic Equipment Co., Inc. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 217 USPQ 1281 (Fed. Cir. 1983) (Although the claimed invention achieved the desirable result of reducing inventories, there was no evidence of any prior unsuccessful attempts to do so.).

Second, the long-felt need must not have been satisfied by another before the invention by applicant. *Newell Companies v. Kenney Mfg. Co.,* 864 F.2d 757, 768, 9 USPQ2d 1417, 1426 (Fed. Cir. 1988) (Although at one time there was a long-felt need for a "do-it-yourself" window shade material which was adjustable without the use of tools, a prior art product fulfilled the need by using a scored plastic material which could be torn. "[O]nce another supplied the key element, there was no long-felt need or, indeed, a problem to be solved".)

Third, the invention must in fact satisfy the long-felt need. *In re Cavanagh*, 436 F.2d 491, 168 USPQ 466 (CCPA 1971).

>

## II. < LONG-FELT NEED IS MEASURED FROM THE DATE A PROBLEM IS IDENTIFIED AND EFFORTS ARE MADE TO SOLVE IT

Long-felt need is analyzed as of the date the problem is identified and articulated, and there is evidence of efforts to solve that problem, not as of the date of the most pertinent prior art references. *Texas Instruments Inc. v. Int'l Trade Comm'n,* 988 F.2d 1165, 1179, 26 USPQ2d 1018, 1029 (Fed. Cir. 1993).

>

## III. < OTHER FACTORS CONTRIBUTING TO THE PRESENCE OF A LONG-FELT NEED MUST BE CONSIDERED

The failure to solve a long-felt need may be due to factors such as lack of interest or lack of appreciation of an invention's potential or marketability rather than want of technical know-how. *Scully Signal Co. v. Electronics Corp. of America*, 570 F.2d 355, 196 USPQ 657 (1st. Cir. 1977).

See also *Environmental Designs, Ltd. v. Union Oil Co. of Cal.*, 713 F.2d 693, 698, 218 USPQ 865, 869 (Fed. Cir. 1983) (presence of legislative regulations for controlling sulfur dioxide emissions did not militate against existence of long-felt need to reduce the sulfur content in the air); *In re Tiffin,* 443 F.2d 344, 170 USPQ 88 (CCPA 1971) (fact that affidavit supporting contention of fulfillment of

a long-felt need was sworn by a licensee adds to the weight to be accorded the affidavit, as long as there is a *bona fide* licensing agreement entered into at arm's length).

## 716.05  Skepticism of Experts

"Expressions of disbelief by experts constitute strong evidence of nonobviousness." *Environmental Designs, Ltd. v. Union Oil Co. of Cal.*, 713 F.2d 693, 698, 218 USPQ 865, 869 (Fed. Cir. 1983) (citing *United States v. Adams*, 383 U.S. 39, 52, 148 USPQ 479, 483-484 (1966)) (The patented process converted all the sulfur compounds in a certain effluent gas stream to hydrogen sulfide, and thereafter treated the resulting effluent for removal of hydrogen sulfide. Before learning of the patented process, chemical experts, aware of earlier failed efforts to reduce the sulfur content of effluent gas streams, were of the opinion that reducing sulfur compounds to hydrogen sulfide would not adequately solve the problem.).

"The skepticism of an expert, expressed before these inventors proved him wrong, is entitled to fair evidentiary weight, . . . as are the five to six years of research that preceded the claimed invention." *In re Dow Chemical Co.*, 837 F.2d 469, 5 USPQ2d 1529 (Fed. Cir. 1988); *Burlington Industries Inc. v. Quigg,* 822 F.2d 1581, 3 USPQ2d 1436 (Fed. Cir. 1987) (testimony that the invention met with initial incredulity and skepticism of experts was sufficient to rebut the *prima facie* case of obviousness based on the prior art).

## 716.06  Copying [R-9]

Another form of secondary evidence which may be presented by applicants during prosecution of an application, but which is more often presented during litigation, is evidence that competitors in the marketplace are copying the invention instead of using the prior art. However, more than the mere fact of copying is necessary to make that action significant because copying may be attributable to other factors such as a lack of concern for patent property or contempt for the*>*patentee's*<* ability to enforce the patent. *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 226 USPQ 881 (Fed. Cir. 1985). Evidence of copying was persuasive of nonobviousness when an alleged infringer tried for a substantial length of time to design a product or process similar to the claimed invention, but failed and then copied the claimed invention instead. *Dow Chem. Co. v. American Cyanamid Co.,* 816 F.2d 617, 2 USPQ2d 1350 (Fed. Cir. 1987). Alleged copying is not persuasive of nonobviousness when the copy is not identical to the claimed product, and the other manufacturer had not

expended great effort to develop its own solution. *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 227 USPQ 766 (Fed. Cir. 1985). See also *Vandenberg v. Dairy Equipment Co.*, 740 F.2d 1560, 1568, 224 USPQ 195, 199 (Fed. Cir. 1984) (evidence of copying not found persuasive of nonobviousness) and *Panduit Corp. v. Dennison Manufacturing Co.*, 774 F.2d 1082, 1098-99, 227 USPQ 337, 348, 349 (Fed. Cir. 1985), *vacated on other grounds*, 475 U.S. 809, 229 USPQ 478 (1986), *on remand*, 810 F.2d 1561, 1 USPQ2d 1593 (Fed. Cir. 1987) (evidence of copying found persuasive of nonobviousness where admitted infringer failed to satisfactorily produce a solution after 10 years of effort and expense).

### 716.07  Inoperability of References

Since every patent is presumed valid (**35 U.S.C. 282**), and since that presumption includes the presumption of operability *(Metropolitan Eng. Co. v. Coe*, 78 F.2d 199, 25 USPQ 216 (D.C.Cir. 1935), examiners should not express any opinion on the operability of a patent. Affidavits or declarations attacking the operability of a patent cited as a reference must rebut the presumption of operability by a preponderance of the evidence. *In re Sasse*, 629 F.2d 675, 207 USPQ 107 (CCPA 1980).

Further, since in a patent it is presumed that a process if used by one skilled in the art will produce the product or result described therein, such presumption is not overcome by a mere showing that it is possible to operate within the disclosure without obtaining the alleged product. *In re Weber*, 405 F.2d 1403, 160 USPQ 549 (CCPA 1969). It is to be presumed also that skilled workers would as a matter of course, if they do not immediately obtain desired results, make certain experiments and adaptations, within the skill of the competent worker. The failures of experimenters who have no interest in succeeding should not be accorded great weight. *In re Michalek*, 162 F.2d 229, 74 USPQ 107 (CCPA 1947); *In re Reid*, 179 F.2d 998, 84 USPQ 478 (CCPA 1950).

Where the affidavit or declaration presented asserts inoperability in features of the reference which are not relied upon, the reference is still effective as to other features which are operative. *In re Shepherd*, 172 F.2d 560, 80 USPQ 495 (CCPA 1949).

Where the affidavit or declaration presented asserts that the reference relied upon is inoperative, the claims represented by applicant must distinguish from the alleged inoperative reference disclosure. *In re Crosby*, 157 F.2d 198, 71 USPQ 73 (CCPA 1946). See also *In re Epstein*, 32 F.3d 1559, 31 USPQ2d 1817 (Fed. Cir. 1994) (lack of diagrams, flow charts, and other details in the prior art references did not render them nonenabling in view of the fact that applicant's own specification failed to provide such detailed information, and that one skilled in the art would have known how to implement the features of the references).

If a patent teaches or suggests the claimed invention, an affidavit or declaration by patentee that he or she did not intend the disclosed invention to be used as claimed by applicant is immaterial. *In re Pio*, 217 F.2d 956, 104 USPQ 177 (CCPA 1954). Compare *In re Yale*, 434 F.2d 66, 168 USPQ 46 (CCPA 1970) (Correspondence from a co-author of a literature article confirming that the article misidentified a compound through a typographical error that would have been obvious to one of ordinary skill in the art was persuasive evidence that the erroneously typed compound was not put in the possession of the public.).

### 716.08  Utility and Operability of Applicant's Disclosure

See **MPEP § 2107.02**, for guidance on when it is proper to require evidence of utility or operativeness, and how to evaluate any evidence which is submitted to overcome a rejection under **35 U.S.C. 101** for lack of utility. See **MPEP § 2107** - **§ 2107.03** generally for utility examination guidelines and an overview of legal precedent relevant to the utility requirement of **35 U.S.C. 101**.

### 716.09  Sufficiency of Disclosure

See **MPEP § 2164** - **§ 2164.08(c)** for guidance in determining whether the specification provides an enabling disclosure in compliance with **35 U.S.C. 112**, first paragraph.

Once the examiner has established a *prima facie* case of lack of enablement, the burden falls on the applicant to present persuasive arguments, supported by suitable proofs where necessary, that one skilled in the art would have been able to make and use the claimed invention using the disclosure as a guide. *In re Brandstadter*, 484 F.2d 1395, 179 USPQ 286 (CCPA 1973). Evidence to supplement a specification which on its face appears deficient under **35 U.S.C. 112** must establish that the information which must be read into the specification to make it complete would have been known to those of ordinary skill in the art. *In re Howarth*, 654 F.2d 103, 210 USPQ 689 (CCPA 1981) (copies of patent specifications which had been opened for inspection in Rhodesia, Panama, and Luxembourg prior to the U.S. filing date of the applicant were not sufficient to overcome a rejection for lack of enablement under **35 U.S.C. 112**, first paragraph).

Affidavits or declarations presented to show that the disclosure of an application is sufficient to one skilled in the art are not acceptable to establish facts which the specification itself should recite. *In re Buchner*, 929 F.2d 660, 18 USPQ2d 1331 (Fed. Cir. 1991) (Expert described how he would construct elements necessary to the claimed invention whose construction was not described in the application or the prior art; this was not sufficient to demonstrate that such construction was well-known to those of ordinary skill in the art.); *In re Smyth*, 189 F.2d 982, 90 USPQ 106 (CCPA 1951).

Affidavits or declarations purporting to explain the disclosure or to interpret the disclosure of a pending application are usually not considered. *In re Oppenauer*, 143 F.2d 974, 62 USPQ 297 (CCPA 1944). But see *Glaser v. Strickland*, 220 USPQ 446 (Bd. Pat. Int. 1983) which reexamines the rationale on which *In re Oppenauer* was based in light of the Federal Rules of Evidence. The Board stated as a general proposition "Opinion testimony which merely purports to state that a claim or count, is 'disclosed' in an application involved in an interference . . . should not be given any weight. Opinion testimony which purports to state that a particular feature or limitation of a claim or count is disclosed in an application involved in an interference and which explains the underlying factual basis for the opinion may be helpful and can be admitted. The weight to which the latter testimony may be entitled must be evaluated strictly on a case-by-case basis."

**716.10 Attribution**

Under certain circumstances an affidavit or declaration may be submitted which attempts to attribute an activity, a reference or part of a reference to the applicant. If successful, the activity or the reference is no longer applicable. When subject matter, disclosed but not claimed in a patent application filed jointly by S and another, is claimed in a later application filed by S, the joint patent or joint patent application publication is a valid reference available as prior art under **35 U.S.C. 102(a)**, (e), or (f) unless overcome by affidavit or declaration under **37 CFR 1.131** showing prior invention (see **MPEP § 715**) or an unequivocal declaration by S under **37 CFR 1.132** that he or she conceived or invented the subject matter disclosed in the patent or published application. Disclaimer by the other patentee or other applicant of the published application should not be required but, if submitted, may be accepted by the examiner.

Where there is a published article identifying the authorship (**MPEP § 715.01(c)**) or a patent or an application publication identifying the inventorship (**MPEP § 715.01(a)**) that discloses subject matter being claimed in an application undergoing examination, the designation of authorship or inventorship does not raise a presumption of inventorship with respect to the subject matter disclosed in the article or with respect to the subject matter disclosed but not claimed in the patent or published application so as to justify a rejection under **35 U.S.C. 102(f)**.

