**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

     Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

     Defendant.

---

**MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR SUMMARY JUDGMENT OF NO WILLFULNESS**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by its undersigned counsel, respectfully submits Its Reply In Support of Its Motion [Doc. # 370, 371, the "Motion"] Pursuant to Federal Rule of Civil Procedure 56 for Summary Judgment of No Willfulness.[1]

## I.    <u>INTRODUCTION</u>

It is well established that "willful infringement in the main must find its basis in prelitigation conduct." *In re Seagate Tech. LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007). Health Grades, Inc.'s ("Health Grades") Opposition [Doc. # 404, the "Opposition"] fails to heed this principle and, instead, focuses much of its effort on post-complaint facts and developments.

---

[1] The Court previously granted the parties' request to exceed page limitations, to fifteen pages. [Doc. # 328]

The Health Grades '060 patent issued in July 2010, but MDx did not know about the issued patent until October 2010.  *See* Fact 11(b), *infra*.  Very soon after discovering the patent, MDx consulted with counsel about it, changed its website in January 2011 to be even farther away from the '060 patent, and obtained a favorable opinion of counsel.  *Id.*  MDx was careful not to infringe the Health Grades '060 patent.  Health Grades has not set forth any evidence, much less clear and convincing evidence, that there was an objectively high likelihood that MDx's pre-litigation actions constituted infringement.

## II.   REPLY CONCERNING UNDISPUTED MATERIAL FACTS

### Strong Defenses Since Day One

1.     Health Grades' own exhibits for this point are dated months after it learned of MDx's website changes.  *See* Exhibits 2 and 12 to Opposition, Health Grades' Infringement Contentions dated July 1, 2011.  They only support the fact that Health Grades could not figure out how to make an infringement allegation for weeks after learning of MDx's website changes.

### Data Received From The First Healthcare Provider

2.     Health Grades' contention that "reasonable capability" has any role in this claim language is simply wrong; and in any event this claim construction dispute is a matter of law, not a disputed issue of fact.  Exhibit A to Motion, claim 15, col. 22, lines 8-27.  *See* MDx's Reply In Support of Its Motion for Summary Judgment of Non-Infringement, filed concurrently (the "Non-Infringement Reply").

3.     Health Grades has nothing more than mere suspicion – no evidence, and the evidence shows that only trivial percentages of physicians have ever edited even one of these fields.  *See id.*

4.      Admitted.

**Required Verification From the First Healthcare Provider**

5.      Health Grades' contention that "reasonable capability" has any role in this claim language is simply wrong; and in any event this claim construction dispute is a matter of law, not a disputed issue of fact.  Exhibit A to Motion, claim 15, col. 22, lines 8-27.  *See* Non-Infringement Reply.

6.      Health Grades' alleged "evidence" is nothing more than an indication that small percentages of physicians have edited one element – no evidence of verification is provided.  *See id.*

7.      Admitted.

**The Requirement That Third Parties Verify Data Elements**

8.      Health Grades' contention that "reasonable capability" has any role in this claim language is simply wrong; and in any event this claim construction dispute is a matter of law, not a disputed issue of fact.  Exhibit A to Motion, claim 15, col. 22, lines 22-47.  *See* Non-Infringement Reply.

9.      Health Grades' points are addressed by the following subsections.

a.      Third parties cannot "verify" information about physicians simply by the act of providing that information to MDx.  And MDx does not "verify" information by determining which information came from the most sources because MDx does not determine the factual correctness of information, *i.e.*, wrong information can be propagated by the most sources.  *See* Exhibit 4 to Opposition, West Deposition Transcript, at 71:8-75:1.

b.      Health Grades cites no facts to support its statement.

       c.     The ABMS website contains the statements quoted by Health Grades, including that "the accuracy and completeness of the records cannot be guaranteed."  Exhibit D to Motion; Exhibit 10 to Opposition.

       d.     The State of Pennsylvania website contains the statements quoted by Health Grades, including that it "makes no representations or warranties, either express or implied, as to the accuracy of any posted information."  Exhibit E to Motion.

