**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

      Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

**MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by its undersigned counsel, respectfully submits this Reply in Support of Its Motion [Doc. # 367/368, the "Motion"] Pursuant to Federal Rule of Civil Procedure 56 for Summary Judgment of Non-Infringement.[1]

**I.    INTRODUCTION**

Health Grades' Opposition [Doc. # 405, the "Opposition] tries mightily to cure its missing proof with legal arguments. But legal arguments cannot take the place of evidence and do not create genuine issues of disputed fact. *See* Fed. R. Civ. P. 56(c). Accordingly, the summary judgment sought by MDx's Motion has been and continues to be appropriate.

---

[1] The Court previously granted the parties' request to exceed page limitations for this reply, to fifteen pages. [Doc. # 328]

1

## II.    REPLY CONCERNING UNDISPUTED MATERIAL FACTS

### Data Received From the Healthcare Provider

1.   Admitted only that claims 15 and 16 of the '060 patent require:

> at least one computer processor; and
>
> memory coupled with and readable by the at least one computer processor and comprising a series of instructions that, when executed by the at least one computer processor, cause the at least one computer processor to:
>
> . . .
>
> access healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies"; . . . .

(Exhibit A to Motion, claim 15, col. 22, lines 9-28.)  Health Grades' contention that "reasonable capability" has any role in this issue is simply wrong.  In any event, this claim construction dispute is a matter of law, not a disputed issue of fact.  *See* Section III, infra.

2.   Health Grades has no evidence that any healthcare provider has ever provided three or more of the required data elements.  *See* Exhibit B to Motion, ¶¶ 112-28; Exhibit D to Motion, § B, p.4.  The various Health Grades subparagraphs (a)-(l) are either irrelevant or factually inaccurate.

   a.   Admitted.

   b.   Admitted.

   c.   Admitted.

   d.   Admitted.

   e.   Admitted.

2

    f.  Admitted.

    g.  Health Grades' statement that it is "probable" that 1.28% of physicians in MDx's database have actually edited three or more of the claimed data elements is unsupported by any factual evidence and also blatantly false.  For this to be true, *every one (100%)* of the 1.28% of physicians (about 10,799 physicians) who edited professional appointments would have had to also specifically modify the gender and specialty data elements.  *See* Exhibit D to Motion, at p.3.  The chances of this happening are incredibly remote.[2]

    h.  Admitted only that at least 40,000 providers have made at least 322,000 edits to their profiles, but the vast majority of these changes were not made to the data elements recited in the claims.  As multiple MDx witnesses testified, most edits relate to data elements not recited in the claims, such as address.  Exhibit G,[3] Portions of Transcript of Deposition of Lawrence West, at 275:2-6, 280:5-17; Exhibit H, Portions of Transcript of Deposition of Erika Boyer, at 200:16-201:24 ("very infrequently" are the claimed elements edited).  Also, this is a red herring because we know the trivial percentages of physicians who have edited only one of the *claimed* data elements.  The chances of the *same people* needing to make *two more* edits of only these very specific claim elements, when we know that only trivial percentages of

---

[2] Per subsection (h), at least 40,000 providers have made edits to their profiles.  Of these, about 10,799 have edited professional appointments.  The number of different combinations of 10,799 physicians out of 40,000 is enormous.  Even scaling down the numbers 1000 fold, the number of distinct combinations of 11 physicians out of 40 is already 2,311,801,440 (more than 2.3 billion).  *See* calculator at www.calculatorsoup.com/calculators/discretemathematics/combinations.php.  Thus, for example, the chance of the same one combination of 11 physicians (out of 40) editing professional appointment, specialty, and gender, then, is 1 / (2,311,801,440^2), or 1 in 5,344,425,897,986,073,600.  Thus, it can be seen that the chance of the same combination of 10,799 physicians editing three of the data elements is infinitesimally small -- hardly "probable" as Health Grades contends.

[3] Exhibits G - I are attachments to Exhibit 3 of this Reply.

3

physicians have ever needed to edit even one of those elements, is remote.  Exhibit D to Motion, at p.3.

      i.    This statement is completely wrong, and Health Grades has no evidence of it.  The only alleged support is their expert's say so, without any factual underpinning.  Health Grades did not ask the MDx personnel this question, and if they had they would realize it is entirely factually wrong.  No data elements are provided by the healthcare provider if they do not edit any information.  Exhibit 4 to this Reply, Declaration of Lawrence West, ¶ 4.

      j.    Admitted that this is the document request language, but denied that it requested the query at issue.  Health Grades chose, throughout discovery and even after MDx produced certain query results many months ago, not to pursue queries showing whether any physician has ever edited three or more of the claimed data elements.  To this day, counsel for Health Grades has never sent a letter, email, or verbal request for such a query, and it was not until its Opposition to this Motion that Health Grades raised, for the first time, its allegation that this document request may have covered these queries.

      k.    See response to j.

      l.    See response to j.

