# EXHIBIT A

(Redacted Version of Dkt. # 404)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S OPPOSITION TO MDx MEDICAL, INC.'S MOTION
FOR SUMMARY JUDGMENT OF NO WILLFULNESS**

Plaintiff Health Grades, Inc. ("Health Grades") opposes MDx Medical, Inc.'s Motion for Summary Judgment of No Willfulness [Dkt 370] (hereinafter referred to as the "Motion").

### I.     INTRODUCTION

MDx Medical, Inc. ("MDx") moves for summary judgment that Health Grades cannot prove the objective prong of the test for willful infringement. Although the Federal Circuit recently made clear that district courts (not juries) should decide whether the objective prong of the willfulness test has been proven, the Federal Circuit contemplated that the district court would make this decision ***after*** the jury decided the underlying disputed issues of fact. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1006-1007 (Fed. Cir. 2012). Not surprisingly, most decisions following *Bard* have declined to decide willfulness on summary judgment.

Likewise, this Court should follow the procedure set forth by the Federal Circuit in *Bard* and defer its decision on the objective prong of the willfulness inquiry until the jury reaches a

2003946925_1.doc

decision on the many issues of disputed fact that relate to willfulness. For example, MDx asserts that there was no objectively high likelihood that its actions constituted infringement of a valid patent because: 1) MDx has "strong" defenses to the charge of infringement; 2) MDx took "prompt action to change its website to avoid any chance of infringement"; and 3) MDx obtained advice of counsel confirming that its website does not infringe Health Grades' patents. (Motion at pp. 1-2.) Each of these arguments is based on multiple disputed issues of fact. For example, MDx asserts that its non-infringement defenses are strong, but many of them rely on claim constructions that have already been rejected by this Court. While MDx's CEO sent an e-mail describing changes that he believed were necessary "ensure" that MDx would not infringe Health Grades' patent, MDx did *not* implement all of the changes listed in this e-mail. Further, Health Grades has moved to preclude MDx from relying on its opinion of counsel because MDx violated its disclosure obligations, but even if this motion is denied, the competency of MDx's opinion of counsel is in dispute – the opinion contains only conclusory opinions that are based solely on statements made by MDx. MDx's opinion counsel does not appear to have done any independent analysis of the functionality of the vitals.com website. Indeed, the opinion relies on statements made by MDx about the vitals.com website that are obviously not true based on even a cursory review of the vitals.com website.

For all of these reasons, this Court should deny MDx's motion for summary judgment of no willfulness.

## II. RESPONSE TO STATEMENT OF MATERIAL UNDISPUTED FACTS (hereinafter referred to as "RSUMF")

1.  Admitted that MDx has asserted non-infringement defenses in this lawsuit and that MDx has filed four motions for summary judgment, two of which relate to non-infringement defenses, but <u>denied</u> that "Health Grades itself could not figure out how to make an infringement allegation for weeks after it learned how MDx had changed its website."[1] Ex. C to MDx's Motion (Dkt. 370-4) does not support this argument.  (*See also* July 1, 2011 Infringement Contentions, Ex. A Claim Chart (current version) ("July 2011 Claim Chart Current Version") (Ex. 2 hereto); July 1, 2011 Infringement Contentions, Ex. B Claim Chart (prior version) ("July 2011 Claim Chart Prior Version") (Ex. 12 hereto); Health Grades, Inc.'s Response to MDx's Second Motion Pursuant to Federal Rule of Civil Procedure 56 for Partial Summary Judgment of Non-Infringement (Dkt. 201).)

2.  <u>Denied</u>.  Claims 15 and 16 require only that the claimed system be reasonably capable of accessing healthcare provider-verified information that is received from the first healthcare provider.  ('060 patent, claims 15 and 16, col. 22:12-23 (Dkt. 367-2).)

3.  <u>Denied.</u>  MDx admits that its system is capable of receiving edits to seven of the claimed types of physician-verified information ("claimed fields"), that MDx encourages physicians to edit information in these fields, and MDx admits that it has actually received edits from physicians to each of these claimed fields.  (*See,* e.g., MDx's Supplemental Responses to First Set of Requests for Admission at pp. 3-8 (Ex. 1 hereto); July 1, 2011 Infringement Contentions, Ex. A Claim Chart at pp. 5-7 (Ex. 2); MDx's Second Supplemental Resps. to

---

[1]  This paragraph contains multiple, argumentative statements in violation of this Court's Practice Standards, ¶F(3)(b)(i), which require "simple, declarative sentences, separately numbered and paragraphed, each material fact which the movant believes is not in dispute."

