# EXHIBIT E

(Redacted Version of Dkt. # 405)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S OPPOSITION TO MDx MEDICAL, INC.'S MOTION
FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Plaintiff Health Grades, Inc. ("Health Grades") opposes MDx Medical, Inc.'s Motion for Summary Judgment of Non-Infringement [Dkt 367].

## I. INTRODUCTION

MDx Medical, Inc. ("MDx") moves for summary judgment that Health Grades cannot prove that MDx's accused website meets the bolded portions of the following claim language from claims 1 and 15 of the patent-in-suit:

> [h]ealthcare provider-**verified** information about the first healthcare provider, wherein the healthcare provider-verified information **is received from the first healthcare provider and comprises three or more from the group consisting of**: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies . . . .

(emphasis added). Specifically, MDx argues that Health Grades has "no" evidence that MDx has received three or more of the claimed types of physician-verified information. MDx is wrong. At trial, Health Grades will present the following evidence:

- MDx has admitted that physicians can edit at least seven of the claimed types of physician-verified information (hereinafter referred to as the "claimed fields") within MDx's physician database.

- MDx admits that it has actually received edits to each of the claimed fields from thousands of physicians.

- Health Grades' expert will testify that MDx receives information regarding the claimed fields from a physician when the physician registers with MDx's website *even if the physician edits only one field*.

Nevertheless MDx moves for summary judgment arguing that it has "no knowledge of any physician who has entered and/or modified three or more of that information." Willful blindness aside, MDx's system capabilities, coupled with its admissions about the information it has actually received from physicians, constitutes compelling evidence that this claim element is met. Further, Health Grades' expert will testify that this claim element is met when a physician edits only one field, which MDx admits has been done by more than 40,000 physicians. At a minimum, the issue of whether MDx has received three or more of the claimed types of physician-verified information is a disputed issue of fact that precludes summary judgment.

MDx also argues that the term "verified" requires something more than receipt of the information from a physician. MDx made this argument at the Markman hearing and lost. This Court found that a physician can "verify" information by providing it to another. (Markman Order at p. 15 n.8 (Dkt. 138).) As discussed herein, Health Grades has substantial evidence that physicians have provided the claimed information to MDx, and thus has evidence of the claimed healthcare-provider verified information. Summary Judgment should be denied.

## II. RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS (hereinafter referred to as "RSUMF")

**1.** <u>Denied</u>. Claims 15 and 16 require only that the claimed system be reasonably capable of accessing healthcare provider-verified information that is received from the first healthcare provider. ('060 patent, claims 15 and 16, col. 22:12-23 (Dkt. 3667-2) ("comprising a series of instructions that, *when executed by the at least one computer processor, cause the at least one computer processor to*: . . . access healthcare provider-verified information [that is] is received from the first healthcare provider . . . .").)

2. <u>Denied.</u> Health Grades has substantial evidence to show that healthcare providers have provided three or more of the claimed data elements to MDx, including without limitation the following:

    a. MDx admits that its current vitals.com system is capable of receiving the following information from a physician: specialty information, medical philosophy, gender, languages spoken, awards and honors received, and publications authored. (MDx's Second Supplemental Responses to First Set of Requests for Admission at pp. 3-8 (Ex. 1 hereto).

    b. MDx's website encourages physicians to "edit your profile":



(July 1, 2011 Infringement Contentions, Ex. A Claim Chart (current version) at p. 6 (Ex. 2 hereto).)

    c. MDx's website says it receives information from physicians:

- 3 -

> From where does Vitals get their information and data?
> Vitals obtains information and data from a wide variety of sources, both public and private. These include: medical boards from all 50 states, federal websites, hospitals, doctors, surveys, business alliances and third party affiliates.

(*Id.* at p. 7.)

        d.     MDx admits that:

> The following information has been entered and/or modified by one or more physicians: specialty information, gender, awards/honors, professional appointments, professional membership, and languages.

(MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogatories ("Interrogatory Response") at p. 3 (emphasis added) (Dkt. 368-2); Deposition of Larry West at 30:8-31:21 (Ex. 4 hereto).)

        e.     REDACTED

(*See* West Dep. at 267:18-269:18 (Ex. 4); SQL Report from vitals.com at MDx 0104074 (West Dep. Ex. 19) (Ex. 5 hereto).)

        f.     MDx tracks all edits that physicians make to their database. (West Dep. at 30:11-17.) As of May 9, 2012, the percentages of all physicians who have ever entered and/or modified each of the claimed data fields are approximately as follows:

REDACTED

---

[1]     Interrogatory Response at p. 3 (Ex. 3).
[2]     SQL Report from vitals.com at p. MDx 0104088 (West Dep. Ex. 19) (Ex. 5).
[3]     SQL Report from vitals.com at p. MDx 0104084.
[4]     SQL Report from vitals.com at p. MDx 0104080.

- 4 -

REDACTED

g. REDACTED

h. REDACTED

i. Through the process of registering with vitals.com, physicians provide information in the claimed fields to vitals.com *regardless* of whether they edit the information or not. (Deposition of Philip Greenspun at 268:18-269:17 (Ex. 6 hereto); *see also* 7/13/12 Greenspun Report at ¶¶126-128 (Ex. 7 hereto).)

j. Health Grades served MDx with a document request seeking: "All documents that refer or relate to, or support, any defense that the Defendant intends to assert in this litigation, including, but not limited to, alleged non-infringement, invalidity, and unenforceability." (Health Grades First Request for Production to MDX at p. 16, Request No. 11 (Ex. 8 hereto).

---

[5] SQL Report from vitals.com at p. MDx 0104086.
[6] SQL Report from vitals.com at p. MDx 0104087.
[7] SQL Report from vitals.com at p. MDx 0104085.

- 5 -

2003946927_1.doc

        k.     A database query result showing whether or not any physician has ever actually edited three or more the claimed types of physician-verified information "relates" to MDx's non-infringement defense that its system does not meet the physician-verified claim element. (Motion at p. 2, ¶2.)

        l.     MDx did not run a query to determine whether any physician has actually edited three or more types of the claimed physician-verified information because it claims Health Grades did not ask for this information. (Dkt. 325 at pp. 4-5.)

     3.     <u>Denied.</u> Claims 15 and 16 require only that the claimed system be reasonably capable of accessing healthcare provider-verified information. ('060 patent, claims 15 and 16, col. 22:12-23 (Dkt. 367-2) ("comprising a series of instructions that, *when executed by the at least one computer processor, cause the at least one computer processor to*: . . . access healthcare provider-verified information about the first healthcare provider, . . . .").)

     4.     <u>Denied.</u> Health Grades has substantial evidence to show that healthcare providers have "verified" three or more of the claimed data elements to MDx, including without limitation, the information cited in response to paragraph 2 above.

### III. ARGUMENT

    **A.    Health Grades Has Direct and Circumstantial Evidence that MDx's Accused Website Meets the "Received from a First Healthcare Provider" Claim Limitations**

        1.    <u>Health Grades Has Substantial Evidence to Prove that Vitals.com Has Received More than Three of the Claimed Data Elements from Physicians</u>

Claim 1 is a method claim that requires, in part, the step of:

accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from

- 6 -

> the first healthcare provider and comprises three or more from the group consisting of: **specialty information**, medical philosophy, **gender**, age, years in profession, years in practice, **awards, honors, professional appointments, professional memberships**, publications, **languages,** and hobbies . . . .

(emphasis added).

MDx allows physicians, who have registered with MDx's vitals.com website to review their profiles and to edit, if they choose, seven of the claimed types of information identified in blue text above (hereinafter referred to as "claimed fields"). (Response to Statement of Undisputed Material Facts ("RSUMF") at ¶2(a).)   REDACTED

(RSUMF at ¶2(h).) However, MDx argues that there is no evidence that any single physician has edited three or more of the claimed fields, and thus there is no evidence that MDx has received from a physician three or more of types of information required by the claims. (Motion at p. 2, ¶2.) Health Grades disputes this contention.

