# EXHIBIT A

(Redacted Version of Dkt. # 446)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR PARTIAL SUMMARY JUDGMENT (1) THAT HEALTH GRADES IS NOT ENTITLED TO LOST PROFITS; AND (2) ROYALTY RATES MAY NOT BE APPLIED TO REVENUE OF THE ENTIRE ACCUSED WEBSITE**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by its undersigned counsel, respectfully submits this Reply in Support of Its Motion [Dkt. # 372, the "Motion"] Pursuant to Federal Rule of Civil Procedure 56 for Partial Summary Judgment (1) that Health Grades, Inc. ("Health Grades") is Not Entitled to Lost Profits and (2) Royalty Rates May Not Be Applied to Revenue of the Entire Accused Website.[1]

**I.    INTRODUCTION**

Health Grades' opposition to this Motion only serves to underscore the very bases upon which the Motion should be granted. Health Grades concedes, as it must, the well-settled

---

[1] The Court previously granted the parties' request to exceed page limitations, to fifteen pages. [Dkt. # 328]

1

proposition that a plaintiff seeking lost profits and a reasonable royalty for alleged patent infringement must prove demand for the patented product. [Dkt. # 412]. However, in response to MDx's argument that Health Grades has failed to show demand related to the patented features, Health Grades argues both sides of the coin – (i) there is proof of demand for the patented feature, (and then hedging its bet) or "[a]t a minimum there is a disputed issue of material fact whether the *Panduit* test for demand is met that should preclude summary judgment; and (ii) Health Grades doesn't need to prove such demand here because the websites are coextensive with the patented features and, therefore, MDx bears the burden of proof to show that any unpatented features of the websites drive demand. Both arguments are without merit and misstate the evidence relied upon by MDx, as well as the governing legal principles for proving lost profits and a reasonable royalty.

## II.     REPLY CONCERNING UNDISPUTED FACTS

1.     Health Grades response to this Fact, stating that it is only applying the royalty rate to "advertising revenue," is disingenuous. The "advertising revenue" is ***for the entire website***, and so MDx's Fact 1 that says the royalty is applied "to revenue of the entire Vitals.com website" is completely accurate. The point is not about what *categories* of revenue (*e.g.,* advertising, licensing, etc.) are used; it is about Health Grades' application of its alleged royalty rate to revenue generated by the entire website not limited in any way to the patented features.[2]

---

[2] Similarly disingenuous is Health Grades' and David Hall's arguments regarding which attachment to Mr. Hall's report he used as the advertising revenue data for his damages analysis. The bottom line is that none of the revenue data in the attachments to Mr. Hall's report identify the websites' revenues derived from the patented features versus the numerous non-patented features.

2

2.      This Health Grades denial is frivolous.

REDACTED

And this ignores the many features of the Vitals website that have nothing to do with reporting on physicians, such as doctor directories, articles of interest, patient education, services, spotlights, etc. *See* www.vitals.com.

3.      Health Grades tries to poke holes in the testimony cited by MDx in this Fact, but only addresses a fraction of that testimony. Moreover, Health Grades points to no evidence of demand.

4.      Health Grades abandons the testimony of its own expert, and cites to trivialities such as an alleged "title" of the Vitals website, and a statement in the MDx financials about users comparing and ratings physicians. Health Grades ignores the fact that that the vast majority of physician profiles don't use the technology even under Health Grades' overly expansive perspective (*see* Fact 2, above), and it ignores the undisputed fact that most users search for doctors through Google or Bing. [Dkt. # 372-2 (Exhibit A), pp. 152-153].

5.      Health Grades again runs from the plain admissions of its expert. [Dkt. # 372-2 (Exhibit A), p. 78 (Q: How much revenue from attachment 1 is included in attachment 1 but

---

[3] Exhibits A and B to this Motion are attached to MDx's initial motion brief, Dkt. # 372. Therefore, the exhibit attached hereto is designated as Exhibit C.

