THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO MDX MEDICAL, INC.'S MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37 FOR HEALTH GRADES' REPEATED EFFORTS TO CONCEAL ITS PRIOR ART**

---

Plaintiff Health Grades, Inc. ("Health Grades"), by its undersigned counsel, respectfully submits its Response in Opposition to MDX Medical, Inc.'s ("MDx") Motion for Sanctions Under Federal Rule Of Civil Procedure 37 For Health Grades' Repeated Efforts to Conceal Its Prior Art (the "Motion") [Dkt. 425]:

I.  **SUMMARY OF RESPONSE**

Frustrated that there is no prior art evidence that contains all of the elements of the '060 patent claims asserted against it in this case, MDx asks the Court to instruct the jury that such prior art in fact exists but has been concealed by Health Grades. In support of its extraordinary request – which is not supported by the law or the facts – MDx asserts it first found out about the "Drucker Report" when it subpoenaed documents from Health Grades' patent prosecution counsel, Merchant & Gould, and that it first found out about the "Project Development Plans" or "PDPs" during the deposition of one of the inventors, Mr. Scott Montroy. Motion at p. 3.

2004006931_1.doc

Neither assertion is true.  MDx further asserts that Health Grades' concealed other evidence of "prior art," that Health Grades' interrogatory response relating to "prior art" was false, and that Health Grades did not adequately prepare its Rule 30(b)(6) witnesses to testify about prior art. None of these allegations have merit as discussed below.

### A.     The Drucker Report

Health Grades did not conceal or fail to produce information regarding the Drucker Report – to the contrary, Health Grades first produced documents showing and discussing the Drucker Report on July 28, 2011.  Contrary to MDx's assertion, this production by Health Grades was made almost *six months before* the production by Merchant & Gould referenced by MDX in its Motion, which was made on January 9, 2012.  *See* **Exhibit A**, HG0000253, HG0000258 – HG0000260, HG0000281 – HG0000285, HG0000496 (depicting screenshots of the Drucker Report);  **Exhibit B**, email dated July 28, 2011, from Jesús M. Vázquez to Scott D. Simpson, David C. Lee, Mark J. Rosenberg, Ramona Lampley and Terence Ridley, Subject: HG Document Production, attaching documents bates numbered HG0000241 – HG0000514 which include the Drucker information.  **Exhibit C**, email dated January 9, 2012, from Amanda Thomas (a paralegal at Merchant & Gould) to Scott Stimpson, Subject: Subpoena to M&G, making production of documents in response to the subpoena that include the Drucker Report.

Obviously Health Grades has not "concealed" the Drucker Report and there is no basis whatsoever for sanctions given Health Grades' production of documents that show and discuss the report on July 28, 2011, almost six months before it was produced by Merchant & Gould.

### B.     The PDPs

MDx similarly asserts in error in its Motion that "[n]ew, important documents – the

- 2 -

Product Development Plans (herein "PDPs"), *not previously produced by Health Grades* – were also identified at the deposition of inventor Scott Montroy." Motion at p. 3 (emphasis added.) The truth, however, is that Health Grades had produced *111* Project Development Plans on December 8, 2011, and December 12, 2011 - well in advance of the deposition of Mr. Montroy on January 16, 2012. **Exhibit D**, email dated January 31, 2012, from Jesús M. Vázquez to Scott D. Simpson, Scott Murray and David C. Lee, noting the previous production of PDPs; letters/DVD labels for 12/8/11 and 12/12/11 productions that contained the PDPs.

When Mr. Montroy testified regarding the PDPs at his deposition, counsel for MDx wrongly accused Health Grades of concealing the PDPs – just as MDx does now in its Motion. It is incomprehensible that MDx asserts this claim again in its Motion when it very well knows it is not true – as shown above Health Grades had produced 111 PDPs over one month before the Montroy deposition. **Exhibit D** ("We do not understand how or why you were not able to find these 111 documents yourself. You had them way in advance of the Montroy deposition, and yet at the deposition and afterwards you accused me and our client of intentionally failing to produce them.") In short, MDx's assertions regarding the PDPs were not true then, and they are not true now.

