**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

      Health Grades,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

**MDX MEDICAL, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO
INFRINGEMENT WITH REGARD TO AMENDED COMPLAINT AND
ALLEGATIONS RELATING TO AETNA LIFE INSURANCE COMPANY**

---

Defendant and Counterclaim plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, hereby moves for summary judgment (the "Motion") of no infringement with regard to Health Grades, Inc.'s ("Health Grades") First Amended Complaint ("Amended Complaint") filed January 11, 2013 (Dkt. # 481), including all allegations relating to Aetna Life Insurance Company ("Aetna") and its iTriage mobile application ("iTriage application").

**I.      THE AMENDED COMPLAINT**

By Order dated January 11, 2013, Magistrate Judge Boland granted Health Grades' motion to amend its complaint to add allegations of indirect and joint infringement relating to a mobile application of a third party, Aetna. Dkt. # 480. MDx had opposed the motion to amend because the proposed new claims were frivolous and made in bad faith. The Court allowed the amendment stating that the substantive merits of the allegations, or lack thereof, should be addressed in a motion for summary judgment. *Id.*, at 2.

The Health Grades Amended Complaint was entered the same day as the Court's Order, and is attached as Exhibit A.[1]  The new allegations accuse MDx of joint infringement (*e.g.,* Exhibit A, at ¶ 17), inducing infringement (*e.g.,* Exhibit A, at ¶ 26), and contributory infringement (*e.g.,* Exhibit A, at ¶ 27).  These new allegations are entirely frivolous, and MDx will be filing a motion for Rule 11 sanctions against counsel for Health Grades upon expiration of the safe harbor.  *See, e.g., Raylon v. Complus Data Innovations, Inc., et. al.*, 700 F.3d 1361 (Fed. Cir. 2012) (reversing the district court's denial of Rule 11 sanctions where plaintiff's counsel made frivolous infringement allegations).

The relevant facts are simple:  MDx has a database of healthcare provider information, and leases that data to Aetna.  Aetna uses certain of that information in its iTriage application.  The Agreement between MDx and Aetna and Schedule 001 to the Agreement are attached as Exhibit B.  The iTriage application allows users to search for healthcare providers using their mobile phones.  In connection with its motion to amend, Health Grades submitted a claim chart falsely alleging that the iTriage application infringes the patent-in-suit, United States Patent No. 7,752,060 ("the '060 patent"; attached hereto as Exhibit C).  A copy of that claim chart is attached hereto as Exhibit D.

Health Grades has not cited to any credible evidence that supports its new claims of infringement involving the iTriage application.  And it cannot do so because it has represented to the Court that it needs no further discovery.   Thus, Health Grades' new claims are untenable for lack of evidence.

---

[1] Exhibits A through G are attachments to the Declaration of David C. Lee submitted herewith.

II.    **STATEMENT OF UNDISPUTED MATERIAL FACTS**

**Patient ratings must be obtained by the company providing the website**

1.    Every claim of the '060 patent has the following claim language:  "patient ratings are received from an on-line patient experience survey ***completed on a company Web site*** by the one or more past or current patients of the first healthcare provider, and ***wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients***."  Exhibit C, col. 20, lines 43-49; col. 22, lines 33-39 (emphasis added).

2.    The above-cited claim language was added during the prosecution of the patent application that led to the '060 patent.  Portions of the Prosecution History of the '060 patent, attached hereto as Exhibit E, at MDX 0013553 and MDX 0013558.

3.    Health Grades asserts that the iTriage application instructs users that ratings of providers are done on the Vitals website ("to rate a provider, visit vitals.com").  Exhibit D, at 26.

4.    The patient ratings used by the iTriage application are obtained from surveys conducted on www.vitals.com, and the surveys are managed by MDx.  Exhibit B, at MDX 0104395-403.

