IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37 FOR HEALTH GRADES, INC.'S REPEATED EFFORTS TO CONCEAL ITS PRIOR ART**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, respectfully submits this Reply in Support of its Motion For Sanctions (the "Motion", filed on Dec. 4, 2012, Dkt. # 425) Under Federal Rule of Civil Procedure 37 For Health Grades, Inc.'s ("Health Grades") Repeated Efforts To Conceal Its Prior Art (the "Reply").

**The Drucker Report**

Health Grades claims to have adequately disclosed the Drucker report in July 2011. Health Grades' Opposition ("HG Opp."), filed on Jan. 7, 2013, Dkt. # 473, at 2 and 9. But this carefully-selected Health Grades disclosure only emphasizes the lengths to which Health Grades went to conceal the prior art. In fact, simply comparing the 2011 production, containing a report on Dr. Drucker on which Health Grades now relies ("the Disclosed Drucker Report", Exhibit A to HG Opp.), with the Drucker report that Health Grades withheld from MDx and instead gave

only to its own patent prosecution counsel, Merchant & Gould ("the Concealed Drucker Report", Exhibit C to MDx's Motion) demonstrates just how remarkably different the two reports are. For example, the Disclosed Drucker Report (1) has a developmental, internal Health Grades URL ("Uniform Resource Locator"), which provides no information as to whether or not it was accessible by the public; and (2) has no date other than a copyright date, which is not indicative of a date of public disclosure. Like Health Grade's 30(b)(6) deponents, the Disclosed Drucker Report is useless in determining what was in the prior art. The Concealed Drucker Report, on the other hand, has all of this and more. It shows a public consumer URL, proving it was on the public Health Grades website in mid-2005; it has patient ratings of Dr. Drucker; it has comparison ratings of healthcare provider hospitals; and it has the other claimed elements as well. Exhibit C to MDx's Motion. Health Grades does not even attempt to explain why it gave the Concealed Drucker Report to its patent prosecution counsel, but withheld it from counsel for MDx.

**The PDPs**

Health Grades notes that it produced 111 PDPs before the Montroy deposition. HG Opp., at 3 and 9. This is true. But this selective Health Grades production only further supports the MDx Motion. That is, like Health Grades' 30(b)(6) deponents and the Disclosed Drucker Report, this production concealed Health Grades' prior art: the PDPs produced before the Montroy deposition were primarily from 2007 and later – they disclose nothing useful with regard to the prior art. *See* E-mail from D. Lee to J. Vazquez, dated Feb. 3, 2012, attached hereto as Exhibit Q (highlighting added). It was only upon Court Order that Health Grades produced

the relevant PDPs with the proper dates, along with other relevant documents – five hundred thousand of them.[1]

**The False Response to Interrogatory 2**

Health Grades references a hearing held before the Court on December 21, 2011, the transcript of which is provided in Dkt. # 136.  HG Opp., at 6.  But the Court did not purport to rule on whether Health Grades signed a false verification.  Dkt. # 136 ("It may be right, it may be wrong . . .").  Health Grades' contention that its own public disclosures made years before the application filing date are not prior art, is not only frivolous, but it is absurd.  Public disclosures of healthcare provider reports having patient ratings in 2005 are prior art, and no objectively reasonable litigant could contend otherwise.  Interestingly, nowhere does Health Grades explain *why* it supposedly believes these public disclosures are not prior art.

**The 30(b)(6) Depositions**

At page thirteen of its brief, Health Grades finally addresses the inadequacies of its 30(b)(6) designees.  But there is no substance.  Nowhere does Health Grades even attempt to explain why Mr. Dodge was unable to testify about the prior art use of patient ratings; comparison ratings; information received from the healthcare providers; hyperlinks; searches by

---

[1] Health Grades references MDx's January 2011 Invalidity Contentions.  HG Opp. at 4.   More specifically, Health Grades argues that just because MDx relied on Health Grades' earlier produced documents, that somehow shows that Health Grades satisfied its discovery obligations.  But these invalidity contentions also support the MDx Motion.  That is, even in late January 2012, Health Grades was still concealing the key Concealed Drucker Report prior art (thus, there is no mention of the Concealed Drucker Report in those MDx contentions).  MDx is not arguing that Health Grades concealed all of its prior art; the point is that Health Grades withheld *the critical prior art, including the Concealed Drucker Report.*  See pages 9-10 of that invalidity contention chart (Dkt. # 122-1), for example, where MDx was forced to reference patient ratings of hospitals only and argue obviousness of patient ratings for physicians with other references.  That was all needless work – Health Grades had patient ratings of physicians in the prior art Concealed Drucker Report, for example, but simply refused to produce that critical information.

