# EXHIBIT D

(Redacted version of Dkt. # 525-11)

Civil Action No. 11-CV-00520-PAB-BNB

**HEALTH GRADES, INC.'S OPPOSITION TO MDx MEDICAL, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT WITH REGARD TO AMENDED COMPLAINT AND ALLEGATIONS RELATING TO AETNA LIFE INSURANCE COMPANY**

**Exhibit 9**

**Excerpts from Expert Report of Philip Greenspun Regarding Infringement of U.S. Patent No. 7,752,060**

# Expert Report of Philip Greenspun

### Regarding infringement of U.S. Patent No. 7,752,060 by MDX Medical

This report is submitted pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.

## I. Introduction

1. My name is Philip Greenspun. I received a PhD in Electrical Engineering and Computer Science from the Massachusetts Institute of Technology in 1999 and have been teaching software engineering for Internet applications and database programming there periodically since receiving my degree. My business address is 5 Irving Terrace, #3, Cambridge, Massachusetts 02138. I have been involved in the computer science field for since 1978. I am over eighteen years of age and I would otherwise be competent to testify as to the matters set forth herein if I am called upon to do so at trial.

2. I have been retained by counsel for Health Grades, Inc. ("Health Grades") as a technical expert witness with respect to the proceedings currently before the Court in the above-captioned matter. I receive compensation in the amount of $425 per hour. Health Grades has also reimbursed me for travel and other expenses that I have incurred that are related to providing this technical analysis. My compensation does not depend on the outcome of this case.

3. For purposes of this Expert Report, I have been asked by Health Grades to provide an expert technical analysis of whether the asserted claims of U.S. Patent No. 7,752,060 (the "'060 Patent") that Health Grades contends are infringed by Defendant MDx Medical, Inc. ("MDx") as properly interpreted, are infringed by MDx's systems and methods, either literally, or under the doctrine of equivalents. Additionally, I have been asked by Health Grades to provide an expert technical analysis concerning whether MDx indirectly infringes these patent claims by inducing or contributing to the direct infringement of the patent claims by selling its customers certain products and services and enabling its customers to implement systems and methods which infringe the patent claims either literally or under the doctrine of equivalents.

4. I understand that Health Grades contends that MDx directly or indirectly infringes claims 1, 4-9, 11, and 14-16 of the '060 Patent ("the asserted claims"). I further understand that Health Grades contends that MDx directly infringes all of the asserted claims with the exception of claim 11. I further understand Health Grades further contends that MDx indirectly infringes (either through inducement or contributory infringement) all of these claims.

5. As set forth herein, it is my opinion that MDx's systems and methods directly infringe claims 1, 4- 9, and 14-16 of the '060 Patent literally or, alternatively, under the doctrine of equivalents.

1

      g.    *Step 4:* compiling information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;

257.    The iTriage App meets this element.

258.    REDACTED

259.    As discussed above, MDx gathers this information from third parties, who by virtue of providing it to MDx, are verifying it.

      h.    *Step 5:* creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers;

260.    The iTriage App meets this element.

261.    The Court's Markman Order defines "First Healthcare Provider" as "a particular healthcare provider about whom information is requested and a report is produced." (Markman Order at p. 23.)

262.    The Court's Markman Order defines "Comparison Ratings of Healthcare Providers" as "ratings on multiple healthcare providers, including the 'first healthcare provider,' in the report on that 'first healthcare provider,' thus permitting comparison of the 'first healthcare provider' with other potential healthcare providers." (Markman Order at p. 24.)

263.    The iTriage App's web server receives a request for information about a particular healthcare provider when a potential patient clicks the "doctor" icon shown below:



264. One way of searching for a doctor is by specialty. When a user selects the "Doctors" icon, a list of specialties by which a patient can search is displayed, as shown below:



265. At this screen, a user can select the location for where the user would like to search. In the example shown above, the user has selected the user's current location, which is determined by the Global Positioning System (GPS) feature of the iPhone.

266. For example, when one selects the family practice link, this prompts the patient's web browser to send a request for information about a doctor to the iTriage App's web server, which receives the request for information and then accesses the Master Database developed by MDx to find data that responds to the user's search query. After a user selects a specialty, such as family practice, the user is given the opportunity to further restrict his or her request for information by selecting a sub-specialty or viewing all doctors near the user's current location with a family practice specialty, as shown below:

56



267. Where a user selects "All Family Practice," a results list of compressed doctor's profiles for doctors near the user's current location with a specialty of family medicine is displayed, as shown below:



268. A user can further narrow his or her request for information and/or by clicking the "sort" button above, and then the "advanced" icon shown in the screenshot below:

57



269. After selecting "Advanced" an advanced preferences menu is presented, as shown below:



270. From the advanced preferences menu, a potential patient, for example, can request information about a particular, female, family practice specialist, located within 5 miles of his or her current location, who speaks English, has 5-10 years of experience, and was rated 3 stars or higher, as shown below:

58



271. After applying these search criteria, a results list with the particular physician best matching the search criteria is presented:



272. For example, the user could then select the first page of the profile of Brandy Deffenbacher, which would cause the iTriage App to move to the second page of Dr. Deffenbacher's profile, as shown below in the following two screenshots:

