# EXHIBIT A

(Redacted version of Dkt. # 547)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT WITH REGARD TO AMENDED COMPLAINT AND ALLEGATIONS RELATING TO AETNA LIFE INSURANCE COMPANY**

---

Defendant and Counterclaim plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, respectfully submits this Reply Memorandum in Support of its Motion for Summary Judgment (the "MDx Motion," entered January 22, 2013 as Dkt. # 490) of No Infringement with regard to Health Grades, Inc.'s ("Health Grades") First Amended Complaint (the "Amended Complaint," entered January 11, 2013 as Dkt. # 481) and Allegations Relating to Aetna Life Insurance Company ("Aetna") (the "Reply").

### I.     REPLY CONCERNING UNDISPUTED FACTS

**Patient ratings must be obtained by the company providing the website**

    1.    See Section III(B), *infra*.

    2.    The pertinent language in both claims was added during prosecution. Exhibit E to MDx Motion, at MDX 0013553 and MDX 0013557-58.

3.    Admitted.

4.    Admitted.

5.    iTriage, LLC provides the service, not Aetna (the MDx Motion was in error).

6.    Admitted.

**Data Received From the Healthcare Provider**

7.    Admitted.

8.    Other than subparagraphs (e)(v) and (vi) of Health Grades' Opposition ("HG Opp.," Dkt. # 525), none of the Health Grades responses address the issue. REDACTED

Subparagraph (e)(vi) is simply wrong. The alleged "evidence" (Dr. Greenspun's informal discussions with his buddies) was never disclosed in fact discovery or the Greenspun expert report, and Dr. Greenspun's speculation is totally false. Greenspun transcript, Exhibit 17 to HG Opp., at 269:18-23; *see also* Declaration of West dated December 13, 2012, Exhibit 4 to MDx's Reply in Support of its Motion for Summary Judgment of Non-infringement, Dkt. # 444-5, at ¶ 4.

**Verification by the Healthcare Provider**

9.    Health Grades disputes this, but quotes the very language of the claim it was requested to admit: "healthcare provider-*verified* information . . . ." It appears undisputed.

10.    Nothing cited has anything to do with healthcare providers verifying anything.

**Comparison Ratings in the Report**

11.    Health Grades quotes the very language of the claim it was requested to admit. It appears undisputed.

12. And again, Health Grades disputes that results lists are separately claimed, but quotes the very claim language separately claiming them. This fact appears undisputed.

13. Claim Construction Order, dated February 13, 2012, Dkt. # 138, at 12: "The Court concludes that 'first healthcare provider' refers to a particular healthcare provider about whom information is requested and a report is produced"; and "Defendant . . . contends that the report relates only to the particular 'first healthcare provider' discussed above . . . . [T]he Court agrees with the defendant."

14. Admitted.

15. Dr. Greenspun's Report, Exhibit 9 to HG Opp., at ¶ 279 shows the iTriage application – it is very clearly a results list and not a report on a particular healthcare provider. Health Grades Exhibit 10 does not show comparison ratings in the report on Dr. Leopold (the right part of the screen); and even if the entire screen was considered a report on Dr. Leopold that report lacks many claim elements – there is not even one of the data elements from the healthcare provider (Exhibit C to MDx Motion, col. 20, lines 29-37). Health Grades has thus not shown a single healthcare provider report that (a) includes comparison ratings of other healthcare providers; and (b) could possibly meet all the elements of the claims of the '060 patent.

16. Admitted.

**Alleged Contributory Infringement**

17. Admitted.

18. Health Grades ignores the evidence cited by MDx,  REDACTED

3

19. None of the alleged evidence referenced by Health Grades shows (a) that MDx made or sold the data especially for an infringement; or (b) that the data had no substantial non-infringing use. *See* Reply Concerning Undisputed Facts ("RCUF"), at ¶ 18, *supra*; *see also* MDx Motion, at Statement of Undisputed Material Facts ("SUMF"), ¶ 18.

### Alleged Induced Infringement

20. *See* Health Grades' own quote      REDACTED

; *see also* Exhibit B to MDx Motion, at MDX 0104397      REDACTED

21. None of the alleged evidence referenced by Health Grades shows (a) that MDx actively "induced" Aetna to do anything, let alone practice all the claim elements; or (b) that any act induced was known by MDx to be an infringement.

In paragraph 21(b), Health Grades references a presentation by MDx to Aetna (not found in the Health Grades infringement contentions). The presentation, however, is dated January of 2008 – two-and-a-half years before the '060 patent even issued.

