# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S SUPPLEMENT TO ITS OPPOSITION TO
MDX MEDICAL, INC.'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 56 FOR SUMMARY JUDGMENT OF NO WILLFULNESS**

---

Plaintiff Health Grades, Inc. ("Health Grades") submits its Supplement to its Opposition

[Doc. # 404] to MDx Medical, Inc.'s ("MDx") Motion Pursuant to Federal Rule of Civil

Procedure 56 for Summary Judgment of No Willfulness (the "Motion") [Doc. # 371].

I.      **INTRODUCTION**

MDx cites the "advice of counsel" it obtained from attorney Philip Braginsky to support

its arguments that it has not willfully infringed the '060 patent and that "objective recklessness is

entirely absent" in this case. (Motion at p. 2; Statement of Undisputed Material Facts, ¶ 18;

Braginsky Opinion [Doc. # 370-8].)  The Braginsky Opinion, however, is not competent – it is a

conclusory, superficial opinion that is devoid of analysis and simply parrots what MDx's CEO,

Mitch Rothschild, told Mr. Braginsky during a single meeting on December 30, 2010.  Further,

the Braginsky Opinion is *not objective* – Mr. Braginsky's firm represents MDx in this case and

Mr. Braginsky worked together with a member of MDx's trial team in this case on other MDx

matters before he rendered his opinion.

On February 14, 2013, Health Grades took Mr. Braginsky's deposition.  Mr. Braginsky's testimony confirms that his opinion – issued as a "freedom to operate" letter at Mr. Rothschild's request – is not competent.  His testimony also reveals the charade that led to the opinion letter, which is not objective, and to the contrary, was concocted in anticipation of litigation and expressly created to use against a claim for willful infringement.

### A.      Mr. Braginsky Concluded There Was No Infringement During a Single Meeting, Based On Misinformation Provided by MDx's CEO at the Meeting and Without Performing Any Independent Analysis or Investigation

In light of the conclusory and superficial nature of his opinion letter, it was not surprising to learn from Mr. Braginsky that he concluded MDx did not infringe *during a single meeting* with Mr. Rothschild on December 30, 2010. (Additional Disputed Facts ("ADF"), *infra,* ¶¶ 23, 24.)  Mr. Braginsky took no notes at this meeting, and has no notes at all regarding the "freedom to operate" letter. (ADF, *infra*, ¶¶ 20, 21, 22, 25.)  He has no file or documents showing any research or analysis. (*Id.*)   None was performed.  Instead, he simply met with Mr. Rothschild and, after discussing with Rothschild use of the opinion in defense of a potential willfulness claim, determined there was no infringement based solely on the representations Mr. Rothschild made about the features and functionality of the Vitals.com website. (ADF, *infra*, ¶¶ 15, 16, 23, 24, 25, 27 – 31, 36, 46, 47.)  Mr. Rothschild's representations, however, were not true and Mr. Braginsky did nothing to confirm or independently verify them. (ADF, *infra*, ¶¶ 25, 26, 27, 28, 29, 30, 31, 36, 37 - 48.)  MDx's contention in its Reply [Doc. # 443 at p. 9] that Mr. Braginsky was "thorough and detailed in his consideration of the facts" is disingenuous and belied by his testimony.  Indeed, there is no file, no notes, no research, no analysis – only the written opinion. And while Mr. Braginsky concluded there was no infringement at the meeting on December 30,

2010 – *the very next day*, December 31, 2010, Mr. Braginsky and Mr. Rothschild discussed implementing changes to the Vitals.com website that were designed to avoid infringement. (ADF, *infra,* ¶ 35.)

> **B.**     **Mr. Rothschild Misinformed Mr. Braginsky Regarding the "Comparison Ratings" Element**

When Mr. Rothschild told him at the December 30, 2010 meeting that the Vitals.com website did not include "comparison ratings" in its reports as called for in the claims of the '060 patent, Mr. Braginsky blindly took Rothschild's word for it and concluded the alleged absence of reports with "comparison ratings" meant MDx did not infringe. (ADF, *infra*, ¶¶ 44 – 48.)  But Mr. Rothschild's representations about the "comparison ratings" element were not true.  Indeed, in sharp contrast to what he told Mr. Braginsky on December 30, 2010, **Mr. Rothschild told this Court that MDx did not "remove comparison ratings of healthcare providers from all the reports on specific healthcare providers, as is called for in the claims,"** *until* **"January of 2011."** (Declaration of Mitch Rothschild, ¶¶ 5, 6 and 8 [Doc. # 371-2]; ADF, *infra*, ¶ 48.)

