IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,
v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S SUPPLEMENT TO ITS OPPOSITION TO MDX MEDICAL, INC.'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR SUMMARY JUDGMENT OF NO WILLFULNESS**

Pursuant to Order [Doc. #560], Plaintiff Health Grades, Inc. ("Health Grades") submits its Supplement to its Opposition [Doc. #404] to MDx Medical, Inc.'s ("MDx") Motion for Summary Judgment of No Willfulness (the "Motion") [Doc. #371].

## I.     INTRODUCTION

MDx cites the "advice of counsel" it obtained from attorney Philip Braginsky to support its arguments that "objective recklessness is entirely absent" in this case. (Motion at p. 2.) The Opinion, however, is not competent -- it is a conclusory, superficial letter that is devoid of analysis comparing the patent claims to the features of the accused website. In light of the conclusory nature of the Opinion, it was not surprising to learn that Mr. Braginsky concluded *during a single meeting* with MDx's CEO, Mitch Rothschild, on December 30, 2010 that MDx did not infringe. (Additional Disputed Facts ("ADF"), *infra,* ¶9.) Mr. Braginsky took no notes at this meeting, and has no notes at all regarding the "freedom to operate" letter. (*Id.* at ¶¶8, 10.) He has no documents showing any independent research or analysis. (*Id.*) None was performed. (*Id.*

at ¶¶7-13.) Instead, he simply met with Mr. Rothschild and, after discussing how the opinion could be used in defense against a charge of willfulness (*Id.* at ¶23), determined there was no infringement based solely on the representations Mr. Rothschild made about the Vitals.com website. Mr. Rothschild's representations, however, were not true (*Id.* at ¶¶15-19, 21-22) and Mr. Braginsky did nothing to confirm or independently verify them. (*Id.* at ¶¶10-13.) MDx's contention in its Reply [Doc. #443 at p. 9] that Mr. Braginsky was "thorough and detailed in his consideration of the facts" is disingenuous and belied by Mr. Braginsky's deposition testimony.

Further, the Opinion is *not objective* – Mr. Braginsky was asked to do "whatever was possible" to prevent Health Grades' patent from issuing. (*Id.* at ¶5.) Mr. Braginsky's firm represents MDx in this case and Mr. Braginsky worked together with a member of MDx's trial team on a related MDx/Health Grades matter before he rendered his Opinion. (*Id.* at ¶¶1-5.) Mr. Braginsky's deposition testimony reveals the charade that led to the opinion letter, which was expressly created to use against a claim for willful infringement. (*Id.* at ¶23.)

## II.     THE OPINION IS NOT COMPETENT

An opinion of counsel does not automatically preclude a finding of willfulness. This is especially true where the opinion of counsel is not competent. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1369 (Fed. Cir. 2007). Whether that advice was competent depends on a number of factors such as (1) whether counsel examined the patent file history; (2) whether the opinions were oral or written; (3) the objectivity of the opinions; (4) whether the attorneys rendering the opinions were patent lawyers; (5) whether the opinions were detailed or merely conclusory; and (6) whether material information was withheld from the attorney. *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1117, 1121 (E.D. Cal. 2002).

In *Chiron* the court noted that the defendant's outside counsel's 56-page opinion letter was thorough, detailed, cited relevant case law and was drafted by patent attorneys. *Id*. at 1122. Thus four factors (1, 2, 4 & 5) supported a finding that the opinion was both competent and reliable. *Id*. Nevertheless, the court denied defendant's motion for summary judgment of no willfulness because two of the factors (3 & 6) weighed in favor of finding that the opinion was not competent. It is even clearer in this case that summary judgment should be denied because more of the *Chiron* factors (3, 5, & 6) demonstrate the Braginsky Opinion is not competent. These three factors are discussed in detail in the following sections.

### A.    FACTOR 6: MDx Withheld Material Information from Mr. Braginsky

"Whenever material information is intentionally withheld, or the best information is intentionally not made available to counsel during the preparation of the opinion, the opinion can no longer serve its prophylactic purpose of negating a finding of willful infringement." *Comark Communs. v. Harris Corp.*, 156 F.3d 1182, 1191-1193 (Fed. Cir. 1998); *Chiron*, 268 F. Supp. 2d at 1125.[1] In *Chiron*, the patentee raised a material issue as to whether the defendant misrepresented the facts relating to prior art. As a result, the court held that "[a] fact finder could reasonably conclude, based on this evidence, that [the defendant] misrepresented information . . . and did so because it believed that it had no defense to infringement and was hoping to get an outside opinion that concluded otherwise." *Id*. at 1124.

Like the defendant in *Chiron*, Mr. Rothschild misrepresented the functionality and nature

---

[1] Although the *Comark* and *Chiron* cases were decided prior to *Seagate*, they are still good law for the premise that an opinion based on inaccurate information will not support a defense against willful infringement. *See, e.g., Elan Corp., PLC v. Andrx Pharms., Inc.*, No. 98-7164, 2008 U.S. Dist. LEXIS 94525, at *216-*217 (S.D. Fla. Aug. 12, 2008); *CSB-Sys. Int'l, Inc. v. SAP Am., Inc.*, No. 10-2156, 2012 U.S. Dist. LEXIS 58410, at *11-*12 (E.D. Pa. Apr. 25, 2012).

of the services available from the website. When Mr. Rothschild told Mr. Braginsky at the December 30, 2010 meeting that the Vitals.com website did not include the claimed "comparison ratings", Mr. Braginsky blindly took Rothschild's word for it and concluded the alleged absence of reports with "comparison ratings" meant MDx did not infringe. (*Id.* at ¶¶7-8, 10-13, 14, 22.) But Mr. Rothschild's representations about the "comparison ratings" element were not true. Indeed, in sharp contrast to what he told Mr. Braginsky on December 30, 2010, **Mr. Rothschild told this Court that MDx did not "remove comparison ratings of healthcare providers from all the reports on specific healthcare providers, as is called for in the claims,"** *until* **"January of 2011."** (*Id.* at ¶21.)[2] The significance of Mr. Rothschild's sworn declaration cannot be overstated -- it is an admission imputable to MDx that prior to January of 2011 the Vitals.com physician reports satisfied the comparison ratings claim elements of the '060 patent. (*Id.*) Thus it is clear that Mr. Rothschild misinformed Mr. Braginsky about the "comparison ratings" at the December 30, 2010 meeting. As such, the Opinion cannot support entry of summary judgment.

The *Comark* decision is also analogous. There, the Federal Circuit affirmed an order denying a motion for JNOV of no willfulness because there was evidence that the accused infringer withheld material information from its opinion counsel. *Comark*, 156 F.3d at 1191-1192. The non-infringement opinion in *Comark* "was expressly conditioned upon [the attorneys'] assumption that the [accused] circuit did not perform a spectral analysis . . ." *Id.* However the patentee introduced evidence that the spectral analysis was dropped from the accused product due to infringement concerns, but reinstituted after the non-infringement opinion was rendered.

Like *Comark*, Mr. Braginsky's non-infringement opinion was expressly conditioned upon

---

[2] Health Grades contends that the Vitals.com website continued to have the claimed comparison ratings after January 2011 and still has this element today.  [Doc. # 201].

4

2004154452_1

the assumption that Vitals.com "does not create and provide access to a health care provider report that includes third-party verified licensure, medical internship, medical residency, and medical fellowship information. . . ." (Opinion at 30.)[3] Like in *Comark*, MDx withheld material information from Mr. Braginsky. Mr. Rothschild did *not* tell Mr. Braginsky that:

- MDx collects licensure information from official sources and displays this information in physician reports on its website.

- MDx collects internship, residency, and fellowship information from official sources.

- Vitals.com physician reports display residency and/or fellowship information.

- MDx does not allow physicians to "contradict the information it receives from the official sources."

(ADF, *infra*, ¶¶15-19.)

Thus, it is not unreasonable to infer that the Braginsky Opinion is not competent because it was based on inaccurate and incomplete information. Summary judgment should be denied.

### B.     FACTOR 5: The Braginsky Opinion is Devoid of any Detailed Analysis Regarding the Second Step of the Patent Infringement Analysis

An opinion may be incompetent if it contains "merely conclusory statements without discussion of facts or obviously present[s] only a superficial or off-the-cuff analysis." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828-29 (Fed. Cir. 1992), *abrogated on other grounds by Markman*, 52 F.3d 967) (citing *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828-29 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990)); *Chiron*, 268 F. Supp. 2d at 1117.

Unlike the thorough, detailed, 56-page opinion in *Chiron*, the Braginsky Opinion is

---

[3] The '060 patent claims require three or more of the following types of information be compiled: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information.  (Opinion at 6.)

superficial and conclusory -- it does not include any analysis regarding the second step of the infringement determination. The Braginsky Opinion concludes that Vitals.com does not include healthcare provider reports with "comparison ratings of healthcare providers." (Opinion at 31 [Doc #370-8].) While Mr. Braginsky construed the comparison ratings element (*Id.* at 30), he did not state what features of Vitals.com he compared to this claim element, let alone explain why these features do not meet this element as he construed it. (Additional Disputed Facts ("ADF"), *infra, ¶20.*) His opinion does not indicate whether he considered the "Compare Now" feature of Vitals.com (**Ex. N**) or the detailed search results (**Ex. O**), and if he did, he did not explain why these features do not meet the "comparison ratings" element.

Similarly, the Opinion concludes in error that there is no infringement because Vitals.com does not create physician reports that include licensure status, internship, residency, and fellowship ("IRF") information. (Opinion at 30.) However, the Opinion does not address the physician profiles that clearly displayed this information in January 2011 or explain why these profiles do not meet the claims as he construed them. (ADF, *infra*, ¶19.)

### C. FACTOR 3: The Opinion Is Not Objective

In *Chiron*, the court found that the patentee raised a sufficient challenge to the objectivity of the opinion to survive summary judgment because the defendant's outside opinion counsel's firm had performed other legal work for the defendant, i.e., had prosecuted some patents. *Id*. at 1125. Similarly, the Opinion is not objective given that *Mr. Braginsky worked at the same firm that represents MDx in this litigation, and he worked on another MDx matter relating to the patent-in-suit with a member of MDx's trial team in this case*. (ADF, *infra*, ¶¶1-5.) Before rendering his opinions, Mr. Braginsky undertook (in his own words) "to do whatever was

6

2004154452_1

possible to either ensure that the application wouldn't grant or that it wouldn't grant in the form that it was currently in; that it would be narrowed." (*Id.* at ¶5.) Therefore, factor 3 also weighs in favor denying summary judgment.

## III.     ADDITIONAL DISPUTED FACTS

1) Mr. Braginsky, a partner with Sills Cummis & Gross, was initially engaged to help MDx respond to a 12/15/09 notice letter from Health Grades relating to the then-pending '060 patent. (Dep. Ex. 1 ("Notice Letter") (**Ex. A**); Braginsky Dep. 25:15-16; 29:12-20 (**Ex. B**).)

2) Mark Rosenberg, an attorney with Sills Cummis, drafted and signed MDx's response to Health Grades' Notice Letter and Mr. Braginsky reviewed and approved it. (Dep. Ex. 6 (**Ex. D**); Braginsky Dep. 17:12-19; 47:18-22 (**Ex. B**).)

3) Mr. Rosenberg was a member of MDx's trial team on this case *for almost a year* until he left Sills Cummis in early 2012. ([Doc. #97 at p. 370-8]; 1/31/12 Email (**Ex. C**).

4) Mr. Rosenberg advised Mr. Rothschild:

[w]e believe we should take a firm, aggressive approach while Health Grades' application is pending. By doing so [sic] we can potentially either prevent Health Grades from receiving a patent or ensure that any patent that issues is limited in scope.

(Dep. Ex. 5 (**Ex. E**).)

5) Mr. Braginsky agreed with Mr. Rosenberg stating: "that we wanted to do whatever was possible to either ensure that the application wouldn't grant or that it wouldn't grant in the form that it was currently in; that it would be narrowed." (*Id.* at 53:10-24 (**Ex. B**).)

6) Mr. Rothschild met with Mr. Braginsky on December 30, 2010 to purportedly analyze the '060 patent (which issued in August 2010) and to determine whether or not there was an infringement by Vitals.com. (Braginsky Dep. 69:12-70:24 (**Ex. B**).)

7

7) Mr. Braginsky did not know how the MDx website operated before the December 30, 2010 meeting. (Braginsky Dep. 37:13-38:14; 79:5-13 (**Ex. B**).)

8) Mr. Braginsky does not recall reviewing the patent or the MDx website prior to the December 30 meeting and did not take notes before the meeting. (*Id.* at 71:22-72:15.)

9) At the December 30 meeting, Mr. Braginsky concluded that "they [MDx] weren't infringing" and that "there was no likelihood that they [MDx] were infringing" and communicated this to Mr. Rothschild. (Braginsky Dep. 86:11-87:8; 89:25-90:12; 109:19-22.)

10) Mr. Braginsky did not perform any independent research in support of his Opinion and did not make any notes regarding his work on the Opinion. (*Id.* at 184:15-185:21.)

11) Mr. Braginsky "absolutely relied" on the information Mr. Rothschild provided at the December 30 meeting to form his opinions. (Braginsky Dep. 94:18-95:1 (**Ex. B**).)

12) With regard to the features and functionality of the backend portion of Vitals.com, Mr. Braginsky relied exclusively on what Mr. Rothschild told him. (Braginsky Dep. 104:21-106:6; 123:4-20; 147:14-148:25; Opinion at 2 [Doc. #370-8] ("The study included a review of . . . certain processes used to implement the Vitals.com services *as you have described them to us*.") (emphasis added.); Josh Long, *I Don't Speak Your Language: Frontend vs. Backend,* Treehouse Blog (Sep. 25, 2012) (**Ex. F**).)

13) With regard to the features and functionality of the frontend portion of Vitals.com, Mr. Braginsky relied on the portions selected by Mr. Rothschild and shown to Mr. Braginsky during the single meeting on December 30, 2010. (*See, e.g.,* Braginsky Dep. 79:4-21; 83:4-20; 86:11-91:10; 147:14-148:25 (**Ex. B**); Opinion at 2 [Doc. #370-8].)

14) The Opinion does not discuss or contain any independent analysis or investigation

8

that confirms that the features and functionality of Vitals.com were described accurately by Mr. Rothschild. (Opinion [Doc. #370-8].)

15) MDx compiles licensure status, internship, residency, and fellowship information ("IRF Info") from multiple, reputable third parties, such as the state medical boards ("SMB") and "partners," like the American Board of Medical Specialties. (MDx Presentation (**Ex. G**) at p. 47 ("SR" = self-reported by physician); *see also* pp. 4, 19 (indicating that licensure, residency and disciplinary action information is gathered from thousands of Primary sources "with reliable quality measures applied"), p. 25 ("We've partnered with a select group of respected providers to ensure accurate measures."), p. 31 (showing sources); Larry West Dep. 28:21-29:9; 68:17-71:13 (**Ex. J**); MDx's Second Supp. Interrogatory Resps. at 6 (**Ex. H**).)

16) MDx does not allow physicians to contradict IRF info it receives from the official sources. (**Ex. G** at 44, 46-48; Erika Boyer Dep. 99:15-100:9 (**Ex. I**).)

17) Vitals.com displays licensure information in its physician reports. (Vitals.com Screenshots (**Ex. K**) ("Dr. Brian Smith is confirmed to have a license in UT and CO.").)

18) Vitals.com displays residency and fellowship information in its physician reports. (Profile of Dr. Rosengart (July 2012) at HGVSC000046 (**Ex. L**); Profile of Dr. Enzenauer (Jan. 2013) at HGVSC000305 (**Ex. M**).)

19) The Opinion does not discuss the information set forth in ¶¶16-19 and there is no evidence to show that Mr. Rothschild told Mr. Braginsky about this information. (Opinion at 30-31; Braginsky Dep. 117:11-119:8.)

20) The Opinion does not identify what functionality was analyzed to reach the conclusion that Vitals.com does not provide the claimed comparison ratings. ([Doc. #370-8].)

9

21) As of December 30, 2010, the reports on specific healthcare providers on Vitals.com included comparison ratings of healthcare providers as is called for in the claims. (Declaration of Mitch Rothschild, ¶¶5, 6 and 8 [Doc. #371-2] (stating MDx did not "remove comparison ratings of healthcare providers from all the reports on specific healthcare providers, as is called for in the claims," *until* "January of 2011.".)

22) Nevertheless, at the December 30, 2010 meeting Mr. Rothschild represented to Mr. Braginsky that the MDx healthcare provider reports did not include comparison ratings of healthcare providers. (Braginsky Dep. 141:6-143:5 (**Ex. B**).)

23) Mr. Braginsky provided the opinion letter to Mr. Rothschild to use if there was a claim for willful infringement made against MDx. (Braginsky Dep. 14:1-17 (**Ex. B**).)

## IV.   CONCLUSION

For the reasons discussed herein and in Health Grades' Opposition, there are material issues of fact regarding whether the Opinion is competent and whether MDx acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. Accordingly this Court should deny MDx's motion for summary judgment of no willfulness.

Dated: April 16, 2013     ROTHGERBER JOHNSON & LYONS LLP

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 623-9000
Email: gkanan@rothgerber.com
         kkosto@rothgerber.com
         jvazquez@rothgerber.com
*Attorneys for Plaintiff Health Grades, Inc.*

10

## CERTIFICATE OF SERVICE

   I hereby certify that on April 16, I electronically filed the foregoing **HEALTH GRADES, INC.'S SUPPLEMENT TO ITS OPPOSITION TO MDx MEDICAL, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFULNESS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Scott David Stimpson<br>Scott Murray<br>David Chunyi Lee<br>Sills Cummis & Gross P.C.-New York<br>30 Rockefeller Plaza<br>New York, NY 10112<br>Email: sstimpson@sillscummis.com<br>Email: smurray@sillscummis.com<br>Email: dlee@sillscummis.com | Terence M. Ridley<br>Wheeler Trigg O'Donnell, LLP<br>1801 California Street, #3600<br>Denver, CO 80202-2617<br>Email: ridley@wtotrial.com |

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:    (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@rothgerber.com
   kkostolansky@rothgerber.com
   jvazquez@rothgerber.com
*Attorneys for Plaintiff Health Grades, Inc.*