IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

## MDX MEDICAL, INC.'S MOTION FOR RULE 11 SANCTIONS

Defendant and Counterclaim plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, hereby moves for sanctions under Rule 11 of the Federal Rules of Civil Procedure ("FRCP") with regard to Health Grades, Inc.'s ("Health Grades") various allegations addressed herein, which were presented to the Court relating to Aetna Life Insurance Company ("Aetna Life") and the services of iTriage, LLC ("iTriage"), including the following Health Grades' submissions: (1) Motion to Amend (Dkt. #252 and Reply Dkt. #329); (2) Second Amended Complaint ("Amended Complaint"), (Dkt. # 512, entered Dkt. # 515); (3) Pretrial Orders (Dkt. # 499, *e.g.,* pp. 13-21; Dkt. # 533, *e.g.,* pp. 13-22); and (4) Oppositions to MDx's motion for summary judgment (Dkt. # 520 and # 525) (*collectively "the Rule 11 Papers"*).[1]

---

[1] As required by Rule 11, on March 26, 2013, MDx served Health Grades with a copy of this motion by e-mail and Federal Express, and advised Health Grades' counsel that unless its allegations were voluntarily dismissed within twenty-one (21) days, this motion would be filed. Pursuant to D.C.COLO.LCivR 7.1(A), counsel for MDx conferred with Health Grades' counsel, who indicated that Health Grades opposes this motion.

## I. SUMMARY OF THE FACTS

The underlying facts are simple. MDx has a database of healthcare provider information, and leases some of that data to Aetna Life (*see* the "MDx/Aetna Life Agreement"; Exhibit A). iTriage is a subsidiary of a sister company of Aetna Life (Aetna Health Holdings, LLC; "Aetna Health Holdings"). *See* Excerpts of Aetna Inc.'s 2012 Form 10-K Report; Exhibit J (at its Exhibit 21.1). iTriage is a Denver limited liability company, and it provides software applications for cell phones, and more recently a website, that allow users to search for information on healthcare providers (hereinafter the "iTriage Services"). MDx has no agreement with iTriage, nor does it have any agreement with iTriage's parent company, Aetna Health Holdings.

Driven by its anger over losing business in its hometown to MDx, and without stopping to truly think about whether its claims had any factual or legal support, Health Grades sued MDx, alleging that MDx's dealings with Aetna Life indirectly infringe various claims of United States Patent No. 7,752,060 ("the '060 patent"; Exhibit B). Health Grades' new allegations accuse MDx of inducing infringement (*e.g.,* Amended Complaint, Dkt. # 515, at ¶ 25), and contributory infringement (*e.g.*, *id.*, at ¶ 26).

Counsel for MDx repeatedly warned Health Grades' counsel of their violations of Rule 11. *See, e.g.,* Dkt. # 295, at pp. 5, 7, 12, 14, 15 (opposing motion to amend and warning of Rule 11 violations); and correspondence from Scott Stimpson to Kris Kostolansky, dated January 14, 2013; Exhibit C. In response to these warnings, Health Grades withdrew a baseless joint infringement allegation; but refused to withdraw the allegations of contributory infringement or inducement of infringement. *See* the Rule 11 Papers.

## II.  THE PERTINENT LAW

### A.  Rule 11

Rule 11 provides in pertinent part:

> (b)  Representations to the Court.  By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1)  it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2)  the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;  [and]
>
> (3)  the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation and discovery. . . .

Rule 11 "require[s] litigants to 'stop-and-think' before initially making legal or factual contentions." Fed. R. Civ. P. 11 advisory committee note to 1993 amendments, 149 F.R.D. 401, 584-85.  "Rule 11 is aimed at curbing baseless filings, which abuse the judicial system and burden courts and parties with needless expense and delay." *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997).  "A patent suit can be an expensive proposition.  Defending against baseless claims of infringement subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).  Rule 11 applies to claim constructions and infringement analyses. *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072-74 (Fed. Cir. 2002).

The Federal Circuit applies regional-circuit law when determining whether Rule 11 has been violated.  *Antonious*, 275 F.3d at 1072.  In the Tenth Circuit, to comply with Rule 11, the

3

attorney's conduct must be objectively reasonable. *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988); *United States ex rel. Superior Steel Connectors Corp. v. RK Specialties Inc.*, 2011 U.S. Dist. LEXIS 125745 (D. Colo. Oct. 31, 2011).

### B. Infringement, Generally

One way in which a patent may be infringed is by "literal" infringement. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997). Literal infringement requires that each and every element in the asserted claim of the patent be literally present in the accused device. *Id*. A lack of literal infringement does not end the infringement inquiry, as infringement may exist under the "doctrine of equivalents." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 732-33 (2002) (*citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950)). The doctrine is limited by the "all elements rule." *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). As the Supreme Court has held, "[I]f a theory of equivalence would ***entirely vitiate a particular claim element***, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 39 n.8 (1997) (emphasis added). Another limitation is "prosecution history estoppel." *Lockheed Martin Corp.*, 324 F.3d 1308 at 1318. Under this doctrine, the patent owner is presumed to be barred from equivalents to covering territory between the original claim and the claim amended for patentability. *Festo*, 535 U.S. at 737-38.

### C. Contributory Infringement

A party is liable for contributory infringement only if the party sells within the United States or imports into the United States a component of a patented machine, manufacture,

combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. 35 U.S.C. § 271(c).

### D. Inducement of Infringement

An accused infringer is liable for induced infringement only if the accused infringer "actively induces infringement of a patent." 35 U.S.C. § 271(b). Thus, liability is contingent upon an intent element, which requires that an alleged infringer know of the patent and know that the acts which are induced by the action of the alleged infringer will result in a direct infringement of the patent. *Medtronic Vascular, Inc. v. Boston Scientific Corp.*, 348 F. Supp. 2d 316, 323 (D. Del. 2004) (citing *Ferguson Beauregard/Logic Controls v. Mega Sys.*, 350 F.3d 1327, 1342 (Fed. Cir. 2003)).

## III. RULE 11(b)(2) and (3): FRIVOLOUS INFRINGEMENT ALLEGATIONS

### A. Contributory Infringement: Substantial Non-Infringing Uses

MDx is simply *leasing data* to Aetna Life. Nevertheless, Health Grades asserts that MDx is guilty of contributory infringement. Dkt. # 515, at ¶ 26; Health Grades' Opposition to MDx's Motion for Summary Judgment, Dkt. # 525, at p. 29; and Final Pretrial Order, Dkt. # 544, p. 13. For Health Grades to succeed on its contributory infringement claim, however, it must show, among other things, that the data MDx leases to Aetna Life has "***no substantial non-infringing uses***." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012) (emphasis added).

Merely stating Health Grades' position demonstrates that it is without any factual basis. According to Health Grades, there is no substantial use of this data on healthcare providers other

5

than by setting up a website, creating software to receive requests over the Internet, accessing the very specific data elements recited throughout the claims (i.e., all of physician provided data, patient provided data, and third party provided data), creating a report on a specific healthcare provider using the data that was accessed, ensuring that this report also contains comparison ratings of other healthcare providers, and then providing access to that report over the Internet rather than by mail.  Exhibit B, at claim 1, col. 20, lines 20-67 and at claim 15, col. 22, lines 9-56.  How can Health Grades and its counsel, or anyone, assert such an allegation in good faith?

Health Grades itself was using similar healthcare provider data for years in the prior art, and (completely inconsistent with its contributory infringement allegation) Health Grades insists that none of its prior use of such data met the elements of the claims of the '060 patent.  Examples abound.  *See, e.g.,* Exhibits D and E, both of which use the same type of data at issue here – specialties, medical school, residency, fellowship, board certification, disciplinary action, years in practice, licensure, languages, gender, etc.  Yet numerous requirements of the claims are missing, including comparison ratings.

Exhibit F is another example.  This is a prior art report on Dr. Drucker – a central prior art reference for MDx in this case.  All of the data elements at issue are shown in this prior art Drucker report, even patient ratings.  But Health Grades is adamant that this also does not meet the claims of the '060 patent because it does not have comparison ratings.  *See, e.g.,* Health Grades' Motion for Partial Summary Judgment, Dkt. # 369, at p. 8 ("The Drucker Report . . . does not include 'comparison ratings of healthcare providers' as defined by the Court.").  In fact, Health Grades is, and always has been, taking the vehement position that, *for years*, it was using data like this in the prior art, and *never once* practiced these patent claims.  How can Health

Grades possibly reconcile this argument with its current position that the ***only*** substantial use of such data must meet the requirements of the claims of the '060 patent?

Examples of non-infringing uses of this data are not only in the prior art. Both Health Grades and MDx ***currently*** use this data in ways that neither party believes to be infringing. *See*, for example, www.vitals.com, features such as finding a group medical practice, which uses the data to create reports on groups of doctors in various locations in various states. Health Grades also currently uses the data in ways that plainly do not meet the claim elements, at www.healthgrades.com, including such things as the directories of doctors found at hospitals.

Not only do Health Grades and its counsel know that there are so many non-infringing uses, they know that it is ***impossible*** for iTriage to meet the claims of the '060 patent regarding numerous providers for which data is received. That is, Health Grades knows that there are not patient ratings for all providers. *See, e.g.,* Physician Report for Dr. Carmine Defusco, MD, Exhibit G (iTriage website, red circle added to show no patient ratings provided) and Exhibit I (iTriage application, same). For these providers, iTriage could not possibly infringe the '060 patent, because there are no patient ratings for them – it would be impossible to "compile" the patient ratings and create a report using those ratings for any of these providers. The same is true on the Health Grades website. *See, e.g.,* Physician Report for Dr. Patrick Ambrosio, Exhibit H (example of Health Grades report with no patient ratings).

MDx is only ***leasing data*** to Aetna Life – it is simply data on healthcare providers. Even the smallest dose of common sense (or, stated differently, the slightest pause for Health Grades to "stop-and-think" about this allegation) would have shown Health Grades and its counsel that there are nearly infinite ways this data can be used that would not meet the claims of the '060

7

patent. For example, it does not need to be used to generate reports on healthcare providers at all. The data could simply be placed online, available for search by users to find any part of the data (*e.g*., office locations, telephone numbers, doctors practicing in any specialty, doctors in certain locations, ratings of specific doctors to the extent they exist, office hours, doctors having staff speaking certain languages, etc., etc.). The data could also be used like the white pages of a telephone book – users simply scroll through to find information on a provider of interest. Or it could be used like the phone book yellow pages – users search for specialists and get a listing in geographic areas. The possibilities are endless. That is not to say, however, that the user would need to avoid creating reports – any report could be created as long as it lacked at least one claim element, and again, there are nearly limitless ways to do this without infringing any claim of the '060 patent: use only one of the healthcare provider data elements; use any combination of two of those elements; use only one of the third party data elements; use any combination of two of them; eliminate the patient ratings of the doctor; eliminate the patient ratings of the other doctors; use all the data elements the claims of the '060 patent require, but get one (or more) from a different source than the source required by the claims; send the report by mail rather than providing online access; etc., etc., etc. Exhibit B, at claim 1, col. 20, lines 20-67 and at claim 15, col. 22, lines 9-56 and 15.

Health Grades' argument that the *only* substantial way to use this data is by infringing the '060 patent is *utterly and completely frivolous*. They did not "stop-and-think" before making this allegation. Accordingly, sanctions pursuant to Rule 11(b)(2) and (3) are appropriate. *See, e.g., F&G Research, Inc. v. Google Inc*., 2007 U.S. Dist. LEXIS 70072, at \*41 (S.D. Fla. Sept.

20, 2007) (contributory infringement allegation led to sanctions where the accused article clearly had substantial non-infringing uses).

### B.  Inducement: Factually and Legally Baseless

Health Grades has presented nothing about the relationship of iTriage to the party that actually contracted with MDx -- Aetna Life.  But Aetna Life and iTriage are two ***separate legal entities*** – iTriage is a subsidiary of a sister company of Aetna Life, Aetna Health Holdings.  *See* Exhibit J.  The Health Grades inducement allegation claims that iTriage is directly infringing and that MDx is inducing that infringement.  ***But Health Grades has not cited even a single communication between MDx and iTriage.***  Instead, all of the evidence of this alleged inducement relates to communications MDx has had with a different entity, ***Aetna Life***.  How can Health Grades allege that MDx induces iTriage to do something, let alone to infringe the '060 patent, without citing even one communication between those entities?  This too is a violation of Rule 11(b)(2) and (3) – there is no evidence of inducement of iTriage.

Even if Aetna Life was the alleged direct infringer, Health Grades has no evidence of inducement.  Health Grades only points to the MDx/Aetna Life Agreement, and to a power point presentation dated years before the '060 patent issued.  Dkt. # 525, pp. 11-12.  There is nothing in the MDx/Aetna Life Agreement that dictates or suggests that Aetna Life practice any of the '060 patent's claim elements, let alone all of them as required for an inducement.  In fact, the MDx/Aetna Life Agreement directly contradicts this position, as it is Aetna Life that dictates to MDx what data it wants.  Exhibit A, at MDX 0104397 ("Supplier [MDx] will develop, manage and maintain a full database . . . ***to Aetna's specifications***"; emphasis added); and at MDX 0104397 ("***Aetna*** defines the data it wants in the Master Database"; emphasis added).  And

9

Health Grades' argument that the old power point (Exhibit K) shows inducement is in direct contravention to well established Federal Circuit law. *National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996) ("as a matter of law § 271(b) does not reach actions taken before issuance of the adverse patent."). Therefore, the assertion of inducement on these bases is another clear violation of Rule 11(b)(2) and (3). *F&G Research*, 2007 U.S. Dist. LEXIS 70072, at *41 (inducement allegation led to sanctions); *see also, Raylon v. Complus Data Innovations, Inc., et. al.*, 700 F.3d 1361, 1374 (Fed. Cir. 2012) ("While reasonable minds can—and often do—differ..., it is unreasonable minds that go to extraordinary lengths to conjure and advance through various stages of a legal proceeding unsupported arguments . . . .") (Reyna, J., concurring).

### C. Patient Ratings From the iTriage Website

Nine of the eleven asserted claims (claims 1, 4, 5, 6, 7, 8, 9, 11, 14) have the following, clear claim language: "the patient ratings are received *from an on-line patient experience survey completed on a company Web site* . . . wherein *the company Web Site is managed by the company providing the services* for connecting healthcare providers with the potential patients." Here, for the iTriage Services, the claimed "company" is obviously iTriage. This language is crystal clear: The patient-ratings have to be obtained from the website of the company providing the services; here, a website of iTriage.

Health Grades ignores this claim requirement, showing the MDx website, www.vitals.com, as the source of the patient ratings for the iTriage Services. Health Grades' Infringement Contentions regarding iTriage, Exhibit L, at p. 23 ("The patient ratings are compiled from a www.vitals.com on-line patient-experience survey"); and at pp. 23-24 ("Aetna

10

Life compiles this information thought [sic] its contract with MDX and literally by gathering it through an XML feed from MDx"). Health Grades even acknowledges that the iTriage application tells users to go to www.vitals.com to rate providers. *Id.*, at p. 26 ("to rate a provider, visit vitals.com"). Thus, Health Grades concedes that the patient ratings at issue ***did not come from the iTriage application and that the ratings are compiled at the MDx website***.

Knowing that the patient ratings do not come from the website serviced by iTriage, however, would not deter Health Grades or its counsel. Indeed, they even asserted that the iTriage Services ***literally*** met this claim element. *See, e.g.,* Dkt. # 533, at p. 14 ("the iTriage app also infringes … . This includes … ***literal infringement*** …"; emphasis added); Dkt. # 525, pp. 18-19 (arguing literal infringement: "It is sufficient to show that MDx performs the method step of compiling the patient-provided information …."). Health Grades' literal infringement argument completely ignores this clear claim limitation. *Raylon*, 700 F.3d at 1370 (finding Rule 11 violation).

Health Grades next argues that this element is met under the doctrine of equivalents. Dkt. # 533, p. 14; Dkt. # 525, pp. 18-19. But that argument is also entirely baseless. Clear limitations of a patent claim cannot be ignored under the guise of the doctrine of equivalents, and there are many cases solidly establishing this law, from both the Federal Circuit Court of Appeals and the United States Supreme Court. As the Supreme Court has held, for example, "if a theory of equivalence would ***entirely vitiate a particular claim element***, partial or complete summary judgment should be rendered by the court, as there would be no further material issue for the jury to resolve." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997) (emphasis added). The doctrine of prosecution history estoppel also precludes this

11

argument, since this language was added to the claims by amendment in response to a prior art rejection. Portions of Prosecution History of the '060 patent, Exhibit M, at MDx 0013547-48. As the limitation was added for reasons related to patentability, there is a presumption of estoppel. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 737-38 (2002). Health Grades, however, refuses to face facts or the realities of these claims, and argues that the patient ratings can be obtained from an entirely different website than the one expressly called for in the claims of the '060 patent.

This is a "location" limitation. That is, it specifically and unequivocally states *where* the patient ratings must be obtained – in this case, from the iTriage website. When a claim term recites a specific location for the practice of a claim element, it plainly excludes from its scope practicing that element *elsewhere*. Health Grades' refusal to recognize that this limitation is entirely absent is a violation of both Rule 11(b)(2) and (3) – the infringement claim has no factual or legal basis whatsoever.

In a recent Federal Circuit case addressing a similar location limitation, the Court unanimously reversed the district court's denial of Rule 11 sanctions:

> Raylon's attorney argued that claim construction "is kind of [an] arcane subject that gets ordinary lawyers like me in trouble a lot of times." J.A. 14048. There is nothing arcane about the location of the printer assembly in the claimed invention. Raylon's position that the printer could be in an entirely different housing from the rest of the components is objectively unreasonable and an independent violation of Rule 11 … . *Raylon*, 700 F.3d, at 1370.

Like the facts in *Raylon*, "there is nothing arcane about the location" limitation in the claims of '060 patent, either. Health Grades' position that the survey for collecting patient ratings could be from an entirely different website is objectively unreasonable.

## IV. RULE 11(b)(1)

Courts have inferred intent to harass under Rule 11(b)(1) where the claim alleged is frivolous. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 410-411 (4th Cir. 1999) (inferring improper purpose where "no rational person" would believe there was support for the claim); *Jacobs v. Credit Suisse First Boston*, 2011 U.S. Dist. LEXIS 112967, 26-27 (D. Colo. Sept. 30, 2011) (concluding that a claim was interposed for the improper purpose of harassment where it lacked any colorable basis).

Health Grades' submission of the Rule 11 Papers is sanctionable under Rule 11(b)(1) because they were all presented for improper purposes. Lacking any colorable basis, these papers were presented to harass a direct competitor (MDx) and the Denver company (iTriage) that refused to deal with Health Grades, and were an effort to drive a wedge between MDx and Aetna Life. In addition, the Rule 11 Papers were submitted in another effort by Health Grades to drive up the litigation expenses of its smaller competitor, MDx.[2]

---

[2] There are many other instances of Health Grades and its counsel using litigation expense as a weapon, or otherwise improper conduct. Some examples follow: (1) <u>Needless Motions to Restrict</u>: Health Grades forced MDx to file many motions to restrict by needlessly filing with the Court lengthy portions or entire documents and deposition transcripts, all containing highly confidential MDx information. *See, e.g.,* Dkt. ## 171, 214, 232, 256, 269, 279, 284, 322, 353, 383, 459, 527, 531, and 551. Magistrate Boland instructed the parties to avoid such filings. Dkt. # 290, page 19 (criticizing over-submissions to the Court of confidential information: "Judge Brimmer doesn't need to look at it because it wasn't important to the argument, I don't need to look at it because it's not important to the argument, you don't need to disclose it publicly because you're not relying on it in connection with your argument."). But the benefits of driving up MDx expenses were simply too much for Health Grades to pass up. Since Magistrate Boland's instruction, MDx has had to submit thousands of pages of briefs, declarations, and exhibits for pointless motions to restrict. MDx obtained the restrictions it ultimately sought, but these efforts were caused by Health Grades submitting exhibits in bad faith, contrary to Magistrate Boland's instructions. In contrast, MDx submitted exhibits in good faith and, aside from a few joint motions, Health Grades has only had to file one motion to restrict (Dkt. # 401). (2) <u>Repeated Disclosures of MDx Confidential Information</u>: Health Grades also, despite

13

For the same reasons discussed in Section III, *supra*, and given Health Grades' history in this litigation of improper conduct and attempts to drive up MDx expenses as shown by the examples in footnote 2, Health Grades brought these frivolous claims for improper purposes in violation of Rule 11(b)(1).

## V.     THE REQUESTED SANCTIONS

Under Rule 11(c)(4), sanctions may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." The Tenth Circuit has held that "sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management. Deterrence is, however, the primary goal of the sanctions." *White v. GM Corp.*, 908 F.2d 675, 683 (10th Cir. 1990) (citations omitted). Thus, the Tenth Circuit has held that the "appropriate sanction should be the least severe sanction adequate to deter and punish the plaintiff." *Id.* at 684.

In this case, MDx respectfully submits that the least severe sanction is for Health Grades and its counsel to each pay half of all the attorney's fees and costs incurred by MDx addressing

---

repeated warnings by MDx's counsel, deliberately released MDx confidential information to the public on numerous occasions by filing with the Court documents containing clearly confidential information without any restrictions. *See e.g.*, Dkt. ## 219, 252, 305, 404, and 516. (3) <u>False Discovery and Concealing Prior Art</u>: Health Grades signed a sworn interrogatory response, swearing it knew of no additional prior art to the '060 patent (Exhibit N, highlighting added), thus forcing MDx to the expense of tracking down the existence of **Health Grade's own prior art** (*see, e.g.,* Exhibit F) through third parties. Health Grades has forced other, needless expenses and burdens on MDx throughout this litigation, too many to identify here.

14

the allegations in the Rule 11 Papers.[3]  *See Jacobs*, 2011 U.S. Dist. LEXIS 112967, at 30 (awarding reasonable attorneys' fees); *see also Grynberg v. Ivanhoe Energy, Inc.*, 663 F. Supp. 2d 1022, 1027 (D. Colo. 2009) (same).  As the purpose of the Rule 11 Papers was in large part to drive up the fees and costs of Health Grades' smaller competitor MDx, reimbursement of all the MDx fees and costs is particularly appropriate here.

## VI.  CONCLUSION

For all the foregoing reasons, MDx respectfully requests that the Court impose sanctions, on Health Grades and its counsel, including reimbursement of all MDx's fees and costs, for these multiple violations of Federal Rule of Civil Procedure 11(b)(1), (2), and (3).

Dated:  April 24, 2013                                         Respectfully submitted,


     *s:/Scott D. Stimpson*
Scott D. Stimpson                                              Terence Ridley, Atty. No. 15212
Scott B. Murray                                                Wheeler Trigg O'Donnell LLP
David C. Lee                                                   370 Seventeenth Street, Suite 4500
Sills Cummis & Gross P.C.                                      Denver, Colorado 80202
30 Rockefeller Plaza                                           Tel:  (303) 244-1800
New York, New York 10112                                       Fax:   (303) 244-1879
Tel: (212) 643-7000                                            E-mail: ridley@wtotrial.com
Fax: (212) 643-6500
E-mail:sstimpson@sillscummis.com                               *Attorneys for Defendant*
E-mail:smurray@sillscummis.com                                 MDx Medical, Inc. d/b/a VITALS.COM
E-mail:dlee@sillscummis.com

---

[3] MDx will submit its attorneys' fees and costs upon receipt of the Court's order granting this motion for sanctions.

15

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2013, I electronically filed the foregoing MDX MEDICAL, INC.'S MOTION FOR RULE 11 SANCTIONS with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Jesus Manuel Vazquez, Jr.
  jvazquez@rothgerber.com, phenke@rothgerber.com

- Gregory B. Kanan
  gkanan@rothgerber.com, dgrooms@rothgerber.com

- Kris John Kostolansky
  kkosto@rothgerber.com, dgrooms@rothgerber.com

- Scott David Stimpson
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- Scott B. Murray
  smurray@sillscummis.com

- David Chunyi Lee
  dlee@sillscummis.com

- Terence M. Ridley
  ridley@wtotrial.com, norris@wtotrial.com

                                                *s:/Vincent M. Ferraro*