IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-00520-PAB-BNB

HEALTH GRADES, INC.,

Plaintiff,

v.

MDX MEDICAL, INC., d/b/a Vitals.com,

Defendant.

_____

# ORDER
_____

This matter arises on **MDx Medical, Inc.'s Motion for Sanctions Under Federal Rule of Civil Procedure 37 for Health Grade's Repeated Efforts to Conceal Its Prior Art** [Doc. # 425, filed 12/4/2012] (the "Motion for Sanctions"), which is DENIED.

MDx argues that Health Grades improperly "failed to produce critical information about its own prior art" in its discovery responses, Motion for Sanctions [Doc. # 425] at p. 3; stated in response to MDx's Interrogatory No. 2 that "Health Grades is currently not aware of any prior art, including any prior public use or sale," which MDx claims was "utterly false," id.; and produced two witnesses pursuant to Rule 30(b)(6)--Messrs. Dodge and Neal--whose testimony was "largely useless," who "basically did nothing to prepare" for their depositions, and who were "extremely uncooperative and evasive." Id. at pp. 7, 12, and 13. Based on this alleged misconduct, MDx requests extreme sanctions, including that the jury be instructed that Health Grades gave a false interrogatory response, failed to produce documents showing the details of its prior art, and failed to produce witnesses able to provide critical facts about the prior art, id. at

p. 16; the jury be instructed that it should infer that Health Grades' prior art "comprised all the elements of all the claims of the '060 patent," id.; and Health Grades be assessed MDx's reasonable expenses, including attorneys' fees, associated with the depositions of Messrs. Dodge and Neal.  Id.

Health Grades opposes the Motion for Sanctions.  First, it disputes that its answer to Interrogatory No. 2 is false or that it failed to disclose prior art.  Specifically, Health Grades argues that it "was not aware of any prior public use or sale of the claimed invention that qualifies as prior art and is still not aware of any prior public use or sale of the claimed invention that qualifies as prior art."  Response [Doc. # 473] at p. 7.  In addition, Health Grades argues that its Rule 30(b)(6) deponents "gave adequate, substantive and detailed responses to the vast majority of questions asked by MDx's counsel," id., but that the witnesses are "not expected to be clairvoyant, so as to divine [opposing counsel's] specific questions."  Id. (citing Arctic Cat, Inc. v. Injection Research Specialists, Inc., 210 F.R.D. 680, 686 (D. Minn. 2002)).

The Motion for Sanctions springs from a false premise--that MDx has demonstrated that Health Grades withheld known prior art.  The particular prior art allegedly withheld by Health Grades are (1) "[t]he critical 'Drucker Report'"; and (2) Product Development Plans ("PDPs"). Id. at pp. 2-3.

The PDPs were not withheld at all.  Health Grades produced 111 PDPs in December 2011, Exh. D [Doc. # 473-4]; produced additional PDPs totaling 824 pages in March and April 2012, Exh. E [Doc. # 473-5]; and produced still more documents, including but not limited to PDPs, on or before May 10, 2012, pursuant to my Order compelling discovery.  Order [Doc. # 192](requiring the production of responsive documents "no later than May 10, 2012"); Letter

[Doc. # 424-5] (evidencing production pursuant to the Order on May 9, 2012); Motion [Doc. # 425](acknowledging production of additional PDPs on May 9, 2012).

Nor has MDx established that either the Drucker Report or the PDPs are prior art. Apparently MDx claims, although it does not specify, that the Drucker Report and the PDPs are prior art disqualifying patentability under 35 U.S.C. §102(b), which provides:

> **§ 102. Conditions for patentability; novelty and loss of right to patent**
>
> A person shall be entitled to a patent unless--
> \* \* \*
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States. . . .

MDx provides no evidence that the PDPs were in public use or on sale more than one year prior to the date Health Grades applied for its patent. Nor has MDx provided evidence that the PDPs anticipate every claim of the '060 patent. Similarly, with respect to the Drucker Report, MDx argues only that "[i]t shows a public consumer URL, proving it was on the Public Health Grades website in mid-2005; it has patient ratings of Dr. Drucker; it has comparison ratings of healthcare provider hospitals; **and it has the other claimed elements as well**." Reply [Doc. # 495] at p. 2 (emphasis added). I am not prepared, on this sparse record, to say that the Drucker Report is prior art disqualifying patentability under § 102. Although the issue would be better raised in a motion for summary judgment with a fully developed evidentiary record, and MDx has filed motions seeking summary judgment in whole or in part on at least six occasions, it has not sought summary judgment based on § 102. Cf. MDx Medical, Inc.'s Motion for Summary Judgment [Doc. # 490](seeking summary judgment based on non-infringement but not

3

attempting to invalidate the patent in suit); MDx Medical, Inc.'s Motion for Partial Summary Judgment [Doc. # 378](seeking partial summary judgment on Health Grades' claims for lost profits and royalty rates but not attempting to invalidate the patent in suit); MDx Medical, Inc.'s Motion for Summary Judgment [Doc. # 370](seeking summary judgment on the issue of willful infringement but not attempting to invalidate the patent in suit); MDx Medical, Inc.'s Motion for Summary Judgment [Doc. # 367](seeking summary judgment based on non-infringement but not attempting to invalidate the patent in suit); MDx Medical, Inc.'s Second Motion for Partial Summary Judgment of Non-Infringement [Doc. # 195](seeking summary judgment based on non-infringement but not attempting to invalidate the patent in suit); and MDx Medical, Inc.'s Motion for Partial Summary Judgment [Doc. # 9](seeking summary judgment based on non-infringement but not attempting to invalidate the patent in suit).

MDx also seeks sanctions alleging that Health Grades failed to designate knowledgeable witnesses adequately prepared to testify under Rule 30(b)(6). In particular, MDx served a Rule 30(b)(6) deposition notice identifying the following sweeping matters for examination:

> 1. All facts surrounding each and every Health Grades product or service for providing information on healthcare providers prior to August 29, 2006, including but not limited to facts concerning dates of use, structure, operation, development, testing, sales, public access, and the accessing and compiling of all data used in each such product and/or service (such products and/or services include, but are not limited to, Health Grades' Physician Research Comparison Report, Physician Quality Report, and Physician Quality Guide).
>
> 2. Identification of each person who developed and/or tested one or more of the products and/or services addressed in topic 1.
>
> 3. Identification of all other prior art known to Health Grades, including but not limited to Health Grades' products and services sold and/or known to the public before August 29, 2006, and not

>   disclosed to the Patent & Trademark Office in connection with the
>   application that led to the '060 patent.

MDx Medical, Inc.'s Notice of Rule 30(b)(6) Deposition to Health Grades, Inc. [Doc. # 424-6] at p. 4.  Health Grades designated Allen Dodge to testify about the matters for examination specified in Topic 1, except for the information called for by the parenthetical, and designated John Neal to testify as to all remaining matters for examination.

MDx complains that Mr. Dodge was not able to identify the specific dates when Health Grades first implemented certain features in its products, beyond stating that implementation occurred in 2006.  It also complains that Mr. Dodge was not familiar with the Nursing Home Quality Comparison Reports, Physician Research Quality Reports, Comparative Physician Reports, or Premium Reports.

MDx also complains that Mr. Neal was not able to testify about specific information concerning the Physician Research Comparison Reports, Physician Quality Guide, or Physician Quality Reports, and was unable to state when the first product embodied by the claims of the '060 patent was launched beyond the "2006, 2007 timeframe."  Deposition of John Neal [Doc. # 425-7] at pp. 61-62.

Rule 30(b)(6), Fed. R. Civ. P., requires a noticing party to "describe with reasonable particularity the matters for examination."  This requirement was interpreted in <u>McBride v. Medicalodges, Inc.</u>, 250 F.R.D. 581, 584 (D. Kan. 2008), to require the following:

>   To allow Rule 30(b)(6) to effectively function, the requesting party
>   must take care to designate, with painstaking specificity, the
>   particular subject areas that are intended to be questioned, and that
>   are relevant to the issues in dispute.  The responding party must
>   make a conscientious, good-faith endeavor to designate the persons
>   having knowledge of the matters sought and to prepare those
>   persons in order that they can answer fully, completely, and in a

> non-evasive manner, the questions as to the relevant subject matters. Once notified as to the reasonably particularized areas of inquiry, the corporation then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable, and binding answers on behalf of the corporation.

(Quotations, citations, and notes omitted.)

Although an essential and useful discovery device, Rule 30(b)(6) presents unique challenges. As Professors Wright and Miller have described, prior to the advent of the rule:

> In some instances corporations were able to exploit their size and complexity to advantage by "bandying" their opponents with deposition witnesses who all disclaimed knowledge on the topics the adversary wanted to investigate. . . . [Rule 30(b)(6)] was designed to curb the "bandying" by which officers and managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it.
>
> \* \* \*
>
> Some contend that practice under Rule 30(b)(6) has on occasion imposed unfair burdens on responding parties. The starting point in assessing such claims is to compare the risks of "bandying," which Rule 30(b)(6) was designed to cure. When the rule was introduced, the Advisory Committee was aware of the burdens it could impose, but concluded that the burden is not essentially different from that of answering interrogatories under Rule 33, and is in any case lighter than that of an examining party ignorant of who in the corporation has knowledge.
>
> Thus Rule 30(b)(6) called on the courts to ensure that both sides are adhering to the rule's objective of fair access to corporate information and, at the same time, to guard against overreaching by the party seeking discovery and failure of the corporate party to satisfy its obligations under the rule.

8A Wright & Miller Federal Practice and Procedure §2103 at pp. 452-58 (internal quotation and note omitted).

Fault here lies with both parties. First, MDx employed sweeping matters for examination

and failed to "designate, with painstaking specificity, the particular subject areas that are intended to be questioned," McBride, 250 F.R.D. at 584, as the Rule requires.  In addition, by requiring that Health Grades designate a representative to testify about "products and/or services includ[ing] but not limited to" those specified in the parenthetical of Topic 1, MDx rendered the notice overbroad.  Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000)(finding that a Rule 30(b)(6) notice specifying areas of inquiry which "will include, but not be limited to," is overbroad and "subjects the noticed party to an impossible task").

On the other hand, Health Grades' designees, and particularly Mr. Neal, do not appear to have fully complied with the requirement to prepare themselves so that they could give complete, knowledgeable, and binding answers on behalf of the corporation.  McBride, 250 F.R.D. at 584.

On balance, however, I agree with Health Grades that Messrs. Dodge and Neal generally were knowledgeable and well informed in most areas of inquiry.  Response [Doc. # 473] at p. 17. As the court noted in QBE Ins. Corp v. Jorda Enterprises, Inc., 2012 WL 266431 at *13 (S.D. Fla. Jan. 30, 2012), "[a]bsolute perfection is not required of a 30(b)(6) witness.  The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation."

Importantly, if MDx believes that the Rule 30(b)(6) designees were inadequately prepared on important matters for examination, a better approach would have been to move to compel discovery rather than to seek evidentiary sanctions.  MDx's delay in seeking relief, combined with its decision to seek evidentiary sanctions at trial rather than an order compelling discovery, evidences the kind of "overreaching by the party seeking discovery" about which

Professors Wright and Miller warn.

IT IS ORDERED that the Motion for Sanctions [Doc. # 425] is DENIED.

Dated April 25, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge