**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S OPPOSITION TO
MDX MEDICAL, INC.'S MOTION TO COMPEL**

Plaintiff Health Grades, Inc. ("Health Grades"), by its undersigned counsel, respectfully submits its Opposition to MDX Medical, Inc.'s ("MDx") Motion to Compel (the "Motion") [Doc. # 575]:

## I. INTRODUCTION

Once again MDx files an improper motion, and once again the Court denies it, and once again MDx acknowledges the impropriety of its motion and, once again, MDx asks the Court for a second chance.

As discussed in detail below, MDx's Motion should be denied because: (1) it is untimely; (2) MDx fails to demonstrate good cause as required; (3) the information MDx purports to seek has already been provided and is in many instances irrelevant; and (4) the "portion" of Topic 1 that MDx proposes is still overbroad and subjects Health Grades to an impossible task, because it contains sweeping matters for examination and MDx failed to designate with painstaking specificity the particular subject areas that are intended to be questioned.

2004213851_1

**II.     ARGUMENT**

      **A.     There is No Good Cause to Allow MDx to Take a Third Rule 30(b)(6) Deposition Eleven Months After the Close of Fact Discovery**

The Motion is not timely. MDx took the Rule 30(b)(6) deposition of John Neal on June 13, 2012. Counsel for MDx neither moved to compel additional Rule 30(b)(6) testimony during the deposition, nor did MDx move to compel additional Rule 30(b)(6) testimony before the deadline for fact discovery expired on June 15, 2012 [Doc. # 162]. Nor did MDx move to compel additional Rule 30(b)(6) testimony for the following 11 months. Instead, MDx chose to aggressively move for overreaching trial sanctions six months after fact discovery closed. Only now that the Court has denied its motion for sanctions does MDx ask for another chance. But MDx chose to forego a motion to compel and to pursue trial sanctions instead – it offers no explanation for its delay and for this reason alone its Motion should be denied.

In its Motion MDx cites no support for its request to take another Rule 30(b)(6) deposition. Federal Rule of Civil Procedure 16(b)(4) applies given that MDx seeks to extend the fact discovery deadline. The "good cause" standard of Rule 16(b)(4) requires a movant to show that it could not meet a scheduled deadline despite diligent efforts. *James v. Fenske,* 2012 U.S. Dist. LEXIS 22663, at *5-6 (D. Colo. Feb. 23, 2012). The focus is on diligence. *Id.* "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Colo. Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000), (*quoting Dilmar Oil Co., Inc. v. Federated Mutual Ins. Co.*, 986 F. Supp. 959 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997)); *Ofiesh v. Western Stock Show Ass'n*, 2011 U.S. Dist. LEXIS 143230 (D. Colo. Dec.13, 2011)(same); *Cf. Handy v. Cummings*, 2012 U.S. Dist. LEXIS 48098, at *4

(D. Colo. Apr. 4, 2012) (illness and admission to hospital prior to close of fact discovery not good cause, where plaintiff had months of discovery period in which to attend to discovery). MDx offers no explanation for its failure to move to compel during the deposition, or during fact discovery, or even within some reasonable period after fact discovery closed. Presumably MDx decided a motion for sanctions would be more beneficial to its invalidity case than a motion to compel. However, making the wrong strategy decision does not give rise to good cause and a delay of 11 months is not diligent. MDx's request for leave to reopen fact discovery to allow another Rule 30(b)(6) deposition should be denied.

Where there has been a lack of diligence and no good cause, prejudice is irrelevant. *Demmer v. Fitzgibbons*, 2012 U.S. Dist. LEXIS 33857, 7-8 (D. Colo. Mar. 14, 2012). Such is the case here, where MDx has not been diligent and does not even attempt to argue good cause in support of its Motion.

### B. The Information MDx Seeks Has Already Been Provided

The Motion should also be denied because much of the information MDx claims to seek has already been provided to it. MDx's allegations regarding the Physician Research Comparison Report ("PRCR") are incorrect. MDx asserts that Mr. Neal was "unable to identify a date when [the PRCR] were made public." (Motion at p. 2.) This is not true. Mr. Neal testified that the PRCR was publicly available as of December 2004 as shown in Dep. Ex. 8. (Neal Dep. at 110:3-111:22 (Ex. A hereto).) Although Mr. Neal could not remember what differences there were, if any, the 2004 version and any earlier version, ultimately this is irrelevant because the 2004

- 3 -

report about which Mr. Neal testified is admittedly prior art.[1] It is not, however, invalidating prior art, as Mr. Neal testified that the PRCR *never* included the following information, which is required by *all* of the claims:[2]

- Information provided by physicians (Neal Dep. at 115:3-17; 117:17-118:6; 121:12-123:24) (Ex. A);
- Patient ratings (Neal Dep. at 95:10-96:5) (Ex. A); and
- Comparison ratings (Neal Dep. at 58:23-59:17; 96:13-97:13, 141:17-21) (Ex. A).

Mr. Neal also testified repeatedly that the only source of information for the physician comparison reports was third parties. (Neal Dep. at 115:3-17; 40:25-41:4; 44:14-24; 46:17-47:14; 116:7-25 (Ex. A).)

MDx also argues that Mr. Neal was "unable to identify testing" regarding the PRCR. This is irrelevant. As discussed above, the public version of these reports admittedly predates the §102(b) critical date *but* these reports did not include all of the required claim elements. Therefore there is no need to understand what features were tested before these reports were publicly launched.

MDx also argues that Mr. Neal was "unable to state when healthcare providers began providing information" for the PRCR. (Motion at p. 2.) This is also incorrect. Mr. Neal testified

---

[1] Any report that was publicly available before February 8, 2005 is prior art to the patent-in-suit. 35 U.S.C. §102(b).

[2] The claims require creation of a healthcare provider report (e.g. physician report) using three kinds of information: healthcare provider-verified, patient-provided (i.e. patient ratings), and third-party verified. They also require that the physician report include "comparison ratings of healthcare providers."

- 4 -

that the physician comparison reports *never* included information received from physicians. (Neal Dep. at 115:3-17; 117:17-118:6; 121:12-123:24 (Ex. A).) MDx argues disingenuously that Mr. Neal gave "no information on when comparison ratings were added to [the PRCR]." (Motion at p. 2.) This is also incorrect. Mr. Neal testified that these report *never* included comparison ratings. (Neal Dep. at 58:23-59:17; 96:13-97:13, 141:17-21(Ex. A).)

In sum, Mr. Neal provided most of the information MDx seeks regarding Physician Research Comparison Reports. MDx may not like his answers, but this does not justify another Rule 30(b)(6) deposition.

MDx's complaints about Mr. Neal's testimony regarding the Physician Quality Reports ("PQR") are similarly unfounded. MDx asserts that Mr. Neal did not know when comparison ratings were added to the Physician Quality Reports. This is incorrect. He testified that this happened in 2006 or 2007. (Neal Dep. at 61:17-62:20; 97:14-99:6 (Ex. A).) Anything that is dated after August 29, 2005 is *not* prior art under §102(b). (Health Grades' SJ Brief at p. 5 (¶5) [Doc. #369]; MDx SJ Opp. at p. 2 (¶5) [Doc. #407].) Therefore, whether the comparison ratings were added in 2006 or 2007 is irrelevant and does not justify another Rule 30(b)(6) deposition.

MDx also argues that Mr. Neal did not know when information from healthcare providers was added to the PQR. Again, this is incorrect. Mr. Neal testified that the PQR included information from physicians as of August 2, 2005. (Neal Dep. at 250:6-14; 251:21-25 (discussing Dep. Ex. 10) (Ex. A).)

Although Mr. Neal did not recall specific information about the Physician Quality Guides ("PQG"), Health Grades' other Rule 30(b)(6) designee, Allen Dodge, testified in detail about these reports, stating that they had similar substance to the PQR, but a different look and feel

- 5 -

because they were directed to employers versus consumers. (Dodge Dep. at p. 76:3-79:16; 88:24-90:17 (Ex. B hereto).) With respect to the PQG and consistent with Mr. Dodge, Mr. Neal testified he believed it was the same as the PQR. (Neal Dep. at p. 40:11-15 (Ex. A).)

Mr. Neal also testified regarding when patient ratings were added to the reports. (Neal Dep. at pp. 95:15-96:18; pp. 157:5-11 (Ex. B).) Mr. Neal testified that his recollection was "2006 to 2007," and requested that counsel for MDx show him documents that may help him answer more precisely. MDx did not serve a request for production of documents with its 30(b)(6) notice nor did it provide Mr. Neal with any documents at the deposition to help him answer more precisely. Counsel for MDx did not request additional Rule 30(b)(6) witnesses during the depositions of Mr. Dodge and Mr. Neal, and instead elected to wait over six months after the depositions and then file a motion for sanctions. This was an obvious ploy to use the alleged discovery deficiencies as a tool to seek judgment in MDx's favor on its invalidity defense.

Regardless, the Motion to Compel regarding the Physician Quality Guides should be denied because this report is peripheral to MDx's invalidity defense. Of the hundreds of thousands of pages of documents Health Grades produced in this case, MDx selected only one document relating to PQG for its trial exhibit list. (Def. Ex. A-40 (Dep. Ex. 23) [Doc. #369-13].) This document does not specify the content of the Physician Quality Guides or discuss any of the claim elements other than to state that the basic function of this report. Further, MDx's expert cited to the PQG only twice in his 40-page expert report on invalidity and only to prove that Health Grades' reports were made available over the Internet. (Cooper Invalidity Report at pp.

- 6 -

19 & 33 [Doc. #369-4].) As such, the information MDx purports to seek about the Physician Quality Guides is not relevant.

### C. The Information MDx Seeks is Not Relevant

To support its invalidity defense, MDx must prove by clear and convincing evidence that the prior art, either alone or in combination, teach all of the elements of the asserted claims. *See, e.g., Verdegaal Bros. v. Union Oil Co. of Cal.,* 814 F.2d 628, 631 (Fed. Cir. 1987). In this case, all of the asserted claims require "comparison ratings of healthcare providers," which means:

> ratings on multiple healthcare providers, **including the "first healthcare provider,"** in the report on that "first healthcare provider," thus permitting comparison of the "first healthcare provider" with other potential healthcare providers.

(Doc. #138, Markman Order at p. 24 (emphasis added).) The "first healthcare provider" is a person (e.g., physician), not an entity (e.g., hospital or nursing home). (*Id.* at p. 7 ("Defendant does not dispute that "first healthcare provider" refers to a person, rather than an entity . . . .).) Likewise, the "other potential healthcare providers" must be humans (i.e., not hospitals) because the purpose of having ratings on multiple providers is to permit comparison of the first healthcare provider, a human being, with other human healthcare providers. To suggest otherwise makes no sense – it would compare apples and oranges. Thus, the claims require comparison ratings of multiple (e.g. the first and other potential) human healthcare providers and MDx must prove that the feature was included in, or obvious based on the prior art.

The "prior art" at issue in this case comprises many different Health Grades' reports and services including "Health Grades Premium Reports, the Drucker reports, the Physician Quality Guides, the Physician Quality Reports, the Physician Research Comparison Reports, the

- 7 -

Comparative Physician Report, the Physician Quality Comparison Reports, the Nursing Home Comparison Reports, the Physician Online Services, Connecting Point, and the Physician New Marketing Media." (Cooper Invalidity Report at pp. 8 [Doc. #369-4].).) None of these references included the claimed "comparison ratings of healthcare providers." (Health Grades' Summary Judgment Reply at pp. 24-25 [Doc. #422].)  MDx has admitted that the three reports that are the subject of its motion to compel did *not* include comparison ratings of human healthcare providers. (*See* MDx's Summary Judgment Opp. at pp. 3-4 (¶¶16-17, & 22) [Doc. #407]; Health Grades' Summary Judgment Brief at pp. 8-9 (¶¶16-17 & 22) [Doc. #369].) As such, these three reports cannot cure a fundamental flaw in MDx's invalidity defense. These reports are not relevant and MDx's motion to compel further information about them should be denied.

### D. MDx's Revised Topic is Overbroad

On June 13, 2012, MDx deposed John Neal as one of Health Grades' Rule 30(b)(6) designees.[3] The Rule 30(b)(6) deposition notice identified the following "sweeping matters" for examination ([Doc. # 569] at p. 4.):

> 1. All facts surrounding each and every Health Grades product or service for providing information on healthcare providers prior to August 29, 2006, including but not limited to facts concerning dates of use, structure, operation, development, testing, sales, public access, and the accessing and compiling of all data used in each such product and/or service (such products and/or services include, but are not limited to, Health Grades' Physician Research Comparison Report, Physician Quality Report, and Physician Quality Guide).
>
> 2. Identification of each person who developed and/or tested one or more of the products and/or services addressed in topic 1.
>
> 3. Identification of all other prior art known to Health Grades, including but not

---

[3] The deposition commenced at 8:22 AM and concluded at 5:16 PM.

- 8 -

2004213851_1

> ==limited to== Health Grades' products and services sold and/or known to the public before August 29, 2006, and not disclosed to the Patent & Trademark Office in connection with the application that led to the '060 patent.

(MDx Medical, Inc.'s Notice of Rule 30(b)(6) Deposition at p. 4 (yellow emphasis added) [Doc. # 424-6].)

Health Grades designated Allen Dodge to testify about the matters for examination specified in Topic 1, except for the information within the parenthetical, and designated John Neal to testify regarding the information within the parenthetical and Topics 2 and 3. The information called for in the parenthetical in Topic 1 is modified by the language preceding it, which in *two* separate instances asks for information "including but not limited to" – first it asks for "all facts … including but not limited to facts …" Second it asks for testimony regarding "products and/or services includ[ing] but not limited to" those specified in the parenthetical of Topic 1.

As the Court noted when it denied MDx's motion for sanctions, MDx "employed sweeping matters for examination and failed to designate with painstaking specificity, the particular subject areas that are intended to be questioned." [Doc. # 569] at pp. 6-7. (internal quote and cite omitted). "In addition, by requiring that Health Grades designate a representative to testify about "products and/or services includ[ing] but not limited to" those specified in the parenthetical of Topic 1, MDx rendered the notice overbroad." [Doc. # 569] at p. 7. (citing *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) for rule that specifying areas of inquiry which "will include, but not be limited to," is overbroad and "subjects the noticed party to an impossible task"). The Court was correct – *and* MDx also required Health Grades to designate a representative to testify about "[a]ll facts" surrounding the three products and/or services in the

- 9 -

2004213851_1

parenthetical "including but not limited to facts concerning …" *See* Topic 1, *supra*, language highlighted in yellow. Thus, the notice was even more overbroad.

Despite MDx's "overbroad" notice and the "impossible task" that it subjected Health Grades to at the Rule 30(b)(6) depositions last June, the Court agreed that Mr. Neal (and Mr. Dodge) "generally were knowledgeable and well informed in most areas of inquiry." (citing *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 2012 WL 266431 at *13 (S. D. Fla. Jan. 30, 2012) for rule that "[a]bsolute perfection is not required of a 30(b)(6) witness. The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation"). While the Court did comment that Mr. Neal did "not appear to have fully complied with the requirement to prepare [himself] so that [he] could give complete, knowledgeable, and binding answers on behalf of the corporation," the Court went on to find "[o]n balance, however, I agree with Health Grades that Messrs. Dodge and Neal generally were knowledgeable and well informed in most areas of inquiry." [Doc. # 569] at p. 7.

Even the "portion" of Topic 1 that MDx proposes is overbroad and would again subject Health Grades to an impossible task. MDx states "[t]he portion of the 30(b)(6) deposition notice MDx now seeks to pursue is only this part of topic 1: "Prior to August 19, 2006. . . . **facts concerning** dates of use, structure, operation, development, testing, sales, public access, and the accessing and compiling of **all data used in** . . . Health Grades' Physician Research Comparison Report, Physician Quality Report and Physician Quality Guide." Motion at p. 2 (Emphasis added.) What specific "**facts** concerning . . . structure, operation, development, testing, sales, public access, and the accessing and compiling of **all data used in** …" are covered by this "portion" of Topic 1? The "portion" proposed by MDx suffers from the same flaws the Court

- 10 -

already noted – it contains "sweeping matters for examination and [MDx] failed to designate with painstaking specificity, the particular subject areas that are intended to be questioned."

## III. CONCLUSION

MDx's Motion should be denied because it is untimely and MDx has failed to demonstrate good cause to reopen fact discovery and take another Rule 30(b)(6) deposition. Additionally, MDx mischaracterizes Mr. Neal's testimony and it already has the information it purports to seek, and much of it is irrelevant. Furthermore, the proposed "portion" of Topic 1 is still flawed because it contains sweeping matters for examination and MDx failed to designate with painstaking specificity the particular subject areas that are intended to be questioned.

Respectfully submitted this 22nd day of May, 2013.

ROTHGERBER JOHNSON & LYONS LLP

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 623-9000
Fax: (303) 623-9222
Email: gkanan@rothgerber.com
　　　　kkosto@rothgerber.com
　　　　jvazquez@rothgerber.com

*Attorneys for Health Grades, Inc.*

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2013, I electronically filed the foregoing **HEALTH GRADES, INC.'S OPPOSITION TO MDX MEDICAL, INC.'S MOTION TO COMPEL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Scott David Stimpson | Terence M. Ridley |
| Scott Murray | Wheeler Trigg O'Donnell, LLP |
| David Chunyi Lee | 1801 California Street, #3600 |
| Sills Cummis & Gross P.C. – New York | Denver, CO 80202-2617 |
| 30 Rockefeller Plaza | Email: ridley@wtotrial.com |
| New York, NY 10112 | |
| Email: sstimpson@sillscummis.com | |
| Email: smurray@sillscummis.com | |
| Email: dlee@sillscummis.com | |

*s/ Jesús M. Vázquez*
Jesús M. Vázquez, Jr., Esq.

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

- 12 -

2004213851_1