# EXHIBIT A

(Redacted version of Dkt. # 589)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,
v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES OPPOSITION TO MDX'S MOTION FOR RULE 11 SANCTIONS**

Plaintiff Health Grades, Inc. ("Health Grades") submits its Opposition to MDx Medical, Inc.'s ("MDx") Motion for Rule 11 Sanctions ("Rule 11 Motion") [Doc. #564].

## I. INTRODUCTION

In what has become a continuing pattern of vexatious litigation by intimidation, MDx moves for sanctions against Health Grades and its counsel, arguing that the indirect infringement claims are factually and legally unsupported. The claims, however, are supported by both the facts and the law, as discussed in Health Grades' Motion for Leave to File its First Amended Complaint [Doc. #252] ("Motion to Amend") and as demonstrated in Health Grades' Opposition [Doc. #525] (the "SJ Opp.") to MDx's pending Motion for Summary Judgment of No Infringement with Regard to Amended Complaint [Doc. #490].

MDx's Motion improperly attempts to "intimidate [Health Grades] into withdrawing claims that are fairly debatable," to "test the legal sufficiency or efficacy of allegations in the pleadings," and "to emphasize the merits of [MDx's] position." *See* Advisory Committee Notes, Fed. R. Civ. P. 11 (1993). Indeed, MDx presumptuously files its motion *before* this Court has

ruled on the underlying summary judgment motion. Rule 11 motions should not be made or threatened for these purposes. *Id*. The request for sanctions should be summarily denied.

## II.     ARGUMENT

### A.     Asserting the Indirect Infringement Claims Was Objectively Reasonable

An attorney's actions must be objectively reasonable to comply with Rule 11. *White v. General Motors Corp., Inc.*, 908 F.2d 675, 680 (10th Cir. 1990). The standard is "reasonableness under the circumstances" and courts "must resist an interpretation of Rule 11 that would blur the roles of attorneys and finders of fact." *Bridge Publ'ns, Inc., v. F.A.C.T.NET, Inc*., 183 F.R.D. 254, 263 (D. Colo. 1998) (internal citations omitted) (Kane, J.) (denying Rule 11 motion and finding no showing that defenses were asserted for improper purpose and a competent attorney could have formed a reasonable belief that the defenses had support and were warranted by existing law or a nonfrivolous argument for the extension or modification of existing law.)

"Courts ought to be very sure that something sanctionable has occurred before such enormous authority such as a monetary penalty is ordered" and "illiberal use of the sanction might discourage the zealous advocacy of difficult cases." *EEOC v. Original Honey Baked Ham Co. of Ga., Inc*., No. 11-cv-02560-MSK-MEH, 2013 WL 752912, at *2 (D. Colo. Feb. 27, 2013) (citations omitted). A review of the circumstances in this case shows that Health Grades' counsel acted reasonably under the circumstances in asserting the new indirect infringement claims.

On July 25, 2011, Health Grades requested that MDx produce all license agreements and documents related to MDx's sale of, or any third-party's use of, MDx's physician database. (Health Grades Requests for Production of Documents at p. 11 (RFP Nos. 2(j), (k), & (l) & 4) [Doc. #252-4].) MDx refused to produce any license agreements. On January 24, 2012, Health

2

Grades moved to compel production of these agreements and related information. [Doc. #126].

In early March 2012, while Health Grades' motion to compel was pending, Aetna announced that it had entered into a partnership with MDx to license MDx's database for use in Aetna's iTriage application. (SJ Opp. at p. 6 [Doc. #252].) Given MDx's refusal to produce any information regarding its license agreements, Health Grades promptly served subpoenas on Aetna seeking this information. MDx moved to quash the subpoenas. [Doc. #179].

On April 26, 2012, the Court granted Health Grades' motion to compel the license agreements and related information and ordered MDx to produce the documents by May 10, 2012. (Order at ¶6 [Doc. #192].) The Court consequently granted MDx's motion to quash, but warned "[t]he issue of the propriety of third party discovery concerning damages, including licensing revenues, may be raised again if discovery from MDx is inadequate." (*Id.* at ¶1(e).)

MDx did not produce *any* license agreements with Aetna on May 10, 2012, and did not seek an extension of time to comply with the Court's Order. On June 6, 2012, literally on the eve of MDx's corporate deposition in New York, MDx produced some, *but not all,* of its agreements with Aetna, along with 21 other database license agreements. (Motion to Amend at p. 8 [Doc. #252].) MDx finally produced the remaining agreements **on May 8, 2013**.

Despite MDx's efforts to block discovery relating to iTriage, Health Grades has more than enough evidence to show that its indirect infringement claims are objectively reasonable. Before it filed the Motion to Amend, Health Grades' counsel interpreted the claims of the '060 patent and compared them with the iTriage product. Although a claim chart is not required to support a

3

complaint for patent infringement[1], Health Grades carefully prepared a ***detailed, 111 page claim chart***. (Ex. 2 to Motion to Amend [Doc. #253-2].) Further, Health Grades' expert, Dr. Greenspun, reviewed and approved this claim chart and concluded there is indirect infringement in this case. (Greenspun Report at pp. 74-70 [Doc. #292-1].) The claim chart and supporting expert report leave no doubt that Health Grades did indeed "stop and think" before asserting the new claims.[2]

### B. Rule 11 Should Not Be Used as a Hardball Litigation Tactic

Rule 11 sanctions are appropriate *only* where the claim asserted as the basis for sanctions is frivolous, legally unreasonable, or without factual foundation. *Hughes v. City of Fort Collins*, 926 F.2d 986, 989 (10th Cir. Colo. 1991) (affirming denial of sanctions against plaintiff). "The word 'frivolous' does not appear anywhere in the text of the Rule; rather, it is a shorthand that this court has used to denote a filing that is both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1991).

Courts have long expressed concern about "[t]he growing tendency to extend the Rule beyond its text and intent" and "the noticeable increase in unjustified requests for sanctions." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987). "The Rule is being perverted when used as a tool for harassment rather than as an instrument to prevent abuse." *Id.* The *Gaiardo* court condemned use of Rule 11 "as an additional tactic of intimidation and harassment [that] has become part of so-called 'hardball' litigation techniques espoused by some firms and their clients." *Id.* at 485. "Those practitioners are cautioned that they invite retribution from courts

---

[1] *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2004).
[2] MDx's discovery objections detailed herein prevented Health Grades from having an opportunity to depose iTriage during discovery. However, iTriage, LLC. is based in Colorado and is subject to subpoena power of this Court. Further, both parties have indicated that they will call a witness from iTriage to testify at trial. (Pretrial Order at pp. 53 & 56 [Doc. #544].)

4

2004208255_1

which are far from enchanted with such abusive conduct." *Id.*

For example, in *Rich v. TASER Int'l, Inc.*, defendant moved for Rule 11 sanctions arguing that plaintiff did not have any evidence of causation for their negligence claim. No. 2:09-cv-02450-ECR-RJJ, 2012 U.S. Dist. LEXIS 107927, at *5 (D. Nev. Aug. 2, 2012) (internal citations omitted). The court found the motion was unjustified because:

> TASER's Motion for Sanctions . . . is composed almost entirely of arguments that Plaintiffs have not produced evidence of essential elements of their claims - **arguments that have already been made in TASER's Motion for Summary Judgment** and Motion in Limine to exclude the testimony of Dr. Douglas Zipes. . . . Rule 11 motion is not a proper vehicle for arguing the merits of a case or refuting the testimony of an expert witness - "other motions are available for those purposes." TASER's Motion for Sanctions is completely without merit and quite probably, in this Court's estimation, brought for an improper purpose.

*Id.* at *9-10 (emphasis added).

Likewise in this case, several factors demonstrate that MDx's Rule 11 Motion was brought for an improper purpose. First, MDx makes the same arguments it already made in its pending summary judgment motion [Doc. #490]. Additionally, much of the Rule 11 Motion is devoted to arguing MDx's theory of the case, e.g., that the patent claims are invalid based on Health Grades' so-called prior art (Motion at pp. 5-7), the claims are narrow and impossible to infringe *(id.* at pp. 7-8), the doctrine of equivalents is barred (*id.* at pp. 11-12), and Health Grades is a bully who is picking on the smaller MDx (*id.* at p. 2 ("Driven by its anger over losing business in its hometown to MDx") & p. 13 (Health Grades asserted indirect infringement to "drive up the litigation expenses of its smaller competitor, MDx")). As the Advisory Committee makes perfectly clear, a motion for sanctions is not the proper mechanism for a party to conduct an inquiry as to the strength of its theory or the merits of its case.

The impropriety of MDx's Rule 11 Motion is further supported by MDx's other misdeeds

5

in this litigation, all in the name of "aggressively representing" MDx's interests.[3] MDx is seeking sanctions because (it argues) there is no support for indirect infringement, *but MDx has aggressively blocked all Health Grades' attempts to discover information to support these claims*. Further, MDx has shown a pattern of testing the Court's tolerance for unsupported positions and overbroad requests for relief. Last Fall, the Court spent "hours and hours and hours and hours reviewing hundreds and hundreds and hundreds of pages thinking maybe there's a trade secret here …." after MDx moved to restrict voluminous documents. [Doc. #290 at p. 22.] MDx represented the documents contained trade secrets that warranted the sweeping restrictions they requested. This was not true. After the adverse ruling, MDx lead counsel acknowledged the impropriety of the sweeping request, but also petitioned for another chance. The Court indulged the request, but quite appropriately asked: "But why do you get a redo? Why do you get to put me through hours and hours of work like that only now to come back and say, well, let us try again and be reasonable this time?" *Id*. at pp. 22-23.[4] The same scenario is playing out in connection with the Court's recent Order denying MDx's first motion for sanctions. (Order [Doc. #569].) That Order was followed by another acknowledgment by MDx of the impropriety of its motion, and another motion to let them try again. (Motion to Compel [Doc. #575].)

The impropriety of MDx's Rule 11 Motion is also supported by MDx counsel's history of inappropriate, aggressive, and improper conduct that has resulted in sanctions in other cases.

---

[3]   MDx counsel advertises itself as a "regional POWERHOUSE **AGGRESSIVELY REPRESENTING** the interests of our national and international clients . . . ." (www.sillscummis.com (last visited on May 19, 2013) (emphasis added) (Ex. A hereto).)

[4]   More recently, MDx again sought to restrict documents with no basis. [Doc. # 576 at p.3] ("I have been unable to identify anything in the brief which reasonably may be considered a trade secret entitled to restriction from public view, and MDx has intentionally failed in the Motion to provide any guidance in that regard.").

6

*See, e.g., THK Am., Inc., v. NSK Co., Ltd.*, 157 F.R.D. 637, 643, 647, 651 (N.D. Illinois 1993) (finding Mr. Stimpson and his client had acted in "bad faith," displayed "egregious and contemptuous conduct" and engaged in "discovery misconduct" by over-designating documents as "Attorneys Eyes Only," which the court said was a "deliberate and calculated disregard" of its discovery orders); *see also Boehringer Ingelheim Animal Health, Inc. v. IMMTECH Biologics, Inc.*, 1998 WL 513007, at *2 (D. Kan. July 16, 1998) (assessing sanctions, including fees and an adverse jury instruction, against Mr. Stimpson's client for failing to comply with discovery orders and acting in "bad faith" by misuse of the "Attorneys Eyes Only" designation). MDx counsel's penchant for filing motions for sanctions and other overreaching relief while at the same time engaging in misconduct has resulted in unnecessary litigation and waste of the Court's resources. This Court should not condone such conduct.

### C. Health Grades' Contributory Infringement Claim is Not Frivolous

Contributory infringement requires a showing that the component sold by MDx is not suitable for substantial non-infringing use. 35 U.S.C. § 271(c). MDx argues there is no support for the absence of substantial non-infringing uses because: "MDx is simply *leasing data* to Aetna Life." (Motion at p. 5 (emphasis in original).) Not true. MDx is doing much more than leasing data – it built a *custom database* specifically for use in the infringing iTriage products ("the iTriage Database"). (MDx-Aetna Agreement at p. 7 [Doc. #486-1].) Further, the iTriage Database is built from an extract of MDx's *proprietary* database. (*Id.*) MDx also manages and maintains (i.e., updates) the iTriage database. (*Id.*) Aetna would not have agreed to pay MDx REDACTED for this custom database if it was just public data on healthcare providers as MDx suggests. (*Id.* at p. 3.) Not only is this enough evidence to defeat MDX's Rule 11 Motion, it is enough to permit a

7

2004208255_1

reasonable jury to find that MDx is liable for contributory infringement. *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001) (reversing JMOL of no contributory infringement because plaintiff put on evidence that defendant's infringing device was "specifically manufactured" to be used for the claimed liposuction application and defendant did not put on evidence of any *actual* use of the accused device for other types of surgery.)

MDx argues that the data is "simply data on healthcare providers" and that there are "nearly infinite ways this data can be used" without infringing the '060 patent claims. (Motion at p. 7.) However, Health Grades' contributory infringement claim is based on MDx's sale of the iTriage Database – not individual data elements from MDx's database. Health Grades' infringement claim chart made this abundantly clear:

> MDx indirectly infringes by developing, maintaining, and managing **the full database used by the iTriage App**. . . . Without this information, iTriage would not be able to display the information in the application.

[Doc. #253-2 at p. 1 (emphasis added).] When determining whether an accused product has a substantial non-infringing use, it is the thing actually sold by the defendant, not some ingredient or portion thereof that matters. *Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1578 (Fed. Cir. 1987); *see also Aquatex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1383 (Fed. Cir. 2005).

In *Hodosh*, the patent covered a method of desensitizing teeth with potassium nitrate. *Hodish*, 833 F.2d at 1576. The accused infringer sold toothpaste and the Federal Circuit rejected the defendant's attempt to limit the inquiry to one ingredient of that toothpaste:

> Neither party here "sells" potassium nitrate, and Block's attempted limitation of the staple/nonstaple inquiry to that mere ingredient would eliminate the § 271(c)-mandated inquiries relating to whether what was actually sold was a material part of the invention and whether the seller knew that what was actually sold was especially made or adapted for use in infringement of the patent.

8

*Id.* at 1578. Similarly in this case, the question of whether there are substantial non-infringing uses *must* focus on what MDx actually sells to Aetna, namely the full iTriage database. However, none of the specific examples of allegedly non-infringing use identified by MDx's Rule 11 Motion relate to the *full* iTriage Database, thus none of these examples support MDx's argument that Health Grades' claim is frivolous. For example, MDx argues that "Health Grades itself was using *similar healthcare provider data* for years in the prior art . . . ." (Motion at 6.) Not true. Unlike iTriage, none of the prior art reports included star ratings for physicians, among other things. (Health Grades' Motion for Summary Judgment at pp. 19-22 [Doc. #369].) Thus, these reports did not use the same database that MDx sold to Aetna and they do not support MDx's Rule 11 Motion.

As another example, MDx argues that the iTriage database does not have patient ratings for all physicians. (Motion at p. 7.) In other words, a portion of the data in the database does not infringe. This is irrelevant. iTriage has patient ratings for many doctors. MDx cannot avoid liability by focusing on the doctors with no associated ratings because MDx sells *the full database* to Aetna and *the full database includes patient ratings for many physicians*.

In sum, contrary to MDx's representations, there are not infinite, non-infringing ways to use the full iTriage database. Indeed, the *full* iTriage Database has no non-infringing uses because it includes *all* of the required types of data specified in the '060 patent claims including comparison ratings (e.g., star ratings). (SJ Opp. at pp. 8-11 & 29 [Doc. #525]; MDx-Aetna Agreement at p. 14 [Doc. #486-1]; Comparison of Data Elements in '060 Patent Claims with Aetna's Custom Data Extract [Doc. #525-24].)

Further, MDx has not identified any actual non-infringing use of the full iTriage database,

9

but even if it had, such actual use would have to be "qualitatively significant . . . before [MDx could] be fully absolved from contributory infringement liability. . . . Whether a use is 'substantial' or not depends on how likely and often the use will occur." *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1300, 1311 (M.D. Fla. 2006). This issue inherently involves factual issues and is not one that should be raised in connection with a Rule 11 Motion. *See, e.g., Ross v. Mukasey*, No. 08-cv-00643-PAB-MJW, 2009 U.S. Dist. LEXIS 130020 (D. Colo. Nov. 24, 2009) ("Rule 11 lacks a framework under which factual issues may be settled.")

### D.    Health Grades' Inducing Infringement Claim is Not Frivolous

MDx argues that Health Grades has no factual support for its inducing infringement claim because MDx's contract for the sale of the iTriage database is with Aetna Life, but iTriage LLC is a subsidiary of Aetna Health Holdings (which is a sister company to Aetna Life). (Motion at p. 9.) This is just clever lawyering that highlights a distinction without a difference. Health Grades is suing MDx, not Aetna or any of its subsidiaries. While indirect infringement requires a showing of direct infringement, it does not require Health Grades to plead or prove the identity of the direct infringer. *R+L Carriers, Inc. v. DriverTech LLC*, 681 F.3d 1323, 1336 (Fed. Cir. 2012). Indeed, the Federal Circuit has upheld claims of indirect infringement premised on evidence of direct infringement by unknown parties. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009) ("[T]he jury in the present case could have reasonably concluded that . . . more likely than not one person somewhere in the United States had performed the claimed method using the Microsoft products.").

In any event, Health Grades' Claim Chart filed with its Motion to Amend alleged that Aetna, Inc. is a direct infringer. (Doc. #253-2 at p. 1 ("Aetna Inc.'s ("Aetna") iTriage mobile

10

application . . . directly infringes this claim . . . ").) Further, as shown in the diagram attached as Exhibit B hereto, these Aetna subsidiaries are all connected to the iTriage products: Aetna, Inc. owns Aetna Life Ins. Co. and Aetna Health Holdings, which owns iTriage, LLC.[5] MDx's contract with Aetna Life agrees to provide a custom extract from the MDx Master Database *specifically for the iTriage mobile application and iTriage website*. [Doc. #486 at p. 7.] Aetna Life agreed to pay MDx REDACTED for this work. (*Id.* at p. 3.) The custom database that Aetna Life purchased from MDx "powers" the iTriage products. (*Id.* at p. 8.) Moreover, Aetna, Inc. actively markets and promotes iTriage.[6] In sum, MDx's "you have the wrong party" argument is disingenuous, and its argument that Health Grades has presented nothing about the relationship between iTriage and Aetna Life is flat wrong.

MDx further argues that Health Grades has no evidence of inducement. Not true. (SJ Opp. at pp. 11-12 & 26-29 [Doc. #525].) Although the PowerPoint Health Grades cited predates the issuance of the '060 patent, it permits an inference that MDx has continued to instruct Aetna on how to infringe since the patent issued, particularly because MDx built the iTriage database *after* the '060 patent issued and iTriage has the same features and functionality as MDx's accused vitals.com website. *See MetLife Bank, N.A. v. Badostain*, No. 1:10-CV-118-CWD, 2010 U.S. Dist. LEXIS 138261, at *17-18 (D. Idaho Dec. 30, 2010) ("For the purposes of Rule 11, 'circumstantial evidence,' and the reasonable inferences drawn from that evidence, are treated as 'evidentiary support.'").

---

[5] http://www.sec.gov/Archives/edgar/data/1122304/000112230413000037/ex21_1.htm (Ex. C hereto).

[6] *See, e.g.,* http://www.aetna.com/about-aetna-insurance/sas/power-of-health.html (Ex. D hereto); http://newshub.aetna.com/press-release/member-and-consumer-health/aetna-helps-millions-consumers-connect-fragmented-health-ca (Ex. E hereto).

11

E.     **Health Grades' Claim that iTriage Directly Infringes is Not Frivolous**

MDx argues that certain claims[7] require the patient ratings to come from iTriage and iTriage uses patient ratings from www.vitals.com. (Motion at p. 11.) This argument fails because it relies on an incorrect claim construction and improperly focuses *only* on the ratings from vitals.com. The relevant claim language from claim 1 states:

> receiving, by a Web server computer of *a company* providing *a service for connecting healthcare providers with the potential patients*, a request for information regarding a first healthcare provider . . . ;
> . . . .
> compiling . . . patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey **completed on** *a company Web site* **by the one or more past or current patients of the first healthcare provider, and wherein** *the company Web site* *is managed by* *the company* *providing* *the service for connecting healthcare providers with the potential patients* . . . .

(Doc. #253-4 at pp. 1 & 23-24 (emphasis added).) This language specifies *who* manages the survey website (i.e., "the" company that provides "the" service), not *where* (i.e., what website) the survey must be located. Indeed, as shown above in yellow, the survey may be completed on any website so long as it is managed by "the company that provides the service" for connecting physicians with potential patients.

Using this claim interpretation, there is evidence of direct infringement that is sufficient to support a claim of indirect infringement. Aetna (who makes the iTriage products) has, or will have, a website to collect patient ratings. (SJ Opp. at pp. 11-12 & 28 [Doc. #525].) Further, the MDx-Aetna Agreement contemplates that iTriage will include patient ratings from MDx *and* Aetna. (MDx-Aetna Contract at p. 9 [Doc. #486-1].) Thus, there is evidence to show that (1) same

---

[7]    This argument does not apply to claims 15-16. (Motion at pp. 10-12 (referring to nine of the eleven claims having this language); SJ Opp. at pp. 15-18 & Ex. 20 [Doc. #525-22].)

12

company that makes iTriage also manages a website with a patient experience survey; and (2) the ratings received from this survey will be used in iTriage. As such, Health Grades' direct infringement allegations relating to iTriage are not frivolous.

Additionally, iTriage compiles patient ratings received from a website (vitals.com) that is managed by MDx. This evidence also supports indirect infringement. The Federal Circuit's new law (set forth in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1305 (Fed. Cir. 2012) (*en banc*)) allows Health Grades to prove direct infringement *for purposes of indirect infringement* that is divided between two companies (i.e., Aetna and MDx). Prior to *Akamai*, indirect infringement of a method claim required proof that the defendant induced a single entity to practice all of the steps of the method claim. This rule created a loophole for defendants – they could avoid liability by practicing some of the method steps themselves. The Federal Circuit eliminated this loophole because:

> a party who performs some of the steps itself and induces another to perform the remaining steps that constitute infringement has precisely the same impact on the patentee as a party who induces a single person to carry out all of the steps. It would be a bizarre result to hold someone liable for inducing another to perform all of the steps of a method claim but to hold harmless one who goes further by actually performing some of the steps himself. **The party who actually participates in performing the infringing method is, if anything, more culpable than one who does not perform any steps.**

*Id.* at 1309 (emphasis added). In this case, MDx has induced Aetna to perform all of the steps of claim 1 *except for part of one element*, namely managing the website with the patient survey. MDx should not be able to avoid liability for indirect infringement merely because it performs this claim limitation itself. Such would be contrary to the policies set forth in *Akamai*.

Nevertheless, MDx argues that *Akamai* does not apply because the literal language of claim 1 requires that the *same* company receive the request for information about a physician and

13

manage the website with the on-line survey. MDx bases this argument on the fact that the antecedent basis for "**the** company providing **the** service . . . ." is found in the first element of claim 1 (see turquoise and purple highlighting in claim 1 above). However, the mere use of a term with an antecedent does not require that both terms be construed to be the same thing. *See Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008). *Akamai* did not expressly address this issue and it is too new for other courts to have weighed in on what *Akamai* means. However, it is reasonable to argue that the divided infringement rule of *Akamai* applies to claim elements that are tied together by antecedent basis because the rationale for the *Akamai* rule applies equally to such claim elements. That is, a defendant should not be allowed to escape liability merely because it practices one claim element, regardless of whether that claim element is tied to another by antecedent basis or not.

Finally, MDx relies heavily on *Raylon v. Complus Data Innovations, Inc.* to support its Motion. 700 F.3d 1361 (Fed. Cir. 2012). This case is inapposite. In *Raylon,* the patent related to a hand-held ticket issuing system that contained a display screen that "is pivotally mounted on the housing for displaying data entered into the input assembly." *Id.* at 1364; *see also* excerpts from *Raylon* patent (Ex. F hereto). The asserted claims specifically required "a **display** . . . **being pivotally mounted on said housing** . . . ." *Id.* (emphasis added). The screens in the accused devices were mounted in a fixed position. (Ex. F.) Nevertheless, the patentee argued that a fixed display meets the "pivotally mounted on said housing" limitation when the user pivots the device by moving his wrist. The district court granted summary judgment for defendants, but denied their Rule 11 motion. The Federal Circuit reversed the Rule 11 decision and found sanctions were appropriate because Raylon's argument was contrary to the claims and the specification.

14

2004208255_1

The *Raylon* case is necessarily limited to its facts, which differ significantly from the facts in this case. As discussed above, Health Grades' new claims do *not* rely on an unreasonable claim interpretation. Indeed, the first argument assumes that MDx's claim interpretation is correct – that the patient ratings must come from iTriage (or at least Aetna) – and relies on evidence that shows patient ratings do come from Aetna. The second argument relates to a theory of divided infringement under *Akamai*. Thus, *Raylon* does not support MDx's Rule 11 motion.

Finally, MDx argues that Health Grades doctrine of equivalents arguments are barred by prosecution history estoppel and the all elements rule. Not true. (SJ Opp. at pp. 19-21 [Doc. #525].) Further, these involve disputed issues of fact that are not properly raised in connection with Rule 11. *See, e.g., Ross*, 2009 U.S. Dist. LEXIS 130020 at *4.

### III. CONCLUSION

For the reasons stated above, MDx's Motion for Rule 11 Sanctions should be denied. Health Grades requests the Court enter an order awarding Health Grades its reasonable expenses, including attorneys' fees, under Rule 11(c)(2).

Dated: May 20, 2013          ROTHGERBER JOHNSON & LYONS LLP

*s/ Jesús M. Vazquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 623-9000
Email: gkanan@rothgerber.com
        kkosto@rothgerber.com
        jvazquez@rothgerber.com
*Attorneys for Plaintiff Health Grades, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2013, I electronically filed the foregoing **HEALTH GRADES, INC.'S OPPOSITION TO MDX'S MOTION FOR RULE 11 SANCTIONS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Scott Murray
David Chunyi Lee
Sills Cummis & Gross P.C.-New York
30 Rockefeller Plaza
New York, NY 10112
Email: sstimpson@sillscummis.com
Email: smurray@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO 80202-2617
Email: ridley@wtotrial.com

*s/ Jesús M. Vazquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@rothgerber.com
           kkostolansky@rothgerber.com
           jvazquez@rothgerber.com
*Attorneys for Plaintiff Health Grades, Inc.*