IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S MOTION TO BIFURCATE TRIAL
ON THE ISSUE OF INEQUITABLE CONDUCT**

---

Plaintiff Health Grades, Inc. ("Health Grades") moves to bifurcate the trial as to Defendant MDx Medical, Inc.'s ("MDx") affirmative defense of inequitable conduct and for a separate bench trial on this issue, if necessary, after the jury trial on all other issues is completed.

## I.   INTRODUCTION

The Federal Circuit recently changed the law to make it much more difficult to prove inequitable conduct because this defense is an "absolute plague" on the courts and the entire patent system:

> [T]he remedy for inequitable conduct is the "atomic bomb" of patent law. Unlike validity defenses, which are claim specific, see 35 U.S.C. § 288, inequitable conduct regarding any single claim renders the entire patent unenforceable. . . .
>
> With these far-reaching consequences, it is no wonder that charging inequitable conduct has become a common litigation tactic. One study estimated that eighty percent of patent infringement cases included allegations of inequitable conduct. Inequitable conduct "has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system." "[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests

> adequately, perhaps." . . .
>
> While honesty at the PTO is essential, low standards for intent and materiality have inadvertently led to many unintended consequences, among them, increased adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality. **This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public.**

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288-1291 (Fed. Cir. 2011) (emphasis added) (citations omitted).

In this case, MDx asserts that the inventors of Health Grades' U.S. Patent No. 7,752,060 ("the '060 patent") failed to disclose certain Health Grades reports to the Patent Office during the prosecution of the '060 patent and this non-disclosure constitutes inequitable conduct. This defense requires, and has always required, proof *by clear and convincing evidence* that there was intent to deceive the Patent Office.[1] However, MDx's only evidence of intent is the mere fact that these reports were not disclosed, which is not sufficient as a matter of law.[2] For this reason and others, Health Grades has moved for summary judgment of no inequitable conduct. [Doc. #369.] If MDx's inequitable conduct claim survives summary judgment, it should be tried separately, if necessary, after the jury reaches a decision on infringement, validity, and damages.[3]

---

[1]  *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290 (Fed. Cir. 2012) (citing *Therasense*, 649 F.3d at 1287); *see also Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 876 (Fed. Cir. 1988) (noting "a finding that particular conduct amounts to 'gross negligence' does not of itself justify an inference of intent to deceive"); *see also Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1354 (Fed. Cir. 2008) ("Mistake or negligence, even gross negligence, does not support a ruling of inequitable conduct."); *see also Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1181 (Fed. Cir. 1995) ("[T]he alleged conduct must not amount merely to the improper performance of, or omission of, an act one ought to have performed.").

[2]  *Therasense*, 649 F.3d at 1291.

[3]  If Health Grades' summary judgment motion is granted, this motion will be moot.

2

"Claims of . . . inequitable conduct . . . are ***often*** the subject of bifurcated bench trials held either before or following a jury trial addressing the legal issues associated with a typical infringement claim, including infringement and patent invalidity." *Piersons v. Quality Archery Designs, Inc.*, No., 2009 U.S. Dist. LEXIS 131352, at *125 n. 14 (N.D.N.Y Feb. 26, 2009) (emphasis added) (citing *Applera Corp.*, 204 F. Supp. 2d 737, 729).[4] Indeed, there are many reasons to bifurcate a trial on inequitable conduct. It is an equitable issue to be decided by the Court that is easily separated from the legal issues of infringement, validity, and damages.

---

[4] *See, e.g., 1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1371 (Fed. Cir. 2012) (district court bifurcated trial on inequitable conduct); *Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C.*, 631 F.3d 1367, 1369 (Fed. Cir. 2011) (district court bifurcated trial on inequitable conduct); *Nat'l Oilwell Varco, L.P. v. Pason Sys. USA Corp.*, No. 346 Fed. Appx. 582, 582 (Fed. Cir. 2009) ("The district court bifurcated the inequitable conduct issues and held a jury trial on infringement and invalidity."); *Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1344 (Fed. Cir. 2008) ("The two cases were consolidated and then bifurcated, with infringement and Datascope's affirmative defense of obviousness to be tried to a jury first and Datascope's affirmative defenses of inequitable conduct and unclean hands as to the '704 patent to be determined by the court after a later trial."); *ABT Sys., LLC v. Emerson Elec. Co.*, No. 4:11CV00374 AGF, 2013 U.S. Dist. LEXIS 14542, at *5-6 (E.D. Mo. Feb. 4, 2013) ("Here, while proof of ABT's inequitable conduct and of invalidity and/or willfulness may overlap, the Court finds that bifurcation is appropriate. There is no need to burden and possibly prejudice the jury with evidence of issues that are to be decided by the Court. The evidence solely related to inequitable conduct will be taken during the trial, outside the hearing of the jury and on a schedule that allows for efficient utilization of the jury.") (citations omitted); *Exelis Inc. v. Cellco P'ship*, No. 09-190-LPS, 2012 U.S. Dist. LEXIS 158842, at *35 (D. Del. Nov. 6, 2012) ("inequitable conduct has been bifurcated."); *Inventio AG v. Otis Elevator Co.*, No. 06 Civ. 5377, 2011 U.S. Dist. LEXIS 88965, at *4 (S.D.N.Y. June 22, 2011) ("I will not be using an advisory jury. I will (obviously) listen to the evidence that the jury hears; to the extent there is overlap, I will not need to hear it again. I will hear any additional evidence that is pertinent only to inequitable while the jury is deliberating on the issues that are properly its to decide. At the close of that presentation, I will hand down a prompt opinion."); *S.O.I.TEC Silicon on Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, 745 F. Supp. 2d 489, 522 (D. Del. 2010) ("The court's practice is to bifurcate the issue of inequitable conduct for a bench trial following a jury trial on other issues."); *Powell v. Home Depot U.S.A., Inc.*, 715 F. Supp. 2d 1285, 1290 (S.D. Fla. 2010) ("the court granted Powell's motion in limine to bifurcate Home Depot's inequitable conduct counterclaim for bench trial following the conclusion of the jury trial.").

3

Bifurcation often promotes judicial economy or is at least as efficient as including all issues in a single trial. A second bench trial on inequitable conduct will focus *only* on the issues that do *not* overlap with infringement and invalidity. These unique issues include Health Grades' alleged intent to deceive the Patent Office during prosecution of the patent-in-suit. Additionally, the jury will decide issues that may dispose of the inequitable conduct defense altogether (i.e., whether the Health Grades undisclosed reports were "prior art"[5]), thereby making a second trial unnecessary.

The issue of whether Health Grades intended to deceive the Patent Office has nothing to do with any issues the jury must decide. Allowing MDx to raise this issue in front of the jury will create unfair prejudice. Such a prejudice would arise against Health Grades if the jury hears MDx's unsupported allegations regarding the alleged bad acts of Health Grades' inventors at the same time that the jury is deciding MDx's liability for patent infringement. Burdening the jury with evidence that has nothing to do with the issues it has to decide will cause confusion and risk a decision based on irrelevant evidence. *See* Fed. R. Evid. 403. Bifurcation minimizes the risk of jury confusion and avoids prejudice to Health Grades.

Accordingly, pursuant to Fed. R. Civ. Proc. 42(a) and Fed. R. Evid. 403, bifurcating the issue of inequitable conduct from the remaining issues is appropriate.

## II.  BACKGROUND

Health Grades filed the Complaint initiating this lawsuit against MDx on March 2, 2011 asserting direct patent infringement of the '060 patent. [Doc. # 1.] The '060 patent generally

---

[5]  Only references that are "prior art" are relevant to the issues of invalidity and inequitable conduct. To be "prior art", a reference must meet all of the requirements of at least one subsection of 35 U.S.C. §102.

relates to an Internet-based information system that connects patients with potential healthcare providers, such as physicians. (Order Regarding Claim Construction ("Markman Order") at p. 1 [Doc. # 183].) The company providing the information service creates and maintains a database of detailed information relating to healthcare providers. (*Id.* at p. 18.) The system creates healthcare provider reports using specific kinds of information from the database. (*Id.* at p. 1.)

MDx owns and operates an online information system that connects patients with doctors. Patients may access and search MDx's database of physician information using MDx's vitals.com website. The vitals.com website creates reports on physicians that meet all of the requirements of the claims of the '060 patent. MDx is liable for direct infringement for making, using, and selling the vitals.com website.

MDx is also liable for indirect infringement. Despite the fact that it was involved in this patent infringement lawsuit, MDx entered into an agreement to license its accused physician database to Aetna for use in the iTriage mobile application and website. The physician database that Aetna licenses from MDx is a subset of the same database that is used by the accused vitals.com website. iTriage has many of the same features as the accused vitals.com website. MDx contributes to and induces the direct infringement by iTriage.

MDx's infringement is willful – it copied many of the features of Health Grades' patented information system and has been on notice that the vitals.com website was covered by the '060 patent claims for several years. Nevertheless, it continues to directly and indirectly infringe the '060 patent. Health Grades seeks damages for this infringement and a permanent injunction.

5

MDx asserts that the claims of the '060 patent are invalid based on several of Health Grades' own reports and services, which MDx collectively refers to as the "Early HG Reports and Services." (Pretrial Order at p. 44 [Doc. #544].) MDx's technical expert specifically cites to eleven "examples" of the Early HG Report and Services, which he asserts qualify as prior art under 35 U.S.C. §§ 102(a) and (b). (Cooper Invalidity Report at pp. 8 [Doc. #369-4].) Health Grades denies that any of these references qualify as prior art under § 102(a) and denies that many of them qualify as prior art under § 102(b). (Summary Judgment Motion at pp. 17-19 [Doc. #369]; Pretrial Order at p. 28 [Doc. #544].)

MDx asserts that the inventors' failure to disclose the Early HG Reports and Services to the Patent Office during the prosecution of the '060 patent constitutes inequitable conduct. (Pretrial Order at pp. 30-34 [Doc. #544].) However, MDx has not and cannot make a showing that Health Grades' inventors made any deliberate choices with the specific intent to deceive the Patent Office. MDx deposed all three inventors of the '060 patent. The main inventor, who was involved in the prosecution of the '060 patent, testified that he did not disclose the Early HG Reports and Services because they were different from what was covered in the '060 patent. (*Id.* at pp. 31-32.) The other two inventors could not recall being involved in the prosecution or remember why the reports were not disclosed. (*Id.*) All the inventors testified that they did not intend to deceive the Patent Office. (*Id.*) Thus, the only evidence MDx has to support specific intent is the fact that the references were not disclosed.

### III.     ARGUMENT

Health Grades seeks a separate bench trial for the presentation of evidence and testimony relating to inequitable conduct if, and only if, the jury trial indicates that the Early HG Reports

6

2004230333_1

and Services are prior art.

Under Fed. R. Civ. P. 42(b), a court has discretion to order separate trials for convenience or to avoid prejudice. Courts must balance judicial economy against the possible inconvenience, delay, or prejudice to the parties. In deciding whether to bifurcate, courts consider and balance a number of factors including: (a) whether the issues are triable by jury or by the court; (b) whether the issues to be tried separately are significantly different; (c) economy and expediency; (d) management of trial, delineation of issues, and clarity of factual questions; (e) convenience to the parties and avoidance of prejudice; (f) prejudice to the party opposing severance; and (g) efficient judicial administration. *See Intermedics, Inc. v. Cardiac Pacemakers, Inc.*, No. 4-95-716(JRT/RLE), 1998 U.S. Dist. LEXIS 23181, at *48-*60 (D. Minn. Feb. 17, 1998). These factors, individually and collectively, strongly support bifurcation.

### A.     The Jury Does Not Decide Inequitable Conduct

Bifurcation is proper where the issue to be separated is equitable and therefore solely committed to the discretion of the trial court. *DeKalb Genetics Corp. v. Syngenta Seeds, Inc.*, No. 4:06CV01191 ERW, 2008 U.S. Dist. LEXIS 10305, at *6-*8 (E.D. Mo. Feb. 12, 2008). The defense of inequitable conduct, being entirely equitable in nature, is decided by the Court. *Id*. For this reason, most courts hold a bench trial on inequitable conduct that is bifurcated from the jury trial on the other patent liability issues, such as infringement, willfulness, validity, and damages. *See, e.g., Agfa Corp. v. Creo Prods.*, 451 F.3d 1366, 1375 (Fed. Cir. 2006) (affirming that judge retains discretion to conduct a bench trial on the issue of inequitable conduct in the same case where invalidity is to be tried by a jury); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547 (Fed. Cir. 1989) (severing inequitable conduct defense for a separate bench trial

following a jury trial of the validity and infringement issues); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209 (Fed. Cir. 1987) (bifurcating inequitable conduct where applicant's conduct during prosecution was distinct from issues of infringement/validity); *DeKalb Genetics*, 2008 U.S. Dist. LEXIS 10305, at *6-*8 ("[t]here is no need to burden the jury with evidence of equitable misconduct that is to be decided by the Court").

### B. Health Grades Will Suffer Unfair Prejudice if Inequitable Conduct is not Separated from the Jury Trial.

Inequitable conduct involves an attack on the integrity of the patentee that diverts attention from adjudication of a patent infringement claim. *See Total Containment, Inc. v. Environ Products, Inc.*, 921 F. Supp. 1355, 1406 (E.D. Pa. 1995); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998); *Japan Cash*, 2008 U.S. Dist. LEXIS 98778. In *Japan Cash*, the court bifurcated trial on inequitable conduct to avoid prejudice to the patent owner:

> Regarding prejudice to the parties, if the instant trial is not bifurcated and [defendant's] evidence relevant solely to inequitable conduct is presented in the jury's presence, there would be prejudice to [the patent owner] because of the serious allegations of withholding evidence from and deceiving the PTO. **If this evidence is presented to the jury, it may be so prejudicial that a jury would have a difficult time finding in [the patent owner's] favor on the other issues properly before the jury.**

*Japan Cash*, 2008 U.S. Dist. LEXIS 98778 at 24 (emphasis added). Recognizing this dilemma, the Federal Circuit recommends that courts consider bifurcation of inequitable conduct from the jury trial of infringement. *See Gardco Mfg.,* 820 F.2d at 1213.

In this case, MDx intends to argue that all three Health Grades' inventors deliberately withheld the Early HG Reports and Services with an intent to deceive the Patent Office *and* that they lied when they said otherwise in this lawsuit:

8

> Health Grades seems utterly unaware of the substantial credibility issues surrounding the testimonies of its witnesses (straining against all the evidence to avoid findings that they committed fraud on the Patent Office), and asks this Court to simply accept its cautiously selected snippets of their testimonies at face-value . . . .

(MDx Summary Judgment Opp. at p. 2 [Doc. #407].) These arguments are not relevant to infringement, validity, willfulness, or damages, but they are inflammatory. Such evidence could overshadow the infringement and validity issues in the eyes of the jury. *Bausch & Lomb Inc. v. Alcon Laboratories Inc.*, 79 F. Supp. 2d 252, 259 (W.D.N.Y. 2000). MDx's attempt to question witnesses regarding Health Grades' alleged bad acts will prejudice the jury and risk an unfair verdict against Health Grades.

### C. Inequitable Conduct is Significantly Different from the Other Patent Liability Issues

Bifurcating trial on inequitable conduct makes sense because questions of infringement and invalidity do not share a substantial commonality of facts with the inequitable conduct defense. The central issue for inequitable conduct is whether the patent owner had the "specific intent to deceive" the Patent Office. Underlying questions relating to intent include:

- Whether the patent owner knew about the prior art in question;

- if so, whether the patent owner knew that the prior art was material to patentability; and

- if so, whether the patent owner made the deliberate decision to withhold the *known material* reference.

*Therasense,* 649 F.3d at 1290. ***None of these issues have any bearing on any of the issues the jury will decide.*** As the Federal Circuit recognized in *Gardco*, patent infringement and validity determinations focus on the accused product, the court's claim interpretations, prior art references (including whether they qualify as prior art), and whether the claimed subject matter

9

is novel and nonobvious. *Gardco Mfg.,* 820 F.2d at 1213. In contrast, the inequitable conduct defense focuses on the conduct of the patent owner before the Patent Office. *Id.*

Although the validity and inequitable conduct claims in this case both relate to the Early HG Reports and Services, the standards and claim constructions the jury must use for invalidity are different from the standards and claim constructions this Court must use to determine whether the references were "but-for" material to patentability as shown in the table below:

|  | Invalidity | Materiality for Inequitable Conduct |
|---|---|---|
| Issue: | Are the claims invalid based on the prior art? | Would the Patent Office have allowed the claims to issue if it had known about the withheld prior art? |
| Decided By: | Jury | Court |
| Standard: | Clear and Convincing | Preponderance of the Evidence[6] |
| Claim Construction: | Court's Claim Construction Order (Doc. #308) | Broadest reasonable interpretation |

### D. Bifurcation Promotes Efficiency

To the limited extent that common issues exist between the issues of patent invalidity and inequitable conduct, retrial of those issues would be unnecessary. For example, testimony and documents relating to the scope and content of the Early HG Reports and Services that will be presented to the jury do need not be presented to the Court again in the bench trial. Any questions as to whether each of the Early HG Reports and Services qualify as prior art will have been decided by the jury and need not be raised again in the second trial. Determinations of such common facts before the jury would already be the "law of the case." *See In re Innotron*

---

[6] This is the standard the Patent Office would have used to determine whether the claims should be allowed based on the withheld prior art. *Therasense*, 649 F.3d at 1292 (citing Manual of Patent Examining Procedure ("MPEP") §§ 706, 2111 (8th ed. Rev. 8, July 2010). MDx must prove "but for" materiality by clear and convincing evidence. *Id.* at 1287.

10

*Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986) (separating patent claims and antitrust counterclaim). Thus, there would be no repetition or "retrying" of any factual or legal issues as prohibited by the Seventh Amendment. Only evidence relating to Health Grades' alleged intent to defraud the Patent Office would remain for the Court to hear in the inequitable conduct bench trial following the jury trial.

Bifurcation promotes efficiency because time will not be wasted having the jury listen to evidence relating to the intent issue, which has no bearing on any issue that the jury will be required to decide.

Moreover, bifurcation may eliminate the need altogether to hold an inequitable conduct trial. For example, if the jury decides that the Early HG Reports and Services are not prior art under § 102, then MDx's inequitable conduct defense will fail as a matter of law. *Therasense*, 649 F.3d at 1290. Even if the jury finds that some of the Early HG References are prior art, this Court might determine that they were not "but for" material to patentability based on the evidence it heard during the jury trial. This too would eliminate the need for a subsequent bench trial on the issue of intent.

### E. Bifurcation is Required to Minimize Jury Confusion

Bifurcation will reduce the risk of jury confusion. By separating the trial into two manageable segments, a jury will not be forced to consider additional testimony and documents that are not relevant to issues that it is supposed to decide. Although the Court could ask the jury to render an advisory verdict on inequitable conduct, such a request would exponentially increase the risk for jury confusion. The risk of confusion is particularly acute in this case because the invalidity and inequitable conduct defenses relate to the same alleged prior art, but require

11

2004230333_1

considerations of different claim constructions and burdens of proof as discussed above. Patent cases lacking such subtle distinctions are complex enough without compounding to the complexity by forcing a jury to consider these additional issues when they are ultimately required to be decided by the Court.

### F. Bifurcation Will Not Prejudice MDx

Prejudice can take the form of (a) unnecessary delay in reaching a judicial outcome; (b) additional expense to either party; (c) an increased risk of jury confusion; or (d) an increased risk that, in deciding an issue, the jury will consider evidence that is admissible only with respect to a different issue. *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115-16 (E.D. La. 1992). None of these forms of prejudice exist here.

Bifurcation will not increase trial expenses or cause delay. Health Grades does not request that factual determinations that overlap the trial segments be retried. Rather, Health Grades proposes that the Court hold a brief bench trial on the issue of intent, if necessary, following the conclusion of the jury trial.

### CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.LCivR 7.1(A)

Undersigned counsel certifies that he conferred with counsel for MDx regarding the relief requested herein when the parties prepared and submitted their proposed Pretrial Order. As noted in the Pretrial Order [Doc. # 544] at p. 61, MDx opposes the proposed bifurcation.

### III. CONCLUSION

For the reasons set forth above, Health Grades requests that evidence on inequitable conduct be tried separately to the Court, if necessary, after the jury trial.

12

| | |
|---|---|
| Dated: June 4, 2013 | ROTHGERBER JOHNSON & LYONS LLP |
| | *s/ Jesús M. Vazquez* |
| | Gregory B. Kanan, Esq. |
| | Kris J. Kostolansky, Esq. |
| | Jesús M. Vázquez, Jr., Esq. |
| | 1200 17th Street, Suite 3000 |
| | Denver, Colorado 80202 |
| | Tel: (303) 623-9000 |
| | Email: gkanan@rothgerber.com |
| |       kkosto@rothgerber.com |
| |       jvazquez@rothgerber.com |
| | *Attorneys for Plaintiff Health Grades, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2013 I electronically filed the foregoing MOTION TO BIFURCATE TRIAL ON THE ISSUE OF INEQUITABLE CONDUCT with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Scott Murray
David Chunyi Lee
Sills Cummis & Gross P.C.-New York
30 Rockefeller Plaza
New York, NY 10112
Email: sstimpson@sillscummis.com
Email: smurray@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO 80202-2617
Email: ridley@wtotrial.com

*s/ Jesús M. Vazquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:    (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@rothgerber.com
         kkostolansky@rothgerber.com
         jvazquez@rothgerber.com
*Attorneys for Plaintiff Health Grades, Inc.*

14

2004230333_1