IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

## MDX MEDICAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR RULE 11 SANCTIONS

Defendant and Counterclaim plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, respectfully submits this Reply Memorandum in Support of its Motion ("Motion"; Dkt. No. 564) for Rule 11 Sanctions ("Reply").

It is not until page 7 of its Opposition to MDx's Motion for Rule 11 Sanctions ("Opposition") that Health Grades begins to substantively address the Rule 11 issues. The first six pages of its brief are largely devoted to misrepresentations of alleged misdeeds of MDx and its counsel, and other pointless diversions, none of which justify a reply.

**I.    CONTRIBUTORY INFRINGEMENT: SUBSTANTIAL NON-INFRINGING USES**

At page 7 of its Opposition, Health Grades argues that MDx built a "custom database" for Aetna from an extract of its "proprietary" database. This argument is unintelligible. How does the fact that the database was built to Aetna's specification (a custom database) and that the source of the database is not freely open to the public (proprietary) have anything to do with the

issue of whether the database containing information on healthcare providers is only useful to infringe the asserted patent (U.S. Patent No. 7,752,060; "'060 patent")?

Next, in a confusing analysis at pages 8-9 of its Opposition, Health Grades appears to be arguing that MDx must show that there is a non-infringing use of the "*full* iTriage Database." Health Grades is entirely off the mark.  The issue is whether the component being sold by the accused contributory infringer (*i.e.*, MDx data) can be used in substantial non-infringing ways, not that there must be a non-infringing use of the accused direct infringer's instrumentality, *i.e.*, the iTriage database.  Health Grades' argument to the latter is entirely fanciful.  35 U.S.C. § 271(c) ("Whoever … sells within the United States … a **component** of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, … not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.") (emphasis added).  And to the extent Health Grades may be arguing that the MDx data and the iTriage database are one and the same, this is simply fiction.  MDx did not build the iTriage database, as evidenced by the fact that the iTriage data differs from the MDx data.  Compare, for example, reports on Dr. Sanjay Gupta on Vitals.com and iTraigehealth.com, which contain different information and do not even have matching addresses and telephone numbers.  Exhibits O and P, respectively.

MDx simply provided data to Aetna.  The cases cited by Health Grades are inapposite, as they involved unitary products incapable of having their individual components separated and used.  *Hodosh v. Block Drug Co.,* 833 F.2d 1575, 1578 (Fed. Cir. 1987) (potassium nitrate component of toothpaste could not be separated from the toothpaste itself and so could not be considered as the alleged component with non-infringing uses); *Aquatex Indus., Inc. v Techniche*

*Solutions,* 419 F.3d 1374, 1383 (Fed. Cir. 2005) (same for composite used internally in accused garments).  Here, in contrast, MDx data is separate and portable and has nearly infinite non-infringing uses, and can be the backbone of any number of systems that would not employ the requirements of the claims of the '060 patent, as addressed at pages 5-9 of MDx's Motion.  Indeed, Health Grades acknowledges that MDx has more than twenty-one data licensing agreements.  Even if the "iTriage database" is the component sold by MDx to Aetna Life (it is not), as Health Grades alleges, it too can be used in an infinite number of non-infringing ways.  The MDx data, like Health Grades' current database and Health Grades' prior art database, is already being used in many ways that do not infringe the claims of the '060 patent.  *Id.*

At bottom, the MDx database is simply ***information on healthcare providers***.  Health Grades' argument that the only substantial use for such information is to infringe the claims of the '060 patent is ***entirely frivolous***.

## II.   INDUCEMENT: FACTUALLY AND LEGALLY BASELESS

Health Grades makes a variety of faulty arguments addressing the absence of any evidence that MDx has ever even communicated with the alleged direct infringer, iTriage, LLC ("iTriage").  First, at page 10 of its Opposition, Health Grades accuses MDx's counsel of "clever lawyering" and tries to dodge the issue by noting that, in some cases, the direct infringer's identity is not even known.  This misses the point entirely – the claim is one of ***inducement***, so there must be some communication by the alleged inducer with the alleged direct infringer, inducing the alleged infringement.  In the cases where the direct infringers are not known, they are end-users of consumer products – there can still be inducement without knowing the actual identities of the end-users because the accused inducer directly communicates with them by

3

providing them with user manuals instructing on the alleged infringement.  Here, in contrast, Health Grades lacks even a shred of evidence that MDx ever communicated with iTriage, let alone that someone at MDx encouraged iTriage to practice every element of the '060 patent's claims.  There is a total and complete lack of any basis for the inducement allegation.

Next, Health Grades tries to convince this Court that Aetna, Inc. is the direct infringer.  Opposition, at 10-11.  This is factually baseless because Aetna, Inc. is a different company from iTriage and there is no evidence that Aetna, Inc. infringes.  And in any event, Health Grades has no evidence of any communication with Aetna, Inc., either – that is also a different company from the company with which MDx contracted and communicated, Aetna Life.  The bottom-line is, Health Grades has absolutely no evidence showing any communications or dealings between MDx and the alleged infringer, iTriage.  The fact that MDx knew, when it agreed with Aetna Life, that the data it was leasing could be used, among other things, for the iTriage application does absolutely nothing to show that MDx was somehow communicating with and encouraging iTriage to practice the many required elements of the '060 patent's claims.

Next, at page 11, Health Grades addresses the lack of any evidence that MDx induced anyone to practice the claims of the '060 patent.  Health Grades claims that the old power point somehow permits an inference that MDx "continued to instruct Aetna [not iTriage] on how to infringe since the patent issued."  This argument is extremely far fetched.  The power point was created long before the '060 patent issued so no one even knew the claim elements of the '060 patent at the time; there is no evidence that anything "continued" after the '060 patent issued; even if this same power point had been continuously presented to Aetna every day for years, it does not even mention any of the claim elements of the '060 patent; and there is a total lack of

4

any evidence of any communications between MDx and the alleged direct infringer, iTriage. There is a total and complete lack of any evidence supporting this claim of induced infringement – Health Grades is just making it up on the fly. *Raylon v. Complus Data Innovations, Inc., et. al.*, 700 F.3d 1361, 1374 (Fed. Cir. 2012) ("While reasonable minds can—and often do—differ..., it is unreasonable minds that go to extraordinary lengths to conjure and advance through various stages of a legal proceeding unsupported arguments . . . .") (Reyna, J., concurring).

### III.   PATIENT RATINGS FROM THE ITRIAGE WEBSITE

Highlighting only selected parts of the claims of the '060 patent, Health Grades first tries to convince the Court that the claim language does not dictate where the survey must be located. Opposition, at 12.  But claim 1 plainly says the survey must be "completed on a Company Web site" and "the company web site" must be managed by the company providing the service, *i.e.,* iTriage.  The claims unequivocally require that the survey be on the website managed by iTriage. This is a location requirement, too, and it specifically and unequivocally precludes the survey being conducted elsewhere (on websites managed by other companies).

Health Grades next claims that Aetna (not iTriage) "has, or will have, a website to collect patient ratings" and that "iTriage will include patient ratings from MDx and Aetna."  Opposition, at 12.  The allegation that Aetna "has" a website to collect patient ratings is false, and Health Grades has absolutely no evidence in support of this allegation.  If the iTriage application, or any other website, had a survey for collecting patient data from the public anyone could see it and there would be screenshots submitted by Health Grades.  Health Grades' prospective comments – that Aetna (not iTriage) "will have" such a survey in the future only serves to further

emphasize the frivolous nature of the Health Grades' claims.  Hopeful and vague possibilities of *future* website surveys do not provide a Rule 11 basis for these patent infringement claims.

Health Grades' musing about the *Akamai* case, at pages 13 and 14 of its Opposition, deserves little attention.  The patent claims at issue here specifically identify a location where the survey must be conducted, and a specific company that must manage the survey.  *Akamai* has applicability where, for example, a claim does not require such specifics. So, for example, if a claim simply requires performance of steps (a), (b), and (c), the inducer can perform step (a) while inducing another to perform (b) and (c) – that would not by itself avoid infringement.  But with claims like these, that require functions to be performed in *specific locations* and by *specific entities*, *Akamai* provides no basis to ignore those specific claim requirements and allow the functions to be performed at other locations or by other entities.  Patent claim terms cannot be ignored under *Akamai* or any other Federal Circuit precedent.

Lastly, at pages 14-15, Health Grades tries to divert the Court's attention from the portion of the *Raylon* decision relied on by MDx, directing the Court instead to the Rule 11 violation related to the "pivotally mounted" display limitation.  That was certainly a Rule 11 violation in *Raylon* and relevant here because Health Grades is ignoring claim limitations, too.  But the part of *Raylon* cited by MDx (at page 12 of the Motion) related to another limitation – a location limitation like the location limitation here.  Here, similar to the Raylon facts that led to reversal of the district court's denial of Rule 11 sanctions, the claims clearly require that the survey be conducted at a specific location (a website managed by iTriage) and Health Grades' arguments that the survey can be conducted elsewhere ignores those clear limitations and is entirely frivolous.

6

## IV. CONCLUSION

For all the foregoing reasons and all the reasons set forth in the Motion, MDx respectfully requests that the Court impose sanctions, on Health Grades and its counsel, including reimbursement of all MDx's fees and costs, for these multiple violations of Federal Rule of Civil Procedure 11(b)(1), (2), and (3).

Dated:  June 6, 2013                                    Respectfully submitted,


        *s:/Scott D. Stimpson*
Scott D. Stimpson                                       Terence Ridley, Atty. No. 15212
Scott B. Murray                                         Wheeler Trigg O'Donnell LLP
David C. Lee                                            370 Seventeenth Street, Suite 4500
Sills Cummis & Gross P.C.                               Denver, Colorado 80202
30 Rockefeller Plaza                                    Tel:  (303) 244-1800
New York, New York 10112                                Fax:   (303) 244-1879
Tel: (212) 643-7000                                     E-mail: ridley@wtotrial.com
Fax: (212) 643-6500
E-mail:sstimpson@sillscummis.com                        *Attorneys for Defendant*
E-mail:smurray@sillscummis.com                          *MDx Medical, Inc. d/b/a VITALS.COM*
E-mail:dlee@sillscummis.com

# CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2013, I electronically filed the foregoing **MDX MEDICAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR RULE 11 SANCTIONS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Jesus Manuel Vazquez, Jr.
  jvazquez@rothgerber.com, phenke@rothgerber.com

Gregory B. Kanan
  gkanan@rothgerber.com, dgrooms@rothgerber.com

Kris John Kostolansky
  kkosto@rothgerber.com, dgrooms@rothgerber.com

Scott David Stimpson
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

Scott B. Murray
  smurray@sillscummis.com

David Chunyi Lee
  dlee@sillscummis.com, vferraro@sillscummis.com

Terence M. Ridley
  ridley@wtotrial.com, norris@wtotrial.com


                                                  s:/Vincent M. Ferraro