**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S OPPOSITION TO HEALTH GRADES, INC.'S MOTION TO BIFURCATE TRIAL ON THE ISSUE OF INEQUITABLE CONDUCT**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, respectfully submits this Opposition to Health Grades, Inc.'s ("Health Grades") Motion To Bifurcate Trial On The Issue Of Inequitable Conduct [Dkt. # 598, the "Motion"].

**I.    THE INVALIDITY AND INEQUITABLE CONDUCT CLAIMS**

U.S. Patent No. 7,752,060 (the "'060 patent"), generally speaking, relates to a method for Internet users to go online and search for healthcare providers, and to receive, in response, reports on those providers that include healthcare provider ratings. *See* the '060 patent, attached hereto as Exhibit A, at Abstract.

MDx's invalidity defenses that will be presented at trial are based on Health Grades' own prior art. Specifically, as Health Grades' Vice-President and Chief Financial Officer, Allen Dodge, has sworn under penalty of perjury, Health Grades commercialized the alleged invention

of the '060 patent in the spring/summer of 2005 – more than one year before the August 29, 2006 application filing date of the '060 patent.  Health Grades' Response to MDx's First Set of Interrogatories (Nos. 1-6), attached hereto as Exhibit B, Response to Interrogatory 4, at page 14; *see also*, Response to Interrogatory 1, at page 5 ("Health Grades began launching the first version of these products in the Spring/Summer of 2005.").  The early prior art commercialization by Health Grades was extensive, and through a very painful discovery process (requiring third party discovery, and court intervention to get Health Grades to produce the critical information), MDx has uncovered numerous healthcare provider reports that anticipate and render obvious the claims of the '060 patent.  35 U.S.C. §§ 102(a), (b), and 103. The Health Grades prior art includes at least the following:  Health Grades premium reports, the "Drucker" report, Physician Quality Guides, Physician Quality Reports, Physician Research Comparison Reports, Comparative Physician Reports, Physician Quality Comparison Reports, Nursing Home Comparison Reports, Physician Online Services, the Health Grades "Connecting Point" system, and Physician New Marketing Media.  *See, e.g.,* Collection of various Health Grades prior art reports, MDx's Dep. Ex. 8, attached hereto as Exhibit C; Drucker Report, MDx's Dep. Ex. 13, attached hereto as Exhibit D; Project plans for various Health Grades reports, MDx's Dep. Ex. 23, attached hereto as Exhibit E; and Health Grades' Physician New Media Marketing PowerPoint, MDx's Dep. Ex. 51, attached hereto as Exhibit F.  35 U.S.C. § 102(a).   All these references and the accompanying testimony of the inventors showing where the data was obtained, dates of use and publication, etc., will be the primary focus of the MDx jury trial on invalidity.[1]

---

[1] Health Grades' arguments that these reports and Health Grades services are not prior art is

2

This extensive Health Grades prior art, clearly showing commercialization of the invention, however, was intentionally withheld from the Patent Office – Health Grades and its inventors instead opted to disclose far less relevant prior art to the patent examiner, and they made many arguments in support of the patent that could never have been made had their own prior art been disclosed. Thus, MDx's inequitable conduct defense is based on the *same prior art references* that are the bases for its invalidity defenses.

Due to the unique nature of the patent claims and these many prior art references, testimony of the Health Grades inventors (and Mr. Dodge) about all these references will be extensive with respect to MDx's invalidity claim. For example, every patent claim requires multiple different sets of data, and expressly requires that each set of data be obtained from a specific source (*e.g.*, medical philosophy, gender, age, etc. must be verified and received from the healthcare provider; ratings of the provider must be obtained from patients over the website providing the service; board certification, licensure, medical school, etc. must be obtained and verified from third parties). Exhibit A, Claim 1, at Col. 20, ll. 20-67. So, unlike the typical patent case where the prior art is a patent or publication and all the relevant disclosures and dates of disclosures are plain on the face of the prior art document itself, this case will involve, for every one of the numerous prior art references, corresponding testimony of the inventors and Mr. Dodge about timing of disclosures, what is actually disclosed by each reference, sources of every

---

utterly baseless. Health Grades has admitted that these reports were commercialized in 2005, and has provided a date of invention many months after that commercialization, making it all prior art under 35 U.S.C. §102(a) (public use before date of invention is prior art). Exhibit B, Response to Interrogatory 1, at page 7 (February 8, 2006 invention date); and Response to Interrogatory 4, at pages 10-15 (commercializing before the date of invention). They are also prior art as publications, public uses, and public knowledge more than a year before the application filing date. *See, e.g.,* Exhibits C, D, E, F (including publications dated more than a year before even February of 2006). 35 U.S.C. §102(b).

one of the data elements, and more.  This same evidence and testimony will be introduced for MDx's inequitable conduct claim.

## II.     BIFURCATION WOULD DEPRIVE MDx OF TRIAL BY JURY

Rule 42 provides that district courts have broad discretion in separating issues for trial, but, when doing so, the Court "must preserve any federal right to a jury trial."  Fed. R. Civ. P. 42(b).  This requirement prohibits separate trials that would permit a second factfinder to reexamine factual issues decided by the first factfinder, because such reexamination would violate the Seventh Amendment.  *See Blyden v. Mancusi*, 186 F.3d 252, 268 (2nd Cir. 1999); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996).

As Health Grades correctly points out, *Therasense* changed the law on inequitable conduct, such that now the issue of materiality requires a showing that the claims would not have issued "but-for" the withheld prior art.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011).  This change has a side effect:  the issue of materiality is now virtually indistinguishable from the invalidity issue.  As such, MDx has a right to a jury trial on both the materiality and invalidity issues.  U.S. Const. amend. VII;  *see also Fitzgerald v. United States Lines Co*., 374 U.S. 15, 21 (only one trier of fact should be used for issues with the same factual foundation); *Gasoline Products v. Champlin Refining Co.,* 283 U.S. 494, 500 (1931) (only "distinct and independent" issues can be separately tried); *Cedars-Sinai Medical Center v. Revlon, Inc.,* 111 F.R.D. 24, 32 (D. Del. 1986) ("Where a jury is the trier of fact on common issues of fact, it should be the *sole* determiner of those issues"; emphasis by court); *Implant Innovations v. Nobelpharma AB*, 1996 U.S. Dist. LEXIS 14495, *9-11 (N.D. Ill. Sept. 30, 1996) ( "in order to preserve 3i's Seventh Amendment jury trial guarantee the Court finds that the

inequitable conduct issue must be tried by a jury"). Moreover, because the inequitable conduct claim cannot be partly tried to the court and partly tried to the jury, the entire inequitable conduct claim must be tried to the jury in order to preserve MDx's right to a jury trial. *Beacon Theatres v. Westover*, 359 U.S. 500, 508 (U.S. 1959) ("the holding of the court below . . . would compel Beacon to split his antitrust case, trying part to the judge and part to the jury. Such a result . . . is not permissible.").

### A.   Materiality Is A Jury Issue

Since *Therasense*, the invalidity and inequitable conduct issues are now the ***same essential issue*** – under *Therasense* the standard of materiality is whether claims would have issued "but-for" the withheld prior art (*i.e.*, does the withheld prior art disclose all the limitations of the claims); and invalidity asks the same basic question – whether the claims are anticipated or obvious over that same art. Both issues focus on the same statutes for making these determinations, 35 U.S.C. §§ 102(a), (b), and 103.

Health Grades cites a few cases at pages 7-8 of its Motion, but they are all pre-*Therasense*. The Federal Circuit *Agfa* case, for example, is from 2006 – years before the 2011 *Therasense* decision. These early cases held that the invalidity and materiality issues were "not common within the legal construct of *Beacon Theaters,*" expressly noting that under the then-applicable standard of inequitable conduct "material prior art need not necessarily present a prima facie case of unpatentability." *Agfa Corp. v. Creo Prods.*, 451 F.3d 1366, 1372-1373 (Fed. Cir. 2006).

The law has since changed dramatically, however, with *Therasense*. Now, the prior art must not only present a prima facie case of unpatentability, the prior art must be such that it

5

would ***preclude the claims from issuing,*** under 35 U.S.C. §§ 102,103 – the identical statutes used in the invalidity analysis.  *Therasense, Inc.*, 649 F.3d, at 1291.  Thus, *Gardco* and *Agfa,* which were decided in connection with a very different, far more relaxed, standard of materiality, found no Seventh Amendment issue.  The result is different under the new materiality standard.  In fact, the *Gardco* Court even acknowledged *in dicta* the similarity of invalidity with a "but-for" materiality standard.  *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1214 (Fed. Cir. 1987) ("Peerless' brief before this court is primarily and improperly devoted to an argument that the claims are patentable over the undisclosed art.  That argument might be been relevant if the district court had found that 'but for' the failure to disclosure the [prior art], the patent would not have issued.").

There are many common issues of fact between the invalidity and materiality issues.  For every element of every patent claim, the factfinder must determine if each of the many prior art references discloses that element – well over a hundred different factual findings based on comparisons of the prior art to the claim elements.  MDx is entitled to have a jury determine these issues for the invalidity claim, and thus it is not consistent with the Seventh Amendment to have the court make the same factual determinations for the materiality issue.  *Fitzgerald*, 374 U.S. at 19 (only one trier of fact should be used for issues with the same factual foundation); *Gasoline Products,* 283 U.S. at 500 (two factfinders cannot decide two interwoven claims); *Cabinet Vision v. Cabnetware*, 129 F.3d 595, 600 (Fed. Cir. 1997) ("substantial commonality" of two issues resulted in Seventh Amendment violation, even though the issues were "not identical in scope or consequence" and finding that "these errors cannot be excused"); *Therma-Tru Corp. v. Peachtree Doors, Inc., et. al.,* 44 F.3d 988, 995 (Fed. Cir. 1995) (reversing and remanding:

6

Seventh Amendment precludes "judicial findings independent of and contrary to the facts found by the jury in reaching its verdict"); *Brownlee v. Yellow Freight Sys., Inc.,* 921 F.2d 745, 749 (8th Cir. 1990) ("Where legal and equitable claims are joined in the same complaint, and where there are common issues of fact, the normal practice is to try both claims to a jury") (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-511 (U.S. 1959), *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (U.S. 1962) and *Ross v. Bernhard*, 396 U.S. 531, 537-538 (U.S. 1970)); *Cedars-Sinai Medical Center,* 111 F.R.D. at 32 (where one factfinder is the jury and one the court, "the [party's] *Seventh Amendment* right is in even more danger of compromise . . . Where a jury is the trier of fact on common issues of fact, it should be the *sole* determiner of those issues"; emphasis by court); *Implant Innovations*, 1996 U.S. Dist. LEXIS 14495 at \*9-11 (overlap of inequitable conduct and antitrust issue: "in order to preserve 3i's Seventh Amendment jury trial guarantee the Court finds that the inequitable conduct issue must be tried by a jury").

The invalidity and materiality issues are now so alike, even Health Grades' counsel has been unable to distinguish them, as they routinely conflate the two issues – repeatedly alleging that there can be no *materiality* for inequitable conduct because the prior art allegedly does not render the claims *invalid*. *See, e.g.,* Final Pretrial Order, dated March 6, 2013, Dkt. # 544, at page 33 ("To be 'material,' the Early HG Reports and Services must have been 'but-for' material to patentability. That is, the Patent Office would not have allowed the claims had it been aware of the undisclosed prior art. In this case, none of the Early HG Reports and Services anticipate or render obvious any of the asserted claims for the reasons discussed above."); *see also* Health Grades' Motion for Summary Judgment, dated November 2, 2012, Dkt. # 369, at page 4 ("As

7

discussed above, the Early HG Reports and Services do not anticipate or render obvious any of the asserted claims as a matter of law. Therefore, MDx cannot prove that these references are but-for material to patentability. . . ."). Health Grades is correct in one respect – the materiality issue is now so close to the anticipation/obviousness defense, that the two are essentially indistinguishable. At least one other court has recognized, *even pre-Therasense*, where the overlap and commonality of the issues are evident, there is an insurmountable Seventh Amendment problem with trying the materiality issue without a jury:

> While the appellants in *Gardco* did not succeed in convincing the court that such commonality of factual issues between bench and jury trials exists, I am sufficiently convinced that it exists in the present case. ***It has become apparent in my determination of plaintiff's summary judgment motion for inequitable conduct that at least in this case, the question of materiality and whether something constitutes prior art are easily intertwined, so much that it is sometimes impossible to avoid blending them together. Not only have I encountered this difficulty, but both parties in their briefs on the inequitable conduct issue have demonstrated the same problem. Microsoft, in arguing that the information in Dr. Doyle's possession was material, has often stepped into the territory of arguing invalidity, and plaintiffs, in arguing against Microsoft's materiality contentions, have slipped into treating material information as synonymous with prior art. Clearly, there are factual determinations that will affect questions of materiality as well as prior art.*** Thus, I am not persuaded that the clean separation of equitable and legal claims that the *Gardco* court saw is adequately feasible in this case to justify the risk to plaintiffs' constitutional rights.

*Eolas Techs. v. Microsoft Corp.*, 2002 U.S. Dist. LEXIS 20285, 37-38 (N.D. Ill. Oct. 18, 2002) (internal citations omitted) (emphasis added).[2]

---

[2] MDx respectfully submits that, even pre-*Therasense*, questions of materiality and intent for inequitable conduct should have both been subject to the jury trial right. As Judge Newman expressed in her thoughtful and strong dissent in the *Agfa* case, Federal Circuit panel decisions finding otherwise are "a departure from the established jury right, for materiality and intent are quintessential questions of fact, and have been tried to a jury throughout the nation's history. There is no basis for removing these factual questions from the jury when the jury is trier of fact." *Agfa Corp.*, 451 F.3d, at 1380 (Newman, J., dissenting).

At page 10 of its Motion, Health Grades now, for the purposes of this motion, claims the invalidity and materiality issues are different. But the use of slightly different principles and procedures does not change the fact that both are based on the same underlying facts, the same analyses – comparisons of prior art to the claims of the patent, and both employ the same concepts of anticipation (35 U.S.C. § 102(a), (b)) and obviousness (35 U.S.C. §103). *Fitzgerald*, 374 U.S. at 19 (issues arising out of the same facts should be tried to the same tribunal, despite "application of slightly different principles and procedures"). Because materiality and invalidity are the same basic issue, MDx is entitled to a jury trial on materiality as well as invalidity. *Gasoline Products,* 283 U.S. at 500.[3]

### B.     Intent Must Be Tried To The Jury With Materiality

Claims cannot be partly tried to a jury and partly to a court. *Beacon Theatres*, 359 U.S., at 508 ("the holding of the court below . . . would compel Beacon to split his antitrust case, trying part to the judge and part to the jury. Such a result . . . is not permissible."). Accordingly, because the materiality issue must be tried to the jury, so must intent.

### III.    BIFURCATION IS OTHERWISE NOT APPROPRIATE IN THIS CASE

Health Grades, as the party moving for bifurcation, has the burden of proving that it is appropriate. *Princeton Biochems., Inc. v. Beckman Instruments, Inc.,* 180 F.R.D. 254, 256

---

[3] Health Grades' proposal of trying the inequitable conduct claim second, after the jury trial, does nothing to solve this issue. First, the Court could never know and rely on how the jury decided on all these underlying factual issues (by MDx's count, considering every claim element and every prior art reference, there would be well over 100 jury factual determinations comparing prior art to claim elements). And even if this was somehow possible, it is precluded under Supreme Court law. *Gasoline Products*, 283 U.S. at 500 (common issues of fact should be determined by the same trier of fact); *see also Fitzgerald*, 374 U.S. at 21 (only one trier of fact should be used for a case with the same factual foundation, "even if the judge can find out what elements . . . the jury's verdict actually represented").

(D.N.J. 1997). Even if there was not a Seventh Amendment problem, bifurcation would not be appropriate in this case. Indeed, Health Grades' proposal would require duplicate testimony by numerous witnesses to address, in depth, dozens of the same exhibits that will be used during the jury trial on invalidity; it would result in constant objections during the jury trial by counsel for Health Grades, and endless battles in front of the jury about what questioning and evidence relate "only" to intent; and it will preclude any hope of completing the trial in the allotted seven days.

Trial inefficiencies and other concerns like this are the reasons why "[s]eparation of issues for trial is not to be routinely ordered" (Fed. R. Civ. P. 42, Adv. Comm. Notes, 1966 Amend.), and why such bifurcation is generally reserved only for exceptional cases. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 498 F. Supp. 2d 734, 735 (D. Del. 2007); *see also Angelo v. Armstrong World Indus.*, Inc., 11 F.3d 957, 964 (10th Cir. 1993) ("bifurcation is an abuse of discretion if it is unfair or prejudicial to a party.").[4]

---

[4] At pages 4 and 8-9 of its Motion, Health Grades argues that the intent to deceive issue will create "unfair prejudice" to Health Grades at the jury trial. But the issue is hardly "unfair" – that the best prior art was not disclosed to the Patent Office is merely a fact. And no bifurcation order will avoid the jury knowing these facts anyway as they will be known to the jury through the validity issue, *i.e.,* (a) the inventors all knew of these withheld references (they will all testify about their content and when and where they were disclosed – there is no way for Health Grades to hide the fact of their intimate knowledge of these references); (b) less relevant prior art was disclosed to the Patent Office; and (c) arguments were made to the Patent Office for patentability that they could not have made with respect to the undisclosed art they knew so well. Health Grades may not like it, but even if there was bifurcation, there is no chance the jury will overlook the obvious – the inventors knew of better prior art and chose not to tell the Patent Office about it in order to obtain the '060 patent.

Health Grades' complaints about arguments of bad motive ring hollow for another reason. That is, how is this issue different from the willfulness issue Health Grades intends to present to the jury, where MDx is accused of copying and acting in willful disregard of the patent? Motion, at page 5. Why is the willfulness issue not, to use Health Grades' words from pages 8-9 of its Motion, "an attack on integrity" and "inflammatory" such that it is "fairly" presented to the jury while the inequitable conduct intent element is not "fairly" presented?

10

### A.      **Substantial Overlap And Duplication**

Bifurcation "remains the exception rather than the rule." *Webxchange Inc. v. Dell Inc.*, 2009 U.S. Dist. LEXIS 121165, at *7 (D. Del. Dec. 30, 2009) (citing *Spinturf, Inc. v. Sw. Rec. Indus.*, 2004 U.S. Dist. LEXIS 785, at *4 (E.D. Pa. Jan. 15, 2004) (citing *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000))). Despite the general rule against bifurcation of inequitable conduct, however, Health Grades is correct that some courts have chosen to bifurcate inequitable conduct in some cases. Those cases, however, typically involve a publication usually from a third party – the content of the prior art is evident from the publication itself, and can easily be compared to the patent claims, and so overlap between inequitable conduct and validity issues is substantially reduced.

This case, however, is very different for at least two reasons: (1) the patent claims not only require specific information to be included in healthcare provider reports, they also require that the information used in those reports be obtained from very specific sources for each specific data set; and (2) the withheld prior art includes many healthcare provider reports that were available over the Health Grades website, as well as services offered by Health Grades, and other documents and information, showing where Health Grades obtained all the various data sets. Thus, unlike a typical inequitable conduct and invalidity case, underlying evidence about each report is important too. As the prior art references were all Health Grades' reports, and the named inventors on the '060 patent were all familiar with the prior art and in fact were working with those references, at the jury trial the inventors will all be questioned extensively about the

---

Health Grades won't admit it in this briefing of course, but they seek to have the Court order that only MDx's integrity may be attacked at trial.

11

prior art, and that art's relation to (a) the patent claims, (b) the prior art that was before the Patent Office, and (c) the arguments made to the Patent Office to secure the '060 patent.

If bifurcation is granted, a second trial on inequitable conduct will be required no matter the result of the jury trial (inequitable conduct is a primary basis for MDx's request for fees and costs under 35 U.S.C. § 285). This second trial would be mostly duplicative and an enormous waste of time and resources. That is, the inventors will be interrogated a second time on exactly the same evidence, but this time focusing on the intent element. Every prior art reference (*see, e.g.,* Exhibits C (containing numerous prior art reports), D, E, F) will need to be addressed again with every one of the three inventors; and for each inventor and each prior art reference again there will be questioning about relationships to the patent claims, the cited prior art, and the arguments made to the Patent Office, this time with questions including issues of intent. Thus, all this evidence would need to be revisited again, in order to address issues of intent.

Other witnesses will need to be called again, too. For example, Health Grades has identified the CEO of MDx Mitch Rothschild as a witness as well as his opinion counsel, Phil Braginsky. While both will testify at the jury trial, Health Grades has also indicated that they have a role in inequitable conduct, too – allegedly they told Health Grades to submit the less-relevant prior art to the Patent Office. Experts will also need to be recalled, to address the materiality issue. And of course, the repetition of witnesses, and testimony, and discussions of evidence, will make completing both trials in the allotted seven days impossible – the jury trial will take that long alone.

The enormous burden bifurcation would present on all these witnesses, the court, and counsel, is clear. Many courts deny bifurcation, even without a Seventh Amendment issue,

where there is such overlap. *Webxchange Inc.*, 2009 U.S. Dist. LEXIS 121165, at *9 (denying bifurcation: "the same prior art . . . is common to both an inequitable conduct defense and patent invalidity defenses. The Court is persuaded by Defendants' assertion that it must 'present much of the same background testimony, including expert testimony, to describe [the prior art], to describe the scope of the patents-in-suit, and to compare and contrast the two as background'" to address both invalidity and inequitable conduct); *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1333, 1336 (M.D. Fla. 2006) (denying bifurcation due to significant overlap of witnesses and evidence); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 U.S. Dist. LEXIS 42159 *34 (N.D. Cal. June 12, 2006) (denying bifurcation due to need to repeat witnesses and evidence and because patent holder will not suffer prejudice); *Eolas Techs.*, 2002 U.S. Dist. LEXIS 20285, *38-40 (denying bifurcation due to need to repeat witnesses and evidence); *C. R. Bard, Inc. v. M3 Sys.*, 1994 U.S. Dist. LEXIS 7689, *5-6 (N.D. Ill. June 7, 1994) (denying bifurcation because common factual issues must be decided by the jury and due to need to repeat witnesses and evidence); *Mag Instrument, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 123 F.R.D. 543, 546-547 (N.D. Tex. 1988) (denying bifurcation because the validity and inequitable conduct claims are "intertwined").

### B. A Jury Trial Nightmare

Health Grades wants to keep evidence of its inventors' deception and concealment from the jury. We can be certain, therefore, that any line of questioning in the jury trial that elicits, by implication or otherwise, the fact that the inventors did not disclose their own prior art to the Patent Office, would receive constant objections if the Court orders bifurcation. As the withheld prior art, and its relationship to what was disclosed to the Patent Office and arguments made on

behalf of the inventors, will be the primary focus of the MDx presentations at trial, the objections will never end if bifurcation is ordered.

For example, there will be lines of interrogation for each inventor addressing, in the prior art they knew but withheld, the following issues: (a) the first group of data recited in the claims was obtained from the healthcare provider, (b) the second group of data came from patients; (c) the third group of data came from third parties; (d) the first group of data was verified; (e) the third group of data was verified; (f) reports were generated using all this data in response to user requests; (g) the reports contained comparison ratings of healthcare providers; (h) the reports were provided online; etc.  For each of these issues, comparisons will be made to both the prior art of record, and arguments made on behalf of the inventors trying to distinguish that art (arguments that could never have been made had Health Grades' own prior art been disclosed).

Asking the inventors about the prior art they knew so well, showing that it was so much better than the prior art they chose to disclose to the Patent Office, and showing that they could never have made their arguments for patentability for the withheld art, even without pointed questions on the subject, will leave the jury highly suspect of the integrity of these inventors, and questioning why they would allow such arguments to be made to the Patent Office when they were aware of prior art negating those arguments. This, therefore, is just a sampling of the questioning in the jury trial that will no doubt receive constant howls of objections from counsel for Health Grades, claiming that the questioning is directed to intent and bad motive in violation of a bifurcation order.  And for many of the questions in these areas of interrogation, Health Grades will be right – the elicited testimony certainly will be relevant to intent.  But it is also highly relevant to invalidity.

With counsel for Health Grades' bent on the impossible task of trying to hide from the jury the fact that the inventors knew of much closer prior than the art disclosed to the Patent Office, the jury trial will not run smoothly, to say the least. There will be endless objections (all requiring counsel arguments in front of the jury) and required rulings from the bench for each objection. And counsel for MDx of course will simply rephrase the questions (sometimes multiple times) for every sustained objection in an effort to satisfy the Court. The Health Grades proposal for a bifurcated trial, even if there was not such a serious Seventh Amendment problem, would thus result in a confused and disorderly trial riddled with endless objections, rulings, and rephrasing of questions. And in addition to these problems during the trial, other potentially more serious problems will be lurking, as the exclusion of evidence relevant to invalidity would provide grounds for appeal and remand.

## IV.     CONCLUSION

For all the foregoing reasons, MDx respectfully requests that the Court deny Health Grades' motion to bifurcate trial on the issue of inequitable conduct.

Dated:  June 28, 2013                                             Respectfully submitted,

*s:/Scott D. Stimpson*

| | |
|---|---|
| Scott D. Stimpson | Terence Ridley, Atty. No. 15212 |
| Scott B. Murray | Wheeler Trigg O'Donnell LLP |
| David C. Lee | 370 Seventeenth Street, Suite 4500 |
| Sills Cummis & Gross P.C. | Denver, Colorado 80202 |
| 30 Rockefeller Plaza | Tel:  (303) 244-1800 |
| New York, New York 10112 | Fax:   (303) 244-1879 |
| Tel: (212) 643-7000 | E-mail: ridley@wtotrial.com |
| Fax: (212) 643-6500 | |
| E-mail:sstimpson@sillscummis.com | *Attorneys for Defendant* |
| E-mail:smurray@sillscummis.com | MDx Medical, Inc. d/b/a VITALS.COM |
| E-mail:dlee@sillscummis.com | |

# CERTIFICATE OF SERVICE

I hereby certify that on **June 28, 2013**, I electronically filed the foregoing **MDX MEDICAL, INC.'S OPPOSITION TO HEALTH GRADES, INC.'S MOTION TO BIFURCATE TRIAL ON THE ISSUE OF INEQUITABLE CONDUCT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Jesus Manuel Vazquez, Jr.
    jvazquez@rothgerber.com, phenke@rothgerber.com

Gregory B. Kanan
    gkanan@rothgerber.com, dgrooms@rothgerber.com

Kris John Kostolansky
    kkosto@rothgerber.com, dgrooms@rothgerber.com

Scott David Stimpson
    sstimpson@sillscummis.com, gcaceres@sillscummis.com

Scott B. Murray
    smurray@sillscummis.com

David Chunyi Lee
    dlee@sillscummis.com, vferraro@sillscummis.com

Terence M. Ridley
    ridley@wtotrial.com, norris@wtotrial.com


                                             *s:/ Vincent M. Ferraro*