1                   IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF COLORADO

3     Case No. 11-CV-00520-PAB-BNB

4     _____

5     HEALTH GRADES, INC.,

6         Plaintiff,

7     vs.

8     MDX MEDICAL, INC.,
      *doing business as* Vitals.com,
9

10        Defendant.

11    _____

12           Proceedings before BOYD N. BOLAND, United States
      Magistrate Judge, United States District Court for the
13    District of Colorado, commencing at 10:33 a.m.,
      June 5th, 2013, in the United States Courthouse, Denver,
14    Colorado.

15    _____

16           WHEREUPON, THE ELECTRONICALLY RECORDED
      PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...
17    _____

18                           APPEARANCES

19              MR. Jesus M. VAZQUEZ, JR., ESQ.,
                MR. KRIS J. KOSTOLANSKY, ESQ.
20           Appearing on behalf of the Plaintiff.

21               MR. SCOTT D. STIMPSON, ESQ.
             Appearing on behalf of the Defendant.

22    _____

23
                          MOTION HEARING
24

25

```
 1                    P R O C E E D I N G S

 2              (Whereupon, within the electronically recorded

 3    proceedings are herein transcribed pursuant to order of

 4    counsel.)

 5              THE COURTROOM DEPUTY:  All rise.  Court is in

 6    session.

 7              THE COURT:  Thank you.  Please be seated.  We

 8    are here this morning in case 11-CV-520, Health Grades

 9    against MDX Medical.  There are two motions pending.

10    The first is the motion of MDX Medical to compel

11    additional 30(b)(6) deposition testimony, and the second

12    is Health Grade's motion to supplement the pretrial

13    order to add five exhibits and a witness.

14              May I have appearances, please.

15              MR. VAZQUEZ:  Good morning, Your Honor.  Jesus

16    Vazquez from Rothgerber, Johnson & Lyons on behalf of

17    plaintiff Health Grades.  My partner Kris Kostolansky

18    from Rothgerber is here as well, and our consulting

19    expert Kirstin Stoll-DeBell from Merchant & Gould.  In

20    the gallery is a first year law student, summer

21    associate in our form, Amy Moore.  It's her first time

22    in federal court.

23              THE COURT:  Please join us at counsel's table

24    if you would.

25              MR. STIMPSON:  Good morning, Your Honor.
```

1    Scott Stimpson of Sills Cummis, representing MDX.

2            THE COURT:  Thank you.  Let's start with the

3    motion to compel.  Mr. Stimpson.

4            MR. STIMPSON:  Thank you, Your Honor.  I think

5    for this motion it probably makes sense for me to take a

6    minute or two just to go over a little history here.  We

7    served this deposition notice -- this 30(b)(6) notice

8    back in January, 2012, and it was reissued just before

9    the deposition just to change the dates and times, but

10   it was served well before the close of fact discovery.

11           Of course I've read your order of April 25,

12   Your Honor, with regard to this deposition notice, and I

13   understand the court's views on the topic that it's

14   overbroad and excessive and not focused.

15           Health Grades, however, has never objected to

16   the deposition topics.  They did not object.  They

17   didn't call our office.  They didn't call me.  They

18   didn't call anybody on my team and say, look, can we try

19   to narrow this.  And I think the reason that Health

20   Grades didn't object, Your Honor, was because there was

21   a temporal limitation in the notice, 2006 and earlier.

22           And at that time the Health Grades website

23   wasn't as robust as it is today, and they were getting

24   going with these reports and there was only a handful of

25   reports really that would need to be addressed.  So, we

 1    had no objection from Health Grades.  We moved ahead

 2    with the deposition, and we did not get a great deal of

 3    what we were entitled -- we believe we were entitled to

 4    get.

 5              From our perspective, Your Honor, this was

 6    kind of the final straw.  We have -- I have been

 7    battling this battle since the beginning of this case.

 8    I served document requests and interrogatories seeking

 9    prior art early.  We took depositions, found out things

10    weren't disclosed.  We -- I had filed a motion to compel

11    which was successful.  And so from our perspective this

12    really was all we could take.  And we really believe

13    that sanctions were appropriate.

14              And I've read your opinion, Your Honor.  I

15    know you don't agree with that.  You're not the first

16    judge to disagree with one of my motions and I'm sure

17    you won't be the last.  But I can assure you that we

18    strongly felt that sanctions were appropriate here and

19    that's the route we took.

20              So, we filed our motion.  The sanctions motion

21    was denied.  And so now what?  I mean, the discovery we

22    served, the 30(b)(6) topics, which received no objection

23    from Health Grades, we don't have that discovery.  We

24    don't have the sanctions that would make that discovery

25    moot and so now what to we do?  I had to file -- and we

 1    filed this motion to compel which brings us here today.

 2              I understand, Your Honor, and I respect the

 3    denial of our sanctions motion, but this is a different

 4    issue now.  The issue now is whether Health Grades can

 5    effectively get away with this.  Whether those deponents

 6    who were not prepared -- and I think even in your --

 7    even your April 25 order recognizes they weren't

 8    adequately repaired, we didn't get the discovery we'd

 9    been seeking the entire case, and now the question is do

10    we just not get it at all.  And this is central to two

11    defenses, our invalidity defense as well as our

12    inequitable conduct defense.

13              THE COURT:  Well, let me ask you about that.

14    I've struggled throughout this case to try to understand

15    exactly what it is you'll be presenting in evidence as

16    to what the product is, what the patent is, what the

17    infringement is, what the prior art is, and I've had a

18    hard time getting my arms around that.  But it seems to

19    me that deposition testimony is the least likely way to

20    capture prior art; that you probably got this, or should

21    have gotten it, through screenshots or documents that

22    were produced, or some other more tangible form of

23    evidence.

24              MR. STIMPSON:  Well, actually, Your Honor, the

25    deposition testimony is very important.  And that's

1    because the claim elements here, it's not just issuing a

2    report on a healthcare provider.  Because we do have

3    that in document production.  But there are other

4    elements.  Where did you get this data?  The claims

5    themselves recite, for example, this data has to come

6    from the healthcare provider.  This data has to come

7    from third parties.  This data has to be

8    patient-provided data.  That's not clear from the

9    documentary record.  Where we have to get that is from

10   these depositions.

11           And also, a lot of these documents from 2006

12   and earlier they just don't exist anymore.  So the only

13   way for us to really know, for example, when did you

14   start putting comparison ratings in your healthcare

15   provider reports is this 30(b)(6) notice.  And I asked

16   him at the deposition.  It's I don't know.  They didn't

17   do anything to look, they just didn't know.  They didn't

18   know when they started putting healthcare provider

19   information in.  They didn't know when comparison

20   ratings were in.

21           So, the simple answer to your question, Your

22   Honor, is this is very important particularly in this

23   case on these types of patent claims.  Because it's not

24   just structure in the claims, it's where did you get the

25   data.  That's what's in the claims, and so that's why

1   it's so important.

2          Health Grades makes four -- basically four

3   arguments in their opposition, Your Honor.  The first

4   one is that we weren't diligent.  I know -- and I'll

5   grant the court it's been a long time since the Neil

6   deposition to today when I'm standing at this podium,

7   but as soon as we felt the issue was ripe we filed this

8   motion for sanctions which addressed the issue.  We

9   waited until expert discovery was done because, frankly,

10  Your Honor, I don't care.  If I didn't get this from the

11  30(b)(6) witness but the expert told me, I'm fine with

12  that.  But he didn't.  So we filed our motion for

13  sanctions.  That took its course.  The motion was

14  denied.  We filed our motion to compel.

15         So, since this issue was ripe we had been

16  pursuing it diligently.

17         THE COURT:  Will -- will further deposition of

18  Mr. Neil lead to do-overs?  Will you say, ah-hah, now,

19  we need to amend our expert and then now we'll need new

20  depositions of experts?  Maybe they'll say we need a new

21  deposition of the defendant's expert; now, we need to do

22  some more documentary discovery, on and on.

23         MR. STIMPSON:  Well, Your Honor, we've already

24  agreed in the pretrial order, and we've agreed with

25  counsel for Health Grades that the expert reports are

1    going to be supplemented at some point.  So, all this is

2    is just taking this deposition, and there's really only

3    a few elements that we need to address.  And if we get

4    what we're looking for, we'd like to supplement our

5    expert report just to reference the testimony.  And if

6    they decide -- and, in fact, we've decided -- we've also

7    decided that we're taking the -- and I think this was in

8    the pretrial order as well that we are going to be

9    taking anyway the technical experts again.  And that's

10   because they have the new Aetna claim.  Excuse me.

11           So, if we're going to be doing that anyway --

12   I hope I'm not misspeaking there, but I'm pretty sure

13   that's the case.  But if we're going to be doing that

14   anyway, Your Honor, this is only a little tiny bit added

15   to a huge expert report that can be done then.  If they

16   want to take our expert's deposition on it, I'll -- I

17   won't have any objection to that.

18           So, could it?  It could open up some expert

19   testimony, but we're going to be doing that anyway and

20   it won't be much if it's -- if anything.  And if I don't

21   get anything at the depositions then I've got nothing to

22   add anyway.

23           If there's -- if I can move on.  The second

24   argument that Health Grades makes in their opposition,

25   Your Honor -- and, frankly, this one concerns me.  And

1    it's not because I think it's correct, but it concerns

2    me because there's a lot of information there.  They say

3    that we've already received this information.  We

4    haven't, Your Honor.  I took these depositions.  I know

5    we did not get the information we're looking for.

6              THE COURT:  Well, they say the 2006/2007

7    timeframe is a date.

8              MR. STIMPSON:  Well, it's not --

9              THE COURT:  I -- I don't agree.  You don't

10   agree, I don't agree, so --

11             MR. STIMPSON:  I certainly -- yeah.  I mean,

12   the way he rephrased it, some of the key points was it

13   was 2006-ish.  Well, here, if it's February 1, 2006,

14   it's prior art.  If it's March 1, 2006, it's not.  So it

15   was just totally useless.  I have a clear and convincing

16   evidence burden.  That's not enough.  And they didn't do

17   anything to prepare for it.

18             So, Your Honor, I mean, I've been over their

19   testimony in detail.  I read it on the plane yesterday,

20   the stuff they cite and saying we've already got this.

21   It just does not support their position at all.

22             Just to give you one example -- as a practical

23   matter I can't stand here and go through everything, but

24   the first thing they say is they say, well, Mr. Neil

25   already told you that the physician research comparison

1    report was in 2004, and they cite a deposition page.

2    So, I go to the deposition page and sure enough it says

3    2004.  But if you read the stuff around what they cite

4    the court to, its not talking about that report at all.

5    It's talking about a different report.  And so you just

6    go through all these transcript pages and they do not

7    support their position, Your Honor.  I do not have the

8    information that we set out to get in that 30(b)(6).

9         And if the court's inclined at all to be

10   influenced by that part of the opposition, then we'd

11   request a reply.  I can have it in Monday and I'll just

12   show the court that it just does not hold water.

13        So there are only two remaining arguments that

14   Health Grades had.  Both can be dealt with very easily.

15   The first was they say it's not relevant; that the

16   Health Grades's prior art doesn't anticipate the claims.

17   That just doesn't make sense here, Your Honor.

18        I mean, I'm taking the depositions to show

19   that it's anticipatory.  And if I can't then it doesn't

20   matter anyway.  It's still extremely relevant because we

21   have an obviousness defense.  So, the fact that maybe

22   some of this prior art doesn't have every element of the

23   claim doesn't mean anything.  It's still extremely

24   relevant to our case.

25        And the last argument they have, Your Honor,

1    is just that -- I think they took a cue from your

2    April 25 order and they are now claiming that the topic

3    is overbroad.  Well, they didn't make that objection and

4    it's waived.

5            If there's nothing further, Your Honor.

6            THE COURT:  I have nothing right now.  Thanks.

7            MR. STIMPSON:  Okay.

8            THE COURT:  Mr. Vazquez.

9            MR. VAZQUEZ:  Good morning, Your Honor, and

10   may it please the court.  While it's fresh in my mind,

11   opposing counsel just represented that our cite to when

12   Mr. Neil discussed the 2004 date in which we said was

13   about the physician comparison research report, is on

14   page 110 of his deposition.  This is Exhibit A to our

15   opposition, Document 592-1.  He said that if you look on

16   the transcript that it doesn't support it.  I'm looking

17   at it right here, Your Honor, and the question by

18   Mr. Stimpson is, And so this is the physician quality

19   comparison report that was available, the type of

20   physician quality comparison report that was available

21   on Health Grades' website as of December, 2004, right?

22   And Mr. Neil says, Yes.  So I'm not sure why he thinks

23   that this does not support our contention that he

24   answered as to that particular question.

25            Now, this motion to compel, Your Honor, should

1  be denied for various reasons.  First of all, it is

2  untimely.  You know, MDX took this Rule 30(b)(6)

3  deposition on June 13, 2012.  They did not move to

4  compel additional Rule 30(b)(6) testimony during the

5  deposition.  They did not move to compel additional Rule

6  30(b)(6) testimony before the deadline for fact

7  discovery expired on June 15, 2012.  That's just

8  two days after the deposition, but they could have

9  certainly made the motion in that timeframe, and they

10  didn't.  And they've never explained why not.  The first

11  time we hear a reason for that is now about the issue

12  being ripe, and when the issue was ripe they moved for

13  sanctions.  Well, I don't understand why six months

14  after the deposition the issue became ripe and that they

15  chose to move for sanctions.

16        And, Your Honor, they didn't move for this

17  additional Rule 30(b)(6) testimony as an alternative to

18  the sanctions.  Okay?  They went for the home run.  It

19  was overreaching as you ruled.  And then, oh, okay.

20  Well, now, let's try again.  That's improper.

21        THE COURT:  Why is that?  "Let's try again."

22  "That's improper."  Why do you say that?

23        MR. VAZQUEZ:  Well, Your Honor, I know the

24  court in this case and in all cases is concerned with

25  efficiency.  You know, so we have one motion, it was

1   unsupported.  In your order denying that motion for

2   sanctions you covered a lot of what counsel just

3   discussed.  I mean, this notion that he did not get the

4   discovery he asked is simply not true, and we have

5   articulated that in painstaking detail in various

6   motions.

7           We supplied 500,000 documents search results

8   of their search terms, which were very broad.  We've

9   never disobeyed a discovery order in this case.  So,

10  this comes back to what we said in our opposition to the

11  motion for sanctions, Your Honor.  You know, the PDPs

12  weren't withheld.  Nothing was withheld.  You noted

13  that.  Yet, he keeps coming back here and saying, oh,

14  they've withheld.  They're hiding something.  So now,

15  because they've withheld it and are hiding it we need to

16  go and re-depose the corporation via Rule 30(b)(6).  So,

17  this notion that we've withheld and hidden should be put

18  to rest.  It's simply not true and the court has already

19  ordered that.

20          Now, when they moved to compel this additional

21  Rule 30(b)(6) testimony, Your Honor, there was no rule

22  cited, no authority for it.  We believe that it's

23  Rule 16 that applies here, because what we're

24  essentially asking is to reopen fact discovery.  The

25  standard for allowing that, Your Honor, is demonstration

1    of good cause.

2              The good cause standard of Rule 16 requires

3    that they show that they can not meet the scheduled

4    deadline despite diligent efforts.  There's been no

5    explanation why this could not -- they could not move

6    during the deposition.  I mean, we're hearing about

7    this, oh, it was useless, but the fact is that

8    counsel -- opposing counsel during the deposition, if

9    this was all true, could have said right there on the

10   record, Jesus, we need -- I need you to produce somebody

11   who can answer this question better.

12             THE COURT:  Well, he did.  He said you were --

13   he was missing his son's baseball game.  That's the part

14   that sticks in my head, but there was a lot of --

15             MR. VAZQUEZ:  That one sticks out --

16             THE COURT:  -- other complaining.

17             MR. VAZQUEZ:  -- for me too.  And I remember

18   Mr. Neil's response, which was we're all missing

19   something.  But that's very different, Your Honor, from

20   saying, look, I want to make a motion on the record;

21   here is the topic, here are your answers, can you either

22   answer it or if not I'm going to move.  He never really

23   moved.  He did not make a motion.  And he didn't make a

24   motion in the following days before fact discovery or

25   even some reasonable time after.  Six months later he

1    moved for sanctions, and only sanctions.

2          Now, opposing counsel could -- could -- just

3    represented that what we say -- the transcript says

4    isn't what the transcript says.  I don't know how you'd

5    like me to handle that.  I'm prepared to go through

6    every single instance where they say, well, Mr. Neil

7    didn't do X and point the court to the transcript.

8    That's in our brief.

9          Now, you know, one of the ones that stick out,

10   you know, I think it's worth highlighting is this issue

11   of the physician restriction comparison reports.  They

12   assert in their motion at page 2 that Mr. Neil was

13   unable to identify a date when that report was made

14   public.  He said, As of December, 2004.  He also

15   testified that this report never included information,

16   the following -- these three pieces of information, all

17   of which are required by the claims.  There's

18   information provided by physicians, patient ratings and

19   comparison ratings.

20         Mr. Neil testified that the only source of

21   information for those reports was third parties.  That's

22   exactly what Mr. Stimpson was saying a little earlier

23   about, well, there's pieces of information that come

24   from different -- different people.  Well, his testimony

25   says the only information that came into that report was

1    from third parties.  That's the answer.  He may not like

2    it because it doesn't include all the other types of

3    information which are necessary for him to prove his

4    defenses, but that's what Mr. Neil said and the record

5    is clear.

6              Now, there's a little bit of a, I think,

7    wordplay here that is worth highlighting, although I'm

8    sure you noticed it from our briefing.  At their motion

9    at page 2 they say that Mr. Neil was unable to state

10   when healthcare providers began providing information

11   for their physician research comparison reports, Your

12   Honor.  That's incorrect, and that's twisting and

13   misrepresenting what happened here.  Because Mr. Neil

14   testified that those reports never included information

15   from physicians.

16             So, they say, oh, he was never -- he didn't

17   tell us when -- if they included information from

18   physicians.  Well, Mr. Neil said that information just

19   was never included in those reports.  That's very

20   specific.  That shows that he did prepare, did his best

21   to.

22             Some of the same issues arise with their

23   allegations about the physician quality reports, Your

24   Honor.  They assert that Mr. Neil did not know when

25   comparison ratings were added to the physician quality

1    reports.  Again, Your Honor, Mr. Neil testified that

2    this happened in '06 or '07.  I heard you earlier

3    saying, well, that's not a date.  That's the best he

4    could remember.  And as you noted in your order and in

5    the cases that we cited in response in our opposition to

6    their motion for sanctions, you know, he can't be

7    expected to be clairvoyant.  Just because he doesn't

8    know the answers to everything doesn't mean that he

9    failed to prepare.  So, you know, as to that particular

10   question he gave an answer.  If we bring him back, the

11   answer is not going to change it will be inefficient and

12   waste of resources.

13        They say in their motion that Mr. Neil did not

14   know when information from healthcare providers was

15   added to the physician quality reports.  But, again,

16   Your Honor, Mr. Neil testified that the physician

17   quality reports included information from physicians as

18   of August 2nd, 2005.  That's a precise answer.  And I --

19   and in our briefing we point the court the deposition

20   transcript where you can confirm this yourself.

21        Alas, there's three reports:  The physician

22   research comparison reports, the physician quality

23   reports and the third one is the physician quality

24   reports [sic].  So -- or guide.  Excuse me, physician

25   quality guide.

1          Now, it's true that Mr. Neil had a hard time

2     remembering specifics about the physician quality guide,

3     but he said, you know, I recall that they're pretty much

4     the same thing as the physician quality reports.  And

5     that's true.  And that's corroborated by Mr. Dodge's

6     Rule 30(b)(6) deposition testimony.  And we've also

7     cited his transcript to the court for you to see that.

8     Mr. Dodge testified that those reports were similar in

9     substance to the physician quality -- to the physician

10    quality guides were similar in substance to physician

11    quality reports, but they had a different look and feel

12    because they were directed to employers versus

13    consumers.

14          Consistent with that, Mr. Neil testified that

15    he believed the physician quality guides were the same

16    as the physician quality reports.  But, Mr. Neil also

17    testified, Your Honor, about when patient ratings were

18    added to the reports.  Again, this was the '06-'07.

19    That's just the best he could do.  This is after

20    spending time looking at documents.  Again, Your Honor,

21    we've produced hundreds of thousands of pages of

22    documents.  You ordered us to do that by May 10th.  If

23    you'll recall, on May 10 we had a hearing and we made

24    those productions.  We've complied with that order.  The

25    same cannot be said for MDX as you're well aware.

1           You know, we can talk about the relevance too,

2      Your Honor, but, again, I think that's going to get us

3      bogged down.  I'm -- I'm willing to get into it with --

4      you know, and tell you whatever detail you'd like or

5      answer whatever questions you have.  But one thing

6      really sticks out, Your Honor, is that MDX has admitted

7      in pleadings that these three reports in the

8      parenthetical that they want to have more deposition

9      testimony on, they did not include comparison ratings of

10     human healthcare providers.  They've admitted this in

11     their summary judgment opposition.

12          So, those reports and any information he can

13     get about them they will not cure a fundamental flaw in

14     their invalidity defense.  They don't have that.

15          Finally, Your Honor, you noted how the

16     original topic was sweeping and overbroad.  And it is

17     absolutely true that the portion that they now seek to

18     reopen discovery on and take deposition testimony on is

19     still overbroad.  It is -- I mean, the topic, if you

20     recall, is prior to August 19, 2006, and there's

21     ellipses, facts concerning dates of use, structure,

22     operation, development, testing, sales, public access,

23     and the accessing and compiling of all data used in

24     Health Grades physician research comparison report,

25     physician quality report and physician quality guide.

1        So, Your Honor, what specific facts concerning

2   structure, operation, development, testing, and sales,

3   public access, and the access and compiling of all data

4   used in are covered by this portion?  Well, we do this,

5   and then, oh, well, I didn't hear the facts that I

6   wanted to hear so I'm going to come back to the court

7   and try again.  It's still overbroad.  It still subjects

8   us to this impossible task of trying to prepare for

9   something that's sweeping and overbroad.  They have not

10  taking the time, as you have noted, to detail with the

11  painstaking specificity that's required what they want

12  to examine for a Rule 30(b)(6) designee on.

13       THE COURT:  So, Mr. Stimpson makes much of the

14  fact that you didn't object on overbreadth to the topics

15  that you've now just adopted criticism that I like, and

16  isn't that the purpose of Rule 7.1(a)?  It's much more

17  narrow now than it was then.  Mr. Stimpson has made

18  clear -- clearer today what it is he's worried about,

19  and in a meaningful 7.1(a) conference he might be able

20  to make it -- I assume he would be able to make it even

21  more clear yet.  So, since you didn't object to it when

22  it was even worse why should I hear that it's overbroad

23  now that it's been narrowed?

24       MR. VAZQUEZ:  Well, this to us is a surprise.

25  Discovery has been closed for 11 months, almost a year.

1    And so the reason we are raising the objection now is

2    not because your order denying the sanctions motion,

3    Your Honor, it's simply because he just raised it now.

4    And you were right.  Now, there are I think some

5    philosophical differences in styles here, Your Honor.

6         You will recall that we had a big amount of

7    litigation before you about our Rule 30(b)(6) topics.

8    And the way that went was we drafted a set of topics,

9    Mr. Stimpson rejected them outright.  We narrowed them

10   and amended them.  He again, rejected them outright.

11   There was no let's negotiate, well, how about you try

12   this, Jesus.  I'll accept this.  Every single time was

13   just, no.  I move to strike.  I move to strike.

14   Eventually, we had a hearing here and you said, you

15   know, not all of these are -- are too broad but some of

16   them are.  You guys go back and try again.  And

17   eventually we came to an understanding about the scope

18   of our 30(b)(6) topics.

19        I don't know if this is just a style

20   difference that -- that emanates from how you practice

21   in New York versus here in Colorado, but, you know, we

22   try to just negotiate and resolve this.  And -- and we

23   found that when they just outright move to strike every

24   attempt we had to negotiate our 30(b)(6) topics that

25   that was unreasonable.  In the end you went, well,

1    Mr. Vazquez, some of these are -- actually it was our

2    partner Greg Kanan who argued that here, and you said,

3    look, not all of these are bad.  Some are.  I'm not

4    going to sit here and go through these 45 one by one and

5    rule, so go back and work it out.  Which we did.

6          I think our objection right now, this is the

7    first time that this particular topic, this portion, has

8    been asked, has been put forth as a proposed topic, so

9    we're making the objection.  I mean, what can I say,

10   Your Honor.  We do agree with your analysis of it -- you

11   know, when it was broader, but I still think that this

12   portion, if you look at it, it's just as broad and it's

13   still has the same flaws.

14         I mean, it was their burden, Your Honor, as

15   you noted to make a topic that was detailed.  They

16   didn't do that.  We don't know exactly what they seek

17   now from that topic.  So, that's just another reason why

18   I believe this motion should be denied.

19         You know, I guess to sum up, opposing counsel

20   I heard him say, well, you know, if we would get what

21   we're looking for.  Your Honor, how much more can they

22   be allowed to look?  If it's not there it's not there,

23   and that's essentially the problem here.  Okay?  That's

24   what they just are reluctant to accept.  Okay?  They

25   filed this motion saying that we withheld the prior art.

1     That was completely wrong.  We haven't withheld

2     anything.

3              Not only that, counsel's well aware that we

4     have tapes and we've preserved every single piece of

5     data, and we said if you want to go through those tapes,

6     the case law is clear, you can -- you can -- you can do

7     it but you're going to bear the cost.  Well, they chose

8     not to do that.  Okay.

9              So, they've -- we have bent over backwards to

10    produce everything that's responsive to every one of

11    their requests.  What they seek to win their invalidity

12    defense does not exist.

13             Just a few other points, Your Honor.  The case

14    law is clear, and I know counsel is aware of it, that

15    oral testimony regarding invalidity must be corroborated

16    by a writing.  Okay?  So, this notion that Mr. Neil can

17    give the -- finally the answer they're looking for and

18    then they have what they're looking for is not accurate.

19    Oral testimony on invalidity must be corroborated by a

20    writing.  So, we've given them all of the documents

21    responsive to all of their discovery requests.  They had

22    them in preparation for Mr. Neil's deposition as a

23    designee of Health Grades.  They had the opportunity,

24    they had the documents to make that corroboration.  They

25    didn't do it.

1          If you have any questions, Your Honor, I'll be

2     glad to answer them.  Otherwise, that's all I have on

3     the motion to compel.

4          THE COURT:  I don't have any other questions.

5     Thank you very much.  Mr. Stimpson.

6          MR. STIMPSON:  If I can just -- I'll be brief,

7     Your Honor, and start where Mr. Vazquez started.  He

8     came up here, and I told you about that part of their

9     brief where they cite all of this deposition testimony

10     and how confusing it got, and he came up and read you

11     that portion from page 110.  This is what their brief

12     says:  Mr. Neil testified that the physician research

13     comparison report was publicly available as of December,

14     2004 -- this is at page 3 of their brief.  Mr. Neil

15     testified that the physician research comparison report

16     was in 2004.  What Mr. Vazquez just read to you, so this

17     is the physician quality comparison report.  It's a

18     different report.

19          And then if it wasn't clear enough, five lines

20     down it goes on to compare those two different reports

21     and how they're different.  They're different reports.

22     And it's the same thing I saw reading all their

23     transcripts.

24          Just a couple points, Your Honor.  Because

25     they're trying to say we have what we have.  Page 119,

1   lines 5 to 11 of Mr. Neil's report:

2           "So, I mean, just so I'm perfectly clear here,

3   as we sit here today you can't tell me whether or when

4   physician quality comparison reports included

5   information received from the healthcare providers,

6   correct?

7           "Answer:  I'm unsure of the date or whether

8   this form of report ever include that information."

9           Another key claim element, page 251.  This

10  question could not have been clearer.

11          "When were comparison ratings first added to

12  Health Grades' reports?

13          "Answer:  I don't know."

14          So, Mr. Vazquez stood here and told you -- and

15  these are his exact words, Your Honor, because I wrote

16  them down.  Mr. Neil, quote, did the best that he could.

17  Page 33, lines 10 to 25 explains all he did was meet

18  with counsel.

19          "Question:  Anything else you did to prepare?

20          "Answer:  No."

21          Page 34, lines 11 to 17:

22          "To talk about the topics that you're assigned

23  -- that are assigned to you did you speak with anyone

24  besides counsel?

25          "Answer:  No.

1          "Did you look at any documents that have

2     not -- that have not been produced to MDX to your

3     knowledge?

4          "Answer:  No."

5          So he just met with counsel.  So, he didn't --

6     that is not doing your best to prepare for this

7     deposition.  It just isn't, Your Honor.

8          This is really important for our invalidity

9     defense, Your Honor, and so we respectfully request

10    leave to take the deposition.  Thank you.

11         THE COURT:  Thank you.  The motion to compel

12    is denied.  I find that MDX has engaged in seriatim

13    motion practice.  It filed a motion.  It lost the

14    motion.  It now has filed a new motion based upon the

15    same facts but seeking different results or relief, and

16    that's not how the Federal Rules of Civil Procedure were

17    designed to work.  If that were the case there would be

18    no end to the possible briefing that would go on, and

19    cases would -- all cases would have nearly 600 docket

20    entries as this case now approaches.

21         In essence, I find that the motion to compel

22    is a motion for reconsideration under *Servants of*

23    *Parcletes*, 204 F.3rd 1005, page 1012, the Tenth Circuit

24    said, grounds warranting a motion to reconsider include

25    an intervening change in the controlling law, new

1    evidence previously unavailable, and the need to correct

2    clear error or prevent manifest injustice.  Thus, a

3    motion for reconsideration is appropriate where the

4    court has misapprehended the facts, the parties position

5    or the controlling law.  It is not appropriate when the

6    movant seeks to revisit issues already addressed or to

7    advanced arguments that could have been raised in prior

8    briefing.

9           This matter could and should have been raised

10    in a different way.  For reasons that Mr. Stimpson has

11    explained, he chose to do it differently.  That was a

12    risk he took.  But I'm not going to have this litigation

13    go on and on and on with seriatim motions addressing the

14    same issues but seeking different relief.  So, the

15    motion is denied.

16           That brings us to the motion to amend pretrial

17    order.  Mr. Vazquez.

18           MR. VAZQUEZ:  So, Your Honor, pending before

19    the court is our motion to supplement the pretrial order

20    with a revised exhibit list, and our motion to amend the

21    pretrial order by adding Philip Braginsky who is MDX's

22    lead counsel's former partner, and who rendered a

23    non-infringement opinion for MDX, to list him as a

24    witness whose testimony may be presented via deposition.

25           I'll start with the exhibit list, revised

1    exhibit list, Your Honor.  As I'm sure you recall when

2    we had the pretrial conference we indicated that we

3    would try to reduce the number of exhibits in our list,

4    and we would file a revised exhibit list, and we did it

5    pursuant to your guidance, styled as a motion to

6    supplement the pretrial order.

7           I'm sure you recall that you struck our

8    reservation of rights to add exhibits.  Four exhibits --

9    four out of the five that are at issue here --

10           THE COURT:  Well, they don't oppose --

11           MR. VAZQUEZ:  They don't oppose, so --

12           THE COURT:  -- 91 through 94.

13           MR. VAZQUEZ:  So, I would just -- so, there's

14    only one -- one exhibit at issue, but I did not want to

15    just act like I was not aware of your striking our

16    reservation to add exhibits.  We just want to make aware

17    that we did add four exhibits.

18           Now, the only exhibit at issue is this video

19    which is put out by the patent office.  This video, Your

20    Honor, is shown in patent infringement cases across the

21    country.

22           THE COURT:  Isn't it really -- I think you say

23    it, isn't it really demonstrative or something like

24    that?  It's not going to go back to the jury.  You can

25    raise *in limine*, I suppose, with Judge Moore whether

1     he'll allow you to use it as part of your opening

2     statement or something like that, so why should I take

3     it up as an amendment adding an exhibit if it's not

4     really an exhibit?

5               MR. VAZQUEZ:  Well, in the cases that this

6     video has been shown, it actually has been shown to the

7     jury and very often right at the beginning of the case.

8               THE COURT:  Well, presented, just like a

9     demonstrative chart might be presented, but it's not

10    admitted into evidence and taken with the jury to the

11    jury room, or is it?

12              MR. VAZQUEZ:  No.  No.  So, you're right.  It

13    is not evidence.  It is meant to simply illustrate the

14    patent laws and, you know, help the jury focus on what

15    is a somewhat complex matter, you know, patents.

16              THE COURT:  So, isn't this better raised --

17    with respect to the video isn't this better raised

18    *in limine* with Judge Moore once he has considered jury

19    instructions?  One of the things Mr. Stimpson says is

20    the law has changed, it's an old video.  Perhaps Judge

21    Moore will give instructions which aren't entirely

22    consistent with it, that sort of thing.

23              MR. VAZQUEZ:  I think that it is better raised

24    by them.  I think it should be allowed to be on the

25    list, but we've all agreed that we're preserving our

 1    objections.  So they can then move to exclude it via

 2    motion *in limine* as you suggest, but why not include it

 3    at this point?  We have an agreement that the parties

 4    will exchange -- identify and exchange all illustrative

 5    and demonstrative exhibits at a later date.  We just had

 6    this one now.  We just put it on there just to, you

 7    know, give them the most notice possible.  And so I

 8    don't understand why you cannot remain -- particularly,

 9    because both sides agree that admissibility itself is

10    something that will be ruled on later by Judge Moore.

11          THE COURT:  We keep, I think, crossing like

12    ships in the night.  If it's not an exhibit and it's not

13    evidence, it's not admitted, it shouldn't be on the

14    witness -- on the exhibit list, why are we here?  Will

15    you move the admission of the video?

16          MR. VAZQUEZ:  I'm sorry will I what?

17          THE COURT:  Will you move the admission into

18    evidence --

19          MR. VAZQUEZ:  Not into evidence.

20          THE COURT:  -- of this video?  Then it's not

21    an exhibit, right?

22          MR. VAZQUEZ:  It's not an evidentiary exhibit

23    for trial, correct.  It's an illustrative exhibit.

24          THE COURT:  All right.  And you're going to do

25    that lighter on.

1            MR. VAZQUEZ:  We agreed to exchange them later

2     on.

3            THE COURT:  Are they all listed on the -- are

4     all of your demonstratives --

5            MR. VAZQUEZ:  No.

6            THE COURT:  -- listed?

7            MR. VAZQUEZ:  No.  The parties have not yet

8     exchanged those.

9            THE COURT:  Okay.

10            MR. VAZQUEZ:  Okay.  So then the other issue

11     is as to the motion to amend to add Mr. Braginsky.

12            THE COURT:  Now, am I accurate that the

13     defense has abandoned Mr. Braginsky as a trial witness?

14            MR. VAZQUEZ:  Well, I'm not sure if they have

15     abandoned him.

16            THE COURT:  He's not listed, right?

17            MR. VAZQUEZ:  He's not listed, but they

18     certainly are relying on his opinion.

19            THE COURT:  Well, how will they get it into

20     evidence if he doesn't testify?

21            MR. VAZQUEZ:  That's -- that was -- that's

22     exactly our question, Your Honor.

23            THE COURT:  Well, you don't want it into

24     evidence?

25            MR. VAZQUEZ:  Well, there's a pending motion

```
 1    for summary judgment of nonwillfulness that they have

 2    filed and so Mr. Braginsky's opinion is central to that

 3    motion.  And I'm sure you'll --

 4              THE COURT:  Let's assume -- let's assume that

 5    it's their motion for -- I'm sorry, there's a pending

 6    motion for what?

 7              MR. VAZQUEZ:  It's our motion to simply add

 8    Mr. Braginsky.

 9              THE COURT:  No.  No.  No.  Braginsky is going

10    to testify --

11              MR. VAZQUEZ:  Oh.

12              THE COURT:  -- that there's no infringement,

13    correct?

14              MR. VAZQUEZ:  Well, if they bring him.  But

15    it's my understanding from counsel --

16              THE COURT:  And -- and the defense has filed a

17    motion for partial summary judgment on the issue of

18    willfulness, and that's where his opinion comes in?

19              MR. VAZQUEZ:  Well, that's one of the places

20    where it's come in.

21              THE COURT:  And where else?

22              MR. VAZQUEZ:  Well, it was initially disclosed

23    a year ago with -- pursuant to the patent rules as -- as

24    the opinion that they intend to rely on in defense of

25    our claim of willful infringement.  It's been cited then
```

1    in the -- first, they refused to produce him for

2    deposition, so we had to move to compel.  And you

3    compelled that he be deposed.  We took the deposition,

4    so -- so, he's been, you know, a central figure to this

5    litigation.  So --

6              THE COURT:  In what motions now pending before

7    the court is Mr. Braginsky's opinion relied upon, if

8    any?

9              MR. VAZQUEZ:  Okay.  I'll tell you in just one

10   second, Your Honor.  They -- well, as I mentioned

11   earlier it's not a motion but they disclosed him as --

12             THE COURT:  I don't want that.

13             MR. VAZQUEZ:  -- as relied upon.

14             THE COURT:  I only want -- you can --

15             MR. VAZQUEZ:  A motion --

16             THE COURT:  -- say anything you want --

17             MR. VAZQUEZ:  Docket 3 --

18             THE COURT:  -- after you've answered my

19   question.  My question is what pending motions is the

20   opinion relied -- in what pending motions --

21             MR. VAZQUEZ:  Their motion.  Their summary

22   judgment motion of no willfulness, which is Docket 371.

23             THE COURT:  Okay.

24             MR. VAZQUEZ:  That was filed November 2nd,

25   2012.

```
 1              THE COURT:  So if that motion is denied, then
 2    why -- why -- well, regardless, why do you want
 3    Braginsky on your exhibit list?  Why will you call him?
 4    What testimony do you plan to elicit?
 5              MR. VAZQUEZ:  Well, we went to New York and
 6    took his deposition.  And the deposition demonstrated
 7    that the opinion is not competent, Your Honor, and it's
 8    not objective.  And, therefore, as we have articulated
 9    in our supplement to our opposition to their motion for
10    summary judgment of non-willfulness it was not
11    objectively reasonable for MDX to continue its
12    activities.  That is why we -- we believe this testimony
13    is crucial to this willfulness issue, Your Honor.
14              When we took the deposition -- right after the
15    deposition we said, well, now we would like to
16    supplement our opposition to their motion for summary
17    judgment of non-willfulness.  And MDX agreed as long as
18    they had an opportunity to respond, and they did.
19              THE COURT:  So, if I understand what you're
20    saying it is that you want to put Braginsky up on the
21    stand, say, Mr. Braginsky, what's the basis for your
22    opinion that there was no willfulness.  He'll testify to
23    what you consider to be hokum.  Then you'll put somebody
24    on the stand and say before they -- the defense could
25    have relied on that opinion they should have had
```

1    something more, so relying on that opinion -- and

2    Mr. Braginsky was improper and so we are entitled to

3    punitive damages or --

4              MR. VAZQUEZ:  Well, to -- to just be clear,

5    Your Honor, we're not going to put him on the stand

6    because counsel and MDX have been clear saying they will

7    not bring him.  So he's beyond our subpoena power, so --

8              THE COURT:  (Unintelligible).

9              MR. VAZQUEZ:  -- we would play his -- his

10   video, the video of the deposition.

11             THE COURT:  Right.  Right.  Right.

12             MR. VAZQUEZ:  But, you know, most succinctly,

13   Your Honor, we want to use his deposition to rebut the

14   opinion that MDX is relying on to defend against

15   willfulness.

16             THE COURT:  His opinion.

17             MR. VAZQUEZ:  Yes.

18             THE COURT:  How will they get it in?

19             MR. VAZQUEZ:  I don't know how they're going

20   to get it in, and it's not my burden to -- to do.  I can

21   tell you I was surprised.  And that was the genesis of

22   this motion when we saw they did not list him.  Well,

23   Jesus, then we must.

24             THE COURT:  Did -- do they list in their

25   exhibits the opinion?

1           MR. VAZQUEZ:  I'm not exactly sure.

2           THE COURT:  Mr. --

3           MR. VAZQUEZ:  But I think they have.

4           THE COURT:  Mr. Stimpson says yes.

5           MR. VAZQUEZ:  Yes.

6           THE COURT:  We'll take him at his word.

7           MR. VAZQUEZ:  Yes.  So, I know you're aware of

8    the test.  I know you've ruled on motions to amend

9    pretrial orders many times, Your Honor, and here I think

10   it's just perfectly clear that we meet the test.  The

11   first element is surprise.  Is there surprise?  There is

12   no surprise.  Mr. Braginsky is central to their defense

13   of willfulness.  They've been aware of Mr. Braginsky.

14   Mr. Braginsky was deposed in New York.  Mr. Stimpson

15   defended him at that deposition.  They have the video.

16   They have the transcript.  This is not the type of

17   situation where suddenly there's a surprise witness that

18   nobody had heard about on the eve of trial.  So there is

19   no surprise.

20           The second element is can you cure the

21   surprise or prejudice.  Well, there is nothing to cure

22   here because there is no surprise or prejudice to them.

23           The third element is whether there is a

24   disruption in the proceedings.  The case law treats that

25   element as addressing trial, and in almost all the cases

1    if the trial can be -- if the party that's opposing the

2    amendment can move to continue the trial then that

3    element is found to go in favor of allowing the

4    amendment, Your Honor.  Here, trial is nine months.  We

5    moved nine months before trial to add Mr. Braginsky, so

6    there is no disruption in the proceedings.

7         And the fourth element is bad faith.  There's

8    no bad faith here.  We didn't intentionally withhold

9    listing Mr. Braginsky in the pretrial order, so -- and I

10   pointed out a case in our motion, Your Honor, where even

11   if there was bad faith -- and I think this is Judge

12   Arguello's case -- if the other three factors mitigate,

13   you know, in favor of the amendment then the amendment

14   should be allowed.

15        I mean, we have Judge Kane, Judge Mix, Judge

16   Arguello, even an opinion of Your Honor that we cited

17   where in your opinion you made clear to say that if this

18   is -- the manifest injustice elements, if those are

19   shown that shows manifest injustice.  I only bring that

20   up because in their opposition they say that we didn't

21   argue manifest injustice but, clearly, if you meet those

22   elements that's the law.  You've shown manifest

23   injustice.

24        And, lastly, Your Honor, the cases all talk

25   about how those elements, that test need to be -- needs

1    to be resolved, you know, with a mind towards a fair

2    trial.  Full and fair trial of the issues.  And here,

3    given the importance of a willful infringement claim in

4    their defense on this attorney's opinion, it would be

5    completely unfair.  It would not be a full and fair

6    trial if we were not allowed to present this testimony.

7             Under Rule 32(a)(4), Your Honor, this

8    testimony is admissible.  We're not talking about

9    admissibility here, but it is admissible because we have

10   been told he is not coming, and he's beyond our subpoena

11   power.

12            THE COURT:  So, here's what I thought when I

13   read this motion.  Well, first of all, I was surprised

14   to find out that Mr. Braginsky was a partner at -- at

15   the Sills Cummis firm.  But I saw that on the letterhead

16   and then I thought, ah-hah, this is a stalking horse to

17   a motion to disqualify counsel, because of that

18   relationship of Mr. Braginsky at one time to trial

19   counsel's firm.  And I'm not going to go there under any

20   circumstance.

21            So, then I thought, well, then that explains

22   why at the time that these highly paid and highly

23   skilled lawyers were looking over the final pretrial

24   order they didn't raise the Braginsky issue was because

25   it's all part of a stalking horse, and I became very

1    suspicious.  So, I have two questions.  One is, why

2    didn't you notice it when you were preparing the final

3    pretrial order and do it when that occurred; and second,

4    what assurance do I have that this isn't going to lead

5    to the bigger problem of potential motion to disqualify

6    Mr. Stimpson and his firm?

7            MR. VAZQUEZ:  Okay.  Your Honor, I'll just

8    answer the second question first.  We have no intent to

9    file any motion to disqualify.  We have addressed this

10   issue that Mr. Braginsky was a former partner of

11   Mr. Stimpson, and also worked on matters on this case

12   unrelated to the opinion.  We have addressed that issue

13   in our supplement to our opposition to their motion by

14   showing that the opinion is not objective because of

15   that very reason.  And that's all we intend to do with

16   that.

17           The answer to the first question, Your Honor,

18   it was simply inadvertent.  Now, I can quickly remind

19   the court -- well, as you can recall the first time we

20   came here to submit our pretrial order in late January,

21   Mr. Braginsky had not been deposed yet.  We had a big

22   brouhaha, MDX wanted to move to strike 27 pages of that

23   proposed pretrial order.  You sent us back and asked us

24   how do we want it.  Do we want you to resolve it in our

25   motions or do you guys want to go back and try and

1    resolve it.  So, we did.  We went back and we worked

2    hard together to resolve all of those issues.  That was

3    our focus.

4            In the back of my mind I always assumed they

5    must list him for the issues -- for the same questions

6    you're raising.  The opinion is hearsay.  How are they

7    going to get this in?  So, I was surprised.  And in the

8    motion I say it, that the very day that I realized that

9    they had not listed him and we had not, and therefore,

10   our catchall, any witness stay list we also can examine

11   was ineffective as to Mr. Braginsky.  The very same day

12   which was just one month after pretrial order I asked

13   Mr. Stimpson, okay, we want to move to supplement our

14   opposition with his testimony and we also need to add

15   him.  And opposing counsel said, well, we don't have a

16   problem with the supplement but no way, we're not going

17   to let you add him now.  So, that answers your two

18   questions, I hope.

19           THE COURT:  That does.

20           MR. VAZQUEZ:  If there isn't anything else

21   then I'll sit down.

22           THE COURT:  Thank you.  Mr. Stimpson.  Let me

23   guess, it's not offered for the truth of the matter

24   asserted, it's offered for the fact it was said and the

25   mindset --

1           MR. STIMPSON:  Absolutely.

2           THE COURT:  -- which that resulted in with

3    respect to the client.

4           MR. STIMPSON:  Exactly.  It's not hearsay at

5    all.  It's -- then they'll be some limiting instruction

6    saying it can't be used for the truth of the matter that

7    there's no infringement.  That's what happens all the

8    time.  It's (unintelligible) easily admissible without

9    Mr. Braginsky.

10          Um, let me just get rid of the video issue

11   first, Your Honor.  I had an argument prepared there

12   but, frankly, I like yours better.  And as long as

13   Mr. Vazquez says they're not going to try to admit it, I

14   think that is the best way to handle it.  We'll just --

15   we're exchanging demonstratives later and we'll just

16   deal with it that way and raise it with the judge.

17          So, on Mr. Braginsky, Your Honor, this is

18   just a -- this is just a colossal sideshow.  This is --

19   the issue is the state of mind of MDX.  The people at

20   Running Vitals what was their state of mind.  They have

21   got -- you know, every lawyer false in love with his own

22   arguments.  I'm no exception, but they have got nothing

23   (unintelligible).  Nothing.  The patent issued.  They

24   saw Mr. Braginsky, said there's no infringement.  Here's

25   some other stuff you can do if you really want to be

1    far, far away from it, and they did that.  So they've

2    got nothing on MDX.  Nothing.

3              So, they can't point the finger at MDX, and

4    now they want to point the finger at Mr. Braginsky and

5    say, oh, you're a bad guy, you didn't do this right and

6    this opinion is not competent.  And what they want to do

7    is they want to criticize the opinion and how it was

8    done and, you know, you didn't think about this case

9    law, you didn't think about the claims -- the claim

10   construction this way.  The question is a state of mind

11   of MDX.  If the CEO of MDX knew the difference between a

12   competent opinion and an incompetent opinion he wouldn't

13   need an opinion.  It's all --

14             THE COURT:  Well --

15             MR. STIMPSON:  -- about --

16             THE COURT:  Well, suppose -- I haven't seen

17   Mr. Braginsky's deposition testimony, but suppose he

18   said, I was told to render the opinion that there is no

19   infringement and I'd get paid $750,000 to do that, and I

20   thought that sounds pretty good to me.  Okay.  Now, that

21   would be something -- and I was told that by the CEO of

22   MDX.  That would be something that we'd want to have the

23   jury hear.

24             MR. STIMPSON:  Yeah.  Well, in that case, Your

25   Honor, if there were something -- you asked Mr. Vazquez

1    why they needed him, but there was nothing like that,

2    and there isn't anything like that.  Everything that's

3    relevant came from the CEO.  They took his deposition on

4    this and they asked him the questions.  This is just a

5    real irrelevant sideshow, Your Honor.  And I cited cases

6    to you where some courts, even when it's in the pretrial

7    order they say no way.  You're not putting this guy on.

8    His state of mind isn't at issue.

9           But just beyond the fact that it's just got no

10   relevance here, they have to show manifest injustice

11   Your Honor.  And we've cited you Tenth Circuit case law

12   saying that if there's -- if they knew about it and they

13   didn't put it in their pretrial order there's no

14   manifest injustice.  And they knew about it.  And it

15   wasn't inadvertent because they put in the pretrial

16   order themselves stuff about Mr. Braginsky.  His name is

17   in the pretrial order.  They put it in there.  And then

18   they looked at the witness list and said nope, he's not

19   coming.  So, it wasn't really inadvertent.  They had it,

20   they just chose not to put it in and now they're

21   changing their minds.

22          And they're not losing claims or defenses

23   here, Your Honor, it's just some testimony that they

24   think is relevant to a claim of willfulness that they'll

25   have anyway if we don't win our summary judgment motion.

1    So there's no manifest injustice here, Your Honor.

2              Unless you have further questions --

3              THE COURT:  I don't think so.

4              MR. STIMPSON:  Thank you.

5              THE COURT:  Thank you.

6              MR. VAZQUEZ:  Very quickly, Your Honor.

7              THE COURT:  Mr. Vazquez.

8              MR. VAZQUEZ:  Your Honor, the issue before us

9    here is whether to allow this amendment to the pretrial

10   order.  If this opinion is really irrelevant, as

11   Mr. Stimpson believes, then Judge Moore should decide

12   that.  The point right now is manifest injustice not

13   admissibility.

14             Your Honor, Mr. Braginsky's opinion was not

15   only cited in their motion for summary judgment of no

16   willfulness, but both Health Grades and MDX subsequently

17   said it, Health Grades in its supplement to its

18   opposition to MDX's summary judgment motion, and that's

19   Docket 562.  And MDX, again, in its reply to Health

20   Grades' supplement, and that's Docket 572, all of that I

21   think goes to the no surprise factor.

22             It really is a contradictory position to be

23   saying we're relying on this guy to -- to defend against

24   this willfulness claim, we're disclosing him, we're

25   deposing him, we're citing to his opinion, but, jeez, we

1    cannot amend this pretrial order just to

2    (unintelligible) out a deposition that everybody agreed

3    on and attended to be presented at trial.  That just

4    simply makes no sense, Your Honor.

5           Also, Mr. Braginsky and the fact that his

6    deposition was taken was referenced in the pretrial

7    order.  That's Docket 544, page 24, Your Honor.  So, in

8    short, there just simply is no prejudice or surprise to

9    MDX by allowing this amendment.  There's no disruption.

10   There's a trial in the case that's scheduled to start on

11   February 3rd, 2014, eight and a half months from now.

12   And there's no bad faith.  I have not even heard

13   opposing counsel articulate rebuttal to the manifest

14   injustice, other than making the bald assertion that

15   there is none.

16          So, in sum, Your Honor, I respectfully submit

17   that it should be allowed to amend the pretrial order,

18   simply list Mr. Braginsky as a witness whose testimony

19   may be presented by deposition.

20          THE COURT:  Thank you.  The motion to

21   supplement the pretrial order is granted in part and

22   denied in part as follows:

23          It's granted to allow the addition of the four

24   documents marked as 391, 392, 393 and 394.  That part of

25   the motion not being opposed.  It's denied to add the

1    video about the patent system.  That's -- it's not to be

2    a piece of evidence admitted into evidence at the trial.

3    It's something to be raised through the demonstrative

4    exhibit system and then, ultimately, by Judge Moore on

5    whether he wants to allow it as a demonstrative or

6    whether it in some manner will contradict his

7    instructions on the law.  So, I'm not going to include

8    it or amend the -- allow an amendment of the pretrial

9    order to add it as an exhibit.

10          And it is granted to allow the plaintiff to

11   add Mr. Braginsky as a witness who may be called by

12   deposition.  In doing that I find that there is no

13   prejudice or surprise to any party about the relevance

14   or the possibility that Mr. Braginsky might or would be

15   called, or his opinion relied upon.  There is no need,

16   so far as I can tell, to cure any surprise or prejudice.

17   I didn't hear Mr. Stimpson say he needed to conduct

18   further deposition testimony in order to present or

19   rebut whatever it is that the plaintiffs might

20   introduce.  There will be no disruption to the trial.

21   The trial is many months hence and this won't disrupt

22   it, and I find that there's no bad faith as to the

23   addition of the witness.

24          I think that in view of the fact that the

25   defense continues to indicate that it will rely on

1    Mr. Braginsky's non-infringement opinion, the need to

2    allow him to possibly testify, if his testimony is found

3    to be relevant by the trial judge -- something about

4    which I express no opinion -- but the need to have that

5    possibility is required by the overarching concern to

6    have a full and fair litigation of the claims.

7            I think that's everything that's pending,

8    Mr. Vazquez, anything else we should take up this

9    morning?

10           MR. VAZQUEZ:  No, Your Honor.  Thank you.

11           THE COURT:  Mr. Stimpson.

12           MR. STIMPSON:  Your Honor, just one thing,

13   please.

14           THE COURT:  Yes, sir.

15           MR. STIMPSON:  Since you granted the motion to

16   add Mr. Braginsky's deposition transcript, we'd like to

17   have the option of adding Mr. Braginsky as a trial

18   witness in case we want to do that instead of the

19   depositions.  The reason we didn't add him, of course,

20   is because it wasn't going to be added and he wasn't

21   going to be a witness.

22           THE COURT:  Mr. Vazquez.

23           MR. VAZQUEZ:  We do not oppose that at all.

24           THE COURT:  All right.  Then the final

25   pretrial order may be amended to add Mr. Braginsky to

1    the plaintiff's list by deposition, to the defense's

2    list as a may-call either by deposition or by live

3    testimony.

4              MR. STIMPSON:  Thank you, Your Honor.

5              MR. VAZQUEZ:  Your Honor, but if they do call

6    him --

7              THE COURT:  Yes, sir.

8              MR. VAZQUEZ:  -- and present him, then we can

9    also call him personally or at least cross-examine him.

10              THE COURT:  Well, of course.

11              MR. VAZQUEZ:  Okay.  Thank you.  I just want

12    to make sure the way you worded that that we weren't

13    constrained to do it only via deposition.

14              THE COURT:  No (unintelligible).  Thank you

15    all very much.

16              UNKNOWN SPEAKER:  Thank you, Your Honor.

17              THE COURTROOM DEPUTY:  All rise.  Court is in

18    recess.

19              (Whereupon, the within hearing was then in

20    conclusion at 11:39 a.m. on this date.)

21              I certify that the foregoing is a correct
     transcript, to the best of my knowledge and belief
22    (pursuant to the quality of the recording) from the
     record of proceedings in the above-entitled matter.

23

24
      /s/ Kelly Mair                 September 3, 2013
25    Signature of Transcriber         Date

                AVERY/WOODS REPORTING SERVICE, INC.
          455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
                303-825-6119        FAX 303-893-8305