**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S SUPPLEMENTAL SUBMISSION REGARDING MDX'S
SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. #195)**

---

    Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, hereby supplements its submissions regarding MDx's Second Motion for Partial Summary Judgment of Non-Infringement (Dkt. #195) ("the MDx Motion").

    During the October 25, 2013 hearing on the MDx Motion, and in subsequent Court Minutes (Dkt. #636), the Court requested supplemental briefing on the following issues: (1) no more than five pages regarding Health Grades' position that a search using search criteria can be the "request for information regarding a first healthcare provider" in paragraph 1 of claim 1 (notwithstanding Judge Brimmer's claim construction that the "first healthcare provider" must be a particular provider); (2) no more than three pages on any case law addressing similar equivalents issues in the context of electronic data and Internet technology (requested by the Court at the hearing, but not in the Minutes); and (3) no more than three pages on prosecution history estoppel.  MDx hereby provides the requested supplement.

1

### I. REQUESTS FOR INFORMATION ON A "FIRST HEALTHCARE PROVIDER"

Health Grades is arguing that a results list is a report on a first healthcare provider, because the results list is the only place on the MDx website where ratings of multiple providers can be found.  There are many reasons why a results list is not a report on a first healthcare provider, as discussed in the briefing and at the hearing.  For example, the patent claims expressly distinguish results lists from healthcare provider reports (*compare* claims 1 and 7); the patent specification follows the path of the user and draws the same clear distinctions (*e.g.,* col. 5, line 40 – col. 8, line 67: first search criteria are entered, then a results list is generated, then a particular provider is selected and a report is generated; *see, e.g.* col. 7, lines 52-55: "A patient who selects [from results list 226] to view a particular member-physician's free report next receives [the report]"); and Judge Brimmer unequivocally rejected this same Health Grades argument (Dkt. #138, page 9, n.4: "first healthcare provider" cannot refer to "one or more healthcare providers resulting from a first search" because such a position "strains the meaning of 'first' when placed directly before 'healthcare provider' . . . [and] fails to account for claim 7's introduction of a 'results list' with 'one or more' healthcare providers resulting from a search").

The question addressed in this section is with regard to yet another, independent reason why the results list cannot be a report on a "first healthcare provider."  Specifically, the results list cannot be a report on the "first healthcare provider" as Health Grades contends, because at that time the "first healthcare provider" has not even been designated.

The "first healthcare provider" is designated only when a particular provider is selected by the user, *i.e.,* when the user makes a request for information regarding that ***particular provider***.  Dkt. #138, page 12 ("The Court concludes that 'first healthcare provider' refers to a

2

*particular* healthcare provider *about whom* information is requested and a report is produced"; emphasis added).  Since, prior to viewing the results list, the user of the MDx vitals.com website has only requested a search using search criteria and has not yet requested information about any *particular* provider, the "first healthcare provider" has not been designated -- a results list cannot be a report on a specific healthcare provider when that provider has not yet been designated by the user.  It is only when the user finds, on the results list, a particular provider of interest and clicks on that provider that the "first healthcare provider" has been designated.

Realizing its predicament, Health Grades is now arguing that a search using search criteria which leads to the results list may in actuality be a request for information on a "particular" provider, so that (if true) the "first healthcare provider" would already be designated at the time the results list is generated.  But the only "request" that has been made prior to the generation of a results list is a request to search for healthcare providers using search criteria.  This is not a request for information on a *particular provider* but instead is a general search resulting in a results list that names numerous different providers.[1]

At the hearing, Health Grades argued that a user could potentially have a particular provider in mind when inputting search criteria, and so that user may mentally be seeking a

---

[1] If there is only one provider that would result from the search, the results list is skipped and the Vitals website takes the user directly to the report of that single provider.  For example, a search for "Ronald S Colson" and "Denver, CO" in the Vitals website takes the user directly to the report of Dr. Ronald S Colson.  But even in this situation, a search using search criteria is still not a request for information regarding a particular healthcare provider.  Even though there may be only one result today from the search, tomorrow there could be two results, due to new physicians entering the profession, changing their names, or relocating, for example.  The exact same search should not be characterized as something different from day to day.  In the case of only one result, the "first healthcare provider" is designated by the internal computer program step that requests the physician report, rather than designated by the user.  And with only one "result" from the search criteria, there are no ratings of other providers in any event.

3

particular provider.  But the claims do not address a user's mental state, and nowhere in the patent specification and prosecution history is there support for a subjective interpretation.  *See, e.g.*, *Amazon, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1353 (Fed. Cir. 2001) (*abrogated on other grounds*) ("We are not prepared to assign a meaning to a patent claim that depends on the state of mind of the accused infringer."); *Board Of Trustees Of The Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 528 F. Supp. 2d 967, 978 (N.D. Cal. 2007) (declining state of mind interpretation where "intent is nowhere mentioned in the patents or prosecution history."); *MasterObjects, Inc. v. Google, Inc.*, 2013 U.S. Dist. LEXIS 74767, at *27-29 (N.D. Cal. May 28, 2013) (criticizing subjective interpretation as imprecise and adopting technologically objective interpretation).  Rather, the point where a request is made for information regarding a particular provider (and hence the point where the "first healthcare provider is designated) must be determined from the teaching of the patent, *i.e.,* when a particular provider is selected from the results list.  *See, e.g.,* col.  7, lines 52-55 (The user "selects" a particular physician from the results list 226).  On the MDx website, the first time a user sees providers is in the results list.  From there, the user makes the choice – a particular provider is chosen, and the report on that provider (the now designated "first healthcare provider") is requested.

Because the "first healthcare provider" has not been designated and thus does not exist at the time the user views the results list, this is yet another, independent reason why the results list cannot be considered a report on the "first healthcare provider."  Rather, the report on the "first healthcare provider" is the profile that is provided by the MDx website after the user clicks on a particular provider in the results list.  None of these reports on a particular provider include

4

comparison ratings of other healthcare providers. *See* Claim Construction Order, Dkt. #138, page 14 (claims require "multiple ratings of healthcare providers . . . ***in the report on that first healthcare provider . . .***"; emphasis added).

## II.     CASES ON ELECTRONIC DATA AND INTERNET TECHNOLOGY

As requested by the Court, MDx addresses a case where vitiation has been applied to electronic data / Internet technology. *E.g., Augme Techs., Inc. v. Tacoda LLC*, 2011 U.S. Dist. LEXIS 132017 (SDNY Nov. 14, 2011). The *Augme* case related to HTML technology and claim 1 required a "first code module ***embedded in*** said Web page". *Id.*, at *5 (emphasis added). The Court construed "embedded in" to mean "***contained within*** the programming architecture (technically known as its 'HTML code') of a computer-readable program (the technical name for which is 'code module')." *Id.*, at *7 (emphasis added). Based on this construction, the *Augme* Court rejected an argument that computer code can equivalently be "embedded" when it is merely referenced by a link to an external source, as that would vitiate the "embedded in" claim element. *Id.*, at *31-32.

As MDx has vigorously argued, the specific requirement of all claims that the comparison ratings be included within the report on the first healthcare provider cannot be satisfied equivalently by placing those comparison ratings somewhere else. Such an equivalents holding would vitiate the requirement by encompassing the reverse of the claim requirement (comparison ratings outside the report on the first healthcare provider report). *See, e.g., Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1370 (Fed. Cir. 2012) ("objectively unreasonable" and a Rule 11 violation for plaintiff to argue that a printer outside the housing where the claims required it to be nevertheless met the claim language). In the electronic

5

data/Internet area, the exact same concepts apply in the exactly same manner. Here, the claims define a specific location where the comparison ratings must be located. The fact that the Internet allows users to move from one location to another changes nothing – the required location limitation must be met.[2]

### III.   PROSECUTION HISTORY ESTOPPEL

In our prior briefing, we have shown how the Henley prior art Health Grades was distinguishing had comparison ratings (e.g., Dkt. #195, page 12; Dkt. #207, page 11). We have also shown how Health Grades did not add just "comparison ratings" to the claims to distinguish this art, but instead it added the very specific location limitation requiring that those comparison ratings be included in a report on a first healthcare provider; and we have shown how the patent issued after that limitation was added. Dkt. #195, pages 12-13; Dkt. #207, pages 10-11.

From even a brief review of the relevant prosecution history documents, we know certain things beyond question:

(1) Health Grades initially drafted the claims so that "comparison ratings" were in any healthcare provider report, and this limitation was contained in dependent claim 5. Dkt.#195-3 at HG0000205.

(2) On November 13, 2009, the Examiner rejected that claim 5 (along with many other claims) as being obvious in view of the Henley prior art in view of Cook, and in so doing the

---

[2] MDx reviewed the Pandora/Napster opinion referenced by the Court at the hearing – *Moaec, Inc. v. Pandora Media, Inc.*, 607 F. Supp. 2d 980 (W.D. Wisc. 2009). That decision does address infringement in the computer and internet space, and did grant summary judgment of no infringement under a substantial similarity analysis, although it does not mention vitiation under *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997).

Examiner expressly found that Henley disclosed comparison ratings of healthcare providers, citing numerous parts of the Henley disclosure. *Id.* at HG0000087, HG0000091.

(3) In response, on February 16, 2010, Health Grades cancelled claim 5 and moved its "comparison ratings" limitation up into the independent claims, requiring that those comparison ratings be in a healthcare provider report (any report, not a report on a "first healthcare provider"), and Health Grades argued that this limitation distinguished over the cited prior art. HG0000057-58, HG0000065-66.

(4) Without awaiting the Patent Office's response to its February 16, 2010 amendments and arguments, on March 10, 2010, Health Grades had an interview with the Examiner. *See* HG0000023 (first sentence).

(5) After the interview, again without waiting for any further action from the Examiner, on April 26 of 2010, Health Grades filed a Supplemental Amendment, further narrowing the claims. HG0000023-30. The only logical conclusion from this voluntary further narrowing of the claims is that, from the March 10, 2010 interview with the Examiner, Health Grades realized that the amendments it made in February of 2010 were insufficient to distinguish the prior art or to gain allowance of the Health Grades patent – the "comparison ratings" limitations that were earlier added to all the claims still did not distinguish the prior art (just as the Examiner had expressly held in November of 2009). Accordingly, in these April 26, 2010 new amendments, Health Grades introduced the concept of the "first healthcare provider" and ***specifically required that the comparison ratings be in the report on that particular provider***. HG0000025. Health Grades argued that this limitation distinguished the prior art, emphasizing in its arguments that the report was now on the first healthcare provider and that it had to include the comparison

7

ratings. HG0000031-32 ("Henley in view of Cook fail to teach or suggest . . . *creating . . . a healthcare provider report on the first healthcare provider* . . . wherein the healthcare provider report on the first healthcare provider includes *comparison ratings* of healthcare providers. . . ."; emphasis by Health Grades).

(6) The patent was issued shortly after the April 26, 2010 amendment, on July 6, 2010. Dkt. #195-1. While the entire claim was recited by the Examiner in allowing the claims, even if the Examiner had stated that this specific location limitation was found exactly in the prior art (so that it was not distinguishing in the Examiner's eyes), that would make no difference because the tangential exception focuses on the patentee's arguments. The patentee, Health Grades, clearly and unequivocally added this specific location limitation to distinguish the prior art (see part 5, above), so the tangential exception cannot apply. *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1315-16 (Fed. Cir. 2008) ("the tangential relation criterion focuses on the patentee's objectively apparent reason for the narrowing amendment'"; *citation omitted*); *see also Felix v. Am. Honda Motor Co., Inc.*, 562 F.3d 1167, 1182-83 (Fed. Cir. 2009) ("It is the patentee's response to a rejection -- not the examiner's ultimate allowance of a claim -- that gives rise to prosecution history estoppel.").

Since Health Grades made this narrowing amendment, it has the burden to show that the rationale for this location limitation bore only a tangential relation to the alleged equivalent here, and this must be clear from the prosecution history itself. *Honeywell*, 523 F.3d at 1315-16. Health Grades thus must convince this Court that the specific location limitation added to the claims (comparison ratings must be located in the report on the first healthcare provider) has no significant relation to the location of the comparison ratings in the alleged equivalent

8

(comparison ratings outside that report). To even state the proposition demonstrates that it is entirely irrational. How could this added requirement of a specific location for the comparison ratings, have only a tangential relation to where the comparison ratings must be located? The argument is nonsensical.

Moreover, as the Supreme Court made clear in *Festo*, Health Grades must be able to show that they could not have drafted language that would have covered the MDx system. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 741 (2002).[3] Health Grades does not even attempt to make this showing because it cannot. Indeed, before they added this specific location limitation, the claim language was broad enough to cover the comparison ratings in other locations.

## IV. CONCLUSION

For the foregoing reasons, MDx respectfully requests that that the Court grant partial summary judgment.

Dated: November 4, 2013

Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500

---

[3] "When the patentee has chosen to narrow a claim, courts may presume the amended text was composed with awareness of this rule and that the territory surrendered is not an equivalent of the territory claimed. In those instances, however, the patentee still might rebut the presumption that estoppel bars a claim of equivalence. The patentee must show that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent." *Id.*

9

E-mail:sstimpson@sillscummis.com
E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:   (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2013, I electronically filed the foregoing **MDX MEDICAL, INC.'S SUPPLEMENTAL SUBMISSION REGARDING MDX'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. #195)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Jesus Manuel Vazquez, Jr.
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- Gregory B. Kanan
  gkanan@lrrlaw.com

- Kris John Kostolansky
  kkosto@lrrlaw.com

- Scott David Stimpson
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- David Chunyi Lee
  dlee@sillscummis.com, vferraro@sillscummis.com

- Terence M. Ridley
  ridley@wtotrial.com, norris@wtotrial.com

                                                              *s:/David C. Lee*