THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S SUPPLEMENTAL BRIEF IN RESPONSE TO MDx's SECOND MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT [DOC. #195]**

Health Grades submits supplemental briefing pursuant to Courtroom Minutes (Doc. #636).

### "Receiving . . . a request for information regarding a first healthcare provider"

The language at issue in MDx's Second Motion for Summary Judgment of Non-Infringement (Doc. #195) ("MDx's Motion") provides: "wherein the healthcare provider report on the first healthcare provider includes comparison ratings of other healthcare providers." The Court has defined first healthcare provider to mean "a particular healthcare provider about whom information is requested and a report produced." The Court asked the parties to address the meaning of the following element of claim 1 in connection with the Motion:

> receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider . . . .

As discussed below, "a request for information regarding a first healthcare provider" means a computer-based search query (e.g., a request) that seeks search results (e.g., "information")

1

regarding a particular (but not necessarily predetermined) physician who matches the query (e.g. "regarding a first healthcare provider"). This construction is consistent with the '060 patent specification, Judge Brimmer's Markman Order, and the rules of claim construction. A reasonable jury could find that MDx infringes this element (along with the remaining elements). As such, MDx's Motion should be denied.

The phrase "a request for information regarding the first healthcare provider" in the context of the '060 patent covers various types of searches and queries, including those that MDx makes available on its website. According to the patent, "A patient may *research* a healthcare provider *based on criteria specified by the patient*." (Abstract (emphasis added).) "To research a physician according to one embodiment of the invention, a patient may select . . . to search the physician by name, by city/state, or to find a new physician for a desired



specialty. After making the appropriate selection to research a particular physician, the patient may click on the Start button to begin the search." (Col. 5: 53-56 (reference numbers omitted).) These three types of physician searches are shown in Fig. 8 (a portion of which is copied above), where a potential patient may research a known doctor by name (step 814; Fig. 9) or location and specialty (step 816; Fig. 10), or may search for a new physician by specialty, location or other criteria (step 818; Fig. 11). In these embodiments, a potential patient uses a "predetermined web page" (e.g., vitals.com) of the information service to find the information he or she seeks. (Col. 4:19-33.) In another embodiment, a patient uses a search engine, such as Google, to find a physician and then sends a request for information to the company's web server using a link

2

within the search engine results. (Col. 10:33-40; Figs. 6 & 14.) All of these embodiments are described as "exemplary" or "preferred." (Col. 4:65-67; Col. 13:4-7; Col. 19:51-67.)

The "request for information regarding a first healthcare provider" limitation should not be limited to any one of these embodiments to the exclusion of the others. *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) (holding a claim construction "that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct."); *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841 (Fed. Cir. 2006) (limitations from a preferred embodiment should not be read into a claim). For example, if a "request for information regarding a first healthcare provider" was limited to searching for known physicians by name, these principles will be violated. The limitations from one preferred embodiment (step 814) would be imported into the claims to the exclusion of other preferred embodiments (steps 816 & 818). Such an interpretation would be improper.

Judge Brimmer's construction of "first healthcare provider" does not limit the "request for information" element to one preferred embodiment to the exclusion of others. To the contrary, he recognized that the preferred embodiments and dependent claims cover searches by specialty and searches by criteria other than name. (Doc. #138 at pp. 11-12.) He did not say anything about excluding these types of searches from the scope of the claims. Rather, his order indicates that "first healthcare provider" means one physician among a plurality of physicians who meet the search criteria, whatever that may be. (*Id.* at p. 12.) Likewise, his order does not indicate that the identity of the physician must be known (or predetermined) *before* the request for information is made. Reading a requirement for predetermined knowledge into the claim would be improper.

Judge Brimmer's use of the term "particular" to mean one among many of the same kind is consistent with *all* of the preferred embodiments described in the '060 patent. For example, he

3

noted that: "qualifying 'healthcare provider' with 'first' does indicate the intent to distinguish that provider from other providers in some fashion." (*Id.* at p. 9.) It is common to use the term "first" to distinguish among multiple instances of similar elements in a patent claim.[1] In this case, the claims talk about healthcare providers (plural) in relation to the comparison ratings and a results list, for example. Each of these physicians is the same kind as every other because they were identified through the same information request. Designating one healthcare provider in the list of providers as the "first" provides clarity, allows the claim elements to be tied together, and provides an antecedent basis for the subsequent claim elements.[2]

A search for a "cardiologist in Houston" is an embodiment of a request for a "particular" healthcare provider, to use the language of Judge Brimmer's Markman Order. The '060 patent states that a patient can search for a "particular physician" by using location and other criteria:

> about physicians or hospitals. Typically, any information about physicians or hospitals on the Internet is provided by the physicians or hospitals themselves (and, in some cases, insurance companies). Such information may not be updated on a regular basis or may contain inaccurate or incomplete information. Further, even if such information is available, it is usually not organized in a manner that would allow a patient to compare physicians or hospitals, search for a particular physician or hospital by geographic area or other criteria, or verify a physician's or hospital's certifications and licensures.

(Col. 1: 38-47 (highlighting and underlining added).) Thus, "particular physician" as used above

---

[1] "When practical, it is best to give two similar but different elements distinct names, such as a 'holding member' and 'a support member' . . . . In other cases, this is not possible in which case designations such as 'first' or 'second' should be used . . . ." Faber on Mechanics of Patent Claim Drafting, at §3:7, at 3-24 (Ex. A hereto); *see also 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003); *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1373 (Fed. Cir. 2005) (same).

[2] Faber, at §4-1, at 4-2 (Ex. A hereto) ("Most of the general rules previously given apply also to method claims. The terms in the claim must find support in the specification; reference numerals may be used; **appropriate antecedents are necessary**; logical order is also necessary; **steps must be "tied" together**; "whereby" clauses may be used." (emphasis added).)

4

includes searches for a particular type of physician, e.g., the cardiologist closest to my house, or a known physician by name, or a new physician who best meets the search criteria on vitals.com.

The claim does not address (nor does it need to address) whether the potential patient knows the specific identity of a particular doctor prior to searching by geographic location or other criteria. Indeed such knowledge is irrelevant to the discussion. If the potential patient already knew the identity of the "particular" physician, he can still search by geographic area and an infringement can occur, evidenced when the results are received and displayed. Likewise, a potential patient may have no particular physician in mind when conducting the exact same geographic search and receive the exact same results. Stated another way, the mental state of the user is not part of the claim. Neither is the particular algorithm used by MDx to rank and/or list the doctors on the results page. The claims are broad enough to cover any situation wherein a search returns a particular doctor's information that satisfies the criteria of the rest of the claim.

In this case, as was demonstrated in the review and analysis of the specialty search page regarding cardiothoracic surgeons in Houston (Hearing Ex. 36, Ex. B hereto), MDx has ten or more criteria that may be used by a prospective patient to refine his or her search for a physician. Such refinements lead to the selection of a particular healthcare provider who is listed first and may be compared to other potential healthcare providers on the same page using the star ratings provided by vitals.com.

Additionally, as was demonstrated in the review and analysis of the search for Dr. Todd K. Rosengart (Doc. #625-4), the MDx system facilitates a search for a particular doctor. In this case the search included the previously known physician by name. In this example, the results page produced by MDx's system contained star ratings (e.g., comparison ratings) for multiple doctors, and thus infringes claim 1.

5

In sum, a reasonable jury can conclude that vitals.com literally meets both the "request for information regarding a first healthcare provider" and "comparison ratings" limitations using Judge Brimmer's construction of "first healthcare provider." MDx's Motion should be denied.

### **Prosecution History Estoppel**

Assuming that literal infringement is not found under the phrase: "wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers," infringement – may be found in at least three ways under the doctrine of equivalents.

<u>Equivalents to a Healthcare Provider Report that "Includes" Comparison Ratings</u>

First, MDx's links between the results page (which includes comparison ratings) and the "profile" (which provides information on a single, particular doctor) are equivalent to "includ[ing]" comparison ratings in a report on the first healthcare provider. Second, the results page's side-by-side display of multiple "mini-reports," each on a particular doctor with ratings of that doctor, is equivalent to "includ[ing]" comparison ratings of multiple doctors in a report on the first healthcare provider.

The limitation that the healthcare provider report "include" comparison ratings was added to claim 1 in an amendment on February 16, 2010 to distinguish the claims over the Henley prior art.[3] (Doc. #201-9.) Henley provides generally for "an on-line auctioning process [used] in negotiating a price for the performance of a professional personal medical service performed by a medical physician on an individual patient . . . ." (*Id.* at p. 11 (citing Henley at ¶ [0016]).) Health Grades argued the claims as amended were different because the claims had "comparison ratings" and Henley did not. (*Id.* at p. 13 ("making general qualifications 'available' to a consumer does

---

[3]  Health Grades' arguments regarding the comparison ratings amendment focused solely on distinguishing the Henley reference. (Doc. #201-9 at pp. 12-13.)

6

not teach or suggest "comparison ratings" . . . . [P]rovid[ing] . . . access to databases storing the 'identification' of medical service providers satisfying a particular requirement provides no teaching or suggestion of, for example, 'comparison ratings'" . . . .") *Indeed, Henley does not disclose physician ratings of any kind.* Henley uses the term "ratings" <u>*only*</u> in connection with "complexity ratings" that define the complexity of the procedure needed so that patients can bid on services without disclosing private medical information to potential providers before a doctor-patient relationship has been established (Henley, ¶[0121] (Doc. #195-7 at p. 36).) These are different than the physician comparison ratings claimed in the '060 patent. In any event, the file history does not refer to ¶121 of Henley or its complexity ratings and thus, they are not relevant to determining the reason for amendment in this case.

The reason for this amendment that is apparent from the prosecution history focused solely on the presence of physician comparison ratings in the claims and the absence of similar comparison ratings in Henley. That was the issue. The location of the comparison ratings in the patented product had nothing to do with the reason for the amendment. The prosecution history makes no reference to location as an operative fact that was tied to the issuance of the amendment. The reference to comparison ratings of other healthcare providers being in the report was tangential to the reason for amendment and is not a prosecution history estoppel bar.

<u>Equivalents to a Healthcare Provider Report "on the First Healthcare Provider"
That Includes Comparison Ratings</u>

Health Grades makes a third doctrine of equivalents argument that relates to a different portion of the comparison ratings claim limitation. Specifically, Health Grades argues that a report with multiple healthcare providers that includes comparison ratings is equivalent to a report "on the first healthcare provider" that includes comparison ratings of healthcare providers. For similar

7

2004466618_1

reasons, prosecution history estoppel should not bar Health Grades from asserting that a report on multiple doctors is equivalent a report on the first healthcare provider.

The "first healthcare provider" language was added to claims, among several other limitations, in a supplemental amendment on April 26, 2010. The reasons for this narrowing amendment that were identified by Health Grades at the time were not related to the third equivalent argument (one doctor versus many doctors). In the remarks section of the supplemental amendment, Health Grades highlighted (using italics) the claim language that was missing from the disclosures in Henley and Cook. (Doc. #201-6 at p. 10-11.) Health Grades did not italicize, emphasize, or otherwise discuss the fact that the new amendments required comparison ratings be included in the healthcare provider report "on the first healthcare provider." This was not a point of distinction over Henley or Cook.

Thus, Health Grades is not trying to recapture claim scope that it gave up during prosecution. The accused equivalents were not surrendered because Health Grades did not rely on them as distinguishing features during prosecution. They are peripheral to, if related at all, to reasons for amendment. As such, prosecution history estoppel does not apply.

### The All Elements Rule in Computer and Software Cases[4]

The Federal Circuit recently issued a decision that provides substantial guidance regarding application of the "All Elements Rule." *Deere & Co. v. Bush Hog*, *LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012). Although this case did not involve software, Health Grades addresses it here because of its recency and because it seeks to correct a "common misperception" about how to apply the vitiation test. *Id.*

---

[4] Highlighted copies of the following cases are attached hereto as Ex. C for the Court's convenient reference.

8

The Federal Circuit reiterated that a jury should decide whether an accused equivalent represents an "insubstantial difference" from the claimed element. *Id.* at 1356. "'Vitiation' is not an exception to the doctrine of equivalents, but instead a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be 'equivalent.'" *Id.* Summary judgment should be granted <u>only</u> if reasonable jury could not find equivalence. *Id.* Further, it is error to shortcut this analysis by characterizing it as a "binary" choice:

> Stated otherwise, **the vitiation test cannot be satisfied by simply noting that an element is missing from the claimed structure or process because the doctrine of equivalents, by definition, recognizes that an element is missing that must be supplied by the equivalent substitute.** If mere observation of a missing element could satisfy the vitiation requirement, this "exception" would swallow the rule. And, the Supreme Court declined to let numerous contentions bury the doctrine.

*Id.* at 1356-57 (citations omitted).[5]

In *Deere*, the patent related to a rotary cutter having an upper deck with front and rear portions that sloped "into engagement with . . . the lower wall deck." The district court granted summary judgment of no infringement based on vitiation, finding that this term was "binary in nature -- either the upper deck wall is 'in contact with the lower deck wall or it is not.'" The Federal Circuit vacated this ruling because the district misapplied the vitiation test:

> In this case, the district court construed "contact" to require "direct contact," and thus found that allowing "no direct contact" would vitiate the court's construction. Yet, a reasonable jury could find that a small spacer connecting the upper and lower deck walls represents an *insubstantial difference* from direct contact.

---

[5] The federal circuit case MDx discussed at the hearing -- *Raylon v. Complus Data Innovations, Inc.*, 700 F.3d 1361 (Fed. Cir. 2012) -- did not address the vitiation issue at all, let alone conclude that it is proper for a court to shortcut an equivalence analysis by characterizing a "location" claim element as a binary choice, which is either met or not met.

9

2004466618_1

*Id.* at 1357 (emphasis added, citations omitted).

In *Paone v. Microsoft Corp*, the patent related to computer-implemented methods of encrypting data into encoded blocks. 881 F.Supp.2d 386, 405 (E.D.N.Y. 2012) The court construed "block" to mean a sequence of bits that each *has a fixed length that does not vary from block-to-block*. Microsoft encrypted the data into a sequence of blocks of a fixed length, except for the last block, which sometimes had a different length. The court refused to grant summary judgment based on vitiation – it held this issue "is more properly left to the jury" (*Id.* at pp. 406-407).

In *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, the Federal Circuit vacated summary judgment of no infringement under the doctrine of equivalents in a case involving computer software. 453 F.3d 1364, 1380-81 (Fed. Cir. 2006) (reversed on other grounds). The claims required that "*all*" write requests be completed before execution of the incoming read request. The Federal Circuit found that there was a genuine question of fact regarding whether the accused equivalent, which performed *nearly* all the write requests before each matching read request, was insubstantially different from the claimed element. *Id.* at 1381.

In *Overhead Door Corp. v. Chamerlain Grp., Inc.*, 194 F.3d 1261, 1271 (Fed. Cir. 1999), the Federal Circuit vacated summary judgment of no infringement under the doctrine of equivalents. The claims required a "mechanical switch for selecting memory locations." The accused product had a software switch instead of a mechanical switch. Whether this was an insubstantial difference or not was an issue to be decided by the jury. *Id.* at 1271.

In *Zygo Corp. v. Wyko Corp.*, the defendant used software to generate the claimed (physical) "alignment reticle." 79 F.3d 1563 (Fed. Cir. 1996). The Federal Circuit found the all elements rule did not apply because:

10

> Infringement may not be found under the doctrine of equivalents if a limitation is missing, that is, not replaced with an equivalent substituent. **But . . . the substituent need not be in the exact same location specified by the claim.** If, in the context of the invention, the substituent substantially performs the same function to achieve the same result in the same way as the required limitation, that limitation is satisfied."
>
> . . . .
>
> We have no difficulty agreeing that the image of the reticle generated on the monitor is the equivalent of the physical reticle on the screen which is also imaged on the monitor in the Zygo invention. **While the alignment reticle has been moved within the alignment leg of the accused interferometers**, the function of alignment is accomplished in the same way, by moving the two spots to coalesce at the center of a reticle which coincides with the optical axis of the interferometer.

*Id.* at 1568-69 (emphasis added).

In sum, the question of whether the accused equivalents represent an insubstantial difference from the claimed invention should be left to the jury, unless no reasonable jury could find the two to be equivalent. In this case, it would be error to characterize the "include" claim element as a binary choice, where the comparison ratings are either included in the report or not (i.e., excluded). Rather, the term "includes," if not literally met, encompasses a range of equivalents, such as "linked to" or "displayed side-by-side," and the question of whether these differences are insubstantial or not should be decided by the jury.

| | |
|---|---|
| Dated: November 4, 2013 | ROTHGERBER JOHNSON & LYONS LLP |
| | |
| | <u>s/ Kris J. Kostolansky</u> |
| | Gregory B. Kanan, Esq. |
| | Kris J. Kostolansky, Esq. |
| | Jesús M. Vázquez, Jr., Esq. |
| | 1200 17th Street, Suite 3000 |
| | Denver, Colorado 80202 |
| | Tel: (303) 623-9000 |
| | Email: gkanan@rothgerber.com |
| | kkosto@rothgerber.com |
| | jvazquez@rothgerber.com |
| | *Attorneys for Plaintiff Health Grades, Inc* |

11

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2013, I electronically filed the foregoing **HEALTH GRADES, INC.'S SUPPLEMENTAL BRIEF IN RESPONSE TO MDx's SECOND MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT [DOC. #195]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
David Chunyi Lee
Sills Cummis & Gross P.C.-New York
30 Rockefeller Plaza
New York, NY 10112
Email: sstimpson@sillscummis.com
Email: smurray@sillscummis.com
Email: dlee@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO 80202-2617
Email: ridley@wtotrial.com

*s/ Jesús M. Vázquez*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel: (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@rothgerber.com
kkostolansky@rothgerber.com
jvazquez@rothgerber.com
*Attorneys for Plaintiff Health Grades, Inc.*
