Civil Action No. 11-CV-00520-PAB-BNB

**HEALTH GRADES, INC.'S SUPPLEMENTAL BRIEF IN RESPONSE TO MDx's SECOND MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT [DOC. #195]**

# Exhibit A

**Faber on Mechanics of Patent Claim Drafting, Sixth Edition**

**§§ 3:7 & 4:1**

*(highlighting added)*

# Faber on Mechanics of Patent Claim Drafting

SIXTH EDITION

ROBERT C. FABER

(Formerly *Landis on Mechanics of Patent Claim Drafting*, by Robert C. Faber)

Incorporating Release No. 10
October 2013
#52764

Practising Law Institute
New York City

**#16966**

*This work is designed to provide practical and useful information on the subject matter covered. However, it is sold with the understanding that neither the publisher nor the author is engaged in rendering legal, accounting or other professional services. If legal advice or other expert assistance is required, the services of a competent professional should be sought.*

## QUESTIONS ABOUT THIS BOOK?

If you have questions about replacement pages, billing or shipments, or would like information on our other products, please contact our **customer service department** at (800) 260-4PLI.

For library-related queries, **law librarians** may email: libraryrelations@pli.edu.

For any other questions or suggestions about this book, contact PLI's **editorial department** at: editorial@pli.edu.

For general information about Practising Law Institute, please visit **www.pli.edu**.

Legal Editor: Keith Voelker

Copyright © 1974, 1978, 1990, 1996, 1997, 1998, 1999, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013 by Practising Law Institute.

**First edition** 1974, originally published as *The Mechanics of Patent Claim Drafting*, by John L. Landis
**Second edition** 1978
**Third edition** 1990, published as *Landis on Mechanics of Patent Claim Drafting*, by Robert C. Faber
**Fourth edition** 1996
**Fifth edition** 2003
**Sixth edition** 2008, published as *Faber on Mechanics of Patent Claim Drafting*

All rights reserved. Printed in the United States of America. No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Practising Law Institute.

Library of Congress Catalog Card Number: 2008937996
ISBN: 9781402411342

## § 3:7 Naming the Elements

It is good practice to analyze the structure and select the essential elements to be claimed, with whatever scope is desired, before starting to write a claim. It is well known that absence of any one claim element from an accused device, product or method will avoid infringement of that claim.[23] Infringement of a product, device, apparatus, system, etc. claim requires that every claim element be present. The same applies to a method claim. Every step in a claimed method must be performed, and in the United States.[23.1] Correspondingly, too many elements in a claim makes avoiding the claim easier, as more elements must be present to satisfy the claim.[23.2] The fewer is the number of different elements included in a claim, the broader in scope is the claim and the less likely it is that a copyist will be able to design an embodiment that will lack one of the claim elements. But make the claim too broad by claiming too few of the elements, and there may be insufficient limits to save the claim from invalidity. In *SmithKline Beecham Corp. v. Apotex Corp.*,[24] the claim was a simple "(1) crystalline paroxetine hydrochloride hemihydrate." The district court incorrectly limited the claim to commercially significant amounts, avoiding coverage of trace amounts. The Federal Circuit reversed, found no such claim limitation, gave the claim its broad scope and held it invalid for prior public use, but not under section 112(b).

The elements must be assigned names, such as base, container, legs, and means for oscillating in Claim 1 (section 3:1.1). The exact name selected for each element is often not critical, as long as the claim drafter is not mistaken. Of course, if the element is named narrowly, for example "slidably mounted," it may exclude a similarly functioning element that the patentee believes is an equivalent, but which the court finds not to be.[25] A broader scope word may provide

---

23. Becton, Dickinson & Co. v. Tyco Healthcare Grp., L.P., 602 F.3d 1306, 94 U.S.P.Q.2d (BNA) 1311 (Fed. Cir. 2010) ("spring means" and "hinged arm" in a claim recites two elements, and for them to be the same structure is nonsensical); Novartis Pharm. Corp. v. Abbott Labs., 375 F.3d 1328, 71 U.S.P.Q.2d (BNA) 1650 (Fed. Cir. 2004); Freedman Seating Co. v. Am. Seating Co., 420 F.3d 1350, 76 U.S.P.Q.2d (BNA) 1001 (Fed. Cir. 2005).
23.1. Joy Techs. Inc. v. Flakt, Inc., 6 F.3d 770, 28 U.S.P.Q.2d (BNA) 1378 (Fed. Cir. 1993); BMC Res., Inc. v. Paymentech L.P., 498 F.3d 1373, 84 U.S.P.Q.2d (BNA) 1545 (Fed. Cir. 2007); Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 87 U.S.P.Q.2d (BNA) 1350 (Fed. Cir. 2008).
23.2. Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co., 609 F.3d 1364, 95 U.S.P.Q.2d (BNA) 1654 (Fed. Cir. 2010) (claim recited "a computerized method," but the accused process was performed manually).
24. SmithKline Beecham Corp. v. Apotex Corp., 365 F.3d 1306, 70 U.S.P.Q.2d (BNA) 1737 (Fed. Cir. 2004).
25. Freedman Seating Co. v. Am. Seating Co., 420 F.3d 1350, 76 U.S.P.Q.2d (BNA) 1001 (Fed. Cir. 2005).

better claim coverage for an infringement determination.[25.1] A broader scope term in a claim, such as "data acquisition unit," need not be a single structure, but may broadly cover separate structures, perhaps even physically separate structures, despite use of the word "unit."[25.2] The specification can be of assistance here, by defining the contents of that unit. But if that unit performs a particular function in the claim, the structures cooperating in that performance comprise the unit.

Correspondingly, be careful not to use a word that is too broad in scope, without applicable limiting words. In *In re Bigio*,[26] the claim term in issue was "hairbrush." Without a specific limitation in the claim, the court said, the hair might be anywhere on a person, not just on the top of the head, or even hair on an animal. In *SmithKline Beecham Corp. v. Apotex Corp.*,[27] the claim element "crystalline paroxetine hydrochloride hemihydrate" was construed to encompass any such compound and was not limited to only commercially significant amounts. Precision in language used is critical; it should be not too narrow and not broader than the drafter intended. While an applicant in theory has Humpty Dumpty's privilege of making words mean what he wants them to mean, no term may be given a meaning repugnant to its usual meaning.[28] A claim term takes its ordinary meaning[29] unless the applicant for patent redefined the term in the intrinsic record, using words of "manifest exclusion or restriction."[30]

---

25.1. Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 92 U.S.P.Q.2d (BNA) 1148 (Fed. Cir. 2009) ("animal" in the claim was construed by the Federal Circuit to include humans, despite the specification enumerating "preferred animals without including humans," and therefore the claim was held to be infringed; the dissent complained that the effective definition of "animal" in the specification was ignored).

25.2. Paragon Solutions LLC v. Timex Corp., 566 F.3d 1075, 91 U.S.P.Q.2d (BNA) 1082 (Fed. Cir. 2009).

26. *In re* Bigio, 381 F.3d 1320, 72 U.S.P.Q.2d (BNA) 1209 (Fed. Cir. 2004).

27. SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 74 U.S.P.Q.2d (BNA) 1398 (Fed. Cir. 2005).

28. M.P.E.P. § 2173.05(b).

29. W.E. Hall Co. v. Atlanta Corrugating LLC, 370 F.3d 1343, 71 U.S.P.Q.2d (BNA) 1135 (Fed. Cir. 2004); Brookhill-Wilk 1 LLC v. Intuitive Surgical, Inc., 334 F.3d 1294, 67 U.S.P.Q.2d (BNA) 1132 (Fed. Cir. 2003); Combined Sys., Inc. v. Defense Tech. Corp. of Am., 350 F.3d 1207, 68 U.S.P.Q.2d (BNA) 1933 (Fed. Cir. 2003); Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 70 U.S.P.Q.2d (BNA) 1209 (Fed. Cir. 2004).

30. Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 63 U.S.P.Q.2d (BNA) 1374 (Fed. Cir. 2002); Irdeto Access, Inc. v. Echostar Satellite Corp., 383 F.3d 1295, 72 U.S.P.Q.2d (BNA) 1678 (Fed. Cir. 2004) (court construed "group" as described in the specification, as there is no accepted definition in this art or in a dictionary); Edwards Lifesciences LLC v. Cook, Inc., 582 F.3d 1322, 92 U.S.P.Q.2d (BNA) 1599 (Fed. Cir. 2009) (specification defined claim as "malleable" to exclude any substantial resilience).

§ 3:7     FABER ON MECHANICS OF PATENT CLAIM DRAFTING

In *Merck & Co. v. Teva Pharmaceuticals USA, Inc.*,[31] the court rejected the patentee's effort to redefine "about" as "exactly" by referring to a passage in the specification. The court said that the patentee's attempted lexicography must appear with reasonable clarity, deliberateness, and precision before it can affect a claim.[32] The court in *Merck* found the statement in the patent to be ambiguous, so the word was given its ordinary meaning of approximately, rather than exactly.[33]

In different patents, their respective different intrinsic records can give the same claim term different constructions. For example, "substantially uniform" was construed differently in different cases, because of different definitions in the specification or prosecution history and because the two patents were in completely different arts, magnetic resonance imaging and a washing detergent.[34]

Even in different claims in the same patent, the same term can be given different meanings. In *Haemonetics Corp. v. Baxter Healthcare Corp.*,[34.1] "centrifugal unit" was given two meanings in two claims to different respective embodiments of the invention.

The same term, even within the same claim, may have a different meaning, which is discovered by construing the claim. For example, "substantially pure" in one set of claims had different meanings when describing different products.[34.2]

Conversely, one disclosed element or feature may have two different names in the claims, so long as the specification provides sufficient explanation of the element(s).[34.3]

However, in an appropriate situation, use of the same claim term in the same patent or in a related patent, such as members of the same patent "family," may be given the same meaning.[34.4]

---

31.     Merck & Co. v. Teva Pharm. USA, Inc., 395 F.3d 1364, 73 U.S.P.Q.2d (BNA) 1641 (Fed. Cir. 2005).
32.     *In re* Paulsen, 30 F.3d 1475, 31 U.S.P.Q.2d (BNA) 1671 (Fed. Cir. 1994).
33.     *See* M.P.E.P. § 2173.05(b)A.
34.     Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 74 U.S.P.Q.2d (BNA) 1184 (Fed. Cir. 2005).
34.1.     Haemonetics Corp. v. Baxter Healthcare Corp., 607 F.3d 776, 95 U.S.P.Q.2d (BNA) 1556 (Fed. Cir. 2010).
34.2.     Aventis Pharm. Inc. v. Amino Chem. Ltd., 715 F.3d 1363, 106 U.S.P.Q.2d (BNA) 1861 (Fed. Cir. 2013).
34.3.     Retractable Techs., Inc. v. Becton, Dickinson & Co., 653 F.3d 1296, 99 U.S.P.Q.2d (BNA) 1233 (Fed. Cir. 2011) ("retainer member" and "needle holder" in claims need not be two separate parts, as specification covers arrangement wherein they overlap and need not be separate pieces).
34.4.     *In re* Rambus, Inc., 694 F.3d 42, 103 U.S.P.Q.2d (BNA) 1865 (Fed. Cir. 2012) (court construed "memory device" as not limited to a preferred embodiment in two claims in the same patent, but dictum concerns this point in different patents).

This rule is often stated as the "applicant may be his own lexicographer."[35] But this is still within limits. Of course, the words used must have "clear support or antecedent basis" in the specification, or at least in the drawing, as mentioned in section 3:6, above.[36] But the mere fact that a claim term has no antecedent basis in the specification does not necessarily make the claim term indefinite.[37] It is very important to make all parts of the specification consistent with the claims. When one wishes to impart a special meaning to a word or phrase appearing in the claims, one should define that word or phrase in the specification; for example, "As used in this description and in the appended claims, the word '_____' means '_____.'" However, do not use ridiculous words such as "gizmo" or "widget."

The doctrine of claim differentiation (see sections 2:4 and 8:2) also helps to define an element named in a claim. In *SunRace Roots Enter. Co. v. SRAM Corp.*,[38] the term "shift actuator" in the independent claim was given a broad scope, because the dependent claim defined a cam means of which the shift actuator was comprised. Hence, the independent claim was not restricted by having the element of the dependent claim read into the independent claim. A prior claim element can be kept broader in scope by a later dependent claim defining features or limitations on the previously claimed element.[38.1] This is how naming an element can be used to give the element broad scope. Conversely, to avoid narrowing the scope of a feature in a dependent claim, give it the same name in the parent and the dependent claims.

---

35. M.P.E.P. § 2173.01; M.P.E.P. § 2173.05(a)(III); Lear Siegler, Inc. v. Aerogrip Corp., 221 U.S.P.Q. (BNA) 1025, 1031 (Fed. Cir. 1984); W.L. Gore Assocs. v. Garlock, Inc., 220 U.S.P.Q. (BNA) 303, 316 (Fed. Cir. 1983); W.E. Hall Co. v. Atlanta Corrugating LLC, 370 F.3d 1343, 71 U.S.P.Q.2d (BNA) 1135 (Fed. Cir. 2004); Combined Sys., Inc. v. Defense Tech. Corp. of Am., 350 F.3d 1207, 68 U.S.P.Q.2d (BNA) 1933 (Fed. Cir. 2003); 3M Innovative Props. Co. v. Avery Dennison Corp., 350 F.3d 1365, 69 U.S.P.Q.2d (BNA) 1050 (Fed. Cir. 2003); Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 39 U.S.P.Q.2d (BNA) 1573 (Fed. Cir. 1996); Phillips v. AWH Corp., 415 F.3d 1303, 75 U.S.P.Q.2d (BNA) 1321 (Fed. Cir. 2005); Sinorgchem v. Int'l Trade Comm'n, 511 F.3d 1132, 85 U.S.P.Q.2d (BNA) 1415 (Fed. Cir. 2007).
36. Cook Biotech, Inc. v. ACell, Inc., 460 F.3d 1365, 79 U.S.P.Q.2d (BNA) 1865 (Fed. Cir. 2006).
37. M.P.E.P. § 2173.05(e). *See* Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., 493 F.3d 1358, 83 U.S.P.Q.2d (BNA) 1425 (Fed. Cir. 2007) ("heading" of an aircraft in claim was not a word in the specification, but the specification was clear as to its meaning, and the prosecution also provided guidance); *In re* Skvorecz, 580 F.3d 1262, 92 U.S.P.Q.2d (BNA) 1020 (Fed. Cir. 2009).
38. SunRace Roots Enter. Co. v. SRAM Corp., 336 F.3d 1298, 67 U.S.P.Q.2d (BNA) 1438 (Fed. Cir. 2003).
38.1. Am. Piledriving Equip., Inc. v. Geoquip, Inc., 637 F.3d 1324, 98 U.S.P.Q.2d (BNA) 1001 (Fed. Cir. 2011).

§ 3:7      FABER ON MECHANICS OF PATENT CLAIM DRAFTING

A patentee may define elements in one claim with different levels of detail, some more specific, some less so. The court or the examiner cannot rewrite or construe a broadly claimed element narrowly.[39]

Also, be sure that there is a corresponding structure in the specifications and drawings to every structure claimed. If no structure is disclosed corresponding to one claimed, the claim is indefinite.[40]

In *AK Steel Corp. v. Sollac*,[41] the claims encompassed silicon to 10%, but the specification said that silicon above 0.5% presents a problem. The claim was not enabled by the specification. In *Honeywell International, Inc. v. International Trade Commission*,[42] the Federal Circuit said:

> After reviewing the entire record regarding claim construction, we ... hold that the claims are insolubly ambiguous and hence indefinite, with respect to a required sample preparation method. As we discuss below, with respect to each proffered construction, the claims, the written description, and the prosecution history fail to give us, as the interpreter of the claim term, any guidance to what one of ordinary skill in the art would interpret the claim to require. Moreover, because the sample preparation method is critical to discerning. . . .

If there is no disclosure of a claim term in any of the documents associated with the application and none is known in the relevant art as demonstrable in published documents or in some other manner, the claim term is indefinite. The unpublished confidential documents of the applicant in *Honeywell*, which used the term, could not be relied on.

The meaning of every term in a claim should be apparent from the specification as filed, although the M.P.E.P. also permits the meaning to be apparent from the prior art or the drawings filed.[43] If there is no disclosed structure for a claim element other than a person who performs the function ("third monitoring means for monitoring the ECG signal"), then the claim is indefinite, since it does not define elements of a machine.[44]

---

39.    Resonate, Inc. v. Alteon Websystems, Inc., 338 F.3d 1360, 67 U.S.P.Q.2d (BNA) 1771 (Fed. Cir. 2003).
40.    M.P.E.P. §§ 2164.08, 2173.03; section 3:6.
41.    AK Steel Corp. v. Sollac, 344 F.3d 1234, 1244, 68 U.S.P.Q.2d (BNA) 1280, 1287 (Fed. Cir. 2003); In re Cohn, 438 F.2d 989, 169 U.S.P.Q. (BNA) 95 (C.C.P.A. 1971); In re Hammack, 427 F.2d 1378, 166 U.S.P.Q. (BNA) 204 (C.C.P.A. 1970).
42.    Honeywell Int'l, Inc. v. Int'l Trade Comm'n, 341 F.3d 1322, 68 U.S.P.Q.2d (BNA) 1023 (Fed. Cir. 2003).
43.    M.P.E.P. § 2173.05(a)I. *See* Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., 493 F.3d 1358, 83 U.S.P.Q.2d (BNA) 1425 (Fed. Cir. 2007).
44.    Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 296 F.3d 1106, 63 U.S.P.Q.2d (BNA) 1725, 1732–33 (Fed. Cir. 2002); Voter Verified Inc. v. Premier Election Solutions, Inc., 698 F.3d 1374, 104 U.S.P.Q.2d (BNA) 1553 (Fed. Cir. 2012).

Frequently in mechanical apparatus, there are various expressions that could be used. For example, in Claim 1, the base could have been called "a support," "a mounting plate," or the like. The container might have been designated "a box" or "a holder." The choices available frequently are descriptive names for an important function or purpose of the element named.

In most cases, the inventor or a mechanical dictionary can supply the precise name for a part in any specific embodiment. Appendix D contains a glossary of many mechanical terms commonly used in patents. For the broader claims, a generic word is usually needed. If no concrete generic name is available, often a homemade name indicating the function of the part may be used, such as "a rotary member" or "a holder," together with as much description of the part and its function as is necessary. Also "means" clauses are often used to describe an element broadly (see section 3:29).

Especially for a new technology, the claim writer and specification writer may select a new term that would be understood by one skilled in the art.[45]

A patentee may be his own lexicographer and may even give a known term a meaning that is contrary to its ordinary meaning. But the specification should make clear to one skilled in the art what that term means.[46] Thereafter the claim term will be construed using the express definition given to it in the specification.[46.1]

The claim writer must use care to avoid naming an element too narrowly. A "screw" is not a "nail," while a "fastening element" is generic to those two, plus others. It is preferable to have claim language that encompasses an accused device than to have to ask a court to apply the doctrine of equivalents to an element claimed too narrowly. In *In re Lew*,[47] the Federal Circuit affirmed a Board of Appeals decision that an attempted replacement of "ball bearing" with the broader scope "curved member" was not supported by the Applicant's initial disclosure of only "ball bearing."

Claiming one disclosed embodiment while another embodiment is not expressly claimed may dedicate the other embodiment to the public, and the doctrine of equivalents may not be available to bring

---

45. M.P.E.P. § 2173.05(a)(II).
46. M.P.E.P. § 2173.05(a)(III) and § 2173.01; Control Corp. v. HydReclaim Corp., 190 F.3d 1350, 1357, 52 U.S.P.Q.2d (BNA) 1029, 1033 (Fed. Cir. 1999); Hormone Research Found., Inc. v. Genentech, Inc., 904 F.2d 1558, 15 U.S.P.Q.2d (BNA) 1039 (Fed. Cir. 1990).
46.1. Linear Tech. Corp. v. Int'l Trade Comm'n, 566 F.3d 1049, 91 U.S.P.Q.2d (BNA) 1065 (Fed. Cir. 2009).
47. *In re* Lew, 257 F. App'x 281 (Fed. Cir. 2007) (nonprecedential).

§ 3:7 FABER ON MECHANICS OF PATENT CLAIM DRAFTING

the claim language to the unclaimed embodiment.[48] In *Johnson & Johnston Associates, Inc. v. R.E. Service Co.*,[49] which established this disclosure dedication rule, the Federal Circuit held that a claim to an aluminum substrate could not be expanded in scope by the doctrine of equivalents to cover a steel substrate that had been disclosed but not claimed. This is not applicable to using the doctrine of equivalents to cover another embodiment which was not disclosed in the specification. Therefore if the steel embodiment had not been disclosed, the aluminum embodiment might have been expandable to cover the steel embodiment under the doctrine of equivalents. In *PSC Computer Prod., Inc. v. Foxconn International, Inc.*,[50] the Federal Circuit found dedication of plastic clip parts to the public when the specification disclosed plastic or metal parts and the claims mentioned only metal parts. Thus, how the specification is written has bearing on how the claim will be construed. The foregoing applies not only to claims as they are originally presented at the filing of the application, but to amendment of claims during the prosecution of the application, as discussed at length in section 2:13.[51]

New terms may be adopted by an applicant and often are used for new technology. If the claims, read in light of the specification, reasonably apprise those skilled in the art of the utilization and scope of the invention and if the language is as precise as the subject matter permits, section 112 is satisfied.[52] Where practical, it is best to give two similar but different elements distinct names, such as "a holding member" and "a support member" even when in common usage those different elements might be identified by the same name. In other cases, this is not possible, in which case designations such as "first" or "second" should be used: "a first rotating member, . . . a second rotating member. . . ."[52.1] Be careful that "first" and "second" are not given substantive meanings beyond distinguishing one of a kind from another of the same kind. In

---

48. Toro Corp. v. White Consol. Indus., Inc., 383 F.3d 1326, 72 U.S.P.Q.2d (BNA) 1449 (Fed. Cir. 2004).
49. Johnson & Johnston Assocs., Inc. v. R.E. Serv. Co., 285 F.3d 1046, 62 U.S.P.Q.2d (BNA) 1225 (Fed. Cir. 2002).
50. PSC Computer Prod., Inc. v. Foxconn Int'l, Inc., 355 F.3d 1353, 69 U.S.P.Q.2d 1460 (Fed. Cir. 2004).
51. *See also* Voda v. Cordis Corp., 536 F.3d 1311, 87 U.S.P.Q.2d (BNA) 1742 (Fed. Cir. 2008).
52. M.P.E.P. § 2173.05(a); *In re* Burke, Inc., 786 F. Supp. 1537, 22 U.S.P.Q.2d (BNA) 1368, 1372 (C.D. Cal. 1992).
52.1. *See* Linear Tech. Corp. v. Int'l Trade Comm'n, 566 F.3d 1049, 91 U.S.P.Q.2d (BNA) 1065 (Fed. Cir. 2009).

*3M Innovative Properties Co. v. Avery Dennison Corp.*,[53] the product claim recited: "at least one surface that has a multiple embossed pattern having a first embossed pattern and a second embossed pattern." The district court read that as requiring that the embossment steps have been done in sequence. The Federal Circuit rightly decided that two patterns were being claimed, but their sequence was not because use of "first" and "second" to modify a noun identifying an element is a common patent practitioner's convention to distinguish between repeated instances of an element or a claim limitation. "First" was misread again in "first pivot point."[54] "First" does not denote a spatial location of the pivot point. It is a word that associates one element with another. Alternatively, the distinguishing adjective may refer to another element with which the named element is associated: "a base rotating member, . . . a connector rotating member. . . ." Thereafter the elements must be clearly and consistently named throughout all of the claims.

Use the same name for the element consistently throughout every claim. Do not change the noun. Do not change any adjectives.[54.1] "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can illuminate the meaning of the same term in other claims."[55] An adjective once used need not be repeated upon each subsequent appearance of its noun. But if the adjective has a subsequent appearance, the word(s) used must remain the same. An item called a "member," as in "connecting member," is always a "member," throughout all claims dependent upon the same claim in which the element has been first named. In *Ex parte Oetiker*,[56] the Board of Appeals and Interferences found a claim indefinite because an element therein appeared to have been twice claimed, first as "a pan-shaped depression means" and later as "a respective depression means." Not only did the applicant change the name, he used the indefinite article "a" twice. In a claim which does not depend from one naming an element, another name may be used for the same element. For example, in one chain of claims, the element may be the broader "surface," while in another chain of claims, the element may be the narrower "anvil" of

---

53.  3M Innovative Props. Co. v. Avery Dennison Corp., 350 F.3d 1365, 69 U.S.P.Q.2d (BNA) 1050 (Fed. Cir. 2003).
54.  Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 76 U.S.P.Q.2d (BNA) 1432 (Fed. Cir. 2005).
54.1.  *But see* Haemonetics Corp. v. Baxter Healthcare Corp., 607 F.3d 776, 95 U.S.P.Q.2d (BNA) 1556 (Fed. Cir. 2010) (discussed above).
55.  Phillips v. AWH Corp., 415 F.3d 1303, 75 U.S.P.Q.2d (BNA) 1321 (Fed. Cir. 2005); *In re* Omeprazole Patent Litig., 536 F.3d 1361, 87 U.S.P.Q.2d (BNA) 1865 (Fed. Cir. 2008); *see* M.P.E.P. § 2173.05(e).
56.  *Ex parte* Oetiker, 23 U.S.P.Q.2d (BNA) 1651, 1655 (B.P.A.I. 1992).

which the surface is only a part. Within each claim chain, the name of the element may never change. The "member" cannot sometimes be an "element," that is, it cannot be a "connecting element." An "element" would be a different claimed structure. If elements are named to suggest to the reader that two of them are present when in fact there is only one, this causes double inclusion of the twice-named element and the resulting claim may be held to be indefinite.[57]

Furthermore, if the same claim term appears in different portions of one claim or in different claims, there is a presumption that the term has the same meaning, unless the specification or the prosecution history shows otherwise.[58] In *Schoenhaus v. Genesco, Inc.*, the words "orthotic device" appeared in claims 1 and 2, and the court held that they could not have inconsistent meanings. To use the same term but attribute different meanings to it, use a different modifier, like a different adjective, or include additional explanatory words at each appearance of the term, like "operable for," "causing," or the like.

Often, an element is described not only by the noun, for example, "member," but by adjectives which modify the noun, as "connecting member" or "left side connecting member." After any feature is first named completely with all its adjectives in a claim, subsequent mentions of the feature in that claim or in subsequent dependent claims in the claim chain, following the first naming of the element, must use the same noun for that element, but may use fewer than all of the adjectives, thereafter calling it "member" or "connecting member," without the other adjectives "left side." The only limit on this freedom to drop adjectives is that there must be no other element whose designation, when shortened either to the noun alone or to the noun plus fewer than all of its adjectives, would be identified by the same words, because that would cause confusion as to which element was meant. Further, in a chain of claims following the one that first uses an adjective, the adjective cannot change. It may be deleted, as just noted, but not changed. If it is "an upper engaging member," it cannot later be "the upper holding member" or the "top engaging member."

For clarity in claim writing, I recommend avoiding use of first, second, third, etc., as the adjective which distinguishes one element from another. This usage is proper and so long as the adjective is used consistently, it cannot be considered ambiguous. However, sometimes a more descriptive adjective, descriptive, for example, as to function or

---

57. M.P.E.P. § 2173.05(o). *See* section 3:12, *infra*.
58. Schoenhaus v. Genesco, Inc., 440 F.3d 1354, 78 U.S.P.Q.2d (BNA) 1252 (Fed. Cir. 2006); Fin Control Sys. Pty, Ltd. v. OAM, Inc., 265 F.3d 1311, 60 U.S.P.Q.2d (BNA) 1203 (Fed. Cir. 2002). *See* Phillips v. AWH Corp., 415 F.3d 1303, 75 U.S.P.Q.2d (BNA) 1321 (Fed. Cir. 2005).

location or major characteristics (left side, elongate, etc.) might help the claim reader determine which element is being identified. On the other hand, the elements designated first, second, third, etc., may be identical in structure and function and may be distinguishable only by a non-descriptive adjective, or maybe using a descriptive adjective would, in the drafter's opinion, impermissibly narrow the scope of the recited element. Further, reciting only the adjectives first, second, etc., is useful where there are two or more ways of arranging elements and the claim writer wishes to encompass all of the ways, so that one location or arrangement would be first and the other would be second, without specifying which is which. Each element must always be described in such a distinctive manner as to clearly distinguish it from other similar or identical elements, as covered in section 3:3, above. Use the same terminology in the specification, as in the claims, even to at least once identifying the claimed elements using their distinguishing adjective, that is, first or second, base or connector, etc.

Where possible, a claim should be complete in itself. Incorporation by reference to a specific figure, drawing, or table in the specification is permitted only in exceptional circumstances, where there is no other practical way to define the invention in words or where it is more concise to incorporate by reference than to duplicate a drawing or a table.[59]

An element of an apparatus in a claim is not defined by or affected by the manner in which it was created.[59.1] Even if an element of a structure under investigation was created in a way not reasonably suggested in the specification supporting the claim element, the claim element may be satisfied by the actual structure, however it was created.

### Summary

*Select a clear name for each element, based on the detailed specification description where given. Where a broad scope name is desired, functional names, such as "a fastener" or "means for moving . . . ," should be used.*

### § 3:8 Plain Meaning of Claim Terms

When an element or a limitation in a claim is construed, it is to be given its plain, or ordinary, or customary meaning.[60] There are two

---

59. M.P.E.P. § 2173.05(s).
59.1. AFG Indus., Inc. v. Cardinal IG Co., 375 F.3d 1367, 71 U.S.P.Q.2d (BNA) 1678 (Fed. Cir. 2004).
60. M.P.E.P. § 2111.01(I); Miken Composites LLC v. Wilson Sporting Goods Co., 515 F.3d 1331, 85 U.S.P.Q.2d (BNA) 1865, 1869 (Fed. Cir. 2008); Walker Digital, LLC v. Microsoft Corp., No. 2011-1419, ___ U.S.P.Q.2d (BNA) ___, 2012 WL 1877600 (Fed. Cir. May 24, 2012).

# Chapter 4

# Method or Process Claims

§ 4:1   In General
§ 4:2   Elements of Method Claims
§ 4:3   Order of Steps
§ 4:4   Obvious Method Using Novel Starting Material or Producing Unobvious Product
§ 4:5   Claims to Both Method and Apparatus; Method Is Function of Apparatus
§ 4:6   Apparatus Limitations
§ 4:7   Chemical Processes
§ 4:8   Electrical Methods
§ 4:9   *Bilski* and Computer-Implemented Methods and Business Methods
§ 4:10  Claims to a Computer Program or Software-Related Invention
§ 4:11  Business Methods

## § 4:1   In General

Method, or process, claims are generally easier to write than mechanical claims. The reason for this is that method claims by their very nature do not require as much structural "connecting up" nor as many detailed statements of the mechanical cooperation of parts as do mechanical claims. Also, selecting the elements (steps) is easier, and there is less problem in giving the elements names, broad or narrow.

As to form, the body of a method claim is rarely much more difficult to write than a cookbook recipe:

> Preheat an oven to 350°F; sift 1½ cups of sugar; sift 1 cup of cake flour; sift together the sugar and the flour; add ½ teaspoon of salt to the sifted sugar and flour; beat . . . eggs . . . ; add the beaten eggs; . . . ; bake in the preheated oven for 45 minutes.

As easy as pie (or angel cake)!

§ 4:1 FABER ON MECHANICS OF PATENT CLAIM DRAFTING

The words "method" and "process" are interchangeable in the patent law, although "process" is perhaps more frequently used in chemical cases, while "method" is more usual in mechanical and electrical cases. To provide uniformity, this statutory class is now called "process" in 35 U.S.C. § 100(b) and is defined therein to mean "process, art or method." Most of the general rules previously given apply also to method claims. They may be broad or narrow; may be chemical, mechanical, or electrical; and may have most of the other variations (for example, genus/species) found in mechanical claims. The terms in the claim must find support in the specification; reference numerals may be used; appropriate antecedents are necessary; logical order is also necessary; steps must be "tied" together; "whereby" clauses may be used. However, even if a drawing of the invention is part of the disclosure, the steps of the method need not be shown in the drawing, in contrast to elements of a product claim. It is not necessary to provide a flow diagram of the claimed steps in the drawings, although such a diagram might be helpful in some cases for making a process more easily understandable.

A very important rule to remember is that the "elements" of a method claim, instead of being structural parts, are, and must be, *acts* or manipulative steps that are performed upon an article, workpiece, or chemical substance. It is the transformation or reduction of the article, workpiece, or chemical substance to a different state or thing that is the essence of a method claim—and the key to its patentability. This is especially true when the claimed method includes no particular machine or apparatus.[1]

There is no per se objection to claiming a single-step method,[2] except where a broad functional step is claimed, as noted in section 3:25. However, most claimed methods do involve combinations of steps, as is the case with machines and circuits. Of course, the claim must *particularly point out and distinctly claim* what the applicant regards as his invention (section 1:1), which is the basic requirement of 35 U.S.C. § 112 (see section 3:29.11).

*In re Kuehl*[3] announced a liberal philosophy toward granting method or process claims of various kinds, even where the point of novelty appears to the examiner to reside in other statutory classes (new compound in that case), so long as the process is unobvious to

---

1. Gottschalk v. Benson, 409 U.S. 63 (1972) (discussed in section 4:10).
2. *Ex parte* Kelly & Ford, 173 U.S.P.Q. (BNA) 743 (B.P.A.I. 1971); *Ex parte* Britton, 154 U.S.P.Q. (BNA) 321 (B.P.A.I. 1967); *Ex parte* Macy, 132 U.S.P.Q. (BNA) 545 (B.P.A.I. 1960).
3. *In re* Kuehl, 475 F.2d 658, 177 U.S.P.Q. (BNA) 250 (C.C.P.A. 1973).

one of ordinary skill in the art. This was further defined in *In re Durden*.[4]

A claim may be valid even if it combines two statutory classes of invention, for example, method claims relying on their performance using particular apparatus.[5]

A process claim may be patentable if an otherwise conventional process *uses* either a novel material or an old material whose use in the claimed process would have been unobvious.[6] In either case, the test is whether the process is found to be unobvious. *Durden* held that use of a novel or unobvious starting material or producing a novel or unobvious end product was not enough. The process had to be unobvious to one of skill in the art. Thus a claim:

> **A process for making a soap comprising mixing water with compound X.**

would be a patentable claim if compound X is as above.[7] But a process claim for *making* a novel material using a conventional process and conventional materials is not patentable.[8] Finally, *making* a known material but in an unobvious manner is a patentable process.[9] Some aspect of the making, not of the result, must be novel.

There is a peculiar exception to process protection. Public Law 104-208 enacted in 1996 denies patent owners the right to enforce patents claiming medical or surgical procedures that do not involve patented pharmaceuticals or patented devices. One can claim the process in the usual way methods are claimed. But the claim is now without value, since it cannot be enforced in a court. The claimed process should include reference to a patented drug or to a patented device in one of the claim elements if the claim is to have hope for enforcement. But then the accused infringer must also have used the patented drug or device in performing the process accused of infringing.

### Summary

*Method claims involve one or more acts or steps performed on an article, workpiece, or chemical substance to achieve some result in the useful or technical arts. The elements of a method claim must be steps or acts, expressed as verbal statements or phrases.*

---

4. *In re* Durden, 763 F.2d 1406 (Fed. Cir. 1985).
5. Collaboration Props., Inc. v. Tandberg ASA, 81 U.S.P.Q.2d (BNA) 1530 (C.D. Cal. 2006).
6. *In re* Ochiai, 71 F.3d 1565 (Fed. Cir. 1995).
7. *Ex parte* MacAdams, Wu & Joyner, 206 U.S.P.Q. (BNA) 445, 447 (B.P.A.I. 1978); *In re* Maucy, 182 U.S.P.Q. (BNA) 303, 306 (C.C.P.A. 1974).
8. *Id.*
9. *In re* Hirao, 190 U.S.P.Q. (BNA) 15 (C.C.P.A. 1976).