# EXHIBIT A

(Redacted version of Dkt. # 632)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-PAB-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S MOTION FOR SANCTIONS FOR MDx MEDICAL, INC.'S FAILURE TO COMPLY WITH COURT-ORDERED DISCOVERY**

Pursuant to Rules 37(B)(2)(A) & (C) of the Federal Rules of Civil Procedure, Plaintiff Health Grades, Inc. ("Health Grades") respectfully moves this Court for an order sanctioning Defendant MDx Medical, Inc. ("MDx") for its failure to comply with this Court's Order [Doc. 192] ("Discovery Order") and an award of expenses, fees, and costs for preparing and defending against MDx's summary judgment motion on the healthcare provider verified-information element (the "Physician Information") [Doc. 367/368] and preparing this motion.

INTRODUCTION

MDx was ordered to state whether the Accused Products[1] contained each claim element. MDx did not do so. Instead, MDx obfuscated its discovery responses and moved for summary

---

[1] Health Grades' First Set of Interrogatories to MDx, defined "'Accused Products' as any system, including software, hardware and/or network architecture, that is capable of performing a search for information relating to healthcare providers, e.g., physicians, hospitals, nursing homes, treatment facilities, etc., including without limitation all versions of the www.vitals.com website

judgment.  MDx moved for summary judgment with full knowledge (or willful ignorance) of facts within its control that were contrary to its summary judgment motion.  When Health Grades confronted MDx with its discovery violation and facts from MDx's website that Health Grades unearthed on its own, MDx withdrew its summary judgment motion.  Rule 37 empowers this Court to deem the "designated facts be taken as established for purposes of the action" and award Health Grades' expenses, fees, and costs incurred as a result of MDx's sanctionable conduct.  Those sanctions are warranted here.

## BACKGROUND

Health Grades' lawsuit against MDx asserts that its website, vitals.com, literally, and through the doctrine of equivalents, infringes Health Grades' '060 Patent [Doc. 1].  The Physician Information element of claims one and fifteen require:

> Accessing [or access] healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: Specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies. . . .  ('060 Patent, Claim 1 and 15.)

On July 25, 2011, Health Grades served it First Set of Interrogatories.  Interrogatory 2 required MDx to identify whether the Accused Products contained the '060 Patent elements, including Physician Information and if not an explanation how the Accused Products operate or function differently than the claim element.  (Health Grades' First Interrogatories is attached as

---

. . . ."  (Health Grades' First Interrogatories is attached as Exhibit 3 to its Motion to Compel [Doc. 126].)

- 2 -

2004442498_3

Exhibit 3 to its Motion to Compel [Doc. 126].) In response, MDx provided conclusory and vague statements, such as "[f]or most of the MDx data, the information required by this portion of the claims is not verified by the healthcare provider." (MDx's Response to Interrogatory 2 is attached as Exhibit 4 to Health Grades' Motion to Compel [Doc. 126].)

On January 24, 2012, Health Grades filed a motion to compel to address this response and other deficiencies. [Doc. 126.] The Court granted the motion in part and, as pertinent to Physician Information, ordered MDx to:

> [S]upplement its response to Interrogatory No. 2 to state for each claim element whether MDx's Accused Products provide such an element or an equivalent and, if not, explain how MDx's Accused Products operate or function differently than the claim element.

(Discovery Order [Doc. 192] p. 2.)

MDx's second supplemental response to Interrogatory 2 (Exhibit A hereto) served on May 10, 2012, did not comply with the Discovery Order. MDx only provided information regarding certain percentages of physicians who have "entered and/or modified each data field," but never followed the Discovery Order's requirement of stating whether or not the Accused Products "provide such an element," namely, whether MDx has received three or more types of Physician Information. (Exhibit A p. 3.) Rather, MDx stated it "currently has no knowledge of any physician who has entered and/or modified three or more of that information." (*Id.*)

But MDx did know and had to know of physicians who had edited three or more of the Physician Information because the information was available to MDx in many ways and forms:

> Q. [Mr. Kanan] Is that true of the current status of the website that the physicians can edit information about themselves?

- 3 -

2004442498_3

>       A. [Chief Technology Officer of MDx] Yes. Physicians can edit
>       information about themselves.
>
>       Q. Is there someone who in particular would note or prepare a
>       report of how often physicians are actually editing their data?
>
>       A. Oh. There is a report that is generated that describes how many
>       physicians have updated their information I believe that month. I
>       think it's included in what we call the KPI report.

(July 26, 2012 Larry West Deposition at p. 39: 7-19 [Doc. 236-1].) MDx simply refused to conduct a "reasonable inquiry" before or after supplementing its response. *See* Fed. R. Civ. P. 26(g)(1).

Despite a knowing violation of the Discovery Order, on November 2, 2012, MDx had the temerity to file a summary judgment motion on the Physician Information element. [Doc. 367/368]. In support of its motion for summary judgment, MDx NEVER provided an affidavit stating that the Physician Information element had not been satisfied. Instead, MDx hoped to obtain summary judgment while withholding the true facts. For example, MDx never conducted a search to determine whether three or more fields of Physician Information were edited by a particular physician "[b]ecause Health Grades did not request for MDx to perform the query. . . ." (Summary Judgment Reply [Doc. 444] p. 9). Thus the information was at all times available to MDx, MDx simply chose not to obtain it, despite being ordered to do so by the Court.[2]

---

[2] MDx could have easily run a query to show whether a physician edited three or more groups of Physician Information. (September 9, 2012 Greenspun Report [Doc. 405-8] ¶ 125 "While MDx says it does not know of any physician who edited three or more of these fields, this could be determined by the same conventional SQL queries that MDx used to count the numbers of physicians who had made edits to a single field. Larry West testified that all edits made by

- 4 -

This Court's recent Order [Doc. 618] set a hearing on MDx's motion summary judgment motion [Doc. 367/368] and another summary judgment motion for October 25. Health Grades informed MDx's counsel of its intent to file a motion to supplement the record with additional exhibits to supports its responses to the two summary judgment motions. (Exhibit B, October 15, 2013 email from Health Grades' counsel with attached emails providing links to exhibits.)

Health Grades' supplemental exhibits in support of its response [Doc. 405] to MDx's summary judgment [Doc. 367/368] revealed four areas confirming that MDx filed summary judgment knowing (or willfully ignoring) facts that were: (1) within its control, (2) subject to disclosure by the Court Order, and (3) contrary to its position or summary judgment.

    1.    <u>MDx's Approval Button</u>: The following excerpt from Supplemental Exhibit 11 reveals MDx did not disclose that the Accused Products require the physician to "Approve" of the modifications and edits to the data fields, including, approval of gender, honors, specialties, and other fields that are included under Patent '060's Physician Information element.

---

physicians can be determined. (See Deposition of Larry West (Rough Draft) at 269:14-270:16).")

- 5 -



(Exhibit C, Supplemental Exhibit 11 (above annotation added).) The Supplemental Exhibit 11 is a screen shot taken from MDx's website. It is part of an MDx PowerPoint presentation dated August 3, 2011. To the left are green checkmarks, including far more than three elements of Physician Information. The green check marks demonstrate that this physician has "approved" more than three types of the claimed Physician Information. The physician in this example is Dr. Jack Sheppard. Supplemental Exhibit 11 included an MDx website page from Dr. Jack Sheppard showing that he is a real physician and the Physician Information approved by him is in the MDx system and displayed there.

       2.     <u>MDx's Collection of Physician Information</u>: MDx's supplemental response to Interrogatory 2 provided "               REDACTED

- 6 -

2004442498_3

REDACTED

." (Exhibit A p. 3.)

However, this statement is highly misleading. MDx failed to disclose or identify that the Accused Products require every doctor to "verify" their age when signing onto vitals.com to make edits and/or modify data fields, as evidenced by the following verification page on MDx's site:



(Exhibit D, Supplemental Exhibit 13, attachment.) The screen shots to Supplemental Exhibit 13 also revealed that at least three of the Physician Information fields identified in the Patent '060 can be entered by the physician through the portal and there are no limitations precluding a physician from editing less than three fields. (*Id.*) And, as detailed above, 345,000 edits had been made by doctors as of August 3, 2011. MDx claims that it has never run a search query to

- 7 -
2004442498_3

determine whether three or more groups of Physician Information were received from a physician,[3] despite the Court Order.

3.  MDx's Collection of Personal Information:  As noted, REDACTED

(Exhibit A p. 3.)  However, Health Grades conducted a cursory review of MDx's site on October 15, 2013 and identified Dr. Steven M. Schwarz, a practicing doctor, whose "Personal Information" provided a highly detailed summary of his publications, years in practice, awards and appointments, four Physician Information fields of information.  (Exhibit E, Supplemental Exhibit 15.)  A review of the doctor's "Personal Information", shows that Dr. Schwartz was a "Distinguished Lecturer in the Graduate School of Health Sciences at New York Medical College" [appointment], received the "Charles H. Revson Foundation Career Scientist Award" [award], was listed in the New York Magazine's "Best Doctors in New York" issue [award], has been practicing since 1980 [years in profession] and "published more than 90 original papers, abstracts and book topics [publications]."  (*Id.*)  As noted, this information is set in Dr. Schwartz's "Personal Information" section of his physician profile on the Vitals's website[4].  MDx failed to make a reasonable inquiry into the Physician Information displayed on its website.

---

[3] In MDx's reply in support of its motion for summary judgment [Doc. 444] p. 9, MDx asserts that it did not answer the question that the Court ordered it to answer: "[B]ecause Health Grades did not request for MDx to perform the query, MDx did not run the database query."

[4] The "Personal Information" section of the MDx website unquestionably contains information that is personal and received from the physician, such as the medical philosophy of Dr. Maria Gafanovich (Exhibit F, Supplemental Exhibit 10.)

- 8 -

4. <u>MDx Failed to Review Its Own Records</u>: After MDx provided additional data regarding the edits and/or modifications to the fields on the Accused Products, Health Grades noticed discrepancies in the data that showed the number of doctors who registered were significantly less than the number of doctors who have edited their profiles, this was confusing because MDx's witness testified that only registered physicians could edit their MDx physician profile. (Larry West Deposition at pp. 257: 20-258: 10 [Doc. 236-1]). On September 18, 2013, Health Grades emailed MDx's counsel to alert them to the significant discrepancy between the number of doctors who registered on the site and number of doctors who edited their profiles. (Exhibit G, Supplemental Exhibit 19, p. 4-5.) Despite being on notice of the significant discrepancy for over one month,[5] MDx never addressed it until after MDx received notice of Health Grades' intent to supplement the record on October 15, 2013.

Finally, even putting aside the four categories of evidence set forth above, the declaration of Health Grades' expert, Dr. Greenspun (Exhibit H, Supplemental Exhibit 10) makes it clear that more than REDACTED physicians edited three or more groups of Physician Information. Dr. Greenspun also concluded that the probability that "no doctor edited three or more fields [as MDx suggests]. . . is so improbable that the probability cannot be expressed in terms of numbers in the ordinary human experience." (*Id.* at ¶ 50.) The closest level of improbability to this situation is roughly 1 in 100 billion. (*Id.*)

---

[5] Health Grades did not receive the registered physician information ( REDACTED ) from MDx until September 13, 2013. MDx should have been aware of this discrepancy all along.

- 9 -

Not until after Health Grades presented its supplemental exhibits showing MDx either knew (or willfully ignored) facts that were contrary to its motion, and conferred with MDx regarding this motion for sanctions, did MDx withdraw its motion for summary judgment regarding the Physician Information element. (Exhibit I, email from MDx counsel and reply dated October 17, 2013; *see also* [Doc. 627].)[6] The Court should sanction MDx by deeming the "designated facts [regarding Interrogatory 2] be taken as established for purposes of the action" and award Health Grades' expenses, fees, and costs.

## ARGUMENT

I.  THIS COURT SHOULD SANCTION MDx.

When a party fails to respond to a relevant discovery request, the requesting party may seek an order compelling discovery. Fed. R. Civ. P. 37(a). If a party fails to obey the Court's discovery order, the Court may issue "further just orders," including the following sanction:

> (i)  directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims.

Fed. R. Civ. P. 37(b)(2)(A)(i). The Court has the discretion to select and impose any sanction that is "just and related to the particular 'claim' which was at issue in the order to provide discovery." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). Where a dispositive sanction is not at issue, factors in determining an appropriate sanction include: (1) the degree of actual prejudice to the moving party, (2) the amount of interference with the judicial process, and (3) the culpability of the non-moving party. *See Cahe La Poudre Feeds, LLC v. Land O'Lakes*

---

[6] During this same conversation, MDx revealed that it had additional data regarding Physician Information and would produce it; however, as of the date of this filing, MDx has not produced that information.

- 10 -

*Farmland Feed, LLC*, 244 F.R.D. 614, 636 (D. Colo. 2007); *see also Markham v. National States Insurance Co.*, 2004 U.S. Dist. LEXIS 26510, 2004 WL 3019308, 12 (W.D. Okla. 2004) ("It is clear from *Ehrenhaus* that the five-factor test which the court articulated is applicable only where an extreme sanction—typically a dispositive sanction—is at issue."). The requested sanction is not a dispositive sanction because even if the Physician Information element is deemed established, Health Grades must still prove the remaining elements of its infringement claim.[7]

A.  Health Grades Has Been Prejudiced.

First, and most importantly, Health Grades has expended an immense amount of resources preparing for and defending against a motion for summary judgment that hinged upon false premises. For instance, Health Grades had to go to the substantial expense of briefing the issues and having Dr. Greenspun prepare a sophisticated probability analysis in a 19-page declaration. Expending this time and effort could have been completely avoided had MDx conducted a reasonable inquiry regarding the Physician Information and complied with this Court's Discovery Order. However, MDx chose not to take any one of these steps and instead decided to move for summary judgment when facts undercutting that very Motion were and should have been known to MDx. MDx only conceded that the motion should be withdrawn once it was confronted with mounting evidence contrary to its position and was faced with the possibility of facing sanctions for its deceptive behavior.

---

[7] Even if the remaining two *Ehrenhaus* factors apply (whether the court warned the party in advance that a dispositive sanction would be likely for non-compliance and the efficacy of lesser sanctions), Health Grades is still entitled to the requested sanction. Despite the court not issuing a warning of dispositive sanctions, MDx is a sophisticated entity with seasoned counsel and is no doubt on notice of the perils of failing to comply with court orders. Further, given MDx's repeated efforts to thwart Health Grades' discovery, and deceptive practices, a lesser sanction will not be effective.

- 11 -

2004442498_3

Second, Health Grades has been hindered in defending against MDx's motions for summary judgment. *See FDIC v. Renda*, 126 F.R.D. 70, 73 (D. Kan. 1989) (A "party's 'ability to prepare a meritorious motion for summary judgment, or to adequately prepare for trial, is significantly diminished' when it does not receive sufficient responses to its discovery requests."). For instance, Health Grades' expert Dr. Greenspun was at a disadvantage when offering an opinion, and supplemental opinion, about whether MDx's Accused Products infringed the '060 Patent because he did not have a complete and forthright response regarding the Physician Information element. Dr. Greenspun had to prepare a probability analysis on whether physicians edited three or more of the subject fields instead. (*See* Health Grades' Opposition to Motion for Summary Judgment [Doc. 405] Exhibit 8, Dr. Greenspun Report, p. 32 (detailing probability analysis and commenting on how MDx could have performed the basic SQL searches).) Dr. Greenspun also did not have the necessary data to adequately supplement his opinion on this issue and still does not have that information from MDx today.

In short, Health Grades has been prejudiced. *See Ehrenhaus*, 965 F.2d at 921 (concluding prejudice established where violator's actions caused the opposing side delay and mounting fees).

### B.    MDx's Actions Have Interfered With The Judicial Process.

This Court has already had to expend significant time and resources determining whether MDx failed to comply with Health Grades' straight-forward discovery. More importantly, as evidenced by this Court's Order setting oral arguments on MDx's motions for summary judgment, this Court expended time and effort reviewing MDx's motion regarding Physician Information [Doc. 618] only to have MDx withdrawal the motion eight days before the hearing

- 12 -

2004442498_3

[Doc. 627]. Now this Court once again has to waste judicial resources when reviewing this motion because of MDx's approach to discovery and summary judgment. *See Dixon v. Ruiz*, 870 F. Supp. 2d 1179, 1182 (D. Colo. 2011) (concluding interference established because "[i]nstead of attending to the merits of th[e] case and others, [the court was] [] required to devote attention to this plaintiff's failure to comply with court orders").

### C. MDx is Culpable.

MDx's failure to comply with the Discovery Order is not by mistake, or an isolated incident, but by design to (1) thwart Health Grades' legitimate discovery and Court Orders based upon that legitimate discovery, and (2) obtain summary judgment under false pretenses. MDx's improper conduct began when MDx chose not to identify whether the Accused Products contain the Physician Information element after this Court ordered MDx to supplement its response. MDx then tried to induce this Court into entering summary judgment in its favor, despite the known existence of facts to the contrary. Even when MDx was confronted with mounting evidence contrary to its position, and was faced with the possibility of sanctions, it still did not own up to what it had done and admit the Physician Information element. Instead, it tried to duck out unscathed by simply withdrawing its motion for summary judgment.

In short, MDx and its counsel are highly culpable and their behavior is worthy of sanction.

## II. SANCTIONS UNDER FED. R. CIV. P. 37(b)(2)(A)(i) ARE PROPER.

MDx's withdrawal of its motion for summary (only after Health Grades informed of its intent to move for sanctions) is too little too late. The repeated efforts to thwart Health Grades' attempt to prosecute its case and the refusal to comply with this Court's Discovery Order

- 13 -

Case No. 1:11-cv-00520-RM-NYW Document 648-11 filed 11/07/13 USDC Colorado pg 15
Case 1:11-cv-00520-RM-BNB Document 632 Filed 10/21/13 USDC Colorado Page 14 of 16
of 17

warrants a sanction under Civ. P. 37(b)(2)(A)(i). *See Adolph Coors Co. v. Am. Ins. Co.*, 164 F.R.D. 507, 520-21 (D. Colo. 1993) (concluding "Liberty Mutual [was] not entitled to short-circuit [] [the] process [of determining what documents would be admissible] (to its advantage) by withholding the documents"—sanction of precluding Liberty from raising the defense it had no duty to defend was appropriate). This Court should hold as established for purposes of this action that MDx's Accused Products contained the Healthcare provider-verified-information elements of claims one and fifteen.

III. EXPENSES, FEES, AND COSTS

Federal Rule of Civil Procedure 37(b)(2)(C) provides that "instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." MDx and its counsel's violations are unjustified. Health Grades respectfully requests an award of all its expenses, fees, and costs associated preparing for and defending against the Physician Information motion for summary judgment and the fees and costs associated with preparing this motion. Health Grades will submit an application for expenses, fees, and cots within fourteen days of granting this motion.

CONCLUSION

For all of the foregoing reasons, Health Grades requests that this Court order that the following designated facts be taken as established for purposes of the action and award Health Grades its fees and costs:

- 14 -

2004442498_3

The claim elements of claims one and fifteen set forth below shall be deemed established:

> accessing [or access] healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: Specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies. . . .

### CERTIFICATE OF COMLANCE WITH D.C.COLO.LCivR 7.1A

The undersigned counsel for Health Grades certifies that he has conferred with counsel for MDx regarding all of the foregoing issues in an attempt to resolve them, including via several e-mails between counsel on October 17, 2013, and a telephone conference with counsel for MDx on October 18, 2013. The parties have not been able to resolve these issues and MDx objects to the relief requested herein.

Respectfully submitted October 21, 2013.

LEWIS ROCA ROTHGERBER LLP

*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 623-9000
Fax: (303) 623-9222
Email: gkanan@lrrlaw.com
 kkosto@lrrlaw.com
 jvazquez@lrrlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

Case No. 1:11-cv-00520-RM-NYW Document 648-1 filed 11/07/13 USDC Colorado pg 17
Case 1:11-cv-00520-RM-BNB Document 632 filed 10/21/13 USDC Colorado Page 16 of 16
of 17

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2013, I electronically filed the foregoing **MOTION FOR SANCTIONS FOR FAILURE TO COMPLY WITH A COURT ORDER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson
Mark Jon Rosenberg
David Chunyi Lee
Trent Dickey
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
Email: sstimpson@sillscummis.com
Email: mrosenberg@sillscummis.com
Email: dlee@sillscummis.com
Email: tdickey@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO  80202-5647
Email: ridley@wtotrial.com

*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@lrrlaw.com
　　　　kkosto@lrrlaw.com
　　　　jvazquez@lrrlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

- 16 -

2004442498_3