# EXHIBIT A

(Redacted version of Dkt. # 652)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

**MDX MEDICAL, INC.'S OPPOSITION TO HEATH GRADES, INC.'S MOTION FOR SANCTIONS FOR MDx MEDICAL, INC.'S FAILURE TO COMPLY WITH COURT-ORDERED DISCOVERY**

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, hereby opposes Health Grades, Inc.'s ("Health Grades") motion for sanctions for MDx's alleged failure to comply with court-ordered discovery ("Health Grades' Motion"; Dkt. # 632).

**I.     SUMMARY OF THE ARGUMENT**

Eighteen months after MDx extensively supplemented its response to Interrogatory 2, pursuant to this Court's Order (Dkt. # 192), Health Grades complains for the first time that MDx did not sufficiently supplement, and on this basis moves for evidentiary, dispositive sanctions. But MDx provided substantial, supplemental information, including detailed, good faith, responses on both literal and equivalents issues, as ordered by the Court. The information Health Grades only now contends should have been in the supplemental interrogatory response would

1

have required MDx to design specialized queries in order to analyze the MDx database and thereby create new documents, none of which is required under the applicable rules or case law. Moreover, this very information was known by Health Grades to be available if specialized queries were designed and implemented to create new documents, but Health Grades never asked that these queries be run, even when it was requesting other queries – Health Grades deliberately avoided this discovery and never wanted MDx to provide it, for fear of the disastrous consequences it could potentially bring to Health Grades' infringement case. Tellingly, Health Grades is still not asking for the information to be produced, but instead wants the Court to impose a sanction that would dispose entirely of this MDx defense, even though all understand that the defense precludes infringement, at an absolute minimum, REDACTED the MDx website. If Health Grades truly believed that MDx should have done more, it should not have waited eighteen months to raise the issue, and instead should have directly addressed the issue with counsel for MDx long ago (as MDx did when Health Grades failed to comply with Court orders).

As for the documents now being produced, and the withdrawal of the MDx summary judgment motion, Health Grades is jumping to irrational conclusions. The MDx methods addressed by these documents are not covered by the Health Grades infringement allegations, nor were they ever a focus of Health Grades discovery requests. MDx reserves the right to renew the motion for summary judgment after counsel for Health Grades has an opportunity to review the documents.

2

## II. MDx SUPPLEMENTED INTERROGATORY 2 IN GOOD FAITH

Health Grades complains that MDx did not sufficiently supplement its response to Interrogatory 2 in response to a Court Order (Dkt. # 192). Health Grades' complaint seems focused on a single MDx non-infringement defense. The claim language at issue requires at least three of certain data elements to be received from the healthcare provider (hereinafter "the Provider Data"). U.S. Patent No. 7,752,060 ("the '060 patent"; attached hereto as Exhibit A), at claim 1, col. 20, lines 29-38; claim 15, col. 22, lines 19-27.[1]

MDx addressed this infringement defense in detail in its supplemental interrogatory response. It identified percentages of providers who edited each of the claimed data elements, and showed that, at most, REDACTED the providers could have edited three or more of the Provider Data – ( REDACTED MDx website was unquestionably free of infringement. Detailed equivalents positions were also provided. *See* MDx's Second Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories, dated May 10, 2012, Exhibit A to Health Grades' Motion, Dkt. # 632-1, at 2-9.

Without citing a single case supporting its position, Health Grades argues that MDx should have designed specific queries in order to have an analysis run on the MDx database, so as to create documents and information that could answer the question of whether any provider has ever edited three or more of the data elements. *See, e.g.*, Health Grades' Motion, at 4 ("MDx never conducted a search to determine whether three or more fields of Physician Information

---

[1] Apparently, Health Grades is also seeking to quietly wrap up into its fanciful sanctions request a second defense. Specifically, this same paragraph of the claims also requires that the providers not only submit these data elements, but ***verify*** them too. While Health Grades' motion has no clear complaints about the response on this issue, it does seem to subtly ask that MDx lose this defense too. If Health Grades is in fact seeking this result as well (dispositive rulings on two defenses, not just one), then it too should be denied for all the same reasons addressed herein.

3

were edited by a particular physician . . ."); *see also* fn. 2. But MDx had no obligation to do anything of the sort. *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 U.S. Dist. LEXIS 17857, 41-42 (D. Colo. Feb. 8, 2010) (refusing to order discovery "to the extent that Plaintiff's Second Set of Interrogatories and Requests for Production of Documents . . . would require Defendants to recreate responsive documents"); *Seed Research Equip. Solutions, LLC v. Gary W. Clem, Inc.*, 2011 U.S. Dist. LEXIS 99087, 4-5 (D. Kan. Sept. 1, 2011) (acknowledging testimony about "the potential for certain reports to be *generated* by Plaintiff's computer system," but finding discovery requests did not cover them: "Plaintiff correctly argues that the rules of discovery do 'not require a party to create or generate responsive materials… .'"; emphasis in the original). Indeed, any queries MDx created to analyze the database and generate results surely would be subject to criticism by Health Grades (especially if Health Grades did not like the results), and the dispute would then revolve around whether MDx performed the right analysis and whether the specific queries would generate the right result. If Health Grades truly believed, contrary to this established law, that MDx was required to design special queries in order to generate new documents and provide more information, it should have addressed the concern with counsel for MDx **_eighteen months ago_** when the supplemental response was served. *Cf.* E-mail from counsel for MDx to Health Grades' counsel, dated Feb. 1, 2012, identifying Health Grades' failures to comply with a then-recent Court Order; attached hereto as Exhibit B (highlighting added).[2]

---

[2] Apparently recognizing that it has no law to support its allegation that MDx should have designed specialized analyses and created documents to answer the interrogatory, Health Grades makes various references to irrelevant documents and information in an effort to convince the Court that MDx had possession of information or documents that would answer the questions of whether any provider gave three or more of the required data elements, and whether the provider

4

Case No. 1:11-cv-00520-RM-BNB Document 661-1 filed 11/26/13 USDC Colorado pg 6 of 17

The reason Health Grades was silent for eighteen months, is because Health Grades ***did not want this discovery***. Indeed, throughout the discovery period, Health Grades deliberately avoided requesting database information on whether any provider edited three or more of these data elements. Health Grades admits that it was aware, long ago, that specialized queries could be run to analyze the MDx database (and thus new documents could be created), so as to show whether any provider had ever edited three or more of the data elements. Health Grades' Motion, at 4, fn.2. Health Grades, however, ***never requested that these queries be run***. Indeed, while Health Grades has requested that MDx run certain ***other*** queries on the database (and has received responses to all), Health Grades has never included in those requests that queries be run to determine if any provider has ever given three or more of these data elements. *See, e.g.,* E-mail from counsel for MDx to Health Grades' counsel, dated Sept. 6, 2013, confirming Health Grades' requested database query; attached hereto as Exhibit C (highlighting added). Health

---

verified the information. None of it is on point. Health Grades references the KPI reports at page 4 of its motion, but as Mr. West testified, they identify how many physicians have updated their reports with any information (the claim elements are not mentioned at all); and KPI reports were produced to Health Grades long ago. Then, at pages 5-10, Health Grades references four "categories" of evidence that also do not even touch on the relevant issues. Addressing (in the parentheticals) the four Health Grades arguments: point number 1, at pages 5-6 ("approving" information is neither providing the information nor verifying it); point number 2, at pages 6-8 (this only shows what Health Grades has always known, that it is possible for physicians to make edits; and the 345,000 edits include many things other than the claim elements, like changes to address, telephone numbers, etc., and does nothing to show whether any single provider ever edited three of the specific claim elements); point number 3, at page 8 (this only shows that one doctor's profile contains certain information, and says nothing about where it came from or whether there was verification from the provider -- it is not proof of anything); and point number 4, at page 9 (this is simply a comment on when Health Grades received the supplemental discovery it requested, and it does not address the fact that the documents now being produced were not encompassed within the infringement contentions or pursued during discovery). If Health Grades truly believes that any of these irrelevancies can preclude summary judgment, it should have the opportunity to make those arguments to Judge Moore later.

5

Case No. 1:11-cv-00520-RM-NYW Document 661-1 filed 11/26/13 USDC Colorado pg 7 of 17

Grades and its counsel were keenly aware that, if they pursued this information, it might show that no provider had ever given three or more of the required data elements, and thus kill Health Grades' infringement allegations on the spot. So, rather than risking disaster, Health Grades decided to take its chances on proving infringement with inferences, and statistics based on how many providers gave only one of each required element.

Consistent with its acute aversion to obtaining this discovery, after ***eighteen months of silence***, Health Grades now asks this Court to wipe out this MDx defense entirely and implement an evidentiary, dispositive sanction, that would establish that every provider in the MDx database gave three or more of the required data elements. This request is outrageous for many reasons. ***First***, as discussed above, MDx had no obligation under the relevant law to design specialized queries to analyze the database and create new documents in response to discovery requests, so MDx did absolutely nothing wrong, let alone anything that could possibly justify a dispositive sanction. ***Second***, Health Grades cannot now complain that it did not receive discovery it never pursued, and indeed discovery it specifically and deliberately avoided (addressed above). ***Third***, although there was time left in the discovery period when MDx served this supplemental response back in the spring of 2012, Health Grades remained silent on the issue for eighteen months while it let the discovery clock expire, with the apparent intention to address it in a sanctions motion rather than simply notifying MDx of its alleged concerns and easily remedying the situation in the spring of 2012. *Cf.* Exhibit B. ***Fourth***, even if MDx had done something wrong (it had not), Health Grades knows from discovery produced long ago that the sanction it seeks is factually wrong for, at a minimum, [REDACTED] MDx website. Exhibit A to Health Grades' Motion, at 3 ("the maximum possible percentage of physicians who may

6

have entered and/or modified three or more of this information <span style="color:red">REDACTED</span> ). ***Fifth***, Health Grades' request is completely inconsistent with another ruling of this Court, expressly holding that where discovery could be pursued, that is the correct approach, particularly in situations like this where the moving party has delayed in pursuing relief. Magistrate Boland's Order, dated April 25, 2013, Dkt. # 569, at 7-8 ("Importantly, if MDx believes that the Rule 30(b)(6) designees were inadequately prepared on important matters for examination, a better approach would have been to move to compel discovery rather than to seek evidentiary sanctions. MDx's delay in seeking relief, combined with its decision to seek evidentiary sanctions at trial rather than an order compelling discovery, evidences the kind of 'overreaching by the party seeking discovery' about which Professors Wright and Miller warn."). And ***sixth***, since this requested sanction potentially could be the difference between MDx winning or losing this case, it is clearly classified as a dispositive sanction, and thus even if MDx had done something wrong (it had not), it should not be imposed without a court warning or consideration of lesser sanctions. *Ehrenhaus v. Reynolds*¸ 965 F.2d 916, 920-21 (10th Cir. 1992) (chosen sanction must be "just"); *see also*, Fed. R. Civ. P. 72(a) (dispositive orders eliminate a party's claim or defense); *Janssen Pharmaceutica N.V. v. Mylan Pharms.*, Inc., 2006 U.S. Dist. LEXIS 5443 *7 (D.N.J. Feb. 10, 2006) ("An order that strikes a defendant's affirmative defense is dispositive of that defense..."); *Starlever Hydraulik GmbH v. Mohawk Resources*, 1996 U.S. Dist. LEXIS 4849, 9-10 (N.D.N.Y Apr. 10, 1996) (preclusion of non-infringement defense is considered a dispositive ruling); *see also,* Magistrate Boland's Order, dated Dec. 12, 2011, Dkt. # 87, at 1, fn. 1 (treating as dispositive a ruling that may have the effect of being dispositive); *Cf. Klein-Becker USA, LLC v.*

7

*Englert*, 711 F.3d 1153, 1160 (10th Cir. 2013) (affirming dismissal of a case only after warning the defendant at least twice of the possible sanctions and for violating three discovery orders).

### III. THE DOCUMENTS BEING PRODUCED NOW

In response to queries recently requested by Health Grades, it was shown that the number of providers who registered to directly edit their profile information was less than the number of providers who have edited (or requested to have edited) their data. This led to identification of emails and faxes that providers had submitted to MDx requesting edits to their data. MDx undertook to produce the documents.

The documents at issue will be produced soon, and MDx expects about 25,000 e-mails and/or faxes to be produced. Health Grades' reply brief surely will howl about the quantity of these documents, allege that they are of paramount importance, and accuse MDx of hiding them. However, the simple facts are: (1) these documents do not show providers directly editing their profile information, and so were never encompassed within Health Grades' infringement contentions; (2) Health Grades never pursued this discovery; and (3) while all related documents are being produced (resulting in a high number of pages for production), the vast, vast majority are absolutely no help to Health Grades because they do not show any provider giving three or more of the required data elements.

The ***only*** method of physicians providing their data that is mentioned in Health Grades' infringement contentions is through a physician log-in whereby physicians ***directly edit*** their information. *See* Portions of Health Grades' August 2013 Claim Chart, attached hereto as Exhibit D, at 43-46 (page 43: "MDx's website provides many opportunities for doctors to ***edit their own profiles***"; emphasis added); *see also* the United States District Court for the Northern

8

District of California's Patent L.R. 3-1, (part b: "identification [of accused structure] ***shall be as specific as possible***"; part c: requiring "a chart identifying ***specifically*** where each limitation of each asserted claim is found within each Accused Instrumentality"; emphases added). The documents being produced, however, do not involve the providers directly editing their own profiles, but instead are only correspondence to MDx about possible changes. As Health Grades did not accuse these methods of being any part of its infringement analysis, it is in no position now to complain that the documents were not produced earlier, since discovery related to infringement issues necessarily is guided by the specifics of the infringement contentions. *See, e.g., Oplus Techs., Ltd. v. Sears Holdings Corp.,* 2013 U.S. Dist. LEXIS 145917, 37-38 (C.D. Cal. Oct. 2, 2013) (plaintiff bears the burden of identifying accused instrumentalities and may not seek discovery regarding others); *Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.*, 2007 U.S. Dist. LEXIS 90457, 8-9 (C.D. Cal. June 25, 2007) ("the Court is persuaded that the preliminary infringement contentions may narrow the scope of required discovery"); *Caritas Techs.. Inc. v. Comcast Corp.*, 2006 U.S. Dist. LEXIS 94879, *14-15 (E.D. Tex. 2006) (applying the Eastern District of Texas' parallel local patent rules and holding that the plaintiff "only has the right to discover information regarding the alleged infringing service" that was specifically articulated in the preliminary infringement contentions, "not the right to discover information on whether it should assert a claim of infringement regarding other services.").

Not only were these documents and different methods of obtaining provider information not encompassed within Health Grades' infringement contentions, Health Grades never pursued them in discovery, either. No interrogatory was ever served seeking identification of the ways that providers submit information. Nor did Health Grades ever serve a document request

9

focused on this issue (*e.g.*, "produce documents evidencing submission of the claimed data elements by providers").[3]

The only discovery request that arguably covered these documents was Health Grades omnibus document request 11, which requested "all documents that refer or relate to ... any defense … ." Health Grades' First Request For the Production of Documents, Electronically Stored Information, and Tangible Things, dated July 25, 2011, attached hereto as Exhibit E, at 16. This document request, however, was overbroad, and unfocused on any defense, let alone the details of only one of MDx's non-infringement defenses. Because this request was so overbroad and unfocused, it did not focus MDx on the documents that MDx now is in the process of producing. Why would MDx or its counsel think, in response to such an omnibus document request (literally seeking every document in any way related to every defense), to collect documents on other manners of providers submitting information, when Health Grades' infringement contentions only accused the method whereby providers themselves directly edit their profiles? *See, e.g., Oplus Techs., Ltd.,* 2013 U.S. Dist. LEXIS 145917, at 37-38 (infringement contentions define the scope of discovery); *Samsung SDI Co., Ltd.*, 2007 U.S. Dist. LEXIS 90457, at 8-9 (infringement contentions may "narrow the scope of required discovery"); *Caritas Techs.. Inc.*, 2006 U.S. Dist. LEXIS 94879, at *14-15 (only discovery on the allegedly infringing instrumentalities is required). Because this document request was so

---

[3] At page 9, Health Grades claims that Mr. West testified that only registered physicians could edit their physician profile. Health Grades' citation, however, crops out the question that was asked (page 257:11-17). The question was whether physicians had to be registered ***to edit their information themselves***. Neither Mr. West, nor any other MDx witness, testified that the only way to edit the data was by the provider doing it themselves. Consistent with the lack of any interrogatory or document request on the issue, counsel for Health Grades never pursued such a line of inquiry at any deposition.

10

unfocused, and because Health Grades had never included the contents of emails and faxes within its infringement contentions, the emails and faxes were never identified as being responsive. Fed. R. Civ. P. 34(b)(1)(A) (document requests must "describe with reasonable particularity each item or category of items to be inspected"); *see also Cache La Poudre Feeds, LLC v. Land O'Lakes Farmland Feed, LLC*, 244 F.R.D. 614, 634 (D. Colo. 2007) (refusing to sanction a party for not producing specific documents in response to overly broad requests: "the court is loath to impose sanctions that might be misconstrued as a tacit endorsement of poorly drafted discovery requests."); and at 618 (citing to *Schartz v. Unified Sch. Dist. No. 512*, 1996 U.S. Dist. LEXIS 19123, 1996 WL 741384, *1 (D. Kan. 1996) (requests may be overbroad "when they are couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within [their] scope")); *see also Sonnino v. Univ. of Kan. Hosp. Auth.*, 2004 U.S. Dist. LEXIS 6220, 2004 WL 764085, *5 (D. Kan. 2004) (a request for production that sought "all documents that relate or concern" a particular topic was "either excessively vague or overbroad in scope").

Health Grades' expected complaints about the number and content of the documents being produced should be discounted. The vast majority (if not all) do not show receipt of three or more of the data elements from providers and so do nothing to assist Health Grades' infringement proofs. Rather, these documents simply comport with information ***already provided by MDx***, showing that certain providers have edited at least one of these data elements. *See* Exhibit A to Health Grades' Motion, at 2-9. And if Health Grades had not made the deliberate decision to forego discovery of the MDx database on how many, if any, providers had

11

given three or more of these required data sets, Health Grades would have known all this information long ago.

## IV.     WITHDRAWAL OF THE SUMMARY JUDGMENT MOTION

Contrary to Health Grades' implications, the MDx motion for summary judgment did not argue that no provider had ever edited three or more of the data elements (MDx does not know whether that is true or not). Rather, the motion argued that Health Grades lacked any proof that this was true. MDx's Motion Pursuant to Federal Rule of Civil Procedure 56 for Summary Judgment of Non-infringement, dated Nov. 2, 2012, Dkt. # 368, at 9 ("Because Health Grades has no evidence showing that three or more of the required data elements were received from the provider, summary judgment should be granted.").

MDx withdrew its summary judgment motion because the new documents were discovered and they were being produced. Since summary judgment could not succeed until Health Grades counsel had an opportunity to review the documents, the motion was withdrawn and MDx proceeded on another summary judgment motion (decision pending). *See* Dkt. # 195. Health Grades spends great effort patting itself on the back on the assumption that the withdrawal had something to do with its supplemental submissions, but that supposition is simply wrong. Those submissions were entirely off point and none involved relevant, admissible evidence.

Health Grades' complaints about unnecessary cost associated with the withdrawn MDx motion are premature, as the motion was not withdrawn with prejudice and MDx is reserving the right to seek leave to re-file once Health Grades' counsel has reviewed the documents. Even if these documents show that there are a few providers who gave three or more of the data

12

elements, if Health Grades cannot show that for those specific provider reports all the other claim elements are met, MDx expects to re-file the motion seeking complete summary judgment to end the case. And even if Health Grades can make such a showing, the Court should grant partial summary judgment on the overwhelming majority (surely more than 99%) of provider reports that are known not to include three or more of the required data elements received from the provider. Summary judgment will also be appropriate on the other claim requirement subject to this motion – requiring that the providers verify the data elements.

Health Grades' efforts in opposing summary judgment were a product of its own litigation strategy. It was Health Grades' choice not to pursue database queries and analyses that could show whether any provider edited three or more of the data elements, that led to the summary judgment motion being filed in the first place. *Pruet v. Fayette Reg'l Health Sys.*, 2013 U.S. Dist. LEXIS 132359, *3-4 (S.D. Ind. Sept. 17, 2013) (granting summary judgment where non-moving plaintiff failed to adequately pursue documents that could have been used to avoid summary judgment: "What the Plaintiff could not do was choose to do nothing and then hope to hold the Defendant accountable … ."; rejecting argument that the defendant had, absent a clearly applicable discovery demand, an "affirmative obligation to disclose evidence relevant to the claims and defenses in the case"). And it would seem that Health Grades' efforts are not wasted in any event – the use of those efforts is merely delayed and can be used when the motion is re-filed later, or at trial.[4]

---

[4] Health Grades complains that it "had to go to the substantial expense of … having Dr. Greenspun prepare a sophisticated probability analysis in a 19-page declaration." Health Grades' Motion, at 11. What Health Grades conceals, however, is that this declaration was never accepted into evidence on the motion for summary judgment – the declaration was submitted more than a year after the Health Grades opposition, and Health Grades did not even attempt to

13

## V.     SANCTIONS ARE ENTIRELY UNWARRANTED

Health Grades apparently seeks a dispositive ruling on two MDx infringement defenses: (1) whether any provider has ***given*** three or more of the claimed data elements; and (2) whether any provider has ***verified*** such information if it was provided.  Fed. R. Civ. P. 72(a) (dispositive orders eliminate a party's claim or defense); *Janssen Pharmaceutica N.V.*, 2006 U.S. Dist. LEXIS 5443, at *7 ("An order that strikes a defendant's affirmative defense is dispositive of that defense…."); *Starlever Hydraulik GmbH*, 1996 U.S. Dist. LEXIS 4849, at 9-10 (preclusion of defendant's non-infringement defense is a dispositive ruling).  The enormous impropriety of such drastic sanctions are addressed in detail in Section II, *supra*.

Health Grades has not made any showing sufficient to justify the severe, dispositive sanctions that it seeks on these defenses, nor does it even attempt to do so.  Indeed, Health Grades' motion acknowledges in footnote 7 that the *Ehrenhaus* factors include whether the Court warned of the dispositive sanction and that lesser sanctions have failed, but Health Grades asks the Court to ignore these requirements because MDx is "sophisticated" and has "seasoned counsel" – apparently Health Grades is advocating that this Tenth Circuit decision be ignored in favor of Health Grades' preferred approach.  *Ehrenhaus*, 965 F.2d, at 921 (10th Cir. 1992).

The problems of which Health Grades complains were largely of its own making.  Had Health Grades pursued the discovery at issue, rather than consciously avoiding it, the discovery

---

explain why it was not originally submitted.  Furthermore, this analysis is irrelevant to the summary judgment motion because its expert could never have opined on any of this at trial – none of it was in any of his expert reports. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) ("To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury."); *see also*  Fed. R. Civ. P. 56(c)(2).  Lastly, instead of going to the "substantial expense" of having Dr. Greenspun prepare a "sophisticated probability analysis," Health Grades should have just sought the actual data from MDx.

14

would have been produced long ago and none of this (the motion for summary judgment, this motion for sanctions, and Dr. Greenspun's Declaration of October 15, 2013) would have been necessary. Health Grades' complaint that it was "hindered" in defending against the summary judgment motion rings hollow when it chose to forego the very discovery it now complains should have been produced, and when Health Grades sat on its hands for eighteen months without a single complaint about MDx's supplemental interrogatory response.

Sanctions are not appropriate for alleged discovery failures where the discovery was not clearly requested, pursued in a motion to compel, or ordered. *See Friedland v. Tic-The Industrial Company*, 2007 U.S. Dist. LEXIS 10574, *4-5 (D. Colo. Feb. 14, 2007) ("the Court does not conclude that the Plaintiff refused to comply with a court order, only that the parties disagree as to the scope and intention of that order."); *Cache La Poudre Feeds, LLC*, 244 F.R.D. at 634 (refusing to sanction a party for not producing specific documents in response to overly broad requests); *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 238 (5th Cir. 1988) (requested sanction denied where court order did not clearly put party on notice to produce the allegedly withheld discovery).

Monetary sanctions, or any other type of sanction, are not appropriate for all the same reasons. Indeed, the summary judgment motion that was withdrawn may be re-filed, and MDx's defenses for which Health Grades mustered its responses are alive and well, so none of Health Grades' efforts were wasted.

Health Grades' arguments that MDx interfered with the judicial process and is culpable are merely conclusory. The discovery was not produced earlier because Health Grades did not pursue it – that is no reason to sanction MDx.

15

## VI. CONCLUSION

For the foregoing reasons, MDx respectfully requests that Health Grades' motion be denied.

Dated: November 15, 2013

Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson
David C. Lee
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail:sstimpson@sillscummis.com
E-mail:dlee@sillscummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: (303) 244-1800
Fax: (303) 244-1879
E-mail: ridley@wtotrial.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a VITALS.COM

16

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2013, I electronically filed the foregoing **MDX MEDICAL, INC.'S OPPOSITION TO HEALTH GRADES, INC.'S MOTION FOR SANCTIONS FOR MDx MEDICAL, INC.'S FAILURE TO COMPLY WITH COURT-ORDERED DISCOVERY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Jesus Manuel Vazquez, Jr.
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- Gregory B. Kanan
  gkanan@lrrlaw.com

- Kris John Kostolansky
  kkosto@lrrlaw.com

- Scott David Stimpson
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- David Chunyi Lee
  dlee@sillscummis.com, vferraro@sillscummis.com

- Terence M. Ridley
  ridley@wtotrial.com, norris@wtotrial.com

                                            *s:/Vincent M. Ferraro*