**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  11-CV-00520-RM-BNB

HEALTH GRADES, INC.

                Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM

                Defendant.

---

**Declaration and Statement of Richard G. Cooper, D.Sc.
For December 18, 2013 Hearing**

---

Richard G. Cooper, being of full age, hereby declares and states as follows:

1.      My name is Richard G. Cooper.  My background, training, expertise, and curriculum vitae as of July 13, 2012, are shown at docket # 338-1 ("Initial Report") in pages 1-4 and 41-57.  I provided the Initial Report on July 13, 2012, a rebuttal report on September 17, 2012 (docket # 338-2, "Rebuttal Report"), and a supplemental rebuttal report on October 9, 2013 (altogether, the "Expert Reports").  I understand that my qualifications are not at issue, and that Health Grades seeks to exclude certain of my opinions solely on the basis of my methodology.

2.      The methodology I applied in the Expert Reports is the same basic methodology I have applied in my prior expert reports relating to patents.  I have been an expert in dozens of patent cases, and I have provided dozens of expert reports in patent cases.  The methodology I have applied in all of them is to read the claims of the patent-in-suit and the Court's Claim

Construction Order construing terms in the claims. I read these closely and many times to understand the particular construals the Court gives to certain terms and to identify the terms that have plain and ordinary meaning. For claim terms having particular construals, I apply the construals in my analysis. For claim terms that have plain and ordinary meaning, I apply plain and ordinary meaning in my analysis. I understand this to be the correct methodology for patent cases. My expert opinions have never been excluded for applying this methodology. The same methodology I have used for patent cases is the same basic methodology I used in the Expert Reports.

3. I address below each opinion that Health Grades seeks to exclude, by reference to the Health Grades Motion to Exclude (docket # 338, "Motion") and the Health Grades Reply in Support of its Motion (docket # 428, "Reply").

4. Health Grades seeks to exclude the following opinion in my Initial Report at ¶84: "I have determined that all the asserted claims of the '060 patent are anticipated, or at the very least would have been obvious to a Posita, and therefore all these claims should be held invalid." (Motion, p.4)

   a) <u>Motion, pp.5-6</u>: "The Cooper Report does not mention and does not apply this Court's claim constructions."

   <u>Response</u>: Health Grades is incorrect that my Initial Report does not mention or apply this Court's claim constructions. My Initial Report in page 5 specifically states that I both considered the Court's Claim Construction Order, and I made it clear that my analyses were "based on" the materials I reviewed, including the Claim Construction Order. This was made clear in paragraphs 14, 18, and 20, at least, and it was specifically stated up front in my report because my reliance on the Court's Claim Construction Order was consistent for the entirety of my Reports. In response to questioning of Health Grades' counsel, at my deposition I consistently confirmed my reliance on the Court's Claim Construction Order. My Reports apply the Court's claim constructions, and I address particular claim elements raised by Health Grades.

- "*first healthcare provider*": This claim element appears throughout the claims, so I address it throughout my Initial Report.  My Initial Report addresses this claim element by discussion of Health Grades reports on particular providers (such as the Drucker Report and Physician Quality Report), and also by discussion of one specific provider – Dr. Drucker.

  For example, in my Initial Report, reports on particular providers are discussed at pages 10-11 (citing Hicks deposition: "the user would obtain access to this report"); 11 ("This claim element describes three or more properties of the provider"); 12-13 (discussing a particular provider, Dr. Drucker and the Drucker Report); 14-15 (discussing "patients describing their experience with the provider" and discussing Dr. Drucker); 17 (discussing a particular provider, Dr. Drucker); 11, 14, 17, 20 (discussing Physician Quality Report, which is a report on a particular provider); 25 (citing Hicks deposition: "the user would obtain access to this report"); 26-27 (discussing a particular provider, Dr. Drucker and the Drucker Report); 26 ("This claim element describes three or more properties of the provider"); 28-29 (discussing "patients describing their experience with the provider" and discussing Dr. Drucker); 31 (discussing a particular provider, Dr. Drucker); 26, 28, 32 (discussing Physician Quality Report, which is a report on a particular provider).  My Initial Report also references inventor testimony describing consumers requesting and accessing prior art Health Grades reports on particular providers.  (Initial Report, at ¶¶ 40-41, 56-57.)

  Thus, my Initial Report applies the Court's construction of this claim term as "a particular healthcare provider about whom information is requested and a report is produced".

- "*comparison ratings of healthcare providers*": My Initial Report addresses this claim element in pages 18-19 and 32-33, and includes many specific references to the prior art.

  For example, pages 18-19 and 32-33 include the following discussion: "comparisons of line items in database reports have been used to rank retrieved records for decades"; "Early HG Reports and Services also show ratings of health care provider hospitals that were intended to and do allow comparison of health care providers"; "Defendant's deposition Exhibit 8 . . . clearly demonstrate that the concept of having provider information and ratings available to prospective patients had been practiced in a way that the ratings could be compared"; "Health Grades' web site had hospital ratings well prior to 2006, and were showing them in comparison format"; "[Mr. Dodge] testified that comparison ratings of physicians were added to reports"; discussion of physician quality guide.

  My Initial Report addresses anticipation, stating in pages 18 and 33 that "[s]upporting my conclusion that this claim element is anticipated is the

deposition testimony of Mr. Dodge.  He testified that comparison ratings of physicians were added to reports at least as early as 2006" but clearly demonstrated in his deposition that the addition of patient ratings was as early as 2004.  I also note that Health Grades' sworn interrogatory responses confirm my analysis and the Health Grades deposition testimony about the use of early patient ratings and comparison ratings, as they admit that these claims were being commercialized at least as early as the spring/summer of 2005.

My Initial Report also addresses obviousness.  A claim can be invalidated if it would have been obviousness to a person of ordinary skill in the art ("Posita"). My analysis in pages 17-19 and 32-33 of the Initial Report discusses obviousness, *e.g.*, "use of comparison ratings for this purpose would have been extremely obvious to a Posita"; "[i]t would be obvious to a Posita that ratings of other physicians would be a natural addition to the report"; "there are plain and clear teachings that any Posita would understand that ratings of health care providers could be shown side by side for comparison purposes, and these documents provide the motivation to do so"; "it stands to reason that that they would have done the same thing with patient ratings".  If Health Grades is seeking to exclude my obviousness opinion because no single prior art shows ratings of multiple physicians, then Health Grades misunderstands the obviousness principle of invalidity.

As was made clear in the very beginning of my Initial Report, it applies the Court's constructions.  In this instance, as shown by my analysis of the issue, "comparison ratings of healthcare providers" was construed as "ratings of multiple healthcare providers, including the first healthcare provider, in the report on that first healthcare provider, thus permitting comparison of the first healthcare provider with other potential healthcare providers."  I confirm here what I made clear in my Reports and again in my deposition, that I used this construction, and all others of the Court's constructions, for invalidity by anticipation and by obviousness.

-   *terms having plain and ordinary meaning*: The Court construed certain claim terms but not others.  (Docket # 138, Order on Claim Construction, p.23.)  For terms that have plain and ordinary meaning or were not construed by the Court, I applied the plain and ordinary meaning of such claim terms in my analysis.  In my deposition testimony, I gave examples of situations where I applied plain and ordinary meaning:  "It wasn't construed in the Markman order, as I recall. The lay term -- lay meaning of the term instead was substituted.  And I'm saying that within the field of computer science, where the accuracy and truth of data has a special meaning, that the word 'verify' or its equivalent synonym, such as 'confirm,' mean that there is some other party besides the provider of the information that verifies that."  (Docket # 386-2, transcript p.48)

4

Health Grades says that my invalidity methodology does not take account of a the word "verify" but I used the plain and ordinary meaning, as instructed by the Court. I also understand that I would not be allowed to contradict the Court's instructions by proffering my own interpretation to the jury. As my Reports show, Health Grades witnesses expressly confirmed verification of the data at issue, as did the documents themselves. Thus, for the "verify" term, as other terms that the Court did not construe other than to order use of plain and ordinary meaning, I did as instructed and applied the plain and ordinary meaning.

Health Grades did not specifically address any other claim elements in this criticism, but if asked about them, I reserve the right to review the Expert Reports, my deposition transcript, the '060 patent, the Court's claim constructions, and other appropriate documents, to address any such questions.

b) <u>Motion, p.6</u>: "The Cooper Report does not 'state the interpretation of [each] claim element' that Dr. Cooper used for his invalidity analysis."

<u>Response</u>: Health Grades contends that I need to state the interpretation of each claim element. I have used plain and ordinary meanings as instructed by the Court. Health Grades' technical expert, Dr. Greenspun, took the same approach. (Docket # 386-3, at ¶¶ 95-99, 100-11.) My expert opinions have never been excluded for not specifically calling out the plain and ordinary meaning.

Counsel for Health Grades, however, asked about certain terms during my deposition, and I gave my responses about plain and ordinary meaning. For example, when asked about the term "verified", I responded as follows: "It wasn't construed in the Markman order, as I recall. The lay term -- lay meaning of the term instead was substituted. And I'm saying that within the field of computer science, where the accuracy and truth of data has a special meaning, that the word 'verify' or its equivalent synonym, such as 'confirm,' mean that there is some other party besides the provider of the information that verifies that." (Docket # 386-2, transcript p.48)

Health Grades did not specifically address any other claim elements in this criticism, but if asked about them, I reserve the right to review the Expert Reports, my deposition transcript, the '060 patent, the Court's claim constructions, and other appropriate documents, to address any such questions.

c) <u>Motion, p.8</u>: "The law requires Dr. Cooper to use the same claim constructions for infringement and invalidity, but Dr. Cooper cannot have done so because he states that information provided by ABMS to Health Grades meets the claim limitation for invalidity but the same information provided by ABMS to MDx does not meet the same claim limitation for infringement."

Response:  Health Grades alleges that I did not apply the same claim constructions for infringement and invalidity.  The only term mentioned by Health Grades is the verified data element.   Health Grades is incorrect because I did apply the same claim constructions and the same plain and ordinary meaning for claim terms throughout the Expert Reports.

My Initial Report on invalidity and my Rebuttal Report on non-infringement are consistent, and from my consistent analysis for both it is clear that the prior art had the verified data, and the Vitals website does not.  For example, my Initial Report in page 17 addresses Health Grades' verification of prior art information.   This prior art verification performed by Health Grades is distinct from mere receipt of information from ABMS, and my Initial Report (e.g., pages 16-17) cites deposition testimony of the Health Grades witnesses confirming that the prior art data was not only received but also verified (Neal at page 272: "Q. Would Health Grades have verified that information?  A. For Dr. Drucker we would have . . . ."; Drucker Report, page 4: "Health Grades Verified Data . . . [and] Physician-Verified Data"; Montroy at 272: "these were the ones that Health Grades – we were verifying on behalf of the consumer"; page 315: "the third party source was verified information"; Dodge pages 36-37: 2003 Physician Quality Reports – "there was third party verified information in there").  Thus, my Initial Report cited substantial evidence, including Health Grades documents and sworn testimony from multiple Health Grades witnesses, showing that verification was performed in the prior art, in addition to receipt of the information.  My Rebuttal Report is consistent in stating that "[v]erification of the data . . . is not the same as receiving the data."  (Rebuttal Report, ¶ 24.)

Health Grades did not specifically address any other claim elements in this criticism, but if asked about them, I reserve the right to review the Expert Reports, my deposition transcript, the '060 patent, the Court's claim constructions, and other appropriate documents, to address any such questions.

d)  Motion, p.9: "Dr. Cooper lumps together many different things into a group he calls the 'Early HG Reports and Services' and then gives conclusory opinions that the claim elements are anticipated by this group."

Response: The prior art of the "Early HG Reports and Services" are shown in my Initial Report in paragraph 33, which references Defendants' deposition exhibits 8, 13, 21, and 51.  There is also testimony about this prior art from the inventors, and I reference such testimony throughout the Expert Reports.

Health Grades suggests that I defined the "Early HG Reports and Services" in paragraph 33, and from then on refer only to that term when discussing the prior art.  A scan of my Initial Report shows this is incorrect.  Throughout my Initial Report I extensively refer to specific prior art, e.g., Drucker report (pages 11-13, 15-17, 23, 25-27, 29, 31), Physician Quality Guide (pages 19, 33), Physician Quality Report (pages 11, 14, 17, 26, 28, 32), Physician Online Service (pages 13, 28), Connecting Point (page

21), Premium Report (pages 20, 35), and others. These pages of my Initial Report address specific portions of the prior art and certain pages include images of specific portions of the prior art or excerpts of inventor testimony about the prior art, *e.g.*, pp.11-17, 20-21, 23, 25-29, 31, 35.

In some cases, it was appropriate to address all of the prior art together because, for example, inventors testified generally about the Health Grades prior art and so the analysis applied to them all. For example, Initial Report ¶ 40, referencing Montroy deposition 308-309.

Accordingly, my Initial Report addresses specific prior art where appropriate and addresses the "Early HG Reports and Services" altogether where appropriate, and it is sufficiently detailed with regard to invalidity by anticipation and by obviousness.

e) <u>Motion, p.12</u>: "The Cooper Report is devoid of any analysis of the above mentioned requirements for obviousness."

<u>Response</u>: My Initial Report addresses obviousness in pages 7, 18-19, 32-33 and 36. In page 7, I describe the field of art, the level of skill in this field, and the qualifications of a person of ordinary skill in this art ("Posita"). In pages 18-19 and 32-33, I describe what the prior art would have conveyed to a Posita and what it would have motivated a Posita to do. In addition to the obvious understanding of a Posita that, if ratings of healthcare provider hospitals could be compared in a report, so could ratings of physicians, Health Grades witnesses testimony supported that this idea of comparing ratings was obvious. (e.g., Neal at 153-54: the reason why hospital comparison ratings were provided was because consumers could compare those ratings). In page 36, I address alleged evidence of secondary considerations. Accordingly, my Initial Report adequately addresses the requirements for obviousness.

5.   Health Grades seeks to exclude the following opinion in my Initial Report at ¶85: "[I]t is my opinion that but for the inventors' failure to disclose the Early HG Reports and Services, the Patent Office would not have allowed any of these claims to issue." (Motion, p.4)

a) <u>Motion, p.13</u>: "This opinion is insufficient for the same reasons stated above [with regard to invalidity]."

<u>Response</u>: Health Grades references its criticism of my opinion relating to invalidity and does not provide separate criticism for my inequitable conduct opinion. I incorporate herein paragraphs 1-4 above and all subparts.

6.   Health Grades seeks to exclude the following opinions in my Rebuttal Report at ¶¶ 69 and 71: (i) "The Vitals web site does not have, either literally, or equivalently, three or more of

the items required to be verified by the health care provider." (Motion, p.4); (ii) "The Vitals web site does not have, either literally, or equivalently, three or more of the required items that must be verified by a third party." (Motion, p.4)

a) <u>Motion, p.13</u>: "Although Dr. Cooper's Rebuttal Report sufficiently discloses the claim interpretations he used to form his non-infringement opinions, some of the interpretations he used were rejected by this Court in the Markman Order."

<u>Response</u>: Health Grades takes specific issue with my analysis regarding the term "verified", alleging that my analysis was inconsistent with the Court's Claim Construction Order.

It is my understanding that the Court declined to construe this term and so it has plain and ordinary meaning. This is also consistent with portions of the Court's Claim Construction Order that discussed but did not construe "verified", *e.g.*, docket # 138, at p.15 footnote 8, "defendant is correct that 'verify' can mean 'to prove'", "the act of 'verifying' requires only that the website receive confirmation of the information from some other source", "the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider". Footnote 8 does not state that confirmation of information is necessarily met by receipt of such information from the first healthcare provider. Rather, footnote 8 describes what "appears" to be disclosed by the '060 patent. The Claim Construction Order also addresses "verified" in page 17. But nowhere does page 17 state that confirmation of information is met by receipt of such information from a third party.

Accordingly, my analysis of this claim term applies the plain and ordinary meaning and does not conflict with the Court's Claim Construction Order.

Health Grades did not specifically address any other claim elements in this criticism, but if asked about them, I reserve the right to review the Expert Reports, my deposition transcript, the '060 patent, the Court's claim constructions, and other appropriate documents, to address any such questions.

7.   Health Grades seeks to exclude the following opinion in my Rebuttal Report at ¶74: "The Vitals web site does not have, either literally or equivalently, a hyperlink to an affiliated hospital, medical center, or other type of treatment center." (Motion, p.4)

a) <u>Motion, p.16</u>: "Dr. Cooper used an interpretation of the phrase 'hyperlink to an affiliated hospital' (from claim 4) that has been rejected by this Court."

Response:   Health Grades takes specific issue my analysis regarding the term "hyperlink to an affiliated hospital".  It is my understanding that the Court declined to construe this term and so it has plain and ordinary meaning.  My analysis of this claim term applies the plain and ordinary meaning.

8.      Health Grades seeks to exclude the following opinion in my Initial Report at ¶86:

"After reviewing the various web sites, I found numerous web sites that are acceptable substitutes for the alleged invention." (Motion, p.4)

a)   Motion, p.17: "Dr. Cooper omitted the very analysis that makes this factor relevant: the substitutes must be non-infringing."

Response:  It is my understanding that Health Grades' technical expert, Dr. Greenspun, was the person who should have analyzed whether the substitute web sites are non-infringing.  Because Dr. Greenspun did not do so in his initial report, I did not address it in my Rebuttal Report.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 4th day of December, 2013

By: _____
     Dr. Richard G. Cooper