Civil Action No. 11-CV-00520-RM-BNB

**HEALTH GRADES, INC.'S MOTION FOR LEAVE TO SUPPLEMENT ITS BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. # 369]**

## Exhibit 1

**Supplemental Brief**

2004529544_1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. #369]**

---

Plaintiff Health Grades, Inc. ("Health Grades") submits this supplemental brief in support of its motion for partial summary judgment [Doc. #369] on Defendant MDx Medical, Inc.'s ("MDx") invalidity and inequitable conduct counterclaims and affirmative defenses.

**I.      SUMMARY OF THE SUPPLEMENTAL ARGUMENT**

To prevail on its inequitable conduct defense, MDx must prove by clear and convincing evidence that the Patent Office would not have allowed the claims of Health Grades' U.S. Patent No. 7,752,060 ("the '060 patent") to issue had it been aware of the undisclosed prior art. However, new evidence from the Patent Office demonstrates that MDx cannot meet this burden. Specifically, the same Patent Office examiner who examined the '060 patent has just allowed very similar and broader claims in a pending patent application that is related to the '060 patent. This examiner decided to allow the related claims to issue with full knowledge of all of the undisclosed prior art and MDx's invalidity and inequitable arguments related to this art.  The examiner did not consider this information to be material to patentability to these broader claims, and thus, MDx cannot prove that this examiner would have had a different opinion for the

1

narrower claims in the '060 patent had she known about these references during the prosecution of the '060 patent.

Summary judgment of no inequitable conduct should be granted.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

71. On July 17, 2012, Health Grades filed a continuation application (Serial No. 13/551,471) ("the '471 App.") that claims priority to the '060 patent. (Application Data Sheet, '471 App. File History pp. 1, 4 (Ex. U hereto) (highlighting added).)

72. The '471 App. has the same specification and drawings as the '060 patent.

73. The '471 App. was examined by the same examiner, Trang Nguyen, who examined the '060 Patent. (Notice of Allowability dated November 22, 2013, '471 App. File History (Ex. V hereto) (highlighting added); '060 Patent at p. 1 (Ex. 1, [Doc. #369-1]).)

74. Health Grades disclosed the following to the Patent Office in connection with the '471 App.:

    a. All of the alleged prior art and all of the deposition testimony cited by MDx in its invalidity contentions;

    b. All of the alleged prior art and all of the deposition testimony cited by Dr. Cooper in his expert report on invalidity;

    c. MDx's fourth supplemental invalidity contentions; and

    d. Dr. Cooper's expert report on invalidity and inequitable conduct.

(*Compare* Information Disclosure Statement dated Aug. 23, 2013, '471 App. File History at pp. 7, 9, 10 (Ex. W hereto) (highlighting added), Information Disclosure Statement dated Sept. 20, 2013, '471 App. File History at pp. 1-2 (Ex. X hereto) (highlighting added), & Petition to

---

[1] The numbering of fact paragraphs continues from the Statement of Undisputed Material Facts included in the Motion [Doc. #369].

2

EXHIBIT 1

Expunge Pursuant to 37 CFR §1.59 and §724.05, filed August 27, 2013, '471 App. File History (Ex. Y hereto) (highlighting added), *with* Cooper Report at ¶33 [Doc. #369-4] & Fourth Supp. Invalidity Contentions [Doc. #369-2].)

75.     Examiner Nguyen "considered" the documents identified in the foregoing paragraph in connection with the '471 App.  (List of References cited by Application and Considered by Examiner, Receipt Date 8/23/2013 at pp. 1, 7, 9, 10, Receipt dated 9/20/2013 at pp. 1-2, '471 App. File History (Ex. Z hereto) (highlighting added).)

76.     The Patent Office found these documents were not important to patentability of the '471 App. claims: Ex. H to the Motion [Doc. #369-13], Ex. I to the Motion [Doc. #369-14]; and Ex. J to the Motion [Doc. #369-15].  (Petition to Expunge at p. 1 (Ex. Y); Response to Petition under 37 CRF 1.59 dated November 13, 2013, '471 App. File History (Ex. AA hereto) (highlighting added).)

77.     During the prosecution of the '471 App., Health Grades disclosed MDx counsel's e-mail asserting that Health Grades was violating its duty of candor in connection with the '471 App. by "burying [the Health Grades' prior art] within mountains of irrelevant materials". (9/20/13 Information Disclosure Statement at p. 1 (Ex. X); October 3, 2013 Email from Kirstin Stoll-DeBell responding to September 6, 2013 Email from Scott Stimpson to Jesus Vazquez and Kirstin Stoll-DeBell (Ex. BB hereto).)

78.     Examiner Nguyen "considered" this e-mail.  (List of References cited by Application and Considered by Examiner (Receipt date 9/20/2013) at p. 1(Ex. Z) (highlighting added).)

79.     On November 22, 2013, Examiner Nguyen issued a notice of allowance for claims 21-53 of the '471 App.  (Notice of Allowability at p. 1 (Ex. V).)

3

80. As shown in the table below, claim 38 of the '471 App. as allowed is the same as claim 1 of the '060 patent except that (i) Claim 38 uses the term healthcare "professional" instead of healthcare "provider;" (ii) claim 38 requires only one comparison rating of the first healthcare professional as opposed to ratings of multiple providers required by claim 1 as construed by Judge Brimmer; and (iii) claim 38 has fewer limitations than claim 1 (differences in claim language are highlighted in yellow below):

| Claim 1 of the '060 Patent | Claim 38 of the '471 App. |
|---|---|
| 1. A computer-implemented method of providing healthcare provider information to potential patients, said method comprising: | 38. A computer-implemented method of providing healthcare professional information to potential patients, said method comprising: |
| receiving, by a ==Web== server computer ==of a company providing a service for connecting healthcare providers with the potential patients==, a request for information regarding a first healthcare provider, wherein the ==Web== server computer comprises at least one computer processor and memory; | receiving, at one or more server computers, a request for information regarding a first healthcare professional, wherein the one or more server computers comprise at least one computer processor and memory; |
| accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies; | accessing, ==by at least one of the one or more server computers==, healthcare professional-verified information about the first healthcare professional, wherein the healthcare professional-verified information is received from the first healthcare professional and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies; |
| compiling, by the at least one computer processor, patient-provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, ==and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is== | compiling, ==by the at least one of the one or more server computers==, patient-provided information regarding the first healthcare professional, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare professional; |

4

| Claim 1 of the '060 Patent | Claim 38 of the '471 App. |
|---|---|
| managed by the company providing the service for connecting healthcare providers with the potential patients; | |
| compiling information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information; | compiling, by the at least one of the one or more server computers, information regarding the first healthcare professional verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information; |
| creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of health care providers; and | creating, by the at least one of the one or more server computers, a healthcare professional report on the first healthcare professional using the healthcare professional-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare professional report on the first healthcare professional includes a comparison rating of the first healthcare professional; and |
| providing access to the healthcare provider report on the first healthcare provider over a computer network. | providing, by the at least one of the one or more server computers, access to the healthcare professional report on the first healthcare professional over a computer network. |

(Notice of Allowability at pp. 2-6 (Ex. V); '060 patent at col. 20:20-67 [Doc. #369-1].)

81.     The claims of the '471 App. are so similar to the issued '060 patent claims that the Patent Office issued an obviousness type double patenting rejection and required Health Grades to file a terminal disclaimer in the '471 App.  (Terminal Disclaimer, '471 App. File History (Ex. CC hereto); September 5, 2013 Amendment & Response to Non-Final Office Action at pp. 12-13, '471 App. File History (Ex. DD hereto).)

82.     Any prior art that invalidates claim 1 of the '060 patent would also invalidate

5

claim 38 of the '471 App.

### III. BACKGROUND ON RELATED PATENT APPLICATIONS

Related patent applications are those filed after an initial original application ("the parent") is filed but before it is issued as a patent. A group of related applications is called a patent family. In this case, there are several pending patent applications that are related to the '060 patent as shown in the diagram below:



One type of related patent application is called a "continuation." A continuation is based the parent and has the same priority date and specification as the parent. MPEP 201.11; *see also* 35 U.S.C § 120; see 37 C.F.R. § 1.78. Continuations may include claims that are directed to different embodiments that were disclosed, but not claimed in the parent. *Id.* For example, one of Health Grades' related patent applications has claims directed to hospital reports (*see* '255 App. shown above) and another has claims directed to search engine optimization (*see* '599 App.

shown above).  However, continuation applications are often filed so that an applicant may pursue similar, but broader claims than those that were allowed in the parent application, as was the case with the '471 App.  *See id.*  When claims in a continuation application are very similar to those in the parent, the Patent Office will issue an obvious double-patenting rejection and require that the applicant file a terminal disclaimer.  MPEP § 804.  Terminal disclaimers prevent an unjust extension of a patent term for a second patent that claims essentially the same invention as the first patent.  *See* 37 C.F.R. § 1.321.

## IV.     SUPPLEMENTAL ARGUMENT

Charges of inequitable conduct have become an "absolute plague" on the courts and the entire patent system.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).  "Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps."  *Id.*  For these reasons, the Federal Circuit heightened the standard for proving inequitable conduct – it now requires not only a specific intent to deceive, but also a deliberate decision to withhold prior art that was but-for material to patentability.  *See id.*

MDx's inequitable conduct defense is based on the slenderest grounds—its only evidence of intent is the mere fact that the Early HG Reports and Services were not disclosed.  This is not sufficient as a matter of law.  *Id*.  Indeed, John Neal, who was the main inventor involved in the prosecution of the '060 patent, testified that he did not disclose these reports because they were not material to patentability.  ([Doc. #369] at 61-63.)  New evidence from the Patent Office shows that Mr. Neal was right.

The facts of this case are somewhat unusual because Health Grades owns a patent application (the '471 App.) that is related to the patent-in-suit, which is being prosecuted

7

concurrently with this litigation, and which has been assigned to the same Patent Office examiner (Trang Nguyen) who examined the '060 patent.  (Statement of Undisputed Material Facts ("SUMF") at ¶¶ 71, 73.)  These circumstances have given Health Grades the opportunity to disclose in the '471 App. all of the prior art (and other references) that MDx asserts it should have disclosed in the '060 prosecution. Health Grades also disclosed all of MDx's invalidity and inequitable conduct arguments from this litigation. (SUMF at ¶ 74.)  Health Grades even submitted the Early HG Reports to the Patent Office *for a second time* in the '471 App. in response to MDx's counsel's accusations that Health Grades' first disclosure of this information was insufficient because the early HG reports were "bur[ied] within mountains of irrelevant materials". (SUMF at ¶ 77.)

With full knowledge of all of this information, Examiner Nguyen has allowed claims that are very similar to, but broader than the '060 patent claims.  (SUMF at ¶ 79.)  Indeed, the '471 App.'s claims are so similar to the '060 patent that the Patent Office issued an obvious-type double patenting rejection in the '471 App. and required Health Grades to file a terminal disclaimer tying it to the '060 patent.  (SUMF at ¶ 81.)  Claim 38 of the '471 App. claims a computer-implemented method of providing information about healthcare professionals[2] to potential patients that contains almost identical language as claim 1 of the '060 patent except that claim 38 omits several limitations required by claim 1.  (SUMF ¶ 80.)  For example, claim 38 does not require comparison ratings of multiple providers (including the first provider) as is required by claim 1 (Markman Order at p. 24)—claim 38 requires only one comparison rating of the first healthcare professional.  (*Id*.)  Thus, any prior art that invalidates claim 1 of the '060

---

[2] The '471 App. uses the term healthcare "professional" instead of healthcare "provider" but the scope of these terms is the same.  (Markman Order at p. 7 (the parties agree that "healthcare provider" means a person not an entity).)

8

patent would also invalidate claim 38.  (SUMF at ¶ 82.)  Likewise, because Examiner Nguyen found that claim 38 is allowable over the Early HG Reports and Services, she would necessarily have found that claim1 is allowable over this same art had it been disclosed during the prosecution of the '060 patent. Thus, the Early HG Reports and Services are not but-for material to patentability.

Inequitable conduct requires proof of both materiality and intent. MDx cannot prove either, especially now that the Patent Office has allowed a similar and broader claim to issue with knowledge of the same prior art that forms the basis for MDx's inequitable conduct defense. As such, this Court should grant summary judgment of no inequitable conduct.

## IV. CONCLUSION

For all of the foregoing reasons, this Court should grant summary judgment that the '060 patent is not unenforceable due to inequitable conduct.

Dated:  December 9, 2013

*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Adam L. Massaro, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@lrrlaw.com
          kkosto@lrrlaw.com
          jvazquez@lrrlaw.com
          amassaro@lrrlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

9

# CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2013, I electronically filed the foregoing **HEALTH GRADES, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. #369]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Vincent Ferraro, Esq.
David C. Lee, Esq.
Trent Dickey, Esq.
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
E-mail: sstimpson@sillscummis.com
vferraro@sillscummis.com
dlee@sillscummis.com
tdickey@sillscummis.com

Terence M. Ridley, Esq.
Ramona Lampley, Esq.
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO  80202-5647
E-mail: ridley@wtotrial.com
lampley@wtotrial.com

*s/ Adam L. Massaro*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Adam L. Massaro
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@lrrlaw.com
kkostolansky@lrrlaw.com
jvazquez@lrrlaw.com
amassaro@lrrlaw.com
*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*