**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

      Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

**MDX MEDICAL, INC.'S MOTION *IN LIMINE* TO**
**PRECLUDE HEALTH GRADES, INC. FROM OFFERING CERTAIN EVIDENCE OR**
**TESTIMONY REGARDING VALIDITY**

---

      Defendant and Counterclaim plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, hereby moves *in limine* to preclude certain arguments and evidence from Health Grades, Inc. ("Health Grades") relating to the validity of the asserted patent (U.S. Patent No. 7,752,060 ("the "'060 patent"); attached hereto as Exhibit A).

      In accordance with D.C.COLO.LCivR 7.1(a), MDx's counsel conferred with counsel for Health Grades, and Health Grades opposes this motion and the relief requested herein.[1]

---

[1] This brief is slightly longer than the 15 page limitation set forth in Judge Moore's Practice Standards.  *See* Civ. Practice Standard, IV.B.1.  During a hearing on October 25, 2013, Judge Moore instructed the parties that initial briefs may be up to 30 pages in length for this case, and so no motion for a page extension is presented.

## <u>TABLE OF CONTENTS</u>

**Page**

I.     MOTIONS *IN LIMINE*, GENERALLY ............................................................ 2

II.    BACKGROUND FACTS AND LAW ............................................................ 3

III.   ALLEGATIONS OF COPYING ................................................................ 6

IV.   ALLEGED UNEXPECTED RESULTS.......................................................... 8

V.    ALLEGED LONG FELT NEED AND FAILURES OF OTHERS ................................ 9

VI.   ALLEGED SKEPTICISM OF OTHERS ...................................................... 10

VII.  ALLEGED PRAISE BY OTHERS .............................................................. 12

VIII. ALLEGED TEACHING AWAY .............................................................. 13

IX.   ALLEGED COMMERCIAL SUCCESS........................................................ 13

X.    HEALTH GRADES CANNOT SUPPLEMENT NOW.............................................. 17

XI.   CONCLUSION............................................................................ 19

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Advanced Display Sys. v. Kent State Univ.*,
    212 F.3d 1272 (Fed. Cir. 2000)...............................................................................10

*B.E. Meyers & Co. v. United States*,
    47 Fed. Cl. 375 (Fed. Cl. 2000) ..............................................................................17

*Bayer Healthcare Pharm., Inc. v. Watson Pharm., Inc.*,
    713 F.3d 1369 (Fed. Cir. 2013)...............................................................................12

*Dry Clean Super Center, Inc. v. Kwik Indus., Inc.*,
    2012 U.S. Dist. LEXIS 18582 (D. Colo. Feb. 15, 2012) .........................................2

*Dystar Textilfarben GmbH v. C.H. Patrick Co.*¸
    464 F.3d 1356 (Fed. Cir. 2006) ..............................................................................11

*Ecolochem, Inc. v. Southern Cal. Edison Co.*,
    227 F.3d 1361 (Fed. Cir. 2000)........................................................................10, 13

*Etherton v. Owners Ins. Co.*,
    2013 US. Dist. LEXIS 1993 (D. Colo. Jan. 7, 2013)...............................................2

*Eurand, Inc. v. Mylan Pharms., Inc. (In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.)*,
    676 F.3d 1063 (Fed. Cir. 2012)...............................................................................10

*Friskit, Inc. v. RealNetworks, Inc.*,
    306 Fed. Appx. 610 (Fed. Cir. 2009)..........................................................7, 11, 15

*Gallegos v. Swift & Co.*,
    2007 U.S. Dist. LEXIS 5440 (D. Colo. Jan. 25, 2007)..........................................18

*General Steel Domestic Sales, LLC v. Chumley*,
    2012 U.S. Dist. LEXIS 91943 (D. Colo. July 3, 2012) ............................................2

*Gold v. State Farm Fire & Cas. Co.*,
    2013 U.S. Dist. LEXIS 65581 (D. Colo. May 8, 2013).............................................2

*Grabau v. Target Corp.*,
    2008 U.S. Dist. LEXIS 122899 (D. Colo. Mar. 6, 2008) .......................................17

*Graham v. John Deere Co. of Kan. City*,
  383 U.S. 1 (1966)..................................................................................................3

*Gustafson v. Am. Family Mut. Ins. Co.*,
  2012 U.S. Dist. LEXIS 168081 (D. Colo. Nov. 27, 2012) ......................................2

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*,
  1996 U.S. Dist. LEXIS 17361, *27 (N.D. Ill. 1996) ...........................................18

*In re Huang*,
  100 F.3d 135 (Fed. Cir. 1996)........................................................................14, 16

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007)............................................................................8

*In re Soni*,
  54 F.3d 746 (Fed. Cir. 1995)................................................................................8

*Inventio AG v. Otis Elevator Co.*,
  497 Fed. Appx. 37 (Fed. Cir. 2012)....................................................................12

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
  392 F.3d 1317 (Fed. Cir. 2004)............................................................................4

*J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*,
  106 F.3d 1563 (Fed. Cir. 1997)..........................................................................13

*Jonasson v. Lutheran Child & Family Servs.*,
  115 F.3d 436 (7th Cir. 1997) ................................................................................2

*Jones v. Stotts*,
  59 F.3d 143 (10th Cir. 1995) ................................................................................2

*Luce v. U.S.*,
  469 U.S. 38 (1984)................................................................................................2

*Metso Minerals, Inc. v. Powerscreen Int'l Distrib.*,
  *526 Fed. Appx. 988 (Fed. Cir. 2013)*.............................................................8, 15

*Monsanto Co. v. Bayer Bioscience N.V.*,
  2005 U.S. Dist. LEXIS 46068 (E.D. Mo. Oct. 28, 2005) .......................9, 13, 18, 19

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006)......................................................3, 4, 9, 13, 16

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
  520 F.3d 1358 (Fed. Cir. 2008)................................................................................10

*Orthopedic Equipment Co., Inc. v. United States*,
  702 F.2d 1005 (Fed. Cir. 1983)..............................................................................11

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
  587 F.3d 1324 (Fed. Cir. 2009)..............................................................................10

*Richdel, Inc. v. Sunspool Corp.*,
  714 F.2d 1573 (Fed. Cir. 1983)..............................................................................16

*Saint Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*,
  666 F. Supp. 2d 820 (N.D. Ohio 2009)..................................................................18

*Tokai Corp. v. Easton Enterprises, Inc.*,
  632 F.3d 1358 (Fed. Cir. 2011)..............................................................................13

*Two Moms and a Toy, LLC v. Int'l Playthings, LLC*,
  2012 U.S. Dist. LEXIS 152840 (D. Colo. Oct. 24, 2012) ..................................7, 14

*Vulcan Eng'g Co. v. FATA Aluminium, Inc.*,
  278 F.3d 1366 (Fed. Cir. 2002)..............................................................................12

*Wilson v. Williams*,
  182 F.3d 562 (7th Cir. 1999) ...................................................................................2

*Wm. Wrigley Jr. Co., v. Cadbury Adams USA LLC*,
  683 F.3d 1356 (Fed. Cir. 2012)................................................................................7

*Wyers v. Master Lock Co.*,
  616 F.3d 1231 (Fed. Cir. 2010)................................................................................3

**FEDERAL STATUTES**

35 U.S.C. § 103....................................................................................................................3

**RULES**

Fed. R. Evid. 402 ..............................................................................................................19

Fed. R. Evid. 403 ..............................................................................................................19

## I.     **MOTIONS *IN LIMINE*, GENERALLY**

A motion *in limine* is "'a request for guidance by the court regarding an evidentiary question,' which the court may provide at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995).  Even though "the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984).  Indeed, motions *in limine* are beneficial to both the court and the parties because they avoid delay at trial and allow the parties to better prepare for trial based on the introduction or exclusion of evidence.  *Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999).  Trial courts have broad discretion in ruling on motions *in limine*, but should grant such motions when proposed evidence is clearly inadmissible.  *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *accord Gold v. State Farm Fire & Cas. Co.*, 2013 U.S. Dist. LEXIS 65581, at *17 (D. Colo. May 8, 2013); *Etherton v. Owners Ins. Co.*, 2013 US. Dist. LEXIS 1993, at *2 (D. Colo. Jan. 7, 2013); *Gustafson v. Am. Family Mut. Ins. Co.*, 2012 U.S. Dist. LEXIS 168081, at *3 (D. Colo. Nov. 27, 2012).  "Properly filed motions *in limine* 'permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Dry Clean Super Center, Inc. v. Kwik Indus., Inc.*, 2012 U.S. Dist. LEXIS 18582, at *12 (D. Colo. Feb. 15, 2012) (citation omitted); *see also General Steel Domestic Sales, LLC v. Chumley*, 2012 U.S. Dist. LEXIS 91943 (D. Colo. July 3, 2012).

## II.   <u>BACKGROUND FACTS AND LAW</u>

Health Grades has accused MDx of infringing the '060 patent.  The claims of the '060 patent all address requests for information on specific healthcare providers, in response to which information from various sources is collected, a report is created, and then the report is provided over the Internet.  *See, e.g.,* Exhibit A, claim 1.  MDx will present evidence at trial that all the asserted claims of the '060 patent were obvious to a person or ordinary skill in the art at the time of the invention, and that they are therefore invalid.  35 U.S.C. § 103.  In response, Health Grades intends to introduce evidence of alleged "secondary considerations," or objective indicia of non-obviousness, to argue that the asserted claims of the '060 patent are not obvious. Secondary considerations, such as commercial success, long felt but unsolved needs, failure of others, etc., may be "utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.  As indicia of obviousness or non-obviousness, these inquiries may have relevancy."  *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17-18 (1966).  For secondary considerations to have relevance, however, there must be proper evidence not only of the secondary consideration itself (*e.g.*, commercial success), but also sufficient evidence of a "nexus" between the secondary consideration and the patent claims – both of which are the burden of the patent holder.  *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (citing *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995)) ("For objective [evidence of secondary considerations] to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the *claimed invention*.") (emphasis in original); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus

3

between the claimed invention and the commercial success."); *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004) (affirmative evidence of secondary consideration and nexus is required). This requirement prevents the patentee from taking credit for "unclaimed feature[s] of the device" and features that were already "known in the prior art." *Ormco Corp.*, 463 F.3d, 1312. In the absence of a showing of nexus, secondary considerations are "irrelevant." *Id.*

In June of 2011, MDx served its First Set of Interrogatories (Nos. 1-6), attached hereto as Exhibit B. MDx's Interrogatory No. 4 sought Health Grades' secondary considerations evidence in "full and complete detail," and specifically requested information regarding the required nexus between such secondary considerations and the claim limitations of the '060 patent. Exhibit B, at 7. In July of 2011, Health Grades responded to MDx's Interrogatory No. 4, identifying the following "additional evidence of the novelty and non-obviousness" of the '060 patent: (1) copying, (2) "recognition of Health Grades' success," (3) "client testimonials," and (4) commercial success and unexpected results. *See* Health Grades' Responses to MDx's First Set of Interrogatories (Nos. 1-6), dated July 20, 2011, relevant portions of which are attached hereto as Exhibit C, at 10-16. The responses were deficient, and MDx repeatedly warned Health Grades of that fact, but Health Grades refused to supplement. *See, e.g.,* E-mail exchange between MDx's and Health Grades' counsel regarding Health Grades' deficient responses, dated Aug. 3 and 5, 2011, attached hereto as Exhibit D (highlighting added). Because Health Grades simply refused to provide the requested information, MDx moved to compel, among many other things, a complete response to Interrogatory No. 4, but the Court denied the motion. *See*

Magistrate Boland's Amended Order, dated Dec. 28, 2011, Dkt. No. 104, at 2.  In denying the

motion, however, the Court made clear that Health Grades would be "stuck with" its response:

> I'm going to deny the motion to compel with respect to
> Interrogatory 4 for the same reason I did Interrogatory 2.  There is
> an answer here.  Maybe it's adequate.  Maybe it's not.  It's clear
> that the defendant doesn't like it.  But that doesn't mean it's not ___an___
> ___answer that all parties are stuck with___.   And so I think the
> interrogatory has been answered, for better or for worse, and
> there's nothing for me to compel.  Transcript of Motion Hearing
> held on Dec. 21, 2011 before Magistrate Boland, Dkt. No. 136, at
> p. 22, lines 10-18 (emphasis added).

Health Grades refused to supplement its response to Interrogatory No. 4.  However, in

January of 2012, in response to another interrogatory (Interrogatory No. 8, seeking Health

Grades' rebuttal to MDx's invalidity contentions), Health Grades provided a laundry list of

potential secondary considerations.  *See* Health Grades' Second Supplemental Response to

MDx's Interrogatory No. 8, dated Jan. 26, 2012, relevant portions of which are attached hereto as

Exhibit E, at 37-38.  This list identified new, additional secondary considerations in conclusory

fashion, but did little more.  It was not until twenty-one months later, on October 31, 2013, that

Health Grades decided to supplement its response to Interrogatory No. 4 (well more than a year

after the close of fact discovery).  Health Grades' supplemental response to MDx's Interrogatory

No. 4, coming many months after MDx's motion to compel and many months after the close of

discovery, still does little more than identify a laundry list of possible secondary considerations

in conclusory fashion without providing a nexus between the alleged secondary considerations

and the claimed invention, and, therefore, fails to cure the deficiencies of its original response

(even if it was timely provided).  *See* Health Grades' First Supplemental Responses to MDx's

Interrogatories Nos. 1, 3, 4 and 6, dated Oct. 31, 2013, attached hereto as Exhibit F, at 2-5.

None of these alleged secondary considerations are even remotely supported – there is no legally sufficient evidence of the alleged secondary consideration or the required nexus. Each specifically alleged secondary consideration, taken from Health Grades' laundry list of potential secondary considerations (Exhibit C, at 10-16 and Exhibit E, at 37-38), is addressed below. Because the evidence is legally insufficient to show any secondary considerations of non-obviousness, and thus irrelevant, Health Grades should be precluded from presenting any of this evidence at trial.

Health Grades' evidence on secondary considerations also should be excluded because it is highly prejudicial in that it has a high probability of inflaming the jury and creating jury confusion. For example, Health Grades' evidence regarding MDx's alleged copying of Health Grades' website is likely to cause the jury to focus and deliberate on irrelevant facts instead of the true merits of the case. And because Health Grades refused to supplement to provide sufficient secondary considerations evidence (despite warnings of both counsel for MDx and this Court that it would be stuck with its responses), Health Grades cannot now try to supplement to plug the gaping holes in these contentions. *See* Part X, *infra*.

## III. <u>ALLEGATIONS OF COPYING</u>

Health Grades' alleged evidence of "copying" by MDx consists of a single sentence in response to Interrogatory No. 4: "The copying of the claimed invention by Defendant, including the website www.vitals.com." Exhibit C, at 11 and Exhibit F, at 3; *see also* Exhibit E, at 38 (secondary considerations include "copying of the invention by competitors, including MDx"). Health Grades, however, provides no evidence about what MDx (or any other competitor) allegedly copied, what feature of MDx's website was the result of the alleged copying, or how

such alleged copying supposedly was of "the claimed invention."  From what Health Grades has submitted on this alleged copying in its motions, it is simply vague references to copying without any discernible connection to the '060 patent.  *See, e.g.,* MDx PowerPoint, titled "Group Practice Pages", dated Nov. 22, 2010, attached as Exhibit 2 to Health Grades' Response to MDx's Motion to Strike Health Grades' Deposition Notice, Dkt. No. 158-2, at 8-11 and 14-17 (PowerPoint referencing copying of Health Grades' method of showing most populated cities – no connection at all to the '060 patent, and no evidence this comment was ever executed).

Health Grades entirely failed to identify any specific allegation of copying in its interrogatory response, nor has it identified any nexus, and accordingly allegations of copying should be precluded.  Dkt. No. 136, at p. 22 (Health Grades is "stuck with" its interrogatory response); *see also, Wm. Wrigley Jr. Co., v. Cadbury Adams USA LLC,* 683 F.3d 1356, 1364 (Fed. Cir. 2012) ("a nexus between the copying and the novel aspects of the claimed invention must exist. . . ."); *Friskit, Inc. v. RealNetworks, Inc.,* 306 Fed. Appx. 610, 617 (Fed. Cir. 2009) (Friskit "failed to introduce sufficient evidence to show that the copied technology fell within the scope of the asserted claims"); *Two Moms and a Toy, LLC v. Int'l Playthings, LLC,* 2012 U.S. Dist. LEXIS 152840, *68 (D. Colo. Oct. 24, 2012) (quoting *Iron Grip*, 392 F.3d at 1325) (patentee "must present evidence of efforts to 'replicate a specific product'" – "conjecture and speculation . . . are insufficient to raise a triable issue of fact").

Health Grades' intent here is to "black hat" MDx with highly charged "copying" allegations that have no basis in fact or any connection to the '060 patent, all in an effort to confuse the jury, and to distract them from the real issues at hand.  This would be an enormously time-consuming sideshow that runs a tremendous risk of unfairly prejudicing MDx with

inflammatory and wholly irrelevant allegations.  Accordingly, all evidence of alleged copying should be excluded from trial.[2]

## IV.  ALLEGED UNEXPECTED RESULTS

Unexpected results of a claimed invention, when properly proved, can also be an indication of non-obviousness.  *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995) ("One way for a patent applicant to rebut a prima facie case of obviousness is to make a showing of 'unexpected results'").  Other than a bald assertion, this alleged secondary consideration is found nowhere in response to Interrogatory No. 4.  Exhibit C, at 14 and Exhibit F, at 5.  Health Grades also failed to provide any information of a nexus between this unidentified unexpected result and the claimed invention.  *In re Soni*, 54 F.3d at 750 (one way to rebut a prima facie case of obviousness is to "show that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected.") and (citing *In re De Blauwe*, 736 F.2d 699, 705 (Fed. Cir. 1984)) ("'it is well settled that unexpected results must be established by factual evidence.  Mere argument or conclusory statements … does not suffice.'");  *Metso Minerals, Inc. v. Powerscreen Int'l Distrib.*, 526 Fed. Appx. 988, 998 (Fed. Cir. 2013) (finding alleged evidence of unexpected result irrelevant in the obviousness inquiry where the alleged unexpected result was the result of components not part of the limitations of the claimed invention).  Because Health Grades has failed to set forth any evidence of an "unexpected result" or a nexus between the mystery "unexpected result" and the claimed invention, Health Grades should be precluded from arguing this alleged secondary

---

[2] Where there is proper evidence of copying the alleged invention, that evidence can also be relevant to the issue of willful infringement.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) ("Because patent infringement is a strict liability offense, the nature of the offense is only relevant in determining whether enhanced damages are warranted.").

consideration, too. *Monsanto Co. v. Bayer Bioscience N.V.*, 2005 U.S. Dist. LEXIS 46068, *30-32 (E.D. Mo. Oct. 28, 2005) (precluding evidence of secondary considerations not disclosed during discovery).

## V.    ALLEGED LONG FELT NEED AND FAILURES OF OTHERS

Long felt needs and failures of others, when properly proved, can also be indicia of non-obviousness. *Ormco Corp.*, 463 F.3d at 1311.  While there is nothing provided in Health Grades' original response to Interrogatory No. 4 about long felt needs or failures of others (Exhibit C), in response to Interrogatory No. 8, Health Grades states that secondary considerations include "(3) evidence of long felt but unresolved needs, including the many websites with information about physicians available on the Internet in the early 2000s, but the failure of any of them to include all the claimed elements; [and] (4) the failure of others, including the owners of the above-cited prior art references to create a system that meets the claimed invention . . . ."  Exhibit E, at 37-38.  Health Grades also baldy identifies in its supplemental response to Interrogatory No. 4, without any explanation, long felt, but unresolved needs and failure of others, as evidence of secondary considerations of non-obviousness.  Exhibit F, at 5.  But, even if it was true that no one had practiced the invention in the prior art, that is not evidence of a long felt need or failures of others.  Indeed, if these arguments could be successful, there would be "long felt need" and "failures of others" in every obviousness analysis, since Health Grades' logic equates a lack of an outright anticipation as evidence of long felt need and failures of others.

Health Grades demonstrates a fundamental misunderstanding of these concepts. Allegations of "long felt need" require proof of an actual ***need***; and allegations of failures of

others require proof that someone actually ***tried*** to create the claimed invention and ***failed***. *Eurand, Inc. v. Mylan Pharms., Inc. (In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.)*, 676 F.3d 1063, 1082 (Fed. Cir. 2012) ("Longfelt need is closely related to the failure of others.  Evidence is particularly probative of obviousness when it demonstrates both that a demand existed for the patented invention, and that others tried but failed to satisfy that demand."; finding evidence regarding failure by others as a probative secondary consideration where an element was lacking in the prior art and skilled artisans struggled to attain it); *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1332-1333 (Fed. Cir. 2009) (proponent must explain how long this need was felt and provide evidence on how the claimed invention has met the need); *Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1285 (Fed. Cir. 2000) (evidence of repeated failures to design the claimed invention is relevant on the issue of obviousness); *Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1378 (Fed. Cir. 2000) (affirming lower courts holding that "an unsolved problem is not evidence of non-obviousness unless skilled workers in the art have tried and failed to solve the problem").  Health Grades has no evidence of either of these alleged secondary considerations.  Therefore, these alleged secondary considerations are completely irrelevant to the issue of obviousness and will only serve to confuse the jury.

**VI.     ALLEGED SKEPTICISM OF OTHERS**

Skepticism of others, when properly proved, can also be an indication of non-obviousness.  *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008).  Although there is nothing in Health Grades' response to Interrogatory No. 4 about skepticism of others (Exhibit C), its response to Interrogatory No. 8 claims that another

secondary consideration is "(5) the skepticism of others who were hesitant and/or believed it would be a bad idea to include patient ratings of physicians within an information system (because among other reasons, physicians don't like patient ratings and/or advertisers don't like patient ratings and/or it is difficult to build a patient rating system that is accurate and not slanderous) with other kinds of information relating to physicians."  Exhibit E, page 38.

First, patient ratings were already in the prior art.  *See e.g.*, Health Grades' physician report on Dr. David A. Ducker, dated June 4, 2005, attached hereto as Exhibit H.  So, this is hardly an indication of non-obviousness of the claimed invention, when the alleged skepticism was about doing something that was already being done in the prior art.

More fundamentally, however, this type of evidence – including allegations that patient ratings might have upset the physicians, or advertisers, or could have accuracy problems – is not a secondary consideration of non-obviousness, even if it was directed to the claims of the '060 patent.  That is, these are simply business and economic reasons not to include patient ratings in the reports – they say nothing about technical feasibility.  *Friskit, Inc.*, 306 Fed. Appx. at 617-18 (Fed. Cir. 2009) (failure to combine due to market forces is not relevant to the obviousness issue as they present no evidence of technological challenges); *see also Dystar Textilfarben GmbH v. C.H. Patrick Co.*, 464 F.3d 1356, 1371-72 (Fed. Cir. 2006) ("business judgment" not relevant to obviousness issue); *Orthopedic Equipment Co., Inc.  v. United States*, 702 F.2d 1005, 1013 (Fed. Cir. 1983) ("the fact that the two disclosed apparatus would not be combined by businessmen for economic reasons is not the same as saying that it could not be done because skilled persons in the art felt that there was some technological incompatibility that prevented their combination. Only the latter fact is telling on the issue of obviousness.").

## VII.    <u>ALLEGED PRAISE BY OTHERS</u>

Praise by others, when properly proved, can also be an indicia of non-obviousness. *Vulcan Eng'g Co. v. FATA Aluminium, Inc.*, 278 F.3d 1366, 1373 (Fed. Cir. 2002).  Health Grades' response to Interrogatory No. 8 also includes as an alleged secondary consideration "(6) praise by others in the media and industry…."  Exhibit E, at 38.  There is no substance to this response, but Health Grades' response to Interrogatory No. 4 quotes pages of news articles, and references alleged client testimonials.  Exhibit C, at 11-14.

Even a cursory reading of the articles shows that they have nothing to do with the '060 patent.  Most discuss rankings of hospitals (which Health Grades readily admits are not covered by any of the '060 patent claims); others talk about the best cities for pediatricians (also unrelated to the claimed subject matter); and none of them even remotely distinguish the patented subject matter from the reports and ratings of physicians that were in the prior art (*see, e.g.,* Exhibit H).  There is simply no evidence connecting any of this alleged success and praise to the claims of the '060 patent.   *Bayer Healthcare Pharm., Inc. v. Watson Pharm., Inc.*, 713 F.3d 1369, 1377 (Fed. Cir. 2013) (reversing finding of non-obviousness, and dismissing alleged secondary considerations as "legally insufficient": "bare journal citations and self-referential commendations fall well short of demonstrating true industry praise"); *Inventio AG v. Otis Elevator Co.,* 497 Fed. Appx. 37, 42-43 (Fed. Cir. 2012) (reversing district court determination of non-obviousness and dismissing alleged secondary considerations evidence: "Inventio did not link the sales or praise directly to the patented feature as opposed to [the overall product] more generally").

12

## VIII.   ALLEGED TEACHING AWAY

Teaching away from a claimed invention, when properly proved, can also be an indication of non-obviousness.  *Ecolochem, Inc.*, 227 F.3d at 1379-1380.  This alleged secondary consideration is also found nowhere in response to Interrogatory No. 4.  Exhibit C.  In response to Interrogatory No. 8, Health Grades gives it only passing mention with no substance whatsoever.  Exhibit E, at 38.  Accordingly, Health Grades should be precluded from arguing this alleged secondary consideration, too.  *Monsanto Co.*, 2005 U.S. Dist. LEXIS 46068, at *30-32 (in granting a motion *in limine*  to preclude evidence of secondary considerations, the Court held that the patent owner cannot add new theories of non-obviousness that were not disclosed in response to an interrogatory).

## IX.   ALLEGED COMMERCIAL SUCCESS

Commercial success, when properly proved, can be a secondary indicia of non-obviousness.  *Tokai Corp. v. Easton Enterprises, Inc.*, 632 F.3d 1358, 1369 (Fed. Cir. 2011) ("Regarding commercial success, this factor 'may have relevancy' to the overall obviousness determination, …, but a nexus must exist between the commercial success and the claimed invention.").  Health Grades claims that the commercial success of the "***website physician reports***," for both Health Grades and MDx (Exhibit E, at 37, section (4)(D), points (1) and (2)) is evidence of a secondary consideration of non-obviousness.  For commercial success to have relevance, however, the alleged success must be "due to the merits of the claimed invention beyond what was readily available in the prior art."  *J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997); *see also Ormco Corp.*, 463 F.3d at 1312 ("If the commercial success is due to an unclaimed feature of the device, the commercial success is

13

irrelevant.  So too if the feature that creates the commercial success was known in the prior art, the success is not pertinent."); *In re Huang*, 100 F.3d 135, 139-40 (Fed. Cir. 1996) ("[commercial] success is relevant in the obviousness context only if there is proof that the sales were a direct result of the unique characteristics of the claimed invention – as opposed to other economic and commercial factors unrelated to the quality of the patented subject matter.  In other words, a nexus is required between the sales and the merits of the claimed invention."); *Two Moms and a Toy, LLC,* 2012 U.S. Dist. LEXIS 152840 at *68 (granting summary judgment of obviousness: "Where commercial success results from something other than what is novel in the claim, there is no nexus to the merits of the claimed invention").

Because Health Grades' allegations of commercial success completely fail to present any evidence of non-obviousness of the '060 patent's claims, they should be excluded.  First, Health Grades identifies no facts supporting the alleged commercial success of the "physician reports" portions of the websites.  Instead, the only evidence of commercial success of anything is provided in Health Grades' original response to Interrogatory No. 4 (Exhibit C, at 14-16), and those are simply charts of hits to the ***entire*** Health Grades website (and not even that is provided for the MDx website).  *In re Huang*, 100 F.3d at 139-40 (holding that to show that a product is commercially successful a party needs "hard evidence of commercial success," something beyond "bare sales numbers.")

The websites have many features in addition to the physician reports (including, for example, searches for hospitals, searches for nursing homes, doctor directories, articles, tips for consumers, etc.).  *See, e.g.,* www.healthgrades.com; www.vitals.com; *see also* Deposition Transcript of David Hall, portions of which are attached hereto as Exhibit G, at 59:18-67:11

(identifying numerous features in both websites not covered by the '060 patent). Thus, the supposed success of the **_entirety_** of the websites, which contain far more than the features allegedly meeting the claims of the '060 patent, cannot be considered evidence of commercial success of the claimed invention because the claimed invention is not remotely coextensive with these broad websites. *Metso Minerals, Inc.*, 526 Fed. Appx. at 998 (reversing district court finding that claims were non-obvious: "Metso provides no evidence connecting the commercial success of these screeners to the claimed advances of the '618 Patent"; "[o]ur case law clearly establishes that the patentee must establish a nexus between the evidence of commercial success and the patented invention"); *Friskit, Inc.*, 306 Fed. Appx. at 617 ("Friskit failed to show that the success of those products was attributable to the subject matter that it contends is nonobvious.").

Even if Health Grades had (and disclosed in response to these interrogatories) evidence that these limited portions of the Health Grades and MDx websites – the "physician reports" – were commercially successful, that would still not be evidence of non-obviousness of the alleged invention for at least three reasons. **_First_**, commercial success of physician reports would do nothing to indicate the success of the *claimed invention*, because very few "reports" practice the claims of the '060 patent since many lack patient ratings, use of the proper data from the proper sources, etc. *See, e.g.*, screen shots of Dr. Joseph L. Caputo's physician report from Healthgrades.com, dated Dec. 4, 2013, attached hereto as Exhibit I, which is an example of the many reports lacking patient ratings ("Be the first to evaluate Dr. Caputo") (notation added); *see also* Exhibit G, at 78:25-80:15 (Health Grades' expert is unable to say if revenue from features unrelated to the '060 patent was a hundred dollars, or ten million dollars). **_Second_**, "physician reports" were used throughout the prior art. *See*, *e.g.*, Exhibit H. So, even if Health Grades

15

could show commercial success of "physician reports" that would only show the success of the prior art, not the patented invention. *Richdel, Inc. v. Sunspool Corp.,* 714 F.2d 1573, 1580 (Fed. Cir. 1983) (commercial success found not to be relevant because patent holder "failed to show that such commercial success . . . was due to anything disclosed in the patent in suit which was not readily available in the prior art"). ***And third***, Health Grades has set forth no evidence that the commercial success of either its own website or MDx's website was a "direct result of the unique characteristics of the claimed invention – as opposed to other economic and commercial factors unrelated to the quality of the patented subject matter." *In re Huang*, 100 F.3d at 139-40 (the applicant or patent owner "must submit some factual evidence that demonstrates the nexus between the sales and the claimed invention – for example, an affidavit from the purchaser explaining that the product was purchased due to the claimed features.").

Health Grades also cannot allege that its website is a commercial success, because it has no evidence that it is even practicing the claims of the '060 patent. *Ormco Corp.*, 463 F.3d at 1312 (commercial success is shown when "the successful product is the invention disclosed and claimed in the patent."). Dr. Greenspun, Health Grades' expert (and the only Health Grades witness asserted to have the expertise to opine on this issue) has no evidence that Health Grades employs the claim elements of the '060 patent. For example, he has no evidence, and does not even allege, that any healthcare provider has provided three or more of the required data fields. Supplemental Expert Report of Philip Greenspun, dated Sept. 9, 2013, portions of which are attached hereto as Exhibit J, at p. 25, ¶ 115 (opining only that a provider "may" log in and enter information – not a shred of evidence is provided to show that any provider has ever actually edited three or more of these elements). He also has no evidence, and does not even state, that

Health Grades obtained the necessary data from third parties (as opposed to the providers themselves), or that any third party verified the data. *Id*. at ¶¶ 118-20. And even if Dr. Greenspun could show that some provider reports met these elements, there would be no evidence that those few reports had any impact on the commercial success.

For all these reasons, Health Grades' allegations of commercial success are legally insufficient, and, therefore, are completely irrelevant to Health Grades' defense that the claims of the '060 patent are not obvious. As such, Health Grades should be precluded from presenting any evidence or testimony regarding commercial success at trial. *B.E. Meyers & Co. v. United States*, 47 Fed. Cl. 375, 378-380 (Fed. Cl. 2000) (granting a motion *in limine* to exclude evidence on secondary consideration as irrelevant where the plaintiff failed to provide any specific examples of a nexus between the alleged secondary consideration "and the claimed features of its invention as embodied in the language of the particular patent claims it alleges were infringed.").

## X.     HEALTH GRADES CANNOT SUPPLEMENT NOW

There is no proper secondary consideration that could support a finding of non-obviousness, and certainly the alleged evidence found in Health Grades' responses to Interrogatory Nos. 4 and 8 is not even remotely sufficient. Any new arguments or evidence cited in Health Grades' supplemental response to Interrogatory No. 4 submitted on October 31, 2013, 16 months after the close of fact discovery, should be precluded from trial as untimely, though, it too fails to cure the deficiencies of Health Grades' original response. And to the extent that Health Grades now attempts to make new arguments, or cite additional evidence, that should be precluded as well. *Grabau v. Target Corp.*, 2008 U.S. Dist. LEXIS 122899 (D. Colo. Mar. 6, 2008) (excluding evidence disclosed five days after the deadline for supplementing disclosures);

17

*Gallegos v. Swift & Co.*, 2007 U.S. Dist. LEXIS 5440, *1-2 (D. Colo. Jan. 25, 2007) (excluding evidence disclosed in an amended response to an interrogatory nearly ten months after the close of fact discovery and less than three months before trial); *see also Saint Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*, 666 F. Supp. 2d 820, 825-26 (N.D. Ohio 2009) (absent proof by non-moving party that the failure to produce was harmless or substantially justified, exclusion is mandatory); *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, 1996 U.S. Dist. LEXIS 17361, *27 (N.D. Ill. 1996) (excluding new arguments presented after close of discovery).

Indeed, here, counsel for Health Grades was warned that Health Grades' interrogatory response was deficient, but Health Grades refused to supplement its response until sixteen months after the close of fact discovery.  Exhibit D. *Cf. Saint Gobain Autover USA, Inc.*, 666 F. Supp. 2d at 825 (late-produced discovery excluded where warning letters given, prior to the close of fact discovery, without supplement).  In addition to the express warnings of counsel for MDx, this Court also cautioned Health Grades that it would be "stuck with" its response to Interrogatory No. 4, "for better or for worse."  Dkt. No. 136, at p. 22, lines 10-18. Health Grades chose to ignore the Court's admonition, and did not provide any further substantive evidence of the alleged secondary considerations or the required nexus.  Accordingly, it should not now, nearly eighteen months after the close of fact discovery and less than two months before trial, be allowed to attempt to supplement to plug the holes in its interrogatory responses.  *Gallegos*, 2007 U.S. Dist. LEXIS 5440 at *1-2; *see also Monsanto Co.*, 2005 U.S. Dist. LEXIS 46068 at *31 (granting a motion *in limine* to exclude evidence of undisclosed secondary considerations).  As in *Monsanto*, the addition of new theories long after discovery and shortly before trial would run

counter to the "purpose of our modern discovery procedure … to narrow the issues, to eliminate surprise, and to achieve substantial justice." *Id.* Since Health Grades has no sufficient evidence of any secondary consideration, it should be precluded from arguing any secondary considerations at trial.

XI.   **CONCLUSION**

Because Health Grades has no evidence of any secondary considerations and given the absence of any nexus between any alleged secondary consideration to the asserted claims of the '060 patent, Health Grades' alleged evidence of secondary considerations is inadmissible as irrelevant under Fed. R. Evid. 402, and, therefore, should be excluded. It should also be excluded under Fed. R. Evid. 403 as time-consuming, confusing, and unfairly prejudicial. What Health Grades proposes to do is offer evidence that is not only potentially inflammatory (such as the alleged "copying" evidence), but also confusing testimony about the success of Health Grades' and MDx's websites generally, despite the fact that the claims of the '060 patent are directed to a much more specific component of each party's website, in the hopes that the jury credits the '060 patent for the success.

For all the foregoing reasons, MDx respectfully requests that the Court preclude Health Grades from introducing any evidence or testimony at trial of alleged secondary considerations of non-obviousness and copying of the '060 patent.

Dated:  December 17, 2013                    Respectfully submitted,

_s:/Scott D. Stimpson_____
Scott D. Stimpson                            Terence Ridley, Atty. No. 15212
Trent S. Dickey                              Wheeler Trigg O'Donnell LLP
David C. Lee                                 370 Seventeenth Street, Suite 4500
Vincent M. Ferraro                           Denver, Colorado 80202
Sills Cummis & Gross P.C.                     Tel:  (303) 244-1800
30 Rockefeller Plaza                          Fax:   (303) 244-1879
New York, New York 10112                      E-mail: ridley@wtotrial.com
Tel: (212) 643-7000
Fax: (212) 643-6500                           _Attorneys for Defendant_
E-mail: sstimpson@sillscummis.com             MDx Medical, Inc. d/b/a VITALS.COM
E-mail: tdickey@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: vferraro@sillscummis.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2013, I electronically filed the foregoing **MDX MEDICAL, INC.'S MOTION *IN LIMINE* TO PRECLUDE HEALTH GRADES, INC. FROM OFFERING CERTAIN EVIDENCE OR TESTIMONY REGARDING VALIDITY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Vincent Marc Ferraro**
  vferraro@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com


*s:/      Vincent M. Ferraro*