IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S OPPOSITION TO "MDX MEDICAL, INC.'S EXPEDITED MOTION TO COMPEL A HEALTH GRADES 30(b)(6) DEPOSITION ON RECENTLY PRODUCED EVIDENCE" [DOC. #679]**

Plaintiff Health Grades, Inc. ("Health Grades"), through its counsel, hereby responds to "MDx Medical, Inc.'s Expedited Motion to Compel a Health Grades 30(b)(6) Deposition on Recently Produced Evidence" (Doc. #679) (the "Motion").

## I. INTRODUCTION

MDx fails to present good cause[1] to modify the scheduling order to compel an additional Rule 30(b)(6) deposition of Health Grades. Instead, MDx seeks information that is protected by opinion work product and is irrelevant to the issues in this case. MDx's purported justification for its request relies on the false fact that Health Grades will offer fact witness testimony regarding the prosecution of a patent application that is related to the U.S. Patent No. 7,752,060 ("the '060 Patent"). To be clear, Health Grades does not intend to present such fact testimony.

The impetus behind MDx's Motion is new evidence from the Patent Office that will make it very hard, if not impossible, for MDx to meet its burden to prove the but-for materiality

---

[1] The scheduling order may only be altered or amended by showing good cause. (Doc. 34 at p. 13)

1

requirement of inequitable conduct.  MDx's inequitable conduct defense rests on the argument that the United States Patent and Trademark Office ("Patent Office") would have not allowed the '060 Patent to issue had Health Grades' inventors disclosed Health Grades' own reports and services (which MDx calls the "Early HG Reports")[2] during the prosecution of the '060 Patent. The Patent Office, however, just allowed a related patent application (U.S. App. No. 13/551,471 ("the '471 App.")), which has very similar, but broader, claims compared to the '060 Patent. Indeed, the *same* Patent Examiner who examined the '060 Patent considered the Early HG Reports to be immaterial to the patentability of these broader claims.  Thus, MDx cannot prove that this examiner would have had a different opinion of the narrower claims in the '060 Patent had she known about these references during the prosecution of the '060 Patent.  Health Grades has moved to supplement its motion for summary judgment of no inequitable conduct to include this new evidence.  (Doc. #673.)

Rather than withdrawing its now clearly frivolous counterclaim,[3] MDx has filed an expedited motion to compel a Rule 30(b)(6) deposition of Health Grades relating to '471 App. To the extent that MDx seeks information about decisions regarding the selection of references disclosed and decisions relating to the timing of these disclosures in the '471 App. prosecution, this information is irrelevant to this lawsuit and is protected by opinion work product of Health Grades' patent attorneys.  To the extent that MDx seeks information related to the content of the

---

[2]  Inequitable conduct also requires that the patentee intended to deceive the Patent Office, and, but for the deception, the Patent Office would not have granted the patent. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011).

[3]  Charges of inequitable conduct have become an "absolute plague" on the courts and the entire patent system. *Id. at* 1290.  "Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps." *Id.*  For these reasons, the Federal Circuit heightened the standard for proving inequitable conduct – it now requires not only a specific intent to deceive, but also a deliberate decision to withhold prior art that was **but-for** material to patentability.  *See id.*

2

disclosures made in the '471 App., the Motion should be denied because MDx has already taken five depositions of Health Grades (including two 30(b)(6) depositions) regarding the content of the Early HG Reports, which are the same references that were disclosed in the '471 App.

Finally, and contrary to MDx's assertions, Health Grades does not intend to have any of its fact witnesses testify about the '471 App. Health Grades does intend to have its expert, Dr. Philip Greenspun, explain how the '471 App.'s public file history supports his opinions that the '060 Patent is *not* invalid and *not* unenforceable, but MDx is already scheduled to depose Dr. Greenspun on January 6, 2013.

As such, there will be no "trial by ambush" as MDx alleges -- MDx's Motion should be denied.

## II.   BACKGROUND FACTS

Related patent applications are those filed after an initial original application ("the parent") is filed but before it is issued as a patent. Health Grades owns several pending patent applications that are related to the '060 Patent as shown in the diagram below:



3

One type of related patent application is called a "continuation." A continuation is based on the parent and has the same priority date and specification as the parent. MPEP 201.11; *see also* 35 U.S.C § 120; *see also* 37 C.F.R. § 1.78. Continuations may include claims that are directed to different embodiments that were disclosed, but not claimed in the parent. *Id.* However, continuation applications are often filed so that an applicant may pursue similar, but broader claims than those that were allowed in the parent application, as was the case with the '471 App. *See id.*

In this case, the related '471 App. is being prosecuted concurrently with this litigation (relating to its parent, the '060 Patent) *and* it has been assigned to the same Patent Office examiner (Trang Nguyen) who examined the '060 Patent. (Application Data Sheet, '471 App. File History (Doc. #673-2); Notice of Allowability dated November 22, 2013, '471 App. File History (Doc. #673-3); '060 Patent at p. 1 (Ex. 1, Doc. #369-1).) These circumstances have given Health Grades the opportunity to disclose in the '471 App. all of the prior art (and other references) that MDx asserts should have disclosed in the '060 Patent prosecution. (Information Disclosure Statement ("IDS") dated Aug. 23, 2013, '471 App. File History (Doc. #673-4); IDS dated Sept. 20, 2013, '471 App. File History (Doc. #673-5); Petition to Expunge Pursuant to 37 CFR §1.59 and §724.05, filed August 27, 2013, '471 App. File History (Doc. #673-6). Health Grades even submitted the Early HG Reports to the Patent Office *for a second time* in the '471 App. in response to MDx's counsel's accusations that Health Grades' first disclosure of this information was insufficient. (9/20/13 IDS at pp. 1-2 (Doc. 673-5); October 3, 2013 Email from Kirstin Stoll-DeBell in response to the September 6, 2013 email from Scott Stimpson and Kirstin Stoll-DeBell (Doc. #673-9).)

Examiner Nguyen considered all the Early HG Reports submitted by Health Grades.

4

(List of References cited by Applicant and Considered by Examiner at pp. 14-15 (Doc. #673-7).) Examiner Nguyen allowed claims that are very similar to, but broader than the '060 Patent claims. (Notice of Allowance (Doc. #673-3).) For example, claim 38 of the '471 App. claims a computer-implemented method of providing information about healthcare professionals to potential patients that contains almost identical language as claim 1 of the '060 Patent except that claim 38 omits several limitations required by claim 1. (Notice of Allowance (Doc. #673) at pp. 4-5.)

### III. ARGUMENT

#### A. MDx's Deposition Topics are Not Relevant to the Issues in this Lawsuit.

MDx's deposition topics also seek information about the reasons for selection of specific references that were disclosed and the reasons for the timing of the disclosures that Health Grades made to the Patent Office *during the prosecution of the '471 App*.

These topics are not relevant to MDx's inequitable conduct defense, which concerns disclosures during the prosecution of the '060 Patent. There are two elements of inequitable conduct – the first focuses on the inventors' intent during the prosecution of the '060 Patent, which took place between Aug. 2006-July 2010. The '471 App. was not filed until July 2012. Decisions made about what art to disclose more than two years later (during the '471 App's prosecution) have no bearing on issues relating to inventors' state of mind during the '060 Patent prosecution. The second element of inequitable conduct focuses on the Patent Office (as opposed to Health Grades) and considers whether the Patent Office would have allowed the '060 Patent claims had it known about the Early HG Reports. For this element – it does not matter why Health Grades disclosed the Early HG Reports during the '471 prosecution. All that matters is that they were disclosed to, and considered by, the Patent Office.

5

MDx's topics are also not relevant to MDx's invalidity defense.  There is no state of mind requirement to prove invalidity.  Rather, it focuses on whether the asserted references meet the statutory definition of "prior art" and whether the reference(s) disclose all of the elements of the '060 Patent claim or render them obvious.

When all else fails, MDx makes baseless allegations of bad faith.  In this case, MDx argues "Health Grades' bad faith abounds relating to its burying efforts" during the '471 prosecution. (Motion at 3.)  On the one hand, MDx argues that Health Grades disclosed too much information to the Patent Office ("buried they key prior art in this mountain of documents") but then complains that Health Grades did not disclose enough information  ("[HG] still withheld the critical material needed by the Patent Office").[4]  (Motion at p. 2.)  The inconsistency of its arguments demonstrates the weakness of MDx's position.

The Patent Office's records show that Health Grades did not bury anything.  Health Grades even disclosed the Early HG Reports to the Patent Office *for a second time* after MDx sent Health Grades' counsel a threatening e-mail that complained that the first disclosure of this information was insufficient.  (Doc. #673-5 at p. 9 ("If any of these applications ever do issue as patents, there is going to be a very serious inequitable conduct problem if relevant material is buried or, in the case of HG's own prior art, is withheld entirely.")  MDx's Motion entirely ignores this second disclosure.

In any event, MDx's allegations of burying and bad faith *relate to the '471 App.*, which has not yet issued and is not being asserted in this lawsuit.  Indeed, MDx's Motion refers to its burying allegations as "as its own inequitable conduct." (Motion at 2.)

---

[4]   MDx does not specifically identify anything that it asserts should have disclosed in the '471 App. but wasn't.

Further, allegations of burying references are insufficient to prove for inequitable conduct.  *See, e.g.*, *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) ("[a]n applicant can not be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner."); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991) ("When a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it can not be deemed to have been withheld from the examiner."); *Seaboard Int'l, Inc. v. Cameron Int'l Corp.*, 2013 U.S. Dist. LEXIS 106784 (E.D. Cal. July 30, 2013) (alleged burying of material information in a long list of citations to the Patent Office by itself is insufficient to state a claim for inequitable conduct); *Parkervision, Inc. v. Qualcomm Inc.*, No. 3:11-cv-719-J-37TEM, 2013 U.S. Dist. LEXIS 8467, at *9-10 (M.D. Fla. Jan. 22, 2013) (same); *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 749 F. Supp. 2d 892, 903 (W.D. Wis. 2010) (same); *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 358 (D. Del. 2009) (same).  Furthermore, the single district court case that MDx relies on to support its argument that "burying" references can support a claim of inequitable conduct, provides so only when there are other facts that support a plausible inference of intent to deceive.  *Synqor, Inc. v. Cisco Sys.*, No. 2:11CV54, U.S. Dist. LEXIS 129463, at *21 (E.D. Tex. Aug. 7, 2012).  MDx has no facts to support such an inference.

As such, MDx's deposition topics are not relevant to the '060 Patent or this lawsuit.  The Motion should be denied.

### B. MDx's Deposition Topics Seek Information that is Protected by the Work-Product Doctrine.

In addition to being irrelevant, much of the information MDx seeks is protected by the work-product doctrine.  The disclosures in the '471 App. were made by Health Grades' patent attorneys.  Health Grades has already produced the factual information to MDx – MDx has

7

2004543255_1

copies of all these disclosures.  However, the reasons for the disclosures (including the decisions about what documents were disclosed and decisions about when these disclosures were made) involve the mental impressions, conclusions, legal theories, and strategies of Health Grades' patent attorneys, which decisions were made in anticipation of litigation.  MDx counsel's above-referenced e-mail to Health Grades' counsel (Doc. #673-9) demonstrates that the '471 App. was prosecuted in anticipation of litigation.  Thus, information relating to decisions about the selection of references and timing of disclosures are protected opinion work product.  *See, e.g., Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) (holding that work product protection applies to attorneys' mental impressions, conclusions, opinions, and legal theories made in anticipation of litigation); *McCook Metals LLC v. Alcoa, Inc.*, 192 F.R.D. 242, 259-263 (N.D. Ill. 2000) (finding work product applied to drafts of patent applications and amendments because they were prepared in preparation for appeal to the Board of Patent Appeals and Interferences and this appeals process was adversarial); *Oak Indus. v. Zenith Electronics Corp.*, 687 F. Supp. 369, 374-375 (N.D. Ill. 1988) (holding a patent attorneys' thoughts and theories regarding a reexamination proceeding were protected by work product because there was a parallel patent litigation pending that involved the same central issues as the reexamination).

For this additional reason, MDx's Motion should be denied.

### C. MDx's Deposition is Unnecessary Because Health Grades Does Not Intend to Have Fact Witnesses Testify About the '471 App.

MDx argues that it needs a Rule 30(b)(6) deposition of Health Grades so it can determine what Health Grades' witnesses will say about the '471 App. at trial.  (Motion at 3.)  Not so.

Health Grades does not intend to have any of its fact witnesses testify about the '471 App. Rather, the file history documents from the Patent Office are self-authenticating and speak for themselves. They demonstrate the following undisputed facts:

- The '471 App. is a continuation of the '060 Patent;
- The same examiner examined the '060 Patent and the '471 App.;
- Health Grades disclosed the Early HG Reports in the '471 App.;
- Examiner Nguyen initialed the Early HG Reports as things she had considered;
- Examiner Nguyen has allowed very similar, and broader, claims in the '471 App.

Health Grades does intend to have its expert, Dr. Philip Greenspun, testify that the '471 App. file history supports his opinions that the Early HG Reports were not "but-for" material to patentability[5] and do not invalidate the '060 Patent. MDx is deposing Dr. Greenspun on his supplemental opinions on January 6, 2014 and will have an opportunity to ask Dr. Greenspun questions about this opinion.

### D. MDx Has Already Taken Five Depositions Regarding the "Content" of the References Disclosed in the '471 App.

One of MDx's topics seeks information about the "content of the references and related materials that were disclosed to the Patent Office" in connection with the '471 App. Health Grades already produced a list of everything that it disclosed during the prosecution of the '471 App. The references that were disclosed are the same references that are at issue in this litigation, including for example, the Drucker Report (Dep. Ex. 13), the Aug. 2005 Press Release (Dep. Ex. 10), the 2004 physician and hospital reports (Dep. Ex. 8); and the 2003 physician

---

[5] Health Grades has moved to bifurcate trial on inequitable conduct (which is an equitable issue to be decided by the Court) and have it tried in a separate bench trial following the jury trial on issues of liability and damages. (Doc. #598). This motion is pending.

9

reports (Dep. Ex. 21).  MDx has already deposed all of the inventors and Health Grades under Rule 30(b)(6) about these references.  The "related materials" that were disclosed are documents from this litigation, including for example, MDx's expert reports on invalidity and noninfringement and the briefs in support of and against Health Grades' motion for summary judgment of no invalidity or inequitable conduct.

### IV.   CONCLUSION

For all of the foregoing reasons, MDx's Motion to compel a Rule 30(b)(6) deposition of Health Grades should be denied.

Respectfully submitted December 17, 2013.

*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Adam L. Massaro, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@lrrlaw.com
         kkosto@lrrlaw.com
         jvazquez@lrrlaw.com
         amassaro@lrrlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

10

# CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2013, I electronically filed the foregoing **HEALTH GRADES, INC.'S OPPOSITION TO "MDX MEDICAL, INC.'S EXPEDITED MOTION TO COMPEL A HEALTH GRADES 30(b)(6) DEPOSITION ON RECENTLY PRODUCED EVIDENCE" [DOC. #679]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Vincent Ferraro, Esq.
David C. Lee, Esq.
Trent Dickey, Esq.
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
E-mail: sstimpson@sillscummis.com
vferraro@sillscummis.com
dlee@sillscummis.com
tdickey@sillscummis.com

Terence M. Ridley, Esq.
Ramona Lampley, Esq.
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO  80202-5647
E-mail: ridley@wtotrial.com
lampley@wtotrial.com

*s/ Adam L. Massaro*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Adam L. Massaro
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@lrrlaw.com
kkostolansky@lrrlaw.com
jvazquez@lrrlaw.com
amassaro@lrrlaw.com
*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

11

2004543255_1