IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S BRIEF OPPOSING
MDX MEDICAL, INC.'S REQUEST FOR RECONSIDERATION OF CLAIM
CONSTRUCTIONS IN THE MARKMAN ORDER [Doc. #138]**

---

Plaintiff Health Grades, Inc. ("Health Grades"), through its counsel, submits this brief opposing MDx Medical, Inc.'s request that this Court construe the claim terms that Judge Brimmer previously decided should be given their ordinary meaning. These terms include:

- "*verified*" as in "healthcare provider *verified* information" and "information *verified* by an independent third party source" (Markman Order at pp. 15 & 17);

- "*creating* a . . . report *using* . . . the . . . information verified by an independent third party source" (Markman Order at pp. 20-21);

- "hyperlink *to* an affiliated hospital . . . " (Markman Order at pp. 22-23).

**1.  This Court Should Not Reconsider Decisions Made in the Markman Order**

The Markman Order and any other findings made by this Court are law of the case. *United States v. Webb,* 98 F.3d 585, 587 (10th Cir. 1996) ("Under the law of the case doctrine,

1

findings made at one point during litigation become the law of the case for subsequent stages of that same litigation."); *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 631 F. Supp. 2d 1010, 1018 (N.D. Ill. 2009) (adopting claim constructions made by the prior judge before the case was reassigned because "a successor judge is not free to alter prior rulings 'merely because he has a different view of the law or the facts from the first judge'").

Yet, MDx seeks reconsideration of these rulings without showing any grounds for reconsideration. There has been no intervening change in the controlling law, no new evidence relating to claim construction, and no need to correct clear error or prevent manifest injustice. Indeed, Judge Brimmer's decision to give the above terms their ordinary meaning is consistent with controlling precedent on claim construction. *Phillips v. AWH Corp.* 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").

Moreover, if this Court reconsiders Judge Brimmer's rulings as to the above terms, it should reconsider Judge Brimmer's rulings of *all* of the terms in the Markman Order. Any change in the claim constructions would have a domino effect on many aspects of this case, including the recent summary judgment order (Doc. 696), Health Grades' pending motion for summary judgment (Doc. 369), the expert reports on infringement and invalidity, and potentially the trial date.

**2. MDx's Arguments That are Contrary to the Markman Order Should be Precluded**

The purpose of claim construction is to determine *both* the meaning *and* the scope of the claims asserted to be infringed. *O2 Micro International Ltd v. Beyond Innovation Technology*

2

2004559176_1

*Co.*, 521 F.3d 1351 (Fed. Cir. 2008) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)).  In addition to construing the meaning of the disputed terms, the Markman Order resolved several disputed issues about claim scope.  MDx should not be permitted to make arguments that are contrary to the Markman Order.  *See, e.g., Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 692 F. Supp. 2d 487, 520-521 (M.D. Pa. 2010) ("A party has no right to present to the jury an inconsistent claim construction."); *Fenner Inv., Ltd. v. Microsoft Corp.*, 632 F. Supp. 2d 627, 638 (E.D. Tex. 2009) (prohibiting party from presenting conflicting claim construction to jury when its "argument is contrary to the [court's] claim construction order"); *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 597 F. Supp. 2d 897, 910 (N.D. Iowa 2009) (holding that "no party should be allowed to argue to the jury claim constructions that are contrary to the court's claim construction or to reassert to the jury constructions that the court has already expressly or implicitly rejected").

Further, the fact that Judge Brimmer construed certain terms to have their ordinary meaning does not negate or otherwise diminish Judge Brimmer's rulings as to claim scope:

> A court may decline to adopt constructions that violate claim construction doctrine, such as improperly importing limitations, **and may still** construe terms to have their ordinary meaning.

*Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, No. 5:09cv85, 2011 U.S. Dist. LEXIS 91124, *15-16 (E.D. Tex. Aug. 16, 2011) (emphasis added).

MDx and its technical expert rely on claim constructions that were advanced by MDx during the claim construction phase of this case and rejected by Judge Brimmer in the Markman Order.  MDx should be precluded from presenting these claim constructions to the jury.

3

### a. Judge Brimmer Rejected MDx's Argument that "Verifying" Requires Something More Than Receiving the Information From a Physician

As one basis for non-infringement, MDx and its expert, Dr. Cooper, assert that the "healthcare provider-verified information" claim element includes two *different* requirements:

1. that the information be received from (e.g. provided by) the physician; and
2. that it be verified by the physician, where the physician must do something to verify the information *in addition to* just providing it.

Judge Brimmer considered this argument and rejected it.

In its initial *Markman* brief, Health Grades argued that the phrase "physician-verified information" is broad enough to cover information that is received from the physician. (Doc. 79 at pp. 18-19.) MDx disagreed, arguing that "verified" is different than "received from"[1]:

> As for the meaning of "verified," Health Grades glibly asserts . . . that the '060 Patent does not require any kind of verification "other than the act of the physician providing the information." This argument is pure silliness – **it reads the verification requirement entirely out of the claims**. **And the specification clearly states that the provider giving the information is very different from the provider verifying the information.**

(Doc. 93 at 15 (emphasis added) (citations omitted).) In reply, Health Grades cited language from the '060 patent indicating that providing information is the same as verifying it:

> For example, the '060 patent specification uses the terms "physician-verified" and "physician-provided" interchangeably, stating a report may include: (1) a physician-verified, or physician-provided, section including information the physician feels will help a patient choose him or her as a physician . . . ." ('060 patent, col. 2:53-67 (emphasis); *see also* col. 7:52-66 ("In essence, the member physician has the ability

---

[1] This is the same argument MDx is making now: "[S]o that receipt from a healthcare provider is also verification, you may as well take that verification language and throw it in the river, because it means nothing. It means nothing. This claim has two specific distinct requirements. You have to receive it from the healthcare provider, and you have to get it verified by the healthcare provider." MDx Argument: 12/18/13 Hearing Transcript at p. 77:15-23.

4

> to craft some of the information provided to the patient. . . . [I]t is expected that the physician, at least, verifies this information."). **Certainly, a physician who provides a list of his hobbies and medical philosophies has verified these things by virtue of providing them.** How else might the physician "verify" this information? Would he need to sign an affidavit swearing that golf is one of his hobbies?

(Doc. 106 at 8-9 (highlighting added).)

Judge Brimmer agreed with Health Grades and declined to adopt the narrow claim scope proposed by MDx:

> 8 . . . *Here*, the *specification* makes clear that the act of "verifying" requires *only* that the website receive confirmation of the information from some other source, in this instance the healthcare provider. **Indeed, the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider.**

(Markman Order at p. 17 n.8 (emphasis added) (citations omitted).)

MDx's attempts to distinguish this portion of the Markman Order are without merit. MDx argues that Dr. Cooper's non-infringement opinions are not inconsistent with Judge Brimmer's claim constructions because Judge Brimmer did not construe this phrase; however, Dr. Cooper's opinions are directly contrary to *the Markman Order*, which clearly states:

> **Information may be verified by receipt of the information from the first healthcare provider** or in some other manner, such as "an independent third-party source" or the patient, which are separately described in the patent.

(Markman Order at p. 18 (emphasis added).)  Further, Judge Brimmer did construe the term "verified."  He ruled that it covered multiple ordinary meanings – including *both* the meanings proposed by MDx *and* Health Grades.  (*Id.* at 15 n.8.)  To argue that Health Grades' proposed

5

meaning is wrong (as Dr. Cooper does)[2] is to assert a claim construction that is inconsistent with Judge Brimmer's construction.  As discussed above, MDx should not be permitted to rely on claim constructions that were rejected by the Court.  *See, e.g., Arlington*, 692 F. Supp. 2d at 520-521; *Fenner*, 632 F. Supp. 2d at 638; *Transamerica*, 597 F. Supp. 2d at 910.

MDx also argues that footnote 8 is not relevant because it relates to what is disclosed in the '060 patent, not what the claims mean.  (Doc. 672-1 at p. 8.)  This is nonsensical.  As Judge Brimmer correctly recognized:

> the patent **specification** – the text and figures of the patent that precede the claims – "'is always highly relevant to the claim construction analysis. Usually, it is dispositive; **it is the single best guide to the meaning of a disputed term**.'"

(Markman Order at 5 (emphasis added) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics*, 90 F.3d at 1582).)  MDx further argues that "receiving *confirmation* of the information" is different from "receiving information."[3]  This argument is belied by Judge Brimmer's next statement: **"**Indeed, the confirmation described appears to not extend beyond receipt of such information from the first healthcare provider."  (Markman Order at p. 17 n.8.)  Finally, MDx argues that this Court should disregard footnote 8 because it is "just dicta."  Not true.  Footnote 8 discussed a range of conduct that would meet the ordinary meaning of the term "verified," which was necessarily involved in Judge Brimmer's decision that the "plain and ordinary meaning would apply" to this phrase.  (Markman at p. 15.)

---

[2]   "I disagree with the Markman construction of verified, or lack of construction, because it has very specific meaning in computer science.  It's not just to edit; it's to confirm, to relate to ground truth rather than to assertions."  Cooper Dep. at p. 43:14-19 (Doc. 338-3).

[3]   MDx's Summary Judgment Reply at p. 12 ("The Court stated that the verification element requires "confirmation of the information."  (Doc. 138, page 15, n.8.)  MDx did not interpret the Court's Claim Construction Order to require only receipt of the information from the healthcare providers."  (Doc. 444).

6

Thus, Judge Brimmer's order, including footnote 8, is law of this case.

### b. Judge Brimmer Rejected MDx's Argument that "Verifying" Requires Something More Than Receiving the Information from a Third Party

Judge Brimmer also considered and rejected the same scope argument in connection with the claimed phrase: "information verified by an independent third-party source" (herein after "third-party verified information"). Specifically, in its claim construction brief, MDx argued that the claims do not cover information that is merely provided by third parties:

> Health Grades wants this court to send everything to the jury, and see what they do with the "verification" requirement. But we already know (see Section IV, *supra*) that Health Grades will take a wildly broad view of this term and argue that any information simply provided by a third party is also "verified" by that third party. Such a position would be contrary to the plain language of the claims, and the specification.
>
> For the same reasons addressed in Section IV(B), **"verification" should be defined to require more than simply providing information. Otherwise, the term would be effectively read out of the claims.**

(Doc. 93 at p. 17 (emphasis added).)  Judge Brimmer also rejected this argument:

> Defendant seeks the following construction for this phrase: "proved to be true by an independent third-party source." Docket No. 93 at 18. . . . **For the reasons discussed above, the Court finds no basis to limit the meaning of "verified" in that manner.** The patent does not require that the third-party information be "proven" *but rather only describes an attempt to substantiate that will provide a patient with "some assurance that the qualifications of the doctor have been checked by someone."* '060 Patent col. 8 ll.12-13.[9] . . . . In short, the plain and ordinary meaning of "verified," which can encapsulate a range of conduct aimed at confirmation of information, shall apply.

(Markman Order at p. 17 (emphasis added).)

Dr. Cooper argues: "nowhere does page 17 state that confirmation of information is met by receipt of such information from a third party." (Doc. 672-1 at p. 8.)  However, as shown in

7

the underlined text of the foregoing quote, Judge Brimmer referenced his earlier discussion of the ordinary meaning of "verified," which stated:

> Here, the specification makes clear that the act of "verifying" requires only that the website *receive confirmation of the information **from some other source***, in this instance the healthcare provider.

(Markman Order at p. 15 n.8 (emphasis added).) A third party is "some other source." Moreover, Judge Brimmer's decision that the same meaning of the term "verified" should apply to physician-verified information and third-party verified information is consistent with the rules of claim construction set forth by the Federal Circuit. *See, e.g. Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed Cir. 2001) ("the presumption [is] that the same terms appearing in different portions of the claims should be given the same meaning . . . .").

In sum, Judge Brimmer decided that the scope of the "third party verified information" element is broad enough to cover information that is received from a third party. MDx should be precluded from making any arguments to the contrary.

### c. Judge Brimmer Rejected MDx's Argument that the Report Must Include "All" of the Third-Party Verified Information

Claims 1 and 15 require: "creating . . . a healthcare provider report on the first healthcare provider using . . . the information verified by the independent third-party source . . . ." During the claim construction phase of this case, the parties disputed the scope of this claim element:

> MDx essentially argues that it does not infringe this claim element because it does not display in its report all of the information it compiles about a physician. (MDx Brief at 19). However, using information to create a report and displaying information in a report are not the same things. The undersigned "used" LEXIS to create this brief without displaying all of the information he accessed from LEXIS herein. **The '060 claims do not require that "all of" the compiled information be used to create the report, let alone require that "all of" the**

> **information be "displayed" in the report.** MDx's proposed construction improperly reads limitations into the claims. The terms "creating" and "using" are plain English and no construction is necessary.

(Doc. 106 at p. 9 (emphasis added).)

Judge Brimmer agreed with Health Grades and rejected MDx's attempts to narrow the scope of this claim term:

> Defendant does not explain why the use of a subset of "information" somehow renders that information no longer within the categories previously identified in Claim 1. Furthermore, the categories of information are being "used" to "create" a report. **There is nothing in the patent that requires, when receiving, acquiring, or compiling information, a predetermination of what will ultimately be put into a report.** For instance, a patient or healthcare provider might provide information to the website that is not deemed relevant or important upon reaching the step of creating a report.

(Markman Order at pp. 20-21 (emphasis added) (citations omitted).)

MDx (and Dr. Cooper) should not be allowed to argue that the claims are limited to physician reports that display three or more of claimed types of physician-verified information when Judge Brimmer ruled that they are not so limited.

### d. Judge Brimmer Rejected MDx's External Website Hyperlink Argument

The parties also had a dispute about whether the scope of dependent claim 4 was broad enough to cover hyperlinks to hospital pages within the information service provider's website (e.g. vitals.com) or whether (as MDx argued) it was limited to a link to an external hospital's website. Judge Brimmer resolved this dispute by expressly rejecting MDx's argument:

> **The Court disagrees that a hyperlink "to" an affiliated hospital necessarily must lead to a website external to plaintiff's website.** In fact, from a review of the patent, it appears that "hyperlink" is used in the specification to refer to links to locations on plaintiff's website and not generally to external websites.

(Markman Order at p. 21 (emphasis added) (citations omitted).)

MDx (and Dr. Cooper) should not be allowed to argue that the claims are limited to an external website when Judge Brimmer ruled that they are not so limited.

### 3. Requested Relief: Dr. Cooper and MDx Should Be Precluded from Making Arguments that were Rejected by Judge Brimmer in the Markman Order

MDx and its expert, Dr. Cooper, should be precluded from making the following non-infringement arguments, which are inconsistent with the Markman Order:

- Receiving information from a physician is not sufficient to meet the requirement for "healthcare provider-verified information" in claims 1 and 15 (*see* Cooper Rebuttal Report at ¶¶ 12-15);

- Receiving information from a third party is not sufficient to meet the requirement for "compiling information verified by an independent third party source" in claims 1 and 15 (*see* Cooper Rebuttal Report at ¶¶ 23-29);

- Displaying less than three of the claimed types of third party-verified information elements in the physician profile on vitals.com does not meet the "creating a . . . report . . . using . . . the information verified by the independent third-party source . . . " element of claims 1 and 15 (*see* Cooper Rebuttal Report at ¶¶30-41); and

- A hyperlink to a hospital page within vitals.com is not sufficient to meet the requirement of a "hyperlink to an affiliated hospital, medical center, or other type of treatment center" in claim 4 (*see* Cooper Rebuttal Report at ¶¶ 57-59).

Respectfully submitted December 31, 2013.   LEWIS ROCA ROTHGERBER LLP

*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@lrrlaw.com
kkosto@lrrlaw.com
jvazquez@lrrlaw.com
*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

2004559176_1

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2013, I electronically filed and served the foregoing **HEALTH GRADES, INC.'S BRIEF OPPOSING MDX MEDICAL, INC.'S REQUEST FOR RECONSIDERATION OF CLAIM CONSTRUCTIONS IN THE MARKMAN ORDER [Doc. #138]** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

    Scott David Stimpson, Esq.
    Vincent Ferraro, Esq.
    David C. Lee, Esq.
    Trent Dickey, Esq.
    Sills Cummis & Gross P.C. – New York
    30 Rockefeller Plaza
    New York, NY  10112
    Email:  sstimpson@sillscummis.com
    Email:  vferraro@sillscummis.com
    Email:  dlee@sillscummis.com
    Email:  tdickey@sillscummis.com

    Terence M. Ridley, Esq.
    Wheeler Trigg O'Donnell, LLP
    370 17th Street, Suite 4500
    Denver, CO  80202-5647
    Email:  ridley@wtotrial.com
    Email:  lampley@wtotrial.com

                                *s/ Kris J. Kostolansky*