**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S MOTION FOR RECONSIDERATION UNDER
*Fed. R. Civ. P.* 72 OF THE JANUARY 3, 2014 ORDER IMPOSING SANCTIONS
AND FOR A HEARING**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, hereby moves for reconsideration of the portion of the Order dated January 3, 2014 imposing discovery sanctions ("Sanctions Order"; Dkt. # 711), and requests a hearing on this motion.

Pursuant to D.C.COLO.LCivR 7.1(a), on January 15, 2014, MDx's counsel conferred with counsel for Health Grades, Inc. ("Health Grades") by telephone and e-mail regarding this Motion. Health Grades' counsel indicated that Health Grades opposes this Motion and the relief requested herein.

## I.   SUMMARY OF ARGUMENT

A motion for reconsideration of a Magistrate Judge's ruling is proper "where the court has misapprehended the facts, a party's position, or the controlling law," or in order to "prevent manifest injustice." *Carbajal v. Lincoln Benefit Life Co.*, 2007 U.S. Dist. LEXIS 86753 *5 (D. Col. Nov. 13, 2007), *citing Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Reconsideration of the Sanctions Order is appropriate here for reasons not addressed by counsel for either party in the underlying motion. First, the Court imposed sanctions on MDx's counsel based, in part, on its belief that the supplemental interrogatory answer at issue (No. 2) had not been verified by the client, MDx. In fact, those interrogatory answers had been verified, and the verification served on counsel, on June 4, 2012. Second, sanctions may only be imposed on counsel for the certification of discovery responses under *Fed. R. Civ. P.* 26(g) when the Court finds that counsel did not make ***reasonable inquiry*** with respect to the response in question. In this case, counsel for MDx made a reasonable inquiry, based on the consistent position of plaintiff Health Grades, Inc. ("HG") with respect to the scope of its infringement claims from the inception of this case to the time of the response – a position consistent with the deposition of HG's expert, Dr. Phillip Greenspun, taken after the date of the Sanctions Order. Third, the two sentences in response to Interrogatory No. 2 that the Court found to be untrue are not a basis for sanctions, because the first answer was (and still is) true, and the second was made in good faith and believed to be accurate at the time. Fourth, the Sanctions Order did not take into account the fact that counsel for MDx provided HG with the ***specific queries*** used to obtain the verified Supplemental Response, on or about May 31, 2012. These specific queries (perhaps best

2

analogized to E-discovery key word search terms) expressly laid-out for HG the queries that had been run in connection with the Supplemental Response, and HG never complained about the Interrogatory Response until it filed its sanctions motion.

## II. MDX CERTIFIED ITS SUPPLEMENTAL RESPONSE

The Sanctions Order states that the Supplemental Response to Interrogatory No. 2 was not verified by MDx. (Sanctions Order at 9, 11; Docket # 711). The Court is under a misapprehension of fact. Although HG's Motion for Sanctions attached an unverified copy of the Supplemental Response as an exhibit (Docket # 632, Ex. A), the Supplemental Response was verified. The Supplemental Response was served on HG on May 10, 2012. Declaration of Scott Stimpson ("Stimpson Dec.") ¶ 2. Ex. A, E. A verification signed by Erika Boyer of MDx was served on June 4, 2012, and Ms. Boyer was deposed on June 5, 2012. (Stimpson Dec. ¶¶ 10, 11; Ex. A). Thus, the Supplemental Response was verified, and the verifier was subsequently deposed.

## III. MDX'S PRIMARY COUNSEL MADE REASONABLE INQUIRY BEFORE CERTIFYING SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2

*Fed. R. Civ. P.* 26(g)(1)(A) requires that counsel sign each discovery response to certify, *inter alia*, that to the best of counsel's "knowledge, information and belief, formed after reasonable inquiry . . . it is complete and correct as of the time it is made." It follows that counsel cannot be sanctioned for violating Rule 26(g) by an inaccurate or incomplete discovery response unless the court finds that, at the time the response was made, counsel had not made reasonable inquiry of the client with respect to the response's accuracy and completeness. *In re Byrd*, 927 F.2d 1135, 1137 (10th Cir. 1991), *following Insurance Benefit Adm'rs, Inc. v. Martin,*

3

871 F.2d 1354, 1360 (7th Cir. 1989); *S2 Automation LLC v. Micron Technology, Inc.*, 2012 U.S. Dist. LEXIS 1200097 *99-*100  (D.N.M. Aug. 12, 2012).  "The signing attorney is not required to certify the truthfulness of the client's response, only that he made a reasonable effort to ensure that his client provided all responsive documents and information." *Bernal v. All American Inv. Realty, Inc.*, 479 F. Supp.2d 1291, 1334 (S.D. Fla. 2006).   The standard is one of the objective reasonableness of counsel's dealing with the client. *In re Byrd*, *supra*.  Reasonableness depends, in turn, on the "number and complexity of the issues."  *S2 Automation LLC*, 2012 U.S. Dist. LEXIS 1200097 at *99.

> Interrogatory No. 2 provides:
>
> With respect to any of version of MDx's Accused Products, using a claim chart, state in detail MDx's bases for any assertions of non-infringement of the patent in suit on a claim-by-claim, element-by element basis.  Your answer should include a statement of MDx's interpretation of each claim element, a statement whether MDx's Accused Products provide(s) such an element or an equivalent and, if not, an explanation how MDx's Accused Products operate or function differently than the claim element and a particularized statement why a component, feature or function of Accused Products is not a substantial equivalent of the pertinent claim element.

Stimpson Decl. Ex. A, page 2.

### A.     The Emails and Faxes

The Court found that the Supplemental Response to Interrogatory No.  2 was false because MDx later produced emails and faxes that contradicted it, and it criticized MDx and counsel for not performing queries that would disclose providers who edited three or more of the data elements (the "Three Element Queries").  However, counsel for MDx ***was not aware*** of the emails and faxes until much later, they were never covered by the

HG Infringement Contentions, and the answer found untrue related to the edits in light of the emails and faxes is correct.

As expressly stated in the Supplemental Response to Interrogatory No. 2 (page 2), MDx responded "***based on the Health Grades Infringement Contentions***", and then provided a lengthy answer. (Stimpson Decl. ¶ 12; emphasis added). Here, the reasonableness of the inquiry to MDx, and the verified response, are defined by the claims and Infringement Contentions in the litigation. The parties agreed that they would be governed by the Patent Rules of the Northern District of California. (Stimpson Dec. ¶ 4). Patent L.R. 3-1(b) requires that a plaintiff's Infringement Contentions identify for "each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ('Accused Instrumentality') of each opposing party of which the party is aware," and directs that "this identification shall be as specific as possible."

The purpose of the Local Patent Rules is to facilitate infringement cases by fixing at an early point the plaintiff's allegations of what has been infringed and how. Determining infringement is a two-step process. Before the court can determine as a matter of fact that a patent has been infringed, it must determine as a matter of law what the patent protects. This is a highly technical process that draws on the language of the patent claim and specifications, the history of the patent's prosecution, and relevant extrinsic evidence. *See Advanced Fiber Techs. Trust v. J&L Fiber Servs.,* 674 F.3d 1365, 1373 (Fed. Cir. 2012); *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129-30 (Fed. Cir. 2011). Local Patent Rule 3-1 requires the plaintiff patentee to state, at the outset of the case, what it alleges is being infringed and how, so

5

that the defendant is able to respond in discovery with respect to non-infringement. *See Sage Electrochromics, Inc. v. View Inc.,* 2013 U.S. Dist. LEXIS 127598 *4-*5 (N.D. Cal. Sep. 6, 2013). "The purpose behind Rule 3-1 is to require a plaintiff to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Freescale Semiconductor, Inc.*, 2010 U.S. Dist. LEXIS 91281 *4-*5 (N.D. Cal. Apr. 26, 2010); *accord InterTrust Techs. Corp. v. Microsoft Corp.,* 2003 U.S. Dist. LEXIS 22736 *8 (N.D. Cal. Dec. 1, 2003) ("The purpose of Patent Local Rule 3-1, however, is in fact to be nit-picky, to require a plaintiff to crystalize its theory of the case and patent claims.").

Under the Patent Local Rules, the scope of the defendant's discovery obligation is limited by the scope of the plaintiff's Infringement Contentions. *See Oplus Techs., Ltd. v. Sears Holdings Corp.,* 2013 U.S. Dist. LEXIS 145917, 37-38 (C.D. Cal. Oct. 2, 2013) (plaintiff bears the burden of identifying accused instrumentalities and may not seek discovery regarding others); *Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.*, 2007 U.S. Dist. LEXIS 90457, 8-9 (C.D. Cal. June 25, 2007) ("the Court is persuaded that the preliminary infringement contentions may narrow the scope of required discovery"); *Caritas Techs. Inc. v. Comcast Corp.*, 2006 U.S. Dist. LEXIS 94879, *14-15 (E.D. Tex. 2006) (applying the Eastern District of Texas' parallel local patent rules and holding that the plaintiff "only has the right to discover information regarding the alleged infringing service" that was specifically articulated in the preliminary Infringement Contentions, "not the right to discover information on whether it should assert a claim of infringement regarding other services.").

HG's Infringement Contentions state that the infringing method by which physicians provide data is by directly editing their own data through the vitals.com web portal. As the Infringement Contentions state, "MDx's website provides many opportunities for ***physicians to edit their own profiles***." (Stimpson Dec. ¶ 6 and Ex. B at 18-19, 79-80; emphasis added). Based upon that Contention, MDx and counsel focused on instances of physician edits directly through the web portal. (Stimpson Dec. ¶¶ 12-13).

In view of HG's Contentions and case law under the local patent rules, MDx's May 2012 Supplemental Response to Interrogatory No. 2 was prepared for those instances in which physicians directly revised their profile information on the Vitals.com web portal. It did not include editing of physician profiles by MDx, and it did not include physicians submitting data by fax or email with the request that MDx edit the profile, because neither was alleged to meet this claim element in the Infringement Contentions. (Stimpson Dec. ¶¶ 12-13). MDx properly did not search for discovery with respect to an alleged mode of infringement that HG did not raise. *See Caritas Techs. Inc.*, 2006 U.S. Dist. LEXIS 94879 at *15.

In the fall of 2013, the emails and faxes came to light.[1] Specifically, in September 2013, as part of an agreement between the parties to update discovery, MDx reran the queries it had used to respond to Interrogatory No. 2 in the Supplemental Response. One month earlier, HG

---

[1] In Health Grade's reply in support of its sanctions motion it alleged that MDx's counsel was aware of the faxes and emails earlier based on the testimony of MDx employee Larry West. However, Mr. West only testified that he thought MDx may communicate with physicians by fax, but he was not aware of what was being communicated and Health Grade's never followed up. (Stimpson Dec. Ex. H, pages 251-52). The web portal was the focus of the dispute, and so it did not occur to MDx's counsel (or, apparently, HG's counsel) that this could be significant.

7

had requested, for the first time, that MDx run an additional query to determine the number of physicians registered on the physician portal of Vitals.com.  MDx did so in good faith, even though the new query was requested more than a year after the close of discovery.  When that query was run with the prior queries, it disclosed an apparent anomaly – there were more edited physician profiles on Vitals.com than there were physicians who had registered on the site for direct access.  (Stimpson Dec. ¶¶ 14-15).

HG's counsel asked about the discrepancy, which was previously unknown to MDx or its counsel.  Upon further investigation, MDx learned that the total number of edited profiles included those edited by MDx based on information submitted by email or fax, as well as those directly edited by physicians on the website, while the number of registered physicians only included those who edited their profiles directly online.  (Stimpson Dec. ¶ 15).  As soon as MDx realized this, it informed counsel for HG, proceeded to produce the documents, and withdrew its motion for partial summary judgment.  (Stimpson Dec. ¶¶ 26-27).

Counsel made a reasonable inquiry based on the HG Infringement Contentions.  The fact that counsel did not discover the emails and faxes, should not be a basis for sanctions.

### B.    The Three Element Queries

The Court found that MDx, in providing the Supplemental Response to Interrogatory No. 2, should have run queries to determine if any provider had edited three or more of the data elements (the "Three Element Queries").  Sanctions Order, pp. 4-6.[2]

---

[2] HG knew that MDx had not run the Three Element Queries, and of course it knew that MDx filed a summary judgment motion relying on the Supplemental Response to Interrogatory No. 2. But HG did not seek sanctions ***until the emails and faxes surfaced***, and it never alleged that the

8

The Court ordered a response to Interrogatory No. 2. The only way to answer the question about whether any provider had edited three or more of the data elements, was to design queries that would analyze the database. We realize and respect that the Sanctions Order determined that the Three Element Queries should have been run, but in May 2012 counsel for MDx reviewed the case law in good faith and did not reach that conclusion in preparing the Supplemental Response. And MDx counsel was not informed by HG that it believed the Supplemental Response was deficient until the sanctions motion in October 2013. Indeed, counsel for HG did not even allege in opposing the summary judgment motion or otherwise, that MDx had an obligation to run the Three Element Queries in response to Interrogatory No. 2 – they only argued that the queries should have been run in response to the HG ***document requests***. Dkt. #405, p. 7. Therefore, MDx's attention was focused on the HG document requests; MDx was not intentionally turning a blind eye to Interrogatory No. 2.

Moreover, the queries that were run to respond to Interrogatory No. 2 were ***provided to counsel for HG***; they knew precisely what was (and what was not) run to respond to the interrogatory. Yet they sat silent – counsel for MD was never put on notice that HG believed the interrogatory required the Three Element Queries to be run. Because the scope of the queries that were run was disclosed to counsel for HG, and HG was aware that other queries could be (but were not) run, MDx and its counsel were not being or attempting to be misleading or deceptive.

---

response to Interrogatory No. 2 was in any way deficient because MDx did not run the Three Element Queries. Indeed, while HG did complain in opposing the summary judgment motion that the Three Element Queries were not run, it only based this complain on the HG ***document requests*** (and the Court seems to agree with MDx that document requests do not require these queries, Sanctions Order, p. 5). Dkt. # 405, pp. 5-6 (parts j, k, l).

9

Given the above circumstances, the preparation of the Supplemental Response in May 2012 and lack of a further supplement after May 2012 was not so unreasonable that counsel for MDx should be sanctioned.

## IV. THE INTERROGATORY RESPONSE AND HG POSITIONS

Within the scope of HG's infringement Contentions, the Supplemental Response was not misleading or inaccurate, and the first sentence the Court found to be "patently false" was (and is) factually accurate. (Stimpson Dec. ¶¶ 16-17).

The first sentence the Court found to be "patently false" is, "No physician has ever entered and/or modified any of the following information: age, years in profession, years in practice, or publications." Age is never edited by the physician in the web portal, either directly or indirectly. HG points to entry of a birth date while logging into the physician web portal, but that physician entry is never used to calculate age. MDx obtains publications only from PubMed, not physicians (publications communicated by physicians are never entered). Years in practice and years in profession are most closely represented in the Vitals website as "years of experience" (sometimes also referred to as years in practice – same as the claim element only in name, but different in substance). MDx obtains years of experience from a calculation, and the physician can never directly change years of experience (the calculation is based on certain physician–provided information and certain third-party information). (Stimpson Dec. ¶¶ 16-17).

The second sentence addressed in the Sanctions Order is "MDx currently has no knowledge of any physician who has entered and/or modified three or more of the [provider verified] information. (Stimpson Dec. ¶¶ 18-19). There were two underlying facts that resulted

10

in this sentence: (1) counsel for MDx was not aware of the emails and faxes at the time; and (2) the Three Element Queries were not run. (Stimpson Dec. ¶¶ 18-19). As for (1), the emails and faxes were not known because, based on the HG Infringement Contentions, such documents were never raised. *See* part III(A), *supra*. As for (2), in May 2012, the approach to the interrogatory response was based on our good-faith interpretation of the case law; and importantly, HG never raised any issue with the Interrogatory Response that would have informed MDx counsel that its good-faith interpretation of the case law was in dispute. *See* part III(B), *supra.*[3]

The reasonableness of MDx's search and the corresponding response is supported by HG's own actions in this case. First, the fact the Three Element Queries were not run was known to counsel for HG, and for the many months prior to the sanctions motion HG had no objection to the Interrogatory Response.[4] Second, the deposition testimony of HG's expert, Dr. Phillip Greenspun, confirms the limited manner in which HG is alleging that products fall under

---

[3] While this reconsideration motion is pending, MDx is complying with the Sanctions Order and is running queries and supplementing its response to Interrogatory No. 2. MDx has run a query for how many providers have three or more of the data elements designated as being from the provider, as directed by the Sanctions Order (Stimpson Dec. Ex J; result showing 18,918 out of 833,675 total providers). The number of reports that could meet these source requirements, we expect, will drop once the other claim elements are included in the analysis; and regardless of these data source elements, MDx believes none of the reports will meet all of the claim elements. These queries now being run in accordance with the Sanctions Order, however, do not reflect on the mindset of MDx or its counsel in May 2012 when the Supplemental Response to Interrogatory No. 2 was prepared.

[4] This is perhaps most directly analogous to key word searching in typical E-discovery efforts. If the producing party performs a key word search for documents, and tells the receiving party the key words used for the search, the receiving party should express any complaints or concerns about the scope of the search.

these patent claims.  On January 6, 2014, *after* the Sanctions Order was entered, he testified that physicians entering data directly was a "different" and "distinct" method from emails and faxes. Dr. Greenspun also testified, in connection with HG's allegation that the HG website is covered by the claims, that he too did not ask about physicians submitting their information by fax or emails.  Nor did he ask HG to run queries.  And even after learning that physicians had submitted information through faxes and emails to MDx, Dr. Greenspun rated their relevance at 1 out of 10 (1 being least relevant). (Stimpson Dec. ¶ 25).  And third, HG still has not amended its Infringement Contentions to include indirect editing. HG's continuing focus on direct edits confirms MDx's understanding that HG's infringement contentions have been limited to direct edits on the website by physicians.

Based upon the reasonable inquiry conducted by primary outside counsel, the verification by MDx, and the response (or lack thereof) from HG, MDx moved in good faith for summary judgment.  As the Court is aware, MDx withdrew its motion for summary judgment as soon as the emails and faxes surfaced.  (Stimpson Dec. ¶¶ 26-27).[5]

---

[5] MDx's local counsel, Terence Ridley of Wheeler Trigg O'Donnell, LLP, was not involved in the search or response to Interrogatory #2, the later production of documents, or the decision to file the summary judgment motion.  Therefore, even if there was some wrongdoing by counsel (there was not), there would be no basis for any discovery sanction against local counsel.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court reconsider and vacate that portion of the Sanctions Order that awards sanctions against counsel for MDx (and in any event excluding local counsel from the Sanctions Order), and grant such other and further relief as is just and proper. MDx respectfully requests a hearing to address the complicated factual issues involved.

Dated: January 17, 2014                                      Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson                                            Terence Ridley, Atty. No. 15212
Trent S. Dickey                                              Wheeler Trigg O'Donnell LLP
David C. Lee                                                 370 Seventeenth Street, Suite 4500
Vincent M. Ferraro                                           Denver, Colorado 80202
Sills Cummis & Gross P.C.                                    Tel: (303) 244-1800
30 Rockefeller Plaza                                         Fax: (303) 244-1879
New York, New York 10112                                     E-mail: ridley@wtotrial.com
Tel: (212) 643-7000
Fax: (212) 643-6500                                          *Attorneys for Defendant*
E-mail: sstimpson@sillscummis.com                            MDx Medical, Inc. d/b/a VITALS.COM
E-mail: tdickey@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: vferraro@sillscummis.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2014, I electronically filed the foregoing **MDX MEDICAL, INC.'S MOTION FOR RECONSIDERATION UNDER *Fed. R. Civ. P. 72* OF THE JANUARY 3, 2014 ORDER IMPOSING SANCTIONS AND FOR A HEARING** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Vincent Marc Ferraro**
  vferraro@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

                                             *s:/David C. Lee*