# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

      Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

## DECLARATION OF SCOTT D. STIMPSON
## IN SUPPORT OF MOTION FOR RECONSIDERATION

---

SCOTT D. STIMPSON, being of full age, hereby declares and states as follows:

1.     I make this declaration in support of Defendant MDx Medical, Inc.'s Motion For Reconsideration of the Order Granting-in-Part Health Grades' Motion for Sanctions (dkt. # 711), and for a hearing on the motion. Unless otherwise noted, the statements made herein are based on my personal knowledge.

2.     I am a Member of the firm of Sills Cummis & Gross P.C. and lead counsel for defendant and counterclaim plaintiff MDx Medical, Inc. ("MDx"). In that capacity, I oversaw the response of MDx to discovery requests and signed the certification required by *Fed. R. Civ. P.* 26(g) for those requests, including MDx's Supplemental Response to Health Grades' Interrogatory No. 2. A copy of MDx's Supplemental Response in attached as Exhibit A, and it was served on counsel for HG on May 10, 2012.

3.      I have been a patent attorney for nearly twenty-five years.  Over this time, I have handled numerous patent cases, as patent litigation has been the great majority of my practice.

**The Infringement Contentions**

4.      At the outset of this case, we agreed with counsel for Health Grades, Inc. ("HG") that patent local rules would be desirable.  We jointly requested this Court to adopt the patent local rules of the Northern District of California for this case, and the Court consented.

5.      This case was commenced in March 2011, and HG provided its initial infringement contentions in July 2011. Amended infringement contentions were filed on March 2, 2012.  Our conduct of discovery in this case has been guided by our experience with patent local rules.  Accordingly, our discovery approach did not address patent claims that were not asserted in the infringement contentions, and did not address accused instrumentalities not accused in the infringement contentions.

6.   HG's amended infringement contentions dated March 2, 2012 state as follows:

MDx receives the healthcare provider-verified information from healthcare providers. MDx's website provides doctors with the ability to send information to MDx. For example, MDx's website provides many opportunities for doctors to edit their own profiles. *See, e.g.,* Screenshot No. 5.

A copy of the relevant portion is attached as attached as Exhibit B.  This language is unchanged from HG's initial infringement contentions.

**The Supplemental Response to Interrogatory No. 2**

7.      I was responsible for directing MDx in responding to Interrogatory No. 2.  Local counsel was not involved in obtaining the information for or responding to Interrogatory No. 2, and was not responsible for any subsequent queries or document production.

8.     In responding to the interrogatory, MDx formulated search queries in May 2012 directed to information elements that physicians could enter or modify through Vitals.com, as part of the process of preparing a response to Interrogatory No. 2.  Those queries from May 2012 are attached as Exhibit C.  MDx's response to Interrogatory No. 2 was based in part on these queries performed in May 2012.

9.     The queries used in responding to Interrogatory No. 2 were provided to HG's counsel on May 31, 2012.   Exhibit D (see last page).

10.     MDx verified its Supplemental Response, and this was served on HG's counsel on June 4, 2012.  A copy of the verification is attached to the end of Exhibit A, and the correspondence providing the verification to counsel for HG is attached as Exhibit E.

11.     HG was given the opportunity to and did depose the MDx employee who verified the Supplemental Response, on June 5, 2012.

**The Emails and Faxes**

12.     Our Supplemental Response to Interrogatory 2 expressly stated that the response was "based on the Health Grades Infringement Contentions...."   Exhibit A, page 2.  Based on the language in HG's infringement contentions, our approach in preparing a response to Interrogatory No. 2 was that alleged infringement was directed to instances where physicians modified their information through the Vitals.com web portal.  Because HG's infringement contentions did not assert any other infringing way for physicians to modify information, we did not consider the possibility of submission of information by physicians through other media in directing the response to Interrogatory No. 2.

13.     Because of the focus on the HG Infringement Contentions, we did not know, at the time of the Supplemental Response to Interrogatory No. 2, that emails and faxes existed where providers had proposed changes to their profiles. Rather, we learned of them much later, in connection with discovery supplementation, based on an additional query requested by HG.

14.     The May 2012 queries were re-run in September 2013 as part of MDx's duty to supplement discovery. The queries from September 2013 are attached as Exhibit F. MDx confirmed the meaning of the May 2012 and September 2013 queries with counsel for Health Grades in correspondence attached as Exhibit G. In August 2013, counsel for Health Grades had requested, for the first time, that MDx run a query to determine the number of physicians who have registered with the physician portal in Vitals.com. Although this was a new request never sought before by Health Grades, and it came more than one year after close of fact discovery, MDx agreed to run the query. It too was run in September 2013. The result of this query is provided in Exhibit F, at Bates stamp MDX 0104924.

15.     This query provided an apparently anomalous result. In September 2013, the MDx query showed that 56,492 physicians, had "webedits" associated with their profiles on Vitals.com. These counts were, however, greater than the number of physicians who had registered with the physician portal on Vitals.com as of September 2013. At the request of HG's counsel, MDx investigated the discrepancy. After investigation, MDx determined that the discrepancy was due to information entered by MDx on behalf of physicians who sent their information to MDx by fax or email. These information entries were designated as "webedits", just like edits made by physicians directly through the physician portal on Vitals.com. The September 2013 queries for physicians with "webedits" picked up physicians who entered their

4

information directly through the physician portal, as well as physicians whose information was received at MDx by fax or email and subsequently entered into Vitals.com by MDx.  In contrast, the count of physicians who registered with the physician portal on Vitals.com only picked up physicians who entered their information directly through the physician portal.  The emails and faxes were thus discovered, and then produced.

**The Statements Found To Be False**

16.     In the Sanctions Order, the Court stated that the following sentence in the May 2012 Supplemental Response was "patently false":  "No physician has ever entered and/or modified any of the following information:  age, years in profession, years in practice, or publications."  Respectfully, I believe that there is a factual misunderstanding, because this statement was, and still is, true according to our investigations.

17.     The information we learned from our investigations is as follows:  Age is never edited by the physician, either directly or indirectly.  HG points to entry of a birth date while logging into the physician web portal, but that physician entry is never used to calculate age. MDx obtains publications only from PubMed, not physicians (publications communicated by physicians are never entered).  Years in practice and years in profession are most closely represented in the Vitals website as "years of experience" (sometimes also referred to as years in practice – same as the claim element only in name, but different in substance).  MDx obtains years of experience from a calculation, and the physician can never directly change years of experience (the calculation is based on certain physician–provided information and certain third-party information).

18.     The Sanctions Order also states that the following sentence in the Supplemental Response is "patently false":  "MDx currently has no knowledge of any physician who has entered and/or modified three or more of the [provider verified] information."  This statement was made because counsel for MDx was not aware of the emails and faxes.  The reason we did not know about the emails and faxes is explained above in paragraphs 12-15.

19.     This sentence was also made because, at the time, we did not run a query to determine providers who edited three or more of the data elements (the "Three Element Queries").  .  The only way to answer the question about whether any provider had edited three or more of the data elements, was to design queries that would analyze the database. We realize and respect that the Sanctions Order determined that the Three Element Queries should have been run, but in May 2012 we reviewed the case law in good faith and did not reach that conclusion in preparing the interrogatory response.

20.     In addition, as explained in more detail below, HG knew that we did not run the Three Element Queries, and never complained about the response to Interrogatory No. 2 until the sanctions motion in September 2013.  HG complained about the Three Element Queries much later in November 2012, in response to the summary judgment motion, and HG there never mentioned interrogatories, but instead argued that the Three Element Queries should have been produced in response to HG document requests.  We were thus never advised that HG had any dispute concerning obligation to run the Three Element Queries under Interrogatory No. 2, prior to the sanctions motion.

21.     Because we produced the queries that were the basis for our interrogatory response, HG was aware that that we did not run queries to determine providers who edited three or more.

22.     HG was aware, however, that the queries could be run.  For example, from the time that MDx's Chief Technology Officer, Larry West, was deposed in June 2012, HG knew that queries could be run that would have found modifications of profiles through provider submissions.  A copy of the relevant portion of Mr. West's testimony is attached as Exhibit H at 41:22 - 43:9.

23.     In his July 2012 report, HG's expert, Dr. Phillip Greenspun, acknowledged that MDx could, but had not, run such queries.  A copy of the relevant portions of his report is attached as Exhibit I.

24.     Despite knowing that the Three Element Queries were not run in providing the response to Interrogatory No. 2, at no point between May 2012 and the sanctions motion in October 2013 did HG inform MDx that MDx's response to Interrogatory No. 2 was insufficient.

**The Greenspun Testimony**

25.     Our views of the scope of HG's infringement claim, and our positions above,  are consistent with the deposition testimony of HG's technical expert, Dr. Greenspun, which was taken on January 6, 2014, after the briefing on the sanctions motion.  A copy of the relevant portions of Dr. Greenspan's deposition transcript is attached hereto as Exhibit J.  At pages 20-21, Dr. Greenspun agreed that physicians entering data directly was a "different" and "distinct" method from emails and faxes.  Dr. Greenspun also testified, in connection with HG's allegation that the HG website is covered by the claims, at pages 171-76, that he too did not ask about

physicians submitting their information by fax or emails. Nor did he ask HG to run queries. Pages 177-79. And even after learning that physicians had submitted information through faxes and emails to MDx, Dr. Greenspun rated their relevance at 1 out of 10 (1 being least relevant). Pages 176-77.

**The Summary Judgment Motion**

26.     When MDx filed the Motion for Summary Judgment of No Infringement in November 2012 (dkt. # 367/368), counsel for MDx did not know about the faxes and emails. Because of the scope of HG's infringement contentions, discussed above, nothing prompted MDx personnel or counsel to inquire about editing through faxes or emails.

27.     When the discrepancy was discovered in September 2013, and subsequent investigation led to the faxes and emails, MDx withdrew the motion because it realistically could not succeed with these documents still to be produced and reviewed.

**New Query Results**

**28.**     While this reconsideration motion is pending, MDx is complying with the Sanctions Order and is running queries and supplementing its response to Interrogatory No. 2. MDx has run a query for how many providers have three or more of the data elements designated as being from the provider. Exhibit J.

**Conclusion**

29.     My conduct and MDx's conduct of discovery in this case have always been in good faith. The fax and emails from physicians did not emerge until September 2013 when the discrepancy was discovered. MDx's response to Interrogatory No. 2 in May 2012 was based on my understanding at the time that the physician portal on Vitals.com was the sole focus on the

issue of physician-provided information.  That understanding was based, in turn, on the language of HG's infringement contentions.  The inquiry I caused to be made to prepare MDx's Supplemental Response to Interrogatory No. 2 was reasonable in light of that understanding, and it was made in good faith.  There was never any attempt, and never any intent, by MDx or its counsel to provide any false statement or to deceive anyone.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 17, 2014

_____
SCOTT  D. STIMPSON