**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO MDX MEDICAL, INC.'S MOTION *IN LIMINE* TO PRECLUDE HEALTH GRADES, INC. OFFERING CERTAIN EVIDENCE OR TESTIMONY REGARDING VALIDITY**

---

Plaintiff Health Grades, Inc. ("Health Grades"), by its undersigned counsel, respectfully submits its Response in Opposition to MDX Medical, Inc.'s ("MDx") Motion *In Limine* To Preclude Health Grades, Inc. from Offering Certain Evidence or Testimony Regarding Validity (the "Motion") (Doc. #685).

I. <u>SUMMARY OF RESPONSE</u>

MDx's Motion should be denied. Separate and apart from its numerous procedural infirmities, the Motion should be denied because Health Grades properly and timely disclosed evidence and arguments relating secondary considerations of nonobviousness and the nexus between this evidence and the claimed invention. Indeed, the evidence of secondary considerations relates to healthgrades.com and/or vitals.com, both of which practice the claimed inventions as detailed in claim charts Health Grades served on MDx at the beginning of discovery in this lawsuit (July 2011). Further, given the substantial evidence provided by Health

Grades, the nexus between Health Grades' evidence and the secondary considerations is a question of fact for the jury.

MDx's primary complaint is that some information relating to the secondary considerations nexus was disclosed in response to Interrogatory No. 8 (which sought Health Grades' responses to MDx's invalidity contentions) as opposed to Interrogatory No. 4 (which sought Health Grades' contentions regarding secondary considerations of nonobviousness). This objection elevates form over substance. These interrogatories sought overlapping information and Health Grades' disclosure in connection with Interrogatory No. 8, deposition exhibits, contentions, MDx documents, trial exhibits, and expert reports was sufficient to put MDx on notice of Health Grades' theories relating to nonobviousness.[1]

Moreover, MDx's argument lacks merit because it relies on a sound bite from Judge Boland that is taken out of context. When Judge Boland stated that *the parties* were "stuck with" the Interrogatory answers, he was not singling-out, cautioning, or admonishing Health Grades, nor was he precluding the parties from supplementing their interrogatory responses at a later date. To the contrary, he expressly ruled that Health Grades' answers to Interrogatory Nos. 2 and 4 were sufficient and noted that the answers "could be subject to proof one way or the other." (Doc. #136 at p. 15:20-16:5 & p. 22:10-18.) Accordingly, MDx's Motion should be denied and Health Grades' proof of secondary considerations and nexus should go to the jury.

**II.      ARGUMENT**

     **A. Procedural Posture.**

The local rules of this Court require that "a motion involving a contested issue of law

---

[1]     Health Grades includes citations to substantial evidence in the record, but not all of the evidence upon it which it will ultimately rely.

shall state under which rule or statute it is filed . . . ."  D.C.COLO.LCivR 6.1C.  Not until the last

page of its Motion does MDx state the rule or statute under which the Motion was filed—Fed. R.

Evid. 402 (relevance) and Fed. R. Evid. 403 (unfair prejudice).  Heath Grades will address these

issues and refer very generally to the other matters mentioned by MDx.[2]

    **B.** **Health Grades Has Carried Its Burden of Identifying Sufficient Evidence to Demonstrate Secondary Considerations of Nonobviousness and Their Nexus to U.S. Pat. No. 7,752,060.**

MDx's Motion challenges the sufficiency of evidence of secondary considerations

disclosed during discovery as well as their nexus to U.S. Pat. No. 7,752,060 ("the '060 Patent").

But the Motion does little in terms of revealing what has been disclosed and whether it is legally

sufficient evidence of secondary considerations and their nexus to the '060 Patent.  Health

Grades' early discovery responses identified the specific secondary considerations of

nonobviousness that relate to its own website (www.healthgrades.com) and MDx's accused

website (www.vitals.com) and disclosed detailed claim charts mapping these websites to the

'060 patent claims at issue in this lawsuit.  (July 1, 2011 infringement contentions claim chart

---

[2]    The bulk of MDx's Motion is devoted to attacking the fulsomeness and timeliness of information that MDx received during discovery, rather than analyzing the challenged evidence under these rules.  Sometimes, MDx challenges the sufficiency of the evidence ("there is no legally sufficient evidence of the alleged secondary consideration").  (Motion at p. 6.)  Other times, MDx complains about timeliness of disclosure.  (Motion at p. 17.)  In either case, Health Grades is left to guess whether the Motion is a motion for summary judgment under Fed. R. Civ. P. 56 or a motion for sanctions under Fed. R. Civ. P. 37(c).  If the Motion is indeed a motion for summary judgment, it was filed too late as the deadline expired on November 2, 2012 (Doc. #360).  Moreover, summary judgment is particularly indefensible given that "objective evidence of secondary considerations is a factual dispute underlying obviousness."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1369 (Fed. Cir. 2013).  If the Motion is in fact a motion to preclude under Fed. R. Civ. P. 37(c), Health Grades is entitled to notice so that it can properly defend itself, including defenses that an alleged failure to disclose was substantially justified or harmless.

(Doc. #148-1); July 19, 2011 Supp. Infringement Contentions (Exhibit 1 hereto) & Ex. E claim chart (mapping healthgrades.com to the asserted claims) (Exhibit 2 hereto).)  Health Grades has further disclosed evidence and arguments that prove at least a prima facie case of secondary considerations of nonobviousness with a nexus to the '060 Patent, which are sufficient to shift the burden of proof back to MDx.

"Nexus" is the legally and factually sufficient connection between the secondary consideration at issue and the patented invention.  *Demaco Corp. v. F. Von Langstorff Licensing Ltd.*, 851 F.3d 1387, 1392 (Fed. Cir. 1988).  Health Grades, as the patentee, bears the burden of coming forward with sufficient evidence to constitute a prima facie case of the requisite nexus. *Id.*  "A prima facie case of nexus is generally made out when the patentee shows both that there is [a secondary consideration of nonobviousness], and that the thing (product or method) that is [the subject of the secondary consideration] is the invention disclosed and claimed in the patent." *Id.*  Further, "[w]hen the patentee has presented a prima facie case of nexus, the burden of coming forward with evidence in rebuttal shifts to the challenger."  *Id.* at 1393.

Health Grades' arguments about secondary considerations of nonobviousness are not new.  During discovery, Health Grades identified and supported several secondary considerations of nonobviousness.  (Health Grades' Responses to MDx's First Set Of Interrogatories dated July 20, 2011 ("Response to First Set of Interrogatories") at pp. 11-15 (Doc. #685-3); Health Grades' Second Supplemental Response to Interrogatory No. 8 dated January 26, 2012 ("Supp. Response to Interrogatory No. 8) at p. 38 (Doc. #685-5); *see also* Rebuttal Report of Philip Greenspun Regarding Invalidity of U.S. Patent No. 7,752,060 by MDx Medical September 17, 2012 ("Greenspun Rebuttal Report") at pp. 37-44 (addressing secondary

considerations) (Doc. #338-10).  For example, in Supplemental Response to Interrogatory No. 8 submitted on January 26, 2012, Health Grades disclosed the following secondary considerations and explained why they are related to the claimed invention:

> (1) the commercial success of Health Grades' website physician reports that are covered by the patent claims (see Exhibit E claim chart served on MDx as part of supplemental infringement contentions); (2) the commercial success of MDx's website physician reports that are covered by the patent claims (see infringement contentions, Exhibits A-D); (3) evidence of long felt but unresolved needs, including the many websites with information about physicians available on the Internet in the early 2000s, but the failure of any of them to include all of the claimed elements; (4) the failure of others, including the owners of the above-cited prior art references to create a system that meets the claimed invention; (5) the skepticism of others who were hesitant and/or believed it would be a bad idea to include patient ratings of physicians within an information system (because among other reasons, physicians don't like patient ratings and/or advertisers don't like patient ratings and/or it is difficult to build a patient rating system that is accurate and not slanderous) with other kinds of information relating to physicians; (6) praise by others in the media and the industry; (7) teaching away by others, including that described above; (8) copying of the invention by competitors, including MDx; and (9) testimony of facts witnesses, such as the inventors and Jeff La Pointe, and experts.

(Supp. Response to Interrogatory No. 8 at pp. 37-38 (Doc. #685-5).)  Additionally, pursuant to an agreement between the parties,[3] Health Grades supplemented its discovery on October 31, 2013 including its response to Interrogatory No. 4, wherein it identified the actual trial exhibits it intends to use at trial as evidence of these secondary considerations.  (Supplemental Responses

---

[3]     *See* Email from S. Stimpson dated August 19, 2013 (Ex. 3 hereto) (confirming parties' agreement to make supplemental productions by October 29, 2013) (highlighting added); Email from K. Kostolansky dated August 21, 2013  (Ex. 4 hereto) (confirming that the supplement would cover "all discovery") (highlighting added); Email from D. Lee dated September 19, 2013 (Ex. 5 hereto) ("Regarding the supplemental productions both sides are making by 10/29"); Email from D. Lee dated October 29, 2013 (Ex. 6 hereto) (confirming agreement to make the supplemental productions by October 31, 2013).

to First Set of Interrogatories dated October 31, 2013 at pp. 2-5 (Doc. #685-6).)[4]  These

secondary considerations are discussed in detail below.

**(1)     Commercial Success of Products Covered by the '060 Patent.**

Both healthgrades.com and vitals.com have experienced significant commercial success –

this is not in dispute.  However, the parties dispute whether or not their success relates to, or

results from their use of the patented invention.  This is a question of fact that should be decided

by the jury.  *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 885 (Fed. Cir.

1998) (reversing grant of summary judgment of obviousness because there were disputed issues

of fact relating to secondary considerations of nonobviousness)*; Apple, Inc. v. Samsung Elecs.

Co.*, No. 11-CV-01846-LHK, 2012 U.S. Dist. LEXIS 90889 (N.D. Cal. June 29, 2012) (denying

summary judgment because Apple produced evidence from which a reasonable jury could

conclude there is a nexus between the asserted secondary considerations and the patents in suit);

*Exelis Inc. v. Cellco P'ship*, No. 09-190-LPS, 2012 U.S. Dist. LEXIS 158842 (D. Del. Nov. 6,

2012) (denying motion to exclude expert's opinion relating to secondary considerations).

The commercial success of these sites is evidenced by dramatic increases in revenue

derived from advertising on the websites as well as significant increases in the number of people

who visit these sites and their market share in this industry.  For example, the total number of

users, visits, and page views of healthgrades.com increased 130% between 2005 (before Health

Grades started using the claimed invention as construed by this Court) and 2007 (after Health

---

[4]     The bulk of these trial exhibits, particularly MDx's internal documents on the issue of
copying, were produced by MDx.  Fed. R. Civ. P. 26(e) (no duty to supplement a disclosure or
discovery response if the information was made known to the other party during discovery or in
writing); Fed. R. Civ. P. 37(c) (no exclusion of evidence if nondisclosure was substantially
justified or harmless).  MDx's Motion does not and cannot identify a single document or exhibit
listed by Health Grades that was late disclosed.

Grades started using the claimed invention).  (Response to First Set of Interrogatories at pp. 14-15 (Doc. #685-3); *see also* Greenspun Rebuttal Report at pp. 42-44 (Doc. #338-10) (opining on commercial success of Health Grades website).

The evidence of commercial success and nexus for nonobviousness is also relevant to several issues relating to damages, including demand for the patented product and several of the *Georgia-Pacific* factors for determining a reasonable royalty. Indeed, Health Grades' damages expert report also discussed the commercial success of healthgrades.com and vitals.com:

> The use of the patented features has yielded many visitors and related advertising revenue for both HealthGrades and Vitals. My report and **Attachment 1** demonstrate that HealthGrades has realized significant revenues and profits from the use of its '060 patent. According to comScore data presented at **Attachment 3a**, HealthGrades is one of the market leaders in healthcare provider data with approximately 9.143 million unique visitors in May 2012.1 This placed it in the top 5 health related website according to the same report. Also, according to the same report, Vitals had 3.244 million unique visitors placing it in the top 10. The high web traffic drives advertising revenue and the high margins on the product indicators of the popularity of the patented features.

(Expert Report of David Hall dated July 13, 2012 (Doc. #411-1) (emphasis in original); *see also* Attachments 11 & 12 at pp. 55-56.)[5]

With regard to nexus, Health Grades served MDx with claim charts mapping the '060 Patent claims to its own website at healthgrades.com and to vitals.com. Health Grades also notified MDx in writing that there was a nexus between the commercial success and these websites *because* the websites practice the claimed invention. (8/5/11 Email from J. Vazquez at p. 2 ("Health Grades has provided MDx with a claim chart on nexus.") (Doc. #685-4).)  Health

---

[5]     Health Grades has listed the comScore data and financial information from both parties on its trial exhibit list and will use this information to support arguments about secondary considerations of non-obviousness as well as damages.  *See, e.g.* Trial Exhibit Nos. 379, 380 (Doc. #585-2); *see also* Supp. First Response at pp. 3-4 (Doc. #685-6).

Grades again disclosed its intent to rely on the claim charts to show nexus for secondary

considerations in its discovery response in January 2012.  (Supp. Response to Interrogatory No.

8 at pp. 37 (Doc. #685-5).)  Health Grades' technical expert reaffirmed this point:

> [t]he secondary considerations of non-obviousness demonstrate that there is no
> obviousness of the asserted claims. Dr. Cooper contests these facts arguing that
> there is no "nexus" to tie Health Grades' accolades and commercial success to the
> patent claims. I disagree. Health Grades' website has been extraordinarily
> successful as detailed in Health Grades' response to MDx's Interrogatory No. 4. .
> . . The website is covered by at least the independent claims 1 and 15 as detailed
> in Exhibit E to Health Grades' infringement contentions (dated July 19, 2011). I
> agree with, adopt, and incorporate this claim chart and analysis into my report.
> Therefore, it is my opinion that there is a nexus between this success and the
> patent claims, and further, that this success demonstrates that the patent claims are
> not invalid as obvious.

(Greenspun Rebuttal Report at ¶¶142-143 (Doc. #338-10).)

Despite the foregoing evidence that healthgrades.com is practicing the '060 patent, MDx

disingenuously argues that "there is no evidence" that Health Grades compiled the information

from physicians and from third parties as required by the claims.  (Motion p. 16.)  This argument

directly contradicts MDx's own invalidity contentions and expert report on invalidity, wherein

MDx asserts that Health Grades collected the claimed information from physicians and third

parties and used this information to create physician reports on healthgrades.com.  (*See* Cooper

Report at p. 11 (citing Health Grades' press release that states: HealthGrades recently began

adding two new sets of data to its Physician Quality Reports': . . .  *detailed physician and*

*practice information from physicians themselves*, which includes practice *philosophy*,

*subspecialty information*, teaching positions, *published peer-reviewed articles*, number of procedures performed, among other items. …") & pp. 16-17 (Doc. #338-1).)[6]

Moreover, Health Grades' damages expert report further supports the nexus between the commercial success and the claimed invention by showing that similar healthcare websites that did not practice the claimed invention did *not* have the same amount of success as healthgrades.com and vitals.com (who do practice the claimed invention):



(Supplemental Expert Report of David Hall dated December 5, 2013 at pp. 3-4) ("In my July 2012 Report and in my deposition, I identified information that indicates how both Health Grades and Vitals promoted their websites by highlighting '060 patented features and indicated how the market responded to Health Grades and Vitals promotion of patented features. . . .This is a 33% *increase* in market share for the two companies' promoting and employing the '060 patented features.  The online companies identified by Vitals' expert that do not employ (or

---

[6]      Health Grades admits that it compiles the claimed types of physician-verified information, but asserts that this is not relevant to invalidity because it started doing so *after* the critical date used for qualification as "prior art" under 35 U.S.C. §102.

promote) the '060 patent features dropped in market share from 48% to 31% during this same time period—a 35% *decline*.") (Doc. #677-3).)

Thus, Health Grades has furnished evidence of both commercial success and nexus between this success and the claimed invention.  The claim charts alone are more than sufficient to demonstrate a prima facie case of nexus and to shift the burden back to MDx to come forward with rebuttal evidence.  *Demaco*, 851 F.3d at 1392- 1393.  MDx's Motion should be denied.

**(2)     Copying of healthgrades.com.**

MDx copied the physician reports on healthgrades.com. (Pretrial Order at pp. 4 & 23-24 (Doc. #544) ("In 2008, MDx launched its website: www.vitals.com. Vitals.com provides substantially the same type of physician reports as Health Grades.  Like the Health Grades reports, the Vitals.com reports include: 1) third-party verified information, 2) information from physicians, 3) patient ratings of physicians; and 4) comparison ratings of physicians.  The similarity is not coincidental -- numerous MDx documents reveal that MDx deliberately tracked and copied Health Grades."); *see also* Excerpts From Health Grades' 30(b)(6) Deposition p. 193:3-10 (stating "I can say with near certainty that [MDx has] [] copied from Health Grades" and explaining why), pp. 197:20-198:15 (detailing how MDx copied Health Grades' comparison ratings) (Ex. 7 hereto).)  This issue was identified early in discovery and is relevant not only to secondary considerations of nonobviousness, but also to Health Grades' claim for willful infringement and damages, among other things.  (Response to First Set of Interrogatories at p. 11 (Doc. #685-3) (identifying as evidence of nonobviousness: "The copying of the claimed invention by Defendant, including the website www.vitals.com. . . ."); Supp. Response to Interrogatory No. 8 at p. 38 (Doc. #685-5) (secondary considerations include "copying of the

invention by competitors, including MDx"); Summary Judgment Response at p. 1 (Doc. #201)

("MDx documents admit that it copied Health Grades, Inc.'s on-line information system, which

is the subject of Health Grades' patent-in-suit") & Ex. 4 (Doc. #201-14); *see also* (Doc. #302-2);

(Doc. #302-3).)

An inference of copying is proven through 1) access to the patented product; and 2)

substantial similarity of the accused product to the patented product. *Iron Grip Barbell Co. v.*

*USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004). That is the "nexus" that is required.

*See id.* These two elements are met here.

First, MDx admittedly had access to Health Grades website. (Motion at p. 7.) Indeed,

MDx produced many documents that show it was constantly monitoring healthgrades.com

because it wanted to build a "similar service" to healthgrades.com. Emails between Mitch

Rothschild (CEO of MDx) and John Connolly (Castle Connolly Medical) state as much:

> Our agreement calls for a report card on doctors similar to Healthgrades to compete with
> them. Where is that? We have a lot to work on together.

(Trial Ex. 205 at p. 3 (MDX0042692-694) (cited in Greenspun Report) (Ex. 8 hereto); *see also*

Trial Ex. 186 at p. 7 (MDX0013861-67) (Dep.

Ex. Rothschild 21) (Ex. 9 hereto).) Further,

MDx's internal documents include screenshots

and other information from healthgrades.com

such as the example shown on the right. (Trial

Ex. 236 at p. 6 (Dep. Ex. Rothschild 24, Cutler

24, West 14) (Doc. #201-14).[7]  These internal MDx documents and other documents

conclusively demonstrate that MDx had access to the patented physician reports on

healthgrades.com.

Second, the physician reports on vitals.com are substantially similar to the physician

reports on healthgrades.com.  As discussed above, Health Grades produced claim charts mapping

the claims-in-suit to both its own website and MDx's website.  By definition, if Health Grades'

website includes all of the patented elements (*see, e.g.,* Ex. 2 hereto) and MDx's website

includes all of the patented elements (*see, e.g.,* Doc. #148-1), the accused product is substantially

similar to the patented product.  Moreover, a simple comparison of these claim charts with one

another shows that the mapped features are substantially similar.  This evidence is sufficient to

raise an inference of copying.  *Iron Grip*, 392 F.3d at 1325.

Health Grades identified which of these documents it intends to use at trial by listing trial

exhibit nos. in its supplemental response to interrogatory no. 4.  (Supp. Response to First Set of

Interrogatories at p. 3) (Doc. #685-6).) To the extent that the Motion complains that this

information was not specifically listed in the original response to Interrogatory No. 4, and Health

Grades' supplemental response to this interrogatory was not timely, this puts form over

substance.  *Coleman v. Keebler Co.,* 997 F. Supp. 1102, 1107 (N.D. Ind. 1998) ("The duty to

supplement imposed by Fed. R. Civ. P. 26(e)(1) does not require an application of form over

substance.")  Health Grades' supplemental response to Interrogatory No. 4 submitted on October

31, 2013 only confirmed the information that MDx was already aware about.  MDx had

sufficient notice of these documents because MDx produced them in discovery and Health

---

[7]        There are many similar documents – too many to address in any detail here.  *See, e.g.,*
Supp. Response to Interrogatory No. 4 at p. 3 (Doc. #685-6).)

Grades used them as deposition exhibits during the depositions of MDx's witnesses, they were relied on by Dr. Greenspun, and cited in various motions and responses throughout this lawsuit. *Gipson v. Southwestern Bell Tel. Co.*, No. 08-2017-EFM-DJW 2009 U.S. Dist. LEXIS 111947, 8-10 (D. Kan. Sept. 28, 2009); *see also* Fed. R. Civ. P. 26(e) Advisory Committee Notes ("There is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process . . . ."); *see also* 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2049.1 (3d. ed 2010) ("there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition").[8]

MDx also cannot now claim foul about any good faith supplementation made by Health Grades when it made "patently false" statements (Doc. #711 at p. 3) in response to this Court's order to supplement its own interrogatory response and only recently produced approximately 34,000 pages related to the verified information claim element of the '060 patent.  MDx cannot present any valid argument for why it should be able to use these documents while preventing Health Grades from relying upon documents it disclosed in its agreed upon supplementation that was to cover "all discovery."  (Ex. 4 hereto.)[9]

---

[8]    As reflected in the deposition cites through this Response, Health Grades' 30(b)(6) Deposition testimony on June 13, 2012 served the purpose of supplementing its Interrogatory responses related obviousness.

[9]    As is clear from the communications cited above, beginning in August 2013 the parties conferred extensively to develop a schedule to supplement expert reports and rebuttals, infringement and invalidity contentions, depositions, and to supplement their respective discovery responses.  Health Grades' supplemental response to Interrogatory No. 4 was made on October 31, 2013, pursuant to the parties' agreement.  And while MDx complains that Health Grades should have supplemented earlier, Health Grades supplemented in accordance with the

In sum, Health Grades has disclosed enough evidence to make a' prima facie case of copying with nexus to the '060 patent and thus to shift the burden of coming forward with evidence in rebuttal to MDx.  *Id.* at 1393.  The Motion should be denied.

**(3)      Praise of healthgrades.com and vitals.com.**

Health Grades identified numerous media articles and client testimonials praising Health Grades' website and MDx's website, both of which are covered by the '060 patent claims as discussed above.  (Response to First Set of Interrogatories at pp. 11-14 (Doc. #685-3); Supp. Response to First Set of Interrogatories at pp. 3-5 (Doc. #685-6); *see also* Rebuttal Greenspun Report at pp. 42-43 (citing Time magazine article praising Health Grades' website and explaining how this praise relates to the elements of the asserted claims of the '060 patent).)  For example, Time Magazine selected Health Grades as one of the 50 Best Websites in 2011 relating specifically to the physician reports that are covered by the '060 patent claims.  (Greenspun Rebuttal Report at ¶¶141-142; *see also* Supp. Response to First Set of Interrogatories at pp. 3-5 (Doc. #685-6) (listing awards and press coverage praising healthgrades.com).)  Vitals.com has won several awards for its physician reports as well.  (*See id.* (listing awards and press coverage praising vitals.com).)

---

agreement.  In MDx's October 31, 2013 supplemental production, MDx produced numerous materials it clearly could have produced earlier.  For example:  MDX 0106611, Capital BlueCross License Agreement dated June 15, 2012;  MDX 0107049, email regarding Aetna Agreement dated September 19, 2012; MDX 0106565, Business Overview dated October 2012; MDX 0107060 and MDX 0107121, emails dated November 16 and 26, 2012, regarding data elements for Aetna Agreement; MDX 0107122, email dated May 8, 2013, regarding termination of Aetna Agreement;  MDX 0106584, Castlight Agreement dated July 1, 2013.  Given that the parties agreed to supplement their discovery responses by October 31, 2013, and that MDx used this agreement to finally produce supplemental responsive materials it obtained back in June, September, October and November of 2012, and in May and July of 2013, MDx cannot be heard now to complain about Health Grades' supplementation.

Regarding nexus, Health Grades' claim chart shows that its website is protected by the '060 Patent and therefore "is the invention disclosed and claimed in the patent." *Demaco*, 851 F.3d at 1392. Likewise, Health Grades has provided claim charts showing that vitals.com is covered by the claims and therefore "is the invention disclosed and claimed in the patent." *See id.* As such, Health Grades has met its burden to present a prima facie case of nexus, which shifts the burden of coming forward with evidence in rebuttal to MDx. *Id.* at 1393. The Motion should be denied.

### (4)   Skepticism, Unexpected Results, Long-Felt Need, Failure of Others, and Teaching Away.

During discovery, Health Grades disclosed its intent to rely on evidence showing that there was industry belief that rating physicians[10] was a bad idea because of a fear this would lead to inaccurate or slanderous ratings. (Motion, Ex. E, p. 37; *see also* Greenspun Rebuttal Report at pp. 37-42 (opining on industry skepticism of employing comparison ratings).)

Indeed, MDx's own witness, Jeff LaPointe, testified that the physician-information website he created in 2004/2005 did not display content written by users or user opinions (e.g. "user-generated content") for several reasons, including concerns over how to get fair and accurate ratings of physicians. (LaPointe Dep. at pp. 79:20-81:15 (Ex. 10 hereto); *see also* Supp. Response to Interrogatory No. 8 at p. 37 (citing to Mr. LaPointe's deposition testimony).

Several articles and TV reports further support the fact that there was industry skepticism about rating doctors including:

---

[10]   MDx argues that patient ratings of physicians were already in the prior art. (Motion at p. 11.) Not true. MDx cites the Drucker report for this proposition, but the Drucker Report is not old enough to qualify as "prior" art under 35 U.S.C. §102, nor does it contain comparison ratings as defined by the Court in the Markman Order.

- Trial Ex. No. 289 is a video clip from a segment called "Housecall: Rating Doctors Online" that aired Good Day Atlanta (Fox 5) and states that doctors were skeptical about being rated by patients because of concerns about disgruntled patients, issues of slander, and anonymity, but noting that despite this skepticism both healthgrades.com and vitals.com have become "leading" physician rating sites, and concluding that the "Internet is here to stay" and everybody should get on board.  (cited in Response to Interrogatory No. 4 at p. 14 (Doc. #685-3).

- Trial Exhibit 287 is an article produced by MDx that discusses the initial skepticism about rating doctors but concludes that the actual results of doctor ratings sites like vitals.com have been very positive:

  > Some physicians—like Greenbrae, Calif., plastic surgeon Kimberly Henry, MD, who is suing her online critics—are up in arms about websites that allow consumers to rate their doctors online. Giving consumers free rein to anonymously post potentially libelous comments, they say, has disastrous consequences for physicians' reputations.
  >
  > . . . .
  >
  > "There's been a lot of fear and concern about this but it's naïve to think you can litigate your way out of it," said Stewart Gandolf, founding partner of Healthcare Success Strategies, an Irvine, Calif.-based health care marketing company. "The world has changed and doctors don't get a special pass."
  >
  > . . . .
  >
  > Recent research corroborates Mr. Gandolf's advice. A study that surveyed 33 rating sites found that while use of the sites is still limited, 88% of posted reviews are positive. In addition, the authors noted, most complaints were about non-clinical issues, such as wait times or lack of parking, and could be addressed without violating patients' privacy.
  >
  > "Our findings may indicate that, just like other aspects of the doctor-patient relationship, [rating physicians online] is not the same as rating a restaurant or hotel," said Tara Lagu, ACP Member, lead author of the study published online May 13, 2010 in the *Journal of General Internal Medicine*. "If someone fixes your roof you may never think of it again, but if someone cures you of cancer, you may think of it every day for the rest of your life. Patients want to share positive reactions about their doctors because they feel so strongly about it."

  (Colwell, Janet, "Should doctors worry when patients rate them online?" December 31, 2010 (MDx 0062920-924).)

- Trial Exibit 286 is an article from USAToday that states:



(Painter, Kim, "Online ratings irk doctors," USA Today (Aug. 31, 2008) (MDx 0097754) (highlighting added).)

Given the industry skepticism and belief that physician ratings were a poor idea, Health

Grades' success was certainly an unexpected result.  (Supp. Response to Interrogatory No. 8 at p. 14 (Doc. #385-2).)  Contrary to MDx's arguments, this skepticism relates directly to the technical merit of the claimed invention, namely whether physician ratings would provide potential patients with accurate and useful information to assist them in comparing and selecting physicians.  Moreover, the cases cited at p. 11 of the Motion are not on point because they relate to obviousness based on a combination of prior art references, but MDx is not relying on a combination.  (MDx's Opposition to Health Grades' Motion for Summary Judgment of No Invalidity at pp. 38-39 (Doc. #406).)  Indeed, none of the references relied on by MDx included comparison ratings of human healthcare providers.

Long-felt need is demonstrated by documents MDx itself produced, which show that consumers craved the information that Health Grades is now providing.  (*See e.g.* Trial Ex. 286 (MDX 0097754) ("Considering a new doctor?  Hoping to learn more about a doctor you already see?  Or maybe you'd like to praise or pan one.") (Doc. #582-2).)  Although consumers craved this information, prior websites failed to satisfy this long felt need by failing to include the information now provided by Health Grades.  (Supp. Response to Interrogatory No. 8 at pp. 37-38 (Doc. #585-2.)  Indeed, Health Grades' expert Dr. Greenspun will testify that that the technology needed to build the claimed invention (e.g. relational database management systems and database backed websites) existed for many years before Health Grades invented the information systems that are covered by the '060 patent:

> The deeper problem with Dr. Cooper's sweeping characterizations of the material in the '060 Patent as "obvious" is that, if it were obvious, someone would have built a substantially similar system in the mid-1990s. The Health Grades site uses a conventional relational database management system, developed in the 1970s. The Health Grades site uses a conventional Web server machine and HTTP server program, both of which were mature technologies in the early 1990s. There were

people using conventional Web servers and RDBMSes in the mid-1990s for health care (e.g., I myself built a Webbased electronic medical record system for Boston Children's Hospital in 1994; the RDBMS used was Oracle). There were millions of consumers hooked up to the Internet in the mid- 1990s. A person of ordinary skill in the art of building Web applications in 1996 was just as skilled as a person of ordinary skill in the art in 2006. If the patented features of the '060 system had been obvious to a person of ordinary skill in the art in 2006, they would have been equally obvious to a person of ordinary skill in the art in 1996 and Dr. Cooper would be able to find prior art references that anticipate the claims.

(Greenspun Rebuttal Report at ¶65, p. 16 (Doc. #338-10).) Yet nobody built the patented invention until Health Grades did many years later. (Exhibit 7, pp. 32:8-33:3 (explaining that the reason that Health Grades filed the patent was because it "created a very unique platform to assist consumers in educating themselves on providers . . . . there was no one else that was doing that").) Indeed, Jeff LaPointe compiled a competitive analysis file in 2004 that included printouts of all of the physician-information websites that were publicly available at that time. (Trial Ex. 284 – UCHC Competitive Analysis and LaPointe Dep.) Yet none of these 2004 websites combined comparison ratings of human healthcare providers with the other types of information required by the '060 patent claims (i.e., physician-verified and third party verified information). (Supp. Response to Interrogatory No. 8 at pp. 13-15 (addressing documents with "UCHC" bates labels) (Doc. #385-2).)

Regarding nexus, all of this information relates to whether or not it would have been obvious to combine ratings of physicians with other types of physician information in a physician information website to create the claimed invention. This issue relates directly to the claim language of the '060 patent and is central to MDx's obviousness defense. Thus, there is a clear nexus between this evidence and the claimed invention. Moreover, as discussed above, this evidence relates to healthgrades.com and vitals.com, both of which practice the claimed

invention.  This is sufficient to demonstrate the required nexus.  *Demaco*, 851 F.3d at 1392.

Finally, MDx complains that Health Grades' evidence of teaching away was not disclosed in the original response to Interrogatory No. 4. But it was disclosed in a supplemental response to Interrogatory No. 8, which sought Health Grades' response to MDx's invalidity defense.  Thus, as discussed *supra* at pp. 13-14, this disclosure was more than sufficient.

## III.    CONCLUSION

The Motion should be denied.  During discovery, Health Grades identified and supported the secondary considerations it intends to rely on at trial, through its interrogatory responses, its deposition exhibits, its expert reports, its summary judgment briefs, and through identifying trial exhibits from Final Pretrial Order, all of which were disclosed during discovery, and many of which were produced by MDx itself.  Health Grades' evidence of secondary considerations, a factually disputed issue, is sufficient and was timely disclosed.

Respectfully submitted this 21st day of January, 2014.

LEWIS ROCA ROTHGERBER LLP
*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Adam L. Massaro Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@lrrlaw.com
       kkosto@lrrlaw.com
       jvazquez@lrrlaw.com
       amassaro@lrrlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2014, I electronically filed the foregoing **HEALTH GRADES, INC.'S RESPONSE IN OPPOSITION TO MDX MEDICAL, INC.'S MOTION *IN LIMINE* TO PRECLUDE HEALTH GRADES, INC. OFFERING CERTAIN EVIDENCE OR TESTIMONY REGARDING VALIDITY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Vincent Ferraro, Esq.
David C. Lee, Esq.
Trent Dickey, Esq.
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
E-mail: sstimpson@sillscummis.com
        vferraro@sillscummis.com
        dlee@sillscummis.com
        tdickey@sillscummis.com

Terence M. Ridley
Wheeler Trigg O'Donnell, LLP
1801 California Street, #3600
Denver, CO  80202-2617
Email: ridley@wtotrial.com

*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Adam L. Massaro Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@lrrlaw.com
        kkosto@lrrlaw.com
        jvazquez@lrrlaw.com
        amassaro@lrrlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*