IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE HEALTH GRADES, INC. FROM OFFERING CERTAIN EVIDENCE OR TESTIMONY REGARDING VALIDITY**

---

Defendant and Counterclaim plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, hereby submits this reply memorandum in support of its motion *in limine* to preclude certain arguments and evidence from Health Grades, Inc. ("Health Grades") relating to the validity of the asserted patent (U.S. Patent No. 7,752,060 ("the "'060 patent"); attached to MDx's motion as Exhibit A, Dkt. No. 685-1) (the "Motion"; Dkt. No. 685).

## I.    ALLEGATIONS OF COPYING

As revealed by pages 10-14 of Health Grades' Response in Opposition to the Motion ("HG's Opposition"; Dkt. No. 725), Health Grades cannot support it's allegations of copying based on its interrogatory responses. Pursuant to Federal Circuit law, Plaintiff's "evidence" is not only grossly insufficient to submit this issue to the Jury, it is also presented far too late.

-1-

### A. The Alleged Copying Support Was Not Disclosed During Discovery

Even if the positions in HG's Opposition were direct proof of copying, which they are not, Health Grades cannot with impunity refuse to timely identify this evidence in response to MDx's proper discovery requests, and ignore express warnings from both the Court and defense counsel about the failure to disclose. Other than bald references to "copying", **_none_** of the alleged copying evidence recited in HG's Opposition is found anywhere in Health Grades' discovery responses. As such, even if it had any substantive merit, it should all be excluded. *See, e.g., Grabau v. Target Corp.*, 2008 U.S. Dist. LEXIS 122899 (D. Colo. Mar. 6, 2008) (excluding evidence disclosed five days after the deadline for supplementing disclosures); *Gallegos v. Swift & Co.*, 2007 U.S. Dist. LEXIS 5440, *1-2 (D. Colo. Jan. 25, 2007) (excluding evidence disclosed in an amended response to an interrogatory nearly ten months after the close of fact discovery and less than three months before trial); *see also Saint Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*, 666 F. Supp. 2d 820, 825-26 (N.D. Ohio 2009) (absent proof by non-moving party that the failure to produce was harmless or substantially justified, exclusion is mandatory); *Monsanto Co. v. Bayer Bioscience N.V.*, 2005 U.S. Dist. LEXIS 46068, *30-32 (E.D. Mo. Oct. 28, 2005) (precluding evidence of secondary considerations not disclosed during discovery); *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, 1996 U.S. Dist. LEXIS 17361, *27 (N.D. Ill. 1996) (excluding new arguments presented after close of discovery).

Health Grades claims, at page 12 of its Opposition, that it satisfied its discovery obligations by identifying some documents for MDx in its supplemental response to Interrogatory 4, provided **_October 31, 2013_** (well more than a year after the close of fact

discovery).  Health Grades asserts that its **_one sentence_** on copying in this supplemental response cures all its prior failures to disclose, because it "list[s] trial exhibit nos."  HG's Opposition, at 12.  But Health Grades' response only says "*see*, *e.g.* trial exhibit nos. 95, 184-245."  Exhibit F to the Motion, Supplemental Response to Interrogatory No. 4, at 3.  Health Grades cannot seriously contend, that by globally referencing **_63 trial exhibits_**, more than a year after the close of fact discovery, it adequately responded to an interrogatory served years ago seeking copying evidence "in full and complete detail."  This response comes far too late and is completely devoid of even the slightest shred of detail.  Excluding such evidence does not put "form over substance" as Health Grades argues.  We are on the verge of trial and evidence and expert reports are finished.  MDx has no idea what in these 63 documents Health Grades intends to reference as evidence of copying, or how Health Grades intends to tie that alleged copying to the patent claims to establish the required nexus.[1]

### B. The Alleged Evidence of Copying Is Legally Insufficient

Despite its barren interrogatory responses, in response to this motion Health Grades now recites a variety of alleged support for its allegations.  These Health Grades' newly-minted arguments include (1) its allegation that MDx practices some elements of the claims (HG's Opposition, at 10 and 12); (2) reference to carefully-selected snippets of previously-uncited deposition statements of its employee Mr. Neal (HG's Opposition, at 10); (3) its earlier use of the

---

[1] Health Grades' argument at page 13 of its Opposition that the parties agreed on a time to supplement (e.g., new damages numbers, new contracts, etc.) and, therefore, MDx somehow agreed that Health Grades could conceal all its arguments and evidence until many months after the close of discovery, is disingenuous.  So too is its reference to an Order of Magistrate Boland that is currently subject to MDx's reconsideration motion (Dkt. No. 720).

word "copy" (HG's Opposition, at 10-11); and (4) internal documents of MDx (HG's Opposition, at 11-12). Each is addressed below.

The allegation that MDx is using some elements of the '060 patent's claims is not evidence of copying under Federal Circuit law. *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004) ("Not every competing product that arguably falls within the scope of a patent is evidence of copying. Otherwise every infringement suit would automatically confirm the nonobviousness of the patent.").

As for Health Grades' deposition transcripts, the transcript does nothing to help Health Grades. In fact, Health Grade's witness (like Health Grades' interrogatory response) was unable to give any specific testimony on copying. Rather, he expressly stated: "I don't have direct evidence [of copying]"; and when asked if he had any specific facts he simply stated that he had not done the analysis. Portions of the Deposition Transcript of John Neal, dated June 13, 2012, attached hereto as Exhibit K, at 195. When he was pushed about his general statement of MDx copying the claims of the '060 patent, the only thing he mentioned is MDx's display of the results on the search results page – a feature not meeting any claim element. As Health Grades cropped these portions of the transcript, all the relevant pages are attached hereto as Exhibit K, pages 195-98.

Health Grades' references to its bald use of the words "copy" and "copying" in its interrogatory response do nothing to advance its cause – they are simply self-serving and there are no specifics at all. The internal MDx documents say nothing about copying – they merely show a few pages (out of many thousands produced) that reference MDx's competitor, Health Grades. Further, Health Grades' claim that there is "substantial similarity" merely because the

-4-

MDx website is alleged to have some of the claim elements is legally insufficient for an allegation of copying, as Health Grades' own case law confirms. *Iron Grip*, 392 F.3d at 1325 (infringement does not equate to copying).

## II.     ALLEGED SKEPTICISM, UNEXPECTED RESULTS AND LONG-FELT NEED

With regard to alleged skepticism and unexpected results, Health Grades cites a variety of documents for the proposition that no one wanted to rate doctors for fear of doctor backlash. HG's Opposition pp. 15 -18.  Even if this evidence had been timely disclosed to MDx or submitted with its interrogatory responses, it is not a secondary consideration, and Health Grades should not be allowed to present this argument at trial.   Moreover, these documents and videos are dated years after Health Grades' alleged invention date of February 2006, and years after Health Grades launched the patented product in the summer of 2005 – they cannot show "skepticism" or "unexpected results" when they describe the situation years after the patented product was launched.

Patent rights are focused on ***technical advances*** – not business decisions of whether or not to implement known alternatives.  Health Grades' one sentence at page 18 of its Opposition that this "relates directly to the technical merit of the claimed invention" is entirely conclusory and nonsensical – no one ever questioned whether ratings technically ***could*** be provided, and Health Grades cites no evidence of such.  Indeed, all of Health Grades' evidence indicates that people in the industry were well aware of the potential usefulness of including patient ratings online well before the priority date of the '060 patent, but did not do so simply because of the potential backlash from the doctors.  That is, patient ratings were not included in certain prior art reports as a business decision, not because others in the industry were not aware that it could be

done.  The Federal Circuit has made it quite clear that business decisions, as in the case here, are completely irrelevant to the obviousness determination.  *See, e.g., Friskit, Inc. v. RealNetworks, Inc.*, 306 Fed. Appx. 610, 617-18 (Fed. Cir. 2009) (failure to combine due to market forces is not relevant to the obviousness issue as they present no evidence of technological challenges); *Dystar Textilfarben GmbH v. C.H. Patrick Co.,* 464 F.3d 1356, 1371-72 (Fed. Cir. 2006) ("business judgment" not relevant to obviousness issue); *Orthopedic Equipment Co., Inc. v. United States*, 702 F.2d 1005, 1013 (Fed. Cir. 1983) ("technological incompatibility" is the focus of this secondary consideration).    Health Grades' own statement on page 15 of the Opposition that it "disclosed its intent to rely on evidence showing that there was industry belief that rating physicians was a ***bad idea***" demonstrates the point – a "bad idea" or not, it was an known idea nonetheless that existed well before the priority date of the '060 patent.

As for the alleged long felt need, Health Grades argument is that (allegedly) no one had done this before.  That proves nothing – the secondary consideration of "long felt need" requires proof of a ***need***.  At page 18 of its Opposition, Health Grades quotes one sentence, from one document produced by MDx, supposedly showing a "craving" of consumers for the patented invention.  But this sentence says nothing of the sort, and was never identified by Health Grades in its discovery responses.  Moreover, it is dated years after Health Grades' alleged invention date, and years after Health Grades launched the patented product in the summer of 2005 – so how can it possibly show a "need" when it is describing the situation years after the patented product was launched?

Health Grades does not even attempt to show evidence of alleged "failures of others" or "teaching away", and so it should be precluded from making those arguments, too.

-6-

### III. <u>ALLEGED PRAISE BY OTHERS</u>

Health Grades merely references articles about its website and the Vitals.com website, and baldly concludes that these entire websites are the alleged invention of the '060 patent. HG's Opposition at 14-15. Health Grades does not even address the many features of the websites (some the focus of these articles) that are not covered by the claims of the '060 patent, such as hospital ratings and reports.

Federal Circuit precedent establishes that analyses like those of Health Grades are not sufficient. *Inventio AG v. Otis Elevator Co.,* 497 Fed. Appx. 37, 42-43 (Fed. Cir. 2012) (reversing district court determination of non-obviousness and dismissing alleged secondary considerations evidence: "Inventio did not link the sales or praise directly to the patented feature as opposed to [the overall product] more generally"); *see also Bayer Healthcare Pharm., Inc. v. Watson Pharm., Inc.*, 713 F.3d 1369, 1377 (Fed. Cir. 2013) ("bare journal citations and self-referential commendations fall well short of demonstrating true industry praise"). As such, Health Grades should be precluded from presenting such evidence to the jury as it is irrelevant to the question of obviousness.

### IV. <u>ALLEGED COMMERCIAL SUCCESS</u>

Health Grades argues at page 6 of its Opposition that the reasons for the commercial success should be decided by the jury. But this is a motion *in limine*, and the point of the motion is to preclude arguments that were not disclosed, have no support, or are irrelevant. It is not an answer, as Health Grades suggests, to just throw everything to the jury and see what happens.

Health Grades next argues at pages 6-7 that there was success, and that the websites practice the '060 patent's claims.  But the mere fact that some part of these websites might practice the patent claims is a far cry from properly disclosing how the patented elements ***drove the success***.  For commercial success to have relevance, the alleged success must be "due to the merits of the claimed invention."  *J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997).  Health Grades has provided no evidence on how the alleged patented features of either party's website drove its success.

Health Grades references its damages expert report as alleged evidence that Health Grades' and Vitals' websites were successful due to the patented features of the '060 patent.  HG's Opposition, at 9-10.  But this argument is illusory, as he did nothing more than identify websites that he believes were unsuccessful, and merely speculate that they must not have been successful because they didn't infringe the claims of the '060 patent.  This argument is not only conclusory, it fails to address the elephant on the table:  if, as everyone agrees, Health Grades' and Vitals' websites had ***many non-patented features***, where is the required proof that the allegedly ***patented*** features drove the success?  There is no such evidence and accordingly this argument should be excluded.  *See, e.g., Metso Minerals, Inc.*, 526 Fed. Appx. at 998 (reversing district court finding that claims were non-obvious:  "Metso provides no evidence connecting the commercial success of these screeners to the claimed advances of the '618 Patent"; "[o]ur case law clearly establishes that the patentee must establish a nexus between the evidence of commercial success and the patented invention"); *Friskit, Inc.*, 306 Fed. Appx. at 617 ("Friskit failed to show that the success of those products was attributable to the subject matter that it contends is nonobvious.").

Health Grades also fails to show that its website is even practicing the '060 patent at all, and it cites to no evidence about the current Health Grades website. The MDx proofs that Health Grades was practicing the invention *in the prior art* says nothing about what Health Grades is doing today, and any success of the prior art is irrelevant in any event. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) (patentees cannot take credit for features that were "known in the prior art.").

## V.  CONCLUSION

For all the foregoing reasons and for reasons set for in its Motion, MDx respectfully requests that the Court preclude Health Grades from introducing any evidence or testimony at trial of alleged secondary considerations of non-obviousness and copying of the '060 patent.


Dated: February 7, 2014                                       Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson                                             Terence Ridley, Atty. No. 15212
Trent S. Dickey                                               Wheeler Trigg O'Donnell LLP
David C. Lee                                                  370 Seventeenth Street, Suite 4500
Vincent M. Ferraro                                            Denver, Colorado 80202
Sills Cummis & Gross P.C.                                     Tel:  (303) 244-1800
30 Rockefeller Plaza                                          Fax:  (303) 244-1879
New York, New York 10112                                      E-mail: ridley@wtotrial.com
Tel: (212) 643-7000
Fax: (212) 643-6500                                           *Attorneys for Defendant*
E-mail: sstimpson@sillscummis.com                             MDx Medical, Inc. d/b/a VITALS.COM
E-mail: tdickey@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: vferraro@sillscummis.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2014, I electronically filed the foregoing **MDX MEDICAL, INC.'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE HEALTH GRADES, INC. FROM OFFERING CERTAIN EVIDENCE OR TESTIMONY REGARDING VALIDITY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Vincent Marc Ferraro**
  vferraro@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

*s:/     Vincent M. Ferraro*