# EXHIBIT V



## UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/551,471 | 07/17/2012 | David G Hicks | 40476.0002USC3 | 7642 |

23552          7590          04/05/2013
MERCHANT & GOULD PC
P.O. BOX 2903
MINNEAPOLIS, MN 55402-0903

| EXAMINER |
|---|
| NGUYEN, TRANG T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3686 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/05/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

HG233128

| | Application No.<br>13/551,471 | Applicant(s)<br>HICKS ET AL. | |
|---|---|---|---|
| **Office Action Summary** | Examiner<br>TRANG NGUYEN | Art Unit<br>3686 | AIA (First Inventor to File)<br>Status<br>No |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>17 July 2012</u>.

☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL.**    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) <u>21-53</u> is/are pending in the application.

5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>21-53</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on <u>17 July 2012</u> is/are:  a)☒ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

a)☐ All   b)☐ Some \*  c)☐ None of the:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

\* See the attached detailed Office action for a list of the certified copies not received.

**Interim copies:**

a)☐ All   b)☐ Some   c)☐ None of the:  Interim copies of the priority documents have been received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Information Disclosure Statement(s) (PTO/SB/08)
Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413)
Paper No(s)/Mail Date. _____ .

4)☐ Other: _____.

HG233129

Application/Control Number: 13/551,471                                         Page 2
Art Unit: 3686

## DETAILED ACTION

### *Status of Claims*

1.      This action is in reply to the application filed on 7/17/2012.

2.      Claims 21-53 are currently pending and have been examined.

## Double Patenting

3.      A rejection based on double patenting of the "same invention" type finds its

support in the language of 35 U.S.C. 101 which states that "whoever invents or

discovers any new and useful process ... may obtain a patent therefor ..."

(Emphasis added).  Thus, the term "same invention," in this context, means an

invention drawn to identical subject matter.  See *Miller v. Eagle Mfg. Co.*, 151

U.S. 186 (1894); *In re Ockert*, 245 F.2d 467, 114 USPQ 330 (CCPA 1957); and

*In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970).

A statutory type (35 U.S.C. 101) double patenting rejection can be overcome by

canceling or amending the conflicting claims so they are no longer coextensive in

scope.  The filing of a terminal disclaimer cannot overcome a double patenting

rejection based upon 35 U.S.C. 101.

4.      Claims 21 and 38 rejected under 35 U.S.C. 101 as claiming the same invention

as that of claims 1 and 15 of prior U.S. Patent No. 7,752,060.  This is a double

patenting rejection.

Application/Control Number: 13/551,471                                       Page 3
Art Unit: 3686

## Claim Rejections - 35 USC § 112

5.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

6.      Claims 25 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

**Claim 25** recites the limitations: "*if the past or current patient has not reached the maximum number of surveys, transmitting a confirmation e-mail to* <u>*the e-mail address provided*</u>".  There is insufficient antecedent basis for these limitations in the claims.

## *Claim Rejections - 35 USC § 103*

7.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

8.      The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

> 1.      Determining the scope and contents of the prior art.
> 2.      Ascertaining the differences between the prior art and the claims at issue.
> 3.      Resolving the level of ordinary skill in the pertinent art.

Application/Control Number: 13/551,471                                    Page 4

Art Unit: 3686

    4.    Considering objective evidence present in the application indicating obviousness or nonobviousness.

9.    Claims 21-30, 32, 33 and 35-37 are rejected under 35 U.S.C. 103 (a) as being unpatentable over Henley, Julian L. (US PGP 2003/0195838 A1) in view of Baker et al. (US PGP 2006/0161456 A1) and further in view of Martin et al. (US PGP 2004/0024618 A1).

**Regarding claim 21:**

Henley, as shown, discloses the following limitations:

*A computer-implemented method of providing healthcare professional information to potential patients, said method comprising:*

*(a) receiving, at a Web server computer operated by a service provider who provides a service for connecting healthcare professionals with the potential patients, a request for healthcare professional information, wherein the Web server computer comprises at least one computer processor and memory* (Henley – paragraphs 0013, 0016);

*(b) in response to the request for healthcare professional information, creating a results list using at least a portion of the healthcare professional information for one or more healthcare professionals* (Henley – paragraphs 0015, 0016, 0086, 0087)*, and wherein the healthcare professional information comprises:*

    Henley does not explicitly disclose the following limitations. However, Baker discloses:

    *(i) healthcare professional-provided information received from the one or more healthcare professionals, wherein the healthcare professional-provided information comprises three or more from the group consisting of: specialty*

HG233132

Application/Control Number: 13/551,471                                          Page 5
Art Unit: 3686

> *information, medical philosophy, gender, age, years in profession, years in*
>
> *practice, awards, honors, professional appointments, professional memberships,*
>
> *publications, languages, and hobbies* (Baker – paragraphs 0135, 0168-0170,
>
> 0177);

It would have been obvious to one of ordinary skill in the art, at the time of the invention, to have modified the system of Henley so as to have included specialty, gender and languages in the healthcare professional-provided information, in accordance with the teaching of Baker, in order to provide techniques for presenting information to patients that yield easily understood, yet statistically valid, rankings, in multiple scoring domains, in response to those patients' desire to find or compare medical providers associated with their particular medical condition or treatment needs, as well as other criteria (Baker – paragraph 0013) , since so doing could be performed readily and easily by any person of ordinary skill in the art, with neither undue experimentation, nor risk of unexpected results.

> Henley further discloses:
>
> *(ii) patient-provided information comprising patient ratings from one or more*
>
> *patients of the one or more healthcare professionals* (Henley – paragraphs 0017,
>
> 0125, 0127, 0137);
>
> *(iii) third party-verified information verified by an independent third-party, the*
>
> *third-party information comprises three or more from the group consisting of:*
>
> *board certification, licensure, disciplinary action information, medical school,*
>
> *medical internship, medical residency, and medical fellowship information;*

HG233133

Application/Control Number: 13/551,471                                    Page 6
Art Unit: 3686

Henley does not explicitly disclose the specific third party verified information as recited above. However, basic elements required in establishing proper credentialing information including: board certification and appropriate education and training such as graduation from an approved medical school and completion of an appropriate residency or specialty program are old and well known in the art as evidenced by Martin (paragraphs 0006-0007, 0022); It would have been obvious to one of ordinary skill in the art at the time of the invention to add this element for the specific third party verified information to the system of Henley to allow user to make adequately informed decision about provider selection. Furthermore, merely combining well known elements in the prior art with predictable results does not render an invention patentably distinct over such combination.

*(iv) a comparison rating for the one or more healthcare professionals* (Henley - paragraphs 0093, 0097-0098, 0107, 0114, 0128, 0137) *and* (Baker – paragraphs 0033, 0069, 0084, 0135, 0168-0171, 0207, 0288)

*(c) providing access to the results list over a computer network* (Henley – paragraphs 0030, 0086, 0088, 0090, 0107, 0137).

**Regarding claim 22:**

*The method as defined in claim 21, wherein the patient ratings are received from an on-line patient experience survey completed by the one or more patients of the one or more healthcare professionals and wherein the on-line patient experience survey is*

Application/Control Number: 13/551,471

Art Unit: 3686

Page 7

*completed on a Web site operated by the service provider* (Henley - Fig. 14; paragraphs 0016, 0030, 0033, 0037, 0097, 0098, 0107, 0114, 0128, 0137).

Henley does not explicitly disclose the survey is completed on a web site operated by the service provider. Baker's system includes a user interface (UI) which might be presented using an internet connection such as a web site (but alternatively might be presented at a specialized location, such as a patient's home or doctor's office) (paragraph 0016).

It would have been obvious to one of ordinary skill in the art at the time of the invention to add this element for completing the survey on a web site operated by service provider to the system of Henley/Baker/Martin because the individual elements were old and well known, they could have been combined utilizing known means and without significant modification to the existing system, and the combination would have yielded predictable results.

**Regarding claim 23** Henley further discloses:

*The method as defined in claim 21, wherein the one or more patients of the one or more healthcare professionals are past or current patients* (Henley - paragraphs 0016, 0033, 0037, 0059, 0093, 0098, 0107, 0114, 0125, 0128, 0137).

**Regarding claim 24** Henley further discloses:

*The method as defined in claim 22, wherein the patient-provided information is obtained through data collected through the method comprising:*

*receiving a response to a question from the on-line patient experience survey from the*

HG233135

Application/Control Number: 13/551,471                                    Page 8
Art Unit: 3686

*one or more patients; and*

*receiving an e-mail address from the one or more patients.*

(Henley - Fig. 13, 14 and 18; paragraphs 0016, 0033, 0037, 0059, 0093, 0098, 0107,

0114, 0128 and 0137).

Henley discloses an on-line user service feedback web-page is provided for acquiring

and maintaining comments and feedback from both service providers and their

patients/clients regarding the complexity and quality of services received or provided

(paragraph 0016 - Fig.13 and 14 shows that registered users must provide e-mail

address).

**Regarding claim 25:**

*The method as defined in claim 21, further comprising a method for verifying and*

*compiling the data, the method comprising:*

*determining whether a past or current patient has completed a maximum number of*

*surveys for a predetermined time period;*

*if the past or current patient has not reached the maximum number of surveys,*

*transmitting a confirmation e-mail to the e-mail address provided;*

*determining if the confirmation e-mail was successfully transmitted; and if the e-mail*

*was successfully transmitted, compiling the data provided by the past or current patient*

*with other relevant data in a company database comprised of healthcare professional*

*information.*

Henley discloses an on-line user service feedback web-page is provided for acquiring

and maintaining comments and feedback from both service providers and their

HG233136

Application/Control Number: 13/551,471                                      Page 9
Art Unit: 3686

patients/clients regarding the complexity and quality of services received or provided
(paragraph 0016 - Fig.13 and 14 shows that registered users must provide e-mail
address). E-mailing is also discloses throughout Baker's system and patient satisfaction
survey is also discloses by Baker (paragraphs 0084-0086, 0118).

It would have been obvious to one of ordinary skill in the art at the time of the invention
to add the detailed steps of verifying and compiling feedback data as recited in the claim
to the system of Henley/Baker/Martin in order to allow user to make adequately
informed decision about provider selection, since so doing could be performed readily
and easily by any person of ordinary skill in the art, with neither undue experimentation,
nor risk of unexpected results.

**Regarding claim 26** Henley further discloses:

*The method as defined in claim 21, wherein the access to the results list is obtained*
*through a predetermined Web page that provides search capabilities for a database*
*comprised of healthcare professional information of the one or more healthcare*
*professionals* (Henley - paragraphs 0015-0016, 0037, 0081, 0090 and 0107) see also
(Baker – paragraphs 0032, 0114, 0119, 0121).

**Regarding claim 27** Henley further discloses:

*The method as defined in claim 26, wherein the search capabilities permit a search*
*based on one or more from the group consisting of: name, medical specialty, gender,*
*state, city, procedure, diagnosis, procedure, and location criteria* (Henley – Fig. 8, 11,
12, 16; paragraphs 0082, 0091, 0083, 0114, 0126) (see also Baker - paragraphs 0135-
0140, 069).

Application/Control Number: 13/551,471                          Page 10
Art Unit: 3686

**Regarding claims 28 and 29:**

*The method as defined in claim 21, wherein the results list displays all of the healthcare professional information relating to the one or more healthcare professionals.*

*The method as defined in claim 21, further including displaying in the results list two or more of healthcare professional-provided information.*

(Henley – paragraphs 0086-0088, 0090, 0107, 0137 – "The system 16 may provide a registered prospective purchaser of medical services access to quality assurance data relating to the qualifications of the provider that are required in order to provide the particular medical service" and "a registered bidder using the professional services auction transaction system web-site would each be able to have access to information concerning a particular service provider via the common shared provider qualification/verification, procedure outcome and member feedback databases 302, 304.") Thus, the user has access to all healthcare professional information (using the system of Henley), even though Henley does not explicitly teach displaying all of the healthcare professional information. It would have been obvious to one of ordinary skill in the art at the time of the invention to add the detailed steps of verifying and compiling feedback data as recited in the claim to the system of Henley/Baker/Martin in order to allow user to make adequately informed decision about provider selection, since so doing could be performed readily and easily by any person of ordinary skill in the art, with neither undue experimentation, nor risk of unexpected results.

**Regarding claim 30:**

*The method as defined in claim 29, further comprising sending the results list to a*

Application/Control Number: 13/551,471                                      Page 11
Art Unit: 3686

*second device for displaying in the results list two or more third party-verified*

*information.*

Henley/Baker/Martin teaches the method of claim 29 as described above. Henley does

not explicitly teach sending results list to a second device for displaying two or more

third party-verified information. Baker (paragraphs 0119-0121 discloses: The

communication link 130 includes elements for <u>receiving data</u> from, and <u>sending data</u> to,

the medical provider workstation 112, the user workstation 122, and the evaluation

server 140). Furthermore, Baker (paragraphs 0141) teaches a screen is displayed in

response to user selecting the condition of CHF. Baker does not teach what type of (or

how many pieces of) information is listed on the screen display. However, it would have

been obvious to one of ordinary skill in the art at the time of the invention to add certain

information to the result list to the system of Henley/Baker/Martin because it is an

obvious design feature which allows user to make adequately informed decision about

provider selection. Furthermore, merely combining well known elements in the prior art

with predictable results does not render an invention patentably distinct over such

combination.

**Regarding claim 32:**

Henley/Baker/Martin teaches the method of claim 29 as described above. Henley

further discloses:

*The method as defined in claim 29, further including:*

*determining whether each of the one or more healthcare professionals is a member of*

*the on-line information service; and*

Application/Control Number: 13/551,471                                    Page 12
Art Unit: 3686

*providing one or more enhanced services for each of the members of the on-line information service* (Henley - paragraphs 0014-0016, 0039, 0114, 0137, 0142-0146 – wherein Henley discloses rewarding existing member professional service providers for the recruiting of prospective new service provider members and for training them in the use of the on-line auction transaction systems).

**Regarding claim 33:**

*The method as defined in claim 32, wherein the enhanced services comprise favorable positioning within the results list* (Henley - paragraphs 0014-0016, 0039, 0114, 0137, 0142-0146 – wherein Henley discloses rewarding existing member professional service providers for the recruiting of prospective new service provider members and for training them in the use of the on-line auction transaction systems). It is old and well known in the art for organizations or service providers to reward their members with extra (or enhanced) services. Even though Henley does not explicitly list "favorable positioning within the results list" as an example of the reward (or enhanced services), it is and obvious modification to the system of Henley to include "favorable positioning within the results list" in the reward (or enhanced services).

It would have been obvious to one of ordinary skill in the art at the time of the invention to add include favorable positioning within the results list to the system of Henley/Baker/Martin because the individual elements were old and well known, they could have been combined utilizing known means and without significant modification to the existing system, and the combination would have yielded predictable results.

**Regarding claim 35** Henley further discloses:

HG233140

Application/Control Number: 13/551,471                                    Page 13

Art Unit: 3686

*The method as defined in claim 21, wherein the one or more healthcare professionals are physicians* (Henley - paragraphs 0013, 0082, 0086, 106, 0107, 0121).

**Regarding claim 36** Henley further discloses:

*The method as defined in claim 21, wherein the independent third party is the information service provider* (Henley – Fig. 7; paragraphs 0081, 0082, 0090).

**Regarding claim 37** Henley further discloses:

*The method as defined in claim 36, wherein the information service provider verifies the third-party verified information by receiving it from an entity other than the one or more healthcare professionals* (Henley –paragraphs 0015, 0035, 0090-0092, 0107-0108, 0114, 0116, 0137).


10.     Claim 31 is rejected under 35 U.S.C. 103 (a) as being unpatentable over Henley, Julian L. (US PGP 2003/0195838 A1) in view of Baker et al. (US PGP 2006/0161456 A1) and further in view of Martin et al. (US PGP 2004/0024618 A1) and DeBruin-Ashton; Deborah J. (US 6,014,629 A).

**Regarding claim 31:**

*The method as defined in claim 29, further comprising sending the results list to a second device for displaying an advertisement for a healthcare professional adjacent to the results list.*

Henley/Baker/Martin teaches the method of claim 29 as described above. As to the limitation concerning sending the results list to a second device for displaying, it is rejected for similar reasons as given above with respect to claim 30.

Application/Control Number: 13/551,471                                        Page 14

Art Unit: 3686

Henley/Baker/Martin does not disclose displaying an advertisement for a healthcare professional adjacent to the results list**."** However, DeBruin-Ashton (Fig. 3A and 3B; column 3, line 49 to column 4, line 60) discloses: In addition, the invention may access database of <u>images and advertising materials which are to be printed in conjunction with the selection of physicians and mapping information</u>.  The images may include high quality, glossy color pictures of the health care service provider's logo, office building or other picture symbolizing the health care service provider **. "** Thus it is old and well known in the art to present advertising materials to patients and displaying information is and obvious variant to printing information on paper for presentation.

It would have been obvious to one of ordinary skill in the art at the time of the invention to add advertisement for a healthcare professional adjacent to the results list to the system of Henley/Baker/Martin because the individual elements were old and well known, they could have been combined utilizing known means and without significant modification to the existing system, and the combination would have yielded predictable results.


11.     Claims 34 are rejected under 35 U.S.C. 103 (a) as being unpatentable over
          Henley, Julian L. (US PGP 2003/0195838 A1) in view of Baker et al. (US PGP
          2006/0161456 A1) and further in view of Martin et al. (US PGP 2004/0024618
          A1) and Sameh, Joseph (US PGP 2004/0010423 A1).

**Regarding claim 34:**

Application/Control Number: 13/551,471                                    Page 15
Art Unit: 3686

Henley/Baker/Martin teaches the method of claim 29 as described above.

Henley/Baker/Martin may or may not teach the following limitation. However, Sameh discloses:

*The method as defined in claim 32, wherein the enhanced services comprise providing a hyperlink to an on-line appointment booking service* (Sameh - paragraphs 0048, 0050, 0086, 0093-0094).

It would have been obvious to one of ordinary skill in the art at the time of the invention to add this feature to the system of Henley/Baker/Martin because the individual elements were old and well known, they could have been combined utilizing known means and without significant modification to the existing system, and the combination would have yielded predictable results.

12.   Claims 38-53 are rejected under 35 U.S.C. 103 (a) as being unpatentable over Henley, Julian L. (US PGP 2003/0195838 A1) in view of Baker et al. (US PGP 2006/0161456 A1) and further in view of Martin et al. (US PGP 2004/0024618 A1) and Cook et al. (US PGP 2006/0080146 A1).

**Regarding claim 38:**

Henley, as shown, discloses the following limitations:

*A computer-implemented method of providing healthcare professional information to potential patients, said method comprising:*

*receiving, at a Web server computer, a request for information regarding a first healthcare professional, wherein the Web server computer comprises at least one computer processor and memory* (Henley – paragraphs 0013, 0016, 0086, 0087)*;*

HG233143

Application/Control Number: 13/551,471                                        Page 16
Art Unit: 3686

Henley does not explicitly disclose the following limitations. However, Baker discloses:

> *accessing healthcare professional-verified information about the first healthcare*
>
> *professional, wherein the healthcare professional-verified information is received*
>
> *from the first healthcare professional and comprises three or more from the*
>
> *group consisting of: specialty information, medical philosophy, gender, age,*
>
> *years in profession, years in practice, awards, honors, professional*
>
> *appointments, professional memberships, publications, languages, and hobbies*
>
> (Baker – paragraphs 0135, 0168-0170, 0177);

It would have been obvious to one of ordinary skill in the art, at the time of the invention, to have modified the system of Henley so as to have included specialty, gender and languages in the healthcare professional-provided information, in accordance with the teaching of Baker, in order to provide techniques for presenting information to patients that yield easily understood, yet statistically valid, rankings, in multiple scoring domains, in response to those patients' desire to find or compare medical providers associated with their particular medical condition or treatment needs, as well as other criteria (Baker – paragraph 0013) , since so doing could be performed readily and easily by any person of ordinary skill in the art, with neither undue experimentation, nor risk of unexpected results.

Henley further discloses:

> *compiling patient-provided information regarding the first healthcare professional,*
>
> *wherein the patient-provided information comprises patient ratings from one or*
>
> *more past or current patients of the first healthcare professional (Henley – Fig.*

Application/Control Number: 13/551,471                                    Page 17
Art Unit: 3686

> 13, 14 and 18; paragraphs 0016, 0033, 0037, 0059, 0093, 0098, 0107, 0114, 0128, 0125, 0127, 0137);
>
> *compiling information regarding the first healthcare professional verified by an independent third-party source,-wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;*

Henley does not explicitly disclose the specific third party verified information as recited above. However, basic elements required in establishing proper credentialing information including: board certification and appropriate education and training such as graduation from an approved medical school and completion of an appropriate residency or specialty program are old and well known in the art as evidenced by Martin (paragraphs 0006-0007, 0022); It would have been obvious to one of ordinary skill in the art at the time of the invention to add this element for the specific third party verified information to the system of Henley to allow user to make adequately informed decision about provider selection. Furthermore, merely combining well known elements in the prior art with predictable results does not render an invention patentably distinct over such combination.

Henley may or may not explicitly disclose the following limitation. However, Cook discloses:

Application/Control Number: 13/551,471                                    Page 18
Art Unit: 3686

> *creating a healthcare professional report on the first healthcare professional*
>
> *using the healthcare professional-verified information, the patient-provided*
>
> *information, and the information verified by the independent third-party source,*
>
> *wherein the healthcare professional report on the first healthcare professional*
>
> *includes a comparison rating of the first healthcare professional* (See at least
>
> paragraphs 0091,0343, 0358, 0375 and claim 21);
>
> Therefore, it would have been obvious to one of ordinary skill in the art, at the
>
> time of the invention, to have modified the system of Henley so as to have
>
> included creating a healthcare provider report, in accordance with the teaching of
>
> Cook, in order to allow user to make adequately informed decision about provider
>
> selection, since so doing could be performed readily and easily by any person of
>
> ordinary skill in the art, with neither undue experimentation, nor risk of
>
> unexpected results.

*providing access to the healthcare professional report on the first healthcare*

*professional over a computer network* (Henley – paragraphs 0030, 0086, 0088, 0090,

0107, 0137).

**As per claims 39-41:**

> **Claim 39:**
>
> *The method as defined in claim 38, wherein the healthcare professional report on*
>
> *the first healthcare professional comprises multiple pages connected via*
>
> *hyperlinks.*
>
> **Claim 40:**

Application/Control Number: 13/551,471                                     Page 19
Art Unit: 3686

> *The method as defined in claim 39, wherein a portion of the healthcare-*
>
> *professional verified information is displayed on a first page of the multiple pages*
>
> *of the healthcare professional report on the first healthcare professional.*

**Claim 41:**

> *The method as defined in claim 39, wherein a portion of the third-party verified*
>
> *information is provided in the healthcare professional report such that the portion*
>
> *of the third-party verified information is displayed on a first page of the multiple*
>
> *pages of the healthcare professional report on the first healthcare professional.*

Henley further discloses: paragraph [0112] "The various web-pages may be accessed, for example, by prospective bidders and service providers via the hyper-text links for obtaining specific information or performing a particular function."

Henley does not disclose the specific type of verified information being displayed on a first page of the multiple pages of the report. However, it would have been obvious to one of ordinary skill in the art at the time of the invention to add this feature to the system of Henley/Baker/Martin/Cook because it is an obvious design feature which allows user to view the most important information in order to make adequately informed decision about provider selection. Furthermore, merely combining well known elements in the prior art with predictable results does not render an invention patentably distinct over such combination.

Claim 42 recites substantially similar apparatus limitations to those of method claim 38 (repeats same limitations for another (or second) health care provider – and the

HG233147

Application/Control Number: 13/551,471                                    Page 20

Art Unit: 3686

combination of Henley/Baker/Martin/Cook discloses the search for (a list of) more than

one providers) and, as such, are rejected for similar reasons as given above.

**As per claims 43-45 and 49:**

>  **Regarding claim 43:**
>
>  *The method as defined in claim 42, further comprising:*
>
>  *displaying at least a portion of the report on the first healthcare professional on a*
>  *first Web page; and*
>
>  *displaying at least a portion of the report on the second healthcare professional*
>  *on the first Web page.*
>
>  **Regarding claim 44:**
>
>  *The method as defined in claim 42, further comprising:*
>
>  *displaying at least a portion of the report on the first healthcare professional on a*
>  *second Web page.*
>
>  **Regarding claim 45:**
>
>  *The method as defined in claim 44, further comprising:*
>
>  *displaying at least a portion of the report on the second healthcare professional*
>  *on a third Web page.*
>
>  **Regarding claim 49:**
>
>  *The method as defined in claim 48, further comprising:*
>
>  *displaying at least a portion of the report on the first healthcare professional on a*
>  *first Web page;*
>
>  *displaying at least a portion of the report on the second healthcare professional*

Application/Control Number: 13/551,471                                   Page 21
Art Unit: 3686

> *on the first Web page; and*
>
> *displaying at least a portion of the results list on the first Web page.*
>
> The limitations recited in the above claims are obvious design features to display information over several web pages and had been discussed in the rejection of claims 39-41.

It would have been obvious to one of ordinary skill in the art at the time of the invention to add these features to the system of Henley/Baker/Martin/Cook for the reasons given above with respect to claims 39-41.

**Regarding claim 46** Henley further discloses:

*The method as defined in claim 43, wherein the access to the healthcare professional report on the first healthcare professional is obtained through a predetermined Web page that provides search capabilities for a database comprised of healthcare professional information of the first and second healthcare professionals* (Henley - paragraphs 0015-0016, 0037, 0081, 0090 and 0107) see also (Baker – paragraphs 0032, 0114, 0119, 0121).

**Regarding claim 47** Henley further discloses:

*The method as defined in claim 46, wherein the search capabilities permit a search based on one or more from the group consisting of: name, medical specialty, gender, state, city, procedure, diagnosis, procedure, and location criteria* (Henley – Fig. 8, 11, 12, 16; paragraphs 0082, 0091, 0083, 0114, 0126) (see also Baker - paragraphs 0135-0140, 069).

**Regarding claim 48** Henley further discloses:

Application/Control Number: 13/551,471                                    Page 22

Art Unit: 3686

*The method as defined in claim 47, wherein the search of the database produces a*

*results list of one or more healthcare professionals satisfying the search criteria,*

*wherein the results list includes the first healthcare professional and the second*

*healthcare professional* (Henley – paragraphs 0086-0088, 0090, 0107, 0137) see also

(Baker – paragraphs 0032, 0114, 0119, 0121).

**As per claims 50-52:**

    **Regarding claim 50:**

    *The method as defined in claim 39, further comprising:*

    *determining whether the first healthcare professional is a member of the on-line*

    *information service; and*

    *if the first healthcare professional is a member of the on-line information service,*

    *providing enhanced services for the first healthcare professional.*

    **Regarding claim 51:**

    *The method as defined in claim 50, wherein the enhanced services comprise*

    *making report information on the member healthcare professional available at no*

    *charge to the potential patients.*

    **Regarding claim 52:**

    *The method as defined in claim 50, further comprising:*

    *providing a predetermined Web page that permits a search of a database*

    *comprised of healthcare professional information, wherein the search of the*

    *database produces a results list of one or more healthcare professionals*

Application/Control Number: 13/551,471                                          Page 23
Art Unit: 3686

> *satisfying a search criteria; and wherein the enhanced services comprise*
>
> *favorable positioning in the results list.*

It would have been obvious to one of ordinary skill in the art at the time of the invention to add these features to the system of Henley/Baker/Martin/Cook for the reasons given above with respect to claims 33.

**Regarding claim 53** Henley further discloses:

*The method as defined in claim 39, wherein the first and second healthcare professionals are physicians* (Henley - paragraphs 0013, 0082, 0086, 106, 0107, 0121).

Claim 13 recites substantially similar apparatus limitations to those of method claim 1 and, as such, are rejected for similar reasons as given above.

It would have been obvious to one of ordinary skill in the art at the time of the invention to add this feature to the system of Henley for the intended use as a matter of <u>obvious design choice</u>. In reLeshin, 125 USPQ 416.

### Conclusion

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

HG233151

Application/Control Number: 13/551,471                                    Page 24

Art Unit: 3686

Any inquiry of a general nature or relating to the status of this application or

concerning this communication or earlier communications from the Examiner should be

directed to **TRANG NGUYEN** whose telephone number is **(571) 270-5483.**  The

Examiner can normally be reached on Monday-Thursday 7:00AM - 5:30PM ET.

If attempts to reach the examiner by telephone are unsuccessful, the Examiner's

supervisor, **GERALD O'CONNOR** can be reached at **571.272.6787.**

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about PAIR, see *http://portal.uspto.gov/external/portal/pair*.

Should you have questions on access to the Private PAIR system, contact the

Electronic Business Center (EBC) at **866.217.9197** (toll-free).

Official replies to this Office action may now be submitted electronically by

registered users of the EFS-Web system.  Information on EFS-Web tools is available on

the Internet at: *http://www.uspto.gov/patents/process/file/efs/guidance/index.jsp*.  An

EFS-Web Quick-Start Guide is available at:  *http://www.uspto.gov/ebc/portal/efs/quick-*

*start.pdf*.

Alternatively, official replies to this Office action may still be submitted by any ***one***

of fax, mail, or hand delivery.  **Faxed replies should be directed to the central fax at**

**(571) 273-8300**.  Mailed replies should be addressed to "Commissioner for Patents, PO

Box 1450, Alexandria, VA  22313-1450."  Hand delivered replies should be delivered to

Application/Control Number: 13/551,471                                    Page 25

Art Unit: 3686

the "Customer Service Window, Randolph Building, 401 Dulany Street, Alexandria, VA

22314."

/T. N./
Examiner, Art Unit 3686
April 2, 2013

/SHEETAL R RANGREJ/
Primary Examiner, Art Unit 3686

HG233153

| | | | |
|---|---|---|---|
| ***Notice of References Cited*** | Application/Control No.<br>13/551,471 | Applicant(s)/Patent Under Reexamination<br>HICKS ET AL. | |
| | Examiner<br>TRANG NGUYEN | Art Unit<br>3686 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,014,629 A | 01-2000 | DeBruin-Ashton, Deborah J. | 705/2 |
| * | B | US-2003/0195838 A1 | 10-2003 | Henley, Julian L. | 705/37 |
| * | C | US-2004/0010423 A1 | 01-2004 | Sameh, Joseph | 705/2 |
| * | D | US-2004/0024618 A1 | 02-2004 | Martin et al. | 705/2 |
| * | E | US-2006/0080146 A1 | 04-2006 | Cook et al. | 705/002 |
| * | F | US-2006/0161456 A1 | 07-2006 | Baker et al. | 705/002 |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20130329

HG233154