# EXHIBIT Z

Case No. 1:11-cv-00520-RM-NYW   Document 749-6   filed 02/11/14   USDC Colorado   pg 1 of 4

# Chapter 2000  Duty of Disclosure

2000.01     Introduction
**2001    Duty of Disclosure, Candor, and Good Faith**
2001.01     Who Has Duty To Disclose
2001.03     To Whom Duty of Disclosure Is Owed
2001.04     Information Under 37 CFR 1.56(a)
2001.05     Materiality Under 37 CFR 1.56(b)
2001.06     Sources of Information
2001.06(a)   Prior Art Cited in Related  Foreign Applications
2001.06(b)   Information Relating to or From Copending United States Patent  Applications
2001.06(c)   Information From Related Litigation
2001.06(d)   Information Relating to Claims Copied From a Patent
**2002    Disclosure — By Whom and How Made**
2002.01     By Whom Made
2002.02     Must be in Writing
**2003    Disclosure — When Made**
2003.01     Disclosure After Patent Is Granted
**2004    Aids to Compliance With Duty of Disclosure**
**2005    Comparison to Requirement for Information**
**2010    Office Handling of Duty of Disclosure/Inequitable Conduct Issues**
**2012    Reissue Applications Involving Issues  of Fraud, Inequitable Conduct, and/or Violation of Duty of Disclosure**
2012.01     Collateral Estoppel
**2013    Protests Involving Issues of Fraud, Inequitable Conduct, and/or Violation of Duty of Disclosure**
**2014    Duty of Disclosure in Reexamination Proceedings**
**2016    Fraud, Inequitable Conduct, or Violation of Duty of Disclosure  Affects All Claims**
2022.05     Determination of "Error Without Any Deceptive Intention"

## 2000.01   Introduction [R-2]

This Chapter deals with the duties owed toward the U.S. Patent and Trademark Office by the inventor and every other individual who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor or the inventor's assignee. These duties, of candor and good faith and disclosure, have been codified in 37 CFR 1.56, as promulgated pursuant to carrying out the duties of the *>Director< under Sections 2, 3, 131, and 132 of Title 35 of the United States Code.

## 2001   Duty of Disclosure, Candor, and Good Faith

*37 CFR 1.56.   Duty to disclose information material to patentability.*

(a)  A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application. There is no duty to submit information which is not material to the patentability of any existing claim. The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98. However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. The Office encourages applicants to carefully examine:

(1) Prior art cited in search reports of a foreign patent office in a counterpart application, and

(2) The closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

(b)  Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

(1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

(i)  Opposing an argument of unpatentability relied on by the Office, or

(ii)  Asserting an argument of patentability.

A *prima facie* case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(c)  Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:

(1) Each inventor named in the application;

(2) Each attorney or agent who prepares or prosecutes the application; and

(3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

Rev. 2, May 2004

**2004**                         MANUAL OF PATENT EXAMINING PROCEDURE

desires to have the U.S. Patent and Trademark Office consider after a patent has issued, such person may file a request for >*ex parte*< reexamination of the patent (see 37 CFR 1.510 and MPEP § 2209 through § 2220). >For a request for *inter partes* reexamination, see 37 CFR 1.913 and MPEP § 2609 through § 2620.<

## 2004   Aids to Compliance With Duty of Disclosure [R-2]

While it is not appropriate to attempt to set forth procedures by which attorneys, agents, and other individuals may ensure compliance with the duty of disclosure, the items listed below are offered as examples of possible procedures which could help avoid problems with the duty of disclosure. Though compliance with these procedures may not be required, they are presented as helpful suggestions for avoiding duty of disclosure problems.

1. Many attorneys, both corporate and private, are using letters and questionnaires for applicants and others involved with the filing and prosecution of the application and checklists for themselves and applicants to ensure compliance with the duty of disclosure. The letter generally explains the duty of disclosure and what it means to the inventor and assignee. The questionnaire asks the inventor and assignee questions about

— the origin of the invention and its point of departure from what was previously known and in the prior art,

— possible public uses and sales,

— prior publication, knowledge, patents, foreign patents, etc.

The checklist is used by the attorney to ensure that the applicant has been informed of the duty of disclosure and that the attorney has inquired of and cited material prior art.

The use of these types of aids would appear to be most helpful, though not required, in identifying prior art and may well help the attorney and the client avoid or more easily explain a potentially embarrassing and harmful "fraud" allegation.

2. It is desirable to ask questions about inventorship. Who is the proper inventor? Are there disputes or possible disputes about inventorship? If there are

questions, call them to the attention of the U.S. Patent and Trademark Office.

3. It is desirable to ask questions of the inventor about the disclosure of the best mode. Make sure that the best mode is described. See MPEP § 2165 - § 2165.04.

4. It is desirable for an attorney or agent to make certain that the inventor, especially a foreign inventor, recognizes his or her responsibilities in signing the oath or declaration. See 37 CFR 1.69(a).

*37 CFR 1.69. Foreign language oaths and declarations.*

(a) Whenever an individual making an oath or declaration cannot understand English, the oath or declaration must be in a language that such individual can understand and shall state that such individual understands the content of any documents to which the oath or declaration relates.

*****

Note MPEP § 602.06 for a more detailed discussion.

5. It is desirable for an attorney or agent to carefully evaluate and explain to the applicant and others involved the scope of the claims, particularly the broadest claims. Ask specific questions about possible prior art which might be material in reference to the broadest claim or claims. There is some tendency to mistakenly evaluate prior art in the light of the gist of what is regarded as the invention or narrower interpretations of the claims, rather than measuring the art against the broadest claim with all of its reasonable interpretations. It is desirable to pick out the broadest claim or claims and measure the materiality of prior art against a reasonably broad interpretation of these claims.

6. It may be useful to evaluate the materiality of prior art or other information from the viewpoint of whether it is the closest prior art or other information. This will tend to put the prior art or other information in better perspective. See *Semiconductor Energy Laboratory Co. v. Samsung Electronics Co.*, 204 F.3d 1368, 1374, 54 USPQ2d 1001, 1005 (Fed. Cir. 2000) ("A withheld reference may be highly material when it discloses a more complete combination of relevant features, even if those features are before the patent examiner in other references." (citations omitted)). However, 37 CFR 1.56 may still require the submission of prior art or other information which is not as close as that of record.

**2004**                    MANUAL OF PATENT EXAMINING PROCEDURE

applicant doesn't consider it necessarily material, someone else may see it differently and embarrassing questions can be avoided. The court in *U.S. Industries v. Norton Co.*, 210 USPQ 94, 107 (N.D. N.Y. 1980) stated "In short, the question of relevancy in close cases, should be left to the examiner and not the applicant." See also *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 22 USPQ2d 1025 (Fed. Cir. 1992).

11. It may be desirable to submit information about prior uses and sales even if it appears that they may have been experimental, not involve the specifically claimed invention, or not encompass a completed invention. See *Hycor Corp. v. The Schlueter Co.,* 740 F.2d 1529, 1534-37, 222 USPQ 553, 557-559 (Fed. Cir. 1984). See also *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 22 USPQ2d 1025 (Fed. Cir. 1992).

12. Submit information promptly. An applicant, attorney, or agent who is aware of prior art or other information and its significance should submit same early in prosecution, e.g., before the first action by the examiner, and not wait until after allowance. Potentially material information discovered late in the prosecution should be immediately submitted. That the issue fee has been paid is no reason or excuse for failing to submit information. See *Elmwood Liquid Products, Inc. v. Singleton Packing Corp.*, 328 F. Supp. 974, 170 USPQ 398 (M.D. Fla. 1971).

13. It is desirable to avoid the submission of long lists of documents if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative information. If a long list is submitted, highlight those documents which have been specifically brought to applicant's attention and/or are known to be of most significance. See *Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.*, 359 F. Supp. 948, 175 USPQ 260 (S.D. Fla. 1972), *aff'd,* 479 F.2d 1338, 178 USPQ 577 (5th Cir. 1973), *cert. denied,* 414 U.S. 874 (1974). But cf. *Molins PLC v. Textron Inc.*, 48 F.3d 1172, 33 USPQ2d 1823 (Fed. Cir. 1995).

14. Watch out for continuation-in-part applications where intervening material information or documents may exist; particularly watch out for foreign patents and publications related to the parent application and dated more than 1 year before the filing date of the CIP. These and other intervening documents may be material information. See *In re Ruscetta*, 255 F.2d 687, 690-91, 118 USPQ 101, 104 (CCPA 1958); *In re van *>Langenhoven<*, 458 F.2d 132, 173 USPQ 426 (CCPA 1972); *Chromalloy American Corp. v. Alloy Surfaces Co.*, 339 F. Supp. 859, 173 USPQ 295 (D. Del. 1972).

15. Watch out for information that might be deemed to be prior art under 35 U.S.C. 102(f) and (g).

Prior art under 35 U.S.C. 102(f) may be available under 35 U.S.C. 103. See *OddzOn Products, Inc. v. Just Toys*, *Inc.,* 122 F.3d 1396, 1401, 43 USPQ2d 1641, 1644 (Fed. Cir. 1997)(35 U.S.C. "102(f) is a prior art provision for purposes of § 103"); *Dale Electronics v. R.C.L. Electronics*, 488 F.2d 382, 386, 180 USPQ 225, 227 (1st. Cir. 1973); and *Ex parte Andresen*, 212 USPQ 100, 102 (Bd. App. 1981).

Note also that evidence of prior invention under 35 U.S.C. 102(g) may be available under 35 U.S.C. 103, such as in *In re Bass*, 474 F.2d 1276, 177 USPQ 178 (CCPA 1973).

Note 35 U.S.C. 103(c) disqualifies 35 U.S.C. 102(f)/103 or 102(g)/103 prior art which was, at the time the second invention was made, owned by or subject to an obligation of assignment to, the person who owned the first invention. Further note that 35 U.S.C. 103(c) disqualifies 35 U.S.C. 102(e)/103 prior art for applications filed on or after November 29, 1999. See MPEP § 706.02(l) - § 706.02(l)(2).

16. Watch out for information picked up by the inventors and others at conventions, plant visits, in-house reviews, etc. See, for example, *Dale Electronics v. R.C.L. Electronics*, 488 F.2d 382, 386-87, 180 USPQ 225, 228 (1st Cir. 1973).

17. Make sure that all of the individuals who are subject to the duty of disclosure, such as spelled out in 37 CFR 1.56, are informed of and fulfill their duty.

18. Finally, if information was specifically considered and discarded as not material, this fact might be recorded in an attorney's file or applicant's file, including the reason for discarding it. If judgment might have been bad or something might have been overlooked inadvertently, a note made at the time of evaluation might be an invaluable aid in explaining that the mistake was honest and excusable. Though such records are not required, they could be helpful in recalling and explaining actions in the event of a question of "fraud" or "inequitable conduct" raised at a later time.