IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S REPLY TO MDX MEDICAL, INC.'S RESPONSE TO HEALTH GRADES, INC.'S PROPOSED SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. #369]**

Plaintiff Health Grades, Inc. ("Health Grades") submits this Reply to MDx Medical, Inc.'s (MDx) Response to the Supplemental Brief in Support of Its Motion for Partial Summary Judgment [Doc. #369] ("Supp. Response") on MDx's invalidity and inequitable conduct counterclaims and affirmative defenses.

### I.      SUMMARY OF THE ARGUMENT

To prevail on inequitable conduct, MDx must prove by clear and convincing evidence that the Patent Office would have refused to allow the '060 patent claims to issue had she been aware of the undisclosed prior art.  Yet, MDx can offer no evidence to refute the fact that the same examiner who examined the '060 patent allowed broader claims in the face of MDx's putative prior art.  Undeterred, MDx charges this examiner with failing to perform her job despite her written representations to the contrary.  Further MDx accuses Health Grades and its lawyers of violating professional, ethical, and legal obligations.  None of this, however, changes

2004630213_1

EXHIBIT 1

the fact that the examiner allowed broader claims after having considered MDx's putative prior art. As such, this Court should grant Health Grades' Motion for summary judgment of no inequitable conduct.

## II.   REPLY[1]

MDx's arguments (misplaced in its "SUPPLEMENTAL STATEMENT OF DISPUTED (AND UNDISPUTED) FACTS IGNORED BY HEALTH GRADES" section) can be grouped into two categories: (1) charges that the patent examiner failed to do her job when examining the '471 App; and (2) charges that Health Grades' and its attorneys violated that law in connection with the prosecution of the '471 App. Neither of these categories impact the evidence showing that the Patent Office would have issued the '060 patent even if it had been aware of the undisclosed references. Thus, MDx cannot establish the but-for materiality prong of inequitable conduct test as a matter of law.

First, the Examiner properly allowed the claims of '471 App. despite MDx's allegations that the Examiner failed to do her job. By way of background, the Manual of Patent Examining Procedure ("MPEP") provides procedures for examination of patent applications filed with the U.S. Patent & Trademark Office. The MPEP states that examiners "must" consider all references properly listed on an information disclosure statement and must place his or her initials on the bottom of each page of the IDS along with the date the references were considered:

---

[1] In anticipation of arguments that may arise at tomorrow's summary judgment hearing that may require reference to either Health Grades' technical expert's rebuttal report dated September 17, 2012 , Health Grades' First Supplemental Response to MDx's Interrogatories No. 1,3,4 and 6, and Third Supplemental Response to MDx's Interrogatory No. 8, Health Grades attaches these documents hereto as the complete versions of these documents are not part of the record.

> **609.05(b)   Complying Information Disclosure Statements**
>
> The information contained in information disclosure statements which comply with both the content requirements of 37 CFR 1.98 (mpep-9020-appx-r.html#d0e321738) and the requirements, based on the time of filing the statement, of 37 CFR 1.97 (mpep-9020-appx-r.html#d0e321609) will be considered by the examiner. Consideration by the examiner of the information submitted in an IDS means that the examiner will consider the documents in the same manner as other documents in Office search files are considered by the examiner while conducting a search of the prior art in a proper field of search. **The initials of the examiner placed adjacent to the citations on the PTO/SB/08A and 08B or its equivalent mean that the information has been considered by the examiner to the extent noted above.**
>
> > In addition, the following alternative electronic signature method may be used by examiners in information disclosure statements to indicate whether the information has been considered. **Examiners will no longer initial each reference citation considered, but will continue to strikethrough each citation not considered. Each page of reference citations will be stamped by the examiner with the phrase "All references considered except where lined through" along with the examiner's electronic initials, and the final page of reference citations will include the examiner's electronic signature.** <
>
> **Examiners must consider all citations submitted in conformance with the rules, and their initials when placed adjacent to the considered citations on the list or in the boxes provided on a form PTO/SB/08A and 08B** > (or the examiner may use the alternative electronic signature method noted above) < **provides a clear record of which citations have been considered by the Office.** The examiner must also fill in his or her name and the date the information was considered in blocks at the bottom of the PTO/SB/08A and 08B form. For IFW processing, see IFW Manual section 3. If any of the citations are considered, a copy of the submitted list, form PTO/SB/08A and 08B, as reviewed by the examiner, will be returned to the applicant with the next communication. Those citations not considered by the examiner will have a line drawn through the citation and any citations considered will have the examiner's initials adjacent thereto > (or the bottom of each page of the information disclosure statement may include the phrase "All references considered except where lined through" along with the examiner's electronic initials) < . The original copy of the list, form PTO/SB/08A and 08B will be entered into the application file. The copy returned to applicant will serve both as acknowledgement of receipt of the information disclosure statement and as an indication as to which references were considered by the examiner. Forms PTO-326 and PTOL-37 include a box to indicate the attachment of form PTO/SB/08A and 08B.

(emphasis added).

In this case, Examiner Nguyen followed MPEP 609.05(b) and placed the foregoing designation at the bottom of each page of the IDSs submitted by Health Grades. (Doc. #738-1.) She considered each of the undisclosed references relied on by MDx, including the Drucker report as shown below:

2004630213_1                                       3

| | | |
|---|---|---|
| FORM 1449* | **INFORMATION DISCLOSURE STATEMENT** | Docket Number: 40476.0002USC3 | Application Number: 13/551,471 |
| | **IN AN APPLICATION** | Applicant: David G. Hicks |
| | (Use several sheets if necessary) | Filing Date: 07/17/12 | Group Art Unit: 3686 |

| | | |
|---|---|---|
| | | Ingenix Health Intellegence Update On HIPAA Privacy Complicance Program, Ingenix, dated 11/07/04, 2 pages. **[UCHC0000301-UCHC0000302]** |
| | | Preventing harm. Steering you from danger. Keeping you safe. Ingenix, Inc., dated 11/14/04, 2 pages. **[UCHC0000307-UCHC0000308]** |
| | | Patient Experience Survey Numbers, Oct. 28, 2004 to Nov. 9, 2004, 1 page. **[HG209647]** |
| | | USPN 7,167,855, 01/23/07, 30 pages. **[MDX0000048-MDX0000077]** |
| | | USPN 2003/0167187, 09/04/03, 34 pages. **[MDX0000078-MDX0000111]** |
| | | HealthGrades Report on David A. Drucker, dated 06/04/05, 4 pages. **[MGHG000016-MGHG000019]** |

\*\*\*\*

| EXAMINER | /Trang Nguyen/ | DATE CONSIDERED | 09/30/2013 |
|---|---|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form for next communication to the Applicant.

*Substitute Disclosure Statement Form (PTO-1449)     Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

**ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.N./**

(Doc. #738-1 at p. 18 (emphasis added).)

     This Court should presume that Examiner Nguyen did her job and considered all of the references she initialed in the '471 App.'s file history, which included the prior art references relied on by MDx for inequitable conduct. *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 938-39 (Fed. Cir. 1990) ("It is presumed that public officials do their assigned jobs.") (citing *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 821 (1984)); *Parkervision, Inc. v. Qualcomm Inc.*, 924 F. Supp. 2d 1314, 1319 (M.D. Fla. 2013) ("Here, the PTO was aware of the Parssinen reference, as evidenced by the reference's citation on the face of the patent, and still issued the patent. **One cannot assume that a PTO examiner is an ignorant rube who is easily misled by attorney argument, hyperbole, or understatement.**  Because the PTO received the Parssinen reference

before issuing the patent, the belated disclosure of the reference was not but-for material.  Thus, Qualcomm's pleading of the belated disclosure theory fails as a matter of law.") (emphasis added) (citations omitted); *Medisim Ltd. v. BestMed LLC*, 861 F. Supp. 2d 158, 172-73 (S.D.N.Y. 2012) ("the patent examiner . . . is deemed to have considered a reference listed in a search report if she initials the search history containing the reference, or the actual reference itself in the search history.") (citing *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1235-36 (Fed. Cir. 2003).)

Further, MDx's charges that the Examiner failed to perform her duties are baseless and inadmissible.  Indeed, attempts to present concocted theories that the Examiner failed to do her job in order to undermine the presumption of validity have been regularly and emphatically excluded by courts.  *See, e.g.*, *Wright Asphalt, Prods. Co. v. Pelican Ref. Co.*, No. H-09-cv-1145, 2012 U.S. Dist. LEXIS 73901, at *21-22 (S.D. Tex. May 29, 2012) ("[C]ourts prohibit former patent examiners from testifying about problems at, and the propensity for error in, the Patent Office. . . . Such testimony . . . impermissibly undermines the presumption of validity under 35 U.S.C. § 282."); *DNT, LLC v. Sprint Spectrum, LLP*, No. 09-cv-21, 2010 U.S. Dist. LEXIS 12420, at *13-14 (E.D. Va. Feb. 12, 2010) (precluding as inappropriate "[a]nything tending to disparage the patent and trademark office"); *Neutrino Dev. Corp. v. Sonosie, Inc.*, 410 F. Supp. 2d 529, 544 (S.D. Tex. 2006) ("to the extent that Mr. Weiffenbach's testimony simply addresses the potential pressures and potential for error at the PTO, such testimony is inadmissible"); *9 TAP Pharm. Prods., Inc. v. Owl Pharms., L.L.C.*, Case No. 99-cv-2715, 2003 U.S. Dist. LEXIS 27657, at *5 (N.D. Ohio Feb. 18, 2003) (precluding testimony "about the relative shortage of patent examiners at the PTO" as intended to undermine the presumption of validity); *3M v.*

*Appleton Papers, Inc.*, No. 95-cv-786, 1998 U.S. Dist. LEXIS 22597, at *6 (D. Minn. June 24, 1998); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, No. 92-20643, 1995 U.S. Dist. LEXIS 22335, at *10-11 (N.D. Cal. Apr. 25, 1995) (excluding as inappropriate "[t]estimony about overwork, quotas, awards, or promotions at Patent Office, or the number of patents that issue annually or insinuating that the Patent Office does not do its job properly").

Second, the propriety of Examiner Nguyen's decision to allow broader claims in the '471 App.'s Notice of Allowance is *not* undermined by the either the timing of Health Grades' disclosures or the amount of references that were disclosed during the prosecution of the '471 App. With regard to timing, Health Grades disclosed the prior art references that are the subject of MDx's inequitable conduct allegation and submitted this information *before* Examiner Nguyen issued the notice of allowance in the '471 App. This disclosure was timely. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349-50 (Fed. Cir. 2007); *see also* 37 CFR 1.97(c) (stating "an information disclosure statement shall be considered by the Office if filed . . . before the mailing of . . . a notice of allowance . . . ."). In *Young*, the Federal Circuit found that there was no inequitable conduct because the information was disclosed after the examiner had issued his first office action but before the examiner issued his final office action:

> The examiner was therefore fully apprised of the Hedlund deposition testimony and was able to fully consider it and any potential effects it may have on the patentability of the claims before issuing his second Office Action. Thus, we cannot agree that there was inequitable conduct resulting from the "failure to disclose material information" when that information was disclosed to the PTO in time for the examiner to consider it. **The essence of the duty of disclosure is to get relevant information before an examiner in time for him to act on it, and that did occur here.**

492 F.3d at 1349 (emphasis added). Here, as discussed above, Examiner Nguyen had time to, and did in fact consider these references as indicated by her initials. (Doc. #738-1.)

2004630213_1                                                  6

Regarding the amount of information disclosed, the Patent Office's records show that Health Grades did not bury anything.  Health Grades even disclosed the Early HG Reports to the Patent Office *for a second time* after MDx sent Health Grades' counsel a threatening e-mail that complained that the first disclosure of this information was insufficient. (Doc. #673-5 at p. 9 ("If any of these applications ever do issue as patents, there is going to be a very serious inequitable conduct problem if relevant material is buried or, in the case of HG's own prior art, is withheld entirely.")  In any event, MDx's allegations of burying and bad faith *relate to the '471 App.* (not the '060 patent), which is not being asserted in this lawsuit.

In any event, MDx cannot establish inequitable conduct of the '471 App. by arguing that Health Grades "buried" the most relevant references.  "An applicant can not be guilty of inequitable conduct if the reference was cited to the examiner." *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991) ("When a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it can not be deemed to have been withheld from the examiner."); *Seaboard Int'l, Inc. v. Cameron Int'l Corp.*, No. 13-cv-00281, 2013 U.S. Dist. LEXIS 106784, at *18 (E.D. Cal. July 30, 2013) (alleged burying of material information in a long list of citations to the PTO by itself is insufficient to state a claim for inequitable conduct); *ParkerVision, Inc.*, 924 F. Supp. 2d at 1318 (same); *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co*., 749 F. Supp. 2d 892, 903 (W.D. Wis. 2010) (same); *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 358 (D. Del. 2009) (same).  Thus, MDx's assertions that Health Grades acted inequitably by "burying" references is legally insufficient to show inequitable conduct in connection with the '060 patent (and the '471 App.)

Finally, MDx seems to suggest that Health Grades should have disclosed much more of the deposition testimony from the inventors. (Supp. Response at pp. 2, 13-14.) On the one hand, MDx argues that Health Grades disclosed too much information to the Patent Office ("buried they key prior art in this mountain of documents") but then complains that Health Grades did not disclose enough information. The inconsistency of its arguments demonstrates the weakness of MDx's position. Regardless, the deposition testimony from this lawsuit could not have been disclosed in connection with the '060 patent, which issued *before* this lawsuit was filed. Thus, this argument is irrelevant to the issue of inequitable conduct in this case.

For the foregoing reasons, Health Grades respectfully requests that the Court dismiss MDx's counter claim of inequitable conduct.

Respectfully submitted February 12, 2014.

*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Adam L. Massaro, Jr., Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@lrrlaw.com
kkosto@lrrlaw.com
jvazquez@lrrlaw.com
amassaro@lrrlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2014, I electronically filed the foregoing HEALTH GRADES, INC.'S REPLY TO MDX MEDICAL, INC.'S RESPONSE TO HEALTH GRADES, INC.'S PROPOSED SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. #369] was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Vincent Ferraro, Esq.
David C. Lee, Esq.
Trent Dickey, Esq.
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
E-mail:   sstimpson@sillscummis.com
          vferraro@sillscummis.com
          dlee@sillscummis.com
          tdickey@sillscummis.com

Terence M. Ridley, Esq.
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO  80202-5647
E-mail:   ridley@wtotrial.com

*s/ Adam L. Massaro*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Adam L. Massaro
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
Tel:     (303) 623-9000
Facsimile: (303) 623-9222
Email: gkanan@lrrlaw.com
kkostolansky@lrrlaw.com
jvazquez@lrrlaw.com
amassaro@lrrlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant Health Grades, Inc.*

2004630213_1