# EXHIBIT A

(Redacted version of Dkt. #s 754 and 755)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

## PLAINTIFF'S RESPONSE TO MDX MEDICAL INC.'S MOTION
## FOR RECONSIDERATION UNDER *Fed. R. Civ. P.* 72 OF THE JANUARY 3,
## 2014 ORDER IMPOSING SANCTIONS AND FOR A HEARING

---

Plaintiff Health Grades, Inc. ("Heath Grades"), by its counsel, hereby submits its

Response to MDx Medical Inc.'s ("MDx") Motion for Reconsideration Under *Fed. R. Civ. P.* 72

of the January 3, 2013 Order Imposing Sanctions ("Motion") [Doc. #720].

## <u>INTRODUCTION</u>

There is no justification for reconsideration of this Court's sanctions Order [Doc. #711].

As this Court found, "MDx and its counsel . . . intentionally fail[ed] to meet its discovery

obligations, even in the face of an order compelling discovery . . . ." [*id.* at p. 9]. The arguments

raised by MDx are simply repackaged arguments that were or could have been raised during the

briefing of Health Grades' Motion for Sanctions [Doc. #632].

## ARGUMENT

### I.    THE MOTION FOR RECONSIDERATION SHOULD BE DENIED.

A.    The Motion Should Be Denied --Arguments that Either Were or Could Have Been Raised in Prior Briefing are Not Grounds for Reconsideration.

"[A motion for reconsideration] is not [an] appropriate [vehicle] to revisit issues already addressed or advance arguments that could have been raised in prior briefing."  *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).  MDx's counsel has firsthand familiarity with this well-recognized rule of law:

> Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, the parties position or the controlling law.  It is not appropriate when the movant seeks to revisit issues already addressed or to advance arguments that could have been raised in prior briefing.

(Exhibit A hereto, excerpt from June 5, 2013 hearing and order p. 27:2-8 (denying MDx's motion to compel an additional 30(b)(6) deposition [Doc. #575]).)

MDx's seeks to revisit issues already addressed and advance arguments that could have been raised in the prior briefing.  First, MDx's counsel seeks to justify their improper conduct by arguing that they believed that their obligation to provide a complete response to Interrogatory No. 2 was somehow limited by Health Grades' infringement contentions, which MDx asserts were in turn limited to "instances in which physicians directly revised their profile information on the Vitals.com web portal."  (Motion p. 7; *see also* [Doc. #720-1, Stimpson Aff. ¶ 12] (asserting same justification).)  MDx raised the same meritless argument in its original Opposition to Health Grades' Motion for Sanctions ("Opposition to Sanctions Motion") [Doc.

#652 pp. 8-9].  The Court rejected MDx's tortured arguments on this topic when it ultimately concluded that MDx's counsel "completely" failed in their discovery duties [Doc. #711 p. 10].

In its reply in support of its motion for sanctions ("Reply"), Health Grades demonstrated that its infringement contentions were *not* limited to edits made through the physician portal and that portal edits were one (nonexclusive) way of meeting the claimed requirement for physician-verified information.  [Doc. #664 p. 6] (referencing the broad definition the Markman Order attached to "verifying" and asserting "[t]his order put to rest any doubt that the Physician Information[1] element can be satisfied in ways other than doctors making edits through the virtals.com physician portal"); *see also* Excerpt of Health Grades' Claim Chart [Doc. #653-3 p. 43].

Furthermore, there is no language in Health Grades' infringement contentions that states, or otherwise suggests that Health Grades was contending that *only* direct edits through the portal satisfy this claim element.  To the contrary, Health Grades' infringement contentions stated broadly that (1) "MDx receives the healthcare provider-verified information from healthcare providers," and (2) "MDx's website provides doctors with the ability to send information to MDx," and provided no language to suggest that Health Grades' contention was limited to situations where the information is verified via the physician portal or only direct edits [*id.* at pp. 42-44].[2]

---

[1] The '060 patent lists thirteen types of Physician Information:  "specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies."

[2] In his July 13, 2012 Expert Report, Health Grades' technical expert also provided MDx notice that Health Grades' claim contention covered any way that MDx could receive Physician Information:  "I

Moreover, MDx's counsel's argument that they believed edits received through the web portal are different than edits received by fax and email is belied by MDx's own recordkeeping policies.  That is, MDx refers to all edits as "webedits," regardless of whether they were received via the portal, fax, or email, and treats them the same when calculating total number of profile edits [Doc. #720-1, Stimpson Aff. ¶ 15].

Second, MDx's counsel also tries to justify its improper conduct by claiming that Health Grades failed to provide MDx's counsel reasonable notice under Local Patent Rule 3-1 for the Northern District of California that Health Grades contended that the Accused Products could satisfy claims one and fifteen of the '060 patent in a manner other than by edits through the physician portal.  (Motion pp. 5-6.)  MDx should have raised this argument when responding to Health Grades' Motion for Sanctions, *see* [Doc. #652].  Regardless, this argument fails because Rule 3-1 does not "require the disclosure of specific evidence [or] require a plaintiff to prove its infringement case."  *Creagri, Inc. v. Pinnaclife Inc.,* LLC, 2012 U.S. Dist. LEXIS 158540, at * 6, 2012 WL 5389775, at *2 (N.D. Cal. Nov. 2, 2012) (citation and quotation marks omitted). Rather, Rule 3-1 requires that a plaintiff's infringement contentions "must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement" and "to raise a reasonable inference that all accused products infringe." *Shared Memory Graphics, LLC,* 2011 U.S. Dist. LEXIS 99166, at * 13, 2011 WL 3878388, at *4 (citations and quotation marks omitted); *accord Shared Memory Graphics, LLC v. Apple, Inc.,*

---

understand that many more physicians have registered with vitals.com and viewed their profiles without changing any information . . . It is my opinion that in doing so these physicians have confirmed (e.g., verified) their information for MDx and that MDx has thereafter received this information from these physicians" [Doc. #305-1 at ¶128].

812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010). Health Grades' contentions, following the

Markman Order's definition of "verify," provided MDx's counsel reasonable notice that it

contended that the claim element could be satisfied in multiple ways.

Additionally, Rule 3-1 also requires only that the plaintiff disclose information about the

accused instrumentality "which the party is aware" and "[e]ach method or process shall be

identified by name, if known . . . ." Health Grades provided as much specificity as it could and

revealed the information of which it was aware. Health Grades could not have provided greater

specificity because MDx was in sole possession of the data and records revealing the multiple

ways physicians could verify their Physician Information. *American Video Graphics, L.P. v.*

*Elect. Arts, Inc.,* 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) (finding preliminary contentions

sufficient where "defendants' sole possession of the information plaintiffs need" precluded

greater specificity).

Third, MDx's counsel further attempts to justify their failure to require MDx to run a

database query showing how many physicians edited three or more of the Physician Information

fields because "in May 2012 counsel for MDx reviewed the case law in good faith and did not

reach th[e] conclusion that [such a search should have been run] in preparing the Supplemental

Response." (Motion p. 9.) This argument should be rejected because MDx did not raise it in

response to the Motion for Sanctions, *see* [Doc. #652]. MDx's counsel fails to disclose what

case law they reviewed back in 2012 that would have given rise to the belief that their actions

were proper. In any event, this Court has already concluded this "argument and attempted

defense [was] meritless," and "[t]he cases relied on by MDx for its meritless argument . . .

concerned motions to compel with respect to requests for production of documents" [Doc. #711 p. 5].

Finally, MDx's counsel also argues that their failure to comply with this Court's order should be excused because Health Grades allegedly knew that MDx's supplemental response to Interrogatory No. 2 ("Supplemental Response") was deficient but never requested that additional searches be run or objected to the adequacy of the Supplemental Response until conferring about filing the Motion for Sanctions.  (Motion pp. 9-12.)  MDx raised this same argument in its Opposition to the Motion for Sanctions.  (*See, e.g.,* [Doc. #652 p. 2] (claiming Health Grades' knew the queries could be run, "but Health Grades never asked for these queries"), p. 5 (same).)  The Court already rejected this argument [Doc. #711 p. 10].  Further, Health Grades—who had no access to MDx's database—was not in any position to know that MDx had provided "patently false" responses [Doc. #711 p. 3].  Health Grades believed that MDx and its counsel honored their obligations to conduct a "reasonable inquiry," run the necessary searches, reviewed the relevant data and records, and answered the interrogatory "fully."  Fed. R. Civ. P. 26(g) & 33(b)(3).  Finally, the fact remains that MDx's counsel knew that "[t]he only way to answer the question whether any provider had edited three or more of the data elements, was to design queries that would analyze the database," Motion p. 9, but chose not to fully respond and MDx's counsel further chose to file a motion for summary judgment based on the absence of evidence that MDx had been previously ordered to provide.[3]

---

[3] MDx seems to suggest that it would have been willing to run all the necessary searches had Health Grades just asked.  However, Health Grades' request for additional searches were met with resistance, *see, e.g.*, [Doc. #632-5, p. 8], September 16, 2013 email from C. Lee to J. Vázquez (stating "[MDx was]

- 6 -

The Motion should be denied on this ground alone as "[a] motion for reconsideration is not a license for a losing party's attorney to get a 'second bite at the apple' and make legal arguments that could have been raised before." *Johnston v. Cigna Corp.*, 789 F. Supp. 1098, 1101 (D. Colo. 1992).[4]

  B. <u>MDx's Counsel Cannot Demonstrate Grounds for Reconsideration.</u>

  The grounds warranting a motion for reconsideration are (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* Reconsideration is not warranted here.

  First, the Motion focuses narrowly on the failure to direct MDx to run a query to determine if physicians edited three or more of the Physician Information fields. However, the Court's decision to award Health Grades expenses and attorneys' fees was based on "overwhelming evidence . . . that MDx failed to fulfill its obligations under Fed. R. Civ. P. 33 and my Order [Doc. # 192] compelling discovery to answer Interrogatory No. 2 **fully and truthfully** after **a reasonable inquiry** of the information available to it" [Doc. #711 p. 6] (emphasis added). The Court relied upon a series of findings when determining that it should

---

not required to run queries now for the first time. We did not previously run this kind of query and we are not obligated to do so now").

[4] MDx's counsel seeks to bolster their argument by asserting that Health Grades' technical expert stated that the submission of information through fax and emails to MDx was a "1 out 10 (1 being least relevant)" [Doc. #720-1, Stimpson Aff. ¶ 25]. Dr. Greenspun testified that "[i]f you had a really good email, as an example, then you wouldn't have to look to other stuff. I'm not saying that one has a higher priority than others" [Doc. #720-6. at p. 174:10-13].

assess fees and expenses against MDx's counsel for their overall failure to satisfy their discovery

obligations [Doc. #711 pp. 9-11]. These findings included that (1) "MDx's counsel had an

independent duty under Federal R. Civ. P. 26(g) to assure the propriety of the interrogatory

answer 'after a reasonable inquiry,' which duty it failed to satisfy . . . ."; (2) "[MDx's] counsel

intentionally fail[ed] . . . to meet its discovery obligations, even in the face of an order

compelling discovery . . . ."; (3) the conduct of "[MDx's] counsel has seriously interfered with

the judicial process"; (4) "counsel, not a party, is responsible for the contents of the motions,

including MDx's Motion for Summary Judgment of Non-Infringement [Doc. #367/368]," and

(5) "MDx's counsel failed **completely** in its duty to assure that Interrogatory No. 2 was answered

directly and without evasion in accordance with information that MDx possessed after due

inquiry" [*id*] (emphasis added). The Motion fails to demonstrate how this Court misapprehended

facts in reaching these findings and assessing fees. For example, the following facts at a

minimum confirm that this Court did not misapprehend facts when concluding MDx's counsel

failed to satisfy their discovery obligations:

- MDx's counsel was aware of the fax verification program[5] at least four months before
  MDx filed its motion for summary judgment [Doc. #664-5].

- Health Grades' expert placed MDx's counsel on notice, one month before MDx filed
  summary judgment, that physicians can verify their information by "either correct[ing]

---

[5] MDx's counsel's argument that they were not put on notice of the fax program in June 2013 is
unavailing. (Motion p. 10 n. 3.) Larry West of MDx confirmed there was a fax program that allowed
"[MDx] to communicate with providers . . . via fax" [Doc. #664-5 p. 262:12-21]. This put MDx's
counsel on notice of the program; they had an obligation to investigate what this fax program entailed and
should have followed up rather than "sticking [their] . . . head[s] in the sand and refusing to look for the
answers . . . ." *In re Independent Service Organizations Antitrust Litigation,* 168 F.R.D. 651, 653 (D.
Kan. 1996).

[the Physician Information] via Web forms or if necessary sending an e-mail message in, or **using a contact form** saying this is a problem . . . ." [*id.*] (emphasis added).

- MDx had in its possession "approximately 25,000 emails and/or faxes" relating to provider verification [Doc. #652 p. 8], which included 11,209 fax forms where three or more of the claim elements had been verified ("Fax Verification Forms") [Doc. #663-3].

- MDx's Approval Button, MDx's collection of Physician Information through its verification screens in the portal, and MDx's collection of Physician Information within the "Personal Statement" area of the site, were all in existence and accessible to MDx's counsel at the time they directed MDx in preparing the Supplemental Response and moving for summary judgment [Doc. #632 pp. 5-9].

In addition to the "overwhelming evidence" before the Court when it issued the Order, Health Grades discovered additional evidence after filing its Reply in Support of Sanctions Motion that further confirms that MDx and its counsel failed to satisfy their discovery obligations. MDx had in its possession an Excel spreadsheet form ("Excel Verification Form") that listed Physicians Information fields: "age," "gender," "years in profession," "specialty," and "languages spoken" at the top and allowed physicians to use the form to correct, modify, or add information. (Exhibit B hereto, Excerpt from Excel Verification Form, MDX_0123709, annotated.)[6] When providers and/or individuals working with providers needed to make changes to certain fields, including the five identified above, MDx would send a blank copy of the verification form with an email, instructing the individual to "fill in the chart with details for all doctors associated with [the] group/practice and send it back to us at support@vitals.com." (*Id.* at MDX_0123707.) MDx would use the information from the Excel Verification Form to

---

[6] Health Grades did not receive the Excel Verification Form until it was produced by MDx on the week of December 16, 2013—after Health Grades had already filed its Reply in Support of Motion for Sanctions on December 2, 2013.

confirm the Physician Information it had on the profiles was correct and update any incorrect information. (Exhibit C hereto, MDx's Second Supplemental Response dated January 24, 2014 ("Second Supplemental Response"), p. 4, referencing how MDx would "import[] [Physician Information] from data input files received by emails from medical practice groups and hospitals.").)

Second, reconsideration is not warranted even though the improper interrogatory response was verified by MDx. (*Cf.* Motion pp. 2-3.) The lack of signature by a corporate representative prevented the Court from also "adequately assess[ing] the culpability of the client" [Doc. #711 p. 9]. But as discussed above, the Order itself against MDx's counsel was based on other types of misconduct that are separate and apart from the verification issue [*id* at pp. 9-11].

The third reason for reconsideration is unwarranted is that this Court did not misapprehend any facts when concluding that MDx and its counsel made "patently false" statements and arguments [Doc. #711 p. 3].                    REDACTED

MDx requires all doctors to enter their date of birth when signing onto vitals.com [Doc. #632 p. 7]—a fact MDx does not dispute. MDx's cover letter to its Excel Verification Form also states that "sections that are titled in red are required data in order for our system to locate and change the appropriate profile. Please be sure to include that data." (Exhibit B at MDX_0123707.) "Birth Date" is one of fields titled in red [*id* at MDx_0123709]. The Motion tries to side step this issue by claiming that the birthdate that is entered is not used to calculate age (Motion p. 10); however, this is irrelevant to the claim element. The statement has at all times been untrue.

- 10 -

The statement "MDx currently has no knowledge of any physician who has entered and/or modified three or more of the [provider verified] information" is also false [Doc. #632-1]. "A party is charged with knowledge of what its agents know, **or what is in records available to it** . . . ."  [Doc. #711 p. 5] (emphasis added by the Court) (citing *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 629 (N.D. Okla. 2009).)  The records and data to which MDx had access to show how many physicians have entered or modified the "provider verified information."  MDx's Second Supplemental Response is based on MDx's records and data that reveal at least

<div align="center" style="color:red">REDACTED</div>

(Exhibit C p. 5.)  MDx had these records and data when it prepared its Supplemental Response, it knew at the time that physicians were entering and/or modifying three or more Physician Information fields, but represented otherwise.  Further, MDx's counsel asserts in their Motion that "MDx obtains publications only from PubMed, not physicians . . . and years of experience from a calculation."  (Motion p. 10.)  However, MDx's documentation reflects that these fields can be "[s]elf-reported by individual physicians."  [Doc. # 632-3 at MDX 0070978] (identifying sources MDx receives data from) and [Doc. #632-3 at MDX 0070994] (listing a "SR" as one of the ways to collect "publications" and "years in practice" data and noting "self-reported data has high reliability . . . .").  Moreover, the "calculation" is admittedly based upon "physician-provided information," Motion p. 10, information MDx was obligated to disclose.

In sum, this Court did not misapprehend any facts, nor does MDx's counsel even contend that any of the other recognized grounds apply here.  Reconsideration is not warranted.

C.    <u>MDx's Counsel Conduct Still Seeks to Limit Health Grades' Discovery and Short-Circuited the Discovery Process.</u>

"[A] party should not be limited by its opponent's theory of the case in determining what is discoverable." *In re Cooper Tire & Rubber Co.,* 568 F.3d 1180, 1192 (10th Cir. 2009); *Adolph Coors Co. v. Am. Ins. Co.,* 164 F.R.D. 507, 520 (D. Colo. 1993) (holding "Liberty Mutual [was] not entitled to short-circuit th[e] [discovery] process (to its advantage) by withholding the documents" based on the belief the documents were inadmissible at trial"). MDx's counsel's pattern of conduct after they allegedly became aware of the faxes and emails showing physician verification in fall of 2013 demonstrates a continued failure to satisfy their independent duties to the discovery process and improperly short-circuited the process and further belies their claim that their conduct was proper.

First, after learning about the relevant information, MDx's counsel never voluntarily had MDx "supplement or correct its . . . response to [Interrogatory No. 2] . . . in a timely manner [once it] learn[ed] that in some material respect the . . . response [was] incomplete or incorrect . . ." Fed. R. Civ. P. 26(e).

Second, MDx's counsel also made the following specious statements in their opposition to Health Grades' Motion for Sanctions (after they knew about reams of materials demonstrating verification of Physician Information) to try to short circuit the discovery process:

> The vast majority (if not all) [of the 25,000 e-mails and/or faxes to be produced] do not show receipt of three or more of the data elements from providers and so do nothing to assist Health Grades' infringement proofs.
>
>                * * *
>
> MDx does not know whether [it] is true or not [that] no provider ha[s] ever edited three or more of the data elements . . . .

- 12 -

[Doc. #652 pp. 11-12.]

In the Motion p. 11, n. 3 MDx stated that "[it] believes that none of the reports will meet all of the claim elements." In MDx's Second Supplemental Response, which is deficient in many respects and improperly limited the data pool, the MDx revealed that approximately 4,000 providers satisfy all the claim elements (though MDx contends that the number is "over-inclusive"). (Exhibit C p. 14.)[7]

## II.    MDX IS EQUALLY AS CULPABLE FOR THE DISCOVERY VIOLATION.

This Court found "overwhelming evidence" MDx failed to fulfill its discovery obligations [Doc. #711 p. 6]. The fact that MDx's Supplemental Response was verified by one of MDx's founders, and Vice President, Data Operations, confirms MDx's culpability. Ms. Boyer was no doubt aware of the Verification Fax Forms that MDx prepared for the purpose of confirming Physician Information, *see* Reply [Doc. #664 pp. 2-4] (describing the Verification Fax Form prepared by MDx). Ms. Boyer actively solicited physicians to verify their Physician Information when she attached the form to congratulatory letters she sent to physicians MDx honored:

> A summary of your Physician Profile is included with this letter. To ensure all aspects of your profile are correct, please go to www.vitals.com and click 'login physician' in the upper right-hand corner of the site. There, you can login using your previously registered email and password, or if you have not previously registered, you can do so by clicking 'get started.'

[Doc. #664-3 p. 3]. Ms. Boyer was aware of the existence of MDx's Fax Verification Form and how it was used well before MDx submitted its Supplemental Response on May 10, 2012. (*See,*

---

[7] Counsel for Health Grades is in the process of conferring with counsel for MDx regarding incomplete or evasive answers contained in MDx's Second Supplement Response.

- 13 -

*e.g.*, [Doc. #664-4 p. 3] (showing Ms. Boyer solicited Dr. Esmer to verify his information using the Fax Verification Form on February 24, 2012), p. 2 (showing Ms. Boyer soliciting Physician Information via e-mail in December 2008).)  Ms. Boyer also actively participated in the preparation of MDx's motion for summary judgment [Doc. #367/368] by executing an affidavit in support thereof.  The affidavit contains a misleading and evasive statement about the collection of the Physician Information:  "MDx collects the data elements recited above[8] from third parties.  Although the providers may edit the information, these data elements are edited in very small percentages" [Doc. #367-8 ¶ 5].

MDx also had in its possession "approximately 25,000 emails and/or faxes" relating to provider verification [Doc. #652 p. 8], which included 11,209 Fax Verification Forms where the three or more of the claim elements had been verified [Doc. #663-3].  MDx, through its officers and agents, also had knowledge of the Excel Verification Form, how it was used, and the information it received from physicians by virtue of using it.

Finally, the four types of information described in the Motion for Sanctions [Doc. #632 pp. 5-9] confirm that MDx violated this Court's discovery order and filed for summary judgment knowing (or willfully ignoring) facts that were contrary to is Supplemental Response and summary judgment motion [Doc. #367/368].

Despite being aware of all of this data and records, MDx still verified the "patently false" Supplemental Response and approved of its counsel moving for summary judgment on the claim element, all the while knowing that facts existed contrary to its position.  If, as MDx's counsel

---

[8] The Physician Information claim element is stated in the preceding paragraph of the affidavit.

suggests, and in spite of their independent discovery duties, they were in fact unaware until Fall 2013 of the existence of the Fax Verification Form, Excel Verification Form and the "25,000 emails and/or faxes," then MDx is particularly culpable for not revealing this data and records to its counsel before it verified the Supplemental Response and approved moving for summary judgment on the claim element.

## CONCLUSION

For all of the foregoing reasons, Health Grades requests that this Court deny MDx's Motion, award Health Grades its fees and expenses in defending against MDx's challenges to this Court's Order, and award Health Grades any further relief this Court deems just and proper.

Respectfully submitted February 18, 2014.

*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Adam L. Massaro Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@lrrlaw.com
          kkosto@lrrlaw.com
          jvazquez@lrrlaw.com
          amassaro@lrrlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant
Health Grades, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2014, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO MDX MEDICAL INC.'S MOTION FOR RECONSIDERATION UNDER** *Fed. R. Civ. P.* **72 OF THE JANUARY 3, 2014 ORDER IMPOSING SANCTIONS AND FOR A HEARING** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Vincent Ferraro, Esq.
David C. Lee, Esq.
Trent Dickey, Esq.
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY 10112
E-mail: sstimpson@sillscummis.com
        vferraro@sillscummis.com
        dlee@sillscummis.com
        tdickey@sillscummis.com

Terence M. Ridley, Esq.
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO 80202-5647
E-mail: ridley@wtotrial.com

*s/ Kris J. Kostolansky*
Kris J. Kostolansky, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**PLAINTIFF'S RESPONSE TO MDX MEDICAL INC.'S MOTION
FOR RECONSIDERATION UNDER *Fed. R. Civ. P.* 72 OF THE JANUARY 3,
2014 ORDER IMPOSING SANCTIONS AND FOR A HEARING**

---

Plaintiff Health Grades, Inc. ("Heath Grades"), by its counsel, hereby submits its

Response to MDx Medical Inc.'s ("MDx") Motion for Reconsideration Under *Fed. R. Civ. P.* 72

of the January 3, 2013 Order Imposing Sanctions ("Motion") [Doc. #720].

<u>INTRODUCTION</u>

There is no justification for reconsideration of this Court's sanctions Order [Doc. #711].

As this Court found, "MDx and its counsel . . . intentionally fail[ed] to meet its discovery

obligations, even in the face of an order compelling discovery . . . ." [*id.* at p. 9]. The arguments

raised by MDx are simply repackaged arguments that were or could have been raised during the

briefing of Health Grades' Motion for Sanctions [Doc. #632].

## ARGUMENT

## I. THE MOTION FOR RECONSIDERATION SHOULD BE DENIED.

A. The Motion Should Be Denied --Arguments that Either Were or Could Have Been Raised in Prior Briefing are Not Grounds for Reconsideration.

"[A motion for reconsideration] is not [an] appropriate [vehicle] to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). MDx's counsel has firsthand familiarity with this well-recognized rule of law:

> Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, the parties position or the controlling law. It is not appropriate when the movant seeks to revisit issues already addressed or to advance arguments that could have been raised in prior briefing.

(Exhibit A hereto, excerpt from June 5, 2013 hearing and order p. 27:2-8 (denying MDx's motion to compel an additional 30(b)(6) deposition [Doc. #575]).)

MDx's seeks to revisit issues already addressed and advance arguments that could have been raised in the prior briefing. First, MDx's counsel seeks to justify their improper conduct by arguing that they believed that their obligation to provide a complete response to Interrogatory No. 2 was somehow limited by Health Grades' infringement contentions, which MDx asserts were in turn limited to "instances in which physicians directly revised their profile information on the Vitals.com web portal." (Motion p. 7; *see also* [Doc. #720-1, Stimpson Aff. ¶ 12] (asserting same justification).) MDx raised the same meritless argument in its original Opposition to Health Grades' Motion for Sanctions ("Opposition to Sanctions Motion") [Doc.

#652 pp. 8-9]. The Court rejected MDx's tortured arguments on this topic when it ultimately concluded that MDx's counsel "completely" failed in their discovery duties [Doc. #711 p. 10].

In its reply in support of its motion for sanctions ("Reply"), Health Grades demonstrated that its infringement contentions were *not* limited to edits made through the physician portal and that portal edits were one (nonexclusive) way of meeting the claimed requirement for physician-verified information. [Doc. #664 p. 6] (referencing the broad definition the Markman Order attached to "verifying" and asserting "[t]his order put to rest any doubt that the Physician Information[1] element can be satisfied in ways other than doctors making edits through the virtals.com physician portal"); *see also* Excerpt of Health Grades' Claim Chart [Doc. #653-3 p. 43].

Furthermore, there is no language in Health Grades' infringement contentions that states, or otherwise suggests that Health Grades was contending that *only* direct edits through the portal satisfy this claim element. To the contrary, Health Grades' infringement contentions stated broadly that (1) "MDx receives the healthcare provider-verified information from healthcare providers," and (2) "MDx's website provides doctors with the ability to send information to MDx," and provided no language to suggest that Health Grades' contention was limited to situations where the information is verified via the physician portal or only direct edits [*id.* at pp. 42-44].[2]

---

[1] The '060 patent lists thirteen types of Physician Information: "specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies."

[2] In his July 13, 2012 Expert Report, Health Grades' technical expert also provided MDx notice that Health Grades' claim contention covered any way that MDx could receive Physician Information: "I

Moreover, MDx's counsel's argument that they believed edits received through the web portal are different than edits received by fax and email is belied by MDx's own recordkeeping policies. That is, MDx refers to all edits as "webedits," regardless of whether they were received via the portal, fax, or email, and treats them the same when calculating total number of profile edits [Doc. #720-1, Stimpson Aff. ¶ 15].

Second, MDx's counsel also tries to justify its improper conduct by claiming that Health Grades failed to provide MDx's counsel reasonable notice under Local Patent Rule 3-1 for the Northern District of California that Health Grades contended that the Accused Products could satisfy claims one and fifteen of the '060 patent in a manner other than by edits through the physician portal. (Motion pp. 5-6.) MDx should have raised this argument when responding to Health Grades' Motion for Sanctions, *see* [Doc. #652]. Regardless, this argument fails because Rule 3-1 does not "require the disclosure of specific evidence [or] require a plaintiff to prove its infringement case." *Creagri, Inc. v. Pinnaclife Inc.,* LLC, 2012 U.S. Dist. LEXIS 158540, at * 6, 2012 WL 5389775, at *2 (N.D. Cal. Nov. 2, 2012) (citation and quotation marks omitted). Rather, Rule 3-1 requires that a plaintiff's infringement contentions "must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement" and "to raise a reasonable inference that all accused products infringe." *Shared Memory Graphics, LLC,* 2011 U.S. Dist. LEXIS 99166, at * 13, 2011 WL 3878388, at *4 (citations and quotation marks omitted); *accord Shared Memory Graphics, LLC v. Apple, Inc.,*

---

understand that many more physicians have registered with vitals.com and viewed their profiles without changing any information . . . It is my opinion that in doing so these physicians have confirmed (e.g., verified) their information for MDx and that MDx has thereafter received this information from these physicians" [Doc. #305-1 at ¶128].

812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010).  Health Grades' contentions, following the

Markman Order's definition of "verify," provided MDx's counsel reasonable notice that it

contended that the claim element could be satisfied in multiple ways.

Additionally, Rule 3-1 also requires only that the plaintiff disclose information about the

accused instrumentality "which the party is aware" and "[e]ach method or process shall be

identified by name, if known . . . ."  Health Grades provided as much specificity as it could and

revealed the information of which it was aware.  Health Grades could not have provided greater

specificity because MDx was in sole possession of the data and records revealing the multiple

ways physicians could verify their Physician Information.  *American Video Graphics, L.P. v.

Elect. Arts, Inc.,* 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) (finding preliminary contentions

sufficient where "defendants' sole possession of the information plaintiffs need" precluded

greater specificity).

Third, MDx's counsel further attempts to justify their failure to require MDx to run a

database query showing how many physicians edited three or more of the Physician Information

fields because "in May 2012 counsel for MDx reviewed the case law in good faith and did not

reach th[e] conclusion that [such a search should have been run] in preparing the Supplemental

Response."  (Motion p. 9.)  This argument should be rejected because MDx did not raise it in

response to the Motion for Sanctions, *see* [Doc. #652].  MDx's counsel fails to disclose what

case law they reviewed back in 2012 that would have given rise to the belief that their actions

were proper.  In any event, this Court has already concluded this "argument and attempted

defense [was] meritless," and "[t]he cases relied on by MDx for its meritless argument . . .

concerned motions to compel with respect to requests for production of documents" [Doc. #711 p. 5].

Finally, MDx's counsel also argues that their failure to comply with this Court's order should be excused because Health Grades allegedly knew that MDx's supplemental response to Interrogatory No. 2 ("Supplemental Response") was deficient but never requested that additional searches be run or objected to the adequacy of the Supplemental Response until conferring about filing the Motion for Sanctions.  (Motion pp. 9-12.)  MDx raised this same argument in its Opposition to the Motion for Sanctions.  (*See, e.g.,* [Doc. #652 p. 2] (claiming Health Grades' knew the queries could be run, "but Health Grades never asked for these queries"), p. 5 (same).) The Court already rejected this argument [Doc. #711 p. 10].  Further, Health Grades—who had no access to MDx's database—was not in any position to know that MDx had provided "patently false" responses [Doc. #711 p. 3].  Health Grades believed that MDx and its counsel honored their obligations to conduct a "reasonable inquiry," run the necessary searches, reviewed the relevant data and records, and answered the interrogatory "fully."  Fed. R. Civ. P. 26(g) & 33(b)(3).  Finally, the fact remains that MDx's counsel knew that "[t]he only way to answer the question whether any provider had edited three or more of the data elements, was to design queries that would analyze the database," Motion p. 9, but chose not to fully respond and MDx's counsel further chose to file a motion for summary judgment based on the absence of evidence that MDx had been previously ordered to provide.[3]

---

[3] MDx seems to suggest that it would have been willing to run all the necessary searches had Health Grades just asked.  However, Health Grades' request for additional searches were met with resistance, *see, e.g.*, [Doc. #632-5, p. 8], September 16, 2013 email from C. Lee to J. Vázquez (stating"[MDx was]

- 6 -

The Motion should be denied on this ground alone as "[a] motion for reconsideration is not a license for a losing party's attorney to get a 'second bite at the apple' and make legal arguments that could have been raised before." *Johnston v. Cigna Corp.,* 789 F. Supp. 1098, 1101 (D. Colo. 1992).[4]

B.     MDx's Counsel Cannot Demonstrate Grounds for Reconsideration.

The grounds warranting a motion for reconsideration are (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* Reconsideration is not warranted here.

First, the Motion focuses narrowly on the failure to direct MDx to run a query to determine if physicians edited three or more of the Physician Information fields. However, the Court's decision to award Health Grades expenses and attorneys' fees was based on "overwhelming evidence . . . that MDx failed to fulfill its obligations under Fed. R. Civ. P. 33 and my Order [Doc. # 192] compelling discovery to answer Interrogatory No. 2 **fully and truthfully** after **a reasonable inquiry** of the information available to it" [Doc. #711 p. 6] (emphasis added). The Court relied upon a series of findings when determining that it should

not required to run queries now for the first time. We did not previously run this kind of query and we are not obligated to do so now").

[4] MDx's counsel seeks to bolster their argument by asserting that Health Grades' technical expert stated that the submission of information through fax and emails to MDx was a "1 out 10 (1 being least relevant)" [Doc.#720-1, Stimpson Aff. ¶ 25]. Dr. Greenspun testified that "[i]f you had a really good email, as an example, then you wouldn't have to look to other stuff. I'm not saying that one has a higher priority than others" [Doc.#720-6. at p. 174:10-13].

assess fees and expenses against MDx's counsel for their overall failure to satisfy their discovery
obligations [Doc. #711 pp. 9-11]. These findings included that (1) "MDx's counsel had an
independent duty under Federal R. Civ. P. 26(g) to assure the propriety of the interrogatory
answer 'after a reasonable inquiry,' which duty it failed to satisfy . . . ."; (2) "[MDx's] counsel
intentionally fail[ed] . . . to meet its discovery obligations, even in the face of an order
compelling discovery . . . ."; (3) the conduct of "[MDx's] counsel has seriously interfered with
the judicial process"; (4) "counsel, not a party, is responsible for the contents of the motions,
including MDx's Motion for Summary Judgment of Non-Infringement [Doc. #367/368]," and
(5) "MDx's counsel failed **completely** in its duty to assure that Interrogatory No. 2 was answered
directly and without evasion in accordance with information that MDx possessed after due
inquiry" [*id*] (emphasis added). The Motion fails to demonstrate how this Court misapprehended
facts in reaching these findings and assessing fees. For example, the following facts at a
minimum confirm that this Court did not misapprehend facts when concluding MDx's counsel
failed to satisfy their discovery obligations:

- MDx's counsel was aware of the fax verification program[5] at least four months before
  MDx filed its motion for summary judgment [Doc. #664-5].

- Health Grades' expert placed MDx's counsel on notice, one month before MDx filed
  summary judgment, that physicians can verify their information by "either correct[ing]

---

[5] MDx's counsel's argument that they were not put on notice of the fax program in June 2013 is
unavailing. (Motion p. 10 n. 3.) Larry West of MDx confirmed there was a fax program that allowed
"[MDx] to communicate with providers . . . via fax" [Doc. #664-5 p. 262:12-21]. This put MDx's
counsel on notice of the program; they had an obligation to investigate what this fax program entailed and
should have followed up rather than "sticking [their] . . . head[s] in the sand and refusing to look for the
answers . . . ." *In re Independent Service Organizations Antitrust Litigation*, 168 F.R.D. 651, 653 (D.
Kan. 1996).

[the Physician Information] via Web forms or if necessary sending an e-mail message in, or **using a contact form** saying this is a problem . . . ." [*id.*] (emphasis added).

- MDx had in its possession "approximately 25,000 emails and/or faxes" relating to provider verification [Doc. #652 p. 8], which included 11,209 fax forms where three or more of the claim elements had been verified ("Fax Verification Forms") [Doc. #663-3].

- MDx's Approval Button, MDx's collection of Physician Information through its verification screens in the portal, and MDx's collection of Physician Information within the "Personal Statement" area of the site, were all in existence and accessible to MDx's counsel at the time they directed MDx in preparing the Supplemental Response and moving for summary judgment [Doc. #632 pp. 5-9].

In addition to the "overwhelming evidence" before the Court when it issued the Order, Health Grades discovered additional evidence after filing its Reply in Support of Sanctions Motion that further confirms that MDx and its counsel failed to satisfy their discovery obligations. MDx had in its possession an Excel spreadsheet form ("Excel Verification Form") that listed Physicians Information fields: "age," "gender," "years in profession," "specialty," and "languages spoken" at the top and allowed physicians to use the form to correct, modify, or add information. (Exhibit B hereto, Excerpt from Excel Verification Form, MDX_0123709, annotated.)[6] When providers and/or individuals working with providers needed to make changes to certain fields, including the five identified above, MDx would send a blank copy of the verification form with an email, instructing the individual to "fill in the chart with details for all doctors associated with [the] group/practice and send it back to us at support@vitals.com." (*Id.* at MDX_0123707.) MDx would use the information from the Excel Verification Form to

---

[6] Health Grades did not receive the Excel Verification Form until it was produced by MDx on the week of December 16, 2013—after Health Grades had already filed its Reply in Support of Motion for Sanctions on December 2, 2013.

confirm the Physician Information it had on the profiles was correct and update any incorrect

information.  (Exhibit C hereto, MDx's Second Supplemental Response dated January 24, 2014

("Second Supplemental Response"), p. 4, referencing how MDx would "import[] [Physician

Information] from data input files received by emails from medical practice groups and

hospitals.").)

     Second, reconsideration is not warranted even though the improper interrogatory

response was verified by MDx.  (*Cf.* Motion pp. 2-3.)  The lack of signature by a corporate

representative prevented the Court from also "adequately assess[ing] the culpability of the client"

[Doc. #711 p. 9].  But as discussed above, the Order itself against MDx's counsel was based on

other types of misconduct that are separate and apart from the verification issue [*id* at pp. 9-11].

     The third reason for reconsideration is unwarranted is that this Court did not

misapprehend any facts when concluding that MDx and its counsel made "patently false"

statements and arguments [Doc. #711 p. 3].     <span style="color:red">REDACTED</span>

                    MDx requires all doctors to enter their date of

birth when signing onto vitals.com [Doc. #632 p. 7]—a fact MDx does not dispute.  MDx's

cover letter to its Excel Verification Form also states that "sections that are titled in red are

required data in order for our system to locate and change the appropriate profile.  Please be sure

to include that data."  (Exhibit B at MDX_0123707.)  "Birth Date" is one of fields titled in red

[*id* at MDx_0123709].  The Motion tries to side step this issue by claiming that the birthdate that

is entered is not used to calculate age (Motion p. 10); however, this is irrelevant to the claim

element.  The statement has at all times been untrue.

The statement "MDx currently has no knowledge of any physician who has entered and/or modified three or more of the [provider verified] information" is also false [Doc. #632-1]. "A party is charged with knowledge of what its agents know, **or what is in records available to it** . . . ."  [Doc. #711 p. 5] (emphasis added by the Court) (citing *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 629 (N.D. Okla. 2009).)  The records and data to which MDx had access to show how many physicians have entered or modified the "provider verified information."  MDx's Second Supplemental Response is based on MDx's records and data that reveal at least

REDACTED

(Exhibit C p. 5.)  MDx had these records and data when it prepared its Supplemental Response, it knew at the time that physicians were entering and/or modifying three or more Physician Information fields, but represented otherwise.  Further, MDx's counsel asserts in their Motion that "MDx obtains publications only from PubMed, not physicians . . . and years of experience from a calculation."  (Motion p. 10.)  However, MDx's documentation reflects that these fields can be "[s]elf-reported by individual physicians."  [Doc. # 632-3 at MDX 0070978] (identifying sources MDx receives data from) and [Doc. #632-3 at MDX 0070994] (listing a "SR" as one of the ways to collect "publications" and "years in practice" data and noting "self-reported data has high reliability . . . .").  Moreover, the "calculation" is admittedly based upon "physician-provided information," Motion p. 10, information MDx was obligated to disclose.

In sum, this Court did not misapprehend any facts, nor does MDx's counsel even contend that any of the other recognized grounds apply here.  Reconsideration is not warranted.

- 11 -

Case No. 1:1-cv-00520-RM-BNB Document 755 filed 02/18/14 USDC Colorado page 12 of 29
Case 1:11-cv-00520-RM-BNB Document 758 Filed 02/19/14 USDC Colorado Page 12 of 16
of 33

C.     MDx's Counsel Conduct Still Seeks to Limit Health Grades' Discovery and
       Short-Circuited the Discovery Process.

"[A] party should not be limited by its opponent's theory of the case in determining what

is discoverable." *In re Cooper Tire & Rubber Co.,* 568 F.3d 1180, 1192 (10th Cir. 2009);

*Adolph Coors Co. v. Am. Ins. Co.,* 164 F.R.D. 507, 520 (D. Colo. 1993) (holding "Liberty

Mutual [was] not entitled to short-circuit th[e] [discovery] process (to its advantage) by

withholding the documents" based on the belief the documents were inadmissible at trial").

MDx's counsel's pattern of conduct after they allegedly became aware of the faxes and emails

showing physician verification in fall of 2013 demonstrates a continued failure to satisfy their

independent duties to the discovery process and improperly short-circuited the process and

further belies their claim that their conduct was proper.

First, after learning about the relevant information, MDx's counsel never voluntarily had

MDx "supplement or correct its . . . response to [Interrogatory No. 2] . . . in a timely manner

[once it] learn[ed] that in some material respect the . . . response [was] incomplete or incorrect

. . ." Fed. R. Civ. P. 26(e).

Second, MDx's counsel also made the following specious statements in their opposition

to Health Grades' Motion for Sanctions (after they knew about reams of materials demonstrating

verification of Physician Information) to try to short circuit the discovery process:

> The vast majority (if not all) [of the 25,000 e-mails and/or faxes to
> be produced] do not show receipt of three or more of the data
> elements from providers and so do nothing to assist Health Grades'
> infringement proofs.
>
> * * *
>
> MDx does not know whether [it] is true or not [that] no provider
> ha[s] ever edited three or more of the data elements . . . .

- 12 -

[Doc. #652 pp. 11-12.]

In the Motion p. 11, n. 3 MDx stated that "[it] believes that none of the reports will meet all of the claim elements."  In MDx's Second Supplemental Response, which is deficient in many respects and improperly limited the data pool, the MDx revealed that approximately 4,000 providers satisfy all the claim elements (though MDx contends that the number is "over-inclusive").  (Exhibit C p. 14.)[7]

## II.  MDX IS EQUALLY AS CULPABLE FOR THE DISCOVERY VIOLATION.

This Court found "overwhelming evidence" MDx failed to fulfill its discovery obligations [Doc. #711 p. 6].  The fact that MDx's Supplemental Response was verified by one of MDx's founders, and Vice President, Data Operations, confirms MDx's culpability.  Ms. Boyer was no doubt aware of the Verification Fax Forms that MDx prepared for the purpose of confirming Physician Information, *see* Reply [Doc. #664 pp. 2-4] (describing the Verification Fax Form prepared by MDx).  Ms. Boyer actively solicited physicians to verify their Physician Information when she attached the form to congratulatory letters she sent to physicians MDx honored:

> A summary of your Physician Profile is included with this letter. To ensure all aspects of your profile are correct, please go to www.vitals.com and click 'login physician' in the upper right-hand corner of the site.  There, you can login using your previously registered email and password, or if you have not previously registered, you can do so by clicking 'get started.'

[Doc. #664-3 p. 3].  Ms. Boyer was aware of the existence of MDx's Fax Verification Form and how it was used well before MDx submitted its Supplemental Response on May 10, 2012.  (*See,*

---

[7] Counsel for Health Grades is in the process of conferring with counsel for MDx regarding incomplete or evasive answers contained in MDx's Second Supplement Response.

*e.g.*, [Doc. #664-4 p. 3] (showing Ms. Boyer solicited Dr. Esmer to verify his information using the Fax Verification Form on February 24, 2012), p. 2 (showing Ms. Boyer soliciting Physician Information via e-mail in December 2008).)  Ms. Boyer also actively participated in the preparation of MDx's motion for summary judgment [Doc. #367/368] by executing an affidavit in support thereof.  The affidavit contains a misleading and evasive statement about the collection of the Physician Information:  "MDx collects the data elements recited above[8] from third parties.  Although the providers may edit the information, these data elements are edited in very small percentages" [Doc. #367-8 ¶ 5].

MDx also had in its possession "approximately 25,000 emails and/or faxes" relating to provider verification [Doc. #652 p. 8], which included 11,209 Fax Verification Forms where the three or more of the claim elements had been verified [Doc. #663-3].  MDx, through its officers and agents, also had knowledge of the Excel Verification Form, how it was used, and the information it received from physicians by virtue of using it.

Finally, the four types of information described in the Motion for Sanctions [Doc. #632 pp. 5-9] confirm that MDx violated this Court's discovery order and filed for summary judgment knowing (or willfully ignoring) facts that were contrary to is Supplemental Response and summary judgment motion [Doc. #367/368].

Despite being aware of all of this data and records, MDx still verified the "patently false" Supplemental Response and approved of its counsel moving for summary judgment on the claim element, all the while knowing that facts existed contrary to its position.  If, as MDx's counsel

---

[8] The Physician Information claim element is stated in the preceding paragraph of the affidavit.

suggests, and in spite of their independent discovery duties, they were in fact unaware until Fall

2013 of the existence of the Fax Verification Form, Excel Verification Form and the "25,000

emails and/or faxes," then MDx is particularly culpable for not revealing this data and records to

its counsel before it verified the Supplemental Response and approved moving for summary

judgment on the claim element.

## **CONCLUSION**

For all of the foregoing reasons, Health Grades requests that this Court deny MDx's

Motion, award Health Grades its fees and expenses in defending against MDx's challenges to

this Court's Order, and award Health Grades any further relief this Court deems just and proper.


Respectfully submitted February 18, 2014.

*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesús M. Vázquez, Jr., Esq.
Adam L. Massaro Esq.
1200 17th Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 623-9000
Fax: (303) 623-9222
Email: gkanan@lrrlaw.com
          kkosto@lrrlaw.com
          jvazquez@lrrlaw.com
          amassaro@lrrlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant
Health Grades, Inc.*

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2014, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO MDX MEDICAL INC.'S MOTION FOR RECONSIDERATION UNDER** *Fed. R. Civ. P.* **72 OF THE JANUARY 3, 2014 ORDER IMPOSING SANCTIONS AND FOR A HEARING** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Vincent Ferraro, Esq.
David C. Lee, Esq.
Trent Dickey, Esq.
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
E-mail: sstimpson@sillscummis.com
       vferraro@sillscummis.com
       dlee@sillscummis.com
       tdickey@sillscummis.com

Terence M. Ridley, Esq.
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO  80202-5647
E-mail: ridley@wtotrial.com

*s/ Kris J. Kostolansky*
Kris J. Kostolansky, Esq.