# EXHIBIT A

(Redacted version of Dkt. # 770)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

**MDX MEDICAL, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION UNDER *FED. R. CIV. P.* 72 OF THE JANUARY 3, 2014 ORDER IMPOSING SANCTIONS AND FOR A HEARING**

## SUMMARY OF ARGUMENT

Health Grades, Inc. ("Health Grades") does not adequately address the core of MDx Medical, Inc. ("MDx")'s argument for reconsideration, which can be summarized as follows. First, under controlling law not addressed by the Court, the Patent Rules limited the scope of Health Grades' interrogatories, including Interrogatory No. 2, to its infringement contentions, and MDx's obligation, therefore, was to make a ***reasonable inquiry*** into only those means of infringement identified by Health Grades. Here, the key language of Health Grades' infringement contentions limited the means of alleged infringement to the editing by physicians of their profile through the web portal, and as set forth in MDx's initial brief, there can be no dispute that MDx expended significant time and effort putting together the information required by Interrogatory No. 2. Second, contrary to what Health Grades put before the Court (and the Court relied upon in the Sanctions Order), MDx did verify this Interrogatory answer. Third, the certification of MDx's counsel was accurate because a reasonable inquiry had been made with

respect to the only information covered by Interrogatory No. 2, which was the factual basis for the response to Health Grades' infringement contentions. Finally, the Court did not apprehend that MDx shared the queries it ran with Health Grades and that Health Grades failed to come to this Court for over a year to register any dissatisfaction with those inquiries. When viewed in totality, it is clear that MDx's counsel made reasonable inquiry – based upon the infringement contentions, the scope of the queries run (*i.e.*, the queries that were provided to Health Grades) and the client's verification – and therefore as a matter of Tenth Circuit law sanctions are not appropriate. Because of the limited scope of Health Grades' infringement contentions, MDx was not required to provide discovery with respect to a theory of infringement that Health Grades did not assert at the time and that was put forward only in hindsight.

## I. HEALTH GRADES IGNORES CONTROLLING LAW WITH RESPECT TO THE EXTENT OF MDX'S DISCOVERY OBLIGATIONS

Health Grades does not – and cannot – dispute that the Patent Rules apply to this action. Tellingly, however, Health Grades fails to address the controlling law set forth at pages 5-6 of MDx's initial brief holding that under the Patent Rules the scope of a defendant's obligation to respond to discovery is limited by the scope of the plaintiff's infringement contentions. *See Oplus Techs., Ltd. v. Sears Holdings Corp.,* 2013 U.S. Dist. LEXIS 145917, 37-38 (C.D. Cal. Oct. 2, 2013); *Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.*, 2007 U.S. Dist. LEXIS 90457, 8-9 (C.D. Cal. June 25, 2007); *Caritas Techs. Inc. v. Comcast Corp.*, 2006 U.S. Dist. LEXIS 94879, *14-15 (E.D. Tex. 2006). This authority was cited to the Court in MDx's Brief opposing the sanctions motion (Doc. # 652 at 8-10), but it was not discussed in the Sanctions Order. (Doc. # 711). Because the scope of Interrogatory No. 2 was limited by the scope of Health Grades' infringement contentions to direct edits by physicians through the web portal, MDx's response to the interrogatory was complete.

2

Health Grades asserts that under Patent Rule 3-1 its infringement contentions need not include specific evidence and must only provide "reasonable notice" of its position. (Doc. #754 at 4). That is irrelevant. MDx is not arguing that Health Grades had to prove its infringement case at the contention stage. It is arguing that the only "reasonable notice" provided by Health Grades' infringement contentions was that MDx infringed by allowing physicians to alter their profile directly through the MDx web portal.

Health Grades and MDx agree on the key language of the infringement contentions:

> MDx receives the healthcare provider-verified information from healthcare providers. MDx's website provides doctors with the ability to send information to MDx. For example, MDx's website provides many opportunities for doctors to edit their own profiles.

(Doc. #720-1 (Stimpson Dec.) ¶ 6; Doc. #754 at 3). The first sentence merely repeats the claim language, and so does nothing to provide notice of the Health Grades' position. *See, e.g., Network Caching Tech. LLC v. Novell, Inc.*, 2002 U.S. Dist. LEXIS 26098, *17-18 (N.D. Cal. August 13, 2002) (contention language that "simply mimics the language" of the claim is not notice under Patent Rules). Read in plain English, the second and third sentences address **_only_** edits by doctors over the website, and do not provide notice that other manners of receiving such information (other than doctors editing their own profiles over the website) were being alleged to meet this claim element. *Cf. Bender v. Freescale Semiconductor, Inc.*, 2010 U.S. Dist. LEXIS 91281 *4-*5 (N.D. Cal. Apr. 26, 2010); *InterTrust Techs. Corp. v. Microsoft Corp.,* 2003 U.S. Dist. LEXIS 22736 *8 (N.D. Cal. Dec. 1, 2003).[1]

---

[1] Throughout its opposition, Health Grades raises the claim element of verification by the provider. *See, e.g.*, Dkt. #706, p. 14 (Health Grades' references to "11,209 Fax Verification Forms"). This verification by the provider claim element, like every claim element, is also subject to the case law on infringement contentions. MDx performed a reasonable inquiry based on what Health Grades had alleged in its infringement contentions on the verification claim

3

As pointed out in MDx's initial brief (Doc #720 at 12; Doc. #720-1 ¶ 25), Health Grades' own expert has confirmed in his post-sanctions deposition – a new fact that could not have been previously brought to the Court's attention – that indirect editing by MDx in response to faxes or emails from physicians was a "different" and "distinct" method from direct editing. It is true that his July 2012 expert report states that physicians have viewed their profiles without changing information (Doc. #305-1 at ¶ 128), but this quotation is taken out of context. It occurs as part of his discussion of direct on-line editing of their profiles by physicians (*Id.* at ¶¶ 122-27), in which Health Grades' expert states that the proper search query would disclose "a list of providers who had made at least three edits ***via the web site*** and, for each provider, the number of edits that had been made." *Id.* at ¶ 126 (emphasis added). Health Grades' own understanding of its infringement contentions was thus that direct edits were the method of alleged infringement.[2]

Health Grades argues that MDx has not disclosed the case law on which counsel relied for the conclusion that a query covering three or more physician edits need not have been run. Health Grades Br. at 5. Those were the cases cited in MDx's initial opposition to the sanctions motion. (Doc. #652 at 4, 9-10). MDx produced the queries it ran for the interrogatory response, and so was open and honest with Health Grades about what queries were (and were not) run to respond to the interrogatory. MDx did not have any indication that its response to the interrogatory was insufficient.

---

element. That reasonable inquiry did not uncover the fax forms because they were outside the scope of the infringement contentions.

[2] For the first time, Health Grades raises an "Excel spreadsheet" emailed by MDx. Health Grades Br. at 9-10. These are no different from other emails for purposes of this Motion – none were encompassed within the Health Grades Infringement Contentions.

4

In sum, MDx is not using its own theory of Health Grades' case to define the scope of its discovery obligations. *Cf. In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1192 (10th Cir. 2009). Rather, MDx's counsel reasonably relied on Health Grades' own theory of the case, as set forth in the infringement contentions. Health Grades has become wise in hindsight, and it reproaches MDx's counsel for having failed to produce discovery in response to an infringement theory that Health Grades itself had not formulated and that MDx therefore had neither reason nor obligation to anticipate. That Health Grades never asked for queries relating to physicians' indirect requests for edits is further evidence that Health Grades itself read its infringement contentions in the same way as MDx – as limited to direct physician edits through the website. Indeed, MDx shared its queries with Health Grades, and Health Grades did not complain to the Court that these queries were too limited or inadequate until a year later. Simply stated, neither counsel nor MDx were put on notice that other methods of physician editing were at issue, and were not required to search for documents relevant only to a theory of infringement that Health Grades had not put forward.

For the reasons set forth above and in MDx's initial brief, the Sanctions Order should be reconsidered and revoked. We are constrained, however, to respond to Health Grades' assertion that this Court "did not misapprehend any facts when concluding that MDx and its counsel made 'patently false' statements and arguments." (Doc. #754 at 10).

The first supposedly "patently false" statement        REDACTED


is in fact true. The claim element requiring three or more of the data elements "received from" the provider requires ***modification of the database*** – the claim plainly is addressing the accessing of the data that is in the database. *See, e.g.,* claim 1 (in response to a

5

request, "accessing" data received from the provider). Health Grades makes much of providers entering date of birth (page 10), but that is only a provider sign-in screen – a security check, not as an edit to the database. That is, MDx needs date of birth for security reasons, but it does not impact the database. Health Grades also questions whether MDx, despite the verified response otherwise, might be using publications other than those received by PubMed. Health Grades Br. at 11. The cited document, however, does not even remotely support Health Grade's allegation. Dkt. #632-3, pages 0070978 and 0070994.

As to the second statement about knowledge of a provider editing three or more of the data elements, it was also true when stated because Health Grades alleged infringement against providers signing into the Vitals website and directly editing information. A database query that would have answered this question was not run in May 2012 for the reasons explained in MDx's Motion (dkt. 720, p.10-11), and Health Grades was promptly placed on notice that no such query was run – MDx and its counsel were entirely open about what had (and had not) been done to answer the interrogatory, and Health Grades expressed no complaints. After MDx ran the query in January 2014 in accordance with the Court's Order, MDx removed this second statement from its Second Supplemental Response to Interrogatory No. 2.

Finally, MDx's motion for reconsideration does not raise arguments for the first time that should have been raised in response to the sanctions motion. As noted above, MDx argued that the Patent Rules limited the scope of Interrogatory No. 2 to the issues presented by Health Grades' infringement contentions, which in turn were limited to direct physician edits through the website. The fundamental premise of the Sanctions Order is that Interrogatory No. 2 was broad enough to cover information relating to physicians' fax or email requests for MDx to edit their profile. That premise is negated by the authorities brought to the Court's attention in

6

MDx's Brief opposing sanctions. Because the Court did not address these authorities in the Sanctions Order, reconsideration is appropriate. *See Servants of Paraclete v. Does*, 204 F.3d at 1005, 1012 (10th Cir. 2000); *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).[3]

## II. MDX IS NOT CULPABLE FOR FAILING TO PROVIDE DISCOVERY ON A THEORY OF INFRINGEMENT HEALTH GRADES HAD NOT RAISED

Without itself moving to reconsider, Health Grades now asserts that because MDx did verify its response to Interrogatory No. 2, it is equally subject to sanctions. (Doc. #754 at 13). The argument fails for the same reason that counsel's inquiry as to MDx's response was reasonable. Whatever MDx might have known about the submission by physicians of profile information through channels other than its web site, it was not obliged to produce in discovery information that was not relevant to Health Grades' then-existing claim of infringement, which was limited to editing directly by the physician on line.

---

[3] As far as the issue of the supposed non-verification of MDx's responses is concerned, that was not an issue on the motion for sanctions until raised by the Court *sua sponte* in the Sanctions Order. The Court was clearly misled by Health Grades' submission of the interrogatory answers without the verification, and Health Grades should not be permitted to argue that its improper submission precludes MDx or this Court from reconsidering the Sanctions Order based upon the actual facts.

7

## CONCLUSION

For the foregoing reasons, and those raised in MDx's initial Brief, it is respectfully requested that the Court reconsider and vacate that portion of the Sanctions Order that awards sanctions against MDx and its counsel.

Dated: March 7, 2014                                Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson                                   Terence Ridley, Atty. No. 15212
Trent S. Dickey                                     Wheeler Trigg O'Donnell LLP
David C. Lee                                        370 Seventeenth Street, Suite 4500
Vincent M. Ferraro                                  Denver, Colorado 80202
Sills Cummis & Gross P.C.                           Tel: (303) 244-1800
30 Rockefeller Plaza                                Fax: (303) 244-1879
New York, New York 10112                            E-mail: ridley@wtotrial.com
Tel: (212) 643-7000
Fax: (212) 643-6500                                 *Attorneys for Defendant*
E-mail: sstimpson@sillscummis.com                   MDx Medical, Inc. d/b/a VITALS.COM
E-mail: tdickey@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: vferraro@sillscummis.com

8

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2014, I electronically filed the foregoing **MDX MEDICAL, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION UNDER *Fed. R. Civ. P. 72* OF THE JANUARY 3, 2014 ORDER IMPOSING SANCTIONS AND FOR A HEARING** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Vincent Marc Ferraro**
  vferraro@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

*s:/Vincent M. Ferraro*