**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**JOINT PROPOSED PATENT JURY INSTRUCTIONS**

---

Plaintiff Health Grades, Inc. ("Health Grades") and Defendant MDX Medical, Inc. ("MDx") jointly submit the attached proposed patent jury instructions for the trial in the above-captioned matter. The parties reserve their right to amend, supplement, or modify these proposed instructions. The parties do not concede, by submitting the proposed instructions, that either has met its evidentiary burdens with respect to any of the issues to which the proposed instructions pertain. The parties do not waive any objections relating to issues that are or have been the subject of any pending motions, including any motions *in limine*.

While the parties agreed to a majority of these instructions, there are some disputes that need to be resolved by this Court.

Language and instructions that are highlighted yellow are proposed by Health Grades and objected to by MDx.

Language and instructions that are highlighted blue are proposed by MDx and objected to by Health Grades.

There is a brief summary of each party's position after each disputed instruction.

Dated:  March 28, 2014

LEWIS ROCA ROTHGERBER LLP

s/ Kris J. Kostolansky
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Jesus M. Vazquez, Jr., Esq.
Adam L. Massaro, Esq.
1200 17th Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 623-9000
Fax: (303) 623-9222
E-mail: gkanan@lrrlaw.com
E-mail: kkosto@lrrlaw.com
E-mail: jvazquez@lrrlaw.com
E-mail: amassaro@lrrlaw.com

Attorneys for Plaintiff/Counterclaim Plaintiff
Health Grades, Inc.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.

s/ Scott D. Stimpson
Scott D. Stimpson, Esq.
Trent S. Dickey, Esq.
David C. Lee, Esq.
Vincent M. Ferraro, Esq.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail: sstimpson@sillscummis.com
E-mail: tdickey@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: vferraro@sillcummis.com

and

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel:  (303) 244-1800
Fax:  (303) 244-1879
E-mail: ridley@wtotrial.com

Attorneys for Defendant/Counterclaim
Plaintiff
MDx Medical, Inc. d/b/a VITALS.COM

**(Preliminary Instructions)**

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and on your role as jurors.

## The Nature of the Action and the Parties

This is a patent case. The patent involved in this case generally relates to Internet-based systems and methods that connect patients with potential healthcare providers such as doctors. More particularly, the patented invention relates to providing on-line ratings and reports comprised of healthcare provider information with verified information sections, including physician verified and independent third-party verified portions, and patient-provided information sections, to assist patients in differentiating among healthcare providers. During the trial, the parties will offer testimony to familiarize you with this technology. For your convenience, the parties have also prepared a Glossary of some of the technical terms to which they may refer during the trial, which will be distributed to you.

Health Grades, Inc. is the owner of the patent, which is identified by the Patent Office number: 7,752,060 (which may be called "the '060 Patent"). The patent may also simply be referred to as "Health Grades' patent." Health Grades operates an on-line information system on its website at HealthGrades.com.

The Defendant, MDX Medical Inc., is the other party here. During these instructions and throughout the trial, you may hear Defendant MDX Medical referred to simply as "MDx." MDx operates an on-line information system on its website at Vitals.com.

**United States Patents**

Before summarizing the positions of the parties and the legal issues involved in this dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO" or "Patent Office").  A patent gives the owner the right to exclude others from making, using, offering to sell, or selling the patented invention within the United States or importing it into the United States.  During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the Patent Office, but I will give you a general background here.

To obtain a patent, an application for a patent must be filed with the Patent Office.  The application includes a specification, which should have a written description of the invention telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so.  The specification concludes with one or more numbered sentences or paragraphs. These are called the "claims" of the patent.  The purpose of the claims is to particularly point out what the applicant regards as the invention and to define the scope of the patent owner's exclusive rights.

After an application for a patent is filed with the Patent Office, the application is reviewed by a trained Patent Office patent examiner.  The patent examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  When examining a patent application, the patent examiner searches records available to the Patent Office for what is referred to as "prior art," and he or she also reviews prior art submitted by the applicant.  When the parties are

4

done presenting evidence, I will give you more specific instructions as to what constitutes prior

art in this case.  But generally prior art is technical information and knowledge that was [known

to] [available to any one person of] the public [either before the invention by the applicant or]

more than a year before the filing date of the patent application.  The patent examiner considers,

among other things, whether each claim defines an invention that is new, useful, and not obvious

in view of this prior art.

Following the prior art search and examination of the application, the patent examiner

advises the applicant in writing as to what the patent examiner has found and whether any claim

is patentable (in other words, "allowed"). This writing from the patent examiner is called an

"office action."  More often than not, the initial office action by the patent examiner rejects the

claims.  The applicant then responds to the office action and sometimes changes the claims or

submits new claims.  This process may go back and forth between the patent examiner and the

applicant for several months or even years until the patent examiner is satisfied that the

application and claims are patentable. At that time, the Patent Office "issues" or "grants" a patent

with the allowed claims.

The collection of papers generated by the patent examiner and the applicant during this

time of corresponding back and forth is called the "prosecution history."  You may also hear the

"prosecution history" referred to as the "file history" or the "file wrapper."

**Patent Litigation**

Someone is said to infringe the claims of a patent when they, without permission from the

patent owner, import, make, use, offer to sell, or sell the patented invention, as defined by the

claims, within the United States before the term of the patent expires.  A patent owner who

believes someone is infringing on the exclusive rights of the patent may bring a lawsuit like this to attempt to stop the alleged infringing acts and to potentially recover damages, which generally is money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the need for and amount of any damages.

A patent is presumed to be valid.  In other words, it is presumed to have been properly granted. But that presumption of validity can be overcome if "clear and convincing evidence" is presented that proves the patent is invalid.  One example of a way in which the presumption may be overcome is if the Patent Office has not considered, for whatever reason, invalidating prior art that is presented to you.  Someone sued for allegedly infringing a patent can deny engaging in infringing activities and also can defend by proving the asserted claims of the patent are invalid [and/or unenforceable, if the patent owner unfairly procured the patent in some way.  This will be discussed further below].  The accused infringer must prove invalidity [and unenforceability] by clear and convincing evidence. I will discuss more of this topic later.

I will now briefly explain the parties' basic contentions in more detail.

**<u>Contentions of the Parties</u>**

Health Grades contends that MDx has made, used, offered to sell, or sold products and methods that infringed Claims 1, 4 through 9, 11, and 14 through 16  of the  '060 patent and continues to do so today.  Health Grades contends that MDx's infringing acts occurred and continue to occur through MDx's Vitals.com website and a mobile application and website called iTriage.  In this case, there are four–different configurations of the MDx Vitals.com website that are accused of infringement.  In addition, MDx is accused of inducing and

contributing to infringement of the iTriage mobile application and website.

The first four configurations include MDx's physician database and its website, which is accessed at www.vitals.com, but these four configurations were offered by MDx at different times and they include some differences in their features and functionality.

The first configuration was offered MDx until January 5, 2011. I will call this Configuration 1. Configuration 1 had a feature that we will call the "Compare Now" feature.

The second configuration was offered by MDx from January 5, 2011 through the end of 2012. It did not have the "Compare Now" feature. I will call this Configuration 2.

The third configuration was offered by MDx from the beginning of 2013 through today. I will call this Configuration 3. Configuration 3 is the same as Configuration 2 except that it additionally includes a feature we will call the "Search All Similar Doctors" feature.

The fourth configuration was offered by MDx from mid-October until to mid-November of 2013. I will call this Configuration 4. Configuration 4 is the same as Configuration 3 but it also included a feature which we will call "sponsored listings with star ratings".

Health Grades also accuses MDx of inducing and contributing to the infringement by another online information system that is accessed via a mobile application called "iTriage" and/or through a website at www.itriagehealth.com. I will refer to this accused system as the iTriage system.

I will call all of these collectively the "Accused Systems".

Health Grades must prove that MDx infringes the '060 Patent "by a preponderance of the evidence." That means that Health Grades must show that it is more likely that MDx infringes than it does not infringe.

To determine infringement, you must compare each of the Accused Systems with each claim from the '060 Patent.  It will be my job to tell you what the language of the patent claims mean. You must follow my instructions as to the meaning of the patent claims.

There are two ways in which a patent claim can be directly infringed. First, a claim can be literally infringed.  Second, a claim can be infringed under what is called the "doctrine of equivalents."

A patent claim is literally infringed only if the accused configuration includes each and every element or method step in that patent claim.  If an accused system does not contain one or more elements or method steps in that claim, that system has not literally infringed the claim. You must determine literal infringement with respect to each patent claim individually for each configuration that is accused of literal infringement.  In this case, Health Grades accuses Configurations 1 and 4 of literal infringement, and also alleges that the iTriage system literally infringes.

Under the doctrine of equivalents, you may find that MDx has infringed one of Health Grades' asserted patent claims even if not every element or step of that claim is present in a particular configuration.  To do so, you must find that there is an equivalent component, part, or method step in the Accused System for each element or method step of the patent claim that is not literally present in such system.  To prove infringement under the doctrine of equivalents, Health Grades must prove that it is more likely than not that the Accused System contains the equivalent of any element of the claimed invention that is not literally present in the such system. In this case, Health Grades accuses all four MDx configurations and the iTriage system of infringement under the doctrine of equivalents.

8

Health Grades also asserts that MDx's infringement of the '060 patent has been willful.

MDx denies that it is infringing.  MDx also contends that Health Grades' patent is invalid [and unenforceable due to inequitable conduct].

Invalidity of the asserted patent claim(s) is a defense to infringement.  Therefore, even though the Patent Office has allowed the claims of Health Grades' patent, you, the jury, have the ultimate responsibility for deciding whether the claims of the '060 patent are valid, in other words whether the '060 patent was properly allowed by the Patent Office.  MDx must provide the facts underlying its invalidity arguments by clear and convincing evidence in order to overcome the presumption of validity.  Clear and convincing evidence means that it is highly probable that the fact is true. This is a higher standard than the "preponderance of the evidence" standard, but it is not as high as the standard used in criminal law, which requires "evidence beyond a reasonable doubt."

[Inequitable conduct is also a defense to patent infringement.  When a person or persons involved in the prosecution of an application, such as the named inventors, fail to supply material information to the Patent Office, or supplies false or misleading information or statements, and does so with an intent to deceive the Patent Office, he or she may commit what is called "inequitable conduct."  If a patent is obtained by inequitable conduct, then the entire patent is unenforceable.]

**Trial Procedure**

We are about to commence the opening statements in the case.  Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases.  We have completed the first phase, which was

to select you as jurors.  We are now about to begin the second phase: the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show.  The opening statements are not evidence.

The evidence comes in the third phase, when the witnesses will take the witness stand and the documents will be offered and admitted into evidence.  In the third phase, Health Grades goes first in calling witnesses to the witness stand.  These witnesses will be questioned by Health Grades' counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. After Health Grades has presented its witnesses, MDx will call its witnesses, who will also be examined and cross-examined.  The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness deposition testimony.  A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, meaning that all of the evidence relating to an issue is not presented all at one time, but at different times during the trial.  So you need to keep an open mind as the evidence comes in. You are to wait until all the evidence comes in before you make any decisions.  In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, the lawyers again have an opportunity to talk to you in what is called "closing argument," which is the fourth phase.  Again, what the lawyers say is not evidence.  The closing arguments are not evidence for you to consider in your deliberations.

The fifth phase of the trial is when I read you the jury instructions. In that phase, I will instruct you on the law.  I have already explained to you a little bit about the law.  But in the fifth

phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate. You can then evaluate the evidence, discuss the evidence among yourselves, and make a decision in the case. You are the judges of the facts, and I decide questions of law. I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language. You must follow my explanation of the law and the patent claim language even if you do not agree with me. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

## RESPONSES REGARDING DISPUTED ISSUES IN PRELIMINARY INSTRUCTIONS

### Joint Response Regarding Global Disputes

- Inequitable Conduct: The parties dispute whether the jury should be instructed on the law of inequitable conduct.

  o Health Grades' position on this issue is set forth in connection with Motion to Bifurcate Trial on the Issue of Inequitable Conduct (Doc. #598) and the reply in support of same (Doc. #608).[1]

---

[1]     The AIPLA Model Patent Jury Instructions support Health Grades' position that inequitable conduct should not be presented to the jury:

> [INTRODUCTORY NOTE:   "Inequitable conduct is an equitable issue committed to the discretion of the trial court and reviewed by [the Federal Circuit] under an abuse of discretion standard." *Flex-Rest, LLC v. Steelcase, Inc*., 455 F.3d 1351, 1357 (Fed. Cir. 2006).  Because there is no right to trial by jury on this equitable issue, the court may try this issue, or any part thereof, with an advisory jury.  If the court elects to try the issue with an advisory jury, the court should consider whether to charge the jury on the entire issue, or to charge the jury solely on the materiality and/or intent to deceive issues.  The verdict form should have separate questions on each of the issues on which the jury has been charged, i.e., materiality, intent, and/or balancing the equities where the jury is rendering a finding on inequitable conduct.  **In cases alleging inequitable conduct based on**

- o   MDx's position on this issue is set forth in its opposition to the motion to bifurcate (Doc. #605). [2]

- Prior Art under §102(a):  The parties dispute whether the jury should be instructed on the law relating to 35 U.S.C. §102(a).

   - o   Health Grades' position on this issue is set forth in connection with Motion for Summary Judgment on MDx's invalidity defenses (Doc. #369) and the reply in support of same (Doc. #442).

   - o   MDx's position on this issue is set forth in its opposition to Health Grades' motion (Doc. #407).

### Health Grades' Response

- Prior Art:  Health Grades proposes using the phrase "known to the public" because this is the language used by the AIPLA model rule and 35 U.S.C. §102.  MDx's proposal ("available to any one person of the public") is confusing and inaccurate.

### MDx's Response

**the failure to disclose information to the Patent & Trademark Office, it is respectfully suggested that the court consider <u>carefully</u> whether to use an advisory jury. The issues are complex and potentially confusing because the clear-and-convincing-evidence standard applies to the inequitable conduct defense while the preponderance-of-the-evidence standard applies to the issue of whether the Patent and Trademark Office would have issued the patent "but for" the failure to disclose, as required by *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011)** (all emphasis by Health Grades).

[2] The Health Grades footnote cites a notation from the AIPLA model instructions.  While Health Grades highlights one portion of the notation, it very clearly recognizes that the issue may be tried to the jury.  Moreover, Health Grades omits the lengthy model instruction on inequitable conduct proposed by the AIPLA.  The Federal Circuit Bar Association Model Instructions (like the AIPLA instructions) also has extensive instructions for inequitable conduct to be submitted to the jury.  And while the Federal Circuit Model Instructions have indications that the court might reasonably consider removing ***other*** issues from the jury (*see, e.g.,* instructions on limitations on infringement), there is no such indication for inequitable conduct.  Nor does either model instruction purport to address the unique circumstances of this case (where the invalidity defense and inequitable conduct defense are based on the ***same prior art***, and it is the ***prior art of the plaintiff***), and the attendant, serious Seventh Amendment issues to Health Grades' request for bifurcation.

- The phrase "available to any one person of the public" is not "confusing" or "inaccurate" – it is Supreme Court law. *Egbert v. Lippmann*, 104 U.S. 333, 336 (1881).

- **GLOSSARY OF PATENT TERMS**

    **Application** – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "Patent Office" or "PTO").

    **Claims** – The numbered sentences or paragraphs appearing at the end of the patent that define the invention.  The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

    **File wrapper** – See "prosecution history" below.

    **License** – Permission to use a patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

    **Office action** – Communication from the patent examiner regarding the specification (see definition below) and/or the claims in the patent application.

    **Ordinary skill in the art** – The level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

    **Patent Examiners** – Personnel employed by the Patent Office in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the patent examiner, and (2) whether the specification/application describes the invention with the required specificity.

    **Prosecution history** – The written record of proceedings between the applicant and the Patent Office, including the original patent application and later communications between the Patent Office and applicant. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial.  All three terms refer to the same collection of papers.

**Provisional patent application --** In the US, an applicant may file a provisional patent application and then may convert the provisional application into a utility application within one year after it files the provisional application.  This application may have legal significance only if certain requirements are met, as provided in the jury instructions.

**Reference** – Any item of prior art used to determine patentability.

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings.  In the specification, the inventor describes how the invention works, and how to make and use it.

<u>Sources and Authorities:</u>

MODEL PATENT JURY INSTRUCTIONS OF THE AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION ("AIPLA MODEL INSTRUCTIONS"), §II(A)-(C), §III (2012).[3]

---

[3] The AIPLA Model Instructions are attached as Exhibit A; and the Federal Circuit Bar Association Model Instructions are attached as Exhibit B.

**(Instructions at Close of Evidence)**

# JURY INSTRUCTION NO. 1

## *Summary of Patent Issues*

I will summarize the issues that you must decide. I will provide instructions to guide your deliberations.  You must decide the following [four] [five] issues:

1.      Whether Health Grades has proved by a preponderance of the evidence that MDx directly or indirectly infringed Claims 1, 4 through 9, 11, and 14 through 16  of the '060 patent.

2.      Whether Health Grades has proved by clear and convincing evidence that MDx's infringement was willful.

3.      What amount of damages, if any, Health Grades has proved.

4.      Whether MDx has proved by clear and convincing evidence that claims 1, 4 through 9, 11, and 14 through 16 of the '060 patent are invalid.

5.      Whether MDx has proved by clear and convincing evidence that the '060 patent is unenforceable due to inequitable conduct.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §V(1) (2012).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 1

### Joint Response Regarding Global Disputes

- Inequitable Conduct:  As discussed *supra*, the parties dispute whether the jury should be instructed on the law of inequitable conduct.

# JURY INSTRUCTION NO. 2

## *Claim Construction – Generally*

Before you decide whether MDx has infringed the claims of Health Grades' patent or whether Health Grades' patent is invalid, you will need to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The patent claims involved here are claims 1, 4 through 9, 11, and 14 through 16, beginning at column 20, line 20 of the patent. The claims are intended to define, in words, the boundaries of the invention. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §2.0 (2012); 35 U.S.C. § 112; *Source Search Technologies, LLC v. LendingTree, LLC*, 588 F. 3d 1063, 1075 (Fed. Cir. 2009); *Computer Docking Station Corp. v. Dell, Inc*., 519 F. 3d 1366, 1373 (Fed. Cir. 2008); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002); *Amazon. com, Inc. v. Barnesandnoble.com, Inc.,* 239 F. 3d 1343, 1351 (Fed. Cir. 2001); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878, 882 (Fed. Cir. 1988).

# JURY INSTRUCTION NO. 3

## *Claim Construction for the Case*

It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.

I will now tell you the meanings of the following words and groups of words from the patent claims.

[The term "healthcare providers" means human healthcare providers, such as physicians.]

The term "first healthcare provider" means a particular healthcare provider about whom information is requested and a report is produced.

The term "comparison ratings of healthcare providers" means ratings on multiple healthcare providers, including the "first healthcare provider," in the report on that "first health provider," thus permitting comparison of the "first healthcare provider" with other potential healthcare providers.

The term "received from the first healthcare provider" means receipt of information from the "first healthcare provider" or one of his or her agents, such as an employee, as distinguished from information received from patients or public sources.

The terms "compiling" and "compile" mean gathering and/or putting together

[For the terms "verified," "provided," and "received," the mere "capability" of doing so is not sufficient.  The data must have actually been verified, provided or received.

The phrase "healthcare provider-verified information is received from the first healthcare provider" means information that is both verified by and received from the first healthcare

18

provider.

The term "verify" means prove to be true, which requires more than simply receipt of information.]

I have not given definitions for most of the words in the claims. These claim terms are to be given their usual and ordinary meanings.

[Throughout this trial you have heard lay witness and seen documents use words or terms that are part of the claims of the '060 Patent and that the court has construed. The use of these terms by lay witnesses is not necessarily with the same meaning that I have applied to the terms. The use of these terms in trial exhibits is not necessarily with the same meaning the court has applied to the terms. In most if not all cases, these lay witnesses are not even aware of the court's construction of these terms.]

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §2.1 (2012); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc) *aff'd,* 517 U.S. 370 (1996).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 3

### Health Grades' Response:

- "Healthcare Providers":  The statement that the term "healthcare providers" means human healthcare providers, such as physicians is not disputed by MDx and will be helpful to the jury. (Doc. #138 at p. 7 (noting: Defendant does not dispute that "first healthcare provider" refers to a person, rather than an entity . . . .").

- Verified:  Health Grades objects that MDx's proposed language (highlighted in blue above) is inconsistent with and contrary to the Markman Order.  *See* Health Grades, Inc.'s Brief Opposing MDx Medical, Inc.'s Request for Reconsideration of Claim Constructions in the Markman Order (Doc. #701.)

- Capability:  Health Grades also objects that MDx's statements about capability are incorrect as a matter of law.  *See* Health Grades, Inc.'s Brief Regarding the Reasonable Capability Test (Doc. #702).

- The statement about meanings of terms used in documents and by witnesses is accurate and will be helpful to the jury.

### MDx's Response:

- Human Healthcare providers:  This term has not been construed by the Court.

- Verified:  The Court has not yet construed the term verified.  Dkt. #138 ("The Court agrees with Plaintiff that there is no need to construe the word 'verified'").  *See* MDx Brief regarding claim construction for the term "verified." Dkt. #706.

- Capability:  *See* MDx Brief regarding claim construction for claim 15. Dkt. #705.

- Lay witness testimony:  There is no model instruction with anything like this, and this is not a legal issue for instructions but a fact issue.  Health Grades' goal is to get the Court to bless its attempt to distance the testimony of its witnesses on prior art from the claim language – something Health Grades should do through testimony, not a jury instruction.

## JURY INSTRUCTION NO. 4

### *Infringement – Generally*

Questions _____ through _____ of the Verdict Form read as follows:   [QUESTIONS FROM VERDICT FORM TO BE INSERTED].

I will now instruct you as to the rules you must follow when deciding whether Health Grades has proven that MDx infringed any of Health Grades' asserted claims.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent.   Any person or business entity who has engaged in any of those acts without the patent owner's permission infringes the patent.   Here, Health Grades alleges that the Accused Systems infringe claims 1, 4 through 9, 11, and 14 through 16 of Health Grades' patent.

You have heard evidence about both the HealthGrades.com website and MDx's accused Vitals.com website.   However, for purposes of deciding the issue of infringement, you may not compare MDx's accused Vitals.com website to the HealthGrades.com website.   Rather, you must compare each of the Accused Systems to the asserted claims of Health Grades' patent when making your decision regarding infringement.

A patent may be infringed directly or indirectly.   In this case, Health Grades contends that Configurations 1-4 directly infringe the '060 patent and that MDx indirectly infringes with regard to the iTriage system.   Direct infringement results if the accused product or method is covered by at least one claim of the patent.   Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

<u>Sources and Authorities:</u>

AIPLA MODEL INSTRUCTIONS, §3.0 (2012); 35 U.S.C. § 271; *Merial Ltd. v. CIPLA Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012); *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010); *WordTech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1313-18 (Fed. Cir. 2010).

# JURY INSTRUCTION NO. 5

### *Direct Infringement - Knowledge of the Patent and Intent to Infringe are Immaterial*

In this case, Health Grades asserts that MDx has directly infringed the '060 patent by making, using, selling and offering for sale Configurations 1-4.  MDx is liable for directly infringing Health Grades' patent if you find that Health Grades has proven that it is more likely than not that MDx made, used, imported, offered to sell, or sold the invention defined in at least one claim of Health Grades' patent.

Someone can directly infringe a patent without knowing of the patent or without knowing that what they are doing is an infringement of the patent.  They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of the patent.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §3.1 (2012); 35 U.S.C. § 271(a); *Global-Tech Appliances, Inc.,  v. SEB, S.A.*, 563 U.S. ___ , n.2, 131 S. Ct. 2060, 2065 n.2 (2011); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

## JURY INSTRUCTION NO. 6

### *Indirect Infringement -- Inducing Patent Infringement*

Health Grades alleges that MDx actively induced [Aetna Inc. and its subsidiaries, which I will collectively refer to as "Aetna")] [Aetna Life Insurance Company] to directly infringe Health Grades' patent, either literally or under the doctrine of equivalents, through the iTriage app. and website.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

To prove this allegation, Health Grades must establish by a preponderance of the evidence that:

1.     [MDx aided, instructed, or otherwise acted with the intent to cause acts by Aetna that would constitute direct infringement of the patent][ that MDx took action during the time the '060 patent was in force intending to cause the infringing acts by Aetna Life Insurance Company];

2.     MDx knew of the '060 patent at that time;

3.     MDx knew that its actions, if taken, would result in infringement of at least one claim of the patent; and

4.     [A direct infringement of at least one patent claim occurred][the acts were actually carried out by Aetna Life Insurance Company and directly infringe that claim].

To find that MDx induced infringement, it is not necessary to show that MDx has directly infringed as long as you find that there has been direct infringement in connection with the iTriage system.  Direct infringement may be proven through the combined actions of multiple parties, such as MDx and Aetna and its subsidiaries. However, if there is no direct infringement,

24

MDx cannot have induced infringement of the patent.  In order to establish active inducement of infringement, it is not sufficient that [Aetna] [Aetna Life Insurance Company] itself directly infringed the claim. Nor is it sufficient that MDx was aware of the act(s) by [Aetna] [Aetna Life Insurance Company] that allegedly constitute the direct infringement. Rather, you must find that MDx specifically intended [Aetna] [Aetna Life Insurance Company] to infringe the '060 patent[or that MDx believed there was a high probability that Aetna would infringe the '060 patent, but remained willfully blind to the infringing nature of Aetna's acts].  In this connection, if you find that MDx had a good faith basis to believe that the iTriage product did not infringe, or that the claims of the '060 patent were invalid [or unenforceable], this may negate a finding that MDx had the specific intent that is required for MDx to be liable for inducement.


Sources and Authority:

AIPLA MODEL INSTRUCTIONS, §3.3 (2012); FED. CIR. BAR ASSOC. MODEL PATENT JURY INSTRUCTIONS, B.3, 3.2 (2013); 35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. v. SEB S. A.*, __ U.S. __, __; 131 S.Ct. 2060, 2068-2071; 179 L.Ed. 1167, 1177-1180 (2012); *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308–19 (Fed. Cir. 2012) (*en banc*), *cert. granted*, 134 S. Ct. 895 (2014); *Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (citation and internal quotation marks omitted); *MGM Studios Inc. v. Grokster*, 419 F.3d 1005 (Fed. Cir. 2005); *Insituform Techs., Inc. v. CAT*

*Contracting, Inc.*, 385 F.3d 1360, 1377-78 (Fed. Cir. 2004) (inducer must have actual or constructive knowledge of the patent); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003) (no inducement where evidence did not show defendant knew or should have known that his actions were encouraging infringement); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-66 (Fed. Cir. 2003) (no infringement where lack of intent to induce); *Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361 (Fed. Cir. 2013); *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308–19 (Fed. Cir. 2012) (en banc), *cert. granted*, 134 S. Ct. 895 (2014).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 6

### Joint Response Regarding Global Disputes

- <u>Inequitable Conduct</u>:  As discussed *supra*, the parties dispute whether the jury should be instructed on the law of inequitable conduct.

.

### Health Grades' Response:

- <u>Aetna Inc. and its Subsidiaries</u>:  MDx objects to Health Grades' reference to Aetna and its subsidiaries in this instruction.  MDx argues that the instruction should be limited to Aetna Life Insurance Co. MDx's objection is without merit.  Further, this objection relates to disputed issues of fact and is not properly raised in connection with jury instructions, whose purpose is to instruct the jury on the law, not to resolve disputed issues of fact.

First, Health Grades has repeatedly asserted that the indirect infringement claims *relate to the iTriage mobile app and website*, and the entities that are responsible for this product.  Health Grades will introduce evidence that these entities include MDx and Aetna, Inc. and its subsidiaries (Aetna Life, Aetna Health, and iTriage, LLC). For example, in the Pretrial Order, Health Grades asserted:

> Defendant MDx has been indirectly infringing claims 1,4-9 and 14-16 of the '060 Patent, and continues to do so, by actively inducing Aetna to infringe under 35 U.S.C. § 271 (b) by making, using, selling, and/or

offering to sell one or more systems, methods and/or apparatuses comprising Aetna's iTriage App that infringe the foregoing claims.

Pretrial Order (Doc. 544 at p. 13). In its claim chart filed in connection with its motion to amend the complaint to assert indirect infringement based on the iTriage product, Health Grades stated: "Aetna Inc.'s ("Aetna") iTriage mobile application . . . directly infringes this claim . . ." (Doc. #253-2 at p. 1.)

Second, the jury instruction makes clear that this cause of action is about the iTriage mobile app. and website. This is also consistent with Instruction No. 4 which states: "In this case, Health Grades contends that Configurations 1-4 directly infringe the '060 patent and that MDx indirectly infringes with regard to the iTriage system."

MDx's arguments about the various Aetna entities are irrelevant to law of inducing infringement. Health Grades is suing MDx, not Aetna. While indirect infringement requires a showing of direct infringement (which in this case will be shown through the iTriage system), it does not require Health Grades to plead or prove the identity of the direct infringer. *R+L Carriers, Inc. v. DriverTech LLC*, 681 F.3d 1323, 1336 (Fed. Cir. 2012). Indeed, the Federal Circuit has upheld claims of indirect infringement premised on evidence of direct infringement by unknown parties. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009) ("[T]he jury in the present case could have reasonably concluded that . . . more likely than not one person somewhere in the United States had performed the claimed method using the Microsoft products.")

Health Grades' proposed language accurately reflects that contentions that Health Grades will make at trial and the law that the jury must use to decide whether Health Grades has proven its contentions.

- Direct Infringement based on Combined Actions of MDx & Aetna: MDx's proposed language (highlighted blue) is inconsistent with the Federal Circuit's *en banc* decision in *Akamai*. In *Akamai*, the Federal Circuit stated:

    In doing so, we reconsider and overrule the 2007 decision of this court in which we held that in order for a party to be liable for induced infringement, some other single entity must be liable for direct infringement. BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373 (Fed. Cir. 2007). To be clear, we hold that HN2all the steps of a claimed method must be performed in order to find induced infringement, but that it is not necessary to prove that all the steps were committed by a single entity.

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308–19 (Fed. Cir. 2012) (*en banc*), *cert. granted*, 134 S. Ct. 895 (2014). In this case, Health Grades served MDx with a lengthy claim chart detailing how the combined actions of MDx and Aetna met

each and every element of the asserted claims. The jury should be instructed on the law as set forth in *Akamai.*

- <u>Willful Blindness</u>:  Health Grades' proposed language comes from the AIPLA Model Instruction and the Supreme Court's decision in *Global-Tech Appliances, Inc. v. SEB S. A.*, __ U.S. __, __; 131 S.Ct. 2060, 2068-2071; 179 L.Ed. 1167, 1177-1180 (2012).

- <u>Point 4</u>: Health Grades' proposed language comes from the AIPLA Model Instruction and when taken in context with the other three points makes clear that the direct infringement must relate to the actions that were induced by MDx, while remaining consistent with the law of Akamai holding that the direct infringement may be based on actions of multiple parties.

### **MDx's Response:**

- <u>Aetna and iTriage</u>:  Health Grades conflates iTriage, "Aetna" and Aetna "subsidiaries". Contrary to the Health Grades position, the facts and relations are these:  (1) MDx leased data to Aetna Life; (2) Aetna Life is not directly related to the company iTriage; (3) iTriage, instead, is a subsidiary of  Aetna Health Holdings, a different entity from the one that dealt with MDx; (4) Aetna, Inc. is a parent company of Aetna Health and Aetna Life.

- <u>The Aetna Shell Game</u>:  This Aetna shell game (with Health Grades identifying a different "Aetna" entity whenever it suits the Health Grades purpose) is deliberately vague and confusing, and is not supported in the Pretrial Order.  The only allegation in the Pretrial Order, is that Aetna Life Insurance Company is infringing.  (While "Aetna Life" is not used in the Pretrial Order, Health Grades identifies "Aetna" as the entity to which MDx contracted to license data.  Pretrial Oder, Dkt. #544, page 5.)  All infringement allegations are then directed to that "Aetna" (*e.g.,* page 13: "actively inducing Aetna to infringe").  No other Aetna entity, or iTriage, is identified as an infringer.   Aetna, Inc. is not mentioned at all in the Pretrial Order; nor is Aetna Health; nor is any "subsidiary" of Aetna Life.  And "iTriage" is only used to address the application.  Health Grades' attempt here to sweep in all "subsidiaries" of a vague "Aetna" entity under the infringement allegations is not supported by the Pretrial Order, and in any event is utterly baseless.  If Health Grades is allowed to globally accuse every "Aetna" entity of infringement (or even one of them), for the acts of a lone subsidiary, then MDx requests an instruction on "sham" and "alter ego" corporations because that is the only way that a parent could be held to be directly infringing through the acts of subsidiary. These facts are part of the basis for MDx's Rule 11 Motion (Dkt. #564), which was denied as premature and will be refiled.

- <u>Who was induced to do what?</u>  Health Grades argues that it does not have to identify a direct infringer, and so misses the point entirely.  The question is: who did MDx allegedly induce? Health Grades has no answer, and so globally identifies every "Aetna" entity, including the ultimate parent Aetna, Inc., all its subsidiaries, and even its grandchild subsidiary iTriage LLC.  Whoever is being induced must be the direct infringer.  The cases cited by Health Grades regarding unidentified direct infringers are not on point – they had fact patterns,

common in this area, where an end-user of a products was induced from, for example, a user manual issued by the defendant.  There, as here, the plaintiff must prove that the direct infringer is the entity being induced.

- The *Akamai* decision, even if it does withstand Supreme Court scrutiny, does not allow the alleged inducement to be spread out among entire corporate families.  That is, no legal precedent allows Health Grades to point to MDx contacts only with Aetna Life, and then claim that these contacts somehow induced a direct infringement by the subsidiary of a sister company of Aetna Life.  There is no rule, in patent cases of otherwise, that entire families of corporations should be treated as if they were a single company.

- <u>Not Any Direct Infringement</u>:  Health Grades' proposed point 4 is legally wrong, as it fails to tie the direct infringement to any of the acts of MDx, or even the alleged direct infringer (e.g., Health Grades instruction only requires that "a direct infringement . . . occurred" not necessarily infringement by an induced entity).

- <u>Combined Actions</u>:  MDx also objects to the "combined actions" argument.  First, the standard from the *Akamai* case is currently before the Supreme Court and MDx expects the Supreme Court to reject this standard.  Second, Health Grades has never alleged that anything any Aetna entity did was part of a combined infringement with Aetna Life, and there is no such allegation in the Pretrial Order.

- <u>Willful blindness</u>:  Willful blindness regarding inducement has never been alleged by Health Grades, and is not mentioned anywhere in the Pretrial Order.  The reason Health Grades did not allege it is because the facts do not support it.  That is, contrary to the Health Grades proposed language, the Supreme Court requires some ***deliberate act*** to try to avoid learning a fact (here, the alleged infringement) – something more than even recklessness or negligence. *Global-Tech Appliances, Inc. v. SEB S. A.*, __ U.S. __, __; 131 S.Ct. 2060, 2068-2071; 179 L.Ed. 1167, 1177-1180 (2012).

## JURY INSTRUCTION NO. 7

### *Indirect Infringement -- Contributory Infringement*

Health Grades asserts that MDx has contributed to infringement by [Aetna Inc. and its subsidiaries] [Aetna Life Insurance Company] [by developing and maintaining the database of physician information that is used by the iTriage system] [by selling it data on healthcare providers].    As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

To establish contributory infringement, Health Grades must prove by a preponderance of the evidence that:

(1)     MDx sells within the United States a component of a product, or apparatus for use in a process, during the time the '060 patent was in force;

(2)     the component or apparatus has no substantial, noninfringing use;

(3)     the component or apparatus constitutes a material part of the invention;

(4)     MDx was aware of the '060 patent and knew that the product it sold has no other substantial use other than as an infringement of the '060 patent; and

(5)     that use directly infringes at least one claim of the '060 patent.

A "substantial non-infringing use" is one that is not occasional, farfetched, impractical, experimental, or hypothetical.

To find contributory infringement, it is not necessary to show that MDx has directly infringed as long as you find that there has been direct infringement in connection with the iTriage system.  However, if there is no direct infringement, MDx cannot have contributed to the infringement of the patent.

[If you find that MDx had a good faith basis to believe that the iTriage product did not infringe, or that the claims of the '060 patent were invalid or unenforceable, this may negate a finding that MDx was aware that the component had no use other than as an infringement.]

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §3.4 (2012); 35 U.S.C. § 271(c); FED. CIR. BAR ASSOC. MODEL PATENT JURY INSTRUCTIONS MODEL INSTRUCTIONS B.3, 3.3 (2013); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012) ; *R+L Carriers, Inc. v. DriverTech LLC*, 2012 U.S. App. LEXIS 11519 at *27-28 (Fed. Cir. June 7, 2012); *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1353 (Fed. Cir. 2010); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308–19  (Fed. Cir. 2012) (*en banc*); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1327 (Fed. Cir. 2008), *cert denied*, 129 S. Ct. 2864 (2009); *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1374 (Fed. Cir. 2003); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001) (reversing district court's finding of no contributory infringement and inducement); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 7

### Health Grades' Response:

- <u>Aetna Inc. and its Subsidiaries</u>:  MDx objects to Health Grades' reference to Aetna and its subsidiaries in this instruction.  MDx argues that the instruction should be limited to iTriage, LLC (which is a subsidiary of Aetna Inc.). MDx's objection is without merit for the same reasons discussed in connection with the Inducement instruction.

- <u>Acts Accused of Infringing</u>:  Health Grades has accused MDx of contributory infringement based on the following conduct:

  > MDx developed, keeps, maintains, and manages the database used by the iTriage Apps. Without this information, iTriage would not be able to display the claimed information in the application.

  > MDx licenses to Aetna all of the types of data specified in the claims of the '060 patent.

  > . . . .

  > Further, MDx has sold a component of the patented invention, namely "a **custom** data extract from the Master Database" that collectively includes all of the information required by the asserted claims of the '060 patent."

  Supp. iTriage Claim Chart at pp. 1-3.

- <u>Direct Infringement based on Combined Actions of MDx & Aetna</u>:  contributory infringement requires proof of direct infringement, but that direct infringement may be based on the combined actions of multiple parties.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306 (Fed. Cir. 2012)**.**

- <u>Good Faith Defenses</u>: there is no legal support for applying the good faith as a defense to contributory infringement.  *Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361 (Fed. Cir. 2013) is limited to inducing infringement.  Although several other cases apply this rule to inducing infringement, Health Grades is not aware of any case that applies this rule to contributory infringement.

### MDx's Response:

- <u>The Aetna Shell Game</u>:  Health Grades' proposed instruction is vague and suffers from the same problem as Health Grades' inducement instruction regarding the Aetna Shell Game. Please see the issues above regarding inducement.

- <u>Acts Accused of Infringing</u>:  The statute only allows sales and offers for sale as infringing acts.  35 U.S.C. §271(c) ("whoever offers to sell or sells…").  Moreover, Health Grades only alleged sales in the Pretrial Order.  Dkt. #544, page 13 ("offering to sell and/or selling components").

- <u>Direct Infringement based on Combined Actions of MDx & Aetna:</u>  See MDx comments re inducement, which is the application of the *Akamai* case.  Health Grades dropped its allegations of joint infringement long ago; and Health Grades cites no case applying the *Akamai* standard to contributory infringement.

- <u>Good Faith Defenses:</u> this is a logical extension of *Commil USA, LLC v. Cisco Systems, Inc.,* 720 F.3d 1361 (Fed. Cir. 2013).  For example, if MDx thought the data would not meet the claim elements, how could it know (point 4) that it had no use other than as an infringement?  See also the pending motion for summary judgment, Dkt. #490.

## JURY INSTRUCTION NO. 8

### *Literal Infringement*

To determine literal infringement, you must compare each of these Accused Systems with each patent claim that Health Grades asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if the Accused System, or portion of the Accused System, includes each and every element or method step in that patent claim.  If the accused system does not contain one or more elements or method steps recited in a claim, that system does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually.

You should compare the Accused System to the invention described in each patent claim it is alleged to infringe.  The same element or method step of the accused website may satisfy more than one element of a claim.

[A product or process accused of infringing a patent infringes if it is reasonably capable of satisfying the claim elements, even though it may also be capable of operating in a way that does not infringe.]

[A product or process accused of infringing the '060 patent does not infringe if it is only capable of satisfying the claim elements; rather, Health Grades must prove that each specific element of the claim is actually met and has been carried out.]

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §3.2 (2012); *Intellectual Sci. & Tech. v. Sony Elect.*,

589 F.3d 1179, 1183 (Fed. Cir. 2009); *Hutchins v. Zoll Med. Corp.*, 492 F. 3d 1377, 1380 (Fed. Cir. 2007); *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1381-82 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481-82 (Fed. Cir. 1984); *ePlus v. SAP America, Inc.*, Civil Action No. 3:05-cv-281 (JRS) (E.D. Va. 2006) (Jury Instruction No. 19); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010); *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118-19 (Fed. Cir. 2002); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 8

### Joint Response Regarding Global Disputes

- Capability:  As discussed *supra*, the parties dispute how the jury should be instructed on the reasonable capability test.

# JURY INSTRUCTION NO. 9

## *Infringement Under the Doctrine of Equivalents*

If you decide that a configuration does not literally infringe an asserted patent claim, you must then decide whether it is more probable than not that it infringes the asserted claim under what is called the "doctrine of equivalents."  Health Grades asserts that Configurations 1, 2, 3, and 4-the iTriage system infringe under the doctrine of equivalents.

Under the doctrine of equivalents, an Accused System can infringe an asserted patent claim if it includes parts or steps that are equivalent to those requirements of the claim that are not literally present in the Accused System. If an Accused System is missing an equivalent part or step to even one part or step of the asserted patent claim, it cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the Accused System has an equivalent part or step to any individual claim requirements that are not literally present in the Accused System.

A part or step of a system or method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.  One way to decide whether any difference between a requirement of an asserted claim and a part or step of the system or method is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the system or method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the system or method is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or step with the claimed requirement.  However, the known interchangeability between the claim requirement and the part or step of the system or method is not necessary to find infringement under the doctrine of equivalents.  Interchangeability itself is not sufficient; in order for the structures to be considered to be interchangeable, the interchangeability of the two structures must have been known to persons of ordinary skill in that art at the time the patent issued.

Further, the same element or method step of the Accused System or method may satisfy more than one element of a claim.  Additionally, a single claim element may be distributed into multiple components of an Accused System or method or multiple claim elements may be consolidated into a single component of the Accused System or method.  The fact that a structure or act, or a set of structures or acts, is known now and is "equivalent," however, is not enough. The structure or act, or a set of structures or acts, must also have been available at the time the patent issued.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §3.11 (2012); FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS NO. B.4.3c (Feb. 2012); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co, v. Linde Air Prods. Co.*, 339 U.S. 605, 607-9 (1950); *Johnson & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046, 1053-54 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994);

37

*Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 325 (Fed. Cir. 1985); *Searfoss v. Pioneer Consolidated Corp.*, 374 F.3d 1142, 1151 (Fed. Cir. 2004); *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 989 (Fed. Cir. 1989), *modified*, 872 F.2d 978 (Fed. Cir. 1989); *Boston Scientific Corp. v. Schneider (Europe) AG*, 983 F. Supp. 245, 261 (D. Mass. 1997); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1018-19 (Fed. Cir. 2006) (citing *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1317 (Fed. Cir. 1998).

# JURY INSTRUCTION NO. 10

### *Limitations on the Doctrine of Equivalents*

[Although the applicability of these limitations is ultimately decided by the Court, this instruction is provided for the case in which the Court decides to submit these issues to the jury for advisory findings.]

MDx has argued that Health Grades cannot assert infringement under the doctrine of equivalents for various claim elements due to claim amendments and statements Health Grades made to the Patent Office in order to get the patent claims allowed in the first place. This is called "prosecution history estoppel." Specifically, MDx contends that Health Grades added these limitations in response to prior art rejections, and argued that these elements distinguished the prior art that was known to the patent examiner. When a claim element was added during prosecution of the patent for reasons related to patentability, the patent owner (here, Health Grades) is presumed to be barred from employing the doctrine of equivalents to cover territory between the original claim and the amended claim. Thus, you must presume that Health Grades is barred from making equivalents argument in such situations.

In response to the MDx claim of prosecution history estoppel and this presumption, Health Grades argues for some elements that the reason the claims were changed and it made these arguments to the Patent Office was only "tangential" to what it alleges to be equivalent. If the reason for the change in the claims and the argument was only "tangential" then the presumption of estoppel is rebutted. However, the tangential exception is a very narrow exception. You must focus on the patentee's objectively apparent reason for the narrowing amendment and Health Grades must demonstrate that the rationale underlying the amendment

bore no more than a tangential relation to the equivalent or, in other words, that the narrowing amendment and arguments were only peripheral, or not directly relevant, to the alleged equivalent.  Additionally, the reason for the narrowing amendment must be discernible from the prosecution history record.  You may not find that the alternative feature of the Vitals website is an equivalent to a claim limitation if that requirement was added to the claim by amendment during the prosecution of the applications that led to issuance of the '060 patent, unless you also find that this requirement was only tangential to patentability.

Another limitation on finding infringement by equivalents is vitiation. You may not determine that an alternative aspect of a product or process is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement, or cover its opposite. If you find that the alleged equivalent is the opposite of the claim requirement, you may not find the accused element to be equivalent.

Another limitation on infringement by equivalents is that an alleged equivalent feature cannot be found equivalent if it is disclosed in the patent specification, but not included in the literal claim language.  When a patent drafter discloses but declines to claim subject matter, this action dedicates that unclaimed subject matter to the public.

Sources and Authorities:

FED. CIR. BAR ASSOC. MODEL PATENT JURY INSTRUCTIONS MODEL INSTRUCTIONS B.3,.1d (2013); Applied Med. Res. Corp. v. Tyco Healthcare Group LP, 2013 U.S. App. LEXIS 17818 (Fed. Cir. Aug. 27, 2013); Honeywell Int'l v. Hamilton Sundstrand Corp., 370 F.3d 1131 (Fed. Cir. 2004); Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,

344 F.3d 1359 (Fed. Cir. 2003) (en banc); *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054, (Fed. Cir. 2002) (disclosed but not claimed dedicated to the public); Interactive Pictures Corp. v. Infinite Pictures, Inc., 274 F.3d 1371, 1380 (Fed. Cir. 2001); Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1320 (Fed. Cir. 1999); Cybor Corp. v. Fas Techs., 138 F.3d 1448, 1460 (Fed. Cir. 1998); Wilson Sporting Goods Co. v. David Geoffrey & Assocs., 904 F.2d 676, 684 (Fed. Cir. 1990).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 10

### Health Grades' Response:

- The issues of whether infringement under the doctrine of equivalents is barred by prosecution history estoppel or vitiation (i.e., the all elements rule) are issues of law that actually been decided by this Court.

- Regarding prosecution history estoppel, this Court stated that it does not bar the doctrine of equivalents in this case:

> **The Court does not find the prosecution history in this case constitutes such "clear and unmistakable" evidence that Health Grades disclaimed coverage of comparison ratings "outside of" provider reports that the application of the doctrine of equivalents should be precluded at the summary judgment stage.** *See Omega*, 334 F.3d at 1325. Indeed, as previously explained, the contours of "inside" and "outside" provider profiles or reports—for purposes of equivalents—are themselves somewhat amorphous in this case.

(Doc. #696 at p. 26 (emphasis added).)  Although the Court went on to say it reserves the right to make further rulings pertaining to prosecution history for "**other aspects of this litigation (e.g., obviousness)**", this sentence does not change the fact that the Court found the prosecution does not bar the doctrine of equivalents. Thus, the jury should not be instructed on this issue and to do so would only serve to waste time and cause confusion.

- This Court also found that vitiation does not bar the doctrine of equivalents:

> Extrapolating from the case law on physical products, if the patented and allegedly infringing products are antitheses of one another in terms of a claim limitation, then application of the doctrine of equivalents should be barred where the claim limitation of the patent would be entirely vitiated

by such application. That is not clearly the case here. **Consequently, claim vitiation does not serve to preclude application of the doctrine of equivalents in this case**.

(Doc. #696 at p. 21 (emphasis added).)  There is no reason to instruct the jury on this issue. Thus, the jury should not be instructed on this issue and to do so would only serve to waste time and cause confusion.

- Health Grades strenuously opposes MDx's request for further briefing and argument on the estoppel and vitiation issues. This request another example of MDx's penchant to request reconsideration of every issue it loses.  *See* 6/5/13 Hearing Tr. at pp. 26:12-20 (Boland, J.: I find that MDX has engaged in seriatim motion practice. It filed a motion. It lost the motion. It now has filed a new motion based upon the same facts but seeking different results or relief, and that's not how the Federal Rules of Civil Procedure were designed to work. If that were the case there would be no end to the possible briefing that would go on, and cases would -- all cases would have nearly 600 docket entries as this case now approaches.");  Health Grades, Inc.'s Brief Opposing MDx Medical, Inc.'s Request For Reconsideration Of Claim Constructions In The Markman Order (Doc. 702).

- The parties submitted extensive briefing and oral argument regarding on both prosecution history estoppel and vitiation and this Court ruled on them in connection with the Summary Judgment Order. Contrary to MDx's argument set forth below, this Court did consider the full prosecution history (*see* Doc. #201-2 through Doc. #201-13) in connection with MDx's summary judgment motion (Doc. #195) and *all* of the arguments relating to estoppel and vitiation (both for and against) of the comparison ratings claim element. If MDx felt expert testimony would support its arguments it could have and should have provided this testimony in connection with summary judgment motion. It did not do so and it should be far too late to do so now.

- Health Grades further objects to MDx's proposed instruction because it is argumentative and biased.  The AIPLA and the Federal Circuit Bar Association put together model instructions relating to these issues that are designed to be fair, impartial, and not biased toward either patent owners or defendants.  MDx's proposed language does not follow either of the model rules set forth by the AIPLA or the Federal Circuit Bar Association.

- Regarding MDx's dedication to the public instruction, MDx did not disclose this defense in its response to Health Grades' Interrogatory No. 2, which sought MDx's contentions about non-infringement.  This has not been an issue in this case and should not be part of the jury instructions.  To include this instruction will serve only to create confusion.

<u>**MDx's Response:**</u>

- The Court has not decided prosecution history estoppel issues, but instead expressly reserved this issue.  Dkt. #696, pages 26-27 ("Notwithstanding the foregoing [the Health Grades

quote], ***the Court reserves the right to make further rulings pertaining to prosecution history*** . . . . [T]he record provided by the parties on this motion is inadequate for detailed consideration of the full implications of the prosecution history in this case."). Health Grades' quote from the Court's summary judgment decision, bolded by Health Grades, says nothing more than the Court will not rule on prosecution history estoppel "***at the summary judgment stage***." *Id.* at 26 (emphasis added).

- Health Grades' quote on the vitiation issue is based entirely on one of Health Grades' "comparison ratings" arguments. Health Grades' attempt to extrapolate this lone analysis to ***all*** Health Grades infringement allegations on the comparison ratings issue is unsupported by anything in the Court's decision. Indeed, that decision addressed "***one instance*** where it is less clear whether a noticeable departure from the profile has taken place – the 'Search All Similar Doctors' hyperlink..." (emphasis added), and the parties have since debated whether Health Grades' other arguments are vitiated. For example, the parties are unsure as to whether Health Grades will be allowed to argue at trial that ratings of only the ***one*** "first healthcare provider" are comparison ratings of multiple healthcare providers included in the report; or that an award for the first healthcare provider is "comparison ratings of multiple healthcare providers"; or that the back button on the browser, allowing a user to go back to the user-generated results list, makes that list part of the provider report. Health Grades intends to try a kitchen-sink approach to this issue at trial, and MDx respectfully submits that the vitiation (and prosecution history estoppel) issues should be resolved before then. Resolution of these issues will substantially narrow issues for trial.

- Particularly in light of the Health Grades' comments, MDx respectfully suggests that the Court hold a hearing on the estoppel and vitiation issues, with expert testimony (if the Court so desires), and a full review of the prosecution history.

- Health Grades ignores much of its own history, and exaggerates mightily about the prior proceedings in this case ("MDx's penchant to request reconsideration of every issue it loses…" – neither of the motions identified are requests for reconsideration). But Health Grades needless *ad hominem* attacks aside, MDx is not requesting the Court to reconsider anything it has already done. If the Court, by its summary judgment ruling, intended to foreclose all prosecution history estoppel, then the Health Grades understanding of the Summary Judgment decision will be correct. Similarly, if the Court has ruled that all the other Health Grades alleged "comparison ratings" do not vitiate the claim language (*e.g.,* if a rating of a single provider as "ratings of multiple healthcare providers" does not vitiate; if a browser's back button makes a results list part of a healthcare provider report without vitiation; if an award for the first healthcare provider can be "ratings of multiple healthcare providers" without vitiation; etc.), then Health Grades' understanding of that part of the Summary Judgment decision is correct. In either event, the record will be clarified for both parties at trial and in the event the issue is eventually appealed. MDx is not asking the Court to reconsider any issues already decided – it simply disagrees with Health Grades' argument that the Court intended to, or did, foreclose all estoppel and vitiation arguments by MDx, rather than simply resolving the summary judgment issues.

- Health Grades' complaint about not precisely following a model rule is not much of a complaint (those two model instructions do not track each other, either, but that doesn't make them both wrong).  Health Grades does not identify anything legally wrong with the instruction, nor does Health Grades propose language of its own.

## JURY INSTRUCTION NO. 11

### *Types of Claims*

There are different kinds of claims at issue in this case.  There are "method" claims and one "system" claim.  All claims contain elements.

The method claims are Claims 1, 4 through 9, 11, and 14.  A method claim recites a series of steps that must be performed.  To infringe a method claim, it must be proved that use of an Accused System performs each of the steps recited in that particular method claim.

The system claims in this case are Claims 15 and 16.  To infringe a system claim, the Accused System must contain each of the elements recited in that particular system claim.


Sources and Authorities:

*ePlus, Inc. v. Lawson Software, Inc.*, Civil Action No. 3:09-CV-620 (REP) (E.D. Va. 2011) (Jury Instruction No. 18).

## JURY INSTRUCTION NO. 12

### *Infringement of Dependent Claims*

There are two different types of claims in the patent.  One type of claim is called an independent claim.  The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent.  An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

This case deals with two independent claims: Claims 1 and 15.  It also deals with nine dependent claims: Claims 4-9, 11, 14, and 16.

For example, claim 1 is an independent claim and recites several elements.  Claim 4 is a dependent claim that refers to claim 1 and includes an additional element.    Claim 4 requires each of the elements of claim 1, as well as the additional elements identified in claim 4 itself. Namely, claim 4 also requires that the healthcare provider report include a hyperlink to an affiliated hospital, medical center, or other type of treatment center.

To establish literal infringement of a dependent claim, Health Grades must show that it is more likely than not that MDx's website includes each and every element of the dependent claim and the claims from which that dependent claim depends.

If you find that the independent claim from which a dependent claim depends is not literally infringed, then you cannot find that the dependent claim is literally infringed.

45

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §3.6 (2012); *Wolverine World Wide v. Nike Inc.*, 38 F.3d 1192, 1196-99 (Fed. Cir. 1994) (citing Johnston v. IVAC Corp., 885 F.2d 1574, 1577-89 (Fed. Cir. 1989)); *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 nn.9&10 (Fed. Cir. 1989); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985).

# JURY INSTRUCTION NO. 13

## *Infringement of Open Ended or "Comprising" Claims*

The preamble to claims 1 and 15 use the term "comprising."  For example, the preamble to claim 1 reads "a computer-implemented method of providing health-care provider information to potential patients, said method comprising:"  The word "comprising" means "including the following but not excluding others."

Here, if you find that an Accused System includes all of the elements in claims 1 and/or 15, the fact that MDx's website might include additional components or method steps would not avoid literal infringement of each claim so long as the presence of the additional components or method steps does not negate an element of the claim.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §3.7 (2012); *Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986); *AB Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983).

## JURY INSTRUCTION NO. 14

### *Reasonably Capable of Infringement*

In every infringement analysis, the language of the claims, as well as the nature of the Accused System or method, dictates whether an infringement has occurred.  To infringe a claim that recites capability and not actual operation, an accused system or method need only be capable of operating the described mode.  Thus, depending on the claims, an accused system or method may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though the system or method also may be capable of non-infringing modes of operation. The fact that a product or process may operate in a manner that does not infringe is not a defense to a claim of infringement against MDx if the accused system is also reasonably capable of operating in a manner that satisfies the claim elements.

Sources and Authorities:

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204-5 (Fed. Cir. 2010):

### *Capability is not Enough*

The Accused System or method accused of infringing the '060 patent does not infringe any claim if any element of the claim is not actually met, even if the Accused System or method would be capable of meeting the missing claim element(s).

Sources and Authorities:

*Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) (claim construction is for the court); Claim language of the '060 Patent; Prosecution History of the '060 patent (changing claim language, e.g., from "for" performing to "that" perform); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1328-29 (Fed. Cir. 2010)* ("Unless the claim language only requires the capacity to perform a particular claim element, we have held that it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement*."); Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing L.P., 2003 U.S. Dist. LEXIS 23553, at \*135-36 (C.D. Cal. Dec. 3, 2003) (*capability of performing the claimed function was not evidence of actual use); *Oracle Corp. v. Parallel Networks, LLC, 375 Fed. Appx. 36 (Fed. Cir. 2010)* (similar claims to the '060 claims not treated as capability claims by the Federal Circuit)*; Oracle Corp. v. Parallel Networks, LLC,* 778 F. Supp. 2d 527 (D. Del. 2011).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 14

### Health Grades' Response

- Heath Grades' proposed instruction virtually quotes the Federal Circuit's *Finjan* decision, which states:

  "[I]n every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred." *Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002). Accordingly, we have held that, to infringe a claim that recites capability and not actual operation, an accused device "need only be capable of operating" in the described mode. *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991). Thus, depending on the claims, "an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of noninfringing modes of operation." *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001); *see also Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984,

> 994 (Fed. Cir. 2009) (noting that the "reasonably capable" test applies "only to claim language that specifies that the claim is drawn to capability").

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204-5 (Fed. Cir. 2010).

- MDx's proposed instruction is overly broad, contrary to the quoted language of *Finjan*, and thus is incorrect as a matter of law.

## **MDx's Response**

- *Finjan* (specifically, the Health Grades quote) supports the MDx position, because it confirms that **_the claims_** dictate whether capability alone is enough.  That determination is claim construction – for the Court, not the jury.  *Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).*   Please see the MDx Brief regarding claim construction for claim 15.  Dkt. #705.

# JURY INSTRUCTION NO. 15

*Extent of Infringement*

The claims all recite a "first healthcare provider" and require reports on that provider containing various elements.  The Court has construed "first healthcare provider" to mean a particular healthcare provider about whom information is requested and a report is produced.  To prove infringement, therefore, Health Grades must show that all the claim requirements related to the reports have been used in creating the same reports.  It is not enough for Health Grades to show that some reports were created using certain of the required report elements, and other reports were created using other claim elements.

If Health Grades is able to show that one or more reports were created using all the claim elements, that is not proof that the entire website infringes, or that creation and display of any other reports infringes the '060 patent.  It is Health Grades' burden to prove that at least one report was created using all the required report elements and that all the other claim elements are also satisfied.  If it does so, you must determine how many, or what percentage, of the use of the MDx website meets the claim language.

Sources and Authorities:

FED. CIR. BAR ASSOC. MODEL PATENT JURY INSTRUCTIONS MODEL INSTRUCTIONS B.3, 3.1 (2013);  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) (claim construction is for the Court); *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005) (infringement must be proven by a preponderance of the evidence); *Dynacore Holdings Corp. v.*

*U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) (where not all products would infringe, plaintiff must "point to a specific instance of direct infringement and restrict its suit to liability stemming from that specific instance"); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999) (a patentee must "prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim"); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993) (upholding lower court's finding of non-infringement based on plaintiff's failure to prove that the accused product met all of the claimed requirements); *Brooktrout, Inc. v. Eicon Networks Corp.*, 2005 U.S. Dist. LEXIS 47690, 11-13 (E.D. Tex. July 25, 2005) (refusing a broad injunction where only certain instances of infringement were proved: "Brooktrout's requested injunction, however, goes far beyond these specific instances of [proved infringement]"); *Oak Industries, Inc. v. Zenith Electronics Corp.*, 726 F. Supp. 1525, 1543 (N.D. Ill. 1989) (granting partial summary judgment on accused instrumentalities that plaintiff did not specifically prove to be infringing).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 15

### Health Grades' Response

- Health Grades objects to this instruction because it contains statements of disputed fact, which are not appropriate for jury instructions.  For example, this instruction incorrectly summarizes the claims of the '060 patent. The claims recite an "online information **system** for connecting healthcare providers with potential patients" and "computer-implemented method" of doing the same.  The claimed system includes both a database and web servers that allow potential patients to search for and receive information about healthcare providers. While two of the claimed elements of the independent claims relate to a report, the other four elements relate to collecting information in the database and allowing searches for information within the database.

- Health Grades objects that this instruction is argumentative and contrary to the Markman

Order:

> Claim 1 and Claim 15 describe the creation of the healthcare provider
> report by "using the healthcare provider-verified information, the patient-
> provided information, and the information verified by the independent
> third-party source." '060 Patent col. 20 ll. 58-62; *id.* col. 22 ll. 49-52. The
> parties disagree about whether, as defendant contends, the "use" must be
> of "all" the designated information. Defendant fails to persuasively
> explain why the Court should read such a limitation into claim language.
> Defendant argues that "the" information refers back to the previous
> references to the categories of information described earlier in Claim 1.
> That appears not to be in dispute, but also does not resolve whether "all"
> such information must be used when creating a report on a particular
> healthcare provider. Defendant does not explain why the use of a subset of
> "information" somehow renders that information no longer within the
> categories previously identified in Claim 1. Furthermore, the categories of
> information are being "used" to "create" a report. There is nothing in the
> patent that requires, when receiving, acquiring, or compiling information,
> a predetermination of what will ultimately be put into a report.

(Markman Order at p. 20 (Doc. #138).)

- Health Grades accuses four different configurations of MDx's vitals.com system and the jury
  will be asked to decide infringement for each of the asserted claims for each of the four
  configurations.  Each of physician reports created by an accused configuration are created the
  same way, using the same physician database. The jury's answer to these questions on the
  verdict form will provide sufficient information for the Court to frame an injunction.
  Further, if the jury finds infringement of any of these configurations for any asserted claim,
  they will be instructed to determine the amount of damages for such infringement.

- MDx's proposed instruction is not included in the model patent jury instructions set forth by
  the AIPLA or the Federal Circuit Bar Association for good reason.  It is wrong as a matter of
  law.  MDx argues that this is not a typical consumer product case.  But it is a typical software
  case like many other hundreds of software patent cases that are litigated in federal courts
  every year.  Yet MDx does not, and cannot, cite to any authority to support this convoluted
  and confusing instruction.  The law for proving infringement of a software patent is the same
  for proving infringement of a widget patent – the jury must determine whether each accused
  configuration meets every element of the asserted claims.

- Further, MDx's proposed instruction overlaps with and contradicts the earlier instruction
  (No. 8)  entitled "Literal Infringement," which states:

> A patent claim is literally infringed only if the Accused System includes
> each and every element or method step in that patent claim.  If the accused

system does[not] contain one or more elements or method steps recited in a
claim, that system does not literally infringe that claim.

Instruction No. 8 is a correct statement of the law, is based on the AIPLA Model Instructions
and is agreed to by both parties.  Giving MDx's proposed instruction no. 14, in addition to
instruction no. 8, will serve only to cause confusion.

## MDx's Response

- **_Every claim_** requires a request for a report on a specific provider; that a report be generated
  "using the healthcare provider-verified information, the patient-provided information, **_and_**
  the information verified by the independent third party source"; and then providing access to
  that report over the internet.  Exhibit C, claim 1, column 20, lines 58-67; *see also* claim 15,
  column 22, lines 48-57.

- As discovery has conclusively shown, only a trivial portion of the MDx reports (if any) are
  generated using these three data sources. MDx has 833,540 reports on its system as of last
  count, and only a tiny fraction of them could even potentially meet the claim language (for
  example, only 1.4% contain the three or more data elements received from a physician; only
  a portion of those have any patient ratings; etc.).  Health Grades no doubt hopes to convince
  the jury that a few reports meet the claim language, and thereby have the entire website
  declared infringing.  But no case law supports such an approach – Health Grades must prove
  infringement, and the extent of the infringement.  These questions are critically important for
  liability, damages, and other remedies.  For liability and remedies, both the Court and MDx
  must know which specific reports could be part of an infringing act – MDx must know which
  reports are infringing (if any) so they might be pulled from the website or changed; and there
  is no realistic way for the Court to frame an injunction without knowing what reports
  infringe.  And, of course, the extent of infringement is highly relevant to damages analyses.
  35 U.S.C. §284 ("The court shall award the claimant damages adequate **_to compensate for_**
  **_the infringement_** but in no event less than a reasonable royalty for the use of the invention by
  the infringer . . . ." (emphasis added); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869
  (Fed. Cir. 2010) ("[T]he trial court must carefully tie proof of damages to the claimed
  invention's footprint in the market place."); *AFG Indus. v. Cardinal IG Co.,* 224 Fed. Appx.
  956, 957 (Fed. Cir. 2007) (remanding because district court failed to allocate damages to
  units of the product **_actually using_** the claimed method); *Dynacore Holdings Corp. v. U.S.
  Philips Corp.,* 363 F.3d 1263, 1274 (Fed. Cir. 2004) (addressing infringement and
  injunctions: where not all products would infringe, plaintiff must "point to a specific instance
  of direct infringement and restrict its suit to liability stemming from that specific instance");
  *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 1 Fed. Appx. 879, 883-884 (Fed.
  Cir. 2001) ("if not every sale leads to an instance of infringement, it logically follows that not
  every lost sale profit should be compensated by the party inducing infringement. Therefore,
  in cases in which there is a question whether every sale leads to an instance of direct
  infringement, a patentee must, in addition to establishing that the four factors of the Panduit

test are satisfied, establish the connection between sales and direct infringement"); *Standard Havens Prods. v. Gencor Indus.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991) ("The patent damage award must therefore be vacated and the case remanded for redetermination of the proper award for lost profits based on [the actual number of infringing sales]"); *Fromson v. Western Litho Plate and Supply Co.,* 853 F.2d 1568, 1578 (Fed. Cir. 1988) ("Royalties are paid and payable on the use made of the invention, i.e., on *infringing products* and *infringing* uses of the claimed process.") (***emphasis by Federal Circuit***); *Nickson Industries, Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 799 (Fed. Cir. 1988) (affirming district court finding limiting damages to only the 41% of defendant's products that were found to have actually infringed); *Brooktrout, Inc. v. Eicon Networks Corp*., 2005 U.S. Dist. LEXIS 47690, 11-13 (E.D. Tex. July 25, 2005) (refusing a broad injunction where only certain instances of infringement were proved: "Brooktrout's requested injunction, however, goes far beyond these specific instances of [proved infringement]"); *Oak Industries, Inc. v. Zenith Electronics Corp.*, 726 F. Supp. 1525, 1543 (N.D. Ill. 1989) (granting partial summary judgment on accused instrumentalities that plaintiff did not specifically prove to be infringing).

- Consistent with the cited Federal Circuit law, the jury must determine (and Health Grades must prove) ***what specific of the MDx website are infringing***.  The jury needs guidance on this issue, which this instruction provides.  Health Grades is trying to treat this case like a typical consumer product patent case – where a single model of a consumer product is accused (so every product of that same model sold would be infringing or not).  But this case ***is very different*** – there are, effectively, 833,540 "products" (the MDx reports) and it is Health Grades' burden to show which could be part of an infringing act.  Indeed, for precisely this reason, Health Grades has demanded, and collected, extensive data from the MDx website indicating which ***specific reports*** meet various data source requirements.  As part of its demands, Health Grades insisted that reports be identified specifically by provider, and MDx complied with the Health Grades requests.

- If there is no report, or only a few reports, that meet the limitations of the claims about being generated using the right data elements from the right sources, then a user requesting any of the other reports clearly does not infringe.  *Ericsson, Inc. v. Harris Corp.,* 352 F.3d 1369, 1373 (Fed. Cir. 2003) (every element must be met for infringement); *see also Brooktrout, Inc. v. Eicon Networks Corp*., 2005 U.S. Dist. LEXIS 47690, 11-13 (E.D. Tex. July 25, 2005) (refusing request for relief that went "beyond [the] ***specific instances*** of [proved infringement]"; emphasis added); *Oak Industries, Inc. v. Zenith Electronics Corp*., 726 F. Supp. 1525, 1543 (N.D. Ill. 1989) (granting partial summary judgment on accused instrumentalities that plaintiff did not specifically prove to be infringing).

- Health Grades seems to think it can show random reports with the claim elements – Report A was created using the provider elements, Report B was created using the third party data elements, Report C was created using an alleged comparison rating, Report D was created using the proper patient ratings, etc. – and then have the jury find the ***entire website*** infringing.  That approach violates virtually every rule of patent infringement.

- Health Grades argues that the claims recite an online "system" or "method" and so misses the point entirely.  To infringe this and all the other claims, a user must request a report on the particular provider, and in order to meet the claim language that report must meet all the claim requirements about the various sources of data.  If a user requests a report that was not created using the specific data elements required to have been received from the healthcare provider, for example, no request for that report could infringe any claim.  Health Grades' recitation of the Markman Order also fails to address this issue, as that language only addressed whether all data collected must be shown in a report.

- As Health Grades admits in its first bullet point, "two of the claimed elements of the independent claims relate to a report" (actually four elements dictate what the report must contain, not two).  No twisting of the Court's Markman Order, or vague references to "systems" and "methods," can change the fact that requesting or producing any report that was not created using the required data elements does not infringe because the "all elements rule" "requires a determination that every claim limitation or its equivalent be found" for there to be infringement. *Ericsson, Inc. v. Harris Corp.,* 352 F.3d 1369, 1373 (Fed. Cir. 2003).

- If the jury does not determine which parts of the MDx system is infringing, on what will they base their damages award, and how will the Court evaluate that award in post-trial motions?

- If the jury does not state which parts of the MDx system is infringing, how will this Court frame an injunction?  It would seem an impossible task without any idea of what was actually infringing.

- If the jury does not state which part of the MDx system is infringing, what will the Federal Circuit review on appeal?  Does Health Grades expect the parties to dump the entire record on the Federal Circuit judges, and have the Federal Circuit judges guess about what parts the jury might have found to be infringing?

## JURY INSTRUCTION NO. 16

### *Willful Infringement*

In this case, Health Grades argues both that MDx infringed and, further, that MDx infringed willfully. If you have decided that MDx has infringed any valid and enforceable claim, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine by clear and convincing evidence that MDx acted recklessly. To prove that MDx acted recklessly, Health Grades must prove two things by clear and convincing evidence: The first part of the test is objective: Health Grades must persuade you that MDx acted despite a high likelihood that MDx's actions infringed a valid and enforceable patent. In making this determination, you may not consider MDx's state of mind. Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness.[4]

Only if you conclude that the MDx's conduct was reckless do you need to consider the second part of the test. The second part of the test does depend on the state of mind of the MDx. The patent holder must persuade you that MDx actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

---

[4] Footnote from Federal Circuit Bar Association Instruction:  In determining whether to present this instruction to the jury, the parties and the Court should recognize that "the objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to de novo review." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012). *See also id.* ("When the objective prong turns on fact questions, as related, for example, to anticipation, or on legal questions dependent on the underlying facts, as related, for example, to questions of obviousness, the judge remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury.").

To determine whether MDx had this state of mind, consider all facts which may include, but are not limited, to:

(1) Whether or not MDx acted in accordance with the standards of commerce for its industry;

(2) Whether or not MDx intentionally copied a product of Health Grades that is covered by the '060 patent;

(3) Whether or not there is a reasonable basis to believe that MDx did not infringe or had a reasonable defense to infringement;

(4) Whether or not MDx made a good-faith effort to avoid infringing the '060 patent, for example, whether MDx attempted to design around the '060 patent; and

(5) Whether or not MDx tried to cover up its infringement.

MDx argues it did not act recklessly because it relied on a legal opinion that advised it that the Configuration 1 of vitals.com did not infringe the '060 patent. You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.

<u>Sources and Authorities:</u>

FED. CIR. BAR ASSOC. MODEL PATENT JURY INSTRUCTIONS MODEL INSTRUCTIONS B.3, 3.8 (2013); 35 U.S.C. § 284; *In re* Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007) (standard for finding willfulness); *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc) (opinion of counsel defense); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001) (burden of proof for

willfulness); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) (identifying factors that may show willfulness); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir.1990) (history of Federal Circuit decisions on willfulness).

## <u>RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 16</u>

### <u>Global Disputes</u>

- The parties dispute whether copying allegations should be in the case (but see Dkt. #685).

## JURY INSTRUCTION NO. 17

### *Summary of Invalidity Defense*

I will now instruct you on the rules you must follow in deciding whether or not MDx has proven that claims 1, 4 through 9, 11, and 14 through 16 of the '060 patent are invalid. To prove that any claim of a patent is invalid, MDx must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

MDx contends that all asserted claims of the '060 patent are invalid because the claimed inventions are anticipated by Health Grades' own prior art.  You must not evaluate the prior art any differently, or in any way be hesitant to invalidate the claims, because the prior art is that of Health Grades.  The law provides that the use and publications of Health Grades is prior art if it meets the required criteria, such as being published, used, or known before the date of invention, or more than one year before the effective filing date.

I will now instruct you in more detail regarding MDx's allegation that the asserted claims of Health Grades' patent are invalid.

Sources and Authorities:

FED. CIR. BAR ASSOC. MODEL PATENT JURY INSTRUCTIONS MODEL PATENT JURY INSTRUCTIONS, §4.1 (2012); AIPLA MODEL INSTRUCTIONS, §4 (2012); 35 U.S.C. § 282 (patents presumed valid); *Microsoft Corp. v. i4i Limited Partnerhsip,* 131 S.Ct. 2238 (2011). Invalidity may be asserted for failure to comply with any requirement of 35 U.S.C. § 101, 102, 103, 112, or 251, as a defense to alleged infringement. *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) (to overcome presumption of validity, challenging party must present

clear and convincing evidence of invalidity); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463

(Fed. Cir. 1988) (clear and convincing evidence is that "which produces in the mind of the trier of

fact an abiding conviction that the truth of [the] factual contentions are highly probable") (alteration

in original) (citation and internal quotation marks omitted); *Hybritech Inc. v. Monoclonal Antibodies,*

*Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("Notwithstanding that the introduction of prior art not

before the examiner may facilitate the challenger's meeting the burden of proof on invalidity, the

presumption remains intact and on the challenger throughout the litigation, and the clear and

convincing standard does not change.").

## **RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 17**

### **Health Grades' Response**

- Health Grades' proposed instruction mirrors exactly the Fed. Cir. Bar Assoc.'s Model Instruction §4.1, which does not include the language proposed by MDx.

- MDx's proposed language is not part of the model instructions for good reason. It is redundant, argumentative, and confusing. There is no prior art other than Health Grades' prior art, so it is unclear what it means when it says: "You must not evaluate the prior art any differently, or in any way be hesitant to invalidate the claims, because the prior art is that of Health Grades." This language will create confusion.

### **MDx's Response:**

- The reason the model instructions have no language plaintiff's own prior art is because they do not address the situation where the prior art is that of the plaintiff. And Health Grades is simply wrong when it alleges that there is no prior art other than Health Grades' prior art – numerous other prior art references are in the MDx Invalidity Contentions.

- The jury must not discount prior art because it is from Health Grades, and should understand that the validity defense is not evaluated any differently because it is Health Grades' prior art. This is the law – Health Grades does not dispute that it is legally accurate, and it is understandable that a jury might well be confused about whether a patent owned by a company can be invalidated based on that company's own work. This is particularly true given instructions about Section 102(a) (instruction 18 – the very next instruction), claiming that the jury should not consider certain prior art of Health Grades.

# JURY INSTRUCTION NO. 18

### *Prior Art*

Prior art may include items that were [publicly known] or that have been used or offered for sale, [patents,] or publications that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been [made, known,] publicly used, or published [either before the invention was made or] more than one year before the effective filing date of the Health Grades' patent. [However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention. Likewise, prior art does not include knowledge or use of the inventors' own work that were made public less than one year before the date of invention.[5]]  It is Health Grades' burden to prove that the prior public use or publication was that of the exact inventive entity – all three of the named inventors on the '060 patent, and only those three.  You may not assume that to be the case simply because the work was from Health Grades, and any testimony of the inventors on this issue must be corroborated with documentation.  You must also remember that this restriction on the inventors own work does not apply to any reference that has been made, known, used, published, or patented more than one year before the effective filing date of the patent application.]

You must determine the "effective filing date" for the '060 patent. The effective filing date is either the date on which Health Grades filed its provisional patent application, which was February 8, 2006, or the date on which Health Grades filed the non-provisional utility application, which was

---

[5]  This language is necessary only if MDx is permitted to assert that references qualify as prior art under 35 U.S.C. §102(a).

August 29, 2006. Applicants for United States patents are allowed to file a provisional application that can provide the effective filing date, if it adequately "supports" the claims of the non-provisional application.  Specifically, the specification of the provisional application must contain a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms in the provisional application, to enable an ordinarily skilled artisan to practice the invention claimed in the non-provisional application.  Priority is determined on a claim by claim basis.

[You must also determine the date of invention for the '060 patent.  The date of invention is either when the invention was reduced to practice or when conceived, provided the inventors were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. A claimed invention is "reduced to practice" when it has been constructed/used/tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application. An invention may also be reduced to

practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.][6]

[The date of invention in this case is no earlier than February 8, 2006, but may be later than that date.

In this case, MDx contends the following are prior art:

- The physician reports that were on healthgrades.com in the summer of 2005
- The June 6, 2005 Drucker Report
- Physician New Marketing Media
- Physician Quality Guides
- 2003 Physician Quality Reports
- Dec. 2004 Physician Quality Reports
- Physician Research Comparison Reports
- Comparative Physician Reports
- 2004 Physician Quality Comparison Reports
- 2004 Nursing Home Quality Comparison Reports
- 2004 Nursing Home Quality Reports
- Physician Online Services

Sources and Authorities:

FED. CIR. BAR ASSOC. MODEL PATENT JURY INSTRUCTIONS MODEL PATENT JURY INSTRUCTIONS, §4.3(a) (2012); 35 U.S.C. § 102 (pre-AIA); *E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*, 525 F.3d 1353, 1358  (Fed. Cir. 2008).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 18

### Global Disputes

- The parties dispute whether the jury should be instructed on 35 U.S.C. §102(a).

---

[6]  This language is necessary only if MDx is permitted to assert that references qualify as prior art under 35 U.S.C. §102(a).

**Health Grades' Response**

- <u>Inventors' Own Work</u>:  Health Grades' proposed language is included in the FED. CIR. BAR ASSOC. MODEL PATENT JURY INSTRUCTIONS Model Rule 4.3(a) and is a correct statement of the law as it applies to §102(a) prior art. If MDx is permitted to raise a defense based on §102(a), the jury will need to be instructed on law that is necessary for them to reach a decision on this issue.

- <u>Date of Invention:</u>  Health Grades' proposed language mirrors exactly the Fed. Cir. Bar Assoc.'s Model Instruction §4.3(a). Whereas MDx's proposed language is redundant, argumentative, and confusing.  MDx's invalidity expert does not rely on any prior art patents, so mentioning these will confuse the jury.  Further, MDx's proposed language contains disputed issues of fact.  For example, Health Grades does not agree that the date of invention is Feb. 8, 2006. Health Grades asserted an earlier invention date in the same interrogatory cited by MDx.  (Response to Interrogatory 1, page 7 ("Although conception of various aspects of these products (and the invention described in the patent-in-suit) happened earlier, work began on the development of the PNMM, HOM, and POM products in late 2004 continuing through early 2005.")

- <u>Identity of Prior Art Being Asserted by MDx</u>:  The jury instruction should list the prior art that MDx is relying on to prevent trial by ambush, to focus the issues for the jury, and to make sure the record is preserved for appeal.

- <u>Corroboration</u>:  Corroboration is required ***only*** for testimony that is used to invalidate a patent. One way to invalidate a patent is to show that the claimed invention was invented by someone other than the named inventors before they invented the patent in suit. Another way to invalidate a patent is to show that the inventors named on a patent are incorrect (by naming too many or too few inventors).  These invalidity defenses are codified in 35 U.S.C. §102(f) & 102(g).  However, MDx does not assert that the inventorship of the '060 patent is incorrect and MDx is not relying on §§102(f) or (g) for its invalidity defense. Rather, the issue in dispute here is whether testimony from the Health Grades inventors' about the conception of their invention needs to be corroborated.  It does not. MDx cites no authority to provide otherwise.

  - The *Safeco* decision involved invalidity under §102(f) for failure to name the correct inventors.  *Safco Prods. Co. v. Welcom Prods.*, 799 F. Supp. 2d 967 (D. Minn. 2011) ("Safco, as the current patent holder, now moves for summary judgment of infringement and on Welcom's Lanham Act counterclaim for false designation of origin. Welcom moves for summary judgment of invalidity under 35 U.S.C. § 102(f) for failure to identify all true inventors and, in the alternative, for summary adjudication of co-inventorship . . . .").

o   The *Burroughs* case also involved the issue of whether the patent was invalid for failure to name the correct inventors.  *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223 (Fed. Cir. 1994) ("Barr and Novopharm say that confirmation of the inventions' operability, which came from the NIH tests, was an essential part of the inventive process. If Burroughs Wellcome is right, then the patents name the proper inventors, they are not invalid, and the appellants are liable for infringement. If Barr and Novopharm are correct, then Broder, Mitsuya, and Yarchoan should have been named as joint inventors and the resolution of Burroughs Wellcome's infringement suits is premature.")

o   The *Univ. of Pittsburgh* case related to a lawsuit brought by some named inventors to have other named inventors removed from a patent.  *Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290 (Fed. Cir. 2009) ("Marc H. Hedrick, Prosper Benhaim, Hermann Peter Lorenz, and Min Zhu appeal the judgment of the United States District Court for the Central District of California finding that they were not co-inventors of U.S. Patent No. 6,777,231").

**MDx's Response:**

- Categories of Prior Art:  As for prior art patents, there are numerous patent prior art references in the MDx Invalidity Contentions.  As for Section 102(a) art, Health Grades contends that its own prior art cannot be Section 102(a) prior art, pursuant to its pending motion for partial summary judgment (Dkt. #369).  Even if Health Grades won that portion of the motion, however, this instruction does not belong here as it is an instruction on all prior art (not just 102(a) prior art).  The AIPLA Model Instruction has no such provision. And if this instruction is left anywhere, it must state that:

(1) it is Health Grades' burden to prove that the identical inventors created the work that is alleged to be prior art (how else will the jury know?), *In re Katz,* 687 F.2d 450, 215 USPQ 14 (CCPA 1982) ("It was incumbent, therefore, on appellant to provide a satisfactory showing which would lead to a reasonable conclusion that he is the sole inventor");

(2) this Health Grades proof must be corroborated, *Safco Products Co. v. Welcom Products, Inc.*, 799 F. Supp. 2d 967, 989 (D. Minn. 2011) (questioning whether a named inventor, rather than an alleged inventor, "need not produce corroborating evidence of his conception of the claimed subject matter" and encouraging such corroboration); *see also Burroughs Wellcome Co. v. Barr Labs. Inc.,* 40 F.3d 1223, 1228 (Fed. Cir. 1994) (discussing corroboration required of named inventors attempting to defeat invalidity defense); *University of Pittsburgh v. Hedrick,* 573 F.3d 1290, 1293, 1298 (Fed. Cir. 2009) ("the inventor must prove his conception by corroborating evidence"); and

(3) to avoid confusion the jury should be told that this limitation only applies to Section 102(a) art and not Section 102(b) art that is determined from the effective filing date.

- <u>Date of Invention</u>:  Health Grades never asserted a date of invention earlier than the priority application filing date (February 8, 2006), and provided no evidence of any alleged earlier date in discovery, despite requests.  Response to Interrogatory 1, page 7 (Exhibit D).  Health Grades citation to one sentence in its interrogatory response saying that "work began" earlier is no help to Health Grades.  Accordingly, Health Grades cannot assert an earlier date of invention at trial.  If Health Grades wanted to prove an earlier invention date, it must have demonstrated "conception coupled with reasonable diligence in reducing the invention to practice . . ." *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003). It is presumed that the invention date is the filing date of the asserted patent, until an earlier date is proved. *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986). Once a party challenging a patent's validity makes a prima facie case of invalidity based on prior art, the burden shifts to the patentee to come forth with evidence of an earlier invention date – something that Health Grades completely failed to do. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008).  The MDx interrogatory seeking such information was completely appropriate, the information was "patently relevant" and Health Grades chose to rely on the February, 2006 date.  *Lamoureux*, 226 F.R.D. at 160 (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). MDx relied on Health Grades' alleged date of conception being the patent filing date, as expressly stated in its interrogatory response. Allowing Health Grades to now attempt to prove an earlier date of invention, when it failed to make any such showing in response to the interrogatory or otherwise, would require MDx to start over in connection with its invalidity analyses and severely prejudice MDx.  *See Caron v. QuicKUTZ, Inc.,* 2012 WL 5497869 at *17 (D.Ariz. 2012) (dismissal with prejudice where plaintiff failed to produce documents related to the date of conception in a timely manner). *See also* Fed. R. Civ. P. 37(d) (when party fails to respond to interrogatories, court "may make such orders in regard to the failure as are just," including any sanction authorized under Rule 37(b)(2)).

- <u>List of Prior Art</u>:  There is no need to list specific prior art references, and this list is not exhaustive and is overly specific (e.g., identifying specific dates when reports must have been available, when any time in the prior art suffices).  The Invalidity Contentions prevent "trial by ambush" – not the jury instructions.

- The Health Grades proposed instruction does not "mirror exactly" the model instruction, and MDx has numerous patents in its Invalidity Contentions.  Exhibit F (pertinent pages only).

# JURY INSTRUCTION NO. 19

### *Prior Public Use*

MDx contends that the claims of the '060 patent were anticipated and obvious because the invention defined in those claims [was publicly used by others in the United States before it was invented, and because it] was publicly used in the United States more than one year before the effective filing date of Health Grades' patent. A patent claim is invalid if more than one year before the filing date of the patent an embodiment of the claimed invention was both: (1) accessible to the public or commercially exploited in the United States; and (2) ready for patenting.

An invention was in public use if the claimed invention was accessible to the public or commercially exploited. Factors relevant to the determination of whether a use was public include the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding testing and experimentation. An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.

In order to be a public use, the invention also must have been ready for patenting at the time of the alleged public use. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention

is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims; and (2) determined that it works for its intended purpose.  The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §6.2 (2012); 35 U.S.C. § 102(a)-(b) (pre-AIA); *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1325-27 (Fed. Cir. 2009); *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008); *Invitrogen Corp. v. Biocrest Manuf., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1316-20 (Fed. Cir. 2004); *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1320-23 (Fed. Cir. 2002); *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998) (as to reduction to practice); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902, 906 (Fed. Cir. 1988); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1265-67 (Fed. Cir. 1986); *Kinzenbaw v. Deere & Co.*, 741 F.2d 383, 390-91 (Fed. Cir. 1984); *TP Lab., Inc. v. Prof'l Positioners, Inc.*, 724 F.2d 965, 970-72 (Fed. Cir. 1984); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1549-50 (Fed. Cir. 1983); *In re Smith*, 714 F.2d 1127, 1134-37 (Fed. Cir. 1983).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 19

### Global Disputes

- §102(a):  The parties dispute whether the jury should be instructed on 35 U.S.C. §102(a) as described above.

## JURY INSTRUCTION NO. 20

### *Experimental Use*

Health Grades contends that the Drucker Report and PNMM product should not be considered a prior public use because they were experimental. The law recognizes that the inventors must be given the opportunity to develop their invention through experimentation. Certain activities are experimental if they are a legitimate effort to test claimed features of the invention or to determine if the invention will work for its intended purpose.  So long as the primary purpose is experimentation, it does not matter that the public used the invention or that the inventor incidentally derived profit from it.

Only experimentation by or under the control of the inventor of the patent qualifies for this exception.  Experimentation by third parties, for their own purposes, does not. The experimentation must relate to the features of the claimed invention, and it must be for the purpose of technological improvement, not commercial exploitation. If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation. A test done primarily for marketing, and only incidentally for technological improvement, is not an experimental use.

If you find that MDx has shown by clear and convincing evidence that the Drucker Report or the PNMM product were in public use, then the burden is on Health Grades to come forward with evidence showing that the purpose of the prior public use was experimental.  You may find that the Drucker Report or the PNMM product do not constitute a prior public use of the invention if the evidence provided by Health Grades regarding the experimental use prevents

MDx from meeting its burden of establishing that it is highly probable that there was a prior public use of these things.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §6.4 (2012);*City of Elizabeth v. Am. Nicholson Pavement Co.*, 97 U.S. 126, 134-35 (1877); *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1327 (Fed. Cir. 2009); *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1316 (Fed. Cir. 2005); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1353-55 (Fed. Cir. 2002); *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1071-72 (Fed. Cir. 1992); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 549-51 (Fed. Cir. 1990); *U.S. Envtl. Prods. Inc. v. Westall*, 911 F.2d 713, 716 (Fed. Cir. 1990); *In re Hamilton*, 882 F.2d 1576, 1580-83 (Fed. Cir. 1989); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902, 906 (Fed. Cir. 1988); *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1535-37 (Fed. Cir. 1984); *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1580-81 (Fed. Cir. 1984); *In re Smith*, 714 F.2d 1127, 1134-37 (Fed. Cir. 1983).

## JURY INSTRUCTION NO. 21

### *On Sale Bar*

MDx contends that the claims of the '060 patent were anticipated and obvious because the invention defined in those claims was on sale in the United States more than one year before Health Grades filed its U.S. patent application. A patent claim is invalid if more than one year before the filing date of the patent an embodiment of the claimed invention was both (1) subject to commercial offer for sale in the United States; and (2) ready for patenting.

A commercial "offer for sale" was made if another party could make a binding contract by simply accepting the offer. An invention was subject to an "offer for sale" if the claimed invention was embodied in an item that was actually sold or offered for sale. It is not required that a sale was actually made. The essential question is whether there was an attempt to obtain a commercial benefit from the invention. While the invention need not be ready for patenting at the time of the offer, there can be no offer for sale until such time as the invention is conceived. An invention is conceived when the inventor(s) forms in his mind a definite and permanent idea of the complete and operative invention, as it will be used in practice.

The invention also must have been "ready for patenting" more than one year before the filing date of the patent. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims; and (2) determined that it works for its intended purpose. The claimed invention is ready for

patenting when there is reason to believe it would work for its intended purpose.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §6.3 (2012); 35 U.S.C. § 102(b); *Pfaff v. Wells Elecs.*, 525 U.S. 55, 67-68 (1998); *August Tech v. Camtek*, 655 F.3d 1278, 1288-89 (Fed. Cir. 2011); *Atlanta Attachment Co., v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008); *Board of Educ. ex rel Bd. Of Trustees of Florida State University v. American Bioscience, Inc.*, 333 F.3d 1330, 1338 (Fed. Cir. 2003) (as to conception); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352-55 (Fed. Cir. 2002); *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1047-54 (Fed. Cir. 2001); *Robotic Vision Systems, Inc., v. View Eng'g, Inc.*, 249 F.3d 1307, 1312 (Fed. Cir. 2001); *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045-49 (Fed. Cir. 2001; *Cooper v. Goldfarb,* 154 F.3d 1321, 1327 (Fed. Cir. 1998) (as to reduction to practice).

# JURY INSTRUCTION NO. 22

### *Printed Publication*

MDx contends that the claims of the '060 patent were anticipated and obvious because the invention defined in those claims were described in a printed publication [before it was invented by Health Grades] or more than one year before the effective filing date of Health Grades' patent. A patent claim is invalid if the invention defined by that claim was described in a printed publication before it was invented by the patentee, or more than one year prior to the filing date of the U.S. application.

A printed publication must have been maintained in some tangible form, such as printed pages, photographs, internet publication, or photocopies, and must have been sufficiently accessible to persons interested in the subject matter of its contents.  Information is publicly accessible if it was distributed or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence can locate it.  It is not necessary for the printed publication to have been available to every member of the public.

The disclosure of the claimed invention in the printed publication must be complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art one year before the effective filing date of Health Grades' patent [or at the time the invention of the '060 patent], and you may consider evidence that sheds light on the knowledge such a person would have had.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §6.5 (2012); 35 U.S.C. § 102(a)-(b) (pre-AIA); *In re NTP, Inc.*, 654 F.3d 1279, 1296-97 (Fed. Cir. 2011); *Orion IP v. Hyundai Motor America*, 605 F.3d 967 (Fed. Cir. 2010); *In re Lister*, 583 F.3d 1307, 1311-12 (Fed. Cir. 2009); *Kyocera Wireless Corp. v. Int'l Trade Comm.*, 545 F.3d 1340, 1350 (Fed. Cir. 2008); *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *SRI International, Inc. v. Internet Security Systems, Inc.*, 511 F.3d 1186 (Fed. Cir. 2008); *In re Klopfenstein*, 380 F.3d 1345, 1352 (Fed. Cir. 2004); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554-55 (Fed. Cir. 1995); *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed. Cir. 1991); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1568-69 (Fed. Cir. 1988); *Akzo N.V. v. U.S. Int'l Trade Comm'n,* 808 F.2d 1471, 1479 (Fed. Cir. 1986); *In re Hall,* 781 F.2d 897, 898-899 (Fed. Cir. 1986); *In re Donohue,* 766 F.2d 531, 533-34 (Fed. Cir. 1985); *Studiengesellschaft Kohle mbH v. Dart Indus., Inc.,* 726 F.2d 724, 727 (Fed. Cir. 1984).

## **RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 22**

### **Global Disputes**

- §102(a): The parties dispute whether the jury should be instructed on 35 U.S.C. §102(a) as described above.

## JURY INSTRUCTION NO. 23

### *Corroboration of Oral Testimony Required*

Generally, oral testimony of prior public use or knowledge must be corroborated in order to invalidate a claim.  The term "corroborated" means supported.

Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the alleged prior art inventor's testimony has been corroborated.  If evidence is presented for purposes of attempting to corroborate oral testimony that alleges invalidity, then you must determine whether this evidence does, in fact, properly corroborate the oral testimony.  In making this determination, you should consider the following factors:

1.   The relationship between the corroborating witness and the alleged prior user;

2.   The length of the time period between the event and this trial;

3.   The interest of the corroborating witness in the subject matter of this lawsuit;

4.   Any contradiction or impeachment of the witness testimony;

5.   The extent and detail of the corroborating witness testimony;

6.   The witness familiarity with the subject matter of the patented invention and the alleged prior use;

7.   The probability that a prior use could occur considering the state of the art at the time; and

8.   The impact of the invention on the industry and the commercial value of its practice.

<u>Sources and Authorities:</u>

*ePlus, Inc. v. Lawson Software, Inc.*, Civil Action No. 3:09-CV-620 (REP) (E.D. Va. 2011) (Jury Instruction No. 34); *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1371 (Fed. Cir. 2007); *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737-38 (Fed. Cir. 2002); *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.,* 264 F.3d 1344, 1350 (Fed. Cir. 2001) *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999); *Thomson S.A. v. Quixote Corp.*, 166 F.3d 1172 (Fed. Cir. 1999); *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998); *Lacotte v. Thomas*, 758 F.2d 611 (Fed. Cir. 1985).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 23

### Health Grades' Response:

- The language of this jury instruction comes directly from Federal Circuit case law:

  Reliable evidence of corroboration preferably comes in the form of physical records that were made contemporaneously with the alleged prior invention. See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1350-51, 60 U.S.P.Q.2D (BNA) 1091, 1094 (Fed. Cir. 2001) ("Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated." (citing Woodland Trust, 148 F.3d at 1373, 47 U.S.P.Q.2D (BNA) at 1367)).

  *Juicy Whip v. Orange Bang*, 292 F.3d 728 (Fed. Cir. 2002)

- The factors listed above come from *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368 (Fed. Cir. 1998).

- "Concerns regarding corroboration are not limited to "interested" witnesses." *Woodland Trust*, 292 F.3d at 1367-68 ("In the end, what we are left with is Jefferts' testimony concerning his alleged public use. Such evidence is insufficient as a matter of law to establish invalidity of the patent. This is not a judgment that Jefferts' testimony is incredible, but simply that such testimony alone cannot surmount the hurdle that the clear and convincing evidence standard imposes in proving patent invalidity. *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577, 38 U.S.P.Q.2D (BNA) 1288, 1291 (Fed. Cir. 1996)

77

(noting that the corroboration rule, "provides a bright line for both district courts and the PTO to follow . . .").")

## **MDx Response**

- As the case law demonstrates (e.g., *Sandt)*, the corroboration rules exist to prevent accused infringers from claiming they invented first and thus attempting to invalidate a patent based only on oral testimony.  Health Grades cites no case where the corroboration rule was applied where ***the inventors themselves*** testified about the existence of the prior art.  Applying the corroboration rule so blindly would make a mockery of the rule altogether, which was "imposed to prevent fraud by alleged inventors who would otherwise premise their claim of inventorship solely on their own testimony."  Here, there is no one even arguing an earlier claim of inventorship.  Rather, the named inventors on the patent are admitting that the invention (or at least major parts of it) were being used in the prior  -- the justification for the rule is entirely absent, and the rule has never been applied as Health Grades now advocates.

- Moreover, the corroboration rule, even if it was applicable to these facts, has no place in this case because there is ample corroboration, and Health Grades does not even argue otherwise. Health Grades' Mr. Dodge (not a named inventor) has sworn under penalty of perjury that the invention was being used in the prior art.  Exhibit D, pages 5, 11, 19.  And Health Grades has produced many documents showing the use of the features of the invention in the prior art.  *See, e.g.,* the Drucker Report, Exhibit E.  And there are many more documents, a partial list of which is provided by Health Grades in Instruction #18.   This instruction has no place in this case, and no corroboration rule is found in any model rules used by either party.

# JURY INSTRUCTION NO. 24

## *Prior Art Considered or Not Considered by the US Patent Office*

When a party challenging the validity of a patent relies on prior art that was considered by the Examiner during the prosecution of the application which resulted in the issued patent, that party's ability to satisfy its clear and convincing evidence burden may be more difficult. When a party challenging the validity of a patent presents evidence that was not considered by the Examiner during the prosecution of the application which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy that party's clear and convincing evidence burden.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §5.1 (2012); *Microsoft Corp. v. i4i Ltd. P'ship.*, 564 U.S. __, 131 S. Ct. 2238, 2251 (2011); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355-56 (Fed. Cir. 2000); *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1306 (Fed. Cir. 2005)

# JURY INSTRUCTION NO. 25

## *Invalidity of Independent and Dependent Claims*

As I stated earlier, there are two different types of asserted claims in the patent.  One type of claim is called an independent claim.  The other type of claim is called a dependent claim.  An independent claim must be read separately from the other claims to determine the scope of the claim.  A dependent claim is a claim that refers to at least one other claim in the patent.  A dependent claim includes all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

You must evaluate the invalidity of each asserted claim separately.  However, if you find that a dependent claim is invalid, you cannot find the independent claim to which that dependent claim refers to be valid. Conversely, an independent claim can be found invalid, even though a dependent claim to which it refers is valid.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §5.2 (2012); *Comparer Corp. v. Antec. Inc.*, 596 F.3d 1343, 1350 (Fed. Cir. 2010); *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed. Cir. 2009); *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007).

## JURY INSTRUCTION NO. 26

### *Anticipation*

If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior invention. Simply put, the invention must be new to be eligible for patent protection under the U.S. patent laws. To prove anticipation, MDx must prove by clear and convincing evidence that the claimed invention is not new. In this case, MDx contends that all of the claims of the '060 patent are anticipated by [physician reports that were on Health Grades' website in the summer of 2005] [the prior art].

To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the [alleged] prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular [alleged] prior art [reference].  .

[In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what is inherently present or disclosed in that prior art or what inherently results from its practice. Prior art inherently anticipates a patent claim if the missing element or feature would be the natural result of following what the prior art teaches to persons of ordinary skill in the art. A party claiming inherent anticipation must prove by clear and convincing evidence that the claim is inherently anticipated. Evidence outside of the prior art reference itself including

81

deposition testimony may be used to show that the elements not expressly disclosed in the reference are actually present.  Mere probabilities are not enough.  It is not required, however, that persons of ordinary skill actually recognized the inherent disclosure at the time the prior art was first known or used.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.]

[To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention. It is not necessary for MDx to show that the entire teaching of a claim is found in a single document or reference.  Rather, MDx must prove that a single system was known or used that employed all the claim elements.  The proof of the existence of all the elements can come from different sources and still the use or knowledge can be anticipating.]

Here is a list of ways that MDx can show that a patent claim was not new or that the patentee lost the right to patent the claims:

(1)     The alleged invention was known or used by others in the United States before the invention date.

(2)     The alleged invention was already patented or described in a printed publication, anywhere in the world before the invention date.

(3)     The alleged invention was already patented or described in a printed publication, anywhere in the world, more than a year before the effective filing date of the application.

(4)     The alleged invention was publicly used, sold, or offered for sale in the United States more than one year before the effective filing date of the application. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.

Sources and Authorities:

AIPLA MODEL PATENT JURY INSTRUCTIONS, §6.0 (2012); FED. CIR. BAR ASSOC. MODEL PATENT JURY INSTRUCTIONS MODEL PATENT JURY INSTRUCTIONS, §B.4.3, 4.3B (2013); 35 U.S.C. § 102(A), (B); *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-1321 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-1378 (Fed. Cir. 2003); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1347-1348 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992); *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1267-1269 (Fed. Cir. 1991); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *In re Robertson*, 169 F.3d 743 (Fed. Cir. 1999); Roger Schechter & John Thomas, PRINCIPLES OF PATENT LAW 73-85 (2d ed. 2004).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 26

### Health Grades' Response

- MDx's counsel stated at the hearing on Feb. 13, 2014 that the anticipation defense was based only on physician reports that were on healthgrades.com in the summer of 2005.  Indicating that this is the only art related to the anticipation defense will be helpful to focus the issues for the jury and preserve issues for appeal.

- Health Grades' proposed instruction mirrors the AIPLA's Model Instruction §6.0, except that it omits the paragraph relating to inherency.  There are not issues of inherency in this case and instructing the jury on this law will cause confusion.

- MDx's proposed language is redundant, argumentative, and confusing and incorrect as a matter of law.  For example, the hallmark of anticipation is that all of the claim elements be present in a single prior art reference, yet MDx's language says the opposite: "It is not necessary for MDx to show that the entire teaching of a claim is found in a single document or reference."

### MDx's Response:

- While Health Grades has admitted that it was practicing the invention in the summer of 2005, the interrogatory responses also indicate it was earlier, too, including the spring of 2005.  Health Grades is thus attempting to limit the anticipation defense, which could be before or after this time frame, and need not be called "physician reports" as there were many different types of reports in the prior art.  Counsel for MDx has no recollection of stating at the hearing that the "only" anticipatory prior art were "physician reports" or that it was "only" in the summer of 2005 (and Health Grades has produced no transcript showing otherwise).  There is no need to specifically identify any prior art references in the jury instructions.

- "Alleged" prior art says the court believes there may be no prior art, but Health Grades does not dispute that anything under 102(b) is prior art so "alleged" is not appropriate.

- Inherency is standard language for validity analyses, and is in the model rule.  Anything the jury might find lacking can be found through principles of inherency.

- Health Grades' comment about anticipation is taking a concept applicable to patents and publications, and attempting to force that into the concepts of public use and prior knowledge.  There is no requirement that every anticipation be found in a single document.

- The last paragraph proposed by MDx is simply an accurate recitation of the law for these types of prior art references – public use, for example, is shown by testimony and does not require all elements in the four corners of a document.

84

## JURY INSTRUCTION NO. 27

### *Obviousness*

MDx contends that all of Health Grades' asserted patent claims are invalid because the claimed inventions are "obvious." A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made.  Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent.  You should not use the patent as a road map for selecting and combining items of prior art.  You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

The following factors must be evaluated to determine whether MDx has established that the claimed invention(s) is obvious:

the scope and content of the [alleged] prior art relied upon by MDx;

the difference or differences, if any, between each claim of the '060 patent that MDx contends is obvious and the [alleged] prior art;

the level of ordinary skill in the art at the time the invention of the '060  patent was made; and

additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

MDx must prove that obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §7.0 (2012); FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS NO. B.4.3c (Feb. 2012)*; KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 and 421 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Otsuka Pharmaceutical Co., Ltd. v. Sandoz, Inc.,* 678 F.3d 1280, 1296 (Fed. Cir. 2012); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.,* 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-40 (Fed. Cir. 1983).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 27

### Health Grades' Response

- Health Grades disputes that some of the art relied on by MDx' is "prior art."  As such, Health Grades would like to include the word "alleged" in front of the term "prior art."

### MDx's Response:

- "Alleged" prior art says the court believes there may be no prior art, but Health Grades does not dispute that anything under 102(b) is prior art so "alleged" is not appropriate.

## JURY INSTRUCTION NO. 28

### *The First Factor:  Scope and Content of the Prior Art*

The [alleged] prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.  You must determine what is the prior art that may be considered in determining whether the '060 patent is obvious.  A prior art reference may be considered if it is analogous or discloses information designed to solve any problem or need addressed by the patent or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve any problem or need addressed by the patent.


Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §7.1 (2012); *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 864 (Fed. Cir. 1993); *In re Clay,* 966 F.2d 656, 658-59 (Fed. Cir. 1992); *In re Wood,* 599 F.2d 1032, 1036-37 (C.C.P.A. 1979).


### **RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 28**

#### **Health Grades' Response**

- Health Grades disputes that some of the art relied on by MDx' is "prior art."  As such, Health Grades would like to include the word "alleged" in front of the term "prior art."

#### **MDx's Response:**

- "Alleged" prior art says the court believes there may be no prior art, but Health Grades does not dispute that anything under 102(b) is prior art so "alleged" is not appropriate.

## JURY INSTRUCTION NO. 29

### *The Second Factor: Differences Between the Claimed Invention and the Prior Art*

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

[Importantly], a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.

Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense.  You may also consider whether the problem or need was known, the possible approaches to solving the problem or addressing the need were known and finite, and the solution was predictable through use of a known option.  If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.  Again, you must undertake this analysis separately for each claim that MDx contends is obvious.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §7.2 (2012); *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1741-43 (2007); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1351 (Fed. Cir. 2008); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567-68 (Fed. Cir. 1983).

## **RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 29**

### **Health Grades' Response:**

- This language is included in the AIPLA Model Instruction §7.2, which was put together by an committee of attorneys whose "fundamental goals" was "to provide a model set of jury instructions that would not be biased in favor of either the patent owner or the accused

infringer." http://www.aipla.org/committees/committee_pages/Online-Programs/Lists/Committee%20Discussions/Flat.aspx?RootFolder=%2Fcommittees%2Fcommittee_pages%2FOnline-Programs%2FLists%2FCommittee%20Discussions%2FUpdated%20Model%20Patent%20Jury%20Instructions&Fol

- This word "important" is also used in the Supreme Court's KSR decision:

> Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be **important** to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity [*419] will be combinations of what, in some sense, is already known.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-419 (U.S. 2007) (emphasis added).

**MDx Response**

- "Importantly" should not be in this or any other instruction, as all the instructions are equally important.

## JURY INSTRUCTION NO. 30

### *The Third Factor:  Level of Ordinary Skill*

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the art.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1.      the level of education and experience of persons actively working in the field at the time of the invention, including the inventors;

2.      the types of problems encountered in the art at the time of the invention; and

3.      the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

Sources and Authorities:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS NO. B.4.3c(i) (Feb. 2012); AIPLA MODEL INSTRUCTIONS, §7.3 (2012); *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envtl Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 696-97 (Fed. Cir. 1983).

## JURY INSTRUCTION NO. 31

### *The Fourth Factor:  Factors Indicating Obviousness or Nonobviousness*

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

1.      Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.      Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

3.      Did others try, but fail, to solve the problem solved by the claimed invention?

4.      Did others copy the claimed invention?

5.      Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.      Did others in the field praise the claimed invention or express surprise at the making of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.  These factors are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims.  Even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other evidence in the case in determining whether MDx has proven that the claimed invention

would have been obvious as of the date of invention of the '060 patent.

You should also consider factors that may indicate that the invention was obvious. These may include the following:

(A) Combining prior art elements according to known methods to yield predictable results;

(B) Simple substitution of one known element for another to obtain predictable results;

(C) Use of known technique to improve similar devices (methods, or products) in the same way;

(D) Applying a known technique to a known device (method, or product) ready for improvement to yield predictable results;

(E) "Obvious to try" – choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

(F) Known work in one field of endeavor may prompt variations of it for use in either the same field or a different one based on design incentives or other market forces if the variations are predictable to one of ordinary skill in the art;

(G) Some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior art reference or to combine prior art reference teachings to arrive at the claimed invention.

Sources and Authorities:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS NO. B.4.3c (Feb. 2012); AIPLA MODEL INSTRUCTIONS, §7.4 (2012); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 and 421 (2007); *United States v. Adams*, 383 U.S. 39, 52 (1966); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888,

894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc., v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983); United States Patent and Trademark Office, Manual of Patent Examining Procedures 2141(III).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 31

### Health Grades' Response

- Health Grades' proposed instruction mirrors the Fed. Cir. Bar Assoc.'s Model Instruction §4.3c (2012) exactly, which is based on Supreme Court precedent, and should be given to the jury.

- MDx's Proposed Title is Confusing and Inaccurate:  The factors as described in Health Grades' proposed instruction (and the model instruction) are factors that show "non-obviousness." Using the term "Obviousness" in the title will cause confusion.  Indeed, the cases consider the presence of such secondary considerations to show non-obviousness (and the absence of such factors to show obviousness). *Osram Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698 (Fed. Cir. 2012) ("Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966).")

- MDx's instruction is incorrect as a matter of law.  Indeed, the factors MDx lists are not "secondary considerations" at all.  They relate more to the second factor for determining obviousness, which is address in Instruction No. 28.  Instruction No. 28 mirrors the AIPLA Model Instruction regarding the second factor for determining obviousness, which is based on the Supreme Court's *KSR* decision. It will be confusing to discuss the second factor in an instruction relating to the fourth factor.

### MDx Response

- These Health Grades factors are all subject to MDx's Motion In Limine, Dkt. #685.

- As for the factors requested by MDx, they are objective considerations, and such considerations can either tend to show non-obviousness, or obviousness.  We suspect that Health Grades just doesn't want the  jury told of the factors that tend to show obviousness, even though these factors are routinely used to evaluate obviousness, as shown even in the Manual of Patent  Examining Procedure itself.  If Health Grades' is concerned about the title having both "obviousness" and "non-obviousness" then MDx will agre to have a separate instruction on the factors that tend to show obviousness.

# JURY INSTRUCTION NO. 32

### *INEQUITABLE CONDUCT*

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office. This is important because the PTO has limited resources.

When a person involved in the prosecution of an application fails to supply material information or supplies false information or statements and does so with intent to deceive the PTO, he or she may commit what is called "inequitable conduct." When inequitable conduct occurs during the examination of an application, any patent that issues from that application is unenforceable as a matter of fairness. This means that despite the existence and possible validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is high. MDx must prove by clear and convincing evidence both that a person meaningfully involved in the prosecution of the '060 patent withheld material information or submitted materially false information or statements to the PTO during the examination of the '060 patent, and that the person did so with an intent to deceive the Examiner into issuing the '060 patent(s).

I will now explain to you what "material" and "intent to deceive" mean.

**Materiality**

As a general matter, the materiality required to establish inequitable conduct is but-for materiality.[7]  When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim to issue had it been aware of the undisclosed prior art.  Hence, in assessing the materiality of a withheld reference, you should determine whether the Patent Office would have allowed the claim if it had been aware of the undisclosed reference.  In making this patentability determination, it is not the clear and convincing evidence standard that applies to your validity determinations, but instead you should apply the preponderance of the evidence standard and give claims their broadest reasonable construction.  Often the patentability of a claim will be congruent with the validity determination—if a claim is properly invalidated in district court based on the deliberately withheld reference, then that reference is necessarily material because a finding of invalidity in a district court requires clear and convincing evidence, a higher evidentiary burden than that used in prosecution at the PTO.  However, even if you determine that a claim is not invalid based on a deliberately withheld reference, the reference may be material if it would have blocked patent issuance under the Patent Office's different evidentiary standards.

Withheld information that is cumulative of, or less relevant to any patentability requirement compared to information the examiner already had from any source, is not material (because the Examiner already had similar information on which to make a judgment on patentability).

---

[7] MDx objects to the current standard for materiality recently set forth by the Court of Appeals for the Federal Circuit in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) as being too strict.

**Intent to Deceive**

In order for inequitable conduct to have occurred, MDx must establish that any failure to disclose material information or false or misleading statements were done with an intent to deceive the Examiner. If the failure to disclose material information or false or misleading statements occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

Intent and materiality are separate requirements. You may not infer intent solely from materiality. Instead, you must weigh the evidence of intent to deceive independent of your analysis of materiality. Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive. Intent may be proven through indirect or circumstantial evidence. However, to meet the clear and convincing evidence standard, the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.  Further, The absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive. Intent also may be shown through indirect and circumstantial evidence or, in other words, it may be inferred from conduct such as false statements, or deceptive statements such as avoiding disclosure of, or dancing around, the truth.  Intent requires that the person allegedly making false statements know they are false or allegedly withholding information knowing that it is material.

**Burying Prior Art**

In some cases a voluminous list of references contained in an Information Disclosure Statement ("IDS") submitted to the PTO can lead to a finding of inequitable conduct if a material reference was 'buried' in the IDS with the intent to deceive the PTO by 'burying' the reference. Moreover, burying a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith.

Sources and Authorities:

FED. CIR. BAR ASSOC. MODEL PATENT JURY INSTRUCTIONS MODEL INSTRUCTIONS B.5, 5.1 (2013); 35 U.S.C. § 282; *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1345 (Fed. Cir. 2013); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291-1292 (Fed. Cir. 2011); *Larson Mfg. Co. of S.D. v. Aluminart Prods., Ltd.*, 559 F.3d 1317 (Fed. Cir. 2009); *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008); *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1315 (Fed. Cir. 2006); *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181 (Fed. Cir. 2006); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003); *Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306 (Fed. Cir. 2000); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991); *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988); *Synqor, Inc. v. Cisco Systems, Inc.*, 2012 U.S. Dist. LEXIS 129463, *19 (E.D. Tex. Aug. 7, 2012).

**RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 32**

**Global Disputes**

- Inequitable Conduct:  The parties dispute whether the jury should be instructed on inequitable conduct as described above.

**Health Grades' Response**

- Health Grades' proposed language comes directly from the seminal decision on inequitable conduct.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291-1292 (Fed. Cir. 2011).

- Burying references is not sufficient to show inequitable conduct as a matter of law.  *See, e.g.*, *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) ("[a]n applicant cannot be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner."); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991) ("When a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it cannot be deemed to have been withheld from the examiner."); *Seaboard Int'l, Inc. v. Cameron Int'l Corp.*, 2013 U.S. Dist. LEXIS 106784 (E.D. Cal. July 30, 2013) (alleged burying of material information in a long list of citations to the PTO by itself is insufficient to state a claim for inequitable conduct); *Parkervision, Inc. v. Qualcomm Inc.*, No. 3:11-cv-719-J-37TEM, 2013 U.S. Dist. LEXIS 8467, at *9-10 (M.D. Fla. Jan. 22, 2013) (same); *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 749 F. Supp. 2d 892, 903 (W.D. Wis. 2010) (same); *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 358 (D. Del. 2009) (same). Furthermore, the single district court case that MDx relies on to support its argument that "burying" references can support a claim of inequitable conduct, provides so only when there are other facts that support a plausible inference of intent to deceive. *Synqor, Inc. v. Cisco Sys.*, No. 2:11CV54, U.S. Dist. LEXIS 129463, at *21 (E.D. Tex. Aug. 7, 2012). MDx has no facts to support such an inference.

- In any event, MDx's allegations of burying and bad faith *relate to the '471 App.*, which has not yet issued and is not being asserted in this lawsuit. Thus, it is not appropriate to instruct the jury on this issue.

**MDx Response**

- Health Grades' first argument (apparently, that anything it can find in a Federal Circuit case is appropriate for a jury instruction), is wrong.  The jury simply needs to know the appropriate standards, without self-serving snippets inserted by Health Grades.

- As for its burying, Health Grades is trying to dodge its inequitable conduct problems by referencing the results of its inequitable conduct in connection with the '471 application. The jury should know that Health Grades' conduct in connection with the '471 application can itself be inequitable conduct, and certainly that it can be indicative of bad faith consistent with the cited law. *Synqor, Inc. v. Cisco Sys.*, No. 2:11CV54, U.S. Dist. LEXIS 129463, at *21 (E.D. Tex. Aug. 7, 2012). While Health Grades alleges that *Synqor* requires other facts supporting an inference of intent, MDx has many, including the pattern of inequitable conduct from the '060 prosecution through the '471 prosecution. MDx does not need to prove inequitable conduct in connection with the '471 application for this trial, but such burying is inequitable conduct. *See, e.g., Synqor, Inc. v. Cisco Systems, Inc.*, 2012 U.S. Dist. LEXIS 129463, *19 (E.D. Tex. Aug. 7, 2012) ("A review of the cases reveals that a voluminous list of references contained in an IDS can, in some circumstances, lead to a finding of inequitable conduct if a material reference was 'buried' in the IDS with the intent to deceive the PTO by 'burying' the reference"); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.*, 837 F. Supp. 1444, 1477 (N.D. Ind. 1992) (holding that it is "a violation of the duty of candor and fair dealing with the [PTO] for an applicant or its attorney to disclose a pertinent prior art patent reference to the examiner in such a way as to 'bury' it or its disclosures in a series of disclosures of less relevant prior art references, so that the examiner would be likely to ignore the entire list and permit the application to issue."), *aff'd*, 11 F.3d 1072 (Fed. Cir. 1993); *Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.*, 359 F. Supp. 948, 964-65 (S.D. Fla. 1972) (failure to cite most pertinent prior art, and attempt "to bury" relevant patent "in a long list of allegedly old prior art patents in the hope that the Patent Examiner … would ignore the list and permit the [applicant's] patent to issue" constituted deliberate misrepresentations to the patent office), *aff'd*, 479 F.2d 1328 (5th Cir. 1973); *see also Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) ("'burying' a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith.").

# JURY INSTRUCTION NO. 33

## *Damages*

If you find that an Accused System infringes any of the claims of Health Grades' patent, and that those claims are not invalid or unenforceable, you must determine the amount of damages to be awarded to Health Grades for the infringement.  On the other hand, if you find that each of the asserted patent claims is invalid–, unenforceable, or is not infringed, then you need not consider damages in your deliberations.

Health Grades must prove each element of its damages – including the amount of the damages – by a preponderance of the evidence which means it is more likely than not that Health Grades has proven its damages.

If proven by Health Grades, the amount of those damages must compensate Health Grades for the infringement.  The purpose of a damage award is to put Health Grades in about the same financial position it would have been in if the infringement had not happened. However, the damage award cannot be less than a reasonable royalty.  You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

Health Grades is not entitled to damages that are remote or speculative, and while Health Grades is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  In order for Health Grades to be entitled to damages for alleged infringement connected to any MDx report, Health Grades must prove that the report was on the MDx website at the time of the alleged infringement.  Health Grades may only receive damages

for infringement connected to those reports that Health Grades proves meet all the claim elements.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My instructions about damages are for your guidance only in the event you find in favor of Health Grades.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.0 (2012); *Powell v. Home Depot U.S.A., Inc.,* 663 F.3d 1221, 1238 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 868 (Fed. Cir. 2010); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009); 35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.,* 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987).

**RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 33**

**<u>Joint Response Regarding Global Disputes</u>**

- <u>Extent of Infringement</u>:  The parties respectfully refer the Court to the discussion regarding the Extent of Infringement Instruction # 15.

- <u>Inequitable Conduct</u>:  As discussed *supra*, the parties dispute whether the jury should be instructed on the law of inequitable conduct.  Health Grades has moved for summary judgment of no inequitable conduct (Doc. #369), which if granted will render this issue moot.

# JURY INSTRUCTION NO. 34

## *Date Damages Begin*

You should calculate any damages beginning as of the date Health Grades began marking its website with the '060 patent number, which the parties agree is November 16, 2010.

Sources and Authorities:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS NO. B.6.8 (Feb. 2012); 35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); *Halliburton Servs. v Smith Int'l, Inc.*, 317 F.Supp.2d 719 (E.D. Tex. 2004) (when patent contains both method and apparatus claims and when there is a tangible item by which notice of asserted method can be given, patentee must mark tangible item to comply with marking statute).

### *Two Types of Damages – Lost Profits and Reasonable Royalty*

There are two types of damages for patent infringement. The first type of patent damages is lost profits.  Briefly, lost profits damages give a patent owner the additional profits that there is a reasonable probability it would have made if there had been no infringement.  You may hear this referred to as the "but for" test – which means, "what profits would the patent owner have made 'but for' the alleged infringement?"  The second type of patent damages is called reasonable royalty.  A reasonable royalty is the reasonable amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and the patent owner would have accepted.  A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

<u>Sources and Authorities:</u>

AIPLA MODEL INSTRUCTIONS, §11.2 (2012); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) ("The patentee need only show that there was a reasonably probability that the sales would have been made 'but for' the infringement.") (citing *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir. 1991); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) ("In proving his damages, the patent owner's burden of proof is not an absolute one, but rather a burden of reasonably probability.") *Grain Processing Corp. v. American Mairze-Products Co.*, 185 F.3d 1341, 1349–50 (Fed. Cir. 1999) (discussing same).

## JURY INSTRUCTION NO. 35

*Lost Profits – "But-For" Test*

Health Grades is seeking lost profits damages in this case. To prove lost profits damages, Health Grades must show by a preponderance of evidence that, but for MDx's infringement, Health Grades would have made additional profits generated from users who visited MDx's Vitals.com website. Thus, part of your job is to determine what the users who visited MDx's Vitals.com website would likely have done if the infringement had not occurred.  It is important to remember that the profits I have been referring to are the profits allegedly lost by Health Grades, not the profits, if any, made by MDx on the allegedly infringing sales.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.3 (2012); *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1289 (Fed. Cir. 2011); *American Seating Co. v. USSC Group, Inc.,* 514 F.3d 1262 (Fed. Cir. 2008); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964); *Micro Chem. v. Lextron, Inc.,* 318 F.3d 1119, 1122-1125 (Fed. Cir. 2003); *Ferguson Beauregard/Logic Controls v. Mega Sys., L.L.C.,* 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Ericsson, Inc. v. Harris Corp.,* 352 F.3d 1369, 1377 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.,* 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. Am. Maize-Prods. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *King Instruments Corp. v. Perego,* 65 F.3d 941, 952 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1577 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.,* 857 F.2d 1418, 1428 (Fed. Cir. 1988); *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 863-64 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.,* 745 F.2d 11, 21 (Fed. Cir. 1984);

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1365 (Fed. Cir. 1984); *Central Soya Co. v. Geo A Hormel & Co.*, 723 F.2d 1573, 1578-79 (Fed. Cir. 1983); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) ("The patentee need only show that there was a reasonably probability that the sales would have been made 'but for' the infringement.") (citing *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir. 1991); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) ("In proving his damages, the patent owner's burden of proof is not an absolute one, but rather a burden of reasonably probability.") *Grain Processing Corp. v. American Mairze-Products Co.*, 185 F.3d 1341, 1349–50 (Fed. Cir. 1999) (discussing same).

# JURY INSTRUCTION NO. 36

## *Lost Profits* – *Panduit Factors*

Health Grades has proven its lost profits if you find that Health Grades has proven each of the following factors by the more likely than not standard:

1.  there was a demand for the patented product,

2.  the absence of acceptable non-infringing substitutes,

3.  Health Grades had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by MDx, and

4.  the amount of profit that Health Grades would have made if it were not for MDx's infringement.

I will now explain each of these factors.

<u>Sources and Authorities:</u>

AIPLA MODEL INSTRUCTIONS, §11.4 (2012); *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1287 (Fed. Cir. 2011); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1329 (Fed. Cir. 2009); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-79 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989); *Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 275 (Fed. Cir. 1985); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

# JURY INSTRUCTION NO. 37

## *Lost Profits – Panduit Factors – Demand*

The first factor asks whether there was demand for the patented product in the relevant market.  Health Grades can prove demand for the patented product by showing significant revenue generated from the patented portion of Health Grades' –website, only if Health Grades proves that its website is in fact practicing the patented invention.  Health Grades also can prove demand for the patented product by showing significant revenue generated from the patented portions of MDx's website.  To use revenue from MDx's website as proof of this demand, however, Health Grade's and MDx's products must be sufficiently similar to compete against each other in the same market or market segment.

To prove demand, Health Grades must show that the patented features, other than those found in the prior art, are what drives consumers to these websites.  Even if Health Grades shows that the patented features were valuable, important, or even essential, that would not be sufficient for Health Grades to meet its burden of proving demand.  Nor would it be sufficient even if Health Grades could show that the website would be commercially unviable without the patented features.

You should not consider revenue generated mainly from Health Grades advertising and marketing, or from unpatented features of the products, as evidence of demand for the patented product.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.5 (2012); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548-49 (Fed. Cir. 1995); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 n.3 (Fed. Cir. 1991); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2012 U.S. App. LEXIS 18441, at *36-37 (Fed. Cir. Aug. 30, 2012).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 37

### Health Grades' Response

- Health Grades' proposed instruction is nearly identical to AIPLA Model Instruction §11.5, which does not include MDx's proposed language.

- MDx's proposed language with respect to certain "features" of the website are inappropriate in the context of instructions on lost profits. Accordingly, they will likely confuse and mislead the jury into believing that Health Grades must carry a heavier burden with respect to demand than the law actually requires. MDx's supports its inappropriate additions to the AIPLA Model Instruction on lost profits with a citation to *LaserDynamics*—a decision that never discussed lost profits and is factually distinguishable from the present case as discussed *infra* with respect to disputed Instruction No. ___: Reasonably Royalty – Form and Basis.

- By relying on *LaserDynamics*, MDx continues to confuse the *Panduit* demand test with the entire market value rule as Health Grades previously explained at length in its Opposition to MDx's Motion to Exclude Expert Testimony of Mr. David Hall (Doc. #411, pp. 10–15). MDx's proposed references to "patent portions" and/or "patented features" throughout these damage instructions are misplaced. Under *Panduit*, the burden on Health Grades is to prove "but for" causation, at which point the burden shifts to MDx to show that Health Grades' causation claim is unreasonable. *See Grain Processing Corp. v. American Mairze-Products Co.*, 185 F.3d 1341, 1349–50 (Fed. Cir. 1999) ("Once the patent owner establishes a reasonably probability of 'but for' causation, the burden then shifts to the accused infringer to show that the patent owner's 'but for' causation claim is unreasonable for some or all of the lost sales."); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (discussing same).

- To that end, the Federal Circuit explained long-ago that showing substantial sales of a defendant's infringing products containing the patented features, which in this case entails

showing advertising revenue derived from MDx's infringing website, is itself "compelling evidence of the demand for the product." *Gyromat Corp. v. Champion Spark Plug*, 735 F.2d 549, 552 (Fed. Cir. 1984).  MDx's proposed language will likely confuse the jury into mistakenly thinking that it is Health Grades' burden to somehow show which portions of advertising sales were not related to infringing "portions" or "features."  Not only would requiring Health Grades to do so in this case be contrary to established law, but it would force Health Grades to engage in an apportionment exercise that is impossible and unreasonable given the facts of this case.

- Health Grades further objects to the sentence: "You should not consider sales of products mainly due to advertising and marketing, or unpatented features of the products as evidence of demand for the patented product."  The damages in this case directly stem from revenue generated by advertising and marketing presented to consumers through the websites at issue. Instructing the jurors not to consider "sales of products mainly due to advertising and marketing**"** will confuse them given that, in this case, "sales of products" equates to "advertising revenue."  When properly modified to suit the facts of this case, the sentence confusingly reads: "You should not consider advertising revenue mainly due to advertising and marketing . . . ."  MDx's proposed language will do more harm than good given such context.  Instructing jurors not to consider advertising revenue "mainly due to unpatented features of the products" will similarly confuse jurors given that the patented features comprise a fundamental and integrated part of the websites at issue.  As explained *supra*, it is not Health Grades' burden to apportion demand for lost profits.  Moreover, MDx has presented no arguments as to how jurors can reasonably apportion such demand.  Jurors—understandably—will not know how to apply the language proposed by MDx and it will only serve to confuse them or, at best, lead them into the realm of extreme speculation.

- Further, MDx's proposed language attempts to communicate the incorrect notion that a reconstructed marketplace in the but-for analysis should center on offering a hypothetical website without the infringing "features."  When correctly applied, the but-for analysis focuses on a reconstructed marketplace in which the infringing *website* is not on the market. In other words, it is performed by assuming the infringing product is not on the market and then determining whether there is demand for the patented product.  *See Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("The 'but for' inquiry therefore requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what the patentee 'would . . . have made.").  MDx's attempts to shift the jury's focus to "features" conflates Health Grades' burden and will likely confuse jurors.

### **MDx's Response**

- <u>Demand from the Health Grades website</u>:  Health Grades would like the jury to simply assume that the Health Grades website (1) is practicing the '060 patent; and (2) that the entire revenue from that website is driven by the patented features.  This position makes no sense and is not supported by the law.  Products and services only demonstrate commercial success

of the patented invention is they are in fact practicing that invention, and then only to the extent that the patented features are shown to be driving the demand.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2012 U.S. App. LEXIS 18441, at *36-37 (Fed. Cir. Aug. 30, 2012); *Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.,* 936 F. Supp. 2d 30, 72 (D. Conn. 2013).

- Driving Consumers:  Health Grades cannot show demand absent proof that ***the patented features*** are actually the features driving the consumers to these websites, as opposed to other features of the websites, or features found in the prior art.  This is simply a product of sound economics.  The Panduit demand factor would be meaningless if it need not be connected to the patented features (envision, for example, a patent on a door lock in an automobile – how could demand for the entire automobile have any relevance to damages on the door lock?).  *See, e.g., Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.,* 936 F. Supp. 2d 30, 72 (D. Conn. 2013) (Lost profits analysis: "The Court finds that Tyco has proved by a preponderance of the evidence that the demand existed ***for the features covered by the '050, '286, and '544 patents***");  *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2012 U.S. App. LEXIS 18441, at *36-37 (Fed. Cir. Aug. 30, 2012).

- Health Grades is simply wrong with its argument about the hypothetical marketplace.  This does not assume that ***the entire MDx website, including the many, many aspects unrelated to the patent*** would be shut-down.  Rather, it simply assumes that MDx is not ***infringing***.  So, if MDx simply removed the alleged comparison ratings, it would not be infringing, as just one of many examples of claim elements that could be eliminated.  There is absolutely no rational basis for assuming that the MDx website would be entirely eliminated.  *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999).

# JURY INSTRUCTION NO. 38

## *Lost Profits – Panduit Factors – Acceptable Non-Infringing Substitutes*

The second factor asks whether there were non-infringing, acceptable substitutes for the patented products in the market place. If the realities of the marketplace are that competitors other than Health Grades would likely have captured some or all of the users' visits to the patented features of the MDx website, even despite a difference in the websites, then Health Grades is not entitled to lost profits on those sales.

To prove that there are no acceptable  [**48] noninfringing substitutes, Health Grades must show either that (1) the purchasers in the marketplace generally were willing to buy the patented product for its advantages, or (2) the specific purchasers of the infringing product purchased on that basis.

To be an acceptable substitute, the websites must have had one or more of the advantages of the patented invention that were important to the actual users of patented features of the MDx website, not the public in general.  The acceptable substitutes also must not infringe the patent because they were licensed under the patent or they did not include all the features required by the patent.  The acceptable substitutes, in addition, must have been available during the damages period.  An acceptable non-infringing substitute is available if, during the damages period, a competitor or MDx had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell the substitute instead of the infringing portions of its website at the time users visited the those infringing portions of the website.  If you determine that some of MDx's customers would just as likely have used a non-infringing acceptable

113

website, then Health Grades has not shown it lost revenue but for the infringing portions of MDx's website.

Even if you find that Health Grades' and MDx's websites were the only ones with the advantages of the patented invention, it still remains Health Grades' burden to prove that it more likely than not would have captured MDx's website visits. In this connection, you may not include visits where users visited both MDx and Health Grades websites, because Health Grades did not lose any revenue from those users.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.6 (2012); O'Malley et al., 3A FED. JURY PRAC. & INSTR. § 158:92 (6th ed. Oct. 2012); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1331-32 (Fed. Cir. 2009); *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1373 (Fed. Cir. 2008); *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, (Fed. Cir. 2008); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372-73 (Fed. Cir. 2008); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545-46 (Fed. Cir. 1991); *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142-43, 1143 n.17 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901-902 (Fed. Cir. 1986); *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989);

**RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 38**

**Health Grades' Response**

- Health Grades' proposed instruction is nearly identical to AIPLA Model Instruction §11.6, which does not include MDx's proposed language. The Model Instruction sufficiently addresses this topic. Although MDx's proposed addition of the paragraph beginning with "To prove that there are no acceptable . . ." is copy-pasted from a Federal Circuit case, it is vague and confusing in the context in which MDx attempts to insert it. It also overemphasizes Health Grades' burden. Under *Grain Processing,* Health Grades' burden is to examine what other websites were actually on the market and to prove an absence of acceptable non-infringing substitutes. The burden then shifts to MDx to prove if an acceptable infringing alternative was available notwithstanding that it was not on the market. Under that burden, MDx would need to show a non-infringing website that was acceptable to some or all of its historical customers. MDx's language attempts to place that burden on Health Grades and avoid the burden of proving a hypothetical alternative that was not on the market but was nevertheless available and acceptable.

- Health Grades' respectfully refers the Court to the Health Grades' response regarding Instruction No. __ on Lost Profits – Panduit Factors – Demand. As discussed *supra*, MDx's proposed language with respect to certain "features" and/or "portions" of the websites are inappropriate in the context of instructions on lost profits. Moreover, they are unreasonable and confusing given the facts of this case.

- MDx's proposed instruction regarding co-visitors is redundant, overbroad, confusing, and unnecessary because Health Grades' damage analysis, which the jury will hear, already accounts for the effect of co-visitors.

**MDx's Response**

- Patented Features:  Health Grades again would have the jury assume that its entire website is coextensive with the patent claims.  See the discussions above in Instruction #38.

- Users of both websites:  Health Grades does not dispute that it has no damages where users visited both websites, but does not want the jury informed of this.

- Health Grades is confused on the burden of proof issues, but the major, recurring flaw in all of these Health Grades proposals is the irrational and baseless assumption that the entire MDx website is infringing.  Health Grades overlooks the obvious in arguing that MDx could not have removed any single feature of the claims without shutting down the entire website.

•

# JURY INSTRUCTION NO. 39

## *Lost Profits – Market Share*

If you find that there were other acceptable non-infringing substitute products in the market, then Health Grades may be entitled to lost profits on a portion of MDx's infringing sales. The burden is on Health Grades to prove that it is more likely than not that the Health Grades website competed in the same market as MDx's infringing product, and that Health Grades would have made a portion of the revenue derived from MDx's infringement equal to at least Health Grades' share of that market but for MDx's infringement. It is not necessary for Health Grades to prove that Health Grades and MDx were the only two suppliers in the market for Health Grades to demonstrate entitlement to lost profits.  The burden is on Health Grades, however, to show that it is more likely than not that it would have made additional revenue equal to that portion if MDx had not infringed.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.7 (2012); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353-1357 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989).

# JURY INSTRUCTION NO. 40

## *Lost Profits* – *Panduit Factors* – *Capacity*

The third factor asks whether Health Grades had the manufacturing and marketing ability to actually generate the advertising revenue it allegedly lost due to MDx's infringement.  Health Grades must prove that it could have supplied the HealthGrades.com website needed to generate the diverted advertising revenue, or that someone working with Health Grades could have supplied the HealthGrades.com website.  Health Grades also must prove that it had the ability to market its HealthGrades.com website and to generate advertising revenue by attracting visitors to the site.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.8 (2012); *Wechsler v. Macke Int'l Trade, Inc.,* 486 F.3d 1286, 1293 (Fed. Cir. 2007); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); *Fonar Corp. v. Gen. Elec. Co*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994); *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 825 (Fed. Cir. 1989); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 554 (Fed. Cir. 1984).

## JURY INSTRUCTION NO. 41

*Lost Profits – Panduit Factors – Amount of Profit Incremental Income Approach*

Health Grades may calculate the amount of its lost profits by calculating the lost advertising revenue that would have been generated by any patented features of Health Grades' website and subtracting from that amount any additional costs or expenses that Health Grades would have had to pay to make the advertising revenue. This might include additional costs for making or maintaining the website, additional sales and marketing costs, etc. Any costs that do not change when more users visit the website, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from the lost revenue amount. The amount of lost profits cannot be speculative, but it need not be proved with unerring certainty.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.9 (2012); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1579 (Fed. Cir. 1991); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482-1483 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579-1580 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987); *King Instrument Corp. v. Otari*, 767 F.2d 853, 863-864 (Fed. Cir. 1985); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554-555 (Fed. Cir. 1984); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984);

*Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*, 739 F.2d 604 (Fed. Cir. 1984); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

**RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 41**

**Health Grades' Response**

- Health Grades' proposed instruction is nearly identical to AIPLA Model Instruction §11.9, which does not include MDx's proposed language.

- Health Grades' respectfully refers the Court to the Health Grades' response regarding Instruction # __ on Lost Profits – Panduit Factors – Demand.  As discussed *supra*,  MDx's proposed language with respect to certain "features" and/or "portions" of the websites are inappropriate in the context of instructions on lost profits.  Moreover, they are unreasonable and confusing given the facts of this case.

- Contrary to MDx's response, Health Grades does not ask the Court and the jury to assume that "the entire revenue" from the Health Grades website is driven by the patented features. Nor has Health Grades even calculated damages based on the entire revenue.  As discussed at length in the Health Grades' expert reports on damages and in Health Grades' Opposition to MDx's Motion to Exclude Expert Testimony of Mr. David Hall (Doc. #411, pp. 10–15), Health Grades' has calculated lost profits based solely on advertising revenue rather than the many sources of revenue that collectively form "the entire revenue" MDx refers to in its response.

**MDx's Response**

- <u>Confusing the Health Grades website with the patent</u>:  Health Grades again asks the court and jury to simply assume that the Health Grades website (1) is practicing the '060 patent; and (2) that all the advertising revenue from that website is driven by the patented features. Health Grades does not dispute that the "advertising revenue" on which is seeks damages is generated from its entire website, including many unpatented portions.  Thus, Health Grades simply asks that it receive lost revenue generated from its entire website, without any concern for the patented features.

## JURY INSTRUCTION NO. 42

***Lost Profits – Doubts Resolved Against Infringer** and Health Grades Continuing Burden*

Any doubts that you may have regarding the amount of damages due to MDx's failure to keep proper records should be decided in favor of Health Grades.  Any confusion or difficulties caused by MDx's records also should be held against MDx, not Health Grades. However, the burden of proving damages at all times remains on Health Grades.  Any damages calculated by Health Grades must be calculated with reasonable certainty, but not with mathematical precision.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.13 (2012); *DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1309 (Fed. Cir. 2006); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572-73 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 42

#### Health Grades' Response

- Health Grades' proposed instruction is nearly identical to AIPLA Model Instruction §11.13, which does not include MDx's propose language.  Although Health Grades has the burden of proving damages, MDx's proposed language emphasizing a "continuing burden" risks confusing the jury into thinking that Health Grade's burden is heavier than it is in actuality..

- Health Grades' proposed instruction will be helpful to the jury because doubts like those addressed by the instruction could arise in this type of complex case.  For example, MDx repeatedly, albeit incorrectly, claims that Health Grades must prove demand with respect to particular features of the websites.  If MDx's records do not report its advertising on a feature-by-feature basis as MDx claims is possible, the jury could have doubts as to how to resolve the fact that MDx's records are insufficient to permit Health Grades to prove what

MDx claims Health Grades must prove.  The above instruction will assist jurors in resolving those doubts in accordance with well-settled law.  Absent the above instruction, jurors will likely be uncertain as to how they should proceed in the face of such doubts.

**<u>MDx's Response</u>**

- This issue about MDx records is not in the case, and has never been in this case.  The rule is only applicable "when the calculation of damages is impeded by incomplete records of the infringer."  *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572-73 (Fed. Cir. 1996).  That is not the case here, and Health Grades has not argued as much.   If the instruction is allowed, then the jury should be reminded that this does not change or diminish the Health Grades' burden, as these cases confirm.

# JURY INSTRUCTION NO. 43

## *Reasonable Royalty - Generally*

If you find that Health Grades has not proven its claim for lost profits, or if you find that Health Grades has proven its claim for lost profits for only a portion of the revenue of the MDx's Vitals.com website, then you must consider the issue of a reasonable royalty.  When doing so, you must decide whether Health Grades has proven an amount as a reasonable royalty that it could have earned on revenue MDx generated from any infringing portions of the Vitals.com website.  You should only apply the reasonable royalty to the infringing revenue amounts for which you have not already awarded Health Grades lost profit damages.  A royalty is a payment made to a patent owner by someone else in exchange for the rights to make, use, sell, or import a patented product.

The patent law provides that the amount of damages that MDx should pay Health Grades for infringing Health Grades' patent must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of Health Grades' invention.


Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.14 (2012); 35 U.S.C. § 284; *Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292 (Fed. Cir. 2011); *Lucent Technologies, Inc. v. Gateway, Inc*., 580 F.3d 1301, 1324-25 (Fed. Cir. 2009); *Fromson v. W. Litho Plate & Supply Co*., 853 F.2d 1568, 1574 (Fed. Cir. 1998) overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); *Minco, Inc. v. Combustion Eng'g, Inc*., 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc*., 79 F.3d 1572,

1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en

banc).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 43

### Health Grades' Response

- Health Grades' proposed instruction is nearly identical to AIPLA Model Instruction §11.14,
  which does not include MDx's proposed language.

- MDx's proposed reference "infringing portions" are inappropriate in the context of this case.
  As discussed *supra* and explained at length in Health Grades' Opposition to MDx's Motion
  to Exclude Expert Testimony of Mr. David Hall (Doc. #411, pp. 17–21), it is not practical to
  apportion the commercial success or demand to individual features of the websites.  Rather,
  the smallest saleable unit in this case is the advertising revenue stemming from the patent
  product as a whole.  Additionally, the features covered by the '060 Patent are a fundamental
  part of both websites.   Indeed, it is likely for that very reason that MDx has not identified or
  presented any evidence regarding any non-patented features that supposedly drive demand.
  Nor has MDx identified or presented any evidence regarding the value of the so-called
  unpatented features.  Further, Health Grades' damage expert already appropriately reduced
  the royalty rate to account for unpatented features of the MDx website for which demand
  could not be apportioned without entering the realm of speculation.  For instance, Health
  Grades' expert considered a co-visitor analysis, licensing histories, and a thorough analysis
  of the *Georgia Pacific* factors.  Health Grades' damage calculation also properly considered
  only the smallest saleable unit—the advertising revenue.  Instructing the jury as MDx
  proposes will confuse the jury.  Health Grades' damage calculations are economically
  justified and obviate the need to risk confusing the jury on the issue of apportionment.

### MDx's Response

- The model instructions do not purport to address the situation, as here, where only a small
  portion of an entire service practices the claims, and thus they are not on point.

- Again, contrary to Federal Circuit law, Health Grades asks that it be awarded damages for all
  advertising revenue generated from the entirety of the Vitals.com website.  No case supports
  this argument, especially here where even Health Grades and its expert acknowledge that
  there are many unpatented features on the Vitals.com website.  *LaserDynamics, Inc. v.
  Quanta Computer, Inc.*, 2012 U.S. App. LEXIS 18441, at *32-35 (Fed. Cir. Aug. 30, 2012)
  ("Where small elements of multi-component products are accused of infringement,
  calculating a royalty on the entire product carries a considerable risk that the patentee will be
  improperly compensated for non-infringing components of that product."); *see also
  ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("[T]he trial court must
  carefully tie proof of damages to the claimed invention's footprint in the market place.").

- Health Grades' argument that it may use the smallest saleable unit is misguided, as that simply does not address the issue of this instruction – whether Health Grades may be compensated for MDx revenue driven by features of the MDx website that are not subject to the patent.

- Health Grades' argument is inconsistent with the Federal Circuit precedent.  That is, since the websites have many unpatented features, Health Grades cannot use advertising revenue for the entire website without proof that those features were driving uses on the entire website. Use of the entire market value is impermissible unless Health Grades shows that the patented features ***drove demand for the entire website***.  While Health Grades had other options to attempt to prove a reasonable royalty (*e.g.,* a lump sum payment), it chose to vastly over-reach by trying to take a percentage of the entire market value inconsistently with Federal Circuit law.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2012 U.S. App. LEXIS 18441, at *35 (Fed. Cir. Aug. 30, 2012) (rejecting use of entire market value where plaintiff overlooked lump sum options, and failed to address the "fundamental concern" of the entire market value rule that application of a royalty rate to the entire product will overcompensate the plaintiff).

- "[T]he patentee . . . ***must in every case*** give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative," or show that "the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011)(quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)); *see also Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301, 1336 (Fed. Cir. 2009); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1549-50 (Fed. Cir. 1995).*

# JURY INSTRUCTION NO. 44

## *Reasonable Royalty Definition – Using the "Hypothetical Negotiation" Method*

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Health Grades and MDx.  Of course, we know that they did not agree to a license and royalty payment.  However, in order to decide on the amount of reasonable royalty damages, you should assume that that the parties did negotiate a license just before the infringement began.  This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.15 (2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 869-70 (Fed. Cir. 2003); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993).

# JURY INSTRUCTION NO. 45

## *Reasonable Royalty – Form and Basis*

Royalty agreements may take various forms.  They may be structured on a one-time, lump-sum payment, a recurring fixed amount, and/or a running percentage of sales or revenue. Here, MDx alleges that any royalty would have been paid as a recurring fixed amount, paid annually.  Health Grades alleges that any royalty would be a percentage of MDx advertising revenue.   It will be your job to determine which of these several possible forms is appropriate under the circumstances.

If you determine that a percentage of revenue is the appropriate measure of damages, you must determine an appropriate royalty percentage, and you must also determine the proper base upon which to apply that percentage.  That is, what is the royalty percentage applied to?  It is Health Grades' burden to prove both the royalty rate and an appropriate basis.

You may not apply any royalty percentage to revenue from the entire MDx website, unless you find that the patented features drove the demand for the entire website.  You may not avoid this requirement simply by lowering the applicable royalty rate.  As with proof of demand regarding lost profits, you must find that the patented features, other than those found in the prior art, are what motivates consumers to go to these websites.  Even if Health Grades shows that the patented features were valuable, important, or even essential, that would not be sufficient for Health Grades to meet its burden of proving demand.  Nor would it be sufficient even if Health Grades could show that the website would be commercially unviable without the patented features.  Rather, the patented features, different from those in the prior art, must have driven demand for the entire website.

126

If Health Grades has not proved that the patent drove the demand for the entire website, then it was Health Grades' burden to prove the portion of the revenue of the MDx website that is attributable to the patented features to use as a basis for the royalty percentage .  If Health Grades has not proven either that the patented features drove demand for the entire websites, or if not the portion of the revenue of the websites that is attributable to the patented features, then Health Grades has failed to prove a proper basis for application of a royalty percentage.

Sources and Authorities:

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2012 U.S. App. LEXIS 18441, at *32-34 (Fed. Cir. Aug. 30, 2012).

**RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 45**

**Health Grades' Response**

- MDx's proposed instruction is not found in the AIPLA Model Instructions.

- *LaserDynamics* is distinguishable.  Among other reasons, *LaserDynamics* discussed the entire market value rule in the context of a multi-component electronic device.  Specifically, in that case, an optical disk drive manufacturer sued a laptop computer company.  The infringing product was an optical disk drive, one of many components contained in the laptops sold by the defendant.  The plaintiff attempted to apply the reasonably royalty rate to the value of the entire laptop.  This case does not involve a multi-component device—it involves a website.  The '060 Patent does not cover a single component within an multi-component accused device.  It is not reasonable or practical to apportion demand based on features covered by the claims.  To do so would be purely speculative under these circumstances.  Counsel for MDx has himself admitted as much while deposing Health Grades' damages expert (p. 255, l. 8).  Instead, in accordance with *LaserDynamics*, Health Grades has calculated damages based on the "smallest saleable unit"—advertising revenue. Heath Grades has not account for other sources of revenue stemming from MDx's website. Additionally, the features covered by the '060 Patent are fundamental to both parties' websites.

- MDx's proposed language with respect to lowering the applicable royalty rate further misconstrues *LaserDynamics* and will confuse the jury. In *LaserDynamics*, the court rejected the royalty rate discount because it was arbitrary and not rooted in the facts of the case. In this case, Health Grades' damage expert has reasonably lowered the damage rate to account for unpatented features of the MDx website for which demand could not be apportioned without entering the realm of speculation. For instance, Health Grades' expert considered a co-visitor analysis, licensing histories, and a thorough analysis of the *Georgia Pacific* factors. Health Grades' damage calculations are economically justified and obviate the need to risk confusing the jury on the issue of apportionment.

- MDx is effectively attempting to reintroduce arguments that the Court implicitly rejected when denying MDx's Motion to Exclude Testimony of Mr. David Hall (Doc. #374).

### MDx's Response

- The disputed sections are taken directly from recent, and controlling, Federal Circuit law. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2012 U.S. App. LEXIS 18441, at *32-34 (Fed. Cir. Aug. 30, 2012).

- Health Grades' argument is inconsistent with the Federal Circuit precedent. That is, since the websites have many unpatented features, Health Grades cannot use advertising revenue for the entire website without proof that those features were driving uses on the entire website. Use of the entire market value is impermissible unless Health Grades shows that the patented features ***drove demand for the entire website***. While Health Grades had other options to attempt to prove a reasonable royalty (*e.g.,* a lump sum payment), it chose to vastly over-reach by trying to take a percentage of the entire market value inconsistently with Federal Circuit law. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2012 U.S. App. LEXIS 18441, at *35 (Fed. Cir. Aug. 30, 2012) (rejecting use of entire market value where plaintiff overlooked lump sum options, and failed to address the "fundamental concern" of the entire market value rule that application of a royalty rate to the entire product will overcompensate the plaintiff).

- "[T]he patentee . . . ***must in every case*** give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative," or show that "the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011)(quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)); *see also Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301, 1336 (Fed. Cir. 2009); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1549-50 (Fed. Cir. 1995).*

## JURY INSTRUCTION NO. 46

### *Relevant Factors if Using the Hypothetical Negotiation Method*

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

- Any royalties received by Health Grades from licensing the '060 Patent that prove or tend to prove an established royalty.

- Any royalty rates paid by MDx for the use of other patents comparable to the '060 Patent.

- The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom may use the website.

- Health Grades' established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

- The commercial relationship between Health Grades and MDx, such as whether or not they are competitors in the same territory in the same line of business.

- The effect of the patented -invention in promoting sales of other products of MDx; the existing value of the invention to Health Grades as a generator of sales of its non-patented items; and the extent of such collateral sales.

- The duration of the '060 patent and the term of the license.

- The established profitability of the product made under the '060 patent; its commercial

success; and its current popularity.

- The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.

- The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Health Grades; and the benefits to those who have used the invention.

- The extent to which MDx has made use of the invention; and any evidence that shows the value of that use.

- The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the business risks, or significant features or improvements added by MDx.

- The portion of the profit or of the generated advertising revenue that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

- The opinion testimony of qualified experts.

- The amount that Health Grades and MDx would have agreed upon at the time the infringement began if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

- Any other economic factor that a normally prudent business person would, under

similar circumstances, take into consideration in negotiating the hypothetical license.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.16 (2012); *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling,* 488 F.3d 973 (Fed. Cir. 2007); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

# JURY INSTRUCTION NO. 47

## *Reasonable Royalty - Timing*

Although the relevant date for the hypothetical license negotiation is just before the infringement began, you may consider any actual profits made , or losses incurred, by MDx due to its infringement and any commercial success of the patented portions of Health Grades' website if Health Grades has proved it is using the patented invention; and you may consider any commercial success of the infringing portions of the Vitals.com website after that date.  You may only consider this information, however, if those profits or losses were foreseeable just before the infringement began.


Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.18 (2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 869-70 (Fed. Cir. 2003); *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446-48 (Fed. Cir. 1990); Studiengesellschaft Kohle, mbH v. Dart Indus., Inc., 862 F.2d 1564, 1570-72 (Fed. Cir. 1988*); Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988), overruled on other grounds by *Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir 2004).

## RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 47

### Health Grades' Response

- Health Grades' proposed instruction is nearly identical to AIPLA Model Instruction §11.18, which does not include MDx's proposed language.

- Health Grades' respectfully refers the Court to the Health Grades' response regarding Instruction # __ on Reasonable Royalty – Timing.  As discussed *supra*,  MDx's proposed references to "patent portions" and "infringing portions" are inappropriate in the context of this case.  Jurors—understandably—will not know how to apply the language proposed by MDx and it will only serve to confuse them or, at best, lead them into the realm of extreme speculation.  Health Grades' damage calculations are economically justified and obviate the need to risk confusing the jury on the issue of apportionment.

- MDx's proposed use of the term "losses" is redundant and confusing because the term "profits" already encompasses and accounts for any losses.  Adding the term "losses" creates the risk that jurors may account for such losses twice.  MDx's proposed language may also confuse the issue to the extent MDx may state that that the company as a whole suffered net losses, which are irrelevant to the determination of damages.

- MDx's proposed addition of the phrase "if Health Grades has proved it is using the patented invention" is redundant, vague, and confusing.  The AIPLA Model Instruction already instructs the jury that when determining a reasonably royalty it may "consider any actual profits made by MDx due to its infringement and any commercial success of Health Grades' patented invention."  MDx's proposed language adds nothing of further value, but instead confusingly implies an additional burden on Health Grades that is inappropriate in the context of this instruction.  For instance, it creates the risk of confusing jurors into mistakenly believing the false notion that Health Grades must "prove it is using the patented invention" to obtain a reasonably royalty.  The language of the Model Instruction is significantly less confusing and MDx's proposed additions will do more harm than good.

### MDx's Response

- Again, Health Grades asks the court and jury to assume that it is both practicing the patent, and that the Health Grades website is coextensive with the patent, but these are matters that Health Grades must prove.

- As for the "losses" issue, Health Grades only wants the positive stated in the instruction on its questionable understanding that the term "profits" includes losses.  This is not the ordinary meaning of profits, and the jury should be told that losses may be considered too.

## JURY INSTRUCTION NO. 48

### *Reasonable Royalty – Availability of Acceptable Non-Infringing Substitutes*

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes for the patented invention.  An acceptable non-infringing substitute must be a website that does not infringe the patent because it is licensed under the patent or it does not include all the features required by the claims of the patent.

An acceptable non-infringing substitute is available if MDx had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell the substitute instead of its infringing product at the time the infringing product was sold.  The substitute a substitute portion of its website instead of the portions of its website that were infringing, at the time of the infringement.  The substitute portion also must be acceptable to the specific users of the infringing portion of the website, not the public in general.

The test is whether users of MDx's website used the infringing portions of the website because of the patented features.  If so, non-infringing websites portions without those patented features would not be "acceptable non-infringing substitutes," even if they could compete in the marketplace with the patented product portions.

Sources and Authorities:

AIPLA MODEL INSTRUCTIONS, §11.19 (2012); *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262 (Fed. Cir. 2008); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372-73 (Fed. Cir. 2008); *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1312 (Fed. Cir.

2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).

**RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 48**

**Health Grades' Response**

- Health Grades' respectfully refers the Court to the Health Grades' response regarding Instruction # __ on Reasonable Royalty – Timing.  As discussed *supra*,  MDx's proposed references to "patent portions" and "infringing portions" are inappropriate in the context of this case.  Jurors—understandably—will not know how to apply the language proposed by MDx and it will only serve to confuse them or, at best, lead them into the realm of extreme speculation.   Health Grades' damage calculations are economically justified and obviate the need to risk confusing the jury on the issue of apportionment.

**MDx's Response**

- The Health Grades language fails to recognize that the issue is substitutes for the patented features, not the entire website.

## JURY INSTRUCTION NO. 49

### *Reasonable Royalty – Post-Trial*

If you find that MDx has infringed any of the asserted claims, then you may award a reasonable royalty for MDx's use of the patented inventions in the future.  This royalty is different from the payment of money that you have been asked to find is owed as damages to Health Grades as a result of MDx's infringement before this trial.  This additional payment may be equal to the annual lump sum or royalty rate you determined earlier, depending on which you have decided MDx must pay.

In determining the reasonable royalty that MDx should pay to continue using the patented technology after this trial, you may consider evidence on any of the following factors:

1.  any cost to MDx attributable to switching from an infringing design to a non-infringing design;

2.  any demand for -the infringing portions of  MDx's website;

3.  any use of the same technology or technology very similar to the invention in new MDx products;

4.  any amount that you have determined is owed to Health Grades by MDx for MDx's past infringement; and

5.  any profits enjoyed-, or losses incurred, by MDx on the products that you have found to be infringing.

Your award for the future use of the patent should be listed separate from any award for past damages, unless you find that the parties would have negotiated a single royalty for the life of the patent or an annual royalty amount.  If you find that the parties would have negotiated a

136

single royalty, you should say so in your verdict.

      <u>Sources and Authorities:</u>

      AIPLA MODEL INSTRUCTIONS, §11.20 (2012); *Paice LLC v. Toyota Motor Corp.*, 504

F.3d 1293, 1315 (Fed. Cir. 2007); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir.

2008); *Paice LLC v. Toyota Corp.*, 609 F. Supp. 2d 620, 624-630 (E.D. Tex. 2009); *Joyal*

*Prods., Inc. v. Johnson Elec. N. Am., Inc.*, 2009 U.S. Dist. LEXIS 15531, *38 (D.N.J. Feb. 27,

2009), *aff'd per curiam by* 335 Fed. Appx. 48 (Fed. Cir. 2009).

**RESPONSES REGARDING DISPUTED ISSUES IN INSTRUCTION NO. 49**

**Health Grades' Response**

- Health Grades' respectfully refers the Court to the Health Grades' response regarding Instruction # __ on Reasonable Royalty – Timing.  As discussed *supra*,  MDx's proposed references to "patent portions" and "infringing portions" are inappropriate in the context of this case.  Jurors—understandably—will not know how to apply the language proposed by MDx and it will only serve to confuse them or, at best, lead them into the realm of extreme speculation.  Health Grades' damage calculations are economically justified and obviate the need to risk confusing the jury on the issue of apportionment.  Health Grades further objects based on the concerns discussed *supra* with respect to inserting the term "losses."

**<u>MDx's Response</u>**

- The same issues addressed above about demand being for the patented features and not the entire website, and the mention of losses, are here too.

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2014, I electronically filed the foregoing **JOINT PROPOSED PATENT JURY INSTRUCTIONS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Vincent Marc Ferraro**
  vferraro@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com


*s:/        Vincent M. Ferraro*