# EXHIBIT A

# AIPLA's Model Patent Jury Instructions

© 2012, American Intellectual Property Law Association

Disclaimer

The Model Jury Instructions are provided as general assistance for the litigation of patent issues. While efforts have been and will be made to ensure that the Model Jury Instructions accurately reflect existing law, this work is not intended to replace the independent research necessary for formulating jury instructions that are best suited to particular facts and legal issues. AIPLA does not represent that the information contained in the Model Jury Instructions is accurate, complete, or current. The work could contain typographical errors or technical inaccuracies, and AIPLA reserves the right to add, change, or delete its contents or any part thereof without notice.

# **Table of Contents**

I.   Introduction ........................................................................................................................ vi

II.  Preliminary Jury Instructions ............................................................................................ 8

    A. The Nature of the Action and the Parties ......................................................................... 8

        i.   United States Patents ................................................................................................ 8

        ii.  Patent Litigation ...................................................................................................... 9

    B.  Contentions of the Parties .............................................................................................. 10

    C.  Trial Procedure ............................................................................................................... 11

III. Glossary of Patent Terms ................................................................................................. 12

IV. Glossary of Technical Terms ............................................................................................ 12

V.  Post-Trial Instructions ...................................................................................................... 13

    1.  Summary of Patent Issues .............................................................................................. 13

    2.  Claim Construction ........................................................................................................ 13

        2.0  Claim Construction – Generally .............................................................................. 13

        2.1  Claim Construction for the Case .............................................................................. 14

        2.2  Construction of Means-Plus-Function Claims for the Case ..................................... 14

    3.  Infringement ................................................................................................................... 15

        3.0  Infringement – Generally ......................................................................................... 15

        3.1  Direct Infringement - Knowledge of the Patent and Intent to Infringe are Immaterial ................................................................................................................................ 15

        3.2  Direct Infringement – Literal Infringement ............................................................. 16

            3.2.1 Direct Infringement – Joint Infringement ....................................................... 16

        3.3  Inducing Patent Infringement ................................................................................... 17

        3.4  Contributory Infringement ........................................................................................ 18

        3.5  Literal Infringement of Means-Plus-Function Claims .............................................. 18

3.6  Infringement of Dependent Claims.............................................................................. 20

3.7  Infringement of Open Ended or "Comprising" Claims ............................................... 20

3.8  Infringement by Supply of all or a Substantial Portion of the Components of a Patented Invention to Another Country (271(f)(1)).................................................... 21

3.9  Infringement by Supply of Components Especially Made or Adapted for Use in the Patented Invention to Another Country (271(f)(2)).................................................... 21

3.10  Infringement by Import, Sale, Offer for Sale or Use of Product Made by Patented Process (271(g)) .......................................................................................................... 22

3.11  Direct Infringement – Infringement Under the Doctrine of Equivalents................. 23

3.12  Limitations on the Doctrine of Equivalents – Prior Art.......................................... 23

3.13  Limitations on the Doctrine of Equivalents – Prosecution History Estoppel .......... 24

3.14  Limitations on the Doctrine of Equivalents – Subject Matter Dedicated to the Public ..................................................................................................................................... 24

4. Summary of Invalidity Defense ........................................................................................ 25

5.  Prior Art ......................................................................................................................... 25

5.0 Prior Art Defined ...................................................................................................... 25

5.1 Prior Art Considered or Not Considered by the USPTO........................................... 26

5.2  Invalidity of Independent and Dependent Claims .................................................... 26

6.  Anticipation.................................................................................................................... 27

6.0  Anticipation.............................................................................................................. 27

6.1  Prior Public Knowledge ........................................................................................... 28

6.2  Prior Public Use ....................................................................................................... 28

6.3  On Sale Bar .............................................................................................................. 29

6.4  Experimental Use ..................................................................................................... 30

6.5  Printed Publication................................................................................................... 31

6.6  Prior Invention ......................................................................................................... 32

6.7  Prior Patent.............................................................................................................. 33

6.8  Prior U.S. Application ............................................................................................. 34

7. Obviousness .................................................................................................................... 34

7.0  Obviousness ............................................................................................................ 34

7.1  The First Factor:  Scope and Content of the Prior Art ............................................. 35

7.2  The Second Factor:  Differences Between the Claimed Invention and the Prior Art 36

7.3  The Third Factor:  Level of Ordinary Skill ............................................................... 37

7.4  The Fourth Factor:  Factors Indicating Nonobviousness ........................................... 37

8.  Enablement ..................................................................................................................... 38

9.  Written Description Requirement .................................................................................... 40

10.  Unenforceability (Inequitable Conduct) ....................................................................... 41

10.1  Inequitable Conduct – Generally .......................................................................... 41

10.2  Materiality (Non-disclosure cases only) ................................................................ 42

10.3      Materiality (Affirmative Egregious Misconduct cases only) ............................... 42

10.4  Intent to Deceive or Mislead ................................................................................. 43

11.  Damages ....................................................................................................................... 44

11.0  Damages – Generally ............................................................................................ 44

11.1  Date Damages Begin ............................................................................................. 44

11.1.1  Alternate A – When the Date of the Notice of Infringement is Stipulated ..... 44

11.1.2  Alternate B – When the Date of the Notice of Infringement is Disputed –
Product Claims ............................................................................................. 45

11.1.3  Alternate C – When the Date Damages Begin is the Date the Lawsuit was
Filed ............................................................................................................. 45

11.2  Two Types of Damages – Lost Profits and Reasonable Royalty ............................. 46

11.3  Lost Profits – "But-For" Test ................................................................................. 46

11.4  Lost Profits – Panduit Factors ............................................................................... 46

11.5  Lost Profits – Panduit Factors – Demand .............................................................. 47

11.6  Lost Profits – Panduit Factors – Acceptable Non-Infringing Substitutes ............... 47

11.7  Lost Profits – Market Share ....................................................................... 48

11.8  Lost Profits – Panduit Factors – Capacity ................................................. 48

11.9  Lost Profits – Panduit Factors – Amount of Profit Incremental Income Approach  49

11.10  Lost Profits – Price Erosion ..................................................................... 49

11.11  Lost Profits – Cost Escalation ................................................................. 50

11.12  Lost Profits – Collateral Sales ................................................................ 50

11.13  Lost Profits – Doubts Resolved Against Infringer .................................. 51

11.14  Reasonable Royalty - Generally ............................................................. 51

11.15  Reasonable Royalty Definition – Using the "Hypothetical Negotiation" Method  51

11.16  Relevant Factors if Using the Hypothetical Negotiation Method .......................... 52

11.17  Reasonable Royalty – Multiple Patents ................................................. 53

11.18  Reasonable Royalty - Timing ................................................................. 54

11.19  Reasonable Royalty – Availability of Non-Infringing Substitutes ....................... 54

11.20  Reasonable Royalty – Post-Trial ............................................................ 54

12.  Willful Infringement ...................................................................................... 55

12.1  Willful Infringement - Generally ............................................................. 55

12.2  Willful Infringement – Absence of Legal Opinion .................................. 56

VI. Acknowledgments .............................................................................................. 57

## I.   <u>Introduction</u>

<u>The 2012 Version</u>

In the Winter of 2010, the Patent Litigation Committee of the American Intellectual Property Law Association once again undertook the task of updating the AIPLA Model Patent Jury Instructions ("Instructions") to take into account changes to the law since the previous version of the Instructions were published.  The Instructions were originally created in 1997 and were updated previously in 2005 and 2008.  A Subcommittee was formed to review recent case law and make any necessary changes to the Instructions to conform to the significant changes in patent law over the last several years.  The Subcommittee also continued its effort to simplify the Instructions and to improve the formatting so that the electronic version of the Instructions is easier to navigate.  The current revision includes case law through June 30, 2012.

One of the fundamental goals of the Instructions is to provide a model set of jury instructions that would not be biased in favor of either the patent owner or the accused infringer.  The Instructions are not intended to address every conceivable issue that might arise in patent litigation, however.  Instead, Instructions are provided on those issues that most typically arise in patent litigation and that have clear precedential support.  Even so, it is incumbent upon the litigants to tailor these Instructions to the specific issues in their particular case and to simplify the tasks for the Court and the jury by not providing superfluous Instructions.  Of course, it is also intended that these Instructions will be used in conjunction with other instructions dealing with non-patent issues such as credibility and that the trial court will further the jury's understanding of these Instructions by relating the legal principles in the Instructions to the particular factual contentions of the parties.

To further these goals and to enhance the litigants' ability to customize the Instructions to a particular case, these revised Instructions continue the use of bracketed terminology for certain consistent terms.  This mechanism permits the litigants to use the find and replace feature of a word processing program to insert case specific facts.  Examples of the consistent terms are:

[subject matter]
[the patentee]
[the Plaintiff]
[the Defendant]
[full patent number]
[abbreviated patent number]
[claims in dispute]
[allegedly infringing product]
[invention date]
[U.S. filing date]
[critical date]
[anticipating patent]
[alleged analogous art]
[alleged prior publication]
[alleged device on sale]
[infringement notice date]

[lawsuit filing date]
[beginning infringement date]
[collateral products]
[the Plaintiff's product]

In addition to these "find and replace" terms, brackets were also used to indicate where various terminology could be used to customize the Instructions to a particular case. For example, to take into account the differences between product and method patents, there will be instructions that include "[[product] [method]]" and the like. Other examples include "[[product][system]]," "[importing][selling][offering for sale][using]" and "[method][process]]."

The Subcommittee at large substantially completed the revisions to the 2008 instructions in August 2011. Additional research was later done to update the case law through June 30, 2012 and the AIPLA Board of Directors approved the Instructions for publication in July 2012. These Instructions, however, do not take into account all of the changes to U.S. Patent Law brought about by the America Invents Act, signed by the President on September 16, 2011. The changes enacted in this law go into effect at various times over the next 18 months after enactment and these Instructions should be updated by litigants to take into account any of the changes that have gone into effect.

July 2012
Scott J. Pivnick
Chair, Model Patent Jury Instructions Subcommittee
Patent Litigation Committee
American Intellectual Property Law Association

## II.     Preliminary Jury Instructions

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and on your role as jurors.

**A. The Nature of the Action and the Parties**

This is a patent case.  The patents involved in this case relate to [subject matter] technology.  [BRIEFLY DESCRIBE TECHNOLOGY INVOLVED].

During the trial, the parties will offer testimony to familiarize you with this technology. For your convenience, the parties have also prepared a Glossary of some of the technical terms to which they may refer during the trial, which will be distributed to you.

[The Plaintiff] is the owner of a patent, which is identified by the Patent Office number: [full patent number] (which may be called "the [abbreviated patent number] patent"); [IDENTIFY ADDITIONAL PATENTS].  This patent may also be referred to as "[the Plaintiff]'s patent."  [The Defendant] is the other party here.

### i.     United States Patents

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO").  A patent gives the owner the right to exclude others from making, using, offering to sell, or selling [[the patented invention] [a product made by the patented process]] within the United States or importing it into the United States.  During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here.

To obtain a patent, an application for a patent must be filed with the PTO.  The application includes a specification, which should have a written description of the invention telling what the invention is, how it works, and how to make and use it so as to enable  others skilled in the art to do so.  [The specification should also describe what the inventor believed at the time of filing to be the best way of making his or her invention.][1] The specification concludes with one or more numbered sentences or paragraphs. These are called the "claims" of the patent. The purpose of the claims is to particularly point out what the applicant regards as the invention and to define the scope of the patent owner's exclusive rights.

After an application for a patent is filed with the PTO, the application is reviewed by a trained PTO examiner.  The examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the

---

[1] Only include for cases filed pre-AIA.

invention claimed.  In examining a patent application, the patent examiner searches records available to the PTO for what is referred to as "prior art," and he or she also reviews prior art submitted by the applicant.  When the parties are done presenting evidence, I will give you more specific instructions as to what constitutes prior art in this case.  But generally prior art is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the filing date of the patent application.  The patent examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art.

Following the prior art search and examination of the application, the patent examiner advises the applicant in writing what the patent examiner has found and whether any claim is patentable (in other words, "allowed").  This writing from the patent examiner is called an "office action."  More often than not, the initial office action by the patent examiner rejects the claims.  The applicant then responds to the office action and sometimes changes the claims or submits new claims.  This process may go back and forth between the patent examiner and the applicant for several months or even years until the patent examiner is satisfied that the application and claims are patentable. At that time, the PTO "issues" or "grants" a patent with the allowed claims.

The collection of papers generated by the patent examiner and the applicant during this time of corresponding back and forth is called the "prosecution history."  You may also hear the "prosecution history" referred to as the "file history" or the "file wrapper."

**ii.     Patent Litigation**

Someone is said to be infringing on claims of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell [[the patented invention] [a product made by the patented process]], as defined by the claims, within the United States before the term of the patent expires.  A patent owner who believes someone is infringing on the exclusive rights of the patent may bring a lawsuit like this to attempt to stop the alleged infringing acts and to potentially recover damages, which generally is money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the need for damages.

A patent is presumed to be valid.  In other words, it is presumed to have been properly granted.  But that presumption of validity can be overcome if clear and convincing evidence is presented that proves the patent is invalid.  One example of a way in which the presumption may be overcome is if the PTO has not considered, for whatever reason, invalidating prior art that is presented to you.  Someone sued for allegedly infringing a patent can deny engaging in infringing activities and also can defend by proving the asserted claims of the patent are invalid [and/or unenforceable, if the patent owner unfairly procured the patent in some way.  This will be discussed further below].  The accused infringer must prove invalidity [or unenforceability] by clear and convincing evidence. I will discuss more of this topic later.

I will now briefly explain the parties' basic contentions in more detail.

**B.  Contentions of the Parties**

[The Plaintiff] contends that [the Defendant] makes, uses, offers to sell, or sells a [[product] [method]] that infringes [claim(s) in dispute] of the [abbreviated patent number] patent.  [The Plaintiff] must prove that [the Defendant] infringes the [abbreviated patent number] patent by a preponderance of the evidence.  That means that [the Plaintiff] must show that it is more likely that [the Defendant]'s [allegedly infringing product] infringes than it does not infringe.

There are two ways in which a patent claim can be directly infringed.[2] First, a claim can be literally infringed.  Second, a claim can be infringed under what is called the "doctrine of equivalents."  To determine infringement, you must compare the accused [[product] [method]] with each claim from the [abbreviated patent number] that [the Plaintiff] asserts is infringed.  It will be my job to tell you what the language of the patent claims mean. You must follow my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if [the Defendant]'s [[product] [method]] includes each and every [[element] [method step]] in that patent claim.  If [the Defendant]'s [[product] [method]] does not contain one or more [[elements] [method steps]] in that claim, [the Defendant] does not literally infringe that claim.  You must determine literal infringement with respect to each patent claim individually.

Under the doctrine of equivalents, you may find that [the Defendant]'s [[product] [method]] infringes a claim of the [abbreviated patent number] patent even if not every [[element] [step]] of that claim is present in [the Defendant]'s [[product] [method]].  However, to do so, you must find that there is an equivalent [[component] [part] [method step]] in [the Defendant]'s [[product] [method]] for each [[element] [method step]] of the patent claim that is not literally present in [the Defendant]'s [[product] [method]].  [The Plaintiff] must prove that it is more likely than not that [the Defendant]'s [[product] [method]] contains the equivalent of each element of the claimed invention that is not literally present in the [allegedly infringing product].

[The Defendant] denies that it is infringing the [abbreviated patent number] patent.  [The Defendant] also contends that the [abbreviated patent number] patent is invalid [and/or unenforceable].  [INSERT BRIEF DESCRIPTION OF THE PARTICULAR INVALIDITY AND UNENFORCEABILITY DEFENSES BEING ASSERTED].

Invalidity of the asserted patent claim(s) is a defense to infringement.  Therefore, even though the PTO examiner has allowed the claims of the [abbreviated patent number] patent, you, the jury, have the ultimate responsibility for deciding whether the claims of the [abbreviated

---

[2] This section and below should be modified in accordance with the patent owner's infringement contentions, e.g., where the doctrine of equivalents is not at issue.

patent number] patent are valid, in other words, whether the claims were properly allowed by the PTO.  [The Defendant] must prove the facts underlying its invalidity argument(s) by clear and convincing evidence in order to overcome the presumption of validity.  Clear and convincing evidence means that it is highly probable that the fact is true.  This is a higher standard than the more likely than not standard but it is not so high as the standard used in criminal law, which is evidence beyond a reasonable doubt.

## C.  Trial Procedure

We are about to commence the opening statements in the case.  Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial.  This trial, like all jury trials, comes in six phases.  We have completed the first phase, which was to select you as jurors.  We are now about to begin the second phase, the opening statements.  The opening statements of the lawyers are statements about what each side expects the evidence to show.  The opening statements are not evidence for you to consider in your deliberations.

The evidence comes in the third phase, when the witnesses will take the witness stand and the documents will be offered and admitted into evidence.  In the third phase, [the Plaintiff] goes first in calling witnesses to the witness stand.  These witnesses will be questioned by [the Plaintiff]'s counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. After [the Plaintiff] has presented its witnesses, [the Defendant] will call its witnesses, who will also be examined and cross-examined.  The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness's deposition testimony.  A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, meaning that all of the evidence relating to an issue is not presented all at one time, but at different times during the trial.  So you need to keep an open mind as the evidence comes in. You are to wait until all the evidence comes in before you make any decisions.  In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, the lawyers again have an opportunity to talk to you in what is called "closing argument," which is the fourth phase.  Again, what the lawyers say is not evidence.  The closing arguments are not evidence for you to consider in your deliberations.

The fifth phase of the trial is when I read you the jury instructions. In that phase, I will instruct you on the law.  I have already explained to you a little bit about the law.  But in the fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate.  You can then evaluate the evidence, discuss the evidence among yourselves and make a decision in the case.  You are the judges of the facts, and I decide questions of law.  I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language.  You must follow my explanation of the law and the patent claim language even if you do not agree with me.  Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

III.    **Glossary of Patent Terms**

**Application** – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences or paragraphs appearing at the end of the patent that define the invention.  The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper** – See "prosecution history" below.

**License** – Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office action** – Communication from the patent examiner regarding the specification (see definition below) and/or the claims in the patent application.

**Ordinary skill in the art** – The level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

**Patent Examiners** – Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

**Prior art** – Knowledge that is available to the public either prior to the invention by the applicant or more than one year prior to the filing date of the application. [Insert additional types of prior art if applicable, e.g., nonpublic art.]

**Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial.

**References** – Any item of prior art used to determine patentability.

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings.  In the specification, the inventor describes the invention, how it works, and how to make and use it.

[Others to be agreed upon between the parties]

IV.    **Glossary of Technical Terms**

[To be agreed upon between the parties]

# V.   Post-Trial Instructions[3]

## 1.  Summary of Patent Issues

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following [three] main issues:

1. Whether [the Plaintiff] has proved that [the Defendant] infringed Claim[s] [claims in dispute] of the [abbreviated patent number] patent.

2. Whether [the Defendant] has proved that Claim[s] [claims in dispute] of the [abbreviated patent number] patent are invalid.

3. What amount of damages, if any, [the Plaintiff] has proved.

[LIST ANY OTHER PATENT ISSUES]

## 2.  Claim Construction

### 2.0  Claim Construction – Generally

Before you decide whether [the Defendant] has infringed the claims of [the Plaintiff]'s patent or whether [the Plaintiff]'s patent is invalid, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent.  The patent claims involved here are [claims in dispute], beginning at column ____, line ____ of the patent, which is exhibit ____ in evidence.  The claims are intended to define, in words, the boundaries of the invention.  Only the claims of the patent can be infringed.  Neither the written description, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

35 U.S.C. § 112; *Source Search Technologies, LLC v. LendingTree, LLC*, 588 F. 3d 1063, 1075 (Fed. Cir. 2009); *Computer Docking Station Corp. v. Dell, Inc.*, 519 F. 3d 1366, 1373 (Fed. Cir. 2008); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002); *Amazon. com, Inc. v. Barnesandnoble.com, Inc.,* 239 F. 3d 1343, 1351 (Fed. Cir. 2001); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878, 882 (Fed. Cir. 1988).

---

[3] AIPLA drafted the model instructions assuming the litigated issues included in the instructions will be submitted to the jury.  AIPLA is not suggesting that the parties have a right to a jury trial on all issues included in the instructions.  The instructions used in your case should be tailored to the specific issues being litigated.

### 2.1  Claim Construction for the Case

It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.  I will now tell you the meanings of the following words and groups of words from the patent claims.

[READ STIPULATIONS AND COURT'S CLAIM CONSTRUCTIONS]

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc) *aff'd,* 517 U.S. 370 (1996).

### 2.2  Construction of Means-Plus-Function Claims for the Case[4]

The following clause used in claim(s) _____ of the [abbreviated patent number] patent is in a special form called a [["means-plus-function"] ["step-plus-function"]] clause: "_____".  This clause requires a special interpretation.  Those words do not cover all [[means] [steps]] that perform the recited function of "_____", but cover <u>only</u> the [[structure] [step]] described in the patent specification and drawings that performs the function of "_____" or an equivalent of that [[structure] [step]].  The court has found that the [[structure] [step]] in the patent specification that performs that function is:  "_____."  You must use my interpretation of the means-plus-function [[element] [step]] in your deliberations regarding infringement and validity, as further discussed below.

35 U.S.C. § 112; *Chicago Bd. Of Options Exchange, Inc. v. International Securities Exchange, LLC*, 677 F,3d 1361, 1366-69 (Fed. Cir. 2012); *Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1295-96 (Fed. Cir. 2012); *JVW Enters., Inc. v. Interact Accessories, Inc*., 424 F.3d 1324, 1330-32 (Fed. Cir. 2005); *Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381 (Fed. Cir. 2003); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1578 (Fed. Cir. 1993); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

------

[4] Instruction 2.2 is intended to address possible jury confusion.  In Instruction 2.1, the court provides its construction of any terms for which a construction is needed.  This should include its construction of any limitations governed by 35 U.S.C. § 112 ¶ 6.  Where the limitation uses the phrase "means for" or "step for," a jury may nonetheless incorrectly conclude that the limitation includes any component or any step that accomplishes the specified function.  To avoid confusing the jury, we recommend use of Instruction 2.2.  Where the limitation is governed by 35 U.S.C. § 112 ¶ 6 but does not use the phrase "means for" or "step for," consideration should be given to whether Instruction 2.2 is unnecessary.

### 3. Infringement

#### 3.0  Infringement – Generally

Questions _____ through _____ of the Verdict Form read as follows:  [READ TEXT OF INFRINGEMENT VERDICT QUESTIONS].

I will now instruct you as to the rules you must follow when deciding whether [the Plaintiff] has proven that [the Defendant] infringed any of the claims of the [abbreviated patent number] patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling [[the patented invention] [a product made by a patented method]] within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, [the Plaintiff] alleges that [the Defendant]'s [allegedly infringing product] infringes claim[s] [claims in dispute] of [the Plaintiff]'s [abbreviated patent number] patent.

You have heard evidence about both [the Plaintiff]'s commercial [[product] [method]] and [the Defendant]'s accused [[product] [method]].  However, in deciding the issue of infringement you may not compare [the Defendant]'s accused [[product] [method]] to [the Plaintiff]'s commercial [[product] [method]].  Rather, you must compare the [Defendant]'s accused [[product] [method]] to the claims of the [abbreviated patent number] patent when making your decision regarding infringement.

A patent may be infringed directly or indirectly.  Direct infringement results if the accused [[product][method]] is covered by at least one claim of the patent.  Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

35 U.S.C. § 271; *Merial Ltd. v. CIPLA Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012); *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010); *WordTech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1313-18 (Fed. Cir. 2010).

#### 3.1  Direct Infringement - Knowledge of the Patent and Intent to Infringe are Immaterial

In this case, [the Plaintiff] asserts that [the Defendant] has directly infringed the patent. [the Defendant] is liable for directly infringing [the Plaintiff]'s patent if you find that [the Plaintiff] has proven that it is more likely than not that [the Defendant] made, used, imported, offered to sell, or sold the invention defined in at least one claim of [the Plaintiff]'s patent.

Someone can directly infringe a patent without knowing of the patent or without knowing that what they are doing is an infringement of the patent.  They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

35 U.S.C. § 271(a); *Global-Tech Appliances, Inc., v. SEB, S.A.*, 563 U.S. ___ , n.2, 131 S. Ct. 2060, 2065 n.2 (2011); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

### 3.2  Direct Infringement – Literal Infringement

To determine literal infringement, you must compare the accused [[product] [method]] with each claim that [the Plaintiff] asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if [the Defendant]'s [[product] [method]] includes each and every [[element] [method step]] in that patent claim.  If [the Defendant]'s [[product] [method]] does not contain one or more [[elements] [method steps]] recited in a claim, [the Defendant] does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually.

The accused [[product] [method]] should be compared to the invention described in each patent claim it is alleged to infringe.  The same [[element] [method step]] of the accused [product] [method] may satisfy more than one element of a claim.

*Intellectual Sci. & Tech. v. Sony Elect.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009); *Hutchins v. Zoll Med. Corp.*, 492 F. 3d 1377, 1380 (Fed. Cir. 2007); *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1381-82 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481-82 (Fed. Cir. 1984).

### 3.2.1 Direct Infringement – Joint Infringement

In this case, [the Defendant] asserts that it has not directly infringed the [abbreviated patent number] because it did not perform each step of a claimed method or did not perform all the steps of making, selling, offering for sale, or importing [allegedly infringing product] because [another party] performed some of the steps.

However, if you find that it is more likely than not that [the other party] performed the steps on behalf of [the Defendant], you should consider such steps to have been performed by [the Defendant].  In determining whether [the other party] performed the steps on behalf of [the Defendant], you should consider whether [the Defendant] exercised control or direction over [the other party] when it performed such steps.  If [the other party] was not acting at the direction of or under the control of [the Defendant], then [the Defendant] did not perform the steps and is not liable for direct infringement.

If you find that [the Defendant] and [the other party] have a contract that requires [the other party] to perform a step [[steps]] of the claimed method on [the Defendant]'s behalf, then

you should find that [the Defendant] has granted [the other party] authority to act on [the Defendant]'s behalf and that [the other party] has agreed to so act.

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008); *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1381-82 (Fed. Cir. 2007).

NOTE:  The Federal Circuit is currently considering joint infringement *en banc*.  On April 21, 2011, the Federal Circuit granted a petition for rehearing *en banc* in *Akamai Techs., Inc. v. Limelight Networks, Inc.*  The Court ordered additional briefing on the following question:  "If separate entities each perform separate steps of a method claim, under what circumstances would that claim be directly infringed and to what extent would each of the parties be liable?"  *See* Order at http://www.cafc.uscourts.gov/images/stories/opinions-orders/2009-1372%20order.pdf.  A similar question was posed for the *en banc* hearing in *McKesson Tech v. Epic Systems Corp.* case as it relates to induced and contributory infringement.  Oral arguments were heard for both matters in November 2011 but as of June 30, 2012, no opinions had been issued.  It is suggested that counsel check the status of these opinions prior to using the instructions on joint, induced or contributory infringement.

### 3.3  Inducing Patent Infringement

In this case, [the Defendant] is accused of inducing [another entity] to directly infringe [the Plaintiff]'s patent, either literally or under the doctrine of equivalents.  To prove this allegation, [the Plaintiff] must establish it is more likely than not that:

1.  [the Defendant] aided, instructed, or otherwise acted with the intent to cause acts by [alleged direct infringer] that would constitute direct infringement of the patent;

2.  [the Defendant] knew of the patent, or showed willful blindness to the existence of the patent, at that time;

3.  [the Defendant] knew, or should have known, that its actions would result in infringement of at least one claim of the patent; and

4.  [alleged direct infringer] infringed at least one patent claim.

To find willful blindness: (1) [the Defendant] must have subjectively believed that there was a high probability that a patent existed covering [the accused product/process] and (2) [the Defendant] must have taken deliberate actions to avoid learning of the patent.

To find that [the Defendant] induced infringement, it is not necessary to show that [the Defendant] has directly infringed as long as you find that someone has directly infringed.  However, if there is no direct infringement by anyone, [the Defendant] cannot have induced infringement of the patent.

35 U.S.C. § 271(b); *Global-Tech Appliances, Inc., v. SEB, S.A.*, 563 U.S. ___, 131 S. Ct. 2060 (2011); *DSU Medical Corp. v. JMS Co.,* 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (en banc) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005));

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Manville Sales Corp.  v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

### 3.4  Contributory Infringement

[The Plaintiff] asserts that [the Defendant] has contributed to infringement by another person.

To establish contributory infringement, [the Plaintiff] must prove that it is more likely than not that [the Defendant] had knowledge of the patent, and that:

1. someone other than [the Defendant] has directly infringed the [abbreviated patent number] patent;

2. [the Defendant] sold, offered for sale, or imported within the United States a component of the infringing product or an apparatus for use in the infringing process;

3. the component or apparatus  is not a staple article or commodity of commerce capable of substantial non-infringing use;

4. the component or apparatus constitutes a material part of the patented invention; and

5. [the Defendant] knew that the component was especially made or adapted for use in an infringing [[product] [method]].

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has uses [[other than as a part or component of the patented product] [other than in the patented method]], and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

To find contributory infringement, it is not necessary to show that [the Defendant] has directly infringed as long as you find that someone has directly infringed.  However, if there is no direct infringement by anyone, [the Defendant] cannot have contributed to the infringement of the patent.

35 U.S.C. § 271(c); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012) ; *R+L Carriers, Inc. v. DriverTech LLC*, 2012 U.S. App. LEXIS 11519 at *27-28 (Fed. Cir. June 7, 2012); *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1353 (Fed. Cir. 2010); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

### 3.5  Literal Infringement of Means-Plus-Function Claims

The court has instructed you that claims _____ through _____of the [abbreviated patent number] patent contain [[means-plus-function] [step-plus-function]] clauses.  To show

infringement, [the Plaintiff] must prove that it is more likely than not that the [[part of the Defendant's product] [step in the Defendant's method]] that performs the function of "_____" is identical to, or equivalent to, the [[structure] [step]] described in the specification for performing the identical function.

In deciding whether [the Plaintiff] has proven that [the Defendant]'s [[product] [method]] includes structure covered by a [[means-plus-function] [step-plus-function]] requirement, you must first decide whether the [[product] [method]] has any [[structure] [step]] that performs the function [step] I just described to you. If not, the claim containing that means-plus-function [or step-plus-function] requirement is not infringed.

(Alternative I) If you find that [the Defendant]'s accused [[product] [method]] performs the claimed function, you must next identify the [[structure] [step]] in [the Defendant]'s [accused product] that perform[s] this function. After identifying that [[structure] [step]], you must then determine whether [the Plaintiff] has shown that that [[structure] [step]] is either identical to, or equivalent to, any [[structure] [step]] identified in the patent specification as performing the function of "_____." If they are the same or equivalent, the [[means-plus-function] [step-plus-function]] requirement is satisfied by that [[structure] [step]] of the [accused product]. If all the other requirements of the claim are satisfied by structures found in the [accused product], the [accused product] infringes the claim.

(Alternative II to be used in place of I) If you find that [the Defendant]'s accused [[product] [method]] performs the claimed function [step], you must next identify the [[structure] [act]] in [the Defendant]'s [accused product or accused process] that perform[s] this function [step]. After identifying that [[structure] [act]], you must then determine whether [the Plaintiff] has shown that that [[structure] [act]] is either identical to, or equivalent to, _____ [court to identify the corresponding structure [or acts] of the means-plus-function [or step-plus-function] limitation, which the court determined as part of the claim construction] If the structure [act] in the accused product is the same or equivalent to the structure I identified, the [[means-plus-function] [step-plus-function]] requirement is satisfied by that [[structure] [step]] of the [accused product]. If all the other requirements of the claim are satisfied by structures found in the [accused product], the [accused product] infringes the claim.

Whether the [[structure] [act]] of the accused product is equivalent to a [[structure] [act]] described in the patent specification is decided from the perspective of a person of ordinary skill in the art. If a person of ordinary skill in the art would consider the differences between the [[structure] [act]] found in [the Defendant]'s product and a [[structure] [act]] described in the patent specification to be insubstantial, the [[structures] [acts]] are equivalent.

35 U.S.C. § 112; *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) (*en banc*); *In re Donaldson Co., Inc.*, 16 F.3d 1189, 1193 & 1195 (Fed. Cir. 1994) (*en banc*); *Chicago Bd. Options Exchange, Inc. v. Int'l. Securities Exchange, LLC*, 677 F.3d 1361, 1366-69 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304-05 (Fed. Cir. 2011); *General Protecht Gp., Inc. v. Int'l Trade Comm'n.*, 619 F.3d 1303, 1312-13 (Fed. Cir. 2010); *Baran v. Med. Device Tech., Inc.*, 616 F.3d 1309, 1316-17, (Fed. Cir. 2010); *Intellectual Science and Technology, Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009); *Applied Med.*

*Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333-34 (Fed. Cir. 2006); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-09 (Fed. Cir. 1998).

### 3.6  Infringement of Dependent Claims

There are two different types of claims in the patent.  One type of claim is called an independent claim.  The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent.  An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, [Independent Claim] is an independent claim and recites several elements. [Dependent Claim] is a dependent claim that refers to [Independent Claim] and includes an additional element.  [IDENTIFY THE DIFFERENCES BETWEEN [Independent Claim] AND [Dependent Claim].  [Dependent Claim] requires each of the elements of [Independent Claim], as well as the additional elements identified in [Dependent Claim] itself.

To establish literal infringement of [Dependent Claim], [the Plaintiff] must show that it is more likely than not that the [the Defendant]'s [[product] [method]] includes each and every element of [Dependent Claim].

If you find that the [Independent Claim] from which [Dependent Claim] depends is not literally infringed, then you cannot find that [Dependent Claim] is literally infringed.

*Wolverine World Wide v. Nike Inc.*, 38 F.3d 1192, 1196-99 (Fed. Cir. 1994) (*citing Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577-89 (Fed. Cir. 1989)); *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 nn.9&10 (Fed. Cir. 1989); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985).

### 3.7  Infringement of Open Ended or "Comprising" Claims

The preamble to claim _____ uses the phrase [RECITE THE PREAMBLE "_____ comprising"].  The word "comprising" means "including the following but not excluding others."

If you find that [the Defendant]'s [[product] [method]] includes all of the elements in claim _____, the fact that [the Defendant]'s [[product] [method]] might include additional [[components] [method steps]] would not avoid literal infringement of a claim that uses "comprising" language so long as the presence of the additional [[components] [method steps]] does not negate an element of the claim.

*Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986); *AB Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983).

### 3.8  Infringement by Supply of all or a Substantial Portion of the Components of a Patented Invention to Another Country (271(f)(1))

[Plaintiff] asserts that [Defendant] infringed the [abbreviated patent number] patent by supplying [or causing to be supplied] all or a substantial portion of the components of the patented product from the United States to another country and actively inducing the assembly of those components into a product that would infringe the [abbreviated patent number] patent if they had been assembled in the United States.

To show infringement under Section 271(f)(1), [the Plaintiff] must prove that it is more likely than not that (1) the product, as it was intended to be assembled  outside the United States, [included][would have included] all limitations of at least one of claims ____ of the [abbreviated patent number] patent, (2) [Defendant] supplied [or caused to be supplied] components from the United States that made up all or a substantial portion of the invention of any one of claims _____ of the [abbreviated patent number] patent, and (3) [Defendant] specifically intended to induce the combination of the components into a product that would infringe the [abbreviated patent number] patent if the components had been combined in the United States.

35 U.S.C. § 271(f)(1); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.* 576 F.3d 1348, 1359-67 (Fed. Cir. 2009); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 453-56 (2007); *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).

### 3.9  Infringement by Supply of Components Especially Made or Adapted for Use in the Patented Invention to Another Country (271(f)(2))

[Plaintiff] asserts that [Defendant] infringed the [abbreviated patent number] patent by supplying [or causing to be supplied] [a component][components] of an invention covered by at least one claim of the [abbreviated patent number] patent from the United States to a foreign country, where the exported component[s] [was][were] especially made or especially adapted for use in an invention covered by the [abbreviated patent number] patent and [has][have] no substantial non-infringing use[s], and where [Defendant] knew the component[s] [was][were] especially made or adapted for use in the patented invention and intended for the component[s] to be combined in a way that would have infringed the [abbreviated patent number] patent if the combination had occurred in the United States.

To show infringement under Section 271(f)(2), [the Plaintiff] must prove that it is more likely than not that the (1) [Defendant] actually supplied the components from the United States to a foreign country or caused them to be supplied from the United States to a foreign country, (2) [Defendant] knew or should have known that the components were especially made or adapted for use in a product that infringes the [abbreviated patent number] patent, (3) those components have no substantial non-infringing use, and (4) [Defendant] intended for the components to be combined into that product . It is not necessary for you to find that the

components actually were combined into an infringing product, as long as you find that [Defendant] intended the components to be combined into a product that would have infringed the [abbreviated patent number] patent if they had been combined in the United States.

35 U.S.C. § 271(f)(2); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.* 576 F.3d 1348, 1359-67 (Fed. Cir. 2009); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 453-56 (2007); *Waymark Corp. v. Porta Systems Corp.*, 245 F.3d 1364, 1367-69 (Fed. Cir. 2001); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1257-58 (Fed. Cir. 2000)

### 3.10  Infringement by Import, Sale, Offer for Sale or Use of Product Made by Patented Process (271(g))

[Plaintiff] asserts that [Defendant] infringed the [abbreviated patent number] patent by [importing][selling][offering for sale][using] a product that was made by a process covered by one or more claims of the [abbreviated patent number] patent.

To show infringement under Section 271(g), [the Plaintiff] must prove that it is more likely than not that the (1) [Defendant] [imported][sold][offered for sale][used] a product that was made by a process that includes all steps of at least one claim of the [abbreviated patent number] patent, (2) the product was made between [issue date of patent] and [expiration date of patent][date of trial], (3) [Defendant] [imported][sold][offered for sale][used] the product between [issue date of patent] and [expiration date of patent][date of trial].

You must decide whether the evidence presented at trial establishes that the product [imported][sold][offered for sale][used] by the Defendant was "made by" the patented process. However, you must find that the product [imported][sold][offered for sale][used] by the Defendant was not "made by" by the patented process if you find that either (a) the product [imported][sold][offered for sale][used] was materially changed by later processes, or (b) the product is only a trivial or non-essential part of another product.[5]

35 U.S.C. § 271(g); *Amgen Inc.*, v. *F. Hoffman-La Roche Ltd.*, 580 F.3d 1340 (Fed. Cir. 2009); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001); *Biotec Biologische Naturverpackungen GmbH v. BioCorp., Inc.*, 249 F.3d 1341 (Fed. Cir. 2001); *Eli Lilly & Co. v. American Cyanamid Co.*, 82 F.3d 1568 (Fed. Cir. 1996); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553 (Fed. Cir. 1996).

---

[5] In cases where the patentee is unable to determine the process by which the product at issue is made, and the prerequisites of 35 U.S.C. § 295 are satisfied, the presumption of Section 295 may also need to be included in this instruction, requiring the accused infringer to rebut a presumption that the product was made by the patented process.

### 3.11  Direct Infringement – Infringement Under the Doctrine of Equivalents

If you decide that [the Defendant]'s [[product] [method]] does not literally infringe an asserted patent claim, you must then decide whether it is more probable than not that [[product] [method]] infringes the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the [[product] [method]] can infringe an asserted patent claim if it includes [[parts] [steps]] that are equivalent to those requirement(s) of the claim that are not literally present in the [[product][method]]. If the [[product] [method]] is missing an equivalent [[part] [step]] to even one [[part] [step]] of the asserted patent claim, the [[product] [method]] cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the [[product] [method]] has an equivalent [[part] [step]] to that individual claim requirement(s) that are not literally present in the [[product][method]].

A [[part] [step]] of a [[product] [method]] is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the [[part] [step]] and the requirement were not substantial as of the time of the alleged infringement.  One way to decide whether any difference between a requirement of an asserted claim and a [[part] [step]] of the [[product] [method]] is not substantial is to consider whether, as of the time of the alleged infringement, the [[part] [step]] of the [[product] [method]] performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the [[product] [method]] is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the [[part] [step]] with the claimed requirement.  The known interchangeability between the claim requirement and the [[part] [step]] of the [[product] [method]] is not necessary to find infringement under the doctrine of equivalents.  Further, the same [[element] [method step]] of the accused [[product] [method]] may satisfy more than one element of a claim.

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co, v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Johnson & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046, 1053-54 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994); *Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 325 (Fed. Cir. 1985).

### 3.12  Limitations on the Doctrine of Equivalents – Prior Art

You may not find that [the Defendant]'s [[product] [method]] infringes the patent claim under the "doctrine of equivalents" if by doing so the patent claim would cover [[products]

[methods]] that were already in the prior art.   Defendant has the burden of coming forward with evidence to show that it was in the prior art.[6]

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322-24 (Fed. Cir. 2009); *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000); *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576-77 (Fed. Cir. 1994); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683-85 (Fed. Cir. 1990).

### 3.13  Limitations on the Doctrine of Equivalents – Prosecution History Estoppel

In this case, you are instructed that the doctrine of equivalents analysis cannot be applied to <u>some</u> of the elements of the asserted claims.  These elements are:

[list Elements on a claim by claim basis]

Consequently, each of the elements above must be <u>literally</u> present within [the Defendant]'s [[product] [method]] for there to be infringement of the claim.

As for the remaining elements of the asserted claims not listed above, you are permitted to find these elements with the doctrine of equivalents analysis that I instructed you on earlier.

[THE ABOVE INSTRUCTION ASSUMES THAT THE COURT HAS DETERMINED THAT PROSECUTION HISTORY ESTOPPEL APPLIES AS A MATTER OF LAW FOR CERTAIN CLAIM ELEMENTS, I.E., THAT AN AMENDMENT TO THE CLAIM WAS MADE FOR REASONS RELATED TO PATENTABILITY AND THE PRESUMPTION OF SURRENDER OF EQUIVALENTS HAS NOT BEEN REBUTTED].

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30-34 (1997); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003) (en banc).

### 3.14  Limitations on the Doctrine of Equivalents – Subject Matter Dedicated to the Public

When a patent discloses subject matter but does not include it within its claims, the patentee has dedicated that unclaimed subject matter to the public.  If  [the patent] discloses, but does not claim, subject matter alleged to be equivalent to an element of the patent claim, then the

---

[6] Although "ensnarement" is a question of law, a court may obtain an advisory verdict on this question necessitating inclusion of Instruction 3.12.  In particular, the Federal Circuit has held that the question of whether the scope of a claim under the doctrine of equivalents ensnares the prior art is "ultimately . . . a question of law for the court, not the jury, to decide," but "[i]f a district court believes that an advisory verdict would be helpful, and that a 'hypothetical' claim construct would not unduly confuse the jury as to equivalence and validity, then one may be obtained under Federal Rule of Civil Procedure 39(c)."  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed. Cir. 2009).

[[component] [step]] alleged to be equivalent in [the Defendant]'s [[product] [method]]  cannot be an equivalent to that element of the patent claim for purposes of infringement under the doctrine of equivalents doctrine.  This is true even if the failure to claim the subject matter was wholly unintentional. In this case, you are instructed that subject matter from the patent has been dedicated to the public and the doctrine of equivalents analysis cannot be applied to the following elements of the asserted claims:

[LIST ELEMENTS ON A CLAIM BY CLAIM BASIS]

Unless each of these elements is literally present within [the Defendant]'s [[product] [method]], there can be no infringement of the claim.

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378-79 (Fed. Cir. 2005); *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326 (Fed. Cir. 2004); *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054-55 (Fed. Cir. 2002) (en banc).

## 4. Summary of Invalidity Defense

[The Defendant] contends that the asserted claim[s] of the patent[s]-in-suit are invalid. [The Defendant] must prove that it is highly probable that each asserted claim is invalid.

Claims of an issued patent may be found to be invalid.  Thus, you must determine whether each of [the Plaintiff]'s claims is invalid.

[The Defendant] contends that patent claims [insert claim numbers] are invalid for the following reasons:

[Insert invalidity contentions]

I will now instruct you in more detail why [the Defendant] alleges that the asserted claim[s] of the [abbreviated patent numbers] is/are invalid.

## 5.  Prior Art

### 5.0 Prior Art Defined

Prior art includes any of the following items received into evidence during trial:

1.  any [product] [method] that was publicly known or used by others in the United States before the patented invention was made;

2.  patents that issued more than one year before the filing date of the patent, or before the invention was made;

3.  publications having a date more than one year before the filing date of the patent, or before the invention was made;

4. any [product] [method] that was in public use or on sale in the United States more than one year before the patent was filed;

5. any [product] [method] that was made by anyone before the named inventors created the patented [product] [method] where the [product] [method] was not abandoned, suppressed, or concealed.

[ADD ANY ADDITIONAL TYPES OF PRIOR ART]

In this case, [the Defendant] contends that the following items are prior art: [identify prior art by name]

35 U.S.C. § 102.

## 5.1 Prior Art Considered or Not Considered by the USPTO

When a party challenging the validity of a patent relies on prior art that was considered by the Examiner during the prosecution of the application which resulted in the issued patent, that party's ability to satisfy its highly probable evidence burden may be more difficult. When a party challenging the validity of a patent presents evidence that was not considered by the Examiner during the prosecution of the application which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy that party's highly probable evidence burden.

*Microsoft Corp. v. i4i Ltd. P'ship.*, 564 U.S. __, 131 S. Ct. 2238, 2251 (2011); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355-56 (Fed. Cir. 2000); *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1306 (Fed. Cir. 2005).

## 5.2  Invalidity of Independent and Dependent Claims

[As I stated earlier] there are two different types of asserted claims in the patent. One type of claim is called an independent claim. The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim includes all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, [Independent Claim] is an independent claim and recites several elements. [Dependent Claim] is a dependent claim that refers to [Independent Claim] and includes an additional element. [IDENTIFY THE DIFFERENCES BETWEEN [Independent Claim] AND [Dependent Claim]. [Dependent Claim] requires each of the elements of [Independent Claim], plus the additional elements identified in [Dependent Claim] itself.

You must evaluate the invalidity of each asserted claim separately.  However, if you find that a dependent claim is invalid, then you cannot find the independent claim to which that dependent claim refers is not invalid.  Conversely, an independent claim can be found invalid, even though a dependent claim to which it refers is valid.

*Comparer Corp. v. Antec. Inc.*, 596 F.3d 1343, 1350 (Fed. Cir. 2010); *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed. Cir. 2009); *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007).

### 5.3 Person of Ordinary Skill in the Art

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of [date].

## 6.  Anticipation

### 6.0  Anticipation

If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior invention.  Simply put, the invention must be new to be entitled to patent protection under the U.S. patent laws.  To prove anticipation, [the Defendant] must prove that it is highly probably that the claimed invention is not new.

In this case, [the Defendant] contends that [some/all of] the claims of the [abbreviated patent number] patent are anticipated.  [DESCRIBE BRIEFLY EACH BASIS FOR THE DEFENDANT'S INVALIDITY DEFENSE, FOR EXAMPLE: "First, [the Defendant] contends that the invention of claims 1, 2, and 3 of the _____ patent was described in the July, 1983 article published by Jones in THE JOURNAL OF ENDOCRINOLOGY."]

To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same way as recited in the claim.  You may not combine two or more items of prior art to find anticipation.  In determining whether every one of the elements of the claimed invention is found in the prior [[publication] [patent] [etc.]], you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular [[publication] [patent] [etc.]].

[OPTIONAL – NEEDED ONLY IF INHERENCY IS AN ISSUE; In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior [[publication] [invention] [etc.]], but also what is inherently present or disclosed in that prior art or what inherently results from its practice.  Prior art inherently anticipates a patent claim if the missing element or feature would be the natural result of following what the prior art teaches to persons of ordinary skill in the art. A party claiming inherent anticipation must prove that it is highly probable that the claim is inherently anticipated.  Evidence outside of the prior art reference itself [including experimental testing] may be used to show that the elements not expressly disclosed in the reference are actually present.  Mere probabilities are not enough.  It is not required, however,

that persons of ordinary skill actually recognized the inherent disclosure at the time the prior art was first known or used.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.  There are additional requirements that apply to the particular categories of anticipation that [the Defendant] contends apply in this case.  I will now instruct you about those.

*Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-1321 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-1378 (Fed. Cir. 2003); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1347-1348 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992); *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1267-1269 (Fed. Cir. 1991); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988).

### 6.1  Prior Public Knowledge

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was publicly known by others in the United States before it was invented by the inventor(s).

[IF THERE IS A FACTUAL ISSUE TO BE RESOLVED BY THE JURY AS TO THE DATE OF INVENTION OF THE PATENT CLAIMS IN SUIT, THE JURY SHOULD BE INSTRUCTED HERE AS TO HOW THEY SHOULD DETERMINE THAT DATE OF INVENTION.  OTHERWISE, THE COURT SHOULD INSTRUCT THE JURY AS FOLLOWS: "You are instructed that the invention defined by claim ____ of the [abbreviated patent number] patent was invented on [invention date]."]

A patent claim is invalid if the invention defined in that claim was publicly known by others in the United States before it was invented by [the patentee].

35 U.S.C. § 102(a); *Minnesota Mining and Manuf. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301, 1306 (Fed. Cir. 2002); *Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1369 (Fed. Cir. 2000); *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1370 (Fed. Cir. 1998).

### 6.2  Prior Public Use

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim [was publicly used by others in the United States before it was invented by [the patentee]] [was publicly used in the United States more than one year before [the patentee] filed his patent application on [effective filing date]].

[IF THERE IS A FACTUAL ISSUE TO BE RESOLVED BY THE JURY AS TO THE DATE OF INVENTION OF THE PATENT CLAIMS IN SUIT, THE JURY SHOULD BE INSTRUCTED HERE AS TO HOW THEY SHOULD DETERMINE THAT DATE OF INVENTION. OTHERWISE, THE COURT SHOULD INSTRUCT THE JURY AS FOLLOWS: "You are instructed that the invention defined by claim _____ of the [abbreviated patent number] patent was invented on [invention date]."]

A patent claim is invalid if more than one year before the filing date of the patent an embodiment of the claimed invention was both: (1) accessible to the public or commercially exploited in the United States; and (2) ready for patenting.

An invention was in public use if the claimed invention was accessible to the public or commercially exploited. Factors relevant to the determination of whether a use was public include the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding testing and experimentation. An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.

In order to be a public use, the invention also must have been ready for patenting at the time of the alleged public use. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims; and (2) determined that it works for its intended purpose. The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose.

35 U.S.C. § 102(a), (b); *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1325-27 (Fed. Cir. 2009); *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008); *Invitrogen Corp. v. Biocrest Manuf., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1316-20 (Fed. Cir. 2004); *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1320-23 (Fed. Cir. 2002); *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998) (as to reduction to practice); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902, 906 (Fed. Cir. 1988); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1265-67 (Fed. Cir. 1986); *Kinzenbaw v. Deere & Co.*, 741 F.2d 383, 390-91 (Fed. Cir. 1984); *TP Lab., Inc. v. Prof'l Positioners, Inc.*, 724 F.2d 965, 970-72 (Fed. Cir. 1984); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1549-50 (Fed. Cir. 1983); *In re Smith*, 714 F.2d 1127, 1134-37 (Fed. Cir. 1983).

### 6.3  On Sale Bar

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was on sale in the United

States more than one year before [the patentee] filed his U.S. patent application on [U.S. filing date].

A patent claim is invalid if more than one year before the filing date of the patent an embodiment of the claimed invention was both (1) subject to commercial offer for sale in the United States; and (2) ready for patenting.

A commercial "offer for sale" was made if another party could make a binding contract by simply accepting the offer. An invention was subject to an "offer for sale" if the claimed invention was embodied in an item that was actually sold or offered for sale. It is not required that a sale was actually made. The essential question is whether there was an attempt to obtain a commercial benefit from the invention. While the invention need not be ready for patenting at the time of the offer, there can be no offer for sale until such time as the invention is conceived. An invention is conceived when the inventor(s) forms in his mind a definite and permanent idea of the complete and operative invention, as it will be used in practice.

The invention also must have been "ready for patenting" more than one year before the filing date of the patent. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims; and (2) determined that it works for its intended purpose. The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose.

35 U.S.C. § 102(b); *Pfaff v. Wells Elecs.*, 525 U.S. 55, 67-68 (1998); *August Tech v. Camtek*, 655 F.3d 1278, 1288-89 (Fed. Cir. 2011); *Atlanta Attachment Co., v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008); *Board of Educ. ex rel Bd. Of Trustees of Florida State University v. American Bioscience, Inc.*, 333 F.3d 1330, 1338 (Fed. Cir. 2003) (as to conception); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352-55 (Fed. Cir. 2002); *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1047-54 (Fed. Cir. 2001); *Robotic Vision Systems, Inc., v. View Eng'g, Inc.*, 249 F.3d 1307, 1312 (Fed. Cir. 2001); *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045-49 (Fed. Cir. 2001; *Cooper v. Goldfarb,* 154 F.3d 1321, 1327 (Fed. Cir. 1998) (as to reduction to practice).

**6.4  Experimental Use**

[The Plaintiff] contends that _____ should not be considered [[a prior public use of the invention] [placing the invention on sale]] because that [[use] [sale]] was experimental. The law recognizes that the inventor must be given the opportunity to develop the invention through experimentation. Certain activities are experimental if they are a legitimate effort to test claimed features of the invention or to determine if the invention will work for its intended purpose. So long as the primary purpose is experimentation, it does not matter that the public used the invention or that the inventor incidentally derived profit from it.

Only experimentation by or under the control of the inventor of the patent [or his assignee] qualifies for this exception. Experimentation by [third party], for its own purposes,

does not.  The experimentation must relate to the features of the claimed invention, and it must be for the purpose of technological improvement, not commercial exploitation. If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation.  A test done primarily for marketing, and only incidentally for technological improvement, is not an experimental use.

 If you find that [the Defendant] has shown that it is highly probable that there was a [[prior public use] [prior sale]], then the burden is on [the Plaintiff] to come forward with evidence showing that the purpose of [the prior public use] [prior sale]] was experimental.  You may find that_____ does not constitute [[a prior public use of the invention][placing the invention on sale]] if the evidence provided by [the Plaintiff] regarding the experimental use prevents [the Defendant] from meeting its burden of establishing that it is highly probable that there was a [[prior public use][prior sale]].

*City of Elizabeth v. Am. Nicholson Pavement Co.*, 97 U.S. 126, 134-35 (1877); *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1327 (Fed. Cir. 2009); *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1316 (Fed. Cir. 2005); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1353-55 (Fed. Cir. 2002); *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1071-72 (Fed. Cir. 1992); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 549-51 (Fed. Cir. 1990); *U.S. Envtl. Prods. Inc. v. Westall*, 911 F.2d 713, 716 (Fed. Cir. 1990); *In re Hamilton*, 882 F.2d 1576, 1580-83 (Fed. Cir. 1989); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902, 906 (Fed. Cir. 1988); *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1535-37 (Fed. Cir. 1984); *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1580-81 (Fed. Cir. 1984); *In re Smith*, 714 F.2d 1127, 1134-37 (Fed. Cir. 1983).

### 6.5  Printed Publication

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was described in a printed publication [[more than one year before [the patentee] filed the U.S. patent application on [U.S. filing date]] [before [the patentee] invented the invention]].

A patent claim is invalid if the invention defined by that claim was described in a printed publication [[before it was invented by [the patentee]] [more than one year prior to the filing date of the U.S. application]].

[IF THERE IS A FACTUAL ISSUE TO BE RESOLVED BY THE JURY AS TO THE DATE OF INVENTION OF THE PATENT CLAIMS IN SUIT, THE JURY SHOULD BE INSTRUCTED HERE AS TO HOW THEY SHOULD DETERMINE THAT DATE OF INVENTION.  OTHERWISE, THE COURT SHOULD INSTRUCT THE JURY AS FOLLOWS:  "You are instructed that the invention defined by claim _____ of the [abbreviated patent number] patent was invented on [invention date]."]

A printed publication must have been maintained in some tangible form, such as [[printed pages] [typewritten pages] [magnetic tape] [microfilm] [photographs] [internet publication] [photocopies]], and must have been sufficiently accessible to persons interested in the subject matter of its contents.  [**Where accessibility is disputed:**  Information is publicly accessible if it

was distributed or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence can locate it.]  It is not necessary for the printed publication to have been available to every member of the public.  An issued patent is a printed publication.  A published patent application is a printed publication as of its publication date.

The disclosure of the claimed invention in the printed publication must be complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art [[one year before the application for the [abbreviated patent number] patent was filed] [at the time the invention of the [abbreviated patent number] patent was made]], and you may consider evidence that sheds light on the knowledge such a person would have had.

35 U.S.C. § 102(a), (b); *In re NTP, Inc.*, 654 F.3d 1279, 1296-97 (Fed. Cir. 2011); *Orion IP v. Hyundai Motor America*, 605 F.3d 967 (Fed. Cir. 2010); *In re Lister*, 583 F.3d 1307, 1311-12 (Fed. Cir. 2009); *Kyocera Wireless Corp. v. Int'l Trade Comm.*, 545 F.3d 1340, 1350 (Fed. Cir. 2008); *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *SRI International, Inc. v. Internet Security Systems, Inc.*, 511 F.3d 1186 (Fed. Cir. 2008); *In re Klopfenstein*, 380 F.3d 1345, 1352 (Fed. Cir. 2004); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554-55 (Fed. Cir. 1995); *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed. Cir. 1991); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1568-69 (Fed. Cir. 1988); *Akzo N.V. v. U.S. Int'l Trade Comm'n,* 808 F.2d 1471, 1479 (Fed. Cir. 1986); *In re Hall,* 781 F.2d 897, 898-899 (Fed. Cir. 1986); *In re Donohue,* 766 F.2d 531, 533-34 (Fed. Cir. 1985); *Studiengesellschaft Kohle mbH v. Dart Indus., Inc.,* 726 F.2d 724, 727 (Fed. Cir. 1984).

### 6.6  Prior Invention[7]

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was invented by another person, [third party], before [the patentee] invented his invention.

---

[7] In cases where priority of invention is an issue to be submitted to the jury, further instructions will be required. For example, the jury will need to consider not only the dates when the respective inventions were conceived, but also when the inventions were reduced to practice. An inventor who claims to be the first to conceive of a prior invention but was the last to reduce to practice must also show reasonable diligence from a time just before the other party entered the field until his own reduction to practice in order for the "prior invention" to anticipate the claimed invention in suit.

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee[, and that other person did not abandon, suppress, or conceal the invention].

[The Defendant] must show that it is highly probable *either* that before [the patentee] invented his invention, [third party] reduced to practice a [[product] [method]] that included all of the elements of claim ___ of the [abbreviated patent number] patent or that [third party] was first to conceive the invention and that he exercised reasonable diligence in later reducing the invention to practice. In addition, [the Defendant] must show that [third party]'s device was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

[If the prior invention was abandoned, suppressed, or concealed, it does not anticipate the [abbreviated patent number] patent.  However, it is not necessary that [the patentee] had knowledge of that prior invention.[8]

An invention was not abandoned, suppressed, or concealed unless (1) the prior inventor actively concealed the invention from the public or (2) the prior inventor unreasonably delayed in making the invention publicly known.  Generally, an invention was not abandoned, suppressed, or concealed if the invention was made public, sold, or offered for sale, or otherwise used for a commercial purpose.  A period of delay does not constitute abandonment, suppression, or concealment if the prior inventor was engaged in reasonable efforts to bring the invention to market.]

35 U.S.C. § 102(a), (g); *Teva Pharmaceutical v. Astrazeneca Pharmaceuticals*, 661 F.3d 1378 (Fed. Cir. 2011); *Solvay S.A. v. Honeywell Intern. Inc.*, 622 F.3d 1367, 1376 (Fed. Cir. 2010); *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1381 (Fed. Cir. 2002); *Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1343 (Fed. Cir. 2001); *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1361-63 (Fed. Cir. 2001); *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1035-40 (Fed. Cir. 2001); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1436-37 (Fed. Cir.1988); *Kimberly-Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1444-46 (Fed. Cir. 1984).

### 6.7  Prior Patent

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was patented by [third party]

---

[8] If abandonment, suppression or concealment are at issue in the case, these terms should be defined for the jury. *See Dow Chem. Co. v. Astro-Valcour Inc.*, 267 F.3d 1334, 1342 (Fed. Cir. 2001); *Checkpoint Sys., Inc. v. United States Int'l Trade Comm'n*, 54 F.3d 756, 761-62 (Fed. Cir. 1995).

[[before it was invented by [the patentee]] [more than one year before [the patentee] filed his United States patent application on [U.S. filing date]]].

A patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country [[before it was invented by [the patentee]] [more than one year before [the patentee] filed his United States patent application]].

[IF THERE IS A FACTUAL ISSUE TO BE RESOLVED BY THE JURY AS TO THE DATE OF INVENTION OF THE PATENT CLAIMS IN SUIT, THE JURY SHOULD BE INSTRUCTED HERE AS TO HOW THEY SHOULD DETERMINE THAT DATE OF INVENTION.  OTHERWISE, THE COURT SHOULD INSTRUCT THE JURY AS FOLLOWS:  "You are instructed that the invention defined by claim _____ of the [abbreviated patent number] patent was invented on [invention date]."]

35 U.S.C. § 102(a)-(b); *Adv. Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1287–83 (Fed. Cir. 2000); *In re Carlson*, 983 F.2d 1032, 1035-36 (Fed. Cir. 1992).

### 6.8  Prior U.S. Application

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was described in United States [[published patent application] [patent]] [[published application number] [anticipating patent number]], and because [[the published patent application [published application number]] [application for the [anticipating patent number] patent] was filed before [the patentee] made his invention.

A claim of the [abbreviated patent number] patent would be invalid if the invention defined by that claim was described in a [[published United States patent application] [United States patent]] filed by another person before the invention was made by [the patentee].

[IF THERE IS A FACTUAL ISSUE TO BE RESOLVED BY THE JURY AS TO THE DATE OF INVENTION OF THE PATENT CLAIMS IN SUIT, THE JURY SHOULD BE INSTRUCTED HERE AS TO HOW THEY SHOULD DETERMINE THAT DATE OF INVENTION.  OTHERWISE, THE COURT SHOULD INSTRUCT THE JURY AS FOLLOWS:  "You are instructed that the invention defined by claim [____] of the [abbreviated patent number] patent was invented on [invention date]."]

35 U.S.C. §§ 102(e)(1) and (2); *In re Giacomini*, 612 F.3d 1380, 1383–84 (Fed. Cir. 2010); *Sun Studs, Inc. v. ATA Equip. Leasing, Inc*., 872 F.2d 978, 983-84 (Fed. Cir. 1989) (*overruled on other grounds*); *In re Wertheim*, 646 F.2d 527, 536-37 (C.C.P.A. 1981).

## 7. Obviousness

### 7.0  Obviousness

[The Defendant] contends that claim(s) [numbers] of the [abbreviated patent number] patent are invalid because the claimed invention(s) is "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

The following factors must be evaluated to determine whether [the Defendant] has established that the claimed invention(s) is obvious:

1. the scope and content of the prior art relied upon by [the Defendant];

2. the difference or differences, if any, between each claim of the [abbreviated patent number] patent that [the Defendant] contends is obvious and the prior art;

3. the level of ordinary skill in the art at the time the invention of the [abbreviated patent number] patent was made; and

4. additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

[The Defendant] must prove that obviousness is highly probable.

I will now explain each of the four factors in more detail.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 and 421 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Otsuka Pharmaceutical Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.,* 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-40 (Fed. Cir. 1983).

### 7.1  The First Factor:  Scope and Content of the Prior Art

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes. The prior art includes the following items received into evidence during the trial:

[LIST PRIOR ART STIPULATED TO BY THE PARTIES].

[IF PARTIES DISPUTE THE PRIOR ART, USE THE FOLLOWING]. You must determine what is the prior art that may be considered in determining whether the [abbreviated patent number] patent is obvious.  A prior art reference may be considered if it discloses information designed to solve any problem or need addressed by the patent or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve any problem or need addressed by the patent.

[ADD INSTRUCTIONS ON PRIOR ART CONTENTIONS, E.G., PUBLICATION AND ON-SALE BAR]

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 864 (Fed. Cir. 1993); *In re Clay,* 966 F.2d 656, 658-59 (Fed. Cir. 1992); *In re Wood,* 599 F.2d 1032, 1036-37 (C.C.P.A. 1979).

## 7.2  The Second Factor:  Differences Between the Claimed Invention and the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense.  You may also consider whether the problem or need was known, the possible approaches to solving

the problem or addressing the need were known and finite, and the solution was predictable through use of a known option.

      If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.  Again, you must undertake this analysis separately for each claim that [the Defendant] contends is obvious.

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1351 (Fed. Cir. 2008); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567-68 (Fed. Cir. 1983).

### 7.3  The Third Factor:  Level of Ordinary Skill

      The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the [pertinent art field].  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

      [IF THE PARTIES HAVE AGREED TO THE LEVEL OF ORDINARY SKILL IN THE ART, THEN THE INSTRUCTION SHOULD INCLUDE: "[The Plaintiff] and [the Defendant] contend that the level of ordinary skill in the art is [insert proposal]."

      [IF THE PARTIES HAVE NOT AGREED TO THE LEVEL OF ORDINARY SKILL IN THE ART, THEN THE INSTRUCTION SHOULD CONTINUE AS FOLLOWS].

      When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1.  the level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

2.  the types of problems encountered in the art at the time of the invention; and

3.  the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envtl Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 696-97 (Fed. Cir. 1983).

### 7.4  The Fourth Factor:  Factors Indicating Nonobviousness

      Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious.  No factor alone is

dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

[USE ONLY THOSE INSTRUCTIONS THAT ARE APPROPRIATE.]

1. Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2. Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

3. Did others try, but fail, to solve the problem solved by the claimed invention?

4. Did others copy the claimed invention?

5. Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6. Did others in the field, or [the Defendant] praise the claimed invention or express surprise at the making of the claimed invention?

7. Did others accept licenses under [abbreviated patent number] patent because of the merits of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.  These factors are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims.  Even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other evidence in the case in determining whether [the defendant] has proven that the claimed invention would have been obvious as of [invention date].

*Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *United States v. Adams*, 383 U.S. 39, 52 (1966); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc., v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

## 8.  Enablement

[The defendant] contends that claim[s] _____ of the [abbreviated patent number] patent [is] [are] invalid for lack of enablement.  [The defendant] bears the burden of establishing lack of enablement by the highly probable standard.

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention, at the time the [priority] patent application was filed, to make and

use the full scope of the claimed invention without undue experimentation. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention. Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain.

The fact that some experimentation may be required for a person of ordinary skill to practice the claimed invention does not mean that a patent does not meet the enablement requirement.  Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include:

1.  the quantity of experimentation necessary;

2.  the amount of direction or guidance disclosed in the patent;

3.  the presence or absence of working examples in the patent;

4.  the nature of the invention;

5.  the state of the prior art;

6.  the relative skill of those in the art;

7.  the predictability of the art; and

8.  the breadth of the claims.

If you find that [the defendant] has proven that it is highly probable that the [abbreviated patent number] patent does not enable the invention[s] of claims _____, then you must find that the claim[s] [is] [are] invalid.

35 U.S.C. § 112; *Streck, Inc. v. Research & Diagnostic Sys.*, 665 F.3d 1269, 1288-89 (Fed. Cir. 2012); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305-07 (Fed. Cir. 2010); *ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 939-43 (Fed. Cir. 2010); *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1377-79 (Fed. Cir. 2009); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999-1002 (Fed. Cir. 2008); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003); *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer- Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-98 (Fed. Cir. 1999); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

**9.  Written Description Requirement**

The [Defendant] contends that claim[s] _____ of the [abbreviated patent number] patent [is] [are] invalid for failure to satisfy the written description requirement.  [The defendant] bears the burden of establishing lack of written description by the highly probable standard of proof.

A patent must contain a written description of the [product or process] claimed in the patent.  The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter.  To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent.  The written description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the date the [priority] patent application was filed, even though the claims themselves may have been changed or new claims added since that time.

 It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention. In evaluating whether the specification has provided an adequate written description, you may take into account such factors as (i) the nature and scope of the patent claims, (ii) the complexity, predictability, and maturity of the technology at issue, (iii) the existing knowledge in the relevant field, and (iv) the scope and content of the prior art.

If you find that [the defendant] has proven that it is highly probable that the [abbreviated patent number] patent does not contain a written description of the invention[s] of claims _____, then you must find that the claim[s] [is] [are] invalid.

35 U.S.C. § 112; *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 670 F.3d 1171, 1188-89 (Fed. Cir. 2012); *Streck, Inc. v. Research & Diagnostic Sys.*, 665 F.3d 1269, 1284-87 (Fed. Cir. 2012); *Atl. Research Mktg. Sys. v. Troy*, 659 F.3d 1345, 1353-55 (Fed. Cir. 2011); *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361-63 (Fed. Cir. 2011); *Crown Packaging Tech. v. Ball Metal Bev. Container Corp.*, 635 F.3d 1373, 1379-80 (Fed. Cir. 2011); *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1347-48 (Fed. Cir. 2011); *Ariad Pharms., Inc. v. Mass. Instit. of Tech.*, 598 F.3d 1336, 1351-52 (Fed. Cir. 2010) (en banc); *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 870 (Fed. Cir. 2010); *Laryngeal Mask Co. v. Ambu A/S*, 618 F.3d 1367, 1373-74 (Fed. Cir. 2010); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1366 (Fed. Cir. 2009); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008); *Falko-Gunter Faulkner v. Inglis*, 448 F.3d 1357, 1366 (Fed. Cir. 2006); *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006); *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1336 (Fed. Cir. 2006); *Univ. of Rochester v. G.D. Searle & Co.*, Inc., 358 F.3d 916, 922-928 (Fed. Cir. 2004); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 964 (Fed. Cir. 2002) (en banc).

## 10.  Unenforceability (Inequitable Conduct)

[INTRODUCTORY NOTE:  "Inequitable conduct is an equitable issue committed to the discretion of the trial court and reviewed by [the Federal Circuit] under an abuse of discretion standard."  *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1357 (Fed. Cir. 2006).  Because there is no right to trial by jury on this equitable issue, the court may try this issue, or any part thereof, with an advisory jury.  If the court elects to try the issue with an advisory jury, the court should consider whether to charge the jury on the entire issue, or to charge the jury solely on the materiality and/or intent to deceive issues.  The verdict form should have separate questions on each of the issues on which the jury has been charged, i.e., materiality, intent, and/or balancing the equities where the jury is rendering a finding on inequitable conduct.  In cases alleging inequitable conduct based on the failure to disclose information to the Patent & Trademark Office, it is respectfully suggested that the court consider carefully whether to use an advisory jury. The issues are complex and potentially confusing because the clear-and-convincing-evidence standard applies to the inequitable conduct defense while the preponderance-of-the-evidence standard applies to the issue of whether the Patent and Trademark Office would have issued the patent "but for" the failure to disclose, as required by *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011).]

### 10.1  Inequitable Conduct – Generally

[The Defendant] contends that [the Plaintiff] may not enforce the [abbreviated patent number] patent against [the Defendant] because individuals substantively involved in the prosecution of the [abbreviated patent number] patent engaged in inequitable conduct before the Patent and Trademark Office during prosecution of that patent.

Applicants for a patent have a duty to prosecute patent applications in the Patent and Trademark Office with candor, good faith, and honesty.  This duty of candor and good faith extends to all inventors named on a patent application, all patent attorneys and patent agents involved in preparing and prosecuting the application, and every other individual involved in a substantial way with the prosecution of the patent application.  An intentional failure to meet this duty of candor and good faith is referred to as "inequitable conduct."

[In this case, [the Defendant] asserts that [DESCRIBE BRIEFLY EACH BASIS FOR [THE DEFENDANT]'S UNENFORCEABILITY DEFENSE].]

[The Defendant] must prove inequitable conduct by the highly probable standard. To determine whether the [abbreviated patent number] patent was obtained through inequitable conduct, you must determine (1) whether an individual or individuals having this duty of candor and good faith [engaged in affirmative acts of egregious misconduct or] withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application, and (2) that this individual or individuals acted with the specific intent to deceive or mislead the Patent and Trademark Office.

*Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc); *Avid Identification Sys., Inc. v. Crystal Import Corp.*, 603 F.3d 967, 973-74 (Fed. Cir. 2010); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1135 (Fed. Cir. 2007); *Digital Control, Inc. v.*

*Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006); *Purdue Pharma L.P. v. Endo Pharm., Inc.*, 438 F.3d 1123, 1128 (Fed. Cir. 2006); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1233 (Fed. Cir. 2003).

### 10.2   Materiality (Non-disclosure cases only)

[Defendant] contends that _____ was information [known to] [misrepresented by] an individual having the duty of good faith and candor to the Patent and Trademark Office, and that such information was [withheld from] [misrepresented to] the Patent and Trademark Office during the prosecution of the [abbreviated patent number] patent.  If you find that an individual having this duty of good faith and candor [withheld] [misrepresented] information when applying for the [abbreviated patent number] patent, you must determine whether that information was material information.

Information is material if "but for" the individual's [failure to disclose] [misrepresentation of] the information during the prosecution, the Patent and Trademark Office would not have allowed one or more claims of the [abbreviated patent number] patent. In other words, information is material if it is more likely than not that the Patent and Trademark office would not have allowed one or more claims of the [abbreviated patent number] patent if it had been aware of the [withheld] [true] information. To decide whether the Patent and Trademark Office would not have allowed one or more claims if it had been aware of the [withheld] [true] information, you should use the broadest reasonable interpretation of the claim or claims under consideration and apply the more likely than not standard, as the Patent and Trademark Office would have done.

If you decide that the Patent and Trademark Office would not have allowed one or more claims applying this standard, then the individual's [failure to disclose] [misrepresentation of] the information during the prosecution is material, whether or not you also find the claims invalid under the standards for finding claims invalid in this lawsuit.  This does not change the [Defendant]'s overall burden, however, to prove its inequitable conduct defense by the highly probable standard of proof.

*Therasense, Inc. v. Becton Dickinson & Co.,* 649 F.3d 1276 (Fed. Cir. 2011) (en banc).

### 10.3   Materiality (Affirmative Egregious Misconduct cases only)

In this case, [the Defendant] alleges that [individual(s) accused of inequitable conduct] engaged in affirmative acts of egregious misconduct during the prosecution of the [abbreviated patent number] patent. Specifically, [the Defendant] alleges [summarize alleged affirmative acts of egregious misconduct]. If you find that it is highly probable that [accused individual(s)] engaged in the conduct as alleged by [the Defendant], and that the conduct rises to the level of affirmative egregious misconduct, then you are instructed that the misconduct was material.  To assist you in your deliberation, examples of affirmative acts of egregious conduct would be perjury, including filing an unmistakably false affidavit in the Patent and Trademark Office during prosecution of the [abbreviated patent number] or fabricating evidence presented to the Patent and Trademark Office during prosecution of the [abbreviated patent number]. Affirmative acts of egregious conduct may also include deliberately planned and executed

schemes to defraud the Patent and Trademark Office.  On the other hand, examples of things that do not rise to the level of affirmative acts of egregious conduct would be mere nondisclosure of prior art references to the Patent and Trademark Office or failure to mention prior art references in an affidavit during prosecution of the [abbreviated patent number].

*Therasense, Inc. v. Becton Dickinson & Co.,* 649 F.3d 1276 (Fed. Cir. 2011) (en banc).

### 10.4  Intent to Deceive or Mislead

If you determine that material information was withheld from or misrepresented to the Patent and Trademark Office, or that [accused individual(s)] engaged in affirmative egregious misconduct, you must next determine whether this was done with a specific intent to deceive or mislead the Patent and Trademark Office.  Intent to deceive the Patent and Trademark Office may be found from direct evidence.  You may also infer deceptive intent from the facts and surrounding circumstances. For example, when a patentee has knowingly misrepresented a material fact or submitted false material information, and when the natural consequence of those intentional acts would be to deceive the Patent and Trademark Office, an inference that [the accused individual(s)] intended to deceive the Patent and Trademark Office may be appropriate.

When the individual having a duty of good faith and candor has deliberately withheld or misrepresented known material information from the Patent and Trademark Office, you may find that he or she acted with intent to deceive the Patent and Trademark Office if and only if that is the single most reasonable inference to be drawn from the evidence.  If there are multiple reasonable inferences that may be drawn, you cannot find an intent to deceive.  You may not infer that the individual acted with intent to deceive based solely on the fact or facts that the information withheld was material, or even highly material, or that the individual has not provided a good faith explanation for the withholding.  Nor may you infer intent solely on the basis of gross negligence or negligence in withholding material information.  For example, it is not enough that the individual knew of a reference, should have known of its materiality, and decided not to submit it to the Patent and Trademark Office.  Instead, you need to determine that the individual knew of the withheld or misrepresented information, knew the information was material, and made a deliberate and conscious decision to withhold or misrepresent the information.  In determining whether there was an intent to deceive or mislead the Patent and Trademark Office, you should consider the totality of the circumstances, including the nature of the conduct and whether that conduct occurred in good faith.

*Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011)(en banc); *Larson Mfg. Co. of S.D. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340-41 (Fed. Cir. 2009); *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366, 1368 (Fed. Cir. 2008); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1137-38 (Fed. Cir. 2007); *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F. 3d 1123, 1133-34 (Fed. Cir. 2006); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319-20 (Fed. Cir. 2000); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180-82 (Fed. Cir. 1995).

## 11.  Damages

### 11.0  Damages – Generally

If you find that the accused [[device] [method]] infringes any of the claims of the [abbreviated patent number] patent, and that those claims are not invalid, you must determine the amount of damages to be awarded [the Plaintiff] for the infringement.  On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not consider damages in your deliberations.

[The Plaintiff] must prove each element of its damages – including the amount of the damages – by a preponderance of the evidence which means it is more likely than not that [the Plaintiff] has proven its damages.

If proven by the Plaintiff, the amount of those damages must compensate [the Plaintiff] for the infringement.  The purpose of a damage award is to put [the Plaintiff] in about the same financial position it would have been in if the infringement had not happened. But, the damage award cannot be less than a reasonable royalty.  You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case.  My instructions about damages are for your guidance only in the event you find in favor of [the Plaintiff].

*Powell v. Home Depot U.S.A., Inc.,* 663 F.3d 1221, 1238 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 868 (Fed. Cir. 2010); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009); 35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987).

### 11.1  Date Damages Begin

#### 11.1.1  Alternate A – When the Date of the Notice of Infringement is Stipulated

The date that [the Plaintiff] first notified [the Defendant] of its claim of patent infringement is the date for the start of damages calculations. The parties agree that date is [infringement notice date].

### 11.1.2  Alternate B – When the Date of the Notice of Infringement is Disputed – Product Claims

The date that [the Plaintiff] first notified [the Defendant] of its claim for patent infringement is the date for the start of damages. The parties do not agree on that date, and it is up to you to determine what that date is. [The Plaintiff] must prove that it is more likely than not that the [Defendant] actually was notified of the claim for patent infringement as of the date alleged by [the Plaintiff].

[The Plaintiff] can give notice in two ways. The first way is to give notice to the public in general. [The Plaintiff] can do this by marking substantially all of the products that it sold which included the patented invention, or including on the labeling of substantially all of the products, the word "patent" or the abbreviation "PAT" with the number of the patent. [The Plaintiff] also may give notice by marking substantially all of the products with "Patent" or "Pat" and a free, internet address where there is a posting that connects the product with the patent number. [Licensees of the [abbreviated patent number] patent who use the patented invention must also mark substantially all of their products that include the patented invention with the patent number.] This type of notice starts from the date [the Plaintiff] [and its licensees] began to mark substantially all of its products that use the patented invention with the patent number. If [the Plaintiff] [and its licensees] did not mark substantially all of those products with the patent number, then [the Plaintiff] did not provide notice in this way.

A second way [the Plaintiff] can give notice of its patent[s] is to notify [the Defendant] with a specific claim that the [allegedly infringing product] infringed the [abbreviated patent number] patent. This type of notice starts from the date [Defendant] received the notice. If you find that [the Plaintiff], before filing this lawsuit, did not properly mark its products and did not notify [the Defendant] with a specific charge that the [allegedly infringing product] infringed, then [the Plaintiff] can only recover damages for infringement that occurred after it sued [the Defendant] on [lawsuit filing date].

[IF THERE IS AN ISSUE OF FACT AS TO THE ADEQUACY OF THE PATENTEE'S MARKING, ADDITIONAL INSTRUCTIONS WILL BE REQUIRED].

### 11.1.3  Alternate C – When the Date Damages Begin is the Date the Lawsuit was Filed

The date that damages begin to be calculated in this case is the date this lawsuit was filed, which is [the lawsuit filing date].

35 U.S.C. § 287(a); *Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.,* 616 F.3d 1357, 1373-74 (Fed. Cir. 2010); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987).

### 11.2  Two Types of Damages – Lost Profits and Reasonable Royalty

There are two types of damages for patent infringement. The first type of patent damages is lost profits.  Briefly, lost profits damages give a patent owner the additional profits that it would have made if there had been no infringement.  You may hear this referred to as the "but for" test – which means, "what profits would the patent owner have made 'but for' the alleged infringement?"  The second type of patent damages is called reasonable royalty.  A reasonable royalty is the reasonable amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and the patent owner would have accepted.  A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

### 11.3  Lost Profits – "But-For" Test

[The Plaintiff] is seeking lost profits damages in this case. To prove lost profits damages, [the Plaintiff] must show by a preponderance of evidence that, but for [the Defendant]'s infringement, [the Plaintiff] would have made additional profits through the sale of all or a portion of the sales of [the allegedly infringing products] made by [the Defendant]. Thus, part of your job is to determine what the customers who purchased the [allegedly infringing product] [from the Defendant] would have done if the alleged infringement had not occurred.  It is important to remember that the profits I have been referring to are the profits allegedly lost by [the Plaintiff], not the profits, if any, made by [the Defendant] on the allegedly infringing sales.

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1289 (Fed. Cir. 2011); *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262 (Fed. Cir. 2008); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Micro Chem. v. Lextron, Inc.*, 318 F.3d 1119, 1122-1125 (Fed. Cir. 2003); *Ferguson Beauregard/Logic Controls v. Mega Sys., L.L.C.*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988); *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863-64 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 21 (Fed. Cir. 1984); *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1365 (Fed. Cir. 1984); *Central Soya Co. v. Geo A Hormel & Co.*, 723 F.2d 1573, 1578-79 (Fed. Cir. 1983).

### 11.4  Lost Profits – Panduit Factors

[The Plaintiff] has proven its lost profits if you find that [the Plaintiff] has proven each of the following factors by the more likely than not standard:

1. the demand for the patented [[product] [method]],

2. absence of acceptable non-infringing substitutes,

3.  that [the Plaintiff] had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by [the Defendant], and

4.  the amount of profit that [the Plaintiff] would have made if it were not for [the Defendant]'s infringement.

I will now explain each of these factors.

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc*., 637 F.3d 1269, 1287 (Fed. Cir. 2011); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc*., 567 F.3d 1314, 1329 (Fed. Cir. 2009); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-79 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989); *Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 275 (Fed. Cir. 1985); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

## 11.5  Lost Profits – Panduit Factors – Demand

The first factor asks whether there was demand for the patented product in the relevant market. [The Plaintiff] can prove demand for the patented product by showing significant sales of [the Plaintiff]'s own patented product.  [The Plaintiff ] also can prove demand for the patented product by showing significant sales of [the Defendant]'s products that are covered by the patent in suit.  To use sales of [the Defendant]'s products as proof of this demand, however, [the Plaintiff]'s and [the Defendant]'s product must be sufficiently similar to compete against each other in the same market or market segment.  You also should not consider sales of products mainly due to advertising and marketing, and unpatented features of the products as evidence of demand for the patented product.

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548-49 (Fed. Cir. 1995); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 n.3 (Fed. Cir. 1991); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984).

## 11.6  Lost Profits – Panduit Factors – Acceptable Non-Infringing Substitutes

The second factor asks whether there were non-infringing, acceptable substitutes for the patented products in the market place. If the realities of the marketplace are that competitors other than [the Plaintiff] would likely have captured some or all of the sales made by the infringer, even despite a difference in the products, then [the Plaintiff] is not entitled to lost profits on those sales.

To be an acceptable substitute, the products must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general.  The acceptable substitutes also must not infringe the patent because they

were licensed under the patent or they did not include all the features required by the patent. The acceptable substitutes, in addition, must have been available during the damages period.  An acceptable non-infringing substitute is available if, during the damages period, a competitor or [the Defendant] had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell such substitute instead of its infringing sales at the time those infringing sales were made.  If you determine that some of [the Defendant]'s customers would just as likely have purchased a non-infringing acceptable product, then [the Plaintiff] has not shown it lost those sales but for [the Defendant]'s sales.

Even if you find that [the Plaintiff]'s and [the Defendant]'s products were the only ones with the advantages of the patented invention, it still remains [the Plaintiff]'s burden to prove that it in fact would have made the [the Defendant]'s infringing sales.

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1331-32 (Fed. Cir. 2009); *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, (Fed. Cir. 2008); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372-73 (Fed. Cir. 2008); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545-46 (Fed. Cir. 1991); *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142-43, 1143 n.17 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901-902 (Fed. Cir. 1986).

### 11.7  Lost Profits – Market Share

If you find that there were other acceptable non-infringing substitute products in the market, then [the Plaintiff] may be entitled to lost profits on a portion of [the Defendant]'s infringing sales.  The burden is on [the Plaintiff] to prove that it is more likely than not that the patented product competed in the same market as [the Defendant]'s infringing product, and that [the Plaintiff] would have made a portion of the infringing sales equal to at least [the Plaintiff]'s share of that market but for [the Defendant]'s infringement. It is not necessary for [the Plaintiff] to prove that [the Plaintiff] and [the Defendant] were the only two suppliers in the market for [the Plaintiff] to demonstrate entitlement to lost profits.  The burden is on [the Plaintiff], however, to show that it is more likely than not that it would have sold that portion had [the Defendant]'s product never existed.  In a two-supplier marker, the burden is on [the Plaintiff] to show that its product competed in the same market with the [the Defendant]'s product and that it would have made those sales if the infringement had not occurred .

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353-1357 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989).

### 11.8  Lost Profits – Panduit Factors – Capacity

The third factor asks whether [the Plaintiff] had the manufacturing and marketing ability to actually make the sales it allegedly lost due to [the Defendant]'s infringement.  [The Plaintiff]

must prove that it could have supplied the additional patented products needed to make the sales [the Plaintiff] said it lost, or that someone working with [the Plaintiff] could have supplied the additional patented products. [The Plaintiff] also must prove that it had the ability to market and sell those additional patented products.

*Wechsler v. Macke Int'l Trade, Inc.,* 486 F.3d 1286, 1293 (Fed. Cir. 2007); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); *Fonar Corp. v. Gen. Elec. Co*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994); *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 825 (Fed. Cir. 1989); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 554 (Fed. Cir. 1984).

### 11.9  Lost Profits – Panduit Factors – Amount of Profit Incremental Income Approach

[The Plaintiff] may calculate the amount of its lost profits by calculating its lost sales for the patented product and subtracting from that amount any additional costs or expenses that [the Plaintiff] would have had to pay to make the lost sales. This might include additional costs for making the products, and additional sales costs, additional packaging costs, additional shipping costs, etc. Any costs that do not change when more products are made, such as taxes, insurance, rent and administrative overhead, should not be subtracted from the lost sales amount. The amount of lost profits cannot be speculative but it need not be proved with unerring certainty.

*Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1579 (Fed. Cir. 1991); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482-1483 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579-1580 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987); *King Instrument Corp. v. Otari*, 767 F.2d 853, 863-864 (Fed. Cir. 1985); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554-555 (Fed. Cir. 1984); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984); *Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*, 739 F.2d 604 (Fed. Cir. 1984); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 11.10  Lost Profits – Price Erosion

[The Plaintiff] is entitled to recover additional damages if it can show that it is more likely than not that, but for [the Defendant]'s infringement, [the Plaintiff] [[would have been able to charge higher prices] [would not have had to lower its prices]] for its patented products. If you find that [the Plaintiff] has met its burden of proof, then you may award as additional damages an amount equal to the difference between the profits that [the Plaintiff] would have made at the higher price and the profits [the Plaintiff] actually made selling its patented products at the lower price that [the Plaintiff] charged for its patented product. This type of damage is referred to as price erosion damages.

If you find that [the Plaintiff] suffered price erosion damages, then you also may use the higher price that [the Plaintiff] would have charged in determining [the Plaintiff]'s lost sales and

lost profits due to [the Defendant]'s infringement.  However, if  you calculate price erosion or lost profits damages using the higher price for the patented product, then you also must take into account any decrease in [the Plaintiff]'s sales that might have occurred due to the higher price for the patent products.  In order to award lost profits based on price erosion, it is not required that [the Plaintiff] knew that [the Defendant]'s competing product infringed the patent, if [the Plaintiff] reduced its price to meet [the Defendant]'s prices.

*Automated Merch. Sys., Inc. v. Crane Co*., 357 F. App'x 297, 300-01 (Fed. Cir. 2009); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378-1379 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002); *Minn. Mining & Mfg. Co.  v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1578-1579 (Fed. Cir. 1992); *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1543 (Fed. Cir. 1987); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 11.11  Lost Profits – Cost Escalation

[The Plaintiff] can recover additional damages if it can show that it also lost profits because its costs – such as additional marketing costs – went up as a result of [the Defendant]'s infringement of [the Plaintiff]'s patent.  [The Plaintiff] must prove that it was more likely than not that its costs went up because of [the Defendant]'s actions, and not for some other reason.

*Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324-1325 (Fed. Cir. 2000); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996); *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1120 (Fed. Cir. 1996).

### 11.12  Lost Profits – Collateral Sales

In this case, [the Plaintiff] contends that the patented product is ordinarily sold along with other products, namely [collateral products].  These other products are called "collateral products." It is part of your job to determine whether [the Plaintiff] has proved that it is entitled to damages for the lost sales of any collateral products.

To recover lost profits for lost sales of any collateral products, [the Plaintiff] must prove two things.  First, [the Plaintiff] must prove that it is more likely than not that it would have sold the collateral products but for the infringement.  Second, the collateral products and the patented product must be so closely related that they effectively act or are used together for a common purpose.  Damages for lost collateral sales, if any, are calculated in the same way as for calculating lost profits on the patented product.

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1333 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549-51 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 656 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22-23 (Fed. Cir. 1984).

### 11.13  Lost Profits – Doubts Resolved Against Infringer

Any doubts that you may have on the issue of damages due to [the Defendant]'s failure to keep proper records should be decided in favor of [the Plaintiff].  Any confusion or difficulties caused by [the Defendant]'s records also should be held against [the Defendant], not [the Plaintiff].

*DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1309 (Fed. Cir. 2006); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572-73 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 11.14  Reasonable Royalty - Generally

If you find that [the Plaintiff] has not proven its claim for lost profits, or if you find that [the Plaintiff] has proven its claim for lost profits for only a portion of the infringing sales, then you must consider the issue of a reasonable royalty.  You must decide whether [the Plaintiff] has proven an amount as a reasonable royalty that it could have earned on any infringing sales for which you have not already awarded lost profit damages.  A royalty is a payment made to a patent owner by someone else in exchange for the rights to [make, use, sell, or import] a patented product.

The patent law provides that the amount of damages that [the Defendant] should pay [the Plaintiff] for infringing [the Plaintiff]'s patent must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of [the Plaintiff]'s invention.

35 U.S.C. § 284; *Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292 (Fed. Cir. 2011); *Lucent Technologies, Inc. v. Gateway, Inc*., 580 F.3d 1301, 1324-25 (Fed. Cir. 2009); *Fromson v. W. Litho Plate & Supply Co*., 853 F.2d 1568, 1574 (Fed. Cir. 1998) *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.,* 383 F.3d 1337, 1342 (Fed. Cir 2004); *Minco, Inc. v. Combustion Eng'g, Inc*., 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc*., 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

### 11.15  Reasonable Royalty Definition – Using the "Hypothetical Negotiation" Method

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between [the Plaintiff] and [the Defendant].  Of course, we know that they did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that that the parties did negotiate a license just before the infringement began.  This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license.

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d

1301, 1324-25 (Fed. Cir. 2009); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 869-70 (Fed. Cir. 2003); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993).

### 11.16  Relevant Factors if Using the Hypothetical Negotiation Method

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1. Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by [the Defendant] to license other patents comparable to the [abbreviated patent number] patent.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7. The duration of the [abbreviated patent number] patent and the term of the license.

8. The established profitability of the product made under the [abbreviated patent number] patent; its commercial success; and its current popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which [the Defendant] has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee (such as [the Defendant]) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

*Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

### 11.17  Reasonable Royalty – Multiple Patents

If you find that [the Defendant] infringed multiple patents, even by a single infringing act and if you award a reasonable royalty for the infringement, then you may award separate royalties to [the Plaintiff] for each patent that was infringed.   You also may consider the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

*Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561 n.8 (Fed. Cir. 1983); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007).

### 11.18  Reasonable Royalty - Timing

Although the relevant date for the hypothetical license negotiation is just before the infringement began, you may consider any actual profits made by [the Defendant] due to its infringement and any commercial success of the patented invention or the infringing products after that date.  You may only consider this information, however, if those sales and profits were foreseeable just before the infringement began.

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 869-70 (Fed. Cir. 2003); *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446-48 (Fed. Cir. 1990); *Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.*, 862 F.2d 1564, 1570-72 (Fed. Cir. 1988*); Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.,* 383 F.3d 1337, 1342 (Fed. Cir 2004).

### 11.19  Reasonable Royalty – Availability of Non-Infringing Substitutes

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing substitutes for the patented invention.  A non-infringing substitute must be a product that does not infringe the patent because it is licensed under the patent or it does not include all the features required by the claims of the patent.

A non-infringing substitute is available if the Defendant had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell the substitute instead of its infringing product at the time the infringing product was sold.  The substitute also must be acceptable to the specific purchasers of the infringing products, not the public in general.

The test is whether buyers of [the Defendant]'s product bought the infringing product because of the patented features.  If so, non-infringing products without those patented features would not be "acceptable non-infringing substitutes," even if they could compete in the marketplace with the patented products.

*American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262 (Fed. Cir. 2008); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372-73 (Fed. Cir. 2008); *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).

### 11.20  Reasonable Royalty – Post-Trial

If you find that [the Defendant] has infringed any of the asserted patents, then you may award a reasonable royalty for [the Defendant]'s use of the patented inventions in the future. This royalty is different from the amount of money that you have been asked to find is owed as damages to [the Plaintiff] as a result of [the Defendant]'s infringement before this trial.

In determining the reasonable royalty that [the Defendant] should pay to continue using the patented technology after this trial, you may consider evidence on any of the following factors:

1. any cost to [the Defendant] attributable to switching from an infringing design to a non-infringing design;

2. any demand for [the Defendant]'s infringing product;

3. any use of the same technology or technology very similar to the invention in new products of [the Defendant];

4. any amount that you have determined is owed to [the Plaintiff] by [the Defendant] for [the Defendant]'s past infringement; and

5. any profits enjoyed by [the Defendant] on the products that you have found to be infringing].

Your award for the future use of the patent should be listed separate from any award for past damages, unless you find that the parties would have negotiated a single royalty for the life of the patent.  If you find that the parties would have negotiated a single royalty, you should say so in your verdict.

*Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008); *Paice LLC v. Toyota Corp.*, 609 F. Supp. 2d 620, 624-630 (E.D. Tex. 2009); *Joyal Prods., Inc. v. Johnson Elec. N. Am., Inc.*, 2009 U.S. Dist. LEXIS 15531, *38 (D.N.J. Feb. 27, 2009), *aff'd per curiam by* 335 Fed. Appx. 48 (Fed. Cir. 2009).

## 12.  Willful Infringement

### 12.1  Willful Infringement - Generally

[The following instruction should be given only if the patent owner contends willful infringement]

If you find that it is more likely than not that [the Defendant] infringed [the Plaintiff]'s patent, either literally or under the doctrine of equivalents, then you must also determine if this infringement was willful.  Willfulness must be proven that it is highly probable that:

1. [The Defendant] was aware of [the Plaintiff]'s patent,

2. [The Defendant] acted despite an objectively high likelihood that its actions infringed a valid patent, and

3. This objectively high likelihood of infringement was either known or so obvious that it should have been known to [the Defendant].

In making the determination of whether [the Defendant] acted despite an objectively high likelihood that its actions infringed a valid patent, you may not consider [the Defendant]'s actual state of mind.

In determining willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to whether [the Defendant] intentionally copied the claimed invention or a product covered by patent, whether [the Defendant] relied on competent legal advice, and whether [the Defendant] presented a substantial defense to infringement, including the defense that the patent is invalid [or unenforceable].

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.,* 682 F.3d 1003, 1006-08  (Fed. Cir. 2012); *i4i Ltd. P'Ship. v. Microsoft Corp.*, 598 F.3d 831, 859-60 (Fed. Cir. 2010); *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010); *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

### 12.2  Willful Infringement – Absence of Legal Opinion

[The following instruction should be given only if the Defendant does not claim reliance on a legal opinion to rebut willfulness.]

In considering under the totality of the circumstances whether [the Defendant] acted willfully, you may consider as one factor the lack of evidence that [the Defendant] obtained a competent legal opinion.  However, you may not assume that merely because [the Defendant] did not obtain a legal opinion, the opinion would have been unfavorable.  The absence of a lawyer's opinion, by itself, is insufficient to support a finding of willfulness.

*Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1347-48 (Fed. Cir. 2011); *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1313 (Fed. Cir. 2010); *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc).

# VI.    <u>Acknowledgments</u>

The contributions of the following attorneys to the drafting and commenting on of these model jury instructions are gratefully acknowledged.

<u>The 1997 Version</u>

| | | |
|---|---|---|
| Mark Abate | Roy E. Hofer | John B. Pegram |
| Ken R. Adams | Michael K. Kirschner | Michael F. Petock |
| Joseph Z. Allen | Steven S. Korniczky | Peter H. Priest |
| Robert L. Baechtold | William E. Lahey | Jerrold B. Reilly |
| Russell J. Barron | Bradley G. Lane | Daniel M. Riess |
| Christopher R. Benson | Robert C. Laurenson | William C. Rooklidge |
| David J. Brezner | Gary H. Levin | Alan J. Ross |
| Henry L. Brinks | Jeffrey I.D. Lewis | John M. Skenyon |
| Jeffrey N. Costakos | Brent P. Lorimer | Allan Sternstein |
| John F. Delaney | Don W. Martens | Lawrence M. Sung |
| Bradford J. Duft | Alice O. Martin | Jennifer A. Tegfeldt |
| Donald R. Dunner | Clifton E. McCann | David C. Wright |
| Richard D. Fladung | Gaynell C. Methvin | |
| Floyd A. Gibson | Frederick G. Michaud, Jr. | |
| Eileen M. Herlihy | Jeffrey D. Mills | |

<u>The 2005 version</u>

| | | |
|---|---|---|
| Kley Achterhof | Rashida MacMurray | Aaron Weiss |
| Stephanie Barbosa | Steven Maslowski | Elizabeth Wright |
| Kelli Deasy | William McGeveran | Jeremy Younkin |
| Denise DeFranco | George Medlock | |
| Barbara Fiacco | Mary Beth Noonan | |
| Katherine Fick | Matthew Pearson | |
| Mareesa Frederick | Mark Schuman | |
| Stephanie Harris | Steve Sheldon | |
| Wendell Harris | Sean Seymour | |
| Andrew Lagatta | John Skenyon | |
| Christy Lea | Stephen Timmins | |
| Kalun Lee | Hema Viswanathan | |

<u>The 2007 version</u>

| | | |
|---|---|---|
| Aaron Barlow | Joshua Masur | John Schneider |
| Dave Bennett | Clifton McCann | Mark Schuman |
| Elaine Hermann Blais | Tim Meece | Jeff Sheldon |

| | | |
|---|---|---|
| Walter Bookhardt | Heather Mewes | John Skenyon |
| Scott Breedlove | Joe Miller | Steve Swinton |
| Patrick Coyne | Kenneth Mitchell | Tim Teter |
| John Crossan | John Moran | Kurt Van Thomme |
| Elizabeth Day | Jeff Nichols | David Todd |
| Conor Farley | Scott Pivnick | Michael Valek |
| John Hintz | Mirriam Quinn | Alastair Warr |
| Scott Howard | Amber Rovner | Adam Wichman |
| Kirby Lee | Michael Sacksteder | Daniel Winston |
| Gregory Lyons | John Scheibeler | Steven Zeller |

The 2012 version

| | |
|---|---|
| Matthew Blackburn | Steve Swinton |
| Elaine Blais | Lynn Tyler |
| Carrie Beyer | Jennifer Vein, Smr. Assoc. |
| Gary Buccigross | Jose Villareal |
| Brian Butler | Steven Zeller |
| Justin Cohen | |
| Danielle Coleman | |
| Craig Countryman | |
| Tom Davison | |
| David DeBruin | |
| Evan Finkel | |
| Glenn Forbis | |
| Nicolas Gikkas | |
| Aleksander Goranin | |
| Angie Hankins | |
| Ben Hanrahan | |
| Ben Hodges | |
| Lisa Kattan | |
| William Lenz | |
| Greg Lewis | |
| Robert Matthews | |
| John Moy | |
| Paul Overhauser | |
| Ajeet Pai | |
| John Pinkerton | |
| Scott J. Pivnick | |
| William Poynter | |
| Woody Pollack | |
| Joe Richetti | |
| Spencer Ririe | |
| John Skenyon | |
| Laura Smalley | |
| Andrew Stein | |