**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

Defendant.

---

**MDX MEDICAL, INC.'S OBJECTIONS PURSUANT TO *Fed. R. Civ. P.* 72(a) TO MAGISTRATE JUDGE BOLAND'S ORDER DATED JANUARY 3, 2014 IMPOSING DISCOVERY SANCTIONS AND ORDER DATED APRIL 30, 2014 DENYING RECONSIDERATION**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx") hereby submits these objections pursuant to Fed. R. Civ. P. 72(a) to Magistrate Judge Boyd N. Boland's Order dated January 3, 2014, imposing discovery sanctions ("Sanctions Order"; Dkt. # 711) and his Order dated April 30, 2014, denying MDx's motion for reconsideration and a hearing ("Reconsideration Order"; Dkt. # 784).[1] For the following reasons, MDx respectfully requests that these objections be sustained and that the Court enter an Order reversing the Sanctions Order.

## I. SUMMARY OF ARGUMENT

Without an evidentiary hearing or oral argument, Magistrate Judge Boland has imposed a monetary sanction on counsel for Defendant MDx for failure to comply with an Order

---

[1] This Court ordered that MDx's time to file objections to the original Sanctions Order was extended until 10 days after the date of the Reconsideration Order. (Dkt. # 724).

Compelling Discovery.[2] His ruling is fundamentally flawed because it misinterprets the relationship between the Northern District of California Patent Local Rules ("Patent Local Rules"), which govern the scope of discovery in this case, and counsel's duty of reasonable inquiry under *Fed. R. Civ. P.* 26(g).

Under the Patent Local Rules, which the parties and the court adopted to govern this case (Dkt. # 784 at 3 n. 1, Dkt. # 34), a plaintiff must file infringement contentions specifying the manner in which its patent was allegedly infringed, and discovery is limited in scope by the infringement contentions. In responding to plaintiff Health Grades's interrogatories, primary counsel for MDx relied on the mode of infringement specified in Health Grades's Infringement Contentions, and searched only for information relevant to that mode of infringement. Counsel for MDx provided the search queries to Health Grades, which made no objection that they were insufficient until much later. After the close of fact discovery, a subsequent search of MDx's files turned up other information outside the scope of the Infringement Contentions, that MDx immediately turned over to Health Grades, and that Health Grades now contends is evidence of a different mode of alleged infringement.

Sanctions are unwarranted because the good faith reliance of MDx's counsel on Health Grades's Infringement Contentions is not only reasonable, as required by *Fed. R. Civ. P.* 26(g), but dictated by the purpose of the Patent Local Rules to control and focus the scope of discovery in patent infringement cases. The Magistrate Judge's finding that counsel acted in bad faith – made without hearing argument or testimony – is contrary to all of the evidence in the record and rests entirely on hindsight. For those reasons, the ruling imposing sanctions should be vacated.

---

[2] While the amount of the monetary sanction has not been set, we are advised that Health Grades intends to request $182,353 in attorneys' fees and other expenses.

## II. THE MAGISTRATE JUDGE'S RULINGS

### A. Factual Background and Procedural History

This is a patent infringement case involving MDX's website, www.vitals.com, that provides information about physicians. Health Grades, Inc. ("Health Grades") has accused the website of infringing U.S. Patent No. 7,752,060 ("the '060 patent"). The '060 patent generally relates to websites that allow users to request information on a healthcare provider, in response to which specific data obtained from specific sources is accessed, and a report on the healthcare provider is created. Every claim of the '060 patent requires (1) specific data received from the healthcare provider; and (2) the same data verified by the healthcare provider.

The parties agreed that they would be governed by the Patent Rules of the Northern District of California. (Dkt. # 720 (Stimpson Dec.) ¶ 4). To channel and limit discovery, Patent L.R. 3-1(b) requires that a plaintiff submit Infringement Contentions which identify "for each asserted claim each accused apparatus, product, device, process, method or other instrumentality ('Accused Instrumentality') of each opposing party of which the party is aware," and directs that "this identification be as specific as possible." Pursuant to L.R. 3-1(b), Health Grades submitted the following infringement contention ("Health Grades Infringement Contentions"):

> MDx receives the healthcare provider-verified information from healthcare providers. MDx's website provides doctors with the ability to send information to MDx. For example, MDx's website provides many opportunities for doctors to edit their own profiles.

(Dkt. # 720-1 (Stimpson Dec.) ¶ 6).

Health Grades served its Interrogatory No. 2, which provided:

> With respect to any version of MDx's Accused Products, using a claim chart, state in detail MDx's bases for any assertions of non-infringement of the patent in suit on a claim-by-claim, element-by-element basis. Your answer should include a statement of MDx's interpretation of each claim element, a statement whether MDx's Accused Products provide(s) such an element or an equivalent and, if not,

> an explanation how MDx's Accused Products operate or function differently than the claim element and a particularized statement why a component, feature or function of Accused Products is not a substantial equivalent of the pertinent claim element.

After MDx responded, Health Grades moved to compel more complete answers to this interrogatory, and on April 26 2012, Magistrate Judge Boland ordered MDx to "state for each claim element whether MDx's Accused Products provide such an element or an equivalent and, if not [to] explain how MDx's Accused Products operate or function differently than the claim element." (Dkt. # 192 (Order to Compel) at 2).

Pursuant to the Order, in May 2012 MDx provided a detailed Supplemental Response, including the following supplemental response to Interrogatory # 2:

> **Based on the Health Grades Infringement Contentions** . . . No physician has ever entered and/or modified any of the following information: age, years in profession, years in practice, or publications. . . . MDx currently has no knowledge of any physician who has entered and/or modified three or more of the [provider-verified information]. (emphasis added)

(Dkt. # 632-1 at 1 and 3). In preparing this response, MDx and its counsel relied on the scope of the Infringement Contentions, which limited the alleged infringement to direct editing by physicians of their own profile through the website. In reliance on the Infringement Contentions, MDx did not search for instances in which physicians had submitted information by fax or email and requested that MDx edit the physician's profile. (Dkt. # 720 (Stimpson Dec. ¶¶ 12-13).

MDx was transparent. In May 2012 it provided Health Grades with the search queries it had run. Health Grades made no objection at that time. (Dkt. # 720-1 (Stimpson Dec.) ¶¶ 9, 20-24). After receiving the queries, Health Grades deposed the MDx employees responsible for the search. (Dkt. # 720-1 (Stimpson Dec.) ¶ 11). No objection was made based on the depositions.

After the close of fact discovery, MDx moved in November 2012 for summary judgment of non-infringement, contending that Health Grades had no evidence that physicians had entered

or modified three or more items of provider-verified information in the manner specified by the Infringement Contentions. (Dkt. # 368 at 7; Dkt. # 711 at 3).

In September 2013, at the request of Health Grades's counsel, MDx re-ran the queries it had used to respond to Interrogatory No. 2, together with a new query to determine the number of physicians registered on the website. When run together, they disclosed an anomaly – there were more edited profiles than there were physicians registered to use the website directly. Health Grades's counsel asked about the discrepancy, and when MDx followed up, it learned that the total number of edited profiles included those where a physician submitted information to MDx by email or fax and MDx did the editing. (Dkt. # 720 (Stimpson Dec.) ¶¶ 14-15). As soon as MDx realized this, it informed Health Grades' counsel, produced the newly discovered documents, and withdrew its summary judgment motion. (Dkt. # 720 (Stimpson Dec. ¶ 26-27).

### B. The Sanctions Order

On January 3, 2014, Magistrate Judge Boland entered the Sanctions Order without a hearing or oral argument. (Dkt # 711). He found that, based on MDx's subsequent discovery of edits made in response to physician emails, that MDx's Supplemental Response to Interrogatory # 2 was "patently false." (*Id.* at 3-4). He concluded that MDx's counsel had not made the reasonable inquiry required by Fed. R. Civ. P. 26(g) by not having directed MDx to search for all instances where physicians had requested edits of three or more data elements by fax or email. (*Id.* at 5-6). He directed MDx to run the necessary search queries, and, as a sanction, he awarded Health Grades its expenses, including attorney's fees, in connection with the initial Motion to Compel, the withdrawn Summary Judgment Motion and the Sanctions Motion. (*Id.* at 10-11).

The Sanctions Order does not address *In re Byrd*, 927 F.2d 1135 (10th Cir. 1991), which sets out the Tenth Circuit's standard for imposing sanctions on counsel for an incomplete or

inaccurate discovery response. Nor does it discuss the effect of the Patent Local Rules in limiting the scope of Health Grades's interrogatories.[3]

### C. <u>The Reconsideration Order</u>

MDx moved for reconsideration and a hearing on January 17, 2014. (Dkt. # 720). The Reconsideration Motion argued that counsel for MDx had made the reasonable inquiry required by *Fed. R. Civ. P.* 26(g) because Northern District of California Local Patent Rule 3.1, which the parties had stipulated to follow, limited the scope of discovery by the scope of Health Grades's Infringement Contentions, and those Infringement Contentions in turn limited the alleged infringement to direct editing by physicians of their profiles through the MDx website, and did not include indirect editing through fax or email requests to MDx. In support, MDx cited previously-cited decisions from other jurisdictions on the scope of discovery under the Local Patent Rules, as well as acquiescence by Health Grades in the scope of the search actually conducted to prepare MDx's Supplemental Response. The Supplemental Response to Interrogatory No. 2, argued MDx, was in part true, and the remainder inaccurate in good faith reliance on Health Grades's Infringement Contentions.

On April 30, 2014, Magistrate Judge Boland denied the Motion for Reconsideration, again without hearing or oral argument. (Dkt. # 784). He concluded that the scope of the Infringement Contentions was irrelevant, and reliance on them by counsel unreasonable, because his Order Compelling Discovery called for more information than the Infringement Contentions required. (*Id.* at 3-4). He also found that counsel's profession of good faith was "incredible" because MDx had relied on its Supplemental Response to Interrogatory No. 2 to support the

---

[3] Relying on an exhibit submitted by Health Grades, the Sanctions Order incorrectly states that MDx had not verified its interrogatory answers, a matter that could have been clarified if oral argument had been permitted.

withdrawn Summary Judgment Motion. As the Magistrate Judge saw it, MDx had disingenuously used the Supplemental Response that physicians did not make edits through the website to conceal its knowledge that physicians did request edits by fax or email. (*Id.* at 5).

The Reconsideration Order made these conclusions about credibility without a hearing, in disregard of the facts that MDx had disclosed its search queries to Health Grades, that MDx had voluntarily run the query that unearthed the email/fax requests long after fact discovery had closed, and that MDx had immediately disclosed the newly discovered information and withdrawn its summary judgment motion.

In addition, the Reconsideration Order ignored the undisputed position of both parties that MDx's local counsel should not be sanctioned. It did not discuss MDx's statement that local counsel had not been involved. (Dkt. # 720 at 12). Nor did it mention Health Grades's concession that no sanctions should be imposed on local counsel. (Dkt. # 764).

## III. MDX'S COUNSEL MADE A REASONABLE INQUIRY BEFORE CERTIFYING THE SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2

### A. The Standard of Review

The district judge must modify or set aside a non-dispositive pretrial matter decided by the magistrate judge when it is shown that the magistrate judge's order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "Under the clearly erroneous standard, 'the reviewing court [must] affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.''" *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006). Issues of law are subject to plenary review. *See Haines v. Ligett Group*, 975 F.2d 81, 91 (3rd Cir. 1992); *Reyes v. Snowcap Creamery, Inc*., 898 F. Supp. 2d 1233, 1234 (D. Colo. 2012). The contrary to law standard applies to the Magistrate Judge's failure to apply the Patent Local Rules as limiting the scope of required discovery, and the clearly

erroneous standard applies to the Magistrate Judge's findings with respect to counsel's knowledge and intentions.

**B. MDx Properly Relied In Good Faith On The Infringement Contentions**

*Fed. R. Civ. P.* 26(g)(1)(A) requires that counsel sign each discovery response to certify, *inter alia*, that to the best of counsel's "knowledge, information and belief, formed after reasonable inquiry . . . it is complete and correct as of the time it is made." It follows that counsel cannot be sanctioned for violating Rule 26(g) by an inaccurate or incomplete discovery response unless the court finds that, at the time the response was made, counsel had not made reasonable inquiry of the client with respect to the response's accuracy and completeness. *In re Byrd*, 927 F.2d 1135, 1137 (10th Cir. 1991), *following Insurance Benefit Adm'rs, Inc. v. Martin,* 871 F.2d 1354, 1360 (7th Cir. 1989); *see also S2 Automation LLC v. Micron Technology, Inc.*, 2012 U.S. Dist. LEXIS 1200097 *99-*100 (D.N.M. Aug. 12, 2012). "The signing attorney is not required to certify the truthfulness of the client's response, only that he made a reasonable effort to ensure that his client provided all responsive documents and information." *Bernal v. All American Inv. Realty, Inc.*, 479 F. Supp.2d 1291, 1334 (S.D. Fla. 2006). The standard is one of the objective reasonableness of counsel's dealing with the client. *In re Byrd*, *supra*. Reasonableness depends, in turn, on the "number and complexity of the issues." *S2 Automation LLC*, 2012 U.S. Dist. LEXIS 1200097 at *99.

Here, the inquiry made by MDx's counsel was reasonable because it was based on the language of Health Grades's Infringement contentions, which limited the scope of Interrogatory No. 2. The Magistrate Judge's Order Compelling Discovery did not change the language of Interrogatory No. 2 or expand its scope. Rather, it directed an answer to Interrogatory No. 2 as it had been posed by Health Grades, in the light of the Infringement Contentions. MDX's

Supplemental Response expressly stated that it was made "based on Health Grades's Infringement Contentions." (Dkt. # 632-1). Health Grades was informed of the scope of the search MDx had conducted and made no objection at the time. Only in hindsight could it appear that MDx should have conducted a broader search.

Here, the reasonableness of the inquiry to MDx, and the verified response, are defined by the claims and Infringement Contentions in the litigation. The purpose of the Patent Local Rules is to facilitate infringement cases by fixing at an early point the plaintiff's allegations of what has been infringed and how. Determining infringement is a two-step process. Before the court can determine as a matter of fact that a patent has been infringed, it must determine as a matter of law what the patent protects. This is a highly technical process that draws on the language of the patent claims and specification, the history of the patent's prosecution, and relevant extrinsic evidence. *See Advanced Fiber Techs. Trust v. J&L Fiber Servs.*, 674 F.3d 1365, 1373 (Fed. Cir. 2012); *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129-30 (Fed. Cir. 2011). Patent Local Rule 3-1 requires the plaintiff patentee to state, at the outset of the case, what it alleges is being infringed and how, so that the defendant is able to respond in discovery with respect to non-infringement. *See Sage Electrochromics, Inc. v. View Inc.*, 2013 U.S. Dist. LEXIS 127598 *4-*5 (N.D. Cal. Sep. 6, 2013). "The purpose behind Rule 3-1 is to require a plaintiff to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Freescale Semiconductor, Inc.*, 2010 U.S. Dist. LEXIS 91281 *4-*5 (N.D. Cal. Apr. 26, 2010); *accord InterTrust Techs. Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 22736 *8 (N.D. Cal. Dec. 1, 2003) ("The purpose of Patent Local Rule 3-1, however, is in fact to be nit-picky, to require a plaintiff to crystalize its theory of the case and patent claims.").

Under the Patent Local Rules, the scope of the defendant's discovery obligation is limited by the scope of the plaintiff's Infringement Contentions. *See Oplus Techs., Ltd. v. Sears Holdings Corp.*, 2013 U.S. Dist. LEXIS 145917, 37-38 (C.D. Cal. Oct. 2, 2013) (plaintiff bears the burden of identifying accused instrumentalities and may not seek discovery regarding others); *Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.*, 2007 U.S. Dist. LEXIS 90457, 8-9 (C.D. Cal. June 25, 2007) ("the Court is persuaded that the preliminary infringement contentions may narrow the scope of required discovery"); *Caritas Techs. Inc. v. Comcast Corp.*, 2006 U.S. Dist. LEXIS 94879, *14-15 (E.D. Tex. 2006) (applying the Eastern District of Texas' parallel local patent rules and holding that the plaintiff "only has the right to discover information regarding the alleged infringing service" that was specifically articulated in the preliminary Infringement Contentions, "not the right to discover information on whether it should assert a claim of infringement regarding other services.").

The key language of the infringement contentions is as follows:

> MDx receives the healthcare provider-verified information from healthcare providers. MDx's **website** provides doctors with the ability to send information to MDx. **For example, MDx's website provides many opportunities for doctors to edit their own profiles**. (emphasis added).

(Dkt. # 720-1 (Stimpson Dec.) ¶ 6; Dkt. # 754 at 3). Because the first sentence merely repeats the claim language, it does nothing to provide notice of Health Grades' position. *See, e.g., Network Caching Tech. LLC v. Novell, Inc.*, 2002 U.S. Dist. LEXIS 26098, *17-18 (N.D. Cal. August 13, 2002) (contention language that "simply mimics the language" of the claim is not notice under Patent Rules). Read in plain English, the second and third sentences address only edits by doctors over the website, and do not provide notice that methods of receiving provider information other than doctors editing their own profiles over the website were alleged by Health Grades to meet this claim element. *Cf. Bender v. Freescale Semiconductor, Inc.*, 2010 U.S. Dist.

LEXIS 91281 *4-*5 (N.D. Cal. Apr. 26, 2010); *InterTrust Techs. Corp. v. Microsoft Corp.,* 2003 U.S. Dist. LEXIS 22736 *8 (N.D. Cal. Dec. 1, 2003).

In view of Health Grades's Infringement Contentions and case law applying the Patent Local Rules, MDx's Supplemental Response to Interrogatory No. 2 was prepared for those instances in which physicians directly revised their profile information on the Vitals.com web portal. It did not include editing of physician profiles by MDx, and it did not include physicians submitting data by fax or email with the request that MDx edit the profile, because neither was alleged to meet this claim element in the Infringement Contentions. (Dkt. # 720-1 (Stimpson Dec.) ¶¶ 12-13). MDx properly did not search for discovery with respect to an alleged mode of infringement that HG did not raise. *See Caritas Techs. Inc.,* 2006 U.S. Dist. LEXIS 94879 at *15. MDx's good faith is made plain by its express statement that the Supplemental Response "based on Health Grades's Infringement Contentions" (Dkt. # 632-1) and its disclosure of its search queries. (Dkt. # 720-1 (Stimpson Dec.) ¶ 9).

That indirect editing is a separate mode of alleged infringement is confirmed by the deposition of Dr. Philip Greenspun, Health Grades's own expert, taken after the Sanctions Order. Dr. Greenspun testified that MDx editing the physician profile using emails and faxes was a different and distinct method from direct editing by the physicians. Even after learning that physicians had submitted information by email and fax for editing by MDx, he rated that information as being of minimal relevance. (Dkt. # 720-1 (Stimpson Dec.) ¶ 25).

Contrary to the Reconsideration Order (Dkt. # 784 at 3-4), the Order Compelling Discovery did not expand MDx's discovery obligations beyond the scope of the Infringement Contentions, for three reasons. First, the key language of the Order Compelling Discovery, directing MDx to "state for each claim element whether MDx's Accused Products provide such

an element or equivalent and, if not explain how MDx's Accused products operate or function differently than the claim element," (Dkt. # 192 at 2; Dkt. # 784 at 4), is identical to the language of Interrogatory No. 2. The Order Compelling Discovery simply required MDx to provide a more complete answer to the question Health Grades had already asked, and the Patent Local Rules limited that question by the scope of Health Grades's Infringement Contentions. Second, Fed. R. Civ. P. 37(a)(3)(B)(iii) does not contemplate a magistrate judge expanding the subject question. Third, Health Grades's silence after it received both the answer and MDx's search queries demonstrates that Health Grades, like MDx, understood that its interrogatory was limited by the scope of the Infringement Contentions.

In sum, MDx made a reasonable inquiry before making its Supplemental Response to Interrogatory No. 2 because it interpreted Health Grades's Infringement Contentions as being limited to direct, online edits of their profiles by physicians and therefore confined its search to evidence of such direct edits. Under the Patent Local Rules that the parties had agreed to be bound by, MDx was entitled to rely on the Infringement Contentions and had no obligation to search for evidence of unidentified potential modes of infringement that Health Grades had not identified. It will defeat the salutary purpose of the Patent Local Rules if counsel is sanctioned for not trying to answer a question that had not been asked.

### C. Hindsight Does Not Establish That MDx's Counsel Acted In Bad Faith

In his Reconsideration Order, Magistrate Judge Boland concluded that MDx's counsel had acted in bad faith as part of a long term plan to conceal that MDx was editing physician profiles based on information the physicians submitted by fax and email. The Magistrate Judge reasoned that MDx argued in its Summary Judgment Motion that "Health Grades has no evidence that any healthcare provider has ever provided even two of the required data elements"

rather than submitting an affidavit that "no physician had entered three or more categories of provider-verified information." (Dkt. # 784 at 5). From this, he inferred that MDx's counsel deliberately avoided looking for evidence of email or fax submissions and insinuated without any basis that MDx's counsel may have been "fully aware" of that information. (*Id.*).

These conclusions must be set aside as clearly erroneous because they are contradicted by the undisputed evidence in the record. At the time of the Summary Judgment Motion in November 2012, MDx's counsel did not know of the fax/email submissions and had not searched for them because Health Grades's Infringement Contentions limited its claims to direct edits through the website. (Dkt. # 720-1 (Stimpson Dec. ¶¶ 12-13). Counsel only learned of them nine months later, through chance. All of its May 2012 queries were rerun in September 2013, as part of MDx's obligation to update discovery. At that time, a year after the close of fact discovery MDx ran an additional query as a courtesy to Health Grades's counsel – the number of physicians registered with the website. This new query disclosed that there had been more "webedits" than there were physicians registered on the site. Follow-up inquiry by MDx disclosed that the discrepancy was based on the number of edits made by MDx in response to fax and email submissions from doctors, rather than directly. As soon as counsel learned of them MDx produced the underlying documents and withdrew the summary judgment motion. (Dkt. # 720-1 (Stimpson Dec. ¶¶ 14-15, 26-27). If counsel for MDx had been trying all along to conceal the emails and faxes, they never would have agreed to run the new query that would disclose them.

The Stimpson Declaration has not been impeached by cross-examination. Nor was its narrative and chronology challenged by Health Grades. *See* Dkt. # 764. Nor is it intrinsically implausible. MDx's disclosure of its queries to Health Grades in May 2012, its willingness to run

the additional query proposed by Health Grades in September 2013, and its prompt withdrawal of the Summary Judgment Motion thereafter demonstrate unequivocally that counsel acted at all times with candor, in good faith reliance on the scope of Health Grades's Infringement Contentions. In short the Magistrate Judge's conclusion rests only on unfounded speculation and hindsight. His findings that counsel evaded full disclosure of the truth in bad faith is unsupported by evidence and should be set aside.

## IV. MDX MADE NO PATENTLY FALSE STATEMENTS

The Magistrate Judge's conclusion in the Sanctions Order that MDx's Supplemental Response was "patently false" in light of the subsequent disclosure of email and fax editing requests (Dkt. # 711 at 3) is also clearly erroneous. The first sentence the Magistrate Judge found to be "patently false" is, "No physician has ever entered and/or modified any of the following information: age, years in profession, years in practice, or publications." That sentence is true. Age is never edited by the physician in the web portal, either directly or indirectly. HG points to entry of a birth date while logging into the physician web portal, but that physician entry is never used to calculate age. Years in practice and years in profession are most closely represented in the Vitals website as "years of experience." MDx calculates years of experience, and the physician can never directly change years of experience. (Dkt. # 720-1 (Stimpson Dec.) ¶¶ 16-17).

The second sentence addressed in the Sanctions Order is "MDx currently has no knowledge of any physician who has entered and/or modified three or more of the [provider verified] information." That sentence is also accurate, with respect to counsel, who was not aware of the emails and faxes at the time, and who had not run queries that would have detected the email and fax submissions because of counsel's good faith belief, based on the Infringement

Contentions, that it was not necessary to search for such submissions. (Dkt. # 720-1 (Stimpson Dec. ¶¶ 18-19). As noted above, Health Grades knew at the time what queries had been run, knew at the time that MDx's Supplemental Response was based on the Infringement Contentions, but raised no issue that would have informed MDx that counsel's good faith position was in dispute.

## V. LOCAL COUNSEL SHOULD NOT BE SANCTIONED

For the foregoing reasons, neither MDx's primary counsel nor local counsel should be sanctioned. Moreover, the imposition of sanctions on local counsel is clearly erroneous and an abuse of discretion in light of the undisputed fact that local counsel had no involvement in the discovery decisions at issue and Health Grades agreed that they should not be sanctioned.

## CONCLUSION

For the foregoing reasons, MDx respectfully requests that the Court grant a hearing on its objections, sustain them and set aside the Magistrate Judge's award of sanctions.

Dated: May 14, 2014

Respectfully submitted,

*s:/Scott D. Stimpson*

Scott D. Stimpson
Trent S. Dickey
David C. Lee
Vincent M. Ferraro
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail: sstimpson@sillscummis.com
E-mail: tdickey@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: vferraro@sillscummis.com

Terence Ridley, Atty. No. 15212
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: (303) 244-1800
Fax: (303) 244-1879
E-mail: ridley@wtotrial.com

Attorneys for Defendant
MDx Medical, Inc. d/b/a VITALS.COM

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2014, I electronically filed the foregoing **MDX MEDICAL, INC.'S OBJECTIONS PURSUANT TO *Fed. R. Civ. P.* 72(a) TO MAGISTRATE JUDGE BOLAND'S ORDER DATED JANUARY 3, 2014 IMPOSING DISCOVERY SANCTIONS AND ORDER DATED APRIL 30, 2014 DENYING RECONSIDERATION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com
- **Gregory B. Kanan**
  gkanan@lrrlaw.com
- **Kris John Kostolansky**
  kkosto@lrrlaw.com
- **Adam Lee Massaro**
  amassaro@lrrlaw.com
- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com
- **Trent S. Dickey**
  tdickey@sillscummis.com
- **David Chunyi Lee**
  dlee@sillscummis.com
- **Vincent Marc Ferraro**
  vferraro@sillscummis.com
- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

*s:/Vincent M. Ferraro*