IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES' RESPONSE TO MDx's FED R. CIV. P. 72(A) OBJECTIONS TO MAGISTRATE JUDGE BOLAND'S SANCTIONS ORDER [DOC. #789]**

---

Plaintiff Health Grades, Inc. ("Health Grades"), by its counsel, respectfully submits its response to MDx Medical, Inc.'s ("MDx") Fed. R. Civ. P. 72(a) Objections to Magistrate Judge Boland's Sanctions Order [Doc. #789].

## INTRODUCTION

On April 26, 2012, Judge Boland ordered MDx to supplement its response to Health Grades' Interrogatory No. 2 and state whether the Accused Products[1] contained each claim element [Doc. #192 at p. 2]. MDx did not comply when it submitted its supplemental response ("Supplemental Response") on May 10, 2012 [Doc. #632-1]. Relying upon the information contained in its Supplemental Response, MDx moved for summary judgment on November 2, 2012 [Doc. #367/368]. MDx argued that it did not practice the provider verified-information

---

[1] Health Grades' First Set of Interrogatories defined "'Accused Products' as any system, including software, hardware and/or network architecture, that is capable of performing a search for information relating to healthcare providers . . . including without limitation all versions of the www.vitals.com website" [Doc. #126-3].

("Physician Information")[2] elements of claims one and fifteen of Health Grades '060 Patent [*id*.] Judge Boland found the Supplemental response and "arguments made in support of Summary Judgment . . . based on that supplemental response [were] . . . patently false" [Doc. # 711 p. 3]. Judge Boland further concluded that MDx counsel's "impermissible sleight-of-hand . . . [was] sanctionable" [Doc. #784 pp. 5-6] and "MDx's counsel . . . failed completely in its duty to assure that Interrogatory No. 2 was answered directly and without evasion . . . ." [Doc. #711 p. 9].

MDx counsel suggests that the Local Patent Rules for the Northern District of California ("California Local Rules") give MDx license to behave as it did because Health Grades' infringement contentions set the scope of discovery and limited this case to information provided by physicians through vitals.com portal. Health Grades' infringement contentions for the Physician Information claim elements state:

> MDx receives the healthcare provider-verified information from healthcare providers. MDx's website provides doctors with the ability to send information to MDx. For example, MDx's website provides many opportunities for doctors to edit their own profiles.

[Doc. #653-3, pp. 42-44]. MDx counsel argues that "for example" means "only." Judge Boland, however, found this position to be "incredible" and "MDx counsels' strained reliance on the California local rules is unpersuasive . . . ." [Doc. #784 p. 4].

The record confirms MDx received massive amounts of Physician Information "from healthcare providers," as alleged by Health Grades, in at least the following ways: (1) direct

---

[2] The Provider Information element of claims 1 and 15 of the '060 Patent require: "Accessing [or access] healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: Specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies. . . ."

edits by physicians through the vitals.com portal; (2) physicians who click the "Approve" buttons on the windows within the portal, including approval of multiple Physician Information fields; (3) collection of Physician Information, e.g. vitals.com requires every physician to verify their age when signing onto the site; and (4) thousands of fax and spreadsheets forms sent to MDx by physicians, as requested by MDx [Doc. #632 p. 5-8; Doc. #664 pp. 2-4; Doc. #755 p. 9]. Had MDx counsel conducted the required "reasonable inquiry," counsel would have located and disclosed this information when MDx submitted its Supplemental Response and hopefully never tried to obtain summary judgment predicated upon "patently false" discovery responses.

In sum, MDx counsel failed to meet their discovery obligations, Judge Boland's Sanctions Order is not clearly erroneous or contrary to law and should be affirmed in its entirety.

## BACKGROUND

On January 24, 2012, Health Grades filed a motion to compel to address MDx's deficient response to Interrogatory No. 2 [Doc. #126-3]. The Court granted the motion and ordered MDx to: "state for each claim element whether MDx's Accused Products provide such an element or an equivalent and, if not, [to] explain how MDx's Accused Products operate or function differently than the claim element" [Doc. #192 p. 2]. MDx's Supplemental Response only provided information regarding certain percentages of physicians who have "entered and/or modified each data field" [Doc. #632-1 p. 3]. MDx subsequently filed a Motion for Summary Judgment [Doc. #367/368] and argued "Health Grades has no evidence that any healthcare provider has ever provided even two of the required data elements, let alone three" [*id* at p. 2].

After MDx provided supplemental data regarding the edits and/or modifications to the fields on the Accused Products on September 13, 2013, Health Grades noticed discrepancies in

the data that showed the number of physicians who registered were significantly less than the number of physicians who have edited their profiles [Doc. #632 p. 9]. On September 18, 2013, Health Grades emailed MDx counsel to call to their attention the discrepancy between the number of physicians who registered on the site and the number of physicians who edited their profiles [Doc. #632-5, p. 4-5]. Despite being on notice of the discrepancy for over one month, if not longer, MDx never addressed it until after MDx received notice of Health Grades' intent to supplement the record on October 15, 2013 [Doc. #632 p. 9].[3]

Health Grades subsequently determined that there were multiple categories of withheld information that confirmed MDx and its counsel had not conducted a "reasonable inquiry" before or after submitting the Supplemental Response and had filed summary judgment knowing (or willfully ignoring) material facts adverse to MDx's summary judgment arguments. These facts were within MDx's and its counsels' control, and subject to disclosure by Court Order [Doc. #632 pp. 4-5]. One of the identified categories in Health Grades' sanctions motion ("Sanctions Motion") were the queries that MDx could have run that would show physicians who edited three or more of the Physician Information fields, but MDx chose not to run these queries [Doc. #632 pp. 2-3]. MDx's Second Supplemental Response[4] reveals at least "10,785" physicians "who have entered and/or modified, directly through the . . . portal on vitals.com . . . three or more of the following . . . [Physician Information fields]" [Doc. #755-3 p. 5].

---

[3] Health Grades supplemented the record in preparation for the oral arguments set for October 25, 2013 on MDx's summary judgment motion [Doc. #367/368] [Doc. #618]. Oral argument did not occur on [Doc. #367/368] because MDx counsel withdrew the motion for summary judgment after Health Grades' counsel sought to confer over filing the Sanctions Motion. (*Compare* Exhibit A, October 16, 2013 email string, *with* Exhibit B, October 17, 2013 email string [Doc. #367/368].")

[4] Judge Boland required MDx to supplement its response to Interrogatory No. 2 and run the necessary queries to fully answer the interrogatory [Doc. #711 p. 12]. MDx provided a Second Supplemental Response Jan. 24, 2014.

Another example is information regarding MDx's Approval button on vitals.com. This button requires the physician to "Approve" the modifications and edits to data fields, including approval of gender, honors, specialties, and other Physician Information fields [Doc. #632 pp. 5-6]. The action of physicians clicking the "Approve" buttons establishes another way that MDx's Accused Products practice the claim element. An excerpt from an a Microsoft Excel file MDx produced on April 29, 2014 [MDx0143118], reveals that at least 12,553 physicians clicked the "Approve" button for all the different windows within the physician portal (Exhibit C).[5]

Health Grades learned—based on approximately 13,000 documents MDx produced during the Sanctions Motion briefing—that MDx had solicited and received verification of the information in its database from thousands of physicians [Doc. #664 p. 2]. These documents showed that MDx routinely used a standard form that it faxed to physicians with the instruction to: "Please review the summary below and, if any changes are needed, you can simply update online by clicking on 'login: physician' . . . at www.vitals.com/fax. Or, make corrections on the attached sheet and fax back to us . . . ." ("Fax Verification Form") [*id*]. The Fax Verification Form allows the physician to verify the following Physician Information fields: years in practice, languages spoken, specialties, years in profession, and professional appointments [*id*]. 11,209 of the Verification Forms produced showed MDx had received three or more of the types of Physician Information identified above from physicians [*id.* at 3]. MDx's production also revealed that MDx solicits Fax Verification Forms from physicians [*id.* at p. 3-4].

---

[5] MDx0143118 was only produced after Health Grades conferred with MDx over failing to provide any "Approval" button queries in the Second Supplemental Response.

MDx's productions also revealed it had in its possession an Excel spreadsheet form ("Excel Verification Form")[6] that listed Physicians Information fields: "age," "gender," "years in profession," "specialty," and "languages spoken" and allowed physicians to use the form to correct, modify, or add information [Doc. #755 p. 9]. When physicians needed to make changes, including the five identified above, MDx would send the Excel Verification Form with an email, instructing the individual to "fill in the chart with details for all doctors associated with [the] group/practice and send it back to us . . . ." [*id*]. Thus, MDx's Supplemental Response failed to disclose three significant sources of factual information that MDx had been ordered to produce pursuant to court order, any of which would have eviscerated its summary judgment motion.

**Sanctions Order:** In addition to finding that MDx's Supplemental Response and Summary Judgment arguments were "patently false," Judge Boland concluded that: "MDx's arguments and attempted defense is meritless," there was "overwhelming evidence . . . that MDx failed to fulfill its obligations under Fed. R. Civ. P. 33 and my Order," "[t]he conduct of MDx and its counsel has seriously interfered with the judicial process" [Doc. #711 pp. 3-4, 6, 9]. Judge Boland granted Health Grades, among other things, fees incurred related to certain motions and filings that resulted from the improper conduct and assessed the fees against MDx counsel solely [*id.* at p. 11]. Judge Boland denied MDx's Motion for Reconsideration for the Sanction Order [Doc. #720], making additional findings, including that MDx counsel crafted an argument that was "misleading, if not an outright falsehood, when made, and the care with which the

---

[6] Health Grades first referenced the Excel forms during the Motion for Reconsideration briefing [Doc. #755 p. 9] because it did not receive the forms from MDx until after filing its Reply in Support of Motion for Sanctions.

statements . . . [were] presented makes the lack of candor clear," and "MDx counsels' strained reliance on the California local rules is unpersuasive . . ." [Doc. #784 pp. 4-5].

I.     THE SANCTIONS ORDER SHOULD BE AFFIRMED

Under Fed. R. Civ. P. 72(a), the District Court's review of a magistrate judge's sanctions order requires "defer[ence] to the magistrate judge's ruling unless it [was] clearly erroneous or contrary to law." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997). The clearly erroneous standard applies to factual findings. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988). Under this standard, "the reviewing court [must] affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* The "contrary to law" standard permits "plenary review as to matters of law." *Ankeney v. Zavaras*, 2012 U.S. Dist. Lexis 8642, at *23-24, (D. Colo. Jan. 25, 2012). "[B]ut the Court will set aside a Magistrate Judge's order only if it applied the wrong legal standard or applied the appropriate legal standard incorrectly." *Id*

    A.     <u>MDx Counsel Failed To Meet Their Obligations.</u>

Sanctions are appropriate against attorneys when they fail to "conduct[] [a] reasonable inquiry into the facts and law supporting the [discovery response]." *In re Bryd, Inc.,* 927 F.2d 1135, 1137 (10th Cir. 1991)[7]; Fed. R. Civ. P. 26(g). Judge Boland's findings that MDx counsel failed to conduct a "reasonable inquiry" was not clearly erroneous or contrary to law.

        1.   MDx's Response to Interrogatory No. 2 was False and Misleading.

---

[7] MDx counsel claims Judge Boland did not address the standard set out in *In re Bryrd*, which they alleged governs when counsel can be sanctioned [Doc. #789 p. 5]. *In re Bryrd* dealt with Rule 11 sanctions. It did not set out a special standard or test. The focus under *In re Bryrd,* 927 F.2d at 137 is on whether MDx counsel conducted a "reasonable inquiry," the same analysis Judge Boland performed, *see, e.g.* [Doc. #711 pp. 6, 11].

Judge Boland concluded that the following statements by MDx are "misleading, if not an outright falsehood, when made, and the care with which the statements are presented makes the lack of candor clear" [Doc. #784 p. 5]:  (1) "No physician has ever entered and/or modified any of the following information:  age, years in profession, years in practice, or publications;" and (2) "MDx currently has no knowledge of any physician who has entered and/or modified three or more of the [physician verified] information" [Doc. #632-1].  Judge Boland further concluded that "the tortured fact relied on by MDx is that no physician has made . . . edits [to three or more Physician Information fields] 'directly through the web portal' . . . Thousands of such edits have been made, however, by 'physicians submitting data by fax or email with the request that MDx edit the profile' . . . The importance of this fact for infringement purposes is clear--MDx practices the particular claim element" [Doc. #784 at p. 1].

The record supports these conclusions.  Regarding the first statement, MDx requires all physicians to enter their dates of birth when signing onto vitals.com [Doc. #632 p. 7]—a fact MDx does not dispute.  MDx's cover letter enclosing its Excel Verification Form states that "sections that are titled in red are required data in order for our system to locate and change the appropriate profile.  Please be sure to include that data" [Doc. #755 p. 9].  "Birth Date" is a field titled in red [*id*].  Regarding the second statement, the information to which MDx had access shows at least 11,209 Fax Verification Forms where at least three of the claim elements had been verified [Doc. #663-3].  And, MDx's Second Supplemental Response reveals at least "10,785" physicians "who have entered and/or modified, directly through the . . . portal on vitals.com . . . three or more of the following . . . [Physician Information fields]" [Doc. #755-3 p. 5].

Judge Boland also concluded that (1) a "reasonable inquiry by MDx's lawyers certainly would have disclosed the falsehood (if, in fact, the lawyers were not fully aware);" and (2) "[I]t is apparent to me that counsel, and not its client, drew the fine distinction and decided not to reveal the edits made by 'physicians submitting data by fax or email' based on Health Grades infringement contentions and the California Local Rules. As I have said, that was an impermissible sleight-of-hand and is sanctionable" [Doc. #784 pp. 5-6]. There is record support that MDx counsel failed to conduct a reasonable inquiry, and, as reflected in MDx's briefing [Doc. #784 pp. 8-9; Doc. #770 p. 5], it was MDx counsel that drew the fine distinction.

        2.   MDx Counsel Fails to Address Multiple Findings Supporting the Sanctions Order.

MDx counsel seeks to undermine the sanctions order by focusing narrowly on Judge Boland's decision to reject the California Local Rules argument as unreasonable. However, counsel ignores the fact that Judge Boland's decision to award Health Grades expenses and attorneys' fees was based on "overwhelming evidence . . . that MDx failed to fulfill its obligations under Fed. R. Civ. P. 33 and my Order [Doc. #192] compelling discovery to answer Interrogatory No. 2 **fully and truthfully** after **a reasonable inquiry** of the information available to it" [Doc. #711 p. 6] (emphasis in original). Judge Boland relied upon a series of findings when determining that fees and expenses should be assessed against MDx's counsel solely, including that: (1) "MDx's counsel had an independent duty under Federal R. Civ. P. 26(g) to assure the propriety of the interrogatory answer 'after a reasonable inquiry,' which duty it failed to satisfy . . . ."; (2) "[MDx's] counsel intentionally fail[ed] . . . to meet its discovery obligations, even in the face of an order compelling discovery . . . ."; (3) the conduct of "[MDx's] counsel has seriously interfered with the judicial process"; (4) "counsel, not a party, is responsible for the

contents of the motions, including MDx's Motion for Summary Judgment of Non-Infringement [Doc. #367/368]," and (5) "MDx's counsel failed completely in its duty to assure that Interrogatory No. 2 was answered directly and without evasion in accordance with information that MDx possessed after due inquiry" [Doc. #711 pp. 9-11].  The following non-exhaustive list of facts establish that Judge Boland's finding that MDx counsel failed to meet their discovery obligations was not clearly erroneous or contrary to law:

    1.  MDx counsel was aware of the fax verification program at least four months before MDx filed its motion for summary judgment [Doc. #664-5].  MDx Chief Technology Expert, Larry West, confirmed there was a fax program that allowed "[MDx] to communicate with providers . . . via fax" [Doc. #664-5 p. 262:12-21].  This put MDx counsel on notice of the program; they had an obligation to investigate what this fax program entailed and should have followed up rather than "sticking [their] . . . head[s] in the sand and refusing to look for the answers . . . ." *In re Independent Service Organizations,* 168 F.R.D. 651, 653 (D. Kan. 1996).

    2.  MDx's Corporate Representative confirmed that the ways that the Physician Information element could be satisfied other than through direct edits were well known within MDx:

> Q. [Mr. Kostolansky] The ways in which Physician Information is collected, namely, through faxes, through customer service representative telephone calls and through the provider portal is well-known within Vitals, is it not?
>
> A. [MDx Corporate Representative] It is well-known.  (Exhibit D, May 15, 2014 MDx Rule 30(b)(6) (rough draft) at p. 157: 2-7.)

    3.  Health Grades' expert placed MDx counsel on notice, one month before MDx filed summary judgment, that physicians can verify their information by "either correct[ing] [the Physician Information] via Web forms or if necessary sending an e-mail message in, or *using a contact form* saying this is a problem . . . ." [Doc. #664-5]. (italics added)

    4.  MDx had in its possession "approximately 25,000 emails and/or faxes" relating to physician verification [Doc. #652 p. 8], which included 11,209 Fax Verification Forms where three or more of the claim elements had been verified [Doc. #663-3 ] and the Excel Verification Forms [Doc. #755 p. 9].[8]

---

[8] MDx counsel justifies their improper conduct by claiming that Health Grades' technical expert stated that the submission of information through fax and emails to MDx was a "1 out 10 (1 being least relevant)" [Doc. #789 p. 11].  Dr. Greenspun, however, confirmed that "[i]f you had a really good email, as an example, then you wouldn't have to look to other stuff.  I'm not saying that one has a higher priority than others" [Doc. #720-6. at p. 174:10-13].

     5.  MDx counsel never had MDx "supplement or correct its . . . response to [Interrogatory No. 2] . . . in a timely manner [once it] learn[ed] that in some material respect the . . . response [was] incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e).

In the face of this overwhelming evidence, the claim that MDx counsel allegedly did not discover the faxes and emails until September 23, 2013, does not absolve them of their wrongdoing [Doc. #789 p. 13]. "An attorney for a litigant may not rely on the defense of ignorance of the existence of discoverable documents in the possession of the client unless he establishes that he has made an appropriate inquiry of the client as to the existence of such documents." *Resolution Trust Corp. v. Williams,* 165 F.R.D. 639, 647 (D. Kan. 1996). MDx counsel chose not to conduct an investigation to determine if MDx practiced the claim element other than through direct edits, did not follow up on MDx deposition testimony made in the presence of lead counsel, and did not ascertain basic practices that were "well known" with MDx. MDx counsel has failed to satisfy their obligations and cannot now claim ignorance. *Id.*[9]

     3.  Judge Boland Correctly Rejected the California Local Rules Argument.

MDx counsel argues that Health Grades' claim contentions failed to provide reasonable notice that the Accused Products could satisfy the asserted claims of the '060 Patent in a manner other than by edits through the physician portal [Doc. #789 pp. 9-11]. MDx's claim that the contrary to law standard governs Judge Boland's alleged failure to apply the California Local Rules as limiting the scope of discovery is incorrect [Doc. #789 p. 7]. MDx counsel makes a

---

[9] MDx counsel argues that their wrongdoing should be excused because Health Grades never requested that additional searches be run or objected to the adequacy of the Supplemental Response until conferring about filing the Motion for Sanctions in October 2013. Health Grades—who has no access to MDx's database—was not in any position to know that MDx had provided "patently false" responses [Doc. #711 p. 3]. Health Grades believed that MDx counsel honored their obligations to conduct a "reasonable inquiry," run the necessary searches, review the relevant data and records, and answer the interrogatory "fully." Fed. R. Civ. P. 26(g) & 33(b)(3).

reasonableness argument that is inherently factual.  Judge Boland's analysis regarding the same confirms the factual nature of it, [Doc. #784 p. 4] (concluding MDx counsels' "reliance on the California local rules was unreasonable" and "MDx counsels' argument is . . . incredible . . . ."). MDx counsels' California Local Rules argument was properly rejected.

      First, Health Grades' claim contentions provided MDx counsel reasonable notice that Health Grades contended that the claim element could be satisfied in multiple ways.  The California Local Rules do not "require the disclosure of specific evidence [or] require a plaintiff to prove its infringement case."  *Creagri, Inc. v. Pinnaclife Inc.,* LLC, 2012 U.S. Dist. LEXIS 158540, at * 6, 2012 WL 5389775 (N.D. Cal. Nov. 2, 2012).  The rules require that infringement contentions "must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement" and "to raise a reasonable inference that all accused products infringe."  *Shared Memory Graphics, LLC v. Apple, Inc.,* 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010).  Here, there is no limiting language in Health Grades' infringement contentions that states, or otherwise suggests, that Health Grades was contending that only direct edits through the portal satisfy this claim element [Doc. #653-3, pp. 42-44]. Judge Boland rejected MDx counsel's argument that "for example" referenced in Health Grades' contentions means "only" [Doc. #784 pp. 4-5].  Health Grades' infringement contentions states broadly that (1) "MDx receives the healthcare provider-verified information from healthcare providers," and (2) "MDx's website provides providers with the ability to send information to MDx."  In particular, the language "ability to send"—without any limitation language—provides notice that Health Grades' contentions captures physicians sending information to MDx via fax, email, or other ways separate and distinct from direct edits through the vitals.com portal.

Second, the California Local Rules 3-1 requires only that the party disclose information about the accused instrumentality "which the party is aware" and "[e]ach method or process shall be identified by name, if known . . . ." Health Grades was specific as it could be. Health Grades could not have provided greater specificity because MDx was in sole possession of the data revealing the multiple ways physicians could verify information. *American Video Graphics, L.P. v. Elect. Arts, Inc.,* 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) (contentions sufficient where "defendants' sole possession of the information plaintiffs need" precluded greater specificity).

Third, MDx counsel had notice from multiple sources that Health Grades was not limiting its infringement claim to direct edits. The Markman Order—issued before MDx submitted its Supplemental Response—made clear that "'verifying' requires only that the website receive confirmation of the information from some other source, and it is, in this instance, the healthcare provider." (Markman Order [Doc. #138] at p. 15 n. 8.) This order confirmed that the Physician Information element can be satisfied in many ways, including physicians making edits through the vitals.com physician portal.[10] MDx counsel's argument that they believed edits received through the web portal are different than edits received by fax and email is belied by MDx's own recordkeeping policies. MDx refers to all edits as "webedits," regardless of whether they were received via the portal, fax, or email [Doc. #720-1, ¶15].

Fourth, MDx counsels' California Local Rules argument fails because the Supplemental Response came *after* Judge Boland ordered that MDx supplement its response with a full and

---

[10] In his July 13, 2012 Expert Report, Health Grades' technical expert also provided MDx notice that Health Grades' contentions covered any means in which MDx could receive Physician Information: "I understand that many more physicians have registered with vitals.com and viewed their profiles without changing any information . . . It is my opinion that in doing so these physicians have confirmed (e.g., verified) their information for MDx and that MDx has thereafter received this information from these physicians" [Doc. #305-1 at ¶128].

complete answer [Doc. #192]. As Judge Boland concluded, "[o]n these facts, MDx's counsels strained reliance on the California Local Rules is unpersuasive . . . [t]he Motion to Compel made clear exactly what Health Grades was seeking and why, my order compelled a full and complete answer to the question," and "[a]t that point, reliance on the California Local Rules was unreasonable" [Doc. #784 p. 4].[11]

Finally, MDx counsel could not have reasonably believed that the California Local Rules would allow them to hide from view other ways that MDx requested and received Physician Information. None of the cases MDx counsel has cited support such a proposition. *C.f. Caritas Techs., Inc. v. Comcast Corp.*, 2006 U.S. Dist. Lexis 94879, at *11, 15, 16 (E.D. Tex. Feb. 10, 2006) (concluding Comcast did not have to disclose information about the services other than its "Digital Voice" service because Caritas had not claimed any other accused products infringed); *Samsung SDI Co. v. Matsushita Elec. Indus. Co.,* 2007 U.S. Dist. Lexis 90457, at *8 (C.D. Cal. June 25, 2007) (same). Unlike the parties in *Caritas* and *Samsung,* Health Grades only sought discovery about accused products that it had alleged in its Complaint and infringement contentions infringed the '060 Patent. In short, Judge Boland's findings are not clearly erroneous, nor contrary to law.

B. <u>MDx Counsel's Pattern of Conduct Belies Their Claim They Acted Properly.</u>

MDx counsel's pattern of conduct after they allegedly became aware of the faxes and emails showing MDx practiced the claim element in fall of 2013 demonstrates a continued

---

[11] MDx claims that Judge Boland's Reconsideration Order [Doc. #784 pp. 3-4] expanded MDx's discovery obligations beyond the scope of Health Grades' Interrogatory No. 2, which violates Fed. R. Civ. P. 37(a)(3)(B)(iii) [Doc. #789 pp. 11-12]. Judge Boland has consistently ordered MDx to fully and completely answer Health Grades' Interrogatory No. 2, *see* [Doc. #192 p. 2]. Requiring MDx to "state for each claim element whether MDx's Accused Products provide such an element or an equivalent and, if not, explain how MDx's Accused Products operate or function differently than the claim element," does not expand MDx's discovery obligations.

failure to satisfy their discovery obligations and short-circuiting the discovery process—all of which belies their claim that their conduct throughout was proper. *Adolph Coors Co. v. Am. Ins. Co.,* 164 F.R.D. 507, 520 (D. Colo. 1993).

1. MDx counsel never had MDx "supplement or correct its . . . response to [Interrogatory No. 2] . . . in a timely manner [once it] learn[ed] that in some material respect the . . . response [was] incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e).

2. MDx counsel made specious statements in their opposition to Health Grades' Motion for Sanctions:  (1) "The vast majority (if not all) [of the 25,000 e-mails and/or faxes to be produced] do not show receipt of three or more of the data elements . . . and so do nothing to assist Health Grades" and (2) " MDx does not know whether [it] is true or not [that] no provider ha[s] ever edited three or more of the data elements . . . . [Doc. #652 pp. 11-12.]

3. MDx's Motion for Reconsideration [Doc. #720 p. 11, n. 3] stated that "none of the reports will meet all of the claim elements." *Cf.* [Doc. #757 p. 14] (revealing that approximately 4,000 physicians satisfy all the claim elements (although MDx contends the number is "over-inclusive").

For all the foregoing reasons, Judge Boland's sanctions order was not clearly erroneous or contrary to law.  Health Grades requests that this Court affirm Judge Boland's Sanction's Order.

Respectfully submitted June 2, 2014.

LEWIS ROCA ROTHGERBER LLP

*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Adam L. Massaro, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel: (303) 623-9000
Fax: (303) 623-9222
E-mail: gkanan@lrrlaw.com
E-mail: kkosto@lrrlaw.com
E-mail: amassaro@lrrlaw.com
*Attorneys for Plaintiff Health Grades, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2014, I electronically filed the foregoing **HEALTH GRADES' RESPONSE TO MDx'S FED R. CIV. P. 72(A) OBJECTIONS TO MAGISTRATE JUDGE BOLAND'S SANCTIONS ORDER [DOC. #789]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Vincent Ferraro, Esq.
David C. Lee, Esq.
Trent Dickey, Esq.
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
E-mail: sstimpson@sillscummis.com
            vferraro@sillscummis.com
            dlee@sillscummis.com
            tdickey@sillscummis.com

Terence M. Ridley, Esq.
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO  80202-5647
E-mail: ridley@wtotrial.com


                                                            *s/ Kris J. Kostolansky*
                                                            Kris J. Kostolansky, Esq.