**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 11-cv-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC.,
doing business as Vitals.com,

    Defendant.

___

**ORDER**
___

This matter is before the Court on Health Grades, Inc.'s Motion for Partial Summary Judgment (the "Motion"). (ECF No. 369.) A hearing was held on the Motion on February 13, 2014. (ECF No. 781.) Pursuant to 28 U.S.C. § 1338(a), the Court's jurisdiction over this case is based on the U.S. Patent Act, 35 U.S.C. § 101 *et seq.*

**I.    BACKGROUND**

Plaintiff Health Grades, Inc. ("Health Grades") owns U.S. Patent No. 7,752,060 (issued Jul. 6, 2010) (the "'060 Patent"). Defendant MDx Medical, Inc. ("MDx") maintains the website www.vitals.com (the "MDx website"), the current version of which was launched in January 2011. (ECF No. 195 at 2.) The MDx website competes with Health Grades' site, www.healthgrades.com. Health Grades asserts that the MDx website is the infringing product. This Court has already set forth the basic facts regarding the claimed invention, the accused product, and the February 13, 2012 Markman Order in a previous order of this Court, dated April

4, 2014. (ECF No. 696.) I will only repeat previously set forth facts as necessary for analysis of the present Motion.

The application for the '060 patent was filed on August 29, 2006. Health Grades alleges that MDx infringes Claims 1, 4 through 9, 11, and 14 through 16 of the '060 Patent. Claims 1 and 15 are independent claims which disclose, in pertinent part:

Claim 1:

> A computer-implemented method of providing healthcare provider information to potential patients, said method comprising: receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider . . . [and] creating . . . **a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers . . . .**

('060 Patent col. 20 ll.20-22, 58-65 (emphasis added).)

Claim 15:

> An on-line information system for connecting healthcare providers with potential patients, the system comprising: at least one computer processor and memory…and comprising a series of instructions that, when executed . . . cause the . . . processor to: receive a request for information regarding a first healthcare provider . . . [and] create **a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers . . . .**

('060 Patent col. 22 ll. 9-18, 48-54 (emphasis added).) The emphasized portions of each claim shall henceforth be referred to as the Comparison Ratings Element.

Health Grades has moved for summary judgment on the validity and enforceability of the '060 Patent. Essentially, Health Grades argues that various defenses asserted by MDx— anticipation and obviousness—fail under the appropriate legal standard and should be ruled

2

against on summary judgment. Additionally, Health Grades argues that MDx's inequitable conduct defense fails to be supported by clear and convincing evidence of an intent to deceive the Patent Office.

MDx's anticipation and obviousness defenses require consideration of the appearance, features and function of the Health Grades' website prior to August 29, 2006. The various iterations of the site were not preserved (or have not been presented to the Court). The structure of the early versions of the website is hotly disputed in this litigation.

MDx extrapolates the features and function of the early Health Grades website by relying on, amongst other things, various discovery responses provided by Health Grades. These discovery responses, MDx argues, provide a basis for MDx's defenses, which Health Grades seeks to remove from trial by the instant summary judgment Motion.

In July 2011, Health Grades served its Responses to MDx's First Set of Interrogatories (the "Responses"). In the Responses, Health Grades described the conception of the alleged invention and the filing of the patent-in-suit as follows:

> The patent-in-suit was filed in connection with Health Grades' development of products called Physician New Media Marketing ("PNMM"), Hospital On-Line Marketing ("HOM"), and Physician On-Line Marketing ("POM"). Although conception of various aspects of these products (and the invention described in the patent-in-suit) happened earlier, work began on the development of the PNMM, HOM and POM products in late 2004 and continuing through early 2005. Health Grades began launching the first version of these products in the Spring/Summer of 2005.
>
> David Hicks, Scott Montroy, and John Neal are joint inventors of the patent-in-suit.

(ECF No. 407-1 at 9). Health Grades also stated, in response to a separate interrogatory, that "Health Grades has seen significant commercial success and unexpected results since it began to

launch the **commercial embodiment** of the patents-in-suit in summer 2005." (*Id*. at 15) (emphasis added).

MDx also points to the "Early HG Reports and Services," which include Health Grades' website prior to August 29, 2006.  MDx asserts, both independently and through an expert witness, that the "Early HG Reports and Services" included, but are not limited to, the following:

1. Health Grades Premium Reports;
2. the Drucker Reports;
3. the Physician Quality Guides;
4. the Physician Quality Reports;
5. the Physician Quality Comparison Reports;
6. the Nursing Home Comparison Reports;
7. the Physician Online Services;
8. Connecting Point;
9. The Physician New Marketing Media;
10. Patient Surveys Collected by Health Grades;
11. Public Use and Public Knowledge of the www.healthgrades.com web site since 2004 and on at least 9/15/2004, 10/19/2004; 12/28/2004, 2/16/2005, 3/22/2005, and 6/4/2005;
12. Patient Experience Surveys conducted as early as 2004;
13. the Physician Online Service application launched in May 2004.

MDx argues that these examples of Early HG Reports and Services constitute evidence of prior art under 35 U.S.C. §§ 102(a) and (b).

Included amongst the exhibits referencing the Early HG Reports and Services is a Health Grades press release dated August 2, 2005.  In the press release, Health Grades announced that it was adding "two new sets of data to its Physician Quality Reports," described as:

> physician-satisfaction surveys from the consumers that visit its Web site monthly, and detailed physician and practice information from physicians themselves, which includes practice philosophy, subspecialty information, teaching positions, published peer-reviewed articles, number of procedures performed, among other items. The reports already include information on doctors' education, training, board certification, medical board sanctions and disciplinary actions, quality ratings of hospitals in their practice area with which they are affiliated, contact information and more.

(ECF No. 406-3 at 2.)

*The Expert Report of Dr. Richard G. Cooper*

Dr. Richard G. Cooper has over 30 years of experience in computer architecture, mathematics, software, internet, electronics and programming. He submitted an expert report on behalf of MDx, in which he asserted that "[t]he Early HG Reports and Services qualify as prior art under 102(b)." (ECF No. 369-4 at 5.) Dr. Cooper's expert report deals with each asserted claim and identifies what evidence he reviewed which demonstrated, to him, that the claim was declared in the prior art. For the Comparison Ratings Element, Dr. Cooper states:

> The specific use of comparison rating has also been found in prior art materials, as described below. The testimony of Mr. Dodge, when combined with other evidence, also indicates that comparison ratings were in the Early HG Reports and Services early enough to be prior art. Therefore, this claim element is also anticipated.
>
> Even if the element were not anticipated, the idea of comparison ratings of health care providers was disclosed in these documents, and comparisons of line items in database reports have been used to rank retrieved records for decades, and so this use of comparison ratings would have been extremely obvious to a Posita. […]
>
> The Early HG Reports and Services also show ratings of health care provider hospitals that were intended to and do allow comparison of health care providers. It would be obvious to a Posita that ratings of other physicians would be a natural addition to the report. […]
>
> [The] evidence clearly demonstrate[s] that the concept of having provider information and ratings available to prospective patients had been practiced in a way that the ratings could be compared. Even if hospital ratings do not meet the claim language literally, there are plain and clear teachings that any Posita would understand that ratings of health care providers could be shown side by side for comparison purposes, and these documents provide the motivation to do so.

(ECF No. 369-4 at 12.)

## II.   STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A movant who bears the burden at trial must submit evidence to establish every essential element of its claim. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* FED. R. CIV. P. 56(c).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

To be entitled to summary judgment here, the moving party—Health Grades—must demonstrate that the facts presented and inferences therefrom, taken in the light most favorable to the non-moving party, would not permit a verdict for MDx based on the anticipation, obviousness, and inequitable conduct defenses. *See, e.g.*, *Crater Corp. v. Lucent Technologies, Inc.*, 255 F.3d 1361, 1366 (Fed. Cir. 2001). Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact. *General Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350, 1353 (Fed.Cir.1999). Summary

judgment is proper if no reasonable jury could find that the patent is not anticipated. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001).

Obviousness is ultimately a determination of law based on underlying determinations of fact. *See Richardson–Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997). These underlying factual determinations include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) the extent of any proffered objective indicia of nonobviousness. *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed. Cir. 1998). To facilitate review, the factual findings underlying the obviousness analysis should be made explicit. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Mere "conclusory statements" are insufficient to support the legal conclusion of obviousness; instead, "there must be some articulated reasoning with some rational underpinnings." *Myers v. Master Lock Co.*, No. CIV. 06-CV-00619-LTB, 2008 WL 2168977 (D. Colo. May 22, 2008) (quoting *KSR Int'l*, 550 U.S. at 418).

As for inequitable conduct, "[w]hile our precedent urges caution in the grant of summary judgment respecting a defense of inequitable conduct, summary judgment is not foreclosed." *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1186-87 (Fed. Cir. 2006) (quoting prior cases). "A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." *Digital Control, Inc. v. Charles Machine Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). The party challenging the enforceability of a patent must prove materiality and intent by clear and convincing evidence. When materiality and intent are both established, the court must decide whether enforcement of the patent is inequitable. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).

### III. ANALYSIS

#### A. Anticipation

*1. Are the Early HG Reports and Services prior art under 102(a)?*

Section 102(a) provides that "A person shall be entitled to a patent unless… the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." Health Grades argues that MDx's reliance upon the early iterations of the Health Grades website, as well as the Early HG Reports and Services, is misplaced. Health Grades argues that its own work cannot be prior art under 35 U.S.C. § 102(a), because 102(a) is limited to activities of third parties.

MDx argues that *In re Katz*, 639 F. 3d 1303 (Fed. Cir. 2011), and its progeny requires Health Grades to establish that "the exact same inventive entity was responsible for that prior art." (ECF No. 781 at 29.) According to MDx, Health Grades has failed to do so.

The Manual of Patent Examining Procedure, a document which does not have the force of law, but which both parties cite to persuasive effect, states that the term "others" in 102(a) "refers to any entity which is different from the inventive entity." MPEP § 2132. That section goes on to explain:

> The entity need only differ by one person to be 'by others.' This holds true for all types of references eligible as prior art under pre-AIA 35 U.S.C. 102(a) including publications as well as public knowledge and use. Any other interpretation of pre-AIA 35 U.S.C. 102(a) 'would negate the one year grace period afforded under § 102(b).[1]

*Id.* (internal citation omitted.)

---

[1] "AIA" refers to the America Invents Act of 2011, which became effective beginning in 2012. Most of the provisions of the new statute apply to any patent issued on or after the effective date, with some exceptions. Thus, this Order refers to and quotes from the "pre-AIA" version of the statute, as that is what applies to the patent in question.

The phrase "by others" presents a point of sharp disagreement between the parties. MDx notes that the inventors are David Hicks, Scott Montroy and John Neal. They, MDx argues, are not Health Grades. MDx posits that Health Grades cannot avoid the legal consequences of its placement in the public domain of its Early HG Reports and Service and its early website where Health Grades and the inventors are different. Health Grades responds by asserting that MDx misapplies the relevant principle. According to Health Grades, the pertinent inquiry is not who does the public disclosure, but whose work is disclosed. Here, Health Grades asserts, the early Health Grades website and the Early HG Reports and Services are "derived from" the work of the inventors. Thus, there is no prior art disclosure of the work of "others."

As developed in the briefing and at the hearing, the arguments of counsel became clear, unlike the evidence supporting those arguments—especially given the somewhat amorphous state of the proof of the early Health Grades website. More evidence and fact-finding as to the exact nature of the purported prior art, the dates thereof, and the evidence tending to show the degree to which it was "derived from" the work of the inventors is necessary to resolve this issue. The state of the evidence before me on the Motion is not so clear as to make it appropriate to remove this issue from a jury's consideration.

*2. Are the asserted patent claims anticipated by the prior art?*

A patent issued by the PTO is presumed valid. 35 U.S.C. § 282. However, a patent may be found invalid as a matter of law if it is anticipated. 35 U.S.C. § 102. A patent is anticipated if a single prior art reference discloses, expressly or inherently, every limitation of the claim such that a person of ordinary skill in the art could practice the invention without experimentation. 35 U.S.C. § 102(b); *see also Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

Health Grades argues that the Comparison Ratings Element is absent from the prior art. MDx's response is twofold: first, it argues that it has "ample evidence of comparison ratings of healthcare providers within the prior art;" then, it claims that "Health Grades['] argument that every element must be found 'within the four corners' of a single document is simply wrong here." (ECF No. 407 at 37.) MDx argues that since all of the elements, including the Comparison Ratings Element, can be found somewhere in the Early HG Reports and Services, and principally since they claim that "everything was available in the same Health Grades website in any event," that this is enough to satisfy the doctrine's requirement that "a *single* prior art reference [must disclose…] every limitation of the claim." *Id.*, 35 U.S.C. § 102(b) (emphasis added).

At the hearing on this matter, the Court called on counsel for MDx to identify which single prior art reference it was relying on to make out its anticipation defense. MDx's counsel responded that MDx disagreed with Health Grades that MDx "need[s] to up one piece of paper that says, Show us every element of the claim…here it's a public use. It was on Healthgrades' website back in 2005. We can't go back in time and get back on that website and see what's there, and I can't pull it off and show you. So how do I prove anticipation? Well, I prove it with testimony and admissions… I'm relying on the piece of prior art that was on Health Grades' website that they admitted was on the website in the summer of 2005." (ECF No. 781 at 5-6.)

MDx's position is highly nuanced. Its reference to "ample evidence of comparison ratings of healthcare providers" seems predicated on the broadest possible interpretation of "comparison ratings" and "healthcare providers" rather than on the more narrow and precise meaning given such terms in the Markman Order. And its characterizations of the Health Grades position as requiring it to identify evidence of every claim limitation in a single sheet or in a

10

single screen or segment of the early Health Grades website seems to narrow unduly the thrust of Health Grades' position. That position is simply that there needs to be evidence of comparison ratings of multiple human healthcare providers in some single piece of prior art—whatever that prior art is alleged to be.

When pushed at the hearing, MDx argued that since Health Grades admitted in an interrogatory response that it began to launch the commercial embodiment of the patent-in-suit in the summer of 2005, and since a commercial embodiment must by definition meet all of the elements of the claim, this answer meant that Health Grades had a piece of prior art that disclosed every element of the claim. Health Grades responded that those interrogatory responses were made several months before the Markman ruling in this case, when Health Grades was still arguing that comparison ratings need not include ratings of multiple healthcare providers.

The difficulty with resolution of this issue is the context in which it arises. In order to rule in favor of Health Grades on the Motion, the Court must interpret and explain away the interrogatory response. In the summary judgment context, where MDx is entitled to have facts and inferences interpreted in the light most favorable to it, I cannot do so. Thus, despite some skepticism as to MDx's ability to prevail ultimately on this defense, I will not take this matter from a trial jury at this stage.

### B. Obviousness

Under the U.S. Patent Act, an invention cannot be patented if "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). A party seeking to invalidate a patent based on obviousness must demonstrate "by clear and convincing evidence

that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed.Cir.2007). The obviousness determination turns on underlying factual inquiries involving: (1) the scope and content of prior art, (2) differences between claims and prior art, (3) the level of ordinary skill in pertinent art, and (4) secondary considerations such as commercial success and satisfaction of a long-felt need. *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009).

In *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, the Federal Circuit found that a district court's grant of a judgment as a matter of law on obviousness which precluded that defense from reaching the jury was not erroneous "[b]ecause the record evidence was insufficient for a reasonable jury to support a determination of obviousness." 694 F.3d 1312, 1328 (Fed. Cir. 2012). The Federal Circuit agreed that the obviousness testimony proferred by the defendant in that case was conclusory and factually unsupported. *Id*. Health Grades argues that here, as in *ActiveVideo*, the evidence MDx offers through its expert witness is generic, and "MDx has not disclosed any detailed analysis of the above mentioned requirements for obviousness." (ECF No. 369 at 24.)

In *Innogenetics, N.V. v. Abbott Laboratories*, the Federal Circuit held that the district court did not err in finding an expert report deficient where the expert "merely list[ed] a number of prior art references and then conclude[d] with the stock phrase 'to one skilled in the art it would have been obvious…'" 512 F.3d 1363, 1373 (Fed. Cir. 2008). In an expert report, "there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006). Health Grades says

12

this is exactly what is missing from Dr. Cooper's report, and that this Court should therefore find it insufficient as a matter of law. Health Grades acknowledges that experts are allowed "to rely on common sense to support an obviousness opinion," but says that the law requires that it at least be explicit that he is relying on common sense, and that "[h]ere, Dr. Cooper's expert report does not articulate the reasoning for his obviousness – he says only that it would be obvious." (ECF No. 442 at 33.)

MDx, for its part, argues that the Supreme Court has rejected a "rigid approach" to analyzing obviousness, and instead has "set forth an expansive and flexible approach." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415 (2007). MDx cites a line of Federal Circuit case law relying on common sense to find that claims are obvious, or no more than a "predictable variation." (ECF No. 407 at 38 (citing cases).) In the hearing, MDx argued that the actual words "common sense" are not necessary, and that their lack "doesn't mean you can't convey the same concept." (ECF No. 781 at 80.)

Turning to Dr. Cooper's report, much of what is being argued in the context of this Motion was already argued in the motion to exclude Dr. Cooper and accompanying briefing, and I decline to reverse my prior order.[2] Dr. Cooper's report goes further than the experts in *ActiveVideo* and *Innogenetics*, citing specific pieces of evidence from the record to support his conclusion that the prior art which included ratings of health care provider hospitals "were intended to and do allow comparison of health care providers," and that thus "[i]t would be obvious to a Posita that ratings of other physicians would be a natural addition to the report."

---

[2] *See* ECF Nos. 689 and 700. My prior minute order and the hearing transcript record that accompanies it makes clear that I thought much of the argument surrounding the proposed testimony of Dr. Cooper was premature, and went to Rule 402 and 403 issues which were difficult to deal with outside of the context of trial. I declined then and I decline now to exclude Dr. Cooper's opinions in any categorical way.

(ECF No. 369-5 at 12.) Putting the prior order aside, I also conclude Dr. Cooper's reliance on common sense is apparent in his analysis. I decline at this juncture to deny MDx the opportunity to argue that it was no great leap from comparing hospitals to comparing the humans who work therein.

### C. Inequitable Conduct

"A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." *Digital Control, Inc. v. Charles Machine Works*, 437 F.3d 1309, 1313 (Fed.Cir.2006). The party challenging the enforceability of a patent must prove materiality and intent by clear and convincing evidence. When materiality and intent are both established, the court must decide whether enforcement of the patent is inequitable. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir.1995).

MDx asserts that the '060 patent inventors' failure to disclose the Early HG Reports and Services to the Patent Office during the prosecution of the '060 patent constitutes inequitable conduct. It offers the following evidence of inequitable conduct: "(1) the prior art references were anticipatory; (2) the inventors disclosed far less relevant prior art to the Patent Office even though they were all well-aware of the Early HG Reports and Services; (3) the inventors could never have made the arguments they did to distinguish the Early HG Reports and Services had they not been concealed; (4) the inventors had no justifications for failing to disclose Health Grades' own critical prior art." (ECF No. 407 at 39-40.) Health Grades, focusing largely on the intent element, denies that it possessed the requisite intent to deceive.

MDx, citing *Therasense, Inc. v. Becton Dickinson and Co.*, says that even "indirect and circumstantial evidence" can be sufficient to establish intent where that is the most reasonable

inference. 649 F.3d 1276, 1290-91 (Fed. Cir. 2011). Indeed, this type of evidence is what MDx relies upon. However, a fuller reading of *Therasense* makes it clear that the intent element remains a difficult burden to meet. Although the Federal Circuit clarified that "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence," as MDx quoted, it also said that "the evidence must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances…when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id*. (internal quotations omitted) (emphasis in original).

The evidence here falls short of that mark. It is not the case that intent to deceive is the necessary motivation for any nondisclosure. And the evidence establishes that there is in fact another reasonable inference that may be drawn from Health Grades' nondisclosure. Mr. Neal testified that he did not think the Early HG Reports and Services were material to patentability because they did not disclose comparison ratings of physicians, nor provide a "means to differentiate providers based on a rating or a score." (*See* ECF No. 369 at 15-16; ECF No. 407 at 11; Neal Dep. at 129-132, 252-253.)[3]

As Health Grades notes, *Therasense* makes clear that the evidence necessary to meet the clear and convincing standard must establish the specific intent to deceive as the "single most reasonable inference to be drawn from the evidence." *Id.* at 1290. The evidence must be such as to "require a finding of deceitful intent." *Id.* Such is not the case here. A reasonable

---

[3] Additionally, Health Grades has established that disclosure of the various items of alleged prior art was made in connection with Health Grades' patent application (serial no. 13/551,471), and that the patent examiner for that application—the same examiner who was assigned to the '060 Patent—did not deem the prior art worthy of defeating that application.

explanation for non-disclosure has been proffered, and intent to deceive is not the single most reasonable inference from the evidence.

In some respects, the MDx position would make the law of inequitable conduct tautological with other defenses. To the extent that a jury may find anticipation based on prior art, MDx argues that the nondisclosure of the prior art to the Patent Office may be viewed as clear and convincing evidence of inequitable conduct. Thus, anticipation and inequitable conduct begin to merge, and proof of one would be sufficient evidence of the other. I cannot agree. And as *Therasense* teaches, "[t]he absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive." *Id.* at 1291.

MDx provided no convincing evidence of intent to deceive, and Health Grades offered a reasonable inference that can explain any nondisclosure. MDx's inequitable conduct defense is unable to withstand summary judgment, and the Motion is, in this respect alone, granted.

## IV. CONCLUSION

For the foregoing reasons, Health Grades, Inc.'s Motion for Partial Summary Judgment (ECF No. 369) is:

> 1. DENIED as to MDx's anticipation defense;
> 2. DENIED as to MDx's obviousness defense; and
> 3. GRANTED as to MDx's inequitable conduct defense.

DATED this 26th day of June, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

16