**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

      Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

**MDX MEDICAL, INC.'S THIRD MOTION FOR LEAVE TO**
**AMEND INVALIDITY CONTENTIONS**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by its undersigned counsel, files this Third Motion for Leave to Amend Invalidity Contentions ("Motion").

Pursuant to D.C.COLO.L.Civ.R 7.1(a), counsel for MDx conferred with Health Grades, Inc.'s ("Health Grades") counsel on the issues addressed in this motion. Health Grades opposes the relief sought herein.

**I.     SUMMARY OF THE REQUEST AND SUPPORT**

MDx previously provided invalidity contentions and supplemental invalidity contentions on August 19, 2011, August 26, 2011, January 23, 2012, May 10, 2012, and September 17, 2012. By this Motion, MDx seeks leave to amend its invalidity contentions to:

(1) Add a non-patent publication, prior art reference that recently surfaced, "Recommendations For Improving The Quality of Physician Directory Information On The Internet," published August 2004 by the National Committee for Quality Assurance, ("the

NCQA Article"), and which Health Grades production documents indicate was likely known to Health Grades but not produced or identified in discovery;

(2) Add two other prior art references that recently surfaced, U.S. Patent Application Publication Nos. US 2002/0010616 A1 and US 2003/0120513 A1; and

(3) Add a defense based on 35 U.S.C. § 101, pursuant to a new Supreme Court decision expanding the scope of that defense, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

Good cause exists to modify the invalidity contentions to add the NCQA Article because the reference was not located in earlier diligent searches for prior art performed by a third party searcher, and because Health Grades likely knew of the prior art but did not disclose it in discovery. There is also good cause to modify the invalidity contentions to add the two additional prior art references, because they also were not located in the earlier diligent searches for prior art. There is no significant prejudice to adding any of these references now, since the parties have already agreed that both technical experts will supplement their reports on other issues in any event.

As for the requested addition of the new Section 101 defense, good cause exists because the law has changed in view of the very recent Supreme Court ruling on this issue, which expanded the scope of the defense. Because the technical experts, by agreement of the parties, will be supplementing their expert reports, there is no prejudice to Health Grades by adding this defense.[1]

---

[1] As for the timing of this motion, counsel for MDx notified counsel for Health Grades on June 25, 2014 (just six days after the Supreme Court's *Alice* decision), that MDx intended to file a motion to amend its invalidity contentions addressing both the new prior art and the Section 101

## II. THE STANDARD FOR AMENDING INVALIDITY CONTENTIONS

The parties agreed, and the Court ordered, that the parties would abide by the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California ("Patent Local Rules").  *See* Dkt. # 34, at 6.  The Scheduling Order set a deadline of August 19, 2011 for MDx to provide its Invalidity Contentions.  *Id*.  The Patent Local Rules are attached to the Scheduling Order as Exhibit A.  *Id*.  Section 3-6 of the Patent Local Rules states that "[a]mendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause."  *Id*., Exhibit A, at PAT 8.

## III. THE NCQA ARTICLE

Another Health Grades patent recently issued, United States Patent No. 8,719,052 ("the '052 patent").  In anticipation of the issuance of this patent, MDx conducted a new prior art search, and has now petitioned the U.S. Patent Office to institute an *Inter Partes* Review, seeking invalidity of the claims of the '052 patent.  Declaration of Scott Stimpson In Support of MDx's Third Motion For Leave to Amend Invalidity Contentions ("Stimpson Decl."), attached hereto as Exhibit B, at ¶ 7.  Notably, the prior art search on the new '052 patent turned up a new prior art reference – a publication by Shelton, *et. al*., generated from the *National Committee for Quality Assurance* ("NCQA"), attached hereto as Exhibit C.  The NCQA Article completely anticipates various claims of the new Health Grades patent (claims which are different in scope and coverage than those at issue in this case) as MDx showed in its *Inter Partes* Review Petition served on counsel for Health Grades.  Exhibit B, at ¶ 7.

---

issue.  Correspondence from S. Stimpson to K. Kostolansky, dated June 25, 2015, attached hereto as Exhibit A.  Health Grades gave piecemeal responses, and it was not until July 23, 2014 that Health Grades' counsel finally addressed the last issue and confirmed that it would oppose this motion in its entirety.

Although the NCQA Article was found in connection with searching on the different patent claims of the '052 patent, it turns out to be highly relevant to the patent at issue in this case, too (U.S. Patent No. 7,752,060 (the "'060 patent"); attached hereto as Exhibit D). The NCQA Article was published in 2004 – more than one year prior to the earliest filing date of the '060 patent, and thus it is prior art under 35 U.S.C. §102(b). It discloses many of the key elements of the claims of the patent in this case. *Compare, e.g.,* the '060 patent, Exhibit D, column 20 (claim 1), with Exhibit C, pages 11-13 (the same provider-data called for in the '060 patent claims), pages 14-15 ("validation" – verification -- by third parties of the same data called for in the claims), page 19 (patient survey ratings), and page 10 (the idea of comparison ratings – encouraging "as many data elements as possible" in the search results, which would include patient ratings disclosed at page 19).

MDx seeks to add this NCQA Article to its Invalidity Contentions, and the proposed revisions are shown in MDx's amended invalidity contentions, attached hereto as Exhibit E hereto, in redline showing the proposed changes. As can be seen from Exhibit E, the NCQA Article is highly relevant to the validity of the claims of the '060 patent. *Yodlee, Inc. v. CashEdge, Inc.*, 2007 U.S. Dist. LEXIS 39564, 4 (N.D. Cal. May 17, 2007) ("it would be unjust for information so highly material" to the merits to be avoided).

When the NCQA Article surfaced, counsel for MDx searched the Health Grades production documents for it. The NCQA Article was not produced by Health Grades. Exhibit B, at ¶ 7. However, Health Grades documents show that Health Grades knew about, and consulted, NCQA for sourcing of data for its physician reports. *See, e.g.,* Health Grades' Physician Quality Report, dated December 28, 2004 (thus also prior art under 35 U.S.C. §102(b)), attached hereto

- 4 -

as Exhibit F, at 5 (relevant portions highlighted).  Thus, Health Grades was well aware of the NCQA and its early suggestions for sourcing data, and it appears that it should have these documents in its possession.

MDx  long ago served an interrogatory and document requests, requiring Health Grades to identify and produce all prior art of which it was aware.  *See* MDx's co-pending motion to compel, Dkt. # 811.  Despite these discovery requests, Health Grades did not produce the NCQA Article, or any NCQA materials, and none of these were identified in discovery by Health Grades; Health Grades currently refuses to state whether it had the reference or related materials; and (despite its obligations under Rule 26(e) to supplement) Health Grades even refuses to perform any search for these materials now (thus forcing MDx to file a motion to compel, Dkt. # 811).  Because Health Grades likely knew about the NCQA Article, but did not disclose it (or any other NCQA materials) during discovery, Health Grades cannot now complain about timing of the MDx request to amend the contentions.  *Audionics Sys. v. AAMP of Fla., Inc.*, 2014 U.S. Dist. LEXIS 100683, 39-40 (C.D. Cal. Mar. 12, 2014) ("Had AAMP earlier disclosed information concerning the [prior art] to Crux, Crux could have filed its motion to amend sooner, and the court could potentially have heard it before discovery closed.  Consequently, AAMP cannot now be heard to complain."); *Convolve, Inc. v. Compaq Computer Corp*., 643 F. Supp. 2d 336, 343 (S.D.N.Y. 2008) ("As discussed above, the Ray Thesis would have been added to the defendants' invalidity contentions at an earlier time but for the plaintiffs' failure to produce it during discovery. As an equitable matter, then, the plaintiffs may not be heard to argue prejudice as a result of the amendment."); *Coopervision, Inc. v. CIBA Vision Corp.*, 480 F. Supp. 2d 884,

889 (E.D. Tex. 2007) ("A party that fails to disclose this information in a timely manner has little room to complain that the opposing party is tardy.").

Moreover, at the commencement of this case, MDx hired a professional search firm and had prior art searches conducted for the '060 patent (the patent-in-suit), and uncovered various prior art references. Exhibit B, at ¶¶ 3-4. Many hours were spent searching for prior art, analyzing the prior art uncovered and preparing invalidity contentions. *Id.* MDx spent tens of thousands of dollars in this effort. *Id.* Despite these diligent efforts, the NCQA Article was not found until the prior art search regarding Health Grades '052 patent was conducted. *Id.*, at 7. As the Local Patent Rule itself states, absent undue prejudice to the non-moving party, the failure of an earlier, diligent search for prior art to uncover a reference is good cause for allowing an amendment. Patent L.R. 3-6(b); *Theranos, Inc. v. Fuisz Pharma LLC*, 2013 U.S. Dist. LEXIS 143467, 4 (N.D. Cal. Oct. 2, 2013) ("Absent undue prejudice to the non-moving party, the recent 'discovery of material prior art despite earlier diligent search' supports a finding of good cause").

There is no undue prejudice to Health Grades with regard to this proposed amendment, as the parties have already agreed to supplement technical expert reports prior to trial, so adding this additional prior art reference will not add significant burden or prejudice to Health Grades, and counsel for MDx has already agreed to make its technical expert available for deposition. Also, since it appears that Health Grades was aware of the NCQA and did not disclose the materials, Health Grades should not be heard to complain about prejudice in any event.

### IV. THE ITZHAKI AND SAMAQUIAL REFERENCES

In connection with the search for prior art regarding the '052 patent, two additional prior art references were also uncovered that have relevance to the '060 patent. They are (1) U.S.

- 6 -

- 7 -

Patent Application Publication No. US 2002/0010616 A1 to Itzhaki (the "Itzhaki reference"; Exhibit G), and (2) U.S. Patent Application Publication No. US 2003/0120513 A1 to Samaquial (the "Samaquial Reference"; Exhibit H).

Both the Itzhaki and Samaquial References were published more than one year before the earliest filing date of the '060 patent, and so both are prior art at least under 35 U.S.C. § 102(b). The Itzhaki Reference teaches, for example, conducting surveys on the same website that allows searching (Exhibit E, at 11-12); and the Samaquial Reference teaches, for example, hyperlinks to the websites of healthcare providers (Exhibit E, at 30).

Because neither of these references were uncovered in a good faith and diligent search for prior art, and were uncovered only later in connection with a search on another patent, there is good cause for amending the invalidity contentions to add them. Patent L.R. 3-6(b). Moreover, there is no prejudice to Health Grades with regard to this proposed amendment, as the parties have already agreed to supplement technical expert reports prior to trial, so adding these two references on these two claim elements will not add significant burden or prejudice to Health Grades, and counsel for MDx has already agreed to make its technical expert available for deposition.

**V.     THE SECTION 101 DEFENSE**

On June 19, 2014, the United States Supreme Court issued its decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), a copy of which is attached hereto as Exhibit I. The *Alice* decision established a new standard for identifying computer-implemented "abstract ideas" that are not eligible for patent protection, and held that use of a computer alone does not make an otherwise abstract idea patent eligible. *Alice Corp. Pty. Ltd.*, 134 S. Ct. at 2358.

Rather, after *Alice*, abstract ideas do not become eligible unless the patent claims add "significantly more" than the abstract idea itself. *Id.*, at 2355.

Prior to *Alice*, the Federal Circuit views, and interpretations of prior Supreme Court precedent, were divergent, and indeed the Federal Circuit generated seven different opinions in the *en banc* decision that led to the Supreme Court's *Alice* decision. *CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269 (Fed. Cir. 2013). Although the Supreme Court affirmed the Federal Circuit's *en banc* decision, the new standard articulated by the Supreme Court was not found in any majority Federal Circuit opinion. *See, e.g.,* the opinions of Chief Judge Radar ("nothing said today beyond our judgment has the weight of precedent") and Judge Newman (noting the Federal Circuit provided "at least three incompatible standards, devoid of consensus, serving simply to add to the unreliability and cost of the system of patents as an incentive for innovation."). *CLS Bank Int'l*, 717 F.3d at 1292 n.1 (Rader, J., concurring-in-part and dissenting-in-part), and 1321 (Newman, J., concurring-in-part and dissenting-in-part).

The Supreme Court in *Alice* clarified the law of computer-implemented patent claims, and held in part that computer-implemented inventions should "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *Alice Corp. Pty. Ltd.*, 134 S. Ct. at 2351. One prominent commentator, Donald Chisum (of *Chisum on Patents* – one of the foremost authorities on patent law and practice), has since opined that the *Alice* decision is "an oasis in the desert" and characterized the decision as "important new ground." Donald S. Chisum, The Supreme Court's Alice Decision on Patent Eligibility of Computer-Implemented Inventions: Finding an Oasis in the Desert (June 23, 2014) ("the Chisum Article"), attached hereto as Exhibit J (also commenting that the Supreme Court's prior

decisions "left stranded in a desert of uncertainty an array of feet-on-the-ground decision makers").

The Supreme Court's *Alice* opinion is particularly on point for the claims of the '060 patent. Those claims are directed to processing data – they merely address the collection, organization, and reporting of data on healthcare providers. *See e.g.*, Exhibit D, column 20, lines 20-68. The Supreme Court in *Alice* held that claims such as these are abstract ideas, such as "method[s] of organizing human activity" and "longstanding commercial practice[s]." *Alice Corp. Pty. Ltd.*, 134 S. Ct at 2356. The Court's discussion of the claims at issue in *Alice*, at 2358, also establishes that conventional use of a computer does not transform claims such as these into patent eligible subject matter ("recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention"). *Compare* the opinion of Federal Circuit Chief Judge Radar in *Alice*, opining that the claims were patent eligible by reciting computer hardware specifically programmed for a problem. *CLS Bank Int'l*, 717 F.3d at page 1307; *see also* opinions of Judges Moore, Newman, Linn, and O'Malley, all concluding the *Alice* claims were patent eligible.

The Patent and Trademark Office is also revising its Examination Instructions based on the new standard enunciated in *Alice*, and has recognized that *Alice* establishes for the first time that the framework in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012), applies "to analyze all claims directed to laws of nature, natural phenomena, and abstract ideas for subject matter eligibility under 35 U.S.C. § 101." U.S. Patent & Trademark Office, MEMORANDUM: Preliminary Examination Instructions in view of the Supreme Court Decision in *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.* (June 25, 2014),

attached hereto as Exhibit K, at 1. Prior to *Alice*, the "USPTO guidance applied a different analysis to claims with abstract ideas (*Bilski* guidance in MPEP 2106(II)(B)) than to claims with laws of nature (*Mayo* guidance in MPEP 2106.1)." *Id.* at 2. *Alice* also establishes that the same analysis should be used for both product and process claims (both types of claims are found in the '060 patent). *Id*. Responding to the *Alice* decision, the USPTO issued a memorandum to "provide preliminary instructions . . . to the Patent Examining Corps relating to subject matter eligibility of claims involving abstract ideas, particularly computer-implemented abstract ideas, under 35 U.S.C. § 101." *Id.* at 1.

Even after these initial responses to *Alice*, the Patent Office appears to be continuing to change its views of patentability based on the new state of the law. And as another commentator recently noted, the new standards are particularly directed to alleged inventions that, like the '060 patent, are related to processing data. *See,* Dennis Crouch, USPTO Moves to Strongly Enforce Eligibility Limitations (July 25, 2014), attached hereto as Exhibit L ("Based on information from several sources, it appears that the USPTO is now taking a more aggressive stance on subject matter eligibility and is particularly re-examining all claims for eligibility grounds prior to issuance. This is most apparent in technology centers managing data-processing inventions classes (Classes 700-707).").[2]

*Alice* has changed the law regarding 35 U.S.C. § 101, making it harder for alleged inventions (particularly those addressing data processing like the '060 patent) to survive challenges to patent eligible subject matter. The new law has been recognized by commentators, and is being aggressively implemented by the Patent Office in connection with data-processing

---

[2] The "Class" of the '060 patent falls squarely within these classes. It is Class 705/3, and is shown on the front page of the patent. Exhibit D.

patent applications. Changes in applicable law demonstrate good cause for amending the invalidity contentions. *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 532 (S.D.N.Y. 2011) (citing *Beazer E. v. Mead Corp.*, 525 F.3d 255, 263 (3rd Cir. 2008) ("[a]n exception to normal law of the case and waiver rules is recognized when an intervening decision from a superior court changes the controlling law.")); *West v. Ortiz*, 2007 U.S. App. LEXIS 5700 at 5 (10th Cir. Mar. 9, 2007) (allowing appellant to raise an issue made viable by an intervening Supreme Court case); *DSC Commc'ns Corp. v. Next Level Commc'ns*, 107 F.3d 322, 326, n.2 (5th Cir. 1997) (same); *Biomedical Patent Mgmt. Corp. v. California*, 505 F.3d 1328, 1342 (Fed. Cir. 2007) ("DHS is not judicially estopped from asserting a new position that resulted from a change in the law"). There is no prejudice to Health Grades, because the technical experts can simply address this in their upcoming supplemental reports, and MDx will make its expert available for deposition on the issue, and no fact discovery is needed. Accordingly, MDx respectfully requests leave to amend its invalidity contentions to add a defense under 35 U.S.C. § 101 based on the new *Alice* standard.

## VI. CONCLUSION

For the foregoing reasons, MDx respectfully requests leave to amend its invalidity contentions to add the NCQA Article, the Itzhaki Reference, and the Samaquial Reference as prior art references, and a defense under 35 U.S.C. § 101.

Dated:  August 1, 2014                                   Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson                                        Terence Ridley, Atty. No. 15212
Trent S. Dickey                                          Wheeler Trigg O'Donnell LLP
David C. Lee                                             370 Seventeenth Street, Suite 4500
Vincent M. Ferraro                                       Denver, Colorado 80202
Sills Cummis & Gross P.C.                                Tel:  (303) 244-1800
30 Rockefeller Plaza                                     Fax:   (303) 244-1879
New York, New York 10112                                 E-mail: ridley@wtotrial.com
Tel: (212) 643-7000
Fax: (212) 643-6500                                      *Attorneys for Defendant*
E-mail: sstimpson@sillscummis.com                        MDx Medical, Inc. d/b/a VITALS.COM
E-mail: tdickey@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: vferraro@sillscummis.com

## CERTIFICATE OF SERVICE

I hereby certify that on <u>August 1, 2014</u>, I electronically filed the foregoing **MDX MEDICAL, INC.'S MOTION THIRD MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Vincent Marc Ferraro**
  vferraro@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

    *s:/Vincent M. Ferraro*