IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**PLAINTIFF HEALTH GRADES, INC.'S OPPOSITION TO
DEFENDANT MDX MEDICAL, INC.'S THIRD MOTION FOR LEAVE
TO AMEND INVALIDITY CONTENTIONS [DOC. #814]**

Plaintiff Health Grades, Inc. ("Health Grades") opposes MDx Medical, Inc.'s ("MDx") Third Motion for Leave to Amend Invalidity Contentions [Doc. #814] ("Motion to Amend").

**I.      INTRODUCTION**

This case has been pending for more than three years. Fact discovery and expert discovery closed two years ago. The parties have filed five motions for summary judgment (four were filed by MDx) and the Court has ruled on three of them. Trial is scheduled to begin in less than four months. Yet at this eleventh hour, and more than three years after MDx was required to disclose *all* of its theories for invalidity, MDx seeks to add new prior art and a new statutory basis for patent invalidity.

MDx's Motion to Amend should be denied because MDx was not diligent in locating the new prior art or raising invalidity under 35 U.S.C. Section 101, MDx did not timely file this Motion to Amend, and allowing MDx to change its invalidity defenses now will cause

2004930979_1

substantial prejudice to Health Grades.  Fact discovery would need to be reopened.  Another round of expert reports and expert depositions would be required.  Additional summary judgment motions might need to be filed.  Trial is scheduled for December 1, 2014 and there is not time to reopen discovery to address these new issues.

## II.  THERE IS NO GOOD CAUSE FOR AMENDING THE INVALIDITY CONTENTIONS

MDx had an affirmative duty to disclose its invalidity contentions by August 18, 2011.  (Doc. #34 at p. 6.)  This duty required MDx to disclose "the identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious" as well as identifying "any grounds for invalidity based on 35 U.S.C. § 101."  (Patent L.R. 3-3, Doc. #34 at pp. 20-21.)

Amendment of invalidity contentions "may be made only by order of the Court upon a timely showing of good cause."  (Patent L.R. 3-6, Doc. #34 at p. 22.)  For purposes of Rule 3-6, "'good cause' requires a showing of diligence," and "[t]he burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence."  *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).

"Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction."  *LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (citing *Atmel Corp. v. Info. Storage Devices, Inc.*, 1998 WL 775115 at \*2 (N.D. Cal. 1998).  The Patent Local Rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."  *O2 Micro*, 467

F.3d at 1366 n. 12 (quoting *Nova Measuring Instrum. Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)).

    A.    <u>**MDx HAS NOT MET ITS BURDEN TO SHOW GOOD CAUSE EXISTS FOR AMENDING THE INVALIDITY CONTENTIONS TO INCLUDE NEW PRIOR ART**</u>

        1)    **MDx Was Not Diligent in Locating the New Prior Art**

To show good cause for amendment, MDx must explain why, with reasonable diligence, it could not have discovered the new references prior to the August 18, 2011 deadline for filing Invalidity Contentions. MDx has failed to do so.

Rather, MDx argues that amendments relating to the Shelton Article[1] should be permitted because this art "was likely known to Health Grades but not produced or identified in discovery." (Motion to Amend at p. 2.) This statement is not true. As explained in detail in Health Grades' opposition to MDx's motion to compel [Doc. #811], filed concurrently herewith, there is no evidence to show that Health Grades knew about the Shelton Article. MDx's only support for this argument is a Health Grades' physician report, which states that NCQA is one of three organizations that recognizes the American Board of Medical Specialties as a primary source for information about whether a physician is board certified. (Doc. #811-5 at p. 6 (highlighting added).) The NCQA is a huge, non-profit organization that is responsible for a wide variety of services and a voluminous library of resources and publications. Thus, a single mention of NCQA in a Health Grades' physician report is not enough to prove Health Grades knew about a different article that was not even published by NCQA, let alone enough to absolve MDx of its

---

[1] As used herein the "Shelton Article" refers to the article that was authored by Linda K. Shelton, Laura Aiuppa, and Phyllis Torda and published by the Commonwealth Fund in August 2004 (hereinafter the "Shelton Article") (Doc. #811-3).

2004930979_1                                           3

duty to conduct a diligent search for prior art.  *CoreLogic Info. Solutions, Inc. v. Fiserv, Inc.*, No. 2:10-CV-132-RSP, 2012 U.S. Dist. LEXIS 130554, at *7-8 (E.D. Tex. Sept. 12, 2012) (rejecting defendant's argument that "amendments relating to [new prior art] should be permitted because [plaintiff] knew of the prior art and failed to disclose it to Defendants" because there was "not enough evidence in the record . . . to ascertain when each party was chargeable with knowledge or possession of the [new] prior art. . . .").

Moreover, all of the reasons why MDx argues that Health Grades should have known about the Shelton Article apply even more forcefully to MDx, and yet MDx fails to explain why it did not earlier locate the Shelton Article.  MDx has had possession of a Health Grades physician report that mentions NCQA since the beginning of this case – MDx produced it to Health Grades in connection with its initial invalidity contentions on August 26, 2011.  (*See* UCHC 0000001, 0000095-110 at p. UCHC 0000099 (highlighting added) (Ex. 1 hereto); 8/26/11 Email from David Lee to Jesus Vazquez (Ex. 2 hereto).)  Unlike Health Grades[2], MDx had a duty to diligently search for and disclose relevant prior art.  If the reference to NCQA in the Health Grades' physician report so clearly pointed to the Shelton Article, MDx should have found it and disclosed it three years ago.  *CoreLogic*, 2012 U.S. Dist. LEXIS 130554, at *7 ("However, all of the reasons cited for why CoreLogic should have known of Borst [prior art] apply equally well to Defendants, and yet Defendants fail to explain why they did not retain Borst as a non-testifying prior art expert well before February 2012. The fact that CoreLogic

---

[2]  *See, e.g., Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1362 (Fed. Cir. 1984) ("Nor does an applicant for patent, who has no duty to conduct a prior art search, have an obligation to disclose any art of which, in the court's words, he 'reasonably should be aware.'"); *FMC Corp. v. Hennessy Industries, Inc.*, 836 F.2d 521, 526 n.6 (Fed. Cir. 1987) ("As a general rule, there is no duty to conduct a prior art search, and thus there is no duty to disclose art of which an applicant could have been aware.").

knew of Borst does not cure the prejudice resulting from Defendants' failure to disclose in detail their invalidity theories that are based upon the Borst prior art.").

In any event, even if Health Grades had known about the Shelton Article, this would be insufficient to relieve MDx of its burden to demonstrate diligence in support of an amendment under Rule 3-7. *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 2:10-CV-06108(ES-CLW), 2012 U.S. Dist. LEXIS 107408, at *18-19, *22 (D.N.J. July 30, 2012). The *Jazz* court considered and rejected the same kind of argument MDx makes in this case:

> [R]oxane relies on Jazz's alleged lack of disclosure as a basis for not including the Documents in its Initial Invalidity Contentions. Jazz disputes this allegation. This Court finds Roxane's argument to be a distinction without a difference. **The onus is not on Jazz to produce but, rather, Roxane to conduct a diligent search for prior art.** **This includes, but is not limited to, taking reasonable measures to review documents relating to the patents-in-suit and tailoring its public search appropriately.**

*Id.* at *19 (emphasis added). MDx argues that it hired a search firm to search for prior art, but MDx does not state which of the '060 patent claims its search focused on, what sources were originally searched, what keywords were used, or why its original search did not locate the new references it seeks to add to this lawsuit. *Innovative Display Techs. LLC v. Acer Inc.*, No. 2:13-cv-00522-JRG, 2014 U.S. Dist. LEXIS 83196, at *5 (E.D. Tex. June 19, 2014) ("That it took Defendants more time beyond the original deadline to find these new arts, in and of itself, is no excuse for a late supplementation. To hold otherwise would 'render the explanation for the party's failure to meet the deadline a non-factor.'"). Rather, MDx argues that its recent prior art search, which located the Shelton Article and other new patent publications, was prompted by the issuance of Health Grades' related '052 patent. (Motion to Amend at pp. 3-4.) However, this does not explain why MDx could not have found these references during the original search.

The '052 patent is related to the '060 patent, has the same inventors, the same specification, the same drawings, and the same priority date. The claims of these two patents are *not* significantly different. Like claim 1 of the '052 patent, claim 7 of the '060 patent has a claim directed to a "results list." (Doc. #779-3 at p. 36.)

MDx has not met its burden to prove it was diligent.

### 2)   MDx Was Not Diligent in Filing the Motion to Amend

MDx has also failed to meet its burden to prove that it timely filed the Motion to Amend. The Federal Circuit has emphasized the importance of the "timely application" element by recognizing that "if the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery in trial preparation." *O2 Micro*, 467 F.3d at 1366. Courts require defendants who have discovered new prior art to "immediately" raise this issue with the court. *Jazz Pharms.*, 2012 U.S. Dist. LEXIS 107408, at *14; *see also CoreLogic,* 2012 U.S. Dist. LEXIS 130554, at 8-9 (finding two months delay between locating new prior art and filing the motion to amend was *not* timely); *MacroSolve, Inc. v. Antenna Software, Inc.*, No. 6:11-cv-287-MHS-JDL, 2013 U.S. Dist. LEXIS 102954, at *13 (E.D. Tex. July 23, 2013) (finding two months delay between locating new prior art and filing the motion to amend was *not* timely: "GEICO does not dispute that during this time it prepared and filed a 789-page request for ex parte reexamination, but did not file a Motion to amend. GEICO's inability to provide any reasons for . . . delay . . . is indicative of its lack of diligence.")

In this case, MDx does not state exactly *when* it located the three new references it seeks to add to this lawsuit, but admits that its new prior art search was complete in May 2014.

(Stimpson Decl. at ¶ 7 (Doc. #814-2).)  However, MDx waited until August 1, 2014 to file its Motion to Amend.  In the meantime, MDx filed a lengthy request for *Inter Partes Review* of the '052 patent with the Patent Office.  MDx's delay in filing the Motion to Amend, particularly with trial fast approaching, is indicative of a lack of diligence.

### 3) The New Prior Art is Cumulative of the References that MDx Timely Disclosed in its Invalidity Contentions

MDx has failed to demonstrate the importance of the new prior art to the defense of its case.  The Shelton Article is essentially a wish list of the types of information that might be included in a physician directory.  MDx does not explain what unique features are taught by Shelton that are not also taught by the Drucker Report (Doc. #385-3) or the Health Grades' 2005 press release (Ex. 3 hereto), for example.  MDx does not even allege that the Shelton Article discloses *all* of the elements of the '060 patent. (Motion to Amend at p. 4 ("It discloses **many** of the key elements of the claims of the patent in this case.").)  With regard to the two new patent publications, MDx asserts only that they "have relevance" to the '060 patent. (Motion to Amend at p. 6.)  This is not enough to meet the high burden required to prevail on a motion to amend invalidity contentions.  *See, e.g., Innovative Display Techs*, 2014 U.S. Dist. LEXIS 83196, at *6 (denying motion to amend, in part because:  "Defendants have failed to demonstrate the importance of the amendment. Defendants argue — in conclusory fashion — that it is "critically important" that the new art be considered and that these arts provide "a unique ground" for both anticipation and obviousness. However, the Court cannot determine the importance of the amendment based solely on zealous argument."); *see also MacroSolve*, 2013 U.S. Dist. LEXIS 102954, at *17.

### 4) Allowing MDx to Add New Prior Art to this Suit At this Late Date Will Cause Significant Prejudice to Health Grades

Although the Federal Circuit has made it clear that courts need to consider undue prejudice *only* if a motion to amend was timely (MDx's was not) and satisfies the good cause requirement (MDx's does not), this Court should also deny the Motion to Amend because it will cause substantial prejudice to Health Grades.  *See O2 Micro*, 467 F.3d at 1368.  MDx seeks to amend its invalidity contentions at a very late stage of this lawsuit, which has been pending for more than three years.  Further, MDx's invalidity contentions were due on August 18, 2011 (Doc. #34 at p. 6), the Markman Order issued on February 13, 2012 (Doc. #138), expert reports on infringement and invalidity were exchanged in July and September 2012 (Doc. Nos. 305-1, 334-1, 706-3 (excerpt only), 752-2), the Court has ruled on Health Grades' motion for summary judgment on MDx's invalidity defense (Doc. #808), and trial is scheduled to begin in less than four months (Doc. #809).

MDx does not cite any precedent that would support allowing a party to add new prior art so late in a lawsuit.  In *Yodlee, Inc. v. CashEdge, Inc.*, after defendant changed counsel, its new counsel discovered a website that allegedly used the technology at issue.  The court granted leave to amend because defendant's request was not motivated by gamesmanship, *was filed over two months <u>before</u> the fact discovery cutoff*, and did not disturb the court's claim construction orders. No. C 05-01550 SI, 2007 U.S. Dist. LEXIS 39564, 2007 WL 1454259, at *3 (N.D. Cal. May 17, 2007).  In *Theranos, Inc. v. Fuisz Pharma LLC*, the parties did "not dispute that Theranos acted diligently after discovering the existence of the Japanese art or that the Fuisz Defendants have not suffered significant, if any, prejudice." No. 5:11-cv-05236-PSG, 2013 U.S. Dist. LEXIS 143467, at *5 (N.D. Cal. Oct. 2, 2013).  To the contrary, many courts have refused to allow the

addition of new prior art at much earlier stages of the litigation. *Innovative Display*, 2014 U.S. Dist. LEXIS 83196, at *7 (denying motion to amend that was filed before the Markman hearing); *see also Network Appliance, Inc. v. Sun Microsystems, Inc.*, No. C-07-06053 EDL, 2009 U.S. Dist. LEXIS 83090, at *21 (N.D. Cal. Aug. 31, 2009) (denying motion to amend that was filed after expert reports were served); *Jazz Pharms*., 2012 U.S. Dist. LEXIS 107408, at *22-23 (finding prejudice because when the motion to amend was filed, fact discovery had been pending 10 months, the parties had already completed claim construction briefing and the Markman hearing was scheduled shortly thereafter); *Finisar Corporation v. DirecTV Group*, 424 F. Supp. 2d 896, 902 (E.D. Tex. 2006); *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2013 U.S. Dist. LEXIS 137845, at *23 (N.D. Cal. Sept. 25, 2013) ("Acronis does not cite a single case in which a party was granted leave to amend contentions under circumstances similar to those here; namely, a party moving to amend five months after the issuance of the claim construction order and upon the close of fact discovery based on evidence that the party possessed all along. There is no such case because such facts do not constitute diligence.").

MDx argues that there will be no prejudice because the parties have agreed to supplement their expert reports before trial. Nonsense. If this were all MDx needed to show, it would make a mockery of the early disclosure rules. *L.C. Eldridge Sales Co. v. Azen Mfg. Pte*, No. 6:11cv599, 2013 U.S. Dist. LEXIS 186309, at *12-13 (E.D. Tex. Oct. 11, 2013) ("It is not sufficient for Defendants to argue that Plaintiffs' expert could have included the new references in a supplemental report."); *LML Patent Corp. v. JPMorgan Chase & Co.*, No. 2:08-CV-448, 2011 U.S. Dist. LEXIS 128724, 2011 WL 5158285, at *14 (E.D. Tex. Aug. 11, 2011) (rejecting argument that there is no prejudice because "Plaintiff's expert has had adequate time to

respond . . ."). In any event, the parties have not agreed to supplement their expert reports on validity.

MDx's Motion to Amend to add new prior art references to this lawsuit should be denied.

**B.      MDx HAS NOT MET ITS BURDEN TO SHOW GOOD CAUSE EXISTS FOR A NEW INVALIDITY DEFENSE BASED ON 35 U.S.C. § 101**

By way of background, under the U.S. Patent Act not all inventions are patentable. Courts use the phrase "patentable subject matter" to describe that category of inventions that is eligible for patent protection. The statute that governs this issue, 35 U.S.C. § 101, is purposefully ambiguous about what specific types of inventions are patentable and what inventions are not. However, the Supreme Court has consistently stated that laws of nature, natural phenomenon, and abstract ideas cannot be considered statutory subject matter:

- *Gottschalk v. Benson*, 409 U.S. 63, 68 (1972) (finding abstract method of programming a computer to convert digital signals to binary form was not entitled to patent protection);

- *Parker v. Flook*, 437 U.S. 584, 594 (1978) (finding a computerized method for adjusting alarm limits was not patent eligible subject matter);

- *Diamond v. Diehr*, 450 U.S. 175, 191 (1981) (finding invention which relating to an improved process for curing rubber was patentable, even though the only new feature of this invention was the timing process controlled in software by a computer);

- *Bilski v. Kappos*, 561 U.S. 593, 601-602 (2010) (finding claimed invention was not entitled to patent protection because the claims were directed to an abstract idea).

- *Mayo Collaborative Services v. Prometheus Laboratories*, Inc., 132 S. Ct. 1289, 182 (2012) (finding a process to test certain metabolites in patients and drugs used to determine likely drug overdose unpatentable subject matter).

Lack of patentable subject matter under Section 101 is one of the four fundamental invalidity defenses that may be raised by a defendant in patent infringement litigation.[3] As such, patent infringement defendants, like MDx, have an affirmative duty to identify "any grounds for invalidity based on 35 U.S.C. § 101" by the deadline for serving their invalidity contentions. Patent L.R. 3-3 (Doc. #34 at pp. 20-21). Failure to do so should result in preclusion of this defense at trial. *See, e.g., Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.,* 590 F. Supp. 2d 1093, 1103 (N.D. Iowa 2008) (precluding alleged infringer from asserting invalidity under §101 because this defense was not timely disclosed).

### 1) MDx Could Have Raised its Section 101 Defense in Its Original Invalidity Contentions

MDx did *not* raise Section 101 in its original invalidity contentions, but argues that it should be permitted to do so now because of the Supreme Court's recent decision in *Alice Corp. v. CLS Bank*, 134 S. Ct. 2347, 2354 (2014). This argument fails for reasons detailed below.

MDx asserts that the '060 patent is invalid because its claims "are abstract ideas, such as 'method[s] of organizing human activity' and 'long standing commercial practice[s].'" (Motion to Amend at p. 9.) But the law on which this defense is based is not new. Over one hundred and fifty years of precedent support the law that one cannot patent abstract ideas. *See, e.g., Bilski*, 561 U.S. at 601-602; *O'Reilly v. Morse*, 56 U.S. 62, 135 (1854), *and Le Roy v. Tatham*, 55 U.S. 156, 159 (1853)). Thus, the theory upon which MDx rests its new defense, namely, that methods of organizing human activity and/or long standing commercial practices are abstract ideas, is supported by Supreme Court precedent dating back years before the present action commenced.

---

[3] The other three are anticipation under 35 U.S.C. § 102, obviousness under 35 U.S.C. § 103, and enablement, written description, and indefiniteness under 35 U.S.C. § 112.

2004930979_1                                    11

Accordingly, MDx could have timely raised its Section 101 defense by the August 2011 deadline for serving its invalidity contentions.

MDx's showing of diligence rests entirely on the argument that the recently issued *Alice* decision changed the law – it did not.  MDx argues that "[t]he *Alice* decision established a new standard for identifying computer-implemented 'abstract ideas.'"  (Motion to Amend at p. 7.)  The *Alice* decision, however, explicitly refutes this argument, noting "we need not labor to delimit the precise contours of the 'abstract ideas' category in this case." *Alice,* 134 S. Ct. at 2357.  Instead, the *Alice* decision merely restates the test the Supreme Court articulated in *Mayo v. Prometheus*, which is used to determine whether a claim is patentable *after* it has been found that the claims are directed toward an abstract idea.  *Id.* at 2355 (noting "[w]e have described step two of this analysis as a search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'") (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)) (alterations in original).   The *Mayo* decision was issued in March 20, 2012.  If MDx believed that *Mayo* changed the law, it should have sought to amend its invalidity contentions at that time.

MDx also argues that *Alice* creates new law by holding that use of a computer alone does not make an otherwise abstract idea patent eligible.  (Motion to Amend at p. 7.)  This is not new.  Long before the *Alice* decision, the Court had recognized one cannot circumvent the prohibition against patenting abstract ideas by attempting to limit the use of the idea to a particular technological environment.  *Bilski*, 561 U.S. at 610-611.  The Supreme Court has long held that computing environments are no exception, and that abstract ideas do not become patentable

*merely* by reciting a generic computer limitation. *See, e.g., Gottschalk*, 409 U.S. at 68; *Parker*, 437 at 594; *see also Classen Immunotherapies, Inc. v. Biogen IDEC*, 659 F.3d 1057, 1059 (Fed. Cir. 2011) (applying *Bilski* on remand to find that claims are directed toward statutory subject matter); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1376 (Fed. Cir. 2011) (applying *Bilski* to find software claims are invalid under 35 U.S.C. § 101); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 800 F. Supp. 2d 613, 619-21 (D. Del. 2011) (applying *Bilski* to grant summary judgment that claims are invalid subject matter); *Oip Techs., Inc. v. Amazon.com, Inc.*, 2012 U.S. Dist. LEXIS 129396, at *9-23 (N.D. Cal. Sept. 11, 2012) (same). MDx could have argued that the limitations of the '060 patent are abstract ideas performed on a generic computer at the outset of this case. It did not and it is too late to do so now.

MDx's reliance on the Patent Office's revised Examination Instructions is likewise misplaced. The Examination Instructions explicitly note " . . . the basic inquires to determine subject matter eligibility remain the same." (Doc. #814-11 at p. 3). Indeed, all of the examples of abstract ideas that the Examination Instructions provide are from pre-*Alice* cases: (1) fundamental economic practices, *Bilski*, 561 U.S. at 599; (2) certain methods of organizing human activities, *id.*; an idea itself, *Golttschalk*, 409 US. at 67; and (3) mathematical relationships/formulas, *Parker*, 437 U.S. at 594-95. (Doc. #814-11 at pp. 3-4).

Further, MDx overstates and mischaracterizes the opinions expressed by Donald Chisum in his blog post. Mr. Chisum does not express the opinion that Alice changed the law. Rather, he notes that "at least on a first analysis," the author finds "*some* additional guidance, *perhaps* enough to lead us *toward* an oasis in the desert." (Doc. 814-10). In any event, this is just a blog

post from one commentator and is not binding on this Court.  Other commentators have noted that Alice did "little to change, or event clarify, pre-existing law."  For example:

- Robert Merges:  "Those of us who sweat in the clammy gymnasia of patent law have been waiting – with a mix of excitement, dread, and cynical disregard – for the *Alice v. CLS Bank* decision.  The idea was, when the Court took the case, that we would finally have an answer to the question whether software can be patented under U.S. law.  **To say we did not get an answer is to miss the depth of the non-answer we did get.** . . ."

- Justin Nelson:  "**For patent litigants, Court affirms status quo.**  The reaction from patent litigants to the Supreme Court's decision yesterday in *Alice Corp. v. CLS Bank* was one big shrug.  The decision was exactly as expected.  While the Court made clear that abstract ideas remain unpatentable, it "tread[ed] carefully" in construing patentability.  **Indeed, the most notable part of the decision was that it shied away from any grand pronouncements.  Rather, it relied heavily on prior cases such as** *Bilski v. Kappos*, *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, **and** *Association for Molecular Pathology v. Myriad Genetics*. . . ."

- John Duffy:  "Although *Alice Corp. v. CLS Bank* was identified by this website and many other commentators as a major case on patent law, **the Supreme Court's unanimous resolution of the case does little to change, or even to clarify, pre-existing law**.

June 22, 2014 *SCOTUSblog* (available at:  http://patentlyo.com/patent/2014/06/scotusblog-symposium-alice.html) (emphasis added) (Ex. 4 hereto).

Finally, MDx relies on the multiple opinions offered by the Federal Circuit in *Alice* as evidence that the law was in flux in an effort to justify its belated disclosure of this defense. (Motion to Amend at pp. 7-8.)  The *Transamerica* court rejected a very similar argument:

> Transamerica hangs its "good cause" argument concerning its belated assertion of its "patent-eligible subject matter" claim or defense under 35 U.S.C. § 101 on a change in the standard for such a claim or defense in the October 30, 2008, *en banc* decision of the Federal Circuit Court of Appeals in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008). . . . This court understands *Bilski* to clarify which one of several tests previously applied by the courts should apply to determine "patent-eligible subject matter," rather than to make a new test out of whole cloth. Nevertheless, even assuming that *Bilski* created "new law," the court concludes that Bilski does not excuse Transamerica's untimely assertion of a "patent-eligible subject matter" claim or defense.

> . . . . [A]lthough *Bilski* may have made a "patent-eligible subject matter" claim or defense more viable, Transamerica certainly knew or should have known that the Federal Circuit Court of Appeals was considering the standards for "patent-eligible subject matter" *en banc* in *Bilski*, and should have preserved such a claim or defense by timely asserting it, even if Transamerica could not predict what rule would ultimately come out of the *en banc* decision. **At the latest, Transamerica should have asserted the "patent-eligible subject matter" claim or defense in February 2008, when the Federal Circuit Court of Appeals granted *en banc* review in *Bilski*.** Had Transamerica done so, and had this court applied a different standard than the one ultimately chosen in the *en banc* decision in *Bilski* to such a claim or defense, Transamerica would have been entitled to application of the Bilski standard on appeal.

*Transamerica*, 590 F. Supp. 2d at 1103-1104 (emphasis added) (citations omitted).

Similarly in this case, the Federal Circuit granted *en banc* review of the *Alice* case on October 17, 2012. *CLS Bank Int'l v. Alice Corp. Pty., Ltd.*, 2012 U.S. App. LEXIS 24896 (Fed. Cir. Oct. 17, 2012). At the very latest, MDx should have sought to add its "patent-eligible subject matter" defense under Section 101 at that time.

Accordingly, MDx has not been diligent in amending its invalidity contentions to include a new defense that the '060 Patent is directed toward an abstract idea.

### 2)   MDx's New Section 101 Defense is Likely to Fail

Allowing MDx to assert invalidity under Section 101 would be futile because the '060 patent claims are directed to patent eligible subject matter. The patent claims at issue in *Bilski* and *Alice* claimed subject matter that had long been in use, albeit without computer implementation. In *Bilski*, the claims described "the basic concept of hedging, or protecting against risk" that is "a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class.'" *Bilski*, 561 U.S. at 611. Likewise, in *Alice*, the claims were drawn to the concept of intermediated settlement; i.e., the use of a third party to

mitigate settlement risk.  "Like the risk hedging in Bilski, the concept of intermediated settlement is 'a fundamental economic practice long prevalent in our system of commerce.'" *Alice*, 134 S. Ct. at 2356 (citing *Bilski*, 561 U.S. at 611).  Indeed, the patent owner in *Alice* principally contended that the claims were patent eligible *because* they "require[d] a substantial and meaningful role for the computer."  *Alice*, 134 S. Ct. at 2359.

In contrast in this case, there is no evidence that anyone implemented the system that is claimed in the '060 patent on a computer *or otherwise* before Health Grades invented its system.  Said another way, the eligibility of the '060 patent for patent protection does not rest on the fact that it is implemented on a computer.  As such, the '060 patent does not claim an abstract idea and therefore it is eligible for patent protection.

### 3) Health Grades Will be Prejudiced

MDx has not shown good cause for allowing it to add a new Section 101 defense, but even if it had, this Court may deny the Motion to Amend because granting this motion will cause significant prejudice to Health grades for the same reasons described above.

The Motion to Amend should be denied.

Respectfully submitted August 13, 2014.

                    LEWIS ROCA ROTHGERBER LLP

                    *s/ Adam L. Massaro*
                    Gregory B. Kanan, Esq.
                    Kris J. Kostolansky, Esq.
                    Adam L. Massaro, Esq.
                    1200 17th Street, Suite 3000
                    Denver, Colorado  80202
                    Tel: (303) 623-9000
                    Fax: (303) 623-9222
                    E-mail: gkanan@lrrlaw.com
                    E-mail: kkosto@lrrlaw.com
                    E-mail: amassaro@lrrlaw.com
                    *Attorneys for Plaintiff Health Grades, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2014, I electronically filed the foregoing **PLAINTIFF HEALTH GRADES, INC.'S OPPOSITION TO DEFENDANT MDX MEDICAL, INC.'S THIRD MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS [DOC. #814]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Vincent Ferraro, Esq.
David C. Lee, Esq.
Trent Dickey, Esq.
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
E-mail: sstimpson@sillscummis.com
E-mail: vferraro@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: tdickey@sillscummis.com

Terence M. Ridley, Esq.
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO  80202-5647
E-mail: ridley@wtotrial.com

*s/ Adam L. Massaro*
Adam L. Massaro, Esq.