# EXHIBIT A

(Redacted version of Dkt. # 818)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

# HEALTH GRADES, INC.'S MOTION TO COMPEL AND FOR ADDITIONAL SANCTIONS FOR MDx MEDICAL, INC.'S FAILURE TO COMPLY WITH COURT-ORDERED DISCOVERY

Pursuant to Rules 37(a)(3)(B) and (b)(2)(A) & (C) of the Federal Rules of Civil Procedure, Plaintiff Health Grades, Inc. ("Health Grades") respectfully moves this Court for an order compelling Defendant MDx Medical, Inc. ("MDx") to address the numerous shortcomings in its answers to Health Grades' Interrogatory No. 2 and enter additional sanctions against MDx and its counsel for their continued failure to comply with this Court's Orders [Doc. #192] ("Discovery Order") and [Doc. #711] ("Sanctions Order").

## INTRODUCTION AND BACKGROUND

On April 26, 2012, this Court ordered: "MDx to supplement its response to Interrogatory No. 2 to state for each claim element whether MDx's Accused Products provide such an element or an equivalent and, if not, explain how MDx's Accused Products operate or function differently than the claim element." Order [Doc. #192 p. 2]. MDx failed to comply with the Discovery Order concerning the healthcare provider set of data elements and was sanctioned by

this Court on January 3, 2014. [Doc. #711.] In the Sanctions Order, the Court twice addressed the requirement that MDx fully respond to Interrogatory No. 2 and reiterated the Court's previous Order in no uncertain terms:

> On or before January 24, 2014, MDx shall make the necessary inquiry, including designing any specific query necessary to run the analysis on MDx's database, and shall fully comply with my order compelling discovery to "state for each claim element whether MDx's Accused Products provide such an element or an equivalent and, if not, [to] explain how MDx's Accused Products operate or function differently than the claim element. . . ."

Order [Doc. #192 p. 2]. On April 30, 2014, in rejecting MDx's Motion for Reconsideration, this Court ruled that: "The Motion to Compel made clear exactly what Health Grades was seeking and why, and my order compelled a full and complete answer to the question." Order [Doc. #784 p. 4]. MDx, however, continues to withhold information, present false and misleading statements, and refuse to expressly admit or deny that it practices the claim elements. The Court should require MDx to fully explain whether it practices the claim elements and enter additional sanctions against MDx and its counsel for their continued noncompliance.

  A. <u>The Creating a Report Using Third-Party Information Element</u>.

MDx has failed to provide a full, complete, and truthful response concerning the creating a report element under claims 1 and 15. This element requires:

> creating [or create] . . . a healthcare provider report on the first healthcare provider using . . . the information verified by the independent third party source . . . .

['060 Patent, Claims 1 and 15(the "Creating a Report Using Third-Party Information Element").] Information verified by the independent third-party source may include "disciplinary action

information" and "licensure." [*Id.*]  Judge Brimmer concluded that "creating" and "using" required no construction and the plain English meaning applied [Doc. #138 pp. 20-21].

The Sanctions Order required MDx to provide a supplemental response to Interrogatory No. 2 on January 24, 2014 ("January 2014 Supplemental Response").  MDx swore in its response that "[t]he www.vitals.com website after January 2011 has *not* created provider profiles[1] containing or using disciplinary action information."  [Doc. #757 p. 11 (emphasis added).]  MDx further swore that "[w]ith one exception,[2] the www.vitals.com website after January 2011 has *not* created provider profiles containing or using licensure information" [*id.* (emphasis added)].

These statements are false.  Vitals.com issues awards to providers that it displays within its providers profiles, including the "Patients' Choice Award" and "Most Compassionate Doctor Award."  [Exhibit A, screenshot of Awards & Recognition Program webpage from August 6, 2014.]  For example, Dr. Jane Kano's vitals.com report features the awards she has received:

---

[1] MDx refers to its "reports" as "profiles."
[2] The one exception MDx identifies is "where licensure information was included in [search engine optimization] landing pages . . . .[Search engine optimization pages] . . . are reached by clicking a Vitals.com result in a search engine such as Google or Bing" [Doc. #757 p. 11].  The search engine optimization exception is unrelated and separate from the type of culling described herein.



[Exhibit B, screenshots of the "Summary" and "Credentials" webpages for Dr. Kano (highlighting added) from August 6, 2014.][3] According to MDx, for providers to be eligible for the Vitals Awards and Recognitions, they must be licensed and have no sanctions: "Vitals Awards & Recognitions doctors have active medical licenses and no sanctions." [Exhibit A.] MDx therefore used disciplinary action and licensure information from its database and system to determine the eligibility of Dr. Kano and other physicians for the awards that are part of their reports as shown on vitals.com. Because the awards are part of the provider's report, any contention that disciplinary action information and licensure is not used in creating the report is baseless and false.

---

[3] The icon to the right of the Patients' Choice Award icon is the "Compassionate Doctor" icon, which includes the same type of pop-up.

2004919016_2 - 4 -

MDx's statement in the January 2014 Supplemental Response that it did not use disciplinary actions or licensure information was sworn to by Erika Boyer, a founder of MDx, and Vice President, Data Operations [Doc. #757 p. 11] and was not corrected in the May 7, 2014 supplement ("May 2014 Supplemental Response") [Exhibit C]. She knew or should have known that MDx was using disciplinary action information and licensure information as her company's website reveals its use of the same. [Exhibit A.]

MDx also has frustrated Health Grades' attempts to explore the issue of MDx's use of disciplinary action and licensure information on a variety of fronts. As a result of this Court's Sanctions Order, the parties scheduled a deposition of an MDx corporate representative. The purpose of the deposition was to allow Health Grades to explore and address whether MDx practiced the claim elements. At the May 15, 2014 deposition, when Health Grades counsel asked the deponent whether disciplinary action information had been used to cull out providers as award recipients, he testified that he did not know, despite the fact that MDx had discussed such issues in internal emails as early as November 9, 2011. [Exhibit D, deposition transcript pp. 141:6-142:4; Exhibit E, November 9, 2011 email exchange involving Ms. Boyer.]

After the May 15 deposition, Health Grades pushed to gather more information regarding MDx's use of disciplinary action information when creating provider reports. Each request was met with resistance and delay tactics. For instance, Health Grades counsel sought documents and information relating to when providers are suppressed from select searches. [Exhibit F, email from Heath Grades counsel to MDx counsel, dated May 27, 2014.] MDx counsel responded that they needed to review the deposition transcript before addressing the request. [*Id.* at email, dated May 29, 2014.] Twenty-four days later, MDx counsel responded that Health

Case 1:11-cv-00520-RM-BNB Document 818 Filed 08/06/14 USDC Colorado Page 6 of 17

Grades should have asked for the requested information years ago and never addressed whether MDx had the requested information or what it revealed. [*Id.* at email, dated June 20, 2014.] But MDx only included in the January 2014 Supplemental Response the affirmative false statement that it did not use disciplinary action information or licensure when creating a report. [*Compare* Doc. # 632-1 p. 6, *with* Doc. #757 p. 12.]

MDx counsel subsequently represented during a conferral call in July that providers are not suppressed from select searches. During this same call, Health Grades counsel explained that it also needed to know whether sanctioned providers were eligible for the different vitals.com awards, such as the Patient Choice Award. Health Grades counsel asked again about the award eligibility during follow-up conferral calls on July 17 and 23, 2014. During both calls, none of the three attorneys representing MDx revealed that disciplinary action had been used to cull out physicians from awards eligibility. Approximately two hours after the July 23 call, MDx counsel admitted that, "[p]rior to September 2013, a physician was not able to receive a Patient Choice Award if they have been disciplined or sanctioned." [Exhibit G, July 23, 2014 email from MDx counsel.] MDx counsel's email also contained the following statement: "This will confirm that a disciplinary action or sanction against a physician was not and is not considered in determining doctor awards for the calendar year 2014 to date." [*Id.*] This statement is contrary to the vitals.com webpage, stating that physicians receiving Vitals Awards and Recognitions are doctors who "have active medical licenses and no sanctions." [Exhibit A.] MDx counsel also stated that they would determine by July 24 whether the same culling had been applied to any other award and the applicable time period. [Exhibit G.] They have not.

After confronting MDx counsel about the false statements on July 30, 2014, they provided the following "justification," two days later:

> MDx's verified response to interrogatory no. 2 is not false. . . . The claim element requires creating a <u>report</u> using this information, not creating an award. See, e.g., Greenspun paragraph 153 (using to create a report is using by page or report-generating software). And even the awards are not created using disciplinary action— they are given to the physician when certain criteria are met and there is an <u>absence</u> of disciplinary sanctions.

[Exhibit G, at August 1, 2014 email from MDx counsel (underlining in original).][4] The newly revealed "justification" confirms that MDx did not comply with the Court's discovery orders [Doc. Nos. 192, 711, 784]. MDx was obligated to "fully" answer Interrogatory No. 2 and, if the Accused Products do not provide such an element "explain how MDx's Accused Products operate or function differently than the claim element . . . " [*id.*]. At a minimum, MDx and its counsel were required to include in the January 2014 and the May 2014 Supplemental Response this contrived "justification" for why MDx does not practice the claim element. They did not.

MDx's "justification" is also incredible. It fails to address how such a narrow and tortured interpretation is consistent with the Markman Order that held all parties to the plain English meaning of "creating" and "using" [Doc. #138 p. 20]. The "fine distinction" again drawn by MDx counsel is the same type of distinction that this Court found constituted a sanctionable and "impermissible sleight-of-hand" [Doc. #784 p. 6]. Language from the Court's

---

[4] MDx's citation to paragraph 153 of Dr. Greenspun's expert report [Doc. #305-1] is off point. Paragraph 153 related to a different claim element, namely the compiling third-party verified information claim element. Dr. Greenspun stated: "This claim element relates to whether information is compiled, e.g., into a relational database, and is unrelated to the question of what is ultimately displayed in a report." This statement does not relate to, let alone support, MDx's argument that it did not need to disclose the fact that it uses the absence of sanctions to determine whether to give physicians an award and then uses awards to create the physician reports.

April 30, 2014 Order is equally applicable: "The argument was misleading, if not an outright falsehood, when made, and the care with which the statements are presented makes the lack of candor clear." Order [Doc. #784 pp. 4-5].

      B.      <u>MDx Evaded Its Obligation to Admit That 3,982 Doctor Reports Meet All the Claim Elements or Explain Why They Do Not</u>.

Health Grades need show only one instance where all the claim elements are satisfied to establish infringement. 35 U.S.C. 271(a) (a party that "makes, uses, offers to sell, or sells any patented invention . . . therefor, infringes the patent"). At least 3,982 doctor reports appear to meet all six claim elements of claims 1 and 15 [Exhibit C pp. 3-15, 18-19]. MDx has expressly admitted in its May 2014 Supplemental Response that all the reports, including the 3,982 doctors, meet the first, fourth, and sixth claim elements [*id.* at p. 18] and several of the dependent claims as well. For the second, third, and fifth claim elements, MDx evaded its obligation to admit that 3,982 doctor reports meet all the claim elements or explain why they do not satisfy each and every element.

For the second claim element, MDx states that the "number of provider profiles that *may* literally meet this claim element . . . of 'accessing healthcare provider-verified information . . . received from the healthcare provider is between Number A and Number B." [Exhibit C p. 6 (emphasis added).] MDx cannot hedge. It must either admit it practices the claim element for the amount of provider reports between Number A (10,785 provider reports) and Number B (11,334 provider reports) or explain why not.

For the third claim element (compiling patient ratings), MDx states:

> The numbers of patient ratings for providers who have data designated as being edited directly by the provider or indirectly by MDx customer service, or imported by MDx, is shown in MDX 0143095 – MDX 0143098. ==Any provider who does not have any patient ratings from Vitals.com does not infringe this claim element.==

REDACTED

[Exhibit C p. 6] (highlighted added).] MDx's use of the negative is designed to evade admission. MDx appears to concede that 9,759 physicians (the Number C physicians) meet this third claim element because they have patient ratings. If this is the case, MDx must admit it practices the claim element with respect to these reports. If not, MDx must follow the Court's order and "fully explain" why it does not.

For the comparison ratings portion of the fifth claim element, MDx states:

REDACTED

[Exhibit C p. 14.] Rather than admit that the 3,982 physician reports referenced herein satisfy the comparison rating requirement, MDx counsel employs its wordsmithing techniques to avoid admission. If these 3,982 reports satisfy the comparison ratings requirement, MDx must admit this or explain why not.

For the remainder of the fifth claim element (requiring the use of certain verified information to create a report), MDx admits (because it does not deny) that the 3,982 doctor reports were created using three or more of the claimed types of physician verified information. [*Id.* at pp. 10-12.] MDx also admits (because it does not deny) that the 3,982 doctor reports were created using patient provided information. [*Id.*] MDx also admits (because it does not deny)

that the 3,982 doctor reports were created using medical school and board certification information. [*Id.*]

In light of MDx's failure to expressly admit that it practiced the claim elements (at least with respect to these 3,982 doctor reports) and in an effort to resolve these issues without court intervention, Health Grades counsel approached MDx counsel about ways to narrow the issues and identify any claim elements (or portions thereof) that are not in dispute. On July 18, 2014, Health Grades sent MDx a set of Requests for Admission targeted at summarizing the foregoing admissions in a clear and concise manner ("Requests for Admission") [Exhibit H]. The requests feature a representative doctor from the pool of 3,982 doctors. After MDx reviewed the responses and answered the requests it deemed relevant, the parties agreed to confer after MDx responded to the remaining admissions. MDx responded to only six of the fourteen requests and has refused to respond to remaining fourteen (Nos. 1, 2, 7, 8, 9, 10, 11, 12, 13, 14, 16, 23, 24, and 25). [Exhibit I, email from MDx counsel to Health Grades, dated July 30, 2014.]

## ARGUMENT

### I. MDx SHOULD BE COMPELLED TO FULLY EXPLAIN WHETHER IT PRACTICES THE CLAIM ELEMENTS.

Heath Grades' Interrogatory No. 2 is a "contention" interrogatory. "The purpose of such [an] interrogator[y] is to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position." *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000).

First, MDx should be compelled to fully respond to the Creating a Report Using Third-Party Information Element. It must explain why or why not MDx practices the claim element in light of the fact that disciplinary action information and licensure are used when determining

2004919016_2                                                   - 10 -

awards eligibility. MDx also must include a sworn statement describing in detail how the culling was done and the awards to which the culling applied, why a change was allegedly made in September 2013, why the alleged change was not disclosed to Health Grades in September 2013, the identity of the persons allegedly making the changes in September 2013, and why that change was not reflected in the January and May 2014 supplemental responses.

Second, MDx should be compelled to fully respond to Health Grades' Requests for Admission. Health Grades' requests are an extension of its Interrogatory No. 2 and designed to effectuate the goal of Interrogatory No. 2—to narrow the issues. The requests require MDx to make affirmative and clear statements that track the exact language of the asserted claims. The narrowly tailored admissions should lessen MDx and its counsel's ability to wordsmith and obfuscate discovery. Ordering MDx to fully respond to the requests is also consistent with Federal Rule of Civil Procedure 1 because the admissions should assist in narrowing the issues and make it easier for the jury to understand what claim elements are in dispute (and what claim elements are not in dispute).

When MDx supplements its response to the Creating a Report Using Third-Party Information Element and responds to the Requests for Admission, it must also honor the Court's Markman Order and admit or deny based on the Court's claim constructions, not its own claim construction which have not been accepted by this Court.[5]

---

[5] For example, MDx argued that the term "verified" should be construed to require something more than merely receiving information from a provider. Judge Brimmer rejected MDx's proposed construction: "Information may be verified by receipt of the information from the first healthcare provider or in some other manner . . . ." Recently Judge Moore denied MDx's request to reconsider Judge Brimmer's claim constructions and further held that "at this trial I am not going to permit experts to be redefining terms. We're going to stick with the *Markman* order . . . ." [Exhibit J p. 7.]

Case No. 1:11-cv-00520-RM-BNB Document 834-2 filed 08/20/14 USDC Colorado pg 13 of 13
Case 1:11-cv-00520-RM-BNB Document 818 Filed 08/06/14 USDC Colorado Page 12 of 16
of 17

Third, to further address the harm to Health Grades, this Court should compel MDx to again produce a corporate representative for a deposition. Health Grades has been deprived of the opportunity to fully examine MDx on the claim elements because MDx withheld information and provided false information. Once MDx has produced complete responses, MDx should be compelled to produce a corporate representative for a deposition in Denver—at MDx's cost—relating to the Creating a Report Using Third-Party Information Element and all other elements.

II.     ADDITIONAL SANCTIONS.

In addition to the above-requested relief, the Court should sanction MDx and its counsel. Fed. R. Civ. P. 37(a). The Court has the discretion to select and impose any sanction that is "just and related to the particular 'claim' which was at issue in the order to provide discovery." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). Where a dispositive sanction is at issue, factors in determining an appropriate sanction include: (1) the degree of actual prejudice to the moving party, (2) the amount of interference with the judicial process, (3) the culpability of the non-moving party, (4) whether the Court warned the party that a dispositive sanction would be likely for noncompliance, and (5) the efficacy of lesser sanctions. *See Cache La Poudre Feeds, LLC v. Land O'Lakes Farmland, LLC*, 244 F.R.D. 614, 636 (D. Colo. 2007).

Health Grades requests that this Court (1) preclude MDx from presenting argument or evidence in defense to Health Grades' contention that MDx practices the Creating a Report Using Third-Party Information Element, *see* Fed. R. Civ. P. 37(b)(2)(A)(ii); (2) order that the jury be informed of MDx and its counsel's discovery abuses, *see Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1181-83 (10th Cir. 1999) (upholding discovery sanction of jury instruction that party violated discovery order); *HR Tech., Inc. v. Imura Int'l U.S.A., Inc.,* 2011 U.S. Dist.

Lexis 43160, at *13, 2011 WL 1527019 (D. Kan. Apr. 20, 2011) (same); and (3) award Health Grades its expenses, fees, and costs for (i) the time Health Grades' technical expert, Dr. Greenspun, will spend analyzing the new information and revising his expert report in light of MDx's non-disclosure; (ii) the time Health Grades' attorneys spent addressing MDx's non-disclosure; (iii) re-deposing an MDx corporate representative; and (iv) preparing this motion.

Health Grades also requests that the Court preclude MDx from presenting argument or evidence in defense to Health Grades' contention that MDx practices the Physician Information Element. As shown, MDx and its counsel's continued improper conduct confirms that the false and misleading statements MDx previously made were no mistake at all.

A. <u>Health Grades Has Been Prejudiced</u>.

MDx and its counsel's conduct have prevented Health Grades from adequately preparing for trial. *See FDIC v. Renda*, 126 F.R.D. 70, 73 (D. Kan. 1989) (A "party's 'ability to prepare . . . adequately prepare for trial, is significantly diminished' when it does not receive sufficient responses to its discovery requests."). Trial is less than four months from the date of this filing and discovery has closed. Health Grades only learned in the past week—through MDx counsel's e-mail—that MDx culls physicians based on disciplinary action and licensure information and uses that information to create a report. Had MDx honored its discovery obligations in the first place, Health Grades would have learned of MDx's use of the third-party information two years and eleven months ago and conducted targeted discovery regarding the same (MDx served its first response to Interrogatory No. 2 on August 29, 2011 [Doc. #126-4]). Health Grades also has been prejudiced because it still does not know what elements MDx admits or denies it practices.

B.  MDx and Its Counsel's Actions Have Interfered With the Judicial Process.

The Sanctions Order found that "MDx and its counsel ha[ve] seriously interfered with the judicial process. At a minimum, [their] conduct required Health Grades to file a motion to compel, which was the topic of a hearing. . . ." [Doc. #711 p. 9]. The Creating a Report Using Third-Party Information Element and use of evasive language to avoid admitting that 3,982 doctor reports satisfy the claim elements are just the most recent example of MDx and its counsel disobeying the Court's discovery orders. Its counsel's modus operandi has resulted in this Court dedicating a significant amount of time away from the merits of the case to police them. *See Dixon v. Ruiz*, 870 F. Supp. 2d 1179, 1182 (D. Colo. 2011).

C.  MDx and Its Counsel Are Culpable.

MDx's failure to comply with this Court's Discovery Order and Sanctions Order is not by mistake, or an isolated incident, but by design and willful. The improper conduct occurred after the Sanctions Order was in place, which made clear the degree of inquiry required and that MDx must respond "fully" [Doc. Nos. 711; 784]. MDx and its counsel simply chose not to reveal the culling of information or admit that 3,982 doctor reports satisfy the claim elements. Finally, the "fine distinction" drawn by MDx counsel to justify withholding the culling information is just another "impermissible sleight-of-hand" [Doc. #784 p. 6]. Only after extensive probing by Health Grades did MDx reveal the contrived explanation upon which MDx hopes to sidestep two direct Orders from this Court.

D.  Warning of Sanctions and the Efficacy of Lesser Sanctions.

MDx had ample warning that it was obligated to "fully" comply with this Court's Orders. The Court even provided MDx a brief tutorial regarding the obligations of a party and counsel in

Case No. 1:11-cv-00520-RM-NYW Document 824-2 filed 08/20/14 USDC Colorado pg 16 of 16
Case 1:11-cv-00520-RM-BNB Document 818 Filed 08/06/14 USDC Colorado Page 15 of 16
of 17

responding to interrogatories. Order [Doc. #711 p. 5]. Further, the sanctions requested by Health Grades are not dispositive. Whether the sanctions will be sufficient to bring the conduct of MDx and its counsel in line with the Rules remains to be seen. The previous sanctions and admonishments were clearly not enough. Lastly, the requested sanctions are appropriate because MDx and its counsel are repeat offenders. *Ehrenhaus,* 965 F.2d at 920.

**Certificate of Compliance with D.C. COLO.LCivR 7.1A:** Counsel for Health Grades has conferred with counsel for MDx regarding the relief request herein via email on July 30-31, 2014, and August 1, 2014. MDx opposes the requested relief.

WHEREFORE, Health Grades respectfully requests that this Court grant its Motion to Compel and for Additional Sanctions for Failure to Comply with Court-Ordered Discovery.

Respectfully submitted August 6, 2014.

    LEWIS ROCA ROTHGERBER LLP

    *s/ Kris J. Kostolansky*
    Gregory B. Kanan, Esq.
    Kris J. Kostolansky, Esq.
    Adam L. Massaro, Esq.
    1200 17th Street, Suite 3000
    Denver, Colorado 80202
    Tel: (303) 623-9000
    Fax: (303) 623-9222
    E-mail: gkanan@lrrlaw.com
    E-mail: kkosto@lrrlaw.com
    E-mail: amassaro@lrrlaw.com
    *Attorneys for Plaintiff Health Grades, Inc.*

Case No. 1:11-cv-00520-RM-NYW Document 824-2 filed 08/20/14 USDC Colorado pg 17 of 17
Case 1:11-cv-00520-RM-BNB Document 818 Filed 08/06/14 USDC Colorado Page 16 of 16
of 17

CERTIFICATE OF SERVICE

      I hereby certify that on August 6, 2014, I electronically filed the foregoing **HEALTH GRADES, INC.'s MOTION TO COMPEL AND FOR ADDITIONAL SANCTIONS FOR MDx MEDICAL, INC.'S FAILURE TO COMPLY WITH COURT-ORDERED DISCOVERY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Vincent Ferraro, Esq.
David C. Lee, Esq.
Trent Dickey, Esq.
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY 10112
E-mail: sstimpson@sillscummis.com
E-mail: vferraro@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: tdickey@sillscummis.com

Terence M. Ridley, Esq.
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO 80202-5647
E-mail: ridley@wtotrial.com

                                                *s/ Kris J. Kostolansky*
                                                Kris J. Kostolansky, Esq.