**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S MOTION *IN LIMINE* TO PRECLUDE
HEALTH GRADES, INC. FROM MAKING INFRINGEMENT ARGUMENTS
NOT IN ITS INFRINGEMENT CONTENTIONS**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by its undersigned counsel, files this Motion *In Limine* to Preclude Health Grades, Inc. ("Health Grades") From Making Infringement Arguments Not In Its Infringement Contentions ("Motion").

Pursuant to D.C.COLO.L.Civ.R 7.1(a), counsel for MDx conferred with Health Grades, and Health Grades opposes this Motion.

**I.    THE APPLICABLE LAW**

The parties agreed, and the Court expressly ordered, that the parties must abide by the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California (the "Patent Local Rules"). *See* Scheduling Order, dated June 16, 2011, Dkt. No. 34, at 6. The Patent Local Rules are attached to the Scheduling Order as Exhibit A. *Id*.

1

Local Patent Rule 3-1 requires the plaintiff patentee to state what it alleges is being infringed, and how. *See Sage Electrochromics, Inc. v. View Inc.,* 2013 U.S. Dist. LEXIS 127598 *4-*5 (N.D. Cal. Sep. 6, 2013). "The purpose behind Rule 3-1 is to require a plaintiff to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Freescale Semiconductor, Inc.*, 2010 U.S. Dist. LEXIS 91281 *4-*5 (N.D. Cal. Apr. 26, 2010); *accord InterTrust Techs. Corp. v. Microsoft Corp.,* 2003 U.S. Dist. LEXIS 22736 *8 (N.D. Cal. Dec. 1, 2003) ("The purpose of Patent Local Rule 3-1, however, is in fact to be nit-picky, to require a plaintiff to crystalize its theory of the case and patent claims.").

Section 3-6 of the Patent Local Rules states that "[a]mendment of the Infringement Contentions . . . may be made **_only by order of the Court upon a timely showing of good cause_**." *Id.*, Exhibit A, PAT 8 (emphasis added). "Good cause under the Patent Local Rules '**_requires a showing of diligence_**' [and] the burden is on the party amending its contentions 'to establish diligence rather than on the opposing party to establish lack of diligence.'" *Brilliant Instruments, Inc. v. GuideTech, Inc.*, 2011 U.S. Dist. LEXIS 30835 *4 (N.D. Cal. Mar. 15, 2011) quoting *O2 Micro Int'l v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1366 (Fed. Cir. 2006) (emphasis added). The party amending its contentions must show that it "'acted with diligence in **_promptly moving to amend when new evidence is revealed in discovery_**.'" *Genentech, Inc. v. The Trustees of the Univ. of Penn.,* 2011 U.S. Dist. LEXIS 108127, *4 (N.D. Cal. September 16, 2011) quoting *O2 Micro Int'l*, 467 F.3d, at 1363 and 1366. Moreover, the opposing party does not need to show prejudice if the amending party cannot show diligence. *Genentech, Inc.,* 2011 U.S. Dist. LEXIS 108127 at *4; *see also Tokai Corp. v. Easton Enters., Inc.*, 2009 U.S. Dist. LEXIS 64669, *11 (C.D. Cal. July 8, 2009); and *O2 Micro Int'l,* 467 F.3d, at 1368.

2

If a party fails to comply with the duty to timely move to amend the contentions, the appropriate remedy is precluding the argument from the case. *See O2 Micro Int'l*, 467 F.3d, at 1363 quoting *Fed. R. Civ. P.* 16(f); *Fed. R. Civ. P.* 37(b)(2)(B) ("The local patent rules . . . are essentially a series of case management orders, and the deadlines for submission of contentions in this case were explicitly included in a supplemental case management order.  The court may impose any 'just' sanction for the failure to obey a scheduling order, including 'refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.'"); *see also Teashot LLC v. Green Mt. Coffee Roasters, Inc.*, 2014 U.S. Dist. LEXIS 14841, *28-*29 (D. Colo. Feb. 6, 2014) (waiver of infringement theory for failing to timely disclose in contentions); *Asus Computer Int'l v. Round Rock Research, LLC*, 2014 U.S. Dist. LEXIS 50728, *8-*16 (N.D. Cal. Apr. 11, 2014) (striking various infringement theories from the plaintiff's expert report for failing to timely disclose such theories in infringement contentions); and *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 U.S. Dist. LEXIS 120404, 6-7 (N.D. Cal. Aug. 22, 2013) (granting defendant's motion *in limine* to exclude various infringement theories not timely disclosed in plaintiff's infringement contentions).[1]

## II.     HEALTH GRADES ARGUMENT ABOUT BESTOWING AWARDS

Every claim of the asserted patent requires that third-party verified data be used to ***create a report***.  United States Patent No. 7,752,060 ("the '060 patent"), attached hereto as Exhibit A,

---

[1] Health Grades fully agrees that parties have a duty to act diligently and timely move to amend contentions, or be barred from asserting those allegations.  *See* Health Grades' Opposition to MDx's Third Motion for Leave to Amend Invalidity Contentions Dkt. #829, Section II, at  2-10 (*e.g.*, at page 6 -- emphasizing requirement that parties amend their contentions promptly after discovering the new information  else contentions requirement would be meaningless).

3

col. 20, lines 58-62; col. 22, lines 48-53. Health Grades has recently alleged (including in connection with a motion to compel and for sanctions, Dkt. # 818), that because MDx used third party data in its criteria for ***bestowing awards to providers***, that use should be considered use in ***creating a report*** under this claim language because the awards can be included in the reports.[2]

Health Grades has known of MDx's use of disciplinary and licensure information in connection with its determinations of awards for years. For example, in August of 2011, in the very first MDx document production, MDx produced documents that laid out the criteria for awards, which plainly required that the providers be active and have no sanctions. *See* MDX 0000183, attached hereto as Exhibit C, with cover email dated ***August 26, 2011*** (highlighting added). As another example, in ***January of 2012***, MDx produced to Health Grades another document addressing MDx's use of third party disciplinary information to suppress doctors, and to "weed out" doctors from "Top Ten" pulls. *See* MDX 0062500-502, attached hereto as Exhibit

---

[2] Analyzing criteria to determine if a provider should receive an award is an entirely different and separate software routine from the "creating a report" function required by the claims of the '060 patent. The '060 patent's claims themselves distinguish two different things: (1) creation of and compilation of information on the providers, such as awards, for the underlying database; and (2) creation of the reports on providers. *Compare, e.g.,* Exhibit A, claim 1, col. 20, lines 39-57 (the claim elements addressing "compiling" various pieces of information for the database) and lines 58-62 (the claim element addressing using the information to actually create a report). The '060 patent's specification makes the same distinction. *See, e.g., id*. at Figure 16, with col. 17, lines 1-22 (discussing one part of the flowchart 1602 relating to obtaining information), and col. 18, lines 24-42 (discussing the completely separate operation 1610 of creating the profile or report). Health Grades' argument is not only inconsistent with the '060 patent's claims and specification; it is also inconsistent with Health Grades' own Infringement Contentions. Specifically, Health Grades' Infringement Contentions also acknowledge the plain difference between collecting information and creating the database, the user's request for information from the database, and the subsequent step of creating the report. *See, e.g.*, Health Grades' Infringement Contentions, dated September 2013, attached hereto as Exhibit B, at 57 (addressing the claim element on creating a report: "After a patient/user enters search criteria for a doctor, MDx creates one or more healthcare provider reports using information from the MDx database . . . .").

4

D, with cover letter dated January 13, 2012 (highlighting added).  After its production, Health Grades took the depositions of two people identified on that document (Erika Boyer and Jeff Cutler).  Health Grades added this document to its trial exhibit list in ***March of 2013***, but never moved to amend its Infringement Contentions (and still as of the date of this filing has not moved to amend its Infringement Contentions).

As yet another example, in ***October of 2013***, MDx produced even more documents showing the use of disciplinary and licensure information in the awards.  *See* MDX 0106644-47, attached hereto as Exhibit E, with cover e-mail dated Oct. 31, 2013 (highlighting added).  These documents, again, state in detail that disciplinary information and licensure information is considered in connection with various awards.  Exhibit E, at MDX 0106644 (Patient's Choice Award:  "No Sanctions [and] Active License"; PC 5th Anniversary Award: "No Sanctions [and] Active License"; PC Disqualifying Doctors:  "Sanctions [or] no longer active license"; Compassionate Doctor:  "No Sanctions [and] Active License"; Years of Experience/Anniversary Award:  "Active Medical License [and] No Sanctions"); and at MDX 0106647 (Years of Practice: "Active Medical License [and] No Sanctions"; On Time/Courtesy Award: "Active Medical License [and] No Sanctions").

Health Grades' Infringement Contentions do not contain any allegation that MDx's use of disciplinary or licensure information in bestowing awards relates to the claim element of using third party data to create a report.  Exhibit B (relevant pages attached).  Health Grades did not move to amend its Infringement Contentions in the years it has known of these facts, and it is far too late to do so now, as Health Grades so recently argued to the Court (Dkt. #829, pages 2-10), and as Health Grades learned back in 2011 when the Court struck other Health Grades belated

5

infringement allegations (Dkt. #62 and #87). Health Grades thus should be precluded from attempting to amend the infringement contentions now, and from making any reference to these facts or allegations at trial. *See, e.g., Teashot LLC v. Green Mt. Coffee Roasters, Inc.*, 2014 U.S. Dist. LEXIS 14841, *28-*29 (D. Colo. Feb. 6, 2014) ("the Court finds that Plaintiff waived its right to raise the doctrine of equivalents by failing to timely disclose it as an infringement theory"); *Astrazeneca AB v. Dr. Reddy's Labs., Inc.*, 2013 U.S. Dist. LEXIS 36779 *10 (D.N.J. Mar. 18, 2013) ("the Court is not persuaded that Plaintiffs were diligent in either discovering prior errors or omissions, or moving to amend their responses until seven months after they were first submitted."); *Asus Computer Int'l v. Round Rock Research, LLC*, 2014 U.S. Dist. LEXIS 17575 *7 (N.D. Cal. Feb. 7, 2014) (denying motion to amend: "In contrast to the more liberal policy of amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the shifting sands approach to claim construction."); *Asus Computer Int'l v. Round Rock Research, LLC*, 2014 U.S. Dist. LEXIS 50728, *16 (N.D. Cal. Apr. 11, 2014) (granting motion to strike infringement theories: "RR cannot now litigate a theory that the claim limitation reads on these two elements [not disclosed in the infringement contentions]"); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 U.S. Dist. LEXIS 120404, *6-*7 (N.D. Cal. Aug. 22, 2013) (finding a "separate feature" of an identified instrumentality could not be added as it was not in infringement contentions).[3]

---

[3] MDx strongly believes that Health Grades should not be allowed to change its infringement theories so close to trial, when it knew of the operative facts for three years. However, in an abundance of caution, if for any reason the Court allows Health Grades to now change the infringement playing field, then MDx respectfully requests that the parties brief the associated claim construction issues. Specifically, the parties strenuously dispute whether "creating a report" in the '060 patent's claims includes "bestowing an award" as Health Grades now asserts. If it does not, then use of the third party data in bestowing an award does not fall within the

6

### III. HEALTH GRADES' "APPROVE BUTTON" ARGUMENT

In February of 2014, Health Grades began to make another new argument relating to an "approve" button on the MDx website. Specifically, Health Grades began to argue that this "approve" button met claim language relating to information from the provider.

Health Grades has known of this feature of the MDx website for at least six months. *See* Correspondence from Health Grades' counsel to MDx's counsel, dated March 4, 2014, attached hereto as Exhibit F (reference to February conference between counsel; highlighting added). Yet Health Grades did nothing to move to amend its Infringement Contentions. Accordingly, for the same reasons addressed in Section II, *supra*, Health Grades should be precluded from amending its Infringement Contentions now to add this new infringement theory, or presenting this argument at trial. *Compare* Dkt. #829, pages 6-7 (Health Grades arguing that MDx should be precluded from amending Invalidity Contentions where MDx knew of prior art about two months prior to the motion to amend, despite the two month period being due to delays by Health Grades in the conferral under Local Rule 7.1(a) – *see* Dkt. # 814, at 2-3, fn 1).

### IV. HEALTH GRADES' PARTIAL CAPABILITY ARGUMENT

Independent claim 15 recites a series of instructions that, when executed, perform certain tasks. Exhibit A, claim 15, col. 22, lines 9-57. Health Grades has two theories of infringement of this claim, and its dependent claim 16: (1) that MDx actually performs all the claim limitations; and (2) that MDx does not need to perform the claim limitations because claim 15 only requires the "capability" to perform those steps. Health Grades Brief Regarding the

---

claim language. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

Reasonable Capability Test, Dkt. # 701, at 4 ("The 'when executed' language is part of the introductory preamble of claim 15 and, accordingly, applies to **_every limitation_** of **_every element_** of claim 15….").

Recently, Health Grades has begun to assert a new theory. Specifically, Health Grades is now arguing that one claim element of claim 15 requires mere capability, while another claim element must be met by actual performance.[4]  *See, e.g.,* Correspondence from MDx's counsel to Health Grades' counsel, dated Aug. 1, 2014, attached hereto as Exhibit G (addressing Health Grades' new position that certain claim language only requires "capability" to receive information from the healthcare provider, but the "comparison ratings of healthcare providers" claim language requires proof of actually being met; highlighting added). Previously, Health Grades' infringement theories were all or nothing – either all claim elements after the "when executed" claim language must be actually met, or none of those claim elements had to be actually met as long as there was "capability" of performing those steps.

This new argument could have been raised with the first Health Grades Infringement Contentions, in July of 2011. It is too late for Health Grades to try to change its theories now, and for all the same reasons stated in Section II, *supra,* Health Grades should be precluded from amending its Infringement Contentions now to add this new theory, or presenting this argument at trial.

---

[4] The operative language Health Grades relies upon for its "capability" theory is the "when executed" claim language, which Health Grades admits is in the preamble of claim 15 and applies to every limitation of every claim element. Given this claim language structure, Health Grades' new claim interpretation is not even possible.

8

### V. CONCLUSION

For all the foregoing reasons, MDx respectfully requests that the Court preclude Health Grades from making any arguments at trial related to (a) MDx's use of disciplinary or licensure information to bestow awards to providers, (b) use of the MDx "approve" button, and (c) that some elements of claim 15 are actually met and some are met by capability alone.

Dated:  August 21, 2014                                             Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson                                                         Terence Ridley, Atty. No. 15212
Trent S. Dickey                                                             Wheeler Trigg O'Donnell LLP
David C. Lee                                                                 370 Seventeenth Street, Suite 4500
Vincent M. Ferraro                                                       Denver, Colorado 80202
Sills Cummis & Gross P.C.                                          Tel:  (303) 244-1800
30 Rockefeller Plaza                                                    Fax:   (303) 244-1879
New York, New York 10112                                       E-mail: ridley@wtotrial.com
Tel: (212) 643-7000
Fax: (212) 643-6500                                                    *Attorneys for Defendant*
E-mail: sstimpson@sillscummis.com                         MDx Medical, Inc. d/b/a VITALS.COM
E-mail: tdickey@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: vferraro@sillscummis.com

9

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2014, I electronically filed the foregoing **MDX MEDICAL, INC.'S MOTION *IN LIMINE* TO PRECLUDE HEALTH GRADES, INC. FROM MAKING INFRINGEMENT ARGUMENTS NOT IN ITS INFRINGEMENT CONTENTIONS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Vincent Marc Ferraro**
  vferraro@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

                                               *s:/Vincent M. Ferraro*