**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S OPPOSITION TO HEALTH GRADES, INC.'S MOTION TO COMPEL AND FOR ADDITIONAL SANCTIONS FOR MDX MEDICAL, INC.'S ALLEGED FAILURE TO COMPLY WITH COURT-ORDERED DISCOVERY**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, hereby opposes Plaintiff Health Grades, Inc.'s ("Health Grades") Motion to Compel and for Additional Sanctions for MDx Medical's Alleged Failure to Comply with Court-Ordered Discovery ("Health Grades' Motion"; Dkt. #818).

**I.     SUMMARY OF THE ARGUMENT**

MDx's certified interrogatory answers are truthful, accurate and were made in good faith – MDx does not use disciplinary action information or licensure data to create provider profiles. MDx long ago disclosed its awards protocols to Health Grades, and specifically that awards factor in disciplinary actions in the sense they disqualify providers from consideration for awards. Health Grades never claimed that the bestowing awards or that showing awards in a profile infringes its patent based on its new novel theory that this is a use of disciplinary actions

to create profiles. MDx did not, and should not be expected to, anticipate that Health Grades would belatedly make this twice removed new infringement claim, and it therefore did not anticipate this argument in answering Health Grades' Interrogatory No. 2. The premise of Health Grades' Motion is faulty, it's factual assertions are incorrect, and Health Grades has known for three (3) years the relevant facts of which it claims ignorance and seeks to compel further discovery.

What Health Grades has failed to disclose to the Court is that:

- MDx disclosed to Health Grades in its document productions of August 2011, January 2012 and October 2013 that providers with sanctions and non-active licenses in its database are not eligible for awards it bestows;

- This information was never hidden and Health Grades even marked one such document as a trial exhibit and deposed two MDx referenced employees;

- Awards have always been in MDx website profiles, but no disciplinary, sanction or licensure data is used to create such reports, nor displayed in them;

- Having known these facts for years, Health Grades never moved to amend its Infringement Contentions, as the applicable agreed upon Local Patent Rules require, to claim that bestowing awards is the same as creating reports with the underlying data;

- This meritless argument raised for the first time only months before trial relies upon a claim construction that is not only inconsistent with the patent claims and the patent specification, but also Health Grades' own Infringement Contentions;

2

- The case law solidly supports that MDx was fully justified in relying upon Health Grades' Infringement Contentions and not anticipating this new strained infringement argument, nor did it, when answering Interrogatory No. 2; and

- MDx's interrogatory responses setting out its contention that no profiles, including the 3,982 doctor reports, meet all the claim elements of the asserted patent and the bases for its position are proper and accurate.

## II. HEALTH GRADES' NEW THEORY REGARDING MDX'S AWARDS

### A. Health Grades Was Aware Of The Premise Of Its New Infringement Theory For Over Three (3) Years.

Health Grades seeks to leverage the former Sanctions Order (Dkt. #711) to allow them to assert a new infringement theory that comes far too late, and is far afield from the claims of the asserted patent (U.S. Patent No. 7,752,060 (the "'060 Patent") (August 21, 2014 Declaration of Scott Stimpson ("Stimpson Decl."), at ¶ 4, Ex. A) and Amended Infringement Contentions (Stimpson Decl., at ¶ 6, Ex. B). Tellingly, what Health Grades' Motion fails to disclose is that it has known that MDx sought to cull doctors with sanctions from eligibility for its awards pool since MDx's August 26, 2011 and January 2012 document productions. Stimpson Decl., at ¶¶ 7-10, Ex. C and D.  In March, 2013, Health Grades even marked one document from the January 2012 production as Plaintiff's Trial Exhibit 094; it reads in relevant part: "I would like to weed out doctors with sanctions from our Top Ten pulls"; and "have the doctors with sanctions suppressed from the selects that are run…" (Health Grades' Motion, Exhibit E, Dkt. #818-3; and Dkt. #544, Appendix A, Exhibit 94).   Stimpson Decl., at ¶ 9, Ex. D.  Health Grades even long

3

ago deposed Erika Boyer and Jeff Cutler who are both named in this exhibit.[1]  Stimpson Decl., at ¶ 9.  MDx's August 2011 document production included requirements for four (4) awards that unambiguously disclose that eligibility for the Patients' Choice, On-Time, Promptness, and Companionate Doctor Awards are for providers who have "no sanctions" and are "active only". Stimpson Decl. at ¶ 8, Ex. C (MDX 0000183).   In October, 2013, MDx supplemented its document production and produced documents that further disclose the specific information that Health Grades' Motion claims it needs – whether MDx's award recipients are sanction free and licensed.    Stimpson Decl., ¶ 10, Ex. E and F (MDX 0106644-646 and MDX 0106647). Contrary to Health Grades' errant assertion, this information was never hidden or concealed.[2] Stimpson Decl., at ¶ 10.   These October 2013 produced documents disclose:

- MDx's Patients' Choice Award;  Patients' Choice 5th Anniversary Award, Compassionate Doctor Award; and its not-yet-bestowed Years of Experience/Anniversary Award [a/k/a Years of Practice Award] provide that award recipients have "No Sanctions" and an "Active License", among other considerations.  *Id.* at Ex. E, (MDx 0106644); and

---

[1] Erika Boyer was deposed by Health Grades on June 5, 2012 and Jeff Cutler was deposed on June 6, 2012.  Health Grades also complains (Health Grades' Motion, 5) that Tony Bellomo was not knowledgeable of the specifics of MDx's awards procedures at his 30(b)(6) deposition taken on May 15, 2014 as to whether disciplinary actions were used to cull out providers for awards, but third party awards, sanctions and disciplinary action elements were **NOT** 30(b)(6) topics noticed by Health Grades and therefore was not appropriate for the examination.  Stimpson Decl. at ¶ 11, and Ex. G (30(b)(6) notice).

[2] The production of these documents was not buried within other materials, but rather they were produced as two separate stand-alone documents amongst a group of only 49 total documents. Further, Health Grades subsequently used at least 2 of the 49 documents in deposition, although not these specific documents.  Stimpson Decl. at ¶ 10.

- Its new proposed Years of Practice and On Time/Courtesy Awards require that the physicians have an "Active Medical License and "No Sanctions".  *Id.* at Ex. F (MDx 0106647)

The only mention of "awards" in the '060 patent's claims is in connection with data received from the provider (not the separately claimed third party data), and indeed it was this different reference to "awards" in the claims that resulted in the documents above being produced.  Stimpson Decl., at ¶ 14.  Upon receiving this discovery, Health Grades did not allege, as it is now alleging, that MDx's use of licensure and sanctions information in *bestowing awards* somehow meets the claim language addressing use of that information in *creating a report*, (Health Grades' Motion, at 2-3), nor did it move to amend its Infringement Contentions (and has still not moved to amend) to make this theory a part of the case as the local patent rules require. (*See infra*, Section B).  Clearly, Health Grades' claim that it only learned this information in the last few weeks is untrue.[3]

### B.   MDx Properly Relied On The Infringement Contentions

The Patent Local Rules help to establish a normal progression and procedure regarding contentions about infringement: (1) first, the patent holder provides in the Infringement Contentions details of its infringement allegations, including specifically which components of the accused products are alleged to meet each claim element, and how (Patent Local Rule

---

[3] Specifically, Health Grades states that "MDx also has frustrated Health Grades' attempts to explore the issue of MDx's use of disciplinary actions and licensure information on a variety of fronts."  Health Grades' Motion, at 5.  Health Grades also claims that it "only learned in the past week – through MDx counsel's e-mail – that MDx culls physicians based on disciplinary action and licensure information . . . ."  *Id.* at 13. The discovery MDx long ago produced proves otherwise.  Stimpson Decl., at ¶¶ 8-10, Ex. C, D, E and F.

Section 3-1); (2) if discovery is later produced supporting another infringement argument, the patent holder has the burden to timely move to amend and show diligence in that motion (Patent Local Rule Section 3-6); and (3) if the patent holder serves an interrogatory on the patent defendants' position (as invariably happens), the defendant responds to the interrogatory, as to why there is no infringement.

In providing contentions of no infringement, the patent defendant is not required to guess at what theories the patent plaintiff might have alleged. Rather, the defendant relies on the Infringement Contentions and rebuts those Contentions. *See Teashot LLC v. Green Mt. Coffee Roasters, Inc.*, 2014 U.S. Dist. LEXIS 14841, 23-24 (D. Colo. Feb. 6, 2014) ("Defendants were justified in believing that plaintiff's disclosures [in its Infringement Contentions] contained all the infringement theories it was pursuing in the case."); *Asus Computer Int'l v. Round Rock Research, LLC*, 2014 U.S. Dist. LEXIS 50728, 15-16 (N.D. Cal. Apr. 11, 2014) (striking infringement arguments from an infringement expert report for Plaintiff's failure to disclose them in its Infringement Contentions); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.* 2013 U.S. Dist. LEXIS 120404, at 2 (N.D. Cal. Aug. 22, 2013) (granting defendant's motion *in limine* to exclude plaintiff's infringement theories relating to infringing features within the accused products that were not disclosed in plaintiff's Infringement Contentions); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025, 1119 (N.D. Cal. 2011) (striking portions of expert report relying on prior art references not disclosed in invalidity contentions); *Brilliant Instruments, Inc. v. GuideTech, Inc.*, 2011 U.S. Dist. LEXIS 30835 (N.D. Cal. Mar. 15, 2011) (same).

Health Grades' Motion turns the Local Patent Rules on their head. Specifically, Health Grades argues that, even though Health Grades has never accused award formation as meeting the claim language regarding creation of a report, MDx should have somehow anticipated this argument and addressed it in the interrogatory response; and Health Grades even argues that MDx's failure to anticipate that argument should result in dispositive sanctions. But there is nothing in the case law supporting such a position, and in fact the applicable law is precisely the opposite. *Teashot LLC v. Green Mt. Coffee Roasters, Inc.*, 2014 U.S. Dist. LEXIS 14841, 23-24 (D. Colo. Feb. 6, 2014).

Because Health Grades knew of these facts, and did not move to amend its Infringement Contentions, Health Grades cannot now assert this infringement theory. Consequently, MDx filed a corresponding Motion to Preclude Health Grades from asserting this theory (and others) at trial (Dkt. #836, Section II, at 3-6). It is simply too late for Health Grades to add this new theory to its Infringement Contentions, or assert this new theory at trial. The Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California (the "Patent Local Rules"), under which the parties are ordered to proceed (Scheduling Order, dated June 16, 2011, Dkt. #36, at 6), state that "[a]mendment of the Infringement Contentions . . . may be made <u>only by order of the Court upon a timely showing of good cause</u>." Dkt. #36, Exhibit A, Patent L.R. 3-6, at Pat 8. Stimpson Decl. ¶¶ 5, 15. Thus, unless Health Grades files a motion to add this new theory to its Infringement Contentions and prevails, by proving it was diligent and timely, this infringement theory should not be in this case. *See, e.g., Brilliant Instruments, Inc. v. GuideTech, Inc.*, 2011 U.S. Dist. LEXIS 30835 at 4 (N.D. Cal. Mar. 15, 2011), quoting *O2 Micro Int'l v. Monolithic Power Sys., Inc.,* 467 F.3d 1355

1366 (Fed. Cir. 2006) (good cause requires a showing of diligence); *Genentech, Inc. v. The Trustees of the Univ. of Penn.,* 2011 U.S. Dist. LEXIS 108127, *4 (N.D. Cal. Sept. 16, 2011) quoting *O2 Micro Int'l,* 467 F.3d at 1363 and 1366 (party amending its contentions must show that it "'acted with diligence in promptly moving to amend when new evidence is revealed in discovery.'").

Moreover, Health Grades' new theory would not be expected to come to mind, and in fact did not come to mind. Stimpson Decl. at ¶¶ 14, 15. Health Grades argument is completely at odds with the teaching of the '060 patent and the language of the '060 patent's claims, and it is also inconsistent with Health Grades' own Infringement Contentions, as addressed in detail below.

### C. Health Grades' Untimely New Argument Is Meritless

Health Grades' new infringement theory essentially is that use of sanctions and licensure information to bestow an award is the same thing as use of that information to create a provider report as called for in the patent claims. While Health Grades stops short of actually proposing a claim interpretation, it now clearly contends, for the first time, that the claim language about creating a healthcare provider report using third party data, encompasses more than the creation of the report using the third party data, but also the bestowing of awards and compilation of data in the underlying MDx database. Health Grades' Motion, at 3-4.[4]

---

[4] Despite Health Grades' allegation at page 3, Judge Brimmer never addressed whether "creating a report" could encompass these other, different software functions. The issue addressed there was very different, specifically, whether every data element compiled (regardless of whether there are three data elements or three hundred) must be used to create a report – neither the word "create" nor the word "using" was at issue. Order Regarding Claim Construction, dated Feb. 13, 2012, Dkt. #138, at 20-21.

8

2502190

The bestowing of an award using the third party data, however, *is not the same as the creating of a report using that information.*  This distinction is paramount in the context of software functionality – analyzing criteria to determine if a provider should receive an award is an entirely different and separate software routine from the "creating a report" function required by the '060 patent's claims.  Declaration of Erika Boyer dated August 21, 2014 ("Boyer Decl.") at ¶ 6.  Indeed, the awards are used in other ways, completely unrelated to the provider reports, including in sales of plaques and awards to providers, and in results lists.  Boyer Decl. at ¶ 4.

When the "create a report" claim language is properly interpreted, it means precisely what it says – *the actual software creation of the report*.  Thus, the claim language requires that three or more of the third party data elements actually be used in *that function*, not some other analyses or software function like identifying providers for awards.

The '060 patent, and the claims themselves, distinguish two different things: (1) creation of and compilation of information on the providers for the underlying database; and (2) creation of the reports on providers.  *Compare, e.g.,* Ex. A of Stimpson Decl., claim 1, col. 20, lines 39-57 (the claims addressing "compiling" various pieces of information for the database) and lines 58-62 (the claims addressing using the information to actually create a report).  The '060 patent's specification makes the same distinction.  *See, e.g., id.* at Figure 16, and col. 17, lines 1-22 (discussing one part of the flowchart 1602 relating to obtaining information), and col. 18, lines 24-42 (discussing the completely separate operation 1610 of creating the profile or report).  With its interpretation – attempting to shoe-horn acts clearly directed to the creation of the database into the claim language clearly directed to the subsequent act of creation of the report -- Health Grades is trying to fit a square peg into a round hole.

9

This Health Grades argument is not only inconsistent with the '060 patent's claims and specification; it is also inconsistent with Health Grades' own Infringement Contentions. Specifically, Health Grades' Infringement Contentions also acknowledge the plain difference between collecting information and creating the database, the user's request for information from the database, and the *subsequent* step of creating the report. *See, e.g.,* Ex. B to Stimpson Decl., at 57 (addressing the claim element on creating a report: "*After a patient/user enters search criteria for a doctor*, MDx creates one or more healthcare provider reports *using information from the MDx database* . . . ."; emphasis added). As Health Grades acknowledges, the '060 patent's claims distinguish between the earlier acts that create the database, and the later act of creating the report in response to the user's request. *Id.*

Health Grades' argument is an unreasonably expansive reading of the claim language, which would entangle other data, information and acts not directed to the claim language, which is clear and precise: *creating a report is the operative event* – it does not include other events or information, even if they might indirectly impact the ultimate content of the report.

Notwithstanding that neither the '060 patent (claims and specification) nor Health Grades' Infringement Contentions are supportive of Health Grades' position, it avers that MDx's rejection of Health Grades' new theory constitutes false statements of fact. Health Grades' Motion, at 3. But the statements Health Grades references are *contentions* – they articulate MDx's position rejecting that these claim elements are met. Moreover, the statements are true – the MDx provider profiles do not contain sanctions or licensure information (Health Grades

cannot dispute this), and the report-generating software does not use this information to create the reports.  Boyer Decl. at ¶ ¶ 6, 8.[5]

### D.      Health Grades' Sanctions Request Should Be Denied

There is no basis for the award of additional sanctions because: (1) Health Grades has known the underlying facts supporting its new theory of infringement for three years; (2) Health Grades failed to move to amend its Infringement Contentions to seek to add this new theory (and therefore it is not in the case); (3) MDx could not have anticipated (and did not anticipate) that Health Grades would make the new allegation, and was fully justified in relying on the Health Grades Infringement Contentions; and (4) Health Grades' claim interpretation, necessary to all its arguments, is wrong because it is inconsistent with the '060 patent's claims and specification, and Health Grades' own Infringement Contentions.  Accordingly, Health Grades request for sanctions should be denied.

### III.    NO REPORTS MEET ALL THE ELEMENTS OF THE '060 PATENT'S CLAIMS AND MDX FULLY RESPONDED TO INTERROGATORY NO. 2

Starting at page 8 of its Motion, Health Grades contends that MDx failed to admit that 3,982 doctor profiles meet all the claim elements.  MDx did not admit that the profiles of these doctors meet all the claim elements, however, because it contends that they do not.  Despite Health Grades' allegations to the contrary, MDx's positions are clear in its certified interrogatory responses -  not a single report for any of the 833,860 providers on the MDx website meets any

---

[5] Although not relevant to this motion, MDx's counsel also advised Health Grades' counsel that 2014 Vitals' awards were not to be culled for sanctions, but one award  was prematurely designated a "2014" award and was culled for sanctioned providers unbeknownst to Ms. Boyer.  Boyer Decl. at ¶¶ 7-8.  However, MDx has decided not to suppress its practice of only bestowing awards to providers without sanctions in the MDx data base going forward.  *Id*.

11

of the following claim elements - *See* Health Grades' Motion, Exhibit C, Dkt. No. 818-1 (parenthetical statements are directed to language in the MDx interrogatory response):

(1) Accessing healthcare provider <u>verified</u> information (page 7: "MDx does not have providers confirm the information they directly enter and/or modify in the provider portal on www.Vitals.com, nor does MDx have providers confirm the information they send to the MDx customer service department for entry by MDx.");

(2) Creating a report using the healthcare provider-<u>verified</u> information (page 10, see also same quote from page 7, above);

(3) Creating a report using information verified by an independent third-party source (pages 11-12: "Aside from the [not-accused] SEO landing page, MDx has not since January of 2011 created a provider profile using three or more of the third-party information.").

Health Grades' various arguments about why there might be infringement ignore the above claim elements, and make various mistakes and oversights. For example:

(A) <u>Health Grades Statement</u>:  At page 8 of the Health Grades Motion, "MDx has expressly admitted in its May 2014 Supplemental Response that all the reports, including the 3,982 doctors, meet the first, fourth, and sixth claim elements [citing response at page 18]. . . ." <u>Responses</u>:  (i) MDx did not admit that the fourth element was met – there is no mention of this element at page 18; (ii) For the third element (assuming Health Grades intended to refer to the third element, rather than the fourth element), MDx did not admit that "all" reports met this element (compare page 9 of the response); and (iii) MDx did not admit that the sixth element was met – the word "the" is crossed out in that section, because in order to meet this element the report would have to meet all the prior elements, which it does not.

12

(B) <u>Health Grades Statement</u>:  At page 8 regarding the second element, "[MDx] must either admit it practices the claim element for the provider reports between Number A (10,785 provider reports) and Number B (11,334 provider reports), or explain why not."  <u>Response</u>:  This Health Grades complaint (about only 549 of the 833,860 providers) asks for information that is not possible to ascertain, as MDx explains in detail in the second and third paragraphs on page 6 of the response.  And this element is not the entire second element as Health Grades portrays, but only the part about receipt from the provider (no report meets the entire second element, as that requires provider verification).

(C) <u>Health Grades Statement</u>:  At page 9, "MDx's use of the negative is designed to evade admission [on the patient ratings element]."  <u>Response</u>:  MDX did admit that providers who do have patient ratings from Vitals.com meet this claim element, at page 18 of the response (claim 1, second bullet).

(D) <u>Health Grades Statement</u>:  At page 9, "MDX admits (because it does not deny) that the 3,982 doctor reports were created using three or more of the claimed types of physician verified information [citing pages 10-12 of the response]."  <u>Response</u>:  See page 7, denying that any provider information is verified.

(E) <u>Health Grades Statement</u>:  At pages 9-10, "MDx also admits (because it does not deny) that the 3,982 doctor reports were created using medical school and board certification information."  <u>Response</u>:  MDx did deny this element was met.  See page 12 of the interrogatory response:  "MDx has not since January 2011 created a provider profile using three or more of the third-party information."  Moreover, Health Grades' statement is irrelevant because  the claim language requires the use of three or more of these data elements in creating the report, not two.

13

As the MDx supplemental interrogatory response was thorough and complete, in admitting elements that are met and explaining why missing elements are lacking, Health Grades' request for sanctions based on these grounds also should be denied.

## IV.   HEALTH GRADES DISCOVERY REQUESTS SHOULD BE DENIED

This Court's Sanctions Order (Dkt. #711) made very clear the grounds upon which the Court would consider reopening discovery. Specifically, Health Grades would need to show additional discovery was necessary *to cure prejudice* suffered by Health Grades as a result of the MDx response to interrogatory 2. (Dkt. #711, page 13). There is no prejudice to Health Grades, because it now has a complete and full response to interrogatory 2, and a full analyses of the MDx database in the query results that have been produced, as addressed in Section III, *supra*.

Health Grades' first discovery request is for MDx to explain its position on why use of sanctions and licensure information to bestow an award does not meet the claim element requiring use of that information to create a report. Health Grades' Motion, at 10-11. However, there is no point in MDx supplementing an interrogatory response to address a novel infringement theory that is not part of the case. *See* MDx's Motion *In Limine* to Preclude Health Grades From Making Infringement Arguments Not In Its Infringement Contentions, (Dkt. #836 ); Section II, *supra*. As expressly required by the Patent Local Rules adopted in this case and case law, Health Grades must first seek and obtain approval of the Court to add this new infringement theory. *See* Dkt. #34, Exhibit A, at Pat 8 (Rule 3-6) and case law cited in Section II(B), *supra*.

Health Grades next asks that MDx respond to belated requests for admissions. Health Grades' Motion, at 11. MDx responded to the admission requests that it believed were in accord

14

with Your Honor's Order (Dkt. #711). However, Health Grades does not even attempt to meet the standard required by the Court of curing prejudice as to the remaining requests, nor does it allege prejudice, because all the information addressed by these requests for admission is either already admitted, or was provided in the response to Interrogatory No. 2 and the extensive query results produced by MDx. *See* Health Grades' Motion, Exhibit I, Dkt. #818-7.[6]

Finally, at page 12, Health Grades asks for yet another deposition of an MDx representative, on the theory that MDx withheld information about use of sanctions and licensure information. Health Grades' Motion, at 12. As shown in section II(A), *supra*, however, Health Grades has been well aware of the relevant facts for many months, and for its own reasons chose not to address the key documents with MDx's witness produced in May of 2014.

### V.     LOCAL COUNSEL'S ROLE.

Whereas there is no basis whatsoever for assessing sanctions, local counsel Wheeler Trigg O'Donnell LLP had no involvement in the discovery or any issue in dispute as to Health Grades' Motion.

---

[6] In its footnote 5 and accompanying text, Health Grades appears to ask the Court to have MDx admit that data elements are "verified" just by receipt of the information. Judge Brimmer, however, expressly declined to construe the term "verified" in accordance with the request of Health Grades (Dkt. #138, at 14). The Court thus relied on plain and ordinary meaning. *Id.* at 15. In the same footnote referenced by Health Grades, Judge Brimmer acknowledged that "verify" can mean "'to prove' . . . 'confirm' or 'substantiate'" – none of which is consistent with Health Grades' theory.

## VI.    CONCLUSION

For all the foregoing reasons, MDx respectfully requests that the Court deny Health Grades' motion to compel and for additional sanctions in its entirety.

Dated:  August 22, 2014                         Respectfully submitted,


*s:/Trent S. Dickey*
   Trent S. Dickey
   Scott D. Stimpson
   David C. Lee
   Vincent Ferraro
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail: sstimpson@sillscummis.com
E-mail: tdickey@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: vferraro@sillscummis.com
*Attorneys for Defendant*
MDx Medical, Inc. d/b/a
VITALS.COM

# CERTIFICATE OF SERVICE

I hereby certify that on **August 22, 2014**, I electronically filed the foregoing **MDX MEDICAL, INC.'S OPPOSITION TO HEALTH GRADES, INC.'S MOTION TO COMPEL AND FOR ADDITIONAL SANCTIONS FOR MDX MEDICAL, INC.'S ALLEGED FAILURE TO COMPLY WITH COURT-ORDERED DISCOVERY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Vincent Marc Ferraro**
  vferraro@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

                _s:/David C. Lee_

2502190