# EXHIBIT A

(Redacted version of Dkt. # 831)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**PLAINTIFF HEALTH GRADES, INC.'S OPPOSITION TO DEFENDANT MDX MEDICAL, INC.'S MOTION TO COMPEL DOCUMENT DISCOVERY, ADDITIONAL DEPOSITIONS, AND QUERIES ON THE HEALTH GRADES SYSTEM [DOC. #811]**

Plaintiff Health Grades, Inc. ("Health Grades") opposes MDx Medical, Inc.'s ("MDx") motion to compel document discovery, additional depositions, and queries on the Health Grades system [Doc. #811] ("Motion to Compel").

**1. The Motion to Compel Health Grades to Search its Electronic Records for Information Relating to the Newly Disclosed Shelton Article Should Be Denied**

Despite the fact that this case has been pending for more than three years, fact discovery closed two years ago, and trial is scheduled to begin on December 1, 2014, MDx now seeks an order compelling Health Grades to do a new search for documents that are related to a newly disclosed prior art article that was authored by Linda K. Shelton, Laura Aiuppa, and Phyllis Torda and published by the Commonwealth Fund in August 2004 (hereinafter the "Shelton Article") (Doc. 811-3). The authors of the Shelton Article worked for a large[1], not for profit

---

[1] In 2004, NCQA's revenues were more than $24 million. (NCQA 2004 Annual Report at p. 32 (Ex. 1 hereto).)

2004929979_1

organization called the National Commission for Quality Assurance ("NCQA"). NCQA was founded in 1990 and engages in a wide variety of activities designed to improve the quality of our healthcare system, including setting national goals, establishing and funding a national research agenda, and monitoring the impacts of the overall healthcare system. (*See* NCQA website (http://www.ncqa.org) at p. 1 (Ex. 2 hereto).) Additionally, NCQA provides many different services including, for example, accreditation of managed care and healthcare organizations, publication of healthcare performance statistics, and education through training programs to help healthcare organizations improve quality of care. (*See id.* at pp. 3-8.) MDx seeks an order compelling Health Grades to search its electronic records for keywords: "NCQA," "National Committee for Quality Assurance," "Recommendations for Improving," and "Shelton."

MDx's Motion should be denied because it is not likely to lead to relevant or admissible information. Further, Health Grades fully complied with its discovery obligations during fact discovery and requiring Health Grades to complete another onerous search of its electronic records would be burdensome, costly, and prejudicial.

### A. MDx Did Not Disclose the Shelton Article in its Invalidity Contentions and is Unlikely to Prevail in its Attempt to Add New Prior Art By Amendment

MDx had an affirmative duty to disclose *all* prior art references that it intended to use to support its invalidity defense in its invalidity contentions that were due on August 19, 2011. *See* Scheduling Order (Doc. #34 at p. 7); Patent L.R. 3-3 (Doc. #34 at pp. 20-21). MDx did not disclose the Shelton Article. Thus, the Shelton Article is irrelevant and the Motion to Compel should be denied.

Although MDx has filed a motion for leave to amend its invalidity contentions to include the Shelton Article (Doc. #814), MDx bears a heavy burden to prove that good cause exists for this amendment, particularly because MDx is three years late in identifying this prior art. *See* Patent L.R. 3-6 (Doc. #34 at p. 22). For purposes of Rule 3-6, "'good cause' requires a showing of diligence," and "**[t]he burden is on the movant to establish diligence** rather than on the opposing party to establish a lack of diligence." *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed Cir. 2006). "Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (citing *Atmel Corp. v. Info. Storage Devices, Inc.*, 1998 WL 775115 at *2 (N.D. Cal. 1998). Indeed, many courts have denied motions to amend invalidity contentions to add newly discovered prior art because the accused infringer failed to demonstrate that it was diligent in searching for prior art. These decisions include, for example:

- *Innovative Display Techs. LLC v. Acer Inc.*, No. 2:13-cv-00522-JRG, 2014 U.S. Dist. LEXIS 83196, at *5 (E.D. Tex. June 19, 2014): "That it took Defendants more time beyond the original deadline to find these new arts, in and of itself, is no excuse for a late supplementation. To hold otherwise would 'render the explanation for the party's failure to meet the deadline a non-factor.'"

- *MacroSolve, Inc. v. Antenna Software, Inc.*, No. 6:11-cv-287-MHS-JDL, 2013 U.S. Dist. LEXIS 102954, at *12 (E.D. Tex. July 23, 2013): "Defendants were not diligent in their investigation, discovery, and presentation of prior art references, and further, lack an adequate explanation for failing to present these references at an earlier date."

- *CoreLogic Info. Solutions, Inc. v. Fiserv, Inc.*, No. 2:10-CV-132-RSP, 2012 U.S. Dist. LEXIS 130554, at *5 (E.D. Tex. Sept. 12, 2012): "Defendants have failed to establish good cause for their late discovery and disclosure of the five newly charted prior art references."

- *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2013 U.S. Dist. LEXIS 137845, at *23 (N.D. Cal. Sept. 25, 2013): "Acronis does not cite a single case in which a party was granted leave to amend contentions under circumstances similar to those here; namely, a party moving to amend five months after the issuance of the claim construction order and upon the close of fact discovery based on evidence that the party possessed all along. There is no such case because such facts do not constitute diligence."

- *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 2:10-CV-06108(ES-CLW), 2012 U.S. Dist. LEXIS 107408, at *18 (D.N.J. July 30, 2012): "Roxane had an obligation to conduct a public search for all relevant prior art in a diligent manner. Roxane states that it did not review the FDA website until it was making a final review of its contentions. Specifically, Roxane states that it discovered the Documents that are the subject of this Motion when it was time to dot its 'I's' and cross its 'T's'. A thorough review, however, should have been conducted when Roxane's Initial Invalidity Contentions were first due."

- *Network Appliance, Inc. v. Sun Microsystems, Inc.*, No. C-07-06053 EDL, 2009 U.S. Dist. LEXIS 83090, at *14 (N.D. Cal. Aug. 31, 2009): "Sun does not explain why it could not locate the prior art earlier prior to preparing for Mr. Hutchinson's deposition. Sun knew that Mr. Hutchinson is an inventor of the patent, and the other prior art is a public article that he authored."

As detailed in Health Grades' opposition to MDx's motion to amend (filed concurrently herewith), MDx was not diligent in locating the Shelton Article and was not diligent in filing its motion to amend once it located the Shelton Article. Further, allowing MDx to shift its invalidity defense years after the Court issued the Markman order and right before trial will cause substantial prejudice to Health Grades. The motion to amend should be denied, and if it is denied, none of the information MDx seeks relating to the Shelton Article will be relevant to trial. The Motion to Compel should be denied.

### B. Health Grades Fully and Completely Responded

Health Grades does not have a duty to supplement its discovery responses relating to prior art and the conception of its invention because its earlier responses were complete and

correct. MDx's argument to the contrary is based on a false premise – that Health Grades knew about the Shelton Article, but did not produce it during discovery. MDx's sole support for this argument is a single reference to NCQA in one of the Health Grades' physician reports, which states that NCQA is one of three organizations that recognizes the American Board of Medical Specialties ("ABMS") as a primary source for information about whether a physician is board certified:

> **3 Board Certification**
>
> Each medical specialty has a national board responsible for setting standards physicians must meet to be certified. HealthGrades recognizes certifications from the American Board of Medical Specialties and the Bureau of Osteopathic Specialties (DO's).
>
> Physicians who choose to become certified must have training beyond what medical licensure requires. Board certification involves a rigorous review of the physician's knowledge, experience, and skill in a specialty.
>
> More specifically, board certification means the physician:
> - Graduated from a recognized medical school as either an MD or DO
> - Completed several years of training in an accredited residency program.
> - Has an unrestricted license to practice medicine.
> - Passed an extensive written exam given by the board.
>
> Is your physician board certified?
>
> Information from American Board of Medical Specialties (ABMS)
>
> | Specialty | Board Certification | Certifying Board |
> |---|---|---|
> | Psychiatry | Yes | American Board of Psychiatry & Neurology |
>
> Copyright © 2004 Elsevier Inc. and the American Board of Medical Specialties. All rights reserved.
>
> Elsevier has been designated by the ABMS as an agent and is able to provide this primary source data on behalf of the ABMS. The ABMS has been designated a primary source of board certification information by the Joint Commission for Accreditation of Healthcare Organizations (JCAHO), the National Committee for Quality Assurance (NCQA) and URAC.

(Doc. #811-5 at p. 6 (emphasis added).) A simple mention of NCQA (not the Shelton Article or any other article) does not prove or even create an inference that Health Grades knew about the Shelton Article, let alone prove that Health Grades had a copy of the Shelton Article in its possession. As discussed above, NCQA is a huge organization that is responsible for a wide variety of services and a voluminous library of resources and publications. Further, the Shelton Article was *not even published by NCQA* – it was published by the Commonwealth Fund, on its

website at www.cmwf.org.  (Doc. #811-3 at p. 2 ("Additional copies of this (#731) and other Commonwealth Fund publications are available online at www.cmwf.org.")  There is no evidence that Health Grades had knowledge of the Commonwealth Fund.

Contrary to MDx's Motion to Compel, the evidence gathered during discovery demonstrates that Health Grades did *not* know about the Shelton Article.  In preparing its response to MDx's Interrogatory No. 2, Health Grades gathered information from all three inventors of United States Patent No. 7,752,060 ("the '060 patent") (John Neal, David Hicks, and Scott Montroy), as well as the other Health Grades employees who were involved in the prosecution of the '060 patent, namely Alan Dodge and Brian Blackman.  All five supported Health Grades' sworn response that Health Grades was "not aware of any prior art" other than the prior art cited to the Patent Office.  MDx deposed all five of these witnesses.  Further, John Neal was designated as a Rule 30(b)(6) witness for Health Grades on a similar topic.  Mr. Neal testified that Health Grades disclosed all of the prior art it knew about to the Patent Office and that he was not aware of any prior art that was not disclosed to the Patent Office.  (John Neal Dep. at p. 131, ll. 13-24, p. 259, l. 24 – p. 261, l. 2 (Ex. 3 hereto).)  Further, in response to MDx's belated identification of the Shelton Article, Health Grades has checked with all five, individually, and provided them with a copy of the Shelton Article, to see if they knew about the Shelton Article.  They did not.

It is not surprising that Health Grades had no knowledge of the Shelton Article, which was published by a third party.  There is no duty to do a prior art search prior to filing a patent application.  *See, e.g., Frazier v. Roessel Cine Photo Tech, Inc.,* 417 F.3d 1230 (Fed. Cir. 2005) ("Moreover, this court has repeatedly reaffirmed the proposition that '[a]s a general rule, there is

2004929979_1                                6

no duty to conduct a prior art search . . . .'") (citing *FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d 521, 526 n. 6 (Fed. Cir. 1987). Although Health Grades' patent counsel did commission a prior art search, this search was addressed prior art patents and patent publications and did not (and would not have) located the Shelton Article. (Merchant & Gould Privilege Log at p. 1 (no. 6) (Ex. 4 hereto).)

Moreover, there is no evidence to show that Health Grades has possession of other prior art references that were not disclosed during discovery. Health Grades identified the prior art that was known to the inventors and employees who managed the prosecution of the '060 patent. Further, Health Grades spent considerable time and expense searching for and producing extensive electronic discovery in this lawsuit. Specifically, Health Grades searched specific computers/files *that were identified by MDx* using various keywords *selected by MDx*, including for example the following:

- In electronic files of Dave Hicks, and the email files of Dave Hicks and John Neal: "prior art", "vitals!", and "patent application";

- In electronic files of Allen Dodge and in the HG general servers, as well as in the email files of Allen Dodge and John Neal "MDx", "vitals!", "competitor!" and "royalty";

- In electronic files of Dave Hicks, and within the email files of Dave Hicks and John Neal: "physician research comparison report", "physician report", "PQR" and "PQG".

- In HG's general servers, and also within the documents of John Neal, David Hicks, Scott Montroy and Brian Blackman: "Project Development Plans", "PDP", "Project Files", "Project Logs", "Production Logs", "Migration Files and Logs", "Customer Service Reports", "Release Files", "Discovery Health", and "AARP".

*See, e.g.,* December 12, 2011 Email from Scott Stimpson to Jesus Vazquez (Ex. 5 hereto); Health Grades' Response To MDx's Motion To Compel at pp. 6-8 (Doc. #91) (describing Health

Grades' searches of its electronic records); March 8, 2012 Email from Scott Stimpson to Jesus Vazquez (Ex. 6 hereto); Health Grades' Response To MDx's Motion To Compel Remaining Health Grades Documentary Discovery at pp. 2-3 (Doc. #182) (describing Health Grades' searches of its electronic records).

Likewise, Health Grades worked with the inventors to identify, locate, and produce all of the documents relating to the conception and reduction to practice of their claimed invention. Contrary to MDx's unsupported inferences, Health Grades did *not* base its invention on the Shelton Article (which was unknown to it at the time). The inventors had already conceived of a physician report that included all of the claimed types of physician information ***more than a month before*** the Shelton article was published as shown by an internal Health Grades e-mail copied below:



HG 1075-1077 (produced on July 28, 2011)

U.S. Patent No. 7,752,060, Claim 1

(Ex. 7 hereto (highlighting added).)[2]

In sum, there is no reason to believe that Health Grades discovery responses were incomplete or that they need to be supplemented at this time.[3]

---

[2] This e-mail is not "prior art" because it was not public.

2004929979_1                                9

2. **The Motion to Compel a Deposition of Health Grades' Technical Expert is Premature**

Health Grades has not yet decided whether, and to what extent, Dr. Greenspun's expert report on infringement will need to be supplemented based on information recently produced by MDx. Health Grades' decision about whether or not it will agree to produce Dr. Greenspun for a continued deposition will depend on the extent to which he needs to supplement his earlier reports. Thus, the issue about whether or not this Court should compel (or even needs to compel) another deposition is not ripe.

MDx argues that Dr. Greenspun will need to supplement his report to include infringement analysis based on the SQL query results MDx produced in response to the Sanctions Order (Doc. #711). Dr. Greenspun will likely rely on these documents, as well as MDx's supplemental responses to Interrogatory No. 2, but the substance of his opinions is not likely to change. For example, in his initial report, Dr. Greenspun stated that MDx's system meets the physician-verified information claim element for many reasons, one of which is that "MDx . . . admits that physicians have actually edited each of these fields." (7/13/12 Greenspun

---

[3] The keyword searches that MDx requests Health Grades run regarding the Shelton Article are anything but "simple" [Doc. # 811 p. 3]. MDx requests Health Grades run keyword searches on all of Health Grades' documents and email servers and the files and emails of all the inventors, plus Brian Blackman and Allen Dodge [*id.* at 4]. There are no date restrictions on these requests and Health Grades anticipates MDx requesting that it conduct searches going back to 2004 (the date of the article). The searches would include ten years' worth of documents and data and require searching hundreds of thousands of documents. The keyword searches run by Health Grades in the spring of 2012 cost over $20,000.00 in vendor fees alone. The quote Health Grades received to run the Shelton Article searches was $20,000.00 to $23,000.00. Health Grades should not have to run these searches because the undue burden and cost makes the information "not reasonably accessible." Fed R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."). If the Court determines the searches should be run, the Court should require MDx to pay for the cost of running the searches. Requiring MDx to pay is particularly appropriate because much of this expense could have been avoided if MDx would have timely located the article, allowing Health Grades to run one complete search at the time of the initial search.

Report at ¶ 125 (Doc. #305-1).) Dr. Greenspun also stated that MDx could figure out how many physicians had actually edited three or more of these fields by running conventional SQL queries. (*Id.* at ¶ 126.) Dr. Greenspun also stated that it was likely that thousands of physicians had actually edited three of more of the claimed fields within MDx's database. (Greenspun Dep. at pp. 67:15-68:11 (Ex. 8 hereto); Greenspun Decl. on Probability at ¶ 45 (Doc. 632-6).) In fact, MDx now admits that the number of doctors who actually edited three or more fields is between REDACTED . (MDx's Third Supp. Response to Interrogatory No. 2 at pp. 5-6 (Doc. 818-1). Thus, MDx's SQL query responses merely confirm that Dr. Greenspun's previously disclosed opinions were correct. MDx already had an opportunity to depose Dr. Greenspun on these opinions (twice) for a total of fourteen hours on the record. There is no need for a third deposition on these issues.

However, Dr. Greenspun may supplement his report with opinions that are new, in which case Health Grades may agree that a limited deposition is appropriate. But it is too soon to determine this now. MDx's Motion to Compel another deposition of Dr. Greenspun is premature and should be denied.

   **3. MDx's Motion to Compel Health Grades to Run Identical SQL Queries of the Health Grades' Database Should Be Denied**

Health Grades should not be compelled to run the same queries on its database that MDx was compelled to run on the vitals.com database *because the issues and their associated burdens are different for Health Grades and MDx.*

Specifically, MDx's SQL query responses are relevant to Health Grades' infringement cause of action – Health Grades bears the burden of proof on infringement. If MDx argues that Health Grades has not met its burden to prove that a claim element is met and the evidence

2004929979_1                                  11

Case No. 1:11-cv-00520-RM-NYW Document 851-1 filed 08/27/14 USDC Colorado pg 13
Case 1:11-cv-00520-RM-BNB Document 831 Filed 08/13/14 USDC Colorado Page 12 of 14
of 15

necessary to prove the existence of the element is within the exclusive possession of MDx, MDx has a duty to produce this evidence (or withdraw its defense that Health Grades has not met its burden to prove that the claim element is met). Such is the case with MDx's SQL query responses, which MDx was compelled to run because MDx *falsely* stated that there is "no evidence that any healthcare provider has ever provided even two of the required data elements, let alone three" and then moved for summary judgment arguing that Health Grades had failed to meet its burden to prove that a physician had provided three or more of the claimed types of data. (Order Denying MDx's Motion for Reconsideration of Order Imposing Sanctions at p. 2 (Doc. #784).)

In contrast, the SQL queries of Health Grades' database that MDx now seeks relate to the issue of whether or not Health Grades practices its own patent. This, in turn, is relevant to Health Grades' claim for damages and Health Grades' assertion that secondary considerations demonstrate that its patent claims are not obvious. Health Grades has the burden on both damages and secondary considerations. *See, e.g., Vulcan Eng'g Co. v. FATA Aluminium, Inc.,* 278 F.3d 1366, 1376 (Fed. Cir. 2002) ("The patentee bears the burden of proving its damages by a preponderance of the evidence"); *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1336 (Fed. Cir. 2014) ("As the patentee, it was MRC's burden of production to demonstrate a nexus between the claimed design and the secondary considerations."). Thus, Health Grades has the right to decide what evidence, and how much evidence it will rely on to prove that it is practicing its own patent. MDx may argue that the evidence Health Grades provides is insufficient. Further, Health Grades bears the risk that a jury will find it did not provide enough

Case No. 1:11-cv-00520-RM-NYW Document 851-1 filed 08/27/14 USDC Colorado pg 14
Case 1:11-cv-00520-RM-BNB Document 831 Filed 08/13/14 USDC Colorado Page 13 of 14
of 15

evidence to meet its burden. But there is no basis for requiring Health Grades to run the exact same kind of database queries that MDx ran on its database.

In any event, Health Grades informed MDx (even before this motion was filed) that it would run some queries of its database relating to how many providers had edited certain fields. Health Grades produced the results of these queries to MDx on July 30, 2014. (7/30/14 Email from Adam Massaro to Scott Stimpson at p. 3 (highlighting added) (Ex. 9 hereto).) Health Grades has further offered to produce for a deposition the Health Grades employee who ran these queries. (*See id.*) Additionally, Health Grades has provided ample other evidence that it practices the '060 patent, including claim charts mapping the healthgrades.com system to the '060 patent claims that will be supported at trial by testimony from Health Grades' technical expert. For these additional reasons, MDx's Motion to Compel should be denied.

Respectfully submitted August 13, 2014.

LEWIS ROCA ROTHGERBER LLP

*s/ Adam L. Massaro*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Adam L. Massaro, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel: (303) 623-9000
Fax: (303) 623-9222
E-mail: gkanan@lrrlaw.com
E-mail: kkosto@lrrlaw.com
E-mail: amassaro@lrrlaw.com
*Attorneys for Plaintiff Health Grades, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2014, I electronically filed the foregoing **PLAINTIFF HEALTH GRADES, INC.'S OPPOSITION TO DEFENDANT MDX MEDICAL, INC.'S MOTION TO COMPEL DOCUMENT DISCOVERY, ADDITIONAL DEPOSITIONS, AND QUERIES ON THE HEALTH GRADES SYSTEM [DOC. #811]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

    Scott David Stimpson, Esq.
    Vincent Ferraro, Esq.
    David C. Lee, Esq.
    Trent Dickey, Esq.
    Sills Cummis & Gross P.C. – New York
    30 Rockefeller Plaza
    New York, NY 10112
    E-mail: sstimpson@sillscummis.com
    E-mail: vferraro@sillscummis.com
    E-mail: dlee@sillscummis.com
    E-mail: tdickey@sillscummis.com

    Terence M. Ridley, Esq.
    Wheeler Trigg O'Donnell, LLP
    370 17th Street, Suite 4500
    Denver, CO 80202-5647
    E-mail: ridley@wtotrial.com

*s/ Adam L. Massaro*
Adam L. Massaro, Esq.