# EXHIBIT C

(Redacted version of Dkt. # 836-4)

# EXHIBIT G

# Vincent M. Ferraro

| | |
|---|---|
| **From:** | Scott D. Stimpson |
| **Sent:** | Friday, August 01, 2014 7:17 AM |
| **To:** | Massaro, Adam; Trent Dickey; David C. Lee; Vincent M. Ferraro |
| **Cc:** | Kostolansky, Kris J.; Kanan, Greg; Kirstin Stoll-DeBell (kstoll-debell@merchantgould.com); Goodlette, Tami |
| **Subject:** | RE: Confirmation of our call and MDx corrections |

Adam:

Our responses are in green.

Scott

1. Produced URLs. MDX provided on Monday only two URLs associated with two of the licensing agreements that MDx has produced ( REDACTED ). MDx then provided a URL for REDACTED after the call yesterday. WE PROVIDED THREE BECAUSE ONLY THREE OF THESE NEW CONTRACTS RELATING TO HOSTING ARE RUNNING.

You also produced an Amendment 1 to Application Service Provider Agreement with REDACTED [MDX 143297-377]. The amendment references the original agreement, REDACTED , which was not produced. Please produce it. We did not receive a URL for the REDACTED . Please confirm you will provide us a URL when it is up and running. You also represented that there is another licensing agreement with a unique confidentiality provision that has not been produced. Has this issue been resolved? When can we expect this agreement?

MDx Response: We are checking to see if the REDACTED Agreement is produced, and if not then we will produce it. We are still in the process of addressing the confidentiality of the remaining agreement. The software for REDACTED is under development into 2015.

2. Other sites. There are other sites up and running that are associated with the licensing agreements that MDx has produced, but MDx has not provided us URLs for those sites. Health Grades cannot determine if those other sites are relevant by simply reviewing the licensing agreements associated with those sites. As Mr. Bellomo explained during his deposition, the licensing agreements do not necessarily track what information is ultimately delivered to the licensee and used by it. There are also no assurances that how the end-product website functions and utilizes MDx data will reflect the terms of the licensing agreement. If MDx does not produce URLs for the remaining sites by Tuesday, July 29, Health Grades will address this issue with Judge Boland.

FIRST, WE NEED TO CLARIFY FOR ALL THESE REQUESTS THAT WE ARE TALKING ABOUT THE AGREEMENTS THAT WERE RECENTLY SIGNED AND PRODUCED, NOT EARLIER AGREEMENTS THAT WERE PRODUCED LONG AGO. FRANKLY, WE CONTINUE TO HAVE GREAT RESERVATIONS ABOUT HOW HG COULD POSSIBLY ALLEGE ANYTHING WITH REGARD TO DATA LEASE AGREEMENTS. SEE, E.G., OUR MOTION FOR SUMMARY JUDGMENT AND OUR MOTION RULE 11 SANCTIONS (WHICH WILL BE REFILED

AFTER A DECISION ON SUMMARY JUDGMENT). NEVERTHELESS, URLs FOR THE REST OF THE AGREEMENTS WE RECENTLY PRODUCED ARE BELOW:

REDACTED

As you know, we strongly disagree with your Rule 11 allegations as they are baseless. Regarding designating the *publically accessible* URLs as attorney's eyes only, why do you believe this designation is appropriate under the Protective Order? Confirmed that we are talking about the licensing agreements produced in the last two weeks. THEY AGREE WE ARE ONLY TALKING ABOUT THE AGREEMENTS IN THE LAST TWO WEEKS, THAT IS HELPFUL.

MDx Response: We will let the Court decide the merits of our Rule 11 motion. Public URLs are not AEO. What is AEO, of course, is our relationships with these companies, and pursuant to the Protective Order these must be kept confidential.

3. Full access to the sites. Health Grades needs full access to all the sites associated with the licensing agreements, e.g. for the REDACTED website Health Grades cannot access, among other things, the physician, employee, or member login areas. MDx has agreed to discuss with REDACTED, REDACTED whether Health Grades will receive temporary access to the inaccessible parts of the sites, or, if necessary, provide Health Grades screen shots of the inaccessible areas in lieu of full access. MDx will report back on this by Friday and the parties will discuss whether MDx's proposed approach is adequate. Health Grades will also need full access to the remaining sites that MDx has not produced yet.

THIS MISSTATES OUR CONVERSATION. AS WE MENTIONED, GENERALLY SITE LOGINS ARE NOT UNDER OUR CONTROL, SUCH AS CUSTOMERS FOR WHOM WE ONLY PROVIDE PATIENT REVIEW SYSTEMS. WE SAID WE WOULD LOOK INTO THIS AND WE WILL, BUT WE DID NOT AGREE TO THE APPROACHES MENTIONED IN YOUR EMAIL.

Our statement precisely captures our conversation. We raised with you the need for full access over two weeks ago and you continue to delay. After further review of the licensing agreements and the new URLs you disclosed, the sites we need full access to are REDACTED (once it is up and running). For REDACTED, we need access to the REDACTED account area REDACTED) and any other areas where searches can be run using data MDx provided, see, e.g. REDACTED (beginning at 45 second mark, tutorial showing that customers who log in can run doctor searches). For REDACTED, we need access to the customer log in area REDACTED and any other area where searches can be run using data MDx provided. We will need the same for REDACTED when it is up and running. Please provide us the requested access by the end of the week (August 1), if not we will raise this issue with Judge Boland and seek appropriate relief.

MDx Response: We do not agree about the content of our conversation. In any event, we will look into this and see if we can get you information today or Monday.

4. MDx agrees by this Friday to provide a confirming email that it has dropped its non-infringement defense that its systems do not meet the compiling third party verified information claim element. The email must precisely set forth what exactly MDx has dropped. Health Grades will wait to review the explanation in order to determine if it still needs responsive documents to Requests Nos.

2

7-9 in my May 27, 2014 email. Health Grades will also wait to see MDx's confirming email defense before addressing whether it still needs to re-depose a MDx 30(b)(6) corporate representative and on what topics.

THE CONFIRMING EMAIL HAS BEEN SENT TO YOU.

We received your July 26 email re: this defense and responded directly to it.

5. We stated we would serve the Rule 26 disclosure for Bill Kleinfelter, which we did yesterday.

WE HAVE REVIEWED THE INITIAL DISCLOSURE AND HAVE QUESTIONS. PLEASE LET US KNOW PRECISELY WHAT IT IS THAT YOU INTEND TO HAVE MR. KLEINFELTER TESTIFY ABOUT, AND EXPLAIN IN DETAIL WHY HE COULD NOT HAVE BEEN ADDED TO INITIAL DISCLOSURES LONG AGO.

While we were preparing to depose Mr. Bellomo as the MDx corporate deponent in May, you informed us—for the first time—that you intended to disclose Mr. Bellomo as a trial witness. You stated he would testify in his individual capacity about topics, such as the operation and underlying technology of vitals.com. His testimony would also support new non-infringement theories that were not revealed until MDx was sanctioned and ordered to supplement its interrogatory response, *e.g.* MDx's new argument that its use of the MONGO database means it does not create profile using three or more pieces of third party information. Shortly thereafter, we informed you that we may need to disclose Mr. Kleinfelter in response to the topics you planned to have Mr. Bellomo testify about. Mr. Kleinfelter's testimony will be used to rebut Mr. Bellomo's testimony and MDx's newly revealed non-infringement theories. The jury can rely upon Mr. Kleinfelter's testimony to make certain inferences about whether MDx's technology and operations and whether MDx practices the claim elements. MDx cannot disclose a new fact witness that will testify in support of newly revealed non-infringement theories that were borne from a sanctions order and then object to our counter designation. Had MDx provided a full and complete discovery responses and disclosed Mr. Bellomo much earlier, the need to disclose Mr. Kleinfleter would have become apparent earlier.

Also, MDx has asserted that it is entitled to query results regarding Health Grades' commercial success. While we have disputed that this is the case, and continue to do so, we disclosed Mr. Kleinfelter so that he can provide testimony on this topic, including the attached spreadsheet. The spreadsheet reflects changes made by providers from within the Health Grades' Manage My Profile portal, aggregated by provider, from March 2013 until July 2014. HG 234986 is produced pursuant to the Protective Order and is designated Attorneys' Eyes Only – Highly Confidential. The data HG pulled is provided in an Excel worksheet labeled "data" – and there is additionally a separate worksheet containing a pivot table we created based on this data.

We have offered to produce Mr. Kleinfelter for a deposition. Please let us know if you intend to depose him.

MDx Response: The last we heard, HG was objecting to Mr. Bellomo as a trial witness. Has HG dropped that position?

As for your analysis, there is nothing new about the MDx position that it does not create a report using three or more pieces of third party information – that defense has been in existence and known to HG since day one, and the existence of the Mongo database changes nothing about that position (where the data is housed is irrelevant – the question is whether the data is used to create a report). Moreover, your email says nothing about *how* Mr. Kleinfelter's testimony is relevant. That is, how could a HG witness testify about

3

Case 1:11-cv-00520-RM-BNB Document 836-4 Filed 08/21/14 USDC Colorado Page 5 of 11

whether MDx is using the data to create a report? What "certain inferences" do you expect the jury to draw about the MDx operations from the testimony of a witness who has nothing to do with the MDx operations?

As for the new data produced, although HG must produce the rest of the query results (the same it obtained from MDx), we would be willing to agree to Mr. Kleinfelter's testimony on this lone topic, and we will take his deposition. We have a number of questions about the spreadsheet and we will email them to you separately so as not to clutter this already lengthy email.

If Mr. Kleinfelter's testimony is somehow relevant to the MDx defense (something we cannot see), then we will take his deposition on those issues too, but unless and until HG has a reasonable explanation as to why he was not designated earlier, MDx objects to his designation as a trial witness on anything other than the query results.

6. MDx will prepare a comprehensive Excel spreadsheet as Health Grades requested in its July 9, 2014 letter. The spreadsheet will include all the information fields set forth in MDX 0143118 ("Information Fields"). The spreadsheet will include all the providers identified in MDX 0143118 and MDx 0143119 and all the Information Fields (i.e. all the columns from MDX 0143118) for each provider. Lastly, the spreadsheet will include any providers who had profile views with sponsored listing from November 11, 2013 until December 11, 2013 and all the Information Fields (i.e. all the columns from MDX 0143118) for each provider.

THIS ALSO MISSTATES OUR CONVERSATION AND AGREEMENT. FIRST, HG'S ELEMENT-BY-ELEMENT CAPABILITY THEORY IS NEW (YOUR ONLY EARLIER ARGUMENT WAS THAT THE ENTIRE CLAIM JUST REQUIRED CAPABILITY). SPECIFICALLY, HG HAS NEVER ASSERTED BEFORE THAT SOME CLAIM ELEMENTS ARE MET BY CAPABILITY WHILE OTHER CLAIM ELEMENTS ARE MET BY ACTUALLY BEING PERFORMED. IF HG IS ALLOWED TO RAISE THIS OR ANY OTHER NEW INFRINGEMENT THEORIES (WHICH WE WILL CONTEST), WE WILL BE AMENDING OUR INVALIDITY CONTENTIONS TO ADDRESS THEM.

TO THE EXTENT MDX HAS THE NECESSARY DATA, WE WILL GIVE YOU A SEPARATE SPREADSHEET OF PROVIDERS WHO HAD PROFILE VIEWS WITH SPONSORED LISTINGS. WE REMIND YOU THAT, BECAUSE HEALTH GRADES' KEEPS SENDING REQUESTS PIECEMEAL, THIS WILL BE OUR THIRD ROUND OF NEW QUERIES DIRECTED TO NEW HG THEORIES. IT WILL BE OUR LAST ROUND, AND WE WILL DO IT BY AUGUST 27 – THE DATE THE PARTIES AGREED TO PROVIDE THEIR FINAL PRODUCTIONS.

Judge Boland's January 3, 2014 order required you to "design[] any specific query necessary to run analysis on MDx's database" to enable MDx to state for each claim element, whether MDx's system meets (or does not meet) such element. (Doc. #711 at p. 12.) While you have produced some query information piecemeal, you have *not* produced the following information, which can be determined by running additional queries of MDx's database:

1. For doctors who clicked one or more of the "approve" buttons in the portal, but who did *not* have any edits made to the claimed types of physician-verified information ("PV Info") within their profiles:
    a. you have *not* stated whether or not MDx asserts that these doctor's reports meet (or don't meet) the other claim elements, namely:

4

> i. compiling patient-provided information (e.g. columns S, T, U, V, and W of MDx 0143118),
> ii. creating a report using the physician-verified, patient-provided, and third party verified claim elements (e.g. columns R, X, Y, and Z);
> iii. creating a report that includes comparison ratings of healthcare providers (e.g., column AA of MDx 0143118); and
> iv. Including a hyperlink to an external hospital's website (e.g., column AF of MDx 0143119).
>
> b. you have *not* provided other identifying criteria (e.g., columns A, B, AD, AE, AG, and AH of MDx 0143118) – you gave us only their "vitals internal master id".
>
> You refuse to produce this information. As such, we are going to seek appropriate relief from the Court.

MDx Response: We have already agreed to perform this section (1), as shown in your confirmation above. Specifically, in your words "The spreadsheet will include all the providers identified in MDX 0143118 and MDx 0143119 and all the Information Fields (i.e. all the columns from MDX 0143118) for each provider." We did not disagree with this part of your confirmation.

2. In your latest supplemental response to Interrogatory No. 2 ("Supp. Response"), you admit that the "sponsored listings with star ratings" feature (i.e., column AA of MDx 0143118) meets the comparison ratings claim element, but you have not identified *all* the doctor reports that had this feature (*regardless of whether or not edits were made to their profiles*). We understand that you are now agreeing to provide this information to us by August 27, 2013. We accept your agreement and thus, we do not move to compel you to provide this information.

    We don't understand your paragraph about capability arguments. Your original refusal to provide an identity of *all* doctor reports that contained "sponsored listings with star ratings" was based on your argument that these reports were not relevant *unless* they also had profile edits. You argued that profile edits are necessary to prove that the physician-verified claim element is met, that infringement requires proof that all claim elements are met, and thus you don't have to provide discovery for any doctor reports that do not have profile edits. Indeed, you have limited your Supp. Response and related queries to those doctor reports that have profile edits (either through the portal or through faxes, emails, phone calls).

    We responded that actual edits to a profile are not required to meet the physician-verified information claim element. We have always contended that the physician verified claim element can be met in other ways, including by having a physician confirm the accuracy of their information through the portal *without actually editing anything* (e.g., by clicking the "approve" buttons) (*see, e.g.*, 7/13/12 Greenspun Report at ¶ 1289/28/12 PG Dep. 54:7-16, 59:10-60:3, 66:20-70:17, 268:14-271:16) and by the fact that MDx built a physician web portal that allows physicians to edit the PV Info, regardless of whether or not they actually edited anything (7/13/12 Greenspun Report at ¶¶ 124, 127).

    MDx Response: Our query results are not admissions. Also, you have referenced the wrong claim language. At issue here is information "received for the first healthcare provider". Kirstin argues that this claim language only requires "capability" to receive information from the healthcare provider, but the "comparison ratings of healthcare providers" claim language requires proof of actually being met. Thus, for the first time, HG is arguing that one claim element

5

==requires mere capability while another claim element must be met by actual performance. Previously, HG only argued that the "when executed" claim language meant that the entire claim merely required capability.==

3. For the doctor reports who had a sponsored listing with star ratings, but who did not have edits made to their profile, you have *not* stated whether or not MDx asserts that these doctor's reports meet (or don't meet) the other claim elements, namely:

    i. compiling patient-provided information (e.g. columns S, T, U, V, and W of MDx 0143118);
    ii. creating a report using the physician-verified, patient-provided, and third party verified claim elements (e.g. columns R, X, Y, and Z); and
    iii. creating a report that includes comparison ratings of healthcare providers (e.g., column AA of MDx 0143118); and
    iv. Including a hyperlink to an external hospital's website (e.g., column AF of MDx 0143119).

    You refuse to produce this information. As such, we are going to seek appropriate relief from the Court.

MDx Response: This is the same information you covered in part (2), which you acknowledged we are providing by August 27, 2014. (You wrote 2013, but we know what you meant.)

4. The foregoing information should be produced in one comprehensive EXCEL spreadsheet, along with the information you already produced in MDx 0143118, so that we can understand exactly which (and how many) doctors you contend meet (and don't meet) which claim elements. David indicated that it would not be difficult for you all to combine the EXCEL spreadsheets for us.

    Nevertheless, you refuse to produce the information in a single comprehensive spreadsheet. As such, we are going to seek appropriate relief from Judge Boland.

MDx Response: We said that it was easy to copy MDX 0143119 into MDX 0143118, but you wanted more. Your new requests for (1) and (2)/(3) require much more work, and to be clear, it is definitely not easy (see, e.g., 17 pages of query language in MDX 0143101 – 117). As we understand it, there will be different queries for (1) and for (2)/(3), so they will be in different spreadsheets.

7. MDx agrees to identify where Dr. Sanjay Gupta (referenced in Health Grades' July 9, 2014 letter) is located on the Excel spreadsheets MDx has produced.

SEE MDX 0143099-100 WHICH CONTAINS DR. GUPTA'S BIO AND ID NUMBER, AND THAT SAME ID IS IN THE QUERY RESULTS OF MDX 0143118.

We are looking for Dr. Sanjay Gupta, who is located in Atlanta, Georgia (this is what his profile on www.vitals.com says). We don't find him in MDx 0143118.

MDx Response:
- MDx 0143099 contains Dr. Sanjay Gupta's bio and ID number, specifically: "1760499529|Sanjay Gupta is an American physician and a contributing CNN chief health correspondent based in Atlanta, Georgia. . . ."
- That same ID number "1760499529" is in MDX 0143118, specifically in row 55507.

6

8. Health Grades' requests for admission (sent July 18, 2014). MDx will respond to the requests for admission that it believes are relevant by July 30, 2014. After reviewing the responses, the parties will confer over whether MDx will respond to the remaining admissions.

THIS ALSO MISSTATES OUR CONVERSATION AND THE MDX POSITION. THE STANDARD UNDER THE SANCTIONS ORDER FOR WHETHER HG MIGHT BE ABLE TO REOPEN DISCOVERY IS WHETHER HG CAN SHOW A NEED BECAUSE IT WAS PREJUDICED BY THE MDX RESPONSE TO INTERROGATORY 2. WE CANNOT SEE HOW MANY OF THESE REQUESTS FOR ADMISSION COULD POSSIBLY MEET THAT STANDARD, BUT WE WILL RESPOND TO THOSE WE THINK COULD MEET IT, AND THEN WE WILL EXPECT HG TO EXPLAIN IN DETAIL HOW ANY OTHERS MEET THE STANDARD.

We received your response e-mail refusing to respond to Request for Admission Nos. 1, 2, 7, 8, 9, 10, 11, 12, 13, 14, 16, 23, 24, and 25. As we understand it, your main objection to these requests is that you have already made similar admissions in supplemental responses to interrogatory no. 2 ("Supp. Response"), which were made pursuant to Judge Boland's January 3, 2014 order. However, your Supp. Response is lengthy, somewhat confusing, does not follow the organization of the claims themselves, and will be difficult for a jury to follow. Further, you did not fully comply with the Court's January 3, 2014 order because you did state whether or not some claim elements are present or not (see failures to deny described below). We interpret your failure to deny that claim elements are missing as an admission that they are present. Our requests for admission are an effort to summarize the admissions you provided in your Supp. Response in a way that will be concise and easily understood by the jury.

For example, we understand your Supp. Response to admit that 3,982 doctor reports meet all of the six claim elements of claims 1 and 15, except for the first part of the fifth claim element, namely the "creating a . . . report using healthcare provider-verified information, patient-provided information, and third party verified information" limitation, and for the "verified" part of the second claim element, which you contend requires something more than a physician providing the information to MDx. (Judge Brimmer and Judge Moore have rejected this argument, by the way, and Judge Moore has further ordered that Dr. Cooper may not give testimony that contradicts the Markman Order).

Regarding the second claim element (accessing information received from a physician), you state:

REDACTED

(Third Supp. Interrogatory Response at pp. 5-6). In sum, you admit that the Number A physician reports meet the second claim element's requirement that three or more of the claimed types information be received from a physician.

Regarding the third claim element (compiling patient ratings), you state:

7

Case No. 1:11-cv-00520-RM-NYW Document 855-3 filed 09/04/14 USDC Colorado pg 10 of 11

> The numbers of patient ratings for providers who have data designated as being edited directly by the provider or indirectly by MDx customer service, or imported by MDx, is shown in MDX 0143095 – MDX 0143098. Any provider who does not have any patient ratings from Vitals.com does not infringe this claim element.

REDACTED

(Third Supp. Interrogatory Response at p. 9). In other words, the Number C physicians meet both the second claim element as described above and also meet the third claim element.

Regarding the second part of the fifth claim element that requires the report to include comparison ratings, you state:

REDACTED

(Third Supp. Interrogatory Response at p. 14). In other words, 3,982 physician reports meet the second and third claim elements as described above and also meet the fifth claim element's requirement that there be comparison ratings in the report.

Regarding the first part of the fifth claim element, you admit (because you don't deny) these 3,982 doctor reports were created using three or more of the claimed types of physician verified information. You also admit (because you don't deny) that these 3,982 doctor reports were created using patient provided information. You also admit (because you don't deny) that these 3,982 doctor reports were created using medical school and board certification information.

Further, you admitted that all doctor reports meet the first, third, and sixth claim elements. (Third Supp. Interrogatory Response at p. 18).

Our requests for admissions are designed to summarize the foregoing admissions in way that will be easy for the jury to understand. As you have seen, we pulled a representative doctor report, for a doctor who is one of the 3,982 doctors described above, and asked you to admit that this doctor report meets the claim elements as they are organized in the claims. Unlike your Supp. Response, the language in our requests is straight forward, follows the claim language *verbatim*, and will clearly show the jury which claim elements are in dispute and which ones are not.

Judge Boland's January 3, 2014 order stated that he would reopen discovery as may be necessary to cure any additional prejudice it has suffered as a result of MDx's improper answer to Interrogatory No. 2. We are asking that discovery be reopened for the limited purpose of getting responses the requests for admission, which are necessitated by the new information you provided in your Supp. Response to Interrogatory No. 2. We could not have served these requests earlier because you did not adequately or properly respond to Interrogatory No. 2 in the first instance or even in response to the order compelling you to do so. Before we received your latest supplemental response, we did not know what claim elements you admitted were present and we did not have enough information to connect any admissions with an actual physician report on

8

vitals.com. We will be prejudiced if you don't respond to our requests because your Supp. Response is confusing and incomplete as described above.

<span style="color:green">MDx Response: We disagree with your analysis. As your above lengthy analysis confirms, you already have received our responses on these issues and thus there is no prejudice.</span>

9. Supplemental technical and damages expert reports are due October 6, 2014. <span style="color:red">AGREED, FOR BOTH INFRINGEMENT AND VALIDITY ISSUES.</span> Rebuttal reports for technical and damages experts are due October 20, 2014. <span style="color:red">AGREED.</span> Health Grades does not agree to any supplemental expert depositions at this point. Health Grades suggested that the parties wait to review the content of the supplemental reports before conferring over whether supplemental depositions are necessary.

   <span style="color:red">HG CONFIRMED THAT, AT THE LEAST, IT WILL SUPPLEMENT ITS EXPERT REPORT TO ADDRESS THE QUERY RESULTS FROM MDX AND HOW THOSE IMPACT ON THE INFRINGEMENT ISSUES. AS YOU KNOW, THE PARTIES HOTLY CONTEST THIS ISSUE AND HOW THESE RESULTS RELATE TO INFRINGEMENT, AND THEREFORE DEPOSITIONS WILL BE NECESSARY. WE ADVISED YOU THAT WE WOULD BE ADDRESSING THIS IN OUR MOTION TO COMPEL.</span>

You mischaracterize our statements about our supplemental report. We informed you that we expect to have our technical expert address the query results. We were also surprised to see that you moved to compel expert deposition testimony without informing us that you were going to file. You violated Local Rule 7.1(a) full and complete conferral requirement. Your motion—filed 70 days before supplemental reports are due—is also premature. Finally, had you fully conferred, you would have learned that HG intended to disclose the query results attached hereto and you could have avoided having to raise this issue with Judge Boland. We will address in more detail the lack of conferral and premature request for relief in our response to the motion.

<span style="color:green">MDx Response: We fully conferred on all these issues, and we did inform you that we were going to file on all these issues – I distinctly recall Trent and I discussing in detail with Kris that we had to have a resolution to the deposition issue now and that we could not wait, while Kris vigorously argued that we should not bring it to the court's attention now and wait until after the expert reports were served. Do you not remember this conversation?

Also, in your July 11th email, you declined to have HG run queries that MDx has run, and you maintained the same position in our subsequent teleconferences. You have apparently changed your mind by providing the query results attached to your email below, but they are not nearly sufficient. We are sending a separate email about deficiencies in the HG queries, and hope we can resolve them before the August 18th hearing.</span>

10. The parties agree to the following pre-trial deadlines: trial exhibits will be disclosed by October 13, 2014 and demonstrative exhibits will be disclosed November 7, 2014.

   <span style="color:red">CORRECTION: THE PARTIES AGREED THAT THEY WILL SUBMIT PROPOSED REVISIONS TO THE PRETRIAL ORDER ON OCTOBER 13, INCLUDING NEW EXHIBITS AND WITNESSES (AND ADDRESSING ANY DISPUTES ABOUT THEM). ALSO, THE NOVEMBER 7 DEADLINE APPLIES TO DEMONSTRATIVES AND ILLUSTRATIVES.</span>

11. <span style="color:red">Health Grades will confirm Scott Montroy will not be present at trial. WHEN WILL WE RECEIVE THIS CONFIRMATION?</span>

Confirmed

9

12. Health Grades expects to use employee Christopher Loffredo in place of Carl Long.  Health Grades does not expect the scope or nature of Mr. Loffredo's testimony will extend beyond the areas disclosed for Mr. Long and will likely focus on topics such as Health Grades' financials, financial reporting system, and the company's reporting structure.  MDx's counsel indicated that it will likely not need to depose Mr. Loffredo if his testimony is limited as stated herein.  MDx will confirm this in writing by Friday.

THIS IS NOT ACCEPTABLE (MR. LOFFREDO "LIKELY" WILL FOCUS ON TOPICS "SUCH AS" FINANCIALS, ETC., AND HG "DOES NOT EXPECT" HIS TESTIMONY TO EXTEND BEYOND CERTAIN AREAS).  PLEASE CONFIRM THAT MR. LOFFREDO WILL TESTIFY ONLY AS TO DAMAGES NUMBERS, AS WE DISCUSSED.

Subject to your stated agreement that MDx will not depose Mr. Loffredo, his testimony will be limited to the damages numbers information and underlying Health Grades' financials,



**Scott D. Stimpson**
Chairman of the Intellectual Property Group



website | bio | vCard | newsroom | email

30 Rockefeller Plaza, New York, NY 10112
p (212) 500-1550 | f (212) 643-6500 **map**

---

**From:** Massaro, Adam [mailto:AMassaro@lrrlaw.com]
**Sent:** Wednesday, July 30, 2014 7:36 PM
**To:** Scott D. Stimpson; Trent Dickey; David C. Lee; Vincent M. Ferraro
**Cc:** Kostolansky, Kris J.; Kanan, Greg; Kirstin Stoll-DeBell (kstoll-debell@merchantgould.com); Goodlette, Tami
**Subject:** RE: Confirmation of our call and MDx corrections

Scott,

Below in blue are our responses to yours.

Adam, thank you.  Our responses and corrections to your various points are provided below in red capitals (of course, the content of this email, and any other correspondence disclosing anything about MDx agreements or other MDx confidential information, is highly confidential under the Protective Order).

Scott,

1. Produced URLs.  MDX provided on Monday only two URLs associated with two of the licensing agreements that MDx has produced ( **REDACTED** ).  MDx then provided a URL for **REDACTED** after the call yesterday.  WE PROVIDED THREE BECAUSE ONLY THREE OF THESE NEW CONTRACTS RELATING TO HOSTING ARE RUNNING.

10