**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S OBJECTIONS TO MAGISTRATE JUDGE BOLAND'S ORDER DENYING THE MOTION TO AMEND INVALIDITY CONTENTIONS AND THE MOTION TO COMPEL A SEARCH FOR NCQA MATERIALS (DKT. #859)**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel, hereby submits these objections pursuant to Fed. R. Civ. P. 72 to Magistrate Judge Boyd N. Boland's Order dated September 8, 2014, denying MDx's motion to amend its invalidity contentions, and denying MDx's motion to compel a search for the NCQA prior art materials ("Order"; Dkt. #859).

MDx sought before Magistrate Judge Boland, *inter alia*, leave to amend its invalidity contentions to:

(1) Add a non-patent publication, prior art reference, "Recommendations For Improving The Quality of Physician Directory Information On The Internet," published August 2004 by the National Committee for Quality Assurance ("the NCQA Article"), and which Health Grades,

1

Inc. ("Health Grades") production documents indicate was likely known to Health Grades throughout this case but not produced or identified by Health Grades in discovery; and

(2) Add a defense based on 35 U.S.C. § 101, pursuant to a new Supreme Court decision expanding the scope of that defense, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). MDx's Third Motion For Leave To Amend Invalidity Contentions, dated Aug. 1, 2014, Dkt. #814, at 1-2.

In addition, because the record evidence indicates that Health Grades has, in its possession, the NCQA Article (point 1, above) but never produced it in discovery, MDx moved to compel Health Grades to search for the article and related documents, and produce them. MDx's Motion To Compel Document Discovery, Additional Depositions, And Queries On The Health Grades System; And Request For Expedited Treatment, dated July 25, 2014, Dkt. #811, 2-5.

On September 8, 2014, Magistrate Boland denied all these requests, referencing opinions he expressed on the record at the related hearing. Order, Dkt. #859, 1. With regard to the request to add the NCQA prior art reference, Magistrate Boland's opinion did not address any of the facts indicating that Health Grades has had this reference for years and failed to produce it, but instead denied the motion because, in his opinion, the professional search firm hired by MDx should have located the reference. Transcript of hearing held on Aug. 28, 2014 before Magistrate Judge Boland, portions of which are attached hereto as Exhibit A, at 45, lines 2-8. Because Magistrate Judge Boland denied any right to assert the NCQA reference as prior art, the MDx motion to compel related to that prior art was determined to be moot. *Id.* at 45-46.

2

According to established precedent, Health Grades should not have been allowed to benefit from its apparent refusal to produce this prior art during discovery.

As for the Section 101 defense, Magistrate Judge Boland opined, contrary to the views of the U.S. Commissioner of Patents, that the recent Supreme Court decision did not significantly alter the law, and so held the defense should have been raised earlier. *Id.* at 45.

## I.   THE RELEVANT LAW

### A.   Motions to Amend

The parties agreed, and the Court ordered, that the parties would abide by the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California ("Patent Local Rules"). *See* Scheduling Order, dated June 16, 2011, Dkt. # 34, at 6. The Scheduling Order set a deadline of August 19, 2011 for MDx to provide its Invalidity Contentions. *Id.*, at 7. The Patent Local Rules are attached to the Scheduling Order as Exhibit A. *Id.*, at 6. Section 3-6 of the Patent Local Rules states that "[a]mendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause." *Id.*, Exhibit A, at PAT 8.

### B.   Objections Regarding Dispositive Magistrate Rulings

Magistrate Judge Boland's denial of the MDx Motion to Amend is dispositive on both issues, and thus they should be reviewed *de novo*. *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1462 (10th Cir. 1988); *see* § 636(b)(1)(B), (C). The ruling is dispositive because it precludes MDx from asserting invalidity based on the NCQA Article, and from asserting invalidity based on new Supreme Court precedent on the issue of patentable subject matter. Since either of these defenses could be the difference between winning and losing, they are

3

dispositive in nature. *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002) (when a magistrate denies a motion to amend that "effectively removes a defense or claim from the case, it may well be a dispositive ruling that the district court should review de novo"); *see also Ocelot*, 847 F.2d at 1462-63 (10th Cir. 1988)("Motions not designated on their face as one of those excepted in [28 U.S.C. § 636(b)(1)] subsection (A) are nevertheless to be treated as such a motion when they have an identical effect."); *Pownell v. Credo Petroleum Corp.*, 2011 U.S. Dist. LEXIS 69307 (D. Colo. June 29, 2011); *Bacote v. Berkebile*, 2014 U.S. Dist. LEXIS 78824 (D. Colo. May 19, 2014) (assuming that orders on a motion to amend that remove or preclude a defense or claim from the case are dispositive).

## II.     THE NCQA ARTICLE

### A.     The Facts

Another Health Grades patent recently issued, United States Patent No. 8,719,052 ("the '052 patent"; attached hereto as Exhibit B). In anticipation of the issuance of this patent, MDx conducted a new prior art search, and has now petitioned the U.S. Patent Office to institute an *Inter Partes* Review, seeking invalidity of the claims of the '052 patent. Declaration of Scott Stimpson In Support of MDx's Third Motion For Leave to Amend Invalidity Contentions ("Stimpson Decl."), dated Aug. 1, 2014, Dkt. #814-2, at ¶ 7. The prior art search on the new '052 patent turned up a new prior art reference – a publication by Shelton, *et. al.*, generated from the *National Committee for Quality Assurance* ("NCQA"; Dkt. #814-3). The NCQA Article completely anticipates various claims of the new Health Grades patent (claims which are different in scope and coverage than those at issue in this case) as MDx showed in its *Inter Partes* Review Petition served on counsel for Health Grades. Dkt. #814-2, at ¶ 7.

Although the NCQA Article was found in connection with a search regarding the different patent claims of the '052 patent, it turns out to be highly relevant to the patent at issue in this case, too (U.S. Patent No. 7,752,060 (the "'060 patent"); *see* Dkt. #814-4). The NCQA Article was published in 2004 – more than one year prior to the earliest filing date of the '060 patent, and thus it is prior art under 35 U.S.C. §102(b). It discloses many of the key elements of the claims of the patent in this case. *Compare, e.g.,* the '060 patent, Dkt. #814-4, column 20 (claim 1), with Dkt. #814-3, at 11-13 (the same provider-data called for in the '060 patent claims), at 14-15 ("validation" – verification -- by third parties of the same data called for in the claims), at 19 (patient survey ratings), and page 10 (the idea of comparison ratings – encouraging "as many data elements as possible" in the search results, which would include patient ratings disclosed at page 19).

MDx seeks to add this NCQA Article to its Invalidity Contentions, and the proposed revisions are shown in MDx's amended invalidity contentions, Dkt. #814-5, in redline showing the proposed changes. As can be seen from the amended invalidity contentions (Dkt. #814-5), the NCQA Article is highly relevant to the validity of the claims of the '060 patent. *Yodlee, Inc. v. CashEdge, Inc.*, 2007 U.S. Dist. LEXIS 39564, 4 (N.D. Cal. May 17, 2007) ("it would be unjust for information so highly material" to the merits to be avoided).

### B. The Evidence Is Strong That Health Grades Withheld The NCQA Article

When the NCQA Article surfaced, counsel for MDx searched the Health Grades production documents for it. The NCQA Article was not produced by Health Grades. Dkt. #814-2, at ¶ 8. However, the documents show that Health Grades knew about, and consulted, NCQA for sourcing of data for its physician reports. *See, e.g.,* Health Grades' Physician Quality

5

Report, dated December 28, 2004 (thus also prior art under 35 U.S.C. §102(b)), Dkt. #814-6, at 5 (relevant portions highlighted).

As shown below, the reference to the NCQA in Health Grades' own physician reports is almost certainly a reference to the NCQA Article. Indeed, Health Grades has been (a) unable to indicate what other NCQA information could possibly have been referenced if not this Article, and (b) unwilling to do a simple search for the NCQA Article to support its position.

The links between the prior art NCQA Article and the Health Grades reference are too strong to ignore:

- The timing matches up perfectly: the NCQA Article was published in August of 2004 (Dkt. #814-3, at 1); and the Health Grades physician report that cited the NCQA was only a few months later, in December of 2004 (Dkt. #814-6, at 1).

- The citation to the NCQA in the Health Grades physician report is an exact match to the NCQA Article. Specifically, the Health Grades report says that the ABMS has been designated as a primary source for board certification information. Dkt. #814-6, at 5. The NCQA Article says exactly that: board certification "use specialty boards approved by American Board of Medical Specialties…" (Dkt. #814-3, at 14).

- There is no other NCQA report or publication that would match the Health Grades citation. Indeed, while the NCQA Article cites about 25 prior references, none of them are from the NCQA – if the NCQA had done anything on this topic before, surely it would be cited. Dkt. #814-3, at 22-24.

Further evidence that the reference in Health Grades' physician report is to the same NCQA Article is found by a simple comparison of the '060 patent and the NCQA Article. They both recite many of the same elements, and indicate the same sources, and indicate which do (and which do not) need third party verification. For example, the '060 patent claims the following elements to be sourced from the physician: gender, specialty, years in practice, professional appointments, and languages. Dkt. #814-4, at col. 20, lines 30-37. The NCQA

6

identifies all these data elements, and also identified the source as the physician. Dkt. #814-3, at 11-14. Moreover, the phrasing is identical for both "years in practice" (not, *e.g.,* "years at current hospital," etc.), and "years in profession" (not, *e.g.,* "years since medical school" or "years since licensure," etc.). *Compare* Dkt. #814-4, at col. 20, lines 30-37 *with* Dkt. #814-3, at 12. And the same is true for the third party verified data – indeed, there is an exact match of the '060 patent's claims and the NCQA article. The '060 patent teaches that all these elements are verified by third parties: medical school, board certification, licensure, disciplinary action, internship, residency, and fellowship. Dkt. #814-4, at col. 20, lines 50-57. The NCQA article teaches all the same data elements, and that all must be verified by third parties. Dkt. #814-3, at 11-14. The NCQA Article also teaches the use of patient surveys. *Id.*, at vi, 19. Compare the '060 patent, Dkt. # 814-4, at col. 20, lines 39-48.

Health Grades would have the Court believe that all these similarities, and the temporal proximity, are just a remarkable coincidence, and it would have the Court believe that there must be some other NCQA publication referenced in the Health Grades physician report of Dkt. #814-6. But, tellingly, Health Grades refuses to perform any search that would show that they did not know of this NCQA Article.[1]

    C.    **Magistrate Judge Boland's Rulings**

There were two related MDx motions concerning the NCQA Article: (1) a motion to compel requesting, *inter alia*, that Health Grades be ordered to do a search for the NCQA materials and supplement its production accordingly, because the new evidence showed that Health Grades' original production was incomplete (Dkt. #811); and (2) the motion to amend to

---

[1] "The lady doth protest too much, methinks." *Hamlet,* William Shakespeare, *act 3, sc. 2, line 242*. In modern day vernacular: it looks like Health Grades has something to hide.

7

allow MDx to add the NCQA Article to its invalidity contentions. The two motions were intimately intertwined – if the motion to compel confirmed what the circumstantial evidence so strongly indicated (that Health Grades had the NCQA Article throughout discovery and withheld it from production), then Health Grades could not be heard to complain about the timing of this new defense, since the timing would be entirely of Health Grade's own making. *Audionics Sys. v. AAMP of Fla., Inc.*, 2014 U.S. Dist. LEXIS 100683, 39-40 (C.D. Cal. Mar. 12, 2014) ("Had AAMP earlier disclosed information concerning the [prior art] to Crux, Crux could have filed its motion to amend sooner, and the court could potentially have heard it before discovery closed. Consequently, AAMP cannot now be heard to complain."); *Convolve, Inc. v. Compaq Computer Corp*., 643 F. Supp. 2d 336, 343 (S.D.N.Y. 2008) ("the Ray Thesis would have been added to the defendants' invalidity contentions at an earlier time but for the plaintiffs' failure to produce it during discovery. As an equitable matter, then, the plaintiffs may not be heard to argue prejudice as a result of the amendment."); *Coopervision, Inc. v. CIBA Vision Corp.*, 480 F. Supp. 2d 884, 889 (E.D. Tex. 2007) ("A party that fails to disclose this information in a timely manner has little room to complain that the opposing party is tardy.").

Magistrate Judge Boland's ruling put the cart before the horse. Without ruling on the motion to compel and whether Health Grades should do a search for the apparently-withheld NCQA Article (and thus ***without*** confirming or even investigating the evidence that Health Grades has been withholding this critical prior art for the last three years), Magistrate Judge

8

Boland denied the motion to amend to add the NCQA Article, and from that ruling determined the motion to compel was moot. Exhibit A, at 44-46.[2]

### D.   Health Grades Should Be Ordered To Search For NCQA Materials

MDx long ago served an interrogatory and document requests, requiring Health Grades to identify and produce all prior art of which it was aware. *See* Dkt. # 811, at 2 and Exhibit A thereto, Dkt. #811-1. Despite these discovery requests, Health Grades did not produce the NCQA Article, or any NCQA materials, and none of these were identified in discovery by Health Grades.

In its motion to compel (Dkt. #811), MDx requested that Health Grades perform a simple search for the NCQA Article, and any other NCQA materials, including a query search of its document servers and emails. The requested queries would be done on Health Grades' document and email servers, in the named inventors' files and emails, and in the files and emails of Brian Blackman and Allan Dodge (both involved with the prosecution of the '060 patent), for any of the following: "NCQA," "National Committee," "Recommendations for improving" (the Article title), and "Shelton" (the first author). E-mail correspondence from S. Stimpson to K. Kostolansky, et al., dated July 8, 2014, Dkt. #811-6 (relevant portions highlighted). While

---

[2] Magistrate Judge Boland denied the motion to amend by concluding that the searches MDx did, including through a hired third-party professional search firm, should have found the NCQA Article. *Id*. at 44, line 17 to 45, line 8. But the NCQA Article was directed to results lists (only claimed in independent claims in the '052 patent), not provider reports (the subject of every independent claim in the '060 patent). It is no wonder that the professional searcher did not pick it up. And in any event, if Health Grades had this prior art all along and did not produce it (as strongly appears to be the case), then Magistrate Judge Boland's ruling effectively rewards Health Grades for this egregious discovery abuse. MDx would have had the NCQA Article much earlier if Health Grades had produced it during discovery and there would be no undue prejudice because Health Grades had it along.

Health Grades searched for prior art early in the case, including agreed search terms, those terms were formulated without knowledge of the NCQA Article.

The recent discovery of the NCQA Article is a significant new development triggering Health Grades' duty to supplement its search for prior art, with a particular focus on the NCQA materials. Fed. R. Civ. P. 26(e); *see also Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071 (D. Colo. 2006), *citing Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953-54 (10th Cir. 2002) (Rule 26(e)(1) requires supplementation when a party learns that that information previously disclosed is incomplete). Despite its duty under Rule 26(e), and although Health Grades has made no showing that a search for these limited NCQA materials would be difficult or time-consuming, counsel for Health Grades has refused to cooperate. E-mail correspondence from A. Massaro to S. Stimpson, et al, dated July 21, 2014, Dkt. #811-7 (relevant portions highlighted).[3]

At the very least, before issuing a dispositive ruling denying the MDx motion to amend, Magistrate Judge Boland should have ordered Health Grades to search for the NCQA materials. If, as the evidence strongly indicates, Health Grades has known of the NCQA Article but withheld it from discovery for the last three years, then it cannot be heard to now complain about timing and delay. *See* Section II(C), *supra*. Such a ruling would reward Health Grades for egregious discovery misconduct in holding back a reference that was not only critical prior art,

---

[3] In footnote 3 of its Opposition, without submitting any supporting declaration, Health Grades claimed in conclusory fashion that the discovery requested would be burdensome and expensive. Dkt. #831, at 10, fn 3. Notably, there is no affidavit of anyone about the alleged cost; there is no indication that the documents are inaccessible, that they are on backup tapes, -- nothing. This one, unsupported footnote is not remotely close to satisfying Health Grades' obligations of proving its burden. *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003); *see also Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 U.S. Dist. LEXIS 17857, 45-46 (D. Colo. Feb. 8, 2010) (even declaration of Vice President was insufficient to meet party's burden of providing burden in connection with discovery requests).

but apparently (from the correspondence of this art and the claims of the '060 patent) was used in the conception itself. *Audionics*, 2014 U.S. Dist. LEXIS 100683, 39-40 (defendant permitted to amend contentions where delay was caused by plaintiff's failure to produce discovery); *Convolve,*, 643 F. Supp. 2d at 343 (inequitable to consider prejudice of the party that failed to produce the discovery); *Coopervision,* 480 F. Supp. 2d at 889 (no room to complain about delay when a party fails to produce in discovery); *see also P*atent L.R. 3-6(b); *Theranos, Inc. v. Fuisz Pharma LLC*, 2013 U.S. Dist. LEXIS 143467, 4 (N.D. Cal. Oct. 2, 2013) ("Absent undue prejudice to the non-moving party, the recent 'discovery of material prior art despite earlier diligent search' supports a finding of good cause").

There is no undue prejudice to Health Grades with regard to this proposed amendment, because Health Grades was apparently aware of the NCQA Article and did not disclose the materials.  And at the time of the MDx motion there would have been no prejudice at all to Health Grades, as the parties would have simply added this issue to their agreed supplemental technical expert reports, and they could have been addressed at their subsequent depositions. Accordingly, Magistrate Judge Boland's denial of the motion to compel a search for NCQA materials and the denial of the motion to amend to include the NCQA Article as a prior art reference, should be reversed.

### III.     THE SECTION 101 DEFENSE

#### A.     *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)

Pursuant to 35 U.S.C. §101, patents are available on any process, machine, manufacture, or composition of matter. There, are, however, judicially-created exceptions for natural phenomena, abstract ideas, and laws of nature – the idea being that one cannot patent such basic

11

building blocks of science. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (U.S. 2014).

The claims of the '060 patent are directed to abstract ideas – the collection, organization, and reporting of healthcare provider data. Dkt. #814-4. But under pre-*Alice* law, the Section 101 defense was problematic. For example, the case law indicated that if applied to a specific area (here, healthcare provider industry) then the entire abstract idea is not being usurped and the claim should be patent-eligible. *See, e.g., CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269, 1299-1300 (Fed. Cir. 2013) (Rader, C.J., concurring-in-part and dissenting-in-part: "the question for patent eligibility is whether the claim contains limitations that meaningfully tie the idea to a concrete reality or actual application of the idea"; and "[p]re-emption is only a subject matter eligibility problem when a claim preempts all practical uses of an abstract idea.").[4]

On June 19, 2014, the United States Supreme Court issued its decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). *See* Dkt. #814-9. The *Alice* decision established a new standard for identifying computer-implemented "abstract ideas" that are not eligible for patent protection. *Alice Corp. Pty. Ltd.*, 134 S. Ct. at 2358.

According to the *Alice* Court, application of an abstract idea to a specific area as is the case with the '060 patent is no longer good enough for patentability in this area. Rather, there must be something "significantly more." *Id.*, at 2355. The claims of the '060 patent may be directed to a specific subject matter, but they lack anything "significantly more" that could

---

[4] Although the Supreme Court affirmed the Federal Circuit's *en banc* decision, the new standard articulated by the Supreme Court was not found in any majority Federal Circuit opinion. *See, e.g., CLS Bank Int'l*, 717 F.3d at 1292 n.1 (Radar, C.J.: "nothing said today beyond our judgment has the weight of precedent"), and at 1321 (Newman, J, noting the Federal Circuit provided "at least three incompatible standards, devoid of consensus, serving simply to add to the unreliability and cost of the system of patents as an incentive for innovation.").

justify a finding of eligible subject matter under *Alice*. Thus, the law has changed under *Alice* and patents (as well as pending applications) in this software area are open to new and strong attacks.[5]

The Supreme Court's *Alice* opinion is particularly on point for the claims of the '060 patent. Those claims are directed to processing data – they merely address the collection, organization, and reporting of data on healthcare providers. *See e.g.*, Dkt. #814-4, column 20, lines 20-68. The Supreme Court in *Alice* held that claims such as these are abstract ideas, such as "method[s] of organizing human activity" and "longstanding commercial practice[s]." *Alice Corp. Pty. Ltd.*, 134 S. Ct at 2356. The Court's discussion of the claims at issue in *Alice*, at 2358, also establishes that conventional use of a computer does not transform claims such as these into patent eligible subject matter ("recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention"). *Compare* the opinion of Federal Circuit Chief Judge Radar in *Alice*, opining that the claims were patent eligible by reciting computer hardware specifically programmed for a problem. *CLS Bank Int'l*, 717 F.3d at page 1307; *see also* opinions of Judges Moore, Newman, Linn, and O'Malley, all concluding the *Alice* claims were patent eligible.

As another commentator recently noted, the new standards are particularly directed to alleged inventions that, like the '060 patent, are related to processing data. *See,* Dennis Crouch,

---

[5] The "significantly more" standard is found in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 132 S. Ct. 1289 (2012). Prior to *Alice*, however, the *Mayo* standard was applied to laws of nature. *See, e.g.,* U.S. Patent & Trademark Office, MEMORANDUM: Preliminary Examination Instructions in view of the Supreme Court Decision in *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.* (June 25, 2014), page 1 (*see* Dkt. #814-11) (before *Alice,* "USPTO guidance applied a different analysis to claims with abstract ideas (*Bilski* guidance in MPEP 2106(II)(B)) than to claims with laws of nature (*Mayo* guidance in MPEP 2106.1).").

*USPTO Moves to Strongly Enforce Eligibility Limitations* (July 25, 2014), Dkt. #814-12 ("Based on information from several sources, it appears that the USPTO is now taking a more aggressive stance on subject matter eligibility and is particularly re-examining all claims for eligibility grounds prior to issuance. This is most apparent in technology centers managing data-processing inventions classes (Classes 700-707)."). In class 705, the '060 patent is squarely within these classes of patents for which *Alice* is most significant.

### B. Magistrate Judge Boland's Ruling

Magistrate Judge Boland disposed of this MDx defense, asserting (1) that *Alice* is not a "significant" change in the law, and (2) that MDx could have asserted a good faith defense under this statute earlier. Exhibit A, at 45.

With regard to Magistrate Judge Boland's view that *Alice* did not change the law, the evidence is to the contrary, as the *Alice* opinion applies a new standard (compare the Federal Circuit *en banc* decision with the Supreme Court's opinion). Indeed, the Patent Office, at the instructions of the Commissioner and in direct response to *Alice*, **_has withdrawn patent applications from issuance_**. *See,* Dennis Crouch, Update on USPTO's Implementation of 'Alice v. CLS Bank' (Aug. 5, 2014), Dkt. #832-1. If the law did not change, then why would the Patent Office withdraw from issuance all these patent applications?[6]

---

[6] Consistent with the Patent Office view, one prominent commentator, Donald Chisum (of *Chisum on Patents* – one of the foremost authorities on patent law and practice), has opined that the *Alice* decision is "an oasis in the desert" and characterized the decision as "important new ground." Donald S. Chisum, *The Supreme Court's Alice Decision on Patent Eligibility of Computer-Implemented Inventions: Finding an Oasis in the Desert* (June 23, 2014) ("the Chisum Article"), Dkt. #814-10 (also commenting that the Supreme Court's prior decisions "left stranded in a desert of uncertainty an array of feet-on-the-ground decision makers"). There are many commentators on *Alice*, as any search will show. Health Grades found two that supported

Magistrate Judge Boland's second ground for denying the motion to amend to add this new *Alice* defense is also problematic.  According to Magistrate Judge Boland, MDx cannot now be allowed to add the defense because MDx could have asserted a good faith defense prior to *Alice*.  Exhibit A, at 45, lines 9-12.   But MDx could have asserted **_many_** "good faith" defenses other than those that it did assert.  It could have asserted many different prior art combinations; it could have asserted a Section 112 defense because the claims lack clarity (*e.g.,* "verification"); it could have asserted other inequitable conduct allegations regarding the Health Grades submission of materials that were not prior art; etc.  Every litigant **_makes choices_** of which defenses to assert, and every litigant leaves some behind in favor of others.  The way the choices are made is by considering both the facts and applicable law, and thereby deciding which defenses are the strongest.

No one would dispute that, if the facts change, then the defenses may change accordingly.  And the same is true for changes in the law.  Prior to *Alice*, the law on Section 101 was not nearly as strong for patent defendants (particularly for data processing patents like the '060 patent), and while MDx might have been able to assert the defense without a Rule 11 violation prior to *Alice*, the strength of the defense increased substantially after *Alice*.  So, while the possible Section 101 defense did not make the cut pre-*Alice*, it does after *Alice* because the defense is now much stronger.  *See e.g.,* Timothy B. Lee, *Software Patents Are Crumbling, Thanks to the Supreme Court* (September 12, 2014), attached hereto as Exhibit C ("Now a series of decisions from lower courts is starting to bring the [*Alice*] ruling's practical consequences into focus.  And the results have been ugly for fans of software patents.  By my count there have been

---

its position and presented them to Magistrate Judge Boland, but most are in line with the views of Mr. Chisum and the Commissioner of Patents.

11 court rulings on the patentability of software since the Supreme Court's decision – including six that were decided this month. Every single one of them has led to the patent being invalidated."). Magistrate Judge Boland's opinion would require that every litigant raise every conceivable defense that was not a Rule 11 violation. But no litigant proceeds in this manner, nor would any court reasonably expect (or desire for) them to do so.

### C. Magistrate Judge Boland's Opinion Should be Reversed

As the Commissioner of Patents has determined, and as confirmed by courts and commentators, *Alice* changed the law. Such changes in applicable law demonstrate good cause for amending the invalidity contentions. *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 532 (S.D.N.Y. 2011) (citing *Beazer E. v. Mead Corp.*, 525 F.3d 255, 263 (3rd Cir. 2008) ("[a]n exception to normal law of the case and waiver rules is recognized when an intervening decision from a superior court changes the controlling law.")); *West v. Ortiz*, 2007 U.S. App. LEXIS 5700 at 5 (10th Cir. Mar. 9, 2007) (allowing appellant to raise an issue made viable by an intervening Supreme Court case); *DSC Commc'ns Corp. v. Next Level Commc'ns*, 107 F.3d 322, 326, n.2 (5th Cir. 1997) (same); *Biomedical Patent Mgmt. Corp. v. California*, 505 F.3d 1328, 1342 (Fed. Cir. 2007) ("DHS is not judicially estopped from asserting a new position that resulted from a change in the law").

Accordingly, MDx respectfully requests leave to amend its invalidity contentions to add a defense under 35 U.S.C. § 101 based on the new *Alice* standard.

## IV. CONCLUSION

For the foregoing reasons, MDx respectfully requests that the MDx Motion to Compel be granted so that Health Grades must produce all materials related to the NCQA Article, and that the MDx motion to amend be granted to allow defenses based on the NCQA Article, and the Supreme Court's *Alice* decision.

Dated:  September 22, 2014                              Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson                                       Terence Ridley, Atty. No. 15212
Trent S. Dickey                                         Wheeler Trigg O'Donnell LLP
David C. Lee                                            370 Seventeenth Street, Suite 4500
Vincent M. Ferraro                                      Denver, Colorado 80202
Sills Cummis & Gross P.C.                               Tel:  (303) 244-1800
30 Rockefeller Plaza                                    Fax:   (303) 244-1879
New York, New York 10112                                E-mail: ridley@wtotrial.com
Tel: (212) 643-7000
Fax: (212) 643-6500                                     *Attorneys for Defendant*
E-mail: sstimpson@sillscummis.com                       MDx Medical, Inc. d/b/a VITALS.COM
E-mail: tdickey@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: vferraro@sillscummis.com

### CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2014, I electronically filed the foregoing **MDX MEDICAL, INC.'S OBJECTIONS TO MAGISTRATE JUDGE BOLAND'S ORDER DENYING THE MOTION TO AMEND INVALIDITY CONTENTIONS AND THE MOTION TO COMPEL A SEARCH FOR NCQA MATERIALS (DKT. #859)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Vincent Marc Ferraro**
  vferraro@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

                                            _s:/Vincent M. Ferraro_