# Exhibit C

(Redacted Version of Dkt. No. 870)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**HEALTH GRADES, INC.'S RESPONSE TO "MDx MEDICAL, INC.'S MOTION IN LIMINE TO PRECLUDE HEALTH GRADES, INC. FROM MAKING INFRINGEMENT ARGUMENTS NOT IN ITS INFRINGEMENT CONTENTIONS" [DOC. #836]**

Plaintiff Health Grades, Inc. ("Health Grades") respectfully submits its Response to MDx Medical, Inc.'s ("MDx") Motion [Doc. #836] ("Motion in Limine").

INTRODUCTION

MDx had reasonable notice of the ways in which Health Grades contends that MDx practices the claim elements. Health Grades' arguments are not new. The Motion in Limine should be denied.

ARGUMENT

I. <u>Health Grades Is Entitled to Present Argument and Evidence That One of the Ways MDx Satisfies the Provider-Verified Information Element Is Through Its "Approval" Button Function</u>.

MDx had reasonable notice that the healthcare provider verified-information element ("Provider-Verified Information Element") can be satisfied by receiving verified information through the provider portal of vitals.com (which includes the "Approval" button function).

2004977952_1

The Provider-Verified Information Element of Claims 1 and 15 requires:

> Accessing [or access] healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: Specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies. . . .

['060 Patent, Claims 1 and 15.] The Markman Order made clear that "'verifying' requires only that the website receive confirmation of the information from some other source, and it is, in this instance, the healthcare provider" [Doc. #138 p. 15 n. 8].[1]

The accused vitals.com system includes a provider portal that allows healthcare providers to edit, if necessary, most of the information set forth in the Provider-Verified Information Element. Providers register with vitals.com to receive login information for the portal. Once logged in, the vitals.com server sends web forms to a provider's web browser that displays the provider-verified information fields. The provider can send these web forms back to vitals.com (with or without edits) by clicking the submit button, which is labeled "Approve." A screenshot of a web form from vitals.com's provider portal is shown below:

---

[1] This Court has denied MDx's request to reconsider Judge Brimmer's claim constructions and further held that "at this trial I am not going to permit experts to be redefining terms. We're going to stick with the *Markman* order . . . ." [Doc. #817-10, excerpt from June 27, 2014 hearing.]



[Doc. #632-3 p. 6, excerpt from MDx PowerPoint Slide (annotation added).] The checkmarks shown above demonstrate that this physician has "approved" more than three types of the claimed provider information, *e.g.*, gender, specialty information, languages and awards. Indeed,

data produced by MDx revealed that at least REDACTED physicians have clicked the "Approve" button for all the different windows within the portal [Doc. #793-3, excerpt of MDX0143118].[2]

Health Grades' technical expert, Dr. Philip Greenspun, explained in his September 28, 2012 deposition how MDx practices the claim element through the "Approval" button function:

> [Question]: And what is your understanding about how individuals who are registered or affiliated with Vitals' or MDx's website submit information about themselves to the website?
>
> [Answer]: . . . The physician can edit none, one, or all of those fields, **and hit the submit button and the information goes back to the server . . . .**
>
> [Question]: And when that information is submitted by the physician back to Vitals in connection with fields that were already completed on the web form, is that information then received from the healthcare provider?
>
> [Answer]: Yes, it was viewed on the healthcare provider's browser, **the healthcare provider hit the submit button**, it was packed up by the healthcare provider's browser program and submitted by the HTTP protocol to the VITALS.COM server.

[Doc. #405-7 p. 268:14-17, p. 269:2-17 (emphasis added).]

On November 26, 2012, after referencing Dr. Greenspun's testimony, Health Grades mapped out for MDx how the "Approve" button function satisfies the claim element:

---

[2] MDX0143118 (an Excel spreadsheet showing the extensive use of the "Approval" button function) was produced as a result of the January 3, 2014 sanctions order against MDx and its counsel [Doc. #711]. However, it was not until April 29, 2014 (and only after Health Grades conferred with MDx over failing to provide any "Approval" button queries) that MDx produced this highly probative spreadsheet.



[Doc. #405 p. 11, Health Grades opposition to MDx's motion for summary judgment of non-infringement for the Provider-Verified Information Element [Doc. #367] (highlighting added).] Thus, once again Health Grades provided MDx notice of one of the ways MDx satisfies the claim element.

Additionally, in his opening expert report, dated July 13, 2012, which was incorporated into Health Grades' infringement contentions [Doc. #482 p. 3], Dr. Greenspun provided MDx notice when he opined:

> . . . I understand that many more physicians have registered with vitals.com and view their profiles without changing any information. (*See* MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogs. at p. 3.) It is my opinion that in

> doing so these physicians have confirmed (*e.g.*, verified) their
> information for MDx and that MDx has thereafter received this
> information from these physicians.

[Doc. #292-1 ¶ 128.]³

There is also no limiting language in Health Grades' infringement contentions that states, or otherwise suggests, that MDx's use of the "Approve" button does not satisfy the claim element. Health Grades' infringement contentions state broadly that:

> MDx receives the healthcare provider-verified information from
> healthcare providers. MDx's website provides doctors with the
> ability to send information to MDx. For example, MDx's website
> provides many opportunities for doctors to edit their own profiles.

[Doc. #653-3 pp. 42-44.] Further, MDx has already argued once that Health Grades' use of "for example" means "only," and therefore, Health Grades could only claim that direct edits satisfy the claim element. Judge Boland, however, found this position to be "incredible" and "MDx counsels' strained reliance on the California local rules is unpersuasive . . . ." [Doc. #784 p. 4,

---

³ On October 11, 2012, MDx specifically objected that Health Grades had waited too long to assert its theory that MDx satisfies the claim element based on Dr. Greenspun's opinion set forth above in paragraph 128 of Dr. Greenspun's report [Doc. #325 pp. 3-4]. Judge Boland rejected this argument when he allowed Health Grades to incorporate this opinion into its infringement contention, finding "[t]he amendments appear to be more a matter of emphasis, and not completely new" [Doc. #482 p. 3]. Yet, MDx continues to engage in "seriatim motion practice" by claiming once again that this theory is untimely. [*See* Exhibit A hereto, excerpt from June 5, 2013 hearing, p. 26:11-20, p. 27:12-15 (Boland, J.: "I find that MDX has engaged in seriatim motion practice. It filed a motion. It lost the motion. It now has filed a new motion based upon the same facts but seeking different results or relief, and that's not how the Federal Rules of Civil Procedure were designed to work. If that were the case there would be no end to the possible briefing that would go on, and cases would -- all cases would have nearly 600 docket entries as this case now approaches . . . I'm not going to have this litigation go on and on with seriatim motions addressing the same issues but seeking different relief."]

Order Denying MDx's Motion for Reconsideration of Order Imposing Sanctions.][4] *See also Creagri, Inc. v. Pinnaclife Inc.,* LLC, 2012 U.S. Dist. LEXIS 158540, at *6, 2012 WL 5389775 (N.D. Cal. Nov. 2, 2012) (holding the California Local Patent Rules do not "require the disclosure of specific evidence [or] require a plaintiff to prove its infringement case"); *Shared Memory Graphics, LLC v. Apple, Inc.,* 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (holding the local rules only require that the contentions "must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement").

In short, Health Grades timely provided MDx reasonable notice that the Provider-Verified Information Element can be satisfied through the "Approval" button function.[5]

II.  Health Grades Is Entitled to Present Argument and Evidence Regarding the Ways MDx Uses Disciplinary and Licensure Information When Creating Reports.

Health Grades' infringement theory regarding this claim element is also not new. The creating a report element under claims 1 and 15 requires:

---

[4] MDx's Motion in Limine simply rehashes many of the same arguments that MDx already lost when defending against Health Grades' Motion for Sanctions [Doc. #632]—another example of MDx engaging in "seriatim motion practice." *See supra* note 3.

[5] The cases MDx relies upon in arguing that Health Grades cannot present evidence about the different ways MDx infringes are inapposite. For instance, in *Teashot LLC v. Green Mt. Coffee Roasters, Inc.,* Teashot failed to assert—at all—the doctrine equivalents until after discovery closed, and the theory was not explained in detail by Teashot's expert until approximately two months later. 2014 U.S. Dist. LEXIS 14841, at p. *22 (D. Colo. Feb. 6, 2014). However, MDx had reasonable notice of Health Grades' theories several months before expert discovery closed. In *Dynetix Design Solutions, Inc. v. Synopsys, Inc.,* Dynetix provided a "boilerplate" statement that the claim was also satisfied by the doctrine of equivalents. 2013 U.S. Dist. LEXIS 129494, at p. *5 (N.D. Cal. Aug. 22, 2013). In contrast to *Dynetix*, Health Grades provided more than an adequate level of detail to put MDx on notice of the ways that the claim elements could be satisfied.

> creating [or create] . . . a healthcare provider report on the first healthcare provider using . . . the information verified by the independent third party source . . . .

['060 Patent, Claims 1 and 15 (the "Creating a Report Using Third-Party Information Element").] Information verified by the independent third-party source may include "disciplinary action information" and "licensure" [*id.*].

Vitals.com issues awards to providers that it displays within its providers profiles, including the "Patients' Choice Award" and "Most Compassionate Doctor Award." [Doc. #817-1, screenshot of Awards & Recognition Program webpage from August 6, 2014.] For example, Dr. Jane Kano's vitals.com report features the awards she has received:



> **Awards & Distinctions**
>
> **AWARDS**
> - Patients' Choice Award (2011, 2013)
> - Compassionate Doctor Recognition (2013)

[Doc. #817-2, screenshots of the "Summary" and "Credentials" webpages for Dr. Kano (highlighting added) from August 6, 2014.][6] According to MDx, for providers to be eligible for the Vitals Awards and Recognitions, they must be licensed and have no sanctions: "Vitals Awards & Recognitions doctors have active medical licenses and no sanctions" [Doc. #817-1]. MDx therefore used disciplinary action and licensure information from its database and system to determine the eligibility of Dr. Kano and other physicians for the awards that are part of their reports as shown on vitals.com.

Health Grades provided MDx reasonable notice that using disciplinary and licensure information can be satisfied in multiple ways, including using the same in the manner described above. Health Grades' infringement contention states:

> MDx creates one or more healthcare provider reports using information from the MDx database, including using . . . information verified by the independent third-party source about the first healthcare provider.

[Doc. #837-1 p. 57.] There is no limiting language that states, or otherwise suggests, that using third-party information in the manner described above would not satisfy the claim element. MDx appears to again argue that the examples Health Grades provided in its claim contentions

---

[6] The icon to the right of the Patients' Choice Award icon is the "Compassionate Doctor" icon, which includes the same type of pop-up.

are the "only" ways that the claim element can be satisfied. Judge Boland, however, has already found this type of argument to be "incredible," and "MDx counsels' strained reliance on the California local rules is unpersuasive . . . ." [Doc. #784 p. 4.]

Dr. Greenspun also opined in his report, which became part of Health Grades' infringement contentions, that:

> the creation of the report involves using . . . information from third party sources, **even if that information is not explicitly displayed**. (See Deposition of Mitch Rothschild at 116:06-117:01; Vitals.com PowerPoint, 'Thinking About Physician Quality' at MDX0012068.)

[Doc. #292-1 ¶ 157] (emphasis added).] MDx therefore had notice that Health Grades believed that the claim element could be established where third-party information was used to determine what other information goes into a report, *e.g.*, using disciplinary and licensure information to determine awards eligibility and ultimately whether an award would be part of the provider's report. Indeed, MDX0012068, referenced by Dr. Greenspun, illustrates how MDx employs a "reverse algorithm" that uses disciplinary action to determine, among other things, who is entitled to certain awards that become part of the report, in this case the Top Ten Doctor Award. MDX0012068 states that "[t]he individual quality factors [that are used by the algorithm] include all the data points previously mentioned" [*id.*]. "Disciplinary Action" is one of those previously mentioned data points that MDx uses when creating reports [*id.* at p. 10 (MDX0012066)]. That the Top Ten Doctor Award MDx created is displayed in reports on its website is confirmed by

[Doc. #853-7] (showing that, as part of his report, Dr. Kagan received a Top Ten Doctor Award).[7]

Health Grades' infringement theories, which followed the Markman Order, also provided MDx reasonable notice that the claim element could be satisfied in the manner set forth above. Judge Brimmer concluded that "creating" and "using" required no construction and the broad, plain English meaning applied [Doc. #138 pp. 20-21]. In rejecting MDx's constructions of "creating" and "using," Judge Brimmer concluded that use of a "subset of 'information'" still constitutes using, and "all" the compiled third-party information does not need to be used in creating a report [*id.* at 20]. He also concluded that "[t]here is nothing in the patent that requires, when receiving, acquiring, or compiling information, a predetermination of what will ultimately be put into a report" [*id.*].

Lastly, if anyone is untimely in disclosing theories associated with the Creating a Report Using Third-Party Information Element, it is MDx. MDx only asserted that disciplinary or licensure information was not used in creating a report starting in January 24, 2014, and did not claim until August 1, 2014, that using this information to create awards that are part of the report did not satisfy the claim element.

    1.    <u>July 25, 2011</u>. Health Grades Interrogatory No. 2 requires MDx to state the "basis for any assertions of non-infringement" and "how MDx's Accused Products operate or function differently than the claim element and a particularized statement why a component, feature or function of [the] Accused

---

[7] MDx has already raised the awards arguments set forth in its Motion in Limine when it responded to Health Grades' Motion to Compel and for Additional Sanctions for MDx Medical, Inc.'s Failure to Comply with Court-Ordered Discovery [Doc. #818]. [*See* Doc. #839.] MDx's position was rebuffed in detail during the August 28, 2014 hearing on [Doc. #818]. An excerpt from the hearing with Judge Boland is attached hereto as Exhibit B, pp. 60-86.

Products is not a substantial equivalent to the permanent claim element" [Doc. #126-3 p. 9].

2. August 29, 2011. MDx's first response only states that "[t]he MDx reports do not use all of the compiled information" [Doc. #126-4 p. 8], but made no mention that disciplinary or licensure information was not used.

3. April 26, 2012. Judge Boland Orders MDx to supplement its response and "to state for each claim element whether MDx's Accused Products provide such an element or an equivalent and, if not, explain how MDx's Accused Products operate or function differently than the claim element" [Doc. #192 p. 2].

4. May 10, 2012. MDx issues its court-ordered supplemental response. Regarding the creation of a report using the third-party verified information, MDx acknowledges that licensure and disciplinary action "is obtained from one or more third-party sources." MDx states that: "[t]he MDx reports do not use all of the compiled information" [Doc. #632-1 p. 6]. Again, even though Judge Boland ordered MDx to fully explain why and how MDx did not practice the claim elements, there was no mention that disciplinary or licensure information was not used or an explanation why the same was not used.

5. January 3, 2014. Judge Boland issues a sanction order against MDx and its counsel, again requiring that MDx "fully comply with my order compelling discovery" and fully respond to Interrogatory No. 2 by January 24, 2014 [*id.* at 10].

6. January 24, 2014. Regarding third-party verified information, MDx *now* states that the website after January 2011 "has not created provider profiles containing or using disciplinary action information" and "has not created provider profiles containing or using licensure information" (with one exception) [Doc. #757 p. 11]. MDx also reveals that: "the database used to populate provider profiles called 'Mongo,' (*see* MDX0106987) does not include licensure data. Because the Mongo database does not include licensure information, provider providers (sic) are not created using licensure information" [*id.* at p. 12].

7. August 1, 2014. E-mail from MDx counsel: "The claim element requires creating a report using this information, not creating an award" [Doc. #818-5]. MDx *now* takes the position that using information to create a piece of information that was displayed in the report is not using information to create a report.

MDx cannot now claim that it does not use disciplinary or licensure information while moving to block Health Grades from presenting evidence and argument to the contrary. MDx's Motion in Limine should be denied.

III. Health Grades' Capability Theory.

Claims 15 and 16 are system claims. MDx infringes these claims because it makes, uses, sells, and offers for sale a system that is reasonably capable of meeting the claim limitations, even if its system may also be capable of noninfringing modes of operation. [Doc. #292-1, Greenspun Report, ¶ 83; incorporated as part of Health Grades' infringement contentions [Doc. #482].] Health Grades does *not* assert that it must prove "actual performance" of any elements of claims 15 and 16, let alone that it must prove actual performance of all of the elements of these claims [Motion in Limine p. 8].

For each of the elements of claims 15 and 16, Health Grades will rely on evidence that MDx's accused system has the claimed capabilities, which includes evidence that it has actually been used as claimed. For example, for the Provider-Verified Information Element, Health Grades contends:

> 124. MDx admits that the system is capable of allowing physicians to edit the following fields: specialty information, gender, awards/honors, professional appointments, professional memberships, and languages. . . .
>
> 125. MDx further admits that physicians have actually edited each of these fields. . . .
>
> 127. Regardless of the popularity of editing profile information, the system is capable of receiving this information from physicians and it is used to create some reports. This capability is available to any licensed physician and no changes or alternations need be made to enable this feature.

[Doc. #292-1.]  These two types of evidence (*e.g.*, admissions that the system is capable of being used as claimed and proof that the system has actually been used as claimed) are not mutually exclusive.  Rather, both types demonstrate that the accused system is reasonably capable of meeting the claim limitations.  By showing evidence of actual use, Health Grades is not claiming that actual use is necessary.  Instead, the fact that the accused system actually performs the claimed element simply confirms it is capable of practicing the claim element.

Health Grades has adequately and timely disclosed its intent to rely on both system capabilities and actual use to support its contention that MDx's accused system meets each and every claim element.  MDx's Motion in Limine should be denied on this ground.

CONCLUSION

For all the foregoing reasons, Health Grades requests that this Court deny MDx's Motion in Limine [Doc. #836].

Respectfully submitted September 15, 2014.

> *s/ Kris J. Kostolansky*
> Gregory B. Kanan, Esq.
> Kris J. Kostolansky, Esq.
> Adam L. Massaro, Esq.
> 1200 17th Street, Suite 3000
> Denver, Colorado  80202
> Tel:  (303) 623-9000
> Fax:  (303) 623-9222
> Email: gkanan@lrrlaw.com
>         kkosto@lrrlaw.com
>         amassaro@lrrlaw.com
> *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2014, I electronically filed the foregoing **HEALTH GRADES, INC.'S RESPONSE TO "MDx MEDICAL, INC.'S MOTION IN LIMINE TO PRECLUDE HEALTH GRADES, INC. FROM MAKING INFRINGEMENT ARGUMENTS NOT IN ITS INFRINGEMENT CONTENTIONS" [DOC. #836]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Vincent Ferraro, Esq.
David C. Lee, Esq.
Trent Dickey, Esq.
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY 10112
E-mail: sstimpson@sillscummis.com
vferraro@sillscummis.com
dlee@sillscummis.com
tdickey@sillscummis.com

Terence M. Ridley, Esq.
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO 80202-5647
E-mail: ridley@wtotrial.com

*s/ Kris J. Kostolansky*
Kris J. Kostolansky, Esq.