# Exhibit D

## (Redacted Version of Dkt. No. 870-1)

Civil Action No. 11-CV-00520-RM-BNB


**HEALTH GRADES, INC.'S RESPONSE TO "MDx MEDICAL, INC.'S MOTION IN LIMINE TO PRECLUDE HEALTH GRADES, INC. FROM MAKING INFRINGEMENT ARGUMENTS NOT IN ITS INFRINGEMENT CONTENTIONS" [DOC. #836]**

---

**Exhibit B**


**Excerpt from August 28, 2014 hearing in front of Judge Boland**

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLORADO

 3      Case No. 11-cv-00520-RM-BNB

 4      _____

 5      HEALTH GRADES, INC.,

 6           Plaintiff,

 7      vs.

 8      MDx MEDICAL, INC., doing business as Vitals.com

 9           Defendant.

10      _____

11              Proceedings before BOYD N. BOLAND, United States

12      Magistrate Judge, United States District Court for the

13      District of Colorado, commencing at 1:32 p.m., August 28,

14      2014, in the United States Courthouse, Denver, Colorado.

15      _____

16              WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17      ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18      _____

19                          APPEARANCES

20              ADAM L. MASSARO and KRIS KOSTOLANSKY, Attorneys at

21      Law, appearing for the plaintiff.

22              SCOTT STIMPSON and DAVID LEE, Attorneys at Law,

23      appearing for the defendant.

24      _____

25                       MOTIONS HEARING
```

AVERY WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119          FAX 303-893-8305

```
 1                    APPEARANCES (Cont'd)

 2              KIRSTIN STOLL-DeBELL, Attorney at Law, appearing

 3      for the plaintiff.

 4              TRENT DICKEY and TERENCE RIDLEY, Attorneys at Law,

 5      appearing for the defendant.

 6                    P R O C E E D I N G S

 7              (Whereupon, the within electronically recorded

 8      proceedings are herein transcribed, pursuant to order of

 9      counsel.)

10              THE CLERK:  All rise.  Court is in session.

11              THE COURT:  Thank you.  Please be seated.  We're

12      here this afternoon in case 11-cv-520, Health Grades against

13      MDx Medical on three pending motions.  May I have

14      appearances, please?

15              MR. KOSTOLANSKY:  Good morning -- or good

16      afternoon, Your Honor.  Kris Kostolansky, and with me is my

17      colleague Adam Massaro, Lewis Roca Rothgerber, and also at

18      counsel table with us is Miss Kirstin Stoll-DeBell with

19      Merchant & Gould all on behalf of Health Grades.

20              THE COURT:  Thank you.

21              MR. STIMPSON:  Good afternoon, Your Honor.  Scott

22      Stimpson, Sills Cummis.  With me is my partner Trent Dickey,

23      my associate David Lee, and our local counsel from Wheeler

24      Trigg, Terence Ridley.

25              THE COURT:  Thank you.  My sweet wife laid out my
```

```
 1    approximately 2:59 p.m. to 3:19 p.m.)

 2              THE CLERK:  All rise.  Court is in session.

 3              THE COURT:  Thank you.  Please be seated.  Now we

 4    are at Health Grades' motion to compel and for additional

 5    sanctions.  Mr. Kostolansky?

 6              MR. KOSTOLANSKY:  Thank you, Your Honor.  Your

 7    Honor, our motion directs itself to five specific remedies.

 8    I want to address -- I want to address those remedies before

 9    moving onto the substance of our argument to put -- put

10    things in context.  First we ask that the compiling

11    third-party verified information element of the patent be

12    deemed established, that the creating a health care provider

13    report using third-party verified information be deemed

14    established, that clear and unvarnished responses to the

15    Interrogatory Number 2 regarding the foregoing elements be

16    provided, fourth, that we reconvene the deposition of MDx's

17    corporate representative in Denver at MDx's expense to

18    address these and related issues, and, fifth, that Health

19    Grades be awarded its attorney's fees and costs in connection

20    with this motion.  And I would note parenthetically, Your

21    Honor, that we are -- there are no attorney's fees or costs

22    or other sanctions being sought with respect to Mr. Ridley or

23    his -- or his firm.  Despite four chances MDx's interrogatory

24    answer to -- to Number 2 regarding these claim elements has

25    not been forthrightly and honestly answered despite three --
```

1    three orders from Your Honor regarding this matter.  And I

2    want to take a look, Your Honor, initially at the patent so

3    we can focus on the specific elements involved.  And if we

4    look at column 20 that sets forth the compiling information

5    regarding -- that's been verified by independent third-party

6    source comprising three or more of the group consisting of

7    the following, and then we have board certification,

8    licensure, disciplinary action information, medical school,

9    medical internship, residency, and fellowship.  That's the

10   compiling piece.  And then the creating a report piece

11   concerns, by one computer processor a health care provider

12   report using the health care provider verified information,

13   patient provided information, and the information verified by

14   independent third-party sources to prepare the report.

15        Judge Brimmer entered his order, Your Honor, in

16   *Markman* construing some of these terms that are at issue.

17   And if we could go to Page 18 of that order please, Dan,

18   there Judge Brimmer talks about compiling and compile.  And

19   on the next page it talks about when a -- when a -- where

20   claim 1 describes compiling information verified by an

21   independent third-party source, our -- our element at issue

22   here, the sources of such information are listed, but the

23   manner in which the information is acquired is not described

24   by any word but compiling.  In this instance compiling does

25   refer -- appear to refer to both gathering the information

```
 1   and then putting it together with other information verified
 2   by third-party sources.  In short, the -- to the extent the
 3   term requires construction the Court concludes that depending
 4   upon the context in which it is used compiling can mean
 5   gathering or putting together.  And then in the next subpart
 6   H, if we could go back to that headnote, please, Dan, we're
 7   talking about -- the Court's talking about using health care
 8   provider verified information.  And there, Your Honor, we see
 9   the Court says the parties disagree about whether as
10   defendant contends the use must be of all the designated
11   information.  The defendant fails to persuasively explain why
12   the Court should read such a limitation into claim language.
13   Defendant argues that the information refers back to the
14   previous references to the categories of information
15   described earlier in claim 1.  That appears to be in dispute,
16   but also does not resolve the issue of whether all such
17   information must be used when creating a particular health
18   care provider report.  The defendant does not explain why the
19   use of a subset of information somehow renders the
20   information no longer within the categories previously
21   identified in claim 1.
22           Thus, Judge Brimmer in *Markman* is saying there's
23   no requirement to use all the information in creating the
24   report and there's no reference to any requirement to
25   actually display the information that may be used in creating
```

```
 1      the report.  Judge Brimmer states that the categories of
 2      information are being used to create a report.  There is
 3      nothing in the patent that requires when receiving, acquiring
 4      or compiling information a predetermination of what will
 5      ultimately be put into the report.  The particular
 6      embodiments described herein are not intended to limit the
 7      types of information that may be provided and/or verified.
 8      For instance, a patient or health care provider might provide
 9      information to the web site that is not deemed relevant or
10      important upon reaching the step of creating the report.
11      Because the Court rejects the insertion of all in the claim
12      language the phrase requires no further construction.
13              Now, this is -- this element of the claim is
14      important, Your Honor, because MDx has moved for summary
15      judgment in connection with the comparison ratings element.
16      That's been denied.  They moved for summary judgment in
17      connection with the -- the health care provider verified
18      information element.  That motion was then withdrawn by them
19      and sanctions were entered with respect to the discovery
20      responses upon which they based that motion.  So MDx has now
21      focused its defense on the third-party verified information
22      element and the creating a report using that information.
23      The seven elements that are listed, Your Honor, include the
24      area -- the group that's been referenced earlier, the ABMS,
25      American Board of Medical Specialties, that provide
```

```
 1    certification.  There's not much dispute that the

 2    certification information is compiled by MDx and used in

 3    creating the report.  MDx has taken the position that

 4    internship, residency, fellowship, and medical school, that

 5    that information is displayed when it's received from the

 6    health care provider as opposed to a ver -- a third-party

 7    source, thus, they are trying to create an issue with respect

 8    to those elements for trial.  We disagree with their

 9    position, but nonetheless, that's a position that they are --

10    they are contesting.

11            So that then takes us to the other two elements,

12    licensure and disciplinary action.  And to put this in

13    further context, Your Honor, let's take a look at Exhibit 48

14    because that is -- I'm sorry, that is Document 18 -- 817-2.

15    And here we have the report, the provider report of MDx

16    concerning Dr. Kano.  And you'll see on the screen, Your

17    Honor, there is a star or a snowflake for Dr. Kano

18    representing that she had been awarded the Patients' Choice

19    Award.  And there's a description there by MDx of what the

20    Patients' Choice Award concerns.  Now, the Patients' Choice

21    Award is only entered by MDx or awarded when there has been

22    no sanctions and when the physician is, in fact, licensed.

23    We believe under Judge Mark -- Judge Brimmer's *Markman* ruling

24    that MDx is using that information in connection with the

25    creation of the report when it puts the snowflake or star
```

1        symbol for the Patients' Choice Award on Dr. Kano's report.

2                And if we turn to the second page of Dr. Kano's

3        report we see there that -- awards and distinctions.  If we

4        could scroll up just a smidge, Dan.  Yeah, the very, very

5        bottom there.  Patients' Choice Award and Compassionate

6        Doctor Recognition, again, listed on the second page of Dr.

7        Kano's report.

8                Now, there's another award that MDx grants called

9        the Top 10 Doctor Award.  And if we could go to the MDx web

10       site page, Dan.  This is for Dr. Keggen (phonetics).  And if

11       we see, Your Honor, there's a reference there opposite Dr.

12       Keggen's name to Top 10.  And the description there by MDx

13       states that Vitals Awards Top 10 Doctor Honors, about four

14       lines up from the bottom.  And so we'll come back to this Top

15       10 Doctor Award as we look at how MDx has -- has addressed

16       this issue in discovery.  But the Top 10 Doctor Award is

17       awarded involving a reverse algorithm from MDx that utilizes

18       disciplinary action information to determine whether the

19       physician should receive a Top 10 Doctors Award and, hence,

20       have that Top 10 Doctors Award displayed in the MDx profile.

21               Now, on August 1st of this year we received an

22       e-mail from plaintiff's (sic) counsel, not a sworn -- yes,

23       not -- I'm sorry.  Defense counsel.  Thank you.  Not -- not a

24       sworn interrogatory answer, not an amended interrogatory

25       answer, but simply an e-mail.  And in that e-mail on

Case 1:11-cv-00520-RM-BNB    Document 870-1    Filed 09/15/14    USDC Colorado    Page 10 of 30

66

```
 1    August 1st, 2014 MDx's counsel said the claim element

 2    requires creating a report using the information, in this

 3    case licensure and disciplinary action, not creating an

 4    award.  Thus MDx was drawing a distinction between creating

 5    an award that appears in the report and using information in

 6    connection with the report, and that -- Your Honor, that type

 7    of distinction defies common sense.  It's contrary to Judge

 8    Brimmer's *Markman* ruling.  It's based purely on semantics and

 9    it has nothing to do with the way in which MDx operates its

10    web site with respect to pulling information to -- that's

11    used in the preparation of these reports.

12            I want to walk through the four interrogatory

13    responses that -- that MDx has -- has provided in the face of

14    three Court orders, Your Honor, to demonstrate how MDx has

15    failed to answer the interrogatory directly and without

16    evasion and fully and completely as required under Rule 33

17    and under Your Honor's order.  So I put together a timeline,

18    Your Honor, if we could look at that.  There's a July 25

19    entry that sets -- sets the stage.  That's the interrogatory

20    where MDx was supposed to state based upon their insertions

21    of non-infringement how the accused products operate or

22    function differently than the claim element.  MDx's first

23    response to that simply stated that the reports on the MDx

24    web site do not include three or more of the information

25    verified by the independent third-party source.  Then we
```

1    stated that creating a report using third-party information

2    states, regarding that element, MDx reports do not use all of

3    the compiled information.  Well, Judge Brimmer has ruled in

4    *Markman* that that's -- that that is not -- not required in

5    order to -- to meet the elements.  Now, that answer was

6    provided prior to the *Markman* order being entered.  I should

7    add that.

8         Then Your Honor on April 26 of 2012 granted Health

9    Grades' motion and ordered MDx to supplement its response and

10   to state for each claim element whether MDx's accused

11   products provide such an element or an equivalent, and if

12   not, explain how MDx's accused products operate or function

13   differently than the claim element.

14        So then we get to May -- May 10, 2012, MDx's

15   second -- second supplemental response, and they say

16   regarding third-party verification element the MDx web site

17   does not display the following information, licensure or

18   disciplinary action.  Well, again, that display is not a

19   required element of any portion of the patent.  Then

20   regarding the creation of the report element MDx acknowledged

21   that licensure and disciplinary action is obtained from one

22   or more third-party sources.  So that -- that is, in fact, a

23   significant onoptic (phonetics) acknowledgment with respect

24   to the claims.  Then MDx further states the MDx reports do

25   not use all of the compiled information.  Again, that's an

```
 1     irrelevancy under -- under Judge Brimmer's *Markman* order and,
 2     you know, was rejected by him.
 3              On January 3rd, 2014 Your Honor entered his
 4     sanctions order and that found that MDx's interrogatory
 5     answer regarding the health care provider verified
 6     information was false, that its summary judgment argument was
 7     unfounded, and, again, ordered MDx to respond to
 8     Interrogatory Number 2, and stated that Health Grades may be
 9     permitted to reopen discovery necessary to cure any
10     additional prejudice.  And there in that order Your Honor
11     made reference to -- if we could go ahead and pull that up,
12     Dan -- at Page 4 made reference to MDx's attempts to defend
13     its false interrogatory answer.  It went on to note that the
14     cases relied upon by MDx for its meritless argument -- then
15     if we could turn to the next page -- concerned motions to
16     compel with respect to requests for production of documents.
17     And there Your Honor noted I'm not concerned here with the
18     request for production of documents.  To the contrary, in
19     this case Health Grades served an interrogatory on MDx and I
20     ordered -- I entered an order compelling MDx to fully answer
21     the interrogatory by stating for each claim element which
22     includes the ones at issue now whether MDx's accused products
23     provide such an element or an equivalent, and if not, explain
24     how MDx's accused products operate or function differently
25     than the claim element.  And then the Court addressed what
```

```
1    one should do in answering interrogatories.  The party is
2    charged with the knowledge of what its agents know or what is
3    in its records -- in records available to it, or even for the
4    purposes of Rule 33 information which others have given it on
5    which it intends to rely in its suit.  And on the next page
6    Your Honor noted to the contrary, interrogatories must be
7    answered directly and without invasion -- evasion in
8    accordance with information that the answering party
9    possessions after due inquiry.  In this case and in view of
10   my order compelling discovery the due inquiry certainly
11   required MDx to go -- to gather information available from
12   its database by either designing necessary queries or
13   otherwise.
14        So then, Your Honor, MDx filed its third response
15   to Interrogatory Number 2.  If we go back to the timeline,
16   please, Dan, on January 24th, 2014.  And there MDx said
17   regarding third-party verification MDx states that the web
18   site after January 11 has not created provider profiles
19   containing or using disciplinary action information and has
20   not created provider profiles using or containing licensure
21   information.  Now, this is the first time, Your Honor, that
22   MDx had made such a disclosure regarding its discovery
23   responses.  And there is a document that MDx had produced
24   that raises issues regarding that disclosure and that is at
25   Docket Number 39-3, an e-mail exchange -- an internal e-mail
```

     1     exchange at MDx.  So there we see there's an e-mail from an
     2     employee Gina Larsen-Stoller (phonetics), November 9, 2011,
     3     to Ms. Erica Boyer (phonetics) and others.  And Miss Boyer
     4     has responsibilities with respect to maintaining the
     5     information contained on the web site.  And if we go back to
     6     the prior page we see Miss Larsen-Stoller asked -- and let's
     7     -- let's back up.  Let's go up one more, Dan.
     8            Do we actually mention sanctions publicly or we
     9     just -- do we just collect the information in our database?
    10     Does it take a certain amount of time for a sanction to be
    11     registered with us?  I ask because I'd like to weed out
    12     doctors with sanctions from our Top 10 polls, meaning the Top
    13     10 Award, and I'd like to know how accurate our data is.  We
    14     go back to the first page.  Miss Boyer responds on
    15     November 9, the same day, just have the doctors with
    16     sanctions suppressed from the selects that are run.  Thus it
    17     appeared that MDx was using disciplinary action to cull or
    18     weed out doctors with respect to awards that are appeared --
    19     that appeared on its web site.
    20            THE COURT:  Selects would be awards?
    21            MR. KOSTOLANSKY:  I'm sorry?
    22            THE COURT:  This says we -- from the selects --
    23            MR. KOSTOLANSKY:  From the selects, yes.
    24            THE COURT:  -- selects is the same as awards?
    25            MR. KOSTOLANSKY:  That's -- that's how -- that's

```
 1    how we were interpreting that because the question that was
 2    posed involved the Top 10 Doctor Award which we -- which we
 3    showed Your Honor -- Your Honor earlier.  Now, what had not
 4    been a significant concern to us about whether this
 5    disciplinary action was used to cull based upon this e-mail
 6    that we had received from MDx, but now MDx is taking the
 7    position in this interrogatory answer that this information
 8    is, in fact, not being used to create a -- the provider
 9    reports.
10          And so if we could go back to the timeline, Dan.
11    Let's go to the next entry up, the -- right there, third one,
12    up one.  MDx also said there that the database used to
13    populate provider profiles called Mongo (phonetics) does not
14    include licensure information, not licensure data.  Because
15    the Mongo database does not include licensure information
16    provider profiles are not created using licensure.  Thus that
17    raised the issue about whether licensure was used in
18    connection with preparing these reports.
19          So as part of the discovery process we took the
20    deposition of the MDx corporate representative in May of this
21    year and here's what he said to juxtapose that interrogatory
22    answer.  The next column, Dan, that next one down.  Yeah.
23          MDx's corporate representative testified as
24    follows:                        REDACTED
25
```

<span style="color:red">REDACTED</span>

 2                      So now we have an interrogatory

 3    answer that says they don't include licensure in the data and

 4    we have deposition testimony from their corporate

 5    representative that says they do.  Also, Your Honor, they --

 6    in their interrogatory -- back to their interrogatory answer

 7    on January 24 they state to -- right to the bottom, Dan, the

 8    last two paragraphs.  MDx also states that the information is

 9    not verified if it is subject to such disclaimers.  So now

10    they're raising another defense regarding this issue.  But

11    Judge Brimmer had already addressed that in his *Markman*

12    order.  Regarding third-party verified information he stated

13    the patent does not require third-party information be

14    proven, but, rather, only describes an attempt to

15    substantiate that will provide a patient with some assurance

16    that the qualification of the doctor had been checked by

17    someone.  And there's a reference to the '060 patent.  So

18    that particular response was not of great concern to us.

19                      So after we received these discovery responses in

20    light of Your Honor's sanctions order we began the

21    negotiation to take the deposition of the corporate

22    representative of MDx which we did on May 15th and one of our

23    purposes was to address these issues.

24                      The next event that occurred, Your Honor, was on

25    April 30th Your Honor denied the motion for reconsideration

1    filed by MDx.  If we could go to that on the timeline, Dan.

2    And there Your Honor held that the motion to compel made

3    clear exactly what Health Grades was seeking and why, and my

4    order compelled a full and complete answer to the question.

5    At -- at that point reliance on California local rules was

6    unreasonable.  Thus Your Honor recognized that California

7    local rules do not trump orders of this Court, but the same

8    pattern that appeared with respect to the prior sanctions

9    order has continued with respect to this claim element.  And

10   in the prior sanctions order Your Honor noted that MDx

11   currently has no knowledge of any physician who entered

12   and/or modified three or more of the health care provider

13   verified information.  The argument was misleading, if not an

14   outright falsehood was made, and the care with which the

15   statements are presented lack -- that makes the lack of

16   candor clear.

17          When we took Mr. Balomo's (phonetics) deposition,

18   Your Honor, regarding licensure information -- if we could

19   bring up Exhibit 19, Dan.  When we took his deposition we

20   specifically referenced the topics to be covered, and topic 9

21   concerned the discovery responses that Your Honor had ordered

22   that we -- that we just reviewed, and then topic 12, to

23   remove any doubt about licensure, MDx's use of licensure

24   information and public records in creating provider profiles,

25   thus the use of licensure information regarding Mr. Balomo's

1    deposition as the MDx corporate representative was clearly

2    teed up.

3              Now, the next event that occurred, Your Honor,

4    there was further discussion between counsel regarding the

5    inadequate responses that MDx had made with respect to this

6    interrogatory concerning the claim elements at issue.  And

7    that failure to provide full and complete response led to a

8    further and now fourth supplement to Interrogatory Number 2

9    by MDx with respect to these elements.  If we could go, Dan,

10   to the -- to the timeline.

11             So here we have MDx stating that -- regarding

12   third-party information MDx contends that the third-party --

13   information from third parties includes disclaimers and

14   third-party information is not verified.  Okay.  We've

15   covered that.  Next regarding the creating a report using

16   third-party verified information, MDx, again, repeats that it

17   was not creating provider profiles containing or using

18   disciplinary action or licensure information.  So this is

19   eight days before we take Mr. Balomo's deposition where he

20   says that's not -- that's not the case.  MDx also --

21             THE COURT:  Who signed the -- who signed the

22   supplemental interrogatory answers?

23             MR. KOSTOLANSKY:  We will -- we will check, Your

24   Honor.  I -- I don't have that right now.  Oh, Ms. Boyer.  So

25   MDx also states, Your Honor, in its -- in its fourth

1    response, third, the vitals.com software code.  So now we're

2    bringing something new in.  Accessing the database used to

3    populate provider profiles called Mongo, and then they

4    reference the page, does not include licensure data except in

5    certain circumstances for accessing the provider portal.

6    Because the vitals.com software code accessing the Mongo

7    database does not include licensure information, provider

8    profiles are not created using licensure information.  So

9    let's -- Dan, let's put side by side that response which

10   starts with the word third and let's look at what -- what was

11   said prior in the January response.

12          In the January response which is at the top there,

13   Your Honor, they reference the database used to populate

14   provider profiles does not include licensure.  Now, in the

15   May response, even though that's still contrary to what

16   Mr. Balomo said, they say the vitals.com software code

17   accessing the database does not include licensure data.  So a

18   subtle twist from database which obviously they were

19   concerned might imply that the whole -- that the database is

20   used with respect to creating the reports, now they want to

21   switch it to the software code.

22          Okay.  Let's go to the next -- the next entry on

23   the timeline, next two.  Thank you.  So, I'm sorry, Page 3,

24   Dan.  There we go.  Yeah, that's it.

25          Okay.  As noted above,              REDACTED          .

1                          REDACTED

2

3

4

5

6

7

8

9

10                              Now, in fact, all the disciplinary

11    action information and the licensure information is included

12    within the -- the MDx database and -- and one need look no

13    farther than MDx's own documentation to see that.  And if we

14    could pull up Exhibit 5, Dan.  This is Vitals data and

15    database November of 2013, so not that long ago.  And we look

16    at the -- if we could go to Page 31.  Here's the data

17    uploading protocols ensure accuracy of information.  Critical

18    data changes occur monthly.  Certifications, licensure

19    status, disciplinary actions, sanctions and CQA.  So there

20    they're acknowledging with respect to their database that

21    licensure status and disciplinary actions are updated on a

22    monthly basis.  They state later new Patient Choice Award

23    winners are also identified monthly.  And then they state

24    data sources with less variability are updated on a three to

25    six-month cycle.  Hospital affiliations, awards, publications

```
 1    (inaudible).  So they're updating the awards on a three to
 2    six-month basis.  They're using licensure and data status
 3    monthly.
 4              Now, we've just looked at the interrogatory
 5    answers that MDx provided.  No reference to awards being
 6    included as part of the report or that information that is
 7    used to create an award that is then placed on the provider
 8    profile is not included in the report.  No disclosure of that
 9    whatsoever despite four tries.  What they did do was they
10    tried to focus on well, hey, we don't display this
11    information or it's not verified or now they're trying to
12    develop some distinction as we saw between three and four --
13    their third and fourth response about the difference between
14    a database and software that's really never explained.  It's
15    not until August 1st, 2014, and, again, not in an
16    interrogatory answer, not in an amended verified statement
17    signed by -- by their client, but in an e-mail from the
18    lawyer do they say -- if we could go to the timeline, Dan --
19    the claim element creating requires -- right at the top --
20    Page 4, please.  The claim element requires creating a report
21    using this information, not creating an award.  And, Your
22    Honor, we can be creative as lawyers as much as we want
23    within limits.  That is way outside the bounds of appropriate
24    advocacy to say something that is involved in -- is used in
25    creating an award that appears in the report is not involved
```

1    in creating the report.  That makes no sense, defies common

2    sense, and is contrary to Your Honor's discovery order that

3    they should provide full and complete responses to the

4    interrogatory.

5          So let's assume that this half-baked notion that

6    they have has some level of validity.  Why wasn't it

7    disclosed prior to August 1, 2014, three months from trial --

8    four months from trial in an e-mail from counsel when Your

9    Honor specifically ordered the other side to provide full and

10   complete interrogatory responses in a non-evasive way and

11   even provided case law instructing regarding what should be

12   done with respect to answering interrogatories and what the

13   obligations of a party are?  So this is the first time, Your

14   Honor, then since July of 2011 when Health Grades propounded

15   this interrogatory that MDx took the position that

16   information used to create a piece of information that was

17   displayed in the report is not using that information to

18   create the report.

19         And so the e-mail went on, Your Honor.  And in the

20   next sentence MDx's counsel said -- down a little farther --

21   down a little farther, Dan, just -- yeah, there we go.

22   Counsel -- up, up, up, up.  There we go.  And down and down.

23   No.  Yeah, there we go.  They further explained that even the

24   awards are not created using disciplinary action.  They are

25   given to the physician when certain criteria are met and

Case 1:11-cv-00520-RM-BNB   Document 670-1   Filed 09/15/14   USDC Colorado   Page 23 of
31

79

```
 1    there is an absence of disciplinary action, thus MDx's
 2    position that using information contained within the MDx
 3    computer system to cull out information that would be
 4    otherwise displayed in the provider profile is not used in
 5    creating the report because the information is removed from
 6    the report.  Well, that's a questionable position to take to
 7    begin with, but -- because even if you eliminate certain
 8    reports from your web site you're still using that
 9    information to determine what would be included in the report
10    that is created.  So, in other words, if someone's been
11    subject to sanctions, they earned the Patients' Choice Award,
12    but you don't give them the Patients' Choice Award, then
13    you're using that in deciding the content of the report.  But
14    even more importantly, Your Honor, the disciplinary action
15    is, in fact, used to determine whether someone will receive
16    the Patients' Choice Award as is licensure.  So when the --
17    when the physician is both licensed and has not been subject
18    to disciplinary action which MDx determines based upon its --
19    its -- the use of its information in its computer base then
20    they issue the award and the award appears on -- on the -- on
21    the provider profile, and so that is using that information,
22    Your Honor.  Let's go ahead down to the next paragraph, Dan.
23    Thus there can be no argument with respect to absence of
24    licensure information because that information must be used
25    in order to -- to receive an award, thus licensure
```

Case No. 1:11-cv-00520-RM-NYW   Document 888-4   filed 09/29/14   USDC Colorado   pg 25
of 31
Case 1:11-cv-00520-RM-BNB   Document 670-1   Filed 09/15/14   USDC Colorado   Page 24 of
31

80

        1    information is used in the creation of a report for an

        2    individual who is entitled to receive the Patients' Choice

        3    Award.  Nevertheless, Your Honor, despite all of that, MDx's

        4    corporate representative when he -- when he's deposed on

        5    May 15 testified he did not know whether a physician who had

        6    been sanctioned was eligible to receive a Top 10 Doctor Award

        7    given by MDx.  Again, completely -- completely contrary to

        8    the existing state of the record and contrary to what he

        9    should have been prepared to testify to.

       10         So here's his -- his deposition testimony, Your

       11    Honor.  Question, If a physician has been sanctioned is the

       12    physician eligible to receive a Top 10 Doctor Award given by

       13    MDx?  Answer, I don't know.  And this is a corporate rep of

       14    MDx, May 15th, after these interrogatory answers have been

       15    propounded saying that he doesn't -- he doesn't know when MDx

       16    has just taken the position in its interrogatory answers that

       17    is contrary to -- to what they now say.

       18         Let's go back to the patent if we could, Dan,

       19    Exhibit 1.  The patent in that second element refers to in

       20    the third line of creating that health care provider report

       21    using health care provider verified patient and the

       22    information verified by an independent third-party source.

       23    There's no requirement here, Your Honor, that anything be

       24    displayed.  The question is completely one of use.  And this

       25    information was used by MDx in creating their report and they

1    did not disclose that in their discovery responses.

2              THE COURT:  And it was used in creating the report

3    because it was used in awarding -- making awards which were

4    reported in the report?

5              MR. KOSTOLANSKY:  Which were -- yes, which were

6    presented and displayed in the report as a part of the report

7    designed to provide information to consumers which is the

8    function of all of the elements or pieces of a report.  Each

9    piece has the same function, providing information to

10   consumers.

11             So if we look at the last entry then from the

12   timeline, please, Dan, the last two.  Now, in opposition to

13   this motion Ms. Boyer submitted an affidavit on behalf of MDx

14   and there in paragraph five she confirms that medical

15   information -- medical licensure information is used to cull

16   physicians to determine eligibility to receive awards.  So

17   that's Miss Boyer today, in August of 2014.

18             Let's look at Mr. Balomo back in May.    R
                                                         E
19                                                       D
                                                         A
20                                                       C
                                                         TE
21                                                       D

22

23                                                   So now we

24   have two conflicting statements from MDx, one in a

25   deposition, one under oath within -- within three months of

Case No. 1:11-cv-00520-RM-NYW   Document 888-4   filed 09/29/14   USDC Colorado   pg 27 of 31
Case 1:11-cv-00520-RM-BNB   Document 670-1   Filed 09/15/14   USDC Colorado   Page 26 of 30

82

```
 1    each other and we still don't have either of those presented

 2    in a verified interrogatory response.

 3         So the discovery from MDx in connection with this

 4    -- these topics, Your Honor, are filled with half-truths and

 5    outright misstatements, all of which are designed to avoid

 6    having to disclose that sanctions information and licensure

 7    information is compiled by MDx and used to create the MDx

 8    provider profiles.

 9         Now, let's look at what MDx says.  So they tell us

10    that Health Grades position that disciplinary action

11    underlying an award is used in creating the report was not

12    set forth in Health Grades' infringement contentions.  In

13    other words, it's their fault.  It's not our fault.  It's

14    Health Grades' fault.  Well, as we're going to see in a

15    minute, Your Honor, Health Grades' infringement contentions

16    did address the issue regarding what was displayed in the

17    physician profile of MDx and did address the issue regarding

18    whether information that is not displayed is, in fact, used

19    in creating the report.  MDx simply chose to ignore the

20    information that Health Grades provided so that it could

21    continue to withhold information that's damaging to it

22    regarding the compiling of third-party verified information

23    element and using that information to create a report.  So

24    let's look at the disclosure that Health Grades made.  Let's

25    look, Dan, at Exhibit 110.
```

Case 1:11-cv-00520-RM-BNB   Document 870-1   Filed 09/15/14   USDC Colorado   Page 27 of
31

1           This is Your Honor's order regarding Health

2      Grades' motion for leave to amend infringement contentions.

3      If we go to the second page, there Health Grades -- Health

4      Grades seeks to amend its infringement contentions to

5      incorporate the infringement opinions of its technical

6      expert, Dr. Philip Greenspun.  So that was the issue with

7      respect to the motion.  On the next page Your Honor granted

8      the motion to amend January 14, 2013.  Mr. Greenspun's report

9      is dated January of -- I'm sorry, July of 2012.  In his

10     report -- if we go to paragraph 157, there Mr. Greenspun

11     talks about the three elements that are -- that the reports

12     do contain a combination of, and then he says furthermore,

13     the creation of the report involves using a combination of

14     the information that the physician entered or verified,

15     information the patients have provided, and information from

16     third-party sources even if that information is not

17     explicitly displayed.  And there in his report Dr. Greenspun

18     cites a Vitals PowerPoint thinking about physician quality

19     and he cites a particular page, 12068.  So, Dan, let's go if

20     we could to -- to that exhibit and let's go to Page 12068.

21     There MDx states in its document that a reverse algorithm was

22     created based on the extensive history of top doctor ratings.

23     Okay.  So MDx is using a reverse algorithm to figure out

24     who's entitled to a Top Doctor Award.  Then MDx notes -- and

25     this is, again, at Page 12068.  The individual quality

1    factors include all the data points previously mentioned.

2    So, now, let's go back two pages, Dan, and let's look at

3    those data points.  There's the Vitals data set, 62 fields.

4    They include things like patient ratings, academic

5    appointments, overall provider score, languages spoken, and

6    disciplinary action, thus Vitals is using disciplinary action

7    as part of a reverse algorithm to figure out who's entitled

8    to its Top 10 Doctor Award.  And that information was

9    disclosed to Vitals in the infringement conventions submitted

10   by Health Grades pursuant to Your Honor and as set forth in

11   Dr. Greenspun's report.  MDx says that Health Grades is

12   bringing up a new theory that would not be expected to come

13   to mind.  Well, this is not a new theory, Your Honor.  MDx's

14   argument is nothing more than an after-the-fact justification

15   to disguise its failure to fully and accurately and without

16   evasion respond to the discovery request as ordered by Your

17   Honor.  When we raise these issues with MDx they come back

18   with explanations that as we've seen defy common sense,

19   assert that sanctions and licensure is not used to create a

20   report when it's used to create a part of the report, and

21   that is all that is necessary in order to determine that that

22   information is used.  There's no requirement that all of the

23   third-party verified bits of information be used.  Judge

24   Brimmer says you can use part of that and you don't have to

25   display any of it.

 1        So let's look now at Page 9 of MDx's brief in this

 2    matter, Your Honor.  There MDx says that when -- when the

 3    create a report language is properly interpreted it means

 4    precisely what it says, the actual software creation of the

 5    report, thus the claim language requires that three or more

 6    of third-party data elements actually be used in that

 7    function, not some other analysis or software function like

 8    identifying providers for awards.  Well, first of all, the

 9    claim language doesn't require three or more data elements

10    actually be used in the function.  Judge Brimmer was very

11    clear about that.  You don't have to use three.  You have to

12    compile three.  So that's -- that's a misstatement of what --

13    of what *Markman* requires.  And then to bring in this notion

14    of the actual software creation, that's not in Judge

15    Brimmer's *Markman* order.  Judge Brimmer said using should be

16    interpreted in its own common sense way, not -- not some

17    creative after-the-fact justification for failure to respond

18    to the interrogatory answers.  The patent says nothing about

19    -- about this type of response.  MDx uses this with respect

20    to the Top Doctor Award in connection with a reverse

21    algorithm.  The results of which are then placed into the --

22    the reports on MDx's web site.  This software application

23    argument, Your Honor, is another slight of hand designed to

24    hide the truth, but even if one were going to hide the truth

25    through this slight of hand that should have been disclosed

1    in the four interrogatory answers that were provided and in

2    response to addressing the three orders that were entered by

3    the Court.

4         So, again, Your Honor, we ask that the third-party

5    verified information element be deemed established, that the

6    creating a report using third-party verified information be

7    deemed established, that MDx be ordered to answer fully,

8    completely without evasion Interrogatory Number 2 regarding

9    these questions -- these elements, that Mr. Balomo's

10   deposition be reconvened in Denver at MDx's expense to

11   address these and other matters, and that costs and

12   attorney's fees be awarded to Health Grades.

13        Now, Your Honor, let me return to the other part

14   of this motion and that is the -- the issue concerning

15   additional discovery regarding -- regarding the SQL responses

16   that MDx has provided.  So what we did here, Your Honor, was

17   we tried to make this -- excuse me.  We tried to make this as

18   easy and as straightforward as possible.  We looked at these

19   SQL responses.  We thought that almost 4,000 doctors appeared

20   to have met all the six elements of the claims.  We knew we

21   were going to end up in an argument with them if we

22   propounded further discovery trying to clarify that so we

23   took a very, very simple and unburdensome approach.  We

24   focused on one doctor and we traced that doctor's history

25   through the SQL responses that they had given, and in