# Exhibit E

(Redacted Version of Dkt. No. 871)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

---

**MDX MEDICAL, INC.'S SUPPLEMENTAL OPPOSITION TO HEALTH GRADES, INC.'S MOTION TO COMPEL AND FOR ADDITIONAL SANCTIONS FOR MDX MEDICAL, INC.'S ALLEGED FAILURE TO COMPLY WITH COURT-ORDERED DISCOVERY**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by and through its undersigned counsel and pursuant to the Court's order of September 8, 2014 (Dkt. #860), hereby supplements its opposition to Plaintiff Health Grades, Inc.'s ("Health Grades") Motion to Compel and for Additional Sanctions ("Health Grades' Motion"; Dkt. #818).

**I.    SUMMARY OF THE ARGUMENT**

Health Grades requests discovery and "additional sanctions" for perceived discovery abuses. Specifically, from the hearing, Health Grades seeks an order that two claim elements be deemed established, that MDx's response to Interrogatory No. 2 be supplemented again, that the MDx corporate representative deposition be reconvened at MDx's expense, and that Health Grades be awarded fees and costs. August 28, 2014 Hearing Transcript, Ex. J to the September 15, 2014 Declaration of Scott Stimpson ("Stimpson Decl. II"), at 60, lines 6-20, and 86, lines 4-

12. In order to obtain such severe sanctions, the Court must consider the following factors: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Davis v. Miller*, 571 F.3d 1058, 1061 (10th Cir. 2009) (internal citations omitted). All the factors weigh in MDx's favor.

At the hearing on August 28, 2014, counsel for Health Grades presented new arguments and introduced numerous documents not in the record on this motion, and failed to give counsel for MDx any advance notice or copies of the exhibits prior to Health Grades' presentation to the Court. In its written response to Health Grades' motion papers, MDx rebutted every issue raised point-by-point, but counsel for MDx had no opportunity to meet either Health Grades' lengthy (over one hour) oral presentation or any of the new documents and arguments it presented. Consequently, the Court granted MDx this opportunity to address these new submissions.

First, Health Grade's presentation was inaccurate as to its content and its conclusions. Second, its legal basis is wrong. Health Grades' presentation was based on two critically flawed premises: (1) that, without a *Markman* hearing on the issue, the Court should find that the claim language requiring use of data to "create a report" includes use of that data to bestow an award because awards appear in the reports, and that any contrary argument is frivolous; and (2) that Health Grades asserted in its Infringement Contentions that MDx's use of data to bestow an award met the claim language requiring use of that data to create a report. Both of these predicates are baseless.

2

## II. THE MEANING OF "CREATING A REPORT"

The use of sanctions and licensure data to bestow an award does not, and cannot, meet the '060 patent's claim language addressing use of that data to create a report. Apparently believing that no *Markman* proceedings nor jury deliberations are necessary on this issue, Health Grades leaps to the conclusion that MDx's legal and factual position is frivolous, and "defies common sense" (Stimpson Decl. II, at ¶ 7, Ex. J, at 66, lines 4-11). Incredibly, nowhere in its vilification of MDx and its counsel is there a single reference to the '060 patent's specification, or to the prosecution history, or to a single Federal Circuit case on claim construction. Nor does counsel for Health Grades even address the citations to the '060 patent on this issue found in MDx's Opposition. MDx submits that its position is the correct one as a matter of law and the Court should not take away from the jury this important infringement issue.

### A. The '060 Patent and Prosecution History

The parties dispute the meaning of the phrase in the '060 patent's claims "creating . . . a healthcare provider report" ('060 patent, **claim 1**, col. 20, lines 58-59) and "create a healthcare provider report" ('060 patent, **claim 15**, col. 22, line 48). Scott Stimpson August 22, 2014 Declaration ("Stimpson Decl. I"), attaching '060 Patent as Ex. A (the "'060 patent"). MDx contends that this language addresses the act (performed by the computer software) of creating the report, and excludes software functions related to creating and compiling information for the database which is a separate claim element (even if some of that data might later be used in a provider report). Federal Circuit law and the '060 patent's claim language, specification, and prosecution history all solidly support MDx's position. Tellingly, in all its submissions, and throughout its extensive hearing presentation on August 28 (other than brief select reference to

3

certain isolated claim language), counsel for Health Grades addressed none of these critical claim construction considerations.

(i) The Claims:   The claims are the single most important consideration in claim construction. See *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005). The '060 patent's claims plainly and unequivocally contemplate use of software in the various steps of the patented process. *See, e.g.,* Stimpson Decl. I, Ex. A, col., 20, lines 58-64 ("creating, by the at least one computer processor [*i.e.,* by software], a healthcare provider report . . . ."), and col. 22, lines 12-17 and 48 ("a series of instructions that, when executed by the at least one computer processor, cause the at least one processor to: . . . create a healthcare provider report"). Particularly in the context of software functionality, the "creating a report" function is claimed and described as a separate software function. The step of compiling third party data is claimed ***separately*** and is a distinct software function. *Id.* at col. 20, lines 50-57 and col. 22, lines 40-47.

Health Grades asks this Court to construe the "creating a report" language in a vacuum, as if the claims did not separately and distinctly address the very function (compiling third party data) that Health Grades now tries to force-fit into the "creating a report" language. But claims must be construed ***in context***. *See, e.g.*, *Minebea Co., Ltd. v. Think Outside, Inc.,* 159 Fed. Appx. 197, 202 (Fed. Cir. 2006) ("construing claim limitations in a vacuum [] is plainly inconsistent with *Phillips*, which compels us to construe claim limitations in the context of the claim in which they appear.") (*citing Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005)).

Had Health Grades wanted the claims of the '060 patent to read as they now seek to assert, it would have been an easy thing to do. For example, instead of the language "creating . .

4

. a healthcare provider report . . . using . . . the information verified by a third party source" the language could have read "creating . . . a healthcare provider report . . . using . . . the information verified by a third party source ***or information derived in whole or in part therefrom***." But Health Grades' experienced prosecution counsel chose to draft these patent claims to require use of the third party data ***itself*** to create the report, and Health Grades cannot now rewrite and broaden the '060 patent's claims in litigation. *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("This court, however, repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity."; "Thus, in accord with our settled practice we construe the claim as written, not as the patentees wish they had written it."). Health Grades' attempt to conflate the "compiling" of third party data information with the separately claimed "creating a report" language is fundamentally inconsistent with Federal Circuit precedent, since ***they are two different claim elements***. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different meanings. . . ."); *CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

(ii) The Patent Specification: The '060 patent consistently treats the collection and creation of a database as a separate function from the actual creation of a report. In column 17 the process is described. Stimpson Dec. I, Ex. A. First, the information about a physician is collected, and the specification expressly states that the service provider itself can be the source of the data that will ultimately end up in the report (as MDx does with the awards). *See, e.g.,*

5

Stimpson Decl. I, Ex. A, col. 17, lines 7-10 ("in one embodiment, the information is obtained through an independent third party, ***such as the company Web service provider***, that researches and gathers public information about the physician…." (*emphasis added*)). After the web service provider's (here, MDx) research and providing the data, and still before the report is created, the patent teaches another independent and intermediate step -- verification. *Id*. at col 18, lines 204 ("verification process 1608 is a required step of process 1600 and ***builds upon the prior steps*** …."; *emphasis added*). Following these two steps the report is created. *Id.* at col. 18, lines 24-27 ("***After verifying the data and information in verification operation 1608***, flow proceeds to the compiling, or creation, of provider profiles…." (*emphasis added*)). This is consistent with the clear claim language that addresses these as separate and distinct functions, and Health Grades cannot ignore the important patent specification. *See Phillips*, 415 F.3d at 1313 ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

(iii) The Prosecution History: The prosecution history also strongly supports the concept that the compiling of data step was a different, independent step from creating the report. Indeed, the step of compiling third party verified data was originally claimed as a separate "***module***" from the step of creating the report.[1] *See* Prosecution History of the '060 patent (Stimpson Decl. II, at ¶ 8, Ex. K, MDX 0013407, claim 19). The Examiner recognized this to be the opposite of what Health Grades is now alleging, *i.e.,* as separate and distinct parts of a computer program. *Id.*, November 13, 2009 Office Action, at 4, MDX 0013465 (rejecting the

---

[1] The *Oxford Dictionary* defines "module" as an "***independent unit*** from which a program may be built up….".

6

claim under 35 U.S.C. §101: "the 'system' is not defined by hardware but by 'module', and thus this limitation can be reasonably interpreted as computer program module…."). In response to the rejection, Health Grades changed the claim to eliminate the word module, but noted that the changed language was not a substantive addition. *Id.*, February 16, 2010 Office Action Response, at 7-9, MDX 0013502-4 ("As a person of ordinary skill in the art would reasonably understand, these amendments to claims 1 and 19 do not add any new subject matter…. The 'processor' and 'memory' amendments to claim 19 represent inherent features of the already-claimed 'on-line information system'…."). Thus, the prosecution history is even further support for the fact that these claim terms about (a) compiling data, and (b) creating the report are, and always have been, directed to separate and distinct steps (or "modules") in the overall process. Health Grades ignoring the prosecution history is also a critical flaw in its reasoning. *See Phillips*, 415 F.3d at 1317 ("In addition to consulting the specification, we have held that a court 'should also consider the patent's prosecution history, if it is in evidence.'").

In its quest to disparage MDx and its counsel, Health Grades' counsel ignored the '060 patent's specification and prosecution history, and Federal Circuit law, because they support only one conclusion: the step of "creating a report" is ***separate and distinct*** from the step of collecting and creating information for the database used to create that report, as MDx has always contended and has properly acted in accord therewith in discovery.

### B. **Common Sense**

Health Grades argues it is "common sense" that MDx "used" disciplinary information and licensure in creating reports, because it used them in designating awards. Stimpson Decl. II, ¶ 7, Ex. J, *e.g.,* at 66, lines 4-11. But a simple analogy demonstrates that "common sense" is

7

contrary to Health Grade's motion. If someone was asked what ingredients they used to create a salad that had Russian dressing, would they say they used ketchup, an ingredient in the dressing? What about the use of lemons, a main ingredient in mayonnaise, which is the main ingredient in Russian Dressing; or fertilizer to grow the vegetables? Most answers would not include the ingredients that comprise the dressing or were otherwise used to create ingredients of the salad, but rather would recite the vegetables that were gathered, selected and used, along with the named dressing.

The only "common sense" answer to whether sanction and licensure information is used to create the report is that ***they are not used to create the report***. Pursuant to established patent law and the specific facts of this case particularly, this is even clearer in the software context of the present case – certain software is used to establish the awards, and certain ***other*** software, distinct from and unconnected to the award software, is later used to create the provider reports, The data selected to create the awards is not selected or used to create the report. August 21, 2014 Declaration of Erika Boyer ("Boyer Decl. I"), Dkt. #840-2, at ¶6.

### III. THE ALLEGED INFRINGEMENT CONTENTIONS

At the hearing, counsel for Health Grades briefly flashed on the screen a MDx document and a Court order about incorporating the Health Grades' expert report into its Infringement Contentions. This consisted of a single highlighted phrase, from one sentence of one of the 316 paragraphs in Health Grades' expert report. From this presentation, counsel represented to this Court that Health Grades had in fact alleged in its Infringement Contentions that use of data to create an award was the same as using disciplinary information and licensure to create a report as

8

called for in the claims. Stimpson Decl. II, ¶ 7, Ex. J, at 82-84. Clearly, Health Grades disclosed no such contention.

Before addressing the substance of this alleged disclosure, various telling questions come to mind:

(1) First, if Health Grades really thought its Infringement Contentions included an argument that bestowing of an award equates to the creation of a report because underlying data is used for determining an award, why did they not provide these documents to counsel for MDx until after their presentation, and why were they not referenced in Health Grades' moving papers?[2]

(2) Second, only a few days before the August 28 hearing, Health Grades counsel had a conferral with counsel for MDx about the MDx motion to preclude at trial this very argument. Counsel for MDx made clear that the argument was that "***this infringement argument is found nowhere in the HG infringement contentions***" (Stimpson Decl. II, ¶ 9, Ex. L, emphasis added). Why, in compliance with its conferral obligations, did counsel for Health Grades not identify this, or any part of its Infringement Contentions, if they truly thought it supported this argument? *Id*.

(3) Third, if the Health Grades' Contentions intended to include this argument, why do they not address ***any*** of the MDx documents produced in 2011, 2012, or 2013 that clearly show

---

[2] Health Grades' failure to show the documents to counsel for MDx before the hearing, or at least before its presentation, and the speed of its bullet presentation are troubling given that a proper analysis of the documents reveals a very different conclusion than the one presented by Health Grades to the Court. Further, Health Grade's counsel used pages from documents that were designated by MDx as "Attorneys Eyes Only", thus depriving MDx of an opportunity to evaluate the confidential documents to determine if application for a sealing order was appropriate.

9

how MDx creates its awards, that licensure is a requirement, and that sanctions against a provider is a disqualifying factor for the grant of an award?[3] That Health Grades has always been aware that MDx's provider profiles have awards cannot be disputed. Stimpson Decl. I, at ¶¶ 7-10.

(4) Fourth, if Health Grades thought that MDx had failed to address an argument in its infringement contentions, why didn't Health Grades ever ask for supplementation after its expert report was incorporated into the contentions back in January of 2013, and why didn't it raise this when it filed its initial Sanctions Motion in October of 2013 (Dkt. #631)?

The answer to all these questions is that Health Grades' new claim that its "awards" argument is found in its Infringement Contentions, is baseless.

The one sentence from Dr. Greenspun's report cited and relied upon by Health Grades references a single page from a single MDx document, Dkt. #853-1, at page MDX 12068. A close examination of this page reveals:

- It does not use any of the words "award" "licensure", "sanctions" or "disciplinary information." Dkt. #853-1, at MDX 0012068.

- The PowerPoint is undated and apparently pre-dates the July 2010 patent (e.g., page MDx 12101 referencing January of 2010 data, and MDx 12083 referencing a "compare" feature that was eliminated in January of 2011). September 15, 2014 Declaration of Erika Boyer ("Boyer Decl. II"), attached hereto, at ¶3.

- The "Top Doctor" rating (first paragraph), and the "Top Doctor" candidates (last paragraph) are not awards. *Id.*, at ¶4. To the contrary, they reference provider scores that were created by MDx based on an unrelated company's, Castle Connolly, "Top Doctor" awardees profiles. *Id.*

---

[3] *See* Stimpson Decl. I, Exhibits C, D & E (Attaching MDx 0000183, MDx 0062500 – 2, and MDx 0106644-6 disclosing that Vitals awards require licensure and do not include sanctioned providers).

10

- Contrary to the awards that are the subject of Health Grades' new theory, the "Quality Score" for which the reverse algorithm applies is intentionally "***not published***" by MDx in its provider profiles or otherwise (MDx 12068, last paragraph; emphasis added). *Id.* at ¶5.

- There is nothing on this page, or elsewhere, describing criteria for how MDx gives award to physicians (compare Dkt. #853-1, page MDx 12108, showing that MDx "also" identifies the nation's best doctors and issues awards).

If Health Grades had explored this in discovery, they would know additional gaping holes in this theory. For example, whereas this page does not relate to MDx awards, MDx did create a "Top Doctor" award in 2009 by applying Castle Connolly's branded award methodology to providers in nine states, but the results were not satisfactory, so it did not continue creating this award. Decl. II, at ¶¶6-7. This single occurrence happened in ***2009*** – long before the Health Grades '060 patent even issued. Boyer Decl. II, at ¶6. This award was completely different from MDx's "Top Ten Doctor" award. *Id.* The "overall quality score" referenced in the document is not published, and it is never included in any provider profile. *Id.*, at ¶5. Rather, it is used to help order a results list when a user inputs search terms. *Id.* The '060 patent specifically distinguishes results lists from provider reports. *See, e.g.,* Stimpson Decl. I, Ex. A, claim 7 (claiming a results list separately).[4]

---

[4] Health Grades has argued that the results list is part of the provider profile. Judge Moore, however, has been extremely (and justifiably) critical of this overreaching position of Health Grades. Order Granting In Part And Denying In Part MDx's Motion For Partial Summary Judgment Of Non-infringement, dated Dec. 23, 2013, Dkt. #696, at 10-12 ("Health Grades conflates the results list and the provider report"; finding the argument "not convincing," "untenable," as having a "serious flaw," a "chameleon-like quality" and "an almost magical quality"; "such contortion is indicative of the problems with the Health Grades' response"). While Judge Moore did not grant summary judgment on the equivalents issue, his equivalence analysis focused on the "one instance" where there was not a noticeable departure from the actual report – the "Search All Similar Doctors" hyperlink (a link found in the report itself). Judge Moore's equivalence analysis did not even address the "untenable" Health Grades literal argument that a results list could be considered part of the report. *Id.* at 16-28.

11

In summary, none of the documents showing criteria for MDx awards is mentioned in Health Grades' Infringement Contentions or its expert report – not even the one that is a Health Grades trial exhibit. *See* Stimpson, Decl. I, ¶9, Ex. D. Although the Greenspun report has thirteen paragraphs of details about how data is "used" to create a report (including uses that do not include display), the only mentions of awards are in connection with a named section of the MDx website (paragraph 163), and the provider-verified data because that is a data element specifically required by the claims of the '060 patent to be received and verified by the provider. Stimpson Decl. II, ¶10, Ex. M, at 37-39, ¶¶ 155-67.[5] In paragraphs 164-67, Dr. Greenspun expressly addresses the MDx rule about not using three or more of the third party data, and Dr. Greenspun provides his reasons for disagreeing that MDx follows this rule and he lays out in detail the ways he believes MDx uses this data. *Id.* But nowhere does Dr. Greenspun mention that MDx "uses" third party data by bestowing awards that are later shown in reports.

The Health Grades Contentions, and the Greenspun report addressing this element, lack all of the following:

- There is no explanation about Health Grades' new theory (*i.e.,* that MDx creates awards using disciplinary and sanctions information, and this is allegedly the same as creating a report);

---

[5] When Health Grades moved to include the Greenspun report in its Infringement Contentions, it made no mention of this argument, and it insisted that all the arguments in the Greenspun report were either (1) based on ***newly produced*** discovery; or (2) adequately found in the ***original*** Health Grades contentions. Health Grades' Motion For Leave to Amend Its Infringement Contentions To Incorporate Dr. Philip Greenspun's Expert Report, dated Sept. 17, 2012, Dkt. #292, at Table of Contents. Neither of those arguments could apply to use of data to bestow awards – it was not in the Health Grades original contentions (nor does Health Grades allege it was); and at the time of the Health Grades motion the MDx information on criteria for its awards had been produced for more than a year. MDx Opp. at II(A). Indeed, there is no mention of "awards" anywhere in the Health Grades motion, other than to allege that they are a comparison rating. Dkt. #292, at 15.

12

- There is no mention of even a single MDx award;

- There is no mention of MDx using any specific data to create any award;

- There is no mention of any disclosure of any MDx award in any profiles;

- There is no mention of any of the documents MDx produced over the course of this litigation showing criteria for MDx awards; and

- There is no explanation about how use of data to bestow an award could meet the claim language of creating a report using the underlying data in such awards when such data is not contained in the report, nor accessed by the software creating the report.

Whatever Dr. Greenspun was intending to reference by this document, Health Grades did not "crystalize" (*i.e.,* make clear and definite) any theory of infringement that would include MDx bestowing an award as MDx creating a report. *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (The local patent rules are designed specifically to "require parties to crystallize their theories of the case early in the litigation" so as to "prevent the 'shifting sands' approach to claim construction."); *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006) ("The [patent local] rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."). This sparse reference in Dr. Greenspun's report does not even remotely satisfy the level of specificity required for either expert reports, or infringement contentions.

In *Asus*, 2014 U.S. Dist. LEXIS 50728 (N.D. Cal. Apr. 11, 20140, the Court struck a new theory on a claim element because there was no explanation about the infringement theory, even though (unlike here) the element itself was mentioned in the infringement contentions:

> Now, RR's experts identify "Tran_Speed" and
> "Bus_Width Bit" as being the elements that possibly

13

> operate in an infringing manner. Dkt. No. 258-5 at 110,
> 121. ***Although the infringement contentions include the
> term "BUS_WIDTH" in a copied and pasted chart, Dkt.
> No. 196-7 at 9, nowhere do the contentions explain this
> element or how it infringes a claim in the '053 patent***. RR
> cannot now litigate a theory that the claim limitation
> reads on these two elements, and ASUS's motion to strike
> references to "Tran_Speed" and "Bus_Width Bit" is
> therefore granted.

*Asus Computer Int'l v. Round Rock Research, LLC*, 2014 U.S. Dist. LEXIS 50728, 16 (N.D. Cal. Apr. 11, 2014); *see also Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 U.S. Dist. LEXIS 120404, 4-5 (N.D. Cal. Aug. 22, 2013) (denying infringement theory for failure to provide specific analyses: "Dynetix therefore does not provide a ***specific analysis***"; "if our local rules are to have any teeth, they must be ***adequately disclosed*** and supplemented along the way," emphasis added); *Teashot LLC v. Green Mt. Coffee Roasters, Inc.*, 2014 U.S. Dist. LEXIS 14841, 22-23 (D. Colo. Feb. 6, 2014) (precluding infringement argument that was not timely disclosed, and when disclosed lacked sufficient detail: "disclosure failed to include any details. . ."); *Subotincic v. 1274274 Ontario Inc.*, 2013 U.S. Dist. LEXIS 110726, 33-34 (C.D. Cal. Apr. 9, 2013)(Precluding testimony on expert analysis without sufficient details: "Rule 26(a)(2)(B)(i)-(ii) requires experts to provide [*37] a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them").

The single page referenced by Dr. Greenspun could never have put MDx on notice that Health Grades was taking the position that use of licensure and disciplinary information in

14

bestowing awards met the claim requirement that use of that data to create a report.[6] Thus, MDx has moved to preclude Health Grades from making any such argument at trial. Dkt. #836.

## IV. CORRECTIONS OF HEALTH GRADES REPRESENTATIONS

Several representations made at the hearing by counsel for Health Grades are incorrect:

(1) <u>MDx Deposition</u>: At page 80 of the August 28, hearing transcript (Ex. J to Stimpson Decl. II), counsel for Health Grades represented that the MDx witness should have, but did not, know whether a physician who had been sanctioned was eligible for awards. This issue, however, was not in the topics for the deposition (Stimpson Decl. I, Ex. G) and, therefore, were not within the scope of the deposition. *See, e.g.,* Order, dated April 25, 2013, Dkt. #569, at 5-6 (Boland, J., citing Fed. R. Civ. P. 30(b)(6) and *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 584 (D. Kan. 2008)) ("Rule 30(b)(6), Fed. R. Civ. P., requires a noticing party to 'describe with reasonable particularity the matters for examination.' This requirement was interpreted in *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 584 (D. Kan. 2008), to require the following: 'To allow Rule 30(b)(6) to effectively function, the requesting party must take care to designate,

---

[6] MDx and its counsel did not anticipate Health Grades' new claim when answering interrogatory no. 2, but they did make a good faith and exhaustive effort to fully respond to Health Grades' discovery requests, including interrogatory no. 2. MDx's second and third supplemental responses to interrogatory no. 2 dated January 24, 2014 and May 7, 2014, required complicated and extensive computer query programs and analyses. The query results included several million pieces of data contained in spreadsheets. Six spreadsheets of query results were prepared for MDx's second supplemental response dated January 24, 2014, and they were explained in pages 3, 4, 5, 6, 9, 14, and 15 of the second supplemental response. Another two spreadsheets of query results were prepared for MDx's third supplemental response dated May 7, 2014, and they were explained in page 17 of the third supplemental response. Page 18 of the third supplemental response provided clarification requested by Health Grades' counsel, and the third supplemental response corrected inaccurate statements from the second supplemental response, including the statement about Mongo in pages 12-13. MDx recently provided another two spreadsheets based on new Health Grades requests and will need to amend the response to interrogatory no. 2 to address them.

15

Case No. 1:11-cv-00520-RM-NYW Document 871 filed 09/15/14 USDC Colorado pg 17 of 19
Case 1:11-cv-00520-RM-BNB Document 888-5 filed 09/29/14 USDC Colorado Page 18 of 19
of 20

with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.'").

(2) <u>Allegedly "conflicting" testimonies</u>: At page 81 of the August 28 hearing transcript (Ex. J to Stimpson Decl. II), counsel for Health Grades argued that the Boyer and Bellomo testimonies are "conflicting". They are not because they addressed two different issues. Ms. Boyer said licensure is used to cull physicians for awards, and Mr. Bellomo said licensure is not used to create the report.[7] These statements are not in conflict, as addressed above. They are MDx's contentions that use in bestowing an award, which is by a different software altogether, is not use in creating a report.

(3) <u>Judge Brimmer's Ruling on "Creating a Report"</u>: Health Grades has, again, introduced an entirely new argument less than three months before trial. According to counsel for Health Grades, Judge Brimmer opined that it is not necessary to use at least three of the third party data elements in creating the report. Stimpson Decl. II, Ex. J, at 85 and 89. Judge Brimmer did not make such a ruling; he ruled that not ***all*** of the data compiled needed to be used to create the report. MDx argued that the word "the" in the claim language ("using ***the*** . . . information verified by the independent third party source") was a reference to all of that information compiled, and Judge Brimmer disagreed. Order Regarding Claim Construction,

---

[7] Health Grades argued at the hearing that the information being used to create a report – the information underlying the grant of awards – is new to them and a concern (Stimpson, Decl. II, Ex. J, at 71), and that there is no reference to awards being included as part of a report or used to create a report. *Id.*, at 77. This is reminiscent of the scene from *Casablanca* where Captain Renault exclaims "I'm shocked, shocked to find that [this] is going on…" None of this information is new to Health Grades' counsel. Ms. Boyer testified at her deposition on June 5, 2012 that disciplinary and sanction data was collected by MDx, and MDx produced documents before her deposition, including her email chain, that such information is used to select providers for awards. MDx's Opp., Dkt. #839, at 3-5.

16

Dkt. #138, at 20-21.  At no point did either party address the question of whether three of the complied data must be used.  In fact, both parties have been acting in accord with the understanding that at least three is required as Health Grades own pleadings establish.  *See, e.g.,* Health Grades Motion for Sanction, pages 9 (claiming that MDx has admitted that it uses three or more); and Stimpson Decl. II, ¶ 11, Ex. N (August 24, 2014 email from counsel for Health Grades:  "Admitting the use of medical school information advances the issue because then Health Grades only has to prove at trial MDx's use of two more third-party sources").  *See e.g.,* Health Grades Supplemental Infringement Contentions, Dkt. #148-2, at 38; and Health Grades Supplemental Infringement Contentions, Dkt. #611-1, at 130; and #611-2, a 3, 12, 13, 15.

  (4) <u>MDx Deposition</u>:  At page 72 of the August 28 hearing transcript (Ex. J to Stimpson Decl. II), REDACTED

. Relevant Portions of Anthony Bellomo's dep. tr. Stimpson Decl. II, ¶ 12, Ex. O, at 36, lines 10-14. REDACTED

  s. Boyer Decl. II, at ¶8.

17

**V.     CONCLUSION**

For all the foregoing reasons, and all the reasons set forth in MDx's original opposition (Dkt. #839), MDx respectfully requests that the Court deny Health Grades' motion to compel and for additional sanctions in its entirety.

Dated: September 15, 2014                                  Respectfully submitted,

*s:/Trent S. Dickey*
Trent S. Dickey
Scott D. Stimpson
David C. Lee
Vincent Ferraro
Sills Cummis & Gross P.C.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
E-mail: sstimpson@sillscummis.com
E-mail: tdickey@sillscummis.com
E-mail: dlee@sillscummis.com
E-mail: vferraro@sillscummis.com

*Attorneys for Defendant*
MDx Medical, Inc. d/b/a
VITALS.COM

18

# CERTIFICATE OF SERVICE

I hereby certify that on **September 15, 2014**, I electronically filed the foregoing **MDX MEDICAL, INC.'S SUPPLEMENTAL OPPOSITION TO HEALTH GRADES, INC.'S MOTION TO COMPEL AND FOR ADDITIONAL SANCTIONS FOR MDX MEDICAL, INC.'S ALLEGED FAILURE TO COMPLY WITH COURT-ORDERED DISCOVERY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Vincent Marc Ferraro**
  vferraro@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

                                                                                                 _s:/Vincent M. Ferraro_