# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  11-CV-00520-PAB-BNB

HEALTH GRADES, INC.

       Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM

       Defendant.

**Rebuttal Report of Richard G. Cooper, D.Sc.**

Attorneys for MDX have asked me to submit the following rebuttal report, responding to the expert report of Dr. Philip Greenspun.  I am engaged in ongoing development and refinement of my opinions and expected testimony and reserve the right to submit supplements to the information contained in this disclosure pursuant to the Federal Rules of Civil Procedure.

## Introduction

1.    I incorporate herein the content of my initial Report, dated July 13, 2012, specifically including my background and expertise, and my discussion of the art area and level of ordinary skill in this art.

2.    In preparation of this report, I have reviewed materials referenced in Dr. Greenspun's report, and I have reviewed all the materials identified in my initial report.  I have also read the pending motion for summary judgment of non-infringement, and related papers.  I have also reviewed the following documents:
- MDX 0104128, 30, 33, 35, and 37;
- MDX 0034444-45;
- Any other documents referenced in this report.

## No Infringement

3.    I will describe the '060 patent, and the specification and claims of that patent.  I will also explain my understanding of patent claims, and how people must be able to review the patent claims and understand them, and be able to design around them.

27.Other examples are provided in the documentation produced by MDx.

28.Rather than have these third parties verify the data, they do exactly the opposite, and disclaim accuracy of the data. Accordingly, there is no literal infringement.

29.Dr. Greenspun did not do an equivalents analysis on this element. If asked, however, my opinion is that there cannot be equivalence between the Greenspun assertions and the actual data, which is not verified and is in fact disclaimed by the third party providers. The function and result of the claimed element are entirely lacking in the Vitals web site because the purpose of the claim element is to *prove, substantiate* or *confirm* the accuracy of the data. Therefore the function, way and result are not substantially the same for the claim element and the Vitals web site. Any equivalents argument would effectively eliminate this claimed requirement entirely.

### COMPILING AND USING INFORMATION FROM THIRD PARTIES

30.The claim also requires:

> creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information[1], and the information verified by the independent third-party source,
>   wherein the healthcare provider report on the first healthcare
>   provider includes comparison ratings of healthcare providers;

31.Beginning in January, 2011, MDx changed its web site so that it would never show three or more of this data set as obtained from third parties. MDX 0034444-45. See also the Rothschild, West and Boyer depositions.

32.On January 5, 2011 Mitch Rothschild sent an email to Erika Boyer and Larry West. MDX 0011997-98. The email stated the following:

```
To ensure that Vitals is not in violation of this patent, in any
way, certain of our policies, the list of which is noted below,
must continue to be strictly enforced:
1) Our display of 3rd party verified information does not
include IRF [internship, residency, fellowship]
2) Our display of 3rd party verified information does not
include licensure status
3) Whenever Disciplinary Action is recorded & displayed for a
provider, no patient ratings or reviews gathered by Vitals are
shown on any report
```

---

[1] Only about ▇▇▇ of the Vitals patient-ratings come from the Vitals website as required by the claims. I do not understand that Health Grades, or Dr. Greenspun allege that the others are part of the alleged infringement. See MDx Supplemental Response to Interrogatory 2.

```
4) No report on Vitals shows comparison ratings to other
providers, in particular with reference to patient experience
surveys and comparisons to national & specialty averages.
```

33.     As points one and two make clear, third party internship, residency, fellowship and licensure information were not all to be used in the Vitals reports.  Point three also confirms that disciplinary action is never used in a report that has patient ratings.

34.     The foregoing precludes any possibility of three or more of the third party provided information being used in any report that also includes patient ratings.  The most that could possibly be used in a Vitals report having patient ratings would be two items from the list of required items, whereas the claim element requires three or more.

35.     Dr. Greenspun does not address equivalents for this element.  If asked however, I will give my opinion that there can be no infringement by equivalents.

36.     First, if using only two items of the required list could be equivalent, that would entirely read the claim element out of the claim.  Second, as Dr. Greenspun admits in his report, use of the information verified by the third party sources was added to the claim during patent prosecution in response to a rejection by the patent office.  Therefore there is a presumption of prosecution history estoppel, and Health Grades is estopped from arguing this equivalence.  If necessary, I will address the prosecution history to show that these additions were added for reasons related to patentability.  Also the function-way-result test is not met so there can be no equivalent.  Specifically the function and result are completely missing because there are less than three of the required third party verified information items in the report.  Also, it is done in a substantially different way because Vitals web site only uses two of the items, not three.

37.     Dr. Greenspun is of the opinion that the three or more items do not need to be displayed.  I disagree.  In this context, there is no way I can see in which this terminal, indivisible information can be used other than in displays meant for the prospective patient.  There is no other way in which this terminal information can be combined with other terminal information, therefore it cannot be *used* in the sense that the claims require.

38.     Dr. Greenspun argues that Vitals uses licensure information because it does not retrieve any information on physicians who are not licensed.  According to Dr. Greenspun, creating the report is a *use* of licensure information.  I disagree.  Unlicensed physicians do not even make it through a filter allowing them to be shown in any way whatsoever on the Vitals web site.  So, for example, they would not be searchable and they would not be shown in results lists.  The claim expressly requires that the information be *used* to create the report.  Licensure information is not used in any way to create the report.  For these reasons and those stated above, this also cannot reasonably be asserted to be met equivalently – it would read the limitation out of the claim entirely, and does not have a substantially similar function, way, or result.

39.     Dr. Greenspun states in paragraph 161 that:

> *I know that the reports are created using third party-verified information because in many cases, this information is displayed in the physician report.*

This assertion is factually incorrect. To the extent that three or more items are displayed in the report, only at most two came from third parties and the other came from the health care provider. See Boyer transcript.

40. In paragraph 166, Dr. Greenspun states:

> Also, if Vitals.com displays fellowship information that has been self-reported by a doctor, it is my opinion that it is still "*using*" the fellowship information MDx collected from a third party. It is after all stored in the database. In order to avoid displaying incorrect information, Vitals must resolve conflicts between doctor-reported information and third-party verified information. This is a "*use*" of both kinds of information.

The fellowship information is indeed stored in the database, but it has not been provided by a third party; instead, it is provided by the physicians themselves, and therefore does not meet the claim element limitation. There is no compulsion for MDx to resolve conflicts because only physician reported information is *used*, not third party verified information. It is also important to note that this assertion is Health Grades burden of proof and Dr. Greenspun cites absolutely no evidence to support his supposition.

41. Dr. Greenspun does not address equivalents for this issue either. If I am asked, I will provide my opinion that there can be no equivalents. The Vitals web site simply does not use three items from the list, and any equivalents argument that using only two items would meet the claim element, would entirely vitiate this claim term. Also, as Dr. Greenspun acknowledges, use of the third party information in creating the report was added by amendment during prosecution to overcome prior art rejections. There is an estoppel precluding this equivalents argument, and I am prepared to address the prosecution history to show these additions were added for reasons related to patentability if necessary. Lastly, the function-way-result is not substantially the same. The result of the claim term is having a report with three of the list items provided and verified by third parties. The Vitals web site has no more than two items, and for the same reason, the function and way are not substantially similar for the reasons discussed above.

## COMPARISON RATINGS INCLUDED IN THE REPORT

42. The claims of the '060 patent require 1) receiving a request for information regarding a "first health care provider"; 2) creation of a report on the first health care provider; and 3) the report must include comparison ratings of health care providers. The court construed "first health care provider" to mean "a particular health care provider about whom information is requested and a report is produced". See page 12 of the court's claim construction order. The court also held that the report must be directed specifically to the first health care provider. See pages 12-13. The court construed the

## FINDINGS

My opinions on the infringement issue include the above, and include at least the following:

69. The Vitals web site does not have, either literally or equivalently, three or more of the items required to be verified by the health care provider.

70. The Vitals web site does not have, either literally or equivalently, three or more of the required items that must be received from the first health care provider.

71. The Vitals web site does not have, either literally or equivalently, three or more of the required items that must be verified by a third party.

72. The Vitals web site does not have, either literally or equivalently, three or more of the required items to be received from a third party and used in health care provider reports.

73. The Vitals web site does not have, either literally or equivalently, any comparison ratings included in the report on the first health care provider.

74. The Vitals web site does not have, either literally or equivalently, a hyperlink to an affiliated hospital, medical center, or other type of treatment center.

75. The Vitals web site does not have, either literally or equivalently, a results list that further includes advertisements for a first health care provider.

76. The Vitals web site does not have, either literally or equivalently, a method including determining from the results list whether a particular health care provider is a member of MDx.

Dated this 17th day of September 2012

By: _____
Dr. Richard G. Cooper