IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

**PLAINTIFF HEALTH GRADES' OPPOSITION AND RESPONSE TO MDx MEDICAL, INC.'S OBJECTIONS TO MAGISTRATE JUDGE BOLAND'S ORDER DENYING THE MOTION TO AMEND INVALIDITY CONTENTIONS AND THE MOTION TO COMPEL A SEARCH FOR NCQA MATERIAL (DKT. #859)**

Pursuant to Fed. R. Civ. P. 72(a), Health Grades, Inc. ("Health Grades") hereby opposes MDx Medical, Inc.'s ("MDx") Objections to Magistrate Judge Boland's Order Denying the Motion to Amend MDx's Invalidity Contentions and the Motion to Compel a Search ("Objections") (Doc. #879).

I.   INTRODUCTION

MDx had an affirmative duty to disclose its invalidity contentions by August 19, 2011. (Doc. #34 at p. 7.)  Three years later, and only a few months before trial, MDx filed a motion seeking to add a new prior art reference (the "Shelton Article")[1] and a new statutory basis for invalidity under 35 U.S.C. § 101.  (MDx's Third Motion to Amend its Invalidity Contentions ("Motion to Amend") (Doc. #814).)

---

[1] As used herein the "Shelton Article" refers to the article that was authored by Linda K. Shelton, Laura Aiuppa, and Phyllis Torda and published by the Commonwealth Fund in August 2004 (Doc. #811-3).

2005021782_1

Amendment of invalidity contentions "may be made only by order of the Court upon a timely showing of good cause." (Patent L.R. 3-6, Doc. #34 at p. 22.) For purposes of Rule 3-6, "'good cause' requires a showing of diligence," and "[t]he burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).

"Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (citing *Atmel Corp. v. Info. Storage Devices, Inc.*, 1998 WL 775115 at *2 (N.D. Cal. 1998)). The Patent Local Rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *O2 Micro*, 467 F.3d at 1366 n. 12 (quoting *Nova Measuring Instrum. Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)).

Judge Boland found that MDx had not met its burden to show good cause for either amendment stating:

> The motion for leave to amend invalidity contentions and to add defense -- Section 101 defense is denied. We are approximately three months from trial in a case which has been pending for more than three years time. The patent rules from the Northern District of California which the parties requested apply in this case say that these contentions as to infringement and invalidity should be set early and should be set firmly and should not be altered. There should be no changing sands except upon good cause and I find that there is no good cause here.

(8/28/14 Hearing Transcript ("Hearing Transcript") at pp. 44:17-45:2 (Doc. #864).)

MDx also moved to compel Health Grades to do extensive (and expensive) searches for electronic discovery relating to the Shelton Article. Because Judge Boland denied MDx's

2005021782_1                                  - 2 -

request to assert invalidity based on the Shelton Article, there was no need to force Health Grades to search for discovery related to this Article. MDx conceded as much at the hearing. (*See* Hearing Transcript at p. 46:7-16.)

MDx asks this Court to reverse Judge Boland's Orders, but MDx does not identify any error by Judge Boland, and thus its objections are improper. *See, e.g., SciCo Tec GmbH*, 599 F. Supp. 2d at 743 (noting "objections to a magistrate judge's order cannot simply be a demand that a district judge conduct a de novo review of the entire record in a blind hunt for a nugget of harmful error buried somewhere in mounds of briefing and oral arguments."). Rather, MDx merely reargues its Motions. (*See,* e.g., Objections at pp. 5-7 (Doc. #879) (arguing Health Grades knew about the Shelton Article); *id.* at pp. 7-9 (arguing that, assuming Health Grades failed to disclose, MDx should be allowed to amend); *id.* at pp. 9-11 (arguing that Health Grades should search for Shelton); *id.* at 11 (arguing Health Grades will not be prejudiced); *id.* at pp. 11-16 (arguing *Alice* changed the law and MDx could not have won prior to *Alice*).) This is another example of MDx's seriatim motion practice. MDx lost its Motion to Amend, and rather than letting the case proceed when it could not identify a specific error by Judge Boland, it asserts the wrong standard for review and rehashes losing arguments.

MDx's Objections are improper. Judge Boland's Orders should be affirmed.

II.     THE STANDARD OF REVIEW IS "CLEARLY ERRONEOUS"

The Federal Magistrates Act provides two separate standards for judicial review of a magistrate judge's decision: (i) de novo for magistrate resolution of dispositive matters; and (ii) clearly erroneous or contrary to law for magistrate resolutions of non-dispositive matters. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b) (1).

A motion is dispositive if it eliminates a party's claim or defense. *Nitchman v. Union Pac. R.R. Co.*, No. 05-01219, 2006 U.S. Dist. LEXIS 69291, at *4 (D. Colo. Sept. 26, 2006) ("The Tenth Circuit applies an 'effects' test to determine whether a ruling is dispositive or non-dispositive. . . . A dispositive motion eliminates a party's claim or defense and is thus a final decision.") (internal citations and quotation marks omitted); *see also, e.g., Robinson v. Eng*, 148 F.R.D. 635, 640 (D. Neb. 1993) ("it is only those rulings which finally resolve a party's 'claim or defense' which are considered 'dispositive' within the meaning of § 636(b) and Fed. R. Civ. P. 72."); *Segal v. L.C. Hohne Contractors*, 303 F.Supp.2d 790, 794 (W.V.S.D. 2004) (holding that magistrate judge's ruling on sanctions will be reviewed under the *de novo* standard only where sanctions result in dismissal of the case). A magistrate judge's decision is not dispositive merely because the decision affects the case. *See SciCo Tec GmbH v. Boston Scientific Corp.*, 599 F. Supp. 2d 741, 743 (E.D. Tex. 2009) (applying the clearly erroneous standard to a review of a magistrate judge's claim construction order).

Here, Judge Boland's decision on MDx's Motion does not eliminate MDx's invalidity defense. Although MDx's case may be affected by its inability to lodge an entirely new theory of invalidity and include a last-minute reference, so too does "an order denying discovery or a continuance, or striking an expert" affect a case. *SciCo Tec GmbH*, 599 F. Supp. 2d at 742. Yet, those types of rulings are reviewed by the district court under the clearly erroneous standard. *Id.* Therefore, this Court should review Judge Boland's decision under the clearly erroneous standard. *See, e.g., Jazz Pharm., Inc. v. Roxane Labs., Inc.*, No. CIV.A. 10-6108 ES, 2013 WL 785067 (D.N.J. Feb. 28, 2013) (analyzing a denial of a motion to amend its invalidity contentions by the magistrate judge under the clearly erroneous standard).

The cases MDx cites to the contrary are distinguishable because each involved an order that eliminated a claim or defense.  Both *Cuenca v. University of Kansas* and *Bacote v. Berkebile* involved adding and dropping parties, which is dispositive of the entire case with respect to that party.  *Cuenca*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002) (reviewing magistrate judge's order denying the plaintiff's motion for leave to amend its complaint to add eight new defendants and to add new claims against existing parties); *Bacote*, No. 13-cv-02589, 2014 U.S. Dist. LEXIS 78824 at *2 (D. Colo. May 19, 2014) (reviewing order dropping three individual defendants and adding the Federal Bureau of Prisons to the suit).  In *Pownell v. Credo Petroleum Corp.*, the court reviewed a denial of a motion to amend a complaint to add new claim under the *de novo* standard because it was dispositive of the entire claim.  *See* 2011 U.S. Dist. LEXIS 69307 at *2 (D. Colo. June 29, 2011).  Finally, in *Ocelot Corp. v. Sparrow Indus.*, the court reviewed the magistrate judge's order under a *de novo* standard because the effect of striking the pleading was a dismissal of the case.  847 F.2d 1458, 1462 (10th Cir. 1988).

For these reasons, this Court should review Judge Boland's decision to deny MDx's Motion to Amend and its Motion to Compel under the clearly erroneous standard.

## III. JUDGE BOLAND DID NOT CLEARLY ERR IN DENYING MDx's MOTION TO AMEND

A finding is "clearly erroneous" when "although there is evidence to support [the decision], the reviewing court on the entire evidence is left with the **definite and firm** conviction that a mistake has been committed."  *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)) (emphasis added).  Clearly erroneous is not "just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish."  *In re Antrobus*, 563 F.3d

1092, 1098, n. 2 (10th Cir. 2009) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

Here, Judge Boland did not err, let alone clearly err, in finding that MDx had not met its burden to show good cause for its eleventh-hour attempt to amend its invalidity contentions.

  A.  Judge Boland Properly Refused to Allow MDx to Bring in the New Shelton Article

Judge Boland properly denied MDx's motion to add the Shelton Article to this lawsuit because MDx did not meet its burden to show good cause for this amendment. Further, as detailed in Health Grades' Opposition to MDx's Motion to Amend ("HG Opp.") (Doc. #829), Judge Boland had other grounds to deny the motion. Judge Boland's Order denying MDx's motion to add the Shelton Article to this lawsuit should be affirmed.

    1.  <u>MDx Provided No Explanation as to Why It Could Not Have Found the Shelton Article Three Years Ago</u>

To show good cause for amendment, MDx was required to explain why, with reasonable diligence, it could not have discovered the new references prior to the August 19, 2011 deadline for filing Invalidity Contentions. *See O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006); Patent L.R. 3-6, Doc. #34 at p. 22; *see also* HG Opp. at pp. 1-3 (Doc. #829).

MDx argued that its 2014 prior art search, which located the Shelton Article and other new patent publications, was prompted by the issuance of Health Grades' related '052 patent in May 6, 2014. (MDx's Motion to Amend its Invalidity Contentions ("Motion to Amend") at pp. 3-4 (Doc. #814).) More specifically, MDx argued that the 2014 search looked for prior art including "results lists," and this new search query is the reason that the Shelton Article was

located in the new search. (*See* Hearing Transcript at pp. 5:8-6:10.) However, this does not explain why MDx could not have found these references during the original search it did in 2011. The '052 patent is related to the '060 patent, has the same inventors, the same specification, the same drawings, and the same priority date. (*See* HG Opp. at p. 6 (Doc. #829).) The claims of these two patents are *not* significantly different. Claim 7 of the '060 patent includes a "results list." (*Id.*) From the outset of this case, Health Grades has contended that MDx infringes claim 7 and MDx contended that claim 7 was invalid. (*See* Health Grades' July 1, 2011, Infringement Contentions at p. 1; MDx's August 19, 2011, Invalidity Contentions at p. 2.) Thus, MDx could have found the Shelton Article had it done a diligent search in 2011. These facts do not support a finding of good cause to add new prior art more than three years after the invalidity contentions were due:

> [Judge Boland]: There should be no changing sands except upon good cause[,] and I find that there is no good cause here. A diligent search should have included a search which would have disclosed the additional prior art which the defendant seeks to add. The patent claims in the '060 patent do include as a dependent claim . . . results list and . . . I'm just simply not convinced that a diligent search would not have turned up these three prior art articles.

(Hearing Transcript at pp. 44:25 - 45:8.) This finding was not clearly erroneous.

MDx also argued that it should be excused from its duty to perform a diligent search and timely disclose prior art because Health Grades knew about the Shelton Article but did not produce it to MDx during discovery. There is no evidence to support this argument. (*See* HG Opp. at pp.3-4.) On the record before Judge Boland, MDx cited to a single document (a 2004 physician report from healthgrades.com (Doc. # 811-5 at p. 6)) that included a passing reference to NCQA. (*See* Hearing Transcript at p. 6:11-22.) NCQA is a huge, non-profit organization that is responsible for a wide variety of services and a voluminous library of resources and

publications.  (*See* HG Opp. at p. 3 (Doc. #829).)  MDx's argument is akin to saying that someone who mentioned the ABA *must* know about every article that has ever been published by anyone in the ABA community.  The argument defies common sense.  Moreover, the Shelton Article was not even published by the NCQA – it was published by a different organization called the Commonwealth Fund.  In sum, a single mention of NCQA in a Health Grades' physician report is not enough to prove Health Grades knew about a different article that was not even published by the NCQA and certainly does not absolve MDx of its duty to conduct a diligent search for prior art.  (*See* HG Opp. at pp. 3-5.)

In its objections, MDx offers several new arguments about why Health Grades "must" have known about the Shelton Article.  None of these arguments should be considered because MDx did not raise them before Judge Boland.  *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).

Regardless, MDx's new arguments are not compelling.  MDx first suggests that because the date on the Health Grades' physician report and the putative publication date of the Shelton Article are within a few months, that Health Grades must have known of the Shelton Article.  This conclusion does not follow.  Health Grades cannot be charged with knowledge of every article published within a few months of the physician report.

Next, MDx argues that the language that references the NCQA organization in Health Grades' physician report is "an exact match" to a quote in the Shelton Article.  This is not true.  Not only do the quotes not match, they do not even mean the same thing.  The table below shows a side by side comparison of the two quotes:

| **Health Grades' Physician Report** | **Shelton Article** |
|---|---|
| "The ABMS has been designated a primary source of board certification information by the Joint Commission for Accreditation of Healthcare Organizations (JCAHO), the National Committee for Quality Assurance (NCQA) and URAC."<br><br>(Doc #811-5 at p. 6.) | "Board Certification: Use specialty boards approved by American Board of Medical Specialties and American Osteopathic Association."<br><br>(Doc. # 811-3 at p. 21.) |

Health Grades' report essentially states that the ABMS is the primary source for determining whether *a particular physician* has received board certification.  In contrast, the Shelton Article is discussing what *types of certifications* (i.e., only those approved by a member board of ABMS[2]) should be listed in a physician directory.

The third new argument MDx makes is wholly unsupported.  MDx argues that "there is no other NCQA report or publication that would match the Health Grades citation."  First, as stated above, there is not a match.  Second, MDx has no proof that there is no "other" NCQA publication that provides the information MDx quotes from the Shelton Article.  Further, as discussed above, the Shelton Article was not even published by the NCQA.

The fourth new argument MDx makes also fails.  MDx argues that the appearance of similar phrases in the '060 patent and the Shelton Article suggests that Health Grades had the Shelton Article in its possession during discovery.  For example, MDx notes that both the '060 patent and the Shelton Article use "'years in practice' (not, e.g., 'years at current hospital,' etc.)."

---

[2] There are 24 "member boards" of the ABMS that certify specialists in more than 145 specialties and subspecialties.  The member boards include for example the "American Board of Allergy and Immunology" and the "American Board of Anesthesiology".  *See* American Board of Medical Specialties, About ABMS Member Boards, located at http://www.abms.org/about_abms/member_boards.aspx (last visited Oct. 7, 2014).

2005021782_1                                        - 9 -

(Objections at p. 7.)  Years in practice and years at current hospital are not the same thing. Moreover, the '060 patent was written by Health Grades' patent attorneys, who did not have possession of the Shelton Article.  MDx does not dispute this fact.

Finally, the *Audionics Sys. v. AAMP of Fla., Inc.* case relied on by MDx has significantly different facts than those at issue here.  No. CV 12-10763 MMM (JEMx), 2014 U.S. Dist. LEXIS 100683, *39-40 (C.D. Cal. Mar. 12, 2014).  In *Audionics*, not only did the patentee know about the prior art at issue, it actively took steps to hide the prior art from the alleged infringer. For example, the patentee paid $20,000 to an inventor of the prior art so that he would not tell the alleged infringer about the prior art.  *Id.* at *35.  Because of this conduct, the court allowed the alleged infringer to amend its invalidity contentions to include the art.  *Id.*  Indeed, had the record not contained such information, the court would have been "inclined to concluded that the [alleged infringer] did not act diligently" and would have denied the motion.  *Id.* at *34-35.[3]

In contrast, MDx offers no evidence that Health Grades knew of the Shelton Article, much less took actions to prevent MDx from obtaining the Shelton Article.  As discussed above, MDx could have found the Shelton Article at the outset of this case.

In sum, MDx was required to show good cause for amending its invalidity contentions to include a new defense based on new prior art.  Judge Boland did not err in finding that MDx did

---

[3] *See also CoreLogic Info. Solutions, Inc. v. Fiserv, Inc.*, No. 2:10-CV-132-RSP, 2012 U.S. Dist. LEXIS 130554, at *7-8 (E.D. Tex. Sept. 12, 2012) (rejecting defendant's argument that "amendments relating to [new prior art] should be permitted because [plaintiff] knew of the prior art and failed to disclose it to Defendants" because there was "not enough evidence in the record . . . to ascertain when each party was chargeable with knowledge or possession of the [new] prior art. . . ."); *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 2:10-CV-06108(ES-CLW), 2012 U.S. Dist. LEXIS 107408, at *18-19, *22 (D.N.J. July 30, 2012).

not show good cause. His order denying MDx's Motion to Amend should be affirmed for this reason alone.

### 2.  It Is Too Late to Add New Art to This Lawsuit

Judge Boland properly denied MDx's Motion to Amend to include the Shelton Article because the case was just three months away from trial, and there are no extraordinary circumstances to justify allowing MDx to include the reference in its invalidity contentions.

No court has ever allowed the addition of a new reference to invalidity contentions this late in the proceedings. *See, e.g., Innovative Display Techs. LLC v. Acer Inc.*, No. 2014 U.S. Dist. LEXIS 83196, at *6 (E.D. Tex. June 19, 2014) (denying motion to add four new prior art references that was filed before the Markman hearing was scheduled); *MacroSolve, Inc. v. Antenna Software, Inc.*, 2013 U.S. Dist. LEXIS 102954, at *9-11 (E.D. Tex. July 23, 2013) (denying motion to add four new prior art references that was filed before the Markman hearing was scheduled, before claim construction briefs were due, and before close of fact discovery); *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, 2012 U.S. Dist. LEXIS 107408, at *13-24 (D.N.J. July 30, 2012) (denying motion to amend because fact discovery had been pending 10 months, the parties had already completed claim construction briefing and the Markman hearing was scheduled shortly thereafter); *Finisar Corporation v. DirecTV Group*, 424 F. Supp. 2d 896, 902 (E.D. Tex. 2006) (striking new prior art invalidity references disclosed four months after the exchange of proposed claim constructions); *CoreLogic Info. Solutions, Inc. v. Fiserv, Inc.*, 2012 U.S. Dist. LEXIS 130554, at *4-9 (E.D. Tex. Sep. 12, 2012) (denying motion to amend to add 5 new prior art references that was served before the close of fact discovery); *Symantec Corp. v. Acronis Corp.*, 2013 U.S. Dist. LEXIS 137845, at *15-23 (N.D. Cal. Sep. 25, 2013) (denying

motion to amend to add new prior art five months after the issuance of the claim construction order and upon the close of fact discovery); *Network Appliance, Inc. v. Sun Microsystems, Inc.*, No., 2009 U.S. Dist. LEXIS 83090, at *16-28 (N.D. Cal. Aug. 31, 2009) (denying motion to amend to add new prior art because the motion was filed after expert reports were served).

Further, allowing a new prior art reference into this lawsuit would cause prejudice to Health Grades. The Shelton Article would have to be examined, the publication date would have to be verified (probably through fact discovery), and experts would need to be consulted to determine its relevance. Considerable resources would have to be spent to determine if and how the art affects witness preparation, damages theories, trial outlines and strategies, etc.

Accordingly, Judge Boland correctly denied MDx's motion.

### 3. Denial of the Motion Was Appropriate on Other Grounds

Though Judge Boland did not specifically deny MDx's motion for lack of timeliness or because the Shelton Article is weak, both are appropriate grounds for denying MDx's motion. (*See* HG Opp. at pp. 6-7 (regarding lateness) and pp. 7-8 (regarding no showing of importance) (Doc. #829).)

### B. Judge Boland Properly Denied MDx's Motion to Add a New Invalidity Defense Based on 35 U.S.C. Section 101

As set forth below, Judge Boland did not err, let alone clearly err, in denying the Motion to Amend to add a §101 invalidity defense. His order should be affirmed.

### 1. MDx Did Not Meet Its Burden to Show Diligence Because It Could Have Asserted Invalidity Under Section 101 in Its Original Invalidity Contentions in 2011

MDx did *not* raise Section 101 in its original invalidity contentions, but argued that it should be permitted to do so now because of the Supreme Court's recent decision in *Alice Corp.*

2005021782_1                                 - 12 -

*v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).  Judge Boland disagreed.  He found that there was law to support a good faith invalidity defense under 35 U.S.C. § 101 in 2011 when MDx's invalidity contentions were due:

> As to the Section 101 defense, I am convinced that law existed at least in the form of *Benson* and *Flook* and perhaps other cases which could have supported a good faith Section 101 defense.  The defendant has not been timid in raising defenses which urge a -- an expansion of the law.  I'm not even sure that this required an expansion of the law, but there was sufficient basis upon which to make a Section 101 invalidity defense.  For whatever reason the defendant chose not to do that and waited a very long time.  I am not convinced that *Alice* is a significant change in the law which justifies adding an important defense this late in the game.

(Hearing Transcript at p. 45:9-19.)

Case law supports Judge Boland's conclusions.  Since at least the late 1970's, the Supreme Court has found that abstract ideas, even if implemented as part of computer software, are not eligible for patent protection.  In *Gottschalk v. Benson*, the Court found methods of programming a computer to convert digital signals to binary form was not entitled to patent protection because they were directed to abstract ideas.  409 U.S. 63, 68 (1972).  In *Parker v. Flook*, the Court found computerized methods for adjusting alarm limits was not patent eligible subject matter because it covered an abstract idea.  437 U.S. 584, 594-95 (1978).

Further, the Federal Circuit provided MDx with a basis for asserting invalidity under § 101 in 2011.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1376-77 (Fed. Cir. 2011) (decided Aug. 16, 2011) (finding software claims were directed to abstract ideas and thus invalid under § 101).  Indeed, defendants in other patent infringement lawsuits involving computer software have routinely asserted invalidity under Section 101 well before the Supreme Court issued its *Alice* decision.  *See, e.g., Classen Immunotherapies, Inc. v. Biogen IDEC*, 659 F.3d 1057, 1059 (Fed. Cir. 2011) (applying *Bilski* on remand to find that claims are directed

toward statutory subject matter); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1376-77 (Fed. Cir. 2011) (same); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 800 F. Supp. 2d 613, 619-21 (D. Del. 2011); *Oip Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233 EMC, 2012 U.S. Dist. LEXIS 129396, at *9-23 (N.D. Cal. Sept. 11, 2012) (same). Accordingly, MDx had no excuse not to act similarly, save the fact that the '060 patent is not directed toward an abstract idea.

MDx's reliance on blogs and internet publications (some of which appear for the first time in MDx's appeal and should not be considered) fails to show Judge Boland's error. (*See* HG Opp. at pp. 13-15 (Doc. #829).) Whatever little weight of law internet publications should be given is countered by other, differing opinions in blogs and internet publications. (*Id.*)

2.      MDx's New Section 101 Defense Is Likely to Fail

The facts at issue in this case are very different from those at issue in *Alice*. (*See* HG Opp. at pp. 15-16 (Doc. #829).) In *Alice*, the claims were drawn to the concept of intermediated settlement; i.e., the use of a third party to mitigate settlement risk. "Like the risk hedging in *Bilski*, the concept of intermediated settlement is 'a fundamental economic practice long prevalent in our system of commerce.'" *Alice*, 134 S. Ct. at 2356 (citing *Bilski*, 561 U.S. at 611). Indeed, the patent owner in *Alice* principally contended that the claims were patent eligible *because* they "require[d] a substantial and meaningful role for the computer." *Id.* at 2359.

In contrast, in this case there is no evidence that anyone implemented the system that is claimed in the '060 patent on a computer, *or otherwise*, before Health Grades invented its system. In other words, the '060 patent claims cover patent eligible subject matter because they

are directed toward a new method of compiling, receiving and reporting healthcare information from various sources. Accordingly, the '060 patent does not claim an abstract idea, and therefore it is eligible for patent protection.

IV.   THE MOTION TO COMPEL WAS PROPERLY DENIED

Judge Boland's denial of MDx's Motion to Compel Health Grades to conduct a search for the Shelton Article is a non-dispositive ruling on a discovery issue. The clearly erroneous and contrary law standard of review therefore applies. *Ocelot Oil Corp.*, 847 F.2d at 1462. As set forth below, Judge Boland's order denying the Motion to Compel should be affirmed.

    A.    The Motion to Compel Was Mooted by Judge Boland's Denial of MDx's Motion to Amend

A court must "decline to exercise jurisdiction where the award of any requested relief would be moot--i.e. where the controversy is no longer live and ongoing." *Wirsching v. Colo.*, 360 F.3d 1191, 1196 (10th Cir. 2004) (quoting *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994). After Judge Boland denied MDx's Motion to Amend with regard to the Shelton Article, it mattered not whether Health Grades had in its possession the same article. There was no purpose served by compelling Health Grades to search for information that Judge Boland already determined could not be used at trial. Accordingly, the denial of MDx's Motion to Amend rendered MDx's Motion to Amend moot.

Contrary to MDx's allegations, Judge Boland need not have granted the Motion to Compel prior to ruling on the Motion to Amend. MDx had the burden to show good cause for amending its invalidity contentions. *O2 Micro,* 467 F.3d at 1366. MDx failed to meet its burden because *it* did not perform a diligent prior art search. Accordingly, the Motion to Compel could not have saved MDx's Motion to Amend even if it turned out that Health Grades did have the

2005021782_1                                    - 15 -

Shelton Article. If any party put the cart before the horse, it was MDx by not having any explanation as to why it failed to search for the Shelton Article prior to filing its Motion to Amend. Further, MDx waived this argument. At the hearing, after Judge Boland stated he would start with MDx's Motion to Compel, Health Grades counsel stated:

> Your Honor, may I suggest since the defendant's motion to compel is contingent upon or based upon the motion for leave to amend regarding . . . [MDx's] invalidity contentions . . . I think it would make sense to start with the . . . invalidity contentions motion first even though it was filed second.

(Hearing Transcript at p. 3:9-14.) To which, MDx counsel responded: "I'm fine with that, Your honor." (*Id.* at p. 3:15.)

Accordingly, Judge Boland's order was correct.

B.    MDx Withdrew the Motion to Compel

MDx waived its right to argue this issue when it withdrew its Motion to Compel at the August 28, 2014 hearing. Judge Boland denied MDx's Motion to Amend on the record. (*See* Hearing Transcript at pp. 44:17-45:8.) In response, MDx's counsel stated: "I guess I will have to withdraw the motion to compel . . . ." (*Id.* at p. 46:10-11.) MDx's counsel affirmed his decision when he stated in no uncertain terms: "Then I do withdraw it." (*Id.* at p. 46:15-16.) MDx's request to order the search should be denied on this ground alone.

C.    Health Grades Should Not Be Compelled at This Late Stage to Conduct a Specific Search for the Shelton Article

During discovery, Health Grades gathered information from all three inventors of the '060 patent as well as the other Health Grades employees who were involved in the prosecution of the '060 patent, namely Alan Dodge and Brian Blackman. (*See* Health Grades' Response to Motion to Compel Doc. ("HG Compel Opp.") at p. 6 (Doc. #831).) All five supported Health

Grades' sworn response that Health Grades was "not aware of any prior art" other than the prior art cited to the Patent Office.  (*Id.*)  MDx deposed all five of these witnesses.  (*Id.*)  Further, inventor John Neal was designated as a Rule 30(b) (6) witness for Health Grades on a similar topic.  (*Id.*)  Mr. Neal testified that Health Grades disclosed all of the prior art it knew about to the Patent Office and that he was not aware of any prior art that was not disclosed to the Patent Office.  (*See* John Neal Dep. at p. 131:13-24; pp. 259:24 – 261:2 (Doc. #831-1).)  Further, in response to MDx's belated identification of the Shelton Article, Health Grades checked with all five inventors individually, and provided them with a copy of the Shelton Article to see if they knew about the Shelton Article.  They did not.  (*See* HG Compel Opp. at p. 6.)

Health Grades also spent considerable time and expense searching for and producing extensive electronic discovery in this lawsuit.  Health Grades searched specific computers/files that were identified by MDx using various keywords *selected by MDx*, including for example the following:

- In electronic files of Dave Hicks, and the email files of Dave Hicks and John Neal:  "prior art", "vitals!", and "patent application";

- In electronic files of Allen Dodge and in the HG general servers, as well as in the email files of Allen Dodge and John Neal "MDx", "vitals!", "competitor!" and "royalty";

- In electronic files of Dave Hicks, and within the email files of Dave Hicks and John Neal: "physician research comparison report", "physician report", "PQR" and "PQG".

- In Health Grades' general servers, and also within the documents of John Neal, David Hicks, Scott Montroy and Brian Blackman:  "Project Development Plans", "PDP", "Project Files", "Project Logs", "Production Logs", "Migration Files and Logs", "Customer Service Reports", "Release Files", "Discovery Health", and "AARP".

(*See,* e.g., December 12, 2011 Email from Scott Stimpson to Jesus Vazquez (Doc. #830-5); Health Grades' Response to MDx's Motion To Compel at pp. 6-8 (Doc. #91) (describing Health Grades' searches of its electronic records); March 8, 2012 Email from Scott Stimpson to Jesus Vazquez (Doc. #830-6); Health Grades' Response to MDx's Motion to Compel Remaining Health Grades Documentary Discovery at pp. 2-3 (Doc. #182) (describing Health Grades' searches of its electronic records).)

Contrary to MDx's unsupported inferences (Objections at p. 7), Health Grades did not base its invention on the Shelton Article (which was unknown to it at the time). The inventors had already conceived of a physician report that included all of the claimed types of information more than a month before the Shelton article was published. (*See* HG Compel Opp. at p. 9.)

Health Grades has also demonstrated that the undue burden and cost of MDx's requested search makes the information "not reasonably accessible" under Fed R. Civ. P. 26(b)(2)(B). (*Cf.* Objections at p. 10.) There were no date restrictions on the requested keyword searches and Health Grades anticipates MDx will request that it conduct searches going back to 2004 (the date of the article). (*See* Doc. #811 at p. 4.) The searches would include ten years' worth of documents and data, including searching hundreds of thousands of documents. Health Grades' previous keyword searches that were run in the spring of 2012 cost over $20,000.00 in vendor fees. (*See* HG Compel Opp. at p. 10 n. 3.) The quote Health Grades received to run the Shelton Article searches was $20,000.00 to $23,000.00. Health Grades should not have to run these searches because the undue burden and cost makes the information "not reasonably accessible."

In short, Judge Boland's ruling was neither clearly erroneous nor contrary to law. Health Grades should not be compelled to conduct the search.

V.  CONCLUSION

For all of these reasons, Judge Boland's Orders denying MDx's Motion to Amend and Motion to Compel should be affirmed.

Dated:  October 14, 2014.    LEWIS ROCA ROTHGERBER LLP

*/s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Adam L. Massaro, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel: (303) 623-9000
Fax: (303) 623-9222
E-mail: gkanan@lrrlaw.com
E-mail: kkosto@lrrlaw.com
E-mail: amassaro@lrrlaw.com

*Attorneys for Plaintiff Health Grades, Inc.*

# CERTIFICATE OF SERVICE

      I hereby certify that on October 14, 2014, a true and correct copy of PLAINTIFF HEALTH GRADES' OPPOSITION AND RESPONSE TO MDx MEDICAL, INC.'S OBJECTIONS TO MAGISTRATE JUDGE BOLAND'S ORDER DENYING THE MOTION TO AMEND INVALIDITY CONTENTIONS AND THE MOTION TO COMPEL A SEARCH FOR NCQA MATERIAL (DKT. #859) was served upon all counsel of record, as listed below, via the Court's CM/ECF system:

    Scott David Stimpson, Esq.
    Vincent Ferraro, Esq.
    David C. Lee, Esq.
    Trent Dickey, Esq.
    Sills Cummis & Gross P.C. – New York
    30 Rockefeller Plaza
    New York, NY  10112
    E-mail:   sstimpson@sillscummis.com
                vferraro@sillscummis.com
                dlee@sillscummis.com
                tdickey@sillscummis.com

    Terence M. Ridley, Esq.
    Wheeler Trigg O'Donnell, LLP
    370 17th Street, Suite 4500
    Denver, CO  80202-5647
    E-mail: ridley@wtotrial.com

                                                */s/ Kris J. Kostolansky*
                                                Kris J. Kostolansky, Esq.