**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

## HEALTH GRADES, INC.'S MOTION TO COMPEL

Pursuant to Rules 37(a) and 26(e) of the Federal Rules of Civil Procedure, Plaintiff Health Grades, Inc. ("Health Grades") respectfully moves this Court for an order compelling Defendant MDx Medical, Inc. ("MDx") to produce the information and documents requested herein.

## INTRODUCTION

MDx continues to withhold information about whether it practices the "Creating a Report Using Third-Party Information Element" element of Claims 1 and 15. MDx has also withheld relevant information and documents about its accused products and agreements with third parties. This Court should compel MDx to produce the withheld information and documents.

## ARGUMENT

I.  MDx WITHHELD INFORMATION RELATED TO CREATING A REPORT USING THIRD-PARTY INFORMATION ELEMENT.

The Creating a Report Using Third-Party Information Element requires:

2005020971_1

> creating [or create] . . . a healthcare provider report on the first healthcare provider using . . . the information verified by the independent third party source . . . .

['060 Patent, Claims 1 and 15.][1]  MDx's responses to Health Grades' Interrogatory No. 2 admitted that MDx compiles all seven types of third-party source information identified in the '060 Patent.  [*See, e.g.* Doc. #818-1 p. 12; Exhibit A hereto October 2, 2014 email from MDx counsel conceding it will not contest the compiling element as set forth therein].  The seven types of information are:  board certification, licensure, disciplinary action, medical school, medical internship, medical residency and medical fellowship.  ['060 Patent claim 1, col. 20 lines 50-57; claim 14, col, 22 lines 40-47.]  MDx's sworn interrogatory responses have only addressed two types of the information allegedly not used when creating the report (licensure and disciplinary information).  [Doc. #632-1 p. 6; #818-1 p. 13.][2]

       A.      MDx's Use of Third-Party Medical School Information.

Health Grades requested that MDx stipulate to using medical school information from a third-party source because its interrogatory responses did not identify or explain that this

---

[1] Health Grades filed a Motion to Compel and for Additional Sanctions regarding MDx withholding information about its use of disciplinary and licensure information when creating reports. [Doc. #881.]  Health Grades requested that, as a further sanction, the Court deem the Creating a Report Using Third-Party Information Element established.  If the Court grants that requested relief, Health Grades' request to require MDx produce the third-party source information in Section I of this Motion will be mooted.  However, if the Court does not provide that relief in [Doc. #881], this Court should compel MDx to produce the third-party source information requested herein.

[2] MDx only revealed that licensure and disciplinary action were not used (allegedly) when MDx submitted its supplemental interrogatory response on January 25, 2014—after this Court sanctioned MDx. [Doc. #870 pp. 11-12 timeline detailing how MDx's interrogatory responses regarding use of third-party information has changed.]

information was not used. [Exhibit A July 30, 2014 email.] In opposing this request, MDX counsel stated—through unsworn testimony—that MDx claimed there are instances where self-reported medical school is used in creating reports. [*Id.* at July 31, 2014 email.] In particular counsel stated, "the proposed stipulation would not be accurate – see for example Dr. Sanjay Gupta's profile containing a self-reported medical school." [*Id.*] Dr. Gupta's profile has asterisks next to medical school, residency and fellowship and it states "* This information was reported to Vitals by the doctor or doctor's office." [Exhibit B hereto, screenshot of Dr. Gupta's vitals.com profile from October 13, 2014 (highlighting added).] MDx counsel then identified—through further unsworn testimony— that there are 33,114 provider profiles MDx claims were created using self-reported rather than third-party source medical school information. [*Compare* Exhibit A October 2, 2014 email, *with* Exhibit C hereto excerpt from MDx 0143095 (referenced by MDx counsel in their October 2, 2014 email) (highlighting added).]

But MDx's deposition testimony refutes the assertion that MDx does not use third-party medical school information when the provider self-reports the information. MDx has disclosed that it has conflict resolution and cross-checking procedures in place for when a provider self-reports information. Erika Boyer, Vice President of Data Operations, provided an example of how these procedures are performed in the context of a physician self-reporting his medical school:

> Q   Okay. If we flip down to MDX 0038811, there's medical school. So is the source of that the physician?
> A   No.
> Q   So I think you said the physician cannot update or change that?
> A   They can, but it doesn't necessarily mean that we will accept it.
> Q   Is -- so is there a vetting process when that --

> A   Yes, we look at our data sources to make sure that there's consistency, so a doctor does not say that they went to Harvard when they went to Howard, which has been known to happen.

[Exhibit D hereto pp. 88:16-89:1.]  By comparing data from both the provider and third-party sources (sources other than providers), MDx's conflict resolution and cross-checking procedures "use" third-party source information when "creating" reports.  [*See* Doc. #881 p. 3, detailing how the plain and ordinary meaning of "using" applies to the Creating a Report Using Third-Party Information Element.][3]  Further, MDx uses third-party medical school information when it initially created the provider report and displayed it to the public—well before a provider may subsequently decide to self-report after he or she stumbles upon their online profile.

Because MDx claims that 33,114 provider reports are created using self-reported medical school, MDx must disclose:

1. whether each report was initially created using third-party medical information before the provider self-reported his or her medical school;

2. all sources where MDx obtains medical school information;

3. all the conflict resolution and cross-checking information, data and documents related to these 33,114 reports.

Health Grades needs this information to rebut MDx's claim.  *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000) (the purpose of a contention interrogatory is "to narrow and define issues for trial and <u>to enable the propounding party to determine</u> the proof required <u>to rebut</u> the respondent's position") (emphasis added).

---

[3] In an October 13, 2014 email, Exhibit A, counsel for MDx confirmed that MDx has no "additional documents regarding cross-checking to produce."

MDx also has not addressed the remaining 800,747 providers on vitals.com that did not self-report medical school. [Exhibit C, identifying 833,860 total providers (highlighting added).] MDx must explain how it does not use third-party medical school information when creating the report and produce any conflict resolution or cross-checking information, data, and documents for these providers. Health Grades needs this information because MDx has taken the position that Health Grades must prove infringement on a report-by-report basis, and it claims "not a single report for any of the 833,860 providers on the MDx website [satisfies all the] . . . claim elements . . . ." [Doc. #839 pp. 11-12.]

MDx should also be required to provide a sworn supplemental interrogatory response fully explaining how it does or does not use third-party medical school information in creating reports because it has failed to do so.

B.   MDx's Use of Third-Party Internship, Residency and Fellowship Information.

Ms. Boyer swore that in the situation where a doctor self-reports fellowship or residency information that is different from vitals.com's third-party source information, MDx performs the following cross-checking and conflict resolution process to determine which information is correct:

> A   We aggregate data, so it's the aggregation of the data that helps us determine what we feel is the right information.
> Q   So by aggregating the data is how you confirm whether it's correct or incorrect?
> A   Um-hum.

[Exhibit D hereto at p. 100:6-12.] By aggregating and comparing data from both the provider and third-party sources (sources other than providers), MDx again "uses" third-party source information when "creating" reports. [*See* Doc. #881 p. 3.] MDx, however, claims—through

unsworn testimony—that certain reports are created using self-reported medical internship, medical residency and/or medical fellowship information.  [Exhibit A October 2, 2014 email.]  MDx must:

1. identify each report for which MDx claims medical internship, medical residency and/or medical fellowship are used;

2. identify whether the report was initially created using third-party medical internship, medical residency and/or medical fellowship information before the provider self-reported the same;

3. all sources where MDx obtains medical internship, medical residency and/or medical fellowship information; and

4. disclose all the conflict resolution and cross-checking information, data and documents related to these reports to enable Health Grades to rebut this claim.

MDx should also be required to provide a sworn supplemental interrogatory response fully explaining how it does or does not use third-party medical internship, medical residency, and/or medical fellowship information in creating reports because it has failed to do so.

In short, MDx must produce the requested information and documents related to the Creating a Report Using Third-Party Information Element.

## II. MDx WITHHELD RELEVANT DOCUMENTS AND MATERIALS ABOUT ITS ACCUSED PRODUCTS.

In addition to operating its core vitals.com website for consumers, MDx offers its accused system to health insurance companies to provide essentially the same service for helping patients compare and choose doctors.  MDx calls this "VitalsChoice."  [Health Grades' Motion to Amend Infringement Contentions Doc. #908 pp. 2-4.]  MDx has been offering VitalsChoice since at least November 22, 2013.  [*Id.* at p. 6.]  Health Grades, however, only learned of VitalsChoice after MDx began producing marketing PowerPoints on July 15, 2014.  Thus at least

eight months of time addressing issues regarding VitalsChoice were lost.  MDx did not disclose the VitalsChoice documents in advance of the May 15, 2014 MDx corporate representative deposition.  MDx continued to produce marketing and other materials about VitalsChoice through September 22, 2014.

In reviewing MDx's productions from July 2014 to September 22, Health Grades identified the following instances where there is missing or omitted materials:

1. Video or other demonstration materials incorporated into the marketing materials MDx recently produced, *see, e.g.,* Exhibit E hereto MDX 145365 excerpt from a VitalsChoice PowerPoint presentation referencing a "Demonstration," and Exhibit F hereto MDX 144378 a separate PowerPoint referencing a "LIVE DEMO." MDx refused to produce the video and demonstrations.  [Exhibit G hereto October 8, 2014 email.]

2. MDX 0143793 titled "VitalsChoice Architecture" states that it is "supplemented by handout."  [Exhibit E at MDX 0143793.]  MDx refused to identify the location of the handout in its productions or produce it and any other handouts associated with the marketing materials.  [Exhibit G at October 6, 2014 email.]

3. MDx's "vitalschoice Transparency Platform Overview," [Doc. #908-2], includes screenshots or excerpts from several sample provider profiles.  MDx refused to provide the full sample profiles it prepared for the following doctors referenced in the overview:  Gloria Elam [MDX 144265], Jacqueline T Mckeigue [MDX 144269], Rani A Sharma [MDX 144270], James C Mullin [MDX 144276], and Efthymia Papanastassiou [MDX 144279-80].  [Exhibit G at October 6, 2014 email.]

4. Health Grades requested for the providers referenced in No. 3 that MDx provide any updated sample profiles for these providers and any screenshots of the profiles for these providers as they appear on any of the restricted areas of the MDx licensees' sites or systems.   [Exhibit G at September 29, 2014 email.]  MDx refused to produce the same.  [*Id.* at October 6, 2014].]

5. Health Grades understands that MDx has offered and sold a VitalsChoice system to Capital Blue Cross Blue Shield.  MDx's "Supporting the Capital BlueCross Vision . . ." marketing materials include a sample webpage.  [Exhibit E MDX 145364].  MDx refused to produce any sample provider profiles it prepared for Capital Blue Cross Blue Shield.  [Exhibit G at October 6, 2014 email.]

- 8 -

6. MDX 143452-143488 is a Capital Blue Cross Blue Shield marketing PowerPoint that starts with starts with "Agenda." [Exhibit H hereto.] The PowerPoint appears to be missing its cover page. MDx refused to produce the complete version. [Exhibit G at October 6, 2014 email.]

The documents and materials Health Grades requested MDx produce compromise portions of documents that MDx has already produced. There is no basis for not producing entire documents or related materials. MDx claims that it should not have to produce the responsive documents and materials because trial is approximately seven weeks away. [Exhibit G at October 8, 2014 email]. But MDx cannot withhold and then delay producing the responsive materials and then object based on the fact that trial is approaching.

In short, MDx should be compelled to produce the documents and information requested in Nos. 1-6.

III. MDx WITHHELD RELEVANT DOCUMENTS ABOUT ITS AGREEMENTS WITH THIRD PARTIES.

Health Grades learned during the May 15, 2014 MDx corporate deposition that there were agreements with third parties that MDx had not produced. Health Grades requested on May 27, 2014 that MDx produce those licensing agreements. [Doc #818-4 request No. 1.] MDx counsel did not object to the scope of this request or identify any agreements that would be withheld. [*Id.*] MDx began disclosing the agreements in July 2014. On August 24, 2014, MDx produced a map identifying the "Vital[']s Health Plan Client[s]." [Exhibit I hereto conferral email with map [MDX 0145505 attached.] MDx has produced agreement s for vitals' clients Capital Blue Cross of Pennsylvania, Blue Cross Blue Shield of North Carolina, Premera BlueCross, Health Care Service Corporation, and Humana. MDx, however, refused to produce agreements and amendments for the following entities identified on the map:

2005020971_1

> Wellpoint, Highmark, BlueCross of California, Blue Cross Blue Shield of Arizona, Blue Cross of Idaho, Blue Cross Blue Shield of Nebraska, Blue Cross Blue Shield of Tennessee, Blue Cross Blue Shield of Minnesota, Blue Cross Blue Shield Blue Care Network of Michigan, Blue Cross Blue Shield of Massachusetts, Independence Blue Cross, Horizon Blue Cross Blue Shield of New Jersey, Capital Blue, Blue Cross Blue Shield of Puerto Rico, CareFirst Blue Cross Blue Shield, Wellmark Blue Cross Blue Shield, and Presbyterians Highmark, Blue Cross of California, Blue Cross Blue Shield of Arizona, Blue Cross of Idaho, Blue Cross Blue Shield of Nebraska, Blue Cross Blue Shield of Tennessee, Blue Cross Blue Shield of Minnesota, Blue Cross Blue Shield Blue Care Network of Michigan, Blue Cross Blue Shield of Massachusetts, Independence Blue Cross, Horizon Blue Cross Blue Shield of New Jersey, Capital Blue, Blue Cross Blue Shield of North Carolina, Blue Cross Blue Shield of Puerto Rico, CareFirst Blue Cross Blue Shield, Wellmark Blue Cross Blue Shield, and Presbyterian.

[*Id.*]  MDx produced revenue information for all the clients identified on the chart, including for those entities that it has withheld the corresponding agreements.  [*Id.* at October 6, 2014 email from Health Grades' counsel to MDx counsel.]  Health Grades is entitled to review the documents underlying the relationship of that revenue.  The withheld agreements also likely reveal information about MDx's accused system and how it functions.  In short, MDx should be compelled to produce the agreements and amendment identified herein.

## CONCLUSION

For all the foregoing reasons, Health Grades requests that this Court grant its Motion as set forth herein.

## CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1A

Regarding Health Grades requested relief in Sections I and II, the undersigned counsel for Health Grades certifies that he has conferred with opposing counsel on multiple occasions regarding the foregoing issues in an attempt to resolve them, including via several e-mails, *see,*

*e.g.* Exhibit A, G, and via teleconferences.  The parties have not been able to resolve these issues and MDx objects to the relief requested in sections I and II.

Regarding Section III, on September 30, 2014, Health Grades began the conferral process over MDx producing the withheld agreements and requested that the same be produced by October 6, 2014.  [Exhibit I.]  MDx counsel waited until October 6, 2014 to inform Health Grades counsel that it would not produce and threatened to file a motion for a protective order.  [Exhibit I.]  After Health Grades counsel responded that it would still move forward with the motion to compel, MDx vaguely stated it would produce the "non-data agreements" it withheld.  [*Id.* at October 13, 2014 email.]  MDx, however, did not confirm it would produce all the agreements and amendments thereto (non-data or otherwise) for the third parties identified in Health Grades' September 30, 2014 email.  [Exhibit I.]  MDx also specifically stated it will not produce one of the requested agreements, but did not explain in detail why the agreement is not relevant.  [*Id.*]  With trial approaching, Health Grades can wait no longer.  Upon MDx timely producing all the requested agreements, Health Grades is willing to withdraw this part of the motion.

Respectfully submitted October 14, 2014.

LEWIS ROCA ROTHGERBER LLP

*/s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Adam L. Massaro, Esq.
1200 17th Street, Suite 3000
Denver, CO  80202
Tel:    (303) 623-9000
Fax:   (303) 623-9222
Email: gkanan@lrrlaw.com
           kkosto@lrrlaw.com
           amassaro@lrrlaw.com

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2014, I electronically filed the foregoing **HEALTH GRADES, INC.'S MOTION TO COMPEL** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Scott David Stimpson, Esq.
Vincent Ferraro, Esq.
David C. Lee, Esq.
Trent Dickey, Esq.
Sills Cummis & Gross P.C. – New York
30 Rockefeller Plaza
New York, NY  10112
E-mail:   sstimpson@sillscummis.com
              vferraro@sillscummis.com
              dlee@sillscummis.com
              tdickey@sillscummis.com

Terence M. Ridley, Esq.
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO  80202-5647
E-mail: ridley@wtotrial.com

*/s/ Kris J. Kostolansky*
Kris J. Kostolansky, Esq.

2005020971_1                                    - 11 -