**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

**Civil Action No. 11-cv-00520-RM-BNB**

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC.,
doing business as Vitals.com,

    Defendant.

___

**ORDER ON INDIRECT INFRINGEMENT**
___

This matter is before the Court on the motion filed by MDx Medical, Inc. ("MDx") for summary judgment of no infringement with regard to Health Grades, Inc.'s First Amended Complaint, as it pertains to allegations relating to Aetna Life Insurance Company ("Aetna") and its iTriage application ("iTriage application") (hereinafter the "Aetna Motion") (ECF No. 490). The Aetna Motion is fully briefed and ripe for disposition. Pursuant to 28 U.S.C. § 1338(a), the Court's jurisdiction over this case is based on the U.S. Patent Act, 35 U.S.C. § 101 *et seq.*

**I.    BACKGROUND**

    **A.  Procedural History**

Plaintiff Health Grades, Inc. ("Health Grades") owns U.S. Patent No. 7,752,060 (issued Jul. 6, 2010) (the "'060 Patent"). The invention claimed therein relates to an "Internet-based system and method that connects patients with potential healthcare providers, e.g., physicians and hospitals." ('060 Patent col.1 ll.12-14.) MDx maintains the website www.vitals.com (the

1

"MDx website"), the current version of which was launched in January 2011. (ECF No. 195 at 2.) This Court has already set forth the basic facts regarding the claimed invention and the accused MDx product in several previous orders of this Court, dated April 4, 2013, June 26, 2014, and July 15, 2014 (ECF Nos. 696, 808, 810). Those facts will be supplemented herein as necessary to focus on the iTriage websites.

During discovery in this case, Health Grades sought information and documents relating to MDx's database licenses. MDx opposed many of these discovery requests, but Health Grades learned of a license to Aetna from MDx for Aetna's iTriage application. (ECF No. 252 at 1.) Like the Health Grades and MDx websites, iTriage provides information and reports about healthcare providers to users of the websites (mobile and desktop), which can be used as a basis for healthcare provider selection. Health Grades moved to amend its complaint to assert causes of action for joint infringement and indirect infringement in July of 2012, asserting that "Health Grades did not learn of the iTriage license until Aetna publicly announced it in March 2012." (*Id.*)

On January 11, 2013, Magistrate Judge Boland granted Health Grades' motion to amend its complaint to add allegations of indirect and joint infringement relating to a third party, Aetna. (ECF No. 480.) The Amended Complaint contained allegations of joint infringement, inducing infringement, and contributory infringement. (ECF No. 481.) Subsequently, Health Grades withdrew its cause of action for joint infringement. (ECF Nos. 512, 525 at 2 n.1.) MDx moves for summary judgment on the remaining claims of infringement involving Aetna's iTriage application.

### B. Facts

In the fall of 2011, MDx entered into an agreement with Aetna to provide Aetna with healthcare provider data for use in Aetna's iTriage application. (ECF No. 481 at 4.) "MDx also agreed to develop, manage and maintain a full database for use with the iTriage application and to provide training for Aetna to use this database." (*Id*.) Aetna is a company that provides a service—the iTriage application—for connecting healthcare providers with potential patients. (ECF No. 525 at 5.)

The iTriage application instructs users that ratings of providers are done on the Vitals website; the patient ratings used by the iTriage application are obtained from surveys conducted on www.vitals.com, and the surveys are managed by MDx. (ECF No. 490 at 3; admitted at ECF No. 525 at 5.) The agreement between MDx and Aetna (the "Aetna Agreement") sets forth what MDx will provide Aetna: it states that MDx will create a "Master Database," including establishing "an Aetna-defined database (*i.e.*, to an Aetna-defined model) fed from the MDx database." (ECF No. 486-1 at 7.)

The Aetna Agreement does not specify exactly what data Aetna will collect from MDx nor how Aetna will use that data; it did specify that the "Master Database will contain all MDx Patient Reviews, which will connect directly with Aetna's Patient Review System to be developed by Supplier." (ECF No. 486-1 at 8.) MDx also agreed to "include all its patient ratings for the providers in the Master Database, for display by Aetna." (*Id*. at 9.)

## II. STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A movant who bears the burden at trial must submit evidence to establish every essential element of its claim. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* FED. R. CIV. P. 56(c).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## II.   ANALYSIS

There are two types of indirect infringement: active inducement and contributory infringement, and it "is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'" *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)). The direct

infringement may be either literal or by equivalents.  The briefing on the instant motion devotes substantial attention to the degree to which the evidence supports or refutes the existence of direct infringement in the context of the iTriage products.

The Aetna Motion and accompanying briefing was filed before this Court ruled on MDx's motion for partial summary judgment on non-infringement (ECF No. 195).  The Court has now ruled on that motion, granting summary judgment in favor of MDx as to literal infringement, but denying it as to infringement by equivalents subject to further consideration of prosecution history estoppel.  (ECF No. 696 at 28.)  And on October 23, 2014, following a *Festo* hearing, the Court ruled in MDx's favor on prosecution history estoppel and ordered that Health Grades is estopped from "asserting the doctrine of equivalents against all accused equivalents surrendered." (ECF No. 913 at 21-22.)  Given these rulings, much of the parties' arguments regarding direct infringement by Aetna and the iTriage application have largely been addressed.

The Court will not fully repeat the direct infringement analysis here.   The crucial aspect for purposes of the Aetna Motion is that much of the direct infringement disagreement has now been resolved.  In order for literal infringement to exist, comparison ratings of healthcare providers must be included within the healthcare provider report on the "first healthcare provider."  And equivalents in the form of ratings within search results returned before selection of a "first healthcare provider," as well as other equivalents which do not "literally include comparison ratings," (ECF No. 913 at 21), are not protected by the '060 Patent due to prosecution history estoppel.

Additionally, there has been a significant legal development which impacts this matter.  Health Grades' briefing on this matter, which was filed in February 2013, relied heavily on

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1305 (Fed. Cir. Aug. 31, 2012) (*en banc*). Health Grades stated that under the new rule announced in that case, "Health Grades does not need to prove that a single entity (e.g., Aetna) performs all of the steps of the claimed method in connection with a cause of action for indirect infringement." (ECF No. 525 at 18.) That holding was recently reversed by the Supreme Court in *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, which held that indirect infringement would not be found where no one person committed direct infringement by performing all the steps of a patented method. 134 S.Ct. 2111 (2014).

These matters significantly affect the Aetna Motion. As one example, Health Grades' counsel conceded at a hearing on October 30, 2014 that the *Festo* Order and other prior rulings essentially resolved any claim of direct infringement as it pertains to the iTriage mobile application. Health Grades' counsel said that "the other portion of the iTriage website, the mobile app in that case, we view that as likely covered by your order. . ." (Hearing Transcript, October 30, 2014, at 13:14-13:16.) Nonetheless, the Court will not herein dissect the various possible website configurations and direct infringement claims to discern whether any escape the impact of such matters.[1] This is because the Court has determined that even assuming *arguendo* that some degree of direct infringement may still be provable, there is a lack of disputed issues of material fact on other elements of inducement and contributory infringement. Analysis for each of these issues is set forth below.

---

[1] For example, Health Grades argues that direct infringement of Claim 15 exists by virtue of the claim being a system claim which can be read as being infringed whenever an accused system has the mere "reasonable capability" of an infringing use. (ECF No. 525 at 22-24.) While the Court does not read the claim in the manner suggested by Health Grades, the contention stands as an example of an allegation that might avoid the impact of the prior orders.

### A. Active Inducement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). The "mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Warner–Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003). Specific intent "may be established through circumstantial evidence [or] may be inferred from all of the circumstances." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) (quoting *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988)).

MDx argues that Health Grades has not and cannot proffer any evidence of specific intent to induce infringement. In response, Health Grades points to the following alleged facts, largely derived from the Aetna Agreement: (1) MDx entered an agreement to develop, manage and maintain a full database to be the data backbone for iTriage; (2) iTriage "is strikingly similar to MDx's accused on-line information system;" (3) MDx has a policy it follows to avoid infringement, but did not communicate this policy to Aetna and Aetna does not follow it; (4) MDx is developing an Aetna Patient Review System and perhaps is also providing its "Provider EZ Edit" tool which could enable Aetna to collect healthcare provider information directly from the healthcare provider; and (5) MDx provided Aetna with a demonstration as to how MDx's accused product functions. (ECF No. 525 at 27-28.) There is also passing reliance on the fact

that one official at MDx had the iTriage mobile application on his smart phone and, thus, was presumably aware of what Aetna was doing with MDx's data. (ECF No. 525 at 10.)

None of the above facts, even if established and proven at trial by Health Grades, would create a genuine issue of material fact with respect to the specific intent of MDx to induce infringement. The first three facts are hardly directed to the specific intent element—or if they are, even if accepted as true, they fall short of "culpable conduct, directed to encouraging another's infringement, not merely… knowledge of the direct infringer's activities." *DSU Med.*, 471 F.3d at 1306. The mere fact that MDx agreed to provide data to Aetna does not speak to specific intent to induce infringement. As MDx points out, Aetna—not MDx—determines the data it wants from the database and the structure of its websites. (*See generally* ECF No. 486-1, Schedule No. 001 to the Aetna Agreement.) Moreover, given the Court's prior rulings as to the MDx website, there are a number of ways the MDx data could be presented which would not constitute infringement. The Aetna Agreement speaks to no specific presentation. Accordingly, the licensing of data by MDx does not speak to an intent to induce Aetna to use the data in some particular manner which infringes the '060 Patent.

The similarity between the MDx and Aetna sites does not create a genuine issue of material fact regarding specific intent either. As noted, the prior rulings largely insulate most MDx website configurations from claims of infringement. Similarity to a non-infringing site is therefore hardly relevant—even assuming that MDx was responsible for inducing the similarity.

As for MDx's policy to avoid infringement, MDx is not required to communicate its policies to those with whom it does business. The fact that MDx did not tell Aetna how MDx seeks to avoid infringement simply does not translate into evidence that MDx was therefore

seeking to induce infringement, particularly where MDx did not control or seek to control Aetna's use of the MDx data. This line of reasoning simply requires too great an inferential leap for any reasonable jury.

The purported facts regarding the Aetna Patient Review System and the Provider EZ Edit tool are likewise insufficient. Putting aside the difficulty that Health Grades' argument on this point is more speculative than concrete (*See* ECF No. 525 at 28 ("MDx is developing (or has developed) an Aetna Patient Review System . . . MDx may also be providing . . . its "Provider EZ Edit tool . . . "")), there is nothing in such purported facts, even if accepted as true, which suggests that data collected or verified be the precise data within the scope of the '060 Patent or that Aetna use such data in a manner which would infringe the '060 Patent. Thus, even if there were evidence that MDx induced Aetna to use such tools, that evidence falls short of evidence supporting specific intent to induce infringement.

The most promising alleged fact for Health Grades on the specific intent issue, and in fact the only one that potentially addresses MDx's intent regarding Aetna's alleged infringement, is the assertion that "MDx…provided Aetna with a [presentation] as to how MDx's accused vitals.com website functions." (ECF No. 525 at 28.) The inference, of course, is that MDx induced or encouraged or led Aetna to use the data as MDx did. Putting aside the content of the presentation for a moment, the first page of the exhibit evidencing the Powerpoint Presentation reveals the critical fact—it was "[p]resented to Aetna [on] January 11, 2008." (ECF No. 525-17 at 2.) At that point, the '060 Patent had not issued. Regardless of whether or not the presentation actually serves as evidence of inducement, which in the Court's view it does not, as a matter of law there cannot be inducement or intent to induce if there is no patent at the time of

the alleged inducement. *See, e.g.*, *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996).

Finally, the fact that an MDx official has the iTriage application on his smart phone is not circumstantial evidence of intent to induce. That alleged fact may or may not, putting aside issues with the timeline, indicate knowledge of Aetna's product. But inducement requires more. *See, e.g.*, *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009) (quoting *DSU Med.*, 471 F.3d at 1306. ("[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." ).) And as conceded by Health Grades, given the prior orders of the Court, the mobile app does not infringe the '060 Patent. (*See* Hearing Transcript, October 30, 2014, at 13:15-13:16.)

Health Grades' briefing on the specific intent element is inadequate to create a genuine issue of material fact with respect to specific intent. After devoting considerable time to establishing direct infringement, Health Grades devotes less than two full pages to analyzing the specific intent element. In that section, Health Grades asserts specific intent several times, but does not sufficiently link that conclusory assertion with actual disputed facts that would permitthis issue to go to a jury. For instance, Health Grades asserts that "MDx developed, manages and maintains the Aetna Master Database with the specific intent that Aetna use it for iTriage," (ECF No. 525 at 28), but then follows that assertion with the alleged disputed facts that "MDx provides *a substantial amount* of its accused data to *allow* for iTriage to… infringe[] the asserted claims," and "MDx provides *almost all* of the accused elements of its database to Aetna and Aetna uses *almost all* of these elements in iTriage." (*Id.*) (emphasis added). The

emphasized words highlight the problem with Health Grades' argument—MDx licenses a database to Aetna, but nothing about the nature of that licensing agreement requires infringement. And to withstand summary judgment, Health Grades needs something more than what it has shown the Court.

Health Grades' argument on the intent issue can be boiled down to the following statement: "[b]y providing its accused data and performing the other tasks outlined in the Aetna Agreement, MDx is actively inducing Aetna to infringe the '060 patent." (ECF No. 28.) Having reviewed the agreement between Aetna and MDx that forms the core of Health Grades evidentiary accusations, the Court disagrees. Providing a database does not amount to intent by MDx to induce infringement of the '060 Patent, and providing a database was fundamentally what MDx agreed to do and has done for Aetna. The Aetna Agreement specifically sets forth Aetna's control over the data it receives from MDx, and makes clear that "Aetna defines the data it wants in the Master Database." (ECF No. 486-1 at 8.)

Health Grades has failed to come forward with sufficient evidence of material factual disputes relating to specific intent so as to create a genuine issue for trial by jury. Summary judgment is therefore granted with respect to active inducement by MDx.

### B. Contributory Infringement

Under 35 U.S.C. § 271(c), a party is liable for infringement if he "offers to sell or sells within the United States or imports into the United States ... a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." Under this

statute, a party can be found liable for contributory infringement if that party sells or offers to sell a part or component that, while not itself infringing, has a particular use in something else that is covered by a patent. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010) *aff'd*, 131 S. Ct. 2238 (U.S. 2011).

"In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.' " *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (quoting *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005)).

MDx argues that the data it leases to Aetna has substantial non-infringing uses, and that providing Aetna with a database according to Aetna's specifications does not amount to contributory infringement. (ECF No. 490 at 12.) Health Grades responds in its brief with a scant two paragraphs, arguing that "the Aetna Agreement indicates that MDx creates a 'custom' data extract for Aetna based on MDx's 'proprietary' database." (ECF No. 525 at 29.) It is entirely unclear to the Court how Health Grades envisions that this fact demonstrates that there are no substantial non-infringing uses of the data. In fact, upon review of the evidence submitted by Health Grades alone, the Court concludes that there are indeed substantial non-infringing uses of the data.

For instance, Health Grades submits along with its Opposition an Expert Report by Dr. Philip Greenspun, which takes the reader through how the iTriage app functions. (ECF No. 525-11.) Dr. Greenspun's report reflects an understanding that a results list that emerges in response

to a query is actually "the first page of the profile" on a first healthcare provider, which both the Markman Order and this Court rejected previously. (*Id*. at 7.) Once inside the report on the first healthcare provider, the screenshot provided by Health Grades reveals that the iTriage reports lack some claim elements, such as comparison ratings. Thus, regardless of whether some current or past iteration of either the iTriage application or website actually infringes upon the '060 Patent, it is clear from Health Grades' own evidentiary submissions in response to the instant motion that that there are substantial non-infringing uses of the data.

Of course, the Court's prior rulings on literal infringement and prosecution history estoppel could not be anticipated. Nonetheless, given the restrictions on literal infringement and on the doctrine of equivalents, the data provided by MDx can be presented in a wide variety of ways that do not infringe upon the '060 Patent. Indeed, infringing uses are quite precise and narrow given the prior rulings, and other presentations and uses which do not infringe are numerous.

Whether simply data, "custom" data, or a "proprietary database," (and the parties may disagree on which of these it is), this Court finds that the information and tools MDx gives to Aetna do have substantial non-infringing uses. There are many potential uses of this data that would, for example, not result in a report containing comparison ratings in the manner covered by the '060 Patent. Health Grades has failed to come forward with sufficient evidence of material factual disputes relating to non-infringing uses so as to create a genuine issue for trial by jury. Summary judgment is therefore granted with respect to contributory infringement by MDx.

## IV. CONCLUSION

For the foregoing reasons, MDx's Motion for Summary Judgment of No Infringement with Regard to Amended Complaint and Allegations Relating to Aetna Life Insurance Company (ECF No. 490) is GRANTED.

DATED this 4th day of November, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge