Civil Action No. 11-CV-00520-RM-BNB

**HEALTH GRADES, INC.'S ELECTRONIC FILING OF ITS NOVEMBER 6, 2014 HEARING EXHIBITS**

---

## Exhibit 4

**Philip Braginsky's January 2011 Freedom to Operate Opinion Letter for Services Provided on Vitals' website**

# SILLS CUMMIS & GROSS

A PROFESSIONAL CORPORATION

**One Rockefeller Plaza**
**New York, NY 10020**
**Tel: 212-643-7000**
**Fax: 212-643-6500**

One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500

Philip Braginsky
Member of the Firm
Direct Dial:  (646) 735-3706
E-mail: pbraginsky@sillscummis.com

650 College Road East
Princeton, NJ 08540
Tel: 609-227-4600
Fax: 609-227-4646

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY/CLIENT AND ATTORNEY WORK PRODUCT**

January 25, 2011

**DEFENDANT'S
EXHIBIT**
Blue labeled
**B-24**
11cv520-RM-BNB

Mitchel Rothschild
Vitals.com and MDX  Medical, Inc.
1200 Wall Street West 1st Floor
Lyndhurst, NJ  07071

Re:   Freedom-to-Operate Opinion Letter for Services Provided on
Vitals' website

Dear Mitchel:

Pursuant to your request, we have conducted a study and prepared a freedom to operate opinion to determine whether the services provided on Vitals and MDX Medical, Inc.'s (hereinafter "Vitals") website (www.vitals.com) (hereinafter "the vitals.com services") would infringe the patent identified hereinafter.

The study included a review of the patent, the prosecution history of the patent, the prior art references addressed in the prosecution history of the patent, the vitals.com services,

   HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY   MDX 0100414

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 2

and certain processes used to implement the vitals.com services as you have described them to us. It is our opinion based upon our analysis of this information that reasonable grounds support the conclusion that the commercial activity presently being contemplated by Vitals with respect to manufacture, use, sale or offer for sale of the vitals.com services avoids infringement of the claims of the considered patent.[1]

We have completed a non-infringement study with respect to the specification, claims, and drawings of U.S. Patent No. 7,752,060[2] to Hicks et al. (hereinafter "the '060 Patent") and the prosecution history[3] in order to provide you with our opinion as to whether the vitals.com services infringe any claims of the '060 Patent.

Please note that we have not considered the validity of the '060 Patent nor conducted a search for pertinent prior art references. At your request, we have only considered the '060 for the opinion herein.

A. **SUMMARY OPINION**

During the course of our investigation we have studied the information and materials provided to us by Vitals. We have also studied the file history and relevant prior art, and have considered arguments concerning non-infringement of independent claims 1 and 15.

---

1 We rely upon the principles of law developed under 35 U.S.C. § 154 and 35 U.S.C. § 271.

2 Attached hereto as Exhibit A.

3 Attached hereto as Exhibit B. The prosecution history is of "primary significance in understanding the claims." *Markman v. Westview Instruments, Inc.* 52 F.3d 967 (Fed. Cir. 1995).

       HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY       MDX 0100415

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 3

Based upon our study of the '060 Patent specification and file history, it is our opinion that upon a fully developed record it is more likely than not that the manufacture, use, sale or offer for sale of the vitals.com services would be determined by a properly informed court (or properly instructed jury) not to infringe any claim of the '060 Patent. This conclusion is grounded upon the determination that, given proper construction under the law, the vitals.com services would not infringe the '060 Patent. An assertion of such claims therefore should not properly result in infringement liability.

Specifically, we conclude that the '060 patent would not implicate vitals.com services in which 1) vitals.com does not create and provide access to a healthcare provider report that includes independent third-party verified licensure, medical internship, medical residency, and medical fellowship information and 2) when vitals.com creates and provides access to a healthcare provider report that includes third-party verified disciplinary action information, the report does not include patient-provided information including patient ratings from one or more past or current patients received from an on-line patient experience survey completed on a vitals.com website. It is our opinion that a properly informed court (or properly instructed jury) would find such a system to not infringe any claim of the '060 Patent.

An additional and independent basis for non-infringement would apply to vitals.com services in which the healthcare provider report does not include "comparison ratings" of healthcare providers.

 HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY MDX 0100416

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 4

## ANALYSIS

1. **U.S. PATENT NO. 7,752,060**

   a. **THE CLAIMS OF THE '060 PATENT**

   The '060 Patent is directed to an internet system for connecting healthcare providers and patients. There are a total of 17 claims in the '060 Patent. Claim 1 is an independent "method" claim, and claims 2-14 depend from claim 1. Claim 15 is an independent "system" claim, and claims 16-17 depend from claim 15.

Claim 1 of the '060 Patent reads as follows:

1. A computer-implemented method of providing healthcare provider information to potential patients, said method comprising:

   receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider, wherein the Web server computer comprises at least one computer processor and memory;

   accessing healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;

   compiling, by the at least one computer processor, patient-provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY
MDX 0100417

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 5

experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;

compiling information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;

creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and

providing access to the healthcare provider report on the first healthcare provider over a computer network.

Claim 15 reads:

15. An on-line information system for connecting healthcare providers with potential patients, the system comprising:

at least one computer processor; and

memory coupled with and readable by the at least one computer processor and comprising a series of instructions that, when executed by the at least one computer processor, cause the at least one computer processor to:

receive a request for information regarding a first healthcare provider;

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY
MDX 0100418

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 6

access healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;

compile patient-provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;

compile healthcare provider information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;

create a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and

provide access to the healthcare provider report on the first healthcare provider over a computer network.

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY
MDX 0100419

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 7

## 2.   THE FILE HISTORY OF THE '060 PATENT

The application that resulted in the '060 Patent was filed on August 29, 2006.  An Information Disclosure Statement ("IDS") was filed on December 13, 2007, listing nine U.S. patent applications and five U.S. patents.  The IDS was supplemented on or about March 25, 2008, adding two U.S. patent applications and nine U.S. patents.  It was again supplemented on or about February 15, 2010, adding six more U.S. patent applications and three more U.S. patents and four internet websites.  It was supplemented a final time on or about March 2, 2010, adding the website www.vitals.com.

Application claims 1 and 19 as originally filed read as follows (application claim 19 issued as claim 15 of the '060 Patent):

1.  A method of providing healthcare provider information to potential patients, said method comprising:

compiling healthcare provider-verified information;

compiling past-patient provided information;

compiling information verified by independent third-party sources;

creating a healthcare provider report using the physician-verified information, the past-patient provided information, and the verified information; and

providing access to the healthcare provider report over a computer network.

19. An on-line information system for providing verified information regarding healthcare providers, the system comprising:

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 8

> a compilation module for compiling healthcare provider-verified information;
>
> a compilation module for compiling patient-provided information;
>
> a compilation module for compiling healthcare provider information verified by an independent third party;
>
> a creation module for creating a healthcare provider report using the provider-verified information, the patient-provided information, and the independently verified information; and
>
> a computing system with access to healthcare provider information stored in a database, wherein patients may search the database and review healthcare provider reports to differentiate among healthcare providers.

On August 31, 2009, the examiner imposed a Restriction Requirement requiring applicants to elect between Group I (claims 1-15 and 19-20) which were found "drawn to providing healthcare provider information to potential patient, classified in class 705, and subclass 2" or Group II (claims 16-18), which were found "drawn to optimizing location of a search on a search engine Web page, classified in class 707, and subclass 10." On September 30, 2009, applicants elected Group I, claims 1-15 and 19-20.

On November 13, 2009, the Examiner issued an office action rejecting the remaining claims 1-15, 19 and 20 under 35 U.S.C. §§ 101, 103, and 112. More specifically, the Examiner rejected the claims under Section 101 as directed to nonstatutory subject matter. The Examiner rejected the claims under Section 112 as being indefinite and for lack of antecedent basis. The Examiner rejected claims 1-6, 8, 9, 13-15 and 19 under Section 103 (obviousness) as

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY
MDX 0100421

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 9

being unpatentable over Henley (U.S. 2003/0195838 A1) in view of Cook (U.S. 2006/0080146

A1).  The Examiner rejected claims 7, 10-12 and 20 as being unpatentable over Henley (U.S.

2003/0195838 A1) in view of Cook (U.S. 2006/0080146 A1) and further in view of Sameh (U.S.

PGP 2004/0010423 A1).

Following this Office Action, applicants made claim amendments including

amendments to pending claims 1 and 19, as follows:

1.  A method of providing healthcare provider information to potential patients, said method comprising:

compiling healthcare provider-verified information;

compiling past-patient provided information;

compiling information verified by independent third-party sources;

creating, by a processor, a healthcare provider report using ~~the physician verified~~ healthcare provider-verified information, the past-patient provided information, and the ~~verified~~ information verified by independent third-party sources, wherein the healthcare provider report includes comparison ratings of healthcare providers; and

providing access to the healthcare provider report over a computer network.

19. An on-line information system for providing verified information regarding healthcare providers, the system comprising:

at least one processor; and

memory coupled with and readable by the at least one processor and comprising a series of instructions that, when executed by the at least one processor, cause the at least one processor to:

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100422

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 10

> a ~~compilation module for compiling~~ compile healthcare provider-verified information;
>
> a ~~compilation module for compiling~~ compile patient-provided information;
>
> a ~~compilation module for compiling~~ compile healthcare provider information verified by an independent third party; and
>
> a ~~creation module for creating~~ create a healthcare provider report using the ~~provider-verified~~ healthcare provider-verified information, the patient-provided information, and the independently verified information, wherein the healthcare provider report includes comparison ratings of healthcare providers; ~~and~~
>
> ~~a computing system with access to healthcare provider information stored in a database, wherein patients may search the database and review healthcare provider reports to differentiate among healthcare providers.~~

(Feb. 16, 2010 Amendment and Response p. 2, 5)

Applicants also canceled pending claim 5 and added new claim 21. (Amendment and Response p. 3, 6).

Responding to the Section 103 obviousness rejections, applicants distinguished the prior art, stating that Henley relates to "on-line auctioning for medical services and products" and Cook relates to electronic medical record (EMR) systems, and that both fail "to disclose or suggest, at a minimum, 'creating ... a healthcare provider report using the healthcare provider-verified information, the past-patient provided information, and the information verified by independent third-party sources ...'" (Amendment and Response, p. 10-11). Further, "Henley

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100423

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 11

fails to teach or suggest, for example, '… wherein the healthcare provider report includes comparison ratings of healthcare providers …'" (*Id.* p. 11).  In addressing application claims 7, 10-12 & 20, applicants argued that "Sameh fails to cure the deficiencies of Henley in view of Cook … Sameh's messaging system for forwarding messages from patients to physicians and providing an 'appointment request webpage,' … thus neither teaches nor suggests, for example, '… creating a healthcare provider report using the healthcare provider-verified information, the past-patient provided information, and the information verified by independent third-party sources …'" (*Id.* p. 14-15).

Applicants also argued that the Section 101 (patentable subject matter) and Section 112 (indefiniteness) rejections should be withdrawn in light of their claim amendments. (*Id.* p. 7-9).

Applicant's attorney participated in an in-person interview with Examiners Nguyen and O'Conner on March 10, 2010.  The applicant's attorney states that he provided a summary of the embodiments of the application and distinguished the application from the art cited in the office action, and discussed the rejections with the examiners.  No agreement was reached.  (Statement of the Substance of the Interview, April 12, 2010).

Applicants then filed a Supplemental Amendment with further claim amendments (April 26, 2010).  Applicants made the following changes to application claims 1 and 19:

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 12

1. A computer-implemented method of providing healthcare provider information to potential patients, said method comprising:

receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients, a request for information regarding a first healthcare provider, wherein the Web server computer comprises at least one computer processor and memory;

accessing   compiling   healthcare provider-verified information about the first healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;

compiling, by the at least one computer processor,   past patient patient-   provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;

compiling information regarding the first healthcare provider verified by an independent third-party source, sources wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;

creating, by [[a]] the at least one computer processor, a healthcare provider report on the first healthcare provider using healthcare provider-verified information, the   past patient patient-provided

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY
MDX 0100425

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 13

information, and the information verified by the independent third-party source~~sources~~, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers; and

providing access to the healthcare provider report on the first healthcare provider over a computer network.

19. An on-line information system for connecting healthcare providers with potential patients~~providing verified information regarding healthcare providers~~, the system comprising:

at least one computer processor; and

memory coupled with and readable by the at least one computer processor and comprising a series of instructions that, when executed by the at least one computer processor, cause the at least one computer processor to:

receive a request for information regarding a first healthcare provider;

~~compile~~ access healthcare provider-verified information about the healthcare provider, wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;

compile patient-provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by a company providing a service for connecting healthcare providers with the potential patients;

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100426

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 14

> compile healthcare provider information <u>regarding the first healthcare provider</u> verified by an independent third-party <u>source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;</u> [[and]]

> create a healthcare provider report <u>on the first healthcare provider</u> using the healthcare provider-verified information, the patient-provided information, and the <u>information verified by the independent third-party source</u> ~~independently verified information,~~ wherein the healthcare provider report includes comparison ratings of healthcare providers<u>; and</u>

> <u>provide access to the healthcare provider report not he first healthcare provider over a computer network</u>.

(Supp. Amendment p. 2-3, 6-7).

Applicants argued that the prior art failed to teach numerous claims limitations,

quoting application claim 1 and primarily highlighting the claim amendments as having not been

taught in the prior art (see italics):

> *receiving, by a Web server computer of a company providing a service for connecting healthcare providers with the potential patients*, a request for information regarding a first healthcare provider, wherein the Web server computer comprises at least one computer processor and memory;

> accessing healthcare provider-verified information about the first healthcare provider, *wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession,*

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 15

*years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies;*

compiling, by the ate least one computer processor, patient-provided information regarding the first healthcare provider, wherein the patient-provided information comprises patient ratings from one or more past or current patients of the first healthcare provider, *and wherein the patient ratings are received from an on-line patient experience survey completed on a company Web site by the one or more past or current patients of the first healthcare provider, and wherein the company Web site is managed by the company providing the service for connecting healthcare providers with the potential patients;*

*compiling information regarding the first healthcare provider verified by an independent third-party source, wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship information;*

*creating,* by [[a]] the at least one computer processor, *a healthcare provider report on the first healthcare provider using healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source,* wherein the healthcare provider report on the first healthcare provider includes *comparison ratings* of healthcare providers; and

(Supp. Amend. p. 9-10). Applicants made similar arguments and highlighted

similar language for application claim 19. (Supp. Amend. p. 11-12).

The Examiner allowed all pending claims (1-4, 6-15, 19-21) by a Notice of

Allowance dated May 14, 2010. (Notice of Allowance p. 2). The Examiner specifically cited

claim limitations that had been included by amendment:

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY
MDX 0100428

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 16

> The cited prior arts of record fail to expressly teach a computer-implemented method of providing healthcare provider information to potential patients wherein the healthcare provider-verified information is received from the first healthcare provider and comprises three or more from the group consisting of: specialty information, medical philosophy, gender, age, years in profession, years in practice, awards, honors, professional appointments, professional memberships, publications, languages, and hobbies; and wherein the information verified by the independent third-party source comprises three or more from the group consisting of: board certification, licensure, disciplinary action information, medical school, medical internship, medical residency, and medical fellowship.

(Notice of Allowance p. 4).

Applicants responded to the Examiner's reasons for allowance stating, *inter alia*: "the Applicants do not necessarily acquiesce or agree in any manner as to the comments made by the Examiner regarding what the cited art does or does not teach." (Comments on Statement of Reasons for Allowance May 20, 2010).

The '060 Patent then issued on July 6, 2010. Application claims 1 and 19 correspond to claims 1 and 15 in the issued '060 Patent.

3. **APPLICABLE LEGAL STANDARDS**

   a. **Claim Construction**

   Determining if an accused product infringes the claims of a patent is a two step process. First, the meaning and scope of the claim must be ascertained in a process known as "claim construction." Second, the claim as properly construed must be compared to the accused

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100429

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 17

device or process. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

Claim construction is a matter of law for the Court – i.e. the judge rather than the jury determines what the patent terms mean. *Markman v. Westview Instruments Inc.*, 517 U.S. 370, 388-90 (1996). It is the first step in analyzing both the infringement and invalidity of patent claims. *Markman*, 517 U.S. at 388-90; *Amazon.com v. Barnesandnoble.com*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

The *Markman* analysis, however, is not necessary for every word in a patent's claims. "Only those terms need to be construed that are in controversy and only to the extent necessary to resolve the controversy." *Vivid Technologies Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). As such,

> [t]he Markman decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court. Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.

*U.S. Surgical v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

While the Court should endeavor to construe each disputed term, some terms may be so vaguely written that they are not amenable to construction. The critical inquiry "focuses

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 18

on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003) (quoting *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371-72 (Fed. Cir. 2001)). If the patent does not properly apprise the public of the scope of a term, that term is not amenable to construction and the claims in which it appears are invalid as indefinite. *Id.*; 35 U.S.C. § 112.

In determining the meaning of a claim term, the primary focus is on the intrinsic record, which consists of the claims themselves, the patent specification, and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*). Understanding the specification of a patent is critical to interpreting its claims, as "it is the single best guide to the meaning of a disputed term," *Philips*, 415 F.3d at 1317. The Federal Circuit instructs that it is entirely appropriate for courts to "rely heavily on the written description for guidance as to the meaning of claims." *Philips*, 415 F.3d at 1317.

Claim construction, however, "begins and ends in all cases with the actual words of the claim." *Teleflex Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Philips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY
MDX 0100431

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 19

Claim terms must be "given their ordinary and customary meaning" to those of ordinary skill in the field at the time of the invention. *Philips*, 415 F.3d at 1312 (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). There is a "heavy presumption" in favor of plain and ordinary meaning. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). And "[i]n some cases, it is possible to construe a claim term by simply applying 'the widely accepted meaning of commonly understood words.'" *Network Commerce, Inc. v. Microsoft Corporation*, 422 F.3d 1353, 1359 (Fed. Cir. 2005).

Further, the presumption in favor of ordinary meaning will be rebutted if the inventor has clearly disavowed or disclaimed scope of coverage by using words or expressions of manifest exclusion or restriction in the specification or prosecution history. *Tex. Digital*, 308 F.3d at 1204; *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002).

Features not actually recited in a claim should not be read into the claim, because "if we once begin to include elements not mentioned in the claim in order to limit such claim … we should never know where to stop." *McCarty v. Lehigh Valley R. Co.*, 160 U.S. 110, 116 (1895); *see also SciMed Life Systems v. Advanced Cardiovascular Systems*, 242 F.3d 1337, 1340 (Fed. Cir. 2001) (reading a limitation into the claims from the specification is "one of the

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY
MDX 0100432

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 20

cardinal sins of patent law"); *Johnson Worldwide Assocs.*, 175 F.3d at 989 (modifiers will not be added to broad terms standing alone).[4]

The prosecution history[5] plays an important role in claim construction as it demonstrates how the inventor and the PTO understood the patent. *Philips*, 415 F.3d at 1317. While at times the prosecution history can lack clarity, it is important intrinsic evidence and is relevant to whether and how the inventor limited the invention by narrowing the scope of the claims. *Id.* The Federal Circuit has recognized that a patentee can limit the claimed invention through its arguments during prosecution. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) (*en banc*). In considering whether a patentee limited the claims through arguments made during prosecution, courts consider "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Id.* The test focuses on the language of the patentee's arguments, regardless of whether those arguments were necessary to overcome a prior art reference. *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1359 (Fed. Cir. 2000).

---

4 "Specifications teach. Claims claim." *Superguide Corp. v. DirecTV Enterprises Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 n.14 (Fed. Cir. 1985) (*en banc*).

5 A patent's "prosecution history" consists of the complete record of the patent application process between the applicants and the Patent and Trademark Office, "including any express representations made by the applicant regarding the scope of the claims." *Vitronics*, 90 F.3d at 1582. The relevant prosecution history includes any parent or grandparent applications, as well as related applications. *Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.*, 66 F.3d 285, 291 (Fed. Cir. 1995); *Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990).

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY
MDX 0100433

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 21

Extrinsic evidence may also be consulted to understand the underlying technology, but only to the extent that it is consistent with the intrinsic evidence. *Phillips*, 415 F.3d at 1318-19. Extrinsic evidence at odds with the intrinsic record should be discounted. *Id.; see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996). A recognized problem with relying on extrinsic evidence, such as dictionary definitions, "is that it focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Phillips*, 415 F.3d at 1321.

During litigation, extrinsic evidence in the form of expert declarations may be useful, for example as an aid to the court in understanding the technology at issue. *Philips*, 415 F.3d at 1318. However, "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court" and "a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'" *Philips*, 415 F.3d at 1318; *Kara Tech Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("extrinsic sources like expert testimony cannot overcome more persuasive intrinsic evidence."); *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1347 (Fed. Cir. 2009) (district court erroneously relied on expert testimony and a dictionary definition to the exclusion of the intrinsic evidence of the specification language).

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100434

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 22

Thus, extrinsic evidence may be useful but is in general less reliable than the patent and prosecution history. The focus of claim construction must remain on the language of the claims interpreted in light of the intrinsic record, and any extrinsic evidence must be considered in the context of the intrinsic evidence. *Philips*, 415 F.3d at 1319.

When determining the scope of the claims under the doctrine of equivalents, "an invention representing only a modest advance over the prior art is given a more restricted (narrower range) application of the doctrine." *Thomas & Bells v. Litton Systems*, 720 F.2d 1572, 1580 (Fed. Cir. 1983). When an issued patent in a crowded art represents an improvement over the prior art, "the claims should be given a range of equivalents narrow enough to distinguish over the prior art, and, thus, to avoid invalidity." *Id*. However, "where validity in view of the prior art has not been challenged, the court is less free to limit the application of the doctrine of equivalents than where invalidity is specifically urged by the alleged infringer." *Id*.

### b. Literal Infringement

The patent statute sets for the test for direct infringement of a patent:

> (a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a).

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100435

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 23

Literal infringement is found where an accused device falls within the scope of

the asserted claims as properly interpreted. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54

F.3d 1570, 1575 (Fed. Cir. 1995). For literal infringement, each limitation in the asserted claim

must be found present in the accused device. *General Mills, Inc. v. Hunt Wesson, Inc.*, 103 F.3d

978, 981 (Fed. Cir. 1997).

### c. Infringement under the Doctrine of Equivalents

A full assessment of infringement does not end with an analysis of literal

infringement. Infringement may also be found under the doctrine of equivalents. The doctrine

of equivalents requires asking whether the accused product contains elements identical or

equivalent to each claimed element of the patented invention. *Warner-Jenkinson Co. v. Hilton

Davis Chem. Co.*, 520 U.S. 17, 29, 40 (1997). Each element combined in a patent claim is

deemed material to defining the scope of the patented invention, and thus "the doctrine must be

applied to individual elements of the claim, not to the invention as a whole." *Id.*

Whether an element is equivalent depends on whether the substitute element

matches the function, way and result of the claimed element or whether the substitute element

plays a role substantially different from the claimed element. *Id.*; *Graver Tank & Mfg. Co. v.

Linde Air Products Co.*, 339 U.S. 605, 608 (1950) (equivalence can be determined if each of the

claimed elements perform substantially the same function in substantially the same way to

achieve substantially the same result).

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100436

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 24

Actions taken during the patent prosecution may give rise to "prosecution history estoppel." *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1376-77 (Fed. Cir. 1999). "Prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has been relinquished during the prosecution of its patent application." *Id.* at 1376.

The Supreme Court has addressed the relation between the doctrine of equivalents and the role of prosecution history estoppel. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002). The Court explained the purpose of prosecution history estoppel:

> Prosecution history estoppel ensures that the doctrine of equivalents remains tied to its underlying purpose. Where the original application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity, the patentee cannot assert that he lacked the words to describe the subject matter in question. The doctrine of equivalents is premised on language's inability to capture the essence of innovation, but a prior application describing the precise element at issue undercuts that premise. In that instance the prosecution history has established that the inventor turned his attention to the subject matter in question, knew the words for both the broader and narrower claim, and affirmatively chose the latter.

*Id.* at 734-35.

A narrowing amendment made to satisfy any requirement of the Patent Act may give rise to prosecution history estoppel. *Id.* at 735. Thus, "[a] patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with §112." *Id.* at 736. There is a

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100437

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 25

presumption that prosecution history estoppel bars a finding of equivalence for all claim territory between the original claim limitation and the amended claim limitation. *Id.* at 740. The patentee bears the burden of showing that an amendment does not surrender the particular equivalent in question. *Id.* As the Court explained in Festo, "[t]he patentee must show that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent." *Id.* at 741.

Moreover, the Supreme Court sets forth three ways in which a patentee may rebut the presumption of prosecution history estoppel by a showing that (1) an alleged "equivalent [would] have been unforeseeable at the time of the amendment" and thus beyond a fair interpretation of what was surrendered; (2) the "rationale underlying the amendment [bore] no more than a tangential relation to the equivalent in question" or (3) " there [was] some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Id.* at 740-741.

If the patentee fails to rebut the *Festo* presumption, then prosecution history estoppel bars the patentee from relying on the doctrine of equivalents for the accused element. If the patentee successfully rebuts the presumption, then prosecution history estoppel does not apply and the question whether the accused element is in fact equivalent to the limitation at issue is reached on the merits.

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY
MDX 0100438

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 26

Prosecution history estoppel also applies to conduct in addition to the claim amendments such as: statements contained in a disclosure document placed in the PTO file as well as representations made during the prosecution of the parent application, remarks made during prosecution of a claim not in suit as well as statements made after the examiner indicated the claims in suit were allowable; and arguments submitted to obtain the patent. *Haynes International Inc.*, 8 F.3d 1573 (Fed. Cir. 1993).

An additional limit on the doctrine of equivalents arises where material is disclosed in a patent's specification but not claimed in the patent claims. As such, "when a patent drafter discloses but declines to claim subject matter this action dedicates that unclaimed subject matter to the public. Moreover, a patentee cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and then, after patent issuance, use the doctrine of equivalents to establish infringement because the specification discloses equivalents." *Johnson & Johnston Assocs. v. R.E. Service Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (*en banc*).

### 4. THE '060 CLAIMS

Applying the foregoing legal tenets of claim interpretation to the claims of the '060 Patent, we believe, as a threshold consideration, that the words as recited in the claims are free of ambiguity. Plain meaning will prevail. We consider the plain meaning of independent Claim 1 of the '060 Patent. Our analysis of Claim 1 also applies to Claim 15, because the language corresponds in all meaningful respects.

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100439

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 27

### a.  THE WORDS OF THE CLAIMS

Turning to the body of claim 1 of the '060 Patent (*supra*), we observe that it is particularly characterized by the recitation of 5 major elements:

1.  receiving ... a request for information ...

2.  accessing healthcare provider-verified information about the first healthcare provider, ...[3 or more from enumerated list]

3.  compiling ... patient-provided information regarding the first healthcare provider, ... [patient ratings received from on-line patient survey]

4.  compiling information regarding the first healthcare provider verified by an independent third-party source, ... [three or more from enumerated list]

5.  creating ... a healthcare provider report on the first healthcare provider ... [using the healthcare provider-verified information, the patient-provided information, and the third-party verified information, and including comparison ratings]

6.  providing access to the healthcare provider report ...

Based upon our review of the plain language of claims 1 and 15, the supporting specification including the drawings and the prosecution history, it is our conclusion that:

1.  with regard to element 1 above, independent claim 1 requires that a company that connects healthcare providers with potential patients[6] receive a request for information regarding a healthcare provider on its Web server;

---

[6] In an effort to avoid confusion, we prefer to use common terminology used in the art to describe the characteristics.

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100440

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 28

    2.  with regard to element 2 above, independent claim 1 requires accessing healthcare provider-verified information about the healthcare provider received from the healthcare provider including at least three of:

> specialty information
> medical philosophy
> gender
> age
> years in profession
> years in practice
> awards
> honors
> professional appointments
> professional memberships
> publications
> languages
> hobbies

    3.  with regard to element 3 above, independent claim 1 requires compiling patient-provided information including patient ratings (see below) from one or more patients of the healthcare provider, received from an on-line patient experience survey completed on a website of the company that connects healthcare providers with potential patients

    4.  with regard to element 4 above, independent claim 1 requires compiling independent third-party source verified information regarding the healthcare provider including at least three of:

> board certification
> licensure
> disciplinary action information
> medical school
> medical internship
> medical residency
> medical fellowship information

    5.  with regard to element 5 above, independent claim 1 requires the creation of a healthcare provider report using

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100441

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Mitchel Rothschild
January 25, 2011
Page 29

the healthcare provider-verified information
the patient-provided information
and the information verified by the independent third-party source
wherein the report includes comparison ratings (see below) of healthcare
providers

6. with regard to element 6 above, independent claim 1 requires providing access
to the healthcare provider report over the company's Web site.

The '060 Specification provides some further explanation of "patient ratings" in element

3. The '060 Specification states that the patient ratings may include national averages based on

predetermined questions conducted through surveys in which the patient is asked to rate the

physician's office and staff. Exemplar questions include:

"Ease of scheduling urgent appointments"
"Office Environment"
"Friendliness and courtesy of office staff"
"Once you arrive for a scheduled appointment, how long do you have to wait (including
waiting room and exam room) before you see this physician?
"Do you feel the physician spends an appropriate amount of time with you?"
"Does the physician listen to you and answer your questions?"
"Does the physician help you understand your medical condition(s)?"
"Do you trust your physician to make decisions/recommendations that are in your best
interests?"
"Would you recommend your physician to family/friends?"
"How many visits have you had with this physician within the last two years?"
(col. 8:20-35, col. 9:1-25, Figures 3, 4)

As such, the patient experience survey may include questions such as those listed above.

These are nonlimiting example questions – other survey questions may also be encompassed by

the claim language.

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

1847639 v1

MDX 0100442

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 30

"comparison ratings of healthcare providers" in element 6 also has a plain meaning, i.e.

comparing information that is part of the healthcare provider report to other healthcare providers.

This could include the averages of patient ratings received from the patient experience survey.

(col. 8:63-65). It may also include comparisons among other information included in the

healthcare provider report (the healthcare provider-verified information, the patient-provided

information, and the information verified by the independent third-party source).

## 5. NON-INFRINGEMENT ANALYSIS

We have critically reviewed independent claims 1 and 15 to determine whether

the vitals.com services infringe claims 1 and 15 either literally or under the Doctrine of

Equivalents.

Based on our investigation, and as you have described the processes used to implement

the vitals.com services to us, we understand that vitals.com does not create and provide access to

a healthcare provider report that includes third-party verified licensure, medical internship,

medical residency, and medical fellowship information. We also understand that when

vitals.com creates and provides access to a healthcare report that includes third-party verified

disciplinary action information, the report does not include patient-provided information

including patient ratings from one or more past or current patients received from an on-line

patient experience survey completed on a vitals.com website. (Together, "Difference No. 1").

As such, vitals.com does not meet each limitation of claims 1 and 15. It is therefore our opinion

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 31

that a well-informed court or properly-instructed jury would find that vitals.com does not

literally infringe claims 1 or 15 of the '060 Patent. Since claims 2-14 depend directly from claim

1, and claims 16-17 depend directly from claim 15, we believe that a well-informed court or

properly-instructed jury would find that claims 2-14 and 16-17 are likewise not literally

infringed. *Wahpeton Canvas Co, v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is

axiomatic that dependent claims cannot be found infringed unless the claims from which they

depend have been found to have been infringed").

      As a separate and independent basis for no literal infringement, we also

understand that vitals.com does not provide comparison ratings of healthcare providers

("Difference No. 2"). As such, there is another limitation of claims 1 and 15 that vitals.com does

not meet. It is our opinion that a well-informed court or properly-instructed jury would find,

based on Difference No. 2 that vitals.com would not literally infringe claims 1 and 15 of the '060

Patent, and that dependent claims 2-14 and 16-17 also are not literally infringed.

      It is our opinion that a well-informed court or properly-instructed jury would find

no literal infringement based on Difference No. 1 and/or Difference No. 2 - i.e. each is

independently sufficient.

      As stated above, even in the absence of literal infringement there can be

infringement under the doctrine of equivalents. It is our opinion that a well-informed court or

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

1847639 v1

MDX 0100444

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 32

properly-instructed jury would find vitals.com to not infringe under the doctrine of equivalents

for two independent reasons:

(1) Prosecution history estoppel: As discussed above, there can be no doctrine of

equivalents infringement as to elements that were added to a claim during patent prosecution in

order to distinguish the claim from prior art. *Festo Corp.*, 535 U.S. at 736; *supra*. During

prosecution the '060 Patent applicants added previously non-existent claim limitations to both

claims 1 and 15. These included third-party verified information regarding licensure, medical

internship, medical residency, and medical fellowship information and patient-provided

information including patient ratings (Supp. Amend. April 26, 2010) and "comparison ratings."

(Amend. and Resp., Feb. 16, 2010). The applicants distinguished prior art in part because it

lacked these features (Supp. Amend. p. 9-10; Amend. and Resp. p. 11). Of these, in his Notice

of Allowance the Examiner specifically cited the third-party source verified licensure, medical

internship, medical residency, and medical fellowship information as not taught in the prior art,

among other missing elements. (Notice of Allowance p. 4).

It is our opinion that these amendments will result in a presumption of

prosecution history estoppel, barring claims of equivalence between the original claims (which

lacked these elements entirely) and the amended claims. As discussed above, there are three

means through which a patentee may overcome the presumption of prosecution history estoppel.

In our opinion, a well-informed court or properly instructed jury would find that the '060 Patent

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100445

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 33

patentee cannot rebut the presumption because 1) the alleged equivalent (the absence of third-party verified licensure, medical internship, medical residency, and medical fellowship information, and comparison ratings) precisely describes the original application claims and hence their absence was entirely foreseeable; 2) the rationale for the adding these limitations was to avoid prior art and hence was nontangential; and 3) we do not envision any other reason through which patentee could overcome the presumption.

As such it is our opinion that a well-informed court or properly-instructed jury would find that the vitals.com services cannot infringe claims 1 or 15 under the doctrine of equivalents.  Dependent claims 2-14 and 16-17 also cannot be infringed because they are dependent on noninfringed claims 1 and 15.

(2) Separately, even if prosecution history estoppel does not bar a claim of doctrine of equivalents infringement, the doctrine of equivalents is applied on an element-by-element basis and cannot apply where there is no proposed equivalent for every element of a patented process in the accused apparatus or process.  *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8, 40 (1997).  Hence where the accused apparatus or process does not contain identical or equivalent elements for each claimed element, equivalence cannot exist.  *See Id.; Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005)

The vitals.com services entirely lack three or more items of third-party source verified information except when there exists disciplinary action information, in which case the

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

MDX 0100446

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 34

vitals.com services omit patient ratings.  Additionally, the vitals.com services entirely lack

comparison ratings.  The vitals.com services include no features that could be claimed equivalent

to these limitations (e.g. there is no feature that could be argued equivalent to third-party verified

licensure, medical internship, medical residency, or medical fellowship information, or

comparison ratings) and hence the vitals.com services cannot be found to perform substantially

the same function, in substantially the same way, to achieve substantially the same result, as

providing this information.  As such, it is our opinion that a well-informed court or properly-

instructed jury would find no doctrine of equivalents infringement because the vitals.com

services entirely lack these claim elements.

## B.  CONCLUSION

It is our opinion based upon our analysis of the '060 Patent including the

specification, claims, related file history and relevant prior art, that reasonable grounds support

the conclusion that the commercial activity being conducted by Vitals as described to us, with

respect to manufacture, use, sale and offer for sale of the vitals.com services avoids infringement

of the claims of U.S. Patent No. 7,752,060 to Hicks et al.

Therefore, it is our conclusion that management may reasonably and justifiably

rely on such determination in the manufacture, use and sale of the vitals.com services.

Subject to the reservations discussed above and based upon the foregoing analysis

and solely on the foregoing references, it is our conclusion that management may continue with

HIGHLY CONFIDENTIAL / ATTORNEY'S EYES ONLY

1847639 v1

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Mitchel Rothschild
January 25, 2011
Page 35

its commercial activity as described to us with respect to manufacture, use, sale, and offer for sale of the vitals.com services without infringing upon the patent discussed herein.

This opinion is for the sole use of the addressee, and no other entity. It may not be used or relied upon by any entity for purposes of investment decisions. Sills Cummis & Gross PC undertakes no responsibility to any third party for any reason.

If there occurs any changes to the commercial activity described, an updated opinion may be necessary.

If you have any questions regarding this opinion, please do not hesitate to contact us.

Respectfully submitted,

Philip Braginsky

1847639 v1

MDX 0100448