**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

     Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

     Defendant.

---

**MDX MEDICAL, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS AND
REQUEST FOR CERTIFICATION PURSUANT TO FEDERAL RULE 54(b)**

---

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II.  THE PERTINENT LAW ...................................................................................... 2

III.  MDX IS THE PREVAILING PARTY ................................................................ 3

IV.  THE FIRST INFRINGEMENT POSITIONS ON "COMPARISON RATINGS": (1) "MATCH SCORE"; (2) SINGLE PROVIDER RATINGS; AND (3) AWARDS ............................................................................................................... 4

    A.  Health Grades Was Stumped For Weeks .............................................. 4

    B.  Health Grades Contrived Frivolous Infringement Arguments .............. 4

V.  DEFIANCE OF THE CLAIM CONSTRUCTION ORDER ............................. 6

    A.  Health Grades' Failed Markman Arguments ......................................... 6

    B.  Health Grades Refused To Accept The Claim Constructions ............... 6

VI.  INCONSISTENT ARGUMENTS ...................................................................... 10

    A.  Reports Without Multiple Provider Ratings ....................................... 11

        1.  Infringement:  Reports Without Multiple Ratings Can Infringe ............. 11

        2.  Validity:  Reports Without Multiple Ratings Cannot Infringe ............... 13

    B.  Awards ................................................................................................ 14

        1.  Infringement: Awards Are Comparison Ratings ..................................... 14

        2.  Invalidity:  Awards Are NOT Comparison Ratings ............................... 15

    C.  Health Grades Took Multiple, Diametrically Opposed Positions ....................... 15

VII.  ITRIAGE AND AETNA ................................................................................... 16

VIII.  THE FEES AND COSTS ................................................................................... 17

IX.  THE COURT SHOULD CERTIFY THIS DECISION ................................... 17

X.  CONCLUSION ................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

FEDERAL CASES

*BIAX Corp. v. NVIDIA Corp.*,
  2013 U.S. Dist. LEXIS 46715 (D. Col. March 30, 2013) (Brimmer, J.) ..............................3, 9

*Classen Immunotherapies, Inc. v. Biogen Idec*,
  2014 U.S. Dist. LEXIS 67169 (D. Md. May 14, 2014) ........................................................10

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
  446 U.S. 1, 100 S.Ct. 1460 (1980) .....................................................................................18

*Eltech Sys. Corp. v. PPG Indus., Inc.*,
  903 F.2d 805 (Fed. Cir. 1990) ............................................................................................10

*Encomp. Inc. v. L-com, Inc.*,
  999 F. Supp. 264 (D. Conn. 1998) .................................................................................. 8fn. 1

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  535 U.S. 722, 122 S. Ct. 1831, 152 L. Ed. 2d 944 (2002) ........................................ 3, 8fn. 1, 9

*Gilda Marx, Inc. v. Wildwood Exercise*,
  85 F.3d 675 (D.C. Cir. 1996) ..............................................................................................19

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
  339 U.S. 605, 94 L. Ed. 1097, 70 S. Ct. 854 (1950) ..............................................................8

*Home Gambling Network, Inc. et. al. v. Piche, et. al.*,
  2014 U.S. Dist. LEXIS 71071 (D. Nev. May 21, 2014) ...................................................... 8fn. 1

*Inland Steel Co. v. LTV Steel Co.*,
  364 F.3d 1318 (Fed. Cir. 2004) ............................................................................................3

*Kilopass Tech., Inc. v. Sidense Corp.*,
  2014 U.S. Dist. LEXIS 112321 (N.D. Cal. Aug. 12, 2014) ................................. 5, 8, 8fn. 1, 16

*Lewmar Marine, Inc. v. Barient, Inc.*,
  827 F.2d 744 (Fed. Cir. 1987) ............................................................................................10

*Luma Corp. v. Stryker Corp.*,
  2007 U.S. Dist. LEXIS 2316 (S.D. W. Va. Jan. 10, 2007).......................................................19

*Lumen View Tech. LLC v. Findthebest.com Inc.*,
  2014 U.S. Dist. LEXIS 150444 (S.D.N.Y. Oct. 23, 2014) ........................................................3

*MarcTec, LLC v. Johnson & Johnson, et. al.*,
  2010 U.S. Dist. LEXIS 15789 (S.D. Ill. Feb. 23, 2010) .........................................................10

*Nordek Corp. v. Garbe Iron Works, Inc.*,
  1983 U.S. Dist. LEXIS 17451 (N.D. Ill. Apr. 25, 1983) ........................................................10

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
  134 S.Ct. 1749 (2014).................................................................................................................2

*Pragmatus v. Telecom LLC v. Newegg Inc.*,
  2014 U.S. Dist. LEXIS 101402 (D. Del. July 25, 2014) .........................................................3

*Raylon v. Complus Data Innovations, Inc., et. al.*,
  700 F.3d 1361 (Fed. Cir. 2012) (Reyna, J., concurring)..........................................................5

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
  859 F.2d 878 (Fed. Cir. 1988)..................................................................................................10

*Takeda Chem. Indus. v. Mylan Labs.*,
  549 F.3d 1381 (Fed. Cir. 2008)..................................................................................................3

*Taurus IP, LLC v. DaimlerChyrsler Corp.*,
  726 F.3d 1306 (Fed. Cir. 2013)..................................................................................................9

*W.L. Gore & Assoc., Inc. v. Int'l Med. Prosthetics Research Assoc., Inc.*,
  975 F.2d 858 (Fed. Cir. 1992)..................................................................................................18

*Yufa v. TSI, Inc.*,
  2014 U.S. Dist. LEXIS 113148 (N.D. Cal. Aug. 14, 2014).....................................................3

FEDERAL STATUTES

35 U.S.C. § 285................................................................................................................... passim

**R**ULES

**FEDERAL RULE 54(b)** ............................................................................1, 17, 18, 21

Rule 11 ...................................................................................................................16

Rule 58(e)................................................................................................................18

**O**THER **A**UTHORITIES

15B Charles Allen Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and
    Procedure § 3915.6 (2d ed. & Supp. 2011)..............................................................19

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

      Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

      Defendant.

---

**MDX MEDICAL, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS AND
REQUEST FOR CERTIFICATION PURSUANT TO FEDERAL RULE 54(b)**

---

Defendant and Counterclaim Plaintiff MDx Medical, Inc. ("MDx"), by its undersigned counsel, hereby moves for an order awarding MDx attorneys' fees and non-taxable costs pursuant to 35 U.S.C. § 285, and to certify the Court's decision pursuant to Federal Rule 54(b). In compliance with *D.C.COLO.L.CivR* 7.1(a), the Parties conferred on November 24 and 25, 2014, and Health Grades opposes this Motion.

I.      <u>**INTRODUCTION**</u>

This Court has already found that Health Grades made "untenable" infringement allegations against MDx. Indeed, it took Health Grades weeks to conjure up arguments to support its infringement case after learning that MDx had changed its website to move even further from the patent; but despite those efforts, Health Grades was never able to provide a proper basis to allege that the "comparison ratings" claim element was met. Even after Judge Brimmer's clear claim constructions, Health Grades would not back down, repeatedly alleging

- 1 -

that MDx even *__literally__* infringed the "comparison ratings" element by having such features in its provider reports as awards, ratings of only the single provider that was the focus of the report, and indicators of how well a provider met the user's search criteria.  In addition, Health Grades used its groundless indirect infringement allegations to ruin MDx's relationship with an important customer.

For time and expenses through October, including an agreed "success bonus" for MDx counsel of approximately $435,000, MDx has paid (and is continuing to pay) $4,752,442.54 in fees and costs in this case (approximately $690,000 of this is for costs, including experts). Pursuant to 35 U.S.C. § 285, MDx seeks all fees and non-taxable costs that were incurred due to the baseless Health Grades infringement allegations.  Calculation of the amount of fees and costs is deferred until after the Court's ruling on this motion. Dkt. #958.  Subject to the Court's order on this motion and later calculation, MDx presently estimates that it will seek approximately $4.5 million in fees and costs.

## II.    __THE PERTINENT LAW__

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The Supreme Court has recently held that an "exceptional" case within the meaning of this statute is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014).   In determining whether a case is exceptional, district courts should consider the totality of the circumstances.  *Id.*  The Supreme Court in *Octane* not only eased the standard for finding a case exceptional, it also rejected the

- 2 -

prior burden of proof that required that litigants establish entitlement to fees by clear and convincing evidence, replacing it with a preponderance of the evidence burden. *Id.* at 1758.

If a case is found "exceptional" under section 285, the decision to award fees and the amount of the fees awarded is within the discretion of the trial judge. *Takeda Chem. Indus. v. Mylan Labs.*, 549 F.3d 1381, 1393 (Fed. Cir. 2008); *see also*, *e.g.*, *Yufa v. TSI, Inc.*, 2014 U.S. Dist. LEXIS 113148 (N.D. Cal. Aug. 14, 2014) (granting fees for only a portion of the case); *Lumen View Tech. LLC v. Findthebest.com Inc.*, 2014 U.S. Dist. LEXIS 150444 (S.D.N.Y. Oct. 23, 2014) (doubling the fees award).  Costs are also awardable under this statute.  *See, e.g., BIAX Corp. v. NVIDIA Corp.*, 2013 U.S. Dist. LEXIS 46715 (D. Colo. Mar. 30, 2013) (Brimmer, J.) (awarding fees and costs).

## III.   **MDX IS THE PREVAILING PARTY**

Every claim of the '060 patent requires a report on a first healthcare provider that includes comparison ratings.  Exhibit A, col. 20, lines 62-65; col. 22, lines 52-54.  Relying on the Court's *Markman* decision (Dkt. #138), and after conducting a *Festo* hearing, the Court granted summary judgment of no infringement with regard to this claim element, for all configurations except a single month of alleged infringement.  Dkt. ## 696, 913, 931, 934, November 6, 2014 hearing.  Thus, MDx is indisputably the "prevailing party" within the meaning of Section 285. *See, e.g., Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1319-20 (Fed. Cir. 2004) ("we apply the general principle that 'to be a prevailing party, one must 'receive at least some relief on the merits,' which 'alters … the legal relationship of the parties.'"); *Pragmatus v. Telecom LLC v. Newegg Inc.*, 2014 U.S. Dist. LEXIS 101402, *4-5 (D. Del. July 25, 2014) (same).

IV.   **THE FIRST INFRINGEMENT POSITIONS ON "COMPARISON RATINGS":
(1) "MATCH SCORE"; (2) SINGLE PROVIDER RATINGS; AND (3) AWARDS**

   A.   **Health Grades Was Stumped For Weeks**

In 2010 – the year the '060 patent issued – the MDx website had a "compare" feature that would allow the user to select multiple physicians and see a chart comparing them, including their patient ratings. *See, e.g.,* Dkt. #907, Exhibit 1 ("Configuration 1"). In early January of 2011 MDx made a change to distinguish its website even further from the '060 patent. Specifically, the "compare" feature was removed from the website. *Id.*, Exhibit 4 ("Configuration 2").

Apparently Health Grades failed to check the MDx website before filing suit, and was unaware of this change. When MDx's counsel informed Health Grades' counsel about it, Health Grades was clearly challenged as to how to allege infringement, and understandably so. In fact, Health Grades required several weeks of analysis to determine if it would allege infringement, and to come up with any supporting theory. *See, e.g.,* Exhibit B (correspondence from Health Grades counsel twenty days after inquiry by MDx counsel: "You have asked us to confirm [there is no infringement]. Confirming this is not as simple as you state in your email, and we are still undertaking a review of the 'current' website."). As shown below, the infringement positions Health Grades eventually created, after thinking about this problem for several weeks, were baseless and untenable. Health Grades should never have proceeded with the litigation.

   B.   **Health Grades Contrived Frivolous Infringement Arguments**

Health Grades' ultimate infringement arguments for the new website were utterly baseless. Health Grades argued all of the following met the "comparison ratings" language of

- 4 -

the claims in the changed MDx website, as shown in the July, 2011 Infringement Contentions (Exhibit C):

- Match Score:  Exhibits C, page 16 (Health Grades explained that the match score "provides the patient with information regarding how well physicians listed in the results list satisfy the patient's specified criteria…").

- Ratings of only the first healthcare provider:  Exhibit C, pages 17-18.

- Awards:  Exhibit C, pages 18-19.

None of these are even remotely close to the claim language.  Yet, Health Grades even alleged *__literal__* infringement.  Exhibit C at 19 (alleging equivalents "to the extent MDx asserts that any of these three ratings do not literally satisfy the limitation of a healthcare provider report that includes comparison ratings"); Exhibit D at 3 ("Health Grades contends that MDx infringes claims 1, 4-11, and 14-16 of the '060 patent both literally and under the doctrine of equivalents").

These Health Grades infringement contentions were strained and fanciful, and should never have been the basis of an infringement allegation.  *See, e.g., Raylon v. Complus Data Innovations, Inc., et. al*., 700 F.3d 1361, 1374 (Fed. Cir. 2012) ("While reasonable minds can -- and often do – differ..., it is unreasonable minds that go to extraordinary lengths to conjure and advance through various stages of a legal proceeding unsupported arguments ....") (Reyna, J., concurring); *Kilopass Tech., Inc. v. Sidense Corp.,* 2014 U.S. Dist. LEXIS 112321, *32 (N.D. Cal. Aug. 12, 2014) (awarding fees under Section 285:  "the fact that [plaintiff] asserted entirely baseless claims of literal infringement in this action is evidence that it litigated this action in an unreasonable manner.").

## V.   DEFIANCE OF THE CLAIM CONSTRUCTION ORDER

### A.   Health Grades' Failed *Markman* Arguments

In a nervy effort to support its infringement arguments, Health Grades argued in its claim construction briefing that comparison ratings needed to only address a ***single*** provider.  *See, e.g.,* Dkt. # 79, *e.g.,* at 14 (arguing that "comparison ratings relate to a particular provider . . ."), and at 15 ("For example, a '5-star rating' system for all physicians within a database will meet Health Grades proposed definition of comparison ratings, even if each physician report includes a star rating *only* for that particular physician"; emphasis by Health Grades).   And realizing the weaknesses in this argument, Health Grades also pushed for a finding that the claim language "report on the first healthcare provider" could relate to "one or more healthcare providers" – an obvious attempt to capture the provider ratings in results lists.  *Id.* at 10.

Health Grades' arguments were soundly and clearly rejected by Judge Brimmer.  First, Judge Brimmer ruled that "comparison ratings" were "***ratings on multiple healthcare providers***, including the 'first healthcare provider,' in the report on that 'first healthcare provider,' thus permitting comparison of the 'first healthcare provider' with other potential healthcare providers."  Dkt. #138, page 24 (emphasis added).  And Health Grades' attempt to include results lists as part of the provider reports was also unequivocally rejected.  *Id.* at page 12 (agreeing that "the report relates ***only*** to the particular 'first healthcare provider'"; emphasis added).

### B.   Health Grades Refused To Accept The Claim Constructions

After Judge Brimmer's claim construction ruling, Health Grades proceeded as if it won on all these issues.   The same month of the claim construction order, Health Grades doubled

down on its old infringement arguments – even continuing to argue ***literal*** infringement.  Exhibit E, February, 2012 Contentions on "Current" website, pages 31 ("match score"), and 33-34 (awards, and confirming Health Grades is asserting infringement both literally and equivalently); Exhibit F, February, 2012 Contentions on "Previous" website, page 28 (awards, and confirming allegation of literal infringement); *see also* Health Grades' Opposition to the MDx Summary Judgment Motion, Dkt. #201, page 14 ("Dr. James Smith's report includes comparison ratings on Dr. Smith (orange circle), namely a four star rating by his patients…."), page 19 ("MDx makes a similar argument that the overall patient rating is the claimed patient-provided information and thus cannot also be comparison ratings….  The jury should determine ... whether the ratings meet the Court's definition of comparison ratings."); Dkt. #292 and Exhibit G at ¶¶ 172-73, 181 (after *Markman,* incorporating expert opinion that ratings of only the first healthcare provider in a report can literally and equivalently meet the comparison ratings element).

Health Grades also ignored Judge Brimmer's ruling that a report on the first healthcare provider (the claimed location for the comparison ratings) must be a report relating only to the particular first healthcare provider.  Exhibit E, pages 32-33 (using results lists as a provider report).  This was another direct affront to Judge Brimmer's *Markman* decision.  And, in the face of the claim constructions, Health Grades even continued to argue that the results list ratings ***literally*** infringed.  *Id.* at 34*; see also* Dkt. #201, pages 12-17.  In granting MDx summary judgment, this Court recognized the obvious inconsistencies between Judge Brimmer's claim constructions and Health Grades' arguments, finding Health Grades' allegations "untenable" and

to require "contortion" and a "magical" quality.  Dkt. #696, pages 10-15; *cf. Kilopass,* 2014 U.S. Dist. LEXIS 112321, *32 (baseless literal infringement allegations evidence exceptional case).[1]

Health Grades argued various equivalents positions, including that the browser forward and back buttons somehow made the results list part of a report.  These, however, were all equally baseless in view of the claim constructions, as the Court held.  Dkt. #696.  Certainly, if it is "untenable" to contend that an element of the accused product meets certain claim language as this Court determined (Dkt. #696, page 11), it would be incongruous to allege that the element was nevertheless "insubstantially" different from that claim language as is required for infringement by equivalents.  *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 94 L. Ed. 1097, 70 S. Ct. 854 (1950).  And this is particularly true given the insurmountable

---

[1] The reason Health Grades clung to its literal infringement positions, despite the Court's claim constructions, is apparent.  Health Grades knew that during prosecution it added to the claims both the "comparison ratings" element, and the requirement that those ratings are included in the report on the first healthcare provider, and thus it was facing a presumption of estoppel such that there could be no equivalents.  Dkt. #913; *see also  Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S. Ct. 1831, 152 L. Ed. 2d 944 (2002).  The serious estoppel problems were laid out in detail in a summary judgment motion filed the same day that MDx filed its original Answer, on April 19, 2011.  Dkt. #9 (citing *Festo*:  "Health Grades amended the '060 Patent's claims to add the 'comparison ratings of healthcare providers' language, in order to obtain allowance of the '060 Patent. Health Grades is thus presumed to be (and should be) barred from any equivalents that would encompass the scope of the claim before the amendment.").  So, Health Grades knew it could not give up on the literal infringement arguments – even as they became more and more preposterous in view of the Court's claim constructions – because there was no reasonable basis for an equivalents argument.  *See* Dkt. # 913 (confirming *Festo* estoppel); *Home Gambling Network, Inc. et. al. v. Piche, et. al.,* 2014 U.S. Dist. LEXIS 71071, *19-23 (D. Nev. May 21, 2014) (awarding fees where plaintiff "asserted patent coverage that Plaintiffs knew they had surrendered in previous proceedings with the Patent and Trademark Office"); *Kilopass*, 2014 U.S. Dist. LEXIS at *35-37 ("Kilopass never had a legitimate basis for asserting that Sidense infringed the patents-in-suit under the doctrine of equivalents."); *Encomp. Inc. v. L-com, Inc.,* 999 F. Supp. 264, 269-70 (D. Conn. 1998) (awarding fees where defendant repeatedly communicated how the infringement claims were barred as a matter of law).

estoppel issues that Health Grades knew since the very beginning of this case.  Dkt. ## 9, 913. But this "untenable" and "magical" position was a primary infringement argument for Health Grades for the entire litigation.  Indeed, while the Court *sua sponte* identified the "Search All Similar Doctors" link in the accused website as a potential equivalent (Dkt. #696, page 5), that argument was not alleged by Health Grades, and it too was shown to be baseless once the *Festo* estoppel issue was addressed.  Dkt. # 913.

In another case where a party similarly refused to credit his claim constructions, even under the higher pre-*Octane* standards, Judge Brimmer awarded fees under Section 285.  *BIAX,* 2013 U.S. Dist. LEXIS 46715.  In *BIAX*, Judge Brimmer granted summary judgment of no infringement, relying on his claim constructions.  *Id.* at *12 (quoting summary judgment decision:  "BIAX contends that the patents do not require that all processor elements be able to access all condition code registers and condition storage.  The Court, however, has already unambiguously ruled that they do....").  Judge Brimmer awarded fees, relying on the plaintiff's failure to reassess the situation after claim construction.  *Id.* at *18-20 ("Lacking a viable theory of infringement after the Court construed the claims, BIAX did not reevaluate its infringement claims, as it was required to do ... but chose instead to oppose summary judgment by essentially ignoring the Court's previous rulings…. BIAX's persistent disregard of the Court's unambiguous statements in orders evidences its culpability.").

Patent plaintiffs are required to reassess infringement allegations in view of claim constructions.  *See Taurus IP, LLC v. DaimlerChyrsler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction").  This

requirement to continually reassess infringement claims in light of case developments is self-evident, found throughout the case law, and failure to reasonably do so is frequently a basis for fee awards under Section 285. *See, e.g., Eltech Sys. Corp. v. PPG Indus., Inc.,* 903 F.2d 805, 811 (Fed. Cir. 1990) ("Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith ...."); *Classen Immunotherapies, Inc. v. Biogen Idec,* 2014 U.S. Dist. LEXIS 67169, *13 (D. Md. May 14, 2014) ("[a] party has an obligation not to assert baseless infringement claims and 'must continually assess the soundness of pending infringement claims during litigation.'"); *MarcTec, LLC v. Johnson & Johnson, et. al.,* 2010 U.S. Dist. LEXIS 15789, *26 (S.D. Ill. Feb. 23, 2010) ("MarcTec pursued its frivolous action by relying on mischaracterizations of the claim construction adopted by this Court ...."); *Nordek Corp. v. Garbe Iron Works, Inc.*, 1983 U.S. Dist. LEXIS 17451, *13-14 (N.D. Ill. Apr. 25, 1983) ("Plaintiff's failure to change its course as defendants' evidence mounted is clear and convincing evidence of plaintiff's bad faith." "[R]eckless prosecution, in the face of an insurmountable defense, can render a case exceptional for purposes of section 285.").

## VI.   INCONSISTENT ARGUMENTS

For both infringement and validity, the claims must have the same meaning and the same scope – claim terms cannot have one meaning and scope for infringement, and another for invalidity. *See SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988). The infringement and validity issues essentially are mirror images of each other. *See Lewmar Marine, Inc. v. Barient, Inc.,* 827 F.2d 744, 747-48 (Fed. Cir. 1987) ("That which would literally infringe if later in time anticipates if earlier than the date of invention.... [I]nfringement

under the doctrine of equivalents ... is somewhat akin to obviousness.").    Despite this black

letter law, Health Grades' infringement arguments were not only inconsistent with the *Markman*

Order, they were diametrically opposed to its own positions on validity.

### A.        Reports Without Multiple Provider Ratings

#### 1.        Infringement:  Reports Without Multiple Ratings *Can* Infringe

On infringement, Health Grades argued that MDx met the "comparison ratings"

language, both literally and by equivalents, by having in the reports ratings of only the first

healthcare provider.  *See, e.g.,* Exhibit G, paragraph 173, 181 (Health Grades expert:  "I

understand that MDx is arguing the overall patient rating is the claimed patient provided

information and thus cannot also be the comparison ratings.  I disagree.").  In another direct

affront to Judge Brimmer's claim constructions, counsel for Health Grades incorporated this

position into its Infringement Contentions.  Dkt. ## 292, 482.  Health Grades thus successfully

moved the Court (Dkt. #292) as follows:

> Health Grades, Inc. ("Health Grades"), by its undersigned counsel, respectfully moves
> pursuant to Local Patent Rule 3-6 for leave to amend its infringement contentions to  incorporate
> the infringement opinions of its technical expert, Dr. Philip Greenspun, as set forth in the
> Greenspun Report dated July 13, 2012.

The July 13, 2012 Greenspun report, stated the following:

171.    The court has construed "comparison ratings of healthcare providers" as ratings on multiple healthcare providers, including the "first healthcare provider," in the report on that "first healthcare provider," thus permitting comparison of the "first healthcare provider" with other potential healthcare providers.  (Markman Order at p. 24.)

172.    A variety of items on vitals.com (both versions) that qualify as comparison ratings.  Each of these "ratings" applies to individual physicians, therefore to the first healthcare provider and other healthcare providers.

173.    First, there is an "overall patient rating" (1-4 stars) for most physicians. (*See*, e.g., Appendix C.)  By displaying the scale along with every rating, vitals.com ensures that potential patients can see how a doctor compares to an ideal doctor.  Most physicians on vitals.com have an overall star rating.

*** 

181.    I understand that MDx is arguing the overall patient rating is the claimed patient-provided information and thus cannot also be comparison ratings.  I disagree.  It is my opinion that it satisfies the requirements of both claim elements as described in this report.

At his deposition, Health Grades' expert tried to explain these positions, and there took the position that ratings of one provider in a report alone were not sufficient, but they are "comparison ratings" under the Court's construction as long as a user had the ability to see or understand what other doctors may or may not have for ratings.  Exhibit H, *e.g.,* page 152 (Q: "[I]n the report that you click through for Dr. Yakes, if it's only got the patient ratings for Dr. Yakes, is that comparison ratings of healthcare providers?  A: "… if it's fairly straightforward to open that in another window with another doctor, then it could be.").   The frivolity of these positions is evident, but Health Grades would never remove them from its Infringement Contentions.

2.      **Validity:  Reports Without Multiple Ratings *Cannot* Infringe**

Health Grades' position on validity was the antithesis of its infringement position on this claim element.  For example, the prior art Drucker report, Exhibit I, also showed ratings of the first healthcare provider in its report at page 2:



Taking a position directly contrary to its infringement position, Health Grades argued that these ratings could **_not_** be "comparison ratings" under the claim language because there were not ratings of multiple providers in the same report.  This position was taken throughout the litigation by Health Grades, as exemplified in the fact that Health Grades moved for summary judgment of no invalidity based on this very argument.  *See, e.g.*, Dkt. #369 at page 8 ("19. The Drucker Report (Dep. Ex. 13) contains ratings of only one human healthcare provider: Dr. Drucker. (Ex. G at pp. MGHG000017-18.)  20. The Drucker Report (Dep. Ex. 13) does not include "comparison ratings of healthcare providers" as defined by the Court. (Ex. G.)); page 9 (same for deposition Exhibit 51); page 22 ("MDx does not explain how Health Grades' references met this claim element as construed by this Court. MDx ... definitely does not cite a

single reference that has both ratings of a first healthcare provider and ratings of other healthcare providers in a report"); Dkt. #442, page 10 ("It is undisputed that the Drucker Report, shown in HG Ex. G (Dkt. 369-12) and HG Ex. I (Dkt. 369-14) has patient ratings of one physician, Dr. Drucker"); page 31 ("Drucker Report (Dep. Ex. 13); HG Ex. G:  Multiple Ratings of Human Healthcare Providers?  NO"; emphasis by Health Grades).

      **B.**    **<u>Awards</u>**

          **1.**    **<u>Infringement: Awards *Are* Comparison Ratings</u>**

On infringement, Health Grades argued that awards were "comparison ratings" meeting the claim language.   For example, in the July, 2012 expert report of Dr. Greenspun (post-*Markman*), various awards were emphasized as meeting the "comparison ratings" element:

> 174. An additional "comparison rating" for a doctor is whether or not the doctor has been selected for certain awards. (See Deposition of Larry West (Rough Draft) at 145:24-148:20.) For example, one "comparison rating" is the "Patients' Choice Award", which is based on vitals.com patient surveys (source: http://www.patientschoice.org/whatispca). (See Appendix C.)

> 175. A similar, but separate, "comparison rating" is presented to show whether or not the doctor has been selected for an "America's Top Doctors" award, administered by http://www.castleconnolly.com/, one of Vitals.com's listed database vendors. (See Appendix C.)

> 176. Another similar "comparison rating" is whether or not a doctor is listed as "one of America's Leading Experts" (see http://www.vitals.com/doctors/Dr_Robert_Mcduffie for example). (See Appendix C.)

After the *Markman* Order, Health Grades successfully moved to incorporate these into its Infringement Contentions too, and they have been there ever since.  Dkt. ## 292, 482.

2.        **Invalidity:  Awards Are *NOT* Comparison Ratings**

Health Grades' invalidity position on awards was the reverse of its infringement position on awards.  The Drucker prior art (Exhibit I), for example, plainly teaches the disclosure of awards and honors in a provider report:

**Awards and Honors:**
   2001-2002 UMDNJ Orthopaedic Chief Residents Award for Excellence in Teaching
   1991 Mueller Foundation Research Fellow

Despite the awards and honors in the Drucker report, Health Grades insisted that Drucker did not teach comparison ratings because it lacked ratings of multiple providers in one report. *See, e.g.,* Dkt. #369 at page 8 ("The Drucker Report (Dep. Ex. 13) does not include "comparison ratings of healthcare providers" as defined by the Court. (Ex. G.)); page 9 (same for deposition Exhibit 51); page 22 ("MDx does not explain how Health Grades' references met this claim element as construed by this Court. MDx ... definitely does not cite a single reference that has both ratings of a first healthcare provider and ratings of other healthcare providers in a report"); Dkt. #442, page 31 ("Drucker Report (Dep. Ex. 13); HG Ex. G:  Multiple Ratings of Human Healthcare Providers?  NO"; emphasis by Health Grades).

C.        **Health Grades Took Multiple, Diametrically Opposed Positions**

The Health Grades positions on infringement were not only frivolous in view of the Court's claim constructions, they were also inconsistent with the positions that Health Grades took on validity throughout this case, including in its summary judgment briefing.  Accordingly, this is further evidence of an exceptional case.  Indeed, unlike a situation where a party takes

contrary positions in different forums, Health Grades had the gall to take these contrary positions in the same court and in the same case.  *Cf. Kilopass*¸ 2014 U.S. Dist. LEXIS at \*33-35 (awarding fees:  plaintiff took a position before the Patent Office that was "irreconcilable with [a] position it took before this Court during claim construction ....   Kilopass's attempt to argue one thing before this Court, then argue a different thing to the BPAI ... amounts to 'gamesmanship' [which is] also evidence showing that it litigated this action in an unreasonable manner.").

## VII.    ITRIAGE AND AETNA

Health Grades made baseless indirect infringement allegations about Aetna and iTriage, which were rejected by this Court on summary judgment.  Dkt. #931.  The allegations never had any reasonable basis.  For example, Health Grades alleged that data on healthcare providers had no substantial use other than in connection with the patented methods – a patently frivolous allegation.  *See* Dkt. #564, pages 5-9 (deferred motion for Rule 11 sanctions, showing how both parties used the data in non-infringing ways, as did the prior art, etc.); Dkt. #931, page 12 ("upon review of the evidence submitted by Health Grades alone, the Court concludes that there are indeed substantial non-infringing uses of the data.").  The Health Grades inducement allegation was also baseless, as Health Grades never had any evidence of intent to induce infringement. Indeed, the alleged direct infringer was iTriage, and Health Grades could not even cite a single communication between MDx and iTriage.  Dkt. #564, pages 9-10; Dkt. #931, pages 7-11.

Health Grades used these baseless indirect infringement claims to interfere with the MDx customer relationship.  Counsel for Health Grades contacted iTriage counsel, and served three abusive subpoenas, including a personal subpoena to the CEO of iTriage.  Exhibits J, K, L.  The

subpoenas were grossly overbroad.  For example, both the document request subpoena and the deposition subpoena to iTriage's CEO demanded "all documents ... relating to any investigations or analyses relating to whether the iTriage application, and/or any information used or displayed via the application, infringe ***any*** patents" and "relating to ***any*** consideration, plan or attempt by iTriage to design or alter the iTriage application to avoid infringement or potential infringement of ***any*** patent."  Exhibits J and K (emphases added).

Ultimately, this Court fully granted the MDx motion for summary judgment.  Dkt. #931. But the damage was done.  In the midst of these baseless Health Grades allegations, in June of 2013, Aetna stopped all business dealings with MDx.  Exhibit K.

**VIII.  <u>THE FEES AND COSTS</u>**

This case should never have been brought, as there was never a basis for any allegation that the "comparison ratings" claim element was met for any of Configurations 1, 2, 3, and 5. MDx will remove from its requested fees those associated with the one month of Configuration 4, those associated with the Sanctions against MDx (*e.g.,* Dkt. ## 367, 711, 784, 934), and any other portions instructed by the Court.  MDx estimates that the recoverable fees and costs will be about $4.5 million, and MDx will submit support for the amount of fees after the Court's decision on this motion.  Dkt. #958.

**IX.  <u>THE COURT SHOULD CERTIFY THIS DECISION</u>**

In the interest of judicial efficiency, in particular, to avoid piecemeal appeals of the Amended Judgment and the Order on this motion, the Court should certify its Order on this motion as final pursuant to Rule 54(b).  Health Grades' counsel has indicated its intention to

appeal the Amended Judgment entered on November 21, 2014. Dkt. 953.  It is further anticipated that the losing party on this motion will appeal the Court's decision.  As addressed in MDx's Rule 58(e) motion, the issues on the appeal of the Amended Judgment and the Order on this motion substantially overlap.  Dkt. 959.  As such, it would promote efficient management of the appeals and the use of judicial resources, not to mention conserving the parties' resources, for the appeals to proceed together.

"Rule 54(b) allows a district court to sever an individual claim that has been finally resolved" and "acknowledges the policy that in multiple claim actions some final decisions, on less than all of the claims, should be appealable without waiting for a final decision on *all* of the claims." *W.L. Gore & Assoc., Inc. v. Int'l Med. Prosthetics Research Assoc., Inc.*, 975 F.2d 858, 861 (Fed. Cir. 1992) (emphasis in original) (internal quotations omitted).  Certification is proper where there is:  (1) a final judgment with respect to one or more but fewer than all claims; and (2) the district court determines that there is no just reason for delay of entry.  *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 3, 100 S.Ct. 1460, 1462 (1980); *W.L. Gore*, 975 F.2d at 861.

When determining whether there is no just reason for delay, district courts consider:  the "judicial administrative interests" weighing against "piecemeal appeals"; and "the equities involved." *Curtiss-Wright Corp.*, 446 U.S. at 8; *see also W.L. Gore*, 975 F.2d at 862.  Certifying the Court's decision on MDx's fee application to allow for the filing of a single appeal together with the appeal of the Amended Judgment advances judicial administrative interests and avoids piecemeal appeals.  If the Order on the present motion is not certified as final pursuant to Rule 54(b), there is a substantial likelihood that the Federal Circuit will have to address the issues raised in the appeal of the Amended Judgment a second time.  *Curtiss-Wright Corp.*, 446 U.S. at

- 18 -

8 (holding when evaluating the first factor, the court should consider whether an "appellate court would have to decide the same issues more than once ... if there were subsequent appeals"); *see also Gilda Marx, Inc. v. Wildwood Exercise*, 85 F.3d 675, 680 fn. 5 (D.C. Cir. 1996) ("Obviously, from the appellate court's perspective, it would be desirable if the merits appeal and the appeal from the final order on fees could be decided together.  Indeed, this appears to be the import of the 1993 amendments to the civil and appellate rules."); *see also Luma Corp. v. Stryker Corp.*, 2007 U.S. Dist. LEXIS 2316, *13 (S.D. W. Va. Jan. 10, 2007) (the rules of civil and appellate procedure "reflect the intention that 'district courts should act to facilitate a single appeal that covers both disposition on the merits and disposition of attorney fees.'" (*quoting* 15B Charles Allen Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3915.6 (2d ed. & Supp. 2011)).

## X.  **CONCLUSION**

For all the foregoing reasons, MDx respectfully requests that the Court find the case exceptional pursuant to 35 U.S.C. § 285 and that fees should be awarded, set briefing on the proper amount of fees and costs to be awarded, and certify the Court's fees award for appeal.


Dated:  December 4, 2014                          Respectfully submitted,


*s:/Scott D. Stimpson*
Scott D. Stimpson                                 Terence Ridley, Atty. No. 15212
Trent S. Dickey                                   Wheeler Trigg O'Donnell LLP
David C. Lee                                      370 Seventeenth Street, Suite 4500
Sills Cummis & Gross P.C.                         Denver, Colorado 80202
30 Rockefeller Plaza                              Tel:  (303) 244-1800
New York, New York 10112                          Fax:   (303) 244-1879
Tel: (212) 643-7000                               E-mail: ridley@wtotrial.com
Fax: (212) 643-6500

E-mail: sstimpson@sillscummis.com                     *Attorneys for Defendant*
E-mail: tdickey@sillscummis.com                       MDx Medical, Inc. d/b/a VITALS.COM
E-mail: dlee@sillscummis.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2014, I electronically filed the foregoing **MDX MEDICAL, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS AND REQUEST FOR CERTIFICATION PURSUANT TO RULE 54(b)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Tamara F. Goodlette**
  tgoodlette@lrrlaw.com

- **Kirstin L. Stoll-DeBell**
  kstoll-debell@merchantgould.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

*s:/David C. Lee*