# Exhibit G

# Expert Report of Philip Greenspun

## Regarding infringement of U.S. Patent No. 7,752,060 by MDX Medical

This report is submitted pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.

### I.   Introduction

1. My name is Philip Greenspun. I received a PhD in Electrical Engineering and Computer Science from the Massachusetts Institute of Technology in 1999 and have been teaching software engineering for Internet applications and database programming there periodically since receiving my degree. My business address is 5 Irving Terrace, #3, Cambridge, Massachusetts 02138. I have been involved in the computer science field for since 1978. I am over eighteen years of age and I would otherwise be competent to testify as to the matters set forth herein if I am called upon to do so at trial.

2. I have been retained by counsel for Health Grades, Inc. ("Health Grades") as a technical expert witness with respect to the proceedings currently before the Court in the above-captioned matter. I receive compensation in the amount of $425 per hour. Health Grades has also reimbursed me for travel and other expenses that I have incurred that are related to providing this technical analysis. My compensation does not depend on the outcome of this case.

3. For purposes of this Expert Report, I have been asked by Health Grades to provide an expert technical analysis of whether the asserted claims of U.S. Patent No. 7,752,060 (the "'060 Patent") that Health Grades contends are infringed by Defendant MDx Medical, Inc. ("MDx") as properly interpreted, are infringed by MDx's systems and methods, either literally, or under the doctrine of equivalents. Additionally, I have been asked by Health Grades to provide an expert technical analysis concerning whether MDx indirectly infringes these patent claims by inducing or contributing to the direct infringement of the patent claims by selling its customers certain products and services and enabling its customers to implement systems and methods which infringe the patent claims either literally or under the doctrine of equivalents.

4. I understand that Health Grades contends that MDx directly or indirectly infringes claims 1, 4-9, 11, and 14-16 of the '060 Patent ("the asserted claims"). I further understand that Health Grades contends that MDx directly infringes all of the asserted claims with the exception of claim 11. I further understand Health Grades further contends that MDx indirectly infringes (either through inducement or contributory infringement) all of these claims.

5. As set forth herein, it is my opinion that MDx's systems and methods directly infringe claims 1, 4- 9, and 14-16 of the '060 Patent literally or, alternatively, under the doctrine of equivalents.

1

Case No. 1:11-cv-00520-PAB-BNB Document 961-7 filed 12/04/14 USDC Colorado pg 3 of 8
Case 1:11-cv-00520-PAB-BNB Document 292-1 Filed 09/17/12 USDC Colorado Page 38 of 74

(Policy E-mail from Mitch Rothschild dated 1/5/2011 at MDX0034444-MDXMDX0034445.)

153. Such a programming rule would not be relevant to the question of whether or not this claim element is infringed. This claim element relates to whether information is compiled, e.g., into a relational database, and is unrelated to the question of what is ultimately displayed in a report. MDx has admitted (see above) that they compile at least three kinds of information regarding physicians from third party sources. As will be further discussed below, a person of ordinary skill in the art would understand "compiling" to mean collecting information and organizing it into a database for retrieval. This information would then be processed or "used" by report- or page-generating software. Finally the report or page would be "displayed" to a Web site user such as a patient. The claim construction of "compiling" as "gathering and/or putting together" does not change this analysis. "Compiling" and "Displaying" are separate operations and relate to separate elements of Claim 1.

154. I understand that MDx argues it does not infringe this element because it compiles third party information based on a schedule that depends on the third party source rather than compiling the information in response to a request for information. I disagree. The claim does not place any limits on when the information is compiled – it does not have to be in response to a request. If we were to extend MDx's argument, the patient-provided information, such as ratings, would also have to be obtained in response to a request for a report on a doctor. This would require the potential patient and previous patients all to be visiting the vitals.com site simultaneously. The potential patient would then have to wait for a report until the previous patients had finished typing.

> h. *Step 5: creating, by the at least one computer processor, a healthcare provider report on the first healthcare provider using the healthcare provider-verified information, the patient-provided information, and the information verified by the independent third-party source, wherein the healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers;*

155. Vitals.com meets this element.

156. In the HTML files that are delivered to a consumer's browser, e.g., in response to a request for http://www.vitals.com/doctors/Dr_Peter_Hoenig , there are references to files on the vitals.com server with a ".php" extension, indicating that these are computer programs written in the popular PHP language. (*See* Appendix C.)

157. The report on an individual physician contains a combination of information that the physician entered or verified (e.g., personal statement, languages spoken, specialties, awards, honors), information that patients have provided, and information from third party sources. (*See, e.g.*, Appendix C.) Furthermore, the creation of the report involves using a combination of the information that the physician entered or verified (e.g., personal statement, languages spoken,

37

specialties, awards, honors), information that patients have provided, and information from third party sources, even if that information is not explicitly displayed. (*See* Deposition of Mitch Rothschild at 116:06-117:01; Vitals.com PowerPoint, "Thinking About Physician Quality" at MDX0012068.)

158. If information is displayed in a report, then I can conclude it was used to create a report. It is not necessary to examine the source code of the report-generation software to draw this conclusion.

159. I know that the reports are created using physician-verified information because, in many cases, this information is displayed in the physician report. For example, I have viewed physician reports on vitals.com that display the following: specialty information, medical philosophy, gender, years in profession, awards, honors, professional appointments, professional memberships, publications, and languages. (*See,* e.g., Appendix C.)

160. I know that the reports are created using patient-provided information because, in many cases, this information is displayed in the physician report. (*See,* e.g., Appendix C.)

161. I know that the reports are created using third party-verified information because, in many cases, this information is displayed in the physician report. For example, I have viewed physician reports on vitals.com that display: board certification, licensure, medical school, medical residency, and medical fellowship information. (*See,* e.g., Appendix C.)

162. Vitals.com creates multi-page reports. The first page typically is a summary page with some information about the particular physician about whom information is requested (e.g., specialty information, star rating, location, awards, ratings of affiliated hospital, rating of medical school, etc.). (*See*, e.g., February 2012 Infringement Contentions; Appendix C.) Additional pages of each physician's report may be accessed by clicking on the physician's name.

163. Within each page of a report, additional pages may be accessed that have additional information. My review of the vitals.com website showed that most reports have the following sections: specialty, patient ratings & comments, hospital affiliation, education, awards & honors, publications, and insurance accepted. (*See,* e.g., Appendix C.) Each of these sections may have links to additional pages. (*See* Deposition of Larry West (Rough Draft) at 190:1-193:04; Vitals.com PowerPoint, "Creating the First Truly Comprehensive Website, Database and Evaluation System of America's Physicians" at MDX0069163, MDX0069167; "Find a Doctor on Vitals.com" Video.) For example, the publications section may have a link to an additional page that lists all of a physician's publications. (*See* Appendix C.)

164. I understand that MDx argues that it does not infringe this element because it employs the following rule:

38

> If displaying third-party verified information for a physician would include three or more of third-party information, then the same information obtained from a physician (e.g., medical school, residency, fellowship, internship) would be used instead (when available) to reduce the number of displayed third-party data to less than three. If the same information for a data field has not been obtained from a physician, then the data field is not displayed at all, so that no more than two third-party data fields are ever displayed for a physician.

(Policy E-mail from Mitch Rothschild dated 01/05/2011 at MDX0034444-MDXMDX0034445.)

I disagree that MDx follows this rule. I have seen physician reports (for example, TABS 66 & 161) that display board certification, medical school information, and licensure information. All three of these items come from third parties. (*See* MDx's Second Supplemental Resps. to Health Grades' First Set of Interrogs. at p. 6; Appendix C; Deposition of Erika Boyer at 55:16-55:17, 87:12-87:15; 81:10-81:16; 85:8-85:12.)

165. Additionally, I disagree that following this rule will avoid infringement of this element because it does not require that the report display *all* compiled information. The Court's Markman Order specifically rejected this construction. (*See* Markman Order at p. 20.) Even without the Court's order, a person of ordinary skill in the art would not expect a report designed for viewing by humans to contain all of the information previously compiled in a database. One of the main purposes of report-generation or page-generation software is to select, distill, and summarize the most relevant information from a database. A typical server hard drive can store 3 trillion characters of information or approximately 600 billion words. The average adult reads no more than 300 words per minute and therefore would require approximately 3800 years (reading 24 hours per day) to read through the contents of a single hard drive, absent report-generation software to assist with the process.

166. Also, if vitals.com displays fellowship information that has been self-reported by a doctor, it is my opinion that it is still "using" the fellowship information MDx collected from a third party. It is after all stored in the database. In order to avoid displaying incorrect information, Vitals must resolve conflicts between doctor-reported information and third-party verified information. This is a "use" of both kinds of information.

167. Further, MDx displays reports only for physicians who are actively licensed. (*See* Deposition of Larry West (Rough Draft) at 141:04-142:05.) Thus, it is my understanding that Vitals.com uses licensure information to create a report even if they do not always explicitly display that information in the report.

168. I understand that MDx is arguing that these screenshots (*see,* e.g., Appendix C) cannot be a report because they are a results list. It is my opinion that they are both a results list (see discussion below) and a healthcare provider report. They contain a list of physicians who meet the search criteria, but they also contain additional information (e.g., specialty information,

39

address, ratings, awards, hospital affiliations, board certifications), which is not required by the results list claim element, but which meets the claim limitation of a report on a particular healthcare provider as discussed above.

169. I understand that MDx is arguing that these screenshots are not part of the "report," but instead believe that the report includes only what vitals.com refers to as the "full profile." I disagree. Both parties agree that an ordinary meaning of the term "report" is a "formatted and organized presentation of information." These screenshots include information about a particular healthcare provider that is formatted and organized. The fact that the information is organized into multiple pages linked together does not mean that these pages are not a report. Paper reports often contain many pages and the same is true for reports in electronic form. I do not see any requirement in the claim that the report be limited to one-page, that all of the information be displayed on the same page, or that an embodiment cannot offer multiple report options.

170. If a multi-page report does not literally meet this claim element, then it meets it under the doctrine of equivalents. Vitals.com's multi-page reports perform substantially the same function, in substantially the same way, to produce substantially the same result a single page report. The "function" of the "report on the first healthcare provider" claim element is to allow patients to obtain detailed information about a particular doctor. The "way" this function is achieved in the claim is to create a report with the three types of information (i.e., doctor-verified, patient-provided, and third-party verified). MDx achieves the same function in the same way. The "result" of the claim is a report that includes the claimed information about the particular provider. The result of vitals.com's reports is the same.

171. The court has construed "comparison ratings of healthcare providers" as ratings on multiple healthcare providers, including the "first healthcare provider," in the report on that "first healthcare provider," thus permitting comparison of the "first healthcare provider" with other potential healthcare providers. (Markman Order at p. 24.)

172. A variety of items on vitals.com (both versions) that qualify as comparison ratings. Each of these "ratings" applies to individual physicians, therefore to the first healthcare provider and other healthcare providers.

173. First, there is an "overall patient rating" (1-4 stars) for most physicians. (*See,* e.g., Appendix C.) By displaying the scale along with every rating, vitals.com ensures that potential patients can see how a doctor compares to an ideal doctor. Most physicians on vitals.com have an overall star rating.

174. An additional "comparison rating" for a doctor is whether or not the doctor has been selected for certain awards. (*See* Deposition of Larry West (Rough Draft) at 145:24-148:20.) For example, one "comparison rating" is the "Patients' Choice Award", which is based

40

on vitals.com patient surveys (source: http://www.patientschoice.org/whatispca). (*See* Appendix C.)

175. A similar, but separate, "comparison rating" is presented to show whether or not the doctor has been selected for an "America's Top Doctors" award, administered by http://www.castleconnolly.com/, one of Vitals.com's listed database vendors. (*See* Appendix C.)

176. Another similar "comparison rating" is whether or not a doctor is listed as "one of America's Leading Experts" (*see* http://www.vitals.com/doctors/Dr_Robert_Mcduffie for example). (*See* Appendix C.)

177. A personalized "comparison rating" is offered following the search for a doctor in that doctors are shown in order of "match score", i.e., how closely a doctor matches the potential patient's search criteria. (*See* Appendices C and D.)

178. The healthcare provider reports created by the Current Version literally include each of the foregoing "comparison ratings" of both the first healthcare provider and other healthcare providers, either on the same screen in response to a search query or on separate screens, depending on the detail level of the reports sought by patients. (*See,* e.g., Appendix C.)

179. For example, if a patient runs a specialty search for a particular doctor, MDx's current website uses information within MDx's database to produce a report on that doctor that can include comparison ratings of that doctor and other doctors contained within the right-hand section of the first page of the report. These ratings can include any of those listed above. By clicking on the particular doctor's name, a patient is able to access additional pages of the healthcare provider report. (*See,* e.g., February 2012 Infringement Contentions.) A demonstration for such a search is attached as Appendix D.

180. Another example if a patient runs a name search for a particular doctor, MDx's current website uses information within MDx's database to produce a report on that doctor that can include comparison ratings of that doctor and other doctors contained within the "highlights" section of the first page of the report, thus permitting comparison of that particular doctor with other potential doctors. These ratings can include any of those listed above. By clicking on the particular doctor's name, a patient is able to access additional pages of the healthcare provider report. (*See,* e.g., February 2012 Infringement Contentions; Appendix C.) A demonstration for such a search is attached as Appendix D.

181. I understand that MDx is arguing the overall patient rating is the claimed patient-provided information and thus cannot also be comparison ratings. I disagree. It is my opinion that it satisfies the requirements of both claim elements as described in this report.

182. I understand that MDx argues that the healthcare provider report must be limited

41

to the first healthcare provider and *only* the first healthcare provider, and thus, the display of search results cannot be a healthcare provider report if it contains information on more than one physician (as is the case with the screenshot examples I referenced above). I disagree. (*See* Markman Order at p. 24.)

183. However, if the claimed report must be limited to only one physician, then vitals.com infringes under the doctrine of equivalents. As shown in the screenshots and demos listed above, MDx's current website displays multiple healthcare provider reports, each limited to a single healthcare provider and each containing comparison ratings of that particular healthcare provider, on the same Web page, with other healthcare provider reports of other physicians. (*See,* e.g., Appendix C.) Each of those other reports contains comparison ratings of their particular doctor.

184. Furthermore, on pages of an individual physician's reports, there are links to "Related Doctors" in the profiles. (*See* Appendix C.) These related doctors' profiles, which are included as links within the profile of a particular doctor's profile, each contain "comparison ratings." These related profiles are included in the report just as the other pages of the report are integrated as links. As confirmed by Mr. West, when a section of profile is backed by more data, those data are accessible by a link to a "drill down" page. (*See* Deposition of Larry West (Rough Draft) at 190:1-193:04.) These other profiles, and their ratings, have been included as a "drill down" page in a report on the first healthcare provider.

185. These above examples of reports on Vitals.com perform substantially the same function, in substantially the same way, to produce substantially the same result as the claimed comparison ratings element. The "function" of the comparison ratings claim element is to allow patients to compare the first healthcare provider with other healthcare providers. Vitals.com performs the same function. The "way" this function is achieved in the claim is to include comparison ratings of other healthcare providers in the same report with ratings of the first healthcare provider. The way MDx achieves this function is by displaying multiple reports, each with comparison ratings of the first healthcare provider, on the same page, so that a patient can compare the first healthcare provider with other healthcare providers. This is substantially the same as the claim. The "result" of the claim is a report that allows for comparison of the first healthcare provider with others. The result of vitals.com is substantially the same, i.e., multiple reports that allow for comparison of the first healthcare provider with other healthcare providers.

186. Viewed another way, a healthcare provider report that includes multiple providers (as shown the display of profiles within search results, e.g., Appendix C) performs substantially the same function, in substantially the same way, to produce substantially the same result as the claimed report on the first healthcare provider. The functional difference of reporting on one particular doctor versus multiple particular doctors is insubstantial. A single provider report is substantially the same as a multiple provider report – both have information on the single