**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,
Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,
Defendant.

---

**HEALTH GRADES, INC.'S RESPONSE TO MDX MEDICAL, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS AND REQUEST
FOR CERTIFICATION PURSUANT TO FEDERAL RULE 54(B) [DOC. #961]**

---

Health Grades, Inc.  ("Heath Grades") opposes MDx Medical, Inc.'s ("MDx") Motion for

Attorneys' Fees and Costs and Request for Certification Pursuant to Federal Rule 54(b) (the

"Motion") on the following grounds.[1]

INTRODUCTION

MDx seeks an order finding that this case is "exceptional" under 35 U.S.C. § 285 and an

award of more than $4.5 million in attorneys' fees (which includes a bonus for MDx counsel)

based on non-infringement rulings for four of the five accused products in this case.  Although

most cases that award fees under section 285 involve substantial litigation misconduct, MDx

does not allege any litigation misconduct in this case.  Unlike other cases awarding fees under

section 285, Health Grades is not a patent troll.  Rather, Health Grades has litigated this suit in

---

[1] Health Grades does not oppose certification.

good faith against a competitor who created a service similar to Health Grades and who copied many of the innovative features from Health Grades' website.

This complex patent infringement case has been pending for almost four years. The claimed invention is an "internet based system and method that connects patients with potential healthcare providers, e.g., physicians and hospitals." ['060 Patent, Col. I, ln. 12-14; Doc. #913 at p. 1.] As this Court has recognized, "the product at hand is different from most others analyzed in the case law under the doctrine of equivalents. At issue is not a classic mechanical device, or even a chemical one. Instead, the case involves a digital product which is both novel and ambiguous in terms of its interplay with the doctrine of equivalents." [Doc. #696 at p. 20.]

The analysis of the various iterations of the websites maintained by MDx and Health Grades has resulted in voluminous expert reports addressing infringement and invalidity. Health Grades' expert has prepared 220 pages of analysis. MDx's technical expert has prepared 136 pages of analysis. MDx has deposed Health Grades' technical expert on two occasions for a total of 477 pages on the record. At the October 10, 2014 hearing, the Court observed: "[E]very time I turn around, the nature of this beast changes just a little bit . . . ." [Exhibit A hereto, at pp. 78, ln. 22-23.] The novel digital products at issue have resulted in allegations of infringement directed to five primary Configurations and 13 subconfigurations. [Doc. #907.][2]

---

[2] Allegations of infringement concerning the Configurations and subconfigurations continued to mount as MDx changed the display on its website and began to license third parties to utilize configurations markedly similar to those utilized by MDx, but containing their own subtle differences. [Doc. #907.]

Against this backdrop, the Motion directs itself solely to the "comparison ratings" element of the claimed invention.[3]  "[T]he healthcare provider report on the first healthcare provider includes comparison ratings of healthcare providers . . . ."  ['060 Patent, Col. 20, ln. 63-65.]  The definition of the word "includes" in this context is "quite gray":

> What is clear to the Court is that the choices as to "location" of the comparison ratings for purposes of application of the doctrine of equivalents in this case is not a binary choice.  The MDx website and display of provider information is not the antithesis of the claimed invention's display of that information.  Rather than black and white, the margins here are quite gray.

[Doc. #696 at p. 20.]

On December 24, 2013, the Court ruled that Vitals.com as it existed since January, 2011 (Configurations 2 and 3) did not literally infringe the claims of the '060 Patent.  [Doc. #696 at pp. 1, 28.]  Regarding the "Search All Similar Doctors" hyperlink (Configuration 3), the Court has observed that "it is less clear whether a noticeable departure from the profile has taken place . . . ."  [Doc. #696 at p. 20.]  Concerning Configuration 3:

> Although the Court has determined that the "stars" or comparison ratings are not actually "within" the profile for literal infringement purposes, it is far from certain that this fact would be apparent to an ordinary user.  Regardless, the fact that a portal to the comparison ratings (the hyperlink) rests squarely within the provider profile blurs the distinction between "in the report" and "outside the report" and has no real analogue in the realm of mechanical products.

---

[3] The "comparison ratings" element involves information that is displayed to the consumer.  The computer processor and memory that is involved in accessing healthcare provider verified information, compiling patient provided information, including patient ratings, compiling information from independent third-party sources and creating a healthcare provider report concerns the underlying system that MDx has created.  That system largely mirrors the Health Grades system and is not the subject of the Motion.  Nevertheless, it is that underlying system that permitted MDx to create and display Configuration 4 in the midst of this litigation.

[*Id.*at p. 21.]

On November 6, 2014, in addressing whether Configuration 3 satisfies literal infringement, the Court stated that:

> [A]lthough I may disagree with you, I agree that there is enough muddiness, and . . . ultimately, I'm picking this up at the outset, scratching my head saying, What, do I have here? and when we are dealing with these kinds of data presentations, it's slippery stuff . . . . but it's a bit of a moving target in a way that doesn't exist with respect to a patent with regard – regarding, I don't know, this mouse.  The mouse is the mouse, is the mouse; today, tomorrow and forever more.  The webpage, how it's structured, kind of depends on who is structuring it . . . .

[Exhibit B hereto at p. 36, ln. 1-15.]  Regarding Configuration 3, the Court noted that if the Court were to address issues regarding equivalence, the Court would find Configuration 3 to be equivalent to the claimed invention.  [*Id.* at p. 49, ln. 11-12.][4]

Regarding Configuration 1 (and presumably Configuration 5 given their side-by-side similarity), the Court considered a webpage that contains comparison ratings of multiple healthcare providers.  The Court determined that because the information is presented "side-by-side," with a line separating the comparison ratings, that the ratings of multiple healthcare providers were not "inside" the report on the first healthcare provider:  "I'm looking at two things side by side or three things side by side or four things side by side."  [Exhibit B hereto at p. 28, ln. 19-20.]  Again, the Court noted that even though equivalency was not the issue in light

---

[4] Despite all of the statements made by the Court addressing the closeness of the question regarding Configuration 3, MDx argues in its brief that Configuration 3 "was shown to be baseless once the *Festo* estoppel issue was addressed."  [Motion at p. 9.]  Neither the Court's observations nor Health Grades' arguments were baseless.

of the *Festo* ruling, the Court "wouldn't be disturbed calling [the side-by-side presentation] an equivalent." [*Id.* at p. 29, ln. 11.][5]

On December 23, 2013, the Court ruled that: "Infringement by equivalents in this case is properly for a jury to decide." [Doc. #696 at p. 28.] The Parties submitted joint jury instructions and separate verdict forms indicating their understanding that Configurations 1, 2, 3 and 5 may be proven through the Doctrine of Equivalents. [Doc. #780 at pp. 3-4, (MDx's proposed verdict form); Doc. #778 (Health Grades' proposed verdict form).] However, on October 23, 2014, the Court indicated that its earlier Order had limited the doctrine of equivalents argument to Configuration 3. [Doc. #913 at p. 2.] Both Configurations 2 and 3 connect to a results page containing comparison ratings of multiple healthcare providers. Even though Configuration 3 survived the Court's doctrine of equivalents analysis and Configuration 2 did not, the arguments regarding Configuration 2 are not substantially different from those involving Configuration 3. Each Configuration brings about the same result from the webpage operator -- comparison ratings that connect to a webpage that contains a report on a particular healthcare provider.

The only ruling that prevented Configurations 1 and 3 from being presented to the jury was the Court's *Festo* ruling, a matter that was hotly disputed and the subject of two lengthy orders of the Court. After the summary judgment hearing held on October 25, 2013, the Court

---

[5] Health Grades' infringement assertions regarding Configuration 1 were not baseless or unreasonable. MDx removed this feature from its website based on conversations it had with its lawyers about Health Grades' '060 patent. [Doc. #944-2 Mitch Rothschild Dep. at pp. 44, ln. 1-p. 45, ln. 16.] MDx's technical expert never gave an opinion that Configuration 1 did *not* infringe the comparison ratings claim element. [Doc. #392-1]. When MDx moved for summary judgment (Doc. #195), MDx never sought summary judgment in connection with Configuration 1. Thus, MDx's own lawyers and expert saw merit in these infringement allegations.

ruled that the amendments made by Health Grades "were made to differentiate from the prior art the specific types of provider information presented to the user and distinguish comparison ratings from mere facts from which comparisons could be made."  [Doc. #696 at p. 23.]  The Court examined the prosecution history in considerable detail, addressed "the contours of 'inside' and 'outside' provider profiles" and determined that those contours themselves are "somewhat amorphous in this case."  [Doc. #696 at p. 26.]  Even though the Court "reserve[d] the right to make further rulings pertaining to prosecution history" (and ultimately did so ruling that the prosecution history barred Health Grades' reliance upon the doctrine of equivalents), the initial determination made by the Court (based upon the same prosecution record reviewed in the second hearing) confirms that the issues surrounding prosecution estoppel history were and are close questions.

The *Festo* ruling involves "somewhat amorphous" legal and factual issues that are the subject of a certified appeal.  That "slippery" bedrock cannot support an "exceptional" case finding.

The paragraphs that follow will further establish that the totality of the circumstances surrounding this case amply demonstrate that this is not an "exceptional" case where frivolousness or objective unreasonableness rule the day.  Rather, this is a complicated case regarding a novel invention utilizing emerging technology where there is ample room for reasonable disagreement.

<u>ARGUMENT</u>

I.      THE APPLICABLE LAW

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.[6]  In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), the Supreme Court construed the term "exceptional" in accordance with its ordinary meaning—"uncommon," "rare," or "not ordinary."  An "exceptional case" is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Id.*  When evaluating whether a case is so "uncommon," "rare," or "not ordinary" as to warrant the label "exceptional," district courts should consider the "totality of the circumstances."  *Id.*  There is no "precise rule or formula" for making the determination. *Id.*  Instead, "equitable discretion" should be exercised in light of considerations such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular to advance consideration of compensation and deterrence." *Id.* n. 6.

In determining whether a case is "exceptional" post-*Octane Fitness*, district courts recognize that the bar is high:  "[A]lthough *Octane* reduced the showing required for an award on the ground of objective baselessness, courts continue to hold claims of baselessness to a high bar."  *Small v. Implant Direct Mfg. LLC*, 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014) (finding case not "exceptional" under section 285 after evaluating totality of the circumstances).

---

[6] An award of attorneys' fees is only available to the prevailing party.  *Highmark, Inc. Allcare Health Mgnt. Sys., Inc.,* 701 F.3d 1351, 1353 (Fed. Cir. 2012).   Claims remain pending before this Court and it is unclear who will ultimately be the prevailing party.

"[T]he imposition of fees under section 285, even after Octane Fitness, 'remains an exception to the American Rule . . . .'"  *Intellect Wireless, Inc. v. Sharp Corp.*, 2014 WL 2443871, at *5 (N.D. Ill. May 30, 2014).

In *Small v. Implant Direct Mfg. LLC*, the District Court for the Southern District of New York recognized that, based on its evaluation of cases analyzing section 285 post-*Octane*, "[m]ere assertions that a party's arguments were without merit are generally unavailing; rather, courts are more likely to award fees where a party knew or willfully ignored evidence of his claims' meritlessness, where such meritlessness could have been discovered by basic pre-trial investigation, or where such meritlessness is made clear to the court <u>early</u> in the litigation." *Small*, 2014 WL 5463621, at *3 (emphasis added).  In *Small*, the court also explained that, in considering the need-for-deterrence factor under *Octane*, "the need for the deterrent impact of a fee award is great where there is evidence that the plaintiff is a 'patent troll' or has engaged in extortive litigation."  *Id*. at *4.  Lastly, the court observed that "most cases awarding fees continue to involve substantial litigation misconduct."  *Id.* (citing exemplary post-*Octane* fee decisions in which patentees "repeatedly failed to introduce admissible evidence," "filed unsolicited briefs," and engaged in other "egregious behavior.").

These cases confirm that a motion under section 285 must be evaluated under the "totality of the circumstances" of the case, not isolated segments.  The moving party must present evidence of willful ignorance, objective unreasonableness or substantial litigation misconduct.  The evidence here cannot and does not meet the prevailing standard set by the Supreme Court.

II.     *POST HOC* REASONING IS TO BE AVOIDED.

The Court should not apply *post hoc* reasoning when determining a motion under section 285.  The Supreme Court has held:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.  This kind of hindsight logic could discourage all but the most airtight claims . . . .

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978); *see also Stragent, LLC v. Intel Corp.*, 2014 WL 6756304, at *5 (E.D. Tex. Aug. 6, 2014) (denying defendant's motion for fees under section 285 while focusing on the merits on the parties' arguments at the time they were made, not in hindsight).

Avoiding *post hoc* reconstructions is particularly important here because the landscape of the case changed drastically in the past several weeks -- long after the isolated actions complained of in the Motion:

> [W]hen you combine the earlier ruling of the literal infringement with the *Festo* ruling, I am scratching my head and saying, Boy, the nature of this landscape has changed a great deal.  Where are we in terms of what are we going forward on?"

[Exhibit C hereto, October 30, 2014 hearing transcript excerpt, at p. 3, ln. 10-13.]  An evaluation of the reasonableness and appropriateness of Health Grades' conduct should not be guided by hindsight.

III.    HEALTH GRADES' INFRINGEMENT ARGUMENTS WERE NOT FRIVILOUS.

The infringement arguments advanced by Health Grades did not ignore the Court's claim constructions and were not inconsistent with Health Grades position on invalidity.  As will be shown, Health Grades modified its position to conform to rulings of this Court and the Supreme

Court as the case progressed.  Although Health Grades did not prevail on all of its arguments, their substantive strength was not so conspicuously deficient as to make this case exceptional. Furthermore, none of the complaints raised by MDx involve issues that were determinative of the Court's summary judgment and *Festo* rulings.

A.    <u>"Comparison Rating" Arguments.</u>

**MDx Assertion 1:**  "Health Grades argued in its claim construction briefing that comparison ratings needed to only address a ***single*** provider."  [Motion at p. 6 (emphasis in original).]

First, Health Grades never asserted that a rating of a single healthcare provider, by itself, was sufficient to meet the comparison ratings claim element.  Rather, Health Grades argued that a "five star rating system for all physicians within the database will meet Health Grades' proposed definition of comparison ratings. . . ."  [Doc. #79, p. 17.]  However, once the Court entered its *Markman* Order, Health Grades did not continue to assert this argument.

Second, a "match score" includes an analysis of quality of training, quality of hospital and years of experience.  [Motion exh. C at p. 17.]  Thus, a match score rating may constitute a comparison rating of physicians based upon criteria selected by the user.

Similarly, Health Grades' Rule 3.1(c) Disclosure served July 1, 2011 noted that a comparison of physicians who have received the Patients' Choice Award involves a comparison among physicians some of whom have "received near perfect scores as rated by patients." [Motion exh. C at p.18.]  Nevertheless, the contention that the comparison ratings element may be established through a match score or Patients' Choice Award was not asserted by Health Grades in its summary judgment briefing or as part of the Configurations upon which Health Grades relied in the configuration analysis.

**MDx Assertions 2 and 3:**  "Health Grades refused to accept the claim constructions [on comparison ratings]" [Motion at p. 6] and "On infringement, Health Grades argued that MDx met the "comparison ratings" language, both literally and by equivalents, by having in the reports ratings of only the first healthcare provider."  [Motion at p. 11.]

Health Grades accepted the Court's claim constructions and has not asserted that a rating of only one provider met the comparison ratings claim element.  After the *Markman* Order, Health Grades relied on a combination of the search results pages, which display ratings of multiple providers, linked with profiles (for Configurations 2-3) and a comparison report that contained ratings of multiple providers (for Configuration 1).

For example, MDx cites Health Grades' February 2012 infringement contention claim charts attached as Exhibits E and F [Doc. Nos. 961-5 and 961-6, respectively].  *See* Motion at p. 7.  These contentions did not ignore the *Markman* Order, they were served for the express purpose of addressing the claim constructions in the *Markman* Order.  Indeed, the contentions quote the construction of "comparison ratings of healthcare providers" and cite to ratings of multiple providers.  [*See* Ex. E (February 2012) at p. 30 (p. 4 of Doc. #961-5); Ex. F at pp. 17-18 (pp. 3-4 of Doc. #961-6).]  For example, for literal infringement the contentions asserted that the healthcare provider report is a combination of a results page (Screenshot Nos. 14, 16) and a profile (Screenshot Nos. 17-18) of Dr. Mark Brunvand, who is the first healthcare provider:

> Screenshot Nos. 14 & 16-18 show portions of a healthcare provider report for Dr. Mark Brunvand, who is an example of a first healthcare provider as defined by the Court in its *Markman* ruling. This report uses at least the following information: (1) healthcare provider verified information, circled in red; (2) patient-provided information, circled in green; and (3) information verified by an independent third party circled in purple. The report also includes comparison ratings, circled in orange, about Dr. Brunwald [sic], and other healthcare providers as required by the Court's *Markman* Order.

[Ex. E at p. 30.]  Health Grades made clear that the infringing comparison ratings included not just the star rating on Dr. Brunvand, but also the star ratings on the other providers listed in the results page:

> Additionally, the "overall patient rating," comprising 0-4 purple stars, both for Dr. Brunvand and other healthcare providers, comprises comparison ratings of healthcare providers. See Screenshot No. 16.

[Motion exh. E at p. 32.]  MDx ignores these portions of the contentions and instead focuses on p. 31, which asserts that match scores were comparison ratings, and pp. 33-34 which assert that the Patients' Choice Awards (which are based on ratings) were comparison ratings.  These were preliminary arguments disclosed in response to the duty to disclose (or lose the right to rely on) all contentions pursuant to the Local Patent Rule 3-1 for the Northern District of California. Health Grades ultimately did not elect to rely on either of these arguments to defend against MDx's summary judgment motion and MDx never addressed these issues in its summary judgment motion.  [Doc. #201.]  Further, neither argument was contrary to the *Markman* Order because Judge Brimmer did not construe the term "rating" and both arguments focused on multiple providers.  [Motion exh. E at p. 31 (showing multiple providers with a match score, which is a kind of rating)[7] and p. 46 (citing Patients' Choice Award for multiple providers – this particular award is based on ratings).]

     To this day, MDx's results pages contain comparison ratings of multiple healthcare providers.  The reference to the first healthcare provider appearing on such pages often contains

---

[7] Dr. Greenspun testified in his deposition that a match score for a single provider would not meet the claim construction's requirement for ratings of multiple providers.  [Greenspun Dep. at p. 163, ln, 16 at p. 164, ln. 6 Doc. #961-8.].

substantial information showing that the other elements of the patent (physician-provided information, patient-provided information and third-party verified information) are also satisfied by virtue of the information displayed about the particular provider in his or her section of the results page. [*E.g.*, Doc. #906-6.] It was not until December 24, 2013 or October 23, 2014 (23 or 33 months after the disclosures referenced above were filed by Health Grades) that the Court ruled that infringement with respect to Configuration 2 may not be satisfied through the doctrine of equivalents. Once the Court entered its ruling, Health Grades did not press the argument farther.

MDx also selectively quotes portions of Health Grades' summary judgment response [Doc. #201] in an attempt to show that Health Grades asserted a rating of *only* one provider meets the comparison ratings claim element. [*See* Motion at p. 7.] But MDx omits the portion of Health Grades brief that demonstrates MDx's website had ratings of another potential doctor:

> Contrary to the arguments made in MDx's Motion, the healthcare provider reports on MDx's current website include ratings for multiple doctors and ratings of the particular doctor who is the subject of the report. These comparison ratings are contained within the "highlights" section of a particular doctor's report, thus permitting comparison of that particular doctor with other potential doctors. In this example, Dr. James Smith's report includes comparison ratings on Dr. Smith (orange circle), namely a four star rating by his patients, and comparison ratings on another healthcare provider (Dr. Anthony Smith) (blue circle), which include a patient's choice award, a top doctor award, and a 4-star rating by his patients. A potential patient may use these ratings to compare Dr. James Smith with Dr. Anthony Smith.

[Doc. #201 at p. 14.]

Finally, MDx quotes paragraphs 171-173 and 181 of Dr. Greenspun's expert report on infringement (Motion at pp. 7, 12) to support its argument that Health Grades asserted a rating of

- 13 -

*only* one provider meets the comparison ratings claim element.  MDx, however, ignores interim paragraphs 178-179 which explain that MDx's website meets the comparison ratings claim element because it creates reports with ratings of multiple providers:

> 178.  The healthcare provider reports created by the Current Version literally include each of the foregoing "comparison ratings" of both the first healthcare provider and other healthcare providers.

> 179.  For example, if a patient runs a specialty search for a particular doctor, MDx's current website uses information within MDx's database to produce a report on that doctor that can include comparison ratings of that doctor and other doctors contained within the right-hand section of the first page of the report.

[Exhibit G at p. 41 Doc. #961-7 at p. 7.]  MDx also selectively quotes a portion of Dr. Greenspun's response to a hypothetical question in one of his depositions to try to show Health Grades claimed that ratings of one provider was sufficient.  The quote at page 12 of the Motion omits the last part of the answer:  "If you're just looking at that one window by itself and no other doctor's mentioned, or there's no information in front of you on another doctor, then I would say no."  [Doc. #961-8 at p. 152, ln. 10-13.]  A couple questions later, Dr. Greenspun made it abundantly clear that it was necessary to include ratings for multiple doctors:

> Q. So, yeah, the second part was really my question. You have something in front of you on Dr. Yakes, whatever the doctor happens to be, and the only thing you see for patient ratings is just the patient ratings for Dr. Yakes. That is not comparison ratings of healthcare providers, right?
> . . . .

> A. Yes, I think so. I agree with you.

[Doc. #961-8 at p. 152, ln. 14 - 21.]

In sum, after the *Markman* Order was entered, Health Grades' arguments were consistent with the content of that Order.  In fact, it was MDx's expert's refusal to follow the *Markman* Order's definition of "verification" that led to the Court entering an order that all experts must testify in accordance with *Markman*.  [Health Grades' Motion to Partially Exclude Expert Testimony of Dr. Cooper, Doc. #338 at pp. 5-7, 13-16.]  In addressing the substantive motions that came before the Court that ultimately led to the entry of judgment in favor of MDx in connection with Configurations 1, 2, 3 and 5, Health Grades made no arguments inconsistent with the *Markman* Order.  Thus, looking at the totality of the circumstances, there is no basis upon which this case may be deemed "exceptional" triggering an award of attorneys' fees.

B.      Health Grades' Arguments Were Consistent With Its Infringement Invalidity Assertions.

Health Grades' actual infringement positions were consistent with its response to MDx's invalidity assertions.  The only prior art in this lawsuit that contained any kind rating of a human healthcare provider was the Drucker Report, which was a one-of-a-kind prototype profile that was hard-coded on Health Grades' website in 2005.  [Greenspun Rebuttal Report at ¶¶75, 84 Doc. #752-2; *see also* Dep. of John Neal at pp. 213, ln. 4-24 Doc. #407-4 at p. 58.]  The Drucker Report did not have comparison ratings of multiple physicians.  The ratings for Dr. Drucker were compared to a National average.  [Motion at p. 13.]  Neither before nor after *Markman* did Health Grades contend that a comparison to a National average was a "comparison rating of healthcare providers" as required by the Patent.  Thus, there is nothing inconsistent in Health Grades' position.

Further, although Health Grades did not ultimately argue that the distinction between those who received a Patient's Choice award and those who did not was a comparison rating, this

argument is not inconsistent with Health Grades' defense against MDx's invalidity case.  In his deposition, Health Grades' expert explained that to meet the Court's claim construction, an award must be provided for multiple providers:

> Q. [Mr. Stimpson]  I'm just talking about a report of a doctor, you have Dr. Smith's profile in front of you, no ratings to be found except Patients' Choice Award, that is a comparison rating in and of itself?
>
> A. [Dr. Greenspun] Well, I don't think it's a comparison rating as construed by the *Markman* order, because there has to be ratings on multiple healthcare providers.

[Greenspun Dep. at p. 158, ln. 8-10, p. 158, ln. 21- p. 159, ln. 1 ("I think if you only have information about one doctor and the awards that he or she has gotten, that that by itself is not a comparison rating.") Doc. #961-8.]

The Drucker Report lists awards that relate only to Dr. Drucker, not multiple providers. Thus, the Drucker Report did not involve comparison ratings of multiple healthcare providers and Health Grades never argued to the contrary.[8]

Thus, the infringement positions taken by Health Grades were not inconsistent with its response to MDx's invalidity assertions.

C.     "Healthcare Provider Report on the First Healthcare Provider."

**MDx Assertion 4:**  "And Health Grades' attempt to include results lists as part of the provider reports was also unequivocally rejected."  [Motion at p. 6.]

---

[8] Further, unlike the Patient's Choice Award, Dr. Drucker's awards were not based on ratings and were not potentially available to all doctors on the site and thus could not be comparison ratings as construed by the Court.  [Greenspun Dep. at p. 155, ln. 1 – p. 156, ln. 18 Doc. #961-8.] For example, the award from UMDNJ ("University of Medicine and Dentistry of New Jersey") was presumably not available to doctors who never worked at UMDNJ.

Health Grades argued that MDx's search results pages literally or equivalently met the claim requirements for both a "healthcare provider report on the first healthcare provider" and a "results list including the first healthcare provider."  [Exhibit E at pp. 30-36 & 40-44, 46-54 Doc. #961-5].  Judge Brimmer did not reject these infringement arguments in the *Markman* Order.  He did not consider the accused products at all.  [Exhibit D hereto, *Markman* transcript excerpt at p. 65, ln 5-12.]  He did not construe the terms "results list" or "healthcare provider report on the first healthcare provider" and he did not say it is impossible to present both a results list and a report on the same webpage.  The language of the Patent does not expressly preclude such a result.  Judge Brimmer construed the term "first healthcare provider" to mean:  "a particular healthcare provider about whom information is requested and a report is produced."  [*Markman* Order at p. 24.]  Health Grades used this claim construction to support its infringement arguments and argued that MDx's results page met both the results list element and the report element.  [*See* Doc. 201 at pp. 19-20, 24.]  Dr. Greenspun explained:

> I understand that MDx is arguing that [the vitals.com results pages] cannot be a report because they are a results list. It is my opinion that they are both a results list (see discussion below) and a healthcare provider report. They contain a list of physicians who meet the search criteria, but they also contain additional information (e.g., specialty information, address, ratings, awards, hospital affiliations, board certifications), which is not required by the results list claim element, but which meets the claim limitation of a report on a particular healthcare provider as discussed above.")

[Greenspun Report at ¶168 Doc. #292-1.]  In contrast to MDx's website, the "results list" shown in the drawings of the '060 patent (see Fig. 2A and 2B) did not provide any of this additional information – it contained only the provider names with links to profiles.  With digital products

that contain a hierarchy of interlinked webpages, like MDx's website, the line between what is part of the report and what is not part of the report was far from clear.

Further, the *Markman* Order contained inconsistent statements about whether or not the report on the first healthcare provide could contain information about other providers. [*Compare* Doc. #138 at p. 12 (agreeing with MDx that the report relates only to the first healthcare provider but declining to adopt MDx's proposed construction), *with* p. 14 (requiring that the report on the first healthcare provider contain comparison ratings of other providers).] Health Grades pointed out these apparent inconsistencies in its summary judgment response:

> [W]hile the Court's construction of "report on the first healthcare provider" requires that the report be on a *particular* provider, it does not preclude the report from additionally containing information relating to other providers. Indeed, such would be contrary to the Court's definition of "comparison ratings" which *requires* the report include ratings of other healthcare providers. (*Markman* Order at p. 24.) But even if the healthcare provider report must be limited to the first healthcare provider and only the first healthcare provider, MDx still infringes this claim element under the doctrine of equivalents as described in a separate section below.

[Doc. #201 at p. 25 (emphasis in original).] Health Grades conceded that if reports were limited to information about only one provider then there would be no literal infringement, but argued that there would still be infringement under the doctrine of equivalents because a report on one particular provider that included an MDx results list could be equivalent to report on multiple particular providers. [*Id.* at pp. 26, 34-35.]

Finally, the fact that the Court disagreed with Health Grades and granted summary judgment in favor of MDx on this issue or any other is not enough by itself to make a case "exceptional" under section 285. In *EON Corp. IP Holdings LLC v. Cisco Systems Inc.*, the

court found that "EON's infringement contentions lack merit.  But that by itself is not enough to render a case "extraordinary."  2014 WL 3726170, at *5 (D. Del. July 25, 2014).  In denying fees, the Court also relied upon the fact that, although EON's post-claim construction infringement was "quite stretched, such that few patentees would pursue it . . .  the Court cannot quite conclude that *no* reasonable patentee could see an opening in the Court's claim construction order through which the argument could be squeezed."  *Id.*  (emphasis in original).

Here, Health Grades' arguments were consistent with the *Markman* Order.  It cannot be said that no other reasonable patentee would present such arguments.  Additionally, the fact that Health Grades asked this Court to certify this ruling for appeal to the Federal Circuit (and will be appealing this issue) confirms that Health Grades maintains faith in the strength of its position.  *See EON Corp. IP Holdings, LLC v. FLO TV Inc.*, No. CV 10-812-RGA, 2014 WL 2196418, at *2 (D. Del. May 27, 2014) ("The fact that [Plaintiff] is currently appealing this Court's ruling at the Federal Circuit . . . suggests that [Plaintiff] maintains faith in the strength of its position.").  Looking at the totality of the circumstances, it cannot be said that this case is "exceptional" such that attorneys' fees should be awarded against Health Grades.

The cases MDx relies on are also distinguishable.  In *BIAX Corp. v. NVIDIA Corp.*, for instance, although Judge Brimmer awarded fees under section 285, the plaintiff in that case engaged in extreme conduct.  *See BIAX Corp. v. NVIDIA Corp.*, 2013 WL 1324935, at *1 (D. Colo. Mar. 30, 2013).  Health Grades' behavior cannot reasonably be compared to such conduct.

Judge Brimmer found the *BIAX* case "exceptional" largely because the plaintiff had "prolonged the litigation in bad faith" by pursuing its claim even after an "unequivocal statement of its own expert that defendants' devices could not infringe the asserted patents."  *Id.* at *6.

Moreover, the plaintiff exhibited a "persistent disregard of the Court's unambiguous orders," Judge Brimmer explained that "the question in [the] case was not close: once it became clear that defendants' devices did not meet the 'shared access' limitation, the outcome of the litigation was determined." *Id.*

This case is different from *BIAX*, a case that involved integrated circuit hardware (computer graphics chips) that would have required years of engineering effort to modify. MDx can and did change its website, sometimes in an effort to work around the '060 patent, in a matter of hours. [Exhibit E hereto, West dep. at p. 132, ln. 3-11.] In further contrast to *BIAX*, which Judge Brimmer characterized as "not a close case," this is complicated litigation involving an accused product that the Court itself has appropriately characterized as "slippery" and "a moving target." [Exhibit B, November 6, Hearing Transcript Excerpt, at p. 36, ln. 6-10.][9] In addition, unlike the plaintiff in *BIAX*, Health Grades has in no way "prolonged the litigation in

---

[9] The other cases upon which MDx relies are not pertinent. *See, e.g., Yufa v. TSI Inc.*, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014) (finding case "exceptional," but only because plaintiff pursued claims without evaluating accused product before filing suit and did so despite "the absence of any evidence to support his claims" in the face of "substantial and uncontroverted evidence indicating that the accused products did not infringe."); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 2014 WL 2440867, at *1 (S.D.N.Y. May 30, 2014) (a patent troll litigation so out of the ordinary the court labeled it "a prototypical exceptional case"); *Kilopass Tech. Inc. v. Sidense Corp.*, 2014 WL 3956703, at *10, *12 (N.D. Cal. Aug. 12, 2014) (finding case exceptional where plaintiff alleged literal infringement despite having obtained one legal opinion of noninfringement and another half-completed legal opinion in which plaintiff "withheld relevant evidence" from patent counsel); *Classen Immunotherapies, Inc. v. Biogen Idec*, 2014 WL 2069653, at *4 (D. Md. May 14, 2014) (finding case exceptional where plaintiff brought suit based on actions that occurred "years before [plaintiff] obtained or applied for the patents in suit"); *Pragmatus Telecom LLC v. Newegg Inc.*, 2014 WL 3724138, at *2 (D. Del. July 25, 2014) (refusing to deem a "prevailing party" because at time of fee motion court had "made no finding regarding any substantive issue in the case," and "ha[d] not construed any terms, resolved a contested motion to dismiss, or resolved motions for summary judgment.").

bad faith." Health Grades' actions resulted from a good faith belief in its position. Health

Grades never proceeded in the face of anything akin to an "unequivocal statement of its own

expert that defendants' devices could not infringe the asserted patents."

> D.   Health Grades Always Conceded that the Presumption of Prosecution History
>       Estoppel Applied to this Case, but Argued that the Presumption Was Overcome
>       by the Tangential Relation Exception.

Health Grades' doctrine of equivalents arguments were not frivolous merely because the

claim terms at issue were added by amendment during prosecution. [Motion at p. 8 n.1.][10] The

Supreme Court made clear that claim amendments do not create an absolute bar on infringement

under the doctrine of equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. Ltd.*,

535 U.S. 722, 740 (2002). Claim amendments instead create a presumption of estoppel that may

be rebutted. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 344 F.3d 1359, 1367

(Fed. Cir. 2003). One way of rebutting the presumption is by showing that the amendment was

"tangential" – that is, the "reason for the narrowing amendment was peripheral, or not directly

relevant, to the alleged equivalent." *Id* at 1369.

Health Grades has always conceded that a narrowing claim amendment was made and

that this amendment triggered a presumption of estoppel. However, Health Grades argued that it

---

[10] The cases cited by MDx do not provide otherwise. In *Home Gambling Network, Inc. v. Piche*, the accused products were exactly the same thing as was disclosed in the prior art, namely non-interactive casino games: kino, bingo, and lottery. 2014 U.S. Dist. LEXIS 71071 (D. Nev. May 22, 2014). In *Kilopass Tech. Inc. v. Sidense Corp.*, the plaintiff filed suit even though it got an opinion from one counsel that there was no literal infringement and an incomplete opinion from a different counsel as to infringement under the doctrine of equivalents. *Kilopass Tech. Inc. v. Sidense Corp.*, 2014 WL 3956703, at *10, *12 (N.D. Cal. Aug. 12, 2014). The *Encomp, Inc. v. L-com, Inc.* decision did not even relate to the doctrine of equivalents. Rather the suit was barred by laches because there was a 7 year delay between the accusation of infringement and the filing of the lawsuit. 999 F. Supp. 264, 268-69 (D. Conn. 1998).

had rebutted this presumption by showing that the reason for the claim amendment was to distinguish prior art that taught comparison facts, not ratings.  This Court's denial of MDx's motion for summary judgment on this issue shows that Health Grades' argument had merit:

> The Court does not find the prosecution history in this case constitutes such "clear and unmistakable" evidence that Health Grades disclaimed coverage of comparison ratings "outside of" provider reports that the application of the doctrine of equivalents should be precluded at the summary judgment stage.

[Doc. #696 at p. 26.]  On October 10, 2014, this Court then held a further hearing on this complex issue, lasting two ours and thirty-five minutes.  [Doc. #902].  The Court then issued a twenty-two page order on this issue finding in favor of MDx on the prosecution estoppel history issue.  [Doc. #913, October 23, 2014 Order.]  A two-hour hearing was held on November 6, 2014 to determine how the Court's October 23 Order would impact the remaining Configurations.  [Doc. #934.]  During the hearings the Court also commented on the dynamic nature of the accused products (Exhibit A, October 10, 2014 Hearing Transcript Excerpt, at p. 78, ln. 22-23, "every time I turn around, the nature of this beast changes just a little") and the dynamic nature of the systems creates a "moving target" and a "muddiness" when trying to analyze the accused products (Exhibit B, November 6, 2014 Hearing Transcript Excerpt, at p. 36, ln. 2 and ln. 10.)  In total, the prosecution history issue consumed approximately 5.5 hours of oral argument and required two separate detailed rulings from this Court.  Dedicating this amount of time, analysis, and effort to the issue demonstrates that Health Grades' arguments were hardly frivolous.  Further, this issue too is in the process of being appealed to the Federal Circuit, which demonstrates Health Grades' good faith belief in this argument and weighs against a finding that this case is exceptional.

IV.     HEALTH GRADES' INDIRECT INFRINGEMENT CLAIMS WERE PROPER.

Health Grades contended that MDx indirectly infringed by entering into an agreement with Aetna and developing, maintaining, and managing a full database for use with iTriage and providing Aetna training for the database.  [Second Amended Complaint Doc. #512-1.]  In a fourteen-page Order, the Court entered summary judgment of non-infringement on indirect infringement.  [Doc. #931 at p. 14.]  But, the summary judgment ruling does not in and of itself serve as evidence that this is an exceptional case.  *EON Corp. IP Holdings*, 2014 WL 3726170, at *5.

Health Grades did not litigate the indirect infringement claims in an objectively unreasonable manner, in bad faith, or assert baseless arguments.  *See Intellect Wireless, Inc. v. Sharp Corp.*, 2014 WL 2443871, at *5-8 (N.D. Ill. May 30, 2014) (finding case exceptional under section 285, but on grounds that plaintiff committed inequitable conduct by "making affirmative, false representations to the PTO" and engaging in a "pattern of deceit.").  Health Grades first carefully prepared a detailed, 111-page claim chart, analyzing how the iTriage accused products satisfied each claim element.  [Motion to Amend Doc. #253-2.]  Health Grades' expert, Dr. Greenspun, reviewed and approved this claim chart and concluded there was indirect infringement.  [Greenspun Report ¶232 Doc. #292-1.]  The claim chart and supporting expert report show Health Grades acted reasonably and responsibly before asserting the new claims.  Despite the arguments of MDx, Magistrate Judge Boland also found there was sufficient evidence for Health Grades to amend its complaint to include the indirect infringement claims.  [Doc. #480 at p. 2 "I cannot say on the record now before me that the proposed amended claims certainly will be dismissed and are futile."]

It was proper for Health Grades to argue that the components sold by MDx were not suitable for substantial non-infringing use.  When determining whether an accused product has a substantial non-infringing use under 35 U.S.C. § 271(c), it is the thing actually sold by the defendant that is the focal point for analysis, not an ingredient or portion thereof.  *Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1578 (Fed. Cir. 1987).

Here, Health Grades had evidence that MDx did much more than lease data – MDx built a custom database specifically for use in the infringing iTriage products.  [Doc. #486-1 MDx-Aetna Agreement at p. 7.]  Further, the iTriage database was built from an extract of MDx's proprietary database.  [*Id.*]  MDx also managed and maintained (i.e., updated) the iTriage database.  [*Id.*].  Health Grades had a good faith belief that this is was more than adequate evidence to permit a reasonable jury to find that MDx is liable for contributory infringement.  *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001) (reversing JMOL of no contributory infringement because plaintiff put on evidence that defendant's infringing device was "specifically manufactured" to be used for the claimed liposuction application and defendant did not put on evidence of any actual use of the accused device for other types of surgery).

Health Grades' inducement arguments were also not baseless.  MDx claims that Health Grades had no evidence of intent to induce because it did not cite any communications between MDx and iTriage.  [Motion at p. 21.]  Intent, however, can be established through circumstantial evidence.  *Broadcom Corp. v. Qualcomm, Inc.,* 543 F.3d 683, 699-700 (Fed. Cir. 2008).  Health Grades identified multiple pieces of evidence that supported its good faith belief that it could establish intent at trial.  By agreement, MDx sold its accused data to Aetna and agreed to

"develop, manage, and maintain a full database" to be the "data backbone" for iTriage.  [Health Grades Opposition to MDx's Motion for Summary Judgment regarding Aetna Doc. #525 at pp. 27-28.]  MDx received over a million dollars from Aetna.  [*Id.* at p. 28.]  MDx also had a policy it claimed to follow to avoid infringement, but did not communicate the policy to Aetna.  [*Id.*]  Further, the iTriage system and MDx system were strikingly similar.  [*Id.*]

The Court's November 4, 2014 ruling that Configuration 5 (iTriage) does not infringe the '060 Patent should not be bootstrapped into a determination that the iTriage website had substantial non-infringing uses.  In hindsight, the finding of non-infringement of course opens up the prospect of considerable non-infringing uses.  However, at the time Health Grades asserted the argument (July 13, 2012), Health Grades had a reasonable belief that Configuration 5 was infringing and that the custom database specifically built by MDx for iTriage was infringing and did not have substantial non-infringing uses.  The Court has recognized that the change in the scope of non-infringing uses could not be anticipated:  "Of course, the Court's prior rulings on literal infringement and prosecution history estoppel could not be anticipated."  [Doc. #931 at p. 13.]  Post-hoc hindsight and recent changes in the landscape of the case should not be used in the determination of an "exceptional" case under section 285.  *Christiansburg Garment*, 434 U.S. at 421-22 (a court should not engage in *post hoc* reasoning when addressing fee motion).  Even though the foregoing arguments did not prevail on summary judgment, they were made in good faith and do not serve to make this case "exceptional" based upon a totality of the circumstances.

Health Grades' measured, reasonable, good faith approach to the litigating the indirect infringement claims is also evidenced by its willingness to withdraw certain claims when appropriate.  First, Health Grades initially included a claim of joint infringement claim involving

iTriage.  [Second Amended Complaint Doc. #512-1.]  On January 30, 2013, Health Grades voluntarily withdrew the joint infringement claim.  [Doc. #520-18.]  Second, Health Grades initially included both indirect system and method infringement claims.  [Second Amended Complaint Doc. #512-1.]  *Akamai Techs., Inc. v. Limelight Networks, Inc*., 692 F.3d 1301, 1308 (Fed. Cir. 2012), provided that performance of the steps of a patented method by multiple, unrelated entities could be an act of "infringement" sufficient to impose liability for inducement under §271(b).  *Id.* at 1309.  When the Supreme Court reversed the Federal Circuit's decision in *Akamai*, Health Grades withdrew its indirect infringement allegations against the method claims. *Limelight Networks, Inc. v. Akamai Techs., Inc.,* 572 U.S. __, 2014 U.S. LEXIS 3817, at *11 (U.S. Sup. Ct. June 2, 2014).

Finally, MDx's claim that Health Grades used the indirect infringement claims to interfere with MDx's Aetna business relationship is unsubstantiated.  [Motion at p. 21.]  To support the claim of interference, MDx focuses on the third-party discovery Health Grades issued to iTriage.  [*Id.*at pp. 21-22.]  However, Health Grades' subpoena to iTriage was necessitated by MDx's refusal to produce discovery relating to its licensees.  At the beginning of discovery, Health Grades, on July 25, 2011, sought the production of MDx's license agreements, including the Aetna license agreement.  [Doc. #252-4 at 11 Nos. 2(j), (k), (l), 4).]  MDx refused to produce any license agreements.  On January 24, 2012, Health Grades moved to compel production of these agreements and related information.  [Doc. #126].  In early March 2012, while Health Grades' motion to compel was pending, Aetna publically announced that it had entered into a partnership with MDx to license MDx's database for use in Aetna's iTriage application.  [Doc. #252].  Given MDx's refusal to produce the license agreements and related

information, on March 30, 2012, eight months after requesting the information initially, Health

Grades issued a subpoena for Aetna.  [Doc. #961-12].  Ultimately, the licensee agreement

discovery Health Grades sought from MDx was deemed appropriate by Magistrate Judge Boland

[Doc. #192 granting Health Grades' motion to compel the license agreements and related

information and ordering MDx to produce the documents and the subpoena was quashed as

unnecessary.][11]

MDx claims that Health Grades was the cause of Aetna terminating the relationship in

June 2013.  [Motion at pp. 16-17.]  MDx provides no evidence that Aetna terminated the

agreement based on Health Grades serving third-party discovery.  [*Id.*]  The Aetna termination

letter is devoid of any statement that Health Grades played any role in the decision to terminate.

[Doc. #963-2.]

In short, Health Grades' indirect infringement claims were proper and not frivolous,

objectively unreasonable or litigated in bad faith.

V.      CERTIFICATION OF THE COURT'S DECISION ON MDx's FEE MOTION.

MDx requests that the court certify its ultimate decision on MDx's Motion.  [Motion at p.

17.]  Health Grades does not oppose certification.

---

[11] Magistrate Judge Boland granted MDx's motion to quash discovery served on iTriage, but did
so only after requiring MDx to produce licensing agreements related to iTriage.  The Court also
recognized that the third-party discovery on iTriage may be appropriate if MDx failed to produce
the required documentation.  [Doc. #192 ¶1(e) "[t]he issue of the propriety of third party
discovery concerning damages, including licensing revenues, may be raised again if discovery
from MDx is inadequate."]

In sum, the Court should deny MDx's request for fees as this is not an "exceptional" case under section 285.

Respectfully submitted December 12, 2014.

LEWIS ROCA ROTHGERBER LLP

*s/ Kris J. Kostolansky*
Gregory B. Kanan, Esq.
Kris J. Kostolansky, Esq.
Adam L. Massaro, Esq.
1200 17th Street, Suite 3000
Denver, Colorado  80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Email: gkanan@lrrlaw.com
          kkosto@lrrlaw.com
          amassaro@lrrlaw.com

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2014, I electronically filed the foregoing **HEALTH GRADES, INC.'S RESPONSE TO MDX MEDICAL, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS AND REQUEST FOR CERTIFICATION PURSUANT TO FEDERAL RULE 54(B) [DOC. #961]** was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

> Scott David Stimpson, Esq.
> Vincent Ferraro, Esq.
> David C. Lee, Esq.
> Trent Dickey, Esq.
> Sills Cummis & Gross P.C. – New York
> 101 Park Avenue, 28th Floor
> New York, New York 10178
> E-mail:   sstimpson@sillscummis.com
>                vferraro@sillscummis.com
>                dlee@sillscummis.com
>                tdickey@sillscummis.com
>
> Terence M. Ridley, Esq.
> Wheeler Trigg O'Donnell, LLP
> 370 17th Street, Suite 4500
> Denver, CO  80202-5647
> E-mail:   ridley@wtotrial.com

> *s/ Kris J. Kostolansky*
> Gregory B. Kanan, Esq.
> Kris J. Kostolansky, Esq.
> Adam L. Massaro, Esq.
> 1200 17th Street, Suite 3000
> Denver, Colorado 80202-5855
> Tel:      (303) 623-9000
> Facsimile: (303) 623-9222
> Email: gkanan@lrrlaw.com
>               kkostolansky@lrrlaw.com
>               amassaro@lrrlaw.com
>
> *Attorneys for Plaintiff*