**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-CV-00520-RM-BNB

HEALTH GRADES, INC.,

    Plaintiff,

v.

MDX MEDICAL, INC. d/b/a VITALS.COM,

    Defendant.

**MDX MEDICAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS AND REQUEST FOR CERTIFICATION PURSUANT TO FEDERAL RULE 54(b)**

Health Grades' attempt to distance itself from its infringement positions that permeated the entire litigation is unavailing. Health Grades is unable to obscure the fact that, even after *Markman*, it pursued infringement by arguing that single provider ratings, "match scores," and awards in provider reports all met the "comparison ratings" claim element – even ***literally***. And Health Grades' fared no better when it ventured outside the provider reports in search of comparison ratings. Indeed, despite unequivocally losing its argument that "provider reports" could be directed to multiple providers, Health Grades snubbed Judge Brimmer's *Markman* Order and argued that results lists were reports on a "particular" provider – even ***literally***. This argument was always "untenable" and "magical" as the Court's summary judgment decision held. As for the inconsistencies between its infringement and validity contentions, Health Grades' tellingly short proffered explanation is nonsensical.

## I.     THE FRIVOLOUS INFRINGEMENT ARGUMENTS

### A.     Ratings of a Single Provider

Health Grades avers that: "Health Grades never asserted that a rating of a single healthcare provider, by itself, was sufficient to meet the comparison ratings claim element. Rather, Health Grades argued that a 'five star rating system for all physicians within a database will meet Health Grades' proposed definition of comparison ratings.'" Health Grades' Opposition Response to MDx's Motion for Attorneys' Fees p. 10 (hereafter "Opp."). These statements are demonstrably inaccurate and misleading. The Health Grades Infringement Contentions clearly and unequivocally argued that the rating of a single provider met the comparison rating element. *See, e.g.,* Motion Exh. C, pages 17-18 (arguing literal infringement and equivalents: "the 'overall patient rating,' comprising 0-4 purple stars, comprises comparison ratings of healthcare providers"); *see also* Dkt. # 79, *e.g.,* at 14 (arguing that "comparison ratings relate to a particular provider . . .")

Health Grades claims that "once the Court entered its *Markman* decision, Health Grades did not continue to assert this argument," and that "Health Grades accepted the Court's claim construction and has not asserted that a rating of only one provider met the comparison ratings claim element." Opp. at 10-11. These statements also have no basis. *See, e.g.,* Health Grades' Opposition to the MDx Summary Judgment Motion, Dkt. #201, page 14 ("Dr. James Smith's report includes comparison ratings on Dr. Smith (orange circle), namely a four star rating by his patients…."), page 19 ("MDx makes a similar argument that the overall patient rating is the claimed patient-provided information and thus cannot also be comparison ratings…. The jury

should determine ... whether the ratings meet the Court's definition of comparison ratings."); *see also* Dkt. #292 and Exhibit G, ¶¶ 172-73, 181.

Health Grades quotes the deposition of its own expert, showing that even he was ultimately unable to support the Health Grades infringement allegations. Opp. p. 14. Yet even when its own expert could no longer support these contentions in September of 2012, Health Grades refused to drop them. It never withdrew those positions from its summary judgment motion, and even continued to affirmatively push for addition of those positions into its Infringement Contentions. For example, the very next month after the expert deposition, Health Grades continued to pursue it. Dkt. #357 and Exhibit G at ¶¶ 172-73, 181 (Reply Memorandum in support of its motion seeking to add, *inter alia,* the following to the Health Grades Infringement Contentions: "A variety of items on vitals.com (both versions) qualify as comparison ratings…. First, there is an 'overall patient rating' (1-4 stars)…."; and the overall patient rating "satisfies the requirements of both" patient provided information and comparison ratings.). Where a party's own expert will no longer support a position, and the party continues to assert that position, fees are appropriate. *See, e.g., BIAX Corp. v. NVIDIA Corp.*, 2013 U.S. Dist. LEXIS 46715, *20 (D. Col. March 30, 2013) (Brimmer, J.) ("BIAX persisted in litigating this case even after its own expert conceded that the processors in defendants' chips cannot access all of the condition code storage locations").

      **B.**    <u>**Match Scores and Awards**</u>

Health Grades does not dispute that, throughout this litigation, it argued that a "match score" literally and equivalently met the comparison ratings element. Opp. p. 10. The

justification Health Grades provides demonstrates the frivolity of this argument: "a 'match score' includes an analysis of quality of training, quality of hospital and years of experience." *Id*. Evident from the Health Grades argument itself, "match score" has absolutely nothing to do with ratings of any healthcare provider. And even after Judge Brimmer ruled that "comparison ratings" were "***ratings on multiple healthcare providers***, including the 'first healthcare provider,' in the report on that 'first healthcare provider,' thus permitting comparison of the 'first healthcare provider' with other potential healthcare providers" (Dkt. #138, page 24, emphasis added), Health Grades would not back down – even continuing to argue that the "match score" ***literally*** met the claim language. Motion Exh. C, pages 16, 19; Exh. D; Exh. E, pages 31-34.

Health Grades argues that a Patient's Choice Award was alleged to meet the comparison ratings element because the physician "received near perfect scores as rated by patients." Opp. at 10. But it is not a rating of the Provider – it is an award. Particularly without any ratings (or even awards) of any other provider, this could never meet Judge Brimmer's claim construction. Health Grades does not even attempt to muster an explanation in its Opposition; nor does Health Grades attempt to explain its allegations that other awards met the comparison ratings element, such as America's Top Doctors, and America's Leading Experts – all of which Health Grades alleged to ***literally*** meet the comparison ratings, even after the claim constructions. Dkt. ## 292, 482 ¶¶ 174-76.

Regretting these arguments now, Health Grades characterizes them as "preliminary arguments" and even asserts that it had a "duty" to make them. Opp. p. 12. But they were not "preliminary" in any sense of the word, as Health Grades made them all for the ***entire*** litigation –

4

even after claim construction. And Health Grades' allegation that it had some "duty" to make these arguments is meritless.

Health Grades next cites its decision not to rely on these arguments in response to the MDx summary judgment motion. This evidences nothing – the point is that Health Grades refused to give them up and kept them in **_all_** iterations of its Infringement Contentions so that they could be presented to the jury, and forcing MDx to deal with them for the entire litigation.

### C.  Results Lists

Health Grades does not dispute that, even after the Court's claim constructions, it argued that comparison ratings in a results list met the claim language, both **_literally_** and equivalently. Opp. pp. 11-12, 17. But Health Grades does not address the elephant in the room: in view of the Court's claim construction Order, finding that "the report relates **_only_** to the particular 'first healthcare provider'" (Dkt. #138, page 12, emphasis added), how could a results list be a report on a first healthcare provider? This is the same Health Grades argument that the Court found "untenable" (Dkt. #696, pages 10-15), and indeed it is inconceivable that Health Grades could take such a position in the face of the Court's claim constructions.

Health Grades' attempt to blame Judge Brimmer for its "untenable" argument is equally meritless. Opp. p. 18 ("the *Markman* Order contained inconsistent statements about whether or not the report on the first healthcare provider could contain information about other providers."). There is nothing in the *Markman* Order that was even remotely ambiguous on this issue. Judge Brimmer stated: "Defendant … contends that the report **_relates only to the particular 'first healthcare provider'_** discussed above…. **_The Court agrees with the defendant_**.'" Dkt. #138, pages 12-13 (emphasis added). Because a results list does not relate only to one particular

5

provider, Health Grades argument that a results list could be the claimed provider report was baseless.

## II.     INCONSISTENCIES

### A.     Reports Without Ratings of Multiple Providers

Health Grades barely even addresses the question of why it alleged, throughout this litigation, that (1) a provider report with ratings of only the first healthcare provider ***did*** meet the claim language for the infringement issues; and (2) a provider report with ratings of only the first healthcare provider did ***not*** meet that same language for the validity issues.  Opp. p. 15.  The explanation now given by Health Grades is that provider reports with ratings of only the one provider do not meet the claim language ***when they are compared to a national average***.  *Id.* This argument is nonsensical and was not raised during the litigation.

Health Grades does not cite to a single page of any document where it made this alleged distinction before.  Indeed, the Greenspun invalidity rebuttal report does not mention national averages; his expert report distinguished Drucker from the claims because it lacked ratings of other providers in the report.  Dkt. #752-2, ¶¶ 84 ("The Drucker prototype does not contain comparison ratings of multiple physicians.").  The Health Grades validity summary judgment motion towed the same line – not relying on  national averages, but instead arguing that Drucker did not meet the claim language because it lacked ratings of multiple providers in the first healthcare provider report.  *See, e.g.,* Dkt. #369 at page 8 ("The Drucker Report … contains ratings of only one human healthcare provider: Dr. Drucker."); page 22 ("MDx ... definitely does not cite a single reference that has both ratings of a first healthcare provider and ratings of other

6

healthcare providers in a report"); Dkt. #442, page 10 ("It is undisputed that the Drucker Report … has patient ratings of one physician, Dr. Drucker"); page 31 ("Drucker Report: Multiple Ratings of Human Healthcare Providers?  NO"; emphasis by Health Grades).

But the Health Grades position flip-flopped 180 degrees once the issue changed to infringement.  On that issue, Health Grades argued that the overall patient rating of only the first healthcare provider even literally met the claim language.  Dkt. #292 and Exhibit G at ¶¶ 172-73, 181 ("A variety of items on vitals.com (both versions) qualify as comparison ratings….  First, there is an 'overall patient rating' (1-4 stars)…."); Exhibit G, ¶ 181 ("It is my opinion that [the overall patient rating] satisfies the requirements of both" patient provided information and comparison ratings.).

### B. Awards

Health Grades alleges that it did not take inconsistent positions with regard to awards, but Health Grades cannot cite to its Infringement Contentions or its invalidity positions as that assessment would only highlight the contradiction.  Opp. p. 16.   So, Health Grades cites to the sworn testimony of its own expert.  Health Grades is correct that, when pressed, its expert conceded that the Health Grades position on a single award in a provider report being comparison ratings was indefensible. *Id.* at 16.  That fact, however, supports the request for fees.  That is, even when its own expert abandoned the position, and despite inconsistently arguing that awards in the prior art could not meet the comparison ratings element, to the bitter end Health Grades insisted that the awards on the MDx system met the comparison ratings element, even ***literally***.  *Cf. BIAX,* 2013 U.S. Dist. LEXIS 46715, *6 ("BIAX's decision to proceed, not only in

the face of the Court's claim construction, but in light of its own expert's testimony supporting a finding of non-infringement, 'prolonged the litigation in bad faith.'").

## III.     EQUIVALENTS

On equivalents, Health Grades first argues that it was reasonable in alleging equivalents because it conceded that there was a presumption of estoppel.  Opp. at 21.  Conceding that presumption is a non-issue.  The prosecution history plainly showed that these elements were added to the claims, and argued to distinguish the prior art – all that is required for the presumption.  Dkt. #913;  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S. Ct. 1831, 152 L. Ed. 2d 944 (2002).

Since Health Grades admits that it always was aware it was facing this presumption of estoppel, the pertinent question is why, in view of that knowledge, did Health Grades persist with its infringement allegations.  Health Grades' only response to the estoppel issue has been the "tangential" exception.  For that exception to apply, however, the rationale for the limiting amendment must be clear from the prosecution history itself.   *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-69 (Fed. Cir. 2003); Dkt. # 913, pages 11-12.  But, after three-and-a-half years of litigation, at the *Festo* hearing, it was clear that Health Grades never had a reasonable argument that this tangential exception applied.  Health Grades did not dispute that the "comparison ratings" language was added to the claims to distinguish the prior art, but it argued that the location limitation was not needed to distinguish the prior art.  Dkt. #903, pages 45-46; *see also* Dkt. # 913, page 13.  Health Grades was never able to point to anything in the prosecution history supporting this theory, as it knew was required for the tangential exception to apply.  Dkt. # 913, page 14.

Even ignoring the estoppel issues, the Health Grades equivalents argument was never reasonable as the Court's summary judgment decision confirmed. Dkt. # 696. Indeed, as MDx stated in its initial memorandum, "if it is 'untenable' to contend that an element of the accused product meets certain claim language as this Court determined (Dkt. #696, page 11), it would be incongruous to allege that the element was nevertheless 'insubstantially' different from that claim language as is required for infringement by equivalents. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 94 L. Ed. 1097, 70 S. Ct. 854 (1950)." Prin. Mem. at 8. Health Grades does not take issue with this basic premise.[1]

## IV.   iTRIAGE AND AETNA

Tellingly, Health Grades does not even attempt to explain why it served ***three*** subpoenas, including one served personally on the iTriage CEO. Nor does Health Grades explain why it was demanding, from both the CEO and iTriage the company, information and documents that were wildly burdensome and overbroad, including every document relating to investigations of ***any*** patent and every document relating to efforts to design around ***any*** patent. This conduct further supports the true underlying motive of Health Grades in pursuing this meritless patent

---

[1] As for the "Search All Similar Doctors" link (Configuration 3), Health Grades only mentions this in passing in the Introduction section of its Opposition. The reason Health Grades does not emphasize this feature is because it does not (and cannot) dispute that it was never part of the Health Grades Infringement Contentions, but instead raised *sua sponte* by the Court. Health Grades cannot now rely on an infringement argument that was never part of its Infringement Contentions. As for Health Grades' attempt to justify its conduct because the MDx website was a "moving target" (Opp. at 20), this argument is irrelevant – apart from the one month mistake of Configuration 4, the website was always consistent with regard to this claim element: no comparison ratings were in any provider reports.

litigation – to harm its competitor through costly litigation and intimidate MDx customers, rather than fairly compete in the marketplace.

Health Grades also glosses over the contributory infringement issue, confusing the question of whether the *__data__* MDx provided had substantial non-infringing uses with a review of the entire iTriage website. Opp. at 25 (arguing that the summary judgment decision does not mean that "the iTriage website had substantial non-infringing uses"). Health Grades even argues that the data itself was infringing. *Id.* ("Health Grades had a reasonable belief that … the customer database specifically built by MDx for iTriage was infringing…."). Health Grades thus dances around the issue, without squarely addressing whether the product MDx sold – physician data – could be used in a way that would not infringe the patent. This answer is so obvious that this alone renders Health Grades' opposition baseless.

As for inducement, Health Grades again avoids the issue altogether. Where was the evidence that MDx induced iTriage to infringe, when there was not even a shred of evidence that MDx even communicated with iTriage?

Health Grades set out to, and did, use these baseless contributory and inducement allegations to drive a wedge between MDx and Aetna/iTriage. And Health Grades succeeded – ending a profitable part of the MDx business. This is further evidence of Health Grades' bad faith.

## V. __RULE 54 (B) CERTIFICATION__

Health Grades does not oppose the Court's certification of its decision on this motion.

10

### VI.     CONCLUSION

For all the foregoing reasons, MDx respectfully requests that the Court find the case exceptional pursuant to 35 U.S.C. § 285 and that fees should be awarded, set briefing on the proper amount of fees and costs to be awarded, and certify the Court's fees award for appeal.

Dated:  December 18, 2014                                              Respectfully submitted,

*s:/Scott D. Stimpson*
Scott D. Stimpson                                                              Terence Ridley, Atty. No. 15212
Trent S. Dickey                                                                  Wheeler Trigg O'Donnell LLP
David C. Lee                                                                      370 Seventeenth Street, Suite 4500
Sills Cummis & Gross P.C.                                                Denver, Colorado 80202
101 Park Avenue                                                                Tel:  (303) 244-1800
New York, New York 10178                                              Fax:   (303) 244-1879
Tel: (212) 643-7000                                                            E-mail: ridley@wtotrial.com
Fax: (212) 643-6500
E-mail: sstimpson@sillscummis.com                             *Attorneys for Defendant*
E-mail: tdickey@sillscummis.com                                  MDx Medical, Inc. d/b/a VITALS.COM
E-mail: dlee@sillscummis.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2014, I electronically filed the foregoing **MDX MEDICAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS AND REQUEST FOR CERTIFICATION PURSUANT TO RULE 54(b)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Jesus Manuel Vazquez, Jr.**
  jvazquez@lrrlaw.com, phenke@lrrlaw.com

- **Gregory B. Kanan**
  gkanan@lrrlaw.com

- **Kris John Kostolansky**
  kkosto@lrrlaw.com

- **Adam Lee Massaro**
  amassaro@lrrlaw.com

- **Tamara F. Goodlette**
  tgoodlette@lrrlaw.com

- **Kirstin L. Stoll-DeBell**
  kstoll-debell@merchantgould.com

- **Scott David Stimpson**
  sstimpson@sillscummis.com, gcaceres@sillscummis.com

- **Trent S. Dickey**
  tdickey@sillscummis.com

- **David Chunyi Lee**
  dlee@sillscummis.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

                                                  *s:/David C. Lee*