However, it is incumbent upon the inventors named in the application, in response to an inquiry regarding the appropriate inventorship under **35 U.S.C. 102(f)** or to rebut a rejection under **35 U.S.C. 102(a)** or (e), to provide a satisfactory showing by way of affidavit under **37 CFR 1.132** that the inventorship of the application is correct in that the reference discloses subject matter derived from the applicant rather than invented by the author, patentee, or applicant of the published application notwithstanding the authorship of the article or the inventorship of the patent or published application. *In re Katz*, 687 F.2d 450, 455, 215 USPQ 14, 18 (CCPA 1982) (inquiry is appropriate to clarify any ambiguity created by an article regarding inventorship and it is then incumbent upon the applicant to provide "a satisfactory showing that would lead to a reasonable conclusion that [applicant] is the ... inventor" of the subject matter disclosed in the article and claimed in the application).

An uncontradicted "unequivocal statement" from the applicant regarding the subject matter disclosed in an article, patent, or published application will be accepted as establishing inventorship. *In re DeBaun*, 687 F.2d 459, 463, 214 USPQ 933, 936 (CCPA 1982). However, a statement by the applicants regarding their inventorship in view of an article, patent, or published application may not be sufficient where there is evidence to the contrary. *Ex parte Kroger*, 218 USPQ 370 (Bd. App. 1982) (a rejection under **35 U.S.C. 102(f)** was affirmed notwithstanding declarations by the alleged actual inventors as to their inventorship in view of a nonapplicant author submitting a letter declaring the author's inventorship); *In re Carreira*, 532 F.2d 1356, 189 USPQ 461 (CCPA 1976) (disclaiming declarations from patentees were directed at the generic invention and not at the claimed species, hence no need to consider derivation of the subject matter).

A successful **37 CFR 1.132** affidavit or declaration establishing derivation by the author, patentee, or applicant of the published application of a first reference does not enable an applicant to step into the shoes of that author, patentee, or applicant of the published application in regard to its date of publication so as to defeat a later second reference. *In re Costello*, 717 F.2d 1346, 1350, 219 USPQ 389, 392 (Fed. Cir. 1983).

**EXAMPLES**

The following examples demonstrate the application of an attribution affidavit or declaration.

**Example 1**

During the search the examiner finds a reference fully describing the claimed invention. The applicant is the author or patentee and it was published or patented less than one year prior to the filing date of the application. The reference cannot be used against applicant since it does not satisfy the 1-year time requirement of **35 U.S.C. 102(b)**.

**Example 2**

Same facts as above, but the author or patentee is an entity different from applicant. Since the entities are different, the reference is prior art under **35 U.S.C. 102(a)** or (e).

In the situation described in Example 2, an affidavit under **37 CFR 1.132** may be submitted to show that the relevant portions of the reference originated with or were obtained from applicant. Thus the affidavit attempts to convert the fact situation from that described in Example 2 to the situation described in Example 1.

**718 Affidavit or Declaration to Disqualify Commonly Owned Patent as Prior Art, 37 CFR 1.130 [R-6]**

*37 CFR 1.130 Affidavit or declaration to disqualify commonly owned patent or published application as prior art.*

(a)  When any claim of an application or a patent under reexamination is rejected under 35 U.S.C. **103** on a U.S. patent or U.S. patent application publication which is not prior art under 35 U.S.C. **102(b)**, and the inventions defined by the claims in the application or patent under reexamination and by the claims in the patent or published application are not identical but are not patentably distinct, and the inventions are owned by the same party, the applicant or owner of the patent under reexamination may disqualify the patent or patent application publication as prior art. The patent or patent application publication can be disqualified as prior art by submission of:(1)  A terminal disclaimer in accordance with § **1.321(c)**; and

(2)  An oath or declaration stating that the application or patent under reexamination and patent or published application are currently owned by the same party, and that the inventor named in the application or patent under reexamination is the prior inventor under 35 U.S.C. **104**.

(b)  [Reserved]

See MPEP § **804.03** and § **706.02(l)** through § **706.02(l)(3)** for subject matter disqualified as prior art under 35 U.S.C. **103(c)** where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

**37 CFR 1.130(a)** addresses those situations in which the rejection in an application or patent under reexamination to be overcome is a rejection under **35 U.S.C. 103** in view of a U.S. patent or U.S. patent application publication due to the requirement in 37 CFR **1.131** that any U.S. patent or U.S. patent application publication to be antedated not claim the same patentable invention (as defined in 37 CFR **41.203(a)**) as the application or patent under reexamination. The applicant or patent owner is also prevented from proceeding in an interference due to the provision in 37 CFR **41.206** that an interference will not normally be declared or continued between applications that are commonly owned, or an application and an unexpired patent that are commonly owned.

As 37 CFR **1.130(a)** addresses those situations in which the inventions defined by the claims in the application or patent under reexamination and by the claims in the U.S. patent or patent application publication are not patentably distinct, 37 CFR 1.**130(a)(1)** requires a terminal disclaimer in accordance with 37 CFR **1.321(c)**, and 37 CFR **1.130(a)(2)** requires an oath or declaration stating, *inter alia,* that the inventor named in the application or patent under reexamination is the prior inventor under 35 U.S.C. **104**. The inventor named in the application or patent under reexamination must have invented the claimed subject matter before the actual date of invention of the subject matter of the reference claims. The affidavit or declaration may be signed by the inventor(s), the attorney or agent of record, or assignee(s) of the entire interest.

The phrase "prior inventor under **35 U.S.C. 104**" requires that the inventor named in the application or patent be the prior inventor within the meaning of **35 U.S.C. 104**, in that an applicant or patent owner may not:

(A)  establish a date of invention in a foreign country other than a NAFTA or WTO member country;

(B)  establish a date of invention in a WTO member country other than a NAFTA country earlier than January 1, 1996; or

(C)  establish a date of invention in a NAFTA country other than the U.S. earlier than December 8, 1993.

A U.S. patent or U.S. patent application publication that anticipates the claimed subject matter cannot be

# Chapter 2100   Patentability

**2103**      **Patent Examination Process**

**2104**      **Patentable Subject Matter**

**2105**      **Patentable Subject Matter — Living Subject Matter**

**2106**      **Patent Subject Matter Eligibility**

2106.01      Subject Matter Eligibility Analysis of Process Claims Involving Laws of Nature

**2107**      **Guidelines for Examination of Applications for Compliance with the Utility Requirement**

2107.01      General Principles Governing Utility Rejections

2107.02      Procedural Considerations Related to Rejections for Lack of Utility

2107.03      Special Considerations for Asserted Therapeutic or Pharmacological Utilities

**2111**      **Claim Interpretation; Broadest Reasonable Interpretation**

2111.01      Plain Meaning

2111.02      Effect of Preamble

2111.03      Transitional Phrases

2111.04      "Adapted to," "Adapted for," "Wherein," and "Whereby" Clauses

2111.05      Functional and Nonfunctional Descriptive Material

**2112**      **Requirements of Rejection Based on Inherency; Burden of Proof**

2112.01      Composition, Product, and Apparatus Claims

2112.02      Process Claims

**2113**      **Product-by-Process Claims**

**2114**      **Apparatus and Article Claims — Functional Language**

**2115**      **Material or Article Worked Upon by Apparatus**

**2116**      **Material Manipulated in Process**

2116.01      Novel, Unobvious Starting Material or End Product

**2121**      **Prior Art; General Level of Operability Required to Make a Prima Facie Case**

2121.01      Use of Prior Art in Rejections Where Operability Is in Question

2121.02      Compounds and Compositions — What Constitutes Enabling Prior Art

2121.03      Plant Genetics — What Constitutes Enabling Prior Art

2121.04      Apparatus and Articles — What Constitutes Enabling Prior Art

**2122**      **Discussion of Utility in the Prior Art**

**2123**      **Rejection Over Prior Art's Broad Disclosure Instead of Preferred Embodiments**

**2124**      **Exception to the Rule That the Critical Reference Date Must Precede the Filing Date**

2124.01      Tax Strategies Deemed Within the Prior Art

**2125**      **Drawings as Prior Art**

**2126**      **Availability of a Document as a "Patent" for Purposes of Rejection Under 35 U.S.C. 102(a), (b), and (d)**

2126.01      Date of Availability of a Patent as a Reference

2126.02      Scope of Reference's Disclosure Which Can Be Used to Reject Claims When the Reference Is a "Patent" but Not a "Publication"

**2127**      **Domestic and Foreign Patent Applications as Prior Art**

**2128**      **"Printed Publications" as Prior Art**

2128.01      Level of Public Accessibility Required

2128.02      Date Publication Is Available as a Reference

**2129**      **Admissions as Prior Art**

**2131**      **Anticipation — Application of 35 U.S.C. 102(a), (b), and (e)**

2131.01      Multiple Reference 35 U.S.C. 102 Rejections

2131.02      Genus-Species Situations

2131.03      Anticipation of Ranges

2131.04      Secondary Considerations

2131.05      Nonanalogous or Disparaging Prior Art

**2132**      **35 U.S.C. 102(a)**

2132.01      Publications as 35 U.S.C. 102(a) Prior Art

**2133**      **35 U.S.C. 102(b)**

2133.01      Rejections of Continuation-In-Part (CIP) Applications

2133.02      Rejections Based on Publications and Patents

2133.03      Rejections Based on "Public Use" or "On Sale"

**2134**      **35 U.S.C. 102(c)**

**2135**      **35 U.S.C. 102(d)**

2135.01      The Four Requirements of 35 U.S.C. 102(d)

**2136**      **35 U.S.C. 102(e)**

2136.01      Status of U.S. Application as a Reference

2136.02      Content of the Prior Art Available Against the Claims

2136.03      Critical Reference Date

2136.04      Different Inventive Entity; Meaning of "By Another"

2136.05      Overcoming a Rejection Under 35 U.S.C. 102(e)

**2137**      **35 U.S.C. 102(f)**

2137.01      Inventorship

2137.02      Applicability of 35 U.S.C. 103(c)

**2138**      **35 U.S.C. 102(g)**

2138.01      Interference Practice

| | |
|---|---|
| 2138.02 | "The Invention Was Made in This Country" |
| 2138.03 | "By Another Who Has Not Abandoned, Suppressed, or Concealed It" |
| 2138.04 | "Conception" |
| 2138.05 | "Reduction to Practice" |
| 2138.06 | "Reasonable Diligence" |
| **2141** | **Examination Guidelines for Determining Obviousness Under 35 U.S.C. 103** |
| 2141.01 | Scope and Content of the Prior Art |
| 2141.02 | Differences Between Prior Art and Claimed Invention |
| 2141.03 | Level of Ordinary Skill in the Art |
| **2142** | **Legal Concept of Prima Facie Obviousness** |
| **2143** | **Examples of Basic Requirements of a Prima Facie Case of Obviousness** |
| 2143.01 | Suggestion or Motivation To Modify the References |
| 2143.02 | Reasonable Expectation of Success Is Required |
| 2143.03 | All Claim Limitations Must Be Considered> |
| **2144** | **Supporting a Rejection Under 35 U.S.C. 103** |
| 2144.01 | Implicit Disclosure |
| 2144.02 | Reliance on Scientific Theory |
| 2144.03 | Reliance on Common Knowledge in the Art or "Well Known" Prior Art |
| 2144.04 | Legal Precedent as Source of Supporting Rationale |
| 2144.05 | Obviousness of Ranges |
| 2144.06 | Art Recognized Equivalence for the Same Purpose |
| 2144.07 | Art Recognized Suitability for an Intended Purpose |
| 2144.08 | Obviousness of Species When Prior Art Teaches Genus |
| 2144.09 | Close Structural Similarity Between Chemical Compounds (Homologs, Analogues, Isomers) |
| **2145** | **Consideration of Applicant's Rebuttal Arguments** |
| **2146** | **35 U.S.C. 103(c)** |
| **2161** | **Three Separate Requirements for Specification Under 35 U.S.C. 112, First Paragraph** |
| 2161.01 | Computer Programming and 35 U.S.C. 112, First Paragraph |
| **2162** | **Policy Underlying 35 U.S.C. 112, First Paragraph** |
| **2163** | **Guidelines for the Examination of Patent Applications Under the 35 U.S.C. 112, para. 1, "Written Description" Requirement** |
| 2163.01 | Support for the Claimed Subject Matter in Disclosure |
| 2163.02 | Standard for Determining Compliance With the Written Description Requirement |
| 2163.03 | Typical Circumstances Where Adequate Written Description Issue Arises |
| 2163.04 | Burden on the Examiner with Regard to the Written Description Requirement |
| 2163.05 | Changes to the Scope of Claims |
| 2163.06 | Relationship of Written Description Requirement to New Matter |
| 2163.07 | Amendments to Application Which Are Supported in the Original Description |
| **2164** | **The Enablement Requirement** |
| 2164.01 | Test of Enablement |
| 2164.02 | Working Example |
| 2164.03 | Relationship of Predictability of the Art and the Enablement Requirement |
| 2164.04 | Burden on the Examiner Under the Enablement Requirement |
| 2164.05 | Determination of Enablement Based on Evidence as a Whole |
| 2164.06 | Quantity of Experimentation |
| 2164.07 | Relationship of Enablement Requirement to Utility Requirement of 35 U.S.C. 101 |
| 2164.08 | Enablement Commensurate in Scope With the Claims |
| **2165** | **The Best Mode Requirement** |
| 2165.01 | Considerations Relevant to Best Mode |
| 2165.02 | Best Mode Requirement Compared to Enablement Requirement |
| 2165.03 | Requirements for Rejection for Lack of Best Mode |
| 2165.04 | Examples of Evidence of Concealment |
| **2171** | **Two Separate Requirements for Claims Under 35 U.S.C. 112, Second Paragraph** |
| **2172** | **Subject Matter Which Applicants Regard as Their Invention** |
| 2172.01 | Unclaimed Essential Matter |
| **2173** | **Claims Must Particularly Point Out and Distinctly Claim the Invention** |
| 2173.01 | Interpreting the Claims |
| 2173.02 | Determining Whether Claim Language is Definite |
| 2173.03 | Correspondence Between Specification and Claims |
| 2173.04 | Breadth Is Not Indefiniteness |
| 2173.05 | Specific Topics Related to Issues Under 35 U.S.C. 112, Second Paragraph |
| 2173.06 | Practice Compact Prosecution |
| **2174** | **Relationship Between the Requirements of the First and Second Paragraphs of 35 U.S.C. 112** |
| **2181** | **Identifying a 35 U.S.C. 112, Sixth Paragraph Limitation** |
| **2182** | **Scope of the Search and Identification of the Prior Art** |

2183        **Making a Prima Facie Case of Equivalence**
2184        **Determining Whether an Applicant Has
             Met the Burden of Proving Nonequivalence
             After a Prima Facie Case Is Made**
2185        **Related Issues Under 35 U.S.C. 112, First
             or Second Paragraphs**
2186        **Relationship to the Doctrine of Equivalents**
2190        **Prosecution Laches**
>

## 2103  Patent Examination Process [R-9]

## I. DETERMINE WHAT APPLICANT HAS INVENTED AND IS SEEKING TO PATENT

It is essential that patent applicants obtain a prompt yet complete examination of their applications. Under the principles of compact prosecution, each claim should be reviewed for compliance with every statutory requirement for patentability in the initial review of the application, even if one or more claims are found to be deficient with respect to some statutory requirement. Thus, USPTO personnel should state all reasons and bases for rejecting claims in the first Office action. Deficiencies should be explained clearly, particularly when they serve as a basis for a rejection. Whenever practicable, USPTO personnel should indicate how rejections may be overcome and how problems may be resolved. A failure to follow this approach can lead to unnecessary delays in the prosecution of the application.

Prior to focusing on specific statutory requirements, USPTO personnel must begin examination by determining what, precisely, the applicant has invented and is seeking to patent, and how the claims relate to and define that invention. USPTO personnel will review the complete specification, including the detailed description of the invention, any specific embodiments that have been disclosed, the claims and any specific, substantial, and credible utilities that have been asserted for the invention.

After obtaining an understanding of what applicant invented, the examiner will conduct a search of the prior art and determine whether the invention as claimed complies with all statutory requirements.

### A. Identify and Understand Any Utility for the Invention

The claimed invention as a whole must be useful. The purpose of this requirement is to limit patent protection to inventions that possess a certain level of "real world" value, as opposed to subject matter that represents nothing more than an idea or concept, or is simply a starting point for future investigation or research *(Brenner v. Manson,* 383 U.S. 519, 528-36, 148 USPQ 689, 693-96 (1966); *In re Fisher,* 421 F.3d 1365, 76 USPQ2d 1225 (Fed. Cir. 2005); *In re Ziegler,* 992 F.2d 1197, 1200-03, 26 USPQ2d 1600, 1603-06 (Fed. Cir. 1993)).

USPTO personnel should review the application to identify any asserted utility. The applicant is in the best position to explain why an invention is believed useful. Accordingly, a complete disclosure should contain some indication of the practical application for the claimed invention, i.e., why the applicant believes the claimed invention is useful. Such a statement will usually explain the purpose of the invention or how the invention may be used (e.g., a compound is believed to be useful in the treatment of a particular disorder). Regardless of the form of statement of utility, it must enable one ordinarily skilled in the art to understand why the applicant believes the claimed invention is useful. See **MPEP § 2107** for utility examination guidelines. An applicant may assert more than one utility and practical application, but only one is necessary. Alternatively, an applicant may rely on the contemporaneous art to provide that the claimed invention has a well-established utility.

### B. Review the Detailed Disclosure and Specific Embodiments of the Invention To Understand What the Applicant Has Invented

The written description will provide the clearest explanation of the applicant's invention, by exemplifying the invention, explaining how it relates to the prior art and explaining the relative significance of various features of the invention. Accordingly, USPTO personnel should continue their evaluation by

(A) determining the function of the invention, that is, what the invention does when used as disclosed (e.g., the functionality of a programmed computer); and

(B) determining the features necessary to accomplish at least one asserted practical application.

Patent applicants can assist the USPTO by preparing applications that clearly set forth these aspects of an invention.

### C. Review the Claims

The claims define the property rights provided by a patent, and thus require careful scrutiny. The goal of claim analysis is to identify the boundaries of the protection sought by the applicant and to understand how the claims relate to and define what the applicant has indicated is

on Ti-Mo-Ni alloys in which the graph contained an actual data point corresponding to a Ti alloy containing 0.25% Mo and 0.75% Ni.).

### 2131.04 Secondary Considerations

Evidence of secondary considerations, such as unexpected results or commercial success, is irrelevant to **35 U.S.C. 102** rejections and thus cannot overcome a rejection so based. *In re Wiggins*, 488 F.2d 538, 543, 179 USPQ 421, 425 (CCPA 1973).

### 2131.05 Nonanalogous >or Disparaging Prior< Art [R-5]

"Arguments that the alleged anticipatory prior art is 'nonanalogous art' or 'teaches away from the invention' or is not recognized as solving the problem solved by the claimed invention, [are] not 'germane' to a rejection under section 102." *Twin Disc, Inc. v. United States*, 231 USPQ 417, 424 (Cl. Ct. 1986) (quoting *In re Self*, 671 F.2d 1344, 213 USPQ 1, 7 (CCPA 1982)). See also *State Contracting & Eng'g Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1068, 68 USPQ2d 1481, 1488 (Fed. Cir. 2003) (The question of whether a reference is analogous art is not relevant to whether that reference anticipates. A reference may be directed to an entirely different problem than the one addressed by the inventor, or may be from an entirely different field of endeavor than that of the claimed invention, yet the reference is still anticipatory if it explicitly or inherently discloses every limitation recited in the claims.).

A reference is no less anticipatory if, after disclosing the invention, the reference then disparages it. The question whether a reference "teaches away" from the invention is inapplicable to an anticipation analysis. *Celeritas Technologies Ltd. v. Rockwell International Corp.*, 150 F.3d 1354, 1361, 47 USPQ2d 1516, 1522-23 (Fed. Cir. 1998) (The prior art was held to anticipate the claims even though it taught away from the claimed invention. "The fact that a modem with a single carrier data signal is shown to be less than optimal does not vitiate the fact that it is disclosed."). >See *Upsher-Smith Labs. v. Pamlab, LLC*, 412 F.3d 1319, 1323, 75 USPQ2d 1213, 1215 (Fed. Cir. 2005)(claimed composition that expressly excluded an ingredient held anticipated by reference composition that optionally included that same ingredient);< see also *Atlas Powder Co. v. IRECO, Inc.*, 190 F.3d 1342, 1349, 51 USPQ2d 1943, 1948 (Fed. Cir. 1999) (Claimed composition was anticipated by prior art reference that inherently met claim limitation of "sufficient aeration"

even though reference taught away from air entrapment or purposeful aeration.).

## 2132  35 U.S.C. 102(a)

*35 U.S.C. 102  Conditions for patentability; novelty and loss of right to patent.*

A person shall be entitled to a patent unless -

    (a)  the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.

*****

### I. "KNOWN OR USED"

#### "Known or Used" Means Publicly Known or Used

"The statutory language 'known or used by others in this country' (35 U.S.C. § 102(a)), means knowledge or use which is accessible to the public." *Carella v. Starlight Archery,* 804 F.2d 135, 231 USPQ 644 (Fed. Cir. 1986). The knowledge or use is accessible to the public if there has been no deliberate attempt to keep it secret. *W. L. Gore & Assoc. v. Garlock, Inc.,* 721 F.2d 1540, 220 USPQ 303 (Fed. Cir. 1983).

See **MPEP § 2128** - **§ 2128.02** for case law concerning public accessibility of publications.

#### Another's Sale of a Product Made by a Secret Process Can Be a **35 U.S.C. 102**(a) Public Use if the Process Can Be Determined by Examining the Product

"The nonsecret use of a claimed process in the usual course of producing articles for commercial purposes is a public use." But a secret use of the process coupled with the sale of the product does not result in a public use of the process unless the public could learn the claimed process by examining the product. Therefore, secret use of a process by another, even if the product is commercially sold, cannot result in a rejection under **35 U.S.C. 102(a)** if an examination of the product would not reveal the process. *Id.*

### II. "IN THIS COUNTRY"

#### Only Knowledge or Use in the U.S. Can Be Used in a **35 U.S.C. 102**(a) Rejection

The knowledge or use relied on in a **35 U.S.C. 102(a)** rejection must be knowledge or use "in this country."

Prior knowledge or use which is not present in the United States, even if widespread in a foreign country, cannot be the basis of a rejection under **35 U.S.C. 102(a)**. *In re Ekenstam*, 256 F.2d 321, 118 USPQ 349 (CCPA 1958). Note that the changes made to **35 U.S.C. 104** by NAFTA (Public Law 103-182) and Uruguay Round Agreements Act (Public Law 103-465) do not modify the meaning of "in this country" as used in **35 U.S.C. 102(a)** and thus "in this country" still means in the United States for purposes of **35 U.S.C. 102(a)** rejections.

### III. "BY OTHERS"

#### "Others" Means Any Combination of Authors or Inventors Different Than the Inventive Entity

The term "others" in **35 U.S.C. 102(a)** refers to any entity which is different from the inventive entity. The entity need only differ by one person to be "by others." This holds true for all types of references eligible as prior art under **35 U.S.C. 102(a)** including publications as well as public knowledge and use. Any other interpretation of **35 U.S.C. 102(a)** "would negate the one year [grace] period afforded under § 102(b)." *In re Katz*, 687 F.2d 450, 215 USPQ 14 (CCPA 1982).

### IV. "PATENTED IN THIS OR A FOREIGN COUNTRY"

See **MPEP § 2126** for information on the use of secret patents as prior art.

**2132.01   Publications as 35 U.S.C. 102(a) Prior Art**

**35 U.S.C. 102(a) PRIMA FACIE CASE IS ESTABLISHED IF REFERENCE PUBLICATION IS "BY OTHERS"**

A *prima facie* case is made out under **35 U.S.C. 102(a)** if, within 1 year of the filing date, the invention, or an obvious variant thereof, is described in a "printed publication" whose authorship differs in any way from the inventive entity unless it is stated within the publication itself that the publication is describing the applicant's work. *In re Katz*, 687 F.2d 450, 215 USPQ 14 (CCPA 1982). See **MPEP § 2128** for case law on what constitutes a "printed publication." Note that when the reference is a U.S. patent published within the year prior to the application filing date, a **35 U.S.C. 102(e)** rejection should be made. See **MPEP § 2136 - § 2136.05** for case law dealing with 102(e).

### APPLICANT CAN REBUT PRIMA FACIE CASE BY SHOWING REFERENCE'S DISCLOSURE WAS DERIVED FROM APPLICANT'S OWN WORK

Applicant's disclosure of his or her own work within the year before the application filing date cannot be used against him or her under **35 U.S.C. 102(a)**. *In re Katz*, 687 F.2d 450, 215 USPQ 14 (CCPA 1982) (discussed below). Therefore, where the applicant is one of the co-authors of a publication cited against his or her application, the publication may be removed as a reference by the filing of affidavits made out by the other authors establishing that the relevant portions of the publication originated with, or were obtained from, applicant. Such affidavits are called disclaiming affidavits. *Ex parte Hirschler*, 110 USPQ 384 (Bd. App. 1952). The rejection can also be overcome by submission of a specific declaration by the applicant establishing that the article is describing applicant's own work. *In re Katz*, 687 F.2d 450, 215 USPQ 14 (CCPA 1982). However, if there is evidence that the co-author has refused to disclaim inventorship and believes himself or herself to be an inventor, applicant's affidavit will not be enough to establish that applicant is the sole inventor and the rejection will stand. *Ex parte Kroger*, 219 USPQ 370 (Bd. Pat. App. & Int. 1982) (discussed below). It is also possible to overcome the rejection by adding the coauthors as inventors to the application if the requirements of **35 U.S.C. 116**, third paragraph are met. *In re Searles,* 422 F.2d 431, 164 USPQ 623 (CCPA 1970).

In *In re Katz,* 687 F.2d 450, 215 USPQ 14 (CCPA 1982), Katz stated in a declaration that the coauthors of the publication, Chiorazzi and Eshhar, "were students working under the direction and supervision of the inventor, Dr. David H. Katz." The court held that this declaration, in combination with the fact that the publication was a research paper, was enough to establish Katz as the sole inventor and that the work described in the publication was his own. In research papers, students involved only with assay and testing are normally listed as coauthors but are not considered co-inventors.

In *Ex parte Kroger,* 219 USPQ 370 (Bd. Pat. App. & Inter. 1982), Kroger, Knaster and others were listed as authors on an article on photovoltaic power generation. The article was used to reject the claims of an application listing Kroger and Rod as inventors. Kroger and Rod submitted affidavits declaring themselves to be the inventors. The affidavits also stated that Knaster merely carried out assignments and worked under the supervision and direction of Kroger. The Board stated that if this were the only evidence in the case, it would be established, under *In re Katz*, that Kroger and Rod were the only inventors. However, in this case, there was evidence that

Knaster had refused to sign an affidavit disclaiming inventorship and Knaster had introduced evidence into the case in the form of a letter to the PTO in which he alleged that he was a co-inventor. The Board held that the evidence had not been fully developed enough to overcome the rejection. Note that the rejection had been made under **35 U.S.C. 102(f)** but the Board treated the issue the same as if it had arisen under **35 U.S.C. 102(a)**. See also case law dealing with overcoming 102(e) rejections as presented in **MPEP § 2136.05**. Many of the issues are the same.

### A **37 CFR 1.131** AFFIDAVIT CAN BE USED TO OVERCOME A **35 U.S.C. 102**(a) REJECTION

When the reference is not a statutory bar under **35 U.S.C. 102(b)**, (c), or (d), applicant can overcome the rejection by swearing back of the reference through the submission of an affidavit under **37 CFR 1.131**. *In re Foster,* 343 F.2d 980, 145 USPQ 166 (CCPA 1965). If the reference is disclosing applicant's own work as derived from him or her, applicant may submit either a **37 CFR 1.131** affidavit to antedate the reference or a **37 CFR 1.132** affidavit to show derivation of the reference subject matter from applicant and invention by applicant. *In re Facius,* 408 F.2d 1396, 161 USPQ 294 (CCPA 1969). See **MPEP § 715** for more information on when an affidavit under **37 CFR 1.131** can be used to overcome a reference and what evidence is required.

### 2133   35 U.S.C. 102(b)

*35 U.S.C. 102   Conditions for patentability; novelty and loss of right to patent.*

A person shall be entitled to a patent unless -

\*\*\*\*\*

(b)   the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

\*\*\*\*\*

### THE 1-YEAR GRACE PERIOD IS EXTENDED TO THE NEXT WORKING DAY IF IT WOULD OTHERWISE END ON A HOLIDAY OR WEEKEND

Publications, patents, public uses and sales must occur "more than one year prior to the date of application for patent in the United States" in order to bar a patent under **35 U.S.C. 102(b)**. However, applicant's own activity will not bar a patent if the 1-year grace period expires on a Saturday, Sunday, or Federal holiday and the application's U.S. filing date is the next succeeding business day. *Ex*

*parte Olah* , 131 USPQ 41 (Bd. App. 1960). Despite changes to **37 CFR 1.6(a)**(2) and 1.10 which require the PTO to accord a filing date to an application as of the date of deposit as "Express Mail" with the U.S. Postal Service in accordance with **37 CFR 1.10** (e.g., a Saturday filing date), the rule changes do not affect applicant's concurrent right to defer the filing of an application until the next business day when the last day for "taking any action" falls on a Saturday, Sunday, or a Federal holiday (e.g., the last day of the 1-year grace period falls on a Saturday).

### THE 1-YEAR TIME BAR IS MEASURED FROM THE U.S. FILING DATE

If one discloses his or her own work more than 1 year before the filing of the patent application, that person is barred from obtaining a patent. *In re Katz,* 687 F.2d 450, 454, 215 USPQ 14, 17 (CCPA 1982). The 1-year time bar is measured from the U.S. filing date. Thus, applicant will be barred from obtaining a patent if the public came into possession of the invention on a date before the 1-year grace period ending with the U.S. filing date. It does not matter how the public came into possession of the invention. Public possession could occur by a public use, public sale, a publication, a patent or any combination of these. In addition, the prior art need not be identical to the claimed invention but will bar patentability if it is an obvious variant thereof. *In re Foster,* 343 F.2d 980, 145 USPQ 166 (CCPA 1966). See **MPEP § 706.02** regarding the effective U.S. filing date of an application.

### 2133.01   Rejections of Continuation-In-Part (CIP) Applications

When applicant files a continuation-in-part whose claims are not supported by the parent application, the effective filing date is the filing date of the child CIP. Any prior art disclosing the invention or an obvious variant thereof having a critical reference date more than 1 year prior to the filing date of the child will bar the issuance of a patent under **35 U.S.C. 102(b)**.   *Paperless Accounting v. Bay Area Rapid Transit System,* 804 F.2d 659, 665, 231 USPQ 649, 653 (Fed. Cir. 1986).

### 2133.02   Rejections Based on Publications and Patents

### APPLICANT'S OWN WORK WHICH WAS AVAILABLE TO THE PUBLIC BEFORE THE GRACE PERIOD MAY BE USED IN A **35 U.S.C. 102**(b) REJECTION

"Any invention described in a printed publication more than one year prior to the date of a patent application is prior art under Section 102(b), even if the

printed publication was authored by the patent applicant." *De Graffenried v. United States*, 16 USPQ2d 1321, 1330 n.7 (Cl. Ct. 1990). "Once an inventor has decided to lift the veil of secrecy from his [or her] work, he [or she] must choose between the protection of a federal patent, or the dedication of his [or her] idea to the public at large." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148, 9 USPQ2d 1847, 1851 (1989).

**A 35 U.S.C. 102(b) REJECTION CREATES A STATUTORY BAR TO PATENTABILITY OF THE REJECTED CLAIMS**

A rejection under **35 U.S.C. 102(b)** cannot be overcome by affidavits and declarations under **37 CFR 1.131** (Rule 131 Declarations), foreign priority dates, or evidence that applicant himself invented the subject matter. Outside the 1-year grace period, applicant is barred from obtaining a patent containing any anticipated or obvious claims. *In re Foster*, 343 F.2d 980, 984, 145 USPQ 166, 170 (CCPA 1965).

**2133.03  Rejections Based on "Public Use" or "On Sale" [R-5]**

**35 U.S.C. 102(b)** "contains several distinct bars to patentability, each of which relates to activity or disclosure more than one year prior to the date of the application. Two of these - the 'public use' and the 'on sale' objections - are sometimes considered together although it is quite clear that either may apply when the other does not." *Dart Indus. v. E.I. du Pont de Nemours & Co.*, 489 F.2d 1359, 1365, 179 USPQ 392, 396 (7th Cir. 1973). There may be a public use of an invention absent any sales activity. Likewise, there may be a nonpublic, e.g., "secret," sale or offer to sell an invention which nevertheless constitutes a statutory bar. *Hobbs v. United States*, 451 F.2d 849, 859-60, 171 USPQ 713, 720 (5th Cir. 1971).

In similar fashion, not all "public use" and "on sale" activities will necessarily occasion the identical result. Although both activities affect how an inventor may use an invention prior to the filing of a patent application, "non-commercial" **35 U.S.C. 102(b)** activity may not be viewed the same as similar "commercial" activity. See **MPEP § 2133.03(a)** and **§ 2133.03(e)(1)**. Likewise, "public use" activity by an applicant may not be considered in the same light as similar "public use" activity by one other than an applicant. See **MPEP § 2133.03(a)** and **§ 2133.03(e)(7)**. Additionally, the \*\*>concept of< "experimental use" \*\*>may have different< significance in "commercial" and

"non-commercial" environments. See **MPEP § 2133.03(c)** and **§ 2133.03(e)** - **§ 2133.03(e)(6)**.

It should be noted that **35 U.S.C. 102(b)** may create a bar to patentability either alone, if the device in public use or placed on sale anticipates a later claimed invention, or in conjunction with **35 U.S.C. 103**, if the claimed invention would have been obvious from the device in conjunction with the prior art. *LaBounty Mfg. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1071, 22 USPQ2d 1025, 1028 (Fed. Cir. 1992).

**POLICY CONSIDERATIONS**

(A) "One policy underlying the [on-sale] bar is to obtain widespread disclosure of new inventions to the public via patents as soon as possible." *RCA Corp. v. Data Gen. Corp.*, 887 F.2d 1056, 1062, 12 USPQ2d 1449, 1454 (Fed. Cir. 1989).

(B) Another policy underlying the public use and on-sale bars is to prevent the inventor from commercially exploiting the exclusivity of his [or her] invention substantially beyond the statutorily authorized period. *RCA Corp. v. Data Gen. Corp.,* 887 F.2d 1056, 1062, 12 USPQ2d 1449, 1454 (Fed. Cir. 1989). See **MPEP § 2133.03(e)(1)**.

(C) Another underlying policy for the public use and on-sale bars is to discourage "the removal of inventions from the public domain which the public justifiably comes to believe are freely available." *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 549, 16 USPQ2d 1587, 1591 (Fed. Cir. 1990).

**2133.03(a)  "Public Use" [R-5]**

**I. \*\*>TEST FOR "PUBLIC USE"**

The public use bar under 35 U.S.C. **102**(b) arises where the invention is in public use before the critical date and is ready for patenting. *Invitrogen Corp. v. Biocrest Manufacturing L.P.*, 424 F.3d 1374, 76 USPQ2d 1741 (Fed. Cir. 2005). As explained by the court,

> The proper test for the public use prong of the **§ 102** (b) statutory bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited. Commercial exploitation is a clear indication of public use, but it likely requires more than, for example, a secret offer for sale. Thus, the test for the public use prong includes the consideration of evidence relevant to experimentation, as well as, *inter alia* , the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed on members of the public who observed the use; and

commercial exploitation…. That evidence is relevant to discern whether the use was a public use that could raise a bar to patentability, and it is distinct from evidence relevant to the ready for patenting component of *Pfaff* 's two-part test, another necessary requirement of a public use bar

*Id.* at 1380, 76 USPQ2d at 1744 (citations omitted). See MPEP § **2133.03(c)** for a discussion of the "ready for patenting" prong of the public use and on sale statutory bars.<

"[T]o constitute the public use of an invention it is not necessary that more than one of the patent articles should be publicly used. The use of a great number may tend to strengthen the proof, but one well defined case of such use is just as effectual to annul the patent as many." Likewise, it is not necessary that more than one person use the invention. *Egbert v. Lippmann*, 104 U.S. 333, 336 (1881).

## II.  PUBLIC KNOWLEDGE IS NOT NECESSARILY PUBLIC USE UNDER 35 U.S.C. 102(b)

Mere knowledge of the invention by the public does not warrant rejection under **35 U.S.C. 102(b)**. **35 U.S.C. 102(b)** bars public use or sale, not public knowledge. *TP Labs., Inc., v. Professional Positioners, Inc.*, 724 F.2d 965, 970, 220 USPQ 577, 581 (Fed. Cir. 1984).

Note, however, that public knowledge may provide grounds for rejection under **35 U.S.C. 102(a)**. See **MPEP § 2132**.

### A.  Commercial Versus Noncommercial Use and the Impact of Secrecy

>There are limited circumstances in which a secret or confidential use of an invention may give rise to the public use bar. "[S]ecrecy of use alone is not sufficient to show that existing knowledge has not been withdrawn from public use; commercial exploitation is also forbidden." *Invitrogen*, 424 F.3d at 1382, 76 USPQ2d at 1745-46 (The fact that patentee secretly used the claimed invention internally before the critical date to develop future products that were never sold was by itself insufficient to create a public use bar to patentability.).<

### 1.  "Public Use" and "Non-secret Use" Are Not Necessarily Synonymous

"Public" is not necessarily synonymous with "non-secret." The fact "that non-secret uses of the device were

made [by the inventor or someone connected with the inventor] prior to the critical date is not itself dispositive of the issue of whether activity barring a patent under **35 U.S.C. 102(b)** occurred. The fact that the device was not hidden from view may make the use not secret, but nonsecret use is not *ipso facto* 'public use' activity. Nor, it must be added, is all secret use *ipso facto* not 'public use' within the meaning of the statute," if the inventor is making commercial use of the invention under circumstances which preserve its secrecy. *TP Labs., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 972, 220 USPQ 577, 583 (Fed. Cir. 1983) (citations omitted).

### 2.  Even If the Invention Is Hidden, Inventor Who Puts Machine or Article Embodying the Invention in Public View Is Barred from Obtaining a Patent as the Invention Is in Public Use

When the inventor or someone connected to the inventor puts the invention on display or sells it, there is a "public use" within the meaning of **35 U.S.C. 102(b)** even though by its very nature an invention is completely hidden from view as part of a larger machine or article, if the invention is otherwise used in its natural and intended way and the larger machine or article is accessible to the public. *In re Blaisdell*, 242 F.2d 779, 783, 113 USPQ 289, 292 (CCPA 1957); *Hall v. Macneale,* 107 U.S. 90, 96-97 (1882); *Ex parte Kuklo*, 25 USPQ2d 1387, 1390 (Bd. Pat. App. & Inter. 1992) (Display of equipment including the structural features of the claimed invention to visitors of laboratory is public use even though public did not see inner workings of device. The person to whom the invention is publicly disclosed need not understand the significance and technical complexities of the invention.).

### 3.  There Is No Public Use If Inventor Restricted Use to Locations Where There Was a Reasonable Expectation of Privacy and the Use Was for His or Her Own Enjoyment

An inventor's private use of the invention, for his or her own enjoyment is not a public use. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1265, 229 USPQ 805, 809 (Fed. Cir. 1986) (Inventor showed inventive puzzle to close friends while in his dorm room and later the president of the company at which he was working saw the puzzle on the inventor's desk and they discussed it. Court held that the inventor retained control and thus these actions did not result in a "public use.").

MANUAL OF PATENT EXAMINING PROCEDURE

**4.   The Presence or Absence of a Confidentiality Agreement is Not Dispositive of the Public Use Issue**

"The presence or absence of a confidentiality agreement is not dispositive of the public use issue, but 'is one factor to be considered in assessing all the evidence.'" *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1380-81, 72 USPQ2d, 1901, 1909 (Fed. Cir. 2004) (quoting *Moleculon Research Corp. v. CBS Inc.*, 793 F.2d 1261, 1266, 229 USPQ 805, 808 (Fed. Cir. 1986)). The court stressed that it is necessary to analyze the **>evidence of public use in the context of< policies that underlie the public use and on sale bar that include "'discouraging removal of inventions from the public domain that the public justifiably believes are freely available, prohibiting an extension of the period for exploiting an invention, and favoring prompt and widespread disclosure of inventions.'" *Bernhardt*, 386 F.3d at 1381, 72 USPQ2d at 1909. See also > *Invitrogen*, 424 F.3d at 1379, 76 USPQ2d at 1744;< MPEP § 2133.03, Policy Considerations. **>Evidence< that the court emphasized included the "'nature of the activity that occurred in public; the public access to and knowledge of the public use; [and] whether there were any confidentiality obligations imposed on persons who observed the use.'" *Bernhardt*, 386 F.3d at 1381, 72 USPQ2d at 1909. For example, the court in Bernhardt noted that an exhibition display at issue in the case "was not open to the public, that the identification of attendees was checked against a list of authorized names by building security and later at a reception desk near the showroom, that attendees were escorted through the showroom, and that the attendees were not permitted to make written notes or take photographs inside the showroom." *Id.* The court remanded the issue of whether the exhibition display was a public use for further proceedings since the district court "focused on the absence of any confidentiality agreements and did not discuss or analyze how the totality of the circumstances surrounding" the exhibition "comports with the policies underlying the public use bar." *Id.*

**B.   Use by Third Parties Deriving the Invention from Applicant**

**An Invention Is in Public Use If the Inventor Allows Another To Use the Invention Without Restriction or Obligation of Secrecy**

"Public use" of a claimed invention under **35 U.S.C. 102(b)** occurs when the inventor allows another person to use the invention without limitation, restriction or obligation of secrecy to the inventor." *In re Smith*, 714 F.2d 1127, 1134, 218 USPQ 976, 983 (Fed. Cir. 1983). The presence or absence of a confidentiality agreement is not itself determinative of the public use issue, but is one factor to be considered along with the time, place, and circumstances of the use which show the amount of control the inventor retained over the invention. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1265, 229 USPQ 805, 809 (Fed. Cir. 1986). See *Ex parte C*, 27 USPQ2d 1492, 1499 (Bd. Pat. App. & Inter. 1992) (Inventor sold inventive soybean seeds to growers who contracted and were paid to plant the seeds to increase stock for later sale. The commercial nature of the use of the seed coupled with the "on-sale" aspects of the contract and apparent lack of confidentiality requirements rose to the level of a "public use" bar.); *Egbert v. Lippmann*, 104 U.S. 333, 336 (1881) (Public use found where inventor allowed another to use inventive corset insert, though hidden from view during use, because he did not impose an obligation of secrecy or restrictions on its use.).

**C.   Use by Independent Third Parties**

**Use by an Independent Third Party Is Public Use If It Sufficiently "Informs" the Public of the Invention or a Competitor Could Reasonably Ascertain the Invention**

Any "nonsecret" use of an invention by someone unconnected to the inventor, such as someone who has independently made the invention, in the ordinary course of a business for trade or profit may be a "public use," *Bird Provision Co. v. Owens Country Sausage*, *Inc.*, 568 F.2d 369, 374-76, 197 USPQ 134, 138-40 (5th Cir. 1978). Additionally, even a "secret" use by another inventor of a machine or process to make a product is "public" if the details of the machine or process are ascertainable by inspection or analysis of the product that is sold or publicly displayed. *Gillman v. Stern*, 114 F.2d 28, 46 USPQ 430 (2d Cir. 1940); *Dunlop Holdings, Ltd. v. Ram Golf Corp.*, 524 F.2d 33, 36-7, 188 USPQ 481, 483-484 (7th Cir. 1975). If the details of an inventive process are not ascertainable from the product sold or displayed and the third party has kept the invention as a trade secret then that use is not a public use and will not bar a patent issuing to someone unconnected to the user. *W.L. Gore & Assocs. v. Garlock, Inc.*, 721 F.3d 1540, 1550, 220 USPQ 303, 310 (Fed. Cir. 1983). However, a device qualifies as prior art if it places the claimed features in the public's possession before the critical date even if other unclaimed aspects of the device were not publicly available. *Lockwood v. American Airlines, Inc.*, 41 USPQ2d 1961, 1964-65 (Fed. Cir. 1997) (Computer reservation system was prior art even though "essential algorithms of the SABRE software were proprietary and confidential and...those aspects of the system that were readily apparent to the public would not have been sufficient to enable one skilled in the art to duplicate the [unclaimed

aspects of] system."). The extent that the public becomes "informed" of an invention involved in public use activity by one other than an applicant depends upon the factual circumstances surrounding the activity and how these comport with the policies underlying the on sale and public use bars. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 549, 16 USPQ2d 1587, 1591 (Fed. Cir. 1990) (quoting *King Instrument Corp. v. Otari Corp.*, 767 F.2d 833, 860, 226 USPQ 402, 406 (Fed. Cir. 1985)). By way of example, in an allegedly "secret" use by a third party other than an applicant, if a large number of employees of such a party, who are not under a promise of secrecy, are permitted unimpeded access to an invention, with affirmative steps by the party to educate other employees as to the nature of the invention, the public is "informed." *Chemithon Corp. v. Proctor & Gamble Co.,* 287 F. Supp. 291, 308, 159 USPQ 139, 154 (D.Md. 1968), *aff'd.*, 427 F.2d 893, 165 USPQ 678 (4th Cir. 1970).

Even if public use activity by one other than an applicant is not sufficiently "informing," there may be adequate grounds upon which to base a rejection under **35 U.S.C. 102(f)** and **35 U.S.C. 102(g)**. See *Dunlop Holdings Ltd. v. Ram Golf Corp.*, 524 F.2d 33, 188 USPQ 481 (7th Cir. 1975). See **MPEP § 2137** and **§ 2138**.

**2133.03(b)  "On Sale" [R-5]**

An impermissible sale has occurred if there was a definite sale, or offer to sell, more than 1 year before the effective filing date of the U.S. application and the subject matter of the sale, or offer to sell, fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art. *Ferag AG v. Quipp, Inc.*, 45 F.3d 1562, 1565, 33 USPQ2d 1512, 1514 (Fed. Cir. 1995). The on-sale bar of **35 U.S.C. 102(b)** is triggered if the invention is both (1) the subject of a commercial offer for sale not primarily for experimental purposes and (2) ready for patenting. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67, 48 USPQ2d 1641, 1646-47 (1998). Traditional contract law principles are applied when determining whether a commercial offer for sale has occurred. See *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1048, 61 USPQ2d 1225, 1229 (Fed. Cir. 2001), *petition for cert. filed*, 71 USLW 3093 (Jul. 03, 2002) (No. 02-39); *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041,1047, 59 USPQ2d 1121, 1126 (Fed. Cir. 2001) ("As a general proposition, we will look to the Uniform Commercial Code ('UCC') to define whether … a communication or series of communications rises to the level of a commercial offer for sale.").

**I.  THE MEANING OF "SALE"**

A sale is a contract between parties wherein the seller agrees "to give and to pass rights of property" in return for the buyer's payment or promise "to pay the seller for the things bought or sold." *In re Caveney*, 761 F.2d 671, 676, 226 USPQ 1, 4 (Fed. Cir. 1985). A contract for the sale of goods requires a concrete offer and acceptance of that offer. See, e.g., *Linear Tech.*, 275 F.3d at 1052-54, 61 USPQ2d at 1233-34 (Court held there was no sale within the meaning of **35 U.S.C. 102(b)** where prospective purchaser submitted an order for goods at issue, but received an order acknowledgement reading "will advise-not booked." Prospective purchaser would understand that order was not accepted.).

**A.  Conditional Sale May Bar a Patent**

An invention may be deemed to be "on sale" even though the sale was conditional. The fact that the sale is conditioned on buyer satisfaction does not, without more, prove that the sale was for an experimental purpose. *Strong v. General Elec. Co.*, 434 F.2d 1042, 1046, 168 USPQ 8, 12 (5th Cir. 1970).

**B.  Nonprofit Sale May Bar a Patent**

A "sale" need not be for profit to bar a patent. If the sale was for the commercial exploitation of the invention, it is "on sale" within the meaning of **35 U.S.C. 102(b)**. *In re Dybel*, 524 F.2d 1393, 1401, 187 USPQ 593, 599 (CCPA 1975) ("Although selling the devices for a profit would have demonstrated the purpose of commercial exploitation, the fact that appellant realized no profit from the sales does not demonstrate the contrary.").

**C.  A Single Sale or Offer To Sell May Bar a Patent**

Even a single sale or offer to sell the invention may bar patentability under **35 U.S.C. 102(b)**. *Consolidated Fruit-Jar Co. v. Wright*, 94 U.S. 92, 94 (1876); *Atlantic Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 836-37, 23 USPQ2d 1481, 1483 (Fed. Cir. 1992).

**D.  A Sale of Rights Is Not a Sale of the Invention and Will Not in Itself Bar a Patent**

"[A]n assignment or sale of the rights in the invention and potential patent rights is not a sale of 'the invention' within the meaning of section **102**(b)." *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1267, 229 USPQ 805, 809 (Fed. Cir. 1986); see also *Elan Corp., PLC v. Andrx Pharms. Inc.*, 366 F.3d 1336, 1341, 70

USPQ2d 1722, 1728 (Fed. Cir. 2004); *In re Kollar*, 286 F.3d 1326, 1330 n.3, 1330-1331, 62 USPQ2d 1425, 1428 n.3, 1428-1429 (Fed. Cir. 2002) (distinguishing licenses which trigger the on-sale bar (e.g., a standard computer software license wherein the product is just as immediately transferred to the licensee as if it were sold), from licenses that merely grant rights to an invention which do not *per se* trigger the on-sale bar (e.g., exclusive rights to market the invention or potential patent rights)); *Group One, Ltd. v. Hallmark Cards, Inc.,* 254 F.3d 1041, 1049 n. 2, 59 USPQ2d 1121, 1129 n. 2 (Fed. Cir. 2001).

### E.  Buyer Must Be Uncontrolled by the Seller or Offerer

A sale or offer for sale must take place between separate entities.  *In re Caveney*, 761 F.2d 671, 676, 226 USPQ 1, 4 (Fed. Cir. 1985). "Where the parties to the alleged sale are related, whether there is a statutory bar depends on whether the seller so controls the purchaser that the invention remains out of the public's hands.  *Ferag AG v. Quipp, Inc.*, 45 F.3d 1562, 1566, 33 USPQ2d 1512, 1515 (Fed. Cir. 1995) (Where the seller is a parent company of the buyer company, but the President of the buyer company had "essentially unfettered" management authority over the operations of the buyer company, the sale was a statutory bar.).

### II.  OFFERS FOR SALE

"Only an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under §102(b)."  *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041,1048, 59 USPQ2d 1121, 1126 (Fed. Cir. 2001).

### A.  Rejected or Unreceived Offer for Sale Is Enough To Bar a Patent

Since the statute creates a bar when an invention is placed "on sale," a mere offer to sell is sufficient commercial activity to bar a patent.  *In re Theis*, 610 F.2d 786, 791, 204 USPQ 188, 192 (CCPA 1979). Even a rejected offer may create an on sale bar.  *UMC Elecs. v. United States*, 816 F.2d 647, 653, 2 USPQ2d 1465, 1469 (Fed. Cir. 1987). In fact, the offer need not even be actually received by a prospective purchaser.  *Wende v. Horine*, 225 F. 501 (7th Cir. 1915).

### B.  Delivery of the Offered Item Is Not Required

"It is not necessary that a sale be consummated for the bar to operate."  *Buildex v. Kason Indus., Inc.,* 849 F.2d

1461, 1463-64, 7 USPQ2d 1325, 1327-28 (Fed. Cir. 1988) (citations omitted). See also  *Weatherchem Corp. v. J.L. Clark Inc.,*  163 F.3d 1326, 1333, 49 USPQ2d 1001, 1006-07 (Fed. Cir. 1998) (A signed purchase agreement prior to the critical date constituted a commercial offer; it was immaterial that there was no delivery of later patented caps and no exchange of money until after critical date.).

### C.  Seller Need Not Have the Goods "On Hand" when the Offer for Sale Is Made

Goods need not be "on hand" and transferred at the time of the sale or offer. The date of the offer for sale is the effective date of the "on sale" activity.  *J. A. La Porte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1582, 229 USPQ 435, 438 (Fed. Cir. 1986). However, the invention must be complete and "ready for patenting" (see MPEP § 2133.03(c)) before the critical date.  *Pfaff v. Wells Elecs., Inc. ,*  525 U.S. 55, 67, 119 S.Ct. 304, 311-12, 48 USPQ2d 1641, 1647 (1998). See also  *Micro Chemical, Inc. v. Great Plains Chemical Co.,* 103 F.3d 1538, 1545, 41 USPQ2d 1238, 1243 (Fed. Cir. 1997) (The on-sale bar was not triggered by an offer to sell because the inventor "was not close to completion of the invention at the time of the alleged offer and had not demonstrated a high likelihood that the invention would work for its intended purpose upon completion.");  *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 225 USPQ 634 (Fed. Cir. 1985) (Where there was no evidence that the samples shown to the potential customers were made by the new process and apparatus, the offer to sell did not rise to the level of an on sale bar.). Compare  *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 221 USPQ 561 (Fed. Cir. 1984) (Where a "make shift" model of the inventive product was shown to the potential purchasers in conjunction with the offer to sell, the offer was enough to bar a patent under **35 U.S.C. 102(b).**).

### D.  Material Terms of an Offer for Sale Must be Present

"[A] communication that fails to constitute a definite offer to sell the product and to include material terms is not an 'offer' in the contract sense."  *Elan Corp., PLC v. Andrx Pharms. Inc.*, 366 F.3d 1336, 1341, 70 USPQ2d 1722, 1728 (Fed. Cir. 2004). The court stated that an "offer to enter into a license under a patent for future sale of the invention covered by the patent when and if it has been developed... is not an offer to sell the patented invention that constitutes an on-sale bar."  *Id.*, 70 USPQ2d at 1726. Accordingly, the court concluded that Elan's letter was not an offer to sell a product. In addition, the court stated that the letter lacked material terms of a commercial offer

such as pricing for the product, quantities, time and place of delivery, and product specifications and that the dollar amount in the letter was not a price term for the sale of the product but rather the amount requested was to form and continue a partnership, explicitly referred to as a "licensing fee." *Id.*

### III. SALE BY INVENTOR, ASSIGNEE OR OTHERS ASSOCIATED WITH THE INVENTOR IN THE COURSE OF BUSINESS

#### A. Sale Activity Need Not Be Public

Unlike questions of public use, there is no requirement that "on sale" activity be "public." "Public" as used in **35 U.S.C. 102(b)** modifies "use" only. "Public" does not modify "sale." *Hobbs v. United States*, 451 F.2d 849, 171 USPQ 713, 720 (5th Cir. 1971).

#### B. Inventor's Consent to the Sale Is Not a Prerequisite To Finding an On Sale Bar

If the invention was placed on sale by a third party who obtained the invention from the inventor, a patent is barred even if the inventor did not consent to the sale or have knowledge that the invention was embodied in the sold article. *Electric Storage Battery Co. v. Shimadzu*, 307 U.S. 5, 41 USPQ 155 (1938); *In re Blaisdell*, 242 F.2d 779, 783, 113 USPQ 289, 292 (CCPA 1957); *CTS Corp. v. Electro Materials Corp. of America*, 469 F. Supp. 801, 819, 202 USPQ 22, 38 (S.D.N.Y. 1979).

#### C. Objective Evidence of Sale or Offer To Sell Is Needed

In determining if a sale or offer to sell the claimed invention has occurred, a key question to ask is whether ** the inventor sold or offered for sale a product that embodies the invention claimed in the application. Objective evidence such as a description of the inventive product in the contract of sale or in another communication with the purchaser controls over an uncommunicated intent by the seller to deliver the inventive product under the contract for sale. *Ferag AG v. Quipp, Inc.*, 45 F.3d 1562, 1567, 33 USPQ2d 1512, 1516 (Fed. Cir. 1995) (On sale bar found where initial negotiations and agreement containing contract for sale neither clearly specified nor precluded use of the inventive design, but an order confirmation prior to the critical date did specify use of inventive design.). The purchaser need not have actual knowledge of the invention for it to be on sale. The determination of whether "the offered product is in fact the claimed invention may be established by any relevant evidence, such as memoranda, drawings,

correspondence, and testimony of witnesses." *RCA Corp. v. Data Gen. Corp.*, 887 F.2d 1056, 1060, 12 USPQ2d 1449, 1452 (Fed. Cir. 1989). However, "what the purchaser reasonably believes the inventor to be offering is relevant to whether, on balance, the offer objectively may be said to be of the patented invention." *Envirotech Corp. v. Westech Eng'g, Inc.*, 904 F.2d 1571, 1576, 15 USPQ2d 1230, 1234 (Fed. Cir. 1990) (Where a proposal to supply a general contractor with a product did not mention a new design but, rather, referenced a prior art design, the uncommunicated intent of the supplier to supply the new design if awarded the contract did not constitute an "on sale" bar to a patent on the new design, even though the supplier's bid reflected the lower cost of the new design.).

### IV. SALES BY INDEPENDENT THIRD PARTIES

#### A. Sales or Offers for Sale by Independent Third Parties Will Bar a Patent

Sale or offer for sale of the invention by an independent third party more than 1 year before the filing date of applicant's patent will bar applicant from obtaining a patent. "An exception to this rule exists where a patented method is kept secret and remains secret after a sale of the unpatented product of the method. Such a sale prior to the critical date is a bar if engaged in by the patentee or patent applicant, but not if engaged in by another." *In re Caveney*, 761 F.2d 671, 675-76, 226 USPQ 1, 3-4 (Fed. Cir. 1985).

#### B. Nonprior Art Publications Can Be Used as Evidence of Sale Before the Critical Date

Abstracts identifying a product's vendor containing information useful to potential buyers such as whom to contact, price terms, documentation, warranties, training and maintenance along with the date of product release or installation before the inventor's critical date may provide sufficient evidence of prior sale by a third party to support a rejection based on **35 U.S.C. 102(b)** or **103**. *In re Epstein*, 32 F.3d 1559, 31 USPQ2d 1817 (Fed. Cir. 1994) (Examiner's rejection was based on nonprior art published abstracts which disclosed software products meeting the claims. The abstracts specified software release dates and dates of first installation which were more than 1 year before applicant's filing date.).

### 2133.03(c)  The "Invention" [R-5]

*35 U.S.C. 102  Conditions for patentability; novelty and loss of right to patent.*

MANUAL OF PATENT EXAMINING PROCEDURE

A person shall be entitled to a patent unless -

\*\*\*\*\*

(b)  the invention was…in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States

\*\*\*\*\*

(Emphasis added).

## I. **The Invention Must Be "Ready for Patenting"**

In  *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 66-68, 119 S.Ct. 304, 311-12, 48 USPQ2d 1641, 1647 (1998), the Supreme Court enunciated a two-prong test for determining whether an invention was "on sale" within the meaning of 35 U.S.C. 102(b) even if it has not yet been reduced to practice. "[T]he on-sale bar applies when two conditions are satisfied before the critical date [more than one year before the effective filing date of the U.S. application]. First, the product must be the subject of a commercial offer for sale…. Second, the invention must be ready for patenting."  *Id.* at 67, 119 S.Ct. at 311-12, 48 USPQ2d at 1646-47.

>The Federal Circuit explained that the Supreme Court's "ready for patenting" prong applies in the context of both the on sale and public use bars.  *Invitrogen Corp. v. Biocrest Manuf.*, 424 F.3d 1374, 1379, 76 USPQ2d 1741, 1744 (Fed. Cir. 2005)("A bar under section 102(b) arises where, before the critical date, the invention is in public use and ready for patenting.").< "Ready for patenting," the second prong of the  *Pfaff* test, "may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention."  *Id.* at 67, 199 S.Ct. at 311-12, 48 USPQ2d at 1647 (The patent was held invalid because the invention was "ready for patenting" when it was offered for sale more than one year prior to the application filing date. Even though the invention had not yet been reduced to practice, the manufacturer was able to produce the claimed computer chip sockets using the inventor's detailed drawings and specifications, and those sockets contained all elements of invention claimed in the patent.). See also  *Weatherchem Corp. v. J.L. Clark Inc.,* 163 F.3d 1326, 1333, 49 USPQ2d 1001, 1006-07 (Fed. Cir. 1998) (The invention was held "ready for patenting" since the detailed drawings of plastic dispensing caps offered for sale "contained each limitation of the claims and were sufficiently specific to enable person skilled in art to practice the invention".).

If the invention was actually reduced to practice before being sold or offered for sale more than 1 year before filing of the application, a patent will be barred. *Vanmoor v. Wal-Mart Stores, Inc.,* 201 F.3d 1363, 1366-67, 53 USPQ2d 1377, 1379 (Fed. Cir. 2000) ("Here the pre-critical date sales were of completed cartridges made to specifications that remained unchanged to the present day, showing that any invention embodied in the accused cartridges was reduced to practice before the critical date. The  *Pfaff* ready for patenting condition is also satisfied because the specification drawings, available prior to the critical date, were actually used to produce the accused cartridges.");  *In re Hamilton*, 882 F.2d 1576, 1580, 11 USPQ2d 1890, 1893 (Fed. Cir. 1989). "If a product that is offered for sale inherently possesses each of the limitations of the claims, then the invention is on sale, whether or not the parties to the transaction recognize that the product possesses the claimed characteristics." *Abbott Laboratories v. Geneva Pharmaceuticals, Inc.,* 182 F.3d 1315, 1319, 51 USPQ2d 1307, 1310 (Fed. Cir. 1999) (Claim for a particular anhydrous crystalline form of a pharmaceutical compound was held invalid under the on-sale bar of **35 U.S.C. 102(b)**, even though the parties to the U.S. sales of the foreign manufactured compound did not know the identity of the particular crystalline form.);  *STX LLC. v. Brine Inc.,* 211 F.3d 588, 591, 54 USPQ2d 1347, 1350 (Fed. Cir. 2000) (Claim for a lacrosse stick was held invalid under the on-sale bar despite the argument that it was not known at the time of sale whether the sticks possessed the recited "improved playing and handling characteristics." "Subjective qualities inherent in a product, such as 'improved playing and handling', cannot serve as an escape hatch to circumvent an on-sale bar."). Actual reduction to practice in the context of an on-sale bar issue usually requires testing under actual working conditions in such a way as to demonstrate the practical utility of an invention for its intended purpose beyond the probability of failure, unless by virtue of the very simplicity of an invention its practical operativeness is clear.  *Field v. Knowles*, 183 F.2d 593, 601, 86 USPQ 373, 379 (CCPA 1950);  *Steinberg v. Seitz*, 517 F.2d 1359, 1363, 186 USPQ 209, 212 (CCPA 1975).

The invention need not be ready for satisfactory commercial marketing for sale to bar a patent.  *Atlantic Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 836-37, 23 USPQ2d 1481, 1483 (Fed. Cir. 1992).

## II.  INVENTOR HAS SUBMITTED A 37 CFR 1.131 AFFIDAVIT OR DECLARATION

Affidavits or declarations submitted under **37 CFR 1.131** to swear behind a reference may constitute, among other things, an admission that an invention was "complete" more than 1 year before the filing of an application. See

*In re Foster*, 343 F.2d 980, 987-88, 145 USPQ 166, 173 (CCPA 1965); *Dart Indus. v. E.I. duPont de Nemours & Co.*, 489 F.2d 1359, 1365, 179 USPQ 392, 396 (7th Cir. 1973). Also see **MPEP § 715.10**.

## III.  SALE OF A PROCESS

A claimed process, which is a series of acts or steps, is not sold in the same sense as is a claimed product, device, or apparatus, which is a tangible item. "'Know-how' describing what the process consists of and how the process should be carried out may be sold in the sense that the buyer acquires knowledge of the process and obtains the freedom to carry it out pursuant to the terms of the transaction. However, such a transaction is not a 'sale' of the invention within the meaning of §**102**(b) because the process has not been carried out or performed as a result of the transaction." *In re Kollar*, 286 F.3d 1326, 1332, 62 USPQ2d 1425, 1429 (Fed. Cir. 2002). However, sale of a product made by the claimed process by the patentee or a licensee would constitute a sale of the process within the meaning of 35 U.S.C. **102**(b). See *id.* at 1333, 62 USPQ2d at 1429; *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147-48, 219 USPQ 13, 15-16 (Fed. Cir. 1983) (Even though the sale of a product made by a claimed method before the critical date did not reveal anything about the method to the public, the sale resulted in a "forfeiture" of any right to a patent to that method); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550, 220 USPQ 303, 310 (Fed. Cir. 1983). The application of 35 U.S.C. **102**(b) would also be triggered by actually performing the claimed process itself for consideration. See *Scaltech, Inc. v. Retec/Tetra, L.L.C.*, 269 F.3d 1321, 1328, 60 USPQ2d 1687, 1691(Fed. Cir. 2001) (Patent was held invalid under 35 U.S.C. **102**(b) based on patentee's offer to perform the claimed process for treating oil refinery waste more than one year before filing the patent application). Moreover, the sale of a device embodying a claimed process may trigger the on-sale bar. *Minton v. National Ass'n of Securities Dealers, Inc.*, 336 F.3d 1373, 1378, 67 USPQ2d 1614, 1618 (Fed. Cir. 2003) (finding a fully operational computer program implementing and thus embodying the claimed method to trigger the on-sale bar). However, the sale of a prior art device different from that disclosed in a patent that is asserted after the critical date to be capable of performing the claimed method is not an on-sale bar of the process. *Poly-America LP v. GSE Lining Tech. Inc.*, 383 F.3d 1303, 1308-09, 72 USPQ2d 1685, 1688-89 (Fed. Cir. 2004) (stating that the transaction involving the sale of the prior art device did not involve a transaction of the claimed method but instead only a device different from that described in the patent for carrying out the claimed method, where the device was not used to practice the claimed method until

well after the critical date, and where there was evidence that it was not even known whether the device could perform the claimed process).

## 2133.03(d)  "In This Country"

For purposes of judging the applicability of the **35 U.S.C. 102(b)** bars, public use or on sale activity must take place in the United States. The "on sale" bar does not generally apply where both manufacture and delivery occur in a foreign country. *Gandy v. Main Belting Co.*, 143 U.S. 587, 593 (1892). However, "on sale" status can be found if substantial activity prefatory to a "sale" occurs in the United States. *Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 433, 178 USPQ 577, 583 (9th Cir. 1973). An offer for sale, made or originating in this country, may be sufficient prefatory activity to bring the offer within the terms of the statute, even though sale and delivery take place in a foreign country. The same rationale applies to an offer by a foreign manufacturer which is communicated to a prospective purchaser in the United States prior to the critical date. *CTS Corp. v. Piher Int'l Corp.*, 593 F.2d 777, 201 USPQ 649 (7th Cir. 1979).

## 2133.03(e)  Permitted Activity; Experimental Use [R-3]

The question posed by the experimental use doctrine is "whether the primary purpose of the inventor at the time of the sale, as determined from an objective evaluation of the facts surrounding the transaction, was to conduct experimentation." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1354, 63 USPQ2d 1769, 1780 (Fed. Cir. 2002), *quoting EZ Dock v. Schafer Sys., Inc.*, 276 F.3d 1347, 1356-57, 61 USPQ2d 1289, 1295-96 (Fed. Cir. 2002) (Linn, J., concurring). Experimentation must be the primary purpose and any commercial exploitation must be incidental. **

If the use or sale was experimental, there is no bar under **35 U.S.C. 102(b)**. "A use or sale is experimental for purposes of **section 102**(b) if it represents a *bona fide* effort to perfect the invention or to ascertain whether it will answer its intended purpose.…If any commercial exploitation does occur, it must be merely incidental to the primary purpose of the experimentation to perfect the invention." *LaBounty Mfg. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1071, 22 USPQ2d 1025, 1028 (Fed. Cir. 1992) (quoting *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1581, 222 USPQ 833, 838 (Fed. Cir. 1984)). "The experimental use exception…does not include market testing where the inventor is attempting to gauge consumer demand for his claimed invention. The purpose of such activities is commercial exploitation

and not experimentation." *In re Smith*, 714 F.2d 1127, 1134, 218 USPQ 976, 983 (Fed. Cir. 1983).

## 2133.03(e)(1)  Commercial Exploitation [R-1]

\*\*

>One< policy of the on sale and public use bars is the prevention of inventors from exploiting their inventions commercially more than 1 year prior to the filing of a patent application. Therefore, if applicant's precritical date activity is\*\*>a sale or offer for sale that is< an attempt at market penetration, a patent is barred. Thus, even if there is *bona fide* experimental activity, an inventor may not commercially exploit an invention more than 1 year prior to the filing date of an application. *In re Theis*, 610 F.2d 786, 793, 204 USPQ 188, 194 (CCPA 1979).

## THE COMMERCIAL ACTIVITY MUST LEGITIMATELY ADVANCE DEVELOPMENT OF THE INVENTION TOWARDS COMPLETION

As the degree of commercial exploitation surrounding **35 U.S.C. 102(b)** activity increases, the burden on an applicant to establish clear and convincing evidence of experimental activity with respect to a public use becomes more difficult. Where the examiner has found a *prima facie* case of a sale or an offer to sell, this burden will rarely be met unless clear and convincing necessity for the experimentation is established by the applicant. This does not mean, of course, that there are no circumstances which would permit alleged experimental activity in an atmosphere of commercial exploitation. In certain circumstances, even a sale may be necessary to legitimately advance the experimental development of an invention if the primary purpose of the sale is experimental. *In re Theis*, 610 F.2d 786, 793, 204 USPQ 188, 194 (CCPA 1979); *Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 433, 178 USPQ 577, 582 (9th Cir. 1973). However, careful scrutiny by the examiner of the objective factual circumstances surrounding such a sale is essential. See *Ushakoff v. United States*, 327 F.2d 669, 140 USPQ 341 (Ct.Cl. 1964); *Cloud v. Standard Packaging Corp.*, 376 F.2d 384, 153 USPQ 317 (7th Cir. 1967).

## SIGNIFICANT FACTORS INDICATIVE OF "COMMERCIAL EXPLOITATION"

As discussed in **MPEP § 2133.03**, a policy consideration in questions of **35 U.S.C. 102(b)** activity is premature "commercial exploitation" of a "completed" or "ready for patenting" invention (see **MPEP § 2133.03(c)**). The extent of commercial activity which constitutes **35 U.S.C.**

**102(b)** "on sale" status depends upon the circumstances of the activity, the basic indicator being the subjective intent of the inventor as manifested through objective evidence. The following activities should be used by the examiner as indicia of this subjective intent:

(A)   Preparation of various contemporaneous "commercial" documents, e.g., orders, invoices, receipts, delivery schedules, etc.;

(B)   Preparation of price lists ( *Akron Brass Co. v. Elkhart Brass Mfg. Co.*, 353 F.2d 704, 709, 147 USPQ 301, 305 (7th Cir. 1965) and distribution of price quotations ( *Amphenol Corp. v. General. Time Corp.*, 158 USPQ 113, 117 (7th Cir. 1968));

(C)   Display of samples to prospective customers ( *Cataphote Corp. v. DeSoto Chemical Coatings*, *Inc.*, 356 F.2d 24, 27, 148 USPQ 527, 529 (9th Cir. 1966) *mod. on other grounds*, 358 F.2d 732, 149 USPQ 159 (9th Cir.), *cert. denied*, 385 U.S. 832 (1966); *Chicopee Mfg. Corp. v. Columbus Fiber Mills Co.*, 165 F.Supp. 307, 323-325, 118 USPQ 53, 65-67 (M.D.Ga. 1958));

(D)   Demonstration of models or prototypes ( *General Elec. Co. v. United States*, 206 USPQ 260, 266-67 (Ct. Cl. 1979); *Red Cross Mfg. v. Toro Sales Co.*, 525 F.2d 1135, 1140, 188 USPQ 241, 244-45 (7th Cir. 1975); *Philco Corp. v. Admiral Corp.*, 199 F. Supp. 797, 815-16, 131 USPQ 413, 429-30 (D.Del. 1961)), especially at trade conventions ( *InterRoyal Corp. v. Simmons Co.*, 204 USPQ 562, 563-65 (S.D. N.Y. 1979)), and even though no orders are actually obtained ( *Monogram Mfg. v. F. & H. Mfg.*,144 F.2d 412, 62 USPQ 409, 412 (9th Cir. 1944));

(E)   Use of an invention where an admission fee is charged ( *In re Josserand*, 188 F.2d 486, 491, 89 USPQ 371, 376 (CCPA 1951); *Greenewalt v. Stanley*, 54 F.2d 195, 12 USPQ 122 (3d Cir. 1931)); and

(F)   Advertising in publicity releases, brochures, and various periodicals ( *In re Theis*, 610 F.2d 786, 792 n.6, 204 USPQ 188, 193 n. 6 (CCPA 1979); *InterRoyal Corp. v. Simmons Co*., 204 USPQ 562, 564-66 (S.D.N.Y.1979); *Akron Brass, Inc. v. Elkhart Brass Mfg.*, *Inc.*, 353 F.2d 704, 709, 147 USPQ 301, 305 (7th Cir.1965); *Tucker Aluminum Prods. v. Grossman*, 312 F.2d 393, 394, 136 USPQ 244, 245 (9th Cir. 1963)).

\*\*

>See MPEP § **2133.03(e)(4)** for factors indicative of an experimental purpose.<

## 2133.03(e)(2)  Intent

"When sales are made in an ordinary commercial environment and the goods are placed outside the inventor's control, an inventor's secretly held subjective intent to 'experiment,' even if true, is unavailing without objective evidence to support the contention. Under such circumstances, the customer at a minimum must be made

aware of the experimentation." *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1072, 22 USPQ2d 1025, 1029 (Fed. Cir. 1992) (quoting *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1480 n.3, 2 USPQ2d 1364, 1366 n.3 (Fed. Cir. 1986); *Paragon Podiatry Laboratory, Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 25 USPQ2d 1561 (Fed. Cir. 1993) (Paragon sold the inventive units to the trade as completed devices without any disclosure to either doctors or patients of their involvement in alleged testing. Evidence of the inventor's secretly held belief that the units were not durable and may not be satisfactory for consumers was not sufficient, alone, to avoid a statutory bar.).

**2133.03(e)(3)  "Completeness" of the Invention [R-3]**

>

**I. < EXPERIMENTAL USE ENDS WHEN THE INVENTION IS ACTUALLY REDUCED TO PRACTICE**

Experimental use "means perfecting or completing an invention to the point of determining that it will work for its intended purpose." Therefore, experimental use "ends with an actual reduction to practice." *RCA Corp. v. Data Gen. Corp.*, 887 F.2d 1056, 1061, 12 USPQ2d 1449, 1453 (Fed. Cir. 1989). If the examiner concludes from the evidence of record that an applicant was satisfied that an invention was in fact "complete," awaiting approval by the applicant from an organization such as Underwriters' Laboratories will not normally overcome this conclusion. *InterRoyal Corp. v. Simmons Co.*, 204 USPQ 562, 566 (S.D.N.Y. 1979); *Skil Corp. v. Rockwell Manufacturing Co.*, 358 F. Supp. 1257, 1261, 178 USPQ 562, 565 (N.D.Ill. 1973), *aff'd. in part, rev'd in part sub nom. Skil Corp. v. Lucerne Products Inc.*, 503 F.2d 745, 183 USPQ 396, 399 (7th Cir. 1974), *cert. denied*, 420 U.S. 974, 185 USPQ 65 (1975). \*\* See **MPEP § 2133.03(c)** for more information of what constitutes a "complete" invention.

The fact that alleged experimental activity does not lead to specific modifications or refinements of an invention is evidence, although not conclusive evidence, that such activity is not within the realm permitted by the statute. This is especially the case where the evidence of record clearly demonstrates to the examiner that an invention was considered "complete" by an inventor at the time of the activity. Nevertheless, any modifications or refinements which did result from such experimental activity must at least be a feature of the claimed invention to be of any probative value. *In re Theis*, 610 F.2d 786, 793, 204 USPQ 188, 194 (CCPA 1979).

>

**II. < DISPOSAL OF PROTOTYPES**

Where a prototype of an invention has been disposed of by an inventor before the critical date, inquiry by the examiner should focus upon the intent of the inventor and the reasonableness of the disposal under all circumstances. The fact that an otherwise reasonable disposal of a prototype involves incidental income is not necessarily fatal. *In re Dybel*, 524 F.2d 1393, 1399, n.5, 187 USPQ 593, 597 n.5 (CCPA 1975). However, if a prototype is considered "complete" by an inventor and all experimentation on the underlying invention has ceased, unrestricted disposal of the prototype constitutes a bar under **35 U.S.C. 102(b)**. *In re Blaisdell*, 242 F.2d 779, 113 USPQ 289 (CCPA 1957); *contra*, *Watson v. Allen*, 254 F.2d 342, 117 USPQ 68 (D.C. Cir. 1958).

**2133.03(e)(4)  Factors Indicative of an Experimental Purpose [R-5]**

The courts have considered a number of factors in determining whether a claimed invention was the subject of a commercial offer for sale primarily for purposes of experimentation. "These factors include: (1) the necessity for public testing, (2) the amount of control over the experiment retained by the inventor, (3) the nature of the invention, (4) the length of the test period, (5) whether payment was made, (6) whether there was a secrecy obligation, (7) whether records of the experiment were kept, (8) who conducted the experiment, ... (9) the degree of commercial exploitation during testing[,] ... (10) whether the invention reasonably requires evaluation under actual conditions of use, (11) whether testing was systematically performed, (12) whether the inventor continually monitored the invention during testing, and (13) the nature of contacts made with potential customers." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1353, 63 USPQ2d 1769, 1780 (Fed. Cir. 2002) *quoting EZ Dock v. Schafer Sys., Inc.*, 276 F.3d 1347, 1357, 61 USPQ2d 1289, 1296 (Fed. Cir. 2002) (Linn, J., concurring). >Another critical attribute of experimentation is the "customer's awareness of the purported testing in the context of a sale." *Electromotive Div. of Gen. Motors Corp. v. Transportation Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1241, 75 USPQ2d 1650, 1658 (Fed. Cir. 2005).<

Once alleged experimental activity is advanced by an applicant to explain a *prima facie* case under **35 U.S.C. 102(b)**, the examiner must determine whether the scope and length of the activity were reasonable in terms of the experimental purpose intended by the applicant and the nature of the subject matter involved. No one of, or particular combination of, factors is necessarily determinative of this purpose.

>

See MPEP § 2133.03(e)(1) for factors indicative of commercial exploitation.

**2133.03(e)(5) Experimentation and Degree of Supervision and Control [R-5]**

**THE INVENTOR MUST MAINTAIN SUFFICIENT CONTROL OVER THE INVENTION DURING TESTING BY THIRD PARTIES**

\*\*>The<significant determinative \*>factors< in questions of experimental purpose \*>are< the extent of supervision and control maintained by an inventor over an invention during an alleged period of experimentation >, and the customer's awareness of the experimentation. *Electromotive Div. of Gen. Motors Corp. v. Transportation Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1214,75 USPQ2d 1650, 1658 (Fed. Cir. 2005)("control and customer awareness ordinarily must be proven if experimentation is to be found")<. Once a period of experimental activity has ended and supervision and control has been relinquished by an inventor without any restraints on subsequent use of an invention, an unrestricted subsequent use of the invention is a 35 U.S.C. 102(b) bar. *In re Blaisdell*, 242 F.2d 779, 784, 113 USPQ 289, 293 (CCPA 1957).

**2133.03(e)(6) Permitted Experimental Activity and Testing [R-3]**

>

**I. < DEVELOPMENTAL TESTING IS PERMITTED**

Testing of an invention in the normal context of its technological development is generally within the realm of permitted experimental activity. Likewise, experimentation to determine utility, as that term is applied in 35 U.S.C. 101, may also constitute permissible activity. See *General Motors Corp. v. Bendix Aviation Corp.*, 123 F. Supp. 506, 521, 102 USPQ 58, 69 (N.D.Ind. 1954). For example, where an invention relates to a chemical composition with no known utility, i.e., a patent application for the composition could not be filed (35 U.S.C. 101; 35 U.S.C. 112, first paragraph), continued testing to find utility would likely be permissible under 35 U.S.C. 102(b), absent a sale of the composition or other evidence of commercial exploitation. \*\*

>

**II. < MARKET TESTING IS NOT PERMITTED**

Experimentation to determine product acceptance, i.e., market testing, is typical of a trader's and not an inventor's experiment and is thus not within the area of permitted experimental activity. *Smith & Davis Mfg. Co. v. Mellon*, 58 F. 705, 707 (8th Cir. 1893) Likewise, testing of an invention for the benefit of appeasing a customer, or to conduct "minor 'tune up' procedures not requiring an inventor's skills, but rather the skills of a competent technician," are also not within the exception. *In re Theis*, 610 F.2d 786, 793, 204 USPQ 188, 193-94 (CCPA 1979).

>

**III. < EXPERIMENTAL ACTIVITY IN THE CONTEXT OF DESIGN APPLICATIONS**

The public use of an ornamental design which is directed toward generating consumer interest in the aesthetics of the design is not an experimental use. *In re Mann*, 861 F.2d 1581, 8 USPQ2d 2030 (Fed. Cir. 1988) (display of a wrought iron table at a trade show held to be public use). However, "experimentation directed to functional features of a product also containing an ornamental design may negate what otherwise would be considered a public use within the meaning of section 102(b)." *Tone Brothers, Inc. v. Sysco Corp.*, 28 F.3d 1192, 1196, 31 USPQ2d 1321, 1326 (Fed. Cir. 1994) (A study wherein students evaluated the effect of the functional features of a spice container design may be considered an experimental use.).

**2133.03(e)(7) Activity of an Independent Third Party Inventor**

**EXPERIMENTAL USE EXCEPTION IS PERSONAL TO AN APPLICANT**

The statutory bars of 35 U.S.C. 102(b) are applicable even though public use or on sale activity is by a party other than an applicant. Where an applicant presents evidence of experimental activity by such other party, the evidence will not overcome the *prima facie* case under 35 U.S.C. 102(b) based upon the activity of such party unless the activity was under the supervision and control of the applicant. *Magnetics v. Arnold Eng'g Co.*, 438 F.2d 72, 74, 168 USPQ 392, 394 (7th Cir. 1971), *Bourne v. Jones*, 114 F.Supp. 413, 419, 98 USPQ 206, 210 (S.D. Fla. 1951), *aff'd.*, 207 F.2d 173, 98 USPQ 205 (5th Cir. 1953), *cert. denied*, 346 U.S. 897, 99 USPQ 490 (1953); contra, *Watson v. Allen*, 254 F.2d 342, 117 USPQ 68 (D.C.Cir. 1957). In other words, the experimental use activity exception is personal to an applicant.

**2134 35 U.S.C. 102(c) [R-1]**

*35 U.S.C. 102 Conditions for patentability; novelty and loss of right to patent.*

A person shall be entitled to a patent unless -