**<u>Changes Made To Ensure No Allegation Of Infringement</u>**

10.     Admitted.

11.     Health Grades' points are addressed by the following subsections:

       a.     Dr. Greenspun is not even a person of ordinary skill in the relevant art and, therefore, he is not qualified to opine on the strength of MDx's non-infringement defenses.  *See* MDx's Motion to Preclude Any Testimony from Health Grades' Expert Dr. Greenspun [Doc. # 349] and MDx's Reply In Support of Its Motion to Preclude Any Testimony from Health Grades' Expert Dr. Greenspun [Doc. # 436].

       b.     Health Grades' points are addressed by the following subsections:

       (i) The Health Grades '060 patent issued in July 2010 (Exhibit A to Motion, Cover Page), but MDx did not know about the issued patent until October 2010.  Exhibit H,[2] West Deposition Transcript, at 103:18-22.  Very soon after discovering the patent, MDx consulted with counsel about it, changed its website in January 2011 to be even farther away from the '060 patent, and obtained a favorable opinion of counsel.  Exhibit I, Rothschild Deposition Transcript, at 29:5-45:1 and 50:5-10.

---

[2] Exhibits H and I are attachments to Exhibit 3 to this Reply.

(ii) MDx removed licensure information from its physician reports in January 2011.  Exhibits 2 and F to Motion.  Health Grades points to an aberrant screen shot of the MDx website taken on March 28, 2012, which somehow mistakenly contained licensure information.  That post-complaint evidence is more than one year after this litigation commenced and long after the January 2011 website changes took place.  It fails to show that the January 2011 website changes were not made – indeed, Health Grades in July 2011 could not point to any licensure information in a physician report.  *See* Exhibit 2 to Opposition, Health Grades' Infringement Contentions dated July 1, 2011.  The January 2011 website changes did in fact exclude licensure from its physician profiles.  Exhibits 2 and F to Motion.

(iii)    With respect to Health Grades' argument regarding internship, residency, and fellowship information provided by physicians, Health Grades' arguments actually show that its claims are not infringed.  For example, when fellowship information from the physician is incorrect, it is not included in a physician report, and so the report is not created using the information, as required by the claims.  Otherwise, the report is create using only information from the physician.  Exhibit 8 to Opposition, Boyer Deposition Transcript, at 99:15-100:12.

(iv)    MDx's January 2011 website changes also removed comparison ratings of healthcare providers, and made sure that disciplinary information is not used when patient ratings are shown.  Exhibit F to Motion.

12.    Health Grades points to search results lists for its allegation that MDx's website contains comparison ratings of healthcare providers.  Exhibit 7 to Opposition, Greenspun Report,

at ¶¶ 168-188.  But search results lists are not healthcare provider reports.  *See* MDx's Second Motion for Partial Summary Judgment of Non-Infringement [Doc. # 195], at 6-13.

13.     Admitted.

14.     Health Grades' statement does not address the relevant claim construction of the Court, *i.e.,* that the report on the first healthcare provider must include comparison ratings of other healthcare providers.

15.     To say that the claims do not require use of the third party verified information, which includes three or more of claimed data elements, belies the literal words of the claim.  *See* Exhibit A to Motion, at col. 20, lines 50-65, *also*, Fact 11(b)(ii), *supra*.

16.     See response to 15 above.

17.     See responses to 12 and 15 above.

18.     The Braginsky Opinion is indeed competent and based on solid foundation. Health Grades ignores excerpts from the Braginsky Opinion establishing this.  *See* Section 3, *infra*; Exhibit G to Motion, Braginsky Opinion.

### For Weeks, Even Health Grades Could Not Figure Out An Infringement Position

19.     Health Grades' own exhibits for this point are dated months after it learned of MDx's website changes.  See Exhibits 2 and 12 to Opposition.  They only support the fact that Health Grades could not figure out how to make an infringement allegation for weeks after learning of MDx's website changes.

20.     See response to 19 above.

21.     See response to 19 above.

22.     See response to 19 above.

23.     See response to 19 above.

24.     See response to 19 above.

## III.    ARGUMENTS

### A.    Ruling of No Willfulness is Appropriate Before Trial

Before the *Bard* decision,[3] a ruling of no willfulness on summary judgment was appropriate, and it remains appropriate after the *Bard* decision.  Health Grades' arguments to the contrary have been outright rejected.  *See MultimediaPatent Trust v. Apple Inc.*, 2012 U.S. Dist. LEXIS 167479 (S.D. Cal. Nov. 9, 2012)   (granting summary judgment of non-willfulness, stating: "As an initial matter, MPT argues that under *Bard*, whenever there are any disputed factual issues related to the willfulness determination, the factual issues must be decided first by the jury.   MPT is incorrect.") (citations omitted); *Lift-U v. Rincon*, 2012 U.S. Dist. LEXIS 153795 (N.D. Cal. Oct. 25, 2012) (post-*Bard*: granting summary judgment of no willfulness).

The cases cited by Health Grades declining grant of summary judgment are distinguishable or unhelpful here.  In *Fujitsu Ltd. v. Belkin Int'l Inc.*, 2012 U.S. Dist. LEXIS 142102, (N.D. Cal. Sep. 28, 2012), the Court denied summary judgment of non-willfulness to have the jury consider anticipation and obviousness defenses, and the patent holder had significant evidence of such defenses being questionable including the fact that the patent had survived repeated reexaminations.  *Fujitsu*, 2012 U.S. Dist. LEXIS at *107, 118 ("due weight must be given to the fact that all of the currently asserted claims have now survived three reexamination proceedings").   Unlike *Fujitsu* where there had been repeated assurances of validity from the Patent Office to counter the asserted invalidity defenses, here the MDx

---

[3] *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc. Inc.*, 682 F.3d 1003 (Fed. Cir. 2012).

defenses are non-infringement and they have been solidly supported by this Court's claim constructions, including the construction of "comparison ratings of healthcare providers."  This case is not comparable in any way to *Fujitsu*.  In *Koninklijke Philips Elecs. N.V. v. Cinram Int'l Inc.,* 2012 U.S. Dist. LEXIS 135839 (S.D.N.Y. Aug. 23, 2012), the non-willfulness inquiry involved an unfavorable opinion of counsel, whereas the inquiry here involves the opposite – a favorable opinion of counsel.  "[A]n infringer's reliance on favorable advice of counsel . . . is crucial to the [non-willfulness] analysis."  *In re Seagate Tech. LLC*, 497 F.3d 1360, 1369 (Fed. Cir. 2007).  The other cases cited by Health Grades did not examine the facts involved in the non-willfulness inquiry and are unhelpful here.

### B.     <u>MDx's Non-Infringement Defenses are Strong</u>

There cannot be willful infringement unless MDx knew of the '060 patent.  Very soon after discovering the patent, MDx consulted with counsel about it, changed its website in January 2011 to be even further away from the '060 patent, and obtained a favorable and detailed opinion of counsel.  Fact 11(b)(i), *supra*.  The January 2011 website changes provided strong defenses to any possibility of infringement.

First, MDx removed from its physician reports any ratings of other physicians.  Fact 11(b)(iv), *supra*.  Every claim of the '060 patent requires "comparison ratings" to be in healthcare provider reports, so it was a reasonable defense to remove them from MDx's provider reports.  Health Grades does not dispute that this change occurred, and Health Grade also does not argue anywhere that this defense is unreasonable.  Thus, summary judgment should be granted on this basis alone.

MDx also removed third party licensure, internship, residency, and fellowship, information from its physician reports in January 2011, and made sure that disciplinary information is not used when patient ratings are shown.   Facts 11(b)(ii)-(iv), *supra*.   These changes left only two data elements verified by third parties, when the claims require creating a report using three or more data elements verified by third parties.   Fact 15, *supra*.   It was a reasonable defense to change MDx's provider reports to use less than three data elements when the claims clearly require three or more.

MDx's other defenses are also reasonable, as explained in the Motion.

## C.    The Favorable Braginsky Opinion

Health Grades makes several arguments with respect to the Braginsky Opinion, but none of them preclude grant of summary judgment here.

First, Health Grades cannot complain that it has not deposed Mr. Braginsky yet because it was Health Grades' choice not to do so.   *See* Doc. # 307-1.   Health Grades could have deposed Mr. Braginsky in September and originally wanted to do so.   *Id.*   But Health Grades suddenly changed course and decided that it wanted to continue with its Motion to Exclude MDx's Advice of Counsel Defense [Doc. # 221], instead.   Health Grades cannot turn down an opportunity to depose Mr. Braginsky and at the same time benefit from Fed. R. Civ. P. 56(d).

Turning to the Braginsky Opinion itself, Health Grades contends that it lacks adequate foundation, but Health Grades is wrong.   Mr. Braginsky was thorough and detailed in his consideration of the facts, including, *e.g.*:

- "The study included a review of the patent, the prosecution history of the patent, the prior art references addressed in the prosecution history of the patent, the vitals.com services, and certain processes used to implement the vitals.com services as you have described them to us."  Exhibit G to Motion, Braginsky Opinion, at 1-2.

- "During the course of our investigation we have studied the information and materials provided to us by Vitals.  We have also studied the file history and relevant prior art, and have considered arguments concerning non-infringement of independent claims 1 and 15." *Id.*, at 2.

- "Based on our investigation, and as you have described the processes used to implement the vitals.com services to us, we understand that vitals.com does not create and provide access to a healthcare provider report that includes third-party verified licensure, medical internship, medical residency, and medical fellowship information." *Id.*, at 30.

- "We also understand that when vitals.com creates and provides access to a healthcare report that includes third-party verified disciplinary action information, the report does not include patient-provided information including patient ratings from one or more past or current patients received from an on-line patient experience survey completed on a vitals.com website." *Id.*

- "As a separate and independent basis for no literal infringement, we also understand that vitals.com does not provide comparison ratings of healthcare providers." *Id.*, at 31.

The above excerpts demonstrate Mr. Braginsky's careful consideration of the foundation for the Opinion.  Health Grades alleges that certain statements Mr. Braginsky received from MDx were untrue.  But its allegation is not factually supported.  *See* Fact 11(b)(ii), *supra*.  With regard to Health Grades' arguments that the Braginsky Opinion was superficial and conclusory, the Opinion itself shows this to be wrong.

## IV.    <u>CONCLUSION</u>

For all the forgoing reasons, MDx respectfully requests summary judgment of no willfulness.

Dated:  December 13, 2012                          Respectfully submitted,

                                                   <u>s:/Scott D. Stimpson</u>
                                                   Scott D. Stimpson
                                                   Scott B. Murray
                                                   David C. Lee
                                                   Sills Cummis & Gross P.C.
                                                   30 Rockefeller Plaza
                                                   New York, New York 10112

Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail:sstimpson@sillscummis.com
E-mail:smurray@sillscummis.com
E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2012, I electronically filed the foregoing MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR SUMMARY JUDGMENT OF NO WILLFULNESS with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Jesus Manuel Vazquez , Jr.
  jvazquez@rothgerber.com, phenke@rothgerber.com

- Gregory B. Kanan
  gkanan@rothgerber.com, dgrooms@rothgerber.com

- Kris John Kostolansky
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- Scott David Stimpson
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- Scott B. Murray
  smurray@sillscummis.com

- David Chunyi Lee
  dlee@sillscummis.com

- Terence M. Ridley
  ridley@wtotrial.com, norris@wtotrial.com

*s:/ David C. Lee*