**Verification by the Healthcare Provider**

3.    Health Grades' contention that "reasonable capability" has any role in this issue is simply wrong; and in any event this claim construction dispute is a matter of law not a disputed issue of fact.  Exhibit A to Motion, claim 15, col. 22, lines 8-27.  *See* Section III, *infra*.

4.    Health Grades has no evidence that healthcare providers have verified any of the data elements relevant to this Motion, and its argument on this point is predicated on a claim

4

construction that this Court did not provide. *See* Exhibit B to Motion, ¶¶ 112-28; Exhibit D to Motion, § A, p.3.

### III. DATA ELEMENTS RECEIVED FROM HEALTHCARE PROVIDER

#### A. The "Reasonable Capability" Argument Does Not Apply

Health Grades argues that, for claims 15 and 16 of the '060 patent, it does not need to show that three or more of the data elements were received from any healthcare provider because the claims only require that the system be "reasonably capable" of doing so. But these claims do not support this Health Grades argument.

##### 1. These Are Not "Reasonably Capable" Claims

Health Grades relies heavily on *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010). However, there is an important (although perhaps subtle) distinction between the claims at issue in *Finjan* and claims 15 and 16 of the '060 patent. As the Federal Circuit emphasized repeatedly in *Finjan*, those claims did not require that the software components be active or enabled. Rather, the *Finjan* claims are all phrased as structure "for" doing some function (*e.g.*, "*for preventing*," "*for obtaining*," *for forming*," etc., all emphasis added by the Federal Circuit). There is nothing in the *Finjan* claim language requiring anything other than something that *could* perform as indicated.

Claims 15 and 16 of the '060 patent are different. These claims do not use the language "for causing" that would make them analogous to *Finjan*. Instead, they use the language "that . . . cause" – unlike *Finjan* there is an enablement requirement in these claims.

A year after *Finjan*, the District of Delaware addressed claims having language essentially identical to the language at issue here, in *Oracle Corp. v. Parallel Networks, LLC*,

5

778 F. Supp. 2d 527 (D. Del. 2011).   In that case, claim 11 recited "instructions, which when executed by a computer system, *cause* said computer system to perform…."  *Id.*, at 533.  The Court in *Oracle*, contrary to the approach suggested here by Health Grades, thoroughly analyzed the infringement issue by determining what the accused instructions did when they were executed, not just whether the system was "capable" of causing them to happen.  *Id.*, at 540-44.  Earlier in the same case, the Federal Circuit had also considered the same claim on appeal and saw no capability issue.  *See Oracle Corp. v. Parallel Networks, LLC*, 375 Fed. Appx. 36 (Fed. Cir. 2010).

### 2. The Claim Requires "Received" (Past Tense) Data

Even if Health Grades was correct, contrary to the Federal Circuit's *Oracle* opinion, that these claims have elements that only require reasonable capability, that capability would not extend to the claim element at issue here – the data received from the first healthcare provider.  The most the "capability" could be directed to would be a capability of *accessing and compiling* the *already-received* data.

The pertinent language of the claims is as follows:

> memory coupled with and readable by the at least one computer processor and comprising a series of instructions that, *when executed by the at least one computer processor, cause the at least one computer processor to*:
>
> . . .
>
> *access healthcare provider-verified information about the first healthcare provider*, wherein the healthcare provider-verified information is *received from the first healthcare provider* and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies"; . . . .

(Exhibit A to Motion, claim 15, col. 22, lines 9-28.) (emphasis added).  Thus, the data is "received from" (*past tense*) the first healthcare provider.  And when the instructions are executed, the data is accessed and a report is created.  The claim does *not* say that, when executed, the instructions cause the processor to "receive" data – it says that the already "*received*" data is accessed.  See *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328-29 (Fed. Cir. 2010) ("Unless the claim language only requires the capacity to perform *a particular claim element*, we have held that it is not enough to simply show that a product is capable of infringement; *the patent owner must show evidence of specific instances of direct infringement*.") (emphasis added); *Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing L.P.*, 2003 U.S. Dist. LEXIS 23553, at *135-36 (C.D. Cal. Dec. 3, 2003) (capability of performing the claimed function was not evidence of actual use).   Therefore, even if these claims had the language "for causing" rather than "that . . . cause" (so that the Federal Circuit's *Finjan* analysis would apply and not the analysis in *Oracle*), it would still be no help to Health Grades because the claims all still plainly require the past receipt of at least three of the data elements from the first healthcare provider.[4]

### 3.     The MDx System Can't Be "Capable" Anyway

Even if Health Grades was correct that these claims are drawn to reasonable capability (it is not, *see* part (1), *supra*); and even if that capability did extend to the data received from the first healthcare provider (it does not, *see* part (2), *supra*), the MDx system would still not

---

[4] It appears that Health Grades, by making this argument, is unwittingly digging itself another grave.  That is, if Health Grades was correct (it is not) that the data is received only after these instructions are executed, then this is another reason there can be no infringement – MDx obtains its data before execution, and Health Grades has nothing in its infringement contentions that could possibly prove infringement of such an element.

infringe. That is, in order for the system to be capable of accessing three or more of the claimed data elements that have been received from the first healthcare provider, those data elements must be in the database. Since there is no evidence that the database contains three of the claimed data elements received from the first healthcare provider, there is also no evidence that the system is capable of accessing such data. No system is capable of retrieving something if it does not exist.

### B. Health Grades Did Not Seek the Proper Discovery

Health Grades did not seek the database query it needs and bends over backwards to make up for it now, stretching so far as to bend the truth. Health Grades states that "MDx admits that the statistics show that approximately 1.28% of the physicians in its database have edited three or more of the claimed fields". Opposition, pp.7-8. MDx has made no such admission. To the contrary, MDx stated in its interrogatory response that "*if any physician has done this*, the percentage is likely far lower than 1%" (emphasis added). *See* Exhibit D to Motion, p.3; Fact 2(g) and n.2, *supra*.

Health Grades also confuses a document request with other types of discovery, citing its document request as a basis for the database query it needs. Opposition, pp.5-6. First, MDx has no document showing the result of the database query Health Grades needs – documents like this would need to be created. Exhibit 4 to this Reply, at ¶ 6. That is, while MDx's database tracks edits made by healthcare providers, that data must be analyzed by a database query to generate the desired result. But document requests do not obligate a party to generate computer results. *See Seed Research Equip. Solutions, LLC v. Gary W. Clem, Inc.*, 2011 U.S. Dist. LEXIS 99087, at *7-8 (D. Kan. Sep. 1, 2011) (creating new documents from a computer system is not covered

8

by Rule 34). Rather, requests for calculations fall under other discovery mechanisms. *E.g.*, Fed. R. Civ. P. 33(d). Because Health Grades did not request for MDx to perform the query, MDx did not run the database query. *See* Fact 2(j), *supra*. But even if Health Grades had sent a discovery request arguably requesting this query, it did nothing to pursue it.

Health Grades is trying to avoid summary judgment by asking this Court to assume that fact discovery it never pursued would have information helpful to it. But fact discovery has been closed for several months, and it is too late now for Health Grades to seek further discovery, let alone asking the Court to make wild assumptions about what that discovery might show. *See Visto Corp. v. Microsoft Corp.*, 2007 U.S. Dist. LEXIS 68226, at *9-14 (E.D. Tex. Aug. 31, 2007) (finding that it was too late to compel discovery months after fact discovery had closed, even if the discovery was needed to oppose summary judgment motion); *MASH Enters. v. Prolease Atl. Corp.*, 2003 U.S. Dist. LEXIS 1579, at *10-12 (E.D. Pa. Jan. 31, 2003) (declining to consider discovery allegedly requested, but not pursued until months after close of fact discovery).

### C. Not All Fields are Received From The Healthcare Provider

Health Grades next argues that, when physicians edit one field, all fields are submitted back to MDx so even non-edited fields are "received" from a healthcare provider. *See* Opposition, p.10. This is nothing more than an incorrect assumption by its technical expert, Dr. Greenspun. Dr. Greenspun's assumption finds no support in MDx discovery, and Health Grades cites to none. The only alleged basis, found from the deposition of Dr. Greenspun, is a collection of screenshots from some of Dr. Greenspun's "friends" (screenshots never produced in this litigation), and from this secret evidence he leaps to conclusions about the internal workings of

9

the Vitals website. Exhibit I, Portions of Transcript of Deposition of Dr. Greenspun, at 269:18-23. Dr. Greenspun does not know this from any source other than his "friends" and the secret forms they supposedly provided to him – none of which is mentioned in his expert report. *Id.* at 288:13-290:11. Nor is there anything in Dr. Greenspun's report stating that physician data forms are submitted in their entirety, including those data elements that were not changed. *See* Exhibit 7 to Opposition, ¶¶ 126-28. Moreover, this argument is not found anywhere in the Health Grades infringement contentions.

Dr. Greenspun says that it is his "understanding" that "*in some cases* that's done with web forms". Exhibit 6 to Opposition, Greenspun Transcript, at 268:18-269:7. Dr. Greenspun may be right that "in some cases" this is how information can be submitted back to a web server. But that is not how it is done here. Exhibit 4 to this Reply, Declaration of Lawrence West, ¶ 6.

Health Grades' incorrect assumption has no basis in fact, and, therefore, there can be no genuine issue of material fact. *Flynn v. Health Advocate, Inc.*, 2005 U.S. Dist. LEXIS 1704, at *6-7 (E.D. Pa. Feb. 8, 2005) ("the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.").

    D.  <u>**Health Grades has No Evidence**</u>

Health Grades only has proof that trivial percentages of physicians have ever had any need to edit even one of the claimed data elements. There is absolutely no basis for any inference, let alone a reasonable inference, that this means some physician must have edited ***three of more these specific data elements***. Indeed, all the evidence points to the inescapable conclusion that the need to make an edit to only one of these fields is extremely rare – the

possibility that someone would need to make *three* edits, and only to the very specific data fields recited in the claim, is a quantum leap not justified by any evidence.

Health Grades claims that this could be circumstantial evidence and cites various cases in alleged support of its argument. But the evidence in those cases was all substantially closer to the claims than here. *Compare Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009) (evidence of instructions to customers to use the products in an infringing way was circumstantial evidence of infringing use); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) (evidence of extensive sales of the accused product and of instructions to customers on performing the claimed method, were circumstantial evidence of customers performing the claimed method); *Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, 2011 U.S. Dist. LEXIS 136621, at *15-16 (N.D. Cal. Nov. 29, 2011) (marketing materials advertising the infringing configuration and witnesses having seen procedures associated with the infringing configuration were circumstantial evidence of use of the infringing configuration). Unlike these cases where the defendant is trying to get the features at issue used as much as possible, here the feature at issue (physicians editing the specific claimed data fields) is something ***MDx tries to make 100% <u>unnecessary</u>*** – it is only in the very rare circumstances where data is wrong that physicians would need to provide the correct data. By the very slight percentages of physicians who have ever needed to edit these fields, it is clear that MDx is doing a good job of initially populating the fields with correct data so that there is ***virtually no need for physicians to provide corrective data***.

Compared to the cited cases, Health Grades' alleged "evidence" here is too remote from the claim language to even qualify as circumstantial evidence that the claim language is infringed.

Where the leap from the alleged "evidence" to the desired conclusion is too great, courts have declined to find it to even be circumstantial evidence. *See, e.g., E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1221-23 (Fed. Cir. 2007) (declining to find infringing use from manuals excerpts when "it requires too speculative a leap to conclude that any customer actually performed the claimed method").

Health Grades has no evidence to show that the claim requirement (receipt of at least three of the data elements from a healthcare provider) is infringed. Accordingly, summary judgment should be granted. *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442. F.3d 1301, 1309 (Fed. Cir. 2006).

## IV.     VERIFICATION REQUIRED BY THE HEALTHCARE PROVIDER

Health Grades bases its arguments for this claim element on the same evidence it offers for the "receiving" claim element above. For the same reasons that Health Grades' evidence and arguments above are insufficient to defeat summary judgment for the "receiving" element, they are also insufficient for this claim element, as well.

Even if Health Grades had evidence that the three data elements were received from healthcare providers, it has nothing to prove that this separate verification element is met. The Court stated that the verification element requires "confirmation of the information". Dkt. 138, page 15, n.8. MDx did not interpret the Court's Claim Construction Order to require only receipt of the information from the healthcare providers.

## V.  CONCLUSION

For all (or any) of the above reasons, MDx respectfully requests entry of summary judgment of no infringement.

Dated:  December 13, 2012

Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail:sstimpson@sillscummis.com
E-mail:smurray@sillscummis.com
E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2012, I electronically filed the foregoing MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Jesus Manuel Vazquez , Jr.
  jvazquez@rothgerber.com, phenke@rothgerber.com

- Gregory B. Kanan
  gkanan@rothgerber.com, dgrooms@rothgerber.com

- Kris John Kostolansky
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- Scott David Stimpson
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- Scott B. Murray
  smurray@sillscummis.com

- David Chunyi Lee
  dlee@sillscummis.com

- Terence M. Ridley
  ridley@wtotrial.com, norris@wtotrial.com

                                                              *s:/David C. Lee*