- 3 -

2003946925_1.doc

Health Grades' First Set of Interrogatories ("Interrogatory Responses") at p. 3 (emphasis added) (Ex. 3 hereto); Deposition of Larry West ("West Dep.") at 30:8-31:21 and 270:15-271:18 (Ex. 4 hereto); SQL Report from vitals.com (West Dep. Ex. 19) (Ex. 5 hereto). Further, MDx's web servers receive information regarding the claimed fields when a physician registers with vitals.com, even if the physician edits only one field. (*See,* e.g., Philip Greenspun Deposition at pp. 268:18-269:17 (Ex. 6 hereto); 7/13/12 Greenspun Report at ¶¶126-128 (Ex. 7 hereto); Health Grades, Inc.'s Opposition to MDx Medical, Inc.'s Motion for Summary Judgment of Non-Infringement, filed concurrently herewith.)

4. Admitted.

5. Denied. Claims 15 and 16 require only that the claimed system be reasonably capable of accessing healthcare provider-verified information. ('060 patent, claims 15 and 16, col. 22:12-23 (Dkt. 367-2).)

6. Denied. A healthcare provider may "verify" information by providing it to MDx. (Markman Order at p. 15.n8.) Health Grades has substantial evidence that healthcare providers have "verified" three or more of the claimed data elements by providing this information to MDx as described in response to paragraph 3 above.

7. Admitted.

8. Denied. Claims 15 and 16 require only that the claimed system be reasonably capable of compiling information regarding the first healthcare provider verified by an independent third-party source. ('060 patent, claims 15 and 16 (Dkt. 367-2).)

9. This paragraph contains multiple statements, each of which is addressed below.[2]

---

[2] This paragraph violates ¶F(3)(b)(i) of this Court's practice standards.

- 4 -

a. <u>Denied</u> that the data MDx receives from third parties is *not* verified. The third parties verify the data by providing it to MDx. (*See,* e.g., Interrogatory Responses at p. 6 (Ex. 3); Markman Order at p. 17 ("The patent does not require that the third-party information be "proven" but rather only describes an attempt to substantiate that will provide a patient with "some assurance that the qualifications of the doctor have been checked by someone." '060 Patent col. 8 ll.12-13.").) Further, MDx is a "third party source" that compiles and "verifies" at least the following data fields in its physician database: licensure, board certifications, medical school, residency, internship, fellowship, and disciplinary actions. (*See,* e.g., Interrogatory Responses at p. 6 (Ex. 3); Deposition of Erika Boyer ("Boyer Dep.")

REDACTED

*see also* Boyer Dep. at 134:20-136:23, 138:11-139:14 (Ex. 8); MDx PowerPoint at MDX 0071960 (Ex. 9 hereto) ("We've partnered with a select group of respected providers to ensure accurate measures."); Greenspun Report at ¶¶143-154 (Ex. 7); West Dep.

REDACTED

- 5 -

  b. <u>Denied</u> that all MDx data sources disclaim the accuracy of their data. (Boyer Dep. at 134:24-135:17 (Ex. 8) (MDx gets data from more than 15,000 sources).)

  c. <u>Denied</u> that ABMS "expressly disclaims the accuracy" of its board certification data. Ex. D to MDx's motion states: "**Due to the possibility of reporting and processing delays**, the accuracy and completeness of the records cannot be guaranteed." (Dkt. 370-5 (emphasis added).) ABMS's website also states that it "verifies" board certifications for patients, businesses, etc.:

> **A Trusted Resource**
>
> ABMS collaborates with our Member Boards to create lifelong learning standards that help to ensure physicians keep abreast of the latest practices and treatments. We also verify Board Certification of doctors to patients, the government, schools and business, providing a respected foundation for a national movement that supports physician accountability and the highest standards of quality care for every patient.

http://www.certificationmatters.org/about-abms.aspx (highlighting added) (Ex. 10 hereto).)

  d. <u>Denied</u> that the State of Pennsylvania "expressly disclaims the accuracy" of its licensure data. Admitted that Ex. E to MDx's motion (Dkt. 370-6) states: "The Department of State makes no representations or warranties, either express or implied, as to the accuracy of any posted information. . . ."). The same exhibit also says: "This site is considered a **primary source for verification** of license credentials provided by the Pennsylvania Dept. of State." (Dkt. 370-6 (emphasis added).)

10. Admitted that Mr. Rothschild stated in his declaration that he considers "Health Grades to be very litigious."

11. This paragraph contains multiple statements, each of which is addressed below.[3]

---

[3]  This paragraph violates ¶F(3)(b)(i) of this Court's practice standards.

- 6 -

2003946925_1.doc

    a. <u>Denied</u> that MDx has several "strong" non-infringement defenses. (*See,* e.g., Greenspun Report (Ex. 7).)

    b. <u>Denied</u> that MDx took immediate action to ensure that no infringement claim even could be asserted. Although Mr. Rothschild sent an e-mail purportedly outlining "policies" that MDx "must strictly enforce" to "ensure" that vitals.com was not in violation of the '060 patent, *MDx did not follow all of the "policies" listed in this e-mail*. For example, the e-mail states that vitals.com's display of third party verified information will *not* include license status. (Dkt. 370-7 at p. 3.) However, MDx compiles license status information from third parties (Interrogatory Response at p. 6 (Ex. 3)) and displays this license information in physician reports on vitals.com. (Screenshots from <u>www.vitals.com</u> taken on March 28, 2012 (Ex. 11 hereto).) As another example, Mr. Rothschild's e-mail states that its display of third party verified information will not include internship, residency, or fellowship information. (Dkt. 370-7 at p. 3). However, MDx admits that it collects this information from third parties. (Interrogatory Response at p. 6 (Ex. 3).) MDx also admits that it displays this information when it is provided by a physician (Interrogatory Response at p. 6)

REDACTED

  12. <u>Denied</u>. MDx's website contains, to this day, healthcare provider reports that include comparison ratings of healthcare providers. (*See,* e.g., Health Grades, Inc.'s Response to

- 7 -

2003946925_1.doc

MDx's Second Motion Pursuant to Federal Rule of Civil Procedure 56 for Partial Summary Judgment of Non-Infringement (Dkt. 201); Greenspun Report at ¶¶168-188 (Ex. 7).)

13. Admitted that every claim recites "a healthcare provider report on the first healthcare provider [that] includes comparison ratings of healthcare providers."

14. Denied that the Court "sided entirely with MDx" on the claim construction issues relating to the "comparison ratings of healthcare providers" element but admits that MDx has a pending motion for summary judgment of non-infringement with respect to this element.[4] (Markman Order at p. 13 ("The Court agrees with plaintiff that there is no indication that the comparison ratings found in the report on the first healthcare provider would not include ratings for that provider.") (Dkt. 138).)

15. Denied. The claims do not require the use of three or more types of third party verified information (Markman Order at p. 20), but MDx uses at least three types of this data to create its physician reports, including board certification, medical school, and licensure information. (*See* Greenspun Report at ¶¶164-167 (Ex. 7).)

16. Denied. The Markman Order at p. 20 rejects the argument that at least three of the third-party verified data elements must be used to create the physician report. (Dkt. 138).

17. Denied. (*See* responses to paragraphs 12 & 15 above.)

18. Denied. The Braginsky opinion is not competent. The opinion contains only conclusory opinions that the vitals.com website does not literally infringe the '060 patent claims. (Dkt. 370-8 at pp. 3, 30-31.) The author of the opinion, Philip Braginsky, does not appear to have done any independent analysis of the functionality of vitals.com. Rather, he seems to have

---

[4] This paragraph violates ¶F(3)(b)(i) of this Court's practice standards.

- 8 -

relied entirely on website functionality as described to him by Mitchel Rothschild. (*See id.*) The opinion relies on statements from MDx that the website does not have certain claimed functionality, but does not discuss what functionality the website does have, let alone explain why the existing functionality does not meet the claim limitations. Further, the Braginsky opinion relies on statements made by MDx about the vitals.com website that are not true. For example, one basis for his non-infringement opinion is that vitals.com does not create and provide access to a healthcare provider report that contains third party verified licensure information. (Dkt. 370-8 at p. 30.) However, the vitals.com physician reports do contain and display licensure information. (*See* RSUMF ¶9(b) above.)

19. Denied. Ex. C to MDx's Motion (Dkt. 370-4) does not support this argument. *See also* July 2011 Claim Chart Current Version (Ex. 2); July 2011 Claim Chart Prior Version (Ex. 12); Dkt. 201.)

20. Denied. See response to paragraph 19.

21. Admitted that MDx inquired as to whether Health Grades was asserting infringement against the current version of the vitals.com website given MDx's assertion that changes had been made so that the current website never provides a report on a healthcare provider that includes comparison ratings of other providers.

22. Denied. See response to paragraph 19.

23. Denied. See response to paragraph 19.

24. Denied. See response to paragraph 19.

- 9 -

### III. ARGUMENT

#### A. The Decision on the Objective Prong of the Willfulness Test Should Be Made *After* the Jury Resolves All Underlying Factual Issues

In *In re Seagate Technology, LLC,* the Federal Circuit established a two-pronged test for determining whether patent infringement is willful. 497 F.3d 1360 (Fed. Cir. 2007) (*en banc*). The first prong is objective: the "patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 1371. The second prong is subjective: once the "threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id.*

Since the *Seagate* decision, courts have considered the following issues in determining whether the objective prong of the willfulness test is met: (1) Were the defendant's defenses to infringement "reasonable"? and (2) Did the defendant rely on a "competent" opinion of counsel? *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972-LHK, 2012 U.S. Dist. LEXIS 142102, 118-120 (N.D. Cal. Sept. 28, 2012). Both of these issues turn on questions of fact. Nevertheless, the Federal Circuit recently declared that although the objective prong is predicated on underlying mixed questions of law and fact, it is "best decided by the judge as a question of law subject to de novo review." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1006-1007 (Fed. Cir. 2012). However, the *Bard* decision does not stand for the proposition that the objective prong of willfulness should be decided on summary judgment. To the contrary, the *Bard* court stated:

> In considering the objective prong of Seagate, ***the judge may*** when the defense is a question of fact or a mixed question of law and fact ***allow the jury to determine***

- 10 -

> *the underlying facts relevant to the defense in the first instance, for example, the questions of anticipation or obviousness.* But, consistent with this court's holding today, the ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the judge.

*Id.* at 1008 (emphasis added) (citations removed).

Since the *Bard* decision, most (if not all) district courts have declined to grant summary judgment on the objective prong of the willfulness test, preferring instead to have the jury first decide the underlying facts relating to the accused infringer's defenses:

- *Fujitsu*, 2012 U.S. Dist. LEXIS 142102 (N.D. Cal. Sept. 28, 2012): denying motion for summary judgment of no willfulness because "Defendants' anticipation and obviousness arguments, at this point, turn on questions of fact for a jury to decide. . . . In light of *Bard Peripheral*, the Court determines that it would be more appropriate to decide the legal issue of willfulness with the benefit of the jury's factual findings on anticipation and obviousness."

- *Koninklijke Philips Elecs. N.V. v. Cinram Int'l, Inc.*, No. 08-4068, 2012 U.S. Dist. LEXIS 135839, 26-27 (S.D.N.Y. Aug. 23, 2012) denying motion for summary judgment of no willfulness stating: "Given this posture, the court is guided by the procedure mandated in similar cases where mixed questions of law and fact are presented, as for example, when a defense of qualified immunity is raised. In those cases, the court submits special interrogatories to the jury on the disputes of fact, while reserving for itself the ultimate question of law. This approach was recently endorsed by the Federal Circuit in *Bard*. Consequently, I will deny the motion for summary judgment on the willful infringement claim, while reserving "the ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent." (citations omitted).

- *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd*, No. 09-290, 2012 U.S. Dist. LEXIS 157337, 6-9 (W.D. Pa. Nov. 2, 2012) denying motion for summary judgment of no willfulness stating: "The Court finds that there are "mixed questions of law and fact" in regards to Marvell's defenses, insofar as the jury should be presented the evidence to "determine the underlying facts relevant to the defense[s]" **before** this Court rules on the objectiveness prong of willful infringement. . . ." (emphasis added) (citations omitted).

- 11 -

- *Cook Inc. v. Endologix, Inc.*, No. 1:09-cv-01248-TWP-DKL, 2012 U.S. Dist. LEXIS 123577, 4-5 (S.D. Ind. Aug. 30, 2012): denying motion for summary judgment of no willfulness stating: "The Court agrees, as does Plaintiff Cook, that Bard clarified the allocation of decision making under the two-prong willful infringement test. **However, the Court does not believe this issue must be decided before trial.** As pointed out by Cook in its opposition to the instant motion, "Bard contemplates a decision on the objective prong after the jury has deliberated on other aspects of willfulness.'" (emphasis added) (citations omitted).

Likewise in this case, this Court should defer its decision as to whether the objective prong of the willfulness test has been met until the jury decides the underlying factual issues on other aspects of willfulness. For example, MDx argues that it is entitled to summary judgment on the objective prong of the willfulness test because "MDx has always had strong defenses to infringement." These defenses involve many disputed issues of fact that should be decided by the jury, including:

- Does MDx receive information regarding three of more of the claimed types of physician-verified information when a physician registers with vitals.com and edits one or more data fields within his or her profile on vitals.com? (RSUMF at ¶3.)

- Has a physician actually edited three or more of the claimed types of physician-verified information within his or her physician profile in the vitals.com database? (RSUMF at ¶3.)

- Does a physician "verify" three of more of the claimed types of physician-verified information when a physician registers with vitals.com and edits one or more data fields within his or her profile on vitals.com? (RSUMF at ¶6.)

- Has a physician actually verified three or more of the claimed types of physician-verified information within his or her physician profile in the vitals.com database? (RSUMF at ¶6.)

- Does vitals.com compile three or more claimed types of information verified by an independent third party source? (RSUMF at ¶9.)

- Is the display page of physician(s) who match the search criteria part of the claimed "report on a first healthcare provider"? (RSUMP at ¶12.)

- 12 -

- Does the display page of physician(s) who match the search criteria include comparison ratings of healthcare providers as construed by this Court? (RSUMP at ¶12.)
- Did MDx follow *all* of the "policies" that Mr. Rothschild said were necessary to "ensure that no infringement claim could be asserted"? (RSUMP at ¶11.)

This Court should wait to make its decision on the objective prong of the willfulness test until the jury decides these underlying factual issues. Summary judgment should be denied.

### B. MDx's Non-Infringement Defenses are Not Reasonable

Moreover, summary judgment should be denied because there are several indications that MDx's non-infringement defenses are *not* reasonable.

First, many of MDx's non-infringement arguments rely on claim interpretations that were rejected by this Court. For example, MDx continues to insist that "verified" means proven to be true/accurate even though it made this argument and lost in the Markman proceedings. *Compare* Motion at p. 3, Fact ¶5 (Dkt. 371) *with* MDx's Motion for Summary Judgment of Non-Infringement at p. 10 (Dkt. 368) (arguing that "verification" requires something more than receiving information from a physician, who has an incentive to "puff" on the claim elements) *with* Markman Order at p. 15 n.8 ("Indeed, the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider."); *Compare* Motion at p. 3, Fact ¶¶8-9 (arguing that the information it receives from third parties is not "verified" if the third parties will not guarantee its accuracy) *with* Markman Order at p. 17 ("The patent does not require that the third-party information be "proven" but rather only describes an attempt to substantiate that will provide a patient with "some assurance that the qualifications of the doctor have been checked by someone."). As another example, MDx asserts that the claims require that the healthcare provider report use *all* of third party verified information that has been compiled

- 13 -

to create the report, even though this argument was also rejected in the Markman Order. *Compare* Motion at p. 4, ¶16 *with* Markman Order at p. 20.

Second, many of MDx's non-infringement arguments are inconsistent with admissions made by MDx in this lawsuit and MDx's own documents. For example, MDx argues that it does not "verify" the information it includes in its database[5], but admits that it gathers information from multiple sources, cross-checks the information it receives, and employs a conflict resolution policy to determine which information is correct. (RSUMF at ¶9(a).) Additionally, MDx argues that it will not display internship, residency, or fellowship information unless it is self-reported by a doctor, but also admits that it will not display fellowship information reported by a doctor unless it matches the information it collected from third parties. (RSUMF at ¶11.)

Third, MDx did not follow all of the "policies" that Mr. Rothschild stated were purportedly necessary to ensure that vitals.com does not infringe Health Grades' patent. For example, the January 2011 e-mail from Mitch Rothschild states:

> To ensure that Vitals is not in violation of this patent, in any way, certain of our policies . . . **must continue to be strictly enforced**:
> . . . .
> 2) Our display of 3rd party verified information does not include licensure status.

(RSUMF at ¶11(b).) Despite this e-mail, MDx admits that it collects licensure information from third parties (RSUMF at ¶11(b)) and it clearly displays licensure information on its website as shown in the screenshot below:

---

[5] *See,* e.g., Interrogatory Response at p. 6 (Ex. 3); Rothschild Decl. at ¶11 (Dkt. 371-2); Boyer Dep. at 197:21-24 (Ex. 8) (stating that Vitals does not do anything to verify the accuracy of their data).

- 14 -

2003946925_1.doc



(RSUMF at ¶11(b).)

Thus, this Court should deny MDx's motion for summary judgment of no willfulness because the evidence demonstrates that many of MDx's non-infringement defenses are not reasonable and that MDx did not follow the "policies" it created to supposedly avoid infringement.

### C. MDx Has Not Relied on a Competent Opinion of Counsel

MDx also asserts that summary judgment of no willful infringement should be granted because MDx obtained and relied on a competent opinion of counsel from attorney Philip Braginsky. (Motion at p. 5, ¶18.) However, an accused infringer's reasonable reliance on advice of counsel does not automatically preclude a finding of willfulness. This is especially true where the opinion of counsel is not competent. *Seagate*, 497 F.3d at 1369; *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828-29 (Fed. Cir. 1992), abrogated on other grounds by Markman, 52 F.3d 967). An opinion may be incompetent if it lacks an adequate foundation, for example, if the attorney who prepared it failed to look into the necessary facts or if it contains "merely conclusory statements without discussion of facts or obviously present[s] only a superficial or off-the-cuff analysis." *Id.* (citing *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828-29 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990)).

In this case, MDx's opinion of counsel does not support granting summary judgment of no willfulness for several reasons. First, Health Grades has moved to preclude MDx from

- 15 -

2003946925_1.doc

relying on the Braginsky opinion because MDx did not comply with rules relating to advice of counsel disclosures. *See* Motion to Exclude MDx's Advice-of-Counsel Defense for Violation of Local Patent Rule 3-7, or in the Alternative, to Compel Discovery Relating to Opinions-of-Counsel Pursuant to Local Patent Rule 3-7 and Rules 30(a)(1) and 37(a)(1) of the Federal Rules of Civil Procedure (Dkt. 221). If this Court grants Health Grades' motion to exclude, MDx will not be able to rely on the Braginsky Opinion to support its willfulness defense.

But even if the Braginsky Opinion is not excluded, there are genuine issues of fact as to whether this opinion of counsel was competent. (RSUMF at ¶18.) For example, the opinion's analysis of literal infringement consists of two conclusory paragraphs, which essentially state that MDx says its website does not offer certain functionality (e.g., comparison ratings), this functionality is required by the claims, therefore the website does not literally infringe. There is no discussion about how the website actually functions and no explanation about why this functionality does not meet the relevant claim limitations. Further, the Braginsky opinion relies on statements made by MDx about the vitals.com website that are not true. (RSUMF at ¶18.)

Moreover, Health Grades has not yet had an opportunity to depose Mr. Braginsky because MDx refused to produce him for a deposition during fact discovery. *See* Declaration of Jesús M. Vázquez, Jr. (Ex. 13 hereto). Thus, Health Grades cannot present all of the facts that might show that Mr. Braginsky's opinion is not competent, which supports a denial of summary judgment pursuant to Fed. R. Civ. P. 56(d).

In sum, MDx may be precluded from relying on the Braginsky Opinion, but even if the Braginsky Opinion comes into evidence, his non-infringement opinions are conclusory and are

based on a superficial analysis without adequate factual support.  Therefore, MDx's reliance on the Braginsky opinion does not support granting summary judgment of no willfulness.

## IV.    CONCLUSION

In sum, this Court should reserve judgment on the objective prong of the willfulness test until the jury decides the factual issues underlying this decision.  MDx's motion for summary judgment of no willfulness should be denied.

Dated: November 26, 2012

ROTHGERBER JOHNSON & LYONS LLP

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@rothgerber.com
          kkosto@rothgerber.com
          jvazquez@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S OPPOSITION TO MDx MEDICAL, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFULNESS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Scott Murray
David Chunyi Lee
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
Email: sstimpson@sillscummis.com
Email: smurray@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: ridley@wtotrial.com

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:   (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@rothgerber.com
          kkostolansky@rothgerber.com
          jvazquez@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*

- 18 -