MDx tracks each and every edit that each and every physician has ever made to its database. (RSUMF at ¶2(f)). MDx ran queries of its database and determined thousands, if not tens of thousands, of physicians have made edits to each of the claimed fields. (RSUMF at ¶2(f).) MDx does not dispute that it could have queried its database to determine whether any physician had actually edited three or more of the claimed fields, but argues that Health Grades did not ask it to do so. (RSUMF at ¶2(l).) This is not true. (RSUMF at ¶2(j)-2(k).)

REDACTED

- 7 -

REDACTED

This evidence is more than sufficient to create a disputed issue of material fact regarding whether MDx's system meets this claim element. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009) (relying system capability as circumstantial evidence of direct infringement); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) (holding direct infringement may be established by circumstantial evidence of extensive sales by defendant of a product capable of practicing the patented method and distribution by defendant of an instruction manual teaching the patented method); *Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, 2011 U.S. Dist. LEXIS 136621, *12-13 (N.D. Cal. Nov. 29, 2011) ("KSEA does not need direct evidence that a surgeon has in fact used the accused products while the panel was in the surgeon's operating station, at least to prove liability. Circumstantial evidence is sufficient if reasonable inferences can be drawn by the fact-finder. Nor does KSEA have to prove that the accused products were always used in the surgeon's operating station. To prove infringement, KSEA needs to prove that the accused products were reasonably capable of being used in the surgeon's operating station."); *Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 2003 U.S. Dist. LEXIS 23553, 135-136 (C.D. Cal. Dec. 2, 2003) ("the capability of Verizon's systems to suppress-previously provided cues (as shown in the flow charts and other evidence) is circumstantial evidence that the claimed method was actually used . . . .").

- 8 -

2003946927_1.doc

Moreover, MDx's argument about actual edits to the database is a red herring. The '060 patent claims do not require that a physician make any edits to a database. Rather, claim 1 requires that the physician "verify" certain types of information and that this information be "received" by the healthcare provider. (RSUMF at ¶¶1, 3.) Although physician edits to a database is one way to satisfy the claim limitations, it is not the *only* way. MDx receives information regarding the claimed fields (blue text above) from a physician when the physician registers with MDx's website and logs-in and reviews his or her profile information *even if the physician changes only one (or none) of the claimed fields*. (RSUMF at ¶2(i).) In his deposition, Health Grades' expert explained how this happens:

- 9 -

```
18      A.  The physicians are able to log -- register,
19   log in, authenticate themselves using their license
20   number, I believe, and then they're able to edit
21   substantially all of the information in their
22   profile.  And in some cases that's done with Web
23   forms where you add information fresh from a blank
24   field, and in some cases that's done where a Web
 1   form is sent from the server down to the browser
 2   with fields already partly filled out.  The
 3   physician can edit none, one, or all of those
 4   fields, and hit the submit button and the
 5   information goes back to the server, some of which
 6   has been edited or newly typed by the physician,
 7   some of which the server already had.
 8      Q.  And when that information is submitted by
 9   the physician back to Vitals in connection with
10   fields that were already completed on the Web form,
11   is that information then received from the
12   healthcare provider?
13      A.  Yes, it was viewed on the healthcare
14   provider's browser, the healthcare provider hit the
15   submit button, it was packaged up by the healthcare
16   provider's browser program and submitted by the HTTP
17   protocol to the VITALS.COM server.
```

(RSUMF at ¶2(i).) The following diagram shows the type of information that is passed back and forth between a physician's computer and MDx's web server as described above by Dr. Greenspun:

2003946927_1.doc



In the above example, MDx received information from the physician about her gender, her specialty, and her languages spoken (as shown in the form her computer sent back to MDx) even though she did not edit her specialty information. This information was all passed back from the physician to vitals.com as shown in the last step of the foregoing diagram.

REDACTED

REDACTED       This evidence is also sufficient to show a disputed issue of fact that precludes summary judgment of non-infringement.

      2.    <u>Health Grades Need Prove Only that the Vitals.com Website is Reasonably Capable of Accessing Healthcare Provider-Verified Information that is Received from a Healthcare Provider</u>

MDx admits that its system is capable of receiving all seven types of the claimed information from physicians. (RSUMF at ¶2(a).) When a system claim is drawn to a capability, the patent owner need prove *only* that the accused system is reasonably capable of operating as claimed. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010)[8]. In *Finjan*, the Federal Circuit affirmed the district court's holding that certain system and storage medium claims were infringed by defendants' computer security products. *Id*. at 1201-2. On appeal, defendants' challenged the infringement holding on the theory that the infringing products were sold with specific software modules locked and the use of the locked software modules was necessary for infringement. Thus, the defendant argued, it was as if the accused products were never sold with the infringing software modules. *Id.* at 1203. Under the

---

[8]    *See also Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) (holding an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation.); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991) (same) ("Because the language of claim 1 refers to 'programmable selection means' and states 'whereby when said alternate addressing mode is selected' (emphases added), the accused device, to be infringing, need only be capable of operating in the page mode. Contrary to GI/M's argument, actual page mode operation in the accused device is not required."); *Soverain Software LLC v. Newegg Inc.*, 2010 U.S. Dist. LEXIS 89268, 17-18 (E.D. Tex. Aug. 11, 2010) ("Although capable of non-infringing modes of operation, Newegg's order history system is reasonably capable of infringing the hypertext statement system claims."); *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 378 (E.D. Tex. 2009) ("[T]o infringe an apparatus claim, it is not necessary for an accused device actually to be performing the functions specified by the claim. All that is required is that the device have the claimed structure, and that this structure in the device have the capability of functioning as described by the claim.").

defendants' theory the mere capability of the infringing products to infringe, if unlocked, was not enough to infringe the asserted system and storage medium claims. *Id.* The Federal Circuit disagreed, explaining the asserted system and storage medium claims do not require actual use the locked software—it was sufficient to prove that the infringing products are *capable* of operating as claimed *when unlocked. Id.* at 1204. Moreover, the mere fact that a product or process may be used in a manner that does not infringe a patent is not a defense to a claim of infringement if the product or process is also reasonably capable of a use that infringes the patent. *Hilgraeve Corp. v. Symantec Corp.,* 265 F.3d 1336, 1343 (Fed. Cir. 2001).

The facts of the *Finjan* opinion are similar to the factual issues in this case. Asserted claim 15 of the '060 patent recites a system comprising a computer processor and memory with a series of instructions that *are capable* of causing the computer to perform various tasks *when executed.* (RSUMF at ¶1.) Claim 15, in part, recites: "[a]n online-information system for connecting health-care providers with potential patients, the system comprising: at least one computer processor; and memory coupled with and readable by the at least one computer processer and comprising a series of instructions that, **when executed** by the at least one computer processor, **cause** the at least one computer processor to" perform a series of recited tasks. (*Id.* (emphasis added).) Like *Finjan*, the system of claim 15 does not require actual performance of the recited tasks; rather claim 15 merely requires the system be capable of causing the computer processor to perform the recited tasks "when executed." Indeed, the capabilities at issue in Health Grades' are *more* compelling than the capabilities at issue in *Finjan* because the capabilities in this case are *not part of locked modules* like they were in

- 13 -

2003946927_1.doc

*Finjan*. Rather, one need only use the accused MDx website in its normal operating mode for the computer to execute tasks as claimed in claims 15 and 16.

MDx argues that the *Finjan* reasonable capability test does not apply to this argument because the phrase "received from the first healthcare providers" is past tense and thus must have already actually happened. This is incorrect. The "when executed" language is part of the introductory preamble of claim 15 and accordingly applies to every limitation of every element of claim 15 as shown below:

> 15. An on-line information system for connecting healthcare providers with potential patients, the system comprising:
>
> at least one computer processor; and
>
> memory coupled with and readable by the at least one computer processor and comprising a series of instructions that, *when executed by the at least one computer processor, cause the at least one computer processor to*:
>
> > receive a request for information regarding a first healthcare provider;
> >
> > access healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider . . . ."

(RSUMF at ¶1 (emphasis added).) In other words, the system must be capable of accessing information that has been received from a healthcare provider. MDx has admitted that its system has this capability. Thus, Health Grades has evidence that MDx's system meets this claim element. But even if this Court finds that the "received from" language is not directed to a capability, the capabilities of MDx's website would still be circumstantial evidence that the system operates as claimed for the same reasons discussed above.

- 14 -

### B. MDx's Argument About "Healthcare Provider Verified Information" is an Attempt to Reargue An Issue it Lost In the Markman Order

MDx argues that the claims require verification "separate" from receipt of the information from the physician and that "verification" means "obtaining proof" of the accuracy of the information. (MDx Motion at p. 10.) This Court already rejected both of these arguments in the Markman Order:

> Defendant requests the following construction for this term: "information **proved to be true** directly and personally by the healthcare provider." Docket No. 93 at 16. . . . The Court agrees with plaintiff that there is no need to construe the word verified and, to the extent it were to be construed, the plain and ordinary meaning would apply.[8]
>
> > [8] Although defendant is correct that "verify" can mean "to prove," "verify" may also mean, depending on its context, "confirm" or "substantiate." . . . . Here, the specification makes clear that the act of "verifying" requires only that the website receive confirmation of the information from some other source, in this instance the healthcare provider. ***Indeed, the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider.*** See '060 Patent col. 2 ll. 55-62 (where the patent's Summary describes "physician-verified, or physician provided" information as well as "company-verified" information and "patient-provided information"); '060 Patent col. 7 ll. 56-64 ("The first section 306 contains physician-verified information, **in which the member physician provides personal information,** such as specialty information 316, medical philosophy 318, gender 320, age 322, years in the profession 324, years in the particular practice listed 326, if any, title 328, professional status 330, awards and honors 332, professional appointments 334, professional affiliations/memberships 336, publications338, languages 340, hobbies 342, etc. 344").

(Markman Order at p. 15 n.8 (emphasis added) (citations omitted).) In sum, although this Court declined to construe the term "verified," it did find that one way to satisfy the "healthcare provider-verified information" element is to have a physician provide the information to information service provider (e.g., MDx).

- 15 -

As described above, Health Grades has compelling evidence to show that physicians have provided information relating to three or more of the claimed fields. Thus, this information is "verified" by the physicians. At the very least, the question of whether the information is verified is a disputed issue of fact. MDx's summary judgment motion should be denied.

## IV. Conclusion

In sum, MDx's summary judgment motion is based on a disputed issue of fact and a claim interpretation that has been rejected by this Court. Summary judgment should be denied.

Dated: November 26, 2012                     ROTHGERBER JOHNSON & LYONS LLP

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 623-9000
Fax: (303) 623-9222
Email: gkanan@rothgerber.com
kkosto@rothgerber.com
jvazquez@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2012, I electronically filed the foregoing **HEALTH GRADES, INC.'S OPPOSITION TO MDx MEDICAL, INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Scott Murray
David Chunyi Lee
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY 10112
Email: sstimpson@sillscummis.com
Email: smurray@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO 80202-2617
Email: ridley@wtotrial.com

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@rothgerber.com
          kkostolansky@rothgerber.com
          jvazquez@rothgerber.com

*Attorneys for Plaintiff Health Grades, Inc.*