3

doesn't relate to these business activities regarding the '060 patent? A: I have not made a calculation of that." *** Q: Can you tell me if $100 or more of the revenue in attachment 1 is unrelated to the '060 patent? A: I have not made that determination. *** Q: You don't know one way or another whether $10 million or more of revenue in your attachment 1 is unrelated to the '060 patent? A: I have not made a calculation.")]. Health Grades also again falls back on the claim that it is only using "advertising" revenue – a meaningless distinction here. *See* Fact 1, above.

### III. RESPONSE TO HEALTH GRADES' STATEMENT OF ADDITIONAL DISPUTED FACTS

1. Denied. In support of its contention that a disputed material fact exists regarding "[w]hether MDx keeps accurate records of the revenues it makes from the patented and non-patented features of its Vitals.com website," Health Grades cites an already ruled-upon Motion to Compel Discovery [Dkt. 126, pp. 10-11]. The cited portion of that Health Grades' motion to compel – requesting that MDx be compelled to produce complete financial records – was granted by the Court on April 26, 2012. [Doc. # 192, p. 3]. Fact discovery is now over, so Health Grades cannot create a material disputed fact by pointing to its own failure to obtain information – through either another motion to compel or deposition testimony – that it believes is material to its expert's damages analysis. And in any event, the point is meaningless – the law requires proof of demand, and patentees cannot dodge that requirement just because the demand data is not neatly packaged for them in the financial statements of the defendant.

2. Denied. Health Grades cannot create a disputed material fact regarding the patented features' demand by simply pointing to the parties' market share. Health Grades does not cite any document or testimony supporting the argument that such market shares are due to

4

the patented features. This is pure speculation, particularly given the fact that both websites have so many features unrelated to the patent. *See* Section II (2), *supra*.

3. Denied. Health Grades does not cite any document or testimony for the proposition that MDx's decision not to make certain "design-around changes" shows that the patented features are of value to MDx and, therefore, prove demand for the patented features. MDx's assertion that it is not-infringing the patent [*see* MDx's pending motions for summary judgment regarding non-infringement, Dkt. #s 195 & 367], provides the strongest reason why MDx would not make such design-around changes, and some of those were design changes but did not stop litigious Health Grades from suing. Health Grades' speculation does not create a material disputed fact. Finally, as explained below, the old *Gyromat* case cited by Health Grades does not stand for the proposition that demand is proven any time that there could have been a design-around; nor does it stand for the proposition that the burden of proof rests on an accused patent infringer to show that unpatented features drive demand.

4. Denied. The point here is that Health Grades did ***nothing*** to apportion the patented revenue and used all the advertising revenue from the entire website.

REDACTED


All these numbers were given to Health Grades, but Health Grades did not use them, nor did it do anything else that might have been done such as a survey. Health Grades simply used all the advertising revenue.

5

## IV. THE LAW REQUIRES PROOF OF DEMAND

In its opposition, Health Grades does not identify any evidence showing that consumers use Health Grades' website and MDx's Vitals.com because of the patented features at issue, including comparison ratings in the report on the first healthcare provider. Instead, Health Grades' continues to repeat the same incorrect proposition used by its expert for his damages analysis –

> The patented product is the Health Grades' website, and the accused product in this case is the Vitals' website. Both websites incorporate and use the patented features, and for damages calculation purposes it is assumed that the accused product, *i.e.,* Vitals' website, infringes the patent.

[Dkt. 412, p. 5].

This premise is entirely wrong, because the websites and the patent *are not coextensive*. Both websites have many physician profiles, and many other features, that do not even arguably meet the patent claims. [Dkt. # 372-2 (Exhibit A), pp. 62-63 (stating that two of the three ways to use the Health Grades website do not use the patented features); at 66 (discussing still others of the features of the websites that do not use the patented features); *see* Section II(2), *supra*.[4]

Health Grades' damages expert was entirely unable to quantify what part of the demand came from patented or unpatented features (Dkt. # 372-2 (Exhibit A), at 119:18-123:13); he conceded that "what motivates people to find a way to these websites is generally a desire to find information on . . . either a physician, or hospital, or nursing home" (*id.* at 152:3-153:4); he conceded that most users do not even attempt to go to the Vitals or Health Grades websites, but

---

[4] The Health Grades approach can be analogized to a patent on a car radio. Even though the car contains the radio, it is not proper to claim that the entire car is infringing the patent. Here, only small portions (if any) of these large websites arguably use the patented technology – Health Grades continued insistence that "the accused product in this case is the Vitals' website" makes a mockery of Federal Circuit damages law.

6

instead find their way to these websites simply through general searches such as on Google (*id.* at 288:9-23); and he was unable to say if the revenue from the Vitals website included $100, or $10 million, of revenue unrelated to the '060 Patent (*id.* at pp. 78-80).  Health Grades submits no evidence with its opposition to counter these deficiencies, but instead only more speculation and conjecture regarding alleged disputed material facts that Health Grades' failed to obtain during fact discovery.  This is not sufficient to avoid summary judgment.

V.  **HEALTH GRADES CANNOT AVOID ITS BURDEN OF PROOF THROUGH SPECULATION OR BY TRYING TO SHIFT THE BURDEN TO MDX**

   A.  **MDx's Refusal to Make More Design-Around Changes Does Not Constitute Proof of Demand for the Patented Features**

Acknowledging its lack of evidence of demand to support its expert's lost profits and reasonable royalty calculations, Health Grades next argues that it need not show such evidence of demand.  Regarding the lost profits analysis, Health Grades argues that MDx's decision not to make design-around changes that would have cost only $1000 or less "shows the demand for the patented product."  [Dkt. # 412, p. 5].  This assertion is factually and legally incorrect.

Factually, MDx made various design changes when it found out about this patent. *See* Exhibit C attached hereto, ¶¶ 4 & 5, Exhibits 2 & 3.  But Health Grades did not even bother to check the Vitals website before filing suit.  Those changes are subject to a pending motion for summary judgment of no infringement.  [Dkt. # 195].  The fact that MDx did not make even *more* changes does not prove demand.

More importantly, legally, there is nothing in the Federal Circuit case law allowing a patentee to prove demand by simply identifying a possible design-around.  The two cases cited by Health Grades do not stand for the proposition that a refusal to make design-around changes,

7

of itself, proves demand for the patented features. In both *State Industries, Inc. v. Mor-Flo Industries, Inc.,* 883 F.2d 1573 (Fed. Cir. 1989) and *The Gyromat Corporation v. Champion Spark Plug Co.,* 735 F.2d 549 (Fed. Cir. 1984), demand for the patented feature was clearly proven. In *Mor-Flo,* there was evidence that consumers wanted foam-insulated water heaters, "there was no demand by customers or consumers of residential gas water heaters that heaters be foamed in accordance with any particular method, [and] during the period of infringement of [plaintiff's] patent, there was no acceptable non-infringing method of satisfactorily foaming gas water heaters in the market place." *State Industries, Inc. v. Mor-Flo Industries, Inc.,* 883 F.2d at 1578-1579. The court concluded, ***"[i]n effect then, the demand went to the method."*** *Id.,* at 1579 (emphasis added).[5] In stark contrast to the facts in *Mor-Flo*, no such evidence of demand based solely on the patented feature exists here. Health Grades cannot contend that its method of allowing consumers to compare doctors is the sole means for providing such comparisons. Health Grades' damages expert admits that there are numerous non-infringing substitutes in the form of competitors that have not been sued for infringement by Health Grades [dkt. # 412-2, ¶¶ 24-27], and that non-patented factors such a search engine optimization drives consumers to the websites. [Dkt. # 372-2 (Exhibit A), at 288:17-23].

Similarly, in *Gyromat*, the issue of demand for the patented feature was distinctly different than here. The patented features at issue were control features for industrial paint spraying machines. *The Gyromat Corporation v. Champion Spark Plug Co.,* 735 F.2d at 550-

---

[5] In discussing a second patented method that was developed by another competitor, the court similarly stated: "Foam insulation was the source of customer demand and the only two available ways to do it, State's and Rheem's, were patented. It therefore is probable, in light of the district court's undisputed finding that customers did not care about the particular method used, that both State and Rheem would have sold their market shares of Mor-Flo's infringing sales. All of this leads to but one conclusion: There was a demand for State's method." *Id*.

8

551. The defendant *conceded* infringement of the patented feature and only claimed that the patent was invalid and unenforceable. *Id.* Moreover, given that the plaintiff and defendant were the only two manufacturers of the model at issue – a short-stroke reciprocator sprayer – and the defendant had been infringing for over fifteen years (with notice), the court found that the sales of infringing model proved the demand for the patented feature. The court reasoned (and approvingly quoted the lower court master's ruling):

> The substantial number of sales by Champion of infringing products containing the patented features itself is compelling evidence of the demand for the product. Champion's sales necessarily meant that there were buyers who wanted the product and were willing to pay Champion's price, which was substantially the same as that of Gyromat. As the master observed,
>
>> "the patented control features were advertised by Champion and while Champion has shown that painting systems could be made and sold without the patented features, the patented control system was obviously important enough to keep for 15 years on all of its short-stroke reciprocating painting systems. If there was no demand for the patented system, Champion would not have run the risk of infringement."

*Id.,* at 552. This ruling, which is almost thirty years old and relates to an industrial product much different than the websites at issue here, does not stand for the proposition that a refusal to make additional design-around changes alone constitutes evidence of demand for the patented feature, especially where, as here, the defendant *contests* infringement, and indeed made other design changes.

### B. Health Grades' Royalty Rate Analysis is Flawed Because It Used All of MDx's Advertising Revenue

Health Grades arguments regarding its expert's royalty rate analysis are also without merit because they fail to examine the precise, relevant issue – the revenue derived from the

9

patented features.[6] MDx has argued that Health Grades has improperly "use[d] revenue from the entire website as a royalty basis." [Dkt. # 372, p. 3]. In response, Health Grades argues that this is not true, that it "is applying the rate only to Vital's *advertising* revenue." [Dkt. # 412, p. 6 (emphasis in original)]. But that is exactly MDx's point – that yet again, Health Grades has failed to account for demand, in this context shown by advertising revenue, obtained by MDx based on the patented features. Indeed, Health Grades makes no effort to properly account for advertising revenue derived from the patented features, and again attempts to shift the burden of proof to MDx.

*Mor-Flo*, cited again by Health Grades, does not stand for the proposition that MDx bears the burden of showing advertising revenues derived from the unpatented features, because as explained above, it was clear in *Mor-Flo* that the patented feature – a method for inserting foam insulation – drove the demand for the product. In fact, the court's statements cited by Health Grades in support of this proposition, appear in the "Amount of Profit" section of the court's opinion, not the "Demand" section. In light of the strong evidence of demand for the patented feature in *Mor-Flo*, and that court's finding regarding such demand, the defendant could not contest the amount of damages awarded with unsupported allegations of demand driven by unpatented features. That is not the case here. Health Grades has presented no evidence of demand for the patented features and *Mor-Flo* does not stand for the proposition that the burden of proof is shifted from Health Grades to MDx.

---

[6] Contrary to Health Grades' assertion in its opposition to this Motion (*see* p. 2), MDx does "challenge the royalty rate itself." MDx has challenged the royalty rate in its Motion to Exclude the Expert Testimony of Health Grades' Damages Expert, David Hall. [Dkt. # 375]. Such a challenge to the royalty rate itself is not necessary in this Motion because MDx is asserting a separate and independent basis for partial summary judgment regarding Health Grades' lost profit and reasonable royalty claims.

10

The *Mondis Technology* case cited by Health Grades also does not stand for the proposition that the entire market value rule can be used where there is no evidence of demand for the patented product. Health Grades' flawed citation of this case is based on its ongoing attempt to conflate the entire websites with the patented features. However, Health Grades' baseless argument will not become true, no matter how many times Health Grades asserts it. In *Mondis,* the accused products were monitors and a small number of televisions made by the defendants. There were at least thirteen to sixteen comparable licenses "to the patents-in-suit that provide for a royalty based on the entire value of the licensed products," and the plaintiff opined that it was industry standard to base such licenses on the entire market value. *Mondis Technology, Ltd. v. LG Electronics, Inc.,* 2011 U.S. Dist. LEXIS 78482, *15-*18 (E.D. TX, June 14, 2011). While Health Grades' expert considered the parties' licenses, Health Grades makes no attempt to show that the licenses monetarily account for the patented features in any specific way or that there is any industry standard regarding such licenses.

More importantly, the Federal Circuit has stated that its *Lucent* decision, upon which the Eastern District of Texas court based its analysis, should not be misread to eliminate a plaintiff's burden of proving damages when the patented features are only a part of an overall product that also contains non-patented features:

> ***Importantly, the requirement to prove that the patented feature drives demand for the entire product may not be avoided by the use of a very small royalty rate.*** We recently rejected such a contention, raised again in this case by LaserDynamics, and clarified that "[t]he Supreme Court and this court's precedents do not allow consideration of the entire market value of accused products for minor patent improvements simply by asserting a low enough royalty rate." *Uniloc*, 632 F.3d at 1319-20, 632 F.3d at 1319-20 (explaining that statements in *Lucent* suggesting otherwise were taken out of context). ***We reaffirm that in any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the***

11

> ***smallest salable patent-practicing unit, without showing that the demand for the
> entire product is attributable to the patented feature.***

*LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 67-68 (Fed. Cir. 2012) (emphasis added). Health Grades' attempt to distinguish the *LaserDynamics* holding is unavailing because Health Grades once again attempts to argue that the patented features at issue here are coextensive with the entire websites – "[in *LaserDynamics*] the patented feature was admittedly only a small component of the patented product. In this case, the patented features, which essentially enable users of the accused product, *i.e.,* the MDx website, to find and compare doctors, is [*sic*] what motivates users to use the website." [Dkt. # 412, pp. 9-10]. But as evidence for this claim that the websites are coextensive with the patented features, Health Grades cites only MDx's use of the term "compare" on the Vitals website and in MDx's financial statements. *Id.,* p. 10. Such unsupported and overly broad assertions regarding the websites' features are not sufficient to support the proposition that the patented features are "what motivates users to use the website" [dkt. # 412, p. 10], nor, as the Federal Circuit has reiterated, are they a valid basis for simply lowering the requested royalty rate. *See LaserDynamics*, 694 F.3d at 67 (Fed. Cir. 2012) ("The entire market value rule is a narrow exception to this general rule [that royalties be based not on the entire product, but instead on the smallest salable patent-practicing unit]."). Thus, the *Mondis Technology* case cannot be used here to overcome the Federal Circuit's requirement that the plaintiff show demand for the patent features.

In this case, Health Grades has failed to present tangible, reliable evidence that is not conjectural or speculative, which shows that ***the patented features are what motivates consumers to go to these websites***. *See id*. at 67-68. To the contrary, Health Grades' damages

12

expert admitted that what motivates people to get to these websites is a general desire to find information on physicians or hospitals. [Dkt. # 372-2 (Exhibit A), p. 152-153]. Accordingly, Health Grades cannot make the requisite showing of demand and its flawed royalty rate analysis should be rejected.

## VI. CONCLUSION

For all the foregoing reasons, and those in MDx's initial motion brief, MDx respectfully requests summary judgment (1) that Health Grades is not entitled to lost profits; and (2) that Health Grades may not base its reasonable royalty demand on profits for the entire Vitals website.

Dated: December 14, 2012

Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail:sstimpson@sillscummis.com
E-mail:smurray@sillscummis.com
E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: (303) 244-1800
Fax: (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

13

# CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2012, I electronically filed the foregoing MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR PARTIAL SUMMARY JUDGMENT (1) THAT HEALTH GRADES IS NOT ENTITLED TO LOST PROFITS; AND (2) ROYALTY RATES MAY NOT BE APPLIED TO REVENUE OF THE ENTIRE ACCUSED WEBSITE with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Jesus Manuel Vazquez , Jr.
   jvazquez@rothgerber.com, phenke@rothgerber.com

Gregory B. Kanan
   gkanan@rothgerber.com, dgrooms@rothgerber.com

Kris John Kostolansky
   kkosto@rothgerber.com, dgrooms@rothgerber.com

Scott David Stimpson
   sstimpson@sillscummis.com, gcaceres@sillscummis.com

Scott B. Murray
   smurray@sillscummis.com

David Chunyi Lee
   dlee@sillscummis.com

Terence M. Ridley
   ridley@wtotrial.com, norris@wtotrial.com

                                            *s:/ David C. Lee*