Health Grades made additional productions of PDPs on April 16, 2012, and March 30, 2012. **Exhibit E**, letters dated April 16, 2012, and March 30, 2012 from Jesús M. Vázquez to Scott D. Simpson, David C. Lee and Scott Murray, making further productions of PDPs.

Clearly there is no basis whatsoever for any sanctions relating to PDPs.

  C.  <u>The Health Grades' Searches and Productions</u>

Health Grades conducted extensive searches for documents using MDx's own search

terms – terms that MDx drafted precisely to capture the universe of existing documents that it could possibly argue are invalidating "prior art." The MDx search terms included the following words and phrases: prior art; physician research comparison report; compare; physician report; quality guide; PQR; PQG; vitals; 060; patent application; profits; MDx; competitor; royalty; project development plan; PDP; project log; project file; migration log; migration file; production log; release file; customer service report; Hewitt; Patient's Choice; Rocky Mountain; Discovery Health; AARP.

Given the broad and general nature of many of the search terms, the searches yielded hundreds of thousands of pages of documents. In direct contravention to its assertion that Health Grades has concealed and failed to produce prior art documents, MDx has referenced many of the documents produced by Health Grades in its invalidity contentions, arguing that they are invalidating prior art. *See* Second Supplemental Submission to Motion for Leave to Amend Invalidity Contentions, filed January 23, 2012 [Dkt. 122-1], at pp. 19 and 20 of 55, referencing "HG Report prior art" that MDx acknowledged was "provided by Health Grades in December, 2011, and January, 2012." MDx also expressly acknowledged Health Grades' productions of documents that MDx believes are prior art in its first motion to amend its invalidity contentions. *See* Motion to Amend Invalidity Contentions [Dkt. 97], page 3 of 7, acknowledging production by Health Grades on October 26, 2011, and noting "[t]hese additional documents contained further evidence of public knowledge and sale of *prior art* Health Grades products." (Emphasis added.) Likewise, MDx has acknowledged Health Grades' production of almost 135,000 pages of documents in December, 2011, "including documents about this *prior art*." [Dkt. 97] at pp. 3, 4. (Emphasis added.) In fact, the Physician Quality Comparison Report referenced by MDx at

page 2 of its Motion, bates numbered HG0032062 - HG0032085, was included within the December 8, 2011, Health Grades' production.  *See* **Exhibit D**, letter regarding December 8, 2011, production and DVD label showing bates number range of production.

MDx has similarly acknowledged that the May 10, 2012, production by Health Grades of over five hundred thousand pages of documents "*included further information on Health Grades' own prior art*, and many of those documents provide the basis for MDx's proposed amendments to the invalidity contentions in Exhibits A, B and C."  *See* MDx's Second Motion to Amend Invalidity Contentions at p. 3 [Dkt. 293]. (Emphasis added.)  Health Grades timely made the May 10, 2012, production in compliance with the deadline set by the Court in its Order [Dkt. 192].  In fact, Health Grades has not violated any Court Order in this case, much less any Order directed to discovery, and MDx does not contend otherwise in its Motion.

MDx's request that the jury be told that Health Grades "failed to produce documents showing the details of its prior art" flies in the face of the Health Grades' productions and of MDx's own acknowledgements about the information produced by Health Grades.  As with the Drucker Report and PDPs, there is no basis whatsoever for any sanctions relating to Health Grades' productions of documents in this case.

Although it is not mentioned in the Motion, the Court has previously dealt with MDx's broad requests for "prior art."  In its Order dated December 28, 2011, the Court ruled on MDx's motion to compel [Dkt. 65] and denied the motion with respect to MDx's Request for Production No. 7, which requested "[a]ll prior art to the Patent-in-suit of which Health Grades is aware." The Court denied the motion with respect to this request to the extent that MDx contended it required the production of "[a]ll documents showing the prior art Health Grades website."  Order

at p. 2 [Dkt. 104].[1]

### D.     The Response to Interrogatory No. 2

In the same Order the Court also denied MDx's motion with respect to Interrogatory No. 2, which similarly requested that Health Grades identify "all prior art." *Id*.  At the hearing held on December 21, 2011, the Court stated:

> "[b]ut, in my view, use of the term "prior art" in Interrogatory 2 leaves it open to the possibility that parties will disagree about whether something is or isn't prior art. And that's what's happened here. I'm going to deny the motion to compel with respect to Interrogatory 2 because the interrogatory is answered. **The defendant may disagree with that answer, and does disagree with the answer, but there is an answer here.** The parties are stuck with it for now.  It may be right, it may be wrong, it can be subject to proof one way or the other, but I find that the interrogatory has been sufficiently answered. **The dispute over whether something is or isn't prior art is a matter of interpretation or opinion, and the plaintiff is entitled to assert it [sic] view in that regard."**

[Dkt. 136] at p. 15, ll. 16-25, p. 16, ll. 1-5 (emphasis added).

Despite the Court's ruling that Health Grades is entitled to its view regarding whether "something is or isn't prior art," MDx asserts that Health Grades' response to Interrogatory No. 2 was "false" and made "in an effort to conceal [Health Grades'] own prior art." Motion at p. 16, Section III(1)(a). MDx asks the Court to inform the jury that "Health Grades' gave a sworn, false

---

[1] At the hearing the Court held on MDx's motion to compel [Dkt. 65] the Court stated that it was denying the motion with respect to MDx's request for all documents showing the prior art Health Grades' website as moot given Health Grades' representation that the documents had been produced. [Dkt. 136] at p. 45, ll. 3-7. The Court added that it would have denied the request "on the merits even in the absence of Mr. Vazquez' representation because I do think that the – the production request, it does request prior art. I've already ruled that that is a term which can – about which the parties can disagree." *Id*. at ll. 7-11. The Court also required both parties to certify that they had searched in good faith for all responsive documents and had produced all responsive, non-privileged documents known to exist. [Dkt. 104]. Health Grades timely made its supplemental productions pursuant to the Court's Order by January 23, 2012, and made the certification required by the Court on January 27, 2012.

- 6 -

interrogatory response in an effort to conceal its own prior art." *Id.* The response, however, was not false, and was based on Health Grades' opinion of what qualifies as prior art. Health Grades was not aware of any prior public use or sale of the claimed invention that qualifies as prior art and is still not aware of any prior public use or sale of the claimed invention that qualifies as prior art.[2] Health Grades disputes that the references identified by MDx constitute prior public use or sale of the claimed invention and/or that these references qualify as prior art under various subsections of 35 USC §102. *See* Health Grades Second Supplemental Response to Interrogatory No. 8 [Dkt. 425-2], at pp. 5-6, 13-15, 33-35. As discussed further below, during the deposition of Mr. John Neal, one of the inventors on the '060 patent and one of Health Grades' Rule 30(b)(6) deponents, Mr. Neal testified regarding why, as a layman, he does not consider the materials MDx contends are prior art to actually be prior art. (Neal Dep. at p. 129:17-24, 260:11-261:2.)

As such, Health Grades' response to Interrogatory No. 2 is not false and does not warrant the sanctions requested by MDx.

### E.     The Rule 30(b)(6) Depositions

MDx also asserts that Health Grades failed to produce "any witnesses who would be able to provide critical facts about its prior art." Motion at p. 16, Section III(1)(c). As discussed below, however, the Rule 30(b)(6) deponents gave adequate, substantive and detailed responses to the vast majority of questions asked by MDx's counsel at their depositions, and as discussed

---

[2] At the hearing on MDx's motion to compel, the Court denied MDx's request for fees, noting that the issues in the motion involved legitimate disputes that were made in good faith and that an award of fees would be unjust "given the substantially justified positions which I've seen taken [by Health Grades] with respect to many of the discovery requests." [Dkt. 136] at p. 66, ll. 3-6, 13-17.

- 7 -

in the case law below, their inability to answer some questions was not so egregious to warrant sanctions.

### F.     The Motion is Untimely

Assuming for argument's sake only that the Motion is not denied for the reasons discussed above, it should be denied because it is untimely. MDx waited over six months after the corporate depositions and after the close of discovery to file its Motion. MDx offers no explanation for its unreasonable delay because none exists. For this reason alone the Motion should be denied.

## II.     LAW AND ARGUMENT

Fed. R. Civ. P 37(b) authorizes sanctions for a party's failure to obey a discovery order. *See Fed. R. Civ. P. 37(b)*; *see also General Electric Co., v. Wilkins*, 2012 WL 2376940, *6 (E.D.Cal.); *Crawford v. Franklin Credit Management Corp.*, 261 F.R.D. 34, 40 (S.D.N.Y. 2009) (no relief under Rule 37(b) when failure to provide adequate Rule 30(b)(6) witness was not in violation of court order, and no relief under Rule 37(a) when counsel did not attempt in good faith to seek additional Rule 30(b)(6) testimony).

Fed. R. Civ. P. 37(c) sets forth sanctions for failing to comply with discovery obligations under Rule 26(a) or (e), including, after opportunity to be heard, payment of reasonable expenses, including attorney's fees, caused by the failure; informing the jury of the failure; and other appropriate sanctions, including those listed in Rule 37(b)(2)(A)(i)-(iv). *See Fed. R. Civ. P. 37(c).*

Sanctions may be imposed under Fed. R. Civ. P. 37(d) if a Rule 30(b)(6) deponent, properly noticed, fails to appear for the deposition. *See Fed. R. Civ. P. 37(d).*

Inherent powers must be exercised with great restraint and discretion and sanctions are appropriate only if there is bad-faith conduct in litigation. *Chambers v NASCO, Inc.*, 501 U.S. 32, 44 (1991). Generally, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of the evidence is predicated on bad faith. *Denim North America Holdings, LLC, v Swift Textiles, LLC*, 816 F.Supp.2d 1308, 1311-1312 (M.D.Georgia 2011).

### A. Health Grades Has Not Disobeyed Any Order And Has Fully Complied With Its Discovery Obligations Such That No Sanctions Are Warranted Under Rule 37(a), (b) and (c).

MDx's contends that sanctions are warranted for Health Grades' "refusals to produce relevant documents, a false interrogatory response, forcing Court-intervention before producing at the very end of fact discovery hundreds of thousands of responsive documents, and producing 30(b)(6) witnesses who were purposefully kept in total darkness about the central issues of the deposition topics." Motion at p. 16.

As fully discussed above in Section I(A), (B) and (C), Health Grades has not "refused to produce relevant documents" in this case – to the contrary, hundreds of thousands of documents were located using MDx's own prior art search terms and were produced to MDx. And even before MDx gave Health Grades its search terms, Health Grades produced the Drucker Report evidence that MDx contends is invalidating prior art on July 28, 2011, and Health Grades produced the "important" PDPs – again, before they were requested by MDx and well in advance of the Montroy deposition and all the other depositions in the case. In its Motion MDx does not identify a single document that Health Grades' has failed to produce. Clearly no sanctions are

- 9 -

warranted and there is no basis to inform the jury that Health Grades failed to produce any documents.

Similarly, because Health Grades' response to Interrogatory No. 2 was not false, no sanctions are warranted and there is no basis to inform the jury that Health Grades "gave a sworn, false interrogatory response in an effort to conceal its own prior art" as requested by MDx. As discussed in Section I(D) above, the response was not false and is based on Health Grades' opinion of what qualifies as prior art – the Court has stated that Health Grades is entitled to that opinion. Health Grades was not aware of any prior public use or sale of the claimed invention that qualifies as prior art and is still not aware of any prior public use or sale of the claimed invention that qualifies as prior art. Health Grades has disputed that the references that MDx asserts are prior public use or sale of the claimed invention and/or that these references qualify as prior art. Thus, no sanctions are warranted for Health Grades' response, and there is no basis to inform the jury that Health Grades "gave a sworn, false interrogatory response in an effort to conceal its own prior art" as requested by MDx.

MDx cites no law in support of its argument that sanctions are warranted for "forcing Court-intervention before producing at the very end of fact discovery hundreds of thousands of responsive documents." Motion at p. 16. None exists. In fact, as discussed above in Section I(C), the May 10, 2012, production by Health Grades fully supports this opposition to MDx's Motion, because the production – which was based on MDx's search terms – was timely made in full compliance with the Court's Order and therefore no sanctions can be assessed under Rule 37(b). Furthermore, in its Order the Court held that the parties' positions were "substantially justified" and therefore denied MDx's request for fees and costs related to the motion to compel.

[Dkt. 192] at p. 4.  If no fees and costs were appropriate when the motion was resolved, no monetary sanctions are appropriate now, much less any adverse inference instructions to the jury.

     **B.**     **There Is No Basis For Any Adverse Inference Instruction Because There Is No Spoliation And There Are No Discovery Abuses.**

It is telling that the word "spoliation" does not appear anywhere in the Motion, particularly given MDx's request for an adverse inference instruction that, if given, would be akin to granting judgment in favor of MDx on its invalidity defense.  Although it does not allege spoliation in its Motion, MDx did allude to the possibility that it would raise the issue in its motion to compel filed April 11, 2012. [Dkt. 174] at p. 3.  As detailed in Health Grades response, filed April 18, 2012, MDx knew when it filed its motion that Health Grades had preserved back-up tapes and had offered to search the back-up tapes. [Dkt. 182] at p. 3.  MDx did not mention this in its motion, nor did it mention that in light of the undue burden and expense associated with searching the back-up tapes, Health Grades informed MDx that it planned to ask the Court to order that MDx pay for the searches, and that counsel for MDx then decided that searching the back-up tapes would not be necessary.  As definitively stated by Health Grades in its response: "There is absolutely no spoliation issue here and counsel for MDx knows it."  [Dkt. 182] at p. 3.  Not surprisingly MDx was silent on the spoliation issue in its reply.  [Dkt. 184]

     As discussed below, the cases cited by MDx in support of its request for an adverse inference instruction are wholly distinguishable from the facts in this case.  First and foremost, in this case there is no failure to preserve or to produce evidence.  As shown by Health Grades' productions and by the fact that MDx was advised that back-up tapes were preserved, MDx's allegations are insupportable.

In *United States SEC v Suman*, cited by MDx in support of its request for an adverse inference instruction, the defendants against whom the instruction was given refused to testify and asserted their Fifth Amendment privilege, refused to make initial disclosures under Rule 26(a), failed to comply with discovery requests, and disobeyed several court orders. *Suman*, 684 F.Supp.2d at 384-385.  Health Grades has not engaged in any such conduct and *Suman* cannot support MDx's request for an adverse instruction.  Similarly, in *Tom v. S.B. Inc*., 280 F.R.D. 603 (D.N.M. 2012), a wrongful death case cited by MDx in support of its request for an adverse inference instruction, the defendants against whom the instruction was given withheld the driver's disciplinary records, the vehicle's repair and maintenance records, and the insurance company's investigative reports.  *Id*. at 618.  All the withheld materials were eventually produced, which "brought the extent of the Defendants' abuses to light. . ." *Id*.  In contrast, Health Grades has not engaged in any discovery abuses, and there are no materials cited by MDx that bring to light any abuses.  As discussed above in Section I(A), (B) and (C), MDx's attempt to cast the Drucker Report and the PDPs as such withheld materials is contrived.

*Pers. Audio, LLC, v Apple, Inc.*, is similarly distinguishable.  In that case the adverse instruction was based on the defendant's production of 6,300 pages of documents three weeks before trial.  *Apple*, 2011 WL 6148587, *1 (E.D.Tex.).  In this case trial has not been set, and Health Grades' productions were all timely made and completed over six months ago.

Finally, in *Lancelot Investors Fund, L.P. v TSM Holdings, Ltd*., 2008 WL 1883435 (N.D.Ill), the adverse instruction was based on the defendants' repeated failures to timely produce discovery regarding damages and failures to comply with two court orders.  *Id*. at *3,

- 12 -

\*7. In contrast, Health Grades has not failed to timely produce damages discovery and has not failed to comply with any court orders.

There is no basis for an adverse inference instruction in this case. The facts do not support it, and neither does the law. MDx does not even attempt to show bad faith, required by case law for such an instruction, because it knows there is no bad faith. *Denim North America Holdings, supra.* MDx's request for an adverse inference instruction should be denied.

### C. The Rule 30(b)(6) Deponents Adequately Testified Regarding The Topics And MDx Failed To Request Other 30(b)(6) Witnesses.

Health Grades designated Mr. Allen Dodge to testify regarding the topics in paragraph 1 of MDx's Notice, except for the products listed in the parenthetical. Motion at p. 6. MDx complains that Mr. Dodge did not review PDPs in advance of the deposition. Motion at p. 7. PDPs, however, are not "products or services" and were not listed as a topic. [Dkt. 424-6] at p. 5 of 5.[3] Mr. Dodge testified that he "spent a fair amount of time" with counsel preparing for the deposition, including "discussing the deposition topics," and that he reviewed "numerous documents." **Exhibit G**, Dodge Deposition, p. 18, ll. 3-6, 14-15. Mr. Dodge also testified that he reviewed documents showing products and services of Health Grades prior to August 29, 2006, and gave detailed testimony regarding the products. **Exhibit G**, Dodge Deposition, p. 20, ll. 11-14, p. 21, ll. 9-25, p. 22, ll. 1-25, p. 23, ll. 1-25; pp. 24-35 (testimony regarding the following products: SQI, SQP, QAI, QRA, QA, Doc Squared, QRS, consumer reports, physician reports, Physician Quality Report, POS). Mr. Dodge testified he conducted research to attempt

---

[3] MDx also complains that Mr. Dodge was not the right person to be designated. Motion at p. 8. Sanctions are not warranted because the deponent designated is not who the moving party believes should be designated. *Booker v. Mass. Dept. of Public Health*, 246 F.R.D. 387, 389 (D.Mass. 2007).

- 13 -

to determine when products were available and when they went public. **Exhibit G**, Dodge Deposition, p. 35, ll. 20-22.  Mr. Dodge gave detailed testimony about the PQR (i.e., Physician Quality Report) product.  **Exhibit G**, Dodge Deposition, p. 36, ll. 15-25, p. 37, ll. 1-25, p. 38, ll. 1-25, p. 39, ll. 1-17, p. 40, ll. 11-25, p. 41, ll. 1-19.

Mr. Dodge testified that if counsel for MDx had documents that would assist in answering questions he would be happy to review them. **Exhibit G**, Dodge Deposition, p. 41, ll. 11-19.  The inability of a Rule 30(b)(6) deponent to answer questions without reference to documentation he did not bring to the deposition does not warrant sanctions when a request for production expressly tailored to the deposition was not served with the notice. *Arctic Cat, Inc. v. Injection Research Specialists, Inc*., 210 F.R.D. 680, 686  (D.Minn. 2002) (Rule 30(b)(6) deponent is not expected to be clairvoyant, so as to divine the specific questions that could require the assist of a demonstrative aid, and issue could have been avoided with a request for production expressly tailored to the deposition's purposes).  MDx did not serve a request for production of any documents with its Rule 30(b)(6) notice, much less one expressly tailored to the purposes of the deposition.

MDx also complains that Mr. Neal had no knowledge of his topics and could not testify when the Physician Research Comparison Report ("PRCR") was available.  Motion at p. 13.  This is not true and misrepresents Mr. Neal's testimony.  With respect to the Physician Research Comparison Report, Mr. Neal testified that it was available in 2004.  **Exhibit H**, Neal Deposition, at pp. 107:18-108:10; pp. 110, ll. 7-12; *see also* **Exhibit H**, Neal Deposition, at pp. 139:15-142:20 (Mr. Neal discussed and explained what features the PRCR had and did not have in 2004).  Mr. Neal also testified about when comparison ratings were added to the reports, i.e.,

in 2006-2007. **Exhibit H**, Neal Deposition, at pp. 61:21-62:2. Mr. Neal testified the Physician Quality Report was available in 2003 or 2004. **Exhibit H**, Neal Deposition, at p. 43, ll. 15-18. With respect to the Physician Quality Guide ("PQG"), Mr. Neal testified he believed it was the same as the PQR. **Exhibit H**, Neal Deposition, at p. 40, ll. 11-15. Mr. Neal also testified why he did not believe the Health Grades' products are prior art. **Exhibit H**, Neal Deposition, at pp. 252:4-254:3; 260:11-262:2. Mr. Neal testified he reviewed hundreds of pages of content, including the Physician Quality Comparison Report, and that he did not believe the report contained physician provided information. **Exhibit H**, Neal Deposition, at pp. 116:13-25. Mr. Neal testified Health Grades started collecting patient-provided information in 2006-2007. **Exhibit H**, Neal Deposition, at pp. 127:18-23.

Mr. Neal also testified regarding when patient ratings were added to the reports. **Exhibit H**, Neal Deposition, at pp. 95:15-96:18; pp. 157:5-11. Mr. Neal testified that his recollection was "2006 to 2007," and requested that counsel for MDx show him documents that may help him answer more precisely. *Id.* As discussed above with respect to Mr. Dodge's request for documents, the inability of a Rule 30(b)(6) deponent to answer questions without reference to documentation he did not bring to the deposition does not warrant sanctions when a request for production expressly tailored to the deposition was not served with the notice. *Arctic Cat*, 210 F.R.D. at 686. MDx did not serve a request for production of documents with its 30(b)(6) notice.

Counsel for MDx incorrectly believed that the 30(b)(6) topics included "products and/or services of Health Grades that embody and/or imply any claim – and/or employ any claim of the patent in suit." **Exhibit H**, Neal Deposition, at p. 58, ll. 4-13. This was not one of the topics. [Dkt. 424-6] Thus, Mr. Neal's testimony regarding products that embodied the claims cannot

- 15 -

warrant sanctions, particularly when he testified that the first products that embodied the claims were launched in 2006-2007.  Motion at p. 15.

MDx also complains because it does not like Mr. Dodge's responses to questions regarding "critical features" of the Health Grades' products.  Motion at p. 8.   However, "critical features" of the Health Grades' products was not a listed topic.  Nor were the elements of the claims of the '060 patent or MDx's invalidity contentions listed as topics, and thus MDx's complaints regarding testimony about the elements of the patent claims and the information in its invalidity contentions do not warrant sanctions.  Motion at pp. 8-10.   Likewise, MDx's dissatisfaction with testimony about approximate dates versus precise dates does not warrant sanctions.  For the Court to impose sanctions, the testimony inadequacies must be egregious and not merely lacking in desired specificity in discrete areas.  *Crawford v. Franklin Credit Management Corp*., 261 F.R.D. 34, 39-40 (S.D.N.Y. 2009) (gaps in corporate deponent's knowledge were not so egregious as to warrant sanctions for lack of preparation, where counsel did not attempt in good faith to seek additional Rule 30(b)(6) testimony, and such lack of preparation did not violate a prior court order).  Counsel for MDx did not request additional Rule 30(b)(6) witnesses during the depositions of Mr. Dodge and Mr. Neal, and instead elected to wait over six months after the depositions to act by moving for sanctions.  This is an obvious ploy to use the alleged discovery deficiencies as a tool to seek judgment in MDx's favor on its invalidity defense.

Similarly, sanctions are not warranted where the deponent lacks knowledge in certain areas, but is well informed in most areas of inquiry, the deponent was not designated because of his ignorance, and counsel did not request additional 30(b)(6) witnesses to answer the questions

that the deponent could not answer for lack of knowledge. *Covad Communications Co. v. Revonet, Inc.*, 267 F.R.D. 14, 25-26 (D. Columbia 2010). In *Covad* the court observed that "[i]t is often impossible in any enterprise where employees have distinct roles for there to be one person who can answer all questions posed during a 30(b)(6) deposition. Ignorance in one area, provided it is professed in good faith, may lead to additional 30(b)(6) witnesses, but it should not lead to sanctions that should be reserved for the "bandying" that the courts have found unacceptable." *Id*. A fair reading of Mr. Dodge's and Mr. Neal's testimony shows that they were well informed in most areas of inquiry, and there is nothing to show they were designated for their ignorance – to the contrary, their testimony shows that they were well informed about the topics despite not being able to answer every question. And, again, counsel for MDx failed to request additional designees, which would have alleviated any claimed prejudice.

Rule 30(b)(6) "does not expressly require the designee to personally review all information available to the corporation. So long as the designee is prepared to provide binding answers under oath, then the corporation may prepare the designee in whatever way it deems appropriate – as long as *someone* acting for the corporation reviews the available documents and information." *QBE Insurance Corp. v. Jorda Enterprises, Inc*., 2012 WL 266431, *13 (S.D.Fla.). "Absolute perfection is not required of a Rule 30(b)(6) witness. The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation." *Id*.

The *Resolution Trust* and *Black Horse Lane* cases that MDx relies on for its request for sanctions stemming from the 30(b)(6) depositions are wholly distinguishable. In *Resolution Trust*, both Rule 30(b)(6) designees literally "possessed no knowledge relevant to the subject

- 17 -

matters identified in the Rule 30(b)(6) notice. *Resolution Trust*, 985 F.2d at 196. Similarly, when the Third Circuit affirmed an award of sanctions for constructive non-appearance of a Rule 30(b)(6) witness in *Black Horse Lane*, it was based on a record demonstrating that the Rule 30(b)(6) designee had done "nothing except show his face," "refused to answer questions in an intelligent manner," "refused to prepare," "and just literally thumbed his nose at the defendants and, frankly, at the Court." *Black Horse Lane*, 985 F.2d at 300. In contrast both Mr. Dodge and Mr. Neal possessed knowledge about the topics as can be plainly seen from their testimony – both prepared for their depositions – both testified intelligently and did not refuse to answer any questions.   No sanctions are warranted as a consequence of the Rule 30(b)(6) depositions.

### D.     The Motion Is Untimely And Should Be Denied For That Reason Alone

MDx does not explain why it waited (1) six months after the Rule 30(b)(6) depositions were completed; (2) over six months after Health Grades' document productions were completed, and (3) six months after discovery closed in the case, to file its Motion. "It is generally agreed that a motion for sanctions, regardless of the source of authority for the imposition of sanctions, must be timely filed. Although Rule 37 does not establish any express time limits within which a motion for sanctions must be filed, unreasonable delay may render such a motion untimely." *MGA Entertainment, Inc. v. National Products, Ltd*., 2012 U.S. Dist. LEXIS 131614, *10 (C.D.Cal.) *quoting Long v. Howard University*, 561 F. Supp. 2d. 85, 91 (D. DC. 2008) (citations omitted.)  "[A] motion for Rule 37 sanctions should be promptly made, thereby allowing the judge to rule on the matter when it is still fresh in his mind." *Mercy v. County of Suffolk, New York*, 748 F.2d 52, 56 (2d Cir. 1984). "The timeliness of a motion for sanctions [relating to discovery] depends on such factors as when the movant learned of the discovery violation, how

long he waited before bringing it to the court's attention, and whether discovery has been completed." *Long, supra*, at 91.

In *MGA Entertainment*, the movant was fully on notice of the discovery violation as of January 31, 2012, but did not file its sanctions motion until over six months later, on August 2, 2012, after the main discovery period had closed. *MGA Entertainment, supra*, at *13. Even taking into account a one-month stay within that six-month period, the court held the movant's delay was unreasonable and denied the motion for sanctions as untimely. *Id*. at *13, *15. The *MGA Entertainment* is analogous and fully on-point. MDx waited six months after being fully on notice of the alleged discovery violations to file its Motion, six months after discovery has been completed. This delay is unreasonable and the Motion should be denied as untimely.

### III.   CONCLUSION

For all of the foregoing reasons, MDx's Motion should be denied.

Respectfully submitted this 7th day of January, 2013.

                          ROTHGERBER JOHNSON & LYONS LLP

                          *s/ Jesús M. Vázquez*
                          Gregory B. Kanan, Esq.
                          Kris J. Kostolansky, Esq.
                          Jesús M. Vázquez, Jr., Esq.
                          1200 17th Street, Suite 3000
                          Denver, Colorado  80202
                          Tel:  (303) 623-9000
                          Fax:  (303) 623-9222
                          Email: gkanan@rothgerber.com
                                         kkosto@rothgerber.com
                                         jvazquez@rothgerber.com

                          *Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2013, I electronically filed the foregoing **HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO MDX MEDICAL, INC.'S MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37 FOR HEALTH GRADES' REPEATED EFFORTS TO CONCEAL ITS PRIOR ART** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Scott David Stimpson | Terence M. Ridley |
| Scott Murray | Wheeler Trigg O'Donnell, LLP |
| David Chunyi Lee | 1801 California Street, #3600 |
| Sills Cummis & Gross P.C. – New York | Denver, CO  80202-2617 |
| 30 Rockefeller Plaza | Email: ridley@wtotrial.com |
| New York, NY  10112 | |
| Email: sstimpson@sillscummis.com | |
| Email: smurray@sillscummis.com | |
| Email: dlee@sillscummis.com | |

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@rothgerber.com
           kkostolansky@rothgerber.com
           jvazquez@rothgerber.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*