5.    Aetna is the company providing the service for connecting healthcare providers with potential patients on the allegedly infringing iTriage application.  Exhibit B, at MDX 0104395-403

6.    Aetna does not manage the www.vitals.com website, or the surveys conducted thereon.  Exhibit B, at MDX 0104395-403.

**Data Received From the Healthcare Provider**

7.      Every claim of the '060 patent requires the receipt of at least three of certain data elements from the healthcare provider.  Exhibit C, claim 1, col. 20, lines 29-38; claim 15, col. 22, lines 19-27.

8.      Health Grades has no evidence that any healthcare provider has ever provided even two of the required data elements used in the iTriage application, let alone three.  *See* Dkt. 367, at ¶ 2 of the Statement of Undisputed Material Facts (this argument is the same in both motions).

**Verification by the Healthcare Provider**

9.      Every claim of the '060 patent requires that the data received from the healthcare provider be healthcare provider-verified.  Exhibit C, claim 1, col. 20, lines 29-38; claim 15, col. 22, lines 19-27.

10.     Health Grades has no evidence that any healthcare provider has ever verified any of this data.   *See* Dkt. 367, at ¶ 4 of the Statement of Undisputed Material Facts (this argument is the same in both motions).

**Comparison Ratings in the Report**

11.     Every claim of the '060 patent requires that the physician report on the first healthcare provider include comparison ratings of other healthcare providers.  Exhibit C, col. 20, lines 58-65; col. 22, lines 48-55.

12.     The claims of the '060 Patent also separately recite a "results list," which is generated in response to a user request. *Id.* at col. 21, lines 40-44 (claim 7).

13.    The Court construed "first health care provider" to mean "a particular healthcare provider about whom information is requested and a report is produced" and that the report must be directed specifically to the first healthcare provider.  Dkt. # 138, at 12-13.

14.    The Court construed "comparison ratings" to be "ratings on multiple healthcare providers, … thus permitting comparison of the 'first healthcare provider' with other potential healthcare providers."  Dkt. # 138, at 14.

15.    Health Grades identifies a results list to allege infringement of the "healthcare provider report" claim element and, thus, has no evidence that any healthcare provider report generated by the iTriage application has ever contained "comparison ratings" as construed by the Court.  *See, e.g.,* Exhibit D, at 34-36.

16.    The claim language requiring comparison ratings to be included in the report on the first healthcare provider was added during the prosecution of the patent application that led to the '060 patent.  Exhibit E, at MDX 0013513 and MDX 0013516.

**Alleged Contributory Infringement**

17.    MDx leases physician data to Aetna, some of which is used in the iTriage application.  Exhibit B, at MDX 0104395-403.

18.    The data MDx leases has substantial non-infringing uses.  For example, Health Grades was generating reports based on the same basic physician data for years in the prior art before the application for the '060 patent was filed.  While MDx strongly believes that the claims of the '060 patent were being practiced in some of this prior art, all of the prior art reports that lacked comparison ratings did not practice the '060 patent.   Health Grades has taken inconsistent positions on these two issues.  *See, e.g.,* Health Grades' Physician Quality Report for Dr. Martin,

dated Sept. 15, 2004, attached hereto as Exhibit F (example of a use of physician data in the prior art that Health Grades insists does not practice the '060 patent).  Other examples of non-infringing uses of such data are found on the MDx and Health Grades websites (www.vitals.com and www.healthgrades.com), but the possibilities of non-infringing uses are virtually limitless since the only infringement would be use in a report that has every one of the elements of the claims of the '060 patent, including comparison ratings of healthcare providers.

19.     Health Grades has no evidence that MDx contributorily infringed any of the claims of the '060 patent.

**Alleged Induced Infringement**

20.     Aetna defines the data it needs from MDx.  Exhibit B, at MDX 0104395-403.

21.     Health Grades has no evidence that MDx actively induced Aetna to infringe any of the claims of the '060 patent.

**Alleged Joint Infringement**

22.     Aetna defines the data it needs from MDx.  Exhibit B, at MDX 0104395-403.

23.     The "obligations" of Aetna under the agreement between MDx and Aetna say absolutely nothing about how Aetna will use the data, or anything that could link the iTriage application to even one of the '060 patent claim elements.  Exhibit B, at MDX 0104396 (Section 1.2), and 0104397-98 (Section 2.4).

24.     The agreement between Aetna and MDx gives Aetna control over display and other related functions of the data provided by MDx.  *Id.* at MDX 0104398.

25.     Health Grades has no evidence that MDx directed or controlled the actions of Aetna, or that MDx was a "mastermind" in connection with the iTriage application.

6

### III.     THE PERTINENT LAW

#### A.     Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary

judgment where there is "no genuine issue as to any material fact" and when the "moving party

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477

U.S. 317, 322-23 (1986); *Shamrock Techs., Inc. v. Medical Sterlization, Inc.,* 903 F.2d 789, 791

(Fed. Cir. 1990). These standards are fully applicable to patent cases. *Nike Inc. v. Wolverine*

*World Wide*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("Summary judgment is appropriate in a patent

case, as in other cases, when there is no genuine issue as to any material fact and the moving

party is entitled to judgment as a matter of law.").  Indeed, the Federal Circuit has emphasized

that "[s]ummary judgment is as appropriate in a patent case as it is in any other case," *Desper*

*Prods., Inc. v. QSound Labs., Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) (citations and quotation

marks omitted), and has encouraged use of Rule 56 where appropriate, stating that, "[w]here no

issue of material fact is present . . . courts should not hesitate to avoid an unnecessary trial by

proceeding under Fed. R. Civ. P. 56 without regard to the particular type of suit involved."

*Chore-Time Equip., Inc. v. Cumberland Corp.,* 713 F.2d 774, 778-79 (Fed. Cir. 1983); s*ee also*

*Nike Inc.*, 43 F.3d 644 at 646 (holding that the district court properly granted summary judgment

on non-infringement); *Fenner Inv., Ltd. v. Microsoft Corp.*, 632 F. Supp. 2d 627, 641-42 (E.D.

Tex. 2009) (granting defendants' motion for summary judgment of non-infringement).

#### B.     Infringement, Generally

One way in which a patent may be infringed is by "literal" infringement.  *General Mills,*

*Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997).  Literal infringement requires that

each and every element in the asserted claim of the patent be literally present in the accused device. *Id.* Put another way, there can be no literal infringement if the accused device lacks any one element of the asserted claim. *Id.*

A lack of literal infringement does not end the infringement inquiry, as infringement may exist under the "doctrine of equivalents." The doctrine of equivalents allows, in some circumstances, a claim element to be met by its substantial equivalent. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 732-33 (2002) (*citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950)). One way of judging equivalents is to determine if the element in the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result, as the claimed element. *Graver Tank & Mfg. Co.*, 339 U.S. at 608.

There are strict limitations to the application of the doctrine of equivalents. *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). First, the doctrine is limited by the "all elements rule." *Id.* Pursuant to the "all elements rule," "there can be no infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is not present in the accused device. *Id*, at 321. Application of the "all elements rule" is amenable to summary judgment. *See, e.g., id.* at 1318. As the Supreme Court has held, "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment. . . . [I]f a theory of equivalence would ***entirely vitiate a particular claim element***, partial or complete judgment should be rendered by the court, as there would be no further *material* issue for the

jury to resolve."  *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997) (emphasis added).

The determination of patent infringement under the doctrine of equivalents is also limited by the doctrine of "prosecution history estoppel."  *Lockheed Martin Corp.*, 324 F.3d 1308 at 1318.  Under this doctrine, if a claim element was added during prosecution of the patent for reasons related to patentability, the patent owner is presumed to be barred from employing the doctrine of equivalents to cover territory between the original and amended claim.  *Festo*, 535 U.S. at 737-38**.**

**C.**     **Contributory Infringement**

A party is liable for contributory infringement only if the party sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  35 U.S.C. § 271(c).

**D.**     **Inducement of Infringement**

An accused infringer is liable for induced infringement only if the accused infringer "actively induces infringement of a patent."  35 U.S.C. § 271(b).  Thus, liability is contingent upon an intent element, which requires that an alleged infringer know of the patent and know that the acts which are induced by the action of the alleged infringer will result in a direct infringement of the patent.  *Medtronic Vascular, Inc. v. Boston Scientific Corp.*, 348 F. Supp. 2d 316, 323 (D. Del. 2004) (citing *Ferguson Beauregard/Logic Controls v. Mega Sys.*, 350 F.3d

1327, 1342 (Fed. Cir. 2003)).

### E. Joint Infringement

A party who does not perform all claim elements may nonetheless be held to directly infringe if the party controlled the conduct of another acting party and they together performed each of the elements – the alleged infringer must be the "mastermind." *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007); *Global Patent Holdings, LLC v. anthers BRHC LLC*, 586 F.Supp. 2d, 1331, 1335 (S.D. Fla. 2008). The "direction and control" requirement for joint infringement liability applies equally to apparatus patents as to method patents. S*ee BMC Resources*, 498 F.3d at 1380 (comparing cases).

### F. Failures of Proof

Some of the bases for summary judgment addressed herein are based on the lack of any evidence to support the claim. In these situations, all that is required of MDx is to file a motion pointing out the missing elements and stating that there is a lack of evidence to find infringement. *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442. F.3d 1301, 1308-09 (Fed. Cir. 2006); *cf. Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1362 (Fed. Cir. 2012) (JMOL for non-infringement appropriate and $200 million jury verdict vacated, where patentee failed to present required evidence to show infringement).

## IV. RATINGS ARE NOT OBTAINED FROM THE ITRIAGE APPLICATION

Every claim of the '060 patent has the following, clear claim language: "the patient ratings are received *from an on-line patient experience survey completed on a company Web site* by the one or more past or current patients of the first healthcare provider, *and wherein the company Web site is managed by the company providing the service for*

10

*connecting healthcare providers with the potential patients*."  Statement of Undisputed Materials Facts ("SUMF"), at ¶ 1.

This language means what it says.  The patient-ratings have to be obtained from the website of the company providing the service; here, Aetna's iTriage application.  SUMF, at ¶ 5.  The language expressly and unequivocally excludes from its scope the use of patient ratings from surveys gathered on websites managed by other companies; here, MDx. SUMF, at ¶¶ 3-6.

Undeterred, Health Grades effectively ignores this requirement, showing the MDx website, www.vitals.com, as the source of the patient ratings.  SUMF, at ¶ 3 ("The patient ratings are compiled from a www.vitals.com on-line patient-experience survey"); and ("Aetna compiles this information thought [sic] its contract with MDX and literally by gathering it through an XML feed from MDx").  Health Grades even acknowledges that the iTriage application tells users to go to www.vitals.com to rate providers.  SUMF, at ¶ 3 ("to rate a provider, visit vitals.com").  Thus, Health Grades concedes that the patient ratings at issue *did not come from the iTriage application and that the rating must be done on the MDx website*.  This infringement argument, therefore, is baseless, and reads the company website management requirement entirely out of the claims.

Health Grades provides a conclusory doctrine of equivalents analysis at page 26 of its chart (Exhibit D), but that argument is also entirely baseless.  Clear limitations of a patent claim cannot be ignored under the guise of the doctrine of equivalents, and there are many cases solidly establishing this law, from both the Federal Circuit Court of Appeals and the United States Supreme Court.  As the Supreme Court has held, for example, "if a theory of

equivalence would ***entirely vitiate a particular claim element***, partial or complete summary judgment should be rendered by the court, as there would be no further material issue for the jury to resolve." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997) (emphasis added). The doctrine of prosecution history estoppel also precludes this argument, since this language was added to the claims by amendment in response to a prior art rejection. SUMF, ¶ 2 (responding to prior art rejections by adding this language to both independent claims). As the limitation was added for reasons related to patentability, there is a presumption of estoppel. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 737-38 (2002).

## V.      NO EVIDENCE OF ITEMS RECEIVED FROM THE PROVIDER

This argument is identical to that found in MDx's pending motion for summary judgment regarding the MDx website, as it applies equally to the new infringement claims relating to the iTriage application since the data is the same. The argument is incorporated by reference. See Dkt. # 367, Section IV. As such, the Court's resolution of Section IV of Dkt. # 367 should apply equally to this argument.

## VI.     NO VERIFICATION BY HEALTHCARE PROVIDERS

This argument is identical to that found in MDx's pending motion for summary judgment regarding the MDx website, as it applies equally to the new infringement claims relating to the iTriage application since the data is the same. The argument is incorporated by reference. See Dkt. # 367, Section V. As such, the Court's resolution of Section V. of Dkt. # 367 should apply equally to this argument.

VII.   <u>**NO COMPARISON RATINGS IN THE REPORT**</u>

All the claims also require that the report on the first healthcare provider include comparison ratings of other healthcare providers.  SUMF, at ¶ 11.  The Court's claim constructions sided entirely with MDx on these issues. The court construed "first health care provider" to mean "a particular health care provider about whom information is requested and a report is produced" and that the report must be directed specifically to the first health care provider.  SUMF, at ¶ 13.  The Court also found that "comparison ratings" must be ratings of multiple healthcare providers.  SUMF, at ¶ 14.  Thus, ratings of other healthcare providers must be included within a report that is directed specifically to a particular healthcare provider.  The new claims of infringement that Health Grades now seeks to add are an affront to this Court's claim construction.

First, Health Grades refers to a results list on the iTriage application as supposedly containing these comparison ratings.  SUMF, at ¶ 15.  However, these are simply the results of searches and not directed to any one provider.  A results list is not a report on a specific healthcare provider, and so this allegation is wildly inconsistent with the Court's claim constructions.  Results lists are separately claimed in claim 7.[2]  SUMF, at ¶ 12.

By ignoring the construction of the first healthcare provider report, Health Grades argues that the alleged comparison ratings are within such a report.  But in reality, Health Grades is contending that alleged comparison ratings *outside* the report on the first healthcare provider is the same or equivalent to the unequivocal requirement that those

---

[2] While the Health Grades infringement allegations are directed to the iTriage application, this non-infringement position is largely the same as that addressed in MDx's May 8, 2012 summary judgment motion, which is still pending.  Dkt. # 195.

ratings be *inside* that report – the exact opposite of the claim requirement.

Second, Health Grades is alleging that the information in the results list that indicates *how well a doctor matches up to the search request* is a comparison rating.  Exhibit D, at 35 ("In the above screenshot, the percentage matched to the search criteria are comparison ratings as defined by the Court. These ratings provide the patient with information regarding how well physicians listed in the results list satisfy the patient's specified criteria, such as specialty, location, gender, language, patient rating, or having an extended profile."). Reasonable minds could not find for Health Grades regarding this infringement position.

Health Grades also argues that comparing star ratings of the healthcare providers is a comparison rating.  *Id.* at 36.  In making this argument, Health Grades again entirely ignores the requirement of the claim that the comparison ratings must be included in the report on the first healthcare provider – it cites only a results list.  The infringement claims relating to the iTriage application are also entirely baseless for this reason, and this is yet another basis for summary judgment of no infringement.

## VIII.   THE CONTRIBUTORY INFRINGEMENT ALLEGATION IS BASELESS

Health Grades has alleged that the data MDx sells to Aetna makes MDx liable for contributory infringement.  SUMF, at ¶ 17.  Even if the Court ignores the numerous claim elements missing that are addressed above and the total lack of the required direct infringement, this allegation is itself entirely fanciful.

A party is liable for contributory infringement only if the party sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process,

constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  35 U.S.C. § 271(c).

This lengthy provision has been parsed into four distinct elements:  (1) that defendants sold a material to be used in a patented process; (2) that the material constituted a material part of the patented process; (3) that defendants knew the material to be especially adapted for use in the infringement of such patent; and (4) that the material did not constitute a staple article suitable for substantial non-infringing use.

Not even one of these elements is satisfied by the MDx data.  SUMF, at ¶ 19.  For (1), (2), and (3), the data leased by MDx is not used in a patented process, nor does it constitute a material part of a patented process, because, as discussed above, the iTriage application does not infringe any of the claims of the '060 patent.  The very fact that the patient ratings were obtained from the MDx website (and not from the iTriage application) prevents any possibility that the data is being used in violation of the '060 patent.  *See* Section IV, *supra*.  Moreover, there are several other reasons why the data is not being used in the patented process.  *See* Sections V-VII, *supra*.

Even if all these problems are ignored, then for required element (4), Health Grades has not cited, and cannot cite, to any credible evidence that physician data such as the data leased by MDx to Aetna is not substantially useful for anything other than in an infringement of the '060 patent.  *See* Health Grades' Motion for Leave to Amend Its Complaint, dated July 13, 2012, Dkt. # 253, at 15-16; *see also* Health Grades' Reply in Support of its Motion for Leave to Amend its Complaint, Dkt. # 329, at 9.  Simply making a

conclusory statement that such data is not suitable for substantial non-infringing uses, with no evidence to substantiate the statement, is not enough to prove contributory infringement. Indeed, Health Grades was generating reports based on the same basic physician data for years in the prior art before the application for the '060 patent was filed.  SUMF, at ¶ 18. While MDx strongly believes that the claims were being practiced by some of the prior art, both Health Grades and MDx acknowledge that those prior art reports that lacked comparison ratings did not practice the '060 patent.  SUMF, at ¶ 18.  Thus, Health Grades' current position on this contributory infringement claim (that physician data has no significant use other than in practicing the '060 patent claims) is entirely inconsistent with the position it has been taking throughout this litigation (that Health Grades' years of providing physician data in consumer reports in certain prior art reports never practiced the '060 patent).  SUMF, at ¶ 18.  The simple fact is that there are many, many obvious uses of this data that would not practice these patent claims, and Health Grades' claim to the contrary is frivolous.[3]

The data provided by MDx is only that – **_data_**.  It is simply information about

---

[3] For example, if we do a Google search for a specific Doctor (*e.g.*, Dr. Deffenbacher, used in the Health Grades chart), clicking on the resulting MDx link (found at www.vitals.com) will lead to Dr. Deffenbacher's report, where there are no comparison ratings anywhere to be found as required by the claims.  Also, Exhibit D does not assert that searches made through, for example, Google, would meet the "request" requirement of every claim.  *See, e.g.,* Exhibit C, col. 20, lines 23-28.  As most hits to the websites come through Google searches (or other search engines) – a fact admitted by Health Grade's expert (Portions of Dep. Tr. of David Hall, attached hereto as Exhibit G, at 288) -- this non-infringing use is not only a substantial non-infringing use; it is the dominant use.  Another example of a substantial non-infringing use of the data provided by MDx to Aetna is Aetna's DocFind Platform, which is a provider directory resource and operation that supports the ability for people, and specifically Aetna members, to lookup provider information on the web.  Exhibit B, at MDX 0104396.

healthcare providers.  MDx did not tailor or adapt the data for Aetna or for its use in an infringement of the '060 patent – that is, the data is a staple article or commodity of commerce that can be used in limitless ways without using every element of these claims as would be required for infringement.  Indeed, for all the reasons shown above in Sections IV-VIII, they are not being used in an infringing way now.[4]

Thus, summary judgment of no contributory infringement of any of the claims of the '060 patent should be granted.

## IX.   THE INDUCEMENT ALLEGATION IS BASELESS

An accused infringer is liable for induced infringement only if the accused infringer "actively induces infringement of a patent."  35 U.S.C. § 271(b).  The courts have identified the following elements of a claim for induced infringement, all of which are required: "(1) [t]here was direct infringement by the induced party; (2) the inducer had knowledge of the asserted patents; (3) the inducer 'possessed specific intent [and] not merely . . . knowledge of the acts alleged' to induce; (4) there was active inducement of the direct infringer." *Medtronic Vascular, Inc. v. Boston Scientific Corp.*, 348 F. Supp. 2d 316, 323 (D. Del. 2004) (citing *Ferguson Beauregard/Logic Controls v. Mega Sys.*, 350 F.3d 1327, 1342 (Fed. Cir. 2003)).

Elements (1), (3), and (4) are not even remotely close to being met.  SUMF, at ¶ 21. For element (1), there is no direct infringement for all the reasons stated in Sections IV-VIII, *supra*.  For element (3), Health Grades still has not cited, and cannot cite, to any credible

---

[4] Even a cursory review of the MDx website, for example, shows various ways the data is used that could never be accused of infringement, including, for example, information on health insurance and other related features for the doctors; international doctor directories; doctor directories by state and location; doctors A to Z; doctors by specialty, etc.

evidence that indicates that MDx *possessed specific intent* to induce this alleged

infringement.  *See* Dkt. # 253, at 13-15; *see also* Dkt. # 329, at 8-9.  To the contrary, there is

an abundance of evidence proving that neither MDx nor the iTriage application infringe any

of the claims of the '060 patent. *See* Sections IV-VII, *supra*.  In fact, Health Grades cannot

even show that MDx intended to have Aetna do anything with this data, let alone show that

it intended to have Aetna infringe the claims of the '060 patent, because it is Aetna that

defines the data it needs from MDx.  SUMF, at ¶ 20.  The truth is, MDx does not care what

Aetna does with the data, as long as payment is being received.   Health Grades has

absolutely no evidence of intent.

    For element (4), there is simply nothing – not even the slightest shred of evidence

that MDx did anything to induce Aetna to do anything other than pay for the data (and the

agreement MDx entered was not even with iTriage, it was with Aetna).  It is nonsensical for

Health Grades to even suggest that MDx encouraged Aetna to get the patient ratings from its

own application, when MDx is providing that data from its website.  Importantly, it is Aetna

that defines the data it needs from MDx, not the other way around, as Health Grades

suggests.  SUMF, at ¶ 20.  Health Grades has cited to no credible evidence that MDx

encouraged Aetna to include the three data elements to be received from the first healthcare

provider, because it does not have any evidence that MDx itself has even done that.  *See*

Dkt. # 253, at 13-15, *see also* Dkt. # 329, at 8-9.  Moreover, Health Grades has cited to no

credible evidence that MDx encouraged Aetna to use three of the third party data elements

in creating healthcare provider reports, because it does not have any evidence that even

MDx has ever done that.  *See* Dkt. # 253, at 13-15, *see also* Dkt. # 329, at 8-9.  Finally,

Health Grades has cited to no evidence that MDx encouraged Aetna to include comparison ratings of other healthcare providers in its reports.  *See* Dkt. # 253, at 13-15, *see also* Dkt. # 329, at 8-9.  This inducement allegation has no basis in fact or law, and, therefore, it should be dismissed on summary judgment.

## X.  THE JOINT INFRINGEMENT ALLEGATION IS BASELESS

"Direct infringement requires a party to perform or use each and every step or element of a claimed method or product."  *Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*, 520 U.S. 17 (1997); *Canton Bio Medical, Inc. v. Integrated Liner Technologies, Inc.*, 216 F.3d 1367, 1369-70 (Fed. Cir. 2000).  "To infringe an apparatus claim, the device must meet all of the structural limitations." *Id.* at 1311-12, *citing Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("[A]pparatus claims cover what a device is, not what a device does."). A party who does not perform all claim elements may nonetheless be held to directly infringe ***if the party controlled the conduct of another acting party*** and they together performed each of the elements.  *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007)("A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity.   In those cases, the party in control would be liable for direct infringement. It would be unfair indeed for the ***mastermind*** in such situations to escape liability.")(emphasis added).  The level of direction or control is "not mere guidance or instruction in how to conduct some of the steps of the method patent."  *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F.Supp. 2d, 1331, 1335 (S.D. Fla. 2008).  Rather, "the third party must perform the steps of the patented process by virtue of a contractual obligation or other relationship that gives rise to vicarious liability in order for a court to find 'direction or control.'"

*Id*.  The "direction and control" requirement for joint infringement liability applies equally to apparatus patents as to method patents.  *See BMC Resources*, 498 F.3d at 1380 (comparing cases); *see further Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc*., 424 F.3d 1293, 1311 (Fed. Cir. 2005) (rejecting patentees' efforts to combine the acts of surgeons with those of a medical device manufacturer to find direct infringement of an apparatus claim); *MuniAuction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) ("mere 'arms-length cooperation' will not give rise to direct infringement by any party." (quoting *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007)).

Health Grades does not allege, nor could it possibly allege, that MDx is controlling the actions of Aetna or iTriage.  There is not the slightest shred of evidence supporting such an allegation, and indeed MDx does not even have a contract with iTriage.  SUMF, at ¶ 25.  There is no control allegation in the proposed Amended Complaint, and even in the Health Grades infringement chart Heath Grades cannot bring itself to actually say the words that MDx "controls" Aetna or iTriage.  Health Grades is perhaps so reluctant to make this statement because simply stating it demonstrates the silliness of it – little MDx is "***controlling***" Aetna?

While Health Grades generally refers to the agreement between MDx and Aetna that agreement does not even remotely support the necessary allegations of control.  Indeed, the agreement spells out the "obligations" of Aetna, and those obligations say absolutely nothing about how Aetna will use the data, or anything that could link the iTriage application to even one of the patent claim elements, let alone all of them.  SUMF, at ¶ 23.  In fact, the agreement belies this Health Grades claim, in giving Aetna control over display and other related functions.  SUMF, at ¶ 24.

This joint infringement allegation, therefore, is entirely baseless.  It has no factual support whatsoever.  *See also Cross Medical*, 424 F.3d at 1311 (finding no infringement of an apparatus claim by manufacturer where manufacturer of apparatus met certain claim elements and surgeons using apparatus met other elements, noting that surgeons were not agents of manufacturer); *Gammino v. Cellco Partnership*, 527 F. Supp.2d 395, 398-99 (E.D. Pa. 2007) (granting summary judgment of non-infringement to owner of telephones capable of performing infringing act because patentee had no evidence that defendant performed infringing acts or "directs another entity to do so").

## XI.   <u>CONCLUSION</u>

For all the foregoing reasons, MDx respectfully requests that the Court grant summary judgment of no infringement regarding all the claims related to Aetna, including all joint, contributory, and inducement claims of infringement.

Dated:  January 18, 2013                    Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail: sstimpson@sillscummis.com
E-mail: smurray@sillscummis.com
E-mail: dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-5647
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2013, I electronically filed the foregoing **MDX MEDICAL, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT WITH REGARD TO AMENDED COMPLAINT AND ALLEGATIONS RELATING TO AETNA LIFE INSURANCE COMPANY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez , Jr.**
  jvazquez@rothgerber.com, phenke@rothgerber.com

- **Gregory B. Kanan**
  gkanan@rothgerber.com, dgrooms@rothgerber.com

- **Kris John Kostolansky**
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Scott B. Murray**
  smurray@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com


_s:/Vincent M. Ferraro_____