3

name, specialty, gender or location; advertisements; or enhanced services.  Motion, at 7-10.  And nowhere does Health Grades attempt to explain why Mr. Dodge knew nothing about Nursing Home Quality Comparison Reports; Physician Research Quality Reports; Comparative Physician Reports; or Premium Reports.  *Id.* at 10-11.  Health Grades cites various pages of Mr. Dodge's transcript, none of which address any of these failures of Mr. Dodge's knowledge.  HG Opp., at 13-14.  To the contrary, some of the portions of Mr. Dodge's transcript that Health Grades cites to only bolster MDx's argument that Mr. Dodge was in fact unprepared for his deposition.  *See*, *e.g.*, Exhibit G to HG Opp., at 32:5-42:3[2] (for example, at 32:19-25, "A [By Mr. Dodge]: At some point there did come the ability for a physician to review their information and, you know, make corrections to certain data elements.  Q (BY MR. STIMPSON): Okay. When did that come about? A: I don't recall the specific timeframe when that happened."; at 33:9-21, "Q (BY MR. STIMPSON): Was it in 2003 sometime when healthcare providers could come in and add some information? … A: Sometime, like I said, it wasn't in 2003 and 2004, but I don't recall after that when it would be."; and at 38:9-39:6, "Q: Did there come a time when they did include patient provided information?  A: Yes, there did.  Q: When was that?  A: I know that in 2006 I recall that there would have been information. I'm not sure if there would have been any patient provided information prior to 2006, though. … A: I don't know the specific date. I just know that in 2006 certainly. Q: Do you know if it was available in 2005? A: I don't know, as I said.").

Health Grades' opposition similarly fails to explain the many shortcomings of Mr. Neal's knowledge.  Again, no where does Health Grades even attempt to explain why Mr. Neal knew nothing about Physician Research Comparison Reports ("PRCR"); Physician Quality Guides

---

[2] The notation "XX:XX" indicates the page and line number, respectively, of the cited document. For example, the notation "32:5" refers the reader to page 32, line 5 of the cited document.

4

("PQG"); or Physician Quality Reports ("PQR").  Motion, at 13-14.  And nowhere does Health Grades even attempt to explain why Mr. Neal was unable to testify about when the first Health Grades product embodied by the claims was launched, the fact that Health Grades implemented patient ratings in 2005 (as the record so clearly indicates), the fact that Health Grades compiled data related to patient provided information as early as 2004 (as evidenced by an e-mail directed to Mr. Neal), and the fact that e-mails about patient surveys were sent to the public (as evidenced by the record).  Motion, at 15-16.

In response, Health Grades cites various pages of Mr. Neal's transcript, none of which address any of these failures of Mr. Neal's knowledge.  In fact, no where does Health Grades even attempt to explain why Mr. Neal could not testify about the beta testing of the PRCR.  And when Health Grades does attempt to show that Mr. Neal was prepared to give testimony on PRCRs, it identifies portions of Mr. Neal's transcript where he was testifying about the features of Physician *Quality* Comparison Reports – not PRCRs.  HG Opp., at 14.   Health Grades' attempt to explain how Mr. Neal was prepared to testify about PQGs is disingenuous, at best.  All Health Grades does is cite to Mr. Neal's testimony where he speculates that PQG was "perhaps a name that was assigned to the same report that we've already discussed."  Exhibit H to HG Opp., at 40:14-15.  Health Grades does not cite to anything in Mr. Neal's transcript where he indicates that he was prepared to testify about when comparison ratings or healthcare provided information were integrated into PQRs.  Finally, to show that Mr. Neal was prepared to testify as to when Health Grades added comparison ratings and patient ratings to its reports and began collecting patient-provided information, Health Grades simply cites to the same portions of Mr. Neal's transcript as MDx did in its Motion, and assents that Mr. Neal was prepared

5

because he testified that it was his recollection that the timeframe was 2006-2007 -- testimony that is clearly contrary to the evidence on the record. This not only bolsters MDx's position, it proves its case. If he had simply reviewed the few relevant documents before the deposition he would have realized that 2006-2007 was not the correct timeframe. Mr. Neal was not a properly prepared Rule 30(b)(6) witness.

**Timeliness**

Health Grades briefly argues that MDx's Motion is untimely because MDx allegedly waited until six months after the corporate depositions and after the close of fact discovery to bring this Motion. HG Opp., at 8 and 18-19. But the Dodge deposition was taken on June 28, 2012 – *after* fact discovery had already closed (fact discovery closed on June 15, 2012). Court's Order, dated Mar. 19, 2012, Dkt. # 162. As such, there was nothing that could be cured in the already-closed fact discovery period. Moreover, expert discovery was underway, with expert reports due on July 13, rebuttal expert reports due on September 17, and expert depositions to follow. MDx waited to see if Health Grades' technical expert could shed light on the prior art (he could not), conferred with counsel for Health Grades, and then filed the Motion.

Health Grades cites several cases to support its allegation of untimeliness, none of which are authoritative and all are inapposite. Health Grades' reliance on *MGA Entm't, Inc. v. Nat'l Prods.*, 2012 U.S. Dist. LEXIS 131614 (C.D. Cal. Sept. 14, 2012) to show that MDx's Motion is untimely is completely misplaced because it is wholly distinguishable from this case for three critical reasons. First, in *MGA Entm't*, the discovery cut-off was June 29, 2012 -- nearly 5 months after the date of the deposition in question, January 31, 2012. *MGA Entm't, Inc.*, 2012 U.S. Dist. LEXIS 131614, *14. In this case, Mr. Dodge's deposition was taken *after* the close of

6

fact discovery.  Court's Order, dated June 18, 2012, Dkt. # 222.  Therefore, unlike in *MGA Entm't*, MDx had no opportunity to cure the deficiencies of the Dodge deposition.  Second, in *MGA Entm't* the Defendant filed its motion for leave to file a motion for sanctions on August 2, 2012, after the cutoff date that the Court set to hear all motions.  *Id.*, *2.  In this case, the Court has no such deadline for filing motions, and so MDx did not expressly violate a Court Order by filing its Motion, as did the Defendant in *MGA Entm't*.  Notably, the Court in *MGA Entm't* did not even rely on Rule 37 to deny the Defendant's motion for being untimely, instead, the Court relied solely on the fact that the Defendant filed its motion after both the discovery cutoff and the motion hearing cutoff.  *Id.,* *13-*16.  Finally, the motion denied in *MGA Entm't* was not even a motion for sanctions; it was, in fact, a motion ***for leave*** to file a motion for sanctions.  The Defendant in *MGA Entm't* was forced to first ask the Court for leave before filing its motion for sanctions because the motion hearing cutoff had passed – an issue completely different than the issue before this Court.  For all of these reasons, *MGA Entm't* and this case are not even remotely comparable.

The fact of the matter is that neither Rule 37 nor the cases cited by Health Grades support its allegation that MDx's Motion is untimely.  *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998) (holding (1) that the "text of Rule 37 itself contains no time limitations on motions"; (2) a Rule 37 motion to be timely (finding no unreasonable delay) even though it was filed two weeks after summary judgment was entered and four months after notice by the Judge that he would entertain such a motion; and (3) no unreasonable delay because the plaintiff did not allege prejudice as a result of the timing of the motion).  For similar reasons as relied on by the Court of Appeals for the Tenth Circuit in *Lancaster*, this Court should reject

7

Health Grades' allegations that MDx's Motion is untimely.  Indeed, there is no unreasonable delay here, because (1) summary judgment has not yet been entered in this case; (2) MDx's Motion was filed only slightly over five months from the date of Mr. Dodge's deposition; (3) fact discovery closed even before the date of Mr. Dodge's deposition, leaving MDx with no opportunity to cure the deficiencies of Mr. Dodge's deposition; and (4) Health Grades has failed to allege any prejudice as a result of the timing of MDx's Motion.  Health Grades' allegation that MDx's Motion is untimely because it was filed over six months after fact discovery closed is also without merit.  *Centennial Archaeology, Inc. v. Aecom, Inc.*, 688 F.3d 673, 682 (10th Cir. 2012) (finding a motion for sanctions under Rule 37 as timely, even though it was filed 3 months after the close of fact discovery).  As such, Health Grades' argument should be rejected.

**The Proper Sanctions**

Health Grades' opposition claims there should be no sanction because it "fully complied" with its discovery obligations.  HG Opp., at 9.  Health Grades' premise, however, is false.  It intentionally signed a false interrogatory response; deliberately concealed all documents (including those it gave to its own patent prosecution counsel) that could have been used to show that the Drucker Report was prior art and had patient ratings of physicians and comparison ratings of hospitals; and put up two 30(b)(6) witnesses who were, by design, unprepared to provide any useful information.  The requested sanctions are entirely appropriate given Health Grades' repeated and continuous misconduct in attempting to conceal its own critical prior art.  Motion, at 16-18.

8

**Conclusion**

For all the foregoing reasons and for the reasons set forth in its Motion, MDx respectfully requests that its Motion and all requested relief set forth therein be granted.

Dated: January 25, 2013

Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail:sstimpson@sillscummis.com
E-mail:smurray@sillscummis.com
E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: (303) 244-1800
Fax: (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on <u>January 25, 2013</u>, I electronically filed the foregoing **MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37 FOR HEALTH GRADES, INC.'S REPEATED EFFORTS TO CONCEAL ITS PRIOR ART** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Jesus Manuel Vazquez, Jr.
  jvazquez@rothgerber.com, phenke@rothgerber.com

Gregory B. Kanan
  gkanan@rothgerber.com, dgrooms@rothgerber.com

Kris John Kostolansky
  kkosto@rothgerber.com, dgrooms@rothgerber.com

Scott David Stimpson
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

Scott B. Murray
  smurray@sillscummis.com

David Chunyi Lee
  dlee@sillscummis.com

Terence M. Ridley
  ridley@wtotrial.com, norris@wtotrial.com

                                                    <u>s:/Vincent M. Ferraro</u>