59



273. Another way a user can request information on a particular healthcare provider is to search for the healthcare provider by name, as shown below:



274. As can be seen from the above screenshot, a doctor's name can be entered and list of profiles for doctors matching the name will be presented. In the example above, the name Johnson was searched for, and a list of profiles for doctors with the name of Johnson was produced. From the same screen, a user can further limit the search results by distance from a specified location, or by featured doctors, as shown below:

60



275. To the extent that the Court's construction of first healthcare provider requires that the request for information be directed to only one particular healthcare provider, a position with which Health Grades disagrees, the iTriage App both literally infringes this element and infringes under the doctrine of equivalents. The iTriage App literally infringes this element because it is capable of receiving requests for information about only one particular physician. The iTriage App infringes under the doctrine of equivalents because a request for information about multiple particular physicians performs substantially the same function, in substantially the same way, to achieve substantially the same result as a request for one particular physician as shown above.

276. To the extent that the Court's construction of first healthcare provider requires that the potential patient know the identity of the particular physician for whom he or she is requesting information before they request the information, a position with which Health Grades disagrees, the iTriage App both literally infringes this element and infringes under the doctrine of equivalents. The iTriage App literally infringes this element because it is capable of receiving requests for information about a particular physician whose identity is known to the requestor before the information is requested. The iTriage App infringes under the doctrine of equivalents because a request for information about a particular physician that has characteristics that meet search criteria (e.g., female, Family Practitioner that Speaks English, within 5 miles of Denver, CO, with 5-10 years of experience) performs substantially the same function, in substantially the same way, to achieve substantially the same result as a request for a particular physician whose identity is known before the search is run.

277. After a user enters the search criteria for a particular provider, the iTriage App creates one or more healthcare provider reports using information from the Aetna Master Database, REDACTED                                                                 The

61

iTriage App creates the reports using healthcare provider-verified information, patient-provided information, and information verified by the independent third-party source about the first healthcare provider. Further, the reports contain comparison ratings of the healthcare providers.

278. The following screenshots show portions of a healthcare provider report for Dr. Brandy Deffenbacher, who is an example of a first healthcare provider as defined by the Court in its Markman ruling. This report was created using at least the following information: (1) healthcare provider-verified information, circled or boxed in red; (2) patient-provided information, circled or boxed in green; and (3) information verified by an independent third party circled or boxed in purple. The report also includes comparison ratings, circled or boxed in orange, about Dr. Deffenbacher, and other healthcare providers as required by the Court's Markman Order. As with any computer generated report, it is generated by at least one computer processor.

279. After entering the search criteria for Dr. Deffenbacher, the iTriage App generates a report for Dr. Deffenbacher, the first page of which is shown below:



280. In the above screenshot, the percentage matched to the search criteria are comparison ratings as defined by the Court. These ratings provide the patient with information regarding how well physicians listed in the results list satisfy the patient's specified criteria, e.g., specialty, location, gender, language, patient rating, or having an extended profile. A user can thus use these ratings to compare which doctor best matches the user's preferences. There are percentage matched for the first healthcare provider (i.e., Dr. Deffenbacher) and other healthcare providers (i.e., Dr. Walker and Dr. Wegleitner).

281. Another comparison rating that exists in the above screenshot is the star ratings for Dr. Deffenbacher and the other doctors. By viewing these star ratings, a user can understand that by having 4 stars, Dr. Deffenbacher is rated higher than a doctor with a 3-star rating.

282. The above report also includes percentage match ratings and star ratings for other providers as required by the Markman Order.

283. To the extent that MDx asserts that any of these three ratings do not literally satisfy the limitation of a healthcare provider report that includes comparison ratings, these ratings meet the claim limitation under the doctrine of equivalents because they have substantially the same function and operate in substantially the same way to achieve substantially the same result as comparison ratings in a healthcare provider report.

284. The above screenshot of the report on Dr. Deffenbacher also shows physician provided information of specialty (boxed in red). It also shows third party verified information, boxed in purple: Dr.'s Licensed Name and Medical School. Also shown is patient provided information, which is circled in green.

285. When a user chooses to view more information on Dr. Deffenbacher, he or she can see additional pages of the report as shown below:





286.    As can be seen from the above screenshots, this report includes provider-verified information, including: clinical interests, hobbies, and specialty information (boxed in red). Also in the report is third-party verified information (boxed in purple) including: Medical School, Medical Residency, Medical School, and the doctor's licensed name.

287.    Additional pages for another healthcare provider report for a Dr. Allen, is shown below:



64



288. As can be seen from Dr. Allen's profile, there is provider-verified information including Dr. Allen's research, his memberships and awards, his clinical interests, and his specialty. Also, there is third-party verified information including his Board Certifications, his Medical Internship, Medical Residency, Medical Fellowship, and Medical School.

289. A user can enter search criteria and preferences into the iTriage application for a particular healthcare provider. For example, a user could search for a female family practitioner within 5 miles of his or her current location, who speaks English, has 5-10 years of experience, and was rated 3 stars or higher. When a user defines these preferences and searches for the particular provider the iTriage App creates one or more healthcare provider reports using

65

information from the Aetna Master Database, REDACTED

290. The iTriage App creates the reports using healthcare provider-verified information, patient-provided information, and information verified by the independent third-party source about the first healthcare provider.

291. Further, the reports contain comparison ratings of the healthcare providers.

292. A variety of items in the iTriage App qualify as comparison ratings. Each of these "ratings" applies to individual physicians, therefore to the first healthcare provider and other healthcare providers.

293. First, there is a "star rating" (1-4 stars) for most physicians. By displaying the scale along with every rating, the iTriage App ensures that potential patients can see how a doctor compares to an ideal doctor.

294. The percentage matched to the search criteria are also comparison ratings as defined by the Court. These ratings provide the patient with information regarding how well physicians listed in the results list satisfy the patient's specified criteria, e.g., specialty, location, gender, language, patient rating, or having an extended profile. A user can thus use these ratings to compare which doctor best matches the user's preferences. There are percentage matched for the first healthcare provider and other healthcare providers. This feature is very similar to vitals.com's match score rating.

295. The healthcare provider reports created by the iTriage App literally include each of the foregoing "comparison ratings" of both the first healthcare provider and other healthcare providers, either on the same screen in response to a search query or on separate screens, depending on the detail level of the reports sought by patients.

296. For example, if a patient runs a search for a particular doctor, the iTriage App uses information within MDx's database to produce a report on that doctor that can include comparison ratings of that doctor and other doctors on the first page of the report, thus permitting comparison of that particular doctor with other potential doctors. These ratings can include any of those listed above. By clicking on the particular doctor's name, a patient is able to access additional pages of the healthcare provider report.

297. I understand that MDx argues that the healthcare provider report must be limited to the first healthcare provider and *only* the first healthcare provider. I disagree. However, if the claimed report must be limited to only one physician, then the iTriage App infringes under the doctrine of equivalents. As shown in the screenshots in Appendix E, the iTriage App displays multiple healthcare provider reports, each limited to a single healthcare provider and each

containing comparison ratings of that particular healthcare provider, on the same webpage, side-by-side, with other healthcare provider reports of other physicians. Each of those other reports contain comparison ratings of their particular doctor.

298. While none of these reports include ratings of other healthcare providers, they perform substantially the same function, in substantially the same way, to produce substantially the same result as the claimed comparison ratings element. The "function" of the comparison ratings claim element is to allow patients to compare the first healthcare provider with other healthcare providers. Vitals.com performs the same function. The "way" this function is achieved in the claim is to include comparison ratings of other healthcare providers in the same report with ratings of the first healthcare provider. The way MDx achieves this function is by displaying multiple reports, each with comparison ratings of the first healthcare provider, on the same page, so that a patient can compare the first healthcare provider with other healthcare providers. This is substantially the same as the claim. The "result" of the claim is a report that allows for comparison of the first healthcare provider with others. The result of vitals.com is substantially the same, i.e., multiple reports that allow for comparison of the first healthcare provider with other healthcare providers.

299. Viewed another way, a healthcare provider report that includes multiple providers (as shown the display of search results) performs substantially the same function, in substantially the same way, to produce substantially the same result as the claimed report on the first healthcare provider. The functional difference of reporting on one particular doctor versus multiple particular doctors is insubstantial. A single provider report is substantially the same as a multiple provider report – both have information on the single particular provider.

300. To the extent that MDx asserts that any of these three ratings do not literally satisfy the limitation of a healthcare provider report that includes comparison ratings, these ratings meet the claim limitation under the doctrine of equivalents because they have substantially the same function and operate in substantially the same way to achieve substantially the same result as comparison ratings in a healthcare provider report.

            i.      *Step 6:* *and providing access to the healthcare provider report on the first healthcare provider over a computer network.*

301. The iTriage App meets this element.

302. Both the Current Version and the Prior Version would have no business purpose if they did not provide their reports over the Internet so that potential patients could see them. Sitting at my home computer, for example, I was able to access reports on all of the doctors for whom I searched.

Assuming that end_date and event_url were always present, one line of the TCL script code would need to be changed:

ns_write "<li><a href=\"/calendar/item?calendar_id=$calendar_id\">$title</a> ($pretty_start_date - $pretty_end_date ; <a href=$event_url>direct_link</a>)\n"

In all, three lines of code would need to be modified.

As noted in the above analysis of Claim 16, the user of a modern personal computer is accustomed to having multiple windows open simultaneously. A patient considering something as important as choosing a physician specialist is not going to be substantially inconvenienced by having to open two browser windows rather than one in order to conduct a comparison more easily.

## VIII.    Trial Exhibits

315.    I reserve the right to use demonstrative exhibits at trial if necessary to explain my analysis.

## IX.    Reservation of Rights

316.    My opinions are based on the information that I have considered to date. I reserve the right to supplement or amend my opinion given new discovery, testimony heard at trial, and information from opposing experts. In addition, I may be asked to testify in rebuttal to issues and opinions raised by other experts or fact witnesses.

Signed:    *Philip Greenspun*

Philip Greenspun, Ph.D.

Date:    July 13, 2012