### Alleged Joint Infringement

22-25. After reviewing the MDx Motion, Health Grades withdrew the frivolous joint infringement claim.

## II. RESPONSE CONCERNING DISPUTED FACTS

1. Infringement by equivalents is legally precluded. *See* MDx Motion, at 11-12.

2. Capability is not enough, and claim interpretation is a question of law. Exhibit C to MDx Motion, at col. 20, lines 20-67; and col. 22, lines 9-56.

3. This argument is precluded by the Court's Claim Construction Order. *See*

4

RCUF, at ¶ 13, *supra*.

4.  This is irrelevant because: (a) the claims of the '060 patent require more than mere capability; and (b) the claims of the '060 patent all require that the report on the first healthcare provider *include* comparison ratings, not that a report and results list can be on the same screen. Exhibit C to MDx Motion, at col. 20. lines 58-65; and col. 22, lines 48-55.

5.  Infringement by equivalents is precluded as a matter of law. MDx Motion, at 13-14.

6.  This fact refers to a results list, not a provider report. Exhibit C to MDx Motion, at col. 20. lines 58-65; and col. 22, lines 48-55; and Dkt. # 138, at 12-14.

7.  This fact refers to a results list, not a provider report. Exhibit C to MDx Motion, at col. 20. lines 58-65; and col. 22, lines 48-55; and Dkt. # 138, at 12-14.

### III. RATINGS ARE NOT OBTAINED FROM THE ITRIAGE SERVICE

#### A. Claim 1 And Its Dependents

At page 18 of the HG Opp., Health Grades attempts to defend its position on claim 1 by contending that "it is sufficient to show that *MDx* performs the method step of compiling the patient-provided information . . . ." (emphasis added). This argument is utterly baseless. While *Akamai* allows, in some circumstances, each of multiple parties to perform separate steps of a claimed method, neither *Akamai*, nor any other case, allows claim limitations to be ignored.

The claims of the '060 patent require a very specific *location* for where the ratings must be obtained – from a survey completed on the website of the same company that provides the service, *i.e.,* iTriage. Obtaining the ratings from any other location is expressly

5

and unequivocally excluded from the scope of these claims.

Health Grades' argument that it is equivalent for iTriage to "encourage" its users to go to a completely different website to complete the survey is equally fanciful, because clear claim limitations cannot be ignored under the guise of the doctrine of equivalents. *See, e.g., Raylon v. Complus Data Innovations, Inc., et. al*., 700 F.3d 1361, 1370 (Fed. Cir. 2012) (Rule 11 violation for ignoring "location" limitation). Because iTriage does not compile its own patient ratings, there can be no infringement of claim 1 or its dependent claims.

### B.  Claims 15 and 16

The Health Grades infringement position here is entirely a question of claim construction – a question of law that should not preclude summary judgment. Claim 15 also requires that the patient ratings be obtained from the website of the company providing the service, although it does so using slightly different language that instead employs a definition in the specification.

(1) The phrase "the company" is defined in the specification of the '060 patent as being ***the company managing the website***.  Exhibit C to MDx Motion, at col. 1, lines 64-66 (***defining*** "the company" as "the company maintaining and/or managing the Web site").

(2) Consistent with this definition, the '060 patent specification repeatedly uses the term "company" only to mean the company managing the service. *See, e.g., id.* at col. 2, lines 5-7 (distinguishing the "company" from third party entities); col. 2, lines 31-33 (same); col. 2, lines 57-60 ("a company-verified section . . .").

(3) Further reinforcing the concept that "company" is only used in the '060 patent to refer to the company running the service, even the URL (the "Uniform Resource Locator" –

6

*e.g.,* www.healthgrades.com) used in the '060 patent uses "company" as the generic name for the entity running the service. *See, e.g.,* col. 3, lines 41-45 and Figure 1 (showing searching on "a company" website, and referencing the website in Figure 1 as "www.company.com").

(4) In its Opposition, Health Grades admits, as it must, that the '060 patent uses the word "company" to refer to a company that runs a service for connecting healthcare providers with potential patients. HG Opp., at RSUMF ¶ 1(c).

(5) Claim 15 uses "the company Web site" to refer back to this same website. Exhibit C to MDx Motion, at col. 22, line 37.

(6) During prosecution, Health Grades confirmed that the limitation in claim 15 (then pending claim 19) was identical to the limitation in claim 1. Exhibit E to MDx Motion, at MDX 0013549. The patentee clearly intended and understood that the term "company" in claim 15 referred to the company providing the service. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.") (*citing Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996)).

For all these reasons, the reference to "a ***company*** website" in claim 15 must refer to the same "company" defined in the specification and the same "company" used in claim 1. That is, claim 15, like claim 1, requires that the patient ratings be obtained from the website of the same company running the service. For the same reasons stated in section III(A),

7

above, there can be no infringement of claims 15 and 16.

## IV. NO EVIDENCE OF ITEMS RECEIVED FROM THE PROVIDER

Health Grades cites to nothing that shows that any physician has ever provided even two of these required data elements, let alone three, as required by the claims of the '060 patent. Health Grades has the burden to come forward with evidence that the claim limitation is met, but it provides nothing other than speculation. *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442. F.3d 1301, 1309 (Fed. Cir. 2006).

Next, Health Grades argues that claim 15 only requires the "capability" to receive three or more of the data elements from physicians. Health Grades relies heavily on *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010). However, there is an important (although perhaps subtle) distinction between the claims at issue in *Finjan* and claim 15 of the '060 patent. As the Federal Circuit emphasized repeatedly in *Finjan*, those claims did not require that the software components be active or enabled. Rather the *Finjan* claims are all phrased as structure "for" doing some function (*e.g.*, "*for preventing*," "*for obtaining*," "*for forming*," etc., all emphasis added by the Federal Circuit). There is nothing in the *Finjan* claim language requiring anything other than something that *could* perform as indicated. Claim 15 of the '060 patent is different. It does not use the language "for causing" that would make it analogous to *Finjan*. Instead, it uses the language "that … cause" – unlike *Finjan* there is an enablement requirement in claim 15 of the '060 patent.

A year after *Finjan*, the District of Delaware addressed claims having language essentially identical to the language at issue here, in *Oracle Corp v. Parallel Networks, LLC*, 778 F. Supp. 2d 527 (D. Del. 2011). In that case, claim 11 recited "instructions, which when

8

executed by a computer system, *cause* said computer system to perform … ." *Id.*, at 553. The Court in *Oracle*, contrary to the approach suggested here by Health Grades, thoroughly analyzed the infringement issue by determining what the accused instructions did when they were executed, not just whether the system was "capable" of causing them to happen. *Id.*, at 540-44. Earlier in the same case, the Federal Circuit had also considered the same claim on appeal and saw no capability issue. *See Oracle Corp. v. Parallel Networks, LLC*, 375 Fed. Appx. 36 (Fed. Cir. 2010).

Even if Health Grades is correct (it is not), contrary to the Federal Circuit's *Oracle* opinion, that these claims have elements that only require reasonable capability, that capability would not extend to the claim element at issue here – the data received from the first healthcare provider. Health Grades admits this in its Opposition: "the system must be capable of accessing information that ***has been received*** [past tense] from the healthcare provider." HG Opp., at 23 (emphasis added). Health Grades is correct here, as the claim language unequivocally addresses the receipt of that data in the *past tense* – "***received*** from the first healthcare provider." Claim 15 does *not* say that, when executed, the instructions cause the processor to "receive" data – it says that the already "***received***" data is accessed. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328-29 (Fed. Cir. 2010) ("Unless the claim language only requires the capacity to perform *a particular claim element*, we have held that it is not enough to simply show that a product is capable of infringement; ***the patent owner must show evidence of specific instances of direct infringement***.") (emphasis added). Therefore, to infringe claim 15, the accused system must have received at least three of the required physician provided data elements enumerated in the claim – not merely be capable of receiving such data. Because Health Grades has no evidence

9

that MDx or iTriage has ever received at least three of the required healthcare provider-verified data elements, there is no infringement and summary judgment of no infringement should be granted.

## V. NO VERIFICATION BY HEALTHCARE PROVIDERS

To satisfy the healthcare provider-verified information limitation of claims 1 and 15, Health Grades only argues that the physicians provide the required data – no evidence of verification is provided. Contrary to Health Grades' argument, the *dicta* in footnote 15 of the Court's Claim Construction Order (a decision which only addressed claim construction) did not determine that a physician merely providing this information was enough to satisfy both claim elements (receipt from, and separately, verification by, the healthcare provider). Accordingly, this is another basis for granting summary judgment.

## VI. NO COMPARISON RATINGS IN THE REPORT

The Court concluded "that 'first healthcare provider' refers to a particular healthcare provider about whom information is requested and a report is produced." RCUF, at ¶ 13. It also found that a report on the first healthcare provider relates only to the particular first healthcare provider. *Id.* ("Defendant . . . contends that the report relates only to the particular 'first healthcare provider' discussed above. . . . [T]he Court agrees with the defendant."). The Court also determined that the "comparison ratings" that must be included in this report must include ratings of other providers. Dkt. # 138, at 14.

Undeterred, Health Grades points to a results list (a list of numerous providers) as containing the comparison ratings. MDx admits that some results lists do have ratings of multiple providers. But that is not what the claims of the '060 patent require. Health Grades

10

is, apparently, trying to divert the Court's attention from the missing claim language (the *healthcare provider report* must *include* comparison ratings of other healthcare providers) to other, irrelevant issues (whether the MDx website has "comparison ratings" *anywhere*).[1]

Health Grades also references the iTriage website (not the iTriage application) as having a results list and physician report side by side. HG Opp., at RSUMF ¶15; and HG Opp., at 26. But cramming both a results list and a report on one screen does not help Health Grades, either, because the comparison ratings are still not in the report. And this could never meet the claim for other reasons, because this alleged report lacks other elements of the claims – there is not even one of the data elements required from the healthcare provider (Exhibit C to MDx Motion, col. 20, lines 29-37). Health Grades has thus not shown a single healthcare provider report that (a) includes comparison ratings of other healthcare providers; and (b) could possibly meet all the elements of the claims of the '060 patent.

Health Grades' doctrine of equivalents arguments are conclusory, and do not adequately address the issues. The equivalents analysis reads the location limitation for the comparison ratings entirely out of the claim, and, therefore, fails to satisfy this claim limitation. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997).

## VII. THE CONTRIBUTORY INFRINGEMENT ALLEGATION IS BASELESS

The four elements required to prove contributory infringement are shown at page 15

---

[1] It is unclear if Health Grades is arguing that the specific part of the results list that shows the particular provider is part of that provider's report. If that is what Health Grades is arguing, that part of the results list also does not include ratings of any other healthcare provider.

11

Case No. 1:11-cv-00520-RM-NYW Document 554-1 filed 03/25/13 USDC Colorado pg 13 of 13
Case 1:11-cv-00520-PAB-BNB Document 547 Filed 03/11/13 USDC Colorado Page 12 of 16
of 17

of the MDx Motion. Referencing those elements, the data leased by MDx to Aetna (1) was not a material to be used in a patented process; and (2) did not constitute a material part of the patented process. *See* Sections III, IV, V, and VI, *supra*. And obviously element (3) is also not met – MDx did not know that the data was "especially adapted for use in the infringement" because there was no infringement.

The total lack of evidence for elements (1)-(3) is bad enough. But Health Grades leaps into yet another Rule 11 violation in arguing element (4) – the requirement that the data have no substantial non-infringing uses.

REDACTED

So what? How does that have anything to do with whether this data can be used in a manner that does not infringe the claims?

In paragraph 19(c) of the RSUMF, Health Grades also addresses this issue. It recites a litany of irrelevancies ( REDACTED ; Mr. Rothschild has the iTriage application on his phone; MDx had a policy of not infringing; MDx licensed the data to Aetna; and MDx did not tell Aetna about its policy). None of this has anything to do with whether the *only* substantial use of the data is as dictated by the claims of the '060 patent.

Health Grades also ignores its own vociferous arguments throughout this case that, for years, it used physician data, even in an online information system, without meeting any of the claims of the '060 patent. In responding to SUMF ¶18, Health Grades evaded this fact, and others showing many non-infringing uses. HG Opp., at RSUMF ¶18.

Even Health Grades' own Opposition shows non-infringing uses. For example, Health Grades' Exhibit 10 is an alleged report for Dr. Leopold, but it lacks many claim requirements

12

(not even one, let alone three, of the healthcare provider-verified data elements is found anywhere on these pages). And there are nearly infinite modifications that could be made to these reports or how they are requested and provided that would prevent even Health Grades from alleging infringement (e.g., use only one of the healthcare provider data elements; use any combination of two of those elements; use only one of the third party data elements; use any combination of two of them; eliminate the patient ratings of Dr. Leopold; eliminate the patient ratings of the other doctors; use all the data elements the claim requires, but get one (or more) from a different source; use the data like a white pages of a telephone book – users simply scroll through to find the healthcare provider information; use the data like the yellow pages – users search for specialists and get a listing in geographic areas; send the report by mail rather than providing online access; etc., etc., etc.). Health Grades' argument that the *only* way to use this data is by infringing the '060 patent is not only unsupported by the evidence on the record, but also, utterly frivolous. As such, summary judgment should be granted for MDx.

## VIII. THE INDUCEMENT ALLEGATION IS BASELESS

Health Grades' inducement argument is suffering from a colossal disconnect. It argues that *iTriage* is directly infringing the claims (*e.g.,* HG Opp., at 13, heading A: "**DIRECT INFRINGEMENT BY ITRIAGE . . .**"); but for its inducement allegation it argues that MDx induced *Aetna* to infringe (*e.g.,* HG Opp., at 27: "MDx intended to induce Aetna's direct infringement"). But Aetna does not infringe, and Health Grades has submitted no evidence that Aetna infringes. Aetna, of course, is a different company from iTriage. *See* Articles of Organization for iTriage, LLC, attached hereto as Exhibit H. There is no evidence that MDx induced iTriage to do anything.

13

Case 1:11-cv-00520-PAB-BNB Document 547 Filed 03/11/13 USDC Colorado Page 14 of 16

Health Grades next disingenuously argues that the MDx data itself infringes. *See, e.g.,* HG Opp., at 27 ("MDx's accused data"); and at 28 ("data on healthcare providers that infringes the asserted claims"). This argument is completely baseless – the MDx *data* does not infringe any claim – it is just data.

Lastly, there is a complete lack of any evidence that MDx induced Aetna (or iTriage) to perform any of the numerous claim elements, let alone all of them. For example, there is no evidence of MDx inducing the creation of a website that receives requests for information on healthcare providers, and in response creates a report. There is no evidence of MDx inducing use of all of the required claim elements in creating the report. There is no evidence of MDx inducing the inclusion, in reports on a particular healthcare provider, of ratings of other healthcare providers. And there is no evidence of MDx inducing access to such reports over the Internet, as opposed to mailed reports.

The *only* evidence Health Grades submits for the alleged inducement is (a) evidence of the sale of MDx data to Aetna (not iTriage) (HG Opp., at RSUMF ¶21(a)); and (b) a copy of a power point presentation that MDx apparently gave to Aetna back in 2008 (HG Opp., at RSUMF ¶21(b)). As for selling the data, the data itself is not infringing and Health Grades points to nothing in the MDx/Aetna agreement that dictates, or even suggests, what Aetna should be doing with the data. REDACTED

MDx Motion, at SUMF ¶ 20; *see also* RCUF, at ¶ 20. As for the power point, it does nothing to induce Aetna to do anything, but even if it did it was far too early to support Health Grades' allegation. *National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996) ("as a matter of law § 271(b) does not reach actions taken

14

before issuance of the adverse patent").

Thus, there is absolutely nothing supporting this allegation of inducement. There is no genuine issue of material fact with respect to Health Grades' claim of induced infringement and summary judgment should be granted for MDx.

## IX. CONCLUSION

For all the foregoing reasons, MDx respectfully requests that the Court grant summary judgment of no infringement regarding all the claims related to Aetna, including all contributory and inducement claims of infringement.

Dated: March 11, 2013

Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
Scott B. Murray
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail:sstimpson@sillscummis.com
E-mail:smurray@sillscummis.com
E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: (303) 244-1800
Fax: (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

15

## CERTIFICATE OF SERVICE

I hereby certify that on <u>March 11, 2013</u>, I electronically filed the foregoing **MDX MEDICAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT WITH REGARD TO AMENDED COMPLAINT AND ALLEGATIONS RELATING TO AETNA LIFE INSURANCE COMPANY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Jesus Manuel Vazquez, Jr.
    jvazquez@rothgerber.com, phenke@rothgerber.com

Gregory B. Kanan
    gkanan@rothgerber.com, dgrooms@rothgerber.com

Kris John Kostolansky
    kkosto@rothgerber.com, dgrooms@rothgerber.com

Scott David Stimpson
    sstimpson@sillscummis.com, gcaceres@sillscummis.com

Scott B. Murray
    smurray@sillscummis.com

David Chunyi Lee
    dlee@sillscummis.com

Terence M. Ridley
    ridley@wtotrial.com, norris@wtotrial.com

                                                    *s:/Vincent M. Ferraro*