The significance of Mr. Rothschild's sworn declaration cannot be overstated – it is an admission imputable to MDx that prior to January of 2011 "the reports on specific healthcare providers" available on the Vitals.com website in fact *included* "comparison ratings of healthcare providers" and that the reports satisfied the comparison ratings element "as is called for in the claims." (Declaration of Mitch Rothschild, ¶¶ 5, 6 and 8 [Doc. # 371-2].)  Thus it is clear that Mr. Rothschild misinformed Mr. Braginsky about the "comparison ratings" at the December 30, 2010 meeting, and that Mr. Braginsky did nothing to confirm what he was told. (ADF, *infra*, ¶¶ 25, 26, 27, 28, 29, 30, 31, 36, 37 - 48.)   At his deposition Mr. Braginsky testified

that as of the December 30, 2010 meeting, it was his understanding that reports with "comparison ratings" were not provided by the Vitals.com website, and that he thus "made a conclusion that [the] Vitals.com website did not satisfy the [comparison ratings] element." (ADF, *infra*, ¶¶ 23, 47.)  This was flat wrong, as revealed by Mr. Rothschild in his sworn declaration. (ADF, *infra*, ¶¶ 48.)  Moreover, the Vitals.com website continued to infringe and to provide reports with comparison ratings of healthcare providers despite the January, 2011, changes to the website described by Mr. Rothschild in his declaration.  *See* [Doc. ## 201, 236, 305 and 525].

**C.**     **The Opinion Is Not Objective: Mr. Braginsky's First Assignment Was To Respond to Health Grades' Notice Letter and To Do Whatever Was Necessary to Prevent the '060 Patent from Issuing, and His Second Assignment After the Patent Issued Was to Give an Opinion Concocted to Help MDx Avoid a Finding of Willfulness**

The Braginsky Opinion was not the first project Mr. Braginsky – *a partner in MDx's trial counsel's firm* -- did for MDx.  He was originally engaged to respond to a letter dated December 15, 2009 from Health Grades that gave notice to MDx about the published '060 patent application and asserted that the Vitals.com website was covered by the published claims. (ADF, *infra*, ¶¶ 1, 2 and 5.)  Mark Rosenberg – Of Counsel in MDx's trial counsel's firm and *a member of MDx's trial team in this case* – assisted Mr. Braginsky and wrote MDx's response letter under Mr. Braginsky's supervision. (ADF, *infra*, ¶¶ 6 – 8.)  As part of an "aggressive" strategy to prevent the patent from being issued to Health Grades, Mr. Braginsky testified: "we wanted to do whatever was possible to either ensure that the application wouldn't grant or that it wouldn't grant in the form that it was currently in; that it would be narrowed." (ADF, *infra*, ¶¶ 10, 11.)

Despite Mr. Braginsky's best efforts to prevent it, the '060 patent was issued to Health Grades on July 6, 2010. (ADF, *infra*, ¶ 13.)

Mr. Braginsky testified that Mr. Rothschild was concerned about getting involved in litigation with Health Grades. (ADF, *infra*, ¶ 14) It was under these circumstances that the opinion letter was provided to Mr. Rothschild. Indeed, Mr. Braginsky provided the opinion letter for Mr. Rothschild to use if a claim for willful infringement was asserted by Health Grades and discussed the use of the opinion in this context with Mr. Rothschild. (ADF, *infra*, ¶ 15)

## II.   <u>ADDITIONAL DISPUTED FACTS</u>

1) Health Grades sent Mr. Rothschild a cease and desist letter dated December 15, 2009, that gave MDx notice of the published '060 patent application and which asserted that the Vitals.com website was covered by the published claims (the "Notice Letter"). (Braginsky Dep. Ex. 1, letter dated December 15, 2009 (**Ex. A**).)

2) Mr. Braginsky, a partner at the law firm Sills Cummis & Gross, was initially engaged as MDx's attorney to help MDx with a strategy for dealing with the patent application. (Braginsky Dep. 25:15-16; 29:12-20 (**Ex. B**).)

3) Sills Cummis & Gross is a "full service corporate law firm, with offices in New Jersey and New York" that employs more than 150 attorneys. (Sills Cummis & Gross, *About Us*, http://www.sillscummis.com/about-us.aspx (last visited Apr. 2, 2013) (**Ex. C**); Martindale, *Sills Cummis & Gross P.C. – Firm Profile*, http://www.martindale.com/Sills-Cummis-Gross-PC/law-firm-381758.htm (last visited Apr. 2, 2013) (**Ex. D**).)

4) However, the Intellectual Property practice group of Sills Cummis is very small – it currently has *only four members* and in 2012 it had only seven members, four of whom

represent (or have represented) MDx as litigation counsel in this case: Scott D. Stimpson, Scott Murray, Mark Rosenberg, and David Lee. (Sills Cummis & Gross, *Our Practices – Intellectual Property,* http://www.sillscummis.com/practices/intellectual-property.aspx (last visited Apr. 2, 2013) (**Ex. E**); Archived Sills Cummis & Gross IP Practice Page, http://web.archive.org/web/20120614091653/http://www.sillscummis.com/practices/intellectual-property.aspx) (**Ex. F**).)

5)      Mr. Braginsky was involved in working on the response to the December 15, 2009, cease and desist letter from Health Grades. (Braginsky Dep. 39:23 – 40:4 (**Ex. B**).)

6)      Mark Rosenberg – an attorney in the IP group of Sills Cummis – worked with Mr. Braginsky on the MDx/Health Grades matter. (Braginsky Dep. 17:12 – 19 (**Ex. B**).)

7)      Mr. Rosenberg was a member of MDx's trial team on this case *for almost a year* until he left Mr. Braginsky's firm in early 2012. (MDx's Mot. to Amend Invalidity Contentions, filed December 21, 2011 (with Mr. Rosenberg on signature block) [Doc. # 97]; Email dated January 31, 2012 from Scott Stimpson (advising that Mr. Rosenberg is no longer at the firm) (**Ex. G**); Intellectual Property Today, *Mark J. Rosenberg Joins TKD as Counsel in Intellectual Property Practice Group* (Feb. 23, 2012) (**Ex. H**).)

8)      Mr. Rosenberg drafted and signed the January 25, 2010, MDx response and Mr. Braginsky reviewed and approved it. (Braginsky Dep.  Ex. 6, letter from Mark Rosenberg to Peter Gergely dated January 25, 2010 (**Ex. I**); Braginsky Dep. 47:18 – 22 (**Ex. B**).)

9)      The January 25, 2010 response did not discuss the Vitals.com website, but rather attacked the viability of the pending patent claims. (**Ex. I**)

10)     Mr. Rosenberg advised Mr. Rothschild "[w]e believe we should take a firm, aggressive approach while Health Grades' application is pending. By doing so [sic] we can potentially either prevent Health Grades from receiving a patent or ensure that any patent that issues is limited in scope." (Braginsky Dep. Ex. 5, Email Dated January 22, 2010 (**Ex. J**).)

11)     Mr. Braginsky agreed with Mr. Rosenberg's advice and understood it to mean "that we wanted to do whatever was possible to either ensure that the application wouldn't grant or that it wouldn't grant in the form that it was currently in; that it would be narrowed." (Braginsky Dep. 53:10 – 24 (**Ex. B**).)

12)     Mr. Braginsky e-mailed Mr. Rothschild on March 15, 2010 stating that, *inter alia,* "[b]ased on our experience we expect the Examiner will issue a final rejection within the next few weeks." (Braginsky Dep. Ex. 7 at 2, E-mail from Mr. Braginsky dated March 15, 2010 (**Ex. K**).)

13)     Mr. Braginsky was wrong and the '060 patent was granted and issued on July 6, 2010. ('060 Patent [Doc. # 3].)

14)     Mr. Rothschild was concerned about getting involved in litigation after receiving the December 15, 2009 cease and desist letter from Health Grades. (Braginsky Dep. 13:17-23 (**Ex. B**).)

15)     Mr. Braginsky provided the opinion letter to Mr. Rothschild to use if there was a claim for willful infringement and to ensure he had documentation that Mr. Braginsky had investigated the matter and determined there was no infringement, and Mr. Braginsky discussed the use of the opinion in the context of a willful infringement claim with Mr. Rothschild at the December 30, 2010 meeting.  (Braginsky Dep. 14:1-17 (**Ex. B**).)

16)     Mr. Rothschild met with Mr. Braginsky and an associate in Braginsky's firm, Timothy Heaton, on December 30, 2010, to purportedly analyze the '060 patent and compare the claims to the Vitals.com website and processes and to determine whether or not there was an infringement. (Braginsky Dep. 69:12 – 70:24 (**Ex. B**).)

17)     Mr. Braginsky had not discussed the MDx website with Mr. Rothschild before the December 30, 2010 meeting. (Braginsky Dep. 37:13 – 38:14 (**Ex. B**).)

18)     Mr. Braginsky did not have a working knowledge of how the MDx website operated before the December 30, 2010 meeting and was developing that working knowledge at the meeting based on what Mr. Rothschild told him at the meeting. (Braginsky Dep. 79:5 – 13 (**Ex. B**).)

19)      Mr. Braginsky does not specifically recall whether he did any work in advance of the December 30, 2010 meeting in connection with determining whether MDx infringed the '060 patent.  (Braginsky Dep. 71:5 – 21 (**Ex. B**).)

20)     Mr. Braginsky testified that he thinks he "would have" reviewed the patent and the MDx website prior to the December 30, 2010 meeting, but does not specifically recall doing so and does not recall making any notes about his review. (Braginsky Dep. 71:22 – 72:10 (**Ex. B**).)

21)     Mr. Braginsky agreed it is a fair conclusion that if he reviewed the patent and the MDx website prior to the December 30, 2010 meeting, he did not make any notes about his review. (Braginsky Dep. 72:11 – 15 (**Ex. B**).)

8

22)     Mr. Braginsky does not recall whether, prior to the December 30, 2010 meeting, he had identified any areas of concern regarding the infringement question.  (Braginsky Dep. 73:18 – 22 (**Ex. B**).)

23)     At the December 30, 2010 meeting, Mr. Braginsky concluded that "they [MDx] weren't infringing" and that "there was no likelihood that they [MDx] were infringing." (Braginsky Dep. 86:11 – 87:8; 89:25 – 90:12 (**Ex. B**).)

24)     Mr. Braginsky expressed his opinion that there was no infringement to Mr. Rothschild at the December 30, 2010 meeting. (Braginsky Dep. 109:19 – 22 (**Ex. B**).)

25)     Mr. Braginsky did not perform any independent research in support of his work on his 35-page opinion letter and did not make any notes regarding his work on the 35-page opinion letter. (Braginsky Dep. 184:15 – 185:21 (**Ex. B**).)

26)     Mr. Braginsky "absolutely relied" on the information Mr. Rothschild provided at the meeting to form his opinions. (Braginsky Dep. 94:18 – 95:1 (**Ex. B**).)

27)     Mr. Braginsky did not do any independent investigation of the "backend" services of Vitals.com (which includes the algorithms that run MDx's system and MDx's database). (*See, e.g.,* Braginsky Dep. 104:21-106:6; 123:4-20; 147:14-148:25 (**Ex. B**); Josh Long, *I Don't Speak Your Language: Frontend vs. Backend,* Treehouse Blog (Sep. 25, 2012), http://blog.teamtreehouse.com/i-dont-speak-your-language-frontend-vs-backend (**Ex. L**) (the "frontend" of the web is the part of the web that you can see and interact with whereas the "backend" usually consists of three parts: a server, an application, and a database).)

28)     With regard to the features and functionality of the backend portion of Vitals.com, Mr. Braginsky relied exclusively on what Mr. Rothschild told him. (Braginsky Opinion at 2

9

[Doc. # 370-8] ("The study included a review of . . . certain processes used to implement the Vitals.com services *as you have described them to us*.") (emphasis added.); Braginsky Dep. 123:4-20 (**Ex. B**).)

29)     With regard to the features and functionality of the frontend portion of Vitals.com, Mr. Braginsky relied on the portions selected by Mr. Rothschild and shown to Mr. Braginsky during the single meeting on December 30, 2010. (*See, e.g.,* Braginsky Dep. 79:4-21; 83:4-20; 86:11-91:10; 147:14-148:25 (**Ex. B**); Braginsky Opinion at 2 [Doc. # 370-8].)

30)     There is no evidence that Mr. Rothschild provided Mr. Braginsky with any technical business documents from MDx relating to the features and functionality of Vitals.com. (*See id.*; *see also* Braginsky Dep. 123:4 – 20; 126:2 – 20 (**Ex. B**); Braginsky Opinion at 1-2 [Doc. # 370-8].)

31)     Rather, the only information and materials Mr. Rothschild provided to Mr. Braginsky for purposes of the opinion letter were Mr. Rothschild's descriptions of the website and the processes during the December 30 meeting. (Braginsky Dep. 79:4-21; 83:4-20; 86:11-91:10; 123:4 – 20; 126:2 – 20; 147:14-148:25 (**Ex. B**); Braginsky Opinion at 1-2 [Doc. # 370-8].)

32)     Mr. Braginsky's conclusion that there is no infringement is conditioned upon "proper construction under the law."  (Braginsky Opinion at 2 [Doc. # 370-8].)

33)     Despite the fact that his opinion is conditioned upon "proper construction under the law," Mr. Braginsky has not reviewed the Court's *Markman* Order construing the claim terms in this case and does not know anything about the *Markman* ruling.  (Braginsky Dep. 124:5 – 10 (**Ex. B**).)

10

34)     Mr. Braginsky claims that the only advice of counsel he gave to MDx regarding infringement of the '060 patent is set forth within the Braginsky Opinion. (Braginsky Dep. 169:1 – 15; 190:24 – 191:6 (**Ex. B**).)

35)     Despite Mr. Braginsky's conclusion that "there was no likelihood that [MDx] was infringing" (*see* ADF, *supra*, ¶ 23), just one day later, on December 31, 2010, Mr. Braginsky and Mr. Rothschild discussed changes to the Vitals.com website to ensure there was no infringement of the '060 patent. (Braginsky Dep. Ex. 9, Email dated December 31, 2010, from Mr. Rothschild to Mr. Braginsky (discussing "implementing certain changes to ensure that we are in no way in violation of the patent") (**Ex. M**); Braginsky Dep. Ex. 10, Email dated January 2, 2011, from Mr. Rothschild to Mr. Braginsky (referencing the December 31, 2010 conversation and attaching a list of protocols for the website and requesting that Mr. Braginsky review the protocols to ensure they were "in conformance with our conversations" (**Ex. N**); Braginsky Dep. 113:1 – 117:23.)

36)     The Braginsky Opinion does not discuss or contain any independent analysis or investigation that confirms that the Vitals.com website, and the processes used to implement the website, were described accurately by Mr. Rothschild. (Braginsky Opinion [Doc. # 370-8].)

37)     The Braginsky Opinion provides two bases for its conclusion that Vitals.com does not infringe the '060 patent claims – the first is Mr. Braginsky's understanding that Vitals.com "does not create and provide access to a health care provider report that includes third-party verified licensure, medical internship, medical residency, and medical fellowship information" – Mr. Braginsky refers to this as "Difference No. 1."  (Braginsky Opinion at 30 [Doc. # 370-8].)

38)     Contrary to Mr. Braginsky's understanding from the representations by Mr. Rothschild at the December 30, 2010 meeting, MDx compiles licensure (e.g. physician license

status), medical internship, medical residency, and medical fellowship information ("third party information") from multiple sources, including reputable third parties, such as the state medical boards ("SMB") and "partners," like the American Board of Medical Specialties. (*See, e.g.,* Vitals' Approach to Gathering, Cleansing, Matching and Integrating Third Party Data (MDX0070948-71011) (**Ex. O**) at 47 ("SMB" = state medical boards, "SR" = self-reported by physician, "PARTNER" = third parties like ABMS (see p. 25), "WEB" = Internet); *see also* pp. 4, 19 (indicating that licensure, residency and disciplinary action information is gathered from thousands of Primary sources "with reliable quality measures applied"), p. 25 ("We've partnered with a select group of respected providers to ensure accurate measures."), p. 31 (showing sources); MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogatories at 6 (**Ex. P**).)

39)     Although Vitals.com allows physicians to provide internship, residency, and fellowship information (see "SR" in table above), it does *not* allow them to contradict internship, residency, or fellowship information it receives from the primary sources. (Vitals' Approach to Gathering, Cleansing, Matching and Integrating Third Party Data (MDX0070948-71011) at 44, 46-48 (**Ex. O**) ("Physicians have opportunity to update & add information, as long as it is in compliance with official sources (quality controlled)."); Erika Boyer Dep. 99:15-100:9 (**Ex. Q**).)

40)     MDx stores the third party information in the same database that is used by Vitals.com to create physician reports. (Vitals' Approach to Gathering, Cleansing, Matching and Integrating Third Party Data (MDX0070948-71011) at 47 (**Ex. O**); Larry West Dep. 28:21-29:9; 68:17-71:13 (**Ex. R**).)

41)    Vitals.com displays licensure information in its physician reports. (Vitals.com Screenshots, Post-January 2011, HGVSC000038-39 ("Dr. Brian Smith is confirmed to have a license in UT and CO.") (**Ex. S**).)

42)    Vitals.com displays medical residency, and medical fellowship information in its physician reports. (Vitals.com Profile of Dr. Todd K. Rosengart (taken July 2012) (HGVSC000044-50) at HGVSC000046 (displaying residency and fellowship information) (**Ex. T**); Vitals.com Profile of Dr. Robert Enzenauer (taken January 2013) (HGVSC000305-309) at HGVSC000305 (displaying residency and fellowship information) (**Ex. U**).)

43)    There is no evidence to show that Mr. Rothschild told Mr. Braginsky about the information set forth in paragraph nos. 38 – 42 above. (Braginsky Opinion at 30-31[Doc. # 370-8] (stating his understanding that Vitals.com's display of third-party information would not include internship, residency and fellowships); Braginsky Dep. 117:11-119:8 (**Ex. B**).)

44)    The second basis for Mr. Braginsky's conclusion that there is no infringement is his understanding from Mr. Rothschild's descriptions and representations that Vitals.com does not provide reports that include "comparison ratings of healthcare providers" – Mr. Braginsky refers to this as "Difference No. 2."  (Braginsky Opinion at 31 [Doc. # 370-8].)

45)    With respect to "comparison ratings of healthcare providers" the Braginsky Opinion baldly concludes:

> As a separate and independent basis for no literal infringement, **we also understand that Vitals.com does not provide comparison ratings of health care providers** ("Difference No.2").  As such, there is another limitation of claims I and 15 that Vitals.com does not meet. It is our opinion that a well-informed court or properly-instructed jury would find, based on Difference No.2 that Vitals.com would not literally infringe claims 1 and 15 of the '060 Patent, and that dependent claims 2-14 and 16-17 also are not literally infringed.

(*Id.* at 31 (emphasis added).)

46)     The Braginsky Opinion does not set forth any analysis or identify what website functionality he analyzed to reach his conclusion that "Vitals.com does not provide comparison ratings of healthcare providers."  (Braginsky Opinion [Doc. # 370-8].)

47)     Mr. Braginsky understood from the information provided to him by Mr. Rothschild that as of December 30, 2010, the MDx healthcare provider reports did not include comparison ratings of healthcare providers. (Braginsky Dep. 141:6 – 143:5 (**Ex. B**).)

48)      MDx did not "remove comparison ratings of healthcare providers from all the reports on specific healthcare providers, as is called for in the claims," until "January of 2011." (Declaration of Mitch Rothschild, ¶¶ 5, 6 and 8 [Doc. #371-2].)

49)     Shortly after his deposition on February 14, 2013, Mr. Braginsky left Sills Cummis & Gross to join Mr. Rosenberg at Tarter Krinsky & Drogin LLP. (LinkedIn Profile of Philip Braginsky (**Ex. V**).)

## III.     THE BRAGINSKY OPINION IS NOT COMPETENT

An opinion of counsel does not automatically preclude a finding of willfulness. This is especially true where the opinion of counsel is not competent.  *Seagate*, 497 F.3d at 1369; *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1366-1367 (Fed. Cir. 2006).

Whether that advice was competent depends on a number of factors such as (1) whether counsel examined the patent file history; (2) whether the opinions were oral or written; (3) the objectivity of the opinions; (4) whether the attorneys rendering the opinions were patent lawyers; (5) whether the opinions were detailed or merely conclusory; and (6) whether material

14

information was withheld from the attorney. *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1117, 1121 (E.D. Cal. 2002).

In *Chiron* the court noted that the defendant's outside counsel's 56-page opinion letter was thorough, detailed, cited relevant case law and was drafted by patent attorneys.  *Id*. at 1122. Thus factors 1, 2, 4 and 5 supported a finding that the opinion was both competent and reliable. *Id*.  However, with respect to factor #3 – the objectivity of the opinions – the court found that the patentee raised a sufficient challenge to the objectivity of the opinion to survive summary judgment because the defendant's outside opinion counsel consulted with in-house counsel, and because the opinion counsel's firm had performed other legal work for the defendant, i.e., had prosecuted some patents. *Id*. at 1125.   With respect to factor #6 – whether material information was withheld from the attorney – the court found the patentee raised a material issue as to whether the defendant withheld material information from its opinion counsel:

> [W]ithholding material information from counsel (or providing counsel with false information) is relevant to the willfulness inquiry in two ways. First, it may affect the reliability of counsel's advice to the extent the advice is premised on false or misleading information, thereby negating any argument that reliance on the advice was reasonable. Second, withholding material information is evidence of an infringer's bad faith, from which it can be inferred that the infringer did not intend to rely, and did not in fact rely on the opinion that was rendered.  Either one of these two scenarios supports a finding of willfulness.  *Chiron* has raised a material issue of fact at least with respect to the second scenario.

*Id*. at 1123.

Thus the court held that "[a] fact finder could reasonably conclude, based on this evidence, that [the defendant] misrepresented information . . . and did so because it believed that it had no defense to infringement and was hoping to get an outside opinion that concluded otherwise."  *Id*. at 1124.   *Chiron* is analogous and on point.  With respect to factor #3 – the

15

objectivity of the opinions – the Braginsky Opinion is not objective given that, as in *Chiron*, it was rendered by the same firm that performs other patent-related work for MDx, i.e., *Mr. Braginsky worked at the same firm that represents MDx in this litigation, and he worked on other MDx matters with a member of MDx's trial team in this case, Mr. Rosenberg*.  (ADF, *supra*, ¶¶ 2 – 11, 49.)  Before rendering his opinions, Mr. Braginsky undertook (in his own words) "to do whatever was possible to either ensure that the application wouldn't grant or that it wouldn't grant in the form that it was currently in; that it would be narrowed." (ADF, *supra*, ¶ 11)  Mr. Braginsky worked closely with Mr. Rosenberg -- *a member of MDx's trial team in this case* – to respond to Health Grades' notice letter in 2009.  (ADF, *supra*, ¶¶ 5 – 11.)  Mr. Braginsky was a partner in the same firm as MDx's trial counsel and was a member of the small IP group at the firm. (ADF, *supra*, ¶¶ 2 – 4.)  Therefore the Braginsky Opinion is not objective and factor #3 weighs in favor of finding that it is not competent.

Factor #5 – whether the opinions were detailed or merely conclusory – also shows that the Braginsky Opinion is not competent.  Unlike the thorough, detailed, 56-page opinion in *Chiron*, the Braginsky Opinion is superficial and merely conclusory – there is no analysis, much less any detailed analysis – supporting the conclusions or confirming what Mr. Braginsky was told by Mr. Rothschild.  Mr. Braginsky did not do any research and did not make any notes in connection with his work on the opinion.  The Braginsky Opinion simply parrots what he was told and Mr. Braginsky did nothing to confirm or independently verify the representations. (ADF, *supra*, ¶¶ 25, 26, 27, 28, 29, 30, 31, 36, 37 - 48.)   An opinion may be incompetent if it contains "merely conclusory statements without discussion of facts or obviously present[s] only a superficial or off-the-cuff analysis." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828-29 (Fed.

Cir. 1992), *abrogated on other grounds by Markman*, 52 F.3d 967) (citing *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828-29 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990)); *Chiron*, 268 F. Supp. 2d at 1117.[1]

Determining whether there is patent infringement involves two steps: first, the claims must be interpreted, and second, the claims as interpreted must be compared to the accused device. *See, e.g., Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). "Literal infringement is found where an accused device falls within the scope of the asserted claims as property interpreted." (Braginsky Opinion at 23 [Doc. # 370-8].)  In this case, the Braginsky Opinion does not include analysis regarding the second step of the infringement determination – it does not include any factual analysis to support its conclusion that the Vitals.com website does not include "comparison ratings of healthcare providers" in its reports.  While Mr. Braginsky construed the comparison ratings element (Braginsky Opinion at 30 [Doc. # 370-8].), he did not state what features of Vitals.com he compared to this claim element, let alone explain why these features do not meet this element as he construed it.  His opinion does not indicate whether he considered the "Compare Now" feature of Vitals.com (**Ex. W**) or the detailed search results (**Ex. X**), and if he did, he did not explain why these features do not meet the "comparison ratings of

---

[1]      *See also SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1466 (Fed. Cir. 1997) (affirming rejection of advice of counsel defense because the advice was "conclusory and woefully incomplete . . ., lacking both legal and factual analysis, . . . [and] insufficient to meet the standard of due care appropriate to serve as an exculpatory opinion of counsel.") (internal quotation marks omitted); *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983) (affirming rejection of advice of counsel defense because opinion memo contained only "bald, conclusory and unsupported remarks"), *overruled on other grounds by In re Seagate Tech.*, LLC, 497 F.3d 1360 (Fed. Cir. 2007); *Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.*, 909 F. Supp. 896, 907 (S.D.N.Y. 1995) (rejecting advice of counsel defense because opinion letter could "be described, at best, as superficial, containing no analysis explaining the conclusion reached.").

healthcare providers" element.  Similarly, the Braginsky Opinion concludes in error that there is no infringement because Vitals.com does not create a physician report that includes licensure status, internship, residency, and fellowship information.  However, the opinion does not address the physician profiles that clearly displayed this information in January 2011 or explain why these profiles do not meet the claims as he construed them. (ADF, *supra*, ¶¶ 28, 36, 38 – 47.)

Factor #6 – whether material information was withheld from the attorney – also shows that the Braginsky Opinion is not competent because Mr. Rothschild misrepresented the functionality and nature of the services available from the website.  (ADF, *supra*, ¶¶ 25, 26, 27, 28, 29, 30, 31, 36, 37 - 48.)  When he met with Mr. Braginsky on December 30, 2010, the MDx reports included comparison ratings as called for in the patent claims.  (ADF, *supra*, ¶¶ 47, 48.) That functionality, as sworn by Mr. Rothschild, was not allegedly changed until January of 2011. Yet based on his explanations of the reports at the December 30, 2010 meeting, Mr. Braginsky concluded the reports did not include comparison ratings.  (ADF, *supra*, ¶ 47.)  Simply put, in his haste to obtain his "freedom to operate" letter and to address his concern that MDx was willfully infringing, Mr. Rothschild withheld material information and misrepresented the website's functionality.

"Whenever material information is intentionally withheld, or the best information is intentionally not made available to counsel during the preparation of the opinion, the opinion can no longer serve its prophylactic purpose of negating a finding of willful infringement." *Comark Communs. v. Harris Corp.*, 156 F.3d 1182, 1191-1193 (Fed. Cir. 1998); *Chiron*, 268 F. Supp. 2d

at 1125.[2]  In *Comark*, the Federal Circuit affirmed the district court order denying a motion for judgment as a matter of law of no willfulness despite the fact that the defendant had obtained an opinion of counsel because there was evidence that the accused infringer withheld material information from its opinion counsel that it knew would produce an unfavorable opinion and that it withheld the information in order to secure an opinion of non-infringement.  *Comark*, *supra*, at 1191, 1192.  The non-infringement opinion in *Comark* "was expressly conditioned upon [the attorneys'] assumption that the [accused] circuit did not perform a spectral analysis . . ." *Id.* However the patentee introduced evidence that the spectral analysis was dropped due to infringement concerns, but reinstituted after the non-infringement opinion was rendered.  *Id.*

Like in *Comark*, Mr. Braginsky's non-infringement opinion was expressly conditioned upon the assumption that Vitals.com "does not create and provide access to a health care provider report that includes third-party verified licensure, medical internship, medical residency, and medical fellowship information. . . ."(i.e., Difference No. 1) (ADF, *supra*, ¶ 37).) Like in *Comark*, MDx withheld material information from Mr. Braginsky: Mr. Rothschild did not tell Mr. Braginsky that MDx collects licensure information from state medical boards and displays this information in physician reports on its website (as shown in the screenshot below). (ADF, *supra*, ¶¶ 38, 41.)

---

[2]     Although the *Comark* and *Chiron* cases were decided prior to the Federal Circuit's 2007 ruling in *Seagate*, they are still good law for the premise that an opinion based on inaccurate information (whether intentional or not) will not support a defense against willful infringement. *See, e.g., Elan Corp., PLC v. Andrx Pharms., Inc.*, No. 98-7164, 2008 U.S. Dist. LEXIS 94525, at *216-*217 (S.D. Fla. Aug. 12, 2008) ("An opinion of counsel carries no weight when the evidence shows that it was the product of intentional misinformation"); *CSB-Sys. Int'l, Inc. v. SAP Am., Inc.*, No. 10-2156, 2012 U.S. Dist. LEXIS 58410, at *11-*12 (E.D. Pa. Apr. 25, 2012); *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1047-1048 (D. Or. 2008).



A medical license is required for a doctor to receive a NPI number and practice in any given state. Requirements vary by state but most require, at a minimum, post-graduate training in the doctor's specific specialty. Dr. Brian Smith is confirmed to have a license in UT and CO.

Additionally, Mr. Rothschild did not tell Mr. Braginsky that MDx collects internship, residency, and fellowship information ("IRF") from third party "official" sources to ensure the information provided is "reliable." (ADF, *supra*, ¶ 38).)  Although MDx also collects IRF information from physicians, it does not allow physicians to "contradict the information it receives from the official sources." (ADF, *supra*, ¶ 39).)  Mr. Rothschild did not tell Mr. Braginsky that Vitals.com physician reports display residency and/or fellowship information retrieved from its database. (ADF, *supra*, ¶¶ 39 – 43.)

In sum, in *Chiron* the patentee showed that factors 3 and 6 weighed in favor of finding that the opinion of counsel was not competent, which was sufficient for the court to to deny summary judgment of no willfulness.  In this case Health Grades has shown that factors 3, 5 and 6 demonstrate the Braginsky Opinion is not competent, and the Court should likewise question the competence of the Braginsky Opinion and deny MDx's Motion.

## IV.    <u>CONCLUSION</u>

For the reasons discussed herein and in Health Grades' Opposition, there are material issues of fact regarding whether the Braginsky Opinion is competent and whether MDx acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. Accordingly this Court should deny MDx's motion for summary judgment of no willfulness.

2004146010_1

Dated: April 10, 2013                    ROTHGERBER JOHNSON & LYONS LLP

                                         *s/ Jesús M. Vazquez*
                                         Gregory B. Kanan, Esq.
                                         Kris J. Kostolansky, Esq.
                                         Jesús M. Vázquez, Jr., Esq.
                                         1200 17th Street, Suite 3000
                                         Denver, Colorado 80202
                                         Tel: (303) 623-9000
                                         Fax: (303) 623-9222
                                         Email: gkanan@rothgerber.com
                                                kkosto@rothgerber.com
                                                jvazquez@rothgerber.com
                                         *Attorneys for Plaintiff Health Grades, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, I electronically filed the foregoing **HEALTH GRADES, INC.'S SUPPLEMENT TO ITS OPPOSITION TO MDx MEDICAL, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFULNESS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson                     Terence M. Ridley
Scott Murray                             Wheeler Trigg O'Donnell, LLP
David Chunyi Lee                         1801 California Street, #3600
Sills Cummis & Gross P.C. – New York     Denver, CO 80202-2617
30 Rockefeller Plaza                     Email: ridley@wtotrial.com
New York, NY 10112
Email: sstimpson@sillscummis.com
Email: smurray@sillscummis.com
Email: dlee@sillscummis.com

                                         *s/ Jesús M. Vazquez*
                                         Gregory B. Kanan, Esq.
                                         Kris J. Kostolansky, Esq.
                                         Jesús M. Vázquez, Jr., Esq.
                                         Rothgerber Johnson & Lyons, LLP
                                         1200 17th Street, Suite 3000
                                         Denver, Colorado 80202-5855
                                         Tel:     (303) 623-9000
                                         Facsimile: (303) 623-9222
                                         Email: gkanan@rothgerber.com
                                                kkostolansky@rothgerber.com
                                                jvazquez@rothgerber.com
                                         *Attorneys for Plaintiff Health Grades